# EXHIBIT H

# Westlaw.

93 Fed.Appx. 1    Page 1
93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

C
Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Fifth Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)
United States Court of Appeals,Fifth Circuit.
AMERICAN CENTRAL EASTERN TEXAS GAS COMPANY, Limited Partnership; American Central Gas Companies Inc., Plaintiffs-Appellees,
v.
UNION PACIFIC RESOURCES GROUP INC.; et al., Defendants,
Duke Energy Fuels LLC; Duke Energy Field Services Inc., Defendants-Appellants.
No. 02-41010.

Jan. 27, 2004.

**Background:** Gatherer of natural gas brought action against processor of natural gas alleging monopolization under § 2 of the Sherman Act. The United States District Court for the Eastern District of Texas confirmed arbitration award in favor of plaintiff. Defendant appealed.

**Holdings:** The Court of Appeals, Prado, Circuit Judge, held that:

1(1) arbitrator did not disregard applicable law in finding that gatherer suffered antitrust injury as required to establish standing;

2(2) arbitrator did not manifestly disregard law in finding that processor possessed monopoly power in gas processing market in county;

3(3) arbitrator's finding that processor engaged in exclusionary conduct was not in manifest disregard to antitrust law;

4(4) arbitrator's award ordering processor to offer gatherer a new processing contract for additional capacity did not violate public policy; and

5(5) arbitrator did not exceed authority by granting gatherer relief.

Affirmed.

West Headnotes

[1] **Arbitration** 33 &#x1F856;63.1

33 Arbitration
   33VI Award
      33k63 Mistake or Error
         33k63.1 k. Error of Judgment or Mistake of Law. Most Cited Cases

**Monopolies** 265 &#x1F856;28(1.4)

265 Monopolies
   265II Trusts and Other Combinations in Restraint of Trade
      265k28 Actions for Damages by Combinations or Monopolies
         265k28(1.1) Right of Action
            265k28(1.4) k. Injury to Business or Property. Most Cited Cases
Arbitrator did not disregard applicable law in finding that gatherer of natural gas suffered antitrust injury by processor's alleged monopolization of producer's of natural gas, as required to establish standing to bring action against processor of natural gas alleging monopolization under Sherman Act; bundled services offered by gatherer, which included gathering and processing, added to market different product than that offered by processor, consumers could benefit from purchasing processing in package with gathering services, and gatherer was able to offer both services on terms profitable to itself as well as economically valuable to consumer. Sherman Act, § 2, as amended, 15

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

U.S.C.A. § 2; Clayton Act, § 4, 15 U.S.C.A. § 15.

[2] **Arbitration 33** 63.1

33 Arbitration
    33VI Award
        33k63 Mistake or Error
            33k63.1 k. Error of Judgment or Mistake of Law. Most Cited Cases

**Monopolies 265** 12(1.3)

265 Monopolies
    265II Trusts and Other Combinations in Restraint of Trade
        265k11 Combinations Prohibited
            265k12 In General
                265k12(1.3) k. Monopolization; Monopoly Power. Most Cited Cases
Arbitrator did not manifestly disregard law in finding that processor of natural gas possessed monopoly power in gas processing market in county, in action brought against processor by gatherer of natural gas alleging monopolization under the Sherman Act; arbitrator was particularly familiar with applicable antitrust law, parties, historical, procedural, and factual context of matters in dispute, and record indicated that processor controlled approximately 90-95% of all gas processing in county. Sherman Act, § 2, as amended, 15 U.S.C.A. § 2.

[3] **Arbitration 33** 63.1

33 Arbitration
    33VI Award
        33k63 Mistake or Error
            33k63.1 k. Error of Judgment or Mistake of Law. Most Cited Cases
Arbitrator's finding that processor of natural gas engaged in exclusionary conduct by refusing to negotiate fairly with gatherer of natural gas in order to prevent gatherer from competing with processor in order to maintain a supra competitive price for gas processing in county, was not in manifest disregard to antitrust law, in action brought by gatherer against processor alleging monopolization under the Sherman Act; evidence indicated that processor was concerned that gatherer's increased presence in market would inject added competition into market, and processor intentionally excluded gatherer from market. Sherman Act, § 2, as amended, 15 U.S.C.A. § 2.

