# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | MDL Docket No. 05-MD-1717-JJF<br>Civil Action No. 1:05-CV-00485-JJF<br><br>Judge Joseph J. Farnan, Jr. |

## THE NATIONAL PLAINTIFFS GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL AND LIAISON COUNSEL AND IN OPPOSITION TO THE SAN FRANCISCO GROUP'S MOTION FOR CONSOLIDATION AND APPOINTMENT OF CO-LEAD COUNSEL AND LIAISON COUNSEL

Fred Taylor Isquith
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Robert D. Goldberg
**BIGGS AND BATTAGLIA**
921 North Orange Street, P.O. Box 1489
Wilmington, Delaware 19899
Telephone: (302) 655-9677
Facsimile: (302) 655-7924

*Proposed Liaison Counsel for*
*the National Plaintiffs Group*

Mary Jane Edelstein Fait
Adam J. Levitt
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001

Francis M. Gregorek
Betsy C. Manifold
Francis A. Bottini, Jr.
Rachele R. Rickert
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, California 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

*Proposed Interim Class Counsel for*
*the National Plaintiffs Group*

**Dated:** January 24, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     PRELIMINARY STATEMENT .................................................................................1

II.    PERTINENT FACTS AND PROCEDURAL HISTORY.................................................4

III    ARGUMENT .............................................................................................................7

       A.     The Court Should Appoint Interim Class Counsel
              Who Will Best Represent the Interests of the Proposed Class(es) ..........................7

       B.     Wolf Haldenstein Will Fairly And Adequately Represent
              The Interests Of The Proposed Classes As Interim Class Counsel ........................9

              1.     Wolf Haldenstein Has Already Done Considerable Work in
                     Identifying and Investigating Potential Claims in this Area....................10

              2.     Wolf Haldenstein Has Experience and Expertise in Handling
                     Class Actions, Complex Litigation and Antitrust Claims.........................11

              3.     Wolf Haldenstein Will Commit the Resources
                     Necessary to Represent the Proposed Classes ..........................................15

              4.     The National Plaintiff Group's Attorney Fee Proposal .............................16

       C.     Wolf Haldenstein Is A Better Choice As Interim Class Counsel Than The
              (At Least) Four-Firm Structure Proposed By The San Francisco Group .............16

              1.     Wolf Haldenstein's Proposed Leadership Is More Efficient
                     Than the San Francisco Group's Proposed Leadership Structure .............16

              2.     The San Francisco Group Lacks Standing To Assert Certain
                     Claims .....................................................................................................19

       D.     Biggs and Battaglia Is Well-Suited To Serve As Liaison Counsel.......................22

IV.    CONCLUSION.........................................................................................................22

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                <u>Page(s)</u>

*Allee v. Medrano*,
 416 U.S. 802 (1974)................................................................20

*Bell v. Ascendant Solutions, Inc.*,
 Case No. 3:01-CV-0166-P, 2002 U.S. Dist LEXIS 6850
 (N.D. Tex. April 17, 2002) ......................................................17

*Coleman v. General Motors Acceptance Corp.*,
 220 F.R.D. 64 (M.D. Tenn. 2004) .............................................8

*In re Comdisco Securities Litigation*,
 150 F. Supp. 2d 943 (N.D. Ill. 2001) ..................................13, 14

*In re Copper Tubing Litigation*,
 Case No. 04-2771-CV,
 slip op., (W.D. Tenn. Feb. 7, 2005) ........................................11

*In re Cree, Inc. Securities Litigation*,
 219 F.R.D. 369 (M.D.N.C. 2003) ............................................11

*In re Electronic Data Systems Corp. Securities Litigation*,
 226 F.R.D. 559 (E.D. Tex. 2005),
 *aff'd, Feder v. Electronic Data Systems Corp.*,
 429 F.3d 125 (5th Cir. 2005) ....................................................8

*Friedman v. Rayovac Corp.*,
 219 F.R.D. 603 (W.D. Wis. 2002) ...........................................17

*Harrington v. City of Albuquerque*,
 222 F.R.D. 505 (D.N.M. 2004) ...............................................10

*Illinois Brick Co. v. Illinois*,
 431 U.S. 720 (1977).................................................................2

*LaBauve v. Olin Corp.*,
 231 F.R.D. 632 (S.D. Ala. 2005) .......................................20, 21

*LeBeau v. United States*,
 222 F.R.D. 613 (D.S.D. 2004) .................................................15

*In re Luxottica Group, S.p.A. Securities Litigation*,
 No. 01-CV-3285, 2004 WL 2370650
 (E.D.N.Y. Oct. 22, 2004)...................................................11, 13

*Lyon v. Caterpillar, Inc.*,
    194 F.R.D. 206 (E.D. Pa. 2000)........................................................................19

*In re MictroStrategy Securities Litigation*,
    150 F. Supp. 2d 896 (E.D. Va. 2001) ............................................................14

*In re Milestone Scientific Securities Litigation*,
    187 F.R.D. 165 (D.N.J. 1999)........................................................................17

*Paramount Communications v. QVC Network*,
    637 A.2d 34 (Sup. Ct. Del. 1994) .................................................................14

*Prado-Steiman v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ....................................................................21

*In re Scrap Metal Antitrust Litigation*,
    No. 1:02-CV-0844, 2002 WL 31988203
    (N.D. Ohio Aug. 5, 2002) ...............................................................................8

*Simon v. E. Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976)........................................................................................20

*Smith v. AON Corp. (In re AON ERISA Litigation)*,
    No. 04-C-6875,
    slip op., (N.D. Ill. May 3, 2005) ......................................................... *passim*

*Terazosin Hydrochloride Antitrust Litigation*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..............................................19, 20, 21

*In re Toys R Us Antitrust Litigation*,
    191 F.R.D. 347 (E.D.N.Y. 2000) ..................................................................11

*Tylka v. Gerber Products Co.*,
    182 F.R.D. 573 (N.D. Ill. 1998).....................................................................19

*Vincelli v. National Home Health Care Corp.*,
    112 F. Supp. 2d 1309 (M.D. Fla. 2000)..........................................................17

**STATUTES AND RULES**

Federal Rules of Civil Procedure
    Rule 23(g)(1)(C)(i)...........................................................................................................7, 8
    Rule 23(g)(2)(A) ...............................................................................................................7

**OTHER AUTHORITIES**

*Federal Practice and Procedure*,
    Charles A. Wright, Arthur R. Miller & Mary K. Kane
    (3d ed. 2005)
    § 1785.1....................................................................................................................20

Manual for Complex Litigation (Fourth) (2004)
    § 10.221...................................................................................................................18
    § 10.224................................................................................................................8, 18

Report of the Civil Rules Advisory Committee
    (May 20, 2002)..........................................................................................................9

# I.  PRELIMINARY STATEMENT

Pursuant to the Court's January 10, 2006 Order, the plaintiffs comprising the National Plaintiffs Group (as defined below),[1] by their counsel, respectfully submit this memorandum in support of their motion under Rule 23(g) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to appoint Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Interim Class Counsel and Biggs and Battaglia as Liaison Counsel in this consolidated action; and in opposition to the procedurally defective "Motion for Consolidation and for Appointment of Co-Lead Counsel and Liaison Counsel" (the "San Francisco Motion"), prematurely filed on November 10, 2005, by the "San Francisco Group" – a four-firm proposed leadership group with

