IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation, | Civil Action No. 05-441-JJF |
| Plaintiffs, | |
| vs. | |
| INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation, | |
| Defendants. | |
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | MDL No. 05-1717-JJF |

**STIPULATION AND PROPOSED ORDER  REGARDING DOCUMENT
PRODUCTION**

WHEREAS, this action was commenced on June 27, 2005 by plaintiffs Advanced Micro

Devices, Inc. and AMD International Sales & Service, Ltd. (hereafter jointly, "AMD") against

defendants Intel Corporation and Intel Kabushiki Kaisha (hereafter jointly, "Intel"); and

WHEREAS, AMD and Intel have been negotiating a protocol to govern the initial

production of documents in this action, and now desire to enter into an agreement setting forth

the terms of that protocol.

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN AMD AND

INTEL, THROUGH THEIR RESPECTIVE COUNSEL AND SUBJECT TO THE APPROVAL

OF THE COURT, AS FOLLOWS:

1.    AMD and Intel have agreed to a "custodian" based approach to the production of

documents in response to Intel's First, Second and Third Requests for Production of Documents

RLF1-3014282-1

and AMD's First, Second and Third Requests for Production of Documents (hereinafter, the parties' "Initial Document Requests") in this case. Within 5 court days after entry of this Order in MDL No. 1717-JJF the parties will exchange Custodian Lists accompanied by the following representation:

> After reasonable investigation, [AMD/Intel] hereby represents that the individuals listed below are believed to comprise all of its and its subsidiaries' personnel in possession of an appreciable quantity of non-privileged, material, non-duplicative documents and things responsive to Request Nos. ___ of [AMD/Intel]'s Initial Document Requests in the custody of individual custodians (as opposed to corporate or organization-level requests or shared files or databases). This Custodian List includes any former employee as to whom [AMD/Intel] or its subsidiaries have retained responsive documents and things. [AMD/Intel] hereby commits to promptly supplement this Custodian List upon discovery of any additional custodians who have been omitted from this Custodian List. [AMD/Intel] further represents that it has not knowingly excluded from its Custodian List any person known or believed to possess documents harmful to its claims or defenses in this case.

Intel represents that its Custodian List will include no fewer than 1000 custodians. AMD represents that its Custodian List will include no fewer than 400 custodians.

2.    Not later than 5 court days after entry of this Order in MDL No. 1717-JJF, each party will designate no fewer than 20% of the custodians on its own Custodian List whose paper and electronic files will be reviewed and produced in the first instance in response to the other's Initial Document Requests ("Party-Designated Production Custodian List"). The Party-

RLF1-3014282-1

2

Designated Production Custodian Lists will be prepared in good faith after the exercise of reasonable diligence in ascertaining the likely scope of documents in the custody of those individuals on the list. The Party-Designated Production Custodian List shall constitute a representation by the party that the individual custodians are believed in good faith to include: (i) the most important custodians with knowledge of the issues framed by the pleadings; (ii) the custodians believed likely to have the most non-privileged, non-duplicative documents responsive to the other party's Initial Document Requests; (iii) the custodians whose files, taken together, constitute a comprehensive response to the other party's Initial Document Requests; and (iv) all persons whom the party then reasonably believes likely to be called by that party as a witness at trial. The parties each acknowledge that the production will not include each and every responsive document, but each party affirms that it will in good faith have attempted to identify custodians, based on the criteria set forth above, to cover all of the other's Initial Document Requests to which it has not objected and also represents that it has not knowingly excluded any particular custodian whose files contain material harmful to its claims or defenses in this action.

3.      Following the exchange of Party-Designated Production Custodian Lists, the parties will cooperate in and complete an informal discovery process in order to elicit information necessary to identify additional custodians whom the discovering party may wish to be included in the initial set of custodians whose files are to be produced in response to its Initial Document Requests. The parties contemplate informal voluntary exchange of information without formal discovery requests, as well as telephonic interviews of a reasonable number of individuals employed by each company with knowledge of the job duties of the persons on the custodian list and the organizational structure of their respective company. The parties agree,

RLF1-3014282-1

that representatives of class counsel may participate in the informal discovery of Intel and further

agree, subject to any changes they may mutually agree to, that: (1) AMD's counsel will take the

lead in conducting the informal discovery; (2) class counsel for the MDL and class counsel for

the California actions each agree to appoint a single representative to participate in the informal

discovery to conduct any follow-up or ask any remaining questions; and (3) one additional

lawyer from the MDL and one additional lawyer from the state actions will be permitted to listen

to, but not participate in, the informal discovery. The parties agree that if in-house legal counsel

or paralegals are utilized for informal discovery or for a 30(b)(6) deposition, no information

provided will constitute a waiver of the attorney client privilege or forfeiture of attorney work

product protection. The parties further agree to meet and confer in good faith if either party

believes the contemplated informal discovery is insufficient. The parties agree that the informal

discovery will not include merits discovery and will not be counted against any limits on such

