**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICE, LTD., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation,<br><br>Defendants. | C. A. No. 05-441-JJF |
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INTEL CORPORATION,<br><br>Defendant. | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

**RESPONSE OF ADVANCED MICRO DEVICES, INC., AMD INTERNATIONAL
SALES & SERVICES, LTD. AND PLAINTIFFS IN THE MDL CLASS LITIGATION
TO THE COMMENTS AND OBJECTIONS OF THIRD PARTIES
<u>REGARDING THE PROPOSED PROTECTIVE ORDER</u>**

Pursuant to the Stipulation and Order entered by the Court on May 11, 2006, plaintiffs

Advanced Micro Devices, Inc. and AMD International Sales & Services, Ltd. (hereafter jointly,

"AMD") and plaintiffs in the MDL Class Litigation respectfully submit the following response

to the comments and objections of the third parties regarding the proposed Protective Order

served on May 2, 2006.

## PRELIMINARY STATEMENT

In September 2005, AMD, Intel and counsel for the class action plaintiffs began negotiating a protective order that would govern the treatment of confidential information in this case. The negotiations spanned over eight months and were designed to accommodate the confidentiality interests of the Parties and Third Parties[1] while still abiding by the Third Circuit's requirement that documents shielded from public view meet specific prerequisites. After many months of compromise and concession, the Parties fashioned what they believed to be an appropriate protective order in this case and submitted that draft protective order to the Court. Recognizing that Third Parties would be producing substantial quantities of sensitive information in this action, the Parties agreed that Third Parties should have an opportunity to voice their concerns to the Court prior to the entry of a final protective order. Twenty Third Parties submitted comments on the proposed order.

AMD, Intel and MDL class counsel[2] have carefully reviewed the Third Party comments, objections and proposed changes, and have attempted to accommodate those changes wherever possible.[3] Fully satisfying so many different constituencies' interests simply is not possible. However, AMD, Intel, and MDL class counsel have tried to strike a delicate balance between Third Party confidentiality concerns and the public's substantial interest (in particular, policymakers' interests) in the state of competition in one of America's most important

---

[1] All defined terms used herein correspond to the Definitions contained in the Draft Protective Order.

[2] Counsel for the plaintiffs in the MDL proceeding object to entry of any protective order which provides them with less access to Discovery Material than to AMD or Intel. *See infra* at 11.B.

[3] Counsel in the related California class action do not join in this submission. However, they have represented that they do not object to the ministerial changes set forth in this response and will subscribe to the Protective Order if it follows these general contours. They will not join in any protective order that affords them less access to Discovery Material than AMD or Intel. For this reason, they vigorously object to the Japanese OEMs' proposal, which would preclude California class counsel from having access to the materials produced by these entities and they further object to Egenera's proposal, which would deny all class counsel -- federal and state -- access to Egenera's materials. *See infra* at 11.B.

2

technological industries.  This Response lays out the rationale behind the Parties' original formulation, summarizes the comments and objections raised by the various Third Parties, and then explains why the suggested revisions were or were not adopted by the Plaintiffs.[4]  Where Plaintiffs believe a revision is necessary, the proposed revised provision is included in a text box that follows the discussion.[5]  **Unless otherwise indicated, Intel has agreed to the Plaintiffs' proposed revisions.**

Significantly, Plaintiffs believe that should the Court be inclined to make any *additional* changes to address Third Party concerns, particularly those providing for greater levels of confidentiality, or more rigorous procedures, those changes should apply only to the Third Parties' Discovery Material, *not to Intel, AMD, or federal class representatives and class members in the MDL proceeding.*  The original draft Protective Order was forged over many months of exceedingly difficult negotiations.  The final product represents a "grand compromise," one reached only by trading one concession for another.  Thus, for example, parties preferring unrestricted use of "non-Confidential" materials gained it only by trading away more liberal definitions of what can be designated as "Confidential" in the first place.  Those preferring a "sunset" provision conceded that, at least at the front end, a Producing Party could deem *all* of its non-public Discovery Materials to be "Confidential."  Accordingly, however the Court disposes of the Third Parties' comments, any changes it makes to the proposed Protective Order, beyond what the Parties' have agreed to, should be applicable only to the Third Parties, not to AMD, Intel, or federal class representatives and class members in the MDL proceeding.

---

[4] As used herein, the term "Plaintiffs" refers to AMD and the plaintiffs reflected in the consumer class action's recently-filed First Amended Consolidated Complaint.

[5] To the extent the Third Party Objections pointed out minor or non-substantive mistakes and omissions that required correction, those revisions are not addressed in this Response but are contained in the Proposed Revised Protective Order.

For purposes of convenience, we have grouped like objections together, and discuss them in the order in which they appear in the proposed Protective Order.

## RESPONSES AND PROPOSED REVISIONS

1. **Definition J** - This paragraph defines the "In-House Litigation Counsel" at each of the Parties who will be entitled to receive Confidential Discovery Material. This paragraph also bars In-House Litigation Counsel from engaging in certain activities until one year after the conclusion of the litigations.

*Third Party Response:* Several Third Parties objected to this definition and sought to expand the substantive area of prohibited activities for AMD and Intel's In-House Litigation Counsel. For example, the Distributors responded that In-House Litigation Counsel who are given access to a Distributor's confidential information should be prevented from "engaging in the review or negotiation of contracts with that Distributor, or participating in any litigation against or otherwise interacting in a competitive business manner with that Distributor." Other Third Parties similarly wanted to prevent In-House Litigation Counsel from negotiating with any customers for their microprocessors. And Hitachi and Microsoft asked for language that would expand the prohibition beyond the microprocessor industry to include companies who manufacture and sell other products, such as computers and software. Finally, several Third Parties sought to add a clause which stated that the limitations period should be in effect for three years from the date of the Protective Order or for one year following the termination of the litigations, whichever is later, presumably on the fear that the litigations may conclude fairly soon.

*Plaintiffs' Response:* While sensitive to the business and confidentiality concerns of the Third Parties, it is important that this paragraph be narrowly tailored so as not to unduly restrict

the employment opportunities of the Parties' in-house counsel at the conclusion of the litigation or should they decide to move on before it concludes. These prohibitions attach to these individuals personally - both while they are employed at AMD and Intel and in the event these individuals leave either company - and it is important not to unjustifiably restrict their ability to work in areas of this industry. But in light of the Third Party objections, Plaintiffs propose adding language to this paragraph to expand the substantive areas of prohibited activities, and to clarify that the prohibition extends to one year after the conclusion of the last litigation, which Plaintiffs reasonably believe will be more than three years after the date of this Protective Order.

**Proposed Revision:** Plaintiffs and Intel propose the following revisions of Definition J.

> J.    "In-House Litigation Counsel" means any attorney who is an employee in the legal department of a Party whose responsibilities consist of overseeing the AMD Litigation, the Class Litigation, the Japan Litigation, the California Class Litigation or any Competition Investigation and who shall not from the date of entry of this Protective Order through a period of one (1) year following the conclusion of any of the aforementionedthe AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever occurs later, be engaged in: (a) the review and approval of competitive pricing or marketing programs; (b) the review of any aspect of microprocessor, oror chipset manufacturing, or (c) the filing or prosecution of patent applications, (d) the review or negotiation of any contract with a Producing Party related to the sale or marketing of microprocessors, (e) counseling in connection with PC or server manufacturing or operating system or software design or development, and (f) the licensing of Microsoft software or technology.

2.    **Definition R. Generally** - This section defines various categories of information that are considered to be "Confidential Discovery Material" under the Protective Order.

*Third Party Response:* Several Third Parties objected on the basis that the articulated categories failed to capture certain types of documents that they contend are entitled to confidential treatment, and sought the creation of new categories. For example, HP suggested the addition of a category that would include "any information subject to a Producing Party's non-disclosure agreement or other contractual obligation not to disclose." Best Buy suggested that minutes of the Producing Party's Board of Directors meetings should constitute Confidential Discovery Material under the Protective Order. Finally, Circuit City responded that its customer identification information should be protected from disclosure because of consumer confidentiality and privacy considerations, and suggested the addition of a category for "non-public customers lists maintained by Retailers."

*Plaintiffs' Response:* These categories of Confidential Discovery Material were carefully created to capture legitimately confidential business information. To the extent that certain documents exist that do not fall into one of the enumerated categories, but that nonetheless should be entitled to confidential treatment, a catch-all provision exists within definition R shielding materials the disclosure of which the producing party can show would create "serious and specific harm." *See* Proposed Protective Order, ¶ R.16. With respect to HP's proposal, because of the widespread use of non-disclosure agreements in this industry, a category protecting any information subject to a non-disclosure provision would necessarily encompass an immense volume of documents that, but for the contractual provision, have no basis for confidential treatment. In addition, to the extent that minutes of a Board of Directors' meeting discuss or reveal competitively sensitive commercial information, they will be subject to confidential treatment under Paragraph R.16. However, the mere fact that a document constitutes the minutes of a Board of Directors' meeting should not in and of itself entitle it to

protection. Finally, Plaintiffs understand the concerns and implications raised by Circuit City relating to "non-public information regarding the identity of its customers," and thus propose an exception to Paragraph S that ensures that documents containing retailers' non-public customer information remain confidential indefinitely. This addition also requires a change to Paragraph 6 that will allow Class counsel to use this information solely for legitimate purposes related to this litigation, such as class notice purposes and for settlement or proof of claims.

**Proposed Revision:**    Plaintiffs and Intel propose the following revisions to Paragraphs S and 6.

> S.    In order to address potential issues relating to the passage of time on the continued confidentiality of documents, the parties agree that except with respect to materials the disclosure of which would raise consumer privacy issues. for documents in categories R(1) though R(8) dated or prepared more than 24 months prior to a Designation Request under paragraph 16, the Producing Party must also satisfy the standard contained in paragraph R(16) for the documents to be maintained as confidential. For purposes of this paragraph, undated materials or materials or deposition testimony relating to an indeterminate time period shall be deemed dated as of the date of their production or the date of the deposition.

> (i)    Any individual specifically retained for the preparation and dissemination of class notices and/or the administration and/or settlement of class plaintiffs' claims.

3.    **Definition R.7. -** This category was intended to protect non-public negotiations between AMD and Intel and their respective customers.

*Third Party Response:*    Several Third Parties objected that because this category is restricted to negotiations regarding the purchase and sale of microprocessors and chipsets, it did not protect companies, such as distributors, OEMs, software companies and retailers, who negotiate for the purchase and sale of products other than microprocessors and chipsets.

RLFI-3019800-1

*Plaintiffs' Response:*  Plaintiffs agree with the Third Parties' concerns and propose a revised R.7. to reflect those considerations.

