## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ADVANCED MICRO DEVICES, INC., a )
Delaware corporation, and AMD )
INTERNATIONAL SALES & SERVICE, )    Civil Action  No. 05-441 JJF
LTD., a Delaware corporation, )
                                )
                            Plaintiffs, )
                                )
                vs. )
                                )
INTEL CORPORATION, a Delaware )
corporation, and INTEL KABUSHIKI )
KAISHA, a Japanese corporation, )
                                )
                         Defendants. )

## NOTICE OF ISSUANCE OF SUBPOENA

PLEASE TAKE NOTICE that the attached subpoena duces tecum was issued for

service upon Costco Wholesale Corporation on the date set forth therein.

BIFFERATO, GENTILOTTI, BIDEN & BALICK, LLC

_____
Adam Balick (#2718)
711 King Street
Wilmington, Delaware  19801
(302) 429-1900
abalick@bgbblaw.com

Dated: June 22, 2006              Attorney for Plaintiffs

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| Advanced Micro Devices, Inc., and AMD International Sales & Services, Ltd. | **SUBPOENA IN A CIVIL CASE** |
| v. | Case Number:[1] 05-441-JJF, MDL 05-1717-JJF |
| Intel Corporation and Intel Kabushiki Kaisha | |

In Re: Intel Corp Microprocessor Antitrust Litigation

TO:    Costco Wholesale Corporation
c/o Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
**See Attached Schedule A**

| PLACE | DATE AND TIME |
|---|---|
| Bifferato, Gentilotti, Biden & Balick LLC 711 North King Street Wilmington, DE 19801 | July 21, 2006 5 p.m. (Eastern Standard Time) |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*    Attorney For Advanced Micro Devices, Inc. and AMD International Sales and Services, Ltd. | June 22, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Adam Balick, Esquire
Bifferato, Gentilotti, Biden & Balick LLC
711 North King Street
Wilmington, DE 19801
(302) 429-1900

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

### Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, Core, Core Duo, and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

5. For purposes of this document request, "COMPUTER SYSTEM" means any product that utilizes a MICROPROCESSOR including, without limitation, desktop computers, notebook computers, and workstations.

6. For purposes of this document request, "COMPANY" refers to Costco Wholesale Corporation and any of its controlled present or former subsidiaries, parents, and predecessor or successor companies. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

7. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3.  If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates.  For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4.  If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5.  With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6.  Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).  Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7.  Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8.   To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9.  At COMPANY's election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

### Acquisition of Computer Systems

1.   All DOCUMENTS constituting, reflecting, or discussing any past or present contractual relationship between COMPANY and AMD or INTEL, including, but not limited to, all advertising, marketing or promotional agreements, and all communications with AMD or INTEL regarding the terms of any such contractual relationship.

2.   All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning any FINANCIAL INDUCEMENT offered by INTEL to COMPANY in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

3.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT offered by INTEL related to the exclusive purchase of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or the purchase of a minimum volume of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or the purchase of a minimum percentage of COMPANY's requirements of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, whether total requirements or requirements for certain computer platforms, computer models or computer types.

4.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to any FINANCIAL INDUCEMENT offered by INTEL in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS or on any other INTEL product.

5.   All DOCUMENTS constituting, reflecting, or discussing payments, commissions, or "spiffs" paid to salespeople based on their individual sales of COMPUTER SYSTEMS containing INTEL and/or AMD MICROPROCESSORS.

6.   All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of COMPUTER SYSTEMS containing AMD MICROPROCESSORS, or COMPANY's purchases of COMPUTER SYSTEMS containing AMD MICROPROCESSORS or of COMPANY's plan to stock or promote COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

7.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that COMPANY restrict or limit its purchases, sales, or promotion of COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

8.   All DOCUMENTS constituting, reflecting, or discussing any FINANCIAL INDUCEMENT provided by INTEL on the condition that COMPANY limit its percentage of revenue or SKUs for COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

9.   All DOCUMENTS constituting, reflecting, or discussing any communications with AMD or INTEL concerning product placement or the amount of COMPANY's shelf space allocated or to be allocated to COMPUTER SYSTEMS containing INTEL or AMD MICROPROCESSORS.

