# EXHIBIT 61

Issued by the

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

**SUBPOENA IN A CIVIL CASE**

v.

Intel Corporation and Intel Kabushiki Kaisha

Case Number:[1]

05-441-JJF
United States District Court,
District of Delaware

TO:    Supermicro Computer, Inc.
980 Rock Avenue
San Jose, California 95131

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE<br>Gibson, Dunn & Crutcher LLP<br>1881 Page Mill Road, Palo Alto, California 94304 | DATE AND TIME<br><br>August 7, 2006 |
| --- | --- |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| *Robert E. Cooper*        Attorney for Defendants | June 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88  (Rev  1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)     fails to allow reasonable time for compliance,
(ii)    requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)     requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1. The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2. The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3. The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4. The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5. The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6. "**YOU**" or "**YOUR**" means Supermicro Computer, Inc. and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7. "**PRODUCT TYPE**" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8. "**X86 COMPUTER PRODUCT**" means a computer system that contains one or more x86 microprocessors.

9. "**SKU**" means Stock Keeping Unit.

## INSTRUCTIONS

1. Documents to be produced include documents in your possession, custody, or control wherever located.

2. Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3. Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4. To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1. All **DOCUMENTS** constituting, reflecting or discussing **COMMUNICATIONS** with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from

AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2. All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3. All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4. All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not

limited to, the suitability of future product offerings from the two companies to YOUR needs; (h) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to purchase (or not purchase) microprocessors from AMD or Intel.

5. All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's claims regarding performance or other attributes, or a failure to provide adequate service or support.

6. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7. All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8. All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9. All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12. DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.

13. DOCUMENTS sufficient to show the:

a.        prices paid by YOU to AMD for all microprocessors since January 1, 2000;

b.        any CONSIDERATION provided to YOU by AMD in connection with YOUR purchase of microprocessors since January 1, 2000; and

      c.       how **YOU** used or applied any **CONSIDERATION** provided by AMD since January 1, 2000. For purposes of this request, it shall be sufficient to provide aggregate data or information on a monthly or quarterly basis.

# EXHIBIT 62

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-441-JJF
United States District Court,
District of Delaware

TO:    Synnex Corporation
c/o Craig Benson, Paul Weiss LLP
1615 L Street, NW, Suite 1300
Washington, DC  20036-5694

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE<br>Howrey LLP<br>1299 Pennsylvania Ave NW, Washington DC  20004 | DATE AND TIME<br>August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)        Attorney for Defendants | DATE<br>June 21, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason C. Raofield
Howrey, LLP
1299 Pennsylvania Ave., N.W., Washington, DC  20004
(202) 283-7267

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)     fails to allow reasonable time for compliance,
(ii)    requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)     requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

      1.      The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

      2.      The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

      3.      The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

      4.      The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

      5.      The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.  "YOU" or "YOUR" means **Synnex Corporation** and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.  "PRODUCT TYPE" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.  "X86 COMPUTER PRODUCT" means a computer system that contains one or more x86 microprocessors.

9.  "SKU" means Stock Keeping Unit.

## INSTRUCTIONS

1.  Documents to be produced include documents in your possession, custody, or control wherever located.

2.  Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.  Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.  To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

2

## DOCUMENT REQUESTS

1.      All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2.      All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3.      All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4.      All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as

3

suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g)  the future roadmap of Intel or AMD, including, but not limited to, the suitability of future product offerings from the two companies to YOUR needs; (h) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to purchase (or not purchase) microprocessors from AMD or Intel.

5.      All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's claims regarding performance or other attributes, or a failure to provide adequate service or support.

6.      All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7.      All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8.      All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.      All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10.      All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11.      All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or

5

any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.    For **YOUR** microprocessor purchases, **DOCUMENTS** sufficient to show: (1) the vendor; (2) the units, brand and SKU number; (3) the amount paid; and (4) the date of purchase.

13.    For each of **YOUR** microprocessor sales, **DOCUMENTS** sufficient to show: (1) the SKU; (2) the number of units sold; (3) the customer name and ship to location; (4) the revenue generated by that sale; and (5) the date of the sale.

14.    With respect to any monetary **CONSIDERATION** that **YOU** were received in connection with **YOUR** purchase of microprocessors, **DOCUMENTS** sufficient to show: (1) the type of payment; (2) the payer; (3) the amount of payment; (4) how **YOU** used the payment; and (5) the date of payment.

