# EXHIBIT 11

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

In Re: Intel Corp Microprocessor Antitrust Litigation

**SUBPOENA IN A CIVIL CASE**
Case Number:[1] 05-441-JJF, MDL 05-1717-JJF
United States District Court, District of Delaware

TO:     Foxconn Electronics, Inc.
        c/o Donald Sung
        468 E. Lambert Road
        Fullerton, California 92835

☐     YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐     YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒     YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
### See Attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| O'Melveny & Myers LLP<br>1999 Avenue of the Stars, 7th Floor<br>Los Angeles, California 90067 | July 21, 2006<br>5 p.m. (Pacific Standard Time) |

☐     YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Linda J. Smith*     Attorney For Plaintiffs | June 22, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Linda J. Smith
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**Schedule A**

**Definitions**

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, Core, Core Duo and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment (including, without limitation, payments for engineering or design support), subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to Foxconn Electronics, Inc. and any of its controlled present or former subsidiaries, parents, and predecessor or successor companies. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

**Instructions**

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which privilege is claimed and the paragraph of these

requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

1. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive manufacturing or exclusive design of products for use with or compatible with INTEL MICROPROCESSORS.

2. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the percentage or volume of COMPANY's manufacturing or design of products for use with or compatible with INTEL MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's manufacturing or design of products for use with or compatible with AMD MICROPROCESSORS.

4. All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT, or will in any way penalize or punish COMPANY as a result of COMPANY's manufacture or design of products for use with or compatible with AMD MICROPROCESSORS.

5. All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL, related to the manufacture or design of products for use with or compatible with AMD MICROPROCESSORS.

6. All DOCUMENTS constituting, reflecting, or discussing or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL, as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products for use with or compatible with AMD MICROPROCESSORS.

7. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD or COMPANY product launch or promotion, or support of AMD products at any trade show, product launch, promotion, conference, or industry meeting.

8. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS, or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

9. All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

10. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases, branding, or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

11. All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop,

release or promote AMD MICROPROCESSORS or products containing AMD
MICROPROCESSORS.

12. All DOCUMENTS constituting or reflecting any past or present contractual
relationship between COMPANY and AMD or COMPANY and INTEL.

13. All DOCUMENTS reflecting or concerning any evaluation by COMPANY whether
to purchase MICROPROCESSORS from AMD or INTEL (including any evaluation relating to
the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing
or concerning (a) the technical specifications or performance of AMD's or INTEL's
MICROPROCESSORS; (b) the quality or reliability of AMD's or INTEL's
MICROPROCESSORS or systems incorporating those MICROPROCESSORS; (c) the
reliability of INTEL or AMD as suppliers; (d) AMD's or INTEL's ability to supply
MICROPROCESSORS in the quantities that COMPANY requires or anticipates that it will
require; (e) the suitability of AMD's or INTEL's MICROPROCESSORS for COMPANY's
business objectives; (f) the suitability of INTEL-based or AMD-based platforms for particular
customer segments, including, but not limited to, corporate customers; (g) the future roadmap of
INTEL or AMD, including, but not limited to, the suitability of future product offerings from the
two companies to COMPANY's needs; (h) actual or expected consumer demand for systems
incorporating AMD's or INTEL's MICROPROCESSORS; (i) the pricing of AMD's or INTEL's
MICROPROCESSORS; (j) negotiations, proposals or demands in connection with the purchase
or potential purchase of MICROPROCESSORS; (k) the availability, capability or price of
chipsets or motherboards; (l) the total bill of materials for systems based on INTEL or AMD
MICROPROCESSORS; (m) costs associated with the shifting from the use of one
MICROPROCESSOR to another; (n) or any other reasons influencing COMPANY's decision to
purchase (or not purchase) MICROPROCESSORS from AMD or INTEL.

