**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

**MEMORANDUM IN SUPPORT OF INTEL CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' FOREIGN CONDUCT CLAIMS**

OF COUNSEL:
David M. Balabanian
James L. Hunt
Christopher B. Hockett
Nora C. Cregan
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
(415) 393-2000

Richard A. Ripley
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C. 20006
(202) 373-6000

Dated: November 3, 2006

Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com

*Attorneys for Defendant
Intel Corporation*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF THE CASE.........................................................................3

III.    LEGAL STANDARD OF REVIEW ...............................................................4

IV.     CLASS PLAINTIFFS' FOREIGN CONDUCT CLAIMS ARE MORE
        REMOTE THAN AMD'S AND SHOULD BE STRICKEN...................................4

V.      APPLYING STATE LAW IN A MANNER INCONSISTENT WITH
        THE FTAIA WOULD BE UNCONSTITUTIONAL.......................................................7

        A.      The Goal of the FTAIA is Certainty and Uniformity in the Scope
                of U.S. Antitrust Regulation of Conduct in Foreign Trade.........................8

        B.      State Antitrust and Consumer Protection Laws Must Comport with
                the FTAIA or Run Afoul of the Foreign Commerce Clause ......................11

        C.      The Supremacy Clause Also Prohibits Conflict Between State Law
                And The FTAIA............................................................................................13

VI.     THE STATE LAWS THAT CLASS PLAINTIFFS INVOKE
        THEMSELVES FORECLOSE RELIANCE ON FOREIGN CONDUCT ........ ..16

        A.      State Antitrust Laws Mirror Federal Antitrust Law And Should be
                Similarly Interpreted ...................................................................................17

        B.      State Consumer Protection Laws are Similarly Limited in Their
                Application to Foreign Conduct....................................................................19

VII.    CONCLUSION..............................................................................................21

TABLE OF AUTHORITIES

Page

## CASES

*Amarel v. Connell,*
202 Cal. App. 3d 137 (1988) ............................................................ 15, 16, 19

*American Ins. Ass'n v. Garamendi,*
539 U.S. 396 (2003) .................................................................................. 12

*Bowen v. Ziasun Techs., Inc.,*
116 Cal. App. 4th 777 (2002) ................................................................... 20

*California v. ARC Am. Corp.,*
490 U.S. 93 (1989) .................................................................................... 13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) .............................................................................. 20

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000) ...................................................................... 12, 13, 15

*CSR Ltd. v. Cigna Corp.,*
405 F. Supp. 2d 526 (D.N.J. 2005) .......................................................... 18

*F. Hoffman La Roche Ltd v. Empagran,*
542 U.S. 155 (2004) ............................................................................ *passim*

*Gerling Global Reinsurance Corp. v. Quackenbush,*
Nos. Civ. S-00-0506WBSJFM, 2000 WL 777978
(E.D. Cal. June 9, 2000) ............................................................................ 12

*Guste v. Demars,*
330 So.2d 123 (La. Ct. App. 1976) .......................................................... 20

*Henderson v. U.S. Fid. & Guar. Co.,*
488 S.E.2d 234 (N.C. 1997) ...................................................................... 20

*Japan Line, LTD. v. County of Los Angeles,*
441 U.S. 434 (1979) ....................................................................... 9, 11, 12

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
926 F.2d 1406 (3d Cir. 1991) ..................................................................... 4

TABLE OF AUTHORITIES
(continued)

Page

*Nat'l Foreign Trade Council v. Natsios,*
    181 F.3d 38 (1st Cir. 1999)......................................................................... 12

*Norfolk So. Corp. v. Oberly,*
    822 F.2d 388 (3d Cir. 1987).......................................................................... 11

*People ex rel. Spitzer v. Applied Card Sys., Inc.,*
    805 N.Y.S.2d 175 (N.Y. App. Div. 2005) ................................................. 20

*Rayner v. Reeves Custom Builders, Inc.,*
    691 N.W.2d 705 (Wis. App. 2004)............................................................. 20

*State v. Colo. State Christian Coll. of Church of Inner Power, Inc.,*
    346 N.Y.S.2d 482 (Sup. Ct. 1973)............................................................. 20

*State v. Weinschenk,*
    868 A.2d 200 (Me. 2005).............................................................................. 20

*The 'In' Porters, S.A. v. Hanes Printables, Inc.,*
    663 F. Supp. 494 (M.D.N.C. 1987) ............................................................ 18

*Turicentro, S.A. v. Am. Airlines, Inc.,*
    152 F. Supp. 2d 829 (E.D. Pa. 2001) ........................................................ 10

*Turicentro, S.A. v. Am. Airlines, Inc.,*
    303 F.3d 293 (3d Cir. 2002)........................................................................... 4

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
    131 F. Supp. 2d 1003 (N.D. Ill. 2001),
    *aff'd* 322 F.3d 942 (7th Cir. 2003)....................................................... 6, 10

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
    94 C 2078, 1994 WL 577246 (N.D. Ill. Oct. 18, 1994) ........................... 21

*United States v. Aluminum Co. of Am.,*
    148 F.2d 416 (2d Cir. 1945).......................................................................... 9

*United States v. LSL Biotechs.,*
    379 F.3d 672 (9th Cir. 2004) .................................................................. 5, 10

*Vinci v. Waste Mgmt., Inc.,*
    36 Cal. App. 4th 1811 (1995) ..................................................................... 17

TABLE OF AUTHORITIES
(continued)

Page

*Watkins v. Roach Cadillac, Inc.*,
  637 P.2d 458 (Kan. Ct. App. 1981) ............................................................... 20

*Western Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*,
  101 P.3d 1047 (Alaska 2004) ....................................................................... 20

