# EXHIBIT C

Westlaw.

231 F.R.D. 331                                                                                         Page 1
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
(Cite as: 231 F.R.D. 331)

H

**Motions, Pleadings and Filings**

United States District Court,
N.D. Illinois.
In re SULFURIC ACID ANTITRUST
LITIGATION.
**MDL Docket No. 1536.**
**No. 03 C 4576.**

Sept. 6, 2005.

**Background:** Multi-district, antitrust class actions, alleging that defendants conspired to raise, fix, maintain, or stabilize price of sulfuric acid in United States in violation of Sherman Act, were consolidated. Plaintiffs filed series of motions to compel compliance with outstanding discovery.

**Holdings:** The District Court, Jeffrey Cole, United States Magistrate Judge, held that:
(1) motion to compel was not timely, and
(2) granting party leave to take deposition of former employee of opponent after close of discovery was warranted.
Motions granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure** ⚯1261
170Ak1261 Most Cited Cases

**[1] Federal Civil Procedure** ⚯1267.1
170Ak1267.1 Most Cited Cases
District courts enjoy extremely broad discretion in controlling discovery; a court may limit the scope of discovery or control its sequence, and limitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss for failure to state a claim on which relief can be granted. Fed.Rules Civ.Proc.Rules 12(b)(6), 26(c, d), 28 U.S.C.A.

**[2] Federal Civil Procedure** ⚯1271
170Ak1271 Most Cited Cases
The mere filing of the motion to dismiss does not automatically stay discovery. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[3] Federal Civil Procedure** ⚯1538
170Ak1538 Most Cited Cases

**[3] Federal Civil Procedure** ⚯1636.1
170Ak1636.1 Most Cited Cases
Motion to compel answers to interrogatories and production of documents, over objections of opponent that were made, inter alia, on basis that opponent's motion to dismiss had not been resolved, and which was brought one day before close of discovery and eight months after opponent was added to lawsuit, was not timely and was denied, since there was no requirement that discovery cease during pendency of motion to dismiss, whatever prejudice that movant suffered was result of its own inaction, and denial of motion to compel did not leave movant without remedy in that opponent's promise to provide discovery if motion to dismiss were denied was enforceable. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[4] Federal Civil Procedure** ⚯1271
170Ak1271 Most Cited Cases

**[4] Federal Civil Procedure** ⚯1271.5
170Ak1271.5 Most Cited Cases

**[4] Federal Civil Procedure** ⚯1278
170Ak1278 Most Cited Cases
Although a party objecting to discovery may seek a protective order or stay, it is under no obligation to do so; the served party has the option of providing appropriate written objections and leaving it to the party seeking discovery to file a motion to compel. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[5] Federal Civil Procedure** ⚯1271
170Ak1271 Most Cited Cases
Discovery ordinarily should not be stayed where the dispositive motion requires factual elaboration. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[6] Federal Civil Procedure** ⚯1278
170Ak1278 Most Cited Cases
On a motion to compel discovery, a movant must demonstrate actual and substantial prejudice resulting from the denial of discovery. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

231 F.R.D. 331                                                                                        Page 2
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

**[7] Federal Civil Procedure ⚖︎1342.1**
170Ak1342.1 Most Cited Cases
Granting party leave to take deposition of former employee of opponent after close of discovery was warranted, where party conveyed its understanding to opponent that such person was employed by opponent and that opponent would make such person available for deposition voluntarily, but opponent did not correct party's misunderstanding as to such person's employment status with opponent except by supplying organizational chart that did not list such person. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[8] Attorney and Client ⚖︎32(12)**
45k32(12) Most Cited Cases
Lawyers have a duty to act in good faith in complying with their discovery obligations and to cooperate with and facilitate forthright discovery.

**[9] Federal Civil Procedure ⚖︎1261**
170Ak1261 Most Cited Cases
Where a party has contributed to confusion or has caused delays in discovery, it cannot be heard to complain about continued discovery.

*332 Mary Jane Edelstein Fait, Adam J. Levitt, Wolf, Haldenstein, Adler, Freeman & Herz LLC, Chicago, IL, for Plaintiffs.

Edward M. Ordonez, Hugo Chaviano, Sanchez & Daniels, David C. Gustman, Jill Christine Anderson, Jeffery Moore Cross, Freeborn & Peters, Michael H. Cramer, Adam R. Chiss, Michael David Richman, Sachnoff & Weaver, Ltd., R. Mark McCareins, Andrew David Shapiro, Edward L. Foote, Todd Jay Ehlman, William Charles O'Neil, Winston & Strawn, Matthew Patrick Connelly, Cory D. Anderson, William Edward Snyder, Connelly, Roberts & McGivney, Joel Gerald Chefitz, Todd Lawrence McLawhorn, Howrey, Simon, Arnold & White, LLP, John Reid Malkinson, Malkinson & Halpern, P.C., Mary Jane Edelstein Fait, Wolf, Haldenstein, Adler, Freeman & Herz LLC, Michael Gerard Bruton, Ross, Dixon & Bell, L.L.P., Chicago, IL, K. Scott Hamilton, Dickinson, Wright PLLC, Detroit, MI, Dylan Smith, Verrill, Dana LLP, Portland, ME, Susan G. Kupfer, Glancy & Binkow LLP, San Francisco, CA, for Defendants.

*MEMORANDUM OPINION AND ORDER RE:
PLAINTIFFS' MOTION TO COMPEL GAC
CHEMICAL CO.
TO COMPLY WITH CERTAIN DISCOVERY
REQUESTS*

JEFFREY COLE, United States Magistrate Judge.

**INTRODUCTION**

Throughout the range of the law, there are time limits imposed on litigants at every stage of the case: some are mandatory and admit of no deviations; others are more flexible. But in each instance, lawyers who do not pay heed to them do so at substantial peril to their and their clients' interests. *See, e.g., Brosted v. Unum Life Insurance Co. of America,* 421 F.3d 459 (7th Cir.2005). This is such a case. On July 1, 2005, the day discovery closed--following two prior extensions of discovery--the plaintiffs filed a series of motions to compel compliance with outstanding discovery. Not surprisingly, GAC has objected that the motion directed to it is untimely.

The Federal Rules of Civil Procedure place no prescribed time limit on the outside date for filing a motion to compel discovery. In one regard, however, a line of sorts has been sketched by a series of decisions: motions to compel filed after the close of discovery are almost always deemed untimely. *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 647 (7th Cir.2001). [FN1] Greater uncertainty occurs where the motion is made very close to the discovery cut-off date. Some districts by local rule have imposed time limits within which motions to compel must be brought. *See, e.g. United States ex. rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir.2002)(Local Rule 37.01 of the District of South Carolina requires that motions to compel must be filed within 20 days after receipt of the discovery response); *Sonnino v. University Kansas Hospital Authority,* 220 F.R.D. 633, 636 (D.Kan.2004)(Local *333 Rule 37.1(b) of the District of Kansas requires that the motion to compel be filed within 30 days after receipt of the discovery response). Most, however, have no such rules, and the matter is left to the broad discretion possessed by the district courts to control discovery.

> FN1. But even here the line meanders, and motions made after the close of discovery are not inevitably out-of-bounds. *See e.g., Blanchard v. EdgeMark Financial Corp.,* 192 F.R.D. 233, 235 (N.D.Ill.2000) (30 days not too late); *Gault v. Nabisco Biscuit Co.,* 184 F.R.D. 620, 622 (D.Nev.1999); *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879 (S.D.N.Y.1999)(No unreasonable delay where motion to compel was filed four days after the close of discovery).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

231 F.R.D. 331 Page 3
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

How is that discretion to be exercised? Is a motion to compel filed four days before the close of discovery too late? At least one court has said it is. *Ridge Chrysler Jeep, LLC v. Daimler Chrysler Services North America, LLC,* 2004 WL 3021842 (N.D.Ill.2004). What if the motion had been made six or perhaps twelve days before the close of discovery? Would the result have been different? Is a week the proper cut-off point, or perhaps two weeks? To pose the question is to demonstrate that there is no principled or mathematical way of determining in advance in every case when a motion to compel should be deemed untimely based upon an arbitrarily prescribed number. As Justice Cardozo said in another context, "[w]here the line is to be drawn between the important and the trivial cannot be settled by a formula." *Jacob & Youngs, Inc. v. Kent,* 230 N.Y. 239, 243, 129 N.E. 889 (1921). Compare, *Louisville Gas & Electric v. Coleman,* 277 U.S. 32, 41, 48 S.Ct. 423, 72 L.Ed. 770 (1928)(Holmes, J., dissenting). The answer then must necessarily be found in the entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another.

