# EXHIBIT
# E

Westlaw.

604 F.Supp. 1106
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

Page 1

▷
Allison on Behalf of General Motors Corp. v. General Motors Corp.D.C.Del.,1985.
United States District Court,D. Delaware.
Paul K. ALLISON, on Behalf of GENERAL MOTORS CORPORATION, Plaintiff,
v.
GENERAL MOTORS CORPORATION, Elliott M. Estes, Reuben R. Jensen, Howard H. Kehrl, F. James McDonald, Thomas A. Murphy and Roger B. Smith, Defendants.
**Civ. A. No. 84-214 MMS.**

March 19, 1985.

Stockholder brought derivative action against certain officers and directors of corporation. On motion to dismiss filed by corporation and six of the individual defendants, the District Court, Murray M. Schwartz, J., held that: (1) case required demand upon Board of Directors; (2) stockholder's demand was adequate; (3) complaint was prematurely filed in that two and one-half months was insufficient time for board to respond; and (4) bare conclusory allegation that board acted wrongfully in adopting recommendation of committee and rejecting demand was insufficient, under Delaware law, to override business judgment of board to reject demand.

Complaint dismissed with prejudice.
West Headnotes
**[1] Corporations 101 ⇌206(2)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k206 Refusal of Corporation, Officers, or Stockholders to Act
                101k206(2) k. Necessity of Demanding Action. Most Cited Cases

**Corporations 101 ⇌211(5)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k211 Pleading
                101k211(5) k. Excuse for Failure to Allege Demand. Most Cited Cases

Under rule governing derivative actions, shareholder must either make a demand upon board of directors to file suit on behalf of corporation or plead with particularity exceptional circumstances that demonstrate why a demand would be futile, i.e., why board should not be allowed to decide whether to institute litigation. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[2] Corporations 101 ⇌211(5)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k211 Pleading
                101k211(5) k. Excuse for Failure to Allege Demand. Most Cited Cases
A court must determine solely on basis of complaint whether plaintiff stockholder has met burden of alleging that demand required under rule governing derivative actions is excused. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[3] Corporations 101 ⇌206(4)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k206 Refusal of Corporation, Officers, or Stockholders to Act
                101k206(4) k. Excuse for Failure to Demand. Most Cited Cases
To excuse demand under rule governing derivative actions, plaintiff stockholder must offer some particularized legally cognizable reason as to why board of directors was unable to redress alleged wrong. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[4] Corporations 101 ⇌320(5)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k320 Actions Between Shareholders and Officers or Agents
                101k320(5) k. Failure of Action by Corporation and Demand That Action Be Brought. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106  
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272  
**(Cite as: 604 F.Supp. 1106)**

Page 2

Board of directors' knowledge of wrongs and failure to institute suit on behalf of corporation, without more, was inadequate to excuse demand under rule governing derivative actions. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[5] Corporations 101 ⇐ 320(7)

101 Corporations  
    101X Officers and Agents  
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members  
            101k320 Actions Between Shareholders and Officers or Agents  
                101k320(7) k. Bill, Petition, or Complaint in General. Most Cited Cases  
General allegation that board of directors acquiesced in activity challenged by stockholder, as signified by its failure to file remedial litigation, was not sufficiently particular to demonstrate demand futility under rule governing derivative actions. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[6] Corporations 101 ⇐ 320(7)

101 Corporations  
    101X Officers and Agents  
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members  
            101k320 Actions Between Shareholders and Officers or Agents  
                101k320(7) k. Bill, Petition, or Complaint in General. Most Cited Cases  
Allegation of participation in an administrative investigation into activity challenged by stockholder and defense of a government agency lawsuit concerning that activity, without more, was insufficient to establish futility of demand upon board of directors, under rule governing derivative actions, to bring action on behalf of corporation against certain officers and directors allegedly responsible for challenged activity. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[7] Corporations 101 ⇐ 320(5)

101 Corporations  
    101X Officers and Agents  
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members  
            101k320 Actions Between Shareholders and Officers or Agents  
                101k320(5) k. Failure of Action by Corporation and Demand That Action Be Brought. Most Cited Cases  
Corporation's mere failure to institute suit with knowledge of alleged underlying wrongs and its defense of government litigation addressing some of those wrongs did not excuse as futile requirement that demand be made upon board of directors under rule governing derivative actions. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[8] Corporations 101 ⇐ 206(4)

101 Corporations  
    101IX Members and Stockholders  
        101IX(C) Suing or Defending on Behalf of Corporation  
            101k206 Refusal of Corporation, Officers, or Stockholders to Act  
                101k206(4) k. Excuse for Failure to Demand. Most Cited Cases  
Absent sufficiently particular allegations of participation, self-dealing, bias, bad faith, or corrupt motive, failure to make a demand upon a board of directors will not be excused under rule governing derivative actions. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[9] Corporations 101 ⇐ 320(5)

101 Corporations  
    101X Officers and Agents  
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members  
            101k320 Actions Between Shareholders and Officers or Agents  
                101k320(5) k. Failure of Action by Corporation and Demand That Action Be Brought. Most Cited Cases  
Mere fact that plaintiff stockholder named members of board of directors as defendants and made conclusory allegations of director wrongdoing did not suffice to excuse demand upon board under rule governing derivative actions in absence of particular allegations of participation, self-dealing, bias, bad faith, or corrupt motive on part of a majority of directors. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[10] Corporations 101 ⇐ 320(7)

101 Corporations  
    101X Officers and Agents  
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members  
            101k320 Actions Between Shareholders and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106 Page 3
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

Officers or Agents
        101k320(7) k. Bill, Petition, or Complaint in General. Most Cited Cases
Allegation that demand upon directors would have been futile because directors, some of whom were defendants in subsequent derivative suit, would be suing themselves was insufficient to excuse demand under rule governing derivative actions in absence of allegation of majority board participation in alleged wrongdoing. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[11] **Corporations 101 ⇐320(7)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k320 Actions Between Shareholders and Officers or Agents
                101k320(7) k. Bill, Petition, or Complaint in General. Most Cited Cases
In view of lack of any factual allegation in support of allegation of domination and control of board of directors by individual defendants, there was no demonstration that demand upon board would be futile under rule governing derivative actions. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[12] **Corporations 101 ⇐206(2)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k206 Refusal of Corporation, Officers, or Stockholders to Act
                101k206(2) k. Necessity of Demanding Action. Most Cited Cases
Requirement that demand be made upon board of directors to file suit on behalf of corporation before a stockholder's derivative suit may be filed is a rule of substantive right, so that rule governing diversity actions, as a procedural rule, cannot establish or modify this requirement. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[13] **Federal Courts 170B ⇐414**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(C) Application to Particular Matters
            170Bk414 k. Corporations and Associations; Banks and Trust Companies; Securities. Most Cited Cases
State substantive law, not federal law, is appropriate source of corporate law principles, even for lawsuits otherwise governed by federal law.

