# EXHIBIT 10

138 F.2d 612  
138 F.2d 612  
(Cite as: 138 F.2d 612)  
c

Page 1

Circuit Court of Appeals, Eighth Circuit.
ELLIS
v.
UNITED STATES (two cases).
Nos. 12467, 12468.

Nov. 4, 1943.

West Headnotes

[1] Prostitution ⇐ 19(1)
315Hk19(1) Most Cited Cases
 (Formerly 316k1)
Under statute forbidding transportation in interstate commerce of girl for immoral purposes, the gist of the offense is not ultimate immoral design but act of knowingly transporting or causing or aiding or assisting in transportation in interstate commerce of girl for such immoral design. 18 U.S.C.A. § 2421.

[2] Conspiracy ⇐ 28(3)
91k28(3) Most Cited Cases
 (Formerly 91k28)

[2] Prostitution ⇐ 19(2)
315Hk19(2) Most Cited Cases
 (Formerly 316k1)
Conduct of defendant, charged with having transported in interstate commerce girl for immoral purposes and with having conspired to commit such offense, is beyond federal punishment, in absence of essential factor of interstate transportation in furtherance of immoral purposes. 18 U.S.C.A. §§ 371, 2421.

[3] Conspiracy ⇐ 45
91k45 Most Cited Cases

[3] Prostitution ⇐ 27
315Hk27 Most Cited Cases
 (Formerly 316k4)
In prosecution for transporting in interstate commerce girls for immoral purposes and for conspiring to commit such offense, evidence disclosing defendants' relations with such girls and other girls, even though they were intrastate transactions, was properly received on element of intent. 18 U.S.C.A. §§ 371, 2421.

[4] Witnesses ⇐ 380(5.1)

410k380(5.1) Most Cited Cases
 (Formerly 410k380(5))

[4] Witnesses ⇐ 387
410k387 Most Cited Cases

[4] Witnesses ⇐ 388(4)
410k388(4) Most Cited Cases
A party who, in good faith, has called a witness in his behalf and is surprised by adverse testimony of witness may, in court's discretion, be allowed to draw from witness in manner of cross-examination, or after due preliminary inquiry to show by others, that witness has previously made statements materially at variance with testimony.

[5] Witnesses ⇐ 379(1)
410k379(1) Most Cited Cases

[5] Witnesses ⇐ 397
410k397 Most Cited Cases
Where witness had made incriminating statements to district attorney and investigators and had repeated them under oath before grand jury but when called as witness in prosecution gave exculpatory testimony, evidence of the previous extrajudicial incriminating statements was admissible, but the previous statements could not be considered as evidence of the alleged facts recited in them.

[6] Criminal Law ⇐ 417(14)
110k417(14) Most Cited Cases
 (Formerly 410k397)
Previous inconsistent extrajudicial statement of witness cannot be considered as substantive evidence of alleged facts recited in statement, regardless of whether its making is admitted by witness or proved by other witnesses after competent foundation for impeachment.

[7] Criminal Law ⇐ 1036.3
110k1036.3 Most Cited Cases
 (Formerly 110k1036(3))
Question whether witness' acknowledged extrajudicial statements could be considered as substantive evidence of alleged facts recited therein was presented by defendants' motions for an instructed verdict.

[8] Criminal Law ⇐ 419(1.5)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612
(Cite as: 138 F.2d 612)

Page 2

110k419(1.5) Most Cited Cases
(Formerly 110k419(1))

[8] Criminal Law 419(11)
110k419(11) Most Cited Cases
In prosecution for transporting in interstate commerce girls for immoral purposes, testimony that during investigation of case the girls, an investigator, an assistant state prosecutor and father of one of girls located and identified cabin in which the girls stated that they and defendants had once tarried illicitly was hearsay and incompetent. 18 U.S.C.A. § 371; 18 U.S.C.A. § 2421.

[9] Prostitution 28
315Hk28 Most Cited Cases
(Formerly 316k4)
Evidence was insufficient to sustain conviction for transporting in interstate commerce girls for immoral purposes. 18 U.S.C.A. § 2421.

[10] Conspiracy 47(3.1)
91k47(3.1) Most Cited Cases
(Formerly 91k47(3), 91k47)
Evidence was insufficient to sustain conviction for conspiracy to transport in interstate commerce girls for immoral purposes. 18 U.S.C.A. §§ 371, 2421.

[11] Conspiracy 47(2)
91k47(2) Most Cited Cases
A conspiracy to commit an offense may be established by circumstantial evidence. 18 U.S.C.A. § 371.

Appeal from the District Court of the United States for the Eastern District of Missouri; George H. Moore, Judge.

Clarence Ellis, alias Slim Ellis, and Cleatus Boone Ellis, alias Cleatis Ellis, alias Cletis Ellis, were convicted of transporting in interstate commerce girls for an immoral purpose and of conspiring to commit such offense, and they separately appeal.

Reversed and remanded, with directions.

*613 R. R. Baynes, of New Madrid, Mo., for appellant Clarence Ellis.

Claudio Delitala, of St. Louis, Mo. (Stewart D. Flanagan, of St. Louis, Mo., on the brief), for appellant Cleatus Boone Ellis.

