# EXHIBIT 21

329 F.Supp.2d 337                                                                                                Page  1
329 F.Supp.2d 337, 2004-2 Trade Cases P 74,514
(Cite as: 329 F.Supp.2d 337)
H

Motions, Pleadings and Filings

United States District Court,
D. Connecticut.
MM GLOBAL SERVICES, INC., MM Global
Services Pte, Ltd. and Mega Visa Solutions
(S) Pte., Ltd., Plaintiffs,
v.
THE DOW CHEMICAL COMPANY, Union
Carbide Corporation, and Union Carbide Asia
Pacific, Inc., Defendants.
No. CIV. 302CV1107AVC.

Aug. 11, 2004.

Background: India distributor of manufacturer's products brought suit against manufacturer, claiming it was forced into resale price maintenance agreements. Following denial of motion to dismiss, 283 F. Supp.2d 689, and motion for reconsideration, 2004 WL 556577, manufacturer moved to dismiss for lack of subject matter jurisdiction.

Holding: The District Court, Covello, J., held that there was sufficient showing of antitrust effects in United States that injured resellers, as required by Foreign Trade Antitrust Improvements Act (FTAIA).
Motion denied.

West Headnotes

[1] Antitrust and Trade Regulation ⚫= 969
29Tk969 Most Cited Cases
  (Formerly 265k28(3))
Where the conduct of defendant claimed to be restraint of trade violating Sherman Act § 1 affects both domestic and foreign commerce, but the plaintiff's injury arises only from the conduct's foreign effect and not its domestic effect, the plaintiff's injury is independent from the domestic effect and the court has no jurisdiction. Sherman Act, § 1, as amended, 15 U.S.C.A. § 1.

[2] Antitrust and Trade Regulation ⚫= 969
29Tk969 Most Cited Cases
  (Formerly 265k28(3))
Court had jurisdiction over manufacturer that allegedly forced buyers of its products for resale in India to sign resale price maintenance agreements, in violation of Sherman Act § 1, despite claim that the jurisdictional requirement imposed by Foreign Trade Antitrust Improvements Act (FTAIA), that manufacturer's misconduct give rise to antitrust effects in United States that injured resellers, was not satisfied; in present case maintenance of minimum resale price agreements in foreign countries had required effect in the United States, by keeping domestic prices high. Sherman Act, §§ 1, 7, as amended, 15 U.S.C.A. §§ 1, 6a(1).

*338 Michael S. Elkin, Susan B. McInerney, Alyson L. Redman, Paul A. Winick, Thelen, Reid & Priest, New York, NY, Richard S. Taffet, Bingham McCutchen, New York, NY, Robert M. Langer, Steven Bruce Malech, Wiggin & Dana, Hartford, CT, Suzanne Ellen Wachsstock, Wiggin & Dana, Stamford, CT, for Plaintiffs.

Andrew S. Marovitz, Britt M. Miller, Dana S. Douglas, Mayer, Brown, Rowe & Maw LLP, Chicago, IL, Christopher J. Kelly, Mayer, Brown, Rowe & Maw LLP, Washington, DC, Craig A. Raabe, Edward J. Heath, Elizabeth A. Fowler, Stephen M. Deane, Robinson & Cole, Hartford, CT, for Defendants.

*RULING ON THE DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION*

COVELLO, District Judge.

This is an action for damages arising from a business arrangement pursuant to which the plaintiffs purchased chemicals, polymers, and other products from the defendants and resold them to customers located in India. The amended complaint alleges violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and common law tenets concerning breach of contract and negligent misrepresentation. The defendants now move pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss the federal antitrust claim for want of subject matter jurisdiction. For the reasons hereinafter set forth, the court concludes that the court has subject matter jurisdiction to adjudicate the claimed violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

*FACTS*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



329 F.Supp.2d 337
(Cite as: 329 F.Supp.2d 337, *338)

The background giving rise to the instant action is more fully discussed in the *339 court's September 12, 2003 decision. *See MM Global Services, Inc. v. Dow Chemical Co.*, 283 F.Supp.2d 689 (D.Conn.2003). While familiarity is presumed, the facts are summarized as follows.

