EXHIBIT 24

991 F.2d 1080 Page 1
991 F.2d 1080, 61 USLW 2617, 25 Fed.R.Serv.3d 16
**(Cite as: 991 F.2d 1080)**
▷

Briefs and Other Related Documents

United States Court of Appeals,
Third Circuit.
PRUDENTIAL INSURANCE COMPANY OF
AMERICA; Pic Realty Corporation; and 745
Property Investments
v.
UNITED STATES GYPSUM COMPANY; W.R.
Grace & Company; The Celotex Corporation;
United States Mineral Products Company; Pfizer,
Inc.; Asbestospray
Corporation; and John Doe Companies, fictitious
names for present unidentified
entities.
PRUDENTIAL INSURANCE COMPANY OF
AMERICA
v.
UNITED STATES GYPSUM COMPANY The
Prudential Insurance Company of America, and
PIC Realty Corporation ("Prudential"), Petitioners.
No. 92-5616.

Argued Jan. 20, 1993.
Decided March 31, 1993.

Property owner and realty corporation sought issuance of writ of mandamus requiring review of district court order appointing law school dean as special master in products liability litigation against installers of asbestos-containing products. The Court of Appeals, Garth, Senior Circuit Judge, held that: (1) standard for reference to master in actions to be tried by jury--only when the issues were "complicated"--was inapplicable, and (2) under applicable nonjury standard, subject claims did not involve an "exceptional condition" requiring a special master, despite volume of work generated by case and complexity of that work.

Writ issued

See also 711 F.Supp. 1244.

West Headnotes

[1] Mandamus ⚌ 28
250k28 Most Cited Cases
Determination that district court abused its discretion does not, in itself, warrant issuance of writ of mandamus.

[2] Federal Civil Procedure ⚌ 1876
170Ak1876 Most Cited Cases
Standard for reference to special master of actions to be tried by jury--only when the issues involved are "complicated"--did not apply to reference to special master of property owner's products liability claims against installers of asbestos-containing products, even though property owner had requested jury trial in its complaint; tasks the special master was ordered to perform were normally conducted by district court, perhaps with assistance of magistrate judge, and action was not yet a jury trial, nor was there any assurance or even probability that property owner's claims would ever be presented to jury. Fed.Rules Civ.Proc.Rule 53(b), 28 U.S.C.A.

[3] Federal Civil Procedure ⚌ 1877.1
170Ak1877.1 Most Cited Cases
Property owner's products liability claims against installers of asbestos-containing products did not involve an "exceptional condition" requiring reference of those claims to a special master, under applicable nonjury standard. Fed.Rules Civ.Proc.Rule 53(b), 28 U.S.C.A.

[4] Mandamus ⚌ 47
250k47 Most Cited Cases
Rather than vacating district court order and remanding for district court to give effect to the correct standard, Court of Appeals would issue writ of mandamus directing district court to withdraw and vacate its reference of products liability claims to special master; no order of reference defining or redefining master's role, no matter how restrictive in scope, could be framed in view of impossibility that applicable nonjury standard of civil rule governing masters could be satisfied, and it would be both error and waste of
valuable judicial resources to direct otherwise. Fed.Rules Civ.Proc.Rule 53, 28 U.S.C.A.
*1081 Edward A. Zunz, Jr. (argued), Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for petitioners Prudential Ins. Co. of America and PIC Realty Corp.

Kell M. Damsgaard (argued), Morgan, Lewis & Bockius, Philadelphia, PA, for respondent U.S. Gypsum Co.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



991 F.2d 1080  
(Cite as: 991 F.2d 1080, *1081)

Page 2

Anthony J. Marchetta (argued), Hannoch Weisman, Roseland, NJ, for respondent W.R. Grace & Co.

Frank C.B. Friestedt, Hecker, Brown, Sherry & Johnson, Philadelphia, PA, for respondent U.S. Mineral Products Co.

Stephen N. Dermer, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for respondent Keene Corp.

Richard A. Koehler, Stich, Angell, Kreidler & Muth, Minneapolis, MN.

