# EXHIBIT 1

LEXSEE 2005 U.S. DIST. LEXIS 5315

**BRADBURN PARENT TEACHER STORE, INC., On Behalf of Itself and Others Similarly Situated v. 3M (MINNESOTA MINING AND MANUFACTURING COMPANY)**

**CIVIL ACTION NO. 02-7676**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2005 U.S. Dist. LEXIS 5315; 2005-1 Trade Cas. (CCH) P74,769*

**March 30, 2005, Decided**

**SUBSEQUENT HISTORY:** Amended by, On reconsideration by *Bradburn Parent Teacher Store, Inc. v 3M, 2005 U.S. Dist. LEXIS 11375 (E.D. Pa., June 9, 2005)*

**PRIOR HISTORY:** *Bradburn Parent/Teacher Store, Inc. v. 3M, 2004 U.S. Dist. LEXIS 25246 (E.D. Pa., Dec. 10, 2004)*
*Le Page's Inc v 3M, 2000 U.S. Dist. LEXIS 3087 (E.D. Pa., Mar. 14, 2000)*

**DISPOSITION:** Plaintiff's Motion for Partial Summary Judgment was deied.

**COUNSEL:** [*1]    For BRADBURN PARENT/TEACHER STORE, INC., ON BEHALF OF ITSELF AND OTHERS SIMILARLY SITUATED, Plaintiff: CHARLES M. JONES, JONES OSTEEN JONES & ARNOLD, HINESVILLE, GA; GREGORY BARUCH, BERRY & LEFTWICH, WASHINGTON, DC; J. DANIEL LEFTWICH, BERRY & LEFTWICH, WASHINGTON, DC; ROBERT STEPHEN BERRY, BERRY & LEFTWICH, WASHINGTON, DC

For PUBLIX SUPER MARKETS, INC., Plaintiff: ANTHONY J. BOLOGNESE, BOLOGNESE & ASSOCIATES, LLC, PHILADELPHIA, PA; PAUL E. SLATER, CHICAGO, IL.

For 3M (MINNESOTA, MINING AND MANUFACTURING COMPANY), Defendant: BRENT N. RUSHFORTH, HELLER EHRMAN WHITE & MCAULIFFE, LLP, WASHINGTON, DC; DAVID W. ENGSTROM, HARKINS CUNNINGHAM, PHILADELPHIA, PA; ELEANOR ILLOWAY, HARKINS CUNNINGHAM LLP, PHILADELPHIA, PA; JOHN G. HARKINS, JR., HARKINS CUNNINGHAM, PHILADELPHIA, PA; KIT A.

PIERSON, HELLER EHRMAN WHITE AND MCAULIFFE, LLP, WASHINGTON, DC; MARTINA M. STEWART, HELLER EHRMAN WHITE & MCAULIFFE LLP, WASHINGTON, DC; PAUL ALEXANDER, HELLER, EHRMAN, WHITE & MCAULIFFE, MENLO PARK, CA.

For HENKEL CORPORATION, Movant: ELIZABETH S. CAMPBELL, PEPPER HAMILTON LLP, PHILA, PA; MURRAY S. LEVIN, PEPPER HAMILTON L.L.P., PHILADELPHIA, PA.

For MEIJER DISTRIBUTION, INC., MEIJER, INC. [*2]    , Movants: BRENT W. LANDAU, COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC, WASHINGTON, DC; DANIEL A. SMALL, COHEN, MILSTEIN, HAUSFELD AND TOLL, WASHINGTON, DC; IRA NEIL RICHARDS, TRUJILLO RODRIQUEZ & RICHARDS, PHILADELPHIA, PA.

For HENKEL CONSUMER ADHESIVES, INC., Movant: MURRAY S. LEVIN, PEPPER HAMILTON L.L.P., PHILADELPHIA, PA.

**JUDGES:** John R. Padova, J

**OPINION BY:** John R. Padova

**OPINION: MEMORANDUM**

Padova, J.

Plaintiff, Bradburn Parent Teacher Store, Inc. ("Bradburn"), has brought this antitrust class action against Defendant 3M for damages arising out of 3M's anti-competitive conduct during the time period from October 2, 1998 through the present. Presently before the

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

Court is Bradburn's Motion for Partial Summary Judgment pursuant to *Federal Rule of Civil Procedure 56(c)*. For the reasons that follow, said Motion is denied. Pursuant to *Rule 56(d)*, however, the Court finds that certain materia lfacts appear without substantial controversy and shall be deemed established upon the trial of this action.

## I. BACKGROUND

The conduct of 3M which forms the basis of this class action lawsuit was the subject of a prior lawsuit in this Court, [*3] Le Page's, Inc. v. 3M, Civ. A. No. 97-3983 (E.D. Pa.). In that suit, LePage's, Inc., a competing supplier of transparent tape, sued 3M alleging, inter alia, unlawful maintenance of monopoly power in violation of Section 2 of the Sherman Act, *15 U.S.C. § 2*. After a nine-week trial, the jury found in favor of LePage's on its unlawful maintenance of monopoly power claim. The jury awarded damages in the amount of $ 22,828,899.00, which were subsequently trebled to $ 68,486,697.00. See *Le Page's Inc. v 3M, 2000 U.S. Dist. LEXIS 3087, Civ. A. No 97-3983, 2000 WL 280350 (E.D. Pa. Mar. 14, 2000)*. 3M filed a Motion for Judgment as a Matter of Law, which this Court denied on March 14, 2000. See *id. 2000 U.S. Dist. LEXIS 3087*. 3M thereafter appealed this Court's denial of its Motion for Judgment as a Matter of Law to the United States Court of Appeals for the Third Circuit ("Third Circuit"). A Third Circuit panel initially reversed this Court's Order upholding the jury's verdict and directed the Court to enter judgment for 3M on LePage's' unlawful maintenance of monopoly power claim. *LePage's, Inc v 3M, 277 F. 365 (3d Cir. 2002) ("LePage's I")*. Upon rehearing en banc, the Third [*4] Circuit vacated the panel decision and reinstated the original jury verdict against 3M. *LePage's, Inc. v. 3M, 324 F.3d 141 (3d Cir. 2003) ("LePage's II")*, cert. denied *159 L. Ed. 2d 835, 124 S. Ct. 2932 (2004)*

The Complaint in the instant litigation alleges one count of monopolization in violation of *Section 2 of the Sherman Act*. The Complaint asserts that 3M unlawfully maintained monopoly power in the transparent tape market through its bundled rebate programs n1 and through exclusive dealing arrangements with various retailers. The Complaint asserts that, as a result of 3M's conduct, Bradburn and other class members n2 have "suffered antitrust injury." (Compl. P 27). The damages period in this case runs from October 2, 1998 to the present. (Id P 2). Bradburn now moves for partial summary judgment as to liability on Count One of the Complaint.

n1 As described at length in the LePage's litigation, 3M's bundled rebate programs provided purchasers with significant discounts on 3M's products. However, the availability and size of the rebates were dependant upon purchasers buying products from 3M from multiple product lines. See *LePage's II, 324 F.3d at 154-55*.

[*5]

n2 On August 18, 2004, the Court certified as a class "all persons who directly purchased invisible or transparent tape from 3M between October 2, 1998 and the present, who have not purchased, for resale under the class member's own label, any 'private label' invisible or transparent tape from 3M or any of 3M's competitors at any time from October 2, 1988 to the present." (August 18, 2004 Memorandum and Order.)

