# EXHIBIT 6

LEXSEE 2004 U.S. DIST. LEXIS 29160

IN RE: AUTOMOTIVE REFINISHING PAINT ANTITRUST LITIGATION

MDL DOCKET NO. 1426

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

*2004 U.S. Dist. LEXIS 29160*

**October 29, 2004, Decided
October 29, 2004, Filed**

**PRIOR HISTORY:** *In re Auto. Refinishing Paint Antitrust Litig., 2003 U.S. Dist. LEXIS 26945 (E.D. Pa., Oct. 14, 2003)*

**COUNSEL:** [*1] For CONSEIL EUROPEEN DE L'INDUSTRIE DES PEINTURES, DES ENCRES D'IMPRIMERIE ET DES COULEURS D'ART, Respondent: GREGORY L. POE, ROBBINS RUSSELL ENGLERT ORSECK & UNTEREINER LLP, WASHINGTON, DC.

**JUDGES:** R. Barclay Surrick, Judge.

**OPINION BY:** R. Barclay Surrick

**OPINION:**

**MEMORANDUM & ORDER**

**SURRICK, J.**

Presently before the Court is Defendants' Motion for Clarification of the Court's October 14, 2003, Discovery Order (Doc. No. 113). This Order compelled Defendants to produce discovery for documents "created" between 1993 and 1996. (*Id.* at 1-3.) Because our discussion did not specifically address the geographic scope of Plaintiffs' requests, however, we take this opportunity to explain the scope of the Order, and to deny Defendants' proposed limitations on discovery n1

n1 Defendants' Motion for Clarification was held in abeyance pending final approval of the Plaintiffs' settlement with E.I. DuPont de Nemours and Company, and DuPont Performance Coatings, Inc. (collectively "DuPont"); and BASF Aktiengesellschaft, BASF Coatings AG, and BASF Corporation (collectively "BASF").

[*2]

**DISCUSSION**

Plaintiffs' Consolidated and Amended Class Action Complaint alleges that from January 1, 1993, to December 31, 2001, Defendants violated various federal antitrust laws by "conspiring to fix, raise, maintain or stabilize prices for automotive refinishing paint in the United States." (Am. Compl. P1.) In order to prove their allegations, Plaintiffs have requested documents related to Defendants' communications with their competitors, as well as documents produced or submitted to any federal, state, or foreign governmental entity, from 1990 to present. n2 Specifically, Plaintiffs' first set of document requests ask for:

4. All documents constituting, reflecting, or referring to any meeting within or outside of the United States at which your company and any competitor were present, which concerned, referred or related to: [pricing, practices, customers, accounts, pricing quotes, territories or markets, and competitive policies].

5. To the extent you did not produce such documents pursuant to Request No. 4, all documents constituting, reflecting, or referring to any communication within or outside the United States, whether oral or written, between your [*3] company and any competitor concerning, referring or relating to: [pricing, practices, customers, accounts, pricing quotes, territories or markets, and competitive policies].

6. All documents referring or relating to any actions taken by you or your competi-

2004 U.S. Dist. LEXIS 29160, *

tors to ensure or maintain the confidentiality of any meetings, communications or agreements between you and any competitor relating to automotive refinishing paint, including without limitation, prices, pricing, discounts, lost business, customers, territories, allocation of business, terms and conditions of sale, or discontinuation of any class, type or category of product.

. . . .

9. All documents which you submitted to the United States Department of Justice, the Federal Trade Commission, any Congressional Committee or other domestic or foreign governmental entity or investigatory body relating to the production, pricing, marketing, sale, or distribution of automotive refinishing paint . . . .

10. All civil investigative demands, subpoenas and requests for documents you have received from any federal, state or foreign governmental entity or investigatory body, referring or relating to the production, pricing, marketing, [*4] sale or distribution of automotive refinishing paint, and all correspondence with said entities discussing, reflecting or referring to any limitations placed upon the scope of your responses to such demands, subpoenas or requests.

. . . .

18. All documents reflecting, referring or pertaining to territories or markets for sales or potential sales of automotive refinishing paint sold in the United States.

. . . .

31. All documents, including invoices and bills of lading, reflecting, referring, or relating to sales or potential sales of automotive refinishing paint, or any component thereof, from any of your competitors.

32. All documents, including invoices and bills of lading, reflecting, referring, or relating to purchases or potential purchases of automotive refinishing paint, or any component thereof, from any of your competitors.

