EXHIBIT 10

Page 1

616 F.Supp. 215
616 F.Supp. 215, 1985-2 Trade Cases P 66,759
(Cite as: 616 F.Supp. 215)

H

United States District Court,
D. Delaware.
KELLAM ENERGY, INC., a Virginia corporation as Successor to Kellam, Inc. and Shore Atlantic, Inc., Plaintiff,
v.
Robert M. DUNCAN, t/a Super Soda, a Delaware resident, and R.C. Nehi Bottling, Inc., t/a Super Soda, a Delaware corporation, Defendants.
Civ. A. No. 84-579 CMW.

June 20, 1985.

Petroleum products supplier brought breach of contract action against operator of convenience stores, and operator counterclaimed asserting antitrust violations. Convenience store operator sought discovery. The District Court, Caleb M. Wright, J., held that: (1) discovery was not confined to limitations period of antitrust statute; (2) geographic scope of discovery was not limited to specific locations where parties' convenience stores directly competed, but extended to regional target of alleged monopolization scheme; and (3) several discovery requests were irrelevant or overbroad.

Ordered accordingly.

West Headnotes

[1] Federal Civil Procedure ⚖ 1272.1
170Ak1272.1 Most Cited Cases
   (Formerly 265k25(1))
Liberal discovery is allowed in antitrust cases.

[2] Federal Civil Procedure ⚖ 1581
170Ak1581 Most Cited Cases
   (Formerly 265k25(6.1), 265k25(6))
Discovery in antitrust case was not limited in time by statute of limitations; documents originating as early as beginning of alleged scheme of monopolization could be obtained.

[3] Federal Civil Procedure ⚖ 1272.1
170Ak1272.1 Most Cited Cases
   (Formerly 265k25(6.1), 265k25(6))
Geographic scope of discovery in antitrust case involving alleged scheme to monopolize convenience store market was not limited to local areas in which parties directly competed, but could extend to interstate region to which alleged monopolization scheme extended.

[4] Federal Civil Procedure ⚖ 1272.1
170Ak1272.1 Most Cited Cases
   (Formerly 265k25(6.1), 265k25(6))
Discovery in antitrust case involving alleged scheme to control price of petroleum products sold to convenience stores did not extend to sale of nonpetroleum related products by alleged monopolizer to convenience stores, to yearly inventories of all stores owned by alleged monopolizer, to petroleum installations owned or serviced by that party, or to former contracts between that party or its predecessors and other convenience store operators for time before alleged scheme began or for area outside of geographic area of competition; such discovery was irrelevant and/or overbroad.

*216 Charles S. Crompton, Jr., and W. Harding Drane, Jr., of Potter, Anderson & Corroon, Wilmington, Del (Hugh L. Patterson, and Walter D. Kelley, Jr., of Willcox, Savage, Dickson, Hollis & Eley, Norfolk, Va., of counsel), for plaintiff.

R. Brandon Jones, of Hudson, Jones, Jaywork & Williams, Dover, Del., William J. Wier, Jr., of Herlihy & Wier, Wilmington, Del., for defendants.

OPINION

CALEB M. WRIGHT, Senior District Judge.

This is an action for breach of contract in which the defendants have asserted a number of counterclaims based on alleged violations of the antitrust laws. It is now before the Court on the defendants' first motion to compel the production of documents.

The plaintiff Kellam Energy, Inc., a Virginia corporation (hereinafter "Kellam"), is a distributor of petroleum products in the states of Delaware, Maryland and Virginia and maintains its principal place of business in Belle Haven, Virginia. Kellam also operates a number of "convenience stores", which sell beverages, groceries and snacks as well as gasoline, in southern Delaware and parts of Maryland and Virginia on the Delmarva Peninsula. Kellam also supplies these convenience stores with

616 F.Supp. 215
(Cite as: 616 F.Supp. 215, *216)

Page 2

gasoline products. The defendant R.C. Nehi Bottling, Inc. (hereinafter "Nehi"), is a Delaware corporation with its principal place of business in Camden, Delaware, and is engaged in the production and distribution of soft drinks as well as running a chain of convenience stores in southern Delaware under the name "Super Soda Center." Defendant Robert M. Duncan (hereinafter "Duncan") is a resident of Delaware and the chief executive officer of Nehi.

