EXHIBIT 12

Page    1

98 S.Ct. 2380
437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253, 25 Fed.R.Serv.2d 541, Fed. Sec. L. Rep. P 96,470
**(Cite as: 437 U.S. 340,  98 S.Ct. 2380)**
▷

Briefs and Other Related Documents

Supreme Court of the United States
OPPENHEIMER FUND, INC., et al., Petitioners,
v.
Irving SANDERS et al.
No. 77-335.

Argued Feb. 28-March 1, 1978.
Decided June 19, 1978.

   Class action was brought against open-end investment fund, its management corporation and others to recover amount by which the allegedly artificially inflated price plaintiff paid for fund shares exceeded their value.   The United States District Court for the Southern District of New York, ruled that cost of sorting out lists of class members was defendants' responsibility.   The Court of Appeals, 558 F.2d 636, affirmed.   Petition for writ of certiorari was granted.   The Supreme Court, Mr Justice Powell, held that:  (1) rule empowering district courts to enter appropriate orders in handling of class actions, rather than discovery rules, was appropriate source of authority for order directing defendants to help compile a list of class members;  (2) it was proper to order defendants to direct their transfer agent to make available the computer tapes from which class members could be identified;  (3) it was abuse of discretion to require defendants to bear expense of identifying class members where plaintiffs could obtain information by paying the agent the same amount which defendants would have to pay, and (4) neither defendants' opposition to plaintiffs' proposed redefinition of a class, fact that identification expense was relatively modest in comparison to fund assets, that records were kept on computer tapes or that defendants were alleged to have breached a fiduciary duty to the class were sufficient reasons to require defendants to bear such expense.

   Judgment of Court of Appeals reversed and case remanded for further proceedings.

West Headnotes

[1] Federal Courts ⬩➡ 574
170Bk574 Most Cited Cases
Order allocating expense of identification of class

members, for purpose of sending individual notice, was appealable under the collateral order doctrine. Fed.Rules Civ.Proc. rule 23(c)(2), 28 U.S.C.A.

[2] Federal Civil Procedure ⬩➡ 176
170Ak176 Most Cited Cases
   (Formerly 170Ak161)
Civil rule empowering district courts to enter appropriate orders in the handling of class actions, rather than discovery rules, was the appropriate source of authority for order directing defendants to help identify the members of plaintiff class since information was sought to facilitate sending of required notice rather than to define or clarify issues. Fed.Rules Civ.Proc. rules 23(d), 26(b)(1), 28 U.S.C.A.

[3] Federal Civil Procedure ⬩➡ 1272.1
170Ak1272.1 Most Cited Cases
   (Formerly 170Ak1272)
Consistently with the notice-pleading system established by Federal Rules of Civil Procedure, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Fed.Rules Civ.Proc. rule 26(b)(1), 28 U.S.C.A.

[4] Federal Civil Procedure ⬩➡ 1272.1
170Ak1272.1 Most Cited Cases
   (Formerly 170Ak1272)
Discovery is not limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits, for example, where issues arise as to jurisdiction or venue discovery is available to ascertain the facts therein on such issues and, similarly, discovery may be used to illuminate issues on which a district court must pass in deciding whether a suit should proceed as a class action, such as numerosity, common questions and adequacy of representation. Fed.Rules Civ.Proc. rules 23, 26(b)(1), 28 U.S.C.A.

[5] Federal Civil Procedure ⬩➡ 1261
170Ak1261 Most Cited Cases
Discovery, like all matters of procedure, has ultimate and necessary boundaries.   Fed.Rules Civ.Proc. rule 26(b)(1), 28 U.S.C.A.

[6] Federal Civil Procedure ⬩➡ 1272.1



98 S.Ct. 2380
**(Cite as: 437 U.S. 340, 98 S.Ct. 2380)**

170Ak1272.1 Most Cited Cases
    (Formerly 170Ak1272)
Discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of discovery rule and, thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to the issues Fed Rules Civ.Proc. rule 26(b)(1), 28 U.S.C.A.

[7] Federal Civil Procedure ☞ 1261
170Ak1261 Most Cited Cases
In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which the party seeks the information. Fed Rules Civ.Proc. rule 26(b)(1), 28 U.S.C.A.

[8] Federal Civil Procedure ☞ 1269.1
170Ak1269.1 Most Cited Cases
    (Formerly 170Ak1269)
When purpose of a discovery request is to gather information for use in proceedings other than the pending suit discovery properly is denied and, likewise, discovery should be denied when a party's aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks discovery. Fed Rules Civ.Proc. rule 26(b)(1), 28 U.S.C.A.

[9] Federal Civil Procedure ☞ 1275
170Ak1275 Most Cited Cases
Although a representative plaintiff's request that a defendant help compile a list of class members is more properly handled under the class action, rather than discovery rules, it is not the law that class members' names and addresses never can be obtained under the discovery rules since there may be instances where such information could be relevant to class action issues or where a party has reason to believe that communications with some members of the class could yield information bearing on those or other issues. Fed.Rules Civ.Proc. rules 23, 26(b)(1), 28 U.S.C.A.

[10] Federal Civil Procedure ☞ 178
170Ak178 Most Cited Cases
    (Formerly 170Ak161)
Although class action rule states that "the court shall direct" notice to class members, the rules vest power in the district court to order one of the parties to perform the tasks necessary to send notice, including authority, under appropriate circumstances, to require a defendant's cooperation in identifying the class members to whom notice must be sent. Fed.Rules Civ Proc. rule 23(c)(2), (d), 28 U.S.C.A.

[11] Federal Civil Procedure ☞ 178
170Ak178 Most Cited Cases
    (Formerly 170Ak161)
In regard to issue of which party should perform particular tasks necessary to send class notice the general rule must be that the representative plaintiff should perform such tasks, for it is he who seeks to maintain the suit as a class action and, thus, ordinarily other members of his class and, thus, ordinarily there is no warrant for shifting the cost of the representative plaintiff's performance of such tasks to defendant. Fed.Rules Civ Proc. rule 23(d), 28 U.S.C.A.

[12] Federal Civil Procedure ☞ 2731
170Ak2731 Most Cited Cases
General principle is that a party must bear the burden of financing his own suit

[13] Federal Civil Procedure ☞ 178
170Ak178 Most Cited Cases
    (Formerly 170Ak161)
Where a defendant in a class action can perform one of the tasks necessary to send notice with less difficulty or expense than could the representative plaintiff, the district court properly may exercise its discretion to order defendant to perform the task in question; in identifying the instances in which such an order may be appropriate a rough analogy may usefully be drawn to practice under rule authorizing a party responding to an interrogatory to specify and make available for examination those business records from which an answer may be derived. Fed.Rules Civ Proc. rules 23(d), 33(c), 28 U.S.C.A.

