# EXHIBIT 1

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-441-JJF
United States District Court, District of Delaware

TO:    NEC Corporation
c/o Hirofumi Okuyama
101 East 52nd Street, 5th Floor
New York, New York 10022

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### See Attached Schedule A

| PLACE | DATE AND TIME |
| --- | --- |
| O'Melveny & Myers LLP<br>Times Square Tower, 7 Times Square<br>New York, NY 10036 | September 20, 2005<br>5 p.m. (Eastern Standard Time) |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| _(signature)_       Attorney For Plaintiffs | September 6, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Charles P. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars, Los Angeles, CA 90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                       DATE                                        SIGNATURE OF SERVER

                                                                   _____
                                                                   ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

    1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

    2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

    3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

    4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, e-CAP funds, MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

    5. For purposes of this document request, "COMPANY" refers to NEC Corporation and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

    6. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

    1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

    2. In responding to each request set forth below, please set forth each request in full before each response.

    3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege or trade secret, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege or trade secret is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which

privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, COMPANY shall harvest all such responsive DOCUMENTS in a manner that maintains the integrity and readability of all data, including all metadata. COMPANY shall also maintain a detailed audit trail sufficient to trace the chain of custody and in order to authenticate the DOCUMENTS collected.

6. DOCUMENTS maintained or stored electronically shall be produced for inspection and review in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

7. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information

## DOCUMENTS TO BE PRODUCED

### Purchase Terms

1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-Cap funds and MDF.

2. All DOCUMENTS constituting or reflecting internal discussions or other communications within COMPANY concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS, or upon the purchase of a minimum volume of INTEL MICROPROCESSORS, or upon the purchase of a minimum percentage of COMPANY'S MICROPROCESSOR requirements.

4. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS in a particular computer platform, computer model or computer type.

5. All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS in computers sold in a particular geographic region.

6. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

7. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

8. All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

9. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10. All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

**Purchase History**

11. DOCUMENTS sufficient to show:

a)  the prices paid by COMPANY to INTEL for all MICROPROCESSORS since January 1, 2000.

b)  the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-Cap funds, MDF, "meeting competition" payments, or any advertising or pricing support provided to COMPANY in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

c)  Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

d)  Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

e)  Expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

f)    The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

## Comparisons of INTEL and AMD MICROPROCESSORS

12. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

13. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

## Miscellaneous

14. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD product launch or promotion.

15. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

16. All DOCUMENTS constituting or reflecting discussions within COMPANY about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

17. All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY'S selection of AMD or INTEL products, or (b) COMPANY's advertising, marketing, promotion, or sale of computers with AMD MICROPROCESSORS.

18. All DOCUMENTS furnished by COMPANY to the Japan Fair Trade Commission ("JFTC") regarding any and all investigations by the JFTC of INTEL.

19. All DOCUMENTS constituting, reflecting, or discussing the destruction or disposal of documents related to INTEL, AMD, or MICROPROCESSOR procurement.

# EXHIBIT 2

## Memorandum of Understanding

In an effort to resolve the parties' disputes regarding the Subpoena addressed to NEC Corporation ("NEC") by Advanced Micro Devices, Inc. ("AMD") and dated September 6, 2005 (the "Subpoena"), counsel for NEC and AMD, on behalf of their clients, hereby agree as follows:

1.    NEC and AMD agree that by entering into this agreement neither party waives or intends to waive any rights with respect to the Subpoena or otherwise, except as provided herein, and both parties specifically reserve all such rights.

2.    Without waiving the objections that NEC has asserted or may assert regarding the Subpoena, without prejudice to NEC's position that the Court lacks personal jurisdiction over NEC, and subject to the conditions and exceptions set forth below, NEC agrees to produce to AMD a copy of all non-privileged, paper documents (not including any documents that are in electronic format) that the Japan Fair Trade Commission ("JFTC") seized from NEC or that NEC otherwise produced to the JFTC in connection with the JFTC's investigation of Intel's activities in Japan (the "Documents").

3.    NEC will produce any portion of the Documents that are protected by any existing agreement to maintain confidentiality or "non-disclosure agreement" with Intel pursuant to the Stipulation re Waiver of Contractual Non-Disclosure Provision entered into between AMD and Intel. NEC will produce any portion of the Documents that are designated as "Confidential" by any entity or person other than NEC, AMD, or Intel, only if NEC is able to obtain, through reasonable efforts, that entity's or person's consent. NEC will log any documents withheld because of a claim of confidentiality by any entity other than NEC, AMD, or Intel, or on the basis of attorney-client privilege or other protection from disclosure.