[4] **Arbitration 33** 56

33 Arbitration
    33VI Award
        33k56 k. Sufficiency in General. Most Cited Cases
Arbitrator's award ordering processor of natural gas to offer gatherer of natural gas a new processing contract for additional capacity, in action brought by gatherer against processor alleging monopolization under the Sherman Act did not violate public policy; arbitrator found that processor possessed monopoly power, processor's contract negotiations with gatherer were in bad faith and intended to prevent gatherer from competing with processor, that processor's contract terms harmed and decreased competition in county, and award would was created to restore competition in market. Sherman Act, § 2, as amended, 15 U.S.C.A. § 2.

[5] **Arbitration 33** 29.6

33 Arbitration
    33V Arbitrators and Proceedings
        33k29 Nature and Extent of Authority
            33k29.6 k. Scope of Relief. Most Cited Cases
Arbitrator did not exceed authority by granting gatherer of natural gas more relief than it requested in gatherer's action brought against processor of natural gas alleging monopolization under the Sherman Act; gatherer requested a contract in terms similar to previous contract with processor, terms in award were better than previous contract, but same as terms in another of processor's contracts, and arbitrator merely tailored contractual award to rectify anticompetitive conduct by processor. Sherman Act, § 2, as amended, 15 U.S.C.A. § 2.

\*2 Appeal from the United States District Court for the Eastern District of Texas. USDC No. 01-CV-2208-T.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1    Page 3
93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
(Cite as: 93 Fed.Appx. 1)

Samuel Franklin Baxter, McKool Smith, Austin, TX, Thomas Patrick Dove, Carolyn Beasley Burton, The Furth Firm, San Francisco, CA, for Plaintiff-Appellee.
Layne E. Kruse, Gerard G. Pecht, John P. Bowman, Joy M. Soloway, Darryl Wade Anderson, Fulbright & Jaworski, Houston, TX, Charles H. Clark, Clark, Lea & Ainsworth, Tyler, TX, for Defendant-Appellant.

Before DEMOSS, DENNIS, and PRADO, Circuit Judges.[FN1]

> FN1. Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

PRADO, Circuit Judge.
**1 Duke Energy, et al. (Duke) brings this appeal of the district court's confirmation of an arbitration award in favor of Appellee, American Central Eastern Texas, et al. (ACET). The arbitration award at issue involved monopolization claims asserted by ACET against Duke under § 2 of the Sherman Act. The arbitrator found that Duke had a monopoly in gas processing in Panola County, Texas, and that Duke had violated § 2 of the Sherman Act by refusing to grant ACET a new gas processing contract for additional gas volume with the purpose of preventing ACET from competing with Duke. Duke appeals the district court's confirmation of that award on the grounds that the arbitrator manifestly disregarded the law in making *3 the award, and that the award is arbitrary and capricious, violates public policy, and is beyond the scope of the arbitrator's authority.

## I. BACKGROUND

ACET and Duke are companies that participate in the natural gas industry in Panola County, Texas.
ACET is predominately a "gatherer" of natural gas liquids. Gatherers contract with "producers"-those who extract the gas from the ground-to gather the extracted gas and then either ship it to a delivery point or ship it to a processing plant. ACET also offers "bundled" gathering and processing services, whereby producers may hire ACET to gather their gas and also have it processed for them-essentially a one-stop shop. ACET is able to offer bundled services to its customers at a price that is still profitable because ACET's gathering technology is efficient and low-cost.

Duke primarily operates as a gas "processor," although it also performs some gathering services.
In offering the bundled services of gas gathering and processing, ACET subcontracted with Duke to process the gas gathered from ACET's customers.
The dispute in this case arises from ACET's dealings with Duke for its processing services, and ACET's desire to increase its customer base and its resulting need to acquire more processing capacity in the Panola County market.

When this suit was filed, Duke and its predecessor, Union Pacific Resources Group (UPR), controlled 90-95% of the processing market in Panola County.[FN2] ACET entered the gathering market in Panola County in 1994, and later considered opening its own processing plant in Panola County. ACET contended, however, that UPR had an internal business plan to create a monopoly in gas processing in the area, called the "Carthage Vision."
According to ACET, UPR planned to stifle competition by preventing construction of new processing plants. To achieve this goal, UPR planned to enter staggered, long-term contracts with producers, so that any would-be entrants into the processing market would be unable to muster enough gas from producer-customers at any one time to offset the capital expense of a new processing plant. ACET contended that, because of the "Carthage Vision," it was unable to open its own plant in Panola County, and was left with the sole option of entering one of the long-term agreements with UPR for processing. Thus, in 1997, ACET contracted with UPR (the "1997 contract") for processing services.