---

[1]  The National Plaintiffs Group is comprised of the following named plaintiffs (identified by state), in each of following actions, filed in this Court:  **(a)** Jim Kidwell (Arizona), Mary Reeder (Ohio), John Maita (New Jersey), JWRE, Inc. (Nebraska), Chrystal Moeller (Nebraska), and Caresse Harms (Nebraska), named plaintiffs in ***Kidwell, et al. v. Intel Corp.***, No. 05-470, filed in the District of Delaware on July 6, 2005;  **(b)** Robert J. Rainwater (Michigan), Kathy Ann Chapman (Minnesota), and Sonia Yaco (Wisconsin), named plaintiffs in ***Rainwater, et al. v. Intel Corp.***, Case No. 05-473, filed in the District of Delaware on July 7, 2005;  **(c)** James Volden (Iowa), Charles Dupraz (South Dakota), Vanessa Z. DeGeorge (North Carolina), Melissa Goeke (Maine), James R. Conley (North Dakota), Nancy Bjork (North Dakota), Tom Kidwell (Kansas), and Jeff Vaught (Kansas), named plaintiffs in ***Volden, et al. v. Intel Corp.***, Case No. 05-488, filed in the District of Delaware on July 13, 2005;  **(d)** Ficor Acquisition Co., LLC, dba Mills & Greer Sporting Goods (Vermont), Richard Caplan (Washington, D.C.), Maria Pilar Salgado (Florida), Paula Nardella (Massachusetts), Nancy Wolfe (Alabama), Leslie March (Louisiana), Tom Hobbs (Tennessee), Andrew Marcus (New York), and Virginia Deering (West Virginia), named plaintiffs in ***Ficor Acquisition Corp., et al. v. Intel Corp.***, Case No. 05-515, filed in the District of Delaware on July 21, 2005;  **(e)** Bill Richards (Mississippi), Ron Terranova (Nevada), and Carl Yamaguchi (Hawaii), in the action captioned ***Richards, et al. v. Intel Corp.***, No. 05-672, filed in the District of Delaware on September 14, 2005;  **(f)** David Kurzman, in the action captioned ***Kurzman v. Intel Corp.***, No. 05-710, filed in the District of Delaware on September 29, 2005; and **(g)** Giacobbe-Fritz Fine Art LLC (New Mexico), in the action captioned ***Giacobbe-Fritz Fine Art LLC v. Intel Corp.***, No 05-846 (JJF), filed in the District of Delaware on December 7, 2005, and is supported by each of the 22 law firms listed on the signature block at the end of this pleading.

an undisclosed number of additional firms on various subcommittees who have agreed to support those lead firms' position here.[2]

The National Plaintiffs Group comprises a cohesive group of more than 30 plaintiffs and 22 law firms. Each of the plaintiffs in the National Plaintiffs Group: (a) resides in a state which has enacted *Illinois Brick* "repealer" legislation,[3] which enables indirect purchasers residing in those states to bring actions under those states' antitrust or deceptive trade practice statutes, or otherwise permits indirect purchaser claims; and (b) seeks to represent separate, state-specific indirect purchaser classes, alleging indirect purchaser antitrust, deceptive trade practice, and other claims, from those states where such claims may be brought and privately prosecuted.

In contrast, the San Francisco Group – which prematurely filed a "co-lead counsel" motion of its own – is merely a politically-predicated amalgam of predominantly West Coast-based law firms whose named plaintiffs do not represent each of the indirect purchaser states, allege less than all potential claims on behalf of their proposed class, ***and whose named***

---

[2]  The "San Francisco Group" refers to the plaintiffs and law firms that filed the San Francisco Motion on November 10, 2005. The proposed four co-lead counsel in that group are the San Francisco firms of Saveri & Saveri, Inc. and The Furth Firm, the Seattle office of Hagens Berman Sobol Shapiro LLP, and the Washington, D.C. firm of Cohen Milstein Hausfeld & Toll, P.L.L.C. The San Francisco Group prematurely filed its procedurally improper "lead plaintiff" motion on November 10, 2005 – two months before the Court granted leave to file Rule 23(g) interim class counsel motions. The San Francisco Group's four-way proposed interim class counsel structure not only includes three West Coast firms and a Washington, DC firm, but also a yet undisclosed multiplicity of additional law firms on various committees or subgroups who have been promised positions in this action by the leaders of the San Francisco Group, regardless of the actual staffing needs that this case may present.

[3]  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the United States Supreme Court held that only direct purchasers of goods may sue an upstream producer under the federal antitrust laws. Since the Supreme Court's *Illinois Brick* ruling, however, approximately 25 states have either: (a) enacted so-called *Illinois Brick* "repealer" statutes, which expressly allow indirect purchasers to pursue claims and recover damages under their own states' antitrust laws (or, in some instances, their deceptive trade practice acts); or (b) the courts in those states have held that indirect purchasers have standing to pursue claims under those statutes.

*plaintiffs lack standing to allege the state law claims they assert in their various complaints*. Notwithstanding these serious deficiencies in their strategy, approach, and state-by-state representation, the San Francisco Group seeks to assert leadership over all indirect purchaser claims. The San Francisco Group's position is legally untenable and goes to the heart of the adequacy determination that must be made in appointing interim class counsel pursuant to Fed. R. Civ. P. 23(g). Indeed, under the San Francisco Group's proposed representative framework, a Texas plaintiff – who lacks the legal right under Texas law to bring an indirect purchaser antitrust action against Intel – asserts claims on behalf of, *inter alia*, North Dakota computer purchasers under North Dakota's indirect purchaser antitrust laws. Such an approach is both legally and procedurally unsupportable.

In addition to the standing problems that plague the San Francisco Group's submission, the San Francisco Group's motion is defective on its face due to the fact that it seeks appointment of "Co-Lead Counsel" pursuant to Fed. R. Civ. P. 23(g) – *despite the fact that Rule 23(g) does not provide for any such appointment*. Rather, as the Court is aware, Rule 23(g) establishes a procedure for the appointment of Interim Class Counsel at an early stage of a case and prior to class certification – which is evidently not what the San Francisco Group is seeking.[4] Since the San Francisco Group's motion seeks relief under a Federal Rule that does not provide the desired relief, the San Francisco Group's defective "Co-Lead Counsel" motion is void *ab initio* and should be denied without further inquiry.

---

[4] Indeed, consistent with this view and in keeping with the San Francisco Group's disregard of the Federal Rules of Civil Procedure and the Local Rules of this District, rather than comport with the plain language of Rule 23(g), the San Francisco Group, without submitting their clients to the scrutiny of discovery, seeks to short-circuit the entire class counsel selection process set forth in Rule 23 by asking the court to appoint them "co-lead plaintiffs' counsel" in these cases.

For all these reasons, and as further explained below, the National Plaintiffs Group respectfully requests that the Court appoint Wolf Haldenstein as Interim Class Counsel and Biggs and Battaglia as liaison counsel in these actions.

## II.  PERTINENT FACTS AND PROCEDURAL HISTORY

On June 27, 2005, Advanced Micro Devices, Inc. ("AMD") filed a complaint against Intel. In its complaint, AMD alleges that Intel Corporation ("Intel"), by virtue of its allegedly wrongful conduct, monopolized the x86 computer microprocessor market and, as a result, violated Section 2 of the Sherman Act, 15 U.S.C. § 2, as well as Section 17045 of the California Business and Professions Code.

On July 6, 2005, six of the plaintiffs comprising the National Plaintiffs Group (Jim Kidwell, Mary Reeder, John Maita, JWRE, Inc., Chrystal Moeller, and Caresse Harms) filed the first class action complaint in this Court, alleging that Intel unlawfully monopolized the market for its microprocessors and that consumers who purchased computers containing Intel microprocessors were overcharged or paid supra-competitive prices as a result thereof.[5]  Shortly thereafter, the other plaintiffs comprising the National Plaintiffs Group filed four similar class action complaints in this Court, each pleading individual state law classes under the applicable laws of additional states which permit indirect purchaser actions.  Contemporaneously, the first of the San Francisco Group's federal complaints were filed in the United States District Court for

---

[5] This first-filed Delaware indirect purchaser class action complaint alleges claims on behalf of citizens of Arizona, Ohio, Nebraska, and New Jersey, and pleads separate state classes, respectively represented by each of the named plaintiffs, under their own states' laws.  *See* footnote 1 (*supra*).

the Northern District of California.[6]    Ultimately, the San Francisco Group filed twenty complaints in the Northern District of California, one in the United States District Court for the Eastern District of Tennessee,[7] and one in the United States District Court for the Southern District of Florida.[8]  On July 8, 2005, the San Francisco Group filed the first of its 24 complaints in the United States District Court for the District of Delaware, alleging claims on behalf of *nationwide* classes without standing to do so (*see infra*).