discovery. The parties anticipate that the informal discovery can be conducted in a 30-60 day

time period. At either party's election, this informal discovery process may be supplemented

upon completion with a formal F.R.C.P. 30(b)(6) deposition of the other party limited to those

topics reasonably necessary to identify and ascertain the past and current job duties and reporting

relationships of additional custodians whom the discovering party may wish to be included in the

initial set of custodians whose files are to be produced. In addition to the informal discovery

process and F.R.C.P. 30(b)(6) deposition, AMD or Intel may also request that the parties work in

good faith on a stipulation to memorialize the steps taken to identify custodians. At any time

during  this process of informal discovery, F.R.C.P. 30(b)(6) testimony, and/or a stipulation

between the parties is concluded, each party may present  lists of additional custodians not

included on the other's Party-Designated Production Custodian List whose files will be produced

in response to its Initial Document Requests. These lists, in total, are to be limited to not more than 15% of the persons identified on the other's Custodian List, and shall be called the "Adverse Party-Designated Production Custodian List."

4.      The Party-Designated Production Custodian Lists and Adverse Party-Designated Production Custodian Lists will be used to limit the number of custodians whose files are to be produced in the first instance in response to the parties' Initial Document Requests. However, these lists are without prejudice to each party's right to request in good faith production from additional custodians, or from other employees or former employees (*i.e.*, individuals not identified on an adverse party's Custodian List). At any time, for any reason, Intel may request production of documents responsive to its Initial Document Requests from up to 50 additional custodians on AMD's Custodian List, and, at any time, for any reason, AMD may request production of documents responsive to its Initial Document Requests from up to 100 additional custodians on Intel's Custodian List, plus either party may receive production from any additional custodians who were for any reason omitted from the other party's Custodian List and that based on the criteria in this stipulation should have been included thereon. Any further requests for production of documents responsive to a party's Initial Document Requests from additional custodians shall require a showing of good cause. The parties agree that once a Scheduling Order is in place, they will negotiate in good faith a date certain to cut-off any additional or supplemental document production absent a compelling showing of need.

5.      In the absence of a showing of neglect or bad faith, a party's failure to have designated a particular individual on its Custodian List or Party-Designated Production Custodian List will not constitute a basis for seeking a delay in the Case Management or Scheduling Order in place at the time of the request for a designation of an additional custodian.

The parties agree that the non-privileged responsive documents of any employee or former employee whom a party determines at any point during discovery is likely to be a witness at trial will be produced promptly after that likelihood is recognized, without special request by the other party, sufficiently in advance of the discovery cut-off so as to enable that person to be deposed, and without regard to whether that person has previously been identified on any Custodian List, Party-Designated Production Custodian List, or Adverse Party-Designated Production Custodian List. Each party also recognizes and agrees that it is obliged to institute document retention procedures for all such persons if not previously instituted. The parties further agree that nothing herein is intended to relieve them of their superseding obligations under Rule 26(a)(1)(B), and, consistent with the provisions of paragraph 26 of the Stipulation Between AMD and Intel Regarding Electronic Discovery and Format of Document Production, any documents a party is otherwise obliged to produce pursuant to Rule 26(a)(1)(B) will be promptly produced without special request, and without regard to the identity of the custodian of such documents or whether such custodian was previously identified on any Custodian List, Party-Designated Production Custodian List, or Adverse Party-Designated Production Custodian List.

6.      The parties agree that for any person who is not designated a custodian whose files are to be produced under paragraphs 2 and 3 above and as to whom a retention order has been put in place, documents existing as of the date the additional custodians contemplated in paragraph 3 are selected will continue to be preserved, but the party will otherwise be relieved of ongoing document retention obligations for such individuals. This paragraph shall not apply, however, to any individual who participates directly in the negotiation of the commercial terms of sale of microprocessors or chipsets, or who has approval responsibility for such sales,

including but not limited to any such individual who assumes such a position with a party after the execution of this stipulation. If an individual leaves a position requiring retention for a position that would no longer require retention, documents existing as of the date of the change in position will be preserved, but the individual may be relieved of on-going retention obligations. This paragraph shall also not apply to any individual not included on a party's Custodian List, nor to any person not included on a party's Party-Designated Custodian List or the opposing party's Adverse Party-Designated Custodian List, whose documents are subsequently requested pursuant to paragraph 4. Promptly upon receipt of a request from the other party for production of additional custodians' files pursuant to Paragraph 4, a party's ongoing document retention obligations shall be revived as to such individuals from the date of receipt of such request.