**Proposed Revision:**  Plaintiffs and Intel propose the following revisions of Definition R.7.

| | |
|---|---|
| 7. | Non-public negotiations ~~with customers~~ relating to the purchase or sale of microprocessors, chipsets, PCs, servers, operating systems, software licensing agreements or any other product manufactured or sold by a Producing Party; |

4.   **Definition R.10. -** This category is intended to protect information that qualifies as a trade secret under the Uniform Trade Secrets Act and under federal law.

*Third Party Response:*  Egenera objected to category R.10 as insufficient to protect its trade secrets on the basis that R.10 requires a showing that the trade secret "derives independent economic value." Egenera argues that the scope of the Protective Order should be broad enough to encompass the definition of a trade secret under all applicable laws (and cites to a purportedly more relaxed standard applied to trade secrets in Massachusetts).

*Plaintiffs' Response:*  This case involves companies situated all over the country, and indeed, the world.  Confidentiality cannot and should not be determined by the jurisdiction favoring the least public disclosure.  Rather, it should be governed by the rules applicable in the jurisdiction where the case is pending. The language in R.10 derives from the Uniform Trade Secrets Act that has been adopted by most states, including Delaware. *See* 6 DEL. CODE § 2001. In addition, federal law has also adopted this definition of trade secrets. *See* 18 U.S.C. § 1839 (defining trade secret for theft of trade secrets under federal law).  As such, it is the most reasonable standard to govern the protection of trade secret information in this case. Accordingly, Plaintiffs propose no change to this section.

5.  **Definition R.11. -** This category was intended to protect confidential information regarding the manufacturing process of microprocessors and chipsets.

*Third Party Response:* Third Parties commented that this category did not protect the manufacturing and development process for those companies who create other products besides microprocessors and chipsets.

*Plaintiffs' Response:* As with R.7, Plaintiffs agree with the Third Parties' concerns and propose a revised R.11 to reflect those considerations.

**Proposed Revision:** Plaintiffs and Intel propose the following revisions of Definition R.11.

| 11. | Non-public information that concerns microprocessor or chipset, PC or server manufacturing, or operating system and software design and development, including capital expenditure plans, yields, capacity, costs, utilization, process and scale; |
|---|---|

6.  **Definition R.14. -** This category is intended to prevent the disclosure of information that could jeopardize the security of confidential databases, networks or other sources of non-public information.

*Third Party Response:* Egenera commented that Third Parties have an interest in protecting documents the disclosure of which could jeopardize the security of its public Internet sites as well.

*Plaintiffs' Response:* Plaintiffs agree with Egenera's comments and propose a revision to category R.14.

**Proposed Revision:** Plaintiffs and Intel propose the following revisions of Definition R.14.

14. Information the disclosure of which could jeopardize the security of public or private Internet sites, confidential databases, networks or other sources of non-public information;

7. **Definition R.16.** - This category identifies and defines a "catch-all" category of Confidential Discovery Material. The subsection provides presumptive protection to "[o]ther information or documents the disclosure of which the Producing Party can demonstrate would cause it serious and specific harm."

*Third Party Response:* Some Third Parties have objected to category R.16 and argue that the showing of "good cause" for confidentiality protection should not be limited to "serious and specific harm." In addition, several of the Japanese OEMs want to replace category R.16 with one which would include "information or documents that any Producing Non-Party designates as confidential for any legitimate business purpose" -- in effect creating a more lenient standard of confidentiality for Third Parties.

*Plaintiffs' Response:* While the Parties considered having a more flexible definition of Confidential Discovery Material specifically applicable to Third Party documents, in the interests of establishing a uniform rule, the Parties ultimately decided to adopt the single catch-all standard provided for in R.16, which mirrors the well-accepted standard of good cause required by several federal courts, including the Third Circuit.

To establish "good cause" for issuance of a protective order, the party seeking protection must establish that disclosure of the materials would lead to a "clearly defined and serious injury." *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). The party seeking protection must specifically identify the categories of documents that it seeks to protect and provide clear articulation of a "serious

10

injury" that would result from their disclosure. "Broad allegations of harm, unsubstantiated by specific examples" are not sufficient to establish good cause. *See Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995). This is not solely a Third Circuit interpretation of good cause. *See, e.g., Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir. 1986) (good cause must be based on specific factual determinations of potential harm, not on conclusory statements); *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (burden on movant to make specific demonstration of necessity for protective order); *United States v. Int'l Bus. Mach. Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y. 1975) ("where commercial information may be subject to protection under Fed. R. Civ. P. 26(c) [the Court] will look to determine if its disclosure will work a clearly defined and very serious injury"); *Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518, 522 (E.D. Wis. 1999) ("it must be shown that disclosure will cause a clearly defined and serious injury"); *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 424 (N.D. Ind. 2001) ("The moving party must show 'that disclosure will work a clearly defined and serious injury'"), *citing Glenmede Trust Co*, 56 F.3d 476.

Further, applying the California standard of "good cause," as is suggested by the Distributors in their comments, might actually result in less protection. In negotiating the stipulated protective order, Plaintiffs' counsel for the California Class Litigation expressed concern over the breadth and leniency of even the "serious and specific harm" standard. Under the Santa Clara Superior Court local rules, parties are requested to conform any proposed protective order to the Model Orders provided by the Court. One Model Order requires that to maintain a document as confidential, the requesting party must meet the California standard necessary for sealing documents. This Rule requires that the party requesting protection show:

> 1) There exists an overriding interest that overcomes the right of public access to the record;

> 2) The overriding interest supports sealing the record;
> 3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;
> 4) The proposed sealing is narrowly tailored; and
> 5) No less restrictive means exist to achieve the overriding interest.

CAL. R. CT. § 243.1(d) (2006).

As such, the parties ultimately agreed to a definition of "good cause" that was sufficiently particular to meet the needs of the California Class Litigation, yet consistent with the Third Circuit standard and sufficiently broad to protect truly sensitive material of the Producing Parties. The description of "good cause" as "serious and specific harm" is an appropriate compromise that provides the proper amount of protection. Plaintiffs do not propose any revision.

8. **Definition S** - Paragraph S states that documents in categories R.1 through R.8 dated or prepared more than twenty-four months prior to a Designation Request will lose their presumptive protection unless the Producing Party meets the "serious and specific harm" standard contained in category R.16.

*Third Party Response:* Some Third Parties have objected to Paragraph S, which provides for the "sunsetting" of stale documents. Third Parties argue that many documents, such as multi-year contracts and marketing plans, are intended to remain competitively viable for more than two years and even older documents are reflective of current proprietary information. Third Parties contend that this time limitation does not provide adequate protection to their documents.

*Plaintiffs' Response:* It is important to note that if disclosure of documents within categories R.1 through R.8 would cause serious and specific competitive harm to a Third Party, those documents will retain their protection under category R.16. However, not every document

falling within categories R.1 through R.8 is entitled to indefinite protection.    Continued protection for confidential materials must be based on "current evidence" that establishes "how public dissemination of the pertinent materials *now* would cause the competitive harm [the designating parties] claim." *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) (emphasis added) (appellant failed to make necessary showing of how release of materials would result in competitive harm at the time of disclosure); *see also Leucadia v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993) ( party seeking continued treatment of documents under seal required to make a "particularized showing of the need for *continued* secrecy," even when challenged protective order was only 17 months old) (emphasis added).  In preserving the openness of judicial proceedings, the Court must ensure that only information the disclosure of which presents a current threat of serious harm is granted continuing confidentiality protection.

Confidential commercial information can become stale over time, making it unworthy of continued confidentiality protection. *See, e.g., Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 129 F.R.D. 483, 485 (D.N.J. 1990) ("The purported need for protection is substantially diminished where the passage of time has made such documents stale"). In *United States v. IBM*, 67 F.R.D. at 48, Honeywell, a non-party witness in the case, sought under a pretrial protective order continued sealed treatment for a number of its documents used in depositions. These documents included statistical tabulations of products and services manufactured, sold, and leased, and all resulting revenues for a 15 year period ending in 1972 and financial reports for a 12 year period ending in 1972. Despite the fact that some of this information was only three years old, the court found, "[n]one of this data is current; it reveals directly little, if anything at all, about Honeywell's current operations." *Id.* at 49. Based upon the fact that the information Honeywell

sought to protect was not current enough to pose competitive harm if disclosed, the court denied Honeywell's request. *Id.*

Other federal courts have endorsed this view. *See Applied Indus. Materials Corp. v. Brantjes*, 891 F. Supp. 432, 438-39 (N.D. Ill. 1994) (net-profit figures three or more years old not protected as trade secret); *In re "Agent Orange" Prod. Liab. Litig.*, 104 F.R.D. 559, 575 (E.D.N.Y. 1985) (important factor in determining whether disclosure will cause competitive harm is whether the information that the party seeks to protect is current or stale), *aff'd*, 821 F.2d 139 (2d Cir. 1987); *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21, 23 (S.D.N.Y. 1971) (the need for a court's protection diminished because information was one year old); *United States v. Lever Bros. Co.*, 193 F. Supp. 254 (S.D.N.Y. 1961) (court held that information three to eight years old should not be protected).

Much of the confidential information that will be produced by Third Parties in this litigation is akin to the documents analyzed in the *IBM* and other above-referenced cases -- commercial information concerning past business practices the disclosure of which could not arguably lead to serious competitive harm. Given the ongoing debate about dominant firm business practices, and specifically those in the microprocessor industry, policy makers and those that influence policymaking have a legitimate right to information about how microprocessor business is conducted, particularly when disclosure presents no risk of serious and specific harm to the Producing Parties.[6]  Paragraph S strikes an appropriate balance by preventing stale

---

[6] This limited sunset provision is not only supported by the law but is essential in a case of this nature. The timelines in the computer industry are extremely compressed. According to Third Party IBM, in information technology "the nature of innovation is changing at a pace unheard of in modern history." *Global Innovation Outlook*, IBM, *at* http://domino.research.ibm.com/comm/www_innovate.nsf/pages/world.gio2004.html (last visited May 25, 2006). Given the rate of change in microprocessor design and function, as well as the resultant rate of change in downstream products, the information contained within the requested documents is likely to

information from remaining, unjustifiably, under indefinite protection. Yet it also allows Parties and Third Parties to shield information that is still deserving of protection, by simply showing that disclosure of the material would result in serious and specific harm. (In addition, the most sensitive information (of the type listed in categories R.9.-R.15.), will never sunset, providing adequate protection to a Third Party's most confidential materials.)

Plaintiffs propose no revision, except as indicated earlier with respect to consumer information.