10.  All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD product launch or

promotion, or support of AMD products at any trade show, conference, product launch, promotion or industry meeting.

11. All DOCUMENTS constituting, reflecting, or discussing any communications with suppliers of COMPUTER SYSTEMS concerning any FINANCIAL INDUCEMENT provided by INTEL to COMPANY in connection with the purchase or resale of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS.

12. All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of COMPUTER SYSTEMS containing INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement as a result of COMPANY's sale, purchase, or plans to stock or promote COMPUTER SYSTEMS containing AMD MICROPROCESSORS.

**Purchase History**

13. DOCUMENTS sufficient to show:

   a) the aggregate amount by quarter of the FINANCIAL INDUCEMENTS provided by INTEL to COMPANY, broken down by type as regularly recorded in your accounting systems, in connection with COMPANY's purchases of COMPUTER SYSTEMS (by quarter) since January 1, 2000.

   b) COMPANY's use of FINANCIAL INDUCEMENTS provided by INTEL including, without limitation, for advertising, newspaper circulars, FSI (Free Standing Inserts), in-store promotions, and sales personnel training since January 1, 2000.

   c) COMPANY's purchases of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

   d) COMPANY's retail sell-through of COMPUTER SYSTEMS on a monthly basis since January 1, 2000, broken down by original equipment manufacturer, model and type of MICROPROCESSOR.

**Comparisons of INTEL and AMD MICROPROCESSORS**

14. All DOCUMENTS reflecting or concerning any evaluation by COMPANY whether to purchase COMPUTER SYSTEMS containing MICROPROCESSORS from AMD or INTEL (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or INTEL's MICROPROCESSORS or COMPUTER SYSTEMS incorporating those MICROPROCESSORS; (b) the quality or reliability of AMD's or INTEL's

MICROPROCESSORS or COMPUTER SYSTEMS incorporating those
MICROPROCESSORS; (c) the reliability of INTEL or AMD as suppliers, including, but not
limited to, COMPANY's ability to obtain supply of COMPUTER SYSTEMS containing INTEL
or AMD MICROPROCESSORS; (d) the suitability of AMD's or INTEL's
MICROPROCESSORS for COMPANY's business objectives; (e) the future roadmap of INTEL
or AMD; (f) actual or expected consumer demand for COMPUTER SYSTEMS incorporating
AMD's or INTEL's MICROPROCESSORS; or (g) or any other reasons influencing
COMPANY's decision to purchase (or not purchase) COMPUTER SYSTEMS containing
MICROPROCESSORS from AMD or INTEL.

15. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies
prepared in connection with the consideration of the purchase or sale of COMPUTER
SYSTEMS containing AMD and/or INTEL MICROPROCESSORS.

16. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or
other writings prepared comparing COMPUTER SYSTEMS with INTEL and AMD
MICROPROCESSORS whether from a price, quality or other standpoint.

**Miscellaneous**

17. All DOCUMENTS constituting or reflecting consumer or customer feedback
regarding (a) COMPANY's selection of COMPUTER SYSTEMS containing AMD or INTEL
MICROPROCESSORS, or (b) COMPANY's advertising, marketing, promotion, or sale of
COMPUTER SYSTEMS containing AMD and/or INTEL MICROPROCESSORS.

18. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or
reliability of claims made by AMD or INTEL regarding the attributes of its
MICROPROCESSORS or COMPUTER SYSTEMS incorporating its MICROPROCESSORS.

19. All DOCUMENTS constituting, reflecting or discussing communications with AMD
or INTEL concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D.
Del.), or any of the allegations about COMPANY in AMD's Complaint or INTEL's Answer in
that matter, or any other litigation involving AMD and INTEL, or any investigation relating to
INTEL by the Japan Fair Trade Commission or the European Commission.