15.    **DOCUMENTS** sufficient to show, on a monthly basis, by SKU, **YOUR** gross profit and operating margins on microprocessor SKUs.

16.    **DOCUMENTS** sufficient to identify and describe **YOUR** competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for microprocessors.

6

# EXHIBIT 63

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF FLORIDA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-441-JJF
United States District Court,
District of Delaware

TO:    Tech Data Corporation
       c/o David Vetter
       5350 Tech Data Drive
       Clearwater, FL  33760

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A attached hereto

| PLACE | DATE AND TIME |
|---|---|
| S & W Detectives | |
| 1701 Arch Street, Tampa, FL  33607 | August 7, 2006 |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Attorney for Defendants_ | June 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason C. Raofield
Howrey, LLP
1299 Pennsylvania Ave., N.W., Washington, DC  20004
(202) 283-7267

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
| | |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                     DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**SCHEDULE A**

**DEFINITIONS**

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.    The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.    The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.    The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.    The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.    The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.    "YOU" or "YOUR" means **Tech Data Corporation** and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.    "PRODUCT TYPE" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.    "X86 COMPUTER PRODUCT" means a computer system that contains one or more x86 microprocessors.

9.    "SKU" means Stock Keeping Unit.

## INSTRUCTIONS

1.    Documents to be produced include documents in your possession, custody, or control wherever located.

2.    Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.    Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.    To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

2

## DOCUMENT REQUESTS

1.      All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any  pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2.      All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3.      All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4.      All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as

3

suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that

YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's

microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-

based platforms for particular customer segments, including, but not limited to, corporate

customers; (g) the future roadmap of Intel or AMD, including, but not limited to, the

suitability of future product offerings from the two companies to YOUR needs; (h) actual

or expected consumer demand for systems incorporating AMD's or Intel's

microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations,

proposals or demands in connection with the purchase or potential purchase of

microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l)

the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs

associated with the shifting from the use of one microprocessor to another; (n) or any

other reasons influencing YOUR decision to purchase (or not purchase) microprocessors

from AMD or Intel.

     5.     All DOCUMENTS reflecting or discussing any failure or perceived failure by

AMD or Intel to satisfy any commitment or expectation regarding the sale or supply of

microprocessors or any other product or service, including, but not limited to, a failure to

meet supply commitments, a failure to supply products of sufficient quality or reliability,

a failure to supply products in a timely manner, a failure to supply products that conform

to AMD's claims regarding performance or other attributes, or a failure to provide

adequate service or support.

6. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7. All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8. All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9. All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or

any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.    For YOUR microprocessor purchases, DOCUMENTS sufficient to show: (1) the vendor; (2) the units, brand and SKU number; (3) the amount paid; and (4) the date of purchase.

13.    For each of YOUR microprocessor sales, DOCUMENTS sufficient to show: (1) the SKU; (2) the number of units sold; (3) the customer name and ship to location; (4) the revenue generated by that sale; and (5) the date of the sale.

14.    With respect to any monetary CONSIDERATION that YOU were received in connection with YOUR purchase of microprocessors, DOCUMENTS sufficient to show: (1) the type of payment; (2) the payer; (3) the amount of payment; (4) how YOU used the payment; and (5) the date of payment.

15.    DOCUMENTS sufficient to show, on a monthly basis, by SKU, YOUR gross profit and operating margins on microprocessor SKUs.

16.    DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for microprocessors.

# EXHIBIT 64

AO88  (Rev  1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                      DATE                              SIGNATURE OF SERVER

                                               _____
                                               ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   falls to allow reasonable time for compliance,
(ii)  requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden

(B) If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1. The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2. The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3. The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4. The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5. The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6. "**YOU**" or "**YOUR**" means Toshiba America Information Systems, Inc. and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7. "**PRODUCT TYPE**" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8. "**X86 COMPUTER PRODUCT**" means a computer system that contains one or more x86 microprocessors.

9. "**SKU**" means Stock Keeping Unit.