14. DOCUMENTS sufficient to show the pricing and other financial terms offered by
COMPANY to customers or partners of COMPANY, including contracts, price lists, or other
evidence of prices that COMPANY charges for the design, manufacture, or use of products for
use with or compatible with AMD or INTEL MICROPROCESSORS.

15. DOCUMENTS sufficient to show any FINANCIAL INDUCEMENTS offered by
COMPANY or to COMPANY in connection with the design, manufacture, or use of products for
use with or compatible with AMD or INTEL MICROPROCESSORS.

16. All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD
or INTEL to satisfy any commitment or expectation regarding the sale or supply of
MICROPROCESSORS or any other product or service, including, but not limited to, a failure to
meet supply commitments, a failure to supply products of sufficient quality or reliability, a
failure to supply products in a timely manner, a failure to supply products that conform to
AMD's or INTEL's claims regarding performance or other attributes, or a failure to provide
adequate service or support.

17. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or
reliability of claims made by AMD or INTEL regarding the attributes of its
MICROPROCESSORS or systems incorporating its MICROPROCESSORS.

18. All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of COMPANY's products, including any advancements or improvements in the sale of any of COMPANY's products, that are attributable to any technological initiative by INTEL or AMD, including, but not limited to, any standard or specification to which INTEL made significant contributions.

19. All DOCUMENTS discussing or concerning the (a) the relative merits of INTEL-based or AMD-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either INTEL or AMD MICROPROCESSORS or systems incorporating those MICROPROCESSORS.

20. All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning any of the following:  (a) any advertising or promotion by COMPANY referencing AMD or INTEL; (b) any product launch by COMPANY referencing AMD or INTEL; (c) product roadmaps of INTEL or AMD products; (d) or the terms of any contractual relationship between COMPANY and INTEL or AMD.

21. All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about COMPANY in AMD's Complaint or INTEL's Answer in that matter, or any other litigation involving AMD and INTEL, or any investigation relating to INTEL by the Japan Fair Trade Commission or the European Commission.

# EXHIBIT 12

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

In Re: Intel Corp Microprocessor Antitrust Litigation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-441-JJF, MDL 05-1717-JJF
United States District Court, District of Delaware

TO:    Foxconn Technology Ltd.
       c/o Donald Song
       458 E. Lambert Road
       Fullerton, California 92835

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
### See Attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| O'Melveny & Myers LLP<br>1999 Avenue of the Stars, 7th Floor<br>Los Angeles, California 90067 | July 21, 2006<br>5 p.m. (Pacific Standard Time) |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Attorney For Plaintiffs | June 22, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Linda J. Smith
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, Core, Core Duo and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment (including, without limitation, payments for engineering or design support), subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to Foxconn Technology Ltd. and any of its controlled present or former subsidiaries, parents, and predecessor or successor companies. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which privilege is claimed and the paragraph of these

requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

1. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive manufacturing or exclusive design of products for use with or compatible with INTEL MICROPROCESSORS.

2. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the percentage or volume of COMPANY's manufacturing or design of products for use with or compatible with INTEL MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's manufacturing or design of products for use with or compatible with AMD MICROPROCESSORS.

4.  All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT, or will in any way penalize or punish COMPANY as a result of COMPANY's manufacture or design of products for use with or compatible with AMD MICROPROCESSORS.

5.  All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL, related to the manufacture or design of products for use with or compatible with AMD MICROPROCESSORS.

6.  All DOCUMENTS constituting, reflecting, or discussing or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL, as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products for use with or compatible with AMD MICROPROCESSORS.

7.  All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD or COMPANY product launch or promotion, or support of AMD products at any trade show, product launch, promotion, conference, or industry meeting.

8.  All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS, or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

9.  All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

10.  All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases, branding, or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

11.  All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop,

release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

12. All DOCUMENTS constituting or reflecting any past or present contractual relationship between COMPANY and AMD or COMPANY and INTEL.