## **STATUTES**

15 U.S.C. § 45 (2006) ............................................................................. 17, 20
15 U.S.C. § 45(a)(1) (2006) ............................................................................. 20
15 U.S.C. § 45(a)(3)(i) (2006) ................................................................. 17, 21
15 U.S.C. § 6a (2006) ......................................................................................... 8
5 ME. REV. STAT. ANN. tit. 5, § 207(1) (2006) ........................................... 20
ALASKA STAT. 45.50.545 (2005) ................................................................... 20
CAL. BUS. & PROF. CODE § 17045 ................................................................. 3
CAL. BUS. & PROF. CODE § 17200 ........................................................ 15, 19
FLA. STAT. § 501.202(3) (2006) .................................................................... 20
GA. CODE ANN. § 10-1-391(b) (2006) .......................................................... 20
IDAHO CODE § 48-604(1) (2006) ................................................................... 20
MASS. GEN. LAWS ch. 93A § 2(b) (2006) ................................................... 20
MONT. CODE ANN. § 30-14-104(1) (2005) .................................................. 20
N.H. REV. STAT. § 358-A:13 (2006) ............................................................. 20
N.M. STAT. § 57-12-4 (2006) .......................................................................... 20
NEV. REV. STAT. § 598A.050 (2006) ............................................................ 17
R.I. GEN. LAWS § 6-13.1-3 (2005) ............................................................... 20
UTAH CODE ANN. § 13-11-2(4) (2006) ........................................................ 20
VT. STAT. ANN. tit. 9, § 2451 (2005) ..................................................... 17, 20
VT. STAT. ANN. tit. 9, § 2453 (2005) ........................................................... 17
VT. STAT. ANN. tit. 9, § 2453(b) (2005) ................................................. 17, 20
W. VA. CODE § 46A-6-101(1) (2006) ........................................................... 20
Wis. Stat. § 100.20 ........................................................................................... 20

TABLE OF AUTHORITIES
(continued)

Page

## OTHER AUTHORITIES

5B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE:
CIVIL 3D § 1350, at 181-85 (3d ed. 2004) .................................................................... 4

H.R. REP. NO. 97-686 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487 ........................... 9, 10

## RULES

FED. R. CIV. P. 12(h)(3) ....................................................................................................... 4

## CONSTITUTIONAL PROVISIONS

U.S. CONST. art. I, § 8, cl. 3 .............................................................................................. 11

## I.   INTRODUCTION

This Court has already ruled that it lacks jurisdiction over AMD's claims involving Intel's alleged foreign conduct. As a result, it struck 20 paragraphs from the AMD complaint relating to that conduct. Class Plaintiffs' foreign conduct allegations against Intel are copied word for word from AMD's complaint. They are the same allegations that this Court has already stricken from AMD's complaint, and they should meet the same fate in this matter.

Class Plaintiffs' indirect purchaser claims begin with the competitive harm that AMD claims to have suffered, mostly abroad, at the hand of Intel. Class Plaintiffs' claims thus invoke the same alleged "chain of effects full of twists and turns" as AMD's claims. But Class Plaintiffs tack on even more twists and turns to AMD's already attenuated foreign conduct story. Just as AMD did, they claim that Intel's aggressive foreign price discounting hurt AMD's profits and weakened it in the worldwide market, which in turn resulted — in a manner that is unexplained — in higher prices charged for Intel microprocessors to third parties overseas. These third parties then installed these supposedly higher priced Intel chips into computers that eventually made their way to the U.S. market, which, in turn, resulted in higher retail prices for those computers in the United States.[1]

These further steps in the chain of distribution — and the chain of effects of causation — add to what was already "a multitude of speculative and changing factors," and make the U.S. effects of Intel's alleged foreign conduct too remote and indirect to support jurisdiction in U.S. courts under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"). Indeed, this Court's September 26, 2006 Memorandum Opinion

---

[1]      *See* First Amended Consolidated Complaint ("Complaint"), D.I. 108, ¶¶ 140, 145, 163-175, 189-195, 231-235.

("D.I. 279") specifically addressed the effects that are the focus of Class Plaintiffs'
Complaint:

> AMD alleges in its Complaint that Intel's alleged conduct
> has resulted in higher PC prices and a "loss of freedom" or
> consumer choice for computer purchasers in the United
> States. To the extent that these effects are based on Intel's
> alleged foreign conduct, the Court concludes that they too
> are insufficient to establish the proximate causation
> required by the FTAIA. . . . [T]hese types of effects are not
> direct domestic effects of any alleged foreign conduct by
> Intel . . . .

D.I. 279 at 12 (citations omitted). For the same reasons, Class Plaintiffs have not, and
cannot, allege that Intel's alleged foreign conduct had a "direct, substantial, and
foreseeable effect on U.S. commerce." Without such an effect, as the Court has ruled
with respect to AMD's complaint, the Court has no jurisdiction to adjudicate Intel's
foreign conduct under the Class Plaintiffs' Sherman Act Section 2 claim.

That Class Plaintiffs are suing under various state laws in addition to the Sherman
Act makes no difference. Where, as here through the FTAIA, Congress affirmatively
places certain conduct beyond the jurisdictional reach of the American laws for reasons
of international comity and unitary policy, that determination binds the states through the
Foreign Commerce Clause. It would defeat Congress' purpose of establishing uniform
jurisdictional boundaries for U.S. antitrust laws (and would make no sense) if the same
foreign conduct were nonetheless subject to the various laws of South Dakota, Nevada
and other individual states. The Supremacy Clause also limits state law in these
circumstances, because applying state law to Intel's alleged foreign conduct would stand
as an obstacle to the objectives of the FTAIA.

Moreover, even if it were constitutionally permissible to extend the reach of state
law beyond the jurisdictional limit of the Sherman Act, the laws of the 27 states at issue
here have never been, and should not now be, interpreted to cross that border. Those
state laws themselves contain either harmonization provisions requiring that they be

2

interpreted in accordance with federal antitrust law, or other provisions that preclude applying them to foreign conduct.

Whether because the states cannot constitutionally reach Intel's alleged foreign conduct, or because their courts would follow *Empagran* and the FTAIA test in these circumstances, the result is the same: the allegations of foreign conduct that the Court struck from the AMD complaint must also be stricken from the Class Plaintiffs' Complaint.

## II.     STATEMENT OF THE CASE

AMD filed an action against Intel alleging violations of Section 2 of the Sherman Act (monopolization) and Section 17045 of the California Business and Professions Code (unlawful rebates and discounts) and the tort of interference with prospective economic advantage (based on the alleged violation of the two statutes referenced above). Shortly thereafter, the Class Plaintiffs brought a large number of purported class actions, relying entirely, and usually word for word, on the factual allegations in AMD's complaint. *See* Exhibit A, App A1-A15. Class Plaintiffs claim to be U.S. indirect purchasers of Intel microprocessors, *i.e.*, buyers of PCs or other electronic devices containing Intel microprocessors,[2] but otherwise they parrot the same anecdotal allegations that form the basis of AMD's complaint — allegations about Intel's price cuts, rebates and other concessions to OEMs, retailers and distributors, many of them overseas. *See* Complaint ¶¶ 140, 145, 163-175, 189-195.