### FACTUAL BACKGROUND

The complaint in this multi-district, antitrust case charges the defendants with having conspired to raise, fix, maintain, or stabilize the price of sulfuric acid in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. A consolidated amended class action complaint was filed on September 5, 2003. Six months later, in March 2004, GAC--then a non-party--was served with a document subpoena seeking documents relating to Delta Chemicals, Inc.'s decision to shut down its sulfuric acid plant in 1988. GAC had purchased Delta's assets six years later in 1994. GAC agreed to produce certain documents that it had made available to a federal grand jury.

Plaintiffs added GAC as a defendant in their second amended consolidated complaint on May 24, 2004. That complaint alleged that, as part of the purported conspiracy, Delta had shut down its sulfuric acid plant in 1988 pursuant to an illicit agreement with defendant, Noranda, Inc. On July 30, 2004, GAC produced approximately three boxes of documents that had been produced to the grand jury and simultaneously filed, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, a motion to dismiss the claims against it for failure to state a claim on which relief could be granted. On September 15, 2004, plaintiffs served GAC--along with all newly-named defendants--with its first set of interrogatories and documents requests. Shortly thereafter, on October 18th, GAC formally objected in its responses to discovery that it did not have to respond to further discovery requests while its motion to dismiss was pending. (*See* Objections to First Set of Interrogatories at ¶ 7). It also claimed that the discovery requests covered the same ground as the grand jury documents it had already produced.

On November 1, 2004, plaintiffs' counsel wrote to GAC's lawyer disagreeing with GAC's contention it need not respond to the interrogatories. The letter threatened a motion to compel would be filed if this was GAC's final position. The next day, GAC wrote outlining its discovery compliance to date and renewing its objection to responding to additional discovery. The letter expressed a willingness to continue talks if plaintiffs would refine its requests. If not, the letter invited plaintiffs' counsel to file a motion to compel. (Plaintiffs' Exh. G).

On November 8, 2004, by letter, GAC reaffirmed its position that it should not have to "engage in costly additional discovery." (Plaintiffs' Exhibit G). Nonetheless, it agreed to produce, by November 19, 2004, additional documents that could be gathered without substantial burden, including organizational charts and documents regarding corporate structure, financial reports, documents relating to antitrust compliance policies, and exhibits from the 1994 GAC-Delta **\*334** asset purchase agreement. There was no agreement to answer any interrogatory.

On November 9th, plaintiffs' counsel, by letter, indicated that they were interested in deposing Tim and Jim Poure and Barbara Haase, whom plaintiff's counsel stated she understood were GAC employees. She said: "please let me know if you will produce them voluntarily...." Plaintiffs also warned GAC that, despite GAC's additional document production, they were unwilling to await the resolution of GAC's motion to dismiss before proceeding with production and again said they would be filing a motion to compel "as to this discovery."

On November 19th, GAC's counsel wrote a terse four-line letter attaching an organizational chart, copies of GAC's antitrust compliance policy and the GAC/Delta Assert Purchase Agreement with exhibits. The letter did not respond in words to the question of GAC's voluntary production of the witnesses, nor did it say that counsel's "understanding" as it pertained to Tim Poure was incorrect, as he had left the company years earlier.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

231 F.R.D. 331 Page 4
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

On March 11, 2005, plaintiffs' second set of document requests was sent to all newly-named defendants sought certain electronic records. In its response to the second requests, GAC raised eleven objections, one of which was that it had moved to dismiss the claims against it. GAC initially refused to produce responsive documents to that request unless plaintiffs paid the cost to retrieve the data; plaintiffs offered to pay half of the associated costs. GAC explained that the information was stored on obsolete computer tapes generated by a proprietary computer system no longer in use at GAC. Subject to the parties' agreement on cost-sharing, GAC has forwarded the computer tapes to an outside service for retrieval of responsive data.

On March 14, 2005, plaintiffs filed a motion to extend the discovery deadline, previously set for April 29, 2005. The supporting memorandum listed fifteen fact witnesses whose depositions the plaintiffs planned to take. The only former or current GAC or Delta employee listed was Michael Harmon, whose deposition has since been completed. The motion was largely based on what the plaintiffs claimed were the "actions on numerous occasions [that] have delayed plaintiffs' completion of fact discovery." (*Memorandum*, at 7). The list of culpable defendants did not include GAC. Judge Coar granted the motion, extending the discovery deadline to July 1, 2005.

At about that same time, plaintiffs complained to GAC that there were "gaps" in the grand jury document production. GAC explained that its Ohio counsel, who had handled the grand jury matter, had been unable to locate certain documents that had been produced to the grand jury, and it was speculated that they had not been returned by the government. GAC did, however, produce certain additional documents that it was able to locate. For their part, plaintiffs indicated they would be willing to work with GAC to narrow the scope of certain requests where warranted, but wanted information regarding what documents were being withheld and what burden would be caused by their production. They also requested an index of the missing grand jury documents.

On April 27, 2005, plaintiffs not only reiterated their request for an index or description of the missing grand jury documents, they insisted that GAC was obligated to fulfill all its discovery obligations regardless of the pendency of its motion to dismiss. The letter cited two cases in support of the claim that the pendency of the motion to dismiss was not a valid objection to proceeding with the discovery requests.

[FN2]

FN2. *SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d 936, 945 (7th Cir.1988) and *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213 (7th Cir.1990). In *SK Hand Tool*, the court found that the defendant was entitled to discovery costs incurred in defending against a RICO claim, even though the claim was dismissed on the pleadings. In so doing, the court noted that there is no requirement that discovery cease during the pendency of a motion to dismiss unless the district court has ordered a stay. 852 F.2d at 945. In *Daniel J Hartwig Associates*, the defendant chose not to pursue discovery while his motion to dismiss was pending, because he reasoned any efforts might have been wasted had his motion been granted. As it happened, the court's consideration of his motion to dismiss consumed substantially all of the pretrial calendar. When the court denied the motion a little more than a month before trial, defendant sought an extension of discovery and a continuance of the trial date. The Seventh Circuit upheld the court's decision to deny those motions, calling them "nothing more than a plea to this court to reverse the consequences of [defendant's] tactical decisions." 913 F.2d at 1223.

**\*335** On May 5, in a phone conversation, GAC's lawyer again reiterated its position regarding discovery and the pendency of the motion to dismiss. On May 6, 2005, plaintiffs served a third set of document requests to all newly-named defendants, seeking monthly and quarterly billing statements from 1988 through 2003. By this time, as plaintiffs' counsel's letter of May 6 to Dylan Smith (GAC's counsel) notes, "more than nine months" had elapsed from filing of the motion to dismiss, and she accused GAC of having used the pendency of the motion to dismiss "as an excuse to delay its discovery obligations." The letter went on: "With an impending discovery cut-off date of July 1, 2005, Plaintiffs cannot afford to allow discovery to *remain at a halt.*" (Emphasis supplied). But still, the plaintiffs did nothing.