[14] **Corporations 101 ⇐320(5)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k320 Actions Between Shareholders and Officers or Agents
                101k320(5) k. Failure of Action by Corporation and Demand That Action Be Brought. Most Cited Cases
If misconduct has occurred, directors must be given initial opportunity to redress wrong prior to resort to derivative litigation unless demand is excused for reasons such as self-dealing, self-interest, bad purpose, corrupt motive and the like. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[15] **Corporations 101 ⇐310(2)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k310 Management of Corporate Affairs in General
                101k310(2) k. Degree of Care Required and Negligence. Most Cited Cases
Upon receipt of a demand to file suit on behalf of corporation, board of directors must investigate and evaluate charges in order to discharge its duty to shareholders and manage corporate affairs responsibly. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

[16] **Corporations 101 ⇐206(2)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k206 Refusal of Corporation, Officers, or Stockholders to Act
                101k206(2) k. Necessity of Demanding Action. Most Cited Cases

**Corporations 101 ⇐206(3)**

101 Corporations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106                                                                                               Page 4
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

101IX Members and Stockholders
    101IX(C) Suing or Defending on Behalf of Corporation
        101k206 Refusal of Corporation, Officers, or Stockholders to Act
            101k206(3) k. Sufficiency of Demand. Most Cited Cases
Purpose of requiring that demand be made upon a board of directors prior to institution of a derivative suit is to alert Board so that it can take such corrective action, if any, as it feels is merited; a demand is adequate if it satisfies that purpose. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[17] Corporations 101 €══206(3)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k206 Refusal of Corporation, Officers, or Stockholders to Act
                101k206(3) k. Sufficiency of Demand. Most Cited Cases
At a minimum, a demand upon a board of directors to take action on behalf of corporation must identify alleged wrongdoers, describe factual basis of wrongful acts and harm caused to corporation, and request remedial relief; in most instances, shareholder need not specify his legal theory, every fact in support of that theory, or precise quantum of damages, since decisions as to how and on what theory corporation will pursue wrongdoers are proper province of Board. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[18] Corporations 101 €══320(5)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k320 Actions Between Shareholders and Officers or Agents
                101k320(5) k. Failure of Action by Corporation and Demand That Action Be Brought. Most Cited Cases
Demand upon board of directors which identified alleged wrongdoers, spelled out perceived wrongful conduct, specified losses suffered by corporation, and requested relief for corporation was sufficiently specific to constitute adequate demand under rule governing derivative actions. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[19] Corporations 101 €══310(2)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k310 Management of Corporate Affairs in General
                101k310(2) k. Degree of Care Required and Negligence. Most Cited Cases
Under Delaware law, board of directors has a duty to inform itself of all material information essential to an objective and meaningful evaluation of a demand made upon it by shareholder pursuant to rule governing derivative suits. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[20] Corporations 101 €══320(5)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k320 Actions Between Shareholders and Officers or Agents
                101k320(5) k. Failure of Action by Corporation and Demand That Action Be Brought. Most Cited Cases
Stockholder's derivative complaint was filed prematurely where board of directors was given only two and one-half months to respond to demand and demand involved a good deal of investigation and education as to issues. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[21] Federal Civil Procedure 170A €══1832**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered in General. Most Cited Cases

**Federal Civil Procedure 170A €══1833**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1833 k. Affidavits. Most Cited

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106                                                                                          Page 5
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

Cases
Corporation's motion to dismiss stockholder's derivative suit would be decided solely on face of complaint as amended to reflect wrongful rejection of demand, with corporation's affidavit and attached report excluded from consideration.

**[22] Federal Civil Procedure 170A ⚿1825**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1825 k. Motion and Proceedings Thereon. Most Cited Cases
Question of whether a cause of action exists is not jurisdictional and therefore may be assumed in deciding motion to dismiss.

**[23] Federal Courts 170B ⚿414**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(C) Application to Particular Matters
            170Bk414 k. Corporations and Associations; Banks and Trust Companies; Securities. Most Cited Cases
Delaware state law controlled on question of whether amended complaint filed by stockholder in derivative suit sufficiently alleged that board of directors wrongfully rejected stockholder's demand, despite stockholder's allegation of violation of Racketeer Influenced and Corrupt Organizations Act, a federal statute, since nothing in RICO or its legislative history indicated that policy underlying RICO was inconsistent with Delaware law of director termination of derivative litigation. 18 U.S.C.A. § 1961 et seq.

**[24] Corporations 101 ⚿310(1)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k310 Management of Corporate Affairs in General
                101k310(1) k. In General. Most Cited Cases
Under Delaware law, business judgment doctrine carries with it presumption that in making a business decision directors of corporation acted on an informed basis, in good faith, and in honest belief that action taken was in best interest of company; doctrine does not apply if degree of "interestedness" of board of directors in whatever is at issue is too high, if board lacked independence, if it fails to exercise informed business judgment, or if it takes action contrary to corporation's best interest.

**[25] Corporations 101 ⚿211(8)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k211 Pleading
                101k211(8) k. Issues. Most Cited Cases
In a case in which demand upon board of directors is required before a derivative suit may be filed on behalf of a corporation incorporated in Delaware, burden is upon stockholder challenging Board's decision to allege and prove facts rebutting longstanding presumption under Delaware law of validity of an exercise of business judgment.

**[26] Corporations 101 ⚿211(4)**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k211 Pleading
                101k211(4) k. Sufficiency of Allegations as to Demand and Refusal. Most Cited Cases
To rebut longstanding presumption under Delaware law of validity of an exercise of business judgment, a stockholder seeking to bring a derivative suit in a case in which demand upon board of directors is required must allege with particularity that board either was tainted by self-interest, acted in bad faith or fraudulently, or, in certain contexts, through gross negligence failed to reach an informed decision.

**[27] Corporations 101 ⚿320(7)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to Corporation and Its Members
            101k320 Actions Between Shareholders and Officers or Agents
                101k320(7) k. Bill, Petition, or Complaint in General. Most Cited Cases
Bare conclusory allegation that board of directors acted wrongfully in adopting recommendation of committee and rejecting demand to bring suit against certain directors and officers of corporation on behalf

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
(Cite as: 604 F.Supp. 1106)

Page 6

of corporation was insufficient, under Delaware law, to override business judgment of board to reject demand.

**\*1109** William Prickett, and Excetral K. Caldwell, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del (Harold E. Kohn, and Diane M. Nast, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa.; Joseph F. Roda, and Bernadette McKeon Hohenadel, Joseph F. Roda, P.C., Lancaster, Pa., of counsel), for plaintiffs.
William O. LaMotte, Jr., Thomas Reed Hunt, Jr., and Michael Houghton, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for individual defendants.
E. Norman Veasey, R. Franklin Balotti, and Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, Del., for defendant General Motors Corp.

OPINION

MURRAY M. SCHWARTZ, District Judge.
This opinion addresses the tension produced by the necessity for corporate governance by a corporation's board of directors and the use of the shareholder's derivative suit as a device for remedying abuse of corporate decision making power. It also peripherally touches on choice of law problems that arise when a federal procedural rule is inextricably linked to state substantive law.

**\*1110** Defendant General Motors Corporation ("GM") and six individual defendants have moved to dismiss Paul K. Allison's shareholder's derivative complaint. The dismissal motion raises two primary issues: 1) whether a derivative suit should be dismissed as premature where the plaintiff allegedly allowed the corporation insufficient time to respond to a Fed.R.Civ.P. 23.1 demand, and 2) whether the allegations of the second amended complaint are adequately particularized and legally sufficient to withstand a motion to dismiss predicated upon the rejection of a demand by the GM Board of Directors in the exercise of its business judgment. It is concluded that although the complaint was filed prematurely, the highly unusual case-specific facts counsel against dismissal on this ground. Nonetheless, the second amended complaint will be dismissed because it is legally insufficient to override the business judgment of the Board of Directors to terminate this litigation.