Harry C. Blanton, U.S. Atty., of Sikeston, Mo. (S. Russell Vandivort, Asst. U.S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and RIDDICK, Circuit Judges, and DELEHANT, District Judge.

DELEHANT, District Judge.

The appellants were jointly indicted and tried in the District Court of the United States for the Eastern District of Missouri under an indictment in twenty-six counts, of which the first twenty-five charge the appellants jointly with the violation of 18 U.S.C.A. § 398. Reduced to their basic elements they involve three alleged incidents. Counts I to V inclusive charge both appellants with the transportation of a girl who, for the sake of convenience and restraint will be referred to as 'A', on an unidentified day in July, 1941 from a resort known as the 'Villa' near McClure, Illinois to Cape Girardeau County, Missouri, for the immoral purposes set out in the cited act. These five counts aver a single alleged transaction in a variety of forms, manifestly to support and meet conceivable testimony. Counts VI to X inclusive deal with the same incident, but charge the transportation of another girl who will be identified as 'B'. Counts XI to XV inclusive charge both appellants in various forms with the like illicit transportation of 'A' on an unidentified date in August or September, 1941 from New Madrid County, Missouri, to Reelfoot Lake, Tennessee. Counts XVI to XX inclusive similarly charge like and contemporaneous transportation of 'B'. Counts XXI to XXV inclusive charge the appellants jointly with similar transportation of 'A' only, on an unspecified day in November 1941, from New Madrid County, Missouri, to Reelfoot Lake, Tennessee. Thus, in the first two of the alleged journeys the transportation of both girls in involved and in the last it is asserted only that 'A' was transported. Count XXVI charges under 18 U.S.C.A. 88, a continuing conspiracy between the appellants to violate 18 U.S.C.A. 398 in the manner set out in the first twenty counts; and, besides the incidents involved in the substantive counts, avers several other overt acts in furtherance of the alleged conspiracy. Both appellants were found guilty upon each of the twenty-six counts of the indictment; and, thereupon, the trial court imposed on each appellant a sentence to imprisonment for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612  
(Cite as: 138 F.2d 612, *613)

Page 3

five years upon each of the first twenty-five counts, to be served concurrently; and upon the twenty-sixth count to imprisonment for a further and nonconcurrent term of two years, and to the payment of a fine of five thousand dollars.

The two appellants prosecute separate appeals in these cases. Both have filed briefs; and oral argument was presented in behalf of the appellant in No. 12468, but not for the appellant in No. 12467.

At the close of the government's testimony upon the trial in the District Court each appellant separately moved for an instructed verdict of acquittal. These motions were denied and overruled; upon which the appellants severally rested without the introduction of any testimony in their behalf; and after oral argument, the case was submitted to the jury under the court's charge, to which no exception was taken.

[1][2] The question primarily before us in each appeal is whether there was sufficient competent evidence before the trial court to sustain a verdict of guilty (a) upon one or more of the first twenty-five counts, the sentences thereunder having been prescribed for concurrent service; and (b) upon the twenty-sixth count. This question involves certain issues touching the reception of testimony, and especially an examination of the evidence, which must be made with full understanding that the gist of the offense defined by 18 U.S.C.A. § 398 is not the ultimate immoral design charged against the defendant, which, in its conception and achievement, is actually his major transgression, but rather the narrow act of the knowing transportation or causing, or aiding or assisting in the transportation in interstate commerce of any woman or girl with such immoral design. Hoke v. United States, 227 U.S. 308, 320, 33 S.Ct. 281, 57 L.Ed. 523, 23 L.R.A.,N.S., 906, Ann. Cas. 1913E, 905; Athanasaw v. United States, 227 U.S. 326, 332, 33 S.Ct. 285, 57 L.Ed. 528, Ann. Cas. 1913E, 911; Wilson v. United States, 232 U.S. 563, 571, 34 S.Ct. 347, 58 L.Ed. 728; Roark v. United States, 8 Cir., 17 F.2d 570, 573; Drossos v. United States, 8 Cir., 16 F.2d 833, 834; Tedesco v. United States, *614 9 Cir., 118 F.2d 737, 741. So, however immoral may be a defendant's conduct, it is beyond federal punishment in the absence of the essential factor of interstate transportation in furtherance of such conduct.

[3] Without unnecessary particularization, it may be noted that the evidence shows, on the part of both appellants over a substantial period of time, including the months mentioned in the indictment, a history of brazenly lascivious conduct, chiefly, though not entirely, with the two girls mentioned in the indictment. The appellants are cousins of each other, married men more than thirty years of age, each of whom has and at all material times had a child. During the period involved each was separately engaged in the operation in or near a separate town on highway 61 in southeastern Missouri of a roadside service station cabin camp and restaurant facilities and each owned and operated a new automobile. One of the girls named in the indictment was fifteen years old the other sixteen. Both were high school students. Much of the testimony in the case is devoted to the disclosure of appointed meetings and automobile rides, furtive loitering in lanes and unfrequented places, the occupancy of cabins in roadside camps for betraying intervals and at telltale hours, and to the direct narration of illicit relations between the appellant, Clarence Ellis, and the girl 'A' on the one hand, and the appellant, Cleatus Ellis, and the girl 'B' on the other hand. One of the appellants is shown twice during the period under inquiry to have accomplished the sexual violation of other teenage girls, once through intimidation of one victim with a pistol held at her side, the other time through the cooperative physical restraint of another victim by one of the female employees at his place of business. The two girls identified in the indictment seem to have cooperated readily with their respective partners in their sordid relations, and to have been the recipients of sporadic gifts of clothing and money from the respective men, though there is no indication that their favors were procured on a stable commercial basis.