In 1984, the defendant, Union Carbide, a New York corporation headquartered in Connecticut, owned and operated a chemical plant in Bhopal, India. In December of that year, lethal gas escaped from the plant and caused the death of 3,800 persons and injuries to an additional 200,000. In February 1989, Union Carbide and its Indian affiliate were ordered to pay a total of $470 million for all civil claims arising from the tragedy.

In the aftermath of this tragedy, Union Carbide ceased selling products directly to customers in India and, in 1987, appointed the plaintiff, Mega Visa Marketing Solutions Ltd. ("MVMS"), as a non-exclusive distributor to maintain Union Carbide's access to the Indian marketplace. MVMS is an Indian corporation, having its principal place of business in Mumbai, India.

Over the next several years, MVMS formed corporate affiliates with the purpose of assisting with product sales in India. The affiliates purchased Union Carbide products in the United States and resold them to end-users in India. The affiliates included the plaintiffs, Mega Global Services, Inc ("MMGS"), Mega Visa Marketing Solutions, Ltd. ("MVMS"), Mega Global Services, Inc.-- Singapore ("MMGS-S"), and Mega Visa Solutions (S) Pte. Ltd. ("MVS").

In August 1999, Union Carbide announced a plan of merger with the co-defendant herein, Dow Chemical Company ("Dow"). Dow is a corporation organized under the laws of Delaware, with a principal place of business in Midland, Michigan. The amended complaint alleges that with the plan of merger, the need dropped for the re-sale services in India previously performed by MVMS, MVS, MMGS and MMGS-S. Consequently, the amended complaint alleges that Union Carbide and its affiliates ceased acting consistently with their alleged contractual and legal obligations and, in particular, undertook efforts to establish Dow, untainted by the Bhopal tragedy, in place of the plaintiffs as a direct seller of products to end-users in India.

On February 6, 2001, Union Carbide merged with a subsidiary of Dow and became a wholly owned subsidiary of Dow. At around this time, Dow also created the defendant, Dow Chemical Pacific (Singapore) Private Ltd. ("Dow Singapore"). Dow created Dow Singapore to effectuate sales of Union Carbide products to the plaintiffs and to further Union Carbide and Dow's relationship with the plaintiffs.

On January 16, 2002, Dow Singapore advised MVS that, effective March 31, 2002, MVS would no longer be a distributor for Union Carbide products other than wire and cable compounds. MVS refused to continue the relationship with Dow Singapore on those terms.

On June 25, 2002, the plaintiffs commenced this lawsuit against the defendants, Union Carbide and Dow, alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and common law precepts concerning breach of contract and negligent misrepresentation, among other theories. The plaintiffs also sued several Union Carbide/Dow affiliates, including the defendants Union Carbide Asia Pacific, Inc. ("UCAP") (Singapore), Union Carbide Customer Service Pte. Ltd. ("UCCS") (Singapore), and Dow Chemical Pacific Private Pte. Ltd. (Singapore). [FN1]

FN1. On November 17, 2003, the court dismissed the amended complaint with respect to UCCS and Dow Singapore for want of personal jurisdiction.

*340 In connection with the federal antitrust claim, the plaintiffs alleged that, from 1993 through March 2002, Union Carbide and Dow, directly and through their affiliates, compelled the plaintiffs to agree to engage in a price maintenance conspiracy with respect to the resale of Union Carbide products in India, and refused to accept orders or cancelled accepted orders if the prospective resale prices to end-users in India were below certain levels. According to the amended complaint, Dow and Union Carbide sought to "ensure that prices charged by [the][p]laintiffs to end-users in India for [p]roducts would not cause erosion to prices for the [p]roducts charged by [Union Carbide] and Dow to end-users ... in the United States as well as in other jurisdictions ...," and that,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



329 F.Supp.2d 337
(Cite as: 329 F.Supp.2d 337, *340)

[a]s a direct and proximate result of [the][d]efendants' fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from the United States was improperly diminished and restrained...