Before: BECKER, ALITO and GARTH, Circuit Judges.

OPINION OF THE COURT

GARTH, Circuit Judge:

Petitioners, Prudential Insurance Company of America and PIC Realty Corporation ("Prudential"), seek the issuance of a writ of mandamus that requires the review of an order of the district court appointing Dean Henry G. Manne of the George Mason University School of Law as a special master. Because the record before us does not satisfy the exceedingly high standard that must be met before the reference of a special master can be made pursuant to Fed.R.Civ.P. 53(b), we will grant the writ.

I.

The underlying dispute from which this petition arises involves several products liability actions brought by Prudential against the United States Gypsum Company, W.R. Grace and Co.-Conn., the Celotex Corporation, U.S. Mineral Products Company, Keene Corporation, Pfizer, Inc., Asbestospray Corporation, National Gypsum Company, and John Doe Companies (collectively, "the Defendants"). [FN1] Prudential seeks to recoup the cost of testing, air-monitoring, removing and encapsulating asbestos-containing products allegedly installed by the Defendants in thirty-nine Prudential properties located in eighteen different states.

FN1. Prudential dismissed Pfizer, Inc. as a defendant and defendants National Gypsum and Celotex Corporation have filed bankruptcy petitions.

In early 1992, after more than four years of pre-trial activity (the original complaint was filed in October of 1987), several motions were made before the district court. [FN2] By order dated February 14, 1992, the district court judge *sua sponte* appointed a special master to supervise all pre-trial matters and make recommendations as to all pre-trial motions. (A29-32) However, *1082 after it was brought to the attention of the district court that the individual who had been appointed was statutorily barred from serving as a special master under 28 U.S.C. § 458, the district court rescinded the appointment.

> FN2. These motions included:
> --Defendants' two motions to dismiss Prudential's RICO claims;
> --Prudential's motion to strike defendants' statute of limitations defenses based on defendants' representations and assurances concerning the safety of their products; --Defendants' two motions seeking summary judgment based on the RICO statute of limitations;
> --Defendants' three motions to dismiss Prudential's tort claims;
> --Defendants' motion to dismiss Prudential's breach of warranty claim on statute of limitations grounds;
> --Defendants' motion to dismiss Prudential's claim under the New Jersey Consumer Fraud Act.
> Prudential's Petition for Writ of Mandamus at 6.

At a subsequent status conference before the magistrate judge, who had been handling discovery matters since the inception of the case, all parties agreed that the litigation did not require the services of a special master and asked that the magistrate judge inform the district court of their determination.

The district court apparently did not agree with the litigants' conclusion. Citing "the complexity of both the legal claims and the factual scenario involved in the litigation," the district court appointed Dean Manne to serve as a special master in the litigation pursuant to Fed.R.Civ.P. 53. In his order dated July 31, 1992, the district court judge defined the role of Dean Manne as follows:
A. To confer promptly with the parties regarding the status of this matter and determine what type and nature of proceedings are necessary for the master to become knowledgeable regarding the matters at issue herein and to carry out his duties as



991 F.2d 1080 Page 3
(Cite as: 991 F.2d 1080, *1082)

specified below;
B. To consider and resolve expeditiously any and all future disputes between the parties relating to discovery and other nondispositive motions made prior to the time of trial;
C. To fully consider and prepare reports to be submitted to the Court, including an exposition of all relevant facts and conclusions of law, concerning any and all future dispositive motions made prior to the time of trial.
(A49) The order specified Dean Manne's rate of compensation and provided that one-half of the master's bill was to be paid by Prudential and the other half by the Defendants. (A49-50)

Prudential subsequently moved to vacate the appointment on two grounds. First, it contended that Rule 53 does not permit the appointment of a special master to hear dispositive legal motions. Second, Prudential asserted that Dean Manne's prior work in the field suggests that he is unsympathetic to litigants such as Prudential and, therefore, incapable of dealing with a party in Prudential's position in an impartial manner.