## II. LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. An issue is "genuine" if the evidence is such that a reasonable juror could to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A dispute is "material" if the facts in question might affect the outcome of the case under governing law. Id. [*6] When considering a motion for summary judgment, the Court must accept as true the evidence presented by the non-moving party and draw all justifiable inferences its favor. *Id. at 255.*

The party seeking summary judgment bears the initial burden of showing a basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party can meet its burden "simply by 'showing' - that is, pointing out to the district court -that there is an absence of evidence to support the non-moving party's case." *Id. at 325*. Once the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*. Summary judgment should be granted if the non-moving party fails to make a factual showing "sufficient to establish the [*7] existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, 477 U.S at 322*

## III. DISCUSSION

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

Bradburn argues that every element of liability on Count One of the Complaint has already been fully and fairly litigated and lost by 3M in LePage's, so that collateral estoppel now applies to the following five factual determinations:

> 1. The relevant market in this matter is the market for invisible and transparent tape for home and office use in the United States.

> 2. 3M possessed monopoly power in the relevant market, including the power to control prices and exclude competition in the relevant market, during the period from June 11, 1993 to at least October 13, 1999 ("the relevant period").

> 3. 3M willfully maintained such monopoly power by predatory or exclusionary conduct during the relevant period.

> 4. 3M's predatory or exclusionary conduct during the relevant period included:

> a) 3M's rebate programs, such as Executive Growth Fund, Partnership Growth Fund, Brand Mix Program;

> b) 3M's Market Development Fund, and other payments to customers conditioned on customers achieving certain [*8] sales goals or growth targets;

> c) 3M's efforts to control, or reduce, or eliminate private label tape;

> d) 3M's efforts to switch customers to 3M's more expensive branded tape; and

> e) 3M's efforts to raise the price consumers pay for Scotch tape.

> 5. 3M's predatory or exclusionary conduct harmed competition

> during the relevant period. n3

n3 In its Motion for Partial Summary Judgment, Bradburn moved the Court for collateral estoppel as to 41 proposed 'findings.' (See Doc. No. 80). However, the Court understands that Bradburn has consolidated these 41 findings into five factual determinations in its Reply in Support of Motion for Partial Summary Judgment. (See

Pl's Prop. Order, attached to Doc. No. 96; see also Tr. 11/05/2003 at 80.) Accordingly, the Court confines its analysis to the five issues enumerated above.

A. Propriety of Summary Judgment Procedure

Based on these five factual determinations, Plaintiff moves for partial summary judgment pursuant to *Rule 56(c)* as to liability [*9] on Count One of the Complaint. *Rule 56(c)* provides that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." *Fed. R. Civ. P. 56(c)*. Plaintiff argues that 3M's liability during the relevant period has been established because the jury in LePage's determined that 3M violated the antitrust laws by engaging in anti-competitive conduct. In response, 3M argues that partial summary judgment is not appropriate as to liability under *Rule 56(c)*. 3M notes that, to establish liability under *Section 2 of the Sherman Act*, a plaintiff must prove not only that the defendant engaged in anti-competitive conduct, but also that the plaintiff suffered antitrust injury as a result of the defendant's unlawful acts. Accordingly, 3M contends that, because liability and damages in antitrust matters cannot be disaggregated in the manner contemplated by *Rule 56(c)*, partial summary judgment on the issue of the existence of anti-competitive conduct alone would be improper.

*Section 2 of the Sherman Act* provides that "every person who shall monopolize, or attempt [*10] to monopolize, or combine or conspire with any other person . . . to monopolize any part of the trade" is guilty of an offense and subject to penalties. *15 U.S.C. § 2*. "A violation of *Section 2* consists of two elements: (1) possession of monopoly power and (2) ' . . . maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *U.S. v. Dentsply Intern., Inc., 399 F.3d 181, 186 (3d Cir. 2005)* (quoting *Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 480, 119 L. Ed. 2d 265, 112 S. Ct. 2072 (1992))*. The plaintiff must also allege that it suffered antitrust injury as the result of the defendant's unlawful acts.*LePage's v. 3M, 1997 U.S. Dist. LEXIS 18501, Civ. A. No. 97-3989, 1997 WL 734005, at *7 (E.D. Pa. Nov. 14, 1997)*. Accordingly,

> in order to have a claim for relief, a plaintiff must establish not only antitrust law violation by defendant but that he has been injured thereby. Proof of antitrust law violation alone is not enough. Proof of damage or injury to the plaintiff result-

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

ing therefrom is of the essence of the claim.

*Carswell Trucks, Inc. v. Int'l Harvester Co., 334 F. Supp. 1238, 1239 (S.D.N.Y. 1971)* [*11] (citing *McCleneghan v. Union Stock Yards of Ohmaha, 349 F.2d 53 (8th Cir. 1965); Winckler & Smith Citrus Products Co. v. Sunkist Growers, Inc., 346 F.2d 1012 (9th Cir. 1965); Haverhill Gazette Co. v. Union Leader Corp., 333 F.2d 798 (1st Cir. 1964); Herman Schwabe, Inc. v. United Shoe Mach. Corp., 297 F.2d 906, 909 n.4 (2d Cir. 1962)).*

As proof of antitrust injury is necessary to establish liability under *Section 2 of the Sherman Act,* Bradburn is not entitled to partial summary judgment on the issue of liability unless it has established that there is no genuine issue as to the fact that it was injured as a result of 3M's antitrust violations. See *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc., 553 F. Supp. 962, 965-66 (N.D. Ill. 1982)* (denying plaintiff's motion for partial summary judgment as to antitrust liability where findings in prior action did not establish that defendant's antitrust violations proximately caused injury to plaintiff); *Carswell, 334 F. Supp. at 1239-40* (denying plaintiff's motion for partial summary judgment as to antitrust liability where there was [*12] "sharp dispute between the parties" as to whether plaintiff was injured by defendant's antitrust actions); see generally 18 Charles A. Wright, et al., Federal Practice and Procedure § 2736, at 306 (2d ed. 2002) (hereinafter "Wright and Miller") (noting that "if there is no liability without damage and damages are in dispute, summary judgment should not be granted" pursuant to *Rule 56(c)).* Here, the parties do not dispute that genuine issues remain as to whether Bradburn has sustained injury resulting from 3M's anti-competitive conduct. Accordingly, Bradburn's Motion for Partial Summary Judgment is denied pursuant to *Rule 56(c)*. n4

n4 The Court further notes that Bradburn seeks partial summary judgment as to liability only for the time period from June 11, 1993 through October 13, 1999, rather than for the entire period of time at issue in this litigation. However, "the Federal Rules of Civil Procedure do not provide for partial summary judgment of a portion of a single claim." *Connelly v. Wolf, Block, Schorr and Solis-Cohen, 463 F. Supp. 914, 919 (E.D. Pa. 1978)* (citing *Coffman v. Fed Labs., Inc., 171 F.2d 94 (3d Cir. 1948)).*

[*13]

Bradburn alternatively argues that the Court should invoke *Rule 56(d)* and find that the five proposed factual

determinations set forth above are established without substantial controversy in this action. *Federal Rule of Civil Procedure 56(d)* provides that:

> If on motion under [*Rule 56*] judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court . . . shall if practicable ascertain what material facts exist without substantial controversy . . . . . It shall thereupon make an order specifying the facts that appear without substantial controversy . . . . Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

*Fed. R. Civ. P. 56(d). Rule 56(d)* "empowers the court to withdraw some issues from the case and to specify those facts that really cannot be controverted." *Cohen v. Bd. of Trs. of Univ. of Med. and Dentistry of N.J., 867 F.2d 1455, 1463 (3d Cir. 1989)* (citations omitted). Indeed, "*Rule 56(d)* imposes a duty on a court that does not fully adjudicate a [*14] case on a motion for summary judgment to make an order formulating the issues for trial, to the extent practicable." *Connelly, 463 F. Supp. at 919-20* (citing *Associated Hardware Supply Co. v. Big Wheel Distrib. Co., 355 F.2d 114 (3d Cir. 1965)).* When issuing an order pursuant to *Rule 56(d),* "permits the court to retain full power to make one complete adjudication on all aspects of the case when the proper time arrives." *Colasanto v. Life Ins. Co. of N. America, 100 F.3d 203, 210 (1st Cir. 1996)* (quoting Wright and Miller, supra, § 2737, at 318; see also *Fed Deposit Ins. Corp. v. Massingill, 24 F.3d 768, 774 (5th Cir. 1994).* Accordingly, Court will next determine whether any of the above referenced factual determinations from LePage's may be deemed established in this case pursuant to *Rule 56(d).* See *Connelly, 463 F. Supp. at 919-20.*

B. Collateral Estoppel

Courts apply federal common law principles of issue preclusion when determining the preclusive effect of a prior federal action. *Burlington N. R.R. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1231 (3d Cir. 1995).* [*15] n5 Under the doctrine of issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States, 440 U.S. 147, 153, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979).* The doctrine of issue preclusion is derived from "the simple principle that later courts should honor the first actual decision of a matter that has

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

been actually litigated." *Burlington, 63 F.3d at 1231* (citation omitted). Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979).*

> n5 Throughout this opinion the Court will use the phrase "issue preclusion" and "collateral estoppel" interchangeably. See *Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999)* (noting that the doctrine of collateral estoppel is now commonly referred to as issue preclusion)

[*16]

Here, Bradburn, which was not a party to the LePage's litigation, seeks to use issue preclusion offensively against 3M, which was a party to LePage's. It is well-settled that "a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Parklane, 439 U.S. at 326.* This form of issue preclusion is also known as offensive non-mutual collateral estoppel. n6 *Burlington. 63 F.3d at 1232.*

> n6 For the sake of simplicity, the Court will refer to the doctrine of offensive non-mutual collateral estoppel as "collateral estoppel" and "offensive collateral estoppel" when addressing the legal rule which governs the preclusive effect of a prior judgment in this case. See *Raytech Corp v. White, 54 F.3d 187, 190 n.5 (3d Cir. 1995).*

The party seeking estoppel must show that the following four elements are satisfied: "(1) the issue sought to be precluded [*17] [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) that issue [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 342 F.3d 242, 252 (3d Cir. 2003)* (quoting *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 (3d Cir. 2002)).* In addition, the application of offensive non-mutual collateral estoppel is "subject to an overriding fairness determination by the trial judge." *Burlington, 63 F.3d at 1232.* The trial court has "broad discretion to determine when [collateral estoppel] should be applied." *Parklane, 99 S. Ct. at 651.*

As mentioned above, Bradburn seeks collateral estoppel as to the following five issues: (1) the definition of relevant market in this matter; (2) 3M's monopoly power in the relevant market from June 11, 1993 to October 13, 1999; (3) 3M's willful maintenance of such monopoly power; (4) the nature of 3M's predatory or exclusionary conduct during the relevant period; and (5) the harmful effect of 3M's conduct on competition [*18] during the relevant period. The Court will first determine whether these issues satisfy the four elements for collateral estoppel, and then resolve whether fairness considerations counsel against the application of collateral estoppel in this case.

1. Identity of the issues

The first element that must be satisfied for the application of collateral estoppel is that the issue sought to be precluded is the same as that involved in the previous action. *Burlington, 63 F.3d at 1231-32.* "Identity of the issues is established by showing that the same general rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000)* (quoting Wright and Miller, supra, § 4425, at 656-57). To defeat a finding of legal identity for purposes of issue preclusion, "the difference in the applicable legal standards must be 'substantial.'" *Raytech, 54 F.3d at 191* (quoting 1B James W. Moore et al., Moore's Federal Practice P 443[2], at 572). A finding of factual identity, on the other hand, is defeated if the party seeking collateral estoppel would have [*19] to introduce different evidence to prove the issue in this litigation than was required in the prior action. See *Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177, 1183 (3d Cir. 1972).*

Bradburn, which initially sought to collaterally estop 3M from relitigating the five issues mentioned above for the entire span of time relevant to the instant litigation, has revised its Motion to cover only the time period from June 11, 1993, the date on which the conduct at issue in LePage's began, to October 13, 1999, the date on which the jury in LePage's rendered its verdict. (See Pl's Reply at 4-7; see also Tr. 11/05/03 at 81.) n7 3M argues that the issues for which Bradburn seeks collateral estoppel for the period from June 11, 1993 through October 13, 1999 are not factually identical to the issues determined by the jury in LePage's, because the evidence presented in LePage's "focused" on the time span from 1993 through 1998. (Def's Resp. at 6 n.4.) 3M, however, admits that "there was [sic] a small handful of exhibits in LePage's providing factual information relating to 1999." (Id.) In addition, neither the jury charge [*20] and the jury verdict form in the LePage's trial limited the jury's deliberations to a time period ending in 1998. See LePage's Trial Tr. Vol. 34, pp. 109-180; LePage's Jury Verdict Form, Questions 1-6. Thus, while the "focus" of the LePage's trial may have been 3M's conduct between June 11, 1993

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

and 1998, the jury in fact considered 3M's conduct from June 11, 1993 through October 13, 1999, the date on which it rendered its verdict. Thus, for the period from June 11, 1993 through October 13, 1999, the issues for which Bradburn seeks collateral estoppel in this case are the same as those before the jury in LePage's. Accordingly, the Court finds that all five issues Bradburn seeks to preclude satisfy the first element for the application of collateral estoppel for the time period from June 11, 1993 through October 13, 1999.

n7 Indeed, it is axiomatic that collateral estoppel cannot apply to the jury's factual determinations in LePage's for a time period that was not at issue in that trial. The jury's findings in LePage's necessarily were based upon the evidence adduced at trial, "from which they cannot be severed without mutilating their significance." Int'l Shoe Mach. Corp. v. United Shoe Machinery Corp., 315 F.2d 449, 456 (1st Cir. 1963). At the same time, however, the issues litigated in LePage's are not factually different from the issues in the instant litigation merely because the damages period here extends beyond the period which the jury considered in LePage's. See, e.g., Oberweis, 553 F. Supp. at 966 (collateral estoppel in antitrust action proper for time period at issue in prior proceeding even though later litigation alleged longer period of damages).