(Pls.' First Set Reqs. for Produc. of Docs. at 6-10, 12, 16.) In addition, two of Plaintiffs' interrogatories seek similar information:

6. Identify any meeting within or outside the United States between any officer, director, employee or agent of your company and any officer, director, employee or agent of any competitor during which [*5] there was any discussion or communication which reflected, referred to or related to any actual, proposed or prospective prices, price announcements, "minimum" prices, price lists, price changes or suggested prices of automotive refinishing paint.

7. To the extent such information was not provided in your response to interrogatory No. 6, identify any communication within or outside the United States, whether written or oral, between any officers, director, employee or agent of your company and any officer, director, employee or agent of any competitor reflecting, referring or relating to any actual, proposed or prospective prices, price announcements, "minimum" prices, price lists, price changes or suggested prices of automotive refinishing paint.

(Pls.' First Set of Interrogs. at 11-12.)

n2 We do not discuss the relevant time frame for production of documents as our prior Order was clear on that point.

Defendants do not object to "producing documents regarding the sale and distribution of automotive [*6] refinish paint in the United States," regardless of their location. (Defs.' Mem. Law in Support of Mot. for Clarification at 1.) However, Defendants seek clarification of our Order regarding the geographic scope of discovery, "given that [Plaintiffs'] far-flung, global requests cover a multitude of transactions having nothing to do with paint sold in the United States." (*Id.* at 3.)

"It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." *Gaul v. Zep Mfg. Co., No. 03-2439, 2004 U.S. Dist. LEXIS 1990, at *2-3 (E.D. Pa. Feb. 5, 2004)* (quoting *Marroquin-Manriquez v. Immigration and Naturalization Serv., 699 F.2d 129, 134 (3d Cir. 1983)).* "*Federal Rule of Civil Procedure 37* authorizes a party who has received evasive or incomplete answers to discovery authorized by . . . *Rule 26(a)* to bring a motion to compel disclosure of the materials sought." *Northern v. City of*

2004 U.S. Dist. LEXIS 29160, *

*Phila. Fire Dep't, No. 98-6517, 2000 U.S. Dist. LEXIS 4278, at \*3 (E.D. Pa. Apr. 4, 2000)* (discussing *Fed. R. Civ. P. 37(a)(3)*). [\*7] Once a party opposes a discovery request, the party seeking the discovery must demonstrate the relevancy of the information. *2000 U.S. Dist. LEXIS 4278 at \*5.* "When this showing of relevancy is made, the burden then shifts back to the party opposing discovery to show why the discovery should not be permitted." *Id.* A party's statement "that the discovery sought is overly broad, burdensome, oppressive, vague or irrelevant is 'not adequate to voice a successful objection.'" *Id.* (quoting *Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982))*.

### A. Relevance

In our prior Order, we noted that the "relevance" of the information requested is the "touchstone" of any discovery request. *EEOC v. Univ. of Pa., 850 F.2d 969, 979 (3d Cir. 1988), aff'd, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990); see also Fed. R. Civ. P. 26(b)(1)* ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."); *id.* ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). In antitrust cases, courts often take a liberal [\*8] view of relevance and permit broad discovery. *See, e.g., New Park Entm't, LLC v. Elec. Factory Concerts, Inc., 2000 U.S. Dist. LEXIS 531, No. 98-775, 2000 WL 62315, at \*3 (E.D. Pa. Jan. 13, 2000)* ("'Discovery in antitrust litigation is most broadly permitted and the burden or cost of providing the information sought is less weighty a consideration than in other cases.'" (quoting *United States v. Int'l Bus. Machs. Corp., 66 F.R.D. 186, 189 (S.D.N.Y. 1974))); see also In re Microcrystalline Cellulose Antitrust Litig., 221 F.R.D. 428, 429-30 (E.D. Pa. 2004); Callahan v. A.E.V. Inc., 947 F. Supp. 175, 179 (W.D. Pa. 1996).* Broad discovery is permitted because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records. *See InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159 (3d Cir. 2003)* ("Because direct evidence, the proverbial 'smoking gun,' is difficult to come by, 'plaintiffs have been permitted to rely solely on circumstantial evidence (and the reasonable inferences [\*9] that may be drawn therefrom) to prove a conspiracy'" (quoting *Rossi v. Standard Roofing, Inc., 156 F.3d 452, 465 (3d Cir. 1998)))*. As the Third Circuit has noted, "proving a conspiracy is usually difficult and often impossible without resort to discovery procedures. This is particularly true in antitrust actions, where 'the proof is largely in the hands of the alleged conspirators'" *Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 95 (3d Cir. 1988)* (quoting *Poller v. Columbia*

*Broad. Sys. Inc., 368 U.S. 464, 473, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962)); see also Callahan, 947 F. Supp. at 179* ("Discovery in an antitrust case is necessarily broad because allegations involve improper business conduct. Such conduct is generally covert and must be gleaned from records, conduct, and business relationships.")