At issue in this case are a series of seven contracts entered into between Kellam and Duncan or Nehi between May 1, 1975 and May 28, 1982, according to which seven of the Super Soda outlets are to purchase *217 petroleum products from Kellam for periods of fifteen years. At least four of these agreements may be plausibly characterized as requirements contracts, obligating the buyer to purchase from Kellam "all of buyer's entire supply of gasoline and diesel fuel which buyer dispenses at the above described location." Kellam alleges that Nehi and Duncan have breached these contracts by purchasing petroleum products from other suppliers. In addition to asserting a number of affirmative defenses, Nehi and Duncan have counterclaimed by alleging that the contracts in question are part of a course of action by Kellam that violates a number of antitrust statutes, including the Robinson-Patman Act, 15 U.S.C. § 13(a), and Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2. Specifically, the defendants assert that Kellam has engaged in unlawful price discrimination by selling petroleum products to its own outlets at a price lower than it sells these same products to the Super Soda outlets; that Kellam has used the contracts in question to set the price paid for petroleum products by competing convenience stores at an artificially high price; and that Kellam has used these contracts as part of a plan to monopolize the gasoline-convenience store market in southern Delaware.

Nehi's requests for production may be divided into four categories: (1) documents relating to Kellam's alleged damages; (2) documents relating to Kellam's pricing practices with regard to its petroleum products distributed to other retail gasoline outlets "in the same classification" [FN1] as Nehi; (3) documents relating to Kellam's interest in and marketing strategy for entering the convenience store market; and (4) documents relating to Kellam's compliance with governmental regulation of the petroleum products industry and its response to the deregulation of that industry. Nehi's requests cover the time period from January 1, 1975 to the present and refer to a geographic area on the Delmarva Peninsula that includes the portions of the states of Maryland and Delaware from Smyrna, Delaware, to the border between Maryland and Virginia. In addition to objecting to individual requests on the grounds that they are vague, overbroad, overly burdensome or irrelevant, immaterial and not calculated to lead to the discovery of admissible evidence, Kellam has made two general objections to Nehi's requests based on their geographic and temporal scope. Kellam argues that the geographic scope of the requests should be limited to the specific areas where Kellam's and Nehi's convenience stores actually compete for gasoline sales, namely, the towns of Seaford, Milford and Harrington, [FN2] Delaware. Kellam also maintains that the relevant time period for discovery should extend no earlier than March 15, 1982, since it was not until that date that Kellam took over operation of the convenience stores that now compete with Nehi in these three towns.

> FN1. This phrase occurs in the price clauses of the seven contracts at issue.
>
> FN2. Kellam argues further that even the Harrington area should be excluded from discovery on the ground that neither Nehi's nor Kellam's Harrington outlets purchase their gasoline from Kellam.

[1] The Court notes, to begin with, that there is a general policy of allowing liberal discovery in antitrust cases. See F.T.C. v. Lukens Steel Co., 444 F.Supp. 803 (D.D.C.1977); Maritime Cinema Service Corp. v. Movies en Route, Inc., 60 F.R.D. 587 (S.D.N.Y.1973); Morgan Smith Automotive Products, Inc. v. General Motors Corp., 54 F.R.D. 19 (E.D.Pa 1971); Leonia Amusement Corp. v. Loew's, Inc., 16 F.R.D. 583 (S.D.N.Y 1954). Particularly where allegations of conspiracy or monopolization are involved, as in the instant case, broad discovery may be needed to uncover evidence of invidious design, pattern or intent. See F.T.C. v. Lukens, supra; Quonset Real Estate Corp. v. Paramount Film Distr. Corp., 50 F.R.D. 240 (S.D.N.Y.1970). As the court noted in the latter case, the discovery provisions of the Federal Rules of Civil Procedure are afforded a liberal construction when information is sought "to

616 F.Supp. 215
(Cite as: 616 F.Supp. 215, *218)

establish design or pattern to monopolize *218 or intent to conspire in violation of the antitrust laws." *Id.* at 241.

Kellam argues, however, that the geographic scope of discovery with respect to Nehi's antitrust counterclaims should be limited to the boundaries of the geographic market in which Kellam and Nehi compete, namely, the three towns in which they both operate convenience stores, and that the outer temporal limit of discovery should be set by the statute of limitations for the antitrust laws, namely, four years prior to the filing of the complaint, or 1980. See Clayton Act § 4B, 15 U.S.C. § 15b.