[14] Federal Civil Procedure ☞ 1262.1
170Ak1262.1 Most Cited Cases
    (Formerly 170Ak1262)
Discovery rules contemplate that discovery will proceed without judicial intervention unless a party moves for a protective order or an order compelling discovery. Fed Rules Civ Proc rules 26(b)(1) (c). 37(a), 28 U.S.C.A.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 S.Ct. 2380
**(Cite as: 437 U.S. 340, 98 S.Ct. 2380)**

[15] Federal Civil Procedure ☞ 176
170Ak176 Most Cited Cases
  (Formerly 170Ak161)
Where a representative plaintiff can derive names and addresses of class members from a defendant's records with substantially the same effort as could defendant it is proper to require the plaintiff to perform such tasks but, where the burden of deriving the answer is not substantially the same and the tasks may be performed more efficiently by defendant, the district court has discretion whether to order defendant to perform such tasks. Fed.Rules Civ.Proc. rule 23(d), 28 U.S.C.A.

[16] Federal Civil Procedure ☞ 2731
170Ak2731 Most Cited Cases
A party ordinarily must bear the expense of complying with orders properly issued by the district court.

[17] Federal Civil Procedure ☞ 2731
170Ak2731 Most Cited Cases
Where district court decides that a defendant rather than a representative plaintiff should perform a task necessary to send class notice, the court must exercise its discretion in deciding whether to leave the cost of complying with its order where it falls, on the defendant, or place it on the party that benefits, i. e., plaintiff;   in exercising such discretion, a rough analogy may usefully be drawn to the practice under the discovery rules. Fed.Rules Civ.Proc. rules 23(d), 26(c), 28 U.S.C.A.

[18] Federal Civil Procedure ☞ 2736
170Ak2736 Most Cited Cases
Under the discovery rules, the presumption is that the responding party must bear the expense of complying with discovery request, although he may invoke the District Court's discretion to grant orders protecting him from undue burden or expense, including orders conditioning discovery on the requesting party's payment of the costs of discovery Fed.Rules Civ.Proc. rule 26(c), 28 U.S.C.A.

[19] Federal Civil Procedure ☞ 2731
170Ak2731 Most Cited Cases
Although burden of performing a task necessary to send class notice as well as shouldering expense thereof may be placed on a defendant rather than a representative plaintiff, a district court should be considerably more ready to place the cost of defendant's performing an ordered task on the

representative plaintiff and, in the usual case, the test should be whether the expense is substantial rather than whether it is undue.    Fed.Rules Civ.Proc. rules 23(d), 26(c), 28 U.S.C.A.

[20] Federal Civil Procedure ☞ 2731
170Ak2731 Most Cited Cases
In some instances, the expense involved by a defendant in performing a task necessary to send class notice may be so insubstantial as not to warrant the effort required to calculate it and shift it to the representative plaintiff and, in other cases, it may be appropriate to leave the cost where it falls because the task ordered is one that the defendant must perform in any event in the ordinary course of business    Fed.Rules Civ.Proc. rule 23(d), 28 U.S.C.A.

[21] Federal Civil Procedure ☞ 2731
170Ak2731 Most Cited Cases
In placing on a defendant the cost of performing a task necessary to send class notice, district courts must not stray too far from the principle that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action Fed.Rules Civ.Proc. rule 23(d), 28 U.S.C.A.

[22] Federal Civil Procedure ☞ 1588
170Ak1588 Most Cited Cases

[22] Federal Civil Procedure ☞ 2731
170Ak2731 Most Cited Cases
Since membership in class sought to be represented in securities fraud suit could be identified only by reference to records in possession of defendants' transfer agent, it was not abuse of discretion to order defendants to direct the agent to make the records available to plaintiffs;   however, it was abuse of discretion to require defendants to bear expense of identifying class members since plaintiffs could obtain the information by paying the transfer agent the same amount which defendants would have to pay, such information was required to comply with plaintiffs' obligations to provide notice and no special circumstances were shown to warrant requiring defendants to bear the
expense.    Fed.Rules Civ.Proc. rules 23(b)(3), (c)(2), (d), 26-37, 28 U.S.C.A.;    Investment Company Act of 1940, § 1 et seq., 15 U.S.C.A. § 80a-1 et seq.;  Securities Act of 1933, §§ 1 et seq., 4, 5, 15 U.S.C.A. §§ 77a et seq., 77d, 77e;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



98 S.Ct. 2380
**(Cite as: 437 U.S. 340, 98 S.Ct. 2380)**

Securities Exchange Act of 1934, § 1 et seq., 15 U.S.C.A. § 78a et seq.

[23] Federal Civil Procedure ☞ 177.1
170Ak177.1 Most Cited Cases
(Formerly 170Ak177, 170Ak161)
A district court necessarily has some discretion in deciding the composition of a proper class and how notice should be sent and, likewise, it is not improper for the court to consider the potential impact that rulings on such issues may have on the expense that the representative plaintiff must bear in order to send the notice. Fed.Rules Civ.Proc. rule 23(b)(3), (c)(2), 28 U.S.C.A.

[24] Federal Civil Procedure ☞ 2731
170Ak2731 Most Cited Cases
Defendant's opposition to representative plaintiffs' proposed redefinition of class and to method of sending required notice was an insufficient reason for requiring defendants to bear expense of identifying class members. Fed.Rules Civ.Proc. rule 23(b)(3), (c)(2), 28 U.S.C.A.

[25] Federal Civil Procedure ☞ 2736
170Ak2736 Most Cited Cases
Fact that cost of obtaining names and addresses of class members, i.e., $16,000 was a relatively modest sum in comparison to assets of investment fund, i.e., in excess of $500 million, was not a sufficient reason for requiring defendants, who included the fund and who were ordered to direct their transfer agent to make the records available, to bear such expense since although in some circumstances the ability of a party to bear a burden may be a consideration, the test is normally whether the cost is substantial, not whether it is "modest" in relation to ability to pay. Fed.Rules Civ.Proc. rule 23(b)(3), (c)(2), 28 U.S.C.A.

[26] Federal Civil Procedure ☞ 2736
170Ak2736 Most Cited Cases
Fact that part of records necessary to identify class members was kept on computer tapes did not justify imposing on defendants, who had right to control the tapes and who were ordered to make them available to plaintiffs, the resulting identification expense, especially absent an indication or contention that defendants acted in bad faith to conceal information; also, a defendant is not to be penalized for not maintaining his records in the form most convenient to some potential future litigants

whose identity and perceived needs could not have been anticipated. Fed.Rules Civ.Proc. rule 23(b)(3), (c)(2), 28 U.S.C.A.