4.    NEC will produce the Documents only subject to the entry by the Court of a protective order covering production of materials by non-parties that protects such materials in a manner that is acceptable to NEC. If the Court has not entered such a protective order at the time that the Documents are ready for production, then (subject to paragraph 3) NEC will produce the Documents to AMD's counsel of record, O'Melveny & Myers LLP, marked "confidential" and those documents shall be treated as "attorneys' eyes only" consistent with Delaware Local Rule 26.2. If the Court subsequently enters a protective order that does not, in NEC's opinion, adequately protect materials produced by non-parties, then O'Melveny & Myers shall continue to treat the Documents on an "attorney's eyes only" basis until the sooner of (a) such time as the parties hereto have agreed to an acceptable protective order or (b) the court has ruled on any motion by NEC for additional confidentiality protections. Documents designated as "attorneys' eyes only" or treated as "attorneys' eyes only" hereunder will be reviewed only by attorneys (including AMD's local counsel in Delaware), paralegals, or other members of the staff of O'Melveny & Myers, who are representing AMD in connection with the litigation pending in the District of Delaware, case number 1:05-cv-00441-JJF (the "Litigation"), or by document service vendors hired to assist O'Melveny & Myers in the Litigation who agree to keep all Documents confidential and not to make these Documents available to any other entity. O'Melveny & Myers agrees to be responsible for its local counsel's, employees' and document service vendors' compliance with these obligations of confidentiality.

5.    The Documents will not be used for any purpose other than the Litigation.

6.    In return for this agreement, AMD agrees not to move to compel production of any other documents requested in the Subpoena until 15 days after either party notifies the other that they have reached an impasse in negotiations regarding production of any such documents.

7.    AMD agrees to reimburse NEC for its reasonable costs associated with its copying and shipping the Documents and to provide NEC with a copy of each of the Documents that AMD has translated into English.


PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

_____

Robert P. Parker, Esq.
1615 L Street, NW
Suite 1300
Washington, DC  20036
(202) 223-7300


*Counsel for NEC Corporation*

O'MELVENY & MYERS LLP

_____

James Bo Pearl, Esq.
1999 Avenue of the Stars, 7th Fl.
Los Angeles,CA 90067-6035
(310) 246-8434


*Counsel for Advanced Micro Devices, Inc.*


154567-1

2

# EXHIBIT 3

**Lees, Cynthia**

| | |
|---|---|
| **From:** | Rossfeld, Kristopher [KRossfeld@OMM com] |
| **Sent:** | Tuesday, August 15, 2006 6:41 PM |
| **To:** | Robert P Parker |
| **Cc:** | Aaron Futch; Pearl, James |
| **Subject:** | RE: AMD v. Intel |
| **Attachments:** | NEC Third Revised Document Requests.doc |

After reviewing the first phase of the JFTC document production, AMD has prepared the attached revised document requests. As we stated in our telephone conversation, this is a first effort at the revised requests that will likely be modified after AMD receives and reviews the electronic JFTC production.

Also, below are two proposals: (1) a proposal for the production of the remaining JFTC Electronic Documents and (2) a proposal for the production of documents that were not seized by the JFTC. Feel free to give us a call if you have any questions, comments, or concerns.

## A. JFTC ELECTRONIC DOCUMENT PRODUCTION

- AMD shall agree to pay any restoration costs (if applicable) associated with the restoration of the DVD's and CDs. AMD shall choose the document restoration company.
- NEC and AMD shall agree to a list of document file types that are most likely to contain relevant documents (e.g., .doc, .xls, .ppt).
- NEC will provide the restored DVD's and CDs to AMD's vendor who will create a central database for all documents contained on the DVD's and CDs.
- NEC shall also provide AMD's vendor with a list of attorney names and the agreed upon list of document file types to AMD's vendor. AMD's vendor will remove all documents from the central database that contain one of the identified attorney names and all file types except those identified in the list of relevant file types.
- NEC's attorneys will then have 2 weeks to review the remaining documents in the central database. NEC will pay all fees associated with providing NEC's document reviewers with access to the review tool. Once the two weeks have expired, AMD's attorneys will be given "read-only" access to the documents. AMD will mark those documents that it wants produced. NEC shall then be given 2 weeks to review those documents that AMD marked for production and cull-back any privileged document that may have slipped past the initial screen. Once the 2 weeks have expired, the remaining documents will become the production set and shall be marked electronically pursuant to the protective order.
- For those documents culled away for privilege, NEC shall have two months to review those documents. NEC shall produce in electronic format all documents later determined to be non-privileged, in static image with redactions all documents partially privileged, and a privilege log for all documents withheld on grounds of privilege or redacted.
- AMD will agree to notify NEC and provide a copy to NEC of any NEC document that AMD translates or converts to a static image.
- AMD agrees to pay for all document vendor fees and document restoration fees associated with the production of the JFTC documents. Each party shall pay for its own attorney review costs. NEC shall pay for any other costs incurred by NEC in response to this subpoena not otherwise stated.