> FN2. Duke purchased UPR in 1999.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1                                                                                                                  Page 4

93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

In 1999, ACET brought suit under §§ 1 and 2 of the Sherman Act against UPR and Duke [FN3] for monopolizing the gas processing market in Panola County, and Koch Industries, Inc. [FN4] for conspiring with UPR in UPR's quest for monopoly power. Duke and UPR moved to compel arbitration on the § 2 claims against them, leaving the § 1 claims and § 2 conspiracy claim in district court. In 2000, former state judge Harlan Martin arbitrated the parties' dispute ("First Arbitration") and found that UPR willfully acquired and maintained monopoly power and abused that power to overcharge ACET under the terms of the " uncompetitive" 1997 gas processing contract. UPR eventually settled *4 with ACET and the First Arbitration award was vacated.

>    FN3. Duke was added as a defendant after it purchased UPR in 1999.

>    FN4. ACET essentially contended that Koch agreed to stay out of the gas processing market in exchange for UPR's promise to provide processing services to Koch on favorable terms.

By 1999, ACET required additional processing capacity, because it was fully utilizing all of the capacity allocated to it under the 1997 contract. However, ACET again determined that opening its own plant was not a viable option, because too many producers were already tied up in staggered, long-term contracts with Duke. Therefore, ACET argued, it again had no choice but to enter contract negotiations with Duke for additional processing capacity.

The ensuing contract negotiations between ACET and Duke collapsed. With antitrust claims still in the district court, ACET added a new monopolization claim against Duke for violating § 2 of the Sherman Act. ACET stated that Duke had asked for the same terms and prices for additional capacity as in the 1997 contract, which had been deemed supracompetitive in the First Arbitration. In addition, ACET asserted that Duke intentionally proposed terms that Duke knew were unrealistic or completely unviable terms to ACET. Thus, ACET claimed that Duke was refusing to deal with ACET in order to exclude ACET from competition with Duke in the Panola County gas processing market.

Upon Duke's request, the district court referred the new § 2 monopolization claims against Duke back to arbitration ("Second Arbitration") before Harlan Martin, the arbitrator from the First Arbitration. The arbitrator found in favor of ACET. In the Second Arbitration award, the arbitrator made the following findings, among others: (1) that Duke possessed monopoly power in the gas processing market in Panola County; (2) that Duke had not negotiated in good faith; (3) that Duke had refused to contract with ACET in order to prevent ACET from competing with Duke or to maintain a supracompetitive price for processing services in Panola County; (4) that ACET had suffered " antitrust injury" in that it was denied the opportunity to process additional volumes of gas at competitive prices; and (4) that others had lost the opportunity to purchase processing or bundled services from ACET as a result. The arbitrator ordered, by mandatory injunction, that Duke offer ACET a new processing contract for additional capacity, which would contain the same terms as the 1997 contract but incorporate the reduced price terms of a similar contract between Duke and Pennzoil (Pennzoil contract). [FN5]

>    FN5. ACET asserted that the Pennzoil contract contained terms that were more favorable to purchaser of processing capacity than the terms Duke had offered to ACET. ACET argued that the preferable terms of the Pennzoil contract resulted from a temporary rise of competition, which occurred during a time when Koch threatened to enter the Panola County market.

Duke moved for vacatur of the Second Arbitration award in the district court. Duke asserted that the award was in manifest disregard of the law, arbitrary and capricious, and violated public policy. The district court denied Duke's motion to vacate, and confirmed the arbitration award. Duke timely appealed the district court's confirmation of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1                                                                                                      Page 5

93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

Second Arbitration award.

## II. STANDARD OF REVIEW

In reviewing a district court's confirmation of an arbitration award, this Court reviews questions of law *de novo* and findings of fact only for clear error. See *First Options of Chicago v. Kaplan,* 514 U.S. 938, 947-48, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Williams v. Cigna Fin. Advisors Inc.,* 197 F.3d 752, 757 (5th Cir.1999). Where parties have agreed to arbitrate *5 their dispute, they may still seek judicial review of the arbitration award; however, the "court will set that decision aside only in very unusual circumstances." See *First Options,* 514 U.S. at 942. Generally, an arbitration award need only have a foundation in reason or fact. See *Teamsters, Chaffeurs, Warehousemen, Helpers and Food Processors, Local Union v. Stanley Structures, Inc.,* 735 F.2d 903, 905 (5th Cir.1984). Moreover, if the award is rationally inferable from the facts before the arbitrator, it must be affirmed. *Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 214 (5th Cir.1993).