Nevertheless, on July 11, 2005, the San Francisco Group filed a motion with the Judicial Panel on Multidistrict Litigation (the "MDL Panel") seeking the transfer and consolidation of the related federal actions against Intel (including its Delaware-filed actions) to the United States District Court for the Northern District of California.  The National Plaintiffs Group opposed transfer of these cases to the Northern District of California.  On August 2, 2005, the National Plaintiffs Group filed its Cross-Motion to Transfer and Coordinate or Consolidate for Pretrial Proceedings in the District of Delaware, Pursuant to 28 U.S.C. § 1407, with the MDL Panel, arguing that this Court – and not the Northern District of California – was the appropriate forum for these cases.

Subsequent to the MDL Panel's responsive pleading deadline, the San Francisco Group reversed its position and supported the National Plaintiffs Group's position to transfer and

---

[6] *Lipton v. Intel Corporation*, Case No. C:05 2669, was filed in the United States District Court for the Northern District of California, by one of the firms comprising the San Francisco Group, on June 29, 2005.

[7] *Armbrister v. Intel Corporation*, Case No. 2:05-cv-212, was filed in the United States District Court for the Eastern District of Tennessee at Greenville, on August 19, 2005.

[8] *Schwartz v. Intel Corporation*, Case No. C:05-22262, was filed in the United States District Court for the Southern District of Florida by one of the firms comprising the San Francisco Group on August 16, 2005.

consolidate these cases before this Court – a position that the Wolf Haldenstein firm advocated to the MDL Panel at the September 29, 2005 hearing on the matter.

By Order dated November 8, 2005, the MDL Panel transferred all the pending related cases against Intel to this Court for coordinated or consolidated pretrial proceedings (the "MDL Transfer Order").  Thus, there are presently before the Court more than sixty indirect purchaser class action lawsuits against Intel, on behalf of almost 100 plaintiffs, represented by an almost equal number of law firms.

On November 10, 2005, just two days after the MDL's issuance of its Transfer Order, and in violation of this Court's procedures and the Local Rules,[9] the San Francisco Group filed its motion seeking consolidation of the related class actions pursuant to Fed. R. Civ. P. 42(a) and appointment of its proposed four-firm group as co-lead counsel.

The National Plaintiffs Group believes that Rule 42(a) consolidation of these actions is appropriate to ensure that this litigation proceeds in an orderly and coordinated manner – which will benefit the Court and the parties.  While the Court should also appoint interim class counsel in this action, the San Francisco Group's leadership proposal – setting aside its myriad substantive and procedural defects – is not in the best interests of the proposed classes.  The San

---

[9] In its rush to the courthouse, the San Francisco Group also failed to comply with D. Del. LR 7.1.1, which requires that counsel filing a non-dispositive motion must also file "a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with the opposing attorneys on the matters set forth in the motion."  While the San Francisco Group did attach such a form to its motion papers, it failed to engage in the required Rule 7.1.1 processes.  Specifically, while the San Francisco Group states that it conferred with its supporters ("the undersigned counsel has discussed the Motion for Appointment for Lead Counsel with counsel for the class plaintiffs identified herein"), the San Francisco Group did not confer with counsel for the National Plaintiffs Group – despite being on notice, since, at least August 2005, that the National Plaintiffs' Group intended to seek appointment as Interim Counsel in these cases, pursuant to Fed. R. Civ. P. 23(g).  Not only did the San Francisco Group fail to engage in this important and mandatory procedural process, but, as more fully set forth below, the San Francisco Group has refused to engage in any efforts with the National Plaintiffs Group to reach agreement on these important case leadership and management issues.

Francisco Group's leadership proposal benefits the four proposed lead law firms, and its undisclosed committees of supporters, rather than the interests of the named plaintiffs and the proposed classes that they represent. We respectfully submit that the Court should appoint Wolf Haldenstein as Interim Class Counsel. As demonstrated below, appointing Wolf Haldenstein Interim Class Counsel is in the best interests of the proposed Classes because the firm: (a) satisfies the criteria for appointment under Rule 23(g), including the factors identified by the Court in its January 10, 2006 Order; and (b) would better represent the interests of the proposed Classes than would the overpopulated, lawyer-driven co-lead structure proposed by the San Francisco Group.

## III.  ARGUMENT

### A.    The Court Should Appoint Interim Class Counsel Who Will Best Represent the Interests of the Proposed Class(es)

Fed. R. Civ. P. 23(g)(2)(A) authorizes the Court to "designate interim class counsel  to act on behalf of the putative class before determining whether to certify the action as a class action."  As the Committee Notes to the 2003 amendments to Rule 23 point out, designation of interim class counsel is appropriate because:

> [I]t will usually be important for an attorney to take action to prepare for the certification decision.  The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination.  It may also be important to make or respond to motions before certification . . . . Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf of the putative class before the class certification decision is made.

Fed. R. Civ. P. 23(g)(1) directs the Court to appoint class counsel who will "fairly and adequately represent the interests of the class."  The Rule further states that the Court must consider the following factors in appointing class counsel:

- the work counsel has done in identifying or investigating potential claims in the action,

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

- counsel's knowledge of the applicable law, and

- the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).  *See also In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 571 (E.D. Tex. 2005), *aff'd, Feder v. Elec. Data Sys. Corp.*, 429 F. 3rd 125 (5th Cir. 2005) ("In making [a class counsel] appointment, there are a variety of factors the court should consider. The court must consider: counsel's work in identifying or investigating the class's claims; counsel's class action, complex litigation, and similar claims experience; counsel's knowledge of the applicable law; and counsel's resources committed to class representation.") (citing Fed. R. Civ. P. 23(g)(1)(C)(i)).   In addition, the Court may "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Id. As the court noted in *Coleman v. General Motors Acceptance Corp.,* 220 F.R.D. 64, 100 (M.D. Tenn. 2004), "the primary responsibility of the class counsel, resulting from an appointment as such, is to represent the best interests of the class."

The Manual for Complex Litigation specifically cautions against "[d]eferring to proposals by counsel without independent examination, even those that seem to have the concurrence of the majority of those affected . . . ." Manual for Complex Litigation (Fourth) (the "Manual") § 10.224 (2004).  *See also In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844 2002 WL 31988203, at * 1 (N.D. Ohio Aug. 5, 2002) (rejecting the "negotiated deal among counsel," noting that "the Manual warns the Court against accepting deals of counsel at face value without making an independent evaluation").

**B.    Wolf Haldenstein Will Fairly And Adequately Represent
The Interests Of The Proposed Classes As Interim Class Counsel**

The San Francisco Group offers no rationale for adopting their proposed leadership structure apart from asserting that the firms comprising that group have many years of antitrust class action experience and the many of the counsel involved in this litigation have acquiesced to their appointment.[10]    The National Plaintiffs Group does not dispute that the four firms proposed by the San Francisco Group to lead these cases include longstanding members of the class action bar and are capable attorneys.[11]    One of the purposes underlying the 2003 amendments to Rule 23, however, was to provide – by the enactment of Rule 23(g) – a mechanism for choosing class counsel who would best represent the interests of the class without regard to negotiated deals or political arrangements among plaintiffs' proposed class counsel.    As the May 20, 2002 report of the Civil Rules Advisory Committee noted, under the new Rule 23(g) "the criteria for appointment are supplemented by provisions designed to reduce the risk that an ingrown class bar will fence out counsel whose knowledge of the law and experience in the subject matter promise effective representation . . . ."

As detailed below, Wolf Haldenstein satisfies the criteria for selection as Interim Class Counsel set forth in Rule 23(g) and will fairly and adequately represent the interests of the individual indirect purchaser state classes they seek to represent in this action.

---

[10] Because the members of the San Francisco Group have, on the one hand, said they were promised positions in the case, but, on the other hand, have failed to disclose specifically those promises and work commitments – promises that were made without considering the actual work needs of this case or the interests of the plaintiffs the San Francisco Group represents – the Court will be unable to fairly and accurately analyze whether support for the San Francisco Group is based on the interests of the plaintiffs and the proposed class(es) or the political and economic ends of the attorneys and law firms involved.

[11] Indeed, of the "combined total of more than 130 years litigating antitrust actions," of which the San Francisco Group boasts, *see* San Francisco Group's Memorandum of Law at 4, one attorney in that group accounts for more than 55 of those years on his own.