7.    The parties agree that the following certain requests will be considered "corporate" requests: AMD's Request Nos. 10, 51-54, 66, 69-73, 89, 113-119, 124-132, 158-169, 200-202, and 217, and Intel's Request Nos. 15-24, 26-27, 41-43, 50-54, 58-59, 70-71, 99, 102-104, 107-110, 136, 168, and 170-171. As to AMD's Request Nos. 51-54, 92-98, 200-202, and 217, Intel represents that the documents responsive to these Requests are contained in and will be produced from a central corporate file. As to Intel's Request Nos. 19-22, 24, 26-27, 41-43, 51-54, 58, 70-71, and 99, AMD represents that the documents responsive to these Requests are contained in and will be produced from a central corporate file. In preparing their Custodian List, the parties need not identify any individual merely because he or she may possess documents responsive to a corporate request. The parties agree, however, that documents from "corporate" or company files from which documents are being produced in response to "corporate" requests will also be produced in response to all requests that are the subject of this

stipulation. The parties further agree that documents responsive to corporate requests shall be produced from the files of custodians who are identified on the Party-Designated Production Custodian Lists or the Adverse Party-Designated Production Custodian List. As to files or materials not within the individual custody of a custodian, the parties agree to the following:

(a)    responsive non-electronic documents that are created or maintained by, or otherwise associated with, an individual custodian, or utilized by an individual custodian, will be searched for and produced.

(b)    responsive documents maintained on shared servers that are created or maintained by, or otherwise associated with, an individual custodian will be searched for and produced.

(c)    responsive documents contained on shared servers that are not created, maintained or otherwise associated with an individual custodian, but are on servers that were accessed or otherwise utilized by individual custodians in connection with their job responsibilities during the time period covered by the Initial Document Requests will be searched for and produced. This obligation will not include, however, any servers created or maintained by outside counsel in connection with this litigation or related litigations or competition investigations. The parties expressly acknowledge that the materials under subsection (c) will likely be voluminous, and the parties therefore agree to meet and confer in good faith to determine reasonable means for reducing the burden of producing non-duplicative responsive documents. In the absence of an agreement, the parties agree that the Court may impose reasonable limits on the search for and production of such material if the Court believes that such limits are appropriate in light of all of the circumstances, including the purposes underlying this stipulation; however, the parties agree that they will not urge that responsive

documents contained on shared servers that are utilized by an individual custodian should not be searched for and produced at all.

8.    Nothing in this stipulation is intended to relieve the parties of their obligation to produce documents and things responsive to each other's Initial Document Requests to the extent such materials are maintained or contained in corporate or department files, databases or are otherwise maintained outside the individual custody of a particular Custodian as set forth in and consistent with the provisions of, paragraph 7.

9.    This stipulation is intended to apply to the parties' respective Initial Document Requests and nothing herein shall limit or enlarge a party's  right to propound further, non-redundant document requests.    The parties represent that their respective Initial Document Requests were intended to broadly cover the issues and claims that are currently the subject of this litigation, and without limiting their right to serve further document requests as the litigation progresses, agree that they will not attempt, by future document requests, to circumvent the negotiated limitations contained in this stipulation.

10.    This stipulation shall apply to all requests contained in the parties' respective Initial Document Requests except those with which a party asserts in its response that it will refuse to comply subject to this stipulation.  As to such requests, the party will be required to fully comply with any court order on a motion to compel, without benefit of this stipulation, unless otherwise agreed.

11.    Documents produced in response to the parties' Initial Document Requests  will be produced on a rolling, custodian-by-custodian basis.  The parties further agree that each may request that the other prioritize the production of documents responsive to its document requests so that responsive documents from particular custodians are produced before responsive

RLF1-3014282-1

documents from other custodians. The parties shall submit privilege logs on a rolling basis, not later than 90 days following the production of a given custodian's files, unless otherwise agreed. The parties acknowledge that, to the extent in-house lawyer custodians are chosen, the 90-day period may be inadequate, and agree to meet and confer in good faith to determine both the scope of the privilege log to be produced and the time frame for its production.

     12.   The parties agree that this overall agreement is expressly conditioned on acceptance by the counsel, or lead counsel if one has been designated, for the federal and state class action plaintiffs, and approval by the Court.


Dated: May 15, 2006

                                                     /s/ W. Harding Drane, Jr.
                                                     Richard L. Horwitz (#2246)
                                                     rhorwitz@potteranderson.com
                                                     W. Harding Drane, Jr. (#1023)
                                                     wdrane@potteranderson.com
                                                     Potter Anderson & Corroon LLP
  1313 North Market Street
  P.O. Box 951
  Wilmington, DE  198999-0951
  (302) 984-6027
  Attorneys for Intel Corporation and Intel
  Kabushiki Kaisha


Dated: May 15, 2006

                                            *Frederick C. Cottrell, II by*
  Frederick L. Cottrell (#2555)        *Gregory E. Stuhlman*
  cottrell@rlf.com                          *(#4765)*
  Richards, Layton & Finger
  One Rodney Square
  920 North King Street
  P.O. Box 551
  Wilmington, DE  19899
  (302) 651-7700
  Attorneys For Advanced Micro Devices, Inc.
  And AMD International Sales & Service, Ltd.

RLF1-3014282-1

SO ORDERED this _____ day of May, 2006.

_____
The Honorable Joseph J. Farnan, Jr.

RLF1-3014282-1