9. **Definition U.** - This paragraph defines the meaning of "non-public" documents and information.

*Third Party Response:* Egenera and Hitachi both objected to the definition's reference to documents maintained internally as "confidential" as unduly restrictive since it implies that documents have to be physically marked "confidential" to be considered "non-public." Hitachi also suggested that this definition should include documents disclosed to Third Parties "in the course of litigation or government investigation." Finally, several of the Japanese OEMs suggested that "non-public" should be defined as "anything not available to the general public."

*Plaintiffs' Response:* Plaintiffs agree that placing the word "confidential" in quotes in the definition was confusing and have proposed removing the quotes. The Parties did not intend to require that documents must be maintained by Producing Parties with confidential markings to be considered non-public. Plaintiffs also agree with Hitachi's second comment and propose revising this definition accordingly. However, Plaintiffs believe that broadening the definition of "non-public" to include "anything not available to the general public" is too expansive.

---

change significantly on an annual, or even semi-annual, basis. Therefore, a large proportion of Third Party confidential commercial information requested in this litigation will become stale well within two years of its development, and no longer deserving of confidentiality protection.

**Proposed Revision:** Plaintiffs and Intel propose the following revisions of Definition U.

> U.    "Non-public" documents and information are those (a) that the Producing Party
> maintains internally as "confidential," (b) that are not disclosed to third-parties except under
> written agreements requiring that they be maintained in confidence or pursuant to a course of
> dealing whereby such communications are maintained in confidence, or under compulsory
> process or involuntary seizure, and (c) that the disclosure of which could damage the Producing
> Party competitively.

10. **Definition V. -** This is a proposed new definition to address an inconsistency that was pointed out in Best Buy's response. Best Buy noted that the draft Protective Order contains cites to both "days" and "court days" when specifying time periods.[7] In order to avoid any confusion, Plaintiffs propose removing all references to "court days" and instead only referring to "days" in the Order. Proposed Definition V would then establish that all time periods prescribed should be computed in accordance with Federal Rule of Civil Procedure 6(a).

**Proposed Addition:** Plaintiffs and Intel propose the following revisions of Definition V.

> V.    Time periods prescribed by this order shall be computed in accord with Federal
> Rule of Civil Procedure 6(a).

11. **Paragraph 1 -** This paragraph establishes that Confidential Discovery Material shall be used solely by the Parties for the purposes of the AMD Litigation, the Japan Litigation, the

---

[7] Best Buy's response also raised a few minor issues with other provisions. First, Best Buy objected that the definition of "disclose" (Definition T) was vague and overbroad and suggested new language. Plaintiffs believe the current definition is sufficient and do not propose a change. Second, Best Buy objected to Paragraph 3 as too vague on the basis that it did not sufficiently describe the protection given to Confidential Discovery Material once a Designation Request is made. Plaintiffs contend that Paragraph 16 adequately describes the protection and do not propose a change. Finally, Best Buy objected to Paragraph 12 because it does not define what constitutes "permitted uses" for which copying or reproduction of Confidential Discovery Material is allowed. Plaintiffs believe that the permitted uses are adequately explained in Paragraph 1 and do not propose a change.

Class Litigation, or the California Class Litigation. It also states that Confidential Discovery Material that loses its confidential status may be used for any purpose, unless restricted by agreement or by the Court.

*Third Party Response:* The Third Party objections to this paragraph can be divided into three basic groups. First, several Third Parties object to the use of any discovery materials in the Japan litigation for various reasons. For example, Egenera objected on the basis that it has not submitted to the jurisdiction of the Japanese courts and that its documents are not relevant to the Japanese litigation. Hitachi, Lenovo and others have objected on the belief that Japanese courts do not provide sufficient protection for confidential discovery materials. Finally, Dell and Lenovo believe the use of these discovery materials in the Japan Litigation would result in an "end run" around discovery protections available to Third Parties in Japanese courts. The second group of objections to Paragraph 1 deals with the use of discovery material in the Class Litigations. Several Japanese OEMs have objected to the use of any discovery materials in "any state proceedings," which would necessarily include the California Class Litigation. Also, Egenera has objected to the use of its materials in both of the Class Litigations on the belief that, as a server manufacturer, its business is not relevant to the Class Litigations. Finally, some Third Parties have objected to Paragraph 1 on the basis that it allows material, other than Confidential Discovery Material, to be used for any purpose. The Third Parties object to the use, outside of this litigation, of any material they produce.

A. *Plaintiffs' Response to Objections to Use in the Japan Litigation:* Under the proposed Protective Order, Confidential Discovery Material may be disclosed to the Court, Counsel, and Experts/Consultants in the Japan Litigation only under specified conditions, including a requirement that before any disclosure may occur, the Japanese Court must institute

17

procedures to protect the confidentiality of the information at a level of protection comparable to that provided in the Order.[8]  In addition, in order to receive Confidential Discovery Material, Counsel and Experts in the Japan Litigation must execute an Acknowledgment of Protective Order and agree to submit to the jurisdiction of this Court for the purpose of having the terms of the Protective Order enforced.  Therefore, Japan Counsel and Experts cannot freely share any Confidential Discovery Material disclosed to them and are, instead, bound by the same limitations as U.S. Outside Counsel.  This provides ample protection to any Third Party Confidential Discovery Material that may be disclosed to Japan Counsel or Experts.

In addition, the Parties in this litigation have made a concerted effort to diminish the production burden on Third Parties by consolidating discovery in multiple actions through this Protective Order.  The inclusion of the pending Japan Litigation is only another attempt to avoid duplicative discovery that may subject Third Parties to undue burden, time, or expense.  Japan Counsel is permitted to seek production through the Japanese Court.  Under Japanese procedure, counsel may ask the Court to order that non-parties produce documents relevant to the litigation.  Without access to discovery under this Protective Order, AMD's counsel in Japan will likely ask the Japan Court to order production.  Allowing documents to be disclosed, under the very specific requirements of the Protective Order, will prevent Third Parties from having to produce documents more than once.

---

[8] Further, nothing in the Protective Order prevents the Japanese Court from implementing more stringent requirements regarding the protection of material that has been produced by Third Parties.  In fact, the only requirement is that Confidential Discovery Materials may only be used "if the Japan court institutes procedures to protect the confidentiality of the information at a level of protection comparable to that provided in this Order."  Proposed Protective Order, ¶ 6(d).  If the Court wishes to impose procedures to provide even greater protection, it may do so, as the "procedures to effectuate this provision shall be those the Japan Court deems appropriate."  *Id.*

Equally meritless is the argument of Dell and Lenovo that sharing information with the Parties' Japanese Counsel would permit broader discovery than typically conducted in Japanese courts, in derogation of some unidentified Japanese policy. Dell and Lenovo are not parties to the Japanese litigation, and they have no standing to complain that the protective order would be an affront to a Japanese court. Intel, by contrast is a party; it presses no objection and in fact agrees that Discovery Material should be shared with its Japanese counsel.

Also, using fruits of discovery from one lawsuit in another litigation, and even in collaboration among various plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure. *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 129 F.R.D. 483, 486 (D.N.J. 1990); *see also United States v. Hooker Chem. & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981) ("Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources"). Courts have applied this philosophy of reducing duplicative discovery to foreign actions as well. *See, e.g., In re Jenoptik AG*, 109 F.3d 721 (Fed. Cir. 1997) (allowing plaintiff to use sections of deposition marked confidential under protective order in U.S. action before a German court in a related action involving the same parties, where the plaintiff agreed to be bound by the U.S. protective order).

Moreover, for some objecting Third Parties, the Parties could seek production under 28 U.S.C. § 1782, which allows a district court to order a person to produce documents for use in a proceeding in a foreign or international tribunal, upon the application of any interested person. *Intel Corp. v. Advanced Micro Devices, Inc.*, 124 S. Ct. 2466 (2004); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004). Here, AMD and Intel would both be interested persons, as they are parties to the Japan Litigation. Either could petition the Court to

order a Third Party, that is subject to this Court's jurisdiction, to produce documents for use in the Japan Litigation.

B. *Plaintiffs' Response to Objections to Use in the Class Litigations:* Egenera takes the position that class plaintiffs' counsel are prohibited from seeing any documents that it produces in this litigation and Lenovo takes the position that such counsel are prohibited from seeing any documents that it produces before a protective order is in place, despite the provisions of Local Rule 26.2. Neither position is acceptable to class counsel; class plaintiffs are parties to these coordinated proceedings and the Court has made it clear that discovery obtained by them should be coordinated closely with discovery obtained by AMD. Treating class plaintiffs as "second class litigants" entitled to lesser discovery runs afoul of the Federal Rules of Civil Procedure, this Court's Local Rules and principles of efficient administration of complex cases. Neither position is therefore accommodated in the suggested revisions to the proposed Protective Order.

Moreover, denying class plaintiffs the same access to Discovery Material as AMD and Intel will scuttle year-long efforts to coordinate discovery in this case and the state class action pending in California Superior Court. That coordination is essential so that the Parties and Third Parties are not forced to respond to duplicative discovery requests, which will benefit no one. But as noted earlier (see infra at n.2), state class counsel have made it clear that they will not subscribe to any Protective Order that treats them less favorably than AMD or Intel. Without a common protective order, which affords all Parties, both state and federal, equal access to Discovery Materials under the same terms and conditions, coordinated discovery will be impossible.

C. *Plaintiffs' Response to Objections to Use "For Any Purpose":* Many Third Parties have objected to any use of documents produced in this litigation (even non-confidential

documents) outside of this litigation.   While Plaintiffs are sensitive to the Third Parties' concerns, as a general matter, documents produced in discovery are usually open to the public unless good cause can be shown for maintaining their confidentiality.  Federal courts have held that the public has an interest in what goes on at all stages of the judicial proceedings and that pretrial discovery is presumptively public unless the Court enters an order prohibiting public disclosure upon a showing of "good cause." FED. R. CIV. PROC. 26 (c); *see e.g., Shingara*, 420 F.3d at 306-307; *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-45 (7th Cir. 1999).  Under Rule 26(c), any person who wishes to shield discovery materials from the public eye must file a motion with the court and establish "good cause" for such protection.  *See id.*  As the Second Circuit explained, the good-cause requirement of Rule 26(c) confirms that the public has the right to examine discovery materials; otherwise, "the party seeking to protect the materials would have no need for a judicial order." *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145-46 (2d Cir.), *aff'g* 104 F.R.D. 559, 567 (E.D.N.Y. 1985). Thus, under Rule 26(c), "the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. District Court - Northern District (San Jose)*, 198 F.3d 1096, 1103 (9th Cir. 1999); *see also Shingara*, 420 F.3d at 306 ("the good cause analysis of Rule 26(c) applie[s] whether an order of confidentiality is granted at the discovery stage or any other stage of litigation").  The circuits are in accord on this bedrock principle of public access to non-confidential court documents.  *See American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978), cert. denied, 440 U.S. 971 (1979) ("pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings."); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988) (granting a non-party media agency access to all discovery materials produced in the case

for which good cause for confidentiality no longer existed); *Citizens First Nat'l Bank*, 178 F.3d at 946 ("Most cases endorse a presumption of public access to discovery materials, and therefore require the district court to make a determination of good cause before he may enter the order. Rule 26(c) would appear to require no less."). The Third Circuit agrees, and has repeatedly reaffirmed the trial court's duty to protect the public's interest in discovery materials from overly broad protective orders that unjustifiably impinge upon that right. *See Shingara,* 420 F.3d at 306; *Glenmede Trust,* 56 F.3d at 484 (3d Cir. 1995). Therefore, those documents for which Third Parties have failed to demonstrate good cause for protection (i.e., non-confidential documents) should be available to the Parties for use outside this litigation.