## INSTRUCTIONS

1. Documents to be produced include documents in your possession, custody, or control wherever located.

2. Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3. Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4. To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1. All **DOCUMENTS** constituting, reflecting or discussing **COMMUNICATIONS** with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from

AMD or Intel to YOU (including actual sales and proposed sales that were not consummated),

including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds,

incentives, inducements, training or technical support, allocation preference, access to technical

or roadmap information, or other financial or non-financial CONSIDERATION associated with

such sale or proposed sale.

2. All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by

AMD to YOU in connection with the actual or proposed purchase or acquisition of

microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts,

rebates, marketing or promotional funds, incentives, inducements, training or technical support,

allocation preference, access to technical or roadmap information, or other financial or non-

financial CONSIDERATION associated with such offer or proposal.

3. All DOCUMENTS constituting or reflecting any past or present contractual relationship

between YOU and AMD.

4. All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase

microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing

of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the

technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or

reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors;

(c) the reliability of Intel or AMD as suppliers; (d) AMD's or Intel's ability to supply

microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the

suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability

of Intel-based or AMD-based platforms for particular customer segments, including, but not

limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not

limited to, the suitability of future product offerings from the two companies to YOUR needs; (h)

actual or expected consumer demand for systems incorporating AMD's or Intel's

microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals

or demands in connection with the purchase or potential purchase of microprocessors; (k) the

availability, capability or price of chipsets or motherboards; (l) the total bill of materials for

systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the

use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to

purchase (or not purchase) microprocessors from AMD or Intel.

5.   All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or

Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or

any other product or service, including, but not limited to, a failure to meet supply commitments,

a failure to supply products of sufficient quality or reliability, a failure to supply products in a

timely manner, a failure to supply products that conform to AMD's claims regarding

performance or other attributes, or a failure to provide adequate service or support.

6.   All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or

reliability of claims made by AMD regarding the attributes of its microprocessors or systems

incorporating its microprocessors.

7.   All DOCUMENTS, whether generated internally or received from third parties,

discussing or concerning any technological, reliability, quality, or other advancements or

improvements in any of YOUR products, including any advancements or improvements in the sale

of any of YOUR products, that are attributable to any technological initiative by Intel, including,

but not limited to, any standard or specification to which Intel made significant contributions.

8. All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9. All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11. All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12. For each x86 COMPUTER PRODUCT that YOU manufacture or market, DOCUMENTS sufficient to identify the (1) PRODUCT TYPE; (2) brand; and (3) model; (4) components (e.g., CPU, Keyboard, Monitor) and (5) SKU.

13. For each of YOUR microprocessor purchases, DOCUMENTS sufficient to show: (1) the vendor; (2) the units, brand and SKU number; (3) the dollars paid; and (4) the date of purchase.

14. For each sale or lease of a x86 COMPUTER PRODUCT that YOU have made, DOCUMENTS sufficient to show: (1) the x86 COMPUTER PRODUCT SKU; (2) the number of units

in the transaction; (2) the revenue generated by the transaction; (3) the customer name and ship-to address; and (4) the date of the transaction.

15.  DOCUMENTS sufficient to show, on a monthly basis, by SKU, PRODUCT TYPE, and x86 COMPUTER PRODUCT, YOUR gross profit and operating margins.

16.  DOCUMENTS sufficient to describe the name, scope, financial and other terms, conditions and effective dates of any rebate, marketing, other promotional program that YOU have offered in connection with the sale of YOUR x86 COMPUTER PRODUCTS, whether by YOU or a reseller.

17.  With regard to payments made under the programs identified in Request 18 above, DOCUMENTS sufficient to show: (1) the program under which the payment was made; (2) the amount that YOU paid; (3) whether the recipient of the payment was a reseller or end user; (4) the x86 COMPUTER PRODUCT SKU to which the payment relates; and (5) the date of the payment.

18.  With respect to any monetary CONSIDERATION that YOU received in connection with YOUR purchase of microprocessors, DOCUMENTS sufficient to show: (1) the type of payment; (2) the payer; (3) the amount of payment; (4) how you used the payment; and (5) the date of payment.

19.  DOCUMENTS sufficient to identify the component specifications for each x86 COMPUTER PRODUCT identified in response to Request No. 12 and the time period during which each such specification was manufactured or marketed.