13. All DOCUMENTS reflecting or concerning any evaluation by COMPANY whether to purchase MICROPROCESSORS from AMD or INTEL (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or INTEL's MICROPROCESSORS; (b) the quality or reliability of AMD's or INTEL's MICROPROCESSORS or systems incorporating those MICROPROCESSORS; (c) the reliability of INTEL or AMD as suppliers; (d) AMD's or INTEL's ability to supply MICROPROCESSORS in the quantities that COMPANY requires or anticipates that it will require; (e) the suitability of AMD's or INTEL's MICROPROCESSORS for COMPANY's business objectives; (f) the suitability of INTEL-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of INTEL or AMD, including, but not limited to, the suitability of future product offerings from the two companies to COMPANY's needs; (h) actual or expected consumer demand for systems incorporating AMD's or INTEL's MICROPROCESSORS; (i) the pricing of AMD's or INTEL's MICROPROCESSORS; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of MICROPROCESSORS; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on INTEL or AMD MICROPROCESSORS; (m) costs associated with the shifting from the use of one MICROPROCESSOR to another; (n) or any other reasons influencing COMPANY's decision to purchase (or not purchase) MICROPROCESSORS from AMD or INTEL.

14. DOCUMENTS sufficient to show the pricing and other financial terms offered by COMPANY to customers or partners of COMPANY, including contracts, price lists, or other evidence of prices that COMPANY charges for the design, manufacture, or use of products for use with or compatible with AMD or INTEL MICROPROCESSORS.

15. DOCUMENTS sufficient to show any FINANCIAL INDUCEMENTS offered by COMPANY or to COMPANY in connection with the design, manufacture, or use of products for use with or compatible with AMD or INTEL MICROPROCESSORS.

16. All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or INTEL to satisfy any commitment or expectation regarding the sale or supply of MICROPROCESSORS or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's or INTEL's claims regarding performance or other attributes, or a failure to provide adequate service or support.

17. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD or INTEL regarding the attributes of its MICROPROCESSORS or systems incorporating its MICROPROCESSORS.

18. All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of COMPANY's products, including any advancements or improvements in the sale of any of COMPANY's products, that are attributable to any technological initiative by INTEL or AMD, including, but not limited to, any standard or specification to which INTEL made significant contributions.

19. All DOCUMENTS discussing or concerning the (a) the relative merits of INTEL-based or AMD-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either INTEL or AMD MICROPROCESSORS or systems incorporating those MICROPROCESSORS.

20. All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning any of the following: (a) any advertising or promotion by COMPANY referencing AMD or INTEL; (b) any product launch by COMPANY referencing AMD or INTEL; (c) product roadmaps of INTEL or AMD products; (d) or the terms of any contractual relationship between COMPANY and INTEL or AMD.

21. All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about COMPANY in AMD's Complaint or INTEL's Answer in that matter, or any other litigation involving AMD and INTEL, or any investigation relating to INTEL by the Japan Fair Trade Commission or the European Commission.

# EXHIBIT 13

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

In Re: Intel Corp Microprocessor Antitrust Litigation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-441-JJF, MDL 05-1717-JJF
United States District Court, District of Delaware

TO:   Hon Hai Precision Industry Co. Ltd.
      c/o Jeff Tsai
      468 E. Lambert Road
      Fullerton, California 92835

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
### See Attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| O'Melveny & Myers LLP 1999 Avenue of the Stars, 7th Floor Los Angeles, California 90067 | July 21, 2006 5 p.m. (Pacific Standard Time) |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Linda J. Smith    Attorney For Plaintiffs | June 22, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Linda J. Smith
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

---

[1]  If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, Core, Core Duo and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment (including, without limitation, payments for engineering or design support), subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to Hon Hai Precision Industry Co. Ltd. and any of its controlled present or former subsidiaries, parents, and predecessor or successor companies. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which privilege is claimed and the paragraph of these

requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

1. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive manufacturing or exclusive design of products for use with or compatible with INTEL MICROPROCESSORS.

2. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the percentage or volume of COMPANY's manufacturing or design of products for use with or compatible with INTEL MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's manufacturing or design of products for use with or compatible with AMD MICROPROCESSORS.

4.   All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT, or will in any way penalize or punish COMPANY as a result of COMPANY's manufacture or design of products for use with or compatible with AMD MICROPROCESSORS.

5.   All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL, related to the manufacture or design of products for use with or compatible with AMD MICROPROCESSORS.

6.   All DOCUMENTS constituting, reflecting, or discussing or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL, as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products for use with or compatible with AMD MICROPROCESSORS.

7.   All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD or COMPANY product launch or promotion, or support of AMD products at any trade show, product launch, promotion, conference, or industry meeting.

8.   All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS, or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

9.   All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

10. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases, branding, or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

11. All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop,

release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

12. All DOCUMENTS constituting or reflecting any past or present contractual relationship between COMPANY and AMD or COMPANY and INTEL.

13. All DOCUMENTS reflecting or concerning any evaluation by COMPANY whether to purchase MICROPROCESSORS from AMD or INTEL (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or INTEL's MICROPROCESSORS; (b) the quality or reliability of AMD's or INTEL's MICROPROCESSORS or systems incorporating those MICROPROCESSORS; (c) the reliability of INTEL or AMD as suppliers; (d) AMD's or INTEL's ability to supply MICROPROCESSORS in the quantities that COMPANY requires or anticipates that it will require; (e) the suitability of AMD's or INTEL's MICROPROCESSORS for COMPANY's business objectives; (f) the suitability of INTEL-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of INTEL or AMD, including, but not limited to, the suitability of future product offerings from the two companies to COMPANY's needs; (h) actual or expected consumer demand for systems incorporating AMD's or INTEL's MICROPROCESSORS; (i) the pricing of AMD's or INTEL's MICROPROCESSORS; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of MICROPROCESSORS; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on INTEL or AMD MICROPROCESSORS; (m) costs associated with the shifting from the use of one MICROPROCESSOR to another; (n) or any other reasons influencing COMPANY's decision to purchase (or not purchase) MICROPROCESSORS from AMD or INTEL.

14. DOCUMENTS sufficient to show the pricing and other financial terms offered by COMPANY to customers or partners of COMPANY, including contracts, price lists, or other evidence of prices that COMPANY charges for the design, manufacture, or use of products for use with or compatible with AMD or INTEL MICROPROCESSORS.

15. DOCUMENTS sufficient to show any FINANCIAL INDUCEMENTS offered by COMPANY or to COMPANY in connection with the design, manufacture, or use of products for use with or compatible with AMD or INTEL MICROPROCESSORS.

16. All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or INTEL to satisfy any commitment or expectation regarding the sale or supply of MICROPROCESSORS or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's or INTEL's claims regarding performance or other attributes, or a failure to provide adequate service or support.

17. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD or INTEL regarding the attributes of its MICROPROCESSORS or systems incorporating its MICROPROCESSORS.

18. All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of COMPANY's products, including any advancements or improvements in the sale of any of COMPANY's products, that are attributable to any technological initiative by INTEL or AMD, including, but not limited to, any standard or specification to which INTEL made significant contributions.

19. All DOCUMENTS discussing or concerning the (a) the relative merits of INTEL-based or AMD-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either INTEL or AMD MICROPROCESSORS or systems incorporating those MICROPROCESSORS.

20. All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning any of the following: (a) any advertising or promotion by COMPANY referencing AMD or INTEL; (b) any product launch by COMPANY referencing AMD or INTEL; (c) product roadmaps of INTEL or AMD products; (d) or the terms of any contractual relationship between COMPANY and INTEL or AMD.

21. All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about COMPANY in AMD's Complaint or INTEL's Answer in that matter, or any other litigation involving AMD and INTEL, or any investigation relating to INTEL by the Japan Fair Trade Commission or the European Commission.