Intel moved to dismiss AMD's Sherman Act and California law claims to the extent they were premised on alleged foreign conduct. This Court granted Intel's motion, dismissing all of AMD's claims for injuries arising from Intel's alleged foreign conduct.

---

[2]     *See, e.g.,* Complaint ¶¶ 10, 234. For a full description of the allegations in Class Plaintiffs' Consolidated Complaint, *see* Defendant Intel Corporation's Memorandum in Support of its Motion to Dismiss the First Amended Consolidated Class Action Complaint ("Motion to Dismiss Class Complaint") at 4-8.

*See* D.I. 279 at 5, 7, 15-16. Specifically, the Court concluded that it lacked jurisdiction over "AMD's claims that are based on lost sales of AMD's German-made microprocessors to foreign customers" as alleged in the paragraphs of AMD's complaint relating to: (1) Japanese OEMs (¶¶ 40-44, 54, 57, 74); (2) European OEMs (¶¶ 55, 56, 65, 75, 81); (3) alleged interference with the launch of an AMD based system by foreign OEMS or sales to these OEMs (¶¶ 81, 83, 86); (4) alleged interference with foreign distributors' sales in foreign countries (¶¶ 89, 93, 94); (5) interference with sales to retailers in Europe (¶¶ 100, 101); and (6) alleged interference with German retail chain Vobis (¶ 106). *See* D.I. 279 at 7, 16.

## III.    LEGAL STANDARD OF REVIEW

Lack of subject matter jurisdiction can be raised at any time during the course of a case. FED. R. CIV. P. 12(h)(3). Plaintiffs "bear the burden of persuasion" and must establish that the court has subject matter jurisdiction over the dispute they have filed. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *see also Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002). In evaluating the motion, the Court is not required to accept the allegations supporting subject matter jurisdiction uncritically. On the contrary, "because of the importance of the issue to the federal judicial system, argumentative (as opposed to reasonable) inferences favorable to the pleader will not be drawn and conclusory allegations or conclusions of law will not be credited." 5B Wright and Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1350, at 181-85 (3d ed. 2004).

## IV.    CLASS PLAINTIFFS' FOREIGN CONDUCT CLAIMS ARE MORE REMOTE THAN AMD'S AND SHOULD BE STRICKEN

The paragraphs that this Court struck from AMD's complaint appear in Class Plaintiffs' Complaint virtually unaltered. *See* Exhibit A, App. A1-A16 (*comparing* 6/27/05 AMD Complaint ¶¶ 40-44, 54-57, 65, 74-75, 81, 83, 86, 89, 93-94, 100-101, and

4

106 *with* 5/26/06 Complaint ¶¶ 145-149, 159-162, 169, 178-79, 185, 187, 190, 193, 197-98, 204-05, 210). These paragraphs cannot form the basis of Class Plaintiffs' antitrust claims any more than they could form the basis for AMD's claims.

This Court concluded that AMD's allegations — the same ones on which Class Plaintiffs rely — failed to establish that "Intel's conduct resulted in a substantial and direct domestic effect," and therefore were "insufficient to support the exercise of the Court's jurisdiction over AMD's claim." D.I. 279 at 7, 11, 14. Rather, AMD's allegations were replete with "intervening developments," *id.* at 9 (*citing United States v. LSL Biotechs.*, 379 F.3d 672, 680 (9th Cir. 2004)), and constituted a "chain of effects full of twists and turns, which themselves are contingent upon numerous developments:"

> AMD's primary contention that its lost foreign sales have resulted in lost profitability which in turn, has resulted in lost revenues to shareholders and missed opportunities to invest and compete in the United States is premised on a multitude of speculative and changing factors affecting business and investment decisions, including market conditions, the cost of financing, supply and demand, the success or failure of research and development efforts, the availability of funds and world-wide economic and political conditions.

D.I. 279 at 9-10. Intel's alleged foreign conduct, therefore, merely had a "ripple effect" on the United States domestic market, an effect insufficient to give rise to a Sherman Act claim. *Id.* at 11.

Class Plaintiffs never explain the alchemy by which Intel's alleged foreign price discounting is transmuted into higher PC prices in the United States. As Intel explains more fully in its Motion to Dismiss the Class Complaint (section IV), there is no logical path from AMD's hypothesis of monopolization through underselling to Class Plaintiffs' conclusion that they paid too much for their PCs. No matter what theory Class Plaintiffs promote to fill that gap, though, one thing is clear: their claims are even less direct and farther "outside the direct causal chain" than AMD's claims. *Id.* at 14.

For Class Plaintiffs to recover for injuries caused by Intel's alleged foreign
conduct, they would have to prove *all* of the ripples the Court described above, and *then*
prove (*i*) that AMD's weakened condition permitted Intel to charge higher prices for
microprocessors (even though the allegations primarily describe *discounting* Intel chips);
(*ii*) that increased Intel chip prices caused OEMs to raise the wholesale price of personal
computers in the U.S.; (*iii*) that OEMs passed that price increase on to retailers; and (*iv*)
that retailers passed it on to Class Plaintiffs. Each of these "intervening developments"
standing alone would defeat jurisdiction. Together, and taking into account all of the
other potential factors influencing retailers' prices for personal computers (from stores'
operating costs, to inventory, to the price of gasoline), they create a chain even more
convoluted than AMD's chain of causation — and a claim that is much less redressable
in U.S. courts.

The Court must strike Class Plaintiffs' foreign conduct allegations not only
because they link their claims on to the end of the too-attenuated AMD chain of
causation, but also because they do not claim to have purchased the allegedly affected
product. In striking the foreign conduct allegations from AMD's complaint, this Court
has already ruled that the theory that "Intel's alleged [foreign] conduct has resulted in
higher PC prices and a 'loss of freedom' or consumer choice for computer purchasers in
the United States" is "insufficient to establish the proximate causation required by the
FTAIA." D.I. 279 at 12.