By May 23, 2005, GAC had not given plaintiffs any information regarding the electronic data or the cost of its retrieval and had not produced an index of the missing grand jury documents. As a result, plaintiffs

231 F.R.D. 331                                                                                                    Page 5
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
(Cite as: 231 F.R.D. 331)

again threatened to file a motion to compel. The next day, GAC indicated by letter that it would cost $3000 to retrieve the electronic data and provided a rough outline as to the contents of the missing grand jury documents. It also restated its position, which had been unwavering from the outset, that it would not answer interrogatories while its motion to dismiss was pending, and it reminded plaintiffs that many months had passed since they had raised the issue of GAC's refusal to answer interrogatories. GAC also called into question the applicability of *Dresser Industries* and *Kanner*. On May 31, 2005, plaintiffs submitted their third set of interrogatories to GAC and all newly-named defendants. On June 8, GAC responded to the third set of documents requests as it consistently had to its predecessors.

On June 14, 2005, almost eight months after their first expression of interest in Timothy Poure, plaintiffs noticed his deposition for June 30 in Chicago. Discovery was to close on July 1. Mr. Poure lives in Ohio and was no longer employed by GAC. Three days later, on June 17, counsel for GAC, for the first time, told plaintiffs's counsel that Mr. Poure did not work for GAC, and that he would not be appearing in Chicago on June 30. GAC's counsel did attempt to reach him, however, to find out what his availability might be and where he might be willing to be deposed, and on June 28, gave Mr. Poure's last known address to plaintiffs' counsel.

According to GAC, given plaintiffs' delay in seeking to depose Mr. Poure, it would prove impossible to arrange his deposition before the close of discovery. The parties then jousted a bit over the notices of deposition for Mr. Poure, with GAC contending that it had been months since plaintiffs mentioned Mr. Poure and that they had not listed him in their motion for an extension of the discovery deadline. The parties also quarreled over whether GAC had ever indicated that Mr. Poure was still in its employ.

On June 28, 2005, two days prior to the close of discovery, plaintiffs' counsel sent GAC an email regarding the missing grand jury documents described in GAC's May 24th letter a month earlier. She asked whether GAC would be producing any of the documents--and how many there were--or whether she "should include them in the motion [to compel]." GAC responded the next day, reminding plaintiffs that discovery was set to close on July 1st and offering an inspection of the documents before that date at GAC's facility in Maine. Plaintiffs then requested an immediate production of the documents and indicated that they would arrange to send a copying service to the Maine facility.

From October, 2004, through the end of June, 2005, GAC repeatedly voiced its principal objection to nearly all of plaintiffs' document requests: it should not be put to the substantial burden of *additional* (and duplicative) discovery while its motion to dismiss was pending. At the same time, GAC contended that it had endeavored to cooperate with plaintiffs to the extent that it could do so without significant burden. And, from the **\*336** beginning, and without deviation, GAC had refused to respond to interrogatories on the basis that they were unduly burdensome, and that it should not be put to that burden pending the outcome of its motion to dismiss. [FN3] GAC represented in all its written, formal objections that if it lost the motion, it would promptly respond to discovery.

> FN3. An appropriate factor to consider in weighing whether to grant a stay of discovery is the burden of responding to the discovery. *In re Currency Conversion Fee Antitrust Litigation,* 2002 WL 88278 at *1 (S.D.N.Y.2002).

Plaintiffs argue that the mere fact that a motion to dismiss is pending is not an excuse to suspend discovery, that by failing to seek a protective order GAC waived any right to seek a stay, and that it must now immediately comply with the outstanding discovery requests--especially in light of the "severe prejudice" they have suffered. Fees and costs are sought pursuant to Rules 26(g) and 37, Federal Rules of Civil Procedure.

## ANALYSIS
### I
### Plaintiffs' Motion To Compel GAC's Compliance With Outstanding Document Requests And Interrogatories And GAC's Objection Based On Its Pending Motion to Dismiss
#### A.

[1][2] District courts enjoy extremely broad discretion in controlling discovery. *Crawford-El v. Britton,* 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir.2002). Under Rules 26(c) and (d), Federal Rules of Civil Procedure, a court may limit the scope of discovery or control its sequence. *Britton, supra.* Limitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss for failure to state a claim on which relief can be granted. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

231 F.R.D. 331                                                                                                              Page 6
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

mere filing of the motion does not automatically stay discovery. *SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d at 945. Nor does it mean that a court will automatically grant a stay pursuant to Rule 26(c) simply because a defendant asks for one. See *Von Drake v. National Broadcasting Co., Inc.*, 2004 WL 1144142 at *2 (N.D.Tex. May 20, 2004); *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 437 (N.D.Ill.1996); *Niederhoffer Intermarket Fund, L.P. v. Chicago Mercantile Exchange*, No. 99 C 3223, 1999 WL 731773, *1 (N.D.Ill. Aug.31, 1999); *Moore v. Painewebber*, 1997 WL 12805 (S.D.N.Y.1997). But such stays are granted with substantial frequency. [FN4] Indeed, some districts have a rule that prohibits discovery during the pendency of such a motion, [FN5] and in some circuits, district courts have been advised to resolve a motion to dismiss before allowing discovery. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir.1997). Numerous cases in this circuit have allowed stays in the face of a Rule 12(b)(6) challenge. [FN6]

> FN4. See, e.g., *Moore v. Potter*, 2005 WL 1600194 at *4 (11th Cir.2005); *Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502 (4th Cir.1999); *Gilbert v. Ferry*, 401 F.3d 411 (6th Cir.2005); *In re Southeast Banking Corp.*, 204 F.3d 1322 (11th Cir.2000); *Brever v. Rockwell Internat'l Corp.*, 40 F.3d 1119 (10th Cir.1994); *Institut Pasteur v. Chiron*, 315 F.Supp.2d 33, 37 (D.D.C.2004)("It is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending.").

> FN5. See *Brever v. Rockwell Internat'l Corp.*, 40 F.3d 1119 (10th Cir.1994). In securities cases, there is an automatic stay of discovery under the Private Securities Litigation Reform Act of 1995. *Wyser-Pratte Management Co. v. Telxon Corp.*, 413 F.3d 553, 559 (6th Cir.2005).

> FN6. See, e.g., *Flakes v. Frank*, 2005 WL 1276370 (W.D.Wis.2005); *Mossman v. Dental Enterprises*, 2005 WL 1174150 (N.D.Ind.2005); *Nauman v. Abbott Laboratories*, 2005 WL 1139480 (N.D.Ill.2005); *Malone v. Clark*, 2004 WL 2053284 (W.D.Wis.2004); *Cataldo v. City of Chicago*, 2002 WL 91903 (N.D.Ill.2002); *Hill v. Amoco Oil*, 2001 WL 293628 (N.D.Ill.2001); *Cooper v. Harris*, 1999 WL 261742 (N.D.Ill.1999); *Johnson v. Indopco, Inc.*, 846 F.Supp. 670 (N.D.Ill.1994); *R.E. Davis Chemical Corp. v. Nalco Chemical Co.*, 757 F.Supp. 1499 (N.D.Ill.1990); *DeSmet v. Snyder*, 653 F.Supp. 797 (E.D.Wis.1987); *Stokes v. City of Chicago*, 1986 WL 12311 (N.D.Ill.1986); *CBOE, Inc. v. Connecticut General Life Insurance Co.*, 95 F.R.D. 524 (N.D.Ill.1982); *Rosas v. Lane*, 1985 WL 2906 (N.D.Ill. Sept. 26, 1985) Contra *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.Cal.1990).

*337 Stays are often deemed appropriate where the motion to dismiss can resolve the case--at least as to the moving party, *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir.1999); *Builders Ass'n of Greater Chicago*, 170 F.R.D. at 437, or where the issue is a threshold one, such as jurisdiction, *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79-80, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988), standing, *Builders Ass'n*, 170 F.R.D. at 437, or qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

[3] The plaintiffs argue that by failing to seek affirmative relief through a protective order GAC has waived any claim to a stay and thus must comply with the outstanding discovery requests. GAC contends that it had the right to file objections and await a motion to compel rather than engaging in what it calls preemptive motion practice and filing a motion to stay discovery.