**FACTUAL BACKGROUND**

On April 17, 1984, plaintiff Allison, a GM shareholder, filed a derivative action against GM and six of its present [FN1] and former [FN2] directors ("individual defendants") alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq, and fraud, mismanagement and breach of fiduciary duties. On May 8, 1984, defendants moved to dismiss the original complaint by reason of plaintiff's failure to verify the complaint, allege noncollusiveness, make an adequate demand upon the Board of Directors, and await a response to the demand which was made. Plaintiff responded by filing a verified amended complaint which included an allegation of noncollusiveness. Defendants again moved to dismiss and alternatively to obtain a stay of discovery pending resolution of the motions to dismiss and pending the GM Board's action on plaintiff's demand letter. On May 29, a stay was ordered except as to any discovery which might be relevant to the motions to dismiss and stay.

> FN1. Howard H. Kehrl, F. James McDonald, Thomas A. Murphy and Roger B. Smith.
>
> FN2. Elliott M. Estes and Reuben R. Jensen.

Following briefing of the motions to dismiss but prior to oral argument, the GM Board, on October 1, 1984, rejected the demand. GM promptly buttressed its motion to dismiss by adding the Board's rejection of plaintiff's demand as an additional reason for dismissal. In support of the motion, GM filed, via affidavit, the report and recommendation of a committee of the GM Board of Directors. Plaintiff reacted by moving to further amend his complaint to allege wrongful rejection of the demand. After grant of that motion all defendants again moved to dismiss the second amended complaint as legally insufficient and not in compliance with Fed.R.Civ.P. 23.1. The motions to dismiss center upon the adequacy of the demand letter, the timing of filing of the original complaint, and the legal sufficiency of the latest amended complaint.

In a detailed, three page, single-spaced letter dated January 30, 1984, plaintiff demanded GM institute suit against the individual defendants
to obtain recovery of all funds that have been or will be spent by GM because of the defective condition of the X-cars [Buick Skylark, Pontiac Phoenix, Chevrolet Citation and Oldsmobile Omega], on the grounds that in authorizing the production and sale of the X-cars in defective condition, and in authorizing

604 F.Supp. 1106  
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272  
**(Cite as: 604 F.Supp. 1106)**

Page 7

GM to furnish incomplete and false information to NHTSA [National Highway Traffic Safety Administration], those directors breached their fiduciary duties to GM, to its substantial detriment.

(Docket Item ("Dkt.") 14, Exh. A, at 3). As background to the request for institution of suit, the demand letter recites that one month prior to initial production in 1977, the individual defendants either knew or should have known of a "premature brake lock-up" problem with the X-cars. The demand letter charged the individual defendants*1111 with mismanagement and breach of their fiduciary duties to GM arising from their permitting production and sale of defective X-cars in 1979 and 1980. Thereafter the individual defendants allegedly either directed or knowingly acquiesced in the providing of incomplete, inaccurate and false information to NHTSA relating to the X-cars. The demand letter then states that as "a direct result of the production and sale of the X-cars, and of the failure by GM to provide complete and truthful information to NHTSA," X-cars have been involved in numerous accidents resulting in personal injuries and deaths. Those accidents have led to the filing of over fifty lawsuits, one of which resulted in a verdict against GM in excess of $5 million and others of which have been settled. In addition, the demand letter recites that GM has twice made voluntary recalls of X-cars and that NHTSA has filed suit against GM seeking a recall of 1.1 million X-cars and a civil penalty in excess of $4 million. Finally, the demand letter recites that because GM is self-insured, it has suffered, and will continue to suffer, financial detriment.

On February 24, GM responded to the demand letter by advising that the demand would be considered by the Board of Directors at its next regularly scheduled meeting. (Revised Verified and Amended Complaint, Dkt. 14, Exh. B-1). On March 7, GM advised plaintiff's counsel that outside directors were inquiring into the demand and that there would be further communication "at the conclusion of their inquiry." (*Id.*, Exh. B-2).

On March 19 plaintiff, through his counsel, stated:
In view of the fact that General Motors is now vigorously contesting the government's X-car recall suit, we must conclude that the Corporation is not seriously considering suit against the officers and directors referred to in our January 30, 1984 letter to the Board of Directors.

(Dkt. 21, Exh. E). Plaintiff threatened to file his own lawsuit if GM did not file suit by April 2, 1984. GM's answer to the March 19 letter denied that its defense of the government lawsuit would hinder the outside directors' evaluation and stated that because the investigation by outside directors was ongoing, filing of suit would be premature. On March 30, 1984, in response to a phone call by plaintiff's attorney, counsel for GM, after stating that the demand raised complex and highly technical issues, declined to estimate when an informed determination would be made. (Revised Verified and Amended Complaint, Dkt. 14, Exh. B-3). On April 3, 1984, plaintiff responded by informing GM that suit would be filed without further notice.

On April 17, 1984, plaintiff filed a two count derivative complaint on behalf of GM against the same six present and former directors named in the demand letter. Both counts allege the individual defendants breached their fiduciary duties by knowingly producing and selling X-cars with defective braking systems, concealing the alleged defect, and providing false and incomplete disclosures to NHTSA and consumers. Count I alleges a civil RICO violation based on predicate offenses of mail and wire fraud. Count II alleges breach of fiduciary duty under state law.[FN3]

> FN3. The bases of jurisdiction set out in the amended complaint are the jurisdictional provision of RICO, recited as 18 U.S.C. § 1961 *et seq.*, federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. However, the diversity jurisdiction allegations are deficient in that the complaint does not specify the citizenship of the individual defendants. At oral argument, plaintiff acknowledged this deficiency and made clear that because of tactical considerations, he was not relying on diversity of citizenship as a basis for jurisdiction at this time. (Dkt. 31, at 40-41, 43-45). Instead, he relies on federal question jurisdiction and jurisdiction conferred by the RICO statute. (Dkt. 31, at 42, 45). Given the deficiencies in the allegation of diversity jurisdiction, Count II must be considered a pendent claim.

**DEMAND REQUIRED-DEMAND EXCUSED**  
**(Futility of Demand)**

Defendants base their motions to dismiss on failure to comply with Fed.R.Civ.P. 23.1 [FN4] and failure to state

604 F.Supp. 1106 Page 8
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

a claim upon *1112 which relief can be granted because of the insufficiency of the second amended complaint as a matter of law. Defendants argue that Rule 23.1 was not complied with because plaintiff's demand was incomplete and the filing of suit was premature. As a consequence, defendants urge, the entire complaint should be dismissed. Plaintiff counters that demand was futile and hence not required under Rule 23.1, and that in any event, his demand was adequate and the filing of suit was not premature. The Court will first consider plaintiff's claim that demand was futile.[FN5]

> FN4. Fed.R.Civ.P. 23.1 provides in pertinent part:
> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

> FN5. Although there is some authority to support the proposition that a plaintiff who makes a demand thereby waives any argument that demand is futile, see page 1116 infra, the Court will consider plaintiff's argument. In general, plaintiffs who abandon the demand procedure before receiving a response must demonstrate demand futility. See Mills v. Esmark, Inc., 91 F.R.D. 70, 73 & n. 2 (N.D.Ill.1981).