But apart from a suspicious visit by the appellant, Cleatus Ellis, to 'B' in the state of Michigan involving no violation of a federal statute, the foregoing incidents were strictly intrastate transactions occurring entirely within a narrowly circumscribed area in Southeastern Missouri. Upon this account, evidence touching them was objected to as irrelevant to the charges made in the indictment; and error is assigned because of its reception. The evidence was properly received upon the element of intent, as a reflection of the lustful impulse which prompted each of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612  
(Cite as: 138 F.2d 612, *614)

Page 4

appellants during the precise interval of time involved to associate with the one of the girls who was quite regularly in his company. Tinsley v. United States, 8 Cir., 43 F.2d 890, 893; Neff v. United States, 8 Cir., 105 F.2d 688, 692; Cohen v. United States, 5 Cir., 120 F.2d 139; Baish v. United States, 10 Cir., 90 F.2d 988.

Touching the alleged interstate transportation between the states of Illinois and Missouri, and apart from the testimony of the girl 'B' which requires separate consideration, there was actually no testimony at all. One Richardson, as a witness for the government, did testify that once in the month of December 1941, he and Clarence Ellis and the girls, 'A' and 'B' drove from Marston, Missouri, to 'The Villa', near McClure, Illinois, and thence back to Marston; that the journey took place between 8:30 p.m. and 1 a.m.; that the men while at 'The Villa' gambled with dice and the girls played a mechanical musical device and possibly danced; and that the trip involved no other incident. In this testimony he was corroborated by the girl 'B'. But that journey was months after the alleged trip involved in the first ten counts of the indictment; was made without the participation of the appellant, Cleatus Ellis; and is clearly not proof of any specific act of interstate traffic charged in the indictment.

There was somewhat more evidence of travel by some of the designated parties from New Madrid County, Missouri, to Reelfoot Lake, Tennessee. A woman and her son gave testimony indicating that on the afternoon of the Saturday before Thanksgiving day in 1941 the woman saw Clarence Ellis and the girl 'A' in the former's automobile, approaching the Missouri side of a ferry across the Mississippi river at Point Pleasant, Missouri, and the boy saw them later proceeding off the ferry at its Tennessee terminus. But there the testimony respecting the journey ended. Reelfoot Lake is some eight or ten miles distant from the Tennessee end of the ferry and there is no testimony respecting the rest of the trip of the two persons *615 in the automobile or indicating either its destination or its purpose. An eighteen year old girl, a waitress at a resort restaurant on Reelfoot Lake, testified that on one occasion the girl 'A' inquired of the witness respecting the rental charge for the occupancy of a cabin at the resort for an hour and a half, but on being informed that the rate was the same as the charge for a full day, did not lease the cabin. But that inquiry must stand alone and unconnected with the foregoing journey over the ferry, for it happened 'during the latter part of August or the first part of September 1941'; and, standing alone, it is quite uninstructive, first because the inquiry was abortive; secondly, because the girl who made the inquiry was not shown to have been accompanied by any other person. The same witness also testified that at some date after he had been indicted (evidently under a former indictment in which he was indicted individually and not jointly with Cleatus Ellis) Clarence Ellis came to Reelfoot Lake and asked her whether she had ever seen him at Reelfoot Lake, to which she replied truthfully in the negative; and asked her also whether she had seen there the girl 'A' of whom he exhibited to the witness several pictures, to which she gave an affirmative answer. But by that time Clarence Ellis was under specific indictment and under the necessity of preparing his defense. So, the inquiry, which involved no effort to suppress or color testimony, was as consistent with innocence as with guilt.

Two fishing guides at Reelfoot Lake testified to seeing the two girls 'A' and 'B' together near a fishing dock on the lake's shore at least once and possibly more than once in August and September, 1941, but that they were not accompanied on any such occasion by the appellants or either of them, or by any one else.

One Carl Tims testified that about eight or ten months before the trial, and hence probably after the appellant, Clarence Ellis, had been separately indicted for the unlawful transportation of the girl 'A' and Cleatus Ellis and likewise been indicted for transportation of 'B' but before their present joint indictment in this case, Clarence Ellis, not in the hearing of Cleatus Ellis, in a conversation with Tims, stated that, he Clarence Ellis, and Cleatus Ellis and the two girls named in the indictment 'went over to Tennessee and had a fish supper once'. Save upon the hypothesis of a conspiratorial design (vide infra) such a statement could not be regarded as evidence against Cleatus Ellis. And even as against its maker it admits nothing in the way of a purpose of prostitution or debauchery or other immoral practice, against transportation in furtherance of which only, the act is aimed.