On April 23, 2003, the defendants moved to dismiss the antitrust claim, arguing that, because the amended complaint failed to allege antitrust conduct having a direct, substantial, and reasonably foreseeable effect on U.S. commerce, the court was without subject matter jurisdiction to hear the claim under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a(1). On September 12, 2003, the court denied the motion. On March 18, 2004, the court reconsidered that ruling but denied the relief requested. On March 31, 2004, the defendants moved for certification of that ruling for interlocutory appeal pursuant to U.S.C. § 1292(b). On June 11, 2004, the court denied that motion.

### STANDARD

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) must be granted if a plaintiff has failed to establish subject matter jurisdiction. *Golden Hill Paugussett Tribe of Indians v. Weicker,* 839 F.Supp. 130, 136 (D.Conn.1993). In analyzing a motion to dismiss under Rule 12(b)(1), the court must accept all well pleaded factual allegations as true and must draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir.1993). Where a defendant challenges the district court's subject matter jurisdiction, the court may resolve disputed factual issues by reference to evidence outside the pleadings, such as affidavits. *Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991).

### DISCUSSION

The defendants move to dismiss the case on the ground that jurisdiction is not authorized under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a(2). In previous rulings, the court addressed whether jurisdiction was authorized under § 6a(1) of the FTAIA and concluded that it was. *See MM Global Services,* 2004 WL 556577, *1 (D.Conn. Mar.18, 2004). The defendants now contend that jurisdiction is precluded by § 6a(2) because the plaintiffs have failed to allege, as required by *F. Hoffmann-La Roche Ltd. v. Empagran S.A.,* --- U.S. ----, 124 S.Ct. 2359, 159 L.Ed.2d 226 (2004), that the defendants' misconduct gave rise to antitrust effects in the United States that injured the plaintiffs.

In response, the plaintiffs assert that jurisdiction is not precluded by § 6a(2). Specifically, the plaintiffs contend that the amended complaint alleges "more than sufficient *341 causal links between [the] plaintiffs' injuries and the domestic effect of [the] defendants' misconduct to satisfy § 6a(2)."

Section 1 of the Sherman Act provides in relevant part:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. 15 U.S.C. § 1.

The reach of the Sherman Act, however, is limited. *Metallgesellschaft AG v. Sumitomo Corp.,* 325 F.3d 836, 838 (7th Cir.2003). Under an amendment to the Sherman Act, known as the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a, the court does not have jurisdiction to adjudicate antitrust conduct that:
involv[es] trade or commerce (other than import trade or import commerce) with foreign nations unless-
1) such conduct has a direct, substantial, and reasonably foreseeable effect-
A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.
If [the Sherman Act applies] to such conduct only because of the operation of (1)(B), then [the Sherman Act] shall apply to such conduct only for injury to export business in the United States.
15 U.S.C. § 6a. Thus, pursuant to § 6a(2), the court does not have jurisdiction to adjudicate Sherman Act violations unless the plaintiffs are able to show, among other things, that the misconduct at issue caused effects on United States commerce which gave rise to a claim under the Sherman Act.

Prior to the Supreme Court's decision in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



329 F.Supp.2d 337
(Cite as: 329 F.Supp.2d 337, *341)

*Empagran*, 124 S.Ct. 2359 (2004), federal circuits were divided on the meaning of the phrase "giving rise to a claim" in § 6a(2). Some circuits, including the Second Circuit, had concluded that "giving rise to a claim" refers to *a* claim in general, without regard to whether the plaintiff suffered an injury. *See Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir.2002) (holding that the "plain meaning" of the statutory language "*a* claim" refutes the defendants' argument that the plaintiff must allege that the anti-competitive effect gives rise to "*his* claim" (emphasis added)); *see also Empagran*, 315 F.3d 338, 352 (D.C.Cir.2003). Other circuits, however, held that "giving rise to a claim" refers to a claim brought to redress the plaintiff's specific antitrust injury, and thus concluded that § 6a(2) requires the plaintiffs to allege that the misconduct at issue caused domestic effects on commerce that gave rise to their actual injury. *See Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 427 (5th Cir.2001).