By opinion dated October 13, 1992, the district court denied Prudential's motion to vacate the reference to the special master, and Prudential subsequently moved to certify the issue for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and to stay the proceedings before Dean Manne pending appeal. The district court denied the motion by opinion and order of October 21, 1992 (A279-88), and on November 3, 1992, Prudential filed the instant petition. [FN3]

FN3. An order staying all proceedings before the special master was subsequently entered by this court pending the outcome of Prudential's petition.

II.
[1] The standard for issuing a writ of mandamus is particularly stringent. A determination that the district court abused its discretion does not, in itself, warrant the issuance of the writ.
Because of the undesirability of making a district court judge a litigant and the inefficiency of piecemeal appeals, issuance of a writ of mandamus is limited to extraordinary cases. *In re School Asbestos Litigation,* 977 F.2d 764, 772 (3d Cir 1992); *In re Pruitt,* 910 F.2d 1160, 1167 (3d Cir. 1990). However, despite the general reluctance to grant writs of mandamus, we may do so provided that the petitioner demonstrates that it lacks adequate alternative means to obtain the relief sought and that the petitioner's right to the issuance of a writ is clear and undisputable. Our cases have also emphasized that mandamus must not be used as a mere substitute for appeal. *Westinghouse Electric Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1422 (3d Cir. 1991); *In re Pruitt,* 910 F.2d at 1167.
*1083 *Travellers International AG. v. Sue L. Robinson,* 982 F.2d 96, 98 (3d Cir. 1992). [FN4]

FN4. In *In re School Asbestos Litigation,* 977 F.2d 764, 774 (3d Cir 1992), Judge Becker referred to this court's preference that petitioners seek an interlocutory appeal under 28 U.S.C. § 1292(b) before a writ of mandamus is issued. *See also In re Bituminous Coal Operators' Ass'n. Inc.,* 949 F.2d 1165, 1168 n. 4. To the extent that we require a § 1292(b) application as a precondition to the filing of a petition for a writ of mandamus, we note that Prudential has sought 1292(b) certification and has been denied. *See supra* p 1082.

The Supreme Court has recognized that it is ultimately within the sound discretion of the court of appeals to issue writs of mandamus in cases such as the one before us. *La Buy v. Howes Leather Co.,* 352 U.S. 249, 255, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957). Since *La Buy,* mandamus has become "an accepted means to challenge a district court's order referring matters to a special master under Rule 53." *In re U.S.,* 816 F.2d 1083, 1086 (6th Cir.1987). *See also In re Bituminous Coal Operators' Ass'n, Inc.,* 949 F.2d 1165, 1168 (D.C.Cir.1991) (Citing *La Buy,* 352 U.S. at 256, 77 S.Ct. at 313) ("We grant the writ not because the district judge simply 'abused his discretion,' but because he has no discretion to impose on parties against their will 'a surrogate judge,' a substitute from the private bar charged with the responsibility for adjudication of the case.") We therefore turn to Prudential's petition.

III.
A.
The historical role of the special master informs our decision. Special masters were first utilized as judicial assistants to the court in the early years of the English chancery practice. *See* Kaufman, *Masters in the Federal Courts: Rule 53,* 58



991 F.2d 1080
(Cite as: 991 F.2d 1080, *1083)

Page 4

Colum.L.Rev. 452, 452 (1958). Although the practice was continued in the United States, id. at 453, beginning in 1912 the rules of equity restricted the use of masters to situations where an "exceptional condition" required it. Silberman, *Masters and Magistrates Part II: The American Analogue*, 50 N.Y.U.L.Rev. 1297, 1322 (1975).

In fact, much of today's Rule 53(b) is taken directly from Equity Rule 59 which was adopted by the Supreme Court in 1912 and provided:
Reference to Master--Exceptional, Not Usual
Save in matters of account, a reference to a master shall be the exception, not the rule, and shall be made only upon a showing that some exceptional condition requires it....
Rules of Practice in Equity, 226 U.S. 666 (1912).