[*21]

2. Actual litigation

The second element that must be satisfied for the application of collateral estoppel is that the issue sought to be precluded was actually litigated in the previous action. Burlington, 63 F.3d at 1231-32. With the exception of the relevant market definition, 3M does not dispute that the issues for which Bradburn seeks collateral estoppel were actually litigated in LePage's. 3M argues that the definition of relevant market in this matter was not actually litigated in LePage's because the parties in LePage's had stipulated to the relevant product market n8

n8 In antitrust actions, the relevant market is comprised of both a geographic and a product market. Fresh Made, Inc. v. Lifeway Foods, Inc., 2002 U.S. Dist. LEXIS 15098, No. Civ. A. 01-4254, 2002 WL 31246922, at *5 (E.D. Pa. Aug. 9, 2002) (citing Tunis Bros. Co. v. Ford Motor Co., 952 F.2d 715, 722-26 (3d Cir. 1992)).

Collateral estoppel applies "only as to those matters in issue or points controverted [*22] . . . The inquiry must always be as to the point or question actually litigated." Regions Hosp. v. Shalala, 522 U.S. 448, 464, 139 L. Ed. 2d 895, 118 S. Ct. 909 (1998) (quoting Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L. Ed. 195 (1877)) (emphasis omitted). "Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion." Otherson v. Dep't of Justice, 228 U.S. App. D.C. 481, 711 F.2d 267, 274-75 (D.C. Cir. 1983); see also U.S. v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002); Kane v. Town of Harpswell, 254 F.3d 325, 329 (1st Cir. 2001). This principle extends to stipulations regarding the product market in antitrust matters. See Jack Faucett Assocs., Inc. v. AT&T Co., 744 F.2d 118, 132 (D.C. Cir. 1984) (collateral estoppel not appropriate where product market had been stipulated to in previous case); Gen. Dynamics Corp. v. AT&T Co., 650 F. Supp. 1274, 1283 (N.D. Ill. 1986) (same); Glictronix Corp. v. AT&T Co., 603 F. Supp. 552, 583 (D.N.J. 1984) [*23] (same).

The general rule that collateral estoppel should not be applied to stipulations is based on the recognition that the interests of maintaining consistency and conserving private as well as judicial resources are less compelling when the issue on which preclusion is sought has not actually been litigated before. See Restatement (Second) of Judgments § 27 Cmt e. In addition, granting preclusive effect to issues not actually litigated might discourage compromise, decrease the likelihood that the issues in an action would be narrowed by stipulation, and therefore intensify litigation. Id.

Notwithstanding the general rule that collateral estoppel should not be applied to stipulated facts, courts have held that "factual determinations made by judge or jury in a case that is actually litigated are not deprived of collateral estoppel effect merely because the determinations rest in part on admissions or stipulations." Kairys v. INS., 981 F.2d 937, 941 (7th Cir. 1992). Indeed,

[a] contrary rule might discourage the use of admissions and stipulations, lest that use deprive the winning party of a judgment that [*24] he could use in a subsequent proceeding to foreclose relitigation of the facts that had been determined in his favor - or, conversely, might . . . encourage admissions or stipulations, by making them less costly in future consequences for the concessionary party.

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

*Id.* Accordingly, courts have applied collateral estoppel to issues determined in previous proceedings where the fact finder's determination of those issues was partially based upon facts stipulated by the parties. See *Otherson, 711 F.2d at 274* (collateral estoppel applies to determination of defendant's guilt in prior action where finding was based on stipulation regarding what witnesses would testify to at trial); *Fairmont Aluminum Co. v. Comm'r of Internal Revenue, 222 F.2d 622, 625 (4th Cir. 1955)* (collateral estoppel applies to judgment in taxpayer's previous suit even though judgment was based in part on a stipulation of fact between the parties); *Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464, 466-67 (3d Cir. 1950)* (collateral estoppel proper in antitrust action even though prior case "was tried upon stipulation of fact"); *Tillman v. Nat'l City Bank of N.Y., 118 F.2d 631, 635 (2d Cir. 1941)* [*25] (holding that "there is no merit in defendant's contention that the prior judgment cannot be used as an estoppel because certain facts on which it rested were stipulated"); *GAF Corp. v. Eastman Kodak Co., 519 F. Supp. 1203, 1213 (S.D.N.Y. 1981)* (collateral estoppel applies to market definition and market power issues in antitrust action where determination of these issues in prior proceeding was partially based on stipulated facts).

The United States Court of Appeals for the Seventh Circuit has explained that

> the decisive reasons for giving [stipulations] collateral estoppel effect is that a lawyer's recognition that the evidence is so stacked against him on some point that a failure to admit it will open him to sanctions under *Fed. R. Civ. P. 37(c)* is as good an indication of where the truth probably lies as a determination by a judge or a jury.

*Kairys, 981 F.2d at 941.* Thus, the application of collateral estoppel to factual determinations based in part on stipulations is appropriate where "the decision to agree to certain facts was a decision made by [the defendant] as part of its litigation [*26] strategy" in the prior litigation *GAF Corp., 519 F. Supp. at 1213.* Moreover, where one party "introduces evidence on a dispositive issue of fact, and an adverse party with opportunity and motive to contest the presentation chooses not to, the ensuing finding is entitled to the same respect as one litigated to the hilt." *Harris Trust & Sav. Bank v. Ellis, 810 F.2d 700, 705 (7th Cir. 1987)*; see also *Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1094 (10th Cir. 2003).*

Here, it is undisputed that the jury's finding of the relevant market in LePage's was based only in part on the parties' stipulation that the relevant product market was the market for transparent and invisible tape for home and office use. See LePage's Trial Tr. Vol. 34, pp. 129-130. Moreover, 3M strategically agreed to stipulate to the relevant product market only *after* plaintiff had already introduced considerable testimony by an expert witness on this issue. The relevant product market was, therefore, actually litigated in LePage's for purposes of the doctrine of collateral estoppel. See *Adams, 340 F.3d at 1094* (issue is actually litigated [*27] if it is stipulated to only after other party adduced evidence on it at trial). n9 Accordingly, the Court finds that all five issues Bradburn seeks to preclude satisfy the second element for the application of collateral estoppel.

> n9 The fact that plaintiff in LePage's had introduced substantial evidence regarding the product market at trial implicates the precise concerns underlying the doctrine of collateral estoppel (e.g., judicial economy and waste of private resources). Moreover, the introduction of evidence on the issue of product market in LePage's permitted the jury to independently determine that the product market was, in fact, the market for invisible and transparent tape for home and office use stipulated to by the parties.

3. Determination by valid and final judgment

The third element that must be satisfied for the application of collateral estoppel is that the issue sought to be precluded was determined by a final and valid judgment in the previous action. *Burlington, 63 F.3d at 1231-32.* [*28] Finality in this context means "little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Henglein v. Colt Indus., 260 F.3d 201, 209-10 (3d Cir. 2001)* (quoting *Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 89 (2d Cir. 1961)).* 3M does not dispute that all five issues for which Bradburn seeks collateral estoppel were decided by a valid and final judgment. Accordingly, the Court finds that all five issues Bradburn seeks to preclude satisfy the third element for the application of collateral estoppel.

4. Essentiality of issue to prior judgment

The fourth element that must be satisfied for the application of collateral estoppel is that the issue sought to be precluded was essential to the judgment in the previous action. *Burlington, 63 F.3d at 1231-32.* "Under the generally accepted meaning of the term, a fact may be

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

deemed essential to a judgment where, without that fact, the judgment would lack factual support sufficient to sustain it." *Raytech, 54 F.3d at 193.* Courts inquire into [*29] "whether the issue 'was critical to the judgment or merely dicta'" when determining whether the issue sought to be precluded was essential to the prior judgment. *Nat'l R.R. Passenger Corp., 288 F.3d at 527* (quoting *O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062 (3d Cir. 1991))*. With the exception of (1) its power to exclude competition and increase prices, and (2) the nature of its predatory or exclusionary conduct, 3M does not dispute that the issues for which Bradburn seeks collateral estoppel were essential to the judgment in LePage's.