Here, Plaintiffs assert that they are entitled to seek discovery of Defendants' alleged foreign price-fixing activities because the "global nature" of the alleged conspiracy "renders it impossible to draw a clear line" "between defendants' 'foreign' and 'domestic' pricing activities." (Pls.' Mem. Law. Opp'n to Defs.' Mot. for Clarification at 1.) [\*10] Documents regarding Defendants' pricing activities outside the United States, Plaintiffs assert, are relevant because they can help establish the existence of a conspiracy to set prices for the global market of automotive refinishing paint, and that in this conspiracy, Defendants' foreign pricing activities were "taken with an eye toward influencing domestic prices." (*Id.* at 5-7.) In support of this claim, Plaintiffs point to documents produced by Defendant Sherwin-Williams to a federal grand jury. These documents reveal that representatives or affiliates of all five original Defendants in this action were members of the European Council of the Paint, Printing Ink and Artists' Colours Industry, commonly referred to as "CEPE." (*Id.* at 5-7, Exs. A-C.) These CEPE members participated in the creation of a subgroup called "Worldwide P-O.G." (shorthand for Worldwide Product-Oriented Group). The worldwide P-O.G. was concerned with the "global market" for the automotive refinishing business, "not only Europe but also the USA, Eastern Europe, Far East, etc." (*Id.* at 6-7, Exs. A.) Meeting notes from Worldwide P-O.G. reveal discussions among the member companies, including Defendants, [\*11] about worldwide market volume of automotive refinishing paint and the entrance of new competitors. (*Id.* Ex. B.)

It is widely understood that trade associations can be used to facilitate the creation and maintenance of price-fixing conspiracies, especially when competitors share pricing or sales data. *See, e.g., Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 681-82, 98 S. Ct. 1355, 55 L. Ed. 2d 637 (1978)* (holding that an engineering trade association violated the antitrust laws because its members were prohibited from engaging in price-based competition); *United States v. Andreas, 216 F.3d 645, 657 (7th Cir. 2000)* (finding that "a trade association was formed to help cover up" the actions of a worldwide citric-acid cartel). *See generally* Christopher R. Leslie, *Trust, Distrust, and Antitrust, 82 Tex. L. Rev. 515 (2004)* (explaining how cartels use trade associations to oversee price-fixing and other anticompetitive agreements). As a leading antitrust treatise explains, "the antitrust concern resulting from trade association provision

of price and output information is [the] facilitation of collusion or less formal coordination of output or price [*12] " 13 Phillip Areeda & Herbert Hovenkamp, Antitrust Law P2112 (2d ed. 2000). Evidence of cooperation between Defendants in foreign price-fixing, through a trade association or otherwise, would certainly be relevant to establish the existence of an illegal combination or conspiracy in restraint of trade, which is a required element of a *§ 1 Sherman Act* claim. *See Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1009 n.11 (3d Cir. 1994)* (stating that "a trade association, in and of itself, is a unit of joint action sufficient to constitute a *section 1* combination" under the Sherman Act); *see also* Stephanie W. Kanwit, FTC Enforcement Efforts Involving Trade and Professional Associations, *46 Antitrust L.J. 640, 640 (1977)* ("Because trade associations are, by definition, organizations of competitors, they automatically satisfy the combination requirements of *§ 1 of the Sherman Act* "). Evidence of foreign price-fixing among Defendants would also be material to prove that they had the opportunity and ability to engage in domestic price-fixing for automotive refinishing paint. *See Weit v. Cont'l Ill. Nat'l Bank & Trust Co., 641 F.2d 457, 462 (7th Cir. 1980)* [*13] (concluding that "opportunity to conspire" is relevant "circumstantial evidence . . . to support a finding of a price-fixing conspiracy" (citing *Interstate Circuit v. United States, 306 U.S. 208, 59 S. Ct. 467, 83 L. Ed. 610 (1937)));* *In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 8904, No. 99-197, 2001 WL 1049433, at *11, *13 (D.D.C. June 20, 2001)* (granting discovery of documents relating to foreign price-fixing because it was relevant evidence of the creation and maintenance of an international conspiracy that also harmed domestic consumers).