[2] The Court finds these arguments unpersuasive. The cases clearly establish that the temporal scope of discovery in antitrust suits should not be confined to the limitations period of the antitrust statutes. *See Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135 (4th Cir.1980) (discovery regarding allegedly unlawful agreement during two years preceding limitations period should have been permitted where it was relevant to the question of conspiracy); *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 35 Fed.R.Serv.2d 259 (S.D.N.Y.1982) (discovery in antitrust actions routinely goes beyond statutory period); *Robertson v. Nat'l Basketball Ass'n*, 67 F.R.D. 691 (S.D.N.Y.1975) (history of bargaining relevant to question whether alleged restraints came into being as result of arms' length negotiations); *Maritime Cinema Service Corp. v. Movies en Route, Inc., supra* (discovery permitted six years prior to alleged damages); *Quonset Real Estate Corp. v. Paramount Film Distr. Corp., supra* (discovery permitted for period of ten years antedating earliest possible wrong); *Schenley Industries, Inc. v. New Jersey Wine & Spirit Wholesalers*, 272 F.Supp. 872 (D.N.J.1967) (asserted history of conspiracy rather than scope of plaintiff's damages provides temporal boundary for discovery). In the instant case, Nehi is alleging harm from a conspiracy to restrain trade and a scheme of monopolization that may have begun as early as 1975. Nehi should therefore be allowed to obtain documents originating as early as that year. To be sure, Nehi will only be entitled to recover for damages it suffered within the limitations period, but the scope of Nehi's possible damages does not define the scope of permissible discovery. *See Schenley Industries, Inc. v. New Jersey Wine & Spirit Wholesalers, supra*, at 888.

[3] As to the geographic scope of Nehi's discovery requests, the Court cannot agree with Kellam's argument that it should be limited to the specific locations where Kellam's convenience stores compete with Nehi's. Kellam notes correctly that the geographic market is defined by the "area of effective competition." *See United States v. Philadelphia Nat'l Bank*, 374 U.S. 321 at 357-59, 83 S.Ct. 1715 at 1738-39, 10 L.Ed.2d 915 (1963); [FN3] *Jetro Cash & Carry Enterprises v. Food Distr. Center*, 569 F.Supp. 1404, 1983-2 Trade Cases (CCH) ¶ 65,722 at 69,693 (1983); *Carlo Gelardi Corp. v. Miller Brewing Co.*, 421 F.Supp. 237, 243 (D.N.J.1976). However, it is by no means clear that the area of effective competition is limited to the specific locations where both Kellam and Nehi operate convenience stores. Certainly, the competition for customers would appear to be local, since most convenience store customers are probably drawn from people who live or work in the areas immediately surrounding the stores. But the companies that operate convenience stores may also compete with one another over a wider, perhaps regional area in the markets for capital investment, managerial talent, wholesale supply and others. Indeed, the gravamen of Nehi's counterclaim is that Kellam is engaged in a scheme to monopolize the convenience store market in the region by fixing the wholesale price of *219 gasoline paid by competing convenience stores at an artificially high level. Thus, the competition defining the relevant market might well be regional as well as local.

> FN3. Although *Philadelphia Nat'l Bank* involved evaluation of a merger under Section 7 of the Clayton Act, the standards for geographic market definition under Section 7 of the Clayton Act and Sections 1 and 2 of the Sherman Act are the same. Compare *Philadelphia Nat'l Bank* with *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 988 (D.C.Cir.1977) and *Morton Bldgs. of Nebraska, Inc. v. Morton Bldgs., Inc.*, 531 F.2d 910, 918 (8th Cir.1976).