[27] Federal Civil Procedure ☞ 2736
170Ak2736 Most Cited Cases
Defendants, who were ordered to make certain records available to representative plaintiff for purpose of identifying class members, could not be held to bear the identification expense simply because they were alleged to have breached a fiduciary duty to the class, since a bare allegation of wrongdoing, whether by breach of fiduciary duty or otherwise, is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case and, likewise, it is not in the interests of a class of persons to whom a fiduciary duty is owed to require them, through the fiduciary, to help finance every suit by one of their number alleging a breach of fiduciary duty, without regard to whether the suit has merit. Fed.Rules Civ.Proc. rule 23(b)(3), (c)(2), 28 U.S.C.A.
**\*\*2383 Syllabus** [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499.
**\*340** Respondents brought a class action under Fed.Rule Civ.Proc. 23(b)(3) on behalf of themselves and a class of purchasers against petitioners (including an open-end investment fund, its management corporation, and a brokerage firm), seeking to recover the amount by which the allegedly artificially inflated price respondents paid for fund shares exceeded their value. Respondents sought to require petitioners to help compile a list of the names and addresses of the members of the plaintiff class from records kept by the fund's transfer agent so that the individual notice required by Rule 23(c)(2) could be sent. The class proposed by respondents numbered about 121,000 persons, of whom about 103,000 still **\*\*2384** held shares, and, since 171,000 persons currently held shares, approximately 68,000 were not members of the class. To compile a list of the class members' names and addresses, the transfer agent's employees would have had to sort manually through many records, keypunch 150,000 to 300,000 computer cards, and create several new computer programs, all for an estimated cost of over $16,000.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



98 S.Ct. 2380
(Cite as: 437 U.S. 340, *340, 98 S.Ct. 2380, **2384)

Respondents' proposed redefinition of the plaintiff class, opposed by petitioners, to include only those persons who bought fund shares during a specified period and who still held shares was rejected by the District Court as involving an arbitrary reduction in the class, but the court held that the cost of sorting out the list of class members was the petitioners' responsibility, while also rejecting respondents' proposal, opposed by petitioners, that the class notice be included in a regular fund mailing, because it would reach the 68,000 shareholders who were not class members. On petitioners' appeal, the Court of Appeals affirmed, holding that the federal discovery rules authorized the District Court to order petitioners to assist in compiling the class list and to bear the $16,000 expense incident thereto. *Held:*

1. Federal Rule Civ. Proc. 23(d), which empowers district courts to enter appropriate orders in the handling of class actions, not the discovery rules, is the appropriate source of authority for the District Court's order directing petitioners to help compile the list of class members. The information as to such members is sought to facilitate the sending of notice rather than to define or clarify issues in the case, *341 as is the function of the discovery rules, and thus cannot be forced into the concept of relevancy reflected in Fed. Rule Civ. Proc. 26(b)(1), which permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Pp. 2389-2392.

2. Where a defendant in a class action can perform one of the tasks necessary to send notice, such as identification, more efficiently than the representative plaintiff, the district court has discretion to order him to perform the task under Rule 23(d), and also has some discretion in allocating the cost of complying with such an order, although as a general rule the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action. See *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732. Pp. 2392-2394.

3. Here, however, the District Court abuse its discretion in requiring petitioners to bear the expense of identifying class members and in not requiring respondents to pay the transfer agent, where respondents can obtain the information sought

by paying the transfer agent the same amount that petitioners would have to pay, the information must be obtained to comply with respondents' obligation to provide notice to their class, and no special circumstances have been shown to warrant requiring petitioners to bear the expense. Pp. 2394-2396.

(a) Petitioners' opposition to respondents' proposed redefinition of the class and to the method of sending notice is an insufficient reason for requiring petitioners to pay the transfer agent, because it is neither fair nor good policy to penalize a defendant for prevailing on an argument against a representative plaintiff's proposals. Pp. 2394-2395.

(b) Nor is the fact that $16,000 is a "relatively modest" sum in comparison to the fund's assets a sufficient reason for requiring petitioners to bear the expenses, since the proper test is normally whether the cost is substantial, not whether it is "modest" in relation to ability to pay. Pp. 2394-2395.

(c) The District Court's order cannot be justified on the ground that part of the records in question were kept on computer tapes rather than in less modern forms. P. 2395.

(d) And petitioners should not be required to bear the identification expense simply because they are alleged to have breached a fiduciary duty to respondents **2385 and their class, since a bare allegation of wrongdoing, whether by breach of fiduciary duty or otherwise, is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case. Pp. 2395-2396.

558 F.2d 636, reversed and remanded.

*342 Donald N. Ruby, New York City, for respondents.

Alfred Berman, New York City, for petitioners; Norman L. Greene, Gerald Gordon, John F. Davidson, and Daniel E. Kirsch, New York City, on the briefs.

Mr. Justice POWELL delivered the opinion of the Court.

Respondents are the representative plaintiffs in a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



98 S.Ct. 2380
(Cite as: 437 U.S. 340, *342, 98 S.Ct. 2380, **2385)

class action brought under Fed.Rule Civ.Proc.
23(b)(3). They sought to require petitioners, the
defendants below, to help compile a list of the
names and addresses of the members of the plaintiff
class from records kept by the transfer agent for one
of petitioners so that the individual notice required
by Rule 23(c)(2) could be sent. The Court of
Appeals for the Second Circuit held that the federal
discovery rules, Fed.Rules Civ.Proc. 26-37,
authorize the District Court to order petitioners to
assist in compiling the list and to bear the $16,000
expense incident thereto. We hold that Rule 23(d),
which concerns the conduct of class actions, not the
discovery rules, empowers the District Court to
direct petitioners to help compile such a list. We
further hold that, although the District Court has
some discretion in allocating the cost of complying
with such an order, that discretion was abused in
this case. We therefore reverse and remand.

I

Petitioner Oppenheimer Fund, Inc. (Fund), is an
open-end diversified investment fund registered
under the Investment Company Act of 1940, 15
U.S.C. § 80a-1 *et seq.* (1976 ed.). The Fund and
its agents sell shares to the public at their net asset
value plus a sales charge. Petitioner Oppenheimer
Management Corp. (Management Corp.) manages
the Fund's investment portfolio. Pursuant to an
investment advisory *343 agreement, the Fund pays
Management Corp. a fee which is computed in part
as a percentage of the Fund's net asset value.
Petitioner Oppenheimer & Co. is a brokerage firm
that owns 82% of the stock of Management Corp.,
including all of its voting stock. The individual
petitioners are directors or officers of the Fund or
Management Corp., or partners in Oppenheimer &
Co.

Respondents bought shares in the Fund at various
times in 1968 and 1969. On March 26, May 12,
and June 18, 1969, they filed three separate
complaints, later consolidated, which alleged that
the petitioners, other than the Fund, had violated
federal securities laws in 1968 and 1969 by issuing
or causing to be issued misleading prospectuses and
annual reports about the Fund. [FN1] In particular,
respondents alleged that the prospectuses and reports
failed to disclose the fact that the Fund invested in
"restricted" securities, [FN2] the risks involved in
such investments, and the method used to value the
restricted securities on the Fund's books. They

also alleged that the restricted securities had been
overvalued on the Fund's books, causing the Fund's
net asset **2386 value, and thus the price of shares
in the Fund, to be inflated artificially. On behalf of
themselves and a class of purchasers, respondents
sought to recover from petitioners, other than the
Fund, the amount by *344 which the price they paid
for Fund shares exceeded the shares' value. [FN3]

FN1. The complaints alleged violations of the
Securities Act of 1933, 15 U.S.C. § 77a *et seq.*
(1976 ed.), the Securities Exchange Act of 1934, 15
U.S.C. § 78a *et seq* (1976 ed.), the Investment
Company Act of 1940, 15 U.S.C. § 80a-1 *et seq*
(1976 ed.), and rules promulgated under these Acts.
They also alleged pendent state-law claims of fraud
and breach of fiduciary duty.