## B. NON-JFTC DOCUMENTS

### 1. Electronic Documents

- NEC will copy all Relevant Custodian's hard drives and collect all responsive documents from NEC's server created or edited by a Relevant Custodian.
- The harvested material will be turned over to AMD's vendor who will load the documents onto the system. The vendor will then remove the agreed upon document file types and documents that contain attorney

names.
- The parties will agree on relevant search terms and documents that contain those search terms will become the reviewing data set.
- NEC will have three weeks to review the reviewing data set and pull back any documents that are privileged. After three weeks, the remaining documents will become the production set and will be released to AMD.
- AMD will notify and produce to NEC any document that AMD officially translates or converts to static image.
- AMD shall negotiate separately with NEC regarding cost sharing for this part of the proposal.

## 2. Hard-Copy Documents

- NEC shall collect and produce to AMD all responsive documents that are in hard copy form from the Relevant Custodian's files. AMD will reimburse NEC for reasonable costs of copying the responsive documents.

## 3. Company Requests

- To the extent that the responsive documents (or responsive information) are available on NEC's financial databases, AMD and NEC shall work together to develop search criteria to locate information responsive to AMD's company requests.
- To the extent that a Company Request is not easily accessible by search criteria of NEC's databases, NEC shall collect and produce to AMD all responsive documents. To the extent such documents are in electronic form in the normal course of business, NEC shall produce such documents in electronic form.

**Kristopher D. Rossfeld**
O'Melveny & Myers LLP
1999 Avenue of the Stars, 9th Floor
Los Angeles, California 90067
(310) 246-8581
krossfeld@omm.com

This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

---

From: Robert P Parker [mailto:rparker@paulweiss.com]
Sent: Tuesday, August 15, 2006 12:40 PM
To: Pearl, James
Cc: Aaron Futch; Rossfeld, Kristopher
Subject: AMD v. Intel

Bo,

During our last conversation several weeks ago, you indicated that you would provide us with new proposals regarding the scope of the subpoena to NEC Corp. As I told you during our conversation, I am going to be in Japan on August 18, and it would be very helpful us to have your proposals before my trip. We have had no communications from you since then (although we provided you with information regarding the JFTC discs). I would appreciate receiving any material you have to share with us before my meetings on Friday.

Best,

RPP

11/22/2006

Robert P. Parker | Partner
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1615 L Street, NW, Suite 1300 | Washington, DC 20036-5694
(202) 223-7339 (Direct Phone) | (202) 223-7482 (Direct Fax)
rparker@paulweiss.com <mailto:rparker@paulweiss.com> | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

**For Discussion Purposes Only** - This document is not intended to be a final list of revised document requests, but instead shall be used by both parties for discussion purposes only.

## ADDITIONAL/REVISED DEFINITIONS

The definitions included in AMD's subpoena to COMPANY shall apply to the requests outlined below with the following additions/revisions:

1. For purposes of this document request, "COMPANY" refers to NEC Corporation and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof, including, but not limited to, NEC Personal Products, NEC Solutions, NEC Custom Technica, NEC Computers International, Packard Bell, NEC CustoMax, Client & Server (CAS), and NEC Solutions America.

2. For purposes of this document request, "RELEVANT CUSTODIANS" refers to those custodians that are likely to have an appreciable amount of non-duplicative responsive documents. The Relevant Custodians are Toru Katayama, Kazuhiko Kobayashi, Hiroyuki Masuda, Kiyotaka Matsubara, Yuya Momose, Hisanobu Mori, Nobuhiro Odake, Akinobu Kanasugi, K. Tomita, Yoshiaki Tsuda, Masahiko Yamamoto, H. Nakano, Hideaki Kato, Tadao Kondo, Akihito Otake, and the successor or predecessor of any RELEVANT CUSTODIAN that was also involved in the purchase, testing, evaluating or marketing of MICROPROCESSORS or products that contained MICROPROCESSORS.

3. For purposes of this document request, "MICROPROCESSOR PRODUCTS" refers to MICROPROCESSORS and any product that contains a MICROPROCESSOR.

## CUSTODIAN DOCUMENT REQUESTS

The following document requests shall apply to all RELEVANT CUSTODIANS. The harvesting of such custodians shall consist of documents created on or after April 2004.