There are a very limited number of grounds upon which a district court may vacate an arbitration award. One of those grounds for vacatur, which is asserted by the appellant, is when the arbitrator exceeded his powers in making the award. 9 U.S.C. § 10(a). When examining whether an arbitrator exceeded his powers, the reviewing court must resolve all doubts in favor of arbitration. *Executone Info. Systems, Inc. v. Davis,* 26 F.3d 1314, 1320-1321 (5th Cir.1994). If the arbitrator's findings are reasonable and supportable by law or custom in the field, then the arbitrator did not exceed his authority. See *Int'l Union of Electrical, Radio & Machine Workers, AFL-CIO-CLC v. Ingram Mfg. Co.,* 715 F.2d 886, 891-892 (5th Cir.1983).

In addition, this Court has recognized certain common law grounds warranting vacatur of an arbitration award. A district court may vacate awards that are arbitrary and capricious, see *Williams,* 197 F.3d at 758, or that are contrary to an explicit, well-defined, and dominant public policy, see *Prestige Ford v. Ford Dealer Computer Servs., Inc.,* 324 F.3d 391, 396 (5th Cir.2003); *Exxon Corp. v. Baton Rouge Oil & Chem. Workers,* 77 F.3d 850, 853 (5th Cir.1996).

An arbitration award may also be vacated if the district court finds that the arbitrator manifestly disregarded the law. In *Prestige Ford v. Ford Dealer Computer Servs., Inc.,* 324 F.3d 391, 395 (5th Cir.2003), this Court adopted the Second Circuit's interpretation of "manifest disregard":

... it clearly means *more than error or misunderstanding* with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator *appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it. Id.* at 396. (Emphasis added).

As indicated, the "manifest disregard of the law" standard is extremely narrow and has limited applicability. *Prestige Ford,* 324 F.3d at 395-396. However, where federal statutory rights are involved, the manifest disregard review must be sufficient to ensure that the arbitrator complied with the statutory requirements at issue. *Williams,* 197 F.3d at 761. This Court set out a two-part test for applying this standard in *Williams v. Cigna. Id.* The reviewing court must determine (1) whether it was manifest that the arbitrator acted contrary to applicable law; and (2) if so, whether upholding the award would result in significant injustice. *Id.* at 762. In other words, even if this Court finds manifest disregard of the law by the arbitrator, the award must still be upheld unless doing so would produce significant injustice. *Id.*

## III. ANALYSIS

On appeal, Duke asserts that the district court erred in confirming the arbitration award. In support of its argument, Duke claims that the following findings and conclusions *6 of the arbitrator manifestly disregarded the law under the test set forth in *Williams,* and were arbitrary and capricious: (1) that ACET suffered antitrust injury, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1                                                                                              Page 6
93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

therefore possessed standing to sue under the Sherman Act; (2) that Duke possessed "monopoly power" in the alleged market; and, (3) that Duke engaged in exclusionary conduct necessary to create liability for monopolization. Duke further contends that the arbitrator exceeded his authority by mandating a contract between the parties in the award, that the contractual award violates antitrust principles, and that the award grants greater relief to ACET than requested.

### A. The Arbitrator's Finding That ACET Suffered "Antitrust Injury"

Duke contends that the district court's confirmation of the arbitration award was erroneous because the arbitrator's finding that ACET suffered antitrust injury was in manifest disregard of the law, and was arbitrary and capricious. Specifically, the arbitrator found that "Duke and [ACET] compete in selling gas-gathering services and in selling gas-processing services in Panola County, Texas," and that
[ACET] and others have *suffered and continue to suffer antitrust injury* in that [ACET] has been denied the opportunity to process additional volumes of gas at a competitive price; [ACET] has lost the opportunity for additional sales of gas processing and gas gathering; others have lost the opportunity to purchase from [ACET], as a *reseller* and bundler of gas processing and gas gathering at a competitive price
(emphasis added).

In suits brought under §§ 1 or 2 of the Sherman Act, this Court has held that standing to sue exists only if a plaintiff shows: (1) injury-in-fact, which is an injury to the plaintiff proximately caused by the defendant's conduct; (2) *antitrust injury;* and (3) proper plaintiff status, meaning that other parties are not better situated to bring suit. *See Doctor's Hosp. of Jefferson, Inc., v. Southeast Med. Alliance, Inc.,* 123 F.3d 301, 305 (5th Cir.1997) (emphasis added). In *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* the Supreme Court described " antitrust injury" as an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.... It should, in short, be the type of loss that the claimed violations ... would be likely to cause." *See* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).