    1.    **Wolf Haldenstein Has Already Done Considerable Work in**
              **<u>Identifying and Investigating Potential Claims in This Action</u>**

Rule 23(g) requires that in considering a motion for appointment as interim class counsel, the court must consider the work undertaken by that counsel in the case. *See, e.g., Smith v. AON Corp.,* No. 04-C-6875 (N.D. Ill. May 3, 2005) Opinion at 2 (appointing Wolf Haldenstein as Interim Class Counsel, concluding that the Firm had "committed considerable time and resources into investigating [the] claims") (a copy of the court's opinion is attached hereto as Exhibit A); *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004) (appointing class counsel who had "done significant work in [the] case").  As stated in the accompanying Declaration of Fred Taylor Isquith ("Isquith Decl."), Wolf Haldenstein has already spent hundreds of hours and tens of thousands of dollars researching and identifying the claims at issue; conducting industry research; cooperating and working with counsel for AMD, as well as with counsel comprising the San Francisco Group; drafting and discussing a Discovery Coordination Agreement with AMD's counsel; discussing the terms and parameters of a confidentiality stipulation; and engaging in discussions with industry and economic consultants. Isquith Decl., ¶ 8.

In an effort to accelerate the prosecution of this litigation, the National Plaintiffs Group offered to cooperate with the San Francisco Group, without prejudice to the Court's ultimate decision on the Rule 23(g) issue with respect to case leadership.  To that end, in August 2005, representatives of the National Plaintiffs Group traveled to a meeting in Washington, D.C. to try to reach an accommodation or *modus vivendi* prior to the Court's setting of a schedule relating thereto.  It became readily apparent, however, that that meeting was an effort by the San Francisco Group for its coronation, rather than a dialogue.  Notwithstanding that fact, subsequent to that meeting the National Plaintiffs Group has repeatedly offered to meet with the San

Francisco Group to draft case management documents and to coordinate the plaintiffs' efforts in these cases amongst themselves and with counsel for AMD. The San Francisco Group has rejected – and continues to reject – all these offers out of hand.

Based upon their efforts investigating, organizing, coordinating, and prosecuting this case to date, Wolf Haldenstein satisfies the first criteria under Rule 23(g) for selection as Interim Class Counsel.

### 2.  Wolf Haldenstein Has Experience and Expertise in Handling Class Actions, Complex Litigation and Antitrust Claims

Courts applying Rule 23(g) have placed great emphasis on proposed class counsel's experience and knowledge of the applicable law. *See, e.g., In re Copper Tubing Litig.*, Case No. 04-2771-DV (W.D. Tenn. Feb. 7, 2005) (appointing Wolf Haldenstein interim co-lead counsel, based on the Firm's "significant experience in handling complex class actions and prosecuting similar claims for class members in other cases"); *In Re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 351 (E.D.N.Y. 2000) (where the firm served as co-lead counsel and liaison counsel, Judge Gershon wrote: "Class counsel are highly skilled and experienced and can fairly and adequately represent the interests of the class."); *In re Luxottica Group, S.p.A. Sec. Litig., No. 01-CV-3285* 2004 WL 2370650, at *5 (E.D.N.Y. Oct. 22, 2004) (selecting Wolf Haldenstein as lead class counsel based on the Firm's "experience and expertise"); *In re Cree, Inc. Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C. 2003) (appointing class counsel in a securities case where firm had "extensive experience in representing institutional investors in securities actions throughout the country and . . . long been heavily engaged in securities and corporate litigation.").

As more fully demonstrated by its firm resume, a copy of which is attached to the Declaration of Fred Taylor Isquith in Support of the National Plaintiffs Group's Motion for Appointment of Interim Class Counsel and Liaison Counsel as Exhibit A, Wolf Haldenstein is

among the most experienced class action law firms in the United States, having represented

plaintiffs in numerous nationwide class actions, including antitrust class actions and other

complex, large-scale litigations throughout the United States.  Isquith Decl., ¶¶ 4-7.  In several

major antitrust class actions – including several pending actions – Wolf Haldenstein has been

selected to serve as lead or co-lead counsel.  Currently, Wolf Haldenstein is acting as interim co-

lead counsel in *In re Elevator Antitrust Litig.*, Case No. 04-cv-1178 (S.D.N.Y.), and *In re*

*Copper Tubing Litig.*, Case No. 04-2771-DV (W.D. Tenn.), and is serving as co-lead counsel in

*In re Sulfuric Acid Antitrust Litig.*, MDL No. 1536 (N.D. Ill); *In re Dynamic Random Access*

*Memory (DRAM) Antitrust Litig.*, MDL No. 1486 (N.D. Cal.); *In re Initial Public Offering*

*Antitrust Litig.*, No. 01-cv-2014 (S.D.N.Y.); and a series of thirteen class action lawsuits against

E.I. DuPont de Nemours and Company, Pioneer Hi-Bred International, and Monsanto Company,

that were recently consolidated in the United States District Court for the Eastern District of

Missouri, under the first filed action, presently captioned *Schoenbaum v. E.I. DuPont de*

*Nemours and Co. al.*, No. 4:05-CV-01108-ERW 20054 U.S. Dist. LEXIS 34278 (E.D. Mo. Dec.

20, 2005)).  Isquith Decl., ¶ 4.[12]  These responsibilities, however, do not overstretch Wolf

---

[12] Several of these cases have reported opinions.  *See, e.g.*, *In re Copper Tubing Litig.*, No. 04-2771, 2005 WL 1631034 (W.D. Tenn. July 6, 2005) (ruling on dismissal motions, denying majority thereof); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351 (ND. Ill. 2005) (plaintiffs' motion to compel discovery granted in part; defendants' motion to strike denied); *In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527 (N.D. Ill. 2005) (motion to compel); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331 (N.D. Ill. 2005) (plaintiffs' motions to compel granted in part); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320 (N.D. Ill. 2005) (plaintiffs' motions to compel granted in part); *In re Sulfuric Acid Antitrust Litig.*, MDL No. 1536, 2005 WL 1994105 (N.D. Ill. Aug. 19, 2005) (defendants' motion to compel Rule 30(b)(6) depositions of named plaintiffs denied); *In re Sulfuric Acid Antitrust Litig.*, MDL No. 1536, 2004 WL 769376 (N.D. Ill. Apr. 9, 2004) (plaintiffs' motion to compel denied); *In re DRAM Antitrust Litig.*, MDL No. 1486, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) (court dismissed certain defendants, denied defendants' dismissal motions with respect to others and denied plaintiffs' request for jurisdictional discovery); *Billing v. Credit Suisse First Boston Ltd.* (*In re Initial Public Offering Antitrust Litigation*), 426 F.3d 130 (2d Cir. 2005) (vacating District Court's dismissal and remanding for further proceedings); (continued…)

Haldenstein's capacity or ability to serve as Interim Class Counsel here due to its size and depth of resources.

Wolf Haldenstein has also played important roles in numerous other recent antitrust litigations, including *Elliot Franklin v. Smithkline Beecham Corp. d/b/a GlaxoSmithKline, P.L.C., et al.*, CA No. 02-10671-RCL (D. Mass.) (Relafen patent monopolization); *In re Carbon Black Antitrust Litig.*, No. 03-CV-10191, M.D.L. No. 1543 2005 U.S. Dist. LEXIS 20561 (D. Mass. Sept. 8, 2005) (horizontal price fixing); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 229 F.R. D. 35 (D. Me. 2005) (Canadian export antitrust litigation); *Nick Ceh v. U-Haul Int'l, Inc.*, C.A. 02 CV 01977H (S.D. Cal.) (price fixing antitrust litigation); *Westwood Auto., Inc. v. Akzo Nobel Coatings, Inc., et al.*, C.A. No. 3:01 CV 435-S (W.D. Ky.) (automotive paint price fixing).  Isquith Decl., ¶¶ 5-6.

Indeed, In *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005), Judge Young recently praised Wolf Haldenstein for its competence and expertise in protecting the class.