As noted above, this case has generated significant public interest, in part because it has become the "poster child" for the emerging global debate about the regulation of dominant companies and single- firm behavior.[9] Additionally, it involves one of the nation's (if not the world's) most important industries, microprocessors, which has driven an unprecedented increase in productivity around the world. AMD has long championed "fair and open competition" in this market, and argued that restraints threaten the innovation that has fueled these gains. Surely, legislators, regulators and the public are entitled to sufficient information about the industry so that they may judge those claims, particularly when, as concerns these Third-Party comments, disclosure would not risk any serious or specific harm to the party

---

[9] *See* American Antitrust Institute, "Issues At The Heart of Exclusionary Conduct: A Briefing Paper On The *AMD v. Intel* Monopolization Litigation" (Apr. 25, 2006). The FTC and Department of Justice announced several months ago joint hearings on the subject of dominant firm behavior, and the AMD v. Intel case can be expected to be a frequent subject of those testifying. *See* http://www.ftc.gov/opa/2005/11/unilateral.htm and http://www.usdoj.gov/atr/public/press_releases/2006/215355.htm. This follows on the heels of the release by the EU's Directorate General of Competition of a working paper on the subject and its solicitation of public comment. *See* http://ec.europa.eu/comm/competition/antitrust/others/article_82_review.html.

providing the information. Where, as here, the public has a significant interest in the case, a court must find commensurately more compelling privacy interests in order to grant protection. *Pansy*, 23 F.3d at 788; *In re "Agent Orange" Prod. Liab. Litig.*, 104 F.R.D. at 573. Given the immense public interest involved in this litigation and in the policy issues it raises, the Court should provide protection from outside uses only to those documents that are designated Confidential Discovery Material.

Accordingly, Plaintiffs believe for the most part that Paragraph 1 should not be revised, however they do propose adding the word "lawful" to the last sentence to address concerns by Fry's and Egenera that discovery material not be used for an unlawful purpose or in violation of a Producing Party's intellectual property rights, such as copyright, trademark, patent, or trade secrets.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 1.

> 1. Except as set forth in this Protective Order, Confidential Discovery Material, or information derived therefrom, shall be used solely by the Parties for purposes of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, and shall not be used for any other purpose, including, without limitation, any business or commercial purpose, or dissemination to the media. Confidential Discovery Material that loses that designation, either by agreement of the Parties or the challenge process set out in Paragraph 16, may be used for any lawful purpose, unless such use is restricted by agreement or by the Court.

12. **Paragraph 4 -** This paragraph describes the mechanism for marking documents confidential pursuant to the Protective Order, which in effect is to be done by affixing, either physically or electronically, the notation "CONFIDENTIAL - MDL 1717/JCCP 4443" to documents.

*Third Party Response:* The Distributors objected to the requirement of affixing the label "CONFIDENTIAL - MDL 1717/JCCP 4443" to documents they intend to designate confidential. They argued that they should only have to label Confidential Discovery Material as "CONFIDENTIAL" without indicating the case number. Several Japanese OEMs objected to the extent that the Protective Order does not cover documents that have already been, or will be, produced to the Parties which are not marked in accordance with the notation, but are nonetheless marked as requiring confidential treatment, e.g., designated "Confidential." Finally, HP objected to this paragraph on the basis that it did not provide sufficient assurance for those Producing Parties who will be producing documents in native format.

*Plaintiffs' Response:* The Parties agreed upon this notation in order to avoid the confusion that often arises when documents produced in litigation contain several different "confidentiality" markings. For example, many documents created at companies are marked "Confidential" as a matter of course, so that simply using this marking to identify material subject to the Protective Order is unworkable. Similarly problematic would be documents that were designated 'confidential' in other litigation but produced again here. With respect to documents already produced to the Parties, the Parties will assume the obligation to make the confidentiality markings consistent with this Protective Order. Finally, to the extent the designation procedure described in Paragraph 4 raises particular issues with respect to Third Parties that are producing in native format, those issues are better addressed in the individual production protocols being negotiated with those Third Parties. Accordingly, Plaintiffs propose no change to this Paragraph.

13. **Paragraph 5 -** This paragraph addresses the procedure for designating deposition testimony as confidential.

*Third Party Response:* Many Third Parties objected to this paragraph on the basis that it did not provide an opportunity for Third Parties who were not present at a deposition to designate as confidential those portions of the deposition testimony constituting or revealing their Confidential Discovery Material.

*Plaintiffs' Response:* Plaintiffs agree that the Third Parties have raised a valid objection and propose that Paragraph 5 be revised to specify that deposition testimony is presumptively confidential and that deposition transcripts should be treated as Confidential Discovery Material, unless and until a Designation Request is made. Plaintiffs' proposed revision also contains language specifying that a Receiving Party is not required to make a Designation Request when seeking to disclose testimony it reasonably concludes does not contain any Confidential Discovery Material.

Given the Parties' agreement to treat all conceivably confidential deposition testimony as subject to the Protective Order until a Party makes a Paragraph 16 Designation Request, we also propose a change to address the other side of the coin — a provision which bars a deponent from asserting confidentiality, or a contractual non-disclosure obligation, as a basis for refusing to answer questions at a deposition. This addition, which would greatly expedite deposition discovery, is fully consistent with existing federal law. Confidentiality and non-disclosure agreements intended to preserve confidentiality are not a basis to resist discovery. *See Covia P'ship v. River Parish Travel Ctr.,* 1991 WL 264549 at*1 (E.D. La. 1991) ("Parties may not foreclose discovery by contracting privately for the confidentiality of documents."); *see also Chambers v. Capital Cities/ABC,* 159 F.R.D. 441, 444 (S.D.N.Y. 1995) ("[I]t is against public policy for parties to agree not to reveal, at least in the limited contexts of depositions or pre-deposition interviews concerning litigation arising under federal law, facts relating to alleged or

potential violations of such law."). For example, in *In re Subpoena Duces Tecum Served on Bell Comm. Research, Inc.*, 1997 WL 10919 (S.D.N.Y. 1997), the defendant moved to compel Bellcore, a nonparty, to produce documents pursuant to a Rule 45 subpoena. Bellcore refused to produce its customer's proprietary documents because doing so "could place it in breach of its confidentiality arrangements" with its customers. *Id.* at *2. The court disagreed finding that the protective order in place in the litigation, which restricted access to outside counsel and designated experts, provided adequate protection. *Id.* at *3. The court stated that to accept Bellcore's position "would clearly impede the truth seeking function of discovery in federal litigation as all individuals and corporations could use confidentiality agreements to avoid discovery." *Id.* The court ordered Bellcore to produce all requested documents pursuant to the subpoena in accordance with the protective order. *Id.*; *see also Grumman Aerospace Corp. v. Titanium Metals Corp. of Amer.*, 91 F.R.D. 84, 87 (E.D.N.Y. 1981) (holding that it was impermissible for "parties to contract privately for the confidentiality of documents, and foreclose others from obtaining, in the course of litigation, materials that are relevant to their efforts to vindicate a legal position"). Because the proposed revision ensures that deposition transcripts will be given confidential treatment, there is no basis for deponents to refuse to disclose information that is otherwise discoverable.

**Proposed Revision:** Plaintiffs propose the following revision of Paragraph 5, which we understand Intel agrees to, except the portions which obviate the need of a Party to seek consent to use information outside the Order's confidentiality circle which could not reasonably be claimed by anyone to be Confidential (the last sentence and the "reasonably conclude' portion of the third sentence). Plaintiffs disagree that they should have the burden of clearing the disclosure of testimony that could not reasonably be claimed to be confidential.

> 5.    To facilitate discovery, all deposition testimony will be presumed to constitute, and all transcripts shall be treated as, Confidential Discovery Material, unless and until a Designation Request is made by a Receiving Party under Paragraph 16. Accordingly, no deponent may refuse to answer a deposition question on the ground that the answer would disclose confidential information or information subject to a non-disclosure agreement. Should a Receiving Party wish to disclose any deposition testimony it could reasonably conclude is or might constitute Confidential Discovery Material under Paragraph R to a person other than as permitted by Paragraph 6, it shall first make a Designation Request under the provisions of Paragraph 16. Such a request shall be made to the Party or Non-Party it reasonably concludes has the right to protect the information. The provisions of Paragraph 16 shall thereafter apply. This paragraph will not restrict use of deposition testimony that a Receiving Party reasonably concludes contains no Confidential Discovery Material.

14. **Paragraph 6 -** Paragraph 6 articulates to whom Confidential Discovery Material may be disclosed or provided.[10] Several Third Parties objected to the draft Protective Order generally on the grounds that it failed to state that it was subject to the terms of separate

---

[10] Acer sought an addition to Paragraph 6 specifying that "[t]he requirements of this Section 6, shall in no way be interpreted to prevent Producing Party from using, disclosing, and/or reviewing its own information and Discovery Material." Plaintiffs believe that Acer's concern is addressed in Paragraph 13, which states: "This Protective Order shall not apply to the disclosure or use by a Producing Party or its counsel of such Producing Party's Confidential Discovery Material."

agreements entered into between the Parties and Third Parties, specifically those governing the use of documents produced voluntarily to the Parties. In light of this objection, the Plaintiffs propose adding a new provision to Paragraph 6 acknowledging that these separate agreements survive entry of the Protective Order. This proposed additional language is intended to provide peace of mind to those Third Parties with whom AMD has agreements. AMD intends to live up to its obligations under those agreements irrespective of whether this language is contained in the final Protective Order. These separate agreements do not affect any other Party's rights under this Protective Order nor do they in any way frustrate a Party's ability to obtain discovery it is otherwise entitled to. These agreements merely restrict what AMD can do with the documents it received voluntarily from certain Third Parties.