20.  DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.

# EXHIBIT 65

### Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-441-JJF

TO:    Toys R Us, Inc.
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, Delaware  19808

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE | DATE AND TIME |
|---|---|
| Potter Anderson & Corroon LLP 1313 North Market Street, Wilmington, Delaware  19899 | August 7, 2006 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Robert E. Cooper*            Attorney for Defendants | June 20, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
              DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1. The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2. The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3. The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4. The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5. The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6. "**YOU**" or "**YOUR**" means Toys R Us, Inc. and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7. "**PRODUCT TYPE**" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8. "**X86 COMPUTER PRODUCT**" means a computer system that contains one or more x86 microprocessors.

9. "**SKU**" means Stock Keeping Unit.

## INSTRUCTIONS

1. Documents to be produced include documents in your possession, custody, or control wherever located.

2. Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3. Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4. To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1. All **DOCUMENTS** constituting, reflecting or discussing advertising, marketing or promotional support or payments provided or offered to be provided by AMD to **YOU**, including,

but not limited to, all offers or proposals made by AMD, all COMMUNICATIONS with AMD concerning such support or funds, and any actual or proposed conditions or limitations on the receipt or use of such support or funds.

2.  All DOCUMENTS constituting, reflecting or discussing actual or proposed sales incentives, bonuses or rebates from AMD to YOU, including, but not limited to, the criteria or requirements to qualify for any such incentives, bonuses or rebates and all COMMUNICATIONS with AMD concerning any such sales incentives, bonuses or rebates.

3.  All DOCUMENTS constituting or discussing any past or present contractual relationship between YOU and AMD, including, but not limited to, all advertising, marketing or promotional agreements and all COMMUNICATIONS with AMD regarding the terms of any such contractual relationship.

4.  All DOCUMENTS discussing or concerning the training of YOUR sales personnel by AMD or Intel, including, but not limited to, all written training materials.

5.  All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning product placement or the amount of YOUR shelf space allocated or to be allocated to computer systems containing Intel or AMD microprocessors.

6.  All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with OEMs concerning the promotion or marketing by YOU of computer systems containing Intel or AMD microprocessors.

7.  All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS or negotiations with OEMs or other suppliers or distributors of computers concerning any financial, advertising, marketing, promotional, training or technical support or payments by AMD to YOU

in connection with the purchase and/or resale of computer systems containing AMD microprocessors.

8. All DOCUMENTS reflecting or discussing actual or proposed credit terms from AMD to YOU, including, but not limited to, COMMUNICATIONS concerning any credit lines provided by AMD.

9. All DOCUMENTS constituting, reflecting or discussing marketing or promotional plans for computer systems containing AMD microprocessors.

10. All DOCUMENTS reflecting or concerning any evaluation by YOU whether to purchase computers containing microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors or computer systems incorporating those microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as suppliers, including, but not limited to, YOUR ability to obtain supply of computer systems containing Intel or AMD microprocessors; (d) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (e) the future roadmap of Intel or AMD; (f) actual or expected consumer demand for systems incorporating AMD's or Intel's microprocessors; or (g) or any other reasons influencing YOUR decision to purchase (or not purchase) computers containing microprocessors from AMD or Intel.

11. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or computer systems incorporating its microprocessors.

12. All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

13. All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning any advertising or promotion by YOU referencing AMD or Intel.

14. All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning product roadmaps of Intel or AMD products.

15. All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

16.    DOCUMENTS sufficient to identify the (1) PRODUCT TYPE; (2) brand; (3) model; (4) components (e.g., CPU, Keyboard, Monitor); and (5) SKUs of x86 COMPUTER PRODUCTS that YOU sell.

17.    DOCUMENTS sufficient to show the Zip Code and store number of all YOUR retail locations.

18.    For each purchase for resale of a x86 COMPUTER PRODUCT identified in response to Request No. 16 above, DOCUMENTS sufficient to show: (1) the SKU; (2) the number of units purchased; (3) the purchase price; (4) the source of the purchase; and (5) the date of the purchase.

19.    For each purchase of a x86 COMPUTER PRODUCT for use in YOUR business, DOCUMENTS sufficient to show: (1) the SKU; (2) the number of units purchased; (3) the dollars paid; (4) the source of the purchase; and (5) the date of the purchase.

20.    For each sale or lease of a **x86 COMPUTER PRODUCT** by **YOU**, **DOCUMENTS** sufficient to show: (1) the SKU(s) sold or leased; (2) the number of units sold or leased; (3) the revenue generated by that sale or lease; (4) the ship to Zip Code or Store Location/Store Number that made the sale or lease; and (5) the date of the sale or lease.