# EXHIBIT 14

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

_____EASTERN DISTRICT OF VIRGINIA_____

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

In Re: Intel Corp Microprocessor Antitrust Litigation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-441-JJF, MDL 05-1717-JJF
United States District Court, District of Delaware

TO:   JEDEC Solid State Technology Association
      c/o Walsh Colucci Lubeley Emrich & Terpak PC
      2200 Clarendon Blvd., Suite 1300
      Arlington, Virginia  22201

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
    to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
    deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects
    at the place, date, and time specified below (list documents or objects):
**See Attached Schedule A**

| PLACE | DATE AND TIME |
|---|---|
| JEDEC Solid State Technology Association<br>2500 Wilson Boulevard<br>Arlington, Virginia  22201-3834 | July 21, 2006<br>5 p.m. (Eastern Standard Time) |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Linda J. Smith*       Attorney For Plaintiffs | June 22, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Linda J. Smith
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA  90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]  If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, Core, Core Duo and Xeon).

4. For purposes of this document request, "COMPUTER SYSTEM" means any product that utilizes a MICROPROCESSOR including, without limitation, desktop computers, notebook computers, workstations, and servers.

6. For purposes of this document request, "ORGANIZATION" refers to the JEDEC Solid State Technology Association and any of its controlled present or former subsidiaries, parents, and predecessor or successor organizations, as well as owners, partners, members, officers, directors, employees, agents, and other representatives. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim

that it constitutes or contains attorney work product, also state whether ORGANIZATION asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

    4. If ORGANIZATION objects to a request in part, please state specifically which part of the request ORGANIZATION objects to and produce all DOCUMENTS responsive to all other parts of the request.

    5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

    6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

    7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the ORGANIZATION stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

    8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, ORGANIZATION shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

    9. At ORGANIZATION'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

    1. All DOCUMENTS constituting, reflecting, or discussing any proposals or presentations by INTEL concerning any DDR (Double-Data Rate) SDRAM, DDR2 (Double-Date Rate 2) SDRAM, DDR3 (Double-Data Rate 3) SDRAM, or any other next-generation DDR SDRAM standard, including, without limitation, minutes of any meetings of the ORGANIZATION's board of directors, committees, subcommittees, task groups, work groups, or any other formal or informal groupings of ORGANIZATION's members, any communications involving any of ORGANIZATION's members, and any competing or related presentations or proposals by ORGANIZATION's members.

    2. All DOCUMENTS constituting, reflecting, or discussing any ORGANIZATION member's position or vote regarding, or evaluation on the merits of, any proposals or presentations by INTEL, and any competing or related proposals or presentations by ORGANIZATION's members, concerning any DDR (Double-Data Rate) SDRAM, DDR2 (Double-Date Rate 2) SDRAM, DDR3 (Double-Data Rate 3) SDRAM, or any other next-generation DDR SDRAM standard.

3.   All DOCUMENTS constituting, reflecting, or discussing any proposed arrangement of pin definitions for any DDR2 (Double-Date Rate 2) or DDR3 (Double-Data Rate 3) SDRAM standard, including, without limitation, minutes of any meetings of the ORGANIZATION's board of directors, committees, subcommittees, task groups, work groups, or any other formal or informal groupings of ORGANIZATION's members, any communications involving any of ORGANIZATION's members, and any competing or related presentations or proposals by ORGANIZATION's members.

4.   All DOCUMENTS constituting, reflecting, or discussing any ORGANIZATION member's position or vote regarding, or evaluation on the merits of any proposed arrangement of pin definitions for any DDR2 (Double-Date Rate 2) or DDR3 (Double-Data Rate 3) SDRAM standard.

5.   All DOCUMENTS constituting, reflecting, or discussing INTEL's proposals or presentations concerning the FBDIMM standard, including, without limitation, minutes of any meetings of the ORGANIZATION's board of directors, committees, subcommittees, task groups, work groups, or any other formal or informal groupings of ORGANIZATION's members, any communications involving any of ORGANIZATION's members, and any competing or related presentations or proposals by ORGANIZATION's members.