The law is consistent with this Court's ruling. Allegations that pricing of a
component product were affected by anticompetitive conduct overseas cannot support
jurisdiction under the FTAIA. *See id* at 12, 14; *compare United Phosphorus, Ltd. v.
Angus Chem. Co.*, 131 F. Supp. 2d 1003 (N.D. Ill. 2001), *aff'd*, 322 F.3d 942 (7th Cir.
2003). In *United Phosphorus*, potential manufacturers of ingredients for tuberculosis
medicine (Ethambutol) primarily used in India sued rival manufacturers under Section 2
of the Sherman Act. The plaintiffs alleged that the defendants conspired to monopolize

6

the market for two chemicals, 2-Amino-1 Butanol ("AB"), the key ingredient of

Ethambutol, and 1-Nitro-Propane ("1-NP"), the raw material used to make AB. The

district court held that under the FTAIA it lacked subject matter jurisdiction over

plaintiffs' claims. The court found that there was insufficient evidence that the plaintiffs

could have or would have sold AB to domestic manufacturers of Ethambutol. *Id.* at

1010-13. Further, that AB sold abroad might be included into Ethambutol that would, in

turn, be sold in the United States was insufficient to establish jurisdiction: "The FTAIA

explicitly bars antitrust actions alleging restraints in foreign markets for inputs (such as

AB) that are used abroad to manufacture downstream products (like ethambutol) that may

later be imported into the United States. Clearly, the domestic effects in such a case, if

any, would obviously not be 'direct,' much less 'substantial' and 'reasonably

foreseeable.'" *Id.* at 1014.

The same reasoning holds true here — that Intel's microprocessors sold abroad

might be used in computers that ultimately make their way into the United States does

not meet the threshold requirements of application of the Sherman Act to any of Class

Plaintiffs' claims.

Regardless of how Class Plaintiffs might attempt to prove that Intel's alleged

foreign conduct caused them harm, their chain of causation is too attenuated to support

jurisdiction.

## V.    APPLYING STATE LAW IN A MANNER INCONSISTENT WITH THE FTAIA WOULD BE UNCONSTITUTIONAL

The Court struck allegations of foreign conduct from AMD's Sherman Act claims

as well as from its California claims. D.I. 279 at 5, 7, 15-16.[3] The Class Plaintiffs' state

---

[3]    The Court also found that AMD lacked standing to pursue its claims based on foreign conduct. D.I. 279 at 17. For the same reasons, Class Plaintiffs lack standing to pursue any claims based on foreign conduct. That issue is addressed in Part IV of Intel's Motion to Dismiss the Class Complaint.

law claims should be treated the same way. Applying state law to the foreign conduct alleged in the face of the unitary Congressional purpose behind the FTAIA would violate both the Foreign Commerce Clause and the Supremacy Clause of the United States Constitution.

> **A.    The Goal Of The FTAIA Is Certainty And Uniformity
> In The Scope Of U.S. Antitrust Regulation Of Conduct
> In Foreign Trade**

The FTAIA[4] amended the Sherman Act to clarify the reach of the United States antitrust laws with regard to trade or commerce with foreign nations. *See* D.I. 279 at 4; *see also F. Hoffman La Roche Ltd. v. Empagran*, 542 U.S. 155, 169 (2004) ("[T]he FTAIA's language and history suggest that Congress designed the FTAIA to clarify, perhaps to limit, but not *to expand* in any significant way, the Sherman Act's scope as applied to foreign commerce."). As this Court has noted, the FTAIA "initially lays down a general rule placing *all* (non-import) activity involving foreign commerce outside the Sherman Act's reach. It then brings such conduct back within the Sherman Act's reach *provided that* the conduct both (1) sufficiently affects American commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" D.I. 279 at 4, 5 (citing *Empagran*, 542 U.S. 155 (emphases and brackets in original)).

The legislative history of the FTAIA demonstrates that Congress intended the United States to "speak with once voice" with respect to the interaction between

---

[4]    The FTAIA provides, in relevant part, that "[The Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations" unless that "conduct has a direct, substantial, and reasonably foreseeable effect" on domestic trade of commerce, on "import trade or import commerce with foreign nations," or on "export trade or expert commerce" of a person engaged in such commerce in the United States, and "such effect gives rise to a claim under the provisions of [the Sherman Act]." 15 U.S.C. § 6a (2004).

American antitrust laws and foreign commerce. *Japan Line, LTD. v. County of Los Angeles*, 441 U.S. 434, 449 (1979). The FTAIA was the congressional response to the perception that "American antitrust laws" were a barrier to joint export activities and that "courts differ in their expression of the proper test for determining whether United States antitrust jurisdiction over international transactions exists." H.R. REP. NO. 97-686, at 2 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487; *see also id.* at 5, 1982 U.S.C.C.A.N. at 2490 ("There remains, however, some disparity among judicial interpretations [of the effects test established in *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 443-44 (2d Cir. 1945)] and between those interpretations and executive enforcement policy regarding the quantum and nature of the effects required to create jurisdiction."). Congress' reaction was to "clarify" U.S. antitrust law by setting forth "a single, objective test — the 'direct, substantial, and reasonably foreseeable effect' test . . . ." *Id.* at 2, 1982 U.S.C.C.A.N. at 2487. Under the FTAIA, Congress said, "[a] clear benchmark will exist for businessmen, attorneys and judges as well as our trading partners." *Id.* at 2-3, 1982 U.S.C.C.A.N. at 2488.

Important to Congress's establishment of a "single, clear standard" was that it would "reduce the amount of legal research and analysis that will be necessary to make an accurate prediction of whether our antitrust laws 'indicate problems'" with decisions affecting commerce with the United States. *Id.* at 6, 1982 U.S.C.C.A.N. at 2491. For Congress, it was of paramount importance to ensure that those involved in foreign commerce could readily determine whether American antitrust laws applied to their conduct. *Id.*, 1982 U.S.C.C.A.N. at 2491; *see also id.* at 7, 1982 U.S.C.C.A.N. at 2492 ("The specific purpose of the Sherman Act modification is: To clearly establish when antitrust liability attaches to international business activities."); *id.* at 9, 1982 U.S.C.C.A.N. at 2494 ("[T]he ultimate purpose of this legislation is to promote certainty

in assessing the applicability of American antitrust law to international business transactions and proposed transactions . . . .").[5]

In *Empagran,* the Supreme Court confirmed that the FTAIA implicates principles of comity. 542 U.S. at 167-69. The Court observed that over-extension of American antitrust law could impair the regulation of commerce in other nations. Congress is assumed to have taken into account the "legitimate sovereign interests of other nations." *Id.* at 164-65. Citing to amicus briefs of foreign sovereigns, the Court explained that permitting claims lacking the requisite direct domestic effects to proceed in the United States might upset other nations' antitrust laws — *e.g.*, plaintiffs might seek out American law because it would permit greater recovery than under other countries' laws. *Id.* at 167-68.[6]

As Congress and Supreme Court have made clear, the FTAIA is meant to establish a single, clear standard for the extraterritorial application of American antitrust laws. This limited application further promotes well-established principles of comity.