[4] Although a party objecting to discovery may seek a protective order or stay, it is under no obligation to do so. *Nelson v. Capital One Bank*, 206 F.R.D. 499, 500 (N.D.Cal.2001); *Fitzgerald v. McKenna*, No. 95CIV.9075(DAB)(HBP), 1997 WL 563804, (S.D.N.Y. Sept. 9, 1997). The served party has the option of providing appropriate written objections and leaving it to the party seeking discovery to file a motion to compel. See *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1362 (Fed.Cir.1990); *Continental Industries, Inc. v. Integrated Logistics Solutions, LLC*, 211 F.R.D. 442, 444 (N.D.Okla.2002). See also Rules 33(b)(4) and (b)(5) and 37, Federal Rules of Civil Procedure and Advisory Committee Notes To Rules 33 and 34 (1970 Amendment).

Either method brings the disputed matter before the court. *Nelson*, 206 F.R.D. at 500; *Fitzgerald*, 1997

231 F.R.D. 331  
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946  
**(Cite as: 231 F.R.D. 331)**

Page 7

WL 563804, *1; 8-8A C.Wright, A.Miller & R.Marcus, Federal Practice & Procedure §§ 2035, 2213 (1994). As the party objecting to discovery, GAC would have had the burden of demonstrating its objections were proper--had a motion to compel been brought. *Dove v. Atlantic Corp.*, 963 F.2d 15, 19 (2nd Cir.1992); *Williams v. Sprint/United Management Co.*, 2005 WL 731070 at *3 (D.Kan.2005); *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D.Ill.1997). See also 8A C.Wright, A.Miller & R.Marcus, Federal Practice & Procedure § 2214 (1994)(a formal allocation of the burden of proof is of little significance where the court has so much discretion). But none was filed until July 1st.

Of course, the prospect of a prolonged stasis was delightful to GAC. It should not have been to the plaintiffs. But by consciously deciding not to file a motion to compel, the plaintiffs acquiesced in what was functionally a stay. Perhaps a judge would have concluded that there was good cause to issue a stay, had GAC asked for one. Perhaps, had the plaintiffs brought a motion to compel at an appropriate time, a court would have concluded that the objection was improper and that a stay was not warranted. We shall never know, because the plaintiffs were as content to let the matter languish as was GAC. Since discovery is now over, there is no discovery to be stayed, and the only question now is whether, under the circumstances of this case, their motion to compel was timely. There is no legitimate excuse for the plaintiffs having waited until the last day of discovery to have filed their motion. The plaintiffs knew from the outset what GAC's position was, and they had the option to do something about it. They cannot be heard to complain now about the conscious decision they made not to bring the matter to the court's attention.

That they did so on the last day of discovery was, perhaps, in their view, tactically preferential to bringing the matter before the court months earlier. In this way, they could argue that GAC had waived any right to a stay of discovery and they could argue that discovery was immediately compellable. For the reasons discussed above, this approach is analytically incorrect. If the motion were to be granted, it would result in "protracted discovery, the bane of modern litigation." *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir.2000)(Posner, J.). Parties should not be rewarded for the kind of purposeful delay exemplified by the plaintiffs in this case.

**\*338 B.**

Not surprisingly, the parties here have very different views of GAC's motion to dismiss. GAC insists that there are "overwhelming grounds to conclude [it] does not belong in this action," (*GAC's Memorandum of Law*, at 6), while plaintiffs maintain "that there is little likelihood of GAC being dismissed from this litigation." (*Plaintiffs' Reply Memorandum*, at 1). [FN7] The plaintiffs contend that any stay would have been improper because discovery was (and is) necessary for proper resolution of the motion to dismiss. The first flaw in the argument is that by not having moved to compel, the plaintiffs acquiesced in what was in effect a stay and thus it is too late to undo what plaintiffs' own inaction allowed to occur. The second flaw is that the motion to dismiss is a Rule 12(b)(6) motion which by definition excludes considerations of factual matters outside the complaint.

> FN7. Of course, it would be improper to make even a preliminary determination about the ultimate merits of the motion to dismiss. But that does not mean that some cursory review is inappropriate for limited purposes. See *Von Drake v. National Broadcasting Co., Inc.*, No. 04-CV-0652, 2004 WL 1144142, *2 (N.D.Tex. May 20, 2004)(cursory review to determine whether defendants have substantial arguments for dismissal); *Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 352 (N.D.Cal.2003)(cursory review to determine whether motion will potentially dispose of entire case and whether pending motion can be decided absent additional discovery); *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 209-10 (S.D.N.Y.1991)(cursory review to determine whether motion appears to have substantial grounds or does not appear to be without foundation in law). Compare *Aura Lamp & Lighting, Inc. v. International Trading Corp.*, 325 F.3d 903 (7th Cir.2003); *Price v. Code-Alarm*, 73 Fed.Appx. 159, 161, 2003 WL 21750812 (7th Cir.2003); (Although a court of appeals lacked jurisdiction to decide the merits of a case over which there was no jurisdiction, it could nevertheless "take a peek" to see whether to transfer the case to the Federal Circuit or dismiss the appeal); *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir.1999).

[5] The motion to dismiss is based on a theory that GAC cannot be held liable for Delta's conduct that

231 F.R.D. 331                                                                                                       Page 8
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

occurred six years before the asset purchase in 1994. Plaintiffs have advanced certain theories under which they feel GAC can be held liable. Thus, while discovery should not ordinarily be stayed where the dispositive motion requires factual elaboration, *Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority,* 201 F.R.D. 1, 3 (D.D.C.2001); *Feldman v. Flood,* 176 F.R.D. 651, 652 (M.D.Fla.1997), this is not such a case, since Judge Coar has concluded that he will consider the motion under Rule 12(b)(6) only. [FN8] See *Church of Scientology of San Francisco v. IRS,* 991 F.2d 560, 563 (9th Cir.1993); *In re Currency Conversion Fee Antitrust Litigation.* No. MDL 1409, M21-95, 2002 WL 88278, *2 (S.D.N.Y. Jan.22, 2002); *Hachette Distrib., Inc. v. Hudson County News Co.,* 136 F.R.D. 356, 358 (E.D.N.Y.1991) (factors relevant in stay application include whether "the issues before the Court are purely questions of law that are potentially dispositive"); 6 Moore's Federal Practice, § 26-105[3][c] (Matthew Bender 3d ed.) (factors relevant in stay application include "whether it is a challenge as a matter of law or to the sufficiency of the allegations").

> FN8. GAC moved for dismissal of plaintiffs' claims against it with prejudice--or, in the alternative, for summary judgment. Judge Coar has refused to consider the motion as one for summary judgment.

The unacceptability of the plaintiffs' *ipse dixit* that discovery is necessary to resolve the pending Rule 12(b)(6) motion is further evidenced by their purposeful failure to have filed a motion to compel until the day discovery closed. There was no way to tell when Judge Coar would decide the motion to dismiss. If he ruled against the plaintiffs, it would be too late to argue that discovery was needed for proper resolution of the motion. Thus, prompt action was imperative. Yet, the plaintiffs did nothing to bring the matter to any court's attention at any time during the period the motion has been pending. This purposeful inactivity is compelling evidence that the discovery now claimed to be essential to resolution of the motion is in fact unnecessary to the Rule 12(b)(6) motion.

It misses the mark to say that *Delta's* pre-1998 involvement with the remaining defendants is relevant to show the existence and course of the alleged antitrust conspiracy, **\*339** and that therefore, even if the motion to dismiss is granted, GAC will have future discovery obligations. The relevancy of the materials sought is irrelevant to the question of the timeliness of the motion to compel. Discovery closed on July 1, 2005. The time for securing relevant evidence was during the period allotted for discovery, not afterwards. Chronology, not relevancy, determines the permissibility of plaintiffs' hypothesized post-July 1 discovery.