[1][2] Rule 23.1, devoted exclusively to derivative actions, is a marked departure from the "notice" pleading philosophy of the Federal Rules of Civil Procedure. It represents a procedural resolution of the tension between the usual statutory directive that a Board of Directors conduct the affairs of a corporation [FN6] and the power given to shareholders to remedy corporate directors' misfeasance, malfeasance and nonfeasance by instituting actions on behalf of the corporation. The right to control the prosecution of litigation belongs in the first instance to the Board of Directors. At the same time, Rule 23.1 recognizes that it is sometimes necessary to have shareholders police, enforce, and indeed assume the directors' duties of corporate governance. However, Rule 23.1 also acknowledges that because shareholders could be overzealous in their enforcement actions, there must be rules to "police the police." See *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 836-37, 78 L.Ed.2d 645 (1984). Under Rule 23.1 the shareholder must either make a demand or plead with particularity the exceptional circumstances that demonstrate why a demand would be futile, i.e., why the Board of Directors should not be allowed to decide whether to institute litigation. See *In re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). In essence, when demand is not made, the complaining stockholder must show that the Board of Directors abdicated in favor of stockholder control of an aspect of corporate affairs-the power to control corporate litigation. A court must determine solely on the basis of the complaint whether the plaintiff stockholder has met this burden of alleging that demand is excused. *Lewis v. Curtis*, 671 F.2d 779, 784 (3d Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

> FN6. See, e.g. 8 Del.C. § 141(a), which provides in pertinent part: "The business and affairs of every corporation ... shall be managed by or under the direction of a board of directors...."

With these principles in mind attention is turned to the allegations of paragraph 6 of the amended complaint set out in the margin.[FN7] Essentially, plaintiff relies upon five *1113 justifications that, taken singly or in combination, make this a "demand-excused" case: 1) the GM Board has failed to take action on behalf of GM, despite plaintiff's letters, before the filing of the complaint, 2) the GM Board had knowledge for four years of the wrongdoings alleged in the complaint and failed to bring suit, 3) defendants, as former or present members of the Board, participated in the alleged wrongs recited in the complaint, 4) individual defendants have not and would not file suit against themselves, and 5) the Board of Directors is dominated and controlled by defendants. Each will be considered in turn.

> FN7. 6. Written demand by plaintiff that GM bring this action was made by letter dated January 30, 1984, a copy of which is attached marked Exhibit A. The Board of

604 F.Supp. 1106                                                                                                      Page 9
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

GM has failed to take action on behalf of GM as shown by the letters to and from the Board hereto attached marked Exhibits B-1, B-2 and B-3. The GM Board of Directors has failed to bring suit, despite the fact that members of the Board of Directors have had full knowledge of the wrongs set out herein for at least four years, and have never taken any action. In addition, defendants, present or former members of the GM Board of Directors, have participated in the wrongs herein set out. Thus the individual defendants have not brought this action and would not diligently prosecute this action because in effect they would have to bring suit against themselves.

(Dkt. 14, at 2). Plaintiff relies upon these allegations to show demand futility. (Dkt. 21, at 20-21).

### 1. Failure to Take Action

[3] A generalized claim that the Board failed to take action on the alleged wrongs set out in the demand letter as of the date of filing of the complaint does not in any way explain *why* the Board is disabled from assuming control of the litigation. This claim only alerts the Board that a shareholder believes management has done something which requires a response by the Board. At a minimum, plaintiff must offer some particularized legally cognizable reason as to why the GM Board is unable to redress the alleged wrong. *See, e.g., Ash v. International Business Machines, Inc.,* 353 F.2d 491, 492-93 (3d Cir.1965), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966).

### 2. Failure to Bring Suit Despite Knowing for Four Years of the Alleged Underlying Wrongs

Treating plaintiff's complaint charitably, it can be construed as stating:

GM has been aware of the incidents underlying the claims in the demand letter for more than four years, and ... has been involved in an investigation by the federal government during the same period of time into precisely the same matter and had been actively contesting litigation with the federal government arising from that investigation....

(Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss or Stay, Dkt. 21, at 18). This allegation as to board disability appears to be twofold: 1) The GM Board has been aware of the wrongs constituting the claim for four years and has done nothing about them, and 2) GM's past conduct in defending against the government investigation and suit involving "precisely the same matter" demonstrates defendants would reject plaintiff's demand.

[4][5] With respect to the former, the GM Board's knowledge of wrongs and failure to institute suit, without more, is inadequate to excuse demand. *Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms, Inc.,* 73 F.R.D. 420, 429 (E.D.Pa.1977), *aff'd mem,* 586 F.2d 834 (3d Cir.1978); *see Cramer v. General Telephone & Electronics Corp.,* 582 F.2d 259 (3d Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); *Halprin v. Babbitt,* 303 F.2d 138, 141 (1st Cir.1962). A general allegation that the Board acquiesced, as signified by its failure to file remedial litigation, is not sufficiently particular to demonstrate demand futility.

[6][7] Similarly, the allegation of participation in an administrative investigation and defense of a government agency lawsuit, without more, is insufficient to establish futility of demand. Initially it is noted that only by speculative construction of the exhibits attached to the complaint can one discern that plaintiff is tying GM's defense of the NHTSA litigation to futility of demand. In fact, the demand letter attached to the complaint can be read as encompassing more than the asserted deficiency in the X-car brake system that is at issue in the NHTSA litigation.[FN8] Assuming the complaint*1114 is alleging, however obliquely, that because GM is defending the government lawsuit it would not undertake litigation against the individual defendants, the complaint is silent as to whether it was a GM Board decision to contest the government action. Likewise, the plaintiff has not pleaded with any particularity facts to show why, simply because GM is defending itself, the GM Board would be unwilling to have GM sue the individual defendants. It would not be inconsistent or illogical for GM to contest that the corporation is liable in pending litigation and later, or even simultaneously, sue the defendant directors for breach of fiduciary duty. GM could institute suit against the directors without admitting that the corporation was liable in the NHTSA suit. Thus, GM's mere failure to institute suit with knowledge of the alleged underlying wrongs and its defense of government litigation do not excuse demand as futile under Rule 23.1.

> FN8. While the demand letter generally focuses on the alleged brake defect, the

604 F.Supp. 1106                                                                                       Page 10
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

enumerated problems caused by the individual defendants' alleged breach of fiduciary duty are limited to X-cars but not to a brake defect in X-cars. The demand letter recites:

As a direct result of the production and sale of the defective X-cars, and of the failure by GM to provide complete and truthful information to NHTSA, the following have occurred:

1. The X-cars have become involved in numerous accidents because of their defective condition.
2. More than 50 law suits have been filed against GM because of injuries and deaths from X-car accidents.
3. In the first of these cases to go to verdict, an award was rendered against GM in excess of $5 million.
4. GM has chosen to settle still other X-car cases in advance of suit.
5. GM has twice had to recall thousands of X-cars, in 1981 and again in 1983.
6. NHTSA has filed suit against GM to force the recall of 1.1 million X-cars, and the payment by GM of a civil penalty in excess of $4 million.

(Dkt. 14, Exh. A, at 2-3).

### 3. Participation in the Alleged Wrong by Individual Defendants

Plaintiff asserts demand is excused because the individual defendants, as members of the GM Board, participated in the underlying wrongs, i.e., the decision to manufacture and sell X-cars with a known brake deficiency and the decision to submit false and incorrect information to the government and the public. Director participation as pleaded contains a glaring deficiency. Nowhere is it pleaded that the individual defendants constitute a majority of the Board. The Court will not presume or infer this crucial fact. Plaintiff cannot be permitted to circumvent Rule 23.1's particularity requirement by omission.