The girl 'A' was not produced as a witness,



138 F.2d 612  
(Cite as: 138 F.2d 612, *615)

Page 5

although she was present in court during the trial and was called upon to stand in the presence of witnesses for identification. The girl 'B' was called as a witness and after preliminary inquiry, was asked a few questions touching her relations with Cleatus Ellis, to which she gave exculpatory answers. Thereupon, the district attorney, over objection seasonably and separately made in behalf of the defendants and overruled by the trial judge, proceeded in the fashion of a cross-examination, and having first confronted the witness with the foreman of the grand jury by which the indictment had been returned, and with others in whose presence she had assertedly make oral, and in some instances written, statements respecting the case, elicited from her the fact that she had made statements to the district attorney and certain investigators, and had testified before the grand jury in a manner directly contrary to her testimony theretofore given on the trial. The admission was thus drawn from her that both in her extrajudicial statements and in her testimony before the grand jury, she had told of alleged incidents upon which the substantive counts of the indictment, or at least, counts I to XX, both inclusive, are predicated. However, in admitting the making of the earlier statements she added with respect to each item thereof that it was false.

The appellants predicate error upon the reception of 'B's' testimony by way of cross-examination. On the other hand the government insists that her admission of her making of earlier statements damaging to the appellants is not only competent and receivable, but may be considered as substantive evidence of the alleged facts recited in the former statements. Neither position is entirely correct.

[4] It is now generally recognized both in civil and in criminal cases, that a party who, in good faith, has called a witness in his behalf and is surprised by his adverse testimony, may, in the court's discretion, be allowed to draw from the witness in the *616 manner of a cross-examination, or after due preliminary inquiry to show by others, that the witness has previously made statements materially at variance with his testimony. Thereby the party producing the recalcitrant witness is allowed to explain his own plight, and to nullify or neutralize the unanticipated repudiation of his position. This court has long sanctioned the practice. Winchester & Partridge Mfg. Co. v. Creary, 116 U.S. 161, 166, 6 S.Ct. 369, 29 L.Ed. 591; Hickory v. United States, 151 U.S. 303, 309, 14 S.Ct. 334, 38 L.Ed. 170; St. Clair v. United States, 154 U.S. 134, 150, 151, 14 S.Ct. 1002, 38 L.Ed. 936; Southern R. Co. v. Gray, 241 U.S. 333, 337, 36 S.Ct. 558, 60 L.Ed. 1030; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 235, 60 S.Ct. 811, 84 L.Ed. 1129; Swift & Co. v. Short, 8 Cir., 92 F. 567; Rosenthal v. United States, 8 Cir., 248 F. 684, 686; Randazzo v. United States, 8 Cir., 300 F. 794, 797, 798; Levy v. United States, 8 Cir., 35 F.2d 483, 484, 485; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 332, 333, 334; Wiget v. Becker, 8 Cir., 84 F.2d 706, 710; Chicago, St. P., M. & O.R. Co. v. Kulp, 8 Cir., 102 F.2d 352, 357, 358, 133 A.L.R. 1445; F.W. Martin & Co. v. Cobb, 8 Cir., 110 F.2d 159, 165, 166; Chicago, St. P., M. & O. Ry. Co. v. Muldowney, 8 Cir., 130 F.2d 971, 975. No purpose could be served by the citation of authority from other circuits to the same effect, in respect of which there appears to be no variety of federal judicial opinion.

[5] We consider that the requisite element of surprise may be found in this instance. That the witness had made the incriminating statements to the district attorney and state and federal investigators and had repeated them under oath before the grand jury cannot be questioned, and was admitted by her. Undoubtedly, the indictment was founded almost entirely upon her testimony before the grand jury. It does appear that her evidence before the grand jury was reluctantly given and was encouraged by rather broad intimations to the girl from the district attorney of the penalties for perjury. That the district attorney, in preparation for the final trial was not without apprehension of the girl's instability, may be inferred from the presence in court when she testified, of the grand jury foreman and others who presumably had heard her earlier statements. It might be contended with some cogency that the district attorney was disappointed rather than surprised in the strictest sense of the latter term. But we consider that the situation with which the trial judge was confronted amply supported his inference of surprise in the sense in which it must be understood here. We have hitherto asserted advisedly that 'the claim of surprise has become largely a gesture which adds little or nothing to the trial court's discretion', London, Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 334. More recently, in the consideration of a situation indistinguishable from the one before

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612
(Cite as: 138 F.2d 612, *616)

Page 6

us, the Circuit Court of Appeals for the Second Circuit affirmed the existence of the required degree of surprise because it could 'see no reason why the district attorney should not have been privileged to believe that when the witness was actually required to testify under oath he would again tell what the attorney believed to be the truth as he had testified before notwithstanding his attempt to dissuade the attorney from calling him again.' United States v. Graham, 2 Cir., 102 F.2d 436, 442. Fortifying that available supposition, the district attorney approaching trial in the instant case might well have recalled that, theretofore, when confronted with the solemnity of an oath, and in apprehension of the sanctions of perjury, the witness, however unwillingly had given testimony consistently damaging to the appellants. Besides, in this court, Cleatus Ellis concedes, and Clarence Ellis does not formally deny, the actuality of surprise.