[1] In *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 124 S.Ct. 2359 (2004), the Supreme Court overruled *Kruman* and held that "giving rise to a claim" refers to the plaintiff's claim of injury. *Id.* Consequently, jurisdiction is authorized under the FTAIA only when the plaintiff has alleged that the defendants' conduct affected U.S. commerce and that the effect gave rise to the plaintiff's injury. *Empagran*, 124 S.Ct at 2371-2372. Summarizing the rule, where the defendant's conduct affects both the domestic and foreign commerce, but the plaintiff's injury arises only from the conduct's foreign effect and not its domestic *342 effect, the plaintiff's injury is independent from the domestic effect and the court has no jurisdiction. *Empagran*, 124 S.Ct. at 2363.

[2] The defendants now contend that, in light of *Empagran*, the plaintiffs no longer satisfy § 6a(2) and the court lacks subject matter jurisdiction as a result. Specifically, the defendants argue that the plaintiffs have not and cannot now assert that domestic effects on commerce led to their injuries, as required by *Empagran*, because the "[p]laintiffs have built their case around the proposition that Indian resale price maintenance led to higher prices in the United States, not the other way around" (emphasis omitted). In other words, the defendants assert that it is impossible for the plaintiffs to allege both that their injuries gave rise to domestic effects on commerce and that domestic effects also gave rise to their injuries.

The plaintiffs respond that the *Empagran* decision "was expressly limited to whether the Sherman Act conferred jurisdiction over foreign effects that are 'entirely independent' of domestic effect[s]." In the plaintiffs' view, "there is nothing in [*Empagran* ] that precludes jurisdiction over domestic effects 'flowing' to and from foreign effects" (emphasis omitted). In other words, the plaintiffs assert that their injuries were not independent from effects on U.S. commerce, and contend that it is possible for their injuries to both arise from and give rise to effects on domestic commerce.

The court does not agree with the defendants that the plaintiffs have failed to allege the requirements of § 6a(2), i.e., that the defendants' conduct led to effects on U.S. commerce that gave rise to the plaintiffs' injuries. The amended complaint alleges that:

As a direct and proximate result of [the][d]efendants' fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [p]roducts in and from the United States was improperly diminished and restrained, and *as the result of such effect on competition, [the][p]laintiffs were injured* by being precluded from effectively and fully competing and maximizing their sales of [p]roducts.

(emphasis added). The complaint properly alleges that the defendants' conduct had an effect on competition in and from the United States and the plaintiffs were injured as a result of that effect. Accordingly, dismissal for failure to satisfy § 6a(2) is inappropriate.

The defendants also argue that the plaintiffs are barred by the doctrine of judicial estoppel from asserting that domestic effects led to their injuries because the plaintiffs have already alleged that their injuries gave rise to the effects on commerce and have "persuaded this [c]ourt to rely upon it, repeatedly, in rendering multiple decisions." Specifically, the defendants contend that the plaintiffs cannot change their allegations because the court has already adopted the plaintiffs' view that their injuries directly affected U.S. commerce, as the court concluded:

[I]t is ... quite foreseeable to conclude that a conspiracy to fix prices in the Indian market might

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



329 F.Supp.2d 337
(Cite as: 329 F.Supp.2d 337, *342)

reasonably cause direct and substantial effects on the prices charged for the same products in the United States.

*MM Global Services*, 2004 WL 556577, at *6 (D.Conn. Mar.18, 2004). However, the defendants have misconstrued the court's statement. The court was not alluding to the plaintiff's injury in its reference to "a conspiracy to fix prices in the Indian market," but to the defendants' conduct. Thus, the court was only stating that the *343 defendants' conduct may have given rise to effects on U.S. commerce. The court has not held that the plaintiffs' injuries gave rise to domestic effects on commerce. Further, the court does not agree with the defendants that it is inconceivable for both domestic effects to give rise to the plaintiffs' injuries and for those injuries to also affect domestic commerce. The court therefore concludes that the plaintiffs have sufficiently satisfied the requirements of the FTAIA. Accordingly, the court has subject matter jurisdiction to adjudicate the plaintiffs' Sherman Act claim.