As stated by Professor Silberman,
There seems to be no official comment as to why the restriction [requiring an exceptional condition] was added. However, in *Los Angeles Brush Mfg Corp. v. James*, 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481 (1927), the Court, per Chief Justice Taft, ascribed the rule's purpose to a shielding of equity litigants from the delay and expense that often accompanied reference to a master. Id. at 707, 47 S.Ct. at 288.
Id. at 1325, n. 161. [FN5]

> FN5. Although in more recent times this rationale seems to have taken a back seat to the Supreme Court's concern for the "abdication of the judicial function," *La Buy*, 352 U.S. at 256, 77 S.Ct. at 313, there can be little doubt that Chief Justice Taft's concerns also inform the rule's purpose.

It was not until the Federal Rules of Civil Procedure were adopted in December of 1937 that a clause was added to the rule that distinguished between jury trials and nonjury trials. The new language read: "in actions to be tried by a jury, a reference shall be made only when the issues are complicated." Although we have been unable to find any contemporaneous explanation as to why the Rules Committee saw fit to add the "complicated" standard to actions involving juries, statements made during a 1938 symposium on the Federal Rules suggest that the new clause was not intended to depart in any substantial way from Equity Rule 59:
*1084 [Complicated] is a very broad word and subject to a variety of interpretations, but coupled with the first sentence, '[A] reference to a master shall be the exception and not the rule,' it undoubtedly sets a limitation which the district judges will be inclined to feel is a rigorous limitation upon the exercise of their discretion in that regard.
Robert G. Dodge, statement to the Institute of Federal Rules, Cleveland, Ohio, July, 1938, in American Bar Association, Rules of Civil Procedure for the District Courts of the United States, with Notes, and Proceedings of the Institute on Federal Rules, Cleveland, Ohio, July 21-23, 1938, ed. by William W. Dawson, at 330 (1938).

B.
[2] Ordinarily, in order to determine whether a reference to a special master is permissible, it is necessary to ascertain the type of action underlying the reference. Fed.R.Civ.P. 53(b) presently provides:
Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

Thus, if the case is to be tried by a jury, the issues involved must be "complicated" before a special master may be appointed. If, however, there is to be a nonjury trial, an "exceptional condition" is required before a special master may be authorized. We emphasize, however, as did Mr. Dodge, who focused on the sentence preceding these directives, that in all cases a reference is to be "the exception and not the rule."

It is a matter of dispute between the parties as to whether the jury or nonjury standard applies in this case. Although Prudential's complaint in the underlying action seeks a jury trial, Prudential urges that the relevant standard to be applied at this stage of the proceeding is nevertheless the more demanding "exceptional condition" requirement. This is so because, as argued by Prudential, the determination of core issues, which must be decided prior to trial, must be tested under the nonjury standard of Rule 53, particularly since such issues are, and have always been, within the province and special competence of the appointed judiciary to decide.



991 F.2d 1080
(Cite as: 991 F.2d 1080, *1084)

Page 5

Indeed, in this very case the matters consigned by the district court to the master involve proceedings having to do with motions to dismiss, motions to strike defenses, summary judgment motions and discovery. See supra note 2. All of these proceedings must be resolved prior to trial and all universally and traditionally have been decided by judges without jury involvement. *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 712 (7th Cir.1984) (reference to special master required exceptional condition since "it was not made to assist a jury and did not call for an accounting or a damage calculation.").

Nevertheless, Rule 53 enables a judge to appoint a special master to "assist the jury in those exceptional cases where the legal issues are too complicated for the jury to handle alone." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962). The court in *Dairy Queen* cautioned, however, that "[e]ven this limited inroad upon the right to a jury should seldom be made and if at all only when unusual circumstances exist." *Id.* at n. 18, 82 S.Ct. at 900 n. 18, quoting *La Buy*, 352 U.S. at 258, 77 S.Ct. at 314 (internal quotation marks omitted). [FN6]

> FN6. *Ex parte Peterson*, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920), explained the functions that a special master could perform in assisting a jury. Because the district court's order of reference in the instant case assigned no such tasks to Dean Manne and because we have concluded that all of the functions to be performed by the master were to be conducted prior to trial and were inherently pre-trial in nature, the teaching of *Ex parte Peterson*, even if relevant today, cannot inform our decision. In particular, we call attention to the fact that *Ex parte Peterson* was decided before the enactment of the Federal Rules of Civil Procedure, the Federal Rules of Evidence and the Federal Magistrates Act, 28 U.S.C. §§ 631-639 (West Supp.1992) (originally enacted in 1968). Therefore, the decision in *Ex parte Peterson*, rendered in 1920, did not, and could not, interpret Rule 53(b) because, as we have observed, the Federal Rules of Civil Procedure were not adopted until 1937.