3M argues that a finding that it was able to control prices and to exclude competition was not essential to the jury's monopoly power determination in LePage's because the Court defined monopoly power to the jury as the power to control prices or to exclude competition. n10 3M contends that it would, therefore, be improper to infer from the jury's monopoly power determination that 3M had both the ability to control prices and to exclude competition. 3M further argues that, because the jury verdict form does not specify on what grounds the jury based its determination of monopoly power, collateral estoppel [*30] can be applied to neither 3M's ability to exclude competition nor 3M's ability to control prices.

> n10 In LePage's, the Court instructed the jury as follows:

>> Monopoly power is defined as the power to control prices or exclude competition in a relevant market. Therefore, you must determine whether 3M could either control prices or exclude competition in the relevant market. The power to control prices is the power of a company to establish appreciably higher prices for its equivalent goods, without a substantial loss of business to its competitor . . . .
>> The power to exclude competition means the power of a company to dominate a market by eliminating existing competition from that market, or by preventing new competition from entering that market

LePage's Trial Tr. Vol. 34, pp. 132-33.

Where a party seeks collateral estoppel based upon a jury verdict, the court must determine "whether a rational jury could have grounded its verdict upon an issue other than" that sought to be precluded. [*31] *Schiro v. Farley, 510 U.S. 222, 233, 127 L. Ed. 2d 47, 114 S. Ct. 783 (1994).* If the court finds that the jury in the previous case necessarily determined the facts sought to be precluded, collateral estoppel applies to the jury's explicit findings as well as to those implicit findings which the jury rationally must have determined in order to come to a verdict. *Chew v. Gates, 27 F.3d 1432, 1438 (9th Cir. 1994).*

Bradburn persuasively argues that the jury in LePage's necessarily determined that 3M had the power to exclude competition, and that this power by definition also enabled 3M to control prices. Because 3M conceded that it possessed monopoly power in LePage's II, see *324 F.3d at 146*, the Third Circuit did not expressly resolve whether 3M's monopoly power was based on its power to control prices, its power to exclude competition, or both. The Third Circuit did, however, make several observations that strongly support Bradburn's argument that the jury in LePage's necessarily determined that 3M had the power to exclude competition. For example, the Third Circuit observed that "3M's exclusionary conduct not only impeded [plaintiff's] [*32] ability to compete, but also harmed competition itself, a sine qua non for a § 2 violation" and that 3M "strengthened its monopoly position by destroying competition." Id.

Indeed, based on the Court's instructions to the jury in LePage's, it is evident that the jury determined that 3M had the power to exclude competition. The jury in LePage's returned a verdict that 3M had unlawfully maintained monopoly power. LePage's Jury Verdict Form, Question 2. The Court charged the LePage's jury that, in order to find willful maintenance of monopoly power by 3M, it was first required to determine that 3M had engaged in predatory or exclusionary conduct. See LePage's Trial Tr. Vol. 34, pp. 136-37. The Court went on to instruct the jury that "predatory or exclusionary conduct is conduct that has the effect of preventing or excluding competition, or frustrating or impairing the efforts of other firms to compete for customers within the relevant market." Id. By rendering a verdict that 3M had willfully maintained monopoly power, the jury in LePage's thus necessarily found that 3M had the power to exclude competition or frustrate the efforts of other firms to compete [*33] for customers, which is itself an exclusionary practice. This conclusion is further bolstered by the fact that the jury in LePage's explicitly found that 3M's maintenance of monopoly power had injured plaintiff, a competitor. See LePage's Jury Verdict Form, Question 2.1

Page 9

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

It is equally apparent that the ability to exclude competition necessarily results in the ability to control prices. As the Third Circuit observed in LePage's II, "once a monopolist achieves its goal by excluding potential competitors, it can then increase the price of its product to the point at which it will maximize its profit." *Id.* at 164. Indeed, "the more competition a company faces, the less it can control prices because competitors will undercut its prices to secure market share. Conversely, a company that can exclude competition can sustain its ability to control prices." *Pepsico, Inc. v. Coca-Cola Co., 315 F.3d 101, 107-08 (2d Cir. 2002)* (citations omitted); see also *LePage's II, 324 F.3d at 164* (exclusion of competitors allows companies to increase price of products); *Barr Labs., Inc. v. Abbott Labs., 978 F.2d 98, 114 (3d Cir. 1992)* [*34] (competition "would have prevented [defendant] from raising prices for any lengthy period of time"); *Columbia Metal Culvert Co. v. Kaiser Aluminum & Chem. Corp., 579 F.2d 20, 26 (3d Cir. 1978)* (ongoing competition "guards against the ability of the dominant entity to increase prices"); see generally 2A Phillip E. Areeda, et al., Areeda & Hovenkamp's Antitrust Law, P 501, at 85-86 (2002). n11 Therefore, the Court concludes that 3M's ability to exclude competition and its ability to control prices were essential to the jury's determination that 3M had unlawfully maintained monopoly power.

> n11 The Court notes that the power to control prices, by contrast, does not necessarily include the power to exclude competition. See *Shoppin' Bag of Pueblo, Inc. v. Dillon Cos., 783 F.2d 159, 164 (10th Cir. 1986)* ("It is conceivable that if a company has obtained control over prices . . . it still may not have the power to exclude other competitors from the market.").

3M also argues [*35] that it was not essential to the jury's finding of unlawful maintenance of monopoly power in LePage's that 3M's predatory or exclusionary conduct included: (1) 3M's rebate programs, such as the Executive Growth Fund, the Partnership Growth Fund, and the Brand Mix Program; (2) 3M's Market Development Fund, and other payments to customers conditioned on customers achieving certain sales goals or growth targets; (3) 3M's efforts to control, or reduce, or eliminate private label tape; (4) 3M's efforts to switch customers to 3M's more expensive branded tape; and (5) 3M's efforts to raise the price consumers pay for Scotch tape. 3M argues that, pursuant to the Court's instructions, the jury in LePage's could have based its determination on the predatory or exclusionary nature of any one of these five alleged practices. In LePage's, the Court defined predatory or exclusionary conduct to the jury as follows:

[Plaintiff] contends that the following conduct was exclusionary or predatory . . . :

Number one, 3M's rebate program, such as the EGF, executive growth fund, or the PGF, the partnership growth fund, and the brand mix program.

Number two, 3M's market development [*36] fund called the MDS in some of the testimony, and other payments to customers conditioned on customers achieving certain sales goals or growth targets.

Third, 3M's efforts to control, or reduce, or eliminate private label tape.

Four, 3M's efforts to switch customers to 3M's more expensive branded tape, and

Five, 3M's efforts to raise the price consumers pay for Scotch tape.

[Plaintiff] claims that all of these things that I've just gone through was predatory or exclusionary conduct . . . .

Now, what is predatory or exclusionary conduct in the eyes of the law? Well, predatory or exclusionary conduct is conduct that has the effect of preventing or excluding competition, or frustrating or impairing the efforts of other firms to compete for customers within the relevant market . . . .