Defendants cite the Eleventh Circuit's decision in *Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287 (11th Cir. 2003)* in support of their position. In *Williamson Oil,* the court concluded that "in the absence of some palpable tie between" evidence of illegal anticompetitive activity in other countries and "appellees' pricing actions in the United States, the foreign undertakings . . . do not tend to exclude the possibility of independent action in the setting of domestic cigarette prices." *Id. at 1317.* Based on this reasoning, Defendants suggest that we should not permit broad geographic discovery because Plaintiffs [*14] have not shown the necessary nexus. We disagree.

First, Plaintiffs have demonstrated the relevance of international communications concerning other markets. As described above, Plaintiffs point to evidence of communications between Defendants regarding sales volume and other market information through the aegis of a trade association, which is relevant both as potential evidence of coordination among the Defendants and as opportu-

nity and ability to implement an illegal conspiracy. Second, *Williamson Oil* is distinguishable. In *Williamson Oil,* the plaintiffs "baldly contended" that defendants had engaged in illegal or anticompetitive conduct in foreign markets, but could point to no evidence to support their allegations. *Id. at 1316-17.* Here, however, Plaintiffs cite "ongoing [antitrust] investigations in Canada and the European Union" regarding Defendants' activities in the global automotive refinishing market (Am. Compl. P49) as evidence of the creation and maintenance of a worldwide price-fixing conspiracy. (Pls.' Mem. Law Opp'n to Defs.' Mot. for Clarification at 5.)

Finally, we do not agree with *Williamson Oil's* assertion that evidence of illegal [*15] anticompetitive action in foreign countries is a prerequisite for discovery of an alleged conspiracy's foreign activities. The Sherman Act encompasses conduct occurring outside our borders when that conduct has an effect on American commerce, even if the activities are not illegal in the countries where they are committed. *F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 124 S. Ct. 2359, 2365, 159 L. Ed. 2d 226 (2004)* (stating that foreign activities can give rise to a Sherman Act claim "provided that the conduct both (1) sufficiently affects American commerce, i.e., it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce, and (2) has an effect of a kind that antitrust law considers harmful, i.e., the 'effect' must 'give rise to a [Sherman Act] claim.'" (quoting *15 U.S.C. § 6a (2000)* (emphases omitted)); *Cont'l Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 704, 82 S. Ct. 1404, 8 L. Ed. 2d 777 (1962)* ("A conspiracy to monopolize or restrain the domestic or foreign commerce of the United States is not outside the reach of the Sherman Act just because part of the conduct complained of occurs in foreign countries. [*16] "). In addition, evidence of foreign price-fixing activities is relevant in determining the nature and scope of an alleged international conspiracy. As the Supreme Court has noted, "'the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'" *Cont'l Ore Co., 370 U.S. at 699* (quoting *United States v. Patten, 226 U.S. 525, 544, 33 S. Ct. 141, 57 L. Ed. 333 (1913));* *see also Kellam Energy, Inc. v. Duncan, 616 F. Supp. 215, 219 (D. Del. 1985)* ("Where allegations of conspiracy to restrain trade and intent to monopolize are at issue, as in the instant case, a broad scope for discovery is appropriate, because the conspiracy may involve actors outside of the plaintiff's geographic market and the scheme of monopolization may involve an area larger than the plaintiff's own limited sphere of operations.") Consequently, we conclude that Plaintiffs' discovery requests with respect to Defendants' manufacture, sale, and/or distribution of automotive re-

2004 U.S. Dist. LEXIS 29160, *

finishing paint in foreign countries are relevant to their domestic antitrust claims.