The leading Supreme Court decision on defining the market for geographically dispersed but locally provided services authorizes such an approach to geographic market definition. In *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), the court affirmed the district court's finding that the accredited central station service business comprised a single national market. Grinnell's affiliates supplied subscribers with fire

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

616 F.Supp. 215  
(Cite as: 616 F.Supp. 215, *219)

Page 4

and burglar alarm services from central stations through automatic alarm systems installed on subscribers' premises. The central stations were manned 24 hours a day and, upon receipt of an alarm signal, would, if appropriate, dispatch guards to the protected premises and notify the police or fire department. Even though each station ordinarily served only an area within a 25 mile radius, the finding of a national market was affirmed, because Grinnell and its affiliates engaged in national planning and negotiated nationwide contracts, and certification and rate-making were largely done by national insurers. *Id.* at 575, 86 S.Ct at 1706. In the instant case, it is an open factual question whether there are elements of regional competition and planning that would support a definition of the geographic market as regional rather than merely local. Certainly, it would be inappropriate to preclude discovery by imposing a narrow market definition at this stage of the proceedings. Furthermore, as the district court in *Grinnell* noted, an eventual finding that the gasoline convenience store market is regional at one level would not be inconsistent with the finding that it is also local at another level. [FN4]

> FN4. The district court stated that "in addition to the principal national market, there may well be local markets of limited territorial area, or city markets, which in other litigation might be found in themselves to constitute, for purposes of the antitrust laws, definable, separate markets, wherein prohibited monopolies, or prohibited monopolization, or prohibited restraints, or prohibited attempts to achieve those forbidden ends might be enjoined or punished." *United States v. Grinnell Corp.*, 236 F.Supp. 244, at 253 (D.R.I 1964).

In any case, regardless of how Nehi's geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limits of discovery--any more than the statute of limitations sets the temporal limit of discovery. Where allegations of conspiracy to restrain trade and intent to monopolize are at issue, as in the instant case, a broad scope for discovery is appropriate, because the conspiracy may involve actors outside of the plaintiff's geographic market and the scheme of monopolization may involve an area larger than the plaintiff's own limited sphere of operations. In *Natcontainer Corp v. Continental Can Co.*, 362 F.Supp. 1094 (S.D.N.Y 1973), for example, the plaintiffs were independent manufacturers of cardboard containers who alleged that Continental and others had conspired to monopolize that industry by, inter alia, charging the plaintiffs supracompetitive prices for the liner board needed to manufacture containers and by selling their own containers below cost. In this situation, where Continental was facing allegations similar to those made against Kellam in the instant case, the court held that it was improper for Continental to attempt to restrict the scope of interrogatories addressed to it to the geographic area where it competed with the plaintiffs, and noted that interrogatories directed towards Continental's acts against other competitors sought relevant information. *Id.* at 1102.

[4] Kellam's arguments for limiting the geographic and temporal scope of discovery are unpersuasive. [FN5] The Court finds *220 that, with certain exceptions, Nehi's requests are relevant and reasonably calculated to lead to the discovery of admissible evidence of anticompetitive conduct by Kellam. The exceptions are requests nos. 25, 31, 50, 59, and 60. Request No. 25, which seeks documents concerning the sale of non-petroleum related products by Kellam to retail outlets, is irrelevant to Nehi's allegations that Kellam violated the antitrust laws by controlling the price of petroleum products sold to retail outlets. Request No. 50, which asks for the yearly inventories of all of Kellam's Shore Stop Stores in the defined area, is also overbroad and irrelevant, as is Request No. 59, which seeks documents relating to all petroleum installations owned or serviced by Kellam since 1970. Request No. 60, which asks for any former contracts between Kellam or its predecessors and various entities that operate convenience stores, is overbroad as stated but should be complied with for those contracts executed since January 1, 1975 within the defined geographic area. Request No. 31 is simply unclear, and Kellam need not respond to it in its present form.

> FN5. Kellam has also raised objections to the geographic scope of discovery based on the argument that Nehi and Duncan lack standing to sue for lost profits on sales of soft drinks and leases of property to convenience stores not operated by Nehi that have allegedly been harmed in their business by Kellam's practices. Because the Court does not base its ruling on these asserted losses by Nehi, it need not consider these arguments at this time. The

616 F.Supp. 215
(Cite as: 616 F.Supp. 215, *220)

Page 5

Court notes, however, that they will obviously be germane when the issue of damages is properly before it.

The defendants' first motion to compel discovery will be granted with these qualifications. In view of the difficult nature of the issues involved in defining the geographic market and determining the proper scope of discovery in an antitrust case of this sort, the Court will award no attorneys' fees in connection with this motion. However, the Court will not hesitate to assess attorneys' fees in the future against any party that ignores the guidelines for the scope of discovery set out in this opinion.

An order will issue in accordance herewith.

616 F.Supp. 215, 1985-2 Trade Cases P 66,759

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.