FN2. "Restricted" securities are "securities acquired
directly or indirectly from the issuer thereof, or from
an affiliate of such issuer, in a transaction or chain
of transactions not involving any public offering
..." 17 CFR § 230.144(a)(3) (1977). The public
sale or distribution of such securities is restricted
under the Securities Act of 1933 until the securities
are registered or an exemption from registration
becomes available. See 15 U.S.C. §§ 77d, 77e
(1976 ed.).

FN3. Later in the proceedings respondents' counsel
estimated that the average recovery per class
member would be about $15, and that the aggregate
recovery might be $1 1/2 million.
In a separate count of their complaints, respondents
also sought derivative relief on behalf of the Fund to
recover excessive management fees paid by the Fund
to Management Corp. as a result of the Fund's
allegedly inflated net asset value.

In April 1973, respondents moved pursuant to
Fed.Rule Civ.Proc. 23(b)(3) for an order allowing
them to represent a class of plaintiffs consisting of
all persons who bought shares in the Fund between
March 28, 1968, and April 24, 1970. [FN4]
Relying on *Eisen v. Carlisle & Jacquelin*, 54
F.R.D. 565 (S.D.N.Y.1972), respondents also
sought an order directing petitioners to pay for the
notice to absent class members required by Fed.Rule
Civ.Proc. 23(c)(2). On May 1, 1973, however, the
Court of Appeals for the Second Circuit held that
the District Court in *Eisen* erred in ordering the
defendants to pay 90% of the cost of notifying



98 S.Ct. 2380
(Cite as: 437 U.S. 340, *344, 98 S.Ct. 2380, **2386)

members of a Rule 23(b)(3) plaintiff class. *Eisen v. Carlisle & Jacquelin (Eisen III)*, 479 F.2d 1005. Respondents thereupon deposed employees of the Fund's transfer agent, which kept records from which the class members' names and addresses could be derived, in order to develop information relevant to issues of manageability, identification, and methods of notice upon which the District Court would have to pass. These employees' statements, together with information supplied by the Fund, established that the class proposed by respondents numbered about *345 121,000 persons. About 103,000 still held shares in the Fund, while some 18,000 had sold their shares after the end of the class period. Since about 171,000 persons currently held shares in the Fund, it appeared that approximately 68,000 current Fund shareholders were not members of the class.

> FN4. Petitioners denied the material allegations of the complaints. In addition, they alleged a setoff against respondents and their class to the extent that the price paid by the Fund to redeem shares had exceeded their value. The non-Fund petitioners also alleged that if they were liable to respondents and their class for overvaluation of Fund shares, then the Fund would be liable to them for excess amounts received by the Fund as a result of the overvaluation.

The transfer agent's employees also testified that in order to compile a list of the class members' names and addresses, they would have to sort manually through a considerable volume of paper records, keypunch between 150,000 and 300,000 computer cards, and create eight new computer programs for use with records kept on computer tapes that either are in existence or would have to be created from the paper records. See App. 163-212. The cost of these operations was estimated in 1973 to exceed $16,000.

Having learned all this, and in the face of *Eisen III*, respondents moved to redefine the class to include only those persons who had bought Fund shares between March 28, 1968, and April 24, 1970, *and* who still held shares in the Fund. Respondents also proposed that the class notice be inserted in one of the Fund's periodic mailings to its current shareholders, and they offered to pay the cost of printing and inserting the notices, which was about $5,000. App. 146. These proposals would

have made it unnecessary to compile a separate list of the members of the redefined class in order to notify them. Petitioners opposed redefinition of the class on the ground that it arbitrarily would exclude about 18,000 former Fund shareholders who had bought shares during the relevant period, possibly to their prejudice. They also opposed including the class notice in a Fund mailing which would reach the 68,000 current shareholders who were not class members. This, **2387 petitioners feared, could set off a wave of selling to the detriment of the Fund. [FN5]

> FN5. Petitioners submitted the sworn affidavit of Robert Galli, Secretary of the Fund and Administrative Vice President and Secretary of Management Corp., which stated that this was a real possibility in light of "the current loss of investor confidence in the stock market and the uncertain conditions under which that market exists at this time." App. 130-131.

*346 On May 15, 1975, more than six years after the litigation began, the District Court ruled on the motions then pending. *Sanders v. Levy*, 20 Fed.Rules Serv.2d 1218 (SDNY 1975). The court first held that the suit met the requirements for class-action treatment under Rule 23(b)(3). *Id.*, at 1220-1221. It then rejected respondents' proposed redefinition of the class because it "would involve an arbitrary reduction in the class." *Id.*, at 1221. [FN6] At the same time, however, the court held that "the cost of culling out the list of class members . . . is the responsibility of defendants." *Ibid*. The only explanation given was that "the expense is relatively modest and it is defendants who are seeking to have the class defined in a manner which appears to require the additional expense." *Ibid*. Finally, the court rejected respondents' proposal that the class notice be included in a regular Fund mailing. Noting that the mailing would reach many current Fund shareholders who were not members of the class, the District Judge said that his "solution to this problem starts with my earlier ruling that it is the responsibility of defendants to cull out from their records a list of all class members and provide this list to plaintiffs. Plaintiffs will then have the responsibility to prepare the necessary notice and mail it at their expense." *Id.*, at 1222. [FN7]

> FN6. The District Court also rejected a proposal by petitioners to set April 25, 1969, as the closing date

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



98 S.Ct. 2380
(Cite as: 437 U.S. 340, *346, 98 S.Ct. 2380, **2387)

of the class period, holding that respondents had raised triable claims of misrepresentations after that date. 20 Fed.Rules Serv.2d. at 1221-1222.

FN7. The court subsequently modified this order to allow the notice to class members who still were Fund shareholders to be inserted in the envelopes of a periodic Fund mailing, "provided that the notices are sent only to class members and that plaintiffs pay in full the Fund's extra costs of mailing. including the costs of segregating the envelopes going to the class members from the envelopes going to other Fund shareholders." At the same time, the court held that the Fund should bear the identification costs in the first instance, "without prejudice to the right of this defendant, at the conclusion of the action, to make whatever claim it would be legally entitled to make regarding reimbursement by another party." The court denied the Fund's request that respondents be required to post bond for the identification costs.

*347 [1]  On petitioners' appeal, a divided panel of the Court of Appeals reversed the District Court's order insofar as it required petitioners to bear the cost required for the transfer agent to compile a list of the class members' names and addresses. *Sanders v. Levy*, 558 F.2d 636 (C.A.2 1976). [FN8] The majority thought that *Eisen IV*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), which had affirmed *Eisen III* in pertinent part, required respondents to pay this cost because the identification of class members is an integral step in the process of notifying them. 558 F.2d, at 642. [FN9] On rehearing en **2388 banc, however, the Court of Appeals reversed the panel's decision and affirmed the District Court's order by a vote of seven to three. *Id.*, at 646. [FN10] It thought that *Eisen IV* did not control this case because respondents might obtain the class members' names and addresses under the *348 federal discovery rules, Fed.Rules Civ.Proc. 26-37. The en banc court further held that although Rule 26(c) protects parties from "undue burden or expense" in complying with discovery requests, the District Court did not abuse its discretion under that Rule in requiring petitioners to bear this expense. 558 F.2d, at 649-650.