1. All DOCUMENTS reflecting or discussing COMPANY's use of AMD MICROPROCESSORS in any server, desktop, or mobile product line including without limitation Value Star, Lavie, MateR, Express, iDesign, iXtreme, iMedia, VersaPro, MateR, iGo-iPower, Desktop Model, J6 Notebook, Express, or Value One.

2. All DOCUMENTS constituting, reflecting, or discussing any offer of any incentive, financial or otherwise, given by INTEL to COMPANY, including without limitation Supply Line Agreements, Multi-National Customer status, ECAP, Intel Inside, Market Development Funds (MDF), early access to technical information or technical co-operation/assistance in product development, or any other incentives.

3. All DOCUMENTS reflecting, discussing or suggesting that INTEL will or might withdraw or withhold any financial or non-financial inducement as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

4.  All DOCUMENTS constituting, reflecting or discussing any offer of an incentive, financial or otherwise, by INTEL conditioned upon COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS in the commercial personal computer market including without limitation COMPANY's consideration of using INTEL MICROPROCESSORS as discussed in document NEC-J 00013016.

5.  All DOCUMENTS constituting, reflecting, or discussing any offer of an incentive, financial or otherwise, by INTEL conditioned upon COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, in a particular computer platform, computer model or computer type including without limitation that company will use only INTEL MICROPROCESSORS for products designed for any of the products identified in Custodian Document Request #1 or servers.

6.  All DOCUMENTS concerning, reflecting or discussing COMPANY's agreement, representation, or consideration that it will increase INTEL's share of COMPANY's MICROPROCESSOR purchases in the manner described by document NEC-J 00011743 or that reflect or discuss any other offer of an incentive, financial or otherwise, by INTEL conditioned upon COMPANY's representation or agreement that it will purchase or sell a minimum volume or percentage of INTEL MICROPROCESSOR PRODUCTS.

7.  All DOCUMENTS discussing, referencing, directed to, or directed from Thomas Agostino, J. Antone, Patrick Bliemer, Daniel Brown, Anand Chadrasekher, Jason Chen, Jeff Clark, Bill Clemmens, Tim Hughes, A. Ikai, S. Kako, William J. Kirby, Kurokawa, William O. Leszinske, Donald MacDonald, M. Marced, Stu Pann, Wim Riglaarsdam, Bill Siu, Mike Splinter, David J. Stitzenberg, S. Takahashi, Kaz Yoshida, or any other Intel representative involved in an appreciable number of communications with COMPANY concerning the marketing or procurement of INTEL MICROPROCESSORS that relate to MICROPROCESSORS or products that contain MICROPROCESSORS.

8.  All DOCUMENTS constituting, reflecting, or discussing COMPANY's "Realignment" program.

9.  All DOCUMENTS constituting, reflecting or discussing any product defects involving INTEL MICROPROCESSORS or INTEL's threatened or actual inability to deliver or timely deliver an adequate supply of MICROPROCESSORS to COMPANY.

10. All DOCUMENTS from any employee of INTEL concerning or relating to MICROPROCESSORS that reference AMD, any AMD employee, or any AMD MICROPROCESSOR.

11. All DOCUMENTS constituting, reflecting, or discussing the practice of bundling, or the provision of financial or non-financial incentives by INTEL to COMPANY for purchasing INTEL MICROPROCESSORS bundled together with other INTEL components.

12. All DOCUMENTS reflecting or discussing an offer by INTEL conditioned upon COMPANY's agreement or representation that it will not market or promote a product

that contains AMD MICROPROCESSORS in any geographic region or product segment, that COMPANY may not attend AMD sponsored trade shows, product launches, or other promotional activating including without limitation an agreement or representation that COMPANY will not market or promote any of COMPANY's server products that contain AMD microprocessors.

13. All DOCUMENTS constituting, reflecting, or discussing a Quarterly Business Review (QBR) or Annual Business Review (ABR) in which COMPANY employees met with INTEL or AMD employees.

## CORPORATE REQUESTS

The following requests are made without limitation to any custodian.

1. All agreements between COMPANY and INTEL for the purchase, sale, marketing or promotion of MICROPROCESSOR PRODUCTS from 2000-present.

2. All product roadmaps created on or after January 1, 2000 relating to MICROPROCESSOR PRODUCTS.

3. DOCUMENTS, centrally maintained by COMPANY, that are sufficient to show:
   a. Prices paid to INTEL for ALL MICROPROCESSORS from January 1, 2000 to present.

   b. Aggregate amount (by quarter) of any payment, subsidy, rebate, discount, Intel Inside, E-CAP, MDF, or any marketing or pricing support provided to COMPANY in connection with its purchase of INTEL MICROPROCESSORS since January 2000.

   c. MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

   d. Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

   e. Documents showing the date of introduction of every new client platform since 1/1/2000 and the number of units manufactured by quarter for the duration of the platform's life.

   f. Agreements between COMPANY and INTEL for the purchase of MICROPROCESSORS.

   g. Agreements between COMPANY and INTEL for the sale or marketing of products containing MICROPROCESSORS.

   h. Expected and realized revenue, cost and profitability of product lines (by quarter) since January 1, 2000.