Duke challenges only the second component of standing recited in *Doctor's Hospital*-antitrust injury to the plaintiff. Duke argues that the arbitrator's finding was incorrect because Duke does not compete with ACET. Duke posits that ACET is a mere "reseller" of Duke's processing services, or a "middleman," rather than a "competitor," and could therefore not suffer injury of the type contemplated by the antitrust laws.

In support of its argument that ACET and Duke do not compete, Duke relies heavily on this Court's decision in *Almeda Mall* for the proposition that ACET can not compete with Duke because it is "a mere reseller" of Duke's services. *Almeda Mall, Inc. v. Houston Lighting & Power Co.,* 615 F.2d 343 (5th Cir.1980). In *Almeda Mall,* several shopping malls sued their utility company under the Sherman Act for refusing to allow the malls to install a single electricity meter and then resell the electricity to its tenants. The malls claimed that the utility was denying them their rights to compete in the market by refusing to sell them electricity for resale. *Id.* at 348. This Court found that the malls lacked the antitrust injury necessary*7 to sue under the Sherman Act. We noted that "the Malls generate no electricity. They transmit none." *Id.* at 353. Further, "the activity sought by the appellants is more akin to mere 'substitution' than to competition .... [A]ppellants will merely be plugging themselves into the flow of electricity and reaping profits as a non-competitive middleman." *Id.* at 353-354.

Duke also contends that, if not a reseller, ACET is similar to a distributor of Duke's processing services, and distributors do not compete with suppliers. Duke asserts that "[w]hen a manufacturer elects to market its goods through distributors, the latter are not, in an economic sense, competitors of the producer, even though the producer also markets some of its goods itself." *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.,* 637 F.2d 1001, 1005 (5th Cir.1981).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1                                                                                              Page 7
93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

[1] Notwithstanding these arguments, it is not manifest to this Court that the arbitrator disregarded the applicable law in finding that ACET suffered antitrust injury. The Sherman Act allows "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" to bring suit. 15 U.S.C. § 15(a). Competitor status is not requisite to establish standing. *See Almeda Mall,* 615 F.2d at 354 (the antitrust laws were intended to protect *competition,* not necessarily *competitors* ) (emphasis added). Relief for antitrust claims is not confined "to consumers, or to purchasers, or to competitors, or to sellers ... The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices." *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 472, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982).

Furthermore, the facts in *Almeda Mall* are distinguishable from those in the instant case. In *Almeda Mall,* the malls' proposed contract offered no real advantage to the consumer-the malls added nothing to the market and would not be able to offer consumers a better price for the electricity. *See* 615 F.2d at 353. While ACET does not process gas itself, just as the malls did not produce electricity, the bundled package of services offered by ACET adds to the market a different product than that offered by Duke. Moreover, consumers may benefit from purchasing processing in a package with their gathering services, and ACET is able to offer both services on terms that are profitable to ACET as well as economically valuable to the consumer.

A review of the arbitration record, including the pleadings and exhibits submitted to the arbitrator, transcripts, and the arbitrator's award and findings, indicates that the arbitrator was fully apprised of both parties' arguments, the applicable law, and that he developed an extensive familiarity with the case. The Court concludes that the arbitrator's finding that ACET competes with Duke in the processing market and that ACET suffered antitrust injury is not obviously erroneous, arbitrary, or capricious; nor is it evident to this Court that the arbitrator purposely ignored the applicable law in making the award. FN6 Accordingly, the district court correctly confirmed the arbitration award on this issue.

> FN6. *See Prestige Ford,* 324 F.3d at 396. We do not address the second step of the manifest disregard analysis, namely whether the award will result in significant injustice, because that step is undertaken only when it is first manifest that the arbitrator acted contrary to the applicable law. We likewise will not proceed to the " significant injustice" analysis in the following discussion if it is not warranted by an initial finding of manifest disregard of the law by the arbitrator.

*\*8 B. The Arbitrator's Finding That Duke Possesses Monopoly Power in Panola County*

[2] Duke also contends that the arbitrator manifestly disregarded the law in finding that Duke possesses monopoly power in the gas processing market in Panola County, and that this finding is arbitrary and capricious. Duke asserts that the arbitrator fundamentally misunderstood "monopoly power" and the appropriate market for determining the existence of such power. The record shows, however, that arbitrator in this case was particularly familiar with the applicable antitrust law, the parties, and the historical, procedural, and factual context of the matters in dispute, because he also served as the arbitrator in the First Arbitration involving antitrust claims by ACET against Duke. Furthermore, it was Duke that requested that the instant dispute be referred to arbitration, even after Duke had been found to be a monopolist in Panola County in a previous arbitration before this very arbitrator. Thus, the Court finds unconvincing Duke's argument that the arbitrator misunderstood the meaning of monopoly power.