The Firm's qualifications to serve as class counsel have been recognized by the courts in other cases as well.  In *In re Aon ERISA Litigation*, Case No. 04 C 6875 (N.D. Ill.), for example, the court appointed Wolf Haldenstein Interim Class Counsel, noting, "Wolf meets [the Rule 23(g)] criteria . . . . Wolf is experienced in handling complex, large-scale class actions.  Wolf's Class Action Litigation Group consists of 30 attorneys experienced in complex class action suits." Opinion at 2 (*see* Exhibit A).  *See also In re Luxottica Group, S.p.A.*, 2004 WL 2370650,

_____
(…continued)

*In re Initial Public Offering Antitrust Litig.*, No. 01-2014, 2004 WL 789770 (S.D.N.Y. Apr. 13, 2004) (Sherman Act plaintiffs' motion for partial reconsideration of the court's dismissal ruling denied); *In re Initial Public Offering Antitrust Litig.*, 287 F.Supp.2d 497 (S.D.N.Y.2003) (granting defendants' motion to dismiss).

at *5 ("The court has no reason to doubt the experience and expertise of Wolf Haldenstein"); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 951 (N.D. Ill. 2001) (noting that Wolf Haldenstein's credentials "are impeccable");[13]  *In re MicroStrategy Sec. Litig.*, 150 F. Supp. 2d 896, 903 (E.D. Va. 2001) (in case where Wolf Haldenstein was co-lead counsel, Judge Ellis commented "Clearly, the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition they enjoy."); *Paramount Commc'n v. QVC Network,*  637 A.2d 34, 37 n.2 (Sup. Ct. Del. 1994) (in case where Wolf Haldenstein was co-lead counsel for the Paramount shareholders, the Supreme Court of Delaware noted "its appreciation of . . . the professionalism of counsel in this matter in handling this expedited litigation with the expertise and skill which characterize Delaware proceedings of this nature," and further "commended the parties for their professionalism in conducting expedited discovery, assembling and organizing the record, and preparing and presenting very helpful briefs, a joint appendix, and oral argument.").

Moreover, Wolf Haldenstein's attorneys who practice in the Firm's antitrust and class action practice groups have litigated in these areas for more than thirty years.[14]  In addition to the

---

[13]   In recently granting final approval to the settlement of the *Comdisco* action, Judge Shadur further recognized the high level of Wolf Haldenstein's work  in a difficult case, stating:

> [T]he efforts that have been expended on behalf of the plaintiff class in the face of these obstacles were exemplary. And in my view they reflected the kind of professionalism that the critics of class actions ... are never willing to recognize.... I really cannot speak too highly of the services rendered by class counsel [Wolf Haldenstein] in an extraordinarily difficult situation...

*Transcript of Proceedings Before the Honorable Milton I. Shadur, Judge at 3, In re (Comdisco, NO. 01-C-2110 (N.D. Ill. July 14, 2005) (Shadur, J.).*

[14]   If Wolf Haldenstein chose to engage in the aggregation exercise undertaken by the San Francisco Group to inflate their years of experience (*see, e.g.*, Footnote 12, *supra*) – an approach that neither Wolf Haldenstein, nor this Court, should condone – the aggregate years of Wolf Haldenstein's' class action litigation experience would number in the hundreds.

antitrust actions listed above, Wolf Haldenstein attorneys have also served among the lead or co-lead counsel teams in *In re Infant Formula Antitrust Litig.*, MDL No. 878 1992 U.S. Dist. LEXIS 21982 (N.D. Fla. Feb. 28, 1992); *In re Brand Name Prescription Drugs Antitrust Litig.*, MDL No. 940 (N.D. Ill.); *In re Cheese Antitrust Litig.*, No. 96-C-391 (Cook County, Ill.); and *In Re Toys R Us*, 191 F.R.D. at 351, Isquith Decl., ¶ 7.

Wolf Haldenstein's ample experience in prosecuting antitrust and other complex class action litigations makes it well-qualified to serve as interim lead class counsel, thereby satisfying that aspect of the Rule 23(g) analysis.

**3. Wolf Haldenstein Will Commit the Resources
   Necessary to Represent the Proposed Classes**

As required by Rule 23(g), courts have also considered the resources that proposed class counsel will commit to the prosecution of the lawsuit. *LeBeau v. United States*, 222 F.R.D. 613, 619 (D.S.D. 2004) ("In considering the resources that counsel will commit to represent the class, the Court may consider the staff, supplies and professional commitments of that attorney") (citation omitted).

To date, Wolf Haldenstein has already expended hundreds of hours of attorney time and tens of thousands of dollars independently investigating and pursuing the claims asserted in this litigation, including conferring with economic and industry consultants, and will continue to do so until this matter is resolved. Isquith Decl., ¶¶ 8-9. Wolf Haldenstein is a large and successful law firm with more than 70 attorneys practicing in various concentrations of the law, including 35 attorneys (and ten paralegals) in its Complex Litigation Group, which includes its nationally-recognized class action practice. Isquith Decl., ¶ 3. The Firm has offices located across the United States, in New York, Chicago, San Diego, and West Palm Beach – a significant advantage in litigating a case that is, like this one, nationwide in scope. Isquith Decl., ¶ 3. Wolf

Haldenstein has both the ability and the willingness to expend the financial and manpower resources necessary to prosecute this litigation on behalf of the proposed classes. Isquith Decl., ¶ 8. *See In re Aon ERISA Litigation,* Opinion at 2 ("Wolf is a large firm, with offices in New York, Chicago, San Diego, and West Palm Beach. Wolf thus has the resources to adequately represent the putative class members in this case.") (*see* Exhibit A, *supra*). Based on the foregoing, Wolf Haldenstein clearly satisfies the criteria for appointment as Interim Class Counsel and will "fairly and adequately represent the interests of the class," as required under Rule 23(g).

    **4.   The National Plaintiff Group's Attorney Fee Proposal**

The Court's January 10, 2006 Order requested that attorneys seeking appointment as interim class counsel pursuant to F.R.C.P. 23(g) set forth "attorney fee proposals, rates, and percentages that applicants expect to seek if the litigation succeeds in creating a common fund," *January 10, 2006 Order* at 2. In compliance with the Court's Order, the National Plaintiffs Group has contemporaneous submitted its fee proposal for the Court's *in camera* review. While the National Plaintiff Group believes its fee proposal is in the best interests of the Classes, it also points out that the Court cannot appoint counsel to serve as interim class counsel whose clients do not have standing to be class representatives. As demonstrated in Section III.C.2 *infra*, the plaintiffs in the San Francisco Group lack such standing. Therefore, their counsel should not be appointed interim class counsel, regardless of the nature of the fee proposal they submit.

**C.    Wolf Haldenstein Is A Better Choice As Interim Class Counsel Than The (At Least) Four-Firm Structure Proposed By The San Francisco Group**

    **1.   Wolf Haldenstein's Proposed Leadership Is More Efficient Than the San Francisco Group's Proposed Leadership Structure**

The National Plaintiffs Group is seeking appointment of Wolf Haldenstein as sole Interim

Class Counsel in this consolidated action.[15]   In contrast, the San Francisco Group makes no attempt to justify or establish the need for the appointment of not less than four law firms to guide the prosecution of this litigation on behalf of the proposed class(es).   Courts have become increasingly skeptical of the wisdom of multi-firm structures given their potential for duplication of effort and fees, patronage rewarding, and inefficiency.   *See, e.g.*, *Vincelli v. National Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1319 (M.D. Fla. 2000) (rejecting proposal for five member executive committee, noting that "Lead Plaintiffs have not demonstrated how the possible benefits derived from appointing several lead counsel outweigh the complications and increased costs and expenses associated with the litigation by committee approach); *In re Milestone Sci. Sec. Litig.*, 187 F.R.D. 165, 178-181 (D.N.J. 1999) (rejecting the executive committee proposed by Cohen, Milstein and others, noting that "approval of several lead counsel may precipitate friction and a lack of coordination among counsel" and concluding that "there is no reason to burden the Plaintiff Class with additional counsel fees, delay or confusion which would result from the appointment of multiple counsel").   This is ***exactly*** what the San Francisco Group – with its bloated leadership tier and undisclosed secondary law firm tiers – is trying to do here.