**Proposed Addition:** Plaintiffs, but not Intel, propose the following addition to Para. 6.

> The provisions of this Paragraph 6 will not void or supersede any more restrictive agreement reached between a Producing Party and a Receiving Party respecting the Receiving Party's use of Confidential Discovery Material that by its terms survives the entry of a protective order.

15. **Paragraph 6(b)** - This section allows for the disclosure of Confidential Discovery Material to the Parties' Experts and Consultants.

*Third Party Response:* Several Third Parties objected to this section and proposed that the Parties be required to identify to Producing Parties their Experts and Consultants before these individuals receive Confidential Discovery Material. In addition, some Third Parties have requested the opportunity to object to the Parties' Experts and Consultants. In addition, HP requests a provision providing that any Expert or Consultant who obtains access to a Third Party's Confidential Discovery Material "shall be prohibited from undertaking any

representation or employment or performing any services for any individual or entity that could be reasonably construed as a competitor to the Third Party for one year from the close of the AMD Litigation, Japan Litigation, or Class Litigation, whichever is later." In addition, after the one-year prohibition, "any Expert/Consultant who previously obtained access to a Third Party's Confidential Discovery Material shall obtain prior written consent from that Third Party before undertaking any representation or employment or performing any services for an individual or entity, if such services or performance could (a) give rise to a conflict of interest on the part of the expert vis-à-vis the Third Party or (b) reasonably be construed as adverse to that Third Party's business and/or legal interests."

*Plaintiffs' Response:*  The Parties should not be required to identify their Experts and Consultants to Third Parties.  This information is clearly attorney work product and information relating specifically to Experts is not even discoverable by litigants until a party makes a Rule 26(a)(2) disclosure.  Nor is there any need for Third Parties to know the identify of the Parties' experts, much less the right of approval over them.  Under the Order, Experts and Consultants are required to sign and execute the Acknowledgment of Protective Order, which makes them bound by its terms.  Accordingly, at risk of contempt of court, they are prohibited from using any information gained from Confidential Discovery Material for any purpose other than rendering consulting services to a Party or Class Party for this litigation.

Even more unreasonable is HP's proposal that an Expert or Consultant working on this case disqualify themselves from future employment.  Under its suggested language, an Expert in this case would be prohibited from doing *any work* on behalf of *any company* that "could be reasonably construed as a competitor to" the more than thirty Third Parties for what is likely to be several years -- even if the work has nothing to do with the microprocessor or computer

RLF1-3019800-1

industry. This is unduly restrictive and unnecessary. Third Parties are adequately protected from competitive disadvantage through the sanctions available for any Expert's or Consultant's failure to comply with the terms of this Protective Order as well as the Expert's or Consultant's own ethical rules. Plaintiffs do not propose any change to this section.

16. **Paragraph 6(c)** - This section allows for the disclosure of Confidential Discovery Material to two of the Parties In-House Litigation Counsel.

*Third Party Response:* Several Third Parties objected to this section because it does not require that In-House Litigation Counsel be identified to the Producing Parties. HP has also requested a provision allowing Third Parties to object to these identified individuals having access to Confidential Discovery Material. Fry's also suggested implementing a two-tier system under the Protective Order to prevent the disclosure of sales documents to In-House Litigation Counsel.

*Plaintiffs' Response:* Plaintiffs agree to disclose the identity of the two designated In-House Litigation Counsel who will be permitted to receive Confidential Discovery Material. However, Plaintiffs will not agree to provide Third Parties with an opportunity to object. As with the Experts and Consultants, these individuals will be required to sign and execute the Acknowledgment of Protective Order, and will thereby be bound by the terms of the Order. With respect to Fry's suggestion, Plaintiffs believe a two-tiered system is impractical and unnecessary. Third Parties are adequately protected from competitive disadvantage through the sanctions available for failure to comply with the terms of this Protective Order.

**Proposed Revision:** Plaintiffs and propose the following revision of Para. 6(c).

| (c) | Two In-House Litigation Counsel identified to the ~~opposing~~ Producing Party; |
| --- | --- |

17. **Paragraph 6(f) -** This section describes to whom Confidential Discovery Material may be disclosed in the context of a deposition. It specifically allows for Confidential Discovery Material of a Producing Party to be shown to that Producing Party's former employee if the Receiving Party's Outside Counsel "reasonably and in good faith believes" that the former employee has received the document or became familiar with its contents, in the course of his or her former employment.

*Third Party Response:* HP and Egenera objected to this provision on the basis that the "reasonably and in good faith" standard does not adequately protect Third Parties from the potential disclosure of competitively sensitive information to former employees who in fact were never privy to the documents or information. HP argues that this is particularly problematic when the former employee now works for a competitor of the Third Party. HP and Egenera both propose a provision that would require the Parties to provide notice and an opportunity to object before the disclosure in a deposition of Confidential Discovery Material to a Producing Party's former employee. Also, Best Buy pointed out that the term "Opposing Party" is undefined and therefore ambiguous.

*Plaintiffs' Response:* Under Paragraph 6(f), a deposing Party may only show a witness Confidential Discovery Material that the deposing party believes, in good faith, the witness received or became familiar with in the ordinary course of his or her business duties. In other words, before showing confidential information to a former employee, the deposing Party must have a good faith belief that the witness has seen the information before. Further, disclosure to a witness during a deposition does not entail copying or giving a document to the witness; it merely entails *showing* a document to the witness.

It is exceeding unlikely that any deponent will be shown a document discussing anything he or she didn't already know or, should that happen, from making any use of the document or the information. Moreover, deponents are prohibited from using any "new" information. Pursuant to Paragraph 10 of the Order, before disclosure can be made to a former employee under Paragraph 6(f), the witness must be informed of the existence of this Protective Order, the confidential status of the information disclosed, and the restriction that the information not be further disseminated or used for any purpose other than the litigation. In addition, counsel for the deposing Party must request that the witness execute and agree to the terms of the Acknowledgment of Protective Order. These procedures adequately protect the competitive interests of the Producing Parties.

Furthermore, requiring the Parties to provide notice and opportunity to object any time they want to show a Producing Party's documents to the Producing Party's *own* former employees in a deposition would result in unnecessary delay and burden. Plaintiffs propose revising this section to substitute the term "Receiving Party" with the term "Opposing Party" in response to Best Buy's comment.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 6(f).

> (f)    During the deposition of any current employee, director, agent or Rule 30(b)(6) designee of the Producing Party, an Opposing a Receiving Party may show the Producing Party's witness any document produced by the Producing Party; and it may show to any former employee of the Producing Party any document the Receiving Party's Outside Counsel reasonably and in good faith believes to have received the information or document, or to have become familiar with its contents, in the ordinary course of his or her business duties, consistent, however, with the provisions of paragraph 10;

18. **Paragraph 6(g)** - This section allows for the disclosure of Confidential Discovery Material to its authors, addressees, copyees or "other persons whom the Receiving Party's

Outside Counsel reasonably and in good faith believes to have received the information or document, or to have become familiar with its contents, in the ordinary course of his or her business duties."

*Third Party Response:* As with section 6(f), both Egenera and HP objected to this section on the basis that the "reasonably and in good faith" standard does not adequately protect Third Parties from the potential disclosure of competitively sensitive information and may result in the disclosure of a Producing Party's Confidential Discovery Material to potential customers and competitors. They again seek notice and an opportunity to object before disclosure of Confidential Discovery Material is made to someone who is not an author, addressee or copyee of the information.

*Plaintiffs' Response:* As with section 6(f), a Party may only show an individual Confidential Discovery Material that the Party believes, in good faith, the individual received or became familiar with in the ordinary course of his or her business duties. Also, like section 6(f), disclosure under this section is governed by Paragraph 10, which requires counsel to inform the individual of the existence of this Protective Order, the confidential status of the information disclosed, and the restriction that the information not be further disseminated or used for any purpose other than the litigation, before any disclosure of Confidential Discovery Material can be made. These individuals will also be asked to agree to the terms of the Acknowledgment of Protective Order before receiving any Confidential Discovery Material. These procedures adequately protect the competitive interests of the Producing Parties. Plaintiffs do not propose any revision.

19. **Paragraph 7 -** This paragraph relates to the Acknowledgements of Protective Orders that individuals must execute or agree to before receiving Confidential Discovery Material.

*Third Party Response:* The Distributors, Fry's and Egenera objected to this provision on the basis that the Third Parties are not given access to the Acknowledgements. Instead, they are to be maintained by the Parties and available to the Court upon request.

*Plaintiffs' Response:* Complying with the Third Parties' request would require that Plaintiffs turn over a roadmap of highly sensitive work product that could greatly compromise Plaintiffs' ability to develop information from sources who, given the nature of this case, are likely to be predisposed against cooperating with Intel's opponents. This is particularly true in the case of former employees, who may be privy to information that might embarrass their former employers. Nor is there any need for the requested disclosure. Individuals who have signed the Acknowledgements are bound by the terms of the Protective Order and are subject to sanctions and penalties for non-compliance. Disclosing their identities to Third Parties will do little to further ensure compliance. Plaintiffs do not propose any revision.

20. **Paragraph 8 -** This paragraph prohibits attorneys for the Parties who receive technical documents from participating in the preparation or prosecution of patent applications or licenses related to microprocessors and chipsets until one year after the conclusion of the litigations.

*Third Party Response:* Several Third Parties objected to this provision as too narrow and sought to expand it. For example, several Japanese OEMs proposed expanding this prohibition to include "all persons who receive Confidential Discovery Material" and stated that it should contain the same prohibitions as Definition J (for In-House Litigation Counsel). Microsoft suggested expanding the forbidden subject areas beyond microprocessors and chipsets.

*Plaintiffs' Response:* Because this provision applies to all attorneys for the Parties (not just in-house counsel), it will necessarily restrict the activities and employment opportunities of

many people. Therefore, it must be narrowly tailored since the prohibitions attach to these individuals and restrict their activities for years, even in the event that they no longer work for a Party or Class Party. While Plaintiffs are cognizant of the Third Parties' competitive concerns, it is important to note that these attorneys will be bound by this Protective Order and will be barred from using any of the Confidential Discovery Material they receive outside of this litigation. In addition, attorneys are governed by strict conflict rules that also serve to protect the interests of Producing Parties. Despite the need to keep the prohibitions in this paragraph narrowly tailored, Plaintiffs have agreed to expand the scope of the prohibition to accommodate some of the Third Party concerns.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 8.