21.    With respect to any monetary **CONSIDERATION** (rebates, lump sum discounts, Market Development Funds, etc.) that **YOU** received in connection with **YOUR** purchase of an **x86 COMPUTER PRODUCT** for resale, **DOCUMENTS** sufficient to show: (1) the type of **CONSIDERATION**; (2) the payer; (3) the amount of **CONSIDERATION**; (4) how **YOU** used the **CONSIDERATION**; and (5) the date **YOU** received the **CONSIDERATION**.

22.    **DOCUMENTS** sufficient to show, on a monthly basis, by SKU, **PRODUCT TYPE,** and **x86 COMPUTER PRODUCT, YOUR** gross profit and operating margins.

23.    **DOCUMENTS** sufficient to describe the name, scope, financial and other terms, conditions and effective dates of any rebate, marketing, other promotional program that **YOU** have offered purchasers of **YOUR x86 COMPUTER PRODUCTS**.

24.    With regard to payments made under the programs identified in response to Specification 23 above, **DOCUMENTS** sufficient to show: (1) the program under which the payment was made; (2) the amounts that **YOU** paid; (3) the Zip Code where **YOU** sent the payment; (4) the Store Number or Location to which the payment was attributed or assigned; (5) the SKU to which the payment relates; and (6) the date of the payment.

25.    **DOCUMENTS** sufficient to show the percentage of **x86 COMPUTER PRODUCTS** that **YOU** sold that were part of a part of a package that included other products (e.g., a printer, scanner, digital camera, etc.) that was sold at a single package price.

26.    **DOCUMENTS** sufficient to identify and describe **YOUR** competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the retail market for **YOUR x86 COMPUTER PRODUCTS.**

# EXHIBIT 66

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]     05-441-JJF
United States District
Court, District of Delaware

TO:     Trigem Computer, Inc.
c/o Averatec, Inc.
1231 East Dyer Rd., Suite 150
Santa Ana, CA 92705

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A attached hereto

| PLACE | DATE AND TIME |
|---|---|
| Howrey LLP | DATE AND TIME |
| 550 South Hope Street, Suite 1100, Los Angeles, CA 90071 | August 7, 2006 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants | June 22, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason C. Raofield
Howrey, LLP
1299 Pennsylvania Ave., N.W., Washington, DC 20004
(202) 283-7267

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME)                                    MANNER OF SERVICE

SERVED BY (PRINT NAME)                                    TITLE

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE                                    SIGNATURE OF SERVER

                                                              ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include. but is not limited to. lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition. hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production  Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development. or commercial information, or
(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1.    The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2.    The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3.    The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4.    The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5.    The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6.    "YOU" or "YOUR" means **Trigem Computer, Inc.** and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7.    "PRODUCT TYPE" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8.    "X86 COMPUTER PRODUCT" means a computer system that contains one or more x86 microprocessors.

9.    "SKU" means Stock Keeping Unit.

## INSTRUCTIONS

1.    Documents to be produced include documents in your possession, custody, or control wherever located.

2.    Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.    Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.    To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production.  You are not required to provide at the time of production a privilege log or other description of the nature of any such documents.  Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1.      All DOCUMENTS constituting, reflecting or discussing COMMUNICATIONS
with AMD concerning the actual or proposed terms and conditions of the sale of
microprocessors from AMD or Intel to YOU (including actual sales and proposed sales
that were not consummated), including, but not limited to, any  pricing, discounts,
rebates, marketing or promotional funds, incentives, inducements, training or technical
support, allocation preference, access to technical or roadmap information, or other
financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2.      All DOCUMENTS constituting, reflecting or discussing any offer or
proposal made by AMD to YOU in connection with the actual or proposed purchase or
acquisition of microprocessors by YOU from AMD, including, but not limited to, any
pricing, discounts, rebates, marketing or promotional funds, incentives, inducements,
training or technical support, allocation preference, access to technical or roadmap
information, or other financial or non-financial CONSIDERATION associated with such
offer or proposal.