6.   All DOCUMENTS constituting, reflecting, or discussing any attempt by INTEL, or any concerns by anyone regarding INTEL's attempt, whether perceived or actual, to incorporate intellectual property into the FBDIMM standard.

7.   All DOCUMENTS constituting, reflecting, or discussing ORGANIZATION's policies regarding the incorporation of intellectual property into ORGANIZATION's standards, including, without limitation, ORGANIZATION's requirement that any intellectual property incorporated into a standard be licensed on reasonable and non-discriminatory terms.

8.   All DOCUMENTS constituting, reflecting, or discussing revisions, changes, or amendments to ORGANIZATION's policies regarding the incorporation of intellectual property into ORGANIZATION's standards, including, without limitation, any proposed revisions, changes, or amendments to ORGANIZATION's requirement that any intellectual property incorporated into a standard be licensed on reasonable and non-discriminatory terms.

9.   All DOCUMENTS constituting, reflecting, or discussing INTEL's attendance records for any ORGANIZATION meetings relating to any DDR (Double-Data Rate) SDRAM, DDR2 (Double-Date Rate 2) SDRAM, DDR3 (Double-Data Rate 3) SDRAM, or FBDIMM standard.

10. All DOCUMENTS constituting, reflecting, or discussing INTEL's efforts or attempts to develop any memory standard independent of or outside of ORGANIZATION.

11. All DOCUMENTS constituting, reflecting, or discussing the Advanced DRAM Technology Consortium ("ADT Consortium"), including, without limitation, its impact on ORGANIZATION's ability to promote next-generation memory standards.

12. All DOCUMENTS reflecting or discussing INTEL's efforts to exclude AMD from participating in the development of any standard.

13. All DOCUMENTS constituting, reflecting, or discussing INTEL's participation in or influence of ORGANIZATION's development of memory standards applicable to COMPUTER SYSTEMS.

# EXHIBIT 15

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

In Re: Intel Corp Microprocessor Antitrust Litigation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-441-JJF, MDL 05-1717-JJF
United States District Court, District of Delaware

TO:    Micro-Star International, Ltd.
       c/o MSI Computer Corporation
       901 Canada Court
       City of Industry, California  91748

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
**See Attached Schedule A**

| PLACE | DATE AND TIME |
| --- | --- |
| O'Melveny & Myers LLP<br>1999 Avenue of the Stars, 7th Floor<br>Los Angeles, California  90067 | July 21, 2006<br>5 p.m. (Pacific Standard Time) |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| *Linda J. Smith*  Attorney For Plaintiffs | June 22, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Linda J. Smith
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA  90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]   If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

**Definitions**

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, Core, Core Duo and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment (including, without limitation, payments for engineering or design support), subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to Micro-Star International, Ltd. and any of its controlled present or former subsidiaries, parents, and predecessor or successor companies. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

**Instructions**

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which privilege is claimed and the paragraph of these

requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

1. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive manufacturing or exclusive design of products for use with or compatible with INTEL MICROPROCESSORS.

2. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the percentage or volume of COMPANY's manufacturing or design of products for use with or compatible with INTEL MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's manufacturing or design of products for use with or compatible with AMD MICROPROCESSORS.

4. All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT, or will in any way penalize or punish COMPANY as a result of COMPANY's manufacture or design of products for use with or compatible with AMD MICROPROCESSORS.

5. All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL, related to the manufacture or design of products for use with or compatible with AMD MICROPROCESSORS.

6. All DOCUMENTS constituting, reflecting, or discussing or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL, as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products for use with or compatible with AMD MICROPROCESSORS.

7. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD or COMPANY product launch or promotion, or support of AMD products at any trade show, product launch, promotion, conference, or industry meeting.

8. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS, or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

9. All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

10. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases, branding, or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

11. All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop,

release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

12. All DOCUMENTS constituting or reflecting any past or present contractual relationship between COMPANY and AMD or COMPANY and INTEL.