---

[5]     *See also LSL Biotechs.*, 379 F.3d at 678 (FTAIA meant to clarify uncertainties as to whether Sherman Act applied to foreign commerce); *Turicentro, S.A. v. American Airlines, Inc.*, 152 F. Supp. 2d 829, 832 (E.D. Pa. 2001) ("The Act thus clarifies the application of United States antitrust laws to foreign conduct and *specifically limits* the application of such antitrust laws when non-import foreign commerce is involved."), *aff'd*, 303 F.3d 293 (3d Cir. 2002) (emphasis supplied); *United Phosphorus,* 131 F. Supp. 2d at 1021 ("At its essence, the FTAIA concerns the very power of the Court to hear and decide antitrust claims. Case law, and other authorities, uniformly agree that the FTAIA limits the 'jurisdiction' of American courts over antitrust claims involving foreign commerce.").

[6]     In enacting the FTAIA, Congress provided that even if a district court has jurisdiction under the FTAIA with respect to a claim involving foreign commerce, the court retains the ability to dismiss the claim under principles of comity. *See* H.R. REP. No. 97-686, at 13, 1982 U.S.C.C.A.N. at 2498. However, as the Supreme Court explained in *Empagran*, a case-by-case application of comity principles, in the absence of the limitations of the FTAIA, was "too complex to prove workable." *Empagran*, 542 U.S. at 168.

**B.** **State Antitrust And Consumer Protection Laws Must Comport With The FTAIA Or Run Afoul Of The Foreign Commerce Clause**

The Commerce Clause reserves to Congress the right "to regulate commerce with foreign Nations . . . ." U.S. CONST. art. I, § 8, cl. 3. "Foreign commerce is pre-eminently a matter of national concern." *Japan Line, LTD.,* 441 U.S. at 448. "'In international relations and with respect to foreign intercourse and trade the people of the United States act through a single government with unified and adequate national power.'" *Id.* (citations omitted). "'The Federal Government must speak with one voice when regulating commercial relations with foreign governments.'" *Id.* at 449 (citations omitted); *see also Norfolk So. Corp. v. Oberly*, 822 F.2d 388, 399 (3d Cir. 1987) (noting heightened scrutiny to laws that implicate Foreign Commerce Clause's promotion of federal uniformity).

In enacting the FTAIA, Congress explicitly intended to establish a "single, clear standard" applicable to foreign commerce. It would subvert Congress' purpose to construe various states' antitrust laws to reach foreign conduct that is beyond the reach of the Sherman Act. The unitary scheme that Congress mandated — permitting antitrust claims only when there are "direct, substantial, and reasonably foreseeable" effects in the United States — would be thwarted if a party could somehow avail itself of more liberal jurisdictional tests under various state antitrust laws.

The cacophony created by differences in the "quantum and nature of the effects required to create jurisdiction" under 50 different antitrust regimes would drown out the unitary voice that Congress envisioned when enacting the FTAIA; and those involved in foreign commerce would be no better off in trying to predict whether their conduct implicated "American antitrust laws" than they were before Congress enacted the FTAIA. Comity, too, is implicated, because permitting the application of state antitrust laws that do not require the same domestic effects as those required under the Sherman Act would interfere with foreign nations' antitrust regimes. It is precisely this type of

11

disunity and confusion in foreign trade regulation that the Foreign Commerce Clause prohibits.

In *Japan Line,* for example, the Supreme Court found that applying a California *ad valorem* tax provision to containers involved in international commerce violated the Commerce Clause. 441 U.S. 434. As with the state antitrust and consumer protection laws at issue here, the California tax statute did not discriminate between domestic and foreign commerce. Rather, it imposed a tax on any property located in California on a particular date each year. This scheme meant that foreign goods located in California on that date were taxed even though they were not destined for sale or distribution in the state. Noting that the United States had entered the Customs Convention on Containers with other nations covering duties on goods temporarily imported into member nations, the Court found that the California statute impaired the ability of the United States to speak with one voice. *Id.* at 453-54; *see also National Foreign Trade Council v. Natsios*, 181 F.3d 38, 68-69 (1st Cir. 1999) (Massachusetts "anti-Burma" law violated, *inter alia*, Foreign Commerce Clause, by undermining need for U.S. to speak with one voice with respect to commerce with Myanmar), *aff'd on other grounds sub nom. Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000); *Gerling Global Reinsurance Corp. of Am. v. Quackenbush,* Nos. Civ. S-00-0506WBSJFM, 2000 WL 777978, *12 (E.D. Cal. June 9, 2000) (finding California law that required disclosure of insurance claims sold to Europeans prior to World War II violated, *inter alia*, the Foreign Commerce Clause because it prevented the United States from speaking with one voice on compensating Holocaust victims), *aff'd on other grounds sub. nom. American Ins Ass'n v. Garamendi*, 539 U.S. 396 (2003).

In sum, *Japan Line* and its progeny make clear that where a state law undermines a clear federal policy to speak with one voice on a matter affecting foreign commerce, applying that law beyond what is permitted by the federal policy violates the Commerce Clause.

**C.    The Supremacy Clause Also Prohibits Conflict Between
State Law And The FTAIA**

Although it is long settled that the Sherman Act was not intended to displace state
antitrust schemes, so state antitrust laws are neither expressly nor impliedly generally
preempted, the Supremacy Clause nevertheless prohibits applying state antitrust laws
where "under the circumstances of [a] particular case, [the challenged state law] stands as
an obstacle to the accomplishment and execution of the full purposes and objectives of
Congress." *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 373 (2000)
(citations and internal quotations omitted); *see also California v. ARC Am. Corp.,* 490
U.S. 93, 100-101 (1989) (applying conflict preemption analysis to determine that indirect
purchaser actions are permitted under Supremacy Clause because they do not obstruct
*Illinois Brick*'s purpose of reducing complexity of antitrust litigation in federal court).
Permitting state laws to reach foreign conduct that the FTAIA places beyond the purview
of the Sherman Act would create just such a conflict.