The motion to compel does not lose its untimely quality on the theory that GAC would still have to respond to the outstanding subpoena served in March 2004 when GAC was a non-party. The plaintiffs manifestly considered that subpoena to have been superceded by the discovery requests, as it was never mentioned in the correspondence between the parties after GAC was added as a defendant. Moreover, the plaintiffs have never filed any motion under Rule 45 to enforce the subpoena. The subpoena, for purposes of the present motion, is irrelevant, and any motion to enforce it--if that is what the plaintiffs had in mind--is untimely. [FN9]

> FN9. In the fifteen months from the date of service, the plaintiffs did nothing to compel compliance with the subpoena. That the plaintiffs considered the subpoena superceded by the discovery requests directed to GAC after it became a party is evidenced by the fact that the latter were narrower than were the requests in the subpoena. (*Plaintiffs' Reply Memorandum* at 3).

**II
The Claimed Prejudice To Plaintiffs Resulting From GAC'S Objections To Discovery
A.**

From the beginning, GAC was adamant that it would not respond at all to the interrogatories and that its response to document requests was going to be restricted while its motion to dismiss was pending. Thus, the plaintiffs could not possibly have been under any misapprehension that continued negotiations might moot the controversy, nor was there reasonable reliance on representations of production that continued through the discovery close date, thereby justifying a late filing of a motion to compel. See *M2 Software, Inc. v. M2 Communications LLC,* 217 F.R.D. 499 (C.D.Cal.2003). Yet, in the face of these consistent refusals, the plaintiffs did not bring a timely motion to compel, although they easily could have done so. See *Suntrust Bank v. Blue Water Fiber, L.P.,* 210 F.R.D. 196, 201 (D.C.Mich.2002).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

231 F.R.D. 331          Page 9
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

[6] In the meantime, they proceeded with discovery. Now, they vociferously complain that they have been "severely prejudiced" by having to take the depositions of two of the Delta/GAC witnesses, Mark Dullea and Michael Harmon, "and *numerous* Noranda and Falconbridge witnesses who had extensive collusive dealings with Delta and GAC throughout the class period," "without the benefit of having received interrogatory responses or complete document productions from GAC." Indeed, we are told, the prejudice is so pervasive that "it is *impossible* to say just how severely [they] may have been prejudiced, not only in their case against GAC, but against all of the defendants." (*Reply Memorandum* at 7-8)(Emphasis supplied). Of course alarms are not arguments, and the plaintiffs' contention is unpersuasive. Speculation is not enough; the plaintiffs must demonstrate "actual and substantial prejudice resulting from the denial of discovery." *Packman,* 267 F.3d at 647. [FN10] This they cannot do since whatever prejudice they suffered was the result of their own inaction.

> FN10. The argument that without the interrogatory responses the plaintiffs were denied information that "*potentially could* have led to more depositions of GAC's current and former employees" and "*might* also have led plaintiffs to propound further more targeted discovery requests" (*Reply* at 7)(Emphasis supplied) is hopelessly speculative.

The plaintiffs' March 14, 2005 motion to extend the discovery deadline listed fifteen fact witnesses whose depositions the plaintiffs planned to take. The only former or current GAC or Delta employee listed was Michael Harmon. Mark Dullea's name was not mentioned. Nor was there even a suggestion that GAC's refusal to answer interrogatories or comply with discovery would impact (or had impacted) the deposition of any witness. Indeed, although the motion to extend the discovery cut-off was largely based on what the plaintiffs claimed were the **\*340** "actions on numerous occasions [that] have delayed plaintiffs' completion of fact discovery," (*Memorandum,* at 7), the list of culpable defendants did not include GAC. There was not so much as a hint of any past or potential prejudice resulting from GAC's refusal to comply with discovery because of the pending motion to dismiss. *Cf Banks v. CBOCS West, Inc.,* 2004 WL 723767 at *3 (N.D.Ill. April 1, 2004) ("At no time did Banks's counsel--who had set the instant motion today before--inform me or otherwise mention that ... there were any outstanding discovery issues to be addressed in the case.").

It is inconceivable that the plaintiffs would have taken the depositions of Harmon and Dullea, let alone "*numerous* Noranda and Falconbridge witnesses who had extensive collusive dealings with Delta and GAC throughout the class period," if they truly felt they were being or would be "severely prejudiced" by not having GAC's responses to the outstanding discovery requests. Rather, they would have moved to compel and vigorously complained to the court that the depositions could not proceed without the requested information. [FN11] At a minimum, they would have raised this concern with GAC. The evidence before me contains no such complaint.

> FN11. The plaintiffs' contention that GAC interfered with discovery is not an excuse for their own inaction. *Ayala-Gerena v. Bristol Myers-Squibb Co.,* 95 F.3d 86, 94 (1st Cir.1996); *Furman Lumber, Inc. v. The Mountbatten Surety Co., Inc.,* 1997 WL 397496 (E.D.Pa.1997)("With respect to the Plaintiff's claims that Mountbatten initially delayed depositions, the Court notes that Plaintiffs could have filed motions to compel."); *Suntrust Bank v. Blue Water Fiber, L.P.,* 210 F.R.D. 196, 201 (D.C.Mich.2002) More importantly, the interference about which the plaintiffs complain is conduct that the Federal Rules of Civil Procedure allows, namely raising objections in responses to discovery.

Beyond the incompatibility of the claim of prejudice with the actual behavior of the plaintiffs, there is the fundamental, overarching principle that parties cannot proceed in the face of known risks and later complain that they have been harmed. *Cf Arrington v. Merrill Lynch,* 651 F.2d 615 (9th Cir.1981)(in 10b-5 case plaintiffs cannot recover that part of their loss caused by their own failure, once they had reason to know of the wrongdoing, to take reasonable steps to avoid further harm). The underlying rationale of the principle is as applicable to the kind of inaction in this case as it is in other areas of the law. [FN12]

> FN12. In a tort context, the common law doctrine commonly passed under the name of assumption of risk. *Coleman v. Ramada Hotel Operating Co.,* 933 F.2d 470, 475 (7th Cir.1991). *See also Mesman v. Crane Pro Services,* 409 F.3d 846 (7th Cir.2005). While the analogy is not perfect, and

231 F.R.D. 331 Page 10
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

certainly does not of its own force govern this case, it is informative.

The decision *to take* the depositions of Harmon, Dullea, and the "*numerous* Noranda and Falconbridge witnesses who [allegedly] had extensive collusive dealings with Delta and GAC throughout the class period," without the requested discovery *and without having moved to compel,* was as much a "tactical decision [ ]" as was the decision *not to take* discovery while the motion to dismiss was pending in the very case the plaintiffs have relied on, Kanner, 913 F.2d at 1223. And like the defendant in Kanner, the plaintiffs are stuck with the "consequences of [their] tactical decisions." Id. Cf. Ridge Chrysler Jeep, LLC, 2004 WL 3021842 (Plaintiffs "must endure the harsh results of this tactical decision" to wait "until four days before the close of discovery" to file a motion to compel). "If there has been any waiver here, it is [the plaintiffs' waiver] of [their] opposition to these depositions by agreeing to let them go forward" without the responses to discovery that are now claimed to be so indispensable and without filing a motion to compel. Banks, 2004 WL 723767 at *3.

Acceptance of the plaintiffs' prejudice argument would absolve the plaintiffs of responsibility for their own inaction, would extend discovery, and would precipitate a further round of depositions at which the withheld information could be used. This would result in a nullification of the seven-hour limitation on depositions in the Federal Rules of Civil Procedure and a likely claim that leads stemming from the depositions required even more discovery. Sophisticated or oblique, no less than stark, *341 methods of nullification of discovery cut-offs and evasion of the Rules (whether or not intended) are prohibited. [FN13]

> FN13. This is the same ultimate issue that is involved in the plaintiffs' Motion to Compel Further Deposition Testimony. There, the plaintiffs allowed certain depositions to be concluded and now claim that they are entitled to have additional depositions so that notes of the deponents can be read into the record.