[8][9] Courts will in some instances excuse demand if the "complaint alleges that a majority of the directors have participated in the underlying wrongdoing" or were otherwise biased. *Lewis v. Curtis,* 671 F.2d 779, 784-85 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). However, unless a plaintiff makes sufficiently particular allegations of participation, self-dealing, bias, bad faith, or corrupt motive, failure to make a demand will not be excused. *Id.* at 784-85. Plaintiff has not made particular allegations of this nature. The mere fact that plaintiff names members of the Board of Directors as defendants or even makes conclusory allegations of director wrongdoing does not suffice to excuse demand. *Id.; Lewis v. Graves,* 701 F.2d 245 (2d Cir.1983); *In re Kauffman Mutual Fund Actions,* 479 F.2d 257 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). It follows that plaintiff's bare allegation of participation by the individual defendants does not obviate the need for a Rule 23.1 demand on the GM Board.

### 4. The GM Board Having to Sue Itself

[10] Plaintiff has alleged "individual defendants have not brought this action and would not diligently prosecute this action because in effect they would have to bring suit against themselves." (Dkt. 14, ¶ 6). Without an allegation of majority Board participation, one cannot logically conclude that because individual defendants would not sue themselves, the GM Board would not initiate suit against them. The decision to institute suit would be made by the majority of the GM Board, not by the individual*1115 defendants. Moreover, it is well settled that an "allegation that demand upon the directors would be futile because the directors 'would be suing themselves' is not alone sufficient to excuse demand." *Lewis v. Curtis,* 671 F.2d at 785.

### 5. Domination and Control

[11] In arguing in support of excusing demand as futile, plaintiff hints that he relies upon an allegation of domination and control of the GM Board by the individual defendants. (Dkt. 21, at 22). This contention invites easy disposition. First, there is no such allegation in the complaint. Second, even if there were, the complaint lacks any factual allegation in support of domination and control. *See Vernars v. Young,* 539 F.2d 966 (3d Cir.1976). It is concluded on the basis of conventional Rule 23.1 analysis that demand is not excused. The allegations of the complaint, taken singly or in combination, do not demonstrate that demand would be futile.

The above decision rests on federal law because, in the final analysis, the question is whether the complaint complies with a Federal Rule of Civil Procedure, Fed.R.Civ.P. 23.1. This analysis is consistent with the approach of other federal courts,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106                                                                                                                                    Page 11
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

which have largely relied upon federal case law in determining whether the allegations of the complaint are particular enough in their explanation of why demand is excused to satisfy Rule 23.1's requirements. See, e.g., Lewis v. Graves, 701 F.2d at 248-49; Vernars v. Young, 539 F.2d at 968; Walden v. Elrod, 72 F.R.D. 5, 13 (W.D.Okla.1976). However, in Burks v. Lasker, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979), the Supreme Court held that federal courts must ordinarily look to state corporate law, even in cases based entirely on federal law, to determine the powers of corporate directors. Id. at 477-78, 99 S.Ct. at 1836-37. Based on this principle, some federal courts have used state substantive law to analyze whether the reasons offered by plaintiff for excusing demand are adequate. See Lewis v. Curtis, 671 F.2d at 786; Reilly Mortgage Group, Inc. v. Mount Vernon Savings & Loan Ass'n, 568 F.Supp. 1067, 1075 (E.D.Va.1983). Unfortunately, these decisions do not make clear which Rule 23.1 issues are governed by which law. In Lewis v. Curtis, for example, the Court of Appeals for the Third Circuit cited federal authority for the principle that "mere approval of an allegedly injurious corporate transaction, absent self-interest or bias by a majority of the board, is insufficient to excuse demand." 671 F.2d at 785. The Third Circuit appellate court then stated that state law would determine whether board members were sufficiently interested in the challenged transaction to excuse demand. Id. at 785-86.

[12][13] There are several reasons why a federal court might use state law to define the contours of the demand requirement and evaluate whether demand is excused. First, the demand requirement is a rule of substantive right, In re Kauffman Mutual Fund Actions, 479 F.2d at 263; Aronson v. Lewis, 473 A.2d 805, 809 (Del.1984), and federal courts in diversity cases must apply state substantive law. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Second, because the demand requirement is substantive, Rule 23.1, as a procedural rule, cannot establish or modify this requirement, because procedural rules cannot define or alter substantive rights. See 28 U.S.C. § 2072; Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 104 S.Ct. 831, 842-43, 78 L.Ed.2d 645 (1984) (Stevens, J., concurring) ("the rule [23.1] concerns itself solely with the adequacy of the pleadings; it creates no substantive rights"). Third, the demand requirement is based on substantive principles of state corporate law, such as the principle that management of the corporation is left to the Board of Directors. As the Supreme Court indicated in Burks v. Lasker, supra, state substantive law, not federal law, is the appropriate source of corporate law principles, even for lawsuits otherwise governed by federal law. 441 U.S. at 478-80. Finally, the Supreme Court has noted that the source of the demand requirement may be the applicable *1116 substantive law and not Rule 23.1 itself, although the Court found that it need not decide this issue. Daily Income Fund, Inc. v. Fox, 104 S.Ct. at 837 n. 8.[FN9]

> FN9. A complicating factor is that because the demand requirement has both procedural and substantive aspects, questions arising under Rule 23.1 could be governed by both state and federal law. In a diversity case, for example, federal procedural law requires that the reasons for not making a demand be pleaded with particularity, but the source of the demand requirement itself may be state law. Moreover, one could argue that state law should be used to evaluate the adequacy of the reasons given to excuse demand. For example, a state's law might hold that if one-third of the Board of Directors had a financial interest in a transaction, the business judgment rule is inapplicable and a court should not defer to the Board's judgment. In that situation, an allegation that less than a majority of the Board was financially interested should satisfy Rule 23.1, despite contrary federal case law. See Lewis v. Curtis, 671 F.2d at 785.

This choice of law question need not be resolved, however, because Delaware law [FN10] also compels the conclusion that the complaint does not allege facts sufficient to excuse demand. The Delaware Chancery Court has its own Rule 23.1, which is identical, in all aspects pertinent to this case, to Fed.R.Civ.P. 23.1. The Delaware Supreme Court, in Aronson v. Lewis, 473 A.2d 805 (Del.1984), construed Chancery Court Rule 23.1 and established substantive guidelines for when demand is excused as futile. The principles discussed by the Aronson court are either identical to or consistent with the principles drawn from the federal case law cited above. See 473 A.2d at 814-18; see also Pogostin v. Rice, 480 A.2d 619 (Del.1984). Thus, application of the Aronson v. Lewis standard to plaintiff's complaint achieves the same result as the application of federal principles-demand is not excused as futile.[FN11]

> FN10. Although plaintiff's complaint is

604 F.Supp. 1106 Page 12
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
(Cite as: 604 F.Supp. 1106)

based on both state law and federal law, Delaware demand requirement principles would apply to the demand on the federal claim as well because the Delaware demand requirement is not inconsistent with the policies underlying the federal cause of action. *See* pages 1119-1120 *infra* (discussing *Burks v Lasker*).

FN11. In practical terms, it is important that the result of applying Chancery Rule 23.1 is the same as the application of Fed.R.Civ.P. 23.1. It would be disquieting if a derivative plaintiff suing a Delaware corporation could achieve a different answer as to whether demand is excused as futile simply by filing, quite literally, "across the street" in Chancery Court. For this reason, some commentators have expressed the opinion that "the Delaware [*Aronson*] rule on demand should be applied in all forums where a Delaware corporation is sued," not to determine whether demand is required, but to determine what test to apply on a motion to terminate shareholder derivative suits. Block & Prussin, *Termination of Derivative Suits Against Directors on Business Judgment Grounds. From Zapata to Aronson,* 39 Bus.Law. 1503, 1512 (1984). Otherwise, plaintiffs who had not made a demand would be encouraged to "forum shop" to find the court most willing to excuse demand.