It does not follow, however, that the admission by the witness, 'B' that she had formerly made, both orally and in writing, both informally and under oath, statements inconsistent with her testimony before the trial court may be received as substantive evidence of the facts indicative of the appellants' guilt asserted in the earlier statements. And we reject the contention of the appellee that it should be so received. Quite significantly, the appellee asserts not that the prevailing law sustains its position, but rather that it is supported by 'the better ruled cases'. Of the cases thus characterized many rest quite heavily upon the authority of Wigmore on Evidence (3d Ed.), Vol. III, page 687, section 1018b. But the distinguished author does no there assert that the position now maintained by the appellee is the law. He only argues that it ought to be. And after making that argument, he adds persuasively, though perhaps querulously: 'The contrary view, however, *617 is the orthodox one. It is universally maintained by the courts that prior self-contradictions are not to be treated as having any substantive or independent testimonial value. But this theoretical and artificial nicety is overworked by some courts * * * the opinions are full of directions to trial courts to use their mental force to ignore in such self-contradicting assertions that testimonial value which the jurors' natural reasoning persists in seeing there.' Nor is Professor Wigmore fortunate in his quest of opinions in support of his acknowledged heterodoxy. He suggests, two, United States v. Corsi, 2 Cir., 65 F.2d 564 and Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400, 410, 411. The Corsi case is unconvincing for the Circuit Court of Appeals was then reviewing the action of an administrative board not bound by the common law rules of evidence, and premised its decision upon that factor. The Pulitzer case is ineffective for several reasons. In the first place, its reasoning betrays a patent confusion touching the distinction between a party and a disinterested witness in the matter of previous extrajudicial statements. Secondly, the statements there chiefly scrutinized were made in a previous trial of the same case. And finally, in a more recent case within its criminal jurisdiction, the Supreme Court of Missouri has explicitly rejected the position contended for by Wigmore, and now offered by the appellee. State v. Davenport, 342 Mo. 996, 119 S.W.2d 291. See, also, State v. Warren, 326 Mo. 843, 33 S.W.2d 125; State v. Swain, 68 Mo. 605.

In support of its position the appellee offers as authority the Pulitzer case from Missouri and opinions in sundry cases in the state courts of Louisiana, Delaware, Alabama, Arizona and Minnesota. These authorities have been examined carefully and have been considered generally not to be directly in point. But more significantly, the courts of last resort of all of the states mentioned, in pertinent criminal cases, hold squarely against the appellee's position. The proper compass of an opinion forbids the interesting analysis of the appellee's citations and their comparison in detail with the convincing rejection by the final authority in each state of the government's present point. We shall merely cite the cases, all criminal actions and most of them subsequent to the cases cited by the appellee, from the corresponding states. Missouri has already been considered. For Louisiana, see State v. Bodoin, 153 La. 641, 96 So. 501, 502; for Delaware, State v. Hopkins, 6 W.W.Harr. 194, 172 A. 841 (see, also, as a late civil case in its final court, In re Kemp's Will, 7 W.W.Harr. 514, 186 A. 890, 891); for Alabama, Manning v. State, 217 Ala. 357, 116 So. 360, 361; for Arizona, Indian Fred v. State, 36 Ariz. 48, 282 P. 930; and for Minnesota, State v. Saporen, 205 Minn. 358, 285 N.W. 898.

The contention that persuasive support for the availability as substantive testimony of the contents of admitted previous extra-judicial statements may be found in the decisions of state courts, therefore,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612  
(Cite as: 138 F.2d 612, *617)

Page 7

fails upon an analysis of the authorities on which the government relies. It is dissipated altogether when the decisions of state courts generally throughout the country are explored. And, with the reservation of specific cases contra hereafter mentioned, no different attitude is to be found in federal court opinions. Specific citations in support of this assertion will not be made; but the cases are noted in the American Digest system. Century Edition, Title Witnesses, Section 1266; Key Number Edition, Title Witnesses, Section 397. A modern comprehensive and abundantly annotated discussion of the question will be found in A.L.R., volume 133, pages 1454 et seq. See, also, Ann. Cas. 1914B, page 1134 Note.

The Supreme Court of the United States has rejected material of this character as substantive evidence. See Winchester & Partridge Mfg. Co. United States, 151 U.S. 303, 305, 309, 14 S.Ct. 334, 38 L.Ed. 170; St. Clair v. United States, 154 U.S. 134, 150, 14 S.Ct. 1002, 38 L.Ed. 936; Southern R. Co. v. Gray, 241 U.S. 333, 337, 36 S.Ct. 558, 60 L.Ed. 1030; and United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 235, 60 S.Ct. 811, 84 L.Ed. 1129. In Southern R. Co. v. Gray, supra (241 U.S. 333, 36 S.Ct. 560, 60 L.Ed. 1030) a civil case, that court said: 'In an effort to discredit the passenger engineer, only witness to some circumstances, he was asked on cross-examination concerning prior contradictory statements; but the exclusion of all or any part of his evidence would not change the result. Of course, the contradictory statements can have no legal tendency to establish the truth of their subject-matter.' And in United States v. Socony-Vacuum Oil Co., supra (310 U.S. 150, 60 S.Ct. 849, 84 L.Ed. 1129), a criminal case, this language is used: *618 'Likewise there would be error where under the pretext of refreshing a witness' recollection, the prior testimony was introduced as evidence.'