CONCLUSION

For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction (document no. 199) is DENIED.

It is so ordered this 11th day of August, 2004 at Hartford, Connecticut.

329 F.Supp.2d 337, 2004-2 Trade Cases P 74,514

Motions, Pleadings and Filings (Back to top)

. 2006 WL 389461 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of their Motion for Summary Judgment (Jan. 23, 2006)Original Image of this Document (PDF)

. 2006 WL 389462 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion Pursuant to Fed. R. Civ. P. 37(a)(2)(B) to Compel Production of Plaintiffs' Financial Statements (Docket Entry 383) (Jan. 23, 2006)Original Image of this Document (PDF)

. 2006 WL 389459 (Trial Pleading) Answer, Affirmative Defenses and Counterclaims of Defendant Union Carbide Customer Services Pte. Ltd. to the First Amended Complaint (Jan. 11, 2006)Original Image of this Document (PDF)

. 2006 WL 389460 (Trial Pleading) Defendant Dow Chemical Pacific (Singapore) Pte. Ltd.'s Answer and Additional Defenses to Plaintiff's First Amended Complaint (Jan. 11, 2006)Original Image of this Document (PDF)

. 2006 WL 389458 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Amended Motion to Compel Production of Plaintiffs' Financial Statements (Jan. 6, 2006)Original Image of this Document with Appendix (PDF)

. 2005 WL 3627430 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Cross-Motion to Compel Return of Privileged Documents and in Opposition to Plaintiffs' Motion to Compel Production of Improperly Withheld and Redacted Documents (Nov. 1, 2005)Original Image of this Document (PDF)

. 2005 WL 3627431 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Cross-Motion to Compel Return of Privileged Documents and in Opposition to Plaintiffs' Motion to Compel Production of Improperly Withheld and Redacted Documents (Nov. 1, 2005)Original Image of this Document (PDF)

. 2005 WL 3627432 (Trial Motion, Memorandum and Affidavit) Trial Motion and Memorandum and Affidavit (Nov. 1, 2005)Original Image of this Document (PDF)

. 2005 WL 3627433 (Trial Motion, Memorandum and Affidavit) Defendant the Dow Chemical Company's Memorandum of Law in Response to Plaintiffs' Motion to Compel and in Support of its Motion for A Protective Order Precluding the Deposition of Andrew N. Liveris (Nov. 1, 2005)Original Image of this Document (PDF)

. 2005 WL 3627434 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiffs' Motion to Compel Production of Witnesses for Deposition Pursuant to Rule 30 (Nov. 1, 2005)Original Image of this Document (PDF)

. 2005 WL 3627429 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Page 6

329 F.Supp.2d 337
(Cite as: 329 F.Supp.2d 337, *343)

Motion for Substitution as Plaintiff (Oct. 27, 2005)Original Image of this Document (PDF)

. 2005 WL 3627428 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of their Motion to Compel Production of Witnesses for Deposition Pursuant to Rule 30 (Oct. 13, 2005)Original Image of this Document (PDF)

. 2005 WL 3627427 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of their Motion for Protective Order against Producing Anil Mittal for Deposition (Oct. 12, 2005)Original Image of this Document (PDF)

. 2005 WL 3627426 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Support of their Motion to Compel Production of Improperly Withheld and Redacted Documents (Oct. 11, 2005)Original Image of this Document (PDF)

. 2003 WL 24270170 (Trial Motion, Memorandum and Affidavit) Defendants the Dow Chemical Company and Union Carbide Corporation's Memorandum in Support of their Motion to Modify the Court's Ruling of April 17, 2003 Denying Defendants' Forum Non Conveniens Motion (May 1, 2003)Original Image of this Document (PDF)

. 3:02cv01107 (Docket) (Jun. 25, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