*1085 It is at least clear to us from the historical evidence that the "complicated" standard of Rule 53 was conceived to provide assistance to juries and for no other reason. [FN7] Significantly, in this case neither the original order of reference, nor any subsequent statements made by the district court in regard to the reference, mention any role the special master might play in assisting a potential jury. Rather, the district court, without making specific findings or giving explicit reasons as to the need for a special master in this case, stated only that Dean Manne was appointed "[b]ecause of the complexity of both the legal claims and the factual scenario involved in the litigation." District Court Opinion of October 13, 1992 at 2.

> FN7. For one of the more provocative and interesting discussions of Rule 53, see Brazil, *Authority to Refer Discovery Tasks to Special Masters: Limitations on Existing Sources and the Need for a New Federal Rule*, in W. Brazil, G. Hazard Jr. & P. Rice, Managing Complex Litigation: A Practical Guide to the Use of Special Masters 305 (1983).

As defined by the district court's order of July 31, 1992, Dean Manne's role was to confer with the parties, resolve nondispositive motions made prior to the time of trial, resolve discovery disputes between the parties and "prepare reports to be submitted to the Court, including an exposition of all relevant facts and conclusions of law, concerning any and all future dispositive motions made prior to the time of trial." See supra p. 1082. These tasks are normally conducted by a district court with, perhaps, the assistance of a magistrate judge, whether or not a jury is destined to try the underlying case. [FN8]

> FN8. As Prudential points out, "... by definition summary judgment motions are legal motions to be granted by the judge only when no disputed facts exist. See Fed.R.Civ.P. 56." Prudential's Petition for Writ of Mandamus at 18. See also *Stauble v. Warrob*, 977 F.2d 690, 696-97 (1st Cir.1992) (holding that it is impermissible to refer liability determinations to a special master over the objections of a party where the particular determination is essentially a judicial function).

Moreover, rather than utilizing the special master to perform some specialized matters of account or difficult computation of damages, see Fed.R.Civ.P. 53(b), or some other time consuming or detailed tasks that the district court judge or a magistrate judge would be less efficient in accomplishing, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



991 F.2d 1080
(Cite as: 991 F.2d 1080, *1085)

Page 6

district court in this case merely appears to have substituted a master for the magistrate judge, who had been managing the case for five years with the approval of all parties. (A242) Indeed, the district court has neither given us specific reasons for appointing a special master nor has it called our attention to any particular, unique, special or exceptional circumstances with which a magistrate judge could not deal effectively or which would require that a magistrate judge be replaced by a special master. [FN9]

> FN9. The notes to Rule 53 recognize that "... the existence of [magistrate judges] may make the appointment of outside masters unnecessary in many instances..." Fed.R.Civ.P. 53(a) Advisory Committee's note (1983 amendment). *See infra* p. 1087.

Finally, the plain language of the rule supports Prudential's contention that the jury standard of Rule 53 is inapplicable to the instant petition. Recall that Rule 53(b) provides, "*[i]n actions to be tried by a jury* a reference shall be made only when the issues are complicated" (emphasis added). Although, admittedly, Prudential has requested a jury trial in its complaint, the action currently before us is not yet a jury trial, nor is there any assurance, or even probability, that Prudential's claims ever will be presented to a jury. Depending on the disposition of the various motions to dismiss petitioner's claims and motions for summary judgment, a jury may never be empaneled in this case. Since, as we have shown, the "complicated" standard of Rule 53(b) contemplates the use of a master only for purposes of assisting a jury, we decline to apply the jury standard in this case where the need for a jury is as yet undetermined. Thus, in light of the pre-trial role *1086 that the district court assigned to the special master, we will measure the district court's appointment of a special master by the nonjury standard of Rule 53.