You should consider the following factors in determining whether 3M's conduct was predatory or exclusionary: its effect on its competitors, such as [plaintiff], its impact on consumers, and whether it has impaired competition, in an unnecessarily restrictive way. You may also consider the behavior that might otherwise not be of concern to the antitrust laws, or that might be viewed as pro-competitive, [*37] and take on an exclusionary connotation when practiced by a firm with monopoly power.

LePage's Trial Tr. Vol. 34, pp. 136-39.

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

Bradburn argues that, pursuant to these instructions, the jury in LePage's was required to find that either all or none of the five types of conduct alleged were predatory or exclusionary in nature. Thus, Bradburn argues that the jury's determination that 3M had engaged in predatory or exclusionary conduct necessarily included a determination that all five examples of 3M's conduct were predatory or exclusionary. However, the Court's instructions did not require the jury find that all five types of conduct were predatory or exclusionary in order to conclude that 3M had engaged in predatory or exclusionary conduct. Rather, the Court explained to the jury what actions plaintiff alleged to have been predatory or exclusionary, and then charged the jury that it could consider all of these actions in determining whether 3M's conduct was predatory or exclusionary under the law. The jury in LePage's could, therefore, have based its finding of predatory or exclusionary conduct on any one of the five examples alone. The Court concludes that because [*38] none of the five alleged predatory or exclusionary practices were essential to the judgment in LePage's, collateral estoppel cannot be applied to this issue. See *Schiro, 510 U.S. at 233*. Accordingly, the Court finds that all issues Bradburn seeks to preclude, except for the nature of 3M's predatory or exclusionary practices, satisfy the fourth element for the application of collateral estoppel.

5. Fairness considerations

Pursuant to the above analysis, the following four issues satisfy all four elements for the application of collateral estoppel for the time period from June 11, 1993 through October 13, 1999:

> 1. The relevant market in this matter is the market for invisible and transparent tape for home and office use in the United States;
>
> 2. 3M possessed monopoly power in the relevant market, including the power to control prices and exclude competition in the relevant market;
>
> 3. 3M willfully maintained such monopoly power by predatory or exclusionary conduct; and
>
> 4. 3M's predatory or exclusionary conduct harmed competition.

To determine whether collateral estoppel can be applied offensively in this action, the court must next engage in an overriding [*39] fairness inquiry. *Burlington, 63 F.3d at 1232*. District courts have "'broad discretion' to determine when a plaintiff who has met the requisites for the application of collateral estoppel may employ that doctrine offensively." *Raytech, 54 F.3d at 195* (citing *Parklane, 439 U.S. at 332*). However, the application of

collateral estoppel "is subject to a number of equitable exceptions designed to assure that the doctrine is applied in a manner that will serve the twin goals of fairness and efficient use of private and public litigation resources." *Nat'l R.R. Passenger Corp., 288 F.3d at 525*. Collateral estoppel has been denied in circumstances where preclusion would not serve judicial economy. See *S.E.C. v. Monarch Funding Corp., 192 F.3d 295, 304 (2d Cir. 1999)*; see generally Wright and Miller, supra, § 4465, at 738-39. Moreover, "[a] finding of fairness to the defendant is . . . a necessary premise to the application of offensive collateral estoppel." *Raytech, 54 F.3d at 195*. Accordingly, the Supreme Court has counseled against the application of offensive non-mutual collateral [*40] estoppel in instances where (1) the plaintiff "could easily have joined in the earlier action"; (2) the defendant had "little incentive to defend vigorously" in the earlier action; (3) the second action "affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result"; or (4) where "for other reasons, the application of offensive estoppel would be unfair to a defendant." *Parklane, 493 U.S. at 330-31*.

Here, 3M does not dispute that it had incentive to defend itself vigorously in the LePage's litigation, or that the procedural opportunities available in this action were available in the LePage's litigation as well. 3M does argue, however, that the Court should refuse to grant Bradburn the use of offensive collateral estoppel because its application would not serve judicial economy. In addition, 3M argues that Bradburn could have easily joined the LePage's litigation, and that granting collateral estoppel effect to the jury's determinations in LePage's would unduly prejudice 3M by distorting the issues and causing juror confusion.

a. Judicial economy

3M argues that the Court should refuse [*41] to grant Bradburn's request for offensive collateral estoppel because the application of estoppel will not significantly expedite the trial of this case. 3M contends that the same evidence that would be required to establish that 3M had engaged in antitrust violations will have to be presented by Bradburn to establish causation and injury in this case. For example, 3M argues that a finding that 3M unlawfully maintained monopoly power will not be helpful to a determination of damages, because it does not indicate how 3M unlawfully maintained this power. Accordingly, 3M argues that Bradburn will in any event have to establish the type of anti-competitive behavior 3M engaged in from 1993 through 1999, and prove that this behavior caused the monopoly overcharges Bradburn alleges it was forced to pay.

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

It is undisputed that "whatever values may be gained by nonmutual preclusion are substantially diminished when the need to try related issues requires consideration of much the same evidence as bears on the issue tendered for preclusion." Wright and Miller, supra, § 4465, at 738. However, it will not be necessary for Bradburn to establish precisely how 3M excluded competition in order [*42] to establish causation and injury in this case. If collateral estoppel is invoked as to the jury's finding in LePage's that 3M's conduct "harmed competition" generally, a jury in the instant action could reasonably find, with the aid of expert testimony, that this harm to competition caused the super-competitive prices which Bradburn argues it was forced to pay. See *LePage's II, 324 F.3d at 164* ("Once a monopolist achieves its goal by excluding potential competitors, it can then increase the price of its product to the point at which it will maximize its profit. This price is invariably higher than the price determined in a competitive market.") Moreover, "once a jury has found that the unlawful activity caused the antitrust injury, the damages may be determined without strict proof of what act caused the injury, as long as the damages are not based on speculation or guesswork." *Id. at 166* (citing *Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 802, 813 (3d Cir. 1984)*). Accordingly, the application of collateral estoppel in this case will likely save significant time and private as well as judicial resources.

3M further argues [*43] that collateral estoppel should not be granted to the jury's determinations in LePage's because Bradburn will still have to prove market definition and market power issues for the time period from October 13, 1999 to the present, the portion of the class period not covered by the LePage's verdict. However, this argument fails to take into account that, as noted above, considerable private and judicial resources will be saved by the use of collateral estoppel to establish elements of Bradburn's claim for the period from October 2, 1998 to October 13, 1999. See *Oberweis, 553 F. Supp. at 966* (applying collateral estoppel in antitrust action for time period at issue in prior proceeding even though present litigation alleged longer period of damages). Accordingly, the Court finds that the use of collateral estoppel in this case will promote the efficient use of private and judicial resources. n12

n12 The Court notes that the only cases 3M has cited in which courts have denied the use of collateral estoppel for failure to significantly expedite the trial are personal injury class actions for negligence or product liability. In such actions, the jury must either evaluate the incident underlying each individual injury, or assess the likelihood that the incident at issue caused each

particular set of symptoms in order to find causation and injury. See, e.g., *Coburn v. Smithkline Beecham Corp., 174 F. Supp. 2d 1235, 1239-41 (D. Utah 2001)* (denying application of collateral estoppel in product liability action because causation in such cases can only be established by proof of specific causation, which includes inquiry into dose of drug, duration, frequency and amount of exposure, and the effect of other agents and biochemical and metabolic interactions and processes, preexisting medical conditions, and environmental factors); see also *Schneider a/k/a Nguyen Phi Khanh v. Lockheed Aircraft Corp., 212 U.S. App. D.C. 87, 658 F.2d 835, 852 (D.C. Cir. 1981)* (denying collateral estoppel in action for product design defect); *Rogers v. Ford Motor Co., 925 F. Supp. 1413, 1419 (N.D. Ind. 1996)* (denying collateral estoppel in personal injury action for negligence). As discussed above, however, proof of causation and injury in antitrust actions is much less complicated once antitrust violations have been established.