### B. Burden

*Federal Rule of Civil Procedure 26(b)(2)* [*17] allows for limiting discovery where the burden of production outweighs the likely benefit, or where the discovery sought can be obtained through some less burdensome process. This burden is identified by looking at many of the factors listed in *Rule 26(b)(2)*, including "relevance, the need for the documents, the breadth of the document request, the time period covered by such request, [and] the particularity with which the documents are described." *Wyoming v. U.S. Dep't of Agric., 208 F.R.D. 449, 452-53 (D.D.C. 2002).*

Defendants object to the production of documents relating to their foreign activities, arguing that Plaintiffs' request "would necessarily require a lengthy and expensive period of search," imposing an "extraordinary" burden on Defendants. (Defs.' Mem. Law in Support of Mot. for Clarification at 3, 5.) Although we recognize that Defendants have provided approximately 700,000 documents that were previously produced to the federal grand jury (Defs.' Reply Mem. in Support of Mot. for Clarification at 4), the scope of Plaintiffs' discovery request here is consistent with other antitrust litigation involving potential conspiracies of nationwide or global [*18] reach. *See, e.g., In re Fine Paper Antitrust Litig., 685 F.2d 810, 818 (3d Cir. 1982)* (finding no abuse of discretion where trial court permitted production of nearly two million documents in a complex, nationwide antitrust claim); *Int'l Bus. Machs. Corp. v. United States, 480 F.2d 293, 295 (2d Cir. 1973)* (stating that defendant produced approximately seventeen million documents in discovery for a government antitrust case and a private multidistrict litigation action); *In re Lease Oil Antitrust Litig., 186 F.R.D. 403, 429 (S.D. Tex. 1999)* (noting that defendants produced millions of pages of documents in antitrust action over royalty payments by various oil companies); *In re Brand Name Prescription Drugs Antitrust Litig., No. 94-897, MDL. 997, 1996 U.S. Dist. LEXIS 1908, at *13 (N.D. Ill. Feb. 20, 1996)* (stating that tens of millions of documents had been produced in action regarding alleged antitrust and price discrimination violations in the brand name prescription drug industry). Even in cases like this one, that assert claims based only on harm to domestic consumers, courts have granted extensive discovery involving [*19] international or foreign price-fixing activities where they are relevant to the plaintiffs' claims. *See In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 8904, 2001 WL 1049433, at *11-13;* n3 *Laker Airways Ltd v. Pan Am. World Airways, 103 F.R.D. 42, 47, 49-50 (D.D.C 1984); In re Uranium Antitrust Litig., 480 F. Supp. 1138, 1154-56 (N.D. Ill. 1979).*

n3 Defendants suggest that *In re Vitamins* is inapplicable because that case dealt with an alleged global conspiracy to control the market. Despite the fact that a global conspiracy was alleged, the court in that case limited Plaintiffs' claims to those injuries "with a sufficient United States nexus," making that case quite analogous to the instant matter. *In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 8904, 2001 WL 1049433, at *11.*

Moreover, we are not convinced that extending the scope of discovery to encompass foreign price-fixing documents will significantly increase Defendants' burden. Defendants have already agreed to produce all [*20] documents and information, regardless of their location, that relate to the United States, any other geographic region as a whole that includes the United States, and the world as a whole. (Defs. Mem. Law. in Support of Mot. for Clarification at 6-7.) Under this proposal, Defendants will be required to search through all documents relating to automotive refinishing paint, no matter where they are located, and determine whether they relate in some way to the United States. Broadening the scope of discovery to include foreign activities will likely require Defendants to search through the same sets of documents, and will not obligate them to conduct a separate "filtering" process to separate out only those documents that relate to the United States. Additionally, a number of Plaintiffs' requests deal with documents previously produced to a federal, state, or foreign governmental entity or investigatory body, and reproduction of those documents to Plaintiffs should not cause an unnecessary burden or hardship on Defendants.

Because we conclude that the relevance of the materials requested, which all pertain to exchanges of information with a competitor or an investigation by a foreign [*21] or domestic body, significantly outweigh the burden of production to Defendants, we will deny Defendants' Motion for Clarification.

An appropriate Order follows.

### ORDER

AND NOW, this 29th day of October, 2004, upon consideration of Defendants' Motion for Clarification of the Court's October 14, 2003, Discovery Order (Docket No. 113), all documents in support thereof, and in opposition thereto, it is ORDERED as follows:

1. Defendants' motion is DENIED.

2004 U.S. Dist. LEXIS 29160, *

2. Defendants shall produce all responsive documents, found in the United States or globally, in response to Plaintiffs' Document Requests and Interrogatories including those dealing with foreign manufacturing, sale, and/or distribution of automotive refinishing paint.

IT IS SO ORDERED:

BY THE COURT:

R. Barclay Surrick, Judge