FN8. All three members of the panel agreed that the order allocating the expense of identification was appealable under the collateral-order doctrine of *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69

S.Ct. 1221, 93 L.Ed. 1528 (1949). 558 F.2d, at 638-639; *id.*, at 643 (Hays, J., dissenting in part). We agree. See *Eisen v. Carlisle & Jacquelin (Eisen IV)*, 417 U.S. 156, 171-172, 94 S.Ct. 2140, 2149-2150, 40 L.Ed.2d 732 (1974). The panel also unanimously affirmed the District Court's ruling that the suit could proceed as a class action. 558 F.2d, at 642-643; *id.*, at 643 (Hays, J., dissenting in part). This issue is not before us.

FN9. The panel majority also suggested that the Fund should not be required to bear this expense because it, unlike the other petitioners, was not named as a defendant in the class-action portion of this suit. See *id.*, at 640. The Fund itself, which is in the position of a defendant because it ultimately may be liable for any damages that respondents and their class recover, see n. 4, *supra*, does not argue in this Court that it should not bear the expense because it is not a formal defendant. We therefore do not rely on any distinction that might be drawn between the Fund and the other petitioners in this respect.

FN10. District Judge Palmieri, the author of the panel majority opinion, did not participate in the rehearing en banc.

By holding that the discovery rules apply to this case, the en banc court brought itself into conflict with the Court of Appeals for the Fifth Circuit, which recently held:
"The time and expense of gathering [class members'] names and addresses is a necessary predicate to providing each with notice of the action's pendency without which the action may not proceed [citing *Eisen IV* ]. Viewed in this context, it becomes strikingly clear that rather than being controlled by the federal civil discovery rules, identification of absentee class members' names and addresses is part and parcel of rule 23(c)(2)'s mandate that the class members receive 'the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.' " *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1102 (1977).
   In the Fifth Circuit's view, Rule 23(d), which empowers district courts to enter appropriate orders in the handling of class actions, is the procedural device by which a district court may enlist the aid of a defendant in identifying class members to whom

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



98 S Ct. 2380
(Cite as: 437 U.S. 340, *348, 98 S.Ct. 2380, **2388)

notice must be sent.  The *Nissan* court found it unnecessary to decide whether *Eisen IV* requires a representative plaintiff always to bear the cost of identifying class members.  Since the representative plaintiffs could perform the required search through the defendants' records as readily as the defendants themselves, and since the search had to be performed in order to advance the representative plaintiffs' case, they were required to perform it and thus to bear its cost.  See 552 F.2d, at 1102-1103.

*349 We granted certiorari in the instant case to resolve the conflict that thus has arisen and to consider the underlying cost-allocation problems. 434 U.S. 919, 98 S.Ct. 391, 54 L.Ed.2d 275 (1977).

## II

The issues in this case arise because of the notice requirement of Fed.Rule Civ.Proc. 23(c)(2), which provides in part:

"In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

In *Eisen IV,* the Court held that the plain language of this Rule "requires that individual notice be sent to all class members who can be identified with reasonable effort." 417 U.S., at 177, 94 S.Ct., at 2152.  The Court also found no authority for a district court to hold a preliminary hearing on the merits of a suit in order to decide which party should bear the cost required to prepare and mail the class notice.  *Id.,* at 177-178, 94 S.Ct., at 2152. Instead, it held:

"In the absence of any support under Rule 23, [the representative plaintiff's] effort to impose the cost of notice on [defendants] must fail. The usual rule is that a plaintiff must initially bear the cost of notice to the class. . . . Where, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit." *Id.,* at 178-179, 94 S.Ct., at 2153.

**2389 In *Eisen IV,* the defendants had offered to provide a list of many of the class members' names and addresses at their own expense in the first instance, if the representative plaintiff would prepare and mail individual notice to these class members. [FN11]  *Eisen IV* therefore did not present issues concerning *350 either the procedure by which a representative plaintiff might require a defendant to help identify class members, or whether costs may be allocated to the defendant in such a case.  The specific holding of *Eisen IV* is that where a representative plaintiff prepares and mails the class notice himself, he must bear the cost of doing so.

> FN11. See App. in *Eisen v. Carlisle & Jacquelin,* O.T. 1973, No. 73-203, pp. 184-185.

The parties in the instant case center much of their argument on the questions whether the discovery rules authorize a district court to order a defendant to help identify the members of a plaintiff class so that individual notice can be sent and, if so, which rule applies in this case.  For the reasons stated in Part A below, we hold that Rule 23(d), not the discovery rules, is the appropriate source of authority for such an order.  This conclusion, however, is not dispositive of the cost-allocation question.  As we explain in Part B, we think that where a defendant can perform one of the tasks necessary to send notice, such as identification, more efficiently than the representative plaintiff, the district court has discretion to order him to perform the task under Rule 23(d).  In such cases, the district court also has some discretion in allocating the cost of complying with its order.  In Part C, however, we conclude that the district court abused its discretion in this case.

## A

[2][3][4]  Although respondents' request resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d).  The critical point is that the information is sought to facilitate the sending of notice rather than to define or clarify issues in the case.

The general scope of discovery is defined by Fed.Rule Civ.Proc. 26(b)(1) as follows:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the *351 claim or defense of any other party, including the existence, description, nature, custody, condition

© 2006 Thomson/West. No Claim to Orig. U.S Govt. Works.



98 S.Ct. 2380
(Cite as: 437 U.S. 340, *351, 98 S.Ct. 2380, **2389)

and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

The key phrase in this definition--"relevant to the subject matter involved in the pending action"--has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. See *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947). [FN12] Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Id.*, at 500-501, 67 S.Ct. at 388. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits. [FN13]

> FN12 "[T]he court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." 4 J. Moore. Federal Practice ¶ 26.56 [1], p. 26-131 n. 34 (2d ed. 1976).

> FN13 For example, where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues. See *Id.*, ¶ 26.56[6]; Note. The Use of Discovery to Obtain Jurisdictional Facts. 59 Va.L.Rev. 533 (1973) Similarly, discovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation. See Annot. Discovery for Purposes of Determining Whether Class Action Requirements Under Rule 23(a) and (b) of Federal Rules of Civil Procedure Are Satisfied. 24 A.L.R.Fed. 872 (1975)

[5][6] At the same time, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Id.*, at 507, 67 S.Ct., **2390 at 392. Discovery *352 of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Rule 26(b)(1). Thus, it is proper to deny discovery of matter that is relevant

only to claims or defenses that have been stricken. [FN14] or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case. [FN15] For the same reason, an amendment to Rule 26(b) was required to bring within the scope of discovery the existence and contents of insurance agreements under which an insurer may be liable to satisfy a judgment against a defendant, for that information ordinarily cannot be considered, and would not lead to information that could be considered, by a court or jury in deciding any issues. [FN16]

> FN14 See, e.g., *United States v. 416 81 Acres of Land*, 514 F.2d 627, 632 (C.A.7 1975); *Bourget v. Government Employees Ins. Co.*, 313 F.Supp. 367, 372-373 (Conn.1970), reversed on other grounds, 456 F.2d 282 (C.A.2 1972)

> FN15 See 4 J. Moore. Federal Practice ¶ 26.56[1]. pp. 26-126 to 26-128 (2d ed. 1976), and cases there cited.