# EXHIBIT 4

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
_____DISTRICT OF HAWAII_____.

Advanced Micro Devices, Inc., and
AMD International Sales & Services, Ltd.

                v.

Intel Corporation and Intel Kabushiki Kaisha

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-441-JJF
United States District Court, District of Delaware

TO:    Fujitsu Ltd.
        c/o Masato Uchida
        6660 Hawaii Kai Drive
        Honolulu, Hawaii 96825

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
### See Attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Fujitsu Ltd. | |
| 6660 Hawaii Kai Drive | November 1, 2005 |
| Honolulu, Hawaii 96825 | 5:00 p.m. (Hawaii Standard Time) |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _(signature)_    Attorney For Plaintiffs | October 4, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Charles P. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
(310) 553-6700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]  If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
             DATE

SIGNATURE OF SERVER
_____

ADDRESS OF SERVER
_____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

### Definitions

1. For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2. With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3. For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, and Xeon).

4. For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), MDF, "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

5. For purposes of this document request, "COMPANY" refers to Fujitsu Ltd. and any of its controlled present or former subsidiaries, joint-ventures, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof. "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

6. For purposes of this document request, "MDF" refers to market development funds.

### Instructions

1. The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

2. In responding to each request set forth below, please set forth each request in full before each response.

3. If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies;

date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates. For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4. If COMPANY objects to a request in part, please state specifically which part of the request COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5. With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6. Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive). Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7. Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

8. To the extent responsive DOCUMENTS reside on databases and other such systems and files, COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

9. At COMPANY'S election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

## DOCUMENTS TO BE PRODUCED

### Purchase Terms

1. All DOCUMENTS constituting or reflecting communications with INTEL concerning actual or proposed terms and conditions of the sale of MICROPROCESSORS, including without limitation pricing, quantities, discounts, rebates, Intel Inside funds, E-CAP and MDF.

2. All DOCUMENTS constituting or reflecting internal discussions or other communications within COMPANY concerning actual or proposed terms and conditions of sale of INTEL or AMD MICROPROCESSORS.

3. All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to the exclusive purchase of INTEL MICROPROCESSORS,

or the purchase of a minimum volume of INTEL MICROPROCESSORS, or the purchase of a minimum percentage of INTEL MICROPROCESSORS, whether of COMPANY's total MICROPROCESSOR requirements or requirements for certain processor types or end uses.

4.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in a particular computer platform, computer model or computer type.

5.   All DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY's representation or agreement that it will use only INTEL MICROPROCESSORS, or a defined number or percentage of INTEL MICROPROCESSORS, in computers sold in a particular geographic region.

6.   All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings pertaining to INTEL's pricing of MICROPROCESSORS including without limitation any FINANCIAL INDUCEMENT.

7.   All DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to any restriction or limitation of COMPANY's purchases or promotion of AMD MICROPROCESSORS or related to any restriction or limitation of the sale of products containing AMD MICROPROCESSORS.

8.   All DOCUMENTS constituting, reflecting, or discussing any suggestion by INTEL that it will or might withdraw or withhold a FINANCIAL INDUCEMENT as a result of COMPANY's sale of products containing AMD MICROPROCESSORS, its purchases of AMD MICROPROCESSORS, or its plan to develop, release or promote a product containing an AMD MICROPROCESSOR.

9.   All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to provide discounted or free chipsets, motherboards, or other components in connection with the purchase of, or as part of a package or bundle with, INTEL MICROPROCESSORS.

10.  All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to discount or subsidize or provide marketing support in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

11.  All DOCUMENTS constituting, reflecting, or discussing any communications with retailers concerning any FINANCIAL INDUCEMENT provided by INTEL to COMPANY or to retailers in connection with the purchase or resale of computer systems containing INTEL MICROPROCESSORS.

12.  All DOCUMENTS constituting, reflecting, or discussing any non-financial inducement, including without limitation any allocation preference, access to technical or roadmap information, personnel support (engineering/technical/training) or any other non-cash benefit, perquisite or other consideration offered by INTEL related to the purchase of INTEL MICROPROCESSORS, or any suggestion by INTEL that it will or might withdraw or withhold

any non-financial inducement as a result of COMPANY's purchase, sale or plans to develop, release or promote AMD MICROPROCESSORS or products containing AMD MICROPROCESSORS.