Moreover, the record indicates that Duke controls approximately 90-95% of all gas processing in Panola County. While high market share, in the absence of significant entry barriers, can " overestimate a firm's market power," *see Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.,* 885 F.2d 683, 695-696 (10th Cir.1989), the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1                                                                                                                  Page 8
93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

Supreme Court has held that it is frequently indicative of monopoly power, *see United States v. Grinnell Corp.*, 384 U.S. 563, 571, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) ("[t]he existence of such [monopoly] power ordinarily may be inferred form the predominant share of the market"). Duke contends there are no barriers to entry into the Panola County market, and that Duke's market power did not prevent ACET from opening its own plant in Panola County. However, ACET presented extensive evidence to the arbitrator in support of its arguments that: the real barrier to entry into the Panola County market was lack of sufficient gas volume to offset the capital expense of a new plant, which ACET argued was a result of Duke's continuation of UPR's "Carthage Vision" contracts; and, that Duke's contract negotiations with ACET illustrated Duke's power to "control prices or exclude competition." *See United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956) (defining "monopoly power" as "the power to control prices or exclude competition"). [FN7]

> FN7. Duke suggests that ACET failed to prove that Duke possessed monopoly power in the relevant market, because ACET did not submit evidence on this issue and relied completely, as did the arbitrator, on the finding in the First Arbitration that Duke held monopoly power. Further, Duke correctly asserts that it retained the right to any preclusive effect the prior arbitration award might have afforded. However, the Court observes that the district court, in its order referring the instant claims to arbitration, specifically permitted the arbitrator to consider the record of the First Arbitration and the trial record.

The Court concludes that it is not manifest that the arbitrator disregarded the law in finding that Duke retained monopoly power in Panola County, and that this finding was not irrational, arbitrary, or capricious. Accordingly, the district court did not err in its confirmation of the arbitration award on this basis.

*C. Arbitrator's Finding That Duke Engaged in "Exclusionary Conduct"*

[3] A finding of monopolization requires proof of exclusionary, anticompetitive conduct. Duke argues that the arbitrator's finding of fact that Duke engaged *9 in exclusionary conduct was in manifest disregard of antitrust law. Duke contends that it did not refuse to deal with ACET, that any purported refusal to deal was based on a lawful business purpose, and that ACET's true complaint was that Duke simply demanded too high a price.

A refusal to deal does not, in itself, constitute an antitrust violation, *see United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919). In *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, the Supreme Court held that even monopolists are free to choose with whom they do business, but that businesses may not refuse to deal with the purpose of creating or maintaining a monopoly. 472 U.S. 585, 602, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985); *Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1115 (5th Cir.1979).

In the recent case of *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, L.L.P.*, 540 U.S. 398, 124 S.Ct. 872, 879-81, 157 L.Ed.2d 823 (2004), the Supreme Court warned that courts must be careful in determining that a business's refusal to deal is based on anticompetitive motives versus a valid business strategy. In *Verizon,* the Court determined that Verizon's refusal to offer certain communications services was not anticompetitive. However, in coming to this conclusion, the Court observed that Verizon's challenged conduct did little to support a suspicion of anticompetitiveness. For example, unlike the defendant in *Aspen Skiing,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), Verizon had no prior course of dealing with its rival that it unilaterally terminated. *Verizon,* 124 S.Ct. at 879-81. Further, the Court emphasized that the presence of a regulatory structure, which monitors and enforces fair dealing in the industry, was of particular importance in determining that there was no anticompetitive harm to Verizon's rival. *Id.* at 881-82. The Court stated that when there is not a built-in regulatory scheme that performs an antitrust function, the benefits of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1
93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