---

[15]   This is not to say that Wolf Haldenstein will use only its own resources to litigate this action.   Rather, as the case develops, Wolf Haldenstein will form an *ad hoc* law firm by drawing on the resources of other firms who have filed cases in these coordinated proceedings, using the attorneys from those firms most capable of dealing with particular problems and issues that arise at the time that they arise, balancing the demands of specific, case-related projects with those of plaintiffs' counsel most skilled and best-suited to undertake and successfully complete those projects.   *See, e.g,, Friedman v. Rayovac Corp.*, 219 F.R.D. 603, 606 (W.D. Wis. 2002) (citing *In re Wells Fargo Sec. Litig.*, 156 F.R.D. 223, 227 (N.D. Cal. 1994) (class counsel can, as necessary "farm[] out work on the case to another law firm because of specialized knowledge, geographic proximity to witnesses or evidence or other comparative advantages.); *Bell v. Ascendant Solutions, Inc.*, Case No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850, at *22-23 (N.D. Tex. April 17, 2002) (Allowing appointment of one firm as lead counsel and noting that lead counsel is permitted to distribute non-duplicative work assignments to non-lead counsel to facilitate the orderly and efficient prosecution of the case and to spread the risk of the litigation).

The Manual specifically warns against unwieldy and superfluous leadership structures, emphasizing that "[c]ommittees of counsel can sometimes lead to substantially increased costs, and . . . unnecessary duplication of efforts." Manual, § 10.221. The Manual further states that "[w]hile it may be appropriate and possibly beneficial for several firms to divide work among themselves, such an arrangement should be necessary, not simply the result of a bargain among the attorneys." Manual, § 10.224.

The San Francisco Group fails to explain the rationale underlying their proposed leadership structure – including what purportedly unique or distinguishing characteristics of each of the four proposed "co-lead counsel" firms is not available from each of those firms individually. On this point, the San Francisco Group's silence is deafening and again underscores the fact that their proposed leadership structure clearly the result of a deal among counsel, has ***nothing*** to do with the experience of the counsel or the benefit of the class(es), and is neither necessary nor beneficial to the prosecution of this litigation.

This situation is reminiscent of the Rule 23(g) leadership contest in *In re Aon ERISA Litigation*, No. 04 CV 6875 (N.D. Illinois). In that case, Judge Norgle, of the United States District Court for the Northern District of Illinois, rejected a multi-headed proposed leadership structure – including a four-way co-lead counsel team which included the Cohen Milstein firm, one of the leaders of the San Francisco Group here) – and instead appointed Wolf Haldenstein as the sole interim class counsel therein. In so ruling, Judge Norgle rejected the multi-firm leadership proposal, which he concluded "would surely result in bureaucratic entanglements that would hamper the efficient representation of the class," in favor of appointing Wolf Haldenstein, holding that "Wolf, as a single firm, would be able to provide streamlined, efficient representation to the class." Opinion at 2 (*see* Exhibit A). This situation is no different. Indeed,

18

as set forth above, other courts throughout the United States have also repeatedly rejected bloated proposed leadership structures, such as that presently proposed by the San Francisco Group.

### 2.    The San Francisco Group Lacks Standing To Assert Certain Claims

Like the National Plaintiffs Group, the San Francisco Group asserts claims based, *inter alia*, on various state antitrust and consumer fraud statutes. The similarity, however, ends there. While the National Plaintiffs Group asserts claims on behalf of putative class members of separately-pleaded state classes, from states permitting indirect purchaser litigation, under the statutes of those states in which the representative plaintiffs reside, the San Francisco Group asserts claims on behalf of nationwide classes under statutes in states where the representative plaintiffs do not reside, did not purchase their Intel-equipped computers, did not suffer antitrust or other injury – and, in many instances, on behalf of plaintiffs from states that prohibit indirect purchaser actions.[16] In other words, the San Francisco Group lacks standing to assert many of the state law claims they allege on behalf of the class – a clear death blow to its adequacy to serve as Interim Class Counsel here.[17]

---

[16] The National Plaintiffs Group's review of the San Francisco Group's complaints revealed that that group asserts claims under the state statutes of, *inter alia*, Arizona, Nebraska, Michigan, Iowa, South Dakota, North Carolina, Maine, Kansas, Alabama, Louisiana, West Virginia, Mississippi, Nevada and Hawaii – ***even though none of their representative plaintiffs are alleged to reside or have purchased an Intel-equipped computer in any of those states*** (*see infra*).

[17] Courts have generally restricted the scope of state consumer fraud and deceptive practices statutes to claims by residents and those injured within the state. *See, e.g., Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D. Pa. 2000) ("State consumer fraud acts are designed to either protect state residents or protect consumers engaged in transactions within the state."); *Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573, 577 (N.D. Ill. 1998) (limiting the class in an action brought under the Illinois Consumer Fraud and Deceptive Trade Practices Act to those who were Illinois consumers or had purchased the items in Illinois). *See also Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (concluding that the antitrust statutes of Arizona, Maine, Minnesota, Mississippi, New Jersey, New Mexico, North Carolina, North Dakota, South Dakota and West Virginia provided a right of action only as to conduct (continued…)

Courts have held that class representatives must have standing in order to assert claims on behalf of a class. "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong and purport to represent'." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). *See also Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) ("a person cannot predicate standing on injury which he does not share."); *LaBauve v. Olin Corp.*, 231 G/T/F/ 632. 29 (S.D. Ala.) ("Simply put, a plaintiff cannot represent a class unless he first shows that he has standing to raise the claims of the class he seeks to represent."); *cf.* 7AA Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1785.1 (3d ed. 2005) ("standing . . . frequently appear[s] as [a] threshold requirement[] for the maintenance of federal class actions and must be considered in addition to the requirements of Rule 23 when deciding whether a particular action may be certified").[18]

---

(…continued)

affecting commerce in those states). Under the plain language of the court's opinion in *Terazosin Hydrochloride*, the fact that the San Francisco Group lacks plaintiff representation in, *inter alia*, Arizona, Maine, Mississippi, North Carolina, South Dakota, and West Virginia, should be fatal to their Rule 23(g) efforts from the outset – since this clear absence of coverage bespeaks the San Francisco Group's adequacy problems here.

[18]  In addition, by seeking to represent a nationwide class under, *inter alia*, laws specific to the indirect purchaser states, without having named plaintiffs from each those states, the San Francisco Group has created an inherent conflict of interest that again underscores the manner in which it has placed its interests ahead of those of its clients. Indeed, by pursuing claims that their clients lack standing to bring, the San Francisco Group is placing at risk the state law claims of its clients with standing to bring those claims. In other words, the San Francisco Group has created a situation where they are forcing their own clients to trade off their viable claims for the risk of prosecuting claims that will be subject to dismissal on standing and related procedural grounds.

The court in *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000), directed the trial court to determine whether at least one named representative of each class had standing for each asserted claim, emphasizing that "it is well-settled that prior to certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." Similarly, in *Terazosin Hydrochloride*, 160 F. Supp. 2d 1365, the court dismissed claims asserted on behalf of a class under the antitrust statutes of several states where no named plaintiffs were designated that suffered injury in those states. The court emphasized that "'it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, *each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim*.'" *Id.* at 1371 (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (emphasis in original).

Not only do the plaintiffs the San Francisco Group seeks to represent lack standing to assert many of the state law claims they seek to pursue on behalf of the class, but a closer look at the composition of the purported "60 plaintiffs" the San Francisco Group claims to represent reveals how truly unrepresentative they truly are. Indeed, of the San Francisco Group's purported "60 plaintiffs": **(a)** nine are from states that either lack *Illinois Brick* repealer legislation or do not permit indirect private rights of action thereunder (Kentucky (1); Texas (2); Washington (2); Montana (1); Delaware (1); and Pennsylvania (2)); and **(b)** of the San Francisco Group's remaining 51 plaintiffs, 21 are from California; eight are from New York; seven are from Florida; four from New Jersey; three from Wisconsin; two from Tennessee; two from Minnesota; and one each from Washington, DC, North Dakota, Ohio, Vermont, and

21

Massachusetts – ***thereby leaving Arizona, Hawaii, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, North Carolina, South Dakota, and West Virginia unrepresented by any plaintiff with standing to assert claims under those states' laws on behalf of indirect purchaser consumers therein***.

In contrast, the standing of the plaintiffs comprising the National Plaintiffs Group, with representative plaintiffs from the indirect purchaser states seeking to represent the injured consumers in their respective states, is not in doubt because there is a named plaintiff designated for each state as to which a claim is asserted.  Wolf Haldenstein is, therefore, capable of actually representing the interests of the named plaintiffs and the proposed classes than are the firms comprising the San Francisco Group.