> 8.    Any attorney (including In-House Litigation Counsel) for any Party or Class Party who receives any technical document designated Confidential Discovery Material ~~produced~~ by a Producing Party other than his or her client shall not participate in the preparation or prosecution of any patent application or patent license relating to <u>any aspect of</u> microprocessors ~~or~~, chipsets<u>, PCs, operating systems, software or servers discussed in any such technical document.</u> from the time of receipt of such information through and including one (1) year following the conclusion of the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation, whichever occurs later.

21. **Paragraph 9 -** This paragraph governs the storage of Confidential Discovery Material and prohibits the storage of Confidential Discovery Material at the business premises of a Receiving Party.

*Third Party Response:* Fry's objected to this provision because it allows In-House Litigation Counsel to review Confidential Discovery Material at his or her normal workplace electronically. Fry's argues that this is the equivalent of "storing the documents at the offices of

In-House Counsel." Fry's proposes that In-House Litigation Counsel only be granted access to view Confidential Discovery Material at the offices of their outside counsel. Japanese OEMs also objected on the basis that any electronic access to Confidential Discovery Material must be separate from the facilities or servers of any Party.

*Plaintiffs' Response:* Plaintiffs should not have to further restrict In-House Litigation Counsel's electronic access to Confidential Discovery Material. It is not practical for AMD's In-House Litigation Counsel to access documents at its Outside Counsel's offices because AMD's In-House Litigation Counsel is in Texas and its Outside Counsel's offices are in California and Delaware. In addition, it is also not practical to require the Parties' In-House Litigation Counsel to access these documents from an external facility. In-House Litigation Counsel will be overseeing this litigation and it is not reasonable to expect them to go to a local Kinko's whenever they need to review Confidential Discovery Material in this litigation. Under this Protective Order, In-House Litigation Counsel is required to exercise reasonable precautions to prevent unauthorized persons from accessing or otherwise viewing Confidential Discovery Material and will be sanctioned for failing to do so. As evidenced by the fact that arch-rivals AMD and Intel believe it to be adequate, this provision sufficiently protects the interests of the Producing Parties. Plaintiffs do not propose any revision to this paragraph.

22. **Paragraph 10 -** This paragraph outlines the procedure for disclosing Confidential Discovery Material to individuals pursuant to Paragraphs 6(f) and (g).

*Third Party Response:* Some Third Parties objected to Paragraph 10 on the basis that under its terms, counsel is only obligated to *request* that a witness execute and agree to the terms of the Acknowledgement of Protective Order before disclosing Confidential Discovery material to that witness. Dell and Egenera argued that counsel should *require* that a witness execute and

agree to the terms of the Acknowledgment, and if a witness were to refuse, no disclosure could be made. Dell further requests that no Confidential Discovery Material of a Third Party be shown to a witness employed by a competitor of that Third Party or another Producing Party, except pursuant to a separate written agreement.

*Plaintiffs' Response:* Plaintiffs agree to revise Paragraph 10 to specify that Parties will not disclose Confidential Discovery Material to a witness over whom they have control until the witness has executed and agreed to the terms of the Acknowledgment of Protective Order. Limitation to witnesses "over whom the Party has control" is a reasonable compromise and will prevent a potentially hostile witness from avoiding significant deposition topics altogether by simply refusing to sign the Acknowledgment. Plaintiffs cannot, however, agree to Dell's suggested revision regarding witnesses who are employees of a competitor or another Producing Party. As discussed above, Paragraphs 6(f) and 6(g) both state that the Receiving Party may only show an individual Confidential Discovery Material that he or she actually authored or received, or that the Receiving Party reasonably believes, in good faith, the individual received or became familiar with in the ordinary course of his or her business duties. This is a reasonable standard that affords adequate protection against a witness being shown competitively useful information that he or she didn't already know. Moreover, with more than thirty Producing Parties in this litigation, it would be unworkable to require the Parties to enter into separate agreements whenever they want to show a witness a document produced by another Third Party.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 10.

---

10. Upon disclosing Confidential Discovery Material pursuant to paragraphs 6(f) or 6(g), other than to a current employee, director, agent or Rule 30(b)(6) designee of the Producing Party, counsel shall inform the witness of the existence of this Order, the confidential status of the information disclosed, and the restriction that the information not be further disseminated or used for any purpose other than the litigation; and counsel shall request the witness to execute and agree to the terms of the Acknowledgment of Protective Order set forth and attached hereto. A Party or Class Party shall not disclose Confidential Discovery Material to a witness over whom the Party or Class Party has control until the witness has executed and agreed to the terms of the Acknowledgement of Protective Order. No copies of Confidential Discovery Material shall be provided to suchthe witness other than for purposes of the deposition examination without the written consent of the Producing Party. No Confidential Discovery Material shall be shown to a former employee of a partyParty employed by the opposing partyParty, except pursuant to separate written agreement.

---

23. **Paragraph 11** - Paragraph 11 outlines the process to be used in disclosing Confidential Discovery Material to Experts or Consultants.

*Third Party Response:* Some Third Parties have objected to Paragraph 11 on the basis that before any Confidential Discovery Material of a Third Party can be disclosed to an Expert or Consultant, the identity of that Expert or Consultant should be disclosed to the Third Party that produced the Confidential Discovery Material and that the Third Party should be given an opportunity to object. Further, some Third Parties have requested that any Experts or Consultants utilized in this litigation be prohibited from engaging in any business activity related to the manufacture or sale of devices using microprocessors or chipsets for three years after their

38

employment in this litigation. Lenovo and IBM requested that each Party agree that no current or former employee will serve as an Expert or Consultant.

*Plaintiffs' Response:* As discussed above with respect to Paragraph 6(b), the Parties should not be made to identify their Experts or Consultants to Third Parties or provide Third Parties with notice and an opportunity to object to the Experts or Consultants selected by the Parties. Nor is it reasonable to prohibit Experts or Consultants from engaging, for the three years following the conclusion of the litigation, in any business activity related to any product using microprocessors. Third Party confidentiality concerns are adequately addressed by the severe limitations on an Expert's or Consultant's use of Confidential Discovery Material, as well as their required submission to the terms of this Protective Order and the jurisdiction of this Court. To require that all Experts and Consultants refrain from future employment in their field of expertise would severely limit any Party's ability to hire an appropriate Expert or Consultant.

In light of Lenovo's and IBM's more limited requested revision, Plaintiffs are prepared to agree not to use current employees as Experts or Consultants under this Protective Order. However, the bar should not extend to former AMD or Intel employees. Given that this case will undoubtedly require the Parties to retain individuals knowledgeable of the microprocessor industry, and given that there are only two companies who participate in this market (AMD and Intel), the proposed prohibition would effectively prevent the Parties from retaining industry experts who could ever be qualified as such. Nor, for the reasons stated earlier, is there any justification for such a bar given the current restrictions placed on those participating as Experts or Consultants.

**Proposed Revision:** Plaintiffs and Intel propose the following addition to Para. 11.

> Except with the consent of the Producing Party, however, Confidential Discovery Material shall not be disclosed to an expert or consultant who at the time of the intended disclosure is an officer or employee of a Party.

24. **Paragraph 14 -** This paragraph outlines the procedure for the filing of final trial exhibit lists by Parties.

*Third Party Response:* Some Third Parties objected to Paragraph 14 on the basis that it should include considerations for Third Party Confidential Discovery Material. Third Parties Lenovo, IBM, Dell, and Microsoft requested that a Third Party be given notice before any of its Confidential Discovery Material is used in an open court proceeding. Several Japanese OEMs requested that this notice be at least 60 days before any proposed public use. Hitachi and HP suggested that this paragraph include an opportunity for a meet and confer between the Party wishing to use Confidential Discovery Material at trial and the Producing Party.

*Plaintiffs' Response:* The proposed Protective Order does not purport to govern the use of Confidential Discovery Materials at trial, and it would be premature to establish those ground rules now. Plaintiffs, however, agree to revise Paragraph 14 to include a provision that requires the Parties to meet and confer with any Third Party whose documents may be used at trial concerning their appropriate treatment and to afford Third Parties sufficient advance notice so that Third Parties can move to have the materials received under seal. Plaintiffs object to the Japanese OEM's request of a 60-day notice period, as this revision would be unduly burdensome on the Parties. Plaintiffs contend that the language "sufficient advance notice" and the requirement of a meet and confer satisfy their concerns regarding protection. Moreover, in response to objections to Paragraph 23 discussed below, Plaintiffs propose a revision requiring

Parties to give notice to Third Parties in the event that the Third Parties material is subject to a motion to unseal.

**Proposed Revision:**    Plaintiffs and Intel propose the following revision of Para. 14

> 14.    The parties Parties agree to meet and confer prior to the filing of final exhibit lists to evaluate, on a document by document basis, which of the proposed exhibits require confidential treatment for purposes of trial. The confidentiality legend may be redacted by the Producing Party prior to trial for any use of the material at trial by any party. Party or Class Party. The Parties further agree to meet and confer with any Third Party whose documents will or may be used at trial concerning their appropriate treatment and to afford such Third Parties sufficient advance notice of any such use such that they can move to have the materials received under seal. Should any material furnished by a Third Party and received under seal be the subject of a motion to unseal, the Parties shall give sufficient notice to the Third Party so that it may oppose the motion.

25. **Paragraph 15 -** Paragraph 15 extends the full benefits of the Protective Order to all Third Parties producing documents in the litigation.

*Third Party Response:*  Some Third Parties have requested that their right to object to, or resist, discovery requests be explicitly reserved in this paragraph.

*Plaintiffs' Response:*  The requested revision is unnecessary. The Protective Order does not limit or restrict a Third Party's ability to object to subpoenas or discovery requests, and it should not be burdened with this or other unnecessary provisions, particularly those unrelated to the confidentiality of Discovery Materials.[11]  However, Plaintiffs do propose a revision clarifying

---

[11] Similarly, other Third Parties have raised issues relating to the enforceability of the Protective Order and discovery costs. Egenera sought to have language added to Paragraph 29 that stated that the Court retains jurisdiction to enforce the terms of the Protective Order after conclusion of the litigations. However, it is unnecessary to include a provision that states the simple fact that this Court retains

that the Order does not void or supersede prior agreements between any of the Parties and Third Parties (including agreements respecting the use of their materials at trial) that by their terms survive the entry of a protective order.