3.      All DOCUMENTS constituting or reflecting any past or present contractual
relationship between YOU and AMD.

4.      All DOCUMENTS reflecting or concerning any evaluation by you whether
to purchase microprocessors from AMD or Intel (including any evaluation relating to the
quantity or timing of such purchase), including, but not limited to, DOCUMENTS
discussing or concerning (a) the technical specifications or performance of AMD's or
Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors
or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as

suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that

YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's

microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-

based platforms for particular customer segments, including, but not limited to, corporate

customers; (g) the future roadmap of Intel or AMD, including, but not limited to, the

suitability of future product offerings from the two companies to YOUR needs; (h) actual

or expected consumer demand for systems incorporating AMD's or Intel's

microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations,

proposals or demands in connection with the purchase or potential purchase of

microprocessors; (k) the availability, capability or price of chipsets or motherboards; (l)

the total bill of materials for systems based on Intel or AMD microprocessors; (m) costs

associated with the shifting from the use of one microprocessor to another; (n) or any

other reasons influencing YOUR decision to purchase (or not purchase) microprocessors

from AMD or Intel.

     5.     All DOCUMENTS reflecting or discussing any failure or perceived failure

by AMD or Intel to satisfy any commitment or expectation regarding the sale or supply

of microprocessors or any other product or service, including, but not limited to, a failure

to meet supply commitments, a failure to supply products of sufficient quality or

reliability, a failure to supply products in a timely manner, a failure to supply products

that conform to AMD's claims regarding performance or other attributes, or a failure to

provide adequate service or support.

6.     All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD regarding the attributes of its microprocessors or systems incorporating its microprocessors.

7.     All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of YOUR products, including any advancements or improvements in the sale of any of YOUR products, that are attributable to any technological initiative by Intel, including, but not limited to, any standard or specification to which Intel made significant contributions.

8.     All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.     All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10.     All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11.     All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or

any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

      12.     DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.

      13.     DOCUMENTS sufficient to show the:

      a.     prices paid by YOU to AMD for all microprocessors since January 1, 2000;

      b.     any CONSIDERATION provided to YOU by AMD in connection with YOUR purchase of microprocessors since January 1, 2000; and

      c.     how YOU used or applied any CONSIDERATION provided by AMD since January 1, 2000. For purposes of this request, it shall be sufficient to provide aggregate data or information on a monthly or quarterly basis.

# EXHIBIT 67

## Issued by the
# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

**SUBPOENA IN A CIVIL CASE**

v.

Intel Corporation and Intel Kabushiki Kaisha

Case Number:[1]    05-441-JJF
United States District Court,
District of Delaware

TO:    Tyan Computer Corporation
c/o Teresa Chen
3288 Laurelview Court
Fremont, California  94538

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Schedule A attached hereto

| PLACE
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road, Palo Alto, California  94304 | DATE AND TIME

August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)

*Robert E. Cooper*                    Attorney for Defendants | DATE

June 20, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88  (Rev  1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| | | |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                         DATE                                    SIGNATURE OF SERVER

                                                        _____
                                                        ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to·attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

## SCHEDULE A

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1. The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2. The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3. The term "COMMUNICATION" means the transmittal of information and encompasses every medium of information transmittal, including, but not limited to, oral, written, graphic and electronic communication.

4. The term "CONSIDERATION" means discount, rebate, lump sum payment, market development funds, cooperative advertising payment, advertising allowances, promotional payment, seed money, free microprocessors, securities (whether voting or non-voting), options, warrants, or other payment or other compensation or payment.

5. The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

6. "**YOU**" or "**YOUR**" means Tyan Computer Corporation and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

7. "**PRODUCT TYPE**" means the following platforms: (1) desktop ; (2) laptop; (3) workstation; and/or (4) server.

8. "**X86 COMPUTER PRODUCT**" means a computer system that contains one or more x86 microprocessors.

9. "**SKU**" means Stock Keeping Unit.

## INSTRUCTIONS

1. Documents to be produced include documents in your possession, custody, or control wherever located.

2. Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3. Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4. To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1. All **DOCUMENTS** constituting, reflecting or discussing **COMMUNICATIONS** with AMD concerning the actual or proposed terms and conditions of the sale of microprocessors from

AMD or Intel to YOU (including actual sales and proposed sales that were not consummated), including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such sale or proposed sale.