13. All DOCUMENTS reflecting or concerning any evaluation by COMPANY whether to purchase MICROPROCESSORS from AMD or INTEL (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or INTEL's MICROPROCESSORS; (b) the quality or reliability of AMD's or INTEL's MICROPROCESSORS or systems incorporating those MICROPROCESSORS; (c) the reliability of INTEL or AMD as suppliers; (d) AMD's or INTEL's ability to supply MICROPROCESSORS in the quantities that COMPANY requires or anticipates that it will require; (e) the suitability of AMD's or INTEL's MICROPROCESSORS for COMPANY's business objectives; (f) the suitability of INTEL-based or AMD-based platforms for particular customer segments, including, but not limited to, corporate customers; (g) the future roadmap of INTEL or AMD, including, but not limited to, the suitability of future product offerings from the two companies to COMPANY's needs; (h) actual or expected consumer demand for systems incorporating AMD's or INTEL's MICROPROCESSORS; (i) the pricing of AMD's or INTEL's MICROPROCESSORS; (j) negotiations, proposals or demands in connection with the purchase or potential purchase of MICROPROCESSORS; (k) the availability, capability or price of chipsets or motherboards; (l) the total bill of materials for systems based on INTEL or AMD MICROPROCESSORS; (m) costs associated with the shifting from the use of one MICROPROCESSOR to another; (n) or any other reasons influencing COMPANY's decision to purchase (or not purchase) MICROPROCESSORS from AMD or INTEL.

14. DOCUMENTS sufficient to show the pricing and other financial terms offered by COMPANY to customers or partners of COMPANY, including contracts, price lists, or other evidence of prices that COMPANY charges for the design, manufacture, or use of products for use with or compatible with AMD or INTEL MICROPROCESSORS.

15. DOCUMENTS sufficient to show any FINANCIAL INDUCEMENTS offered by COMPANY or to COMPANY in connection with the design, manufacture, or use of products for use with or compatible with AMD or INTEL MICROPROCESSORS.

16. All DOCUMENTS reflecting or discussing any failure or perceived failure by AMD or INTEL to satisfy any commitment or expectation regarding the sale or supply of MICROPROCESSORS or any other product or service, including, but not limited to, a failure to meet supply commitments, a failure to supply products of sufficient quality or reliability, a failure to supply products in a timely manner, a failure to supply products that conform to AMD's or INTEL's claims regarding performance or other attributes, or a failure to provide adequate service or support.

17. All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD or INTEL regarding the attributes of its MICROPROCESSORS or systems incorporating its MICROPROCESSORS.

18. All DOCUMENTS, whether generated internally or received from third parties, discussing or concerning any technological, reliability, quality, or other advancements or improvements in any of COMPANY's products, including any advancements or improvements in the sale of any of COMPANY's products, that are attributable to any technological initiative by INTEL or AMD, including, but not limited to, any standard or specification to which INTEL made significant contributions.

19. All DOCUMENTS discussing or concerning the (a) the relative merits of INTEL-based or AMD-based platforms for systems directed at or intended for sale to corporate or business customers and (b) the preference of corporate or business customers for either INTEL or AMD MICROPROCESSORS or systems incorporating those MICROPROCESSORS.

20. All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning any of the following: (a) any advertising or promotion by COMPANY referencing AMD or INTEL; (b) any product launch by COMPANY referencing AMD or INTEL; (c) product roadmaps of INTEL or AMD products; (d) or the terms of any contractual relationship between COMPANY and INTEL or AMD.

21. All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning the above-captioned matter, AMD v. Intel, Civil Action No. 05-441 (D. Del.), or any of the allegations about COMPANY in AMD's Complaint or INTEL's Answer in that matter, or any other litigation involving AMD and INTEL, or any investigation relating to INTEL by the Japan Fair Trade Commission or the European Commission.