"What is a sufficient obstacle is a matter of judgment, to be informed by
examining the federal statute as a whole and identifying its purpose and intended effects
. . . ." *Crosby,* 530 U.S. at 373; *see also ARC Am.,* 490 U.S. at 100-101. As described
above, the explicit purpose of the FTAIA is to accommodate the antitrust schemes of
other nations and to provide a clear and uniform standard for determining the application
of American antitrust law to foreign commerce. It would frustrate those purposes if each
state were permitted *ad hoc* to reach beyond the boundaries established by the FTAIA to
adjudicate foreign commerce as it sees fit. In *Empagran,* the Court rejected the
suggestion that courts should be required to apply a case-by-case analysis of the comity
implications of various Sherman Act claims and theories of liability, finding that plan
"too complex to prove workable." *Empagran*, 542 U.S. at 168. The *Empagran* Court
gives an example:

> Courts would have to examine how foreign law, compared
> with American law, treats not only price fixing but also,

13

say, information-sharing agreements, patent-licensing price
conditions, territorial product resale limitations, and various
forms of joint venture, in respect to both primary conduct
and remedy. The legally and economically technical nature
of that enterprise means lengthier proceedings, appeals, and
more proceedings — to the point where procedural costs
and delays could themselves threaten interference with a
foreign nation's ability to maintain the integrity of its own
antitrust enforcement system. Even in this relatively simple
price-fixing case, for example, competing briefs tell us
(1) that potential treble-damage liability would help enforce
widespread anti-price-fixing norms (through added
deterrence) and (2) the opposite, namely that such liability
would hinder antitrust enforcement (by reducing incentives
to enter amnesty programs).   How could a court seriously
interested in resolving so empirical a matter — a matter
potentially related to impact on foreign interests — do so
simply and expeditiously?

*Id.* at 168-69 (internal citations omitted).

In *Empagran,* the Court determined that it was unworkably complex to analyze
how application of just the *federal* antitrust laws would conflict or correspond with
foreign law. Obviously, it would be considerably more complex and unworkable to
perform a similar analysis of the laws of dozens of different states. Consistent with
*Empagran,* the FTAIA's policy of promoting comity and speaking with a single voice
cannot be protected by a piecemeal or case-by-case approach to the reach of each state's
law. Thus, state regulation of foreign conduct in these circumstances must be preempted;
to hold otherwise would frustrate the objectives of the federal statute.

The Supreme Court's decision in *Crosby* helps illustrate this point. 530 U.S. 363.
*Crosby* applies conflict preemption analysis to invalidate a state law affecting foreign
commerce. In *Crosby,* the state of Massachusetts had imposed sanctions on firms doing
business with Burma in the hopes of pressuring Burma's repressive government to
reform. The United States later imposed a less restrictive package of sanctions to achieve
the same goal. A trade association for the sanctioned firms sued, arguing that
Massachusetts' sanctions conflicted with the federal law. The Court agreed. Even

14

though the two sanctions plans were intended to serve the same goal — ending Burma's human rights abuses through economic pressure — Massachusetts could not enforce its own overlapping sanctions. Despite Congress' silence as to the role of the states, "Congress manifestly intended to limit economic pressure against the Burmese government to a specific range" and "the inconsistency of sanctions undermines the congressional calibration of force." *Crosby*, 530 U.S. at 379-80.

Likewise here, the FTAIA is a congressional determination of what conduct should be left for foreign nations to adjudicate under their own schemes of sanctions and remedies. Imposing state liability for foreign conduct where Congress has deemed it appropriate to defer to other nations would directly conflict with the purposes of the federal statute; therefore, applying state law in these circumstances is constitutionally preempted. *See id* at 380 ("[S]anctions are drawn not only to bar what they prohibit but also to allow what they permit . . . ."). To avoid violating the Supremacy Clause, the state statutes must be construed to go no further than the FTAIA.

And that is in fact how courts have construed them. For example, in *Amarel v. Connell*, 202 Cal. App. 3d 137 (1988), the plaintiffs, independent rice producers, alleged that the defendant agricultural cooperatives conspired to monopolize the sale of California paddy rice, including the foreign export market. Plaintiffs asserted claims under the Cartwright Act — California's antitrust statute — as well as California's consumer protection and unfair competition laws, CAL. BUS. & PROF. CODE § 17200, *et seq.* In their first complaint, the plaintiffs asserted factual allegations with respect to collusion between the defendants to sell rice to the Republic of Korea. The trial court sustained a demurrer, finding the allegations "intruded into the exclusively federal sphere of foreign commerce and foreign relations." 202 Cal. App. 3d at 144. In their amended complaint, the plaintiffs removed all allegations "implicating foreign commerce and foreign relations with the Republic of Korea" with respect to their Cartwright Act claims.

*Id.* at 145. With the removal of these "originally destructive allegations," the appellate court upheld the sufficiency of the Cartwright Act claims. *Id.* at 144-45.

Importantly, the appellate court also upheld the plaintiffs' consumer protection and unfair competition law claims because "the anticompetitive conduct in question has a *direct, substantial and reasonably foreseeable* effect within the state . . . ." *Id.* at 150 (emphasis added). Applying a preemption analysis, *Amarel* reasoned that while Congress had not completely displaced state law with respect to foreign commerce, it was nonetheless necessary to "reconcile" the jurisdictional limits under the FTAIA with the application of state law to foreign conduct in order to avoid a conflict between federal and state law. *Id.* at 149. Accordingly, the court held that the FTAIA "establish[es] an 'effects' test for application of the state's antitrust and unfair competition laws . . . ." *Id.*[7]

Thus, to the extent a plaintiff seeks to apply state antitrust or consumer protection laws to foreign conduct, that conduct must meet the minimum requirements of the FTAIA — *i.e.*, it must have a "direct, substantial and reasonably foreseeable effect" in this country. Because Class Plaintiffs rely on allegations regarding Intel's foreign conduct that are word for word identical to AMD's, they cannot make such a showing any more than AMD could.

## VI.    THE STATE LAWS THAT CLASS PLAINTIFFS INVOKE THEMSELVES FORECLOSE RELIANCE ON FOREIGN CONDUCT

Not only do the Commerce Clause and the Supremacy Clause subject state antitrust and consumer protection laws to the limitations of the FTAIA, those limits also

---

[7]    The appellate court also determined that the application of state law to foreign conduct was not barred by the Commerce Clause. However, unlike the defendants in *Amarel*, Intel is not arguing that the Commerce Clause or the Supremacy Clause completely bars any application of state antitrust or consumer protection laws to foreign conduct. Rather, to avoid constitutional infirmity, the application of state law to foreign commerce cannot exceed the jurisdictional limits specified by the FTAIA, requiring the foreign conduct to have a "direct, substantial and reasonably foreseeable effect" in California — which is exactly what *Amarel* held. *Amarel*, 202 Cal. App. 3d at 150.

apply as a matter of state law. Courts "assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws" and therefore "construe[] ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations." *Empagran*, 542 U.S. at 164 (citations omitted).