**B.**

I cannot agree that the plaintiffs filed their motion to compel "in as timely a manner as possible, given the parties' lengthy and exhaustive efforts to resolve the various disputes." (*Reply* at 14). Nor am I persuaded that the approximately eight-month delay stemmed from the plaintiffs' wish "to bring a single, focused motion against GAC, and to exclude any extraneous materials that might burden the Court and muddle the issues...." (*Plaintiffs' Reply* at 14-15). The record tells a different story.

Long before the motion to compel was filed, the plaintiffs were aware that they were not going to get any answers to interrogatories, and that the document production GAC was willing to make pending the outcome of the motion to dismiss would never be compliant with their requests. Thus, at any time over the eight-month period, the plaintiffs could have filed a "single, focused motion" addressing the core issue of whether GAC's discovery obligations should be stayed pending ruling on its Rule 12(b)(6) motion. There were during that whole period no "extraneous materials" to "muddle the issues." Indeed, the salient issue was far more discrete and infinitely more simple during the eight months of plaintiffs' quiescence than it is now "muddle[d]" as it is by questions of undue delay, prejudice, who had the burden to make the first move, waiver, and other related issues.

It is equally unconvincing to say that the plaintiffs took no action before July 1st because they were "cognizant of the substantial possibility that GAC's motion to dismiss might be denied before the close of discovery, thereby removing GAC's primary objection to the discovery requests, and making the dispute moot." If the plaintiffs really believed this, it is nonetheless an unsatisfactory excuse for their inaction. First, while the motion-to-dismiss objection was "the primary" objection, it was not the only one. Second, when the ruling from Judge Coar would come could not be foretold, and as the discovery cut-off drew ever closer it was incumbent upon the plaintiffs to take action, rather than persist in a hope that events had belied. Third, and most importantly, it was folly to assume that the outcome would probably be in the plaintiffs' favor. "Certitude is not the test of certainty," Holmes, *Natural Law*, 32 Harv. L.Rev. 40, 41 (1918); cf. Newsome v. McCabe, 319 F.3d 301, 305 (7th Cir.2003), and the outcome of even a sure winner is never certain. See Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 781 (9th Cir.1990)(Kozinski, J., dissenting).

Of course, the plaintiffs had the right to gamble on the timing and outcome of Judge Coar's ruling, to persist in their self-deception, and to continue to take the "numerous" depositions without moving to compel. But as with all rolls of the dice, there are consequences. The heads I win, tails you lose approach of the plaintiffs is no more acceptable in a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

231 F.R.D. 331                                                                                                    Page 11
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

court than in a casino, and blinking reality is not an excuse for inaction under the Federal Rules of Civil Procedure.

### C.

Denial of the motion to compel does not, however, leave the plaintiffs remediless, as it does in most cases where a motion to compel is denied as untimely. In fact, the availability of a remedy is one of several factors in the decision to deny the motion to compel. Each of GAC's formal objections to all the discovery requests contained the unambiguous representation that in the event the motion to dismiss were denied, there would be prompt compliance by GAC. This is an enforceable promise. *Cf. Tamari v. Bache & Co.,* 729 F.2d 469, 472 (7th Cir.1984)(An attorney's promise in open court to produce documents could be treated as the equivalent of an order for Rule 37(b) purposes). Moreover, quite apart from its promise, if the motion is denied, GAC will be required to comply with ***342** the outstanding discovery requests made months before the close of discovery. *Brosted,* 421 F.3d 459.

For this reason, denial of the motion to compel will not leave the plaintiffs in the "untenable position of having to oppose [a possible future] summary judgment motion by GAC without having been allowed to conduct full and complete discovery of GAC"--if such a motion is ever filed. (*Reply* at 8). [FN14] In the event such a motion is made and the plaintiffs are in some way actually prejudiced by their decision not to have moved to compel until the last day of discovery--although that appears to be exceedingly unlikely--Rule 56(f) would permit the district court, if he felt it appropriate, to allow "depositions to be taken or discovery to be had or may make such other order as is just where it appears that an opponent of a motion for summary judgment cannot present by affidavit facts essential to justify the party's opposition."

> FN14. The premise of the argument depends on uncertain events that may not occur as anticipated or indeed may not occur at all. Consequently, it cannot be said that there is a real and immediate and ripe threat of harm--at least not sufficient to allow the plaintiffs to avoid the consequences of their intentional and protracted delays.

### III
### Plaintiffs' Motion to Compel the Deposition of Mr. Poure

[7] The plaintiffs' motion to compel the deposition of Tim Poure is a more troubling issue. Plaintiffs first expressed an interest in deposing Tim and Jim Poure and Barbara Haase in a November 9, 2004 letter in which plaintiffs' counsel expressed her "understanding"--she did not say from where it was derived--that all three were GAC "employees of GAC and under [its] control." The letter went on: "please let me know if you will voluntarily produce them or if you will require us to notice their depositions." (*Plaintiffs' Exhibit G: Plaintiffs' Reply Memorandum* at 10). Plaintiffs also warned GAC that, despite GAC's additional document production, they were unwilling to await the resolution of the motion to dismiss before proceeding with production and again said they would be filing a motion to compel. Unknown to plaintiffs, Tim Poure had not been an employee of GAC since 1998.

On November 19, GAC's counsel wrote a four line letter noting that attached to it were an organizational chart, copies of GAC's antitrust compliance policy and the GAC/Delta Assert Purchase Agreement and the exhibits to the Agreement. While the organizational chart listed Jim, it did not show Tim Poure. The letter was silent as to the employment status of Tim Poure (or the others) and ignored the question about voluntary production (which of course is the obverse side of the employment coin).

[8] The concept of trial by ambush has long ago fallen into desuetude in both state and federal courts. Modern discovery practices seek to facilitate (however haltingly and ineffectively) open and even-handed development of the relevant facts "so that justice may be delivered on the merits and not shaped by surprise or like tactical stratagems." *American Floral Services, Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258, 260 (N.D.Ill.1985)(Shadur, J.). Thus, lawyers have a duty to act in good faith in complying with their discovery obligations and to cooperate with and facilitate forthright discovery. *Johnson v. J.B. Hunt Transport, Inc.,* 280 F.3d 1125, 1132 (7th Cir.2002); *Jones v. American General Life & Accident Insurance Co.,* 2002 WL 32073037 at *4 (S.D.Ga.2002); *American Reserve Corp. v. Alexander Grant,* 1991 WL 172011 at *3 (N.D.Ill.1991)(Kocoras, J.); *Ritter v. Diasonics, Inc.,* 1992 WL 164905 (E.D.Pa.1992). The November 19th letter was not as faithful to these obligations as it should have been.

[9] Where a party has contributed to a plaintiff's confusion or has caused delays in discovery, it can hardly be heard to complain about continued discovery. Courts ought not to reward those who

231 F.R.D. 331 Page 12
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

needlessly allow confusion to persist or who are the cause of discovery delays. *See Johnson v. J.B. Hunt Transport,* 280 F.3d at 1132; *Siebert v. Bleichman,* 306 Ill.App.3d 841, 845, 239 Ill.Dec. 859, 715 N.E.2d 304, 307 (2nd Dist.1999). That is what appears to have occurred here. A single sentence in the November *343 19th letter would have dispelled any confusion and uncertainty and at no cost and with no burden to GAC, and would have prevented a needless dispute. GAC's counsel chose a different mode of response, and in so doing, ran the risk that the recipient of the letter would be lulled into *continuing* to believe that her "understanding" about Poure's employment status was correct, and that GAC would voluntarily produce him, as other defendants had done with their employees.