Delaware state law appears to supply another reason why demand would not be excused in this case. In one Delaware case, after the plaintiff's complaint was dismissed for failure to make demand, plaintiff appealed the dismissal to the Delaware Supreme Court. Prior to oral argument, plaintiff made a demand, and the Delaware Supreme Court dismissed the appeal as moot for that reason. *Stotland v. GAF Corp.,* 469 A.2d 421 (Del.1983). Defendant GM urges that *Stotland* establishes that a plaintiff who makes a demand concedes that demand is not futile. Because the rule of *Stotland,* while promoting judicial economy, would have the inevitable effect of discouraging demand, I leave to another day in this fast-developing field the question whether the making of a demand by a plaintiff shareholder waives any assertion that demand is excused as futile. Because demand is not excused as futile, attention is turned to defendants' argument that the demand made in this case is inadequate because it omitted all reference to RICO.

### ADEQUACY OF THE DEMAND

All defendants contend plaintiff's January 30 demand letter was inadequate because it omitted any reference to a RICO legal theory or to the facts underlying the predicate mail and wire fraud violations. They further assert they were affirmatively *1117 misled in that the demand letter was couched in terms of breach of fiduciary duty and requested suit be instituted seeking compensatory damages, whereas the complaint is also based on RICO and seeks treble damages, costs and attorneys' fees.

Adequacy of demand must be determined on a case by case basis. Nonetheless, application of certain basic principles, if followed, will invariably result in a demand being deemed adequate.

[14][15][16] Adequacy of demand is tied to its purpose. Demand is required in order to assure compliance with the most fundamental principle of corporate governance-directors are answerable to the shareholders and are charged with the duty and responsibility to manage all aspects of corporate affairs. If misconduct has occurred, the directors must be given the initial opportunity to redress the wrong prior to resort to litigation unless demand is excused for reasons such as self-dealing, self-interest, bad purpose, corrupt motive and the like. *See Daily Income Fund, Inc. v. Fox.* 464 U.S. 523, 104 S.Ct. 831, 837, 78 L.Ed.2d 645 (1984). Upon receipt of a demand, the Board of Directors must investigate and evaluate the charges in order to discharge its duty to the shareholders and manage corporate affairs responsibly. *Cf Smith v. Van Gorkom,* 488 A.2d 858 at 872-873 (Del.1985) (directors must inform themselves before making a decision). The purpose of a demand is to alert the Board of Directors so that it can take such corrective action, if any, as it feels is merited. *Daily Income Fund, Inc. v. Fox,* 104 S.Ct. at 837. A demand is adequate if it satisfies that purpose.

[17] At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages. Decisions as to how and on what theory the corporation will pursue wrongdoers are the proper province of the Board of Directors.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106 Page 13
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
(Cite as: 604 F.Supp. 1106)

[18] Application of these guidelines to the instant demand results in the conclusion that it is more than adequate. The demand identified the alleged wrongdoers-the six former and present members of the Board of Directors; spelled out the perceived wrongful conduct-manufacture and sale of X-cars with a known braking system defect and supplying incomplete, misleading and false information to the government; specified the losses suffered by the corporation-personal injury litigation and a government lawsuit seeking a mandatory recall; and requested relief for the corporation-monetary damages to compensate it for all losses. It is concluded the three page, single-spaced demand letter was sufficiently specific to satisfy Rule 23.1. Having found the demand was adequate, the next question is whether the Board of Directors was afforded sufficient time to respond to the demand before plaintiff filed suit.

**PREMATURE FILING OF SUIT**

Suit was filed on April 17, 1984, slightly more than two and one-half months after the January 30 demand. The issue is whether two and one-half months was sufficient time for the Board of Directors to respond to the demand or, put another way, whether plaintiff was entitled to abandon the demand procedure and assume control of corporate litigation because the Board failed to respond to his demand within that period. If two and one-half months was not sufficient time to respond, the filing of suit was premature.

[19] There can be no precise rule as to how much time a Board must be given to respond to a demand. Indeed, the question in premature filing cases is not how much time is needed to respond to the demand, but whether the time between demand and filing of suit was sufficient to permit the Board of Directors to discharge its duty to consider the demand. Generally, if demand is required, the amount of time needed for a response will vary in direct proportion to the complexity of the technological, quantitative,*1118 and legal issues raised by the demand. Under Delaware law the Board of Directors has a duty to inform itself of all material information essential to an objective and meaningful evaluation of the demand. See *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984); *Abramowitz v. Posner,* 513 F.Supp. 120, 132-33 (S.D.N.Y.1981) (applying Delaware law), aff'd, 672 F.2d 1025 (2d Cir.1982); cf *Hasan v. CleveTrust Realty Investors,* 729 F.2d 372, 378-79 (6th Cir.1984) (applying Massachusetts law). Indeed, if the directors made a hasty judgment without making careful inquiry into the demand, their judgment could be attacked as not satisfying the business judgment rule. See *Smith v. Van Gorkom,* 488 A.2d 858 at 872-873. No. 255-1982, slip op. at 23-26 (Del. Jan. 29, 1985). It follows that the content of the demand is the determining factor in whether the complaint was filed prematurely.

[20] The January 30 demand asserts the braking system of the X-cars was defective. Immediately, the GM Board, which was not necessarily composed of persons knowledgeable about automobiles, much less brake systems, was faced with the necessity of gaining some minimal understanding of the technology of automobile braking systems. The Board also had to determine what and when the six individuals named in the demand knew or should have known about the alleged brake system defect, and whether any of the six named persons were responsible for alleged incomplete and false information being supplied to the government. In addition, the GM Board had to investigate the extent of the damages GM incurred because of the defective braking system. The alleged source of these damages was varied. As a consequence, there had to be an investigation of government litigation efforts to secure a mandatory recall, over fifty personal injury lawsuits, and the other unidentified "numerous accidents" and settlements by General Motors. Given the magnitude and complexity of these issues, two and one-half months was not sufficient time for the GM Board to complete an adequate investigation of the items set forth in the demand letter.

Premature filing of suit after demand has been made in a demand-required case frustrates the policy of Rule 23.1 "that an individual shareholder ordinarily should not usurp the responsibility of corporate management to determine whether and how to pursue a corporate claim." *Weiss v. Temporary Investment Fund, Inc.,* 516 F.Supp. 665, 670 n. 13 (D.Del.1981), aff'd, 692 F.2d 928 (3d Cir.1982), *vacated and remanded on other grounds,* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984). For that reason, premature filing of suit after demand is equivalent to failure to make a demand in a demand-required case. Ordinarily, the remedy for failure to make a demand is dismissal. However, a combination of two circumstances militate against dismissal.

Two months after demand, plaintiff, through his attorney, inquired of special GM Board counsel when

604 F.Supp. 1106       Page 14
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

the investigation would be completed. He was "brushed off" with the response:
It is impossible, at this time, to fix a date for the conclusion of this inquiry; however, you may be assured that the Board is proceeding diligently and in an expeditious manner.

(Dkt. 14, Exh. B-3). Without being supplied with a target date for a response to the demand, plaintiff's counsel could only speculate when, if ever, GM would respond. In fact, it is unknown if GM would have responded as soon as it did, but for the impetus provided when plaintiff filed the complaint.

This "brush off" was accompanied by unavoidable litigation delay. Defendants moved to dismiss the complaint in May, 1984, and briefing on defendants' motion was completed by July 23. GM responded to the demand on October 1, before oral argument was held, and then properly used that response as an additional, alternative ground for dismissal of the complaint. Plaintiff thereafter filed a motion to amend the complaint to reflect the GM demand response. The Court permitted the amendment *1119 over objection so that all issues could be posed for decision.