But the appellee insists that upon the authority of London Guarantee & Accident Co. v. Woelfle, supra, and Chicago, St. P.M. & O. Ry. Co. v. Kulp, supra, decided by this court, we should hold in this criminal proceeding that the girl 'B's' acknowledgment of her previous statements should be considered as substantive evidence of the facts asserted in those statements. The cited cases do not require us to proceed to that extremity, and the court's reported opinions lead generally to the contrary position.

The decision by this court of London Guarantee & Accident Co. v. Woelfle, supra, was a reversal of the trial court's judgment in favor of the plaintiff upon a verdict of the jury and it was made, 'because of the error of the trial court in the admission of evidence, and because of the improper remarks of counsel for plaintiff.' The evidence erroneously admitted did not include that of the witness Block, which, alone, was discussed with reference to impeachment. Regarding Block's testimony the question before the court was whether there was error in allowing the plaintiff, who had produced him as a witness, to cross-examine him touching his previous statements inconsistent with his evidence that had disappointed and surprised the plaintiff; and this court correctly answered that question in the negative. The case can hardly be regarded as controllingly instructive beyond the issue of the propriety of the impeaching questions, for the judgment under review was not actually sustained and affirmed. It is true that this court did assert (83 F.2d at page 337, point 18) that the question upon which the case turned 'was clearly for the jury', but in reaching that conclusion it pointed out, besides Block's testimony, other evidence adequate to carry the case to the jury.

Chicago, St. P., M. & O. Ry. Co. v. Kulp, supra, in large measure, is an application of the doctrine of 'the law of the case' upon retrial of Kulp v. Chicago, St. P., M. & O. R. Co., 8 Cir., 88 F.2d 466, certiorari denied 301 U.S. 700, 57 S.Ct. 930, 81 L.Ed. 1355, in which this court had reversed a judgment on a directed verdict for the defendant in an action for damages against the railroad company for the death of an employee engaged in a train movement, and had held that the evidence on a former trial was sufficient to sustain a verdict for the plaintiff. In this court's earlier opinion (vide 88 F.2d 466) the propriety and consequence of impeaching examination was not expressly discussed. In the final trial, upon which the opinion in 102 F.2d at pages 352, 358 was based, the defendant railroad company produced as witnesses certain of its employees, associated with the decedent in the operation of the train at the time of his death who testified to a version of the event supporting the company's pleading; whereupon they were vigorously cross-examined touching previous contradictory statements made by them in railroad

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612
(Cite as: 138 F.2d 612, *618)

company investigations and in previous trials of the case, of which there had been three. This court on the final appeal considered that in the circumstances the whole evidence of these witnesses was subject to appraisal by the jury in determining upon the merits of the case, although it emphasized the fact that 'the plaintiff is not driven to depend upon all these contradictory statements for substantial support in the evidence.' Note was taken also of the relation to the defendant of the witnesses involved as its agents or employees and especially to the fact that their previous statements under scrutiny were themselves largely in the nature of testimony in previous trials of the same case. Thus it was said: 'Extra-judicial testimonial statements are rejected primarily because of the hearsay rule; but in many cases this rule is relaxed, especially in the case of such statements made by a party or his agent, and where opportunity for confrontation and cross-examination has been afforded and exercised, as in this case.'

The issue with which we are here squarely confronted was not before us in either of the two cases just mentioned. Their discussions of the related question must be appraised by the facts and limited to the situations respectively before the court for decision in those proceedings. We do not consider that the require, or even justify, our repudiation of the virtually universal rule denying substantive evidentiary value to impeaching admissions of former inconsistent extra-judicial statements. And we are particularly unwilling to take that drastic course in a criminal proceeding upon which depends the liberty of defendants, however unworthy of indulgence they may be. As will presently appear, our own decisions where the issue *619 has been directly before us lead to the contrary course.

For in several cases, both civil and criminal, this court has reached a conclusion directly contrary to that to which it is now invited by the appellee. In F. W. Martin & Co. v. Cobb, 8 Cir., 110 F.2d 159, 165, 166, the defendant in an action to recover damages for the death of one of its employees, introduced as a witness a fellow employee of the decedent, who testified to the good condition of the machine which had allegedly caused the accident. Thereupon, proper foundation was laid by the plaintiff and from impeaching witnesses was elicited evidence that they had heard the defendant's witness make a statement showing the existence of a specific defect in the machine. Upon that record this court, determining the probative significance of the impeaching testimony said: 'The impeaching testimony was not competent as an admission made by the company or as affirmative proof that the derrick had given way to the company's knowledge. The declaration was not part of the res gestae. It was competent to impeach the only witness offered by the company to sustain the defenses pleaded.'

In Chicago, St. P.M. & O. Ry. Co. v. Muldowney, 8 Cir., 130 F.2d 971, 975, the following situation and ruling are disclosed: 'It is contended by plaintiff that the jury might also have properly found that the engineer brought the engine to a complete stop approximately twenty feet from the point of accident and then started it up to make the coupling. This contention is based upon the testimony of Mrs. Muldowney to the effect that the fireman told her the engine was brought to a stop twenty feet south of the Swift car just prior to the accident. On cross-examination the fireman was asked whether he had made such a statement, alleged to have been made long after the accident occurred, and he denied having made it. The statement, if made, was no part of the res gestae and was not binding on the defendant. It was admissible only as bearing upon the credibility of the witness and it had no tendency to prove the truth of the subject matter.'