C.

[3] The "exceptional condition" standard of Rule 53(b) has been addressed by a significant number of courts. [FN10] As noted, the seminal Supreme Court case regarding the application of the rule is *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), which involved two underlying antitrust actions affecting ninety-three plaintiffs and twelve defendants. Concerned by the complicated nature of the case, the time it would take to try and the congestion of the court calendar, the district court in *La Buy* referred the case to a special master, authorizing him to "take evidence and to report the same to [the] Court together with his findings of fact and conclusions of law." *Id.* at 253, 77 S.Ct. at 312.

> FN10. Because we conclude that the nonjury standard applies in this case, we need not reach the question of how, if at all, the Rule 53(b) jury standard differs from the nonjury standard. We note, however, that as a definitional matter, it is difficult to understand how a reference to a master may be "the exception," as required by the first sentence of Rule 53(b), and yet be made in the absence of an "exceptional condition."

The Supreme Court affirmed the Seventh Circuit's issuance of the mandamus writ to withdraw the reference, holding, in part, that the complexity of the legal and factual issues did not warrant the appointment of a special master: "[o]n the contrary, we believe that this is an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an *ad hoc* basis and ordinarily not experienced in judicial work." *Id.* at 259, 77 S.Ct at 315. Therefore, according to *La Buy*, as the complexity of the litigation increases, so, too, does the need for the district judge's personal attention. [FN11] A district court has no discretion to delegate its adjudicatory responsibility in favor of a decision maker who has not been appointed by the President and confirmed by the Senate. *See La Buy*, 352 U.S. at 256, 77 S.Ct. at 313.

> FN11. In its opinion of October 13, 1992, the district court distinguishes its reference to Dean Manne from that in *La Buy* by suggesting that while the district court in *La Buy* referred the entire action to a special master for trial on the merits, in this case only pre-trial motions were referred. Moreover, the district court stated that it planned to "review *de novo* every finding of law by the special master to ensure that the final dispositive decision-making comes from an Article III judge rather than a Special Master appointed solely to facilitate the disposition of a complex and lengthy case." District Court Opinion of Oct. 13, 1992 at 9. (A241)
> We are troubled by the distinction made by the district court. Even in those cases where a district



991 F.2d 1080
(Cite as: 991 F.2d 1080, *1086)

Page 7

court has exceeded its authority by referring an entire trial to a special master, the district court presumably has retained authority to review *de novo* all conclusions of law. *Stauble v. Warrob*, 977 F.2d 690, 697 (1st Cir.1992). Indeed, such conclusions must be adopted by the district court before orders pursuant to them can be issued. Additionally, depending upon how the summary judgment motions and the motions to dismiss are decided by Dean Manne, the district court's reference in this case may well encompass the entire action.

Given the constraints that *La Buy* places on Rule 53, we cannot say on the record before us, and on the various representations made to us on appeal based on the record, that Prudential's claims establish an exceptional case. As we have noted, the district court has not called our attention to any exceptional qualities of this case nor has it fashioned any findings of fact nor given us any compelling, specific reasons from which we could discern that this case is, indeed, exceptionally different from other cases that have presented complex legal and factual claims, but in which no special masters were sought or appointed. *See, e.g., In re Japanese Electronic Products*, 723 F.2d 238 (3d Cir.1983), *aff'g in part and rev'g in part* 513 F.Supp. 1100 (E.D.Pa.1981), *rev'd*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987) (action against 24 Japanese electronics producers alleging antitrust, tariff, and antidumping violations); [FN12] *see also In re* *1087 *School Asbestos Litigation*, 977 F.2d 764 (3d Cir.1992) (asbestos litigation involving over 30,000 school districts' and the laws of 54 jurisdictions). Beyond the district court's generalized statement that Prudential's legal claims and the factual scenario developed are complex, it provides only the following explanation for the reference:

FN12 For a more complete summary of the procedural history and substantive issues involved in this complex and lengthy litigation, *see In re Japanese Electronics Products Antitrust Litigation*, 807 F.2d 44, 46-47 (3d Cir.1986).