[*44]

b. Ability to join LePage's

3M also argues that the Court should refuse to grant Bradburn the use of offensive collateral estoppel because Bradburn unduly delayed its filing of the instant litigation and could easily have joined the LePage's action. As a general rule, "in cases where a plaintiff could easily have joined in the earlier action . . . a trial judge should not allow the use of offensive collateral estoppel." *Parklane, 439 U.S. at 331*. This rule recognizes that the availability of offensive non-mutual collateral estoppel

could create an incentive for potential plaintiffs "to adopt a 'wait and see' attitude, in the hope that the first action will result in a favorable judgment," since such plaintiffs "will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins."

*Burlington, 63 F.3d at 1232 n.7* (quoting *Parklane, 439 U.S. at 330*). Courts have denied the use of offensive collateral estoppel where a plaintiff who could have joined the earlier action failed to present a valid reason for not joining it. See *Hauser v. Krupp Steel Producers, Inc., 761 F.2d 204, 207 (5th Cir. 1985)* [*45] Here, 3M argues that Bradburn adopted a 'wait and see' approach

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

because it did not join the LePage's litigation and did not file suit until October 2, 2002 -over two years after judgment in the LePage's lawsuit was entered.

3M, however, has offered no evidence that Bradburn's sole motivation in not joining LePage's was the hope of benefitting from the application of collateral estoppel. See *McLendon v. Continental Group, 660 F. Supp. 1553,1564 (D.N.J 1987)* (defendant must establish that the plaintiff's sole motivation in not joining the earlier action was the hope to obtain the benefit of issue preclusion before courts should deny use of collateral estoppel). In any event, Bradburn persuasively argues that it could not easily have intervened in the LePage's litigation pursuant to *Federal Rule of Civil Procedure 24*. *Rule 24(a)(2)* provides that intervention as of right shall be granted upon timely application when

> the applicant claims an interest relating to the property or transaction which is subject of the action and the applicant is so situated that the disposition of the action may as a practical matter [*46] impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Fed. R. Civ. P. 24(a)(2).* "Representation is generally considered adequate if no collusion is shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor and if the representative has been diligent in prosecuting the litigation." *Del. Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania, 674 F.2d 970, 973 (3d Cir. 1982).* 3M does not dispute that there was no collusion between the parties in LePage's, or that plaintiff in LePage's diligently prosecuted the litigation. Therefore, Bradburn could only have joined the previous litigation pursuant to *Rule 24(a)(2)* if plaintiff in LePage's had represented an interest adverse to Bradburn. In the instant litigation, Bradburn bases its claim against 3M on the same conduct and for a violation of the same statute as plaintiff in LePage's. Indeed, Bradburn seeks collateral estoppel precisely because its interests are aligned [*47] with plaintiff's interests in LePage's. As plaintiff in LePage's did not represent an interest adverse to Bradburn, it is highly unlikely that Bradburn could have easily joined the LePage's litigation pursuant to *Rule 24(a)(2).*

*Rule 24(b)(2)* provides that permissive intervention shall be granted upon timely application where

> an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

*Fed. R. Civ. P. 24(b)(2).* Generally, courts disfavor permissive intervention by class plaintiffs in actions brought by individual plaintiffs because such intervention tends to unduly delay and prejudice the adjudication of the rights of the original parties. See, e.g., *Castano v American Tobacco Co., 1994 U.S. Dist. LEXIS 7426, Civ. A. No. 94-1044, 1994 WL 247239, at *3 (E.D.La. June 1, 1994)* (denying *Rule 24(b)(2)* motion by class of plaintiffs because granting intervention "would unduly expand the already voluminous litigation"); *Jack Faucett Assocs. v AT&T Co., 566 F. Supp. 296, 299 n.4 (D.D.C. 1983),* [*48] rev'd on other grounds, *240 U.S. App. D.C. 103, 744 F.2d 118 (D.C. 1984)* ("It is exceedingly unlikely that [the class of consumer plaintiffs] would have been permitted to join their class claims as customers to further complicate what was from its inception primarily a complex competitor's claim.").

Here, too, it is unlikely that the Court would have allowed Bradburn to intervene in LePage's pursuant to *Rule 24(b)(2).* The addition of an entire class of plaintiffs would have significantly increased the complexity of an already factually and legally complicated antitrust action. Moreover, Bradburn's intervention in the LePage's litigation would have turned an individual lawsuit into a class action. As a result, the parties would have been required to comply with the additional procedures mandated for class actions, which would have resulted in significant delay and prejudice to the original parties in the adjudication of their dispute. It also appears that the parties to the LePage's litigation would have strenuously objected to Bradburn's intervention. Indeed, 3M has admitted that it would have opposed Bradburn's motion for intervention pursuant to *Rule 24(b)(2).* (See Def's [*49] Mem in Opp at 36 n.28.) Accordingly, it is highly unlikely that Bradburn could have easily joined the LePage's litigation pursuant to *Rule 24(b)(2).* As Bradburn could not have easily intervened in the earlier action under *Rule 24,* the Court concludes that considerations of fairness do not preclude the application of collateral estoppel on grounds that Bradburn did not join the LePage's litigation See *Parklane, 439 U.S. at 331.*

c. Distortion of issues and juror confusion

3M further argues that the Court should refuse to grant Bradburn the use of offensive collateral estoppel

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

because the application of estoppel would unfairly preju-
dice 3M by distorting the issues in this case and creating
juror confusion. Courts have denied the use of offensive
estoppel where "the risk of prejudice and confusion sig-
nificantly outweighs any benefit that might be derived
from applying collateral estoppel." *Coburn, 174 F. Supp.
2d at 1241.* Moreover, courts have recognized that the
values gained by the use of issue preclusion are dimin-
ished where closely related issues must be tried and the
application of collateral estoppel would "substantially
distort [*50] decision of the issues that remain
open."*Phonetele, Inc. v. AT&T Co., 1984 U.S. Dist.
LEXIS 20259, No. CV-74-3566-MML, 1984 WL 2943, at
*2 (C.D. Cal. Jan. 19, 1984);* see also Wright and Miller,
supra, § 4465, at 738-39.

3M argues that the application of collateral estoppel
to the jury's findings in LePage's would unfairly distort
the issues in this case because the LePage's litigation
involved a different type of plaintiff and a different the-
ory of pricing and damages. Specifically, 3M points out
that plaintiff in LePage's was a competitor who pursued a
theory of predatory pricing, which is based on a decrease
of prices below their competitive level. Bradburn, on the
other hand, is a buyer who is pursuing a theory of mo-
nopoly overcharging, which is based on an increase of
prices over their competitive level. Courts, however,
have applied collateral estoppel to determinations of anti-
trust violations made in antitrust lawsuits between com-
petitors to later antitrust actions brought by buyers. See,
e.g., *Oberweis, 553 F. Supp. at 969.*

Moreover, this Court has already held that
Bradburn's theory of recovery is not necessarily inconsis-
tent with the theory of anti-competitive [*51] conduct
presented to the jury in the LePage's trial:

> According to [3M], [Bradburn's]
> claims cannot be reconciled with the fact
> that, at least while the bundled rebate pro-
> gram was being instituted, retailers that
> received the bundled rebates paid less for
> the total amount of goods they received
> from [3M] than they would have paid had
> they bought these products from other
> suppliers. (Def's Reply Mem. at 5.) How-
> ever, [Bradburn] does allege in the Com-
> plaint that [3M] "has maintained prices
> paid by direct purchasers to 3M well
> above competitive levels after any 3M's
> rebates (if any) attributable to tape pur-
> chases." (Compl. P 27.) (emphasis added)
> Thus, [Bradburn's] allegations, if proven,
> could establish that, were it not for [3M's]
> anti-competitive conduct, [Bradburn's]
> would have paid less for transparent tape

than it actually paid during the damages
period, even when any bundled rebates or
other discounts are taken into account.

(July 25, 2003 Memorandum and Order at 9.). Finally,
any residual danger that the application of collateral es-
toppel could distort the remaining issues in this case can
be prevented through the use of appropriate jury instruc-
tions [*52] at trial. Accordingly, the Court finds that the
danger of distorting the issues in the instant case does not
substantially outweigh the benefits derived from the ap-
plication of collateral estoppel.

3M also argues that the selective application of col-
lateral estoppel to some of the facts found by the jury in
LePage's creates a substantial risk of jury confusion.
Specifically, 3M argues that if collateral estoppel is ap-
plied to the jury's finding in LePage's that 3M violated
the antitrust laws and that this conduct harmed competi-
tion the jury will not understand the need to further de-
termine that this harm to competition caused the price
increases that Bradburn was forced to pay. 3M cites to
*Kramer v. Showa Denko K.K., 929 F. Supp. 733
(S.D.N.Y. 1996),* a products liability action, in support of
its argument that preclusion of generalized issues of cau-
sation could lead to confusion in the jury's consideration
of specific causation in this case. In Kramer, the court
declined to allow the plaintiff the use of a judgment in a
prior consumer's action to collaterally estop the defen-
dant from arguing that its drug was not defective and that
the drug did not cause [*53] the plaintiff's injuries.
*Kramer, 929 F. Supp. at 749-51.* The Kramer court rea-
soned that collateral estoppel would be inappropriate in
such circumstances because

> a single products liability case typically
> involves individualized circumstances pe-
> culiar to that case alone, such as the age
> and health of the plaintiff, the conditions
> under which the product was used, or the
> precise circumstances surrounding plain-
> tiff's injury. Such factual idiosyncracies
> necessarily prevent a single finding from
> one such case to be applied to all other
> cases in cookie-cutter fashion.

*Id. at 750-51.* The court further noted that the drug the
plaintiff had ingested and the drug that had been the sub-
ject of the prior action did not come from the same
manufacturing lot, and that it was, therefore, impossible
to determine from the previous verdict that the drug at
issue in the case at bar had been defectively manufac-

2005 U.S. Dist. LEXIS 5315, *; 2005-1 Trade Cas. (CCH) P74,769

tured. Id. Here, by contrast, the "factual idiosyncracies" are limited to the sole question of the amount of rebates each individual plaintiff received from 3M during the class period. Moreover, unlike in *Kramer*, Bradburn in this case [*54] bases its allegations of antitrust violations during the period for which it seeks collateral estoppel on the exact same conduct by 3M that was at issue in LePage's.

3M further cites Phonetele in support of its argument that the use of offensive collateral estoppel should be denied in antitrust actions. The Phonetele court denied plaintiff the use of collateral estoppel because its application to select "questions designated by [the plaintiff] would make a fair resolution of the remaining questions unacceptably difficult." *Phonetele, Inc. v. AT&T, 1984 U.S. Dist. LEXIS 20259, 1984 WL 2943, at *5.* The Phonetele court found that the issues of product market and competition could not be decided by collateral estoppel because it was doubtful whether the products and product markets at issue in the previous case were, in fact, the same as those involved in the later case. *Id. 1984 U.S. Dist. LEXIS 20259, at *3.* The Phonetele court concluded that this dispute would render the application of issue preclusion to the questions designated by the plaintiff unfair to the defendant. *Id. 1984 U.S. Dist. LEXIS 20259 at *5.* Here, by contrast, the Court has already concluded that the products and product markets at issue in the LePage's [*55] litigation are the same as those involved in the instant case for the period for which Bradburn seeks to invoke collateral estoppel. The Court, therefore, finds that the danger of prejudice to 3M does not substantially outweigh the benefits derived from the application of collateral estoppel. Accordingly, considerations of fairness do not preclude the application of collateral estoppel in this case.

## IV. CONCLUSION

For the foregoing reasons, Bradburn's Motion for Partial Summary Judgment is denied. However, pursuant to *Rule 56(d)*, the Court finds that the following material facts appear without substantial controversy and shall be deemed established upon the trial of this action:

> 1. For the time period from June 11, 1993 to October 13, 1999, the relevant market in this matter is the market for invisible and transparent tape for home and office use in the United States;

> 2. For the time period from June 11, 1993 to October 13, 1999, 3M possessed monopoly power in the relevant market, including the power to control prices and exclude competition in the relevant market;

> 3. For the time period from June 11, 1993 to October 13, 1999, 3M willfully maintained such monopoly [*56] power by predatory or exclusionary conduct; and

> 4. For the time period from June 11, 1993 to October 13, 1999, 3M's predatory or exclusionary conduct harmed competition.

The Court notes that the application of collateral estoppel to these four determinations by the jury in LePage's does not establish that 3M violated *Section 2 of the Sherman Act* subsequent to October 13, 1999. Moreover, even for the period from June 11, 1993 through October 13, 1999, Bradburn will still be required to offer proof that 3M's antitrust violations caused Bradburn injury of the type the antitrust laws were intended to prevent.

An appropriate Order follows.

## ORDER

**AND NOW,** this 30th day of March, 2005, upon consideration of Bradburn's Motion for Partial Summary Judgment (Doc. No. 80), all briefing in response thereto, and the Argument held on November 5, 2003, **IT IS HEREBY ORDERED** that said Motion is **DENIED. IT IS FURTHER ORDERED** that pursuant to *Federal Rule of Civil Procedure 56(d)* the following material facts appear without substantial controversy and shall be deemed established upon the trial of this action:

> 1. For the [*57] time period from June 11, 1993 to October 13, 1999, the relevant market in this matter is the market for invisible and transparent tape for home and office use in the United States;

> 2. For the time period from June 11, 1993 to October 13, 1999, 3M possessed monopoly power in the relevant market, including the power to control prices and exclude competition in the relevant market;

> 3. For the time period from June 11, 1993 to October 13, 1999, 3M willfully maintained such monopoly power by predatory or exclusionary conduct; and

> 4. For the time period from June 11, 1993 to October 13, 1999, 3M's predatory or exclusionary conduct harmed competition.

BY THE COURT:

John R. Padova, J.