> FN16 Before Rule 26(b)(2) was added in 1970, many courts held that such agreements were not within the scope of discovery, although other courts, swayed by the fact that revelation of such agreement tends to encourage settlements, held otherwise. See Advisory Committee's Notes on 1970 Amendment to Fed.Rule Civ.Proc. 26, 28 U.S.C. App., p. 7777; 4 J. Moore. Federal Practice ¶ 26.62[1] (2d ed. 1976). The Advisory Committee appears to have viewed this amendment as changing rather than clarifying the Rules, for it stated: "[T]he provision makes no change in existing law on discovery of indemnity agreements *other than* insurance agreements by persons carrying on an insurance business." 28 U.S.C. App., p. 7778 (emphasis supplied)

[7][8] Respondents' attempt to obtain the class members' names and addresses cannot be forced into the concept of "relevancy" described above. The difficulty is that respondents do not seek this information for any bearing that it might have on issues in the case. See 558 F.2d, at 653 (en banc dissent). [FN17] *353 If respondents had sought the information because of its relevance to the issues, they would not have been willing, as they were, to abandon their request if the District Court would accept their proposed redefinition of the class and method of sending notice. Respondents argued

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



98 S.Ct. 2380
(Cite as: 437 U.S. 340, *353, 98 S.Ct. 2380, **2390)

to the District Court that they desired this information to enable them to send the class notice, and not for any other purpose. Taking them at their word, it would appear that respondents' request is not within the scope of Rule 26(b)(1). [FN18]

FN17. This difficulty may explain why the District Court, after calling for briefs on the question whether the discovery rules applied, see Brief for Respondents 10 n. 4, did not expressly rely on those rules. See also Note, Allocation of Identification Costs in Class Actions: *Sanders v. Levy*, 91 Harv. L. Rev. 703, 708-709 (1978) (distinguishing between "information . . . sought solely to provide adequate notice" and "valid discovery").

In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied. See *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558, 565-568 (S.D.Miss.1976); *Econo-Car International, Inc. v. Antilles Car Rentals, Inc.*, 61 F.R.D. 8, 10 (V.I. 1973), reversed on other grounds, 499 F.2d 1391 (C.A.3 1974). Likewise, discovery should be denied when a party's aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks discovery. See *United States v. Howard*, 360 F.2d 373, 381 (C.A.3 1966); *Balistrieri v. Holtzman*, 52 F.R.D. 23, 24-25 (E.D.Wis.1971). See also n. 20, *infra*.

FN18. Respondents contend that they should be able to obtain the class members' names and addresses under the discovery rules because it is "well settled that [a] plaintiff is entitled to conduct discovery with respect to a broad range of matters which pertain to the maintenance of a class action under Rule 23." Brief for Respondents 25 n. 17; see n. 13, *supra*. The difference between the cases relied on by respondents and this case is that respondents do not seek information because it may bear on some issue which the District Court must decide, but only for the purpose of sending notice.

[9] The en banc majority avoided holding that the class members' names and addresses **2391 are "relevant to the subject matter involved in the pending action" within the meaning of Rule 26(b)(1) simply because respondents need this information in *354 order to send the class notice. Tacitly

acknowledging that discovery must be aimed at illuminating issues in the case, the court instead hypothesized that there is "a potential issue in all [Rule 23(b)(3) class-action] litigation whether the required notice has properly been sent. A list of the names and addresses of the class members would of course be essential to the resolution of that issue." 558 F.2d, at 648. But aside from the fact that respondents themselves never pretended to be anticipating this "potential issue," it is apparent that the "potential issue" cannot arise until respondents already have obtained the very information they seek. [FN19] Nor do we perceive any other "potential issues" that could bring respondents' request within the scope of legitimate discovery. In short, we do not think that the discovery rules are the right tool for this job. [FN20]

FN19. Until respondents obtain the information and send the class notice, no issue can arise as to whether it was sent "properly."

FN20. We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information could be relevant to issues that arise under Rule 23, see n. 13, *supra*, or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues. Respondents make no such claims of relevance, however, and none is apparent here. Moreover, it may be doubted whether any of these purposes would require compilation of the names and addresses of *all* members of a large class. See *Berland v. Mack*, 48 F.R.D. 121, 126 (S.D.N.Y.1969). There is a distinction in principle between requests for identification of class members that are made to enable a party to send notice and requests that are made for true discovery purposes. See n. 17, *supra*.

[10] Rule 23, on the other hand, deals comprehensively with class actions, and thus is the natural place to look for authority for orders regulating the sending of notice. It is clear that Rule 23(d) vests power in the district court to order one of the parties to perform the tasks necessary to send notice. [FN21] *355 Moreover, district courts sometimes have found it appropriate to order a defendant, rather than a representative plaintiff, to perform tasks other than identification that are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



98 S.Ct. 2380
(Cite as: 437 U.S. 340, *355, 98 S.Ct. 2380, **2391)

necessary to the sending of notice. [FN22] Since identification simply is another task that must be performed in order to send notice, we agree with the Court of Appeals for the Fifth Circuit that Rule 23(d) also authorizes a **2392 district court in appropriate circumstances to require a defendant's cooperation in identifying the class members to whom notice must be sent. [FN23] We therefore turn to a consideration of the circumstances in which *356 such an order is appropriate and of how the cost of the defendant's complying with such an order should be allocated.

> FN21. Although Rule 23(c)(2) states that "the court shall direct" notice to class members, it commonly is agreed that the court should order one of the parties to perform the necessary tasks. See Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 44 (1968); Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 398 n. 157 (1967). Rule 23(d) provides that in the conduct of a class action, "the court may make appropriate orders: . . . (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct . . . : [and] (5) dealing with similar procedural matters." The Advisory Committee apparently contemplated that the court would make orders drawing on the authority of either Rule 23(d)(2) or 23(d)(5) in order to provide the notice required by Rule 23(c)(2). for its note to Rule 23(d)(2) states THAT "UNDER SUBDIVISION (C)(2), NOTICE MUST BE ORDERED . . . ." adviSory Committee's Notes to Fed.Rule Civ.Proc. 23, 28 U.S.C. App. p 7768 (emphasis supplied)

> FN22. Thus, a number of courts have required defendants in Rule 23(b)(3) class actions to enclose class notices in their own periodic mailings to class members in order to reduce the expense of sending the notice, as respondents asked the District Court in this case to do. See, e.g., Ste Marie v. Eastern R. Assn., 72 F.R.D. 443, 450 n. 2 (S.D.N.Y.1976); Gates v. Dalton, 67 F.R.D. 621, 633 (E.D.N.Y.1975); Popkin v. Wheelabrator-Frye, Inc., 20 Fed Rules Serv.2d 125, 130 (E.D.N.Y.1975). See also Eisen IV, 417 U.S., at 180 n. 1, 94 S.Ct., at 2154 n. 1 (Douglas, J., dissenting in part)

> FN23 Our conclusion that Rule 23(d), not the

discovery rules, is the appropriate source of authority is supported by the fact that, although a number of courts have ordered defendants to help identify class members in the course of ordering notice, few have relied on the discovery rules. See In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1101- 1102 (CA5 1977) (collecting cases)

### B

Although the Fifth Circuit held that Rule 23(d), not the discovery rules, authorizes a district court to order a defendant to provide information needed to identify class members to whom notice must be sent, it also suggested that principles embodied in the discovery rules for allocating the performance of tasks and payment of costs might be relevant to a district court's exercise of discretion under Rule 23(d). See Nissan, 552 F.2d, at 1102. Petitioners and the en banc dissent, on the other hand, argue that Eisen IV always requires a representative plaintiff to pay all costs incident to sending notice, whether he or the defendant performs the required tasks. Eisen IV does not compel this latter conclusion, for it did not involve a situation where a defendant properly was ordered under Rule 23(d) to perform any of the tasks necessary to sending the notice.