## Purchase History

    13. DOCUMENTS sufficient to show:

        a)     the prices paid by COMPANY to INTEL for all MICROPROCESSORS since January 1, 2000.

        b)     the aggregate amount by quarter of any payment, subsidy, rebate, discount, Intel Inside funds, E-CAP, MDF, "meeting competition" payments, or any advertising or pricing support provided to COMPANY in connection with its purchase of MICROPROCESSORS (by quarter) since January 2000.

        c)     Historical MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

        d)     Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

        e)     Expected and realized revenue, cost, and profitability of product lines (by quarter) since January 1, 2000.

        f)     The use or disposition of any discount, subsidy, or marketing support provided by INTEL in connection with the sale of servers containing INTEL MICROPROCESSORS for the purpose of competing against servers containing AMD MICROPROCESSORS.

## Comparisons of INTEL and AMD MICROPROCESSORS

    14. All DOCUMENTS constituting or reflecting analyses, summaries, reports or studies prepared in connection with the consideration of the purchase or use of AMD and/or INTEL MICROPROCESSORS.

    15. All DOCUMENTS constituting or reflecting analyses, summaries, reports, studies or other writings prepared comparing INTEL and AMD MICROPROCESSORS whether from a price, quality or other standpoint.

## Miscellaneous

    16. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning COMPANY's participation in or support of any AMD product launch or promotion.

    17. All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning the allocation of microprocessors or other INTEL components.

18. All DOCUMENTS constituting or reflecting discussions within COMPANY about unfair or discriminatory allocations of INTEL products or the fear of such unfair or discriminatory allocations.

19. All DOCUMENTS constituting or reflecting consumer or customer feedback regarding (a) COMPANY's selection of AMD or INTEL MICROPROCESSORS or products containing AMD or INTEL MICROPROCESSORS, or (b) COMPANY's advertising, marketing, promotion, or sale of products containing AMD and/or INTEL MICROPROCESSORS.

20. All DOCUMENTS furnished by COMPANY to the Japan Fair Trade Commission ("JFTC") regarding any and all investigations by the JFTC of INTEL.

21. All DOCUMENTS constituting, reflecting, or discussing the destruction or disposal of documents related to INTEL, AMD, or MICROPROCESSOR procurement.

22. All DOCUMENTS sufficient to show the steps taken by COMPANY to preserve documents with respect to this litigation or related litigation or proceedings including, without limitation, all DOCUMENTS that constitute, reflect or discuss the COMPANY'S DOCUMENT retention policy or policies from January 1, 2000, to the present.

# EXHIBIT 5



# O'MELVENY & MYERS LLP

LOS ANGELES
NEWPORT BEACH
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.

1999 Avenue of the Stars
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
INTERNET: www.omm.com

HONG KONG
LONDON
SHANGHAI
TOKYO

OUR FILE NUMBER
008.346.163

February 14, 2006

WRITER'S DIRECT DIAL
(310) 246-8434

**VIA E-MAIL**

WRITER'S E-MAIL ADDRESS
jpearl@omm.com

Jill D. Neiman
Morrison & Foerster
425 Market Street
San Francisco, California 94105-2482

Re:    *AMD v. Intel*
       *Fujitsu Document Production*

Dear Jill:

As a follow-up to our calls, I am writing to confirm our agreement regarding the production of the Fujitsu JFTC Documents (defined below).  The parties hereby agree that:

1.    Fujitsu maintains its position that service of any subpoenas served on Fujitsu is not effective.

2.    Fujitsu will produce to AMD a copy of the documents that Fujitsu previously provided to (or were seized by) the JFTC ("Fujitsu JFTC Documents").  If a protective order is not in place in the *AMD Inc. and AMD International Sales & Services Ltd. (collectively "AMD") v. Intel Corporation ("Intel") et. al.* litigation currently pending in the United States (the "U.S. Litigation") at the time of Fujitsu's production of the Fujitsu JFTC Documents, the Fujitsu JFTC Documents shall be subject to Delaware Local Rule 26.2 to the extent it requires that any document marked "confidential" be viewed only by outside counsel.  As used in this paragraph of this letter agreement, "outside counsel" means AMD's outside counsel in the U.S. Litigation, namely O'Melveny & Myers, and (notwithstanding Delaware Local Rule 26.2) only O'Melveny & Myers attorneys and staff may review the Fujitsu JFTC Documents.  Additionally, if Fujitsu requests to do so, AMD and Fujitsu will enter into an interim protective order pending the entry of the official protective order in this matter that will govern, among other things, how AMD will handle third party requests for access to or production of the Fujitsu JFTC Documents. If the Fujitsu JFTC Documents are produced before a protective order is entered in the U.S. Litigation, after a protective order is entered, Fujitsu may elect to have the Fujitsu JFTC Documents treated as subject to the terms of the protective order.