enforcing the antitrust laws are worth its disadvantages. *Id.*

In the present case, the arbitrator found that Duke had engaged in exclusionary conduct, stating that Duke had refused to "negotiate fairly and in good faith" with ACET "in order to prevent [ACET] from competing with Duke ... and in order to maintain a supra competitive price for gas processing in Panola County," and that this refusal to deal represented a "willful maintenance of Duke's monopoly power in the relevant market and a violation of the Sherman Antitrust Act," without any "lawful business justification." *See Taylor Publ'g Co. v. Jostens, Inc.,* 216 F.3d 465, 475 (5th Cir.2000) (the conduct of a business must have a " rational business purpose other than its adverse effects on competitors," or it will be deemed exclusionary). The record shows that ACET presented considerable evidence to the arbitrator that Duke refused to deal with ACET for anticompetitive reasons. Among this evidence was testimony that Duke was concerned that ACET's increased presence in the Panola County market would inject added competition into the market. In addition, ACET submitted evidence to the arbitrator that Duke intentionally excluded ACET from the market, not only by demanding a high price for additional capacity, but also by proposing an array of contract terms that Duke knew were completely unviable to ACET.

Courts admittedly must be cautious in finding exception to the right to refuse to deal. *See Verizon,* 124 S.Ct. at 878-79. However, the Court notes that Duke refused to deal in the context of a prior course of dealing with ACET. Further, *10 there was no regulatory regime in this case to ensure Duke's actions were competitive. *See id.* at 881-82. Having willingly submitted its case to arbitration, Duke left it to the arbitrator to determine whether the protection of the antitrust laws was warranted in this case. The arbitrator made the initial factual findings that Duke was a monopoly, that it refused to deal with ACET by acting in bad faith and offering contract terms that were anticompetitive, and that Duke had no valid business justification for refusing to deal with ACET. Finally, based on the sizable amount of evidence proffered by ACET, the arbitrator found that Duke's exclusionary conduct was illegal under the Sherman Act.

This Court observes that the arbitrator, in coming to its finding, was well-versed in the legal elements that constituted exclusionary, anticompetitive conduct, as well as the facts of the case. The Court concludes that a reasonable arbitrator could have found that Duke's conduct was anticompetitive and in furtherance of its monopoly power under the exception noted in *Aspen Skiing.* Accordingly, this Court determines that the arbitrator's factual finding of exclusionary conduct was not clearly erroneous, nor was it in manifest disregard of the law. The district court was correct in its confirmation of the arbitration award with regard to this finding.

### D. The Arbitrator's Award of a Contractual Remedy

#### 1. Public Policy

[4] Duke further claims that the district court erred in confirming the arbitration award, because the remedy fashioned by the arbitrator violates public policy. The award ordered Duke, by mandatory injunction, to offer ACET a new processing contract for additional capacity under the same terms as the 1997 contract between ACET and UPR, but which incorporated the more competitive prices of the Pennzoil contract cited by ACET in the arbitration proceedings. Duke contends that this contract erects market-entry barriers "through arbitrator-created price controls, effectively thwarting the introduction of competition into the market." In making this argument, Duke principally relies on a legal treatise, which discusses an injunction that required a gas pipeline monopoly to grant capacity to a plaintiff at judicially-determined prices:

Such a solution is nothing less than price regulation of the kind undertaken by regulatory agencies-something for which both the federal courts and the antitrust litigation process are extremely ill-suited and which is, in any event, inconsistent with the antitrust's fundamental "market " orientation to problems of lack of competition.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1 Page 10

93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

The second problem ... is that the order either removes or reduces the plaintiff's incentive to develop its own independent capacity for transporting gas to the market.

3A AREEDA & HOVENKAMP, ANTITRUST LAW (2d ed.2002).

As we have previously noted, this Court does not find error in the findings of the arbitrator that Duke possessed monopoly power, that Duke's contract negotiations with ACET were in bad faith and with the intent "to prevent [ACET] from competing with Duke ... and in order to maintain a supra competitive price for gas processing in Panola County." Thus, the arbitrator found that ACET was unable "to develop its own independent capacity for transporting gas into the market" due to Duke's exclusionary conduct, *see id.,* and that Duke's contract terms and negotiations were actually harming or decreasing competition in Panola County. Rather than thwarting the introduction of competition into the market, as asserted by Duke, the *11 contract set out in the award was created to "restore competition in the market." *See Pac. Coast Agric. Export Assoc. v. Sunkist Growers, Inc.,* 526 F.2d 1196, 1208 (9th Cir.1975) (injunction, which prevented a producer from refusing to sell to qualified exporters, and directing that price be determined by court-devised formula, was well within the court's broad remedial discretion). Further, "[i]njunctive remedies under § 16 of the Clayton Act may be as broad as necessary to ensure that the 'threatened loss or damage' does not materialize or that prior violations do not recur." *Woolen v. Surtran Taxicabs, Inc.,* 801 F.2d 159, 167 (5th Cir.1986).