**D.**    **Biggs And Battaglia Is Well-Suited To Serve As Liaison Counsel**

In light of the firm's many years of experience litigating complex cases in federal and state court – a fact confirmed by its firm resume, a copy of which is attached hereto as Exhibit B – Biggs and Battaglia is clearly well-suited to serve as liaison counsel in this litigation.  The National Plaintiffs Group thus respectfully requests that the Court appoint Biggs and Battaglia as liaison counsel in this consolidated action.

## IV.  CONCLUSION

For all of the foregoing reasons, the members of the National Plaintiffs Group respectfully requests that the Court grant their cross-motion and enter an Order consolidating these cases and appointing Wolf Haldenstein Adler Freeman & Herz LLP as Interim Class Counsel and Biggs and Battaglia as Liaison Counsel over the cases comprising the consolidated action.  A draft order is submitted herewith.

**DATED:**  January 24, 2006

**BIGGS AND BATTAGLIA**

 /s/ Robert D. Goldberg
Robert D. Goldberg
921 North Orange Street
P.O. Box 1489
Wilmington, Delaware  19899
Telephone:  (302) 655-9677
Facsimile:  (302) 655-7924

***Proposed Liaison Counsel for the***
***National Plaintiffs Group***

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
Fred Taylor Isquith
270 Madison Avenue
New York, New York  10016
Telephone:  (212) 545-4600
Facsimile:   (212) 545-4653

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC
Mary Jane Edelstein Fait
Adam J. Levitt
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone:  (312) 984-0000
Facsimile:   (312) 984-0001

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
Francis M. Gregorek
Betsy C. Manifold
Francis A. Bottini, Jr.
Rachele R. Rickert
750 B Street, Suite 2770
San Diego, California  92101
Telephone:  (619) 239-4599
Facsimile:   (619) 234-4599

***Proposed Interim Class Counsel for***
***the National Plaintiffs Group***

Ann Lugbill
2406 Auburn Avenue
Cincinnati, Ohio  45219
Tel:  (513) 784-1280
Fax:  (513) 784-1449
***Counsel for Mary Reeder***

Brandon N. Voelker
28 West 5th Street
Covington, Kentucky  41011
Tel:  (859) 491-5551
Fax:  (859) 491-0187
***Counsel for Mary Reeder***


Gene Summerlin
OGBORN, SUMMERLIN
  & OGBORN, PC
210 Windsor Place
330 South Tenth Street
Lincoln, Nebraska  68508
Tel:  (402) 434-8040
Fax:  (402) 434-8044
***Counsel for JWRE, Inc., Chrystal Moeller, and Caresse Harms***


Robert J. Sharkey
VANDERVOORT, CHRIST
  & FISHER, PC
Fifth Third Bank Building, Suite 312
67 West Michigan Avenue
Battle Creek, Michigan  49017
Tel:  (269) 965-7000
Fax:  (269) 965-0646
***Counsel for Robert J. Rainwater***


Richard A. Lockridge
Robert K. Shelquist
LOCKRIDGE GRINDAL
  NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota  55401
Tel:  (612) 339-6900
Fax:  (612) 339-0981
***Counsel for Kathy Ann Chapman,***
***Nancy Bjork, Ron Terranova, and Carl Yamaguchi***

Noah Golden-Krasner
LAW OFFICES OF NOAH
 GOLDEN-KRASNER
354 West Main Street
Madison, Wisconsin  53703
Tel:  (608) 441-8924
Fax:  (608) 442-9494
***Counsel for Sonia Yaco***

Tim Semelroth
RICCOLO & SEMELROTH, PC
425 Second St. SE, Ste 1140
Cedar Rapids, Iowa  52401
Tel:  (319) 365-9200
Fax:  (319) 365-1114
***Counsel for Ryan James Volden***

Robert J. Rubin, PA
RUBIN & STROUT, PA
480 West Street
Rockport, Maine  04856
Tel:  (207) 236-8260
Fax:  (207) 236-4981
***Counsel for Melissa Goeke***

Charles F. Speer
Donnamarie Landsberg
SPEER LAW FIRM, PC
104 W. 9th Street, Suite 305
Kansas City, Missouri  64105
Tel: (816) 472-3560
Fax:  (816) 421-2150
***Counsel for Jeff Vaught***

Dennis J. Johnson
JOHNSON & PERKINSON
1690 Williston Road
South Burlington, Vermont  05403
Tel:  (802) 862-0030
Fax:  (802) 862-0060
***Counsel for Ficor Acquisition Co., LLC,***
***dba Mills & Greer Sporting Goods***

Peter G. Gruber
PETER G. GRUBER, P.A.
One Datran Center, Suite 910
9100 South Dadeland Boulevard
Miami, Florida  33156
Tel:  (305) 670-1010
Fax:  (305) 670-0228
**Counsel for Maria Pilar Salgado**

Nancy Freeman Gans
MOULTON & GANS, P.C.
33 Broad Street, Suite 1100
Boston, Massachusetts  02109
Tel:  (617) 369-7979
Fax:  (617) 369-7980
**Counsel for Paula Nardella**

Richard J.R. Raleigh Jr.
WILMER & LEE, P.A.
100 Washington Street, Suite 200
Huntsville, Alabama  35801
Tel:  (256) 533-0202
Fax:  (256) 533-0302
**Counsel for Nancy Wolfe**

Jayne Goldstein
MAGER & GOLDSTEIN LLP
2825 University Drive, Suite 350
Coral Springs, Florida  33065
Tel:  (954) 341-0844
Fax:  (954) 341-0855
**Counsel for Leslie March, Virginia Deering,
and Giacobbe-Fritz Fine Art LLC**

Carol A. Mager
MAGER & GOLDSTEIN LLP
One Liberty Place, 21st Floor
Philadelphia, Pennsylvania  19103
Tel:  (215) 640-3280
Fax:  (215) 640-3281
**Counsel for Leslie March, Virginia Deering,
and Giacobbe-Fritz Fine Art LLC**

Van Bunch
BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, PC
57 Carriage Hill
Signal Mountain, Tennessee  37377
Tel:  (423) 886-9736
***Counsel for Tom Hobbs***

Barry C. Blackburn
THE BLACKBURN LAW FIRM, PLLC
6933 Crumpler Boulevard, Suite B
P.O. Box 70
Olive Branch, Mississippi
Tel:  (662) 895-6116
Fax:  (662) 895-6121
***Counsel for Bill Richards***

Greg McEwen
THE MCEWEN LAW FIRM, P.L.L.C.
5850 Blackshire Path
Inver Grove Heights, Minnesota  55076
Tel:  (651) 224-3833
Fax: (651) 223-5790
***Counsel for Ron Terranova***

Jerold T. Matayoshi
FUKUNAGA MATAYOSHI HERSHEY
  & CHING, LLP
Davies Pacific Center, Suite 1200
841 Bishop Street
Honolulu, Hawaii  96813
Tel:  (808) 533-4300
Fax:  (808) 531-7585
***Counsel for Carl Yamaguchi***

Patrick J. Murphy
MURPHY, SMALL & ASSOCIATES
1100 East Bridger Avenue
Las Vegas, Nevada  89101
Tel:  (702) 259-4600
Fax:  (702) 259-4748
***Counsel for Ron Terranova***

David Pastor
GILMAN AND PASTOR, L.L.P
60 State Street, 37th Floor
Boston, Massachusetts  02109
Tel:  (617) 742-9700
Fax:  (617) 742-9701
**_Counsel for David Kurzman_**

427047

## CERTIFICATE OF SERVICE

I, Robert D. Goldberg, undersigned counsel of record, hereby certify that on January 24, 2006, I caused a copy of the attached **THE NATIONAL PLAINTIFFS GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL AND LIAISON COUNSEL AND IN OPPOSITION TO THE SAN FRANCISCO GROUP'S MOTION FOR CONSOLIDATION AND APPOINTMENT OF CO-LEAD COUNSEL AND LIAISON COUNSEL** to be served on the following in the manner indicated:

## VIA ELECTRONIC FILING

**David Mark Balabanian**
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
Email: david.balabanian@bingham.com

**Jef Feibelman**
Burch Porter & Johnson
130 N. Court Ave.
Memphis, TN 38103
901-524-5000
Email: jfeibelman@bpjlaw.com

**Jerry W. Laughlin**
Rogers Laughlin Nunnally Hood & Crum
100 South Main St.
Greeneville, TN 37743
423-639-5183
Email: jlaughlin2@earthlink.net

**Joy K. Fuyuno**
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111
415-393-2000
Email: joy.fuyuno@bingham.com

**Richard L. Horwitz**
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
Email: rhorwitz@potteranderson.com

**Christopher B. Hockett**
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111
415-393-2000
Email: chris.hockett@bingham.com

**Daniel S. Floyd**
Pro Hac Vice
Email: dfloyd@gibsondunn.com

**Darren B. Bernhard**
Pro Hac Vice
Email: bernhardd@howrey.com

**Robert E. Cooper**
Pro Hac Vice
Email: rcooper@gibsondunn.com

**David William Gregory**
Prickett, Jones & Elliott, P.A.
1310 King St., P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
Email: dwgregory@prickett.com

**Eric M. Andersen**
Prickett, Jones & Elliott, P.A.
1310 King St., P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
Email: emandersen@prickett.com

**James L. Holzman**
Prickett, Jones & Elliott, P.A.
1310 King St., P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
Email: jlholzman@prickett.com

**A. Zachary Naylor**
Chimicles & Tikellis, LLP

One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
(302) 656-2500
Email: zacharynaylor@chimicles.com


**Fred T. Isquith**
Wolf Haldenstein Adler Freeman & Herz
270 Madison Ave., 11th Floor
New York, NY 10016
(212) 545-4600
Email: Isquith@whafh.com

**Adam L. Balick**
Balick & Balick
711 North King Street
Wilmington, DE 19801-3503
(302) 658-4265
Email: abalick@balick.com

**Chad Michael Shandler**
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 658-6541
Email: shandler@rlf.com

**Charles P. Diamond**
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Email: CDiamond@omm.com

**Frederick L. Cottrell, III**
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 658-6541
Email: cottrell@rlf.com

**Steven J. Fineman**
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 658-6541

Email: fineman@rlf.com

**Linda J. Smith**
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Email: lsmith@omm.com


**Mark A. Samuels**
O'Melveny & Meyers LLP
1999 Avenue of the Stars
7th Floor
Los Angeles, CA 90067
Email: MSamuels@omm.com

**James Gordon McMillan, III**
Bouchard Margules & Friedlander
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
Email: jmcmillan@bmf-law.com

**Steve W. Berman**
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101
Email: steve@hbsslaw.com

**Garrett D. Blanchfield, Jr.**
Richard Wendorf & Blanchfield
E-1250 First National Bank Building
332 Minnesota St.
St. Paul, MN 55101
Email: g.blanchfield@rwblawfirm.com

**Jeffrey F. Keller**
Law Offices of Jeffrey F. Keller
425 Second St., Suite 500
San Francisco, CA 94107
415-543-1305
Email: jfkeller@kellergrover.com

**Michele C. Jackson**
Lieff Cabraser Heimann & Bernstein LLP
Embarcadero Center West
275 Battery St., 30th Floor
San Francisco, CA 94111
Email: mjackson@lchb.com

**Michael P. Lehmann**
Furth Firm LLP
225 Bush St.
15th Floor
San Francisco, CA 94104
(415) 433-2070
Email: mlehmann@furth.com

**R. Alexander Saveri**
Saveri & Saveri Inc.
111 Pine St., Suite 1700
San Francisco, CA 94111
Email: rick@saveri.com

**Bruce J. Wecker**
Hosie & McArthur
1 Market St.
Spear Street Tower
Suite 2200
San Francisco, CA 94105
Email: bwecker@hosielaw.com

**Francis O. Scarpulla**
Law Offices of Francis O. Scarpulla
44 Montgomery St.
Suite 3400
San Francisco, CA 94104
415-788-7210
Email: foslaw@pacbell.net

**Ali Oromchian**
Finkelstein Thompson & Loughran
601 Montgomery Street, Suite 665
San Francisco, CA 94111
415-398-8700
Email: ao@ftllaw.com

**Juden Justice Reed**
Schubert & Reed LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
415-788-4220
Email: jreed@schubert-reed.com

**Joseph M. Patane**
Law Office of Joseph M. Patane
2280 Untion St.
San Francisco, CA 94123
415-563-7200

Email: jpatane@tatp.com

**Maria Nunzio Alioto**
Trump Alioto Trump & Prescott LLP
2280 Union St.
San Francisco, CA 94123
415-563-7200
Email: malioto@tatp.com

**Nancy Fineman**
Cotchett Pitre Simon & McCarthy
840 Malcolm Rd., Suite 200
Burlingame, CA 94010
650-697-6000
Email: nfineman@cpsmlaw.com

**Donald Chidi Amamgbo**
Amambgo & Associates APC
1940 Embarcadero Cove
Oakland, CA 94606
510-434-7800
Email: DonaldAmambgo@Citycom.com

**Reginald Von Terrell**
The Terrell Law Group
223 25th Street
Richmond, CA 94804
510-237-9700
Email: REGGIE2@aol.com

**David Boies, III**
Straus & Boies LLP
4041 University Dr., 5th Floor
Fairfax, VA 22030
703-764-8700
Email: dboies@straus-boies.com

**Donald F. Drummond**
Drummond & Associates
One California St., Suite 300
San Francisco, CA 94111
415-433-2261
Email: ballen@drummondlaw.net

**Gordon Ball**
Ball & Scott
550 Main Avenue, 750 NationsBank Center
Knoxville, TN 37902
865-525-7028
Email: filings@ballandscott.com

**B.J. Wade**
Glassman Edwards Wade & Wyatt P.C.
26 N. Second St.
Memphis, TN 38103
901-527-4673
Email: bwade@gewwlaw.com

## VIA FIRST CLASS MAIL

**Harvey W. Gurland**
Duane Morris
200 S. Biscayne Blvd., Suite 3400
Miami, FL 33131

**Richard A. Ripley**
Bingham McCutchen
1120 20th Street, NW Suite 800
Washington, DC 20036
202-778-6150

**Michael J. Beck**
Clerk, MDL Judicial Panel
One Columbus Circle, N.E.
Room G-255, Federal Judiciary Bldg
Washington, DC 20002-8004

**Daniel Hume**
Kirby McInerney & Squire L.L.P.
830 Third Avenue, 10th Floor
New York, NY 10022

**Randy R. Renick**
128 North Fair Oaks Avenue
Suite 204
Pasedena, CA 91103
626-585-9608

**Scott Ames**
Serratore & Ames
9595 Wilshire Blvd.
Suite 201
Los Angeles, CA 90212
310-205-2460

**Daniel B. Allanoff**
Meredith Cohen Greenfogel & Skirnick P.C.
117 South 17th St.
22nd Floor
Architects Building
Philadelphia, PA 19103
215-564-5182

**Craig C. Corbitt**
Zelle Hofmann Voelbel Mason & Gette LLP
44 Montgomery Street
Suite 3400
San Francisco, CA 94104
415-693-0700

**Douglas G. Thompson, Jr.**
Finkelstein Thompson & Loughran
1050 30th St., N.W.
Washington, DC 20007

**Donald L. Perelman**
Fine Kaplan & Black RPC
1835 Market St.
28th Floor
Philadelphia, PA 19103
215-567-6565

**Russell M. Aoki**
Aoki Sakamoto Grant LLP
One Convention Place
701 Pike St., Suite 1525
Seattle, WA 98101
206-624-1400

**Edward A. Wallace**
The Wexler Firm LLP
One North LaSalle St.
Suite 2000
Chicago, IL 60602
312-346-2222

**Lance A. Harke**
Harke & Clasby LLP
155 South Miami Ave., Suite 600
Miami, FL 33130

**Michael L. Kirby**
Kirby Noonan Lance and Hoge
600 West Broadway
Suite 1100
San Diego, CA 92101-3302
619-231-9593

 /s/ Robert D. Goldberg
Robert D. Goldberg (I.D. #631)