**Proposed Revision:**  Plaintiffs, but not Intel, propose the following addition to Para. 15.

---

15.    Any Third Party that produces documents or provides testimony in the AMD Litigation, the Class Litigation or the California Class Litigation, either voluntarily or by compulsory process, shall have the full benefits and protections of this Protective Order and may designate documents or deposition testimony as Confidential Discovery Material in the manner, and subject to the same protections, set forth above.  Nothing in this Order shall be construed to allow any Third Party to obtain access to any Confidential Discovery Material produced by any Party, Class Party, or other Third Party.  Nor should anything in this Order be deemed to void or supersede any agreement reached between a Party or Class Party, on the one hand, and a Third Party, on the other, respecting Confidential Discovery Material that by its terms survives the entry of a protective order.

---

26. **Paragraph 16(a)** - Paragraph 16(a) describes the Designation Request process; *i.e.*, a request by a Receiving Party intending to make some use of Discovery Material, to the Producing Party triggering the latter's obligation to either designate it as Confidential Discovery Material under the Protective Order or release it from the Order.

*Third Party Response:*  Some Third Parties have objected to this paragraph on the basis that it does not provide sufficient time for response.  Further, Acer and the Distributors have objected to the use of the term "massive," which they find ambiguous.  Hitachi has requested that

---

jurisdiction to enforce its own Order.  In addition, both Acer and the Distributors suggested adding provisions to the Protective Order related to discovery costs.  Plaintiffs believe that issues related to discovery costs should be negotiated individually between the Producing Parties and any subpoenaing Parties, and should not be addressed in the Protective Order.

the Receiving Party also be required to identify the person(s) to whom it intends to disclose the material and to limit disclosure to that person.

*Plaintiffs' Response:*    Plaintiffs agree to amend this paragraph to eliminate the ambiguous term "massive." However, the time period normally allowed for a Producing Party to respond to a Designation Request -- 10 days -- is more than adequate. Under the definitions of this Protective Order, a Producing Party is actually allowed ten *court* days to respond to a Request (Definition V.; Fed. R. Civ. P. 6(a))  Further, the Producing Party need only make a decision whether the requested material is Confidential Discovery Material under the Protective Order or not. No briefing or extended explanations are necessary at this stage.

Plaintiffs also resist Hitachi's request that the Receiving Party identify the person to whom it intends to disclose the material and limit disclosure to that individual. A Receiving Party is likely to make a Designation Request only for information it believes will not qualify as Confidential Discovery Material under this Protective Order. Information that does not qualify as Confidential Discovery Material is not entitled to protection, and as stated above in the responses to Paragraph 1, may be disclosed outside the auspices of this litigation to anyone for any lawful purpose. As such, a Receiving Party should have no obligation to identify the recipient of its proposed disclosure, a provision that could in any event work mischief with respect to cooperating witnesses.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 16(a).

(a)    Designation Request: The Receiving Party shall identify with specificity (*i.e.*,

by document control numbers, deposition transcript page and line reference,

or other means sufficient to easily locate such materials) the Discovery

Material it intends to disclose and a representation that the material is

probative of one or more material facts in this litigation. A Designation

Request will trigger an obligation on the part of the Producing Party to make a

good faith determination of whether the Discovery Material is entitled to be

treated as Confidential Discovery Materials under Paragraph R. Except in

the case of a ~~massive~~ Designation Request ~~as to which a prompt reply would~~

~~be impractical~~for more than 250 documents or more than 250 pages of

deposition testimony, within ten (10) ~~court~~ days the Producing Party shall

respond in writing to the Designation Request either agreeing to the

disclosure or designating the material as Confidential Discovery Material. If a

Designation Request entails more than 250 documents or more than 250

pages of deposition testimony, the Requesting Party and the Producing Party

shall meet and confer, in good faith, to establish a reasonable timeframe for

designation and response.

27. **Paragraph 16(b)** - Paragraph 16(b) describes the procedure that is triggered if a

Receiving Party does not agree with the Producing Party's designation under Paragraph 16(a).

After the Receiving Party makes a written objection, the Producing Party may, within ten days,

make written application to the Court for protective treatment of the material.

*Third Party Response:* Some Third Parties have objected that this Paragraph does not provide sufficient time after a Receiving Party's objection for the Producing Party to apply for protection from the Court. In addition, Best Buy and Egenera have requested that the burden of applying to the Court be placed on the Receiving Party rather than the Producing Party.

*Plaintiffs' Response:* Plaintiffs agree to revise this paragraph to allow the Producing Party more time to apply to the Court for protection. The time for application to the Court, which was previously ten (10) days, has now been extended to twenty (20) days from the time of receipt of a Receiving Party's objection.[12]

Plaintiffs do not agree that the burden in connection with a disputed confidentiality designation should be shifted to the Receiving Party. Under Federal Rule of Civil Procedure 26(c), the producing party requesting protection of material turned over in discovery has the burden of demonstrating good cause for such protection. *See, e.g., Glenmede Trust Co.*, 56 F.3d at 483; *Federal Communications Comm'n. v. Schreiber*, 329 F.2d 517, 534 (9th Cir. 1964) (a person seeking a protective order in discovery proceedings has the burden of justifying it); *Essex Wire Corp. v. E. Elec. Sales Co.*, 48 F.R.D. 308, 310 (E.D. Pa. 1969) (it is incumbent upon the movants to show why this information should be protected). Allowance in Paragraph 3 for initial designation of all non-public documents as Confidential Discovery Material does not satisfy this burden and should not be construed to do so, as it was drafted solely as a concession to ease the burden of Third Party production. Accordingly, if a Receiving Party makes a subsequent Designation Request, it is incumbent upon the Producing Party, the party seeking protection, to show that the material in question qualifies for protection.

---

[12] Under Federal Rule of Civil Procedure 6(a), because this period is greater than 10 days, it is measured in *calendar* days rather than court days.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 16(b).

> (b)    Court Determination:  If the Receiving Party disagrees with a Producing
> Party's designation of material as Confidential Discovery Material, it shall
> provide to the Producing Party a written objection.  Thereafter, the Producing
> Party may make written application to the Court for protective treatment.
> Except in the case of disputes involving massive numbers of documents, the
> application will be made within ~~ten (10) court~~twenty (20) days of receiving the
> Receiving Party's written objection to the designation.  If the Producing Party
> fails to make such timely application, the Producing Party's designation will
> be void.

28. **Paragraph 16(e) -** Paragraph 16(e) describes the procedure for redacting the confidentiality legend from documents determined to be non-confidential.  Under the current language, a Producing Party shall produce a new version of the Discovery Material, with the confidentiality legend redacted, within ten days of its de-designation.

*Third Party Response:*  Best Buy and Egenera object to this paragraph on the basis that Producing Parties should be allowed twenty days to complete this step.  In addition, the Distributors request that the Court be allowed to designate that another Party produce the new redacted version.

*Plaintiff's Response:*  Given that the Protective Order incorporates the time-calculation procedures of Federal Rule of Civil Procedure 6(a), Producing Parties actually have ten *court* days to redact and produce a new version of any document deemed non-confidential under the Designation process.  Plaintiffs maintain that this is sufficient time for a Producing Party to simply re-produce a document.  In addition, Plaintiffs do not agree with the Distributors'

suggestion that Parties should be designated by the Court to redact Discovery Materials themselves.  The burden ought to be on the Producing Party who is in possession of the original document and therefore in a better position to produce a new version without the confidentiality marking.

29.  **Paragraph 17 -** Paragraph 17 provides that if a Receiving Party gains access to Discovery Material of another Party from a Third Party, governmental agency or court, the Receiving Party shall notify the Producing Party and give the Producing Party an opportunity to designate the material as confidential.

*Third Party Response:*  Some Third Parties suggested that this language be clarified, so that the party originating the documents be notified, rather than the Producing Party (which could mean a Third Party that is once-removed from the documents).  Several Third Parties requested that the provision be extended to apply explicitly to Third Party Discovery Materials as well as Party Discovery Materials.

*Plaintiffs' Response:*  Plaintiffs agree to revise Paragraph 17 to accommodate the Third Party concerns raised above.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 17.

17.     In the event that any Party or Class Party gains access to Discovery Material of an~~the~~ other Party ~~from~~or a Third Party from another Producing Party or a U.S., state, or foreign governmental agency or court, that has not been designated as Confidential Discovery Material, the Receiving Party shall promptly notify ~~the Producing Party~~, in writing, the party whose documents are implicated. The ~~Producing Party~~party whose documents are implicated shall be entitled, and shall be given a reasonable opportunity (not to exceed thirty (30) days following notice) prior to any non-confidential disclosure or use of such materials, to designate, as appropriate, such materials as Confidential Discovery Material pursuant to the terms of this Protective Order. Such designation shall be subject to the terms set forth in Paragraph 16. If any such Discovery Material has already been produced and designated as Confidential Discovery Material pursuant to the terms of this Order, then such material shall at all times be governed by the terms of this Protective Order even though also received from a Third Party or a U.S., state or foreign governmental agency or court. ~~This paragraph shall not apply to~~

~~materials freely furnished by the Producing Party to a Third Party or a U.S., state, or foreign~~ ~~governmental agency or court without any requested restriction on the recipient's use or~~ ~~disclosure of the materials or without otherwise identifying the confidential nature of the~~ ~~materials. Nor shall it~~ Designation Requests regarding the Discovery Material described in this paragraph shall be made directly to the party whose documents are implicated, rather than the Third Party or U.S., state, or foreign governmental agency or court from whom the Receiving Party received the Discovery Material. This paragraph shall not govern the use in connection with the Japanese Litigation of materials produced in that Litigation, which instead will be controlled by the Japanese court.

30. **Paragraph 18** - This paragraph outlines the procedure for producing documents that may contain the confidential information of another party.

*Third Party Response:*   Several Third Parties objected to this provision because it required Producing Parties to provide notice to AMD and/or Intel before the Producing Party could disclose AMD's or Intel's confidential information to the other.

*Plaintiff's Response:*   AMD and Intel had previously entered into a stipulation that permitted Third Parties to produce documents that would otherwise be subject to non-disclosure agreements with AMD or Intel.   However, that stipulation does not survive entry of the Protective Order.  In light of the Third Party objections, Plaintiffs propose revising Paragraph 18 to exclude the notice provision for AMD and Intel, and also propose a new Paragraph 19 which effectively incorporates AMD and Intel's prior stipulation.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 18.