2. All DOCUMENTS constituting, reflecting or discussing any offer or proposal made by AMD to YOU in connection with the actual or proposed purchase or acquisition of microprocessors by YOU from AMD, including, but not limited to, any pricing, discounts, rebates, marketing or promotional funds, incentives, inducements, training or technical support, allocation preference, access to technical or roadmap information, or other financial or non-financial CONSIDERATION associated with such offer or proposal.

3. All DOCUMENTS constituting or reflecting any past or present contractual relationship between YOU and AMD.

4. All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase microprocessors from AMD or Intel (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or Intel's microprocessors; (b) the quality or reliability of AMD's or Intel's microprocessors or systems incorporating those microprocessors; (c) the reliability of Intel or AMD as suppliers; (d) AMD's or Intel's ability to supply microprocessors in the quantities that YOU require or anticipate that YOU will require; (e) the suitability of AMD's or Intel's microprocessors for YOUR business objectives; (f) the suitability of Intel-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of Intel or AMD, including, but not

limited to, the suitability of future product offerings from the two companies to YOUR needs; (h)
actual or expected consumer demand for systems incorporating AMD's or Intel's
microprocessors; (i) the pricing of AMD's or Intel's microprocessors; (j) negotiations, proposals
or demands in connection with the purchase or potential purchase of microprocessors; (k) the
availability, capability or price of chipsets or motherboards; (l) the total bill of materials for
systems based on Intel or AMD microprocessors; (m) costs associated with the shifting from the
use of one microprocessor to another; (n) or any other reasons influencing YOUR decision to
purchase (or not purchase) microprocessors from AMD or Intel.

    5.    All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or
Intel to satisfy any commitment or expectation regarding the sale or supply of microprocessors or
any other product or service, including, but not limited to, a failure to meet supply commitments,
a failure to supply products of sufficient quality or reliability, a failure to supply products in a
timely manner, a failure to supply products that conform to AMD's claims regarding
performance or other attributes, or a failure to provide adequate service or support.

    6.    All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or
reliability of claims made by AMD regarding the attributes of its microprocessors or systems
incorporating its microprocessors.

    7.    All DOCUMENTS, whether generated internally or received from third parties,
discussing or concerning any technological, reliability, quality, or other advancements or
improvements in any of YOUR products, including any advancements or improvements in the sale
of any of YOUR products, that are attributable to any technological initiative by Intel, including,
but not limited to, any standard or specification to which Intel made significant contributions.

8.  All DOCUMENTS discussing or concerning the (a) the relative merits of Intel-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either Intel or AMD microprocessors or systems incorporating those microprocessors.

9.  All DOCUMENTS constituting or reflecting any advertisement or promotion by YOU referencing AMD.

10.  All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning any of the following: (a) any advertising or promotion by YOU referencing AMD or Intel; (b) any product launch by YOU referencing AMD or Intel; (c) product roadmaps of Intel or AMD products; (d) or the terms of any contractual relationship between YOU and Intel.

11.  All DOCUMENTS constituting, reflecting or discussing communications with AMD concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about YOU in AMD's Complaint in that matter, or any other litigation involving AMD and Intel, or any investigation relating to Intel by the Japan Fair Trade Commission or the European Commission.

12.  DOCUMENTS sufficient to identify and describe YOUR competitive actions, strategic plans, marketing plans, competitive reviews or market analyses regarding the wholesale or retail market for YOUR x86 COMPUTER PRODUCTS.

13.  DOCUMENTS sufficient to show the:

a.      prices paid by YOU to AMD for all microprocessors since January 1, 2000;

b.      aggregate amount by quarter of any CONSIDERATION provided to YOU by AMD in connection with YOUR purchase of microprocessors since January 1, 2000; and

c.    how **YOU** used or applied any **CONSIDERATION** provided by AMD since January 1,

2000. For purposes of this request, it shall be sufficient to provide aggregate data or information

on a monthly or quarterly basis.

# EXHIBIT 68

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

Advanced Micro Devices, Inc. and AMD
International Sales & Services, Ltd.

**SUBPOENA IN A CIVIL CASE**

v.

Intel Corporation and Intel Kabushiki Kaisha

Case Number:[1]    05-441-JJF

TO:    UGS Corp.
       c/o Corporation Service Company
       2711 Centerville Road, Suite 400
       Wilmington, Delaware  19808

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE
Potter Anderson & Corroon LLP
1313 North Market Street, Wilmington, Delaware  19899 | DATE AND TIME

August 7, 2006 |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Robert E. Cooper*    Attorney for Defendants | June 20, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071
(213) 229-7000

(See Rule 45. Federal Rules of Civil Procedure. Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)     fails to allow reasonable time for compliance,
(ii)    requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)     requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any discovery request.