### A.    State Antitrust Laws Mirror Federal Antitrust Law And Should be Similarly Interpreted

Class Plaintiffs allege claims under the antitrust laws of 19 states and the District of Columbia.[8] Either through express legislation (so-called "harmonization" statutes) or judicial decision, these states generally follow the federal antitrust laws, and federal courts' interpretations of those laws, with respect to the construction of their own antitrust acts. *See, e.g.*, NEV. REV. STAT. § 598A.050 (2006) (Nevada's antitrust statute "shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 n.1 (1995) ("Because the Cartwright Act has objectives identical to the federal antitrust acts," California courts "look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act.").[9] Accordingly, because Class Plaintiffs' foreign

---

[8]    Arizona, California, the District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin. *See* Complaint ¶¶ 269-290. Class Plaintiffs also assert a violation of Vermont's Consumer Fraud Act ("VCFA"), VT. STAT. ANN. tit. 9, § 2453 (2005), which is the analog to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, *et seq.* (2006). *See* Complaint ¶ 287.

[9]    *See* Exhibit B, App. A17-A19, for a list of the harmonization statutes or judicial opinions applicable to the states under which Plaintiffs assert antitrust claims. Vermont courts are guided by federal courts' interpretation of the FTCA in construing the VCFA. *See* VT. STAT. ANN. tit. 9, § 2453(b) (2005); *see also* VT. STAT. ANN. tit. 9, § 2451 (2005) (the purpose of the VCFA is "to complement the enforcement of federal statutes and decisions governing unfair methods of competition."). The FTAIA amended the FTCA along with the Sherman Act to apply the "direct, substantial, and foreseeable" test. *See* 15 U.S.C. § 45(a)(3)(i) (2006).

conduct allegations are not actionable under the Sherman Act, as amended and clarified by the FTAIA, they are not actionable under the antitrust laws of those states

For example, in *CSR Ltd. v. Cigna Corp.*, 405 F. Supp. 2d 526 (D.N.J. 2005), plaintiffs — an Australian company and its American subsidiary — asserted claims based upon foreign commerce under the Sherman Act as well as New Jersey's antitrust statute. The district court found that, under the FTAIA, it lacked jurisdiction over the Australian firm's Sherman Act claims because its claims did not arise out of foreign conduct that had a direct, substantial and reasonably foreseeable affect in the United States. *Id.* at 551-52. Further, it found, citing to New Jersey's harmonization statute and decisional law, that New Jersey would follow the Sherman Act (of which the FTAIA is a part) in interpreting its own antitrust laws. *Id.* at 552 (citations omitted).

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987) reached a similar result. In *'In' Porters*, a foreign plaintiff brought federal and state antitrust and unfair practices claims against a North Carolina manufacturer. The district court found that it lacked subject-matter jurisdiction over the plaintiff's Sherman Act claim because the plaintiff failed to show that its injury arose out of a direct domestic effect, as required under the FTAIA. *Id.* at 498-501. The court then decided whether North Carolina's Unfair Trade Practices Act could reach the same foreign conduct. The district court noted that North Carolina turns to federal law in construing its antitrust act, and that "[b]y analogy" the North Carolina Act would have extraterritorial application only to the same extent as under federal law. *Id.* at 501. The court further found that in order to avoid implicating the Commerce Clause as well as due process, North Carolina's statute had to be read to be limited to foreign conduct that has a "substantial effect" in North Carolina; the court viewed this test as equivalent to that set forth under the FTAIA. *See id.* at 501-502. The court also "note[d] the anamoly [*sic*] that would be created if [the North Carolina Act], a state statute, were construed to have greater extraterritorial reach

than the Sherman Act." *Id.* at n. 8. The reasoning of *CSR Limited* and *'In' Porters* applies with equal force here.

As far as Intel is aware, in the twenty-four years since Congress enacted the FTAIA, no state court or legislature has expressly articulated that its state's antitrust statute would have a broader application to foreign conduct than that permitted under the FTAIA. This lack of contrary action on the part of the states further confirms that their jurisdictional tests for foreign commerce are no more expansive than the FTAIA's test. *Cf. Amarel*, 202 Cal. App. 3d at 149-50 (adopting FTAIA's "effects" test for application of California's antitrust and consumer protection laws).

**B.    State Consumer Protection Laws Are Similarly Limited In Their Application To Foreign Conduct**

As with their antitrust claims, Class Plaintiffs' attempt to base their consumer protection and unfair competition claims on Intel's alleged foreign conduct also fails as a matter of state law. In their Fourth Claim for Relief, Class Plaintiffs purport to allege a claim under California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.*, on behalf of the putative nationwide class. *See* Complaint ¶¶ 259-267. This claim is defective to the extent it is premised upon allegations of foreign commerce. A claim under Section 17200 may only reach foreign conduct which has a "direct, substantial and reasonably foreseeable effect" in California. *Amarel*, 202 Cal. App. 3d at 150. This Court has already determined that the foreign conduct allegations on which AMD and the Class Plaintiffs rely do not satisfy this test.