Honesty of purpose prompts frankness of statement, *Crosby v. Buchanan,* 23 Wall. 420, 90 U.S. 420, 457, 23 L.Ed. 138 (1874), not the kind of non-response in GAC's counsel's letter of the 19th--a response which "smacks of gamesmanship." *Saltzman v. Fullerton Metals Co.,* 661 F.2d 647, 651, n. 4 (7th Cir.1981). Thus, GAC's claim that plaintiffs were on notice by virtue of the organizational chart alone that Tim Poure was not a GAC employee (and thus not within its control) is not particularly compelling. It was not until June 17, 2005--when silence was no longer an option--that GAC finally informed plaintiffs' counsel that it did not control Mr. Poure. [FN15]

> FN15. On June 27, 2005 plaintiffs' lawyer claimed in a letter to GAC that she had, in phone conversations with GAC's counsel, confirmed Mr. Poure was an employee and in GAC's control. On June 28th, GAC's counsel responded in writing and denied the charges.

GAC does not control Mr. Poure, who has not been employed by GAC since 1998. [FN16] Thus, it would appear they are not in a position to produce him for deposition, as the plaintiffs have requested. However, the plaintiffs shall have 30 days to subpoena Mr. Poure and to take his deposition at an appropriate time and place, consistent with the schedules of other counsel.

> FN16. The deposition notice to GAC was ineffectual to compel Mr. Poure's attendance. *See United States v. Afram Lines (USA), Ltd.,* 159 F.R.D. 408, 413-14 (S.D.N.Y.1994) (subpoena required where the proposed deponent is not an employee of the opponent and is beyond its control);

*Lincoln Plaza Assocs. v. Dow Chem. Co.,* No. 85-362, 1985 WL 3409, *1 (E.D.Pa.Oct.31, 1985).

### CONCLUSION

For the foregoing reasons, the plaintiffs' motion to compel defendant's compliance with outstanding discovery requests [# 167] is GRANTED in part and DENIED in part. Although GAC's objection to the motion to compel Mr. Poure cannot be deemed objectively reasonable, where, as here, a motion to compel is granted in part and denied in part, a court may apportion the reasonable expenses incurred in relation to the motion in a just manner. Rule 37(a)(4)(C); 7 Moore's § 37.23[4][b]. An appropriate resolution of the competing motions for fees under the circumstances of this case--and one which is faithful to the discretion to apportion reasonable expenses--is to deny the parties' respective motions for fees.

231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946

### Motions, Pleadings and Filings (Back to top)

• 2006 WL 1372726 (Trial Pleading) Defendant PVS's Answer to Third Consolidated Amended Class Action Complaint (May 2, 2006)Original Image of this Document (PDF)

• 2006 WL 1372752 (Trial Pleading) Defendant Gac's Motion to Dismiss Plaintiffs' Third Consolidated Amended Class Action Complaint (Apr. 27, 2006)Original Image of this Document (PDF)

• 2006 WL 1372750 (Trial Pleading) Defendant E. I. du Pont de Nemours and Company's Answer to Plaintiffs' Third Consolidated Amended Class Action Complaint (Apr. 25, 2006)Original Image of this Document (PDF)

• 2006 WL 1372751 (Trial Pleading) Defendant Marsulex, Inc. and Chemtrade Logistics (U.S.), Inc.'s Joint Answer and Affirmative Defenses to the Third Consolidated Amended Class Action Complaint (Apr. 25, 2006)Original Image of this Document (PDF)

• 2006 WL 1372749 (Trial Pleading) Answer and Affirmative Defenses of Koch Sulfur Products Company, LLC and Koch Sulfur Products Company to Plaintiffs' Third Consolidated Amended Class

231 F.R.D. 331 Page 13
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

Action Complaint (Apr. 24, 2006)Original Image of this Document (PDF)

• 2006 WL 690289 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion to Overrule Defendants' Objections to Plaintiffs' Requests for Admissions, and to Compel Responses, or Alternatively to Deem Matters Admitted (Feb. 23, 2006)Original Image of this Document (PDF)

• 2006 WL 466553 (Trial Motion, Memorandum and Affidavit) Moving Defendants' Reply in Support of Their Motion to Bar the Opinions of Dr. McClave and Dr. Tollison Pursuant to Federal Rule of Civil Procedure 26(a)(2) (Feb. 15, 2006)Original Image of this Document (PDF)

• 2006 WL 372070 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Preliminary Response and Procedural Objections to Certain Defendants' Motion to Bar Opinions of Dr. McClave and Dr. Tollison (Jan. 18, 2006)Original Image of this Document (PDF)

• 2006 WL 372069 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Certain Defendants' Motion to Bar the Opinions of Dr. McClave and Dr. Tollison Pursuant to Federal Rule of Civil Procedure 26(a)(2)s (Jan. 13, 2006)Original Image of this Document (PDF)

• 2005 WL 3746807 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Motion of All Defendants for Leave to Take a Deposition of Plaintiffs' Damages Expert in Excess of Seven Hours (Nov. 28, 2005)Original Image of this Document (PDF)

• 2005 WL 3407953 (Expert Report and Affidavit) (Report or Affidavit of Dr. James T. McClave) (Oct. 28, 2005)Original Image of this Document (PDF)

• 2005 WL 3746804 (Trial Motion, Memorandum and Affidavit) Reply in Support of Plaintiffs' Motion to Compel Deposition Testimony Re: Handwritten Notes (Aug. 31, 2005)Original Image of this Document (PDF)

• 2005 WL 3746800 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Their Motion to Compel Various Defendants' Compliance With Plaintiffs' Outstanding Discovery Requests as it Relates to the Noranda Defendants (Aug. 29, 2005)Original Image of this Document (PDF)

• 2005 WL 3746798 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion to Require Defendants to Supply and Explain Transaction Data and to Permit Plaintiffs' Expert Thirty (30) Days Therefrom to Furnish Report (Aug. 18, 2005)Original Image of this Document (PDF)

• 2005 WL 3407952 (Expert Report and Affidavit) Declaration of James T. McClave, Ph.D. (Aug. 16, 2005)Original Image of this Document (PDF)

• 2005 WL 3746793 (Trial Motion, Memorandum and Affidavit) Noranda Defendants' Opposition to Plaintiffs' Motion to Compel Additional Depositions from Kim Ross and Tony Desanti (Aug. 5, 2005)Original Image of this Document (PDF)

• 2005 WL 3746796 (Trial Motion, Memorandum and Affidavit) Response of the Noranda Defendants in Opposition to Plaintiffs' Motion to Compel Compliance with Additional Document Requests and Interrogatories (Aug. 5, 2005)Original Image of this Document (PDF)

• 2005 WL 3746791 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Their Motion to Compel Defendant Gac's Compliance With Discovery (Jul. 29, 2005)Original Image of this Document (PDF)

• 2005 WL 3746787 (Trial Motion, Memorandum and Affidavit) Defendant Gac's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel (Jul. 25, 2005)Original Image of this Document (PDF)

• 2005 WL 3746784 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Motion to Strike Plaintiffs' Motions to Compel for Failure to Comply With Fed. R. Civ. P. 30 and 37, Lr 37.2, and the Standing Orders of Judge Coar and This Court (Jul. 20, 2005)Original Image of this Document (PDF)

• 2005 WL 3746782 (Trial Motion, Memorandum and Affidavit) Joint Reply Memorandum of E. I. Du Pont de Nemours and Company, Noranda, Inc., Falconbridge Limited, and Norfalco Llc in Further Support of Their Motion to Compel Rule 30(b)(6) Depositions of All Named Plaintiffs (Jul. 19, 2005)Original Image of this Document (PDF)

• 2005 WL 3746778 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to the Noranda

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

231 F.R.D. 331                                                                                                                         Page 14
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

Defendants' Motion to Strike Plaintiffs' Motions to Compel (Jul. 18, 2005)Original Image of this Document (PDF)