Given the accomplished fact of refusal of demand, the complaint could only have been dismissed without prejudice to plaintiff's right to file a new complaint based upon wrongful refusal of demand. In effect, that new complaint is now before the Court in the form of plaintiff's second amended complaint. Based on this procedural history, it would be elevating form over substance to dismiss without prejudice the amended complaint on the ground of premature filing of suit, because the amended complaint also alleges wrongful demand refusal.

The refusal to dismiss carries with it a potential for unwanted baggage in future demand-required cases. Derivative plaintiffs could choose to lodge a demand and thereafter prematurely file suit and assert, as here, that notwithstanding the demand, demand is excused. It is unlikely, however, that this danger would develop into long-lasting reality. Such a maneuver could well be blunted if the Board of Directors, after gauging the content of the demand letter, supplied a good faith estimate of a date by which the Board would respond to the shareholder's demand. Moreover, if the premature filing of a derivative suit after demand becomes a problem, Delaware case law has developed to the point that there could evolve a substantive rule that a derivative plaintiff's assertion that demand is excused is mooted once demand is made.[FN12] The establishment of such a rule must await further development in an appropriate case.

> FN12. As was discussed above, see page 1116 supra, the rule of Stotland v. GAF Corp., 469 A.2d 421 (Del.1983), concerning the mooting of appeals when a demand is filed, could logically be developed into a rule of this nature.

In summary, it has been held that: 1) this is not a demand-excused case, 2) the demand was adequate to satisfy the underlying policies and requirements of Rule 23.1, 3) the original complaint was prematurely filed, and 4) given the circumstances, the amended complaint will not be dismissed because of premature filing. There remains the question whether the amended complaint, including the allegation of wrongful rejection of the demand, is legally sufficient to withstand a motion to dismiss.

### DEMAND REFUSED

[21] A threshold question is whether the present motion is one to dismiss or for summary judgment. Plaintiff insists that because defendant General Motors filed, along with its motion to dismiss, the report of its litigation committee to the Board of Directors, the motion is for summary judgment and GM is now subject to the "two-tiered" review and concomitant limited discovery of Zapata Corp. v. Maldonado, 430 A.2d 779, 788 (Del.1981). Defendant GM, relying on the concurring opinion of Judge Becker in Goodwin v. Elkins & Co., 730 F.2d 99 (3d Cir.), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984), takes the position that because the report is referenced in, but not attached to, the amended complaint, the Court may consider it without transforming the motion to dismiss into a motion for summary judgment. It follows, argues GM, that discovery is not permitted and, alternatively, that the Court may determine the motion to dismiss on the face of the complaint without reference to GM's affidavit and attached report. I decline to add a non-authoritative voice to the ongoing debate within the Court of Appeals for the Third Circuit as reflected in Goodwin v. Elkins & Co., supra. Neither side in the debate would dispute that a court has the discretion to refuse to consider materials outside the complaint. See Fed.R.Civ.P. 12(b); 2A Moore's Federal Practice ¶ 12.09, at 2300 (1984). Accordingly, the motion to dismiss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106                                                                                                Page 15
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

will be decided solely on the face of the complaint as amended to reflect wrongful rejection of the demand. The affidavit and attached report will not be considered. Cf. *Waldman v. Carey,* 82 F.R.D. 469 (E.D.Pa.1979).

[22][23] The basis for defendants' motion to dismiss is that the GM Board rejected *1120 the demand and decided that this lawsuit is not in the best interest of the corporation. Because a derivative suit is on behalf of the corporation, and because the Board of Directors' decision as to what is in the corporation's best interest is ordinarily respected, the GM Board's rejection of the demand means that this lawsuit should be terminated unless plaintiff can show why the Board's decision was wrongful or why the requirements of the business judgment rule have not been met. Cf. *Smith v. Van Gorkom, supra.* As an initial matter, however, the Court must decide what law governs defendants' motion. *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979), teaches that in derivative litigation a federal court must determine whether and under what circumstances state law permits the Board of Directors to terminate a derivative suit. If termination is permitted and plaintiff alleges a violation of federal law, the court must then determine "whether such a state rule [is] consistent with the policy" of the federal statute alleged to have been violated. *Burks v. Lasker,* 441 U.S. at 480, 99 S.Ct. at 1838; *Lewis v. Curtis,* 671 F.2d at 785 n. 1. The two count complaint alleges a violation of RICO and a pendent state law claim.[FN13] Assuming without deciding that a derivative cause of action exists under RICO,[FN14] plaintiff has not pointed out nor has the Court been able to discover anything in the RICO statute or its legislative history indicating that the policy underlying RICO is inconsistent with director termination of derivative litigation. Accordingly, Delaware state law controls whether the amended complaint sufficiently alleges that the GM Board wrongfully rejected plaintiff's demand.

> FN13. Plaintiff's state law claim can be fairly summarized as alleging individual defendants committed actions, omissions and breaches of duty set forth in the following paragraph 40 of the amended complaint:
> 40.  Said actions and omissions by individual defendants in ordering, approving or ratifying the production and sale of the X-Cars with their defective condition uncorrected, in ordering, approving or ratifying GM's failure to provide the requisite information about said defective condition to purchasers, owners, dealers and NHTSA, and in ordering, approving or ratifying GM's failure to remedy that defective condition as required by law, were negligent, reckless, willful, wanton, outrageous, in gross and flagrant disregard for the safety and well-being of the public and GM, and in breach of the fiduciary obligations which individual defendants owed to GM as its directors.
> (Dkt. 40, ¶ 40).

> FN14. The question of whether a cause of action exists is not jurisdictional and therefore may be assumed. *Burks v. Lasker,* 441 U.S. at 476 n. 5, 99 S.Ct. at 1836 n. 5.

Plaintiff argues vigorously that in deciding the validity of the rejection of the demand, the procedure of *Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del.1981), controls. *Zapata* holds that after allowing plaintiff limited discovery, the court must conduct a two-tier inquiry. First, "the Court should inquire into the independence and good faith of the [Board of Directors] and the bases supporting its conclusions." Second, "[t]he Court should determine, applying its own independent business judgment, whether the motion [requesting termination of the derivative suit] should be granted." 430 A.2d at 788, 789 (footnote omitted).

The difficulty with plaintiff's position is that the Delaware Supreme Court has made clear *Zapata's* two-step analysis applies only in a demand-excused context, and not to a demand-required case.[FN15] Since *Zapata,* *1121 the court has expressly recognized and continued in place "the *Zapata* demand-excused/demand-refused bifurcation." *Aronson v. Lewis,* 473 A.2d at 813-14. Moreover, the court has reiterated its view that the business judgment rule applies "where demand on a board has been made and refused." *Id.* at 813. "Unless the business judgment rule does not protect the refusal to sue, the shareholder lacks the legal managerial power to continue the derivative action, since that power is terminated by the refusal." *Id.*

> FN15. The Delaware Supreme Court unequivocally stated that a different standard applies when demand is made and refused:
> Consistent with the purpose of requiring a

604 F.Supp. 1106 Page 16
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
(Cite as: 604 F.Supp. 1106)

demand, a board decision to cause a derivative suit to be dismissed as detrimental to the company, after demand has been made and refused, will be respected unless it was wrongful.[10]

A demand, when required and refused (if not wrongful), terminates a stockholder's legal ability to initiate a derivative action.