See, also, Wiget v. Becker, 8 Cir., 84 F. 706, cited by this court in its opinion in the Muldowney case, for its general reasoning upon a related point.

In Rosenthal v. United States, 8 Cir., 248 F. 684, 686, the conviction of the defendant for false swearing was reversed for error in the reception of evidence of a witness' previous statements upon the pretext of refreshing his recollection. Upon the point involved this court said: 'Another error committed was the admission of the testimony of Lipschitz, the main witness for the government, without whose testimony there was practically no evidence to justify a verdict of guilty. While, in view of his testimony, as given before the referee, it was proper to permit him to be examined as a hostile witness, and as one whose testimony at the trial was a surprise to the government, it was improper to read to him all of his testimony before the referee, by way of cross-examination, and ask him, as every question and answer was read before the jury, 'Did

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612  
(Cite as: 138 F.2d 612, *619)

Page 9

you not on the former occasion testify as follows?' This was not for the purpose of refreshing his memory, but was in fact introducing his testimony, in an examination before the referee under section 21 of the Bankruptcy Act. (11 U.S.C.A. 44). This was error.' But obviously it could be error only if acknowledgment or proof of his giving the previous evidence was itself incompetent for consideration in the establishment of the facts which it asserted. And, essentially, that is what happened on the trial of this case. The material parts of former statements were thus read and the witness was made to admit that she had made them though she denied their truthfulness. In DiCarlo v. United States, 2 Cir., 6 F.2d 364, (vide infra) the ruling in the Rosenthal case is justified and distinguished upon the basis of abuse of the privilege of cross-examination. A like abuse is revealed in the record before us.

[6] Upon the evidentiary consequence of proof that a previous inconsistent statement has been made by the witness, it is immaterial whether its making is admitted by the witness himself or proved by other witnesses after competent foundation for impeachment. The material thing is the making of the statement, not how it has to be proved.

The government fortifies its position by the citation of DiCarlo v. United States, 2 Cir., 6 F.2d 364, 367, 368; United States v. Graham, 2 Cir., 102 F.2d 436; Craig v. United States, 9 Cir., 81 F.2d 816; Curtis v. United States, 10 Cir., 67 F.2d 943 and the dissenting opinion in Young v. United States, 5 Cir., 97 F.2d 200, 207, 117 A.L.R. *620 316. Of these DiCarlo v. United States is the leading case, and language contained in it is employed in the reasoning of all the others.

That the discussion in the DiCarlo case and its frequent repetition in the course of subsequent citations would sustain the appellee's contention here can hardly be doubted. It is doubtful, however, whether much of that discussion was strictly pertinent to the issue there before the court for decision. The case involved a charge of conspiracy in connection with intimidating witnesses and obstructing justice. Apart from the acknowledgment of previous incriminating statements elicited on cross-examination, there was adequate evidence to support conviction. But there, as here, a witness failed to testify as was rightly expected and was cross-examined respecting previous statements inconsistent with the evidence she had given. The circuit court correctly sustained the cross-examination. But unnecessarily, as it would seem, it proceeded further and asserted that it found no difficulty in 'the possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand.'

The persuasiveness of the DiCarlo case upon the point now considered is measurably neutralized or altogether nullified by the Graham case and especially by United States v. Block, 2 Cir., 88 F.2d 618, 620, both Second Circuit Court cases, in the former of which the distinguished writer of the DiCarlo opinion concurred, and in the latter of which he wrote the opinion. In the Graham case the impeaching evidence was allowed consideration substantively upon the assertedly distinguishing ground that in admitting that he had made the earlier statements he claimed he had made them under improper promises of clemency. But saving that distinction, the court thus asserted its adherence to the general rule (102 F.2d 442): 'Ordinarily, the impeachment of one's own witness goes only to his credibility. Evidence so elicited is not to be treated as affirmative proof of fact for any other purpose. * * * And the jury should be so instructed. * * * But this evidence became more than impeaching evidence when the issue of subornation of perjury was developed.' We need not, and do not, concern ourselves with the objective validity of that excepting distinction. We merely note it as the foundation of the court's conclusion to allow the relaxation of the general rule which it expressly recognized.

But in United States v. Block, supra, the court for the Second Circuit found itself squarely confronted with the question we have here, and declined to regard the DiCarlo case as controlling or in point, and reversed a conviction based upon the employment as substantive evidence of the impeaching proof of a witness' former statements inconsistent with his exculpatory testimony. The limitation of the DiCarlo case and the court's adherence to the prevailing rule may be gathered from the following paragraph of the opinion (88 F.2d 619): 'The position of a prosecutor, faced with a perjured witness whom he has called with good warrant to suppose him friendly, is trying, and the courts have not dealt hardly with him. In DiCarlo

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612
(Cite as: 138 F.2d 612, *620)