[T]he volume of documents, the length of the proceedings, the number of the motions and the breadth of documents accompanying the motions, and the inherent complexity of an asbestos litigation all demonstrate that the matters encompassed in the reference in this case not only meet the "complexity" standard of the Rules but also are unique in their complexity.
District Court Opinion of October 13, 1992 at 8-9.

Far from justifying the appointment of a special master, however, the factors listed by the district court have been specifically rejected by the Supreme Court as justifications for referring a case to a special master. Neither the volume of work generated by a case nor the complexity of that work will suffice to meet the "exceptional condition" standard promulgated by Rule 53. *La Buy*, 352 U.S. at 259, 77 S.Ct. at 315.

Additionally, *La Buy* was decided more than a decade prior to the enactment of the Federal Magistrate's Act, 28 U.S.C. §§ 631-639 (West Supp.1992) (originally enacted in 1968). Since the implementation of that Act, the analysis, reasoning and conclusions of *La Buy* are even more compelling in disfavoring the appointment of special masters. Much of the concern over docket congestion has been addressed by the appointment of magistrate judges who are expressly authorized by statute to assist the district court with pre-trial matters, including discovery and dispositive legal motions. 28 U.S.C. § 636(b)(1) (West Supp.1992); *see also Mathews v. Weber*, 423 U.S. 261, 270-72, 96 S.Ct. 549, 554-55, 46 L.Ed.2d 483 (1976) (magistrate judge assisting with pre-trial proceedings is not performing the role of a special master pursuant to Fed.R.Civ.P. 53). It stands to reason, therefore, that any contemporary examination of the "exceptional condition" standard must be made in light of the Magistrate's Act and the current availability of magistrate judges to whom Congress has specifically authorized the referral of pre-trial matters.

Accordingly, we next turn our attention to the question of whether there is some exceptional aspect of the underlying proceedings giving rise to this petition that might require the appointment of a special master in lieu of a magistrate. *See In re Dept of Defense*, 848 F.2d 232, 240-41 (D.C.Cir.1988) (Starr, J., dissenting). Again, nothing in the record informs us that Dean Manne is more qualified to recommend how the pre-trial motions in this case should be decided than is a magistrate judge who has been involved with the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



991 F.2d 1080
(Cite as: 991 F.2d 1080, *1087)

Prudential claims and the defenses thereto for more than five years and who has attended approximately forty status conferences. We are not persuaded that the academic credentials of Dean Manne, as impressive as they are, can justify replacing a federally appointed magistrate judge, who, by all accounts, has an excellent working knowledge of the facts and issues in the case and who has thus far ably supervised pre-trial activities.

We are familiar with representative instances in which special masters have not been approved, as well as those cases in which they have been authorized. On the one hand, the appointment of a special master has been disapproved in the following cases: *Apex Fountain Sales, Inc. v. Kleinfeld,* 818 F.2d 1089, 1096-97 (3rd Cir.1987) (referral to special master of contempt motion made during implementation stage of court order was inappropriate where motion presented simple question of law, and depending on disposition of legal issue, a relatively simple factual question); *Bennerson v. Joseph,* 583 F.2d 633 (3d Cir.1978) (reference to special master to conduct hearings in nonjury case was error where hearings assigned to master took only three days, produced 444 page transcript and concerned simple factual matters that turned on credibility); *Stauble v. Warrob,* 977 F.2d 690 (1st Cir.1992) (special master disapproved in nonjury case involving *1088 complex issues, voluminous record, and multiple defendants where reference authorized master to try the case); *In re U.S.,* 816 F.2d 1083, 1088-91 (6th Cir.1987) (calendar congestion, complexity of issues, possibility of lengthy trial, extraordinary pretrial management in case with 250 parties, and public interest in quick resolution of case did not satisfy "exceptional condition" for appointment of special master to determine dispositive pre-trial legal issues); *Jack Walters & Sons Corp. v. Morton Bldg.,* 737 F.2d 698, 712 (7th Cir.1984) (lack of time for lengthy trial, several thousand pages of materials, and large number of issues did not satisfy "exceptional condition" standard); *Wilver v. Fisher,* 387 F.2d 66, 69 (10th Cir.1967) (reference to special master in nonjury case was error where district court should have heard plaintiff's motion for default based on defendant's failure to answer interrogatories rather than appointing master to supervise answers to interrogatories).

On the other hand, the appointment of a special master has been approved in the following cases: *Halderman v. Pennhurst State School and Hosp.,* 612 F.2d 84, 111-12 (3d Cir.1979) (special master appropriate to supervise reorganization of major health institution); *Ruiz v. Estelle,* 679 F.2d 1115, 1160-61 (5th Cir.1982) ("exceptional condition" as well as court's inherent equitable power justified reference where special master appointed to supervise implementation of order at remedy stage); *Gary W. v. Louisiana,* 601 F.2d 240, 244-45 (5th Cir.1979) (special master appropriate to supervise multi-year implementation of court order affecting care of all mentally retarded children in Louisiana); *U.S. v. Horton,* 622 F.2d 144 (5th Cir.1980) (reference to special master was proper for purpose of assisting jury with complex accounting dispute); *Williams v. Lane,* 851 F.2d 867, 884 (7th Cir.1988) (upheld appointment of master in nonjury case to supervise enforcement of court order pertaining to prison conditions where judge's busy docket prevented him from doing so himself); *Arthur Murray, Inc. v. Oliver,* 364 F.2d 28 (8th Cir.1966) (reference to master for accounting analysis approved in nonjury case).

Our reading of these authorities bolsters our conclusion that here, on the instant record, the Rule 53(b) requirement of an "exceptional circumstance" is not satisfied. In short, we cannot in good conscience, and in light of the record and of those authorities that have approved or disapproved of special masters, hold this case to be more the exception than the rule.

IV.
[4] In normal course, where we have looked to a different legal standard than that applied by the district court, we have generally vacated the district court's order and remanded so that the district court might give effect to the correct standard we announced. *U.S. v. Gypsum,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Black United Fund of N.J., Inc. v. Kean,* 763 F.2d 156 (3d Cir.1985).

In this case, however, we see little point in adhering to a remand procedure because we can envisage no possibility that the applicable nonjury standard of Rule 53 can be satisfied. This being so, no order of reference defining or redefining the master's role, no matter how restrictive in scope, could be framed. The instruction of *La Buy,* the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



991 F.2d 1080  
(Cite as: 991 F.2d 1080, *1088)

Page 9

availability of a competent magistrate judge familiar with the earlier proceedings, the overwhelming preference of the Supreme Court and other case authorities for legal issues to be determined by Article III judges and, in particular, the absence of any exceptional conditions revealed by the record all persuade us that in this case, at this time, it would be both error and a waste of valuable judicial resources not to direct that the order of reference be vacated.

We will therefore issue a writ of mandamus directing the district court to withdraw and vacate its reference to the special master. [FN13]

> FN13. In support of its petition, Prudential also argues that the appointment of Dean Manne should be vacated because of his alleged appearance of partiality evidenced by his academic writings. Prudential's Petition for Writ of Mandamus at 23-33. Because we conclude that the district court exceeded its authority in appointing a special master in the first instance, we neither consider nor address the argument concerning alleged biases of Dean Manne.

Briefs and Other Related Documents (Back to top)

1992 WL 12134261 (Appellate Brief) Reply Brief of Petitioners (Dec. 09, 1992)

1992 WL 12134260 (Appellate Brief) Responsive Brief of Defendant-Respondents, United States Gypsum Company, W.R. Grace and Co.-Conn., U.S. Mineral Products Company, Keene Corporation, and Asbestospray Corporation (Nov. 30, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