[11][12] The first question that a district court must consider under Rule 23(d) is which party should perform particular tasks necessary to send the class notice. The general rule must be that the representative plaintiff should perform the tasks, for it is he who seeks to maintain the suit as a class action and to represent other members of his class. In Eisen IV we noted the general principle that a party must bear the "burden of financing his own suit," 417 U.S., at 179, 94 S.Ct., at 2153. Thus ordinarily there is no warrant for shifting the cost of the representative plaintiff's performance of these tasks to the defendant.

[13][14][15] In some instances, however, the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff. In such cases, we think that the district court properly may exercise its discretion under Rule 23(d) to order the defendant to perform the task in question. As the Nissan court recognized, in identifying *357 the instances in which such an order may be appropriate, a rough analogy might usefully be drawn to practice under

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Rule 33(c) of the discovery rules. [FN24] Under that Rule, when one party directs an interrogatory to another party which can be answered by examination of the responding party's business records, "it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to" examine and copy the records, if the burden of deriving the answer would be "substantially the same" for either party.    Not unlike *Eisen IV*, this provision is intended to place the "burden of discovery upon its potential benefitee." [FN25] The holding of *Nissan* represents application of a similar principle, for when the court concluded that the representative plaintiffs could derive the names and addresses of the class members from the defendants' records **2393 with substantially the same effort as the defendants, it required the representative plaintiffs to perform this task and hence to bear the cost.  See *supra*, at 2388.  But where the burden of deriving the answer would not be "substantially the same," and the task could be performed more efficiently by the responding party, the discovery rules normally require the responding party to derive the answer itself. [FN26]

FN24  The analogy to the discovery rules is not perfect, for those rules contemplate that discovery will proceed without judicial intervention unless a party moves for a protective order under Rule 26(c) or an order compelling discovery under Rule 37(a). Rule 23, on the other hand, contemplates that the district court routinely must approve the form of the class notice and order how it should be sent and who should perform the necessary tasks.

FN25  Advisory Committee's Notes on 1970 Amendment to Fed Rule Civ Proc 33(c). 28 U.S.C. App., p 7793, quoting D. Louisell, Modern California Discovery 125 (1963).

FN26  See *Foster v Boise-Cascade, Inc.*, 20 Fed Rules Serv 2d 466, 470 (S D Tex 1975); *Chrapliwy v Uniroyal, Inc.*, 17 Fed Rules Serv 2d 719, 722 (N D Ind 1973):  Advisory Committee's Notes, *supra*, at 7793.

*358 [16][17][18][19]  In those cases where a district court properly decides under Rule 23(d) that a defendant rather than the representative plaintiff should perform a task necessary to send the class

notice, the question that then will arise is which party should bear the expense.    On one hand, it may be argued that this should be borne by the defendant because a party ordinarily must bear the expense of complying with orders properly issued by the district court; but *Eisen IV* strongly suggests that the representative plaintiff should bear this expense because it is he who seeks to maintain the suit as a class action.  In this situation, the district court must exercise its discretion in deciding whether to leave the cost of complying with its order where it falls, on the defendant, or place it on the party that benefits, the representative plaintiff. Once again, a rough analogy might usefully be drawn to practice under the discovery rules. Under those rules, the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from "undue burden or expense" in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery.  The analogy necessarily is imperfect, however, because in the Rule 23(d) context, the defendant's own case rarely will be advanced by his having performed the tasks.  Cf. n 30, *infra*. Thus, one of the reasons for declining to shift costs under Rule 26(c) usually will be absent in the Rule 23(d) context.  [FN27]  For this reason, a district court exercising its discretion under Rule 23(d) should be considerably more ready to place the cost of the defendant's performing an ordered task on the representative plaintiff, who derives the benefit, than under Rule 26(c).  In *359 the usual case, the test should be whether the expense is substantial, rather than, as under Rule 26(c), whether it is "undue."

FN27  Cf., e.g., *Hodgson v Adams Drug Co.*, 15 Fed Rules Serv 2d 828, 830 (R I 1971); *Adelman v Nordberg Mfg. Co.*, 6 F R D. 383, 384 (E D Wis 1947); 4A J Moore, Federal Practice 57 33 20, pp 33-113 to 33-114 (2d ed. 1975).

[20][21]  Nevertheless, in some instances, the expense involved may be so insubstantial as not to warrant the effort required to calculate it and shift it to the representative plaintiff.    In *Nissan*, for example, the court did not find it necessary to direct the representative plaintiffs to reimburse the defendants for the expense of producing their files for inspection.    In other cases, it may be



98 S.Ct. 2380
(Cite as: 437 U.S. 340, *359, 98 S.Ct. 2380, **2393)

appropriate to leave the cost where it falls because the task ordered is one that the defendant must perform in any event in the ordinary course of its business. [FN28] Although we do not attempt to catalogue the instances in which a district court might be justified in placing the expense on the defendant, we caution that courts must not stray too far from the principle underlying *Eisen IV* that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action.

> FN28. Thus, where defendants have been directed to enclose class notices in their own periodic mailings and the additional expense has not been substantial, representative plaintiffs have not been required to reimburse the defendants for envelopes or postage. See cases cited in n. 22, *supra*.

C

[22]   In this case, we think the District Court abused its discretion in requiring petitioners **2394 to bear the expense of identifying class members. The records containing the needed information are kept by the transfer agent, not petitioners.   Since petitioners apparently have the right to control these records and since the class members can be identified only by reference to them, the District Court acted within its authority under Rule 23(d) in ordering petitioners to direct the transfer agent to make the records available to respondents.   The preparation of the desired list requires, as indicated above, the manual sorting out of names and addresses from old *360 records maintained on paper, the keypunching of up to 300,000 computer cards, and the creation of new computer programs for use with extant tapes and tapes that would have to be created from the paper records.   It appears that neither petitioners nor respondents can perform these tasks, for both sides assume that the list can be generated only by hiring the services of a third party, the transfer agent, for a sum exceeding $16,000.   As the expense of hiring the transfer agent would be no greater for respondents, who seek the information, than for petitioners, respondents should bear the expense.  See *Nissan*, 552 F.2d, at 1102-1103. [FN29]

> FN29   See also Note, Allocation of Identification Costs in Class Actions, 66 Calif.L.Rev. 105, 115 (1978).

[23][24]   The District Court offered two reasons why petitioners should pay the transfer agent, but neither is persuasive.   First, the court thought that petitioners should bear this cost because it was their opposition to respondents' proposed redefinition of the class and method of sending notice that made it necessary to incur the cost.   A district court necessarily has some discretion in deciding the composition of a proper class and how notice should be sent.   Nor is it improper for the court to consider the potential impact that rulings on these issues may have on the expense that the representative plaintiff must bear in order to send the notice.   See *Eisen IV*, 417 U.S., at 179 n. 16, 94 S.Ct., at 2153 n. 16; *id.*, at 179-181, 94 S.Ct., at 2153-2154 (Douglas, J., dissenting in part).   But it is neither fair nor good policy to penalize a defendant for prevailing on an argument against a representative plaintiff's proposals.   If a defendant's argument has merit, it should be accepted regardless of his willingness to bear the extra expense that its acceptance would require.   Otherwise, a defendant may be discouraged from advancing arguments entirely appropriate to the protection of his rights or the rights of absent class members.

The potential for inequity appears to have been realized *361 in this case.   The District Court seems to have agreed with petitioners that respondents' proposed redefinition of the class was improper. [FN30] Otherwise its actions would be difficult to fathom, for its rejection of the proposed redefinition increased the cost to respondents as well as petitioners. [FN31] By the same token, if the District Court believed that sending the notice to current Fund shareholders who were not class members might harm the Fund, it should not have required the Fund to buy protection from this threat.   Yet it must have believed that the Fund would be harmed, for otherwise there was no reason to reject respondents' proposal and thus increase the cost that respondents themselves **2395 would have to bear.   For these reasons, we hold that the District Court erred in linking the questions of class definition and method of notice to the cost-allocation question.

> FN30. The District Court characterized the proposal as "arbitrary." *Sanders v. Levy*, 20 Fed.Rules Serv.2d 1218, 1221 (S.D.N.Y.1975), and stated that it ruled "in favor of" petitioners on this issue. *id.*, at 1222.   Although the court also suggested that petitioners opposed the redefinition because it would



reduce the res judicata effect of the judgment, *id.*, at 1221, petitioners themselves never made this argument. We also note that the representative plaintiff in *Eisen IV* argued, without success, that the defendants should pay part of the cost of notice because of the supposed res judicata benefits to them from class-action treatment. Reply Brief for Petitioner in *Eisen v. Carlisle & Jacquelin*, O.T.1973, No. 73-203, pp. 25-26. We did not think then, nor do we now, that an unwilling defendant should be force to purchase these "benefits."

FN31 Respondents were required to bear the additional expense at least of envelopes and postage for notice to class members who no longer held shares in the Fund. See n. 7, *supra*.

[25] The second reason advanced by the District Court was that $16,000 is a "relatively modest" sum, presumably in comparison to the Fund's total assets, which exceed $500 million. Although in some circumstances the ability of a party to bear a burden may be a consideration, the test in this respect normally should be whether the cost is substantial; not whether *362 it is "modest" in relation to ability to pay. In the context of a lawsuit in which the defendants deny all liability, the imposition on them of a threshold expense of $16,000 to enable the plaintiffs to identify their own class hardly can be viewed as an insubstantial burden. Cf. *Eisen IV, supra*, at 176, 94 S.Ct., at 2151. As the expenditure would benefit only respondents, we think that the amount of money involved here would cut strongly against the District Court's holding, even if the principle of *Nissan* did not control.

[26][27] The panel dissent and the en banc majority suggested several additional reasons to justify the District Court's order, none of which we find persuasive. Both opinions suggest that the fact that part of these records are kept on computer tapes justifies imposing a greater burden on petitioners than might be imposed on a party whose records are kept in another form. Thus, the panel dissent warned that potential defendants may be tempted to use computers "irretrievably [to bury] information to immunize business activity from later scrutiny," 558 F.2d, at 645 n. 1, and the en banc majority argued that even where no bad motive is present, "complex electronic processes may be required to

extract information which might have been obtainable through a minimum of effort had different systems been used." *Id.*, at 649.

We do not think these reasons justify the order in this case. There is no indication or contention that these petitioners have acted in bad faith to conceal information from respondents. In addition, although it may be expensive to retrieve information stored in computers when no program yet exists for the particular job, there is no reason to think that the same information could be extracted any less expensively if the records were kept in less modern forms. Indeed, one might expect the reverse to be true, for otherwise computers would not have gained such widespread use in the storing and handling of information. Finally, the suggestion that petitioners should have used "different systems" to keep their records *363 borders on the frivolous. Apart from the fact that no one has suggested what "different systems" petitioners should have used, we do not think a defendant should be penalized for not maintaining his records in the form most convenient to some potential future litigants whose identity and perceived needs could not have been anticipated. See *id.*, at 654 (en banc dissent).

Respondents also contend that petitioners should be required to bear the identification expense because they are alleged to have breached a fiduciary duty to respondents and their class. See also *id.*, at 645-646 (panel dissent). Although we had no occasion in *Eisen IV* to consider this argument, see 417 U.S., at 178, and n. 15, 94 S.Ct., at 2152, and n. 15, suggestions to this effect have met with trenchant criticism elsewhere. [FN32] A bare allegation of wrongdoing, whether by breach of fiduciary duty or otherwise, is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case. Nor would it be in the interests of the class of persons to whom a fiduciary duty is owed to require them, through the fiduciary, to help finance every suit by one of their number that alleges a breach of fiduciary duty, without regard to whether the suit has any merit.

FN32 See, e.g., 558 F.2d, at 640-641 (panel majority); *Popkin v. Wheelabrator-Frye, Inc.*, 20 Fed.Rules Serv.2d, at 129-130; *Berland v. Mack*, 48 F.R.D. 121, 131-132 (S.D.N.Y.1969); Note, 23 Kan.L.Rev. 309, 318-319 (1975).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

98 S.Ct 2380

**(Cite as: 437 U.S. 340, \*363, 98 S.Ct. 2380, \*\*2396)**

**\*\*2396** III

Given that respondents can obtain the information sought here by paying the transfer agent the same amount that petitioners would have to pay, that the information must be obtained to comply with respondents' obligation to provide notice to their class, and that no special circumstances have been shown to warrant requiring petitioners to bear the expense, **\*364** we hold that the District Court abused its discretion in not requiring respondents to pay the transfer agent to identify the members of their own class. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253, 25 Fed.R.Serv.2d 541, Fed. Sec. L. Rep. P 96,470

Briefs and Other Related Documents (Back to top)

. 1978 WL 207002 (Appellate Brief) Petitioners' Reply Brief (Feb. 24, 1978)

. 1978 WL 207000 (Appellate Brief) Respondents' Brief (Jan. 21, 1978)

. 1977 WL 189860 (Appellate Brief) Petitioners' Brief (Dec. 15, 1977)

. 1977 WL 189859 (Appellate Brief) Reply Brief in Support of Petition for A Writ of Certiorari (Oct. 07, 1977)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