O'MELVENY & MYERS LLP

Jill D. Neiman, February 14, 2006 - Page 2

3.    The Fujitsu JFTC Documents to be produced will only be used in the U.S. Litigation. They will not be used in any litigation or proceeding other than the U.S. Litigation, including, but not limited to, the litigation between Nihon AMD K.K. and Intel K. K. currently pending in Japan.

4.    In return for the agreement to produce the Fujitsu JFTC Documents, AMD extended the time for Fujitsu, FAI and FCS (the "Fujitsu Entities") to respond to any AMD subpoenas served on the Fujitsu Entities until January 17, 2006. The Fujitsu Entities timely served their responses on this date.

5.    This agreement shall not constitute a waiver of any rights or objections, all of which are expressly reserved.

6.    AMD will pay copying and shipping costs, including the costs of Bates labeling and applying a confidentiality legend, for production of the Fujitsu JFTC Documents.

7.    Any production of the Fujitsu JFTC Documents by Fujitsu is subject to compliance with the terms of any relevant Non-Disclosure Agreements that Fujitsu has with any companies other than Intel. Any documents withheld on the basis of privilege shall be logged in a privilege log produced to AMD after the production of the Fujitsu JFTC Documents.

8.    AMD will provide Fujitsu with English translations of the Fujitsu JFTC Documents, to the extent AMD has the documents translated.

Very truly yours,

James M. Pearl
for O'MELVENY & MYERS LLP
Attorneys for AMD

**AGREED:**
MORRISON & FOERSTER

By: _____
    Jill D. Neiman
Attorneys for the Fujitsu Entities

# EXHIBIT 6

**Lees, Cynthia**

| | |
|---|---|
| **From:** | Pearl, James [JPearl@OMM.com] |
| **Sent:** | Monday, September 11, 2006 9:01 PM |
| **To:** | Neiman, Jill D. |
| **Cc:** | Rajagopal, Urmila |
| **Subject:** | Revised Fujitsu Requests |

**Attachments:** #744505 v1 - Fujitsu Revised Doc Requests.doc

Jill -- attached are revised document requests to Fujitsu based on our review of Fujitsu's JFTC production. Once you have had a chance to review and discuss with your client, we can talk next steps.

Hope all is well.

Bo

**James Bo Pearl**
Counsel
O'Melveny & Myers LLP
1999 Avenue of the Stars, Ste. 700
Los Angeles, CA 90067
(310) 246-8434
(310) 246-6779 (Fax)

*This message and any attached documents contain information from the law firm
of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are
not the intended recipient, you may not read, copy, distribute, or use this
information. If you have received this transmission in error, please notify the
sender immediately by reply e-mail and then delete this message.*

<<#744505 v1 - Fujitsu Revised Doc Requests.doc>>

## DOCUMENTS TO BE PRODUCED

### Additional Definitions

1. For purposes of this document request, "RELEVANT CUSTODIANS" refers to those custodians that are likely to have an appreciable amount of non-duplicative responsive documents. The Relevant Custodians are: Kazuhiro Igarashi, Kuniaki Saito, Masami Yamamoto, Haruki Okada, and any other custodians who are likely to have an appreciable number of non-duplicative documents (created or modified between January 1, 2000 to September 11, 2006) responsive to the requests below.

### Custodian Requests

The following Requests apply to DOCUMENTS retained within the individual files of RELEVANT CUSTODIANS.

Purchase Terms

2. DOCUMENTS constituting, reflecting, or discussing any rebates, discounts, reimbursements or other financial incentives provided by INTEL, including: ECAPs, Intel Inside funds, Joint Marketing funds, bid buckets, Meet Comp funds, Special Bid Reserve funds and MDF.

3. DOCUMENTS constituting, reflecting or discussing Intel's MNC program.

4. DOCUMENTS constituting, reflecting, or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY'S purchase of volume (whether calculated by unit or percentage) targets set by INTEL.

5. DOCUMENTS constituting, reflecting, or discussing criteria used by INTEL to determine whether COMPANY receives any "Intel Program Reimbursement," such as referred to in FJ00004131.

6. DOCUMENTS constituting, reflecting, or discussing "Level A" reimbursement from INTEL, such as referred to in FJ00004131-FJ00004132.

7. DOCUMENTS constituting, reflecting, or discussing provision of "special pricing" to COMPANY by INTEL for excluding AMD MICROPROCESSORS from COMPANY'S product lines, such as referred to in FJ00002735 and FJ00013432.

8. DOCUMENTS constituting, reflecting, or discussing COMPANY'S exclusion of products containing AMD MICROPROCESSORS from COMPANY'S NT Storefront NB Series, such as referred to in FJ00002735.

9. DOCUMENTS constituting, reflecting, or discussing the allocation or supply of INTEL MICROPROCESSORS or other INTEL components.

10. DOCUMENTS discussing supply problems or shortages of INTEL components between January 1, 2002 and December 31, 2005, including the shortages of Celeron 900MHz processors such as referred to in FJ00013095-FJ00013102.

11. DOCUMENTS constituting, reflecting, or discussing the allocation of INTEL MICROPROCESSORS in COMPANY'S Summer 2003 product line, including any DOCUMENTS discussing criteria used to determine allocation of INTEL components.

12. DOCUMENTS constituting, reflecting, or discussing the exclusion of C-300 succession models, which are powered by AMD MICROPROCESSORS, from COMPANY'S Summer 2003 product lineup, such as referred to in FJ00003866.

13. DOCUMENTS constituting, reflecting, or discussing any decision by COMPANY to remove products containing AMD MICROPROCESSORS from COMPANY'S product lines, including the decision to do so such as referred to in FJ00004318.

14. DOCUMENTS reflecting or discussing any offer of a FINANCIAL INDUCEMENT by INTEL related to COMPANY'S representation or agreement that it will use only INTEL MICROPROCESSORS in COMPANY'S products.

Miscellaneous

15. DOCUMENTS constituting, reflecting, or discussing any meetings or Quarterly Business Reviews (QBRs) between COMPANY and INTEL and/or between COMPANY and AMD, including any DOCUMENTS created in preparation for or in connection with these meetings.

16. DOCUMENTS constituting, reflecting, or discussing the July 2002 meeting between COMPANY and INTEL regarding usage of INTEL MICROPROCESSORS in COMPANY'S Winter 2002 product line, including any DOCUMENTS created in preparation for or in connection with this meeting.

17. DOCUMENTS constituting, reflecting, or discussing the April 2003 meeting of COMPANY'S Mobile PC Business Division to discuss upcoming negotiations with INTEL, including any DOCUMENTS created in preparation for or in connection with this meeting.

18. DOCUMENTS constituting, reflecting, or discussing the July 2003 meeting of COMPANY'S Global Device Procurement Supervision Division, including any DOCUMENTS created in preparation for or in connection with this meeting.

19. DOCUMENTS constituting, reflecting or discussing communications with Jason Chen, Anand Chandrasekher, John Antone, Chihiro Nobuoka, Kazuhiro Yoshida, Takehiro Yoshii, Hiroki Ohinata, Masaaki Kinoshita, Kazuhiko Kitagawa, Toshi Takahashi, Kenji Sakamoto, T. Takamatsu, Tomoki Yamazaki, Hisato Yasumitsu, Makoto Ohno, Tomoki

Nakajima, Tetsuya Sato, Tomoki Yamazaki, Takashi Ichimi, Hidetomo Kasakura, Kiyoko Maruyama, Nobuki Shigeno, Takayoshi Kitamura, Hiroshi Matsumura, Makoto Ohno, Hideyoshi Tamaki, Tomotaka Uraguchi, or Masahito Yashiro.

20. DOCUMENTS constituting, reflecting, or discussing the launch of any AMD product or any product powered by an AMD microprocessor.

21. DOCUMENTS constituting, reflecting, or discussing the decision to forego an event for the launch of an AMD product, such as the decision such as referred to in FJ00013748.

## COMPANY Requests

22. DOCUMENTS, centrally maintained by COMPANY, that are sufficient to show:

   (a) Prices paid to INTEL for all MICROPROCESSORS since January 1, 2000.

   (b) Aggregate amount (by quarter) of any payment, subsidy, rebate, discount, Intel Inside, E-CAP, MDF, or any marketing or pricing support provided to COMPANY in connection with its purchase of MICROPROCESSORS since January 2000.

   (c) MICROPROCESSOR purchase volumes (by quarter) from INTEL and AMD since January 1, 2000.

   (d) Product road maps for product lines and MICROPROCESSORS (by quarter or cycle) since January 1, 2000.

   (e) Documents showing the date of introduction of every new client platform since 1/1/2003 and the number of units manufactured by quarter for the duration of the platform's life.

   (f) Expected and realized revenue, cost and profitability of product lines (by quarter) since January 1, 2000.