The Court also notes that Dukes's blanket assertion that, "assuming monopolization of a relevant market, *any* arbitrator-imposed remedy would impact the future of that market for all consumers," is contradicted by Duke's specific request of a contractual remedy (emphasis added). In the pleadings submitted to the arbitrator, Duke explicitly requests that, should the arbitrator grant injunctive relief, that he structure a "new processing contract that contains appropriate and reasonable terms that will remedy the alleged antitrust injury."

Duke proposed that the arbitrator appoint a consultant knowledgeable in the gas market to assist him in determining reasonable contract terms. The arbitrator, however, ultimately decided the appointment of a consultant would result in undue delay and "add nothing to the resolution of the issue." As this arbitrator possessed an intense familiarity with the parties, facts, and particular market at issue, his decision to devise the award without the assistance of a consultant was proper.

Consequently, the Court concludes that the arbitrator heeded the principles of antitrust law in fashioning the contractual award, and that the award does not violate public policy. The district court did not err in confirming the award on these grounds.

*2. Arbitrator's Authority*

[5] Finally, Duke claims that the district court should have vacated the award because the arbitrator exceeded his authority by granting ACET more relief than it requested. Duke asserts that throughout this dispute, ACET asked for a contract that would be exactly like the one UPR granted to Pennzoil. However, the arbitrator ordered a contract containing the lower price of the Pennzoil contract, but having the same terms as the UPR-ACET 1997 contract. Duke argues that the combination of the ACET contract terms with the Pennzoil contract prices made for a contract that is actually more favorable to ACET than the Pennzoil-type contract requested by ACET.

An arbitrator does not exceed his authority as long as his findings are reasonable and supportable by law or custom in the field. *See Int'l Union of Elec., Radio & Machine Workers, AFL-CIO-CLC v. Ingram Mfg. Co.,* 715 F.2d 886, 891-892 (5th Cir.1983); *see also* 9 U.S.C. § 10(a). With regard to relief in antitrust cases, this Court recognizes that injunctive relief may be as broad as necessary to correct or prevent antitrust violations. *See Woolen,* 801 F.2d at 167.

At the close of arbitration, neither Duke nor ACET got everything they petitioned for. ACET did not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Fed.Appx. 1 Page 11
93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271
**(Cite as: 93 Fed.Appx. 1)**

obtain a long-term contract as it requested and which is customary in the gas industry. Duke requested a contractual remedy, and even suggested that an informed party set out contract terms. The mere fact that the arbitrator did not accept the particular contract terms proposed by Duke, and that ACET, as the victim of monopolist conduct, benefitted from the contract set out *12 in the award, does not signify that the contract terms were unreasonable or that arbitrator overstepped his authority. [FN8] Conversely, the Court finds that the arbitrator merely tailored the contractual award to rectify anticompetitive conduct by Duke in the Panola County market. Accordingly, the Court concludes that the district court properly confirmed the arbitration award with regard to the injunctive relief granted by the arbitrator.

> FN8. *But see Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc.,* 607 F.2d 649, 652 (5th Cir.1979) (award of arbitration panel of an unrequested amount of damages that was three times larger than any item claimed was improper).

### IV. CONCLUSION

Based on the forgoing analysis, the Court concludes that the district court did not err in confirming the arbitration award. The arbitrator was mindful of and adhered to the applicable law, and did not exceed his authority. The arbitrator's findings at issue on appeal were neither arbitrary or capricious, nor violated public policy. As a result, this Court AFFIRMS the district court's confirmation of the arbitration award.

AFFIRMED.

C.A.5 (Tex.),2004.
American Cent. Eastern Texas Gas Co. v. Union Pacific Resources Group, Inc.
93 Fed.Appx. 1, 2004 WL 136091 (C.A.5 (Tex.)), Util. L. Rep. P 14,491, 2004-1 Trade Cases P 74,271

Briefs and Other Related Documents (Back to top)

- 2003 WL 23525965 (Appellate Brief) Reply Brief of Appellants (Jul. 28, 2003) Original Image of this Document (PDF)
- 2003 WL 23525964 (Appellate Brief) Brief of Appellees (Jun. 26, 2003) Original Image of this Document (PDF)
- 2003 WL 23525966 (Appellate Brief) Brief of Appellants (Mar. 28, 2003) Original Image of this Document (PDF)
- 02-41010 (Docket) (Jul. 17, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.