> 18      Except as provided in this paragraph, a Party, Class Party or Third Party who is otherwise required in the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation to disclose or produce documents ~~or other Discovery Material that may~~ shall not delay or refuse to do so on grounds that such documents contain ~~the Confidential Discovery Material~~ information of another ~~Party, Class Party or Third Party ("Originating Party")~~ party (other ~~Discovery Material are held by the Party, Class Party or Third Party~~ than AMD and Intel) which is subject to obligations of confidentiality ~~toward the~~ in favor of that party ("Originating Party")   Instead, the Party, Class Party or Third Party from whom discovery is sought shall promptly notify the "Originating Party" in writing of the required disclosure   The Originating Party shall be given a reasonable opportunity (not to exceed thirty (30) days from the date of notice), prior to any production or disclosure of any such Discovery Material, to object to the production and until those objections are resolved, the Discovery Material will not be produced   In the event that such Discovery Material is produced, the Discovery Material produced shall be deemed Confidential Discovery Material pursuant to Paragraph 3 and shall be marked by the Producing Party in accordance with the requirements of Paragraph 4

**Proposed Addition:** Plaintiffs and Intel propose the following additional Para. 19.

19.    The production of documents designated as Confidential Discovery Material pursuant to this Protective Order by a Third Party in the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation shall not constitute a violation of the confidentiality provisions of any nondisclosure agreement ("NDA") between any party and AMD or Intel. However such Third Party may consult, in a timely fashion, with AMD and/or Intel about the nature of the materials to be produced in advance of their production for the purpose of ensuring that the confidential materials are adequately protected from public disclosure.

31.    **Paragraph 20 (formerly Paragraph 19) -** This paragraph outlines the procedures for notifying a Party when its Confidential Discovery Material is requested or ordered for production by another court or government agency.

*Third Party Response:* Egenera objected to the fact that this provision does not require notice to Third Parties when their Confidential Discovery Material is requested or ordered for production.

*Plaintiffs' Response:* Plaintiffs agree with the concern raised by Egenera and accordingly have proposed a revision that would require notice when a Third Party's Confidential Discovery Material is requested.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 19 (now Para. 20).

19. 20. If another court or any U.S., state or foreign governmental agency should request, subpoena, or order the production of Confidential Discovery Materials from any Party that have been produced by any other Party or Third Party, the Party receiving such a request shall promptly notify the Producing Party in writing. Should the Producing Party object to the production, it may seek appropriate relief from the appropriate court or agency, and pending such a request and, if necessary, the entry of an appropriate stay order, the party Party receiving the request shall not produce the material in dispute so long as it may lawfully refuse.

32. **Paragraph 22 (formerly Paragraph 21)** - This paragraph outlines the procedures for providing Confidential Discovery Material for use in the Japan Litigation.

*Third Party Response:* In addition to the general objections to any use of discovery material in the Japan Litigation (which are addressed with respect to Paragraph 1), some Third Parties objected on the basis that this paragraph was not consistent with the provisions of Paragraph 6(d).

*Plaintiff's Response:* Plaintiffs agree with the concerns raised and propose the following revision to resolve the inconsistency between the paragraphs.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 21 (now Para. 22).

> ~~21.~~22.  In the event that any Confidential Discovery Material is also made available for use in the Japan Litigation (as contemplated by this Order), the material shall remain subject to all terms of this Protective Order and the Party desiring to use or file papers containing such information shall identify it to the appropriate Japanese Court as Confidential, ~~inform the Japanese Court,~~ so that the ~~information is subject to the terms~~provisions of ~~this Protective Order entered by this Court, furnish a copy of the Protective Order to the Japanese Court, and request that the Japanese Court or other authority respect the terms of this Protective Order and maintain the confidentiality of the material so produced.~~ Paragraph 6(d) can be appropriately implemented.

33. **Paragraph 24 (formerly Paragraph 23)** - This provision provides that any Confidential Discovery Material contained in any pleading, motion or exhibit shall be filed with the Court under seal.

*Third Party Response:* Both Dell and Microsoft requested that before the Confidential Discovery Material of any Third Party may be unsealed, that the Third Party be given notice and an opportunity to be heard.

*Plaintiffs' Response:* Plaintiffs and Intel have added a provision providing such notice and opportunity to Paragraph 14.

34. **Paragraph 27 (formerly Paragraph 26)** - This provision describes the destruction obligations of the Parties for Confidential Discovery Material following conclusion of the litigations.

*Third Party Response:* Egenera objected to this provision on the basis that the "conclusion" of the litigations was not specifically defined. In addition, Lenovo and IBM

objected and sought to have the destruction obligation become effective on a "case-by-case" basis at the conclusion of each litigation matter, and not "whichever occurs later."

*Plaintiffs' Response:* Plaintiffs do not believe this provision requires any revision. The term "conclusion of the litigation" is generally understood and does not require further definition. In addition, with respect to Lenovo and IBM's objection, Plaintiffs believe that a case-by-case determination is impractical and unnecessary.

35. **Paragraph 31 (formerly Paragraph 30)** - This paragraph specified that entry of the Protective Order does not diminish any privilege or attorney work product claims and reserves the rights of the Parties to move for additional protective orders.

*Third Party Response:* Several Third Parties objected to the fact that Third Parties were excluded from seeking additional protective orders.

*Plaintiffs' Response:* Plaintiffs and Intel jointly propose a revised provision allowing for Third Parties for good cause to either seek modification of this Protective Order or to apply for other protective orders that do not relate to the confidentiality of Discovery Material.

**Proposed Revision:** Plaintiffs and Intel propose the following revision of Para. 30 (now Para. 31)

---

30-31.  Nothing contained in this Protective Order shall diminish any attorney-client privilege or attorney work product claim, or obligate any person to provide any discovery to which it asserts objections. Entry of the foregoing Protective Order is without prejudice to the right of the Parties ~~to apply for further protective orders regarding certain categories of information,~~ or ~~for modification of~~ any ~~provision of~~ Third Party, for good cause shown, to move for modification of this Protective Order, or to apply for other protective orders unrelated to the confidentiality of Discovery Material.

---

RLF1-3019800-1

36. **Paragraph 33 (formerly Paragraph 31) -** This paragraph addresses the potential inadvertent production of privileged material.

*Third Party Response:* Some Japanese OEMs objected on the basis that this provision only referred to Discovery Material produced subsequent to entry of this Protective Order, did not clearly extend to work product, and did not require the immediate return or destruction of inadvertently produced material. In addition, Egenera objected on the basis that this provision did not address documents that may be inadvertently produced without a confidentiality designation.

*Plaintiffs' Response:* Plaintiffs do not believe that this provision requires any revision in response to the objections raised by the Japanese OEMs. The term "privilege" in the provision includes the work product privilege. Further, a Receiving Party's obligations, should it receive information that may be privileged or which a Producing Party claims is privileged, are sufficiently defined by the ethical rules governing counsel. Plaintiffs do, however, agree that a new provision should be added to address the concerns raised by Egenera and propose a new Paragraph 32.

**Proposed Addition:** Plaintiffs and Intel propose the following additional Para. 32.

> 32.    In the event that a Producing Party discovers that it has failed to mark
> Confidential Discovery Material as required by Paragraphs 4 and 5, it may notify in writing the
> Receiving Party within a reasonable time of such discovery.  So long as the unmarked
> Discovery Material has not already been disclosed to persons other than as permitted by
> Paragraph 6 such that it has entered the public domain, the failure to mark such Confidential
> Discovery Materials shall not be deemed to be a waiver of the confidential status of the
> materials, and the Receiving Party shall return all copies of such material to the Producing Party
> to allow the materials to be appropriately marked.

RLF1-3019800-1

## CONCLUSION

Plaintiffs believe that these proposed revisions strike the appropriate balance of protecting the commercially sensitive business information of the Producing Parties while at the same time respecting the public's right to non-confidential pre-trial discovery material in a case of extreme public importance. Therefore, Plaintiffs respectfully request that the Court enter a Protective Order consistent with the revisions outlined in Plaintiffs' Response.


OF COUNSEL:

Charles B. Diamond, Esq.
Linda J. Smith, Esq.
Mark A Samuels, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars
7th Floor
Los Angeles, CA 90067-6035
(310) 553-6700
Attorneys for Advanced Micro Devices, Inc.
And AMD International Sales & Service, Ltd.

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Chad M. Shandler (#3796)
shandler@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King Street
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys For Advanced Micro Devices, Inc.
And AMD International Sales & Service, Ltd.
as to ASI Computer, Synnex, Tech Data, Best
Buy, Circuit City, Egenera, Fry's Electronics,
NEC, Hewlett-Packard, Lenovo Group,
Microsoft and Toshiba.

56

/s/ Adam L. Balick
Adam L. Balick (#2718)
abalick@bgbblaw.com
Bifferato, Gentilotti, Biden & Balick, P.A.
711 King Street
Wilmington, DE 19801-3503
(302) 658-4265
Attorneys For Advanced Micro Devices, Inc.
And AMD International Sales & Service, Ltd.
as to Acer, Avnet, Dell, Fujitsu, Hitachi,
Ingram, IBM and Sony

/s/ J. Clayton Athey
James L. Holzman (#663)
jlholzman@prickett.com
J. Clayton Athey (#4378)
jcathey@prickett.com
Prickett Jones & Elliott, P.A.
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
(302) 888-6509
Attorneys for Co-Lead and Interim Counsel for
Plaintiffs

Dated: May 30, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2006, I electronically filed the foregoing document with

the Clerk of Court using CM/ECF which will send notification of such filing(s) and have sent by

Hand Delivery to the following:

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> 1313 North Market Street
> P. O. Box 951
> Wilmington, DE   19899

and have sent by Federal Express to the following non-registered participants:

> Darren B. Bernhard, Esquire
> Howrey LLP
> 1299 Pennsylvania Avenue, N.W.
> Washington, DC 20004-2402

> Robert E. Cooper, Esquire
> Daniel S. Floyd, Esquire
> Gibson, Dunn & Crutcher LLP
> 333 South Grand Avenue
> Los Angeles, California 90071-3197

On May 30, 2006, the foregoing document was electronically mailed to the following

non-parties:

ASI Computer Technologies, Inc.
Averatec
Best Buy Company, Inc.
Circuit City Stores, Inc.
CompUSA
Egenera, Inc.
Fry's Electronics, Inc.
Hewlett-Packard Company
Lenovo Group, Ltd.
Microsoft Corporation
MPC Computers, Inc.
NEC Corporation
NEC-CI
Office Depot
Rackable Systems
Supermicro
Synnex Corporation
Tech Data Corporation
Toshiba Corporation
Acer America Corporation

Acer, Inc.
Appro International
Avnet, Inc.
Dell Inc.
Fujitsu America
Fujitsu Computer Systems, Inc.
Fujitsu Limited
Fujitsu-Siemens Computers USA
Gateway, Inc.
Hitachi, Ltd.
Ingram Micro, Inc.
International Business Machines Corporation
Skype
Sun Microsystems
Sony Corporation
Sony Electronics, Inc.

_____
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com