1. The term "AMD" means Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd., and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Advanced Micro Devices, Inc., and AMD International Sales & Service, Ltd.

2. The term "Intel" means Intel Corporation and Intel Kabushiki Kaisha and any parent, subsidiary or affiliate entities, as well as the owners, partners, officers, directors, employees, agents, and other representatives of Intel Corporation and Intel Kabushiki Kaisha.

3. The term "DOCUMENT" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy constitutes a separate document within the meaning of the term.

4. "YOU" or "YOUR" means UGS Corp. and its predecessors, present and former divisions, subsidiaries, parents, branches and affiliates, authorized agents, employees, officers, directors, and representatives.

5. "AMD-SPECIFIC MICROPROCESSOR DESIGN FEATURE" means any feature of an AMD microprocessor that is not also available in an Intel microprocessor.

6. "INTEL-SPECIFIC MICROPROCESSOR DESIGN FEATURE" means any feature of an Intel microprocessor that is not also available in an AMD microprocessor.

## INSTRUCTIONS

1.  Documents to be produced include documents in your possession, custody, or control wherever located.

2.  Unless otherwise specifically stated herein, the time period covered by each of these requests is from January 1, 2000 to the date this subpoena was issued.

3.  Documents must be produced as they are kept in the usual course of business, or must be organized and labeled to correspond to the document requests by number.

4.  To the extent that you withhold from production any responsive document on the grounds of a claim of privilege or attorney work product, please provide the total number of responsive documents withheld from production. You are not required to provide at the time of production a privilege log or other description of the nature of any such documents. Intel expressly reserves its right to seek a privilege log at a later date.

## DOCUMENT REQUESTS

1.    All DOCUMENTS relating to any difference in the performance or functionality of any of YOUR software based on whether the software is used on an Intel microprocessor or an AMD microprocessor, including, but not limited to, any reason for any such difference.

2.    All DOCUMENTS relating to any difference in the level or quality of support for any AMD-SPECIFIC MICROPROCESSOR DESIGN FEATURE as compared to any INTEL-SPECIFIC MICROPROCESSOR DESIGN FEATURE, including, but not limited to, any reason for any such difference.

3.    All DOCUMENTS relating to any difference in the number or quality of optimizations or enhancements to any of YOUR software for any AMD-SPECIFIC MICROPROCESSOR DESIGN FEATURE as compared to any INTEL-SPECIFIC MICROPROCESSOR DESIGN FEATURE, including, but not limited to, any reason for any such difference.

4.      All DOCUMENTS relating to differences in the level of investment that YOU have made to develop or support software that includes any AMD-SPECIFIC MICROPROCESSOR DESIGN FEATURE as compared to any INTEL-SPECIFIC MICROPROCESSOR DESIGN FEATURE, including, but not limited to, any reason for any such difference.

5.      All DOCUMENTS relating to or reflecting any agreement between YOU and AMD to develop software that employs, supports, or is optimized for any AMD-SPECIFIC MICROPROCESSOR DESIGN FEATURE.

6.      All DOCUMENTS relating to any collaboration between YOU and AMD to develop software that employs, supports, or is optimized for any AMD-SPECIFIC MICROPROCESSOR DESIGN FEATURE.

7.      All DOCUMENTS relating to or reflecting any agreement or understanding between YOU and AMD that restricts your ability to collaborate with any microprocessor supplier other than AMD or to use any software technology or software code to enhance the performance or functionality of YOUR software when running on a microprocessor other than an AMD microprocessor.

8.      All DOCUMENTS relating to or reflecting any decision or agreement to design, develop or implement software that employs any AMD-SPECIFIC MICROPROCESSOR DESIGN FEATURE, including, but not limited to, any reason for any such decision or agreement.

9.      All DOCUMENTS relating to or reflecting any decision or agreement that restricts, limits or prohibits YOUR ability to design, develop or implement software that includes any INTEL-SPECIFIC MICROPROCESSOR DESIGN FEATURE, including, but not limited to, any reason for any such decision or agreement.