Class Plaintiffs alternatively allege violations of 23 individual states' consumer protection or unfair competition laws.[10] The consumer protection and unfair competition

---

[10]    Plaintiffs allege violations of the consumer protection and unfair competition laws of Alaska, Arkansas, California, the District of Columbia, Florida, Georgia, Idaho, Kansas, Louisiana, Maine, Massachusetts, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Rhode Island, Utah, Vermont, West Virginia, and Wisconsin. *See* Complaint ¶¶ 292-314.

statutes under which they assert claims are generally modeled after the Federal Trade

Commission Act ("FTCA"), 15 U.S.C. § 45, *et seq*, and those states rely on federal law

in interpreting their own state's laws.[11]  As it did with the Sherman Act, Congress also

---

[11]      Alaska:  ALASKA STAT. § 45.50.545 (2005) ("great weight" given to federal
courts' interpretation of FTCA as amended); *see also Western Star Trucks, Inc. v. Big
Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1053 (Alaska 2004) ("The language of the present
Act is amended to conform to the language of the Federal Trade Commission Act, and
the interpretation provision is provided to enable the Attorney General and the courts of
the state to utilize the body of law created by the Federal Trade Commission.");
California:  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th
163, 185, (1999) (California courts "turn for guidance to the jurisprudence" arising under
Section 5 of the Federal Trade Commission Act.); *see also Bowen v. Ziasun
Technologies, Inc.*, 116 Cal. App. 4th 777, 788-89 (2002) (because FTCA does not apply
to securities transactions, § 17200 does not apply to securities transactions); Florida:  FLA.
STAT. § 501.202(3) (2006) (Purpose of Florida Deceptive and Unfair Trade Practices Act
is "[t]o make state consumer protection and enforcement consistent with established
policies of federal law relating to consumer protection."); Georgia:  GA. CODE ANN. § 10-
1-391(b) (2006); Idaho:  IDAHO CODE § 48-604(1) (2006); Kansas:  *See Watkins v. Roach
Cadillac, Inc.*, 637 P.2d 458, 463 (Kan. Ct. App. 1981) (noting Kansas Consumer
Protection Act, like most states' consumer protection laws "patterned after the Federal
Trade Commission Act."); Louisiana:  *See Guste v. Demars*, 330 So. 2d 123, 125 (La. Ct.
App. 1976) (Louisiana courts "consider interpretations of the Federal courts and of the
Commission relative to such similar statutes [such as the FTCA] to adjudge the scope and
application of our own statute."); Maine:  ME. REV. STAT. ANN. tit. 5, § 207(1) (2006);
*see also State v. Weinschenk*, 868 A.2d 200, 205 (Me. 2005) ("Legislature intended 'to
bring into Maine law the federal interpretations of "unfair methods of competition and
unfair or deceptive acts or practices[,]'" as set forth in the Federal Trade Commission
Act."); Massachusetts:  MASS. GEN. LAWS ch. 93A § 2(b) (2006); Montana:  MONT. CODE
ANN. § 30-14-104(1) (2005); New Hampshire:  N.H. REV. STAT. § 358-A:13 (2006);
New Mexico:  N.M. STAT. § 57-12-4 (2006); New York:  *See State v. Colo. State
Christian Coll. of Church of Inner Power, Inc.*, 346 N.Y.S.2d 482, 487 (Sup. Ct. 1973)
("It is thus clear that the legislative purpose in enacting § 349 of the General Business
Law was to follow in the steps of the Federal Trade Commission with respect to the
interpretation of deceptive acts and practices outlawed in Section 5 of the Federal Trade
Commission Act"); *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 805 N.Y.S.2d 175,
178 (App. Div. 2005) ("[I]nterpretations of the Federal Trade Commission Act . . . are
useful in determining the aforementioned violations under both the Executive Law and
General Business Law."); North Carolina:  *Henderson v. U.S. Fid. & Guar. Co.*, 488
S.E.2d 234, 239 (N.C. 1997) ("[North Carolina Consumer Protection statute] is patterned
after section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and we look
to federal case law for guidance in interpreting the statute."); Rhode Island:  R.I. GEN.
LAWS § 6-13.1-3 (2005); Utah:  UTAH CODE ANN. § 13-11-2(4) (2006); Vermont:  VT.
STAT. ANN. tit. 9, § 2453(b); *see also* Vt. Ann. tit. 9, § 2451; West Virginia:  W. VA.
CODE § 46A-6-101(1) (2006); Wisconsin:  *See Rayner v. Reeves Custom Builders, Inc.*,
691 N.W.2d 705, 710 n.7 (Wis. Ct. App. 2004) ("The Wisconsin Legislature modeled
Wis. Stat. § 100.20 after § 5 of the Federal Trade Commission Act").

clarified that the FTCA applies the "direct, substantial, and reasonably foreseeable" test to foreign commerce. 15 U.S.C. § 45(a)(3)(i); *see also United Phosphorus, Ltd. v. Angus Chem. Co.*, 94 C 2078, 1994 WL 577246, *4 (N.D.Ill. Oct. 18, 1994) (noting purpose of the FTAIA was "to amend the Sherman Act and the Federal Trade Commission Act to create a unitary statutory test to determine whether American antitrust jurisdiction exists over certain international transactions"). Because the states look to the FTCA in construing their consumer protection statutes, those statutes will similarly be limited in their application to foreign commerce. Class Plaintiffs have failed to demonstrate the foreign conduct alleged has a "direct, substantial, and reasonably foreseeable" effect in any of the 23 states under whose consumer protection and unfair competition laws they bring claims. Therefore, to the extent Class Plaintiffs' claims are based on foreign conduct allegations, the Court must dismiss them.

21

## VII.    CONCLUSION

For the foregoing reasons, all of Class Plaintiffs' claims based upon foreign conduct should be dismissed, and paragraphs 145-149, 159-162, 169, 178-179, 185-187, 190, 193, 197-198, 204-205, and 210 of the First Amended Consolidated Complaint should be stricken.

Respectfully submitted,

OF COUNSEL:
David M. Balabanian
James L. Hunt
Christopher B. Hockett
Nora C. Cregan
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA  94111-4067
(415) 393-2000

Richard A. Ripley
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C.  20006
(202) 373-6000

Dated: November 3, 2006

POTTER ANDERSON & CORROON LLP

By: */s/ Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    W. Harding Drane, Jr. (#1023)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    wdrane@potteranderson.com

*Attorneys for Defendant*
*Intel Corporation*

760062 / 29282

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on November 3, 2006, the attached

document was hand delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

James L. Holzman
J. Clayton Athey
Eric M. Andersen
Prickett, Jones & Elliott, P.A.
1310 King Street
Post Office Box 1328
Wilmington, DE 19899

I hereby certify that on November 3, 2006 I have sent the documents by

Electronic Mail to the following non-registered participants:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
Allyson B. Baker
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
mhausfeld@cmht.com
dsmall@cmht.com
blandau@cmht.com
abaker@cmht.com

Michael P. Lehman
Thomas P. Dove
Alex C. Turan
The Furth Firm LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
mplehmann@furth.com
tdove@furth.com
aturan@furth.com

Steve W. Berman
Anthony D. Shapiro
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
tony@hbsslaw.com

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com

By:   */s/ Richard L. Horwitz*
Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Post Office Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com