• 2005 WL 3746777 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to the Joint Motion of E.I. Du Pont De Nemours and Company, Noranda, Inc., Falconbridge Limited and Norfalco LLC to Compel Rule 30(b)(6) Depositions of All Named Plaintiffs (Jul. 12, 2005)Original Image of this Document (PDF)

• 2005 WL 3746775 (Trial Motion, Memorandum and Affidavit) Chemtrade Logistics (U.S.), Inc. and Marsulex, Inc.'s Brief in Opposition to Plaintiffs' Motion to Compel Various Defendants' Compliance With Plaintiffs' Outstanding Discovery Requests (Jul. 11, 2005)Original Image of this Document (PDF)

• 2005 WL 3746771 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Strike Plaintiffs' Motions to Compel for Failure to Comply With Fed. R. Civ. P. 30 and 37, Lr 37.2, and the Standing Orders of Judge Coar and This Court (Jul. 8, 2005)Original Image of this Document (PDF)

• 2005 WL 3746773 (Trial Motion, Memorandum and Affidavit) Marsulex, Inc. and Chemtrade Logistics (U.S.), Inc.'s Memorandum of Law in Support of Their Agreed Motion for a Finding of "Satisfactory Cooperation" and Limitation of Damages Pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 (Jun. 30, 2005)Original Image of this Document (PDF)

• 2005 WL 3746770 (Trial Motion, Memorandum and Affidavit) E.I. Du Pont De Nemours and Company's, Noranda, Inc.'s, Falconbridge Limited's, and Norfalco LLC's Joint Memorandum in Support of Their Motion to Compel Rule 30(b)(6) Depositions of All Named Plaintiffs (Jun. 21, 2005)Original Image of this Document (PDF)

• 2005 WL 3746768 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for Extension of Discovery (Jun. 16, 2005)Original Image of this Document (PDF)

• 2005 WL 3746767 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for Extension of Discovery (Jun. 10, 2005)Original Image of this Document (PDF)

• 2005 WL 3746766 (Trial Motion, Memorandum and Affidavit) Joint Opposition by E.I. Du Pont De Nemours and the Noranda Defendants to Plaintiffs' Renewed Motion for Leave to File Their Third Consolidated Amended Class Action Complaint Instanter (Jun. 1, 2005)Original Image of this Document (PDF)

• 2005 WL 3746951 (Trial Pleading) Third Consolidated Amended Class Action Complain (May 25, 2005)Original Image of this Document (PDF)

• 2005 WL 3746957 (Trial Pleading) Third Consolidated Amended Class Action Complaint (May 25, 2005)Original Image of this Document (PDF)

• 2005 WL 3746763 (Trial Motion, Memorandum and Affidavit) Dupont's Opposition to Plaintiffs' Motion for Extension of Discovery (Mar. 18, 2005)Original Image of this Document (PDF)

• 2005 WL 3746765 (Trial Motion, Memorandum and Affidavit) The Noranda Defendants' Opposition to Plaintiffs' Motion for Extension of Discovery (Mar. 18, 2005)Original Image of this Document (PDF)

• 2005 WL 3746762 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for Extension of Discovery (Mar. 15, 2005)Original Image of this Document (PDF)

• 2005 WL 3746955 (Trial Pleading) Third Consolidated Amended Class Action Complaint (Feb. 17, 2005)Original Image of this Document (PDF)

• 2004 WL 3688444 (Trial Motion, Memorandum and Affidavit) Defendant GAC's Reply in Support of Its Motion to Dismiss (Sep. 29, 2004)Original Image of this Document (PDF)

• 2004 WL 3688443 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant General Alum New England Corporation's Motion to Dismiss (Sep. 16, 2004)Original Image of this Document (PDF)

• 2004 WL 3688467 (Trial Pleading) Defendant PVS's Answer to Second Consolidated Amended Class Action Complaint (Aug. 23, 2004)Original Image of this Document (PDF)

• 2004 WL 3688442 (Trial Motion, Memorandum and Affidavit) Defendant GAC's Memorandum of Law in Support of Its Motion to Dismiss or, in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

231 F.R.D. 331                                                                                                                Page 15
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

Alternative, for Summary Judgment (Jul. 30, 2004)Original Image of this Document (PDF)

• 2004 WL 3688465 (Trial Pleading) Answer and Affirmative Defenses of Defendant Intertrade Holdings, Inc. to the Second Consolidated Amended Class Action Complaint (Jul. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3688464 (Trial Pleading) Defendant E.I. du Pont DE Nemours and Company's Answer to Plaintiffs' Second Consolidated Amended Class Action Complaint (Jun. 30, 2004)Original Image of this Document (PDF)

• 2004 WL 3688466 (Trial Pleading) Answer and Affirmative Defenses of Koch Industries, Inc. to Plaintiffs' Second Consolidated Amended Class Action Complaint (Jun. 30, 2004)Original Image of this Document (PDF)

• 2004 WL 3688463 (Trial Pleading) Answer and Affirmative Defenses of Noranda Inc. to Plaintiffs' Second Consolidated Amended Class Action Complaint (Jun. 21, 2004)Original Image of this Document (PDF)

• 2004 WL 3688440 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Further Support of Their Motion for Class Certification (Jun. 14, 2004)Original Image of this Document (PDF)

• 2004 WL 3688468 (Trial Pleading) Second Consolidated Amended Class Action Complaint (May 24, 2004)Original Image of this Document (PDF)

• 2004 WL 3688441 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Brief in Opposition to Plaintiffs' Motion for Class Certification (May 21, 2004)Original Image of this Document (PDF)

• 2004 WL 3688439 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Surreply in Further Opposition to Class Certification (Mar. 24, 2004)Original Image of this Document (PDF)

• 2004 WL 3688438 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion to Compel (Mar. 18, 2004)Original Image of this Document (PDF)

• 2004 WL 3688437 (Trial Motion, Memorandum and Affidavit) Consolidated Response of Defendants Noranda Inc., Falconbridge Limited, and Norfalco LLC to Plaintiffs' Motion to Compel Defendants to Produce Documents Requested by Request No. 7 (Mar. 11, 2004)Original Image of this Document (PDF)

• 2004 WL 3688436 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Compel Defendants to Produce Documents Requested by Request No. 7 (Feb. 28, 2004)Original Image of this Document (PDF)

• 2003 WL 24256600 (Trial Motion, Memorandum and Affidavit) Noranda Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Dec. 16, 2003)Original Image of this Document (PDF)

• 2003 WL 24256599 (Trial Motion, Memorandum and Affidavit) Defendants' Emergency Motion for Entry of Addenda to the Protective Order (Dec. 9, 2003)Original Image of this Document (PDF)

• 2003 WL 24256598 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Their Motion to Strike Portions of the Complaint (Nov. 7, 2003)Original Image of this Document (PDF)

• 2003 WL 24256597 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Memorandum of Law in Opposition to Motion to Strike (Oct. 29, 2003)Original Image of this Document (PDF)

• 2003 WL 24256595 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Oct. 14, 2003)Original Image of this Document (PDF)

• 2003 WL 24256596 (Trial Motion, Memorandum and Affidavit) Defendants' Rule 12(f) Motion to Strike Paragraphs 25 Through 33 of the Consolidated Amended Class Action Complaint (Oct. 6, 2003)Original Image of this Document (PDF)

• 2003 WL 24256602 (Trial Pleading) Consolidated Amended Class Action Complaint (Sep. 5, 2003)Original Image of this Document (PDF)

• 1:03cv04576 (Docket) (Jul. 1, 2003)

• 2003 WL 24398858 (Trial Pleading) Answer and Affirmative Defenses of Defendant Intertrade Holdings, Inc. to the Third Consolidated Amended Class Action Complaint (2003)Original Image of this

231 F.R.D. 331 Page 16
231 F.R.D. 331, 2005-2 Trade Cases P 74,960, 62 Fed.R.Serv.3d 946
**(Cite as: 231 F.R.D. 331)**

Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.