[A] board has the power to choose not to pursue litigation when demand is made upon it, so long as the decision is not wrongful. If the board determines that a suit would be detrimental to the company, the board's determination prevails.

[10] In other words, when stockholders, after making demand and having their suit rejected, attack the board's decision as improper, the board's decision falls under the "business judgment" rule and will be respected if the requirements of the rule are met.

Zapata, 430 A.2d at 784-85 (footnote omitted); see also id. at 787; Block & Prussin, *Termination of Derivative Suits Against Directors on Business Judgment Grounds, From Zapata to Aronson,* 39 Bus.Law. 1503, 1505 & n. 12 (1984).

[24] Under Delaware law, the business judgment doctrine carries with it "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Id. at 812. The business judgment rule operates only in the context of director action, including a conscious decision not to act. Moreover, the rule does not apply if the degree of "interestedness" of the Board of Directors in whatever is at issue is too high, if it lacked independence, if it fails to exercise informed business judgment, or if it takes action contrary to the corporation's best interest. See id. at 812, 818; Smith v Van Gorkom, supra. at 872-873.

The business judgment rule controls both whether demand is excused in a demand-excused case and the propriety of rejection of a demand in a demand-required case. In the demand-excused context, the corporation's motion to terminate derivative litigation may be granted, but only if its decision satisfies the heightened judicial scrutiny required by the Zapata two-step test. The reason for differing levels of deference to the business judgment of the Board of Directors is plain. "Demand-excused" is but a shorthand phrase for describing a situation where the allegations, taken as true, give rise to a reasonable doubt that "1) the directors are disinterested and independent and 2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis,* 473 A.2d at 814. Conversely, in a demand-required context, a heightened level of judicial scrutiny is not appropriate since, by definition, plaintiff either does not contest the need for demand or, as here, it has been found that demand is not futile.

The task of the Court is to determine whether the Board of Director's actual exercise of business judgment-its rejection of the demand-was wrongful. Since by definition it has already been ascertained the Board of Directors is not tainted,[FN16] the Court in making its determination does not purport to substitute its business judgment for that of the Board. On a motion to dismiss because of rejection of the demand, the Court simply assesses the allegations of the complaint to determine if plaintiff alleges legally sufficient reasons to call into question the validity of the Board of Directors' exercise of business judgment. Accordingly, the allegations of paragraphs 6,[FN17] 6a and 6b, which challenge the Board's rejection of the demand, will be analyzed by applying these principles.

FN16. *Abbey v. Computer & Communications Technology Corp.,* 457 A.2d 368 (Del.Ch.1983), does not controvert this point. *Abbey* held that by referring a shareholder demand to a Special Litigation Committee and delegating to it the power to determine the corporation's litigation posture, the corporate Board of Directors concedes being disabled from exercising business judgment. *Abbey* is not controlling because plaintiff has not alleged that the GM Board delegated the power to assume its litigation posture, and, in fact, the allegations, fairly read, would indicate the GM Board did not delegate this power.

FN17. See note 7 *supra.*

The reasons supporting the conclusion that paragraph 6 of the amended complaint is legally insufficient to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106                                                                                                          Page 17
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

excuse demand *1122 have already been discussed.[FN18] *A fortiori* those same reasons are insufficient to warrant overturning the GM Board's rejection of the demand. See *Lewis v. Curtis,* 671 F.2d at 786; *Aronson v. Lewis,* 473 A.2d 805 (Del.1984). It follows that the adequacy of the complaint ultimately turns on whether paragraphs 6a and b, the paragraphs added by amendment that reflect rejection of demand, are legally sufficient. Paragraphs 6a and 6b provide:

FN18. *See* pages 1113-1115 *supra*

Paragraph 6a: Alternatively, if plaintiff was required to make a demand on the Board of Directors of General Motors and await its response thereto before instituting this litigation, the October 1, 1984 rejection of plaintiff's demand by the Board was wrongful.

Paragraph 6b: The October 1, 1984 resolution of the Board of Directors of General Motors adopting the recommendation that this suit be dismissed contained in the "Report to the Board of Directors of General Motors Corporation By the Committee Established By A Resolution of the Board on March 5, 1984" was wrongful. The Committee which drafted the foregoing Report and made the recommendation of dismissal was not independent, did not act in good faith and did not have reasonable bases for its conclusions. In addition, the Board's adoption of the Committee's recommendation was not in the best interests of General Motors.

(Dkt. 27).

[25][26] In a demand-required case, the burden is upon a plaintiff challenging a Board of Directors decision to allege and prove facts rebutting the longstanding presumption under Delaware law of the validity of an exercise of business judgment. *Aronson,* 473 A.2d at 812; see *Kaplan v. Centex Corp.,* 284 A.2d 119, 124 (Del.Ch.1971); *Robinson v. Pittsburgh Oil Refinery Corp.,* 14 Del.Ch. 193, 126 A. 46 (1924). Specifically, plaintiff must allege with particularity that the Board either was tainted by self-interest, acted in bad faith or fraudulently, or, in certain contexts, through gross negligence failed to reach an informed decision. See *Smith v. Van Gorkom, supra,* at 873; *Abramowitz v. Posner,* 672 F.2d 1025, 1033 (2d Cir.1982) (applying Delaware law). Federal law similarly requires that plaintiff allege and prove that the directors of the corporation are personally involved or interested in the alleged wrongdoing in a way calculated to impair their exercise of business judgment on behalf of the corporation, or that their refusal to sue reflects bad faith or breach of trust in some other way.

*Ash v. International Business Machines, Inc.,* 353 F.2d 491, 493 (3d Cir.1965), *cert. denied.* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966).

[27] Plaintiff's paragraphs 6a and 6b of the amended complaint contain nothing more than bare conclusory allegations that the GM Board acted wrongfully in adopting the recommendation of the committee and rejecting the demand. The allegation that the Board's rejection of the demand is "not in the best interests of General Motors" is insufficient, because a court is not free to substitute its judgment as to what is in the best interests of a corporation, at least without some allegation of self-dealing, bad faith or fraud. See *Abramowitz v. Posner,* 513 F.Supp. at 129.

While plaintiff attacks the Board's decision, he does not allege that the Board did not take the time or make the effort to inform itself. *Cf. Smith v. Van Gorkom, supra.* Moreover, plaintiff's assertions that the committee making the recommendation "was not independent, did not act in good faith and did not have reasonable bases for its conclusions" are also defective in that they are conclusory. More than mere intonation of black letter law for invalidating a board's exercise of business judgment must be contained in the amended complaint to avoid dismissal. Plaintiff must allege facts in support of these legal conclusions. This plaintiff has failed to do. It is concluded that the complaint, even as *1123 amended to allege wrongful rejection of demand, is legally insufficient and must therefore be dismissed.

## CONCLUSION

It has been held that this is a demand-required case, that plaintiff's demand was adequate and that the complaint was prematurely filed. Rather than impose the usual sanction of dismissal, the Court went on to examine whether the complaint as amended sufficiently alleges wrongful rejection of demand in order to withstand a motion to dismiss. It has been concluded the allegations in the amended complaint are woefully deficient. Given the litigation history, an order will be entered dismissing the plaintiff's shareholder derivative complaint with prejudice.

D.C.Del.,1985.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

604 F.Supp. 1106 Page 18
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272
**(Cite as: 604 F.Supp. 1106)**

Allison on Behalf of General Motors Corp. v. General Motors Corp.
604 F.Supp. 1106, 2 Fed.R.Serv.3d 272

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.