Page 10

v. United States (2 Cir.), 6 F.2d 364, we said that he should be given the greatest latitude in examination and allowed to use the earlier statement, even at the risk that the jury might take it as testimony; indeed, we went so far as to say that it was possible that it might in fact become testimony; for a witness upon the stand may so behave that his conduct is more of an affirmation of an earlier statement than his halting words are a denial; just as a nod or a gesture may be an assent. Men do not express themselves wholly by words. But the situation at bar was very different from anything of the kind. It is true that the witness was plainly lying, but that was just because, instead of affirming the statement, he persistently and unconditionally denied it. There was not the least color for allowing the jury to take it as his testimony on the stand, and the inevitable result was to get before them unsworn evidence in an exceptionally impressive and damaging way. For it was much worse that the witness was obviously trying to protect the defendants; so that when the examination was over, the natural conclusion was not only that the defendants had kept the still, but that they had suborned the witness to deny it. The judge's charge mended nothing; he left the jury to disentangle in their minds the innocuous part which the witness had conceded, from the great bulk which he had disaffirmed. The hearsay remained as effective as before, and really the prejudice was incurable anyway, whatever he might have said. Perhaps the rule against hearsay ought to be discretionary, dependent *621 upon how far the party against whom it is used has effective protection. In a case like this for instance, there seems to be no good reason why the prosecution should be held to what it can extract from such a witness on the stand; he confronts the accused, and if he retracts, the accused gets whatever benefit that may be. In other affairs such a statement would be accepted as evidence to be weighed against the retraction, and nobody would think it an injustice to make use of it. But we are not free so to make over the law; we cannot sustain a conviction based upon unsworn evidence.'

Though Craig v. United States, supra, quotes from, and assumes to follow the DiCarlo opinion, the inconsistencies there scrutinized were not between previous extrajudicial statements and testimony, but rather in the testimony itself, and the real holding was that mere self-contradiction in the testimony of a witness does not prevent its being substantial evidence on which to rest a verdict. Curtis v. United States, supra, is completely pointless here, because, though the opinion quotes copiously from the DiCarlo case, it must not be neglected that the reluctant witness had not only admitted the previous inconsistent statement acknowledging false entries but had asserted that he had made his defendant co-conspirator consent to the false entries, thus adopting and republishing as a part of his evidence the facts in his former statement. And the appellee's mention of the dissenting opinion in Young v. United States, supra, may be met with the comment that the prevailing opinion in that case follows and emphasizes the general rule. See, also, Ward v. United States, 5 Cir., 96 F.2d 189.

[7] As an alternative argument the government says with the support of authority that, the cross-examination having been allowable for some purpose, it them became the obligation of each appellant, if he desired to have its probative consequence limited, expressly to seek such limitation either at the time of its introduction or upon the submission of the case, by an appropriate request for instruction. Without deciding that question it may be answered simply that such a challenge was made by the motions for an instructed verdict; for they tendered the precise question whether there was before the court competent evidence of the guilt of the respective defendants adequate to support a verdict of guilty. And implicit in that question was the problem of the probative consequence of the girl 'B's' acknowledged extrajudicial statements. We hold that those statements cannot be considered as evidence of the alleged facts recited in them.

[8] Equally if not more incompetent as evidence of guilt is certain testimony cited by the appellee to the effect that during the investigation of the case, the two girls named in the indictment, an agent of the Federal Bureau of Investigation, an assistant state prosecutor and the father of 'A' went to Reelfoot Lake and located and identified a cabin in which the two girls stated that they and the defendants had once tarried illicitly, presumably on the occasion mentioned in counts XI to XX of the indictment. Over objection (we regard the objections as sufficiently made in the light of the manner in which the questioning at that juncture in the trial was being conducted) two witnesses, including the girl 'B'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



138 F.2d 612                                                    Page 11
(Cite as: 138 F.2d 612, *621)

narrated this identification with minor variations; but in whatever form it was, or could have been, shown, the evidence was purest hearsay, incompetent to prove any fact discussed between the girls and the authorities.

This court has given careful consideration to the substantive evidence remaining in the record, after the elimination of the acknowledgment by 'B' of her previous statements and the story of the exploratory trip with the investigators to Reelfoot Lake. Its significant features have been mentioned in the factual recital in this opinion. There are several additional circumstances the most significant of which evince an interest or anxiety on the part of the appellants respecting their plight when the authorities had apprehended the two girls, and especially after their own indictment. But not any one or more of these incidents nor all of them in combination show or remotely point to the critical fact of interstate transportation for the illicit purpose denounced in the statute. In the main, they are related to the established lewdness of the two couples generally as couples but sometimes though rarely, in a group of four in their own Missouri communities; for it is to be noted that the Missouri authorities had also taken cognizance of their behavior.

[9][10][11] It is our conclusion that the competent evidence before the trial court was wholly inadequate to sustain a verdict *622 of guilty upon any of counts I to XXV inclusive. And of the conspirational charge in count XXVI, it need only be said that with the failure of evidence upon the substantive charges, it was also unsustained. No conspiracy was directly shown; and though we realize that the offense may be, and ordinarily is established circumstantially, it cannot be said to have been established here, in view of the utter failure to sustain the principal charges which were its sole foundation. The trial court therefore erred in overruling and denying the motions for an instructed verdict.

Hence, in each case before us, the judgment is reversed and the cause remanded for further proceedings, not inconsistent herewith.

Reversed.

138 F.2d 612

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw