# EXHIBIT A

Westlaw.

450 F.Supp.2d 440                                                      Page 1

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware.
Ssgt Jason A. ADKINS, USAF, Plaintiff,
v.
Donald H. RUMSFELD, Secretary of Defense, et
al.,
**No. CIVA 04-1453-JJF.**

Aug. 24, 2006.

**Background:** Former Air Force member (airman)
brought action alleging that he was issued letter of
reprimand in retaliation for his constitutionally
protected speech to flight surgeon linking his
headaches to tainted anthrax vaccine. The District
Court, 389 F.Supp.2d 579, denied government's
motion to dismiss. Airman amended complaint to
add new factual allegations and second cause of
action alleging retaliatory harassment in violation of
First Amendment's petition clause. Government
again moved to dismiss.

**Holdings:** The District Court, Farnan Jr., J., held
that:
(1) claims were not barred by sovereign immunity
and were not outside jurisdiction of district court
under Tucker Act, although amended complaint was
to be further amended to affirmatively and explicitly
plead waiver of sovereign immunity;
(2) first count of complaint would not be
dismissed for lack of standing, an issue properly
addressed in context of summary judgment, and
airman would be permitted to conduct limited
discovery on issues relevant to causation prong of
standing inquiry;
(3) airman had standing to seek declaratory
judgment;
(4) airman had standing to seek reparative

injunctive relief;
(5) airman lacked standing to pursue permanent
injunction requiring disclosure of all information
related to squalene containing anthrax vaccine;
(6) airman failed to state claim for retaliatory
harassment in violation of First Amendment's
petition clause; and
(7) airman's complaint would not be dismissed for
failure to exhaust administrative remedies under
Military Whistleblower Protection Act (MWPA).
Motion granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure** 🔑**1771**
170Ak1771 Most Cited Cases

**[1] Federal Civil Procedure** 🔑**1831**
170Ak1831 Most Cited Cases
Purpose of motion to dismiss for failure to state a
claim is to test sufficiency of complaint, not to
resolve disputed facts or decide merits of case.
Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure** 🔑**1829**
170Ak1829 Most Cited Cases

**[2] Federal Civil Procedure** 🔑**1835**
170Ak1835 Most Cited Cases
When considering motion to dismiss for failure to
state a claim, court must accept as true all
allegations in complaint and must draw all
reasonable factual inferences in light most favorable
to plaintiff. Fed.Rules Civ.Proc.Rule 12(b)(6), 28
U.S.C.A.

**[3] Federal Civil Procedure** 🔑**1773**
170Ak1773 Most Cited Cases
Dismissal of complaint for failure to state a claim is
only appropriate when it appears beyond doubt that
plaintiff can prove no set of facts in support of his
claims which would entitle him to relief. Fed.Rules
Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440                                                                                            Page 2

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

**[4] Federal Civil Procedure** &#9758;**1832**
170Ak1832 Most Cited Cases

**[4] Federal Civil Procedure** &#9758;**2533.1**
170Ak2533.1 Most Cited Cases
While court generally may not consider matters
outside the pleadings when adjudicating motion to
dismiss, court may consider documents integral to
or explicitly relied upon in the complaint without
converting motion to dismiss to motion for
summary judgment; judicial notice of public records
outside the pleadings is also permitted on motion to
dismiss. Fed.Rules Civ.Proc.Rule 12(b)(6), 28
U.S.C.A.

**[5] Federal Courts** &#9758;**29.1**
170Bk29.1 Most Cited Cases
Motions to dismiss for lack of subject matter
jurisdiction may present either facial or factual
challenge to court's subject matter jurisdiction.
Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[6] Federal Courts** &#9758;**33**
170Bk33 Most Cited Cases

**[6] Federal Courts** &#9758;**34**
170Bk34 Most Cited Cases
In reviewing facial challenge to court's subject
matter jurisdiction, standards relevant to motion to
dismiss for failure to state a claim apply; in this
regard, court must accept all factual allegations in
complaint as true, and may only consider complaint
and documents referenced in or attached thereto.
Fed.Rules Civ.Proc.Rule 12(b)(1, 6), 28 U.S.C.A.

**[7] Federal Courts** &#9758;**33**
170Bk33 Most Cited Cases

**[7] Federal Courts** &#9758;**34**
170Bk34 Most Cited Cases
In reviewing factual challenge to court's subject
matter jurisdiction, court is not confined to
allegations of complaint, and presumption of
truthfulness does not attach to those allegations;
instead, court may consider evidence outside the
pleadings, including affidavits, depositions and
testimony, to resolve any factual issues bearing on
jurisdiction. Fed.Rules Civ.Proc.Rule 12(b)(1), 28

U.S.C.A.

**[8] Federal Courts** &#9758;**34**
170Bk34 Most Cited Cases
Once court's subject matter jurisdiction over
complaint is challenged, plaintiff bears the burden
of proving that jurisdiction exists. Fed.Rules
Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[9] Federal Courts** &#9758;**974.1**
170Bk974.1 Most Cited Cases
Tucker Act did not apply to former Air Force
member's complaint where he no longer sought
monetary relief and his claims were limited to
declaratory and equitable relief. 28 U.S.C.A. § 1491
.

**[10] United States** &#9758;**125(17)**
393k125(17) Most Cited Cases
Waiver of sovereign immunity contained in
Administrative Procedure Act (APA) applied to Air
Force member's suit against the United States
seeking equitable and declaratory relief, even
though it was not expressly pled in his amended
complaint. 5 U.S.C.A. § 702.

**[11] Federal Civil Procedure** &#9758;**1838**
170Ak1838 Most Cited Cases
In lieu of dismissal, Air Force member would be
granted leave to amend his complaint against
United States to affirmatively and explicitly plead
waiver of sovereign immunity under the
Administrative Procedure Act (APA). 5 U.S.C.A. §
702; Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[12] Federal Civil Procedure** &#9758;**2553**
170Ak2553 Most Cited Cases
Issue of standing, raised as a factual challenge to
subject matter jurisdiction, was properly addressed
in context of summary judgment rather than on
motion to dismiss retaliation claims of Air Force
member, who would be permitted to conduct
limited discovery on issues relevant to causation
prong of standing inquiry so that district court could
fully evaluate standing. Fed.Rules Civ.Proc.Rule
56(f), 28 U.S.C.A.

**[13] Declaratory Judgment** &#9758;**300**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

118Ak300 Most Cited Cases
Airman alleging retaliation and retaliatory harassment in violation of his First Amendment rights had standing to seek judgment declaring actions of Secretary of Defense and other defendants to be illegal, unconstitutional, and invalid. U.S.C.A. Const.Amend. 1; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[14] Constitutional Law** 🔑**42.2(1)**
92k42.2(1) Most Cited Cases
Airman claiming he was subject to retaliation and retaliatory harassment in violation of First Amendment had standing to seek reparative injunction directing defendants to remove any and all adverse material from his personnel file, including letter of reprimand (LOR) allegedly issued in retaliation for his speech to flight surgeon linking his headaches to tainted anthrax vaccine, and directing each defendant to place signed apology in his personnel file. U.S.C.A. Const.Amend. 1; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[15] Records** 🔑**67**
326k67 Most Cited Cases
Airman who allegedly was issued letter of reprimand (LOR) in retaliation for his speech to flight surgeon linking his headaches to tainted anthrax vaccine lacked standing to pursue permanent injunction requiring disclosure of all information related to squalene containing anthrax vaccine; airman had not demonstrated how relief requested, i.e. access to all information defendants held regarding health-related effects of squalene containing anthrax vaccine, would redress constitutional violation he alleged, and access to information he sought regarding vaccine's health-related effects was governed by Freedom of Information Act (FOIA). 5 U.S.C.A. § 552.

**[16] Constitutional Law** 🔑**90.1(1)**
92k90.1(1) Most Cited Cases

**[16] Constitutional Law** 🔑**320.5**
92k320.5 Most Cited Cases
Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control. U.S.C.A. Const.Amends. 1, 14.

**[17] Civil Rights** 🔑**1355**
78k1355 Most Cited Cases
Supervisory officials may not be held liable for the unconstitutional acts of their subordinates based solely on the theory of respondeat superior.

**[18] Civil Rights** 🔑**1355**
78k1355 Most Cited Cases

**[18] Civil Rights** 🔑**1394**
78k1394 Most Cited Cases
To state a claim based on supervisory liability, plaintiff must allege with appropriate particularity that the supervisory official had personal involvement in the alleged wrongs; specifically, plaintiff must allege that the supervisory official participated in or had personal knowledge of and acquiesced in the actions which are alleged to have constituted a constitutional deprivation.

**[19] Civil Rights** 🔑**1395(1)**
78k1395(1) Most Cited Cases
Airman failed to state a claim for retaliatory harassment, in violation of First Amendment's petition clause, through numerous allegations that supervisors, who were not specifically identified, treated him differently after he filed lawsuit, allegedly disciplining or punishing him with various undesirable assignments and subjecting his work to closer scrutiny; allegations were not pled with requisite particularity, and airman failed to allege that defendants had any direct or actual supervisory authority over unnamed supervisors to which he referred. U.S.C.A. Const.Amend. 1.

**[20] Armed Services** 🔑**21.1**
34k21.1 Most Cited Cases
Airman's failure to exhaust his administrative remedies under Military Whistleblower Protection Act (MWPA) did not require dismissal of his action alleging that Air Force retaliated against him, in violation of the First Amendment, for his speech to Air Force surgeon linking his headaches to allegedly tainted anthrax vaccine. U.S.C.A.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440                                                                                                          Page 4

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

Const.Amend. 1; 10 U.S.C.A. § 1034(b).
**\*443** John W. Whitehead, Douglas McKusick,
Rutherford Institute, Charlottesville, VA, Susan
Cassidy, Randall Shaheen, M. Katherine Stroker,
Alexander Major, Arnold & Porter L.L.P.,
Washington, D.C. Thomas S. Neuberger, Stephen J.
Neuberger, Neuberger Firm, P.A., Wilmington, DE,
for Plaintiff.

Lt. Col. Donna M. Verchio, Staff Judge Advocate,
of Dover Airforce Base, Major Charles D.
Musselman, Jr., Military Personnel Branch, General
Litigation Division, Air Force Legal Services
Agency, Dover, DE, Peter D. Keisler, Vincent M.
Garvey, Deputy Branch Director; and Jeffrey D.
Kahn, Trial Attorney, Federal Programs Branch,
Civil Division of the United States Department of
Justice, Washington, D.C. Colm F. Connolly,
United States Attorney and Douglas McCann,
Assistant United States Attorney of the United
States Department of Justice, Wilmington, DE, for
Defendants.

### MEMORANDUM OPINION

FARNAN, District Judge.

**\*\*1** Pending before the Court is Defendants'
Motion To Dismiss (D.I.28) the Amended
Complaint filed by Plaintiff, Ssgt Jason A. Adkins,
USAF. For the reasons discussed, the Court will
grant Defendants' Motion To Dismiss the Amended
Complaint as it pertains to Count II of the Amended
Complaint and Plaintiff's request for relief in the
form of access to information Defendants possess
regarding the health-related effects of the squalene
containing anthrax vaccine. In addition, the Court
will deny the Motion To Dismiss as it pertains to
Count I of the Amended Complaint and the
remaining relief sought by Count I.

### BACKGROUND
The factual background relevant to this action has
been set forth fully by the Court in its previous
decision resolving Defendants' initial Motion To
Dismiss Plaintiff's Complaint. *Adkins v. Rumsfeld,*
389 F.Supp.2d 579, 582-584 (D.Del.2005).

Plaintiff's original Complaint contained a single
cause of action alleging retaliation based upon
Plaintiff's constitutionally protected speech. By his
Amended Complaint (D.I.25), Plaintiff has added
new factual allegations and a second cause of action
alleging retaliatory harassment in violation of the
Petition Clause of the First Amendment.

With respect to his claim of retaliatory harassment,
Plaintiff alleges in his Amended Complaint that in
the months following the filing of this action,
Defendants created a hostile work environment for
Plaintiff and caused his employment conditions to
become intolerable. Plaintiff alleges that copies of
his lawsuit and newspaper articles pertaining to his
lawsuit were placed on his desk and posted on
billboards in public locations throughout the base.
Plaintiff alleges that his co-workers treated him
differently, refusing to greet him or shake hands
with him, even though they **\*444** had done so prior
to the filing of this lawsuit. Plaintiff also alleges
that his supervisors treated him differently after he
filed this lawsuit and retaliated against him for
exercising his rights to petition the Court.
Specifically, Plaintiff alleges his work was subject
to more intense scrutiny by his supervisors than
before he filed the lawsuit, that he was "punished"
with night shift assignments and isolated from his
coworkers, and that his performance evaluation
scores fell from the highest rating of fives in each
category, to fours and one three. Plaintiff also
contends that once he was officially noticed that he
was disqualified from flying for medical reasons,
his supervisors ordered him to stop wearing his
flight suit and to dress in his camouflage clothes
("BDUs"), an order that was extremely rare and
intended to humiliate him. Plaintiff also alleges that
his supervisors threatened to take away his aircrew
badge, or "wings." Plaintiff contends that the
treatment he received by his supervisors was
inconsistent with the treatment given to other
airmen who had been disqualified from flying for
medical reasons. As a result of the alleged
humiliation and retaliation he suffered at work,
Plaintiff alleges that he left the Air Force on May
15, 2005.

### STANDARD OF REVIEW

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440                                                                                                      Page 5

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

## I. Standard Under Federal Rule of Civil Procedure 12(b)(6)

**\*\*2** [1][2][3] Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

[4] As a general matter, a court may not consider matters outside the pleadings when adjudicating a motion to dismiss. However, a court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting a motion to dismiss to a motion for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir.1999). Judicial notice of public records outside the pleadings is also permitted on a motion to dismiss.

## II. Standard Under Federal Rule of Civil Procedure 12(b)(1)

[5][6][7][8] Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction. In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the Court must accept all factual allegations in the Complaint as true, and the Court may only consider the complaint and documents referenced in or attached to the complaint. *Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir.2000). In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption **\*445** of truthfulness does not attach to the allegations in the complaint. *Mortensen v. First Fed. Sav. and Loan,* 549 F.2d 884, 891 (3d Cir.1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997). Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen,* 549 F.2d at 891.

### DISCUSSION
## I. Whether Plaintiff's Complaint Should Be Dismissed For Lack Of Subject Matter Jurisdiction

A. *Whether The United States Has Sovereign Immunity From Plaintiff's Suit*

By their Motion, Defendants contend that Plaintiff's Amended Complaint should be dismissed in its entirety, because Plaintiff has not established that the United States has waived its sovereign immunity. In his Amended Complaint, Plaintiff asserts jurisdiction under 28 U.S.C. §§ 1331, 1361, 2201, 2202 and the First Amendment of the United States Constitution. According to Defendants, none of these sources of jurisdiction provide for a waiver of sovereign immunity. Defendants also contend that Section 702 of the Administrative Procedure Act ("APA"), which provides for a waiver of sovereign immunity in nonstatutory review of agency actions under Section 1331, does not apply in this case, because Plaintiff seeks money damages in the form of reinstatement to the Air Force with "full benefits" and pay, which necessarily includes back pay. Defendants further contend that, because Plaintiff seeks monetary damages and incidental nonmonetary relief, he has an adequate remedy under the Tucker Act in the United States Court of Federal Claims that precludes a waiver of sovereign immunity under the APA in other courts.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 6

**\*3** Plaintiff contends that he did not request back pay in his Amended Complaint, but regardless of any issue regarding back pay, Plaintiff points out that he is no longer seeking reinstatement, and therefore, Defendants' argument concerning money damages is moot. Plaintiff contends that the remaining relief he seeks is equitable and declaratory in nature, and therefore, the Tucker Act does not preclude the Court from exercising jurisdiction over this matter. In addition, Plaintiff contends that the waiver of sovereign immunity contained in Section 702 of the APA applies in this case, despite the fact that he did not explicitly refer to Section 702 in his Amended Complaint.

[9][10][11] Because Plaintiff no longer seeks monetary relief and his claims are limited to declaratory and equitable relief, the Court concludes that the Tucker Act does not apply to Plaintiff's Complaint. Pursuant to Section 702 of the APA, the United States has waived sovereign immunity for any actions "seeking relief other than money damages." 5 U.S.C. § 702. Thus, the waiver of sovereign immunity contained in Section 702 applies to suits against the United States seeking equitable and declaratory relief. *See* 4 K. Davis *Administrative Law Treatise* § 23:19 at 195 (2d ed.1983); *see also Panola Land Buyers Assn. v. Shuman,* 762 F.2d 1550, 1555 (11th Cir.1985) ( "The defense of sovereign immunity is waived in actions against federal government agencies seeking nonmonetary relief if the agency conduct is itself subject to judicial review."); *Jaffee v. United States,* 592 F.2d 712, 718 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979) (holding **\*446** that § 702 of APA waived sovereign immunity for suits brought under 28 U.S.C. § 1331 ). Although Plaintiff did not expressly plead Section 702 in his Amended Complaint, some courts have declined to dismiss a complaint on that basis alone, where as here, the allegations of the complaint support jurisdiction. *See e.g. Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation,* 792 F.2d 782, 792-793 (9th Cir.1986) (relying on *Jaffee* to hold that a complaint should not be dismissed for failure to expressly plead waiver of sovereign immunity under the APA); *Ruggerio v. United States,* 2005 WL 678743, \*2

(D.Md. Jan.31, 2005). Accordingly, the Court concludes that Plaintiff's claims are not barred by sovereign immunity and are not outside the jurisdiction of this Court under the Tucker Act. However, the Court concludes that the Amended Complaint should be further amended to affirmatively and explicitly plead a waiver of sovereign immunity, and therefore, Plaintiff will be given leave to file a Second Amended Complaint.

B. *Whether Count I Should Be Dismissed For Lack Of Standing*

Defendants also contend that Count I of the Amended Complaint should be dismissed for lack of standing, because "Plaintiff's alleged injury-- retaliatory discipline--is only fairly traceable to defendants' challenged inaction if plaintiff's administrative LOR was in fact retaliatory." (D.I. 29 at 19.) Defendants contend that Plaintiff could not have been disciplined for his speech to the flight surgeon if SMSgt Mahoney had no knowledge of his speech. Defendants further point out that Plaintiff's Amended Complaint lacks any allegation that anyone knew of Plaintiff's speech before he was disciplined. Thus, Defendants contend that they could not have "ratified, sanctioned, authorized, approved or participated" in retaliation against Plaintiff for his speech, if SMSgt Mahoney reprimanded Plaintiff in the first instance without knowledge of his speech. In support of their argument, Defendants offer the affidavits of SMSgt Mahoney and TSgt Miller declaring neither were aware of the content of Plaintiff's allegedly protected speech, and the affidavit of Capt Bernardin, the flight surgeon, that he neither informed anyone, nor was asked by anyone about the content or subject matter of his conversation with Plaintiff.

**\*4** In response, Plaintiff contends that the Court previously found that causation was sufficiently pled so as to withstand Defendants' first motion to dismiss. Plaintiff contends that it is inappropriate to turn causation into a matter to be resolved during the pleading stage, particularly where, as here, causation is intertwined with one of the elements needed to establish Plaintiff's claim that he was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

retaliated against for his constitutionally protected speech.

In its decision denying Defendants' first Motion To Dismiss, the Court addressed the issue of causation in the context of Rule 12(b)(6) and declined to dismiss the case for lack of standing relying on its discussion of causation under Rule 12(b)(6). *Adkins,* 389 F.Supp.2d at 587-588. In other words, the Court only considered subject matter jurisdiction in the context of a facial challenge to the Complaint. By contrast, in this Motion, Defendants have cast the question of causation as a matter of standing to be addressed by the Court in the context of a Rule 12(b)(1) factual challenge to subject matter jurisdiction. Such a factual challenge under Rule 12(b)(1) permits the Court to expand its inquiry beyond the allegations of the Amended Complaint and consider matters outside the pleadings including the affidavits and other documents offered by Defendants to demonstrate that Plaintiff lacks standing to pursue his claim. *See* ***447** e.g. Gotha,* 115 F.3d at 179; *Borough of Carlstadt v. United States Army Corps. of Engineers,* 2006 WL 305314, *3 (D.N.J. Feb.8, 2006) (discussing standing under Rule 12(b)(1)).

[12] Because Plaintiff bears the burden of establishing subject matter jurisdiction and the Court is persuaded that this issue should be addressed in the context of summary judgment, rather than in the context of a motion to dismiss, the Court will permit Plaintiff to conduct limited discovery on those issues relevant to the causation prong of the standing inquiry so that the Court can fully evaluate the issue. In this regard, Plaintiff has filed a Rule 56(f) affidavit seeking discovery on numerous issues. The Court has reviewed the issues raised by Plaintiff in that affidavit and concludes that discovery is appropriate on the following subjects:

1) the facts underlying the assertions contained in the affidavits submitted by Defendants in support of their motion to dismiss;

2) who within the government was aware of Plaintiff's complaints relating to the allegedly

tainted vaccine, when they were aware, and how they found out;

3) SMSgt Mahoney's intent and motives in issuing the LOR to Plaintiff, and who among SMSgt's superiors approved and/or directed his issuance of the LOR;

4) SMSgt Mahoney's and TSgt Miller's knowledge of Plaintiff's health conditions; and

5) communications between SMSgt Mahoney and superiors as they relate to the causation prong of the standing inquiry.

To facilitate this discovery, the Court will order the parties to file a stipulated proposed Scheduling Order, including the number and duration of depositions and the number of interrogatories permitted for each side. If the parties cannot agree on a proposed Scheduling Order, the parties shall each submit a proposed Scheduling Order, highlighting the areas of disagreement, along with a letter memorandum (not to exceed 3 pages in length) setting forth their respective views on the areas of disagreement. Once discovery is completed, the Court will entertain this issue in the context of summary judgment proceedings. Accordingly, the Court will deny Defendants' Motion To Dismiss as it pertains to Count I, with leave to refile the Motion To Dismiss as a Motion For Summary Judgment. To the extent additional briefing is deemed necessary by the parties once the Motion For Summary Judgment has been filed, the parties shall adhere to the local rules for briefing, unless another schedule is stipulated to by the parties in writing.

*C. Whether Plaintiff Has Standing To Pursue Each Form Of Relief Sought*

**5 Defendants next contend that the Court lacks jurisdiction over Plaintiff's Amended Complaint, because Plaintiff is not entitled to the relief he seeks as a matter of law. Though not couched by Defendants in terms of standing specifically, the Court understands that Defendants' arguments are properly considered challenges to Plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440                                                                                Page 8

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))

standing.

[13] By his Amended Complaint, Plaintiff seeks (1) judgment against Defendants; (2) declaratory judgment declaring Defendants' actions to be illegal, unconstitutional and invalid; (3) a permanent injunction requiring Defendants to provide Plaintiff with all information Defendants hold regarding the health related effects of the squalene tainted anthrax vaccine so that Plaintiff can ensure that his health care providers are adequately informed; (4) a *448 reparative injunction directing Defendants to remove any and all adverse material from Plaintiff's personnel file, including the LOR; (5) a reparative injunction directing each Defendant to place a signed apology in Plaintiff's personnel file; (6) reinstatement to the Air Force, and (7) attorneys' fees and costs. However, in the context of his Answering Brief to Defendants' Motion To Dismiss, Plaintiff has withdrawn his request to be reinstated to the Air Force. Based on the withdrawal of his request for reinstatement, Defendants contend that Plaintiff has set forth no relief that would redress the claimed violation of his First Amendment rights. However, Defendants do not address the fact that Plaintiff also seeks declaratory judgment against Defendants. Thus, regardless of whether Plaintiff would be entitled to the other forms of relief he seeks, Plaintiff would be entitled to a declaratory judgment if his claim is ultimately successful, and therefore, the Court cannot dismiss the Amended Complaint on the grounds that it fails to seek any cognizable form of relief.

[14] As for Defendants remaining arguments concerning the reparative injunctive relief that Plaintiff seeks, Defendants argue that (1) the LOR is not in Plaintiff's "official" personnel file, and therefore, Plaintiff is not entitled to its removal; and (2) Plaintiff is not entitled to either the retraction of the LOR or a letter of apology, because neither will redress his injuries now that he has withdrawn his request for reinstatement to the Air Force. It appears to the Court, however, that each of the arguments advanced by Defendants with respect to these forms of relief implicate factual issues, which are not suitable for resolution on a motion to

dismiss. Accordingly, the Court cannot conclude at this juncture that Plaintiff is not entitled to the reparative injunctive relief he seeks.

[15] As for Plaintiff's remaining request for a permanent injunction requiring Defendants to disclose all information related to the squalene containing anthrax vaccine, the Court concludes that Plaintiff has not demonstrated that this form of relief would redress the First Amendment violation alleged in his Amended Complaint, and therefore, Plaintiff lacks standing to pursue this particular form of relief. *Friends of the Earth, Inc. v. Laidlaw Environmental Services,* 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (requiring plaintiff to demonstrate standing separately for each form of relief sought). While it is true that the speech for which Plaintiff was allegedly disciplined pertained to the anthrax vaccine, that does not mean that Plaintiff's lawsuit is about the anthrax vaccination itself or the government's program related to that vaccination. In this regard, Plaintiff has not demonstrated how the relief requested, i.e. access to all information Defendants hold regarding the health-related effects of the squalene containing anthrax vaccine, would redress the constitutional violation he alleges.

**6 [16] Plaintiff directs the Court to the Supreme Court's decision in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) to argue that he has a "qualified" right to access particular types of government documents. As Defendants point out; however, the *Richmond Newspapers* case and the related cases to which Plaintiff refers involve the right of access to criminal proceedings, and in one case, a trial-like administrative proceeding. Plaintiff's request for information here is not the type of information addressed in those cases. Further, as Defendants point out, the Supreme Court has specifically recognized that "[n]either the First Amendment nor the Fourteenth Amendment mandates a *449 right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.,* 438 U.S. 1, 15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). In this case, the Court agrees with Defendants that access to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

information Plaintiff seeks regarding the health-related effects of the anthrax vaccine is governed by the Freedom of Information Act ("FOIA"), which provides for a specific process by which Plaintiff can request this type of information. [FN1] *See* 5 U.S.C. 552; *McDonnell v. U.S.,* 4 F.3d 1227, 1236 (3d Cir.1993). Plaintiff's case is not about a failed request for information under the FOIA, and Plaintiff has not demonstrated how this lawsuit is logically related to his request for information related to the health effects of the squalene containing anthrax vaccine. Because Plaintiff has not demonstrated that this relief would redress his claim, or that he would be entitled to this relief even if he was ultimately successful in this lawsuit, the Court will grant Defendants' request to dismiss Plaintiff's claim to the extent that it seeks as relief, information related to the health-related effects of the squalene containing anthrax vaccine.

> FN1. In his Answering Brief, Plaintiff does not address Defendants' argument that Plaintiff's request for information is governed by the FOIA. In a footnote, Plaintiff contends that he has a common law right of access to the information he seeks. However, even if Plaintiff has such a common law right of access to this information, Plaintiff still has not explained how access to the information he requests will remedy the First Amendment violation he allegedly suffered of being disciplined for his constitutionally protected speech.

**II. Whether Plaintiff's Claim Of Retaliation For Filing This Law Suit (Count II) Should Be Dismissed For Failure To State A Claim**

Defendants next contend that Plaintiff's claim for retaliation based on the exercise of his First Amendment right to petition the Court set forth in Count II of the Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted. Defendants contend that Plaintiff has not established that Defendants had direct supervisory authority over him or that they were directly involved in any alleged retaliatory

harassment suffered by Plaintiff. Defendants also contend that Plaintiff has not alleged that they have direct supervisory authority over the unnamed supervisors who allegedly subjected Plaintiff to a hostile work environment.

[17][18] Supervisory officials may not be held liable for the unconstitutional acts of their subordinates based solely on the theory of respondeat superior. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). To state a claim based on supervisory liability, the plaintiff must allege "with appropriate particularity" that the supervisory official had personal involvement in the alleged wrongs. *Id.* Specifically, the plaintiff must allege that the supervisory official participated in or had personal knowledge of and acquiesced in the actions which are alleged to have constituted a constitutional deprivation. *Id.; see also Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1294 (3d Cir.1997).

**\*\*7** [19] In Count II of his Amended Complaint, Plaintiff makes numerous allegations that his supervisors treated him differently than they had before he filed this lawsuit, allegedly disciplining and/or punishing him with various undesirable assignments and subjecting his work to closer scrutiny; however, Plaintiff does not specifically identify these supervisors. In these circumstances, the Court cannot conclude that Plaintiff's allegations have been **\*450** pled with the requisite specificity required by *Rode* and its progeny. In addition, Plaintiff has failed to allege that Defendants had any direct or actual supervisory authority over the unnamed supervisors to which Plaintiff refers in Count II. *See Evancho v. Fisher,* 423 F.3d 347, 348 (3d Cir.2005) (declining to credit "bald assertion" that Attorney General or his underlings carried out plaintiff's transfer to set her up for dismissal or make her life miserable so she would resign where at least three levels of supervision existed between plaintiff and the Attorney General and decision was "presumably" made by mid-level management officials). Plaintiff generally avers in his Amended Complaint that Defendants "ratified, sanctioned, authorized, approved or participated in the actions challenged in this case." (D.I. 25 at ¶¶ 13-16.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440                                                                                                   Page 10

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))

However, Plaintiff does not link this general averment to the allegations related to Count II. [FN2] Specifically, Plaintiff provides no factual basis to support his allegations that Defendants participated in, knew of and/or acquiesced in the alleged retaliatory conduct to which he refers in Count II. Plaintiff's only specific allegation linking Defendants to the allegations in Count II is that Defendants "are aware of plaintiff's lawsuit as they received notice and subsequently attempted to have the original complaint dismissed." (Id. at ¶ 88.) This allegation is insufficient to demonstrate that Defendants knew that Plaintiff was being subjected to alleged harassment as a result of the filing of his lawsuit, and Plaintiff makes no allegation that Defendants ordered the alleged retaliatory conduct or that Defendants were subsequently made aware of the conduct, so as to have ratified it. Accordingly, the Court concludes that Plaintiff has failed to state a claim of supervisory liability against Defendants for the conduct alleged in Count II, and therefore, the Court will grant Defendants' Motion as it pertains to Count II of the Amended Complaint.

> FN2. The Court notes that Plaintiff made similar allegations that Defendants ratified, sanctioned and approved the retaliation against Plaintiff described in Count I; however, Plaintiff linked those allegations to Count I by specifically alleging that the LOR issued to Plaintiff was brought to the attention of Defendants, and Defendants refused to void the LOR and ratified, sanctioned and approved it. (D.I. 25 at ¶ ¶ 82-86). In contrast, with respect to Count II, there is no specific factual allegations that Defendants were even aware of the alleged retaliatory conduct to which Plaintiff refers, let alone any factual allegations that would support Plaintiff's conclusory averment that Defendants participated in or acquiesced in the alleged retaliatory conduct described by Count II.

**III. Whether Plaintiff's Complaint Should Be Dismissed For Failure To Exhaust Administrative Remedies Under The Military Whistleblower Protection Act**

[20] Defendants also request dismissal of Plaintiff's Complaint on the grounds that Plaintiff failed to exhaust administrative remedies available to him under the Military Whistleblower Protection Act. Defendants contend that the issues of military discipline raised in Count I are ill-suited for judicial determination and better resolved through the administrative procedures of the MWPA, which provides for investigatory and remedial measures to address complaints lodged by military personnel.

**8 In its previous Memorandum Opinion, the Court concluded that Plaintiff was not required to exhaust administrative remedies before the Air Force Board for the Correction of Military Records ("AFBCMR"). *Adkins,* 389 F.Supp.2d at 588-589. Plaintiff contends that the MWPA is not a different remedy than the Court previously addressed, because the MWPA is a vehicle for obtaining a hearing *451 before the AFBCMR. Defendants have not disputed Plaintiff's characterization of the MWPA and acknowledge that once the Inspector General issues a report on complaints brought under the MWPA, the complainant may then petition the AFBCMR for review. Defendants further note that, in this case, the Inspector General at Dover Air Force base invited Plaintiff to avail himself of review by the AFBCMR. Indeed, the MWPA expressly references boards created under 10 U.S.C. 1552, which includes the AFBCMR. Moreover, as Plaintiff notes several of the Defendants in this case are precisely the individuals who would be charged with evaluating and remedying Plaintiff's complaint under the MWPA and the AFBCMR. Because the Court has already concluded that Plaintiff's claims are ill-suited for administrative review and better suited for review in the judicial forum, the Court concludes that Defendants are not entitled to the dismissal of Plaintiff's Amended Complaint for failure to exhaust administrative remedies.

**CONCLUSION**

For the reasons discussed, the Court will grant Defendants' Motion To Dismiss as it pertains to Count II of the Amended Complaint and Plaintiff's request for relief in the form of access to information Defendants possess regarding the health-related effects of the squalene tainted anthrax

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440                                                                                    Page 11

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

vaccine. In addition, the Court will deny Defendants' Motion To Dismiss as it pertains to Count I and the remaining relief sought by Count I of the Amended Complaint. Plaintiff shall be permitted to conduct limited discovery on the issue of causation as it relates to the threshold questions of standing and the Court's jurisdiction to entertain this lawsuit as provided for in this Memorandum Opinion.

An appropriate Order will be entered.

### *ORDER*
At Wilmington, this 24 day of August 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendants' Motion To Dismiss (D.I.28) is **GRANTED** as it pertains to Count II of the Amended Complaint and Plaintiff's request for relief in the form of access to information Defendants possess regarding the health-related effects of the squalene tainted anthrax vaccine and **DENIED** as it pertains to Count I of the Amended Complaint and the remaining forms of relief sought by Count I.

2. Plaintiff shall file a Second Amended Complaint within twenty (20) days of the date of this Order.

3. The parties shall file a stipulated proposed Scheduling Order, or if one cannot be agreed to, their respective proposals as outlined by the Court in the Memorandum Opinion accompanying this Order within twenty (20) days of the date of this Order.

**\*9** 4. Defendants are given leave to refile their Motion To Dismiss as a Motion For Summary Judgment on the issue of causation in the context of standing at the close of the discovery period to be set forth in the proposed Scheduling Order as contemplated by the Court's Memorandum Opinion.

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 2738733 (Trial Motion, Memorandum and Affidavit) Reply to Plaintiff's Response to Defendants' Motion to Reconsider Denial of Motion to Dismiss (Sep. 25, 2006)Original Image of this Document (PDF)

• 2006 WL 2737676 (Trial Pleading) Defendants' Answer to Plaintiff's Second Amended Complaint (Sep. 22, 2006)

• 2006 WL 2737675 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' Motion to Reconsider Denial of Motion to Dismiss (Sep. 20, 2006)Original Image of this Document (PDF)

• 2006 WL 2581730 (Trial Motion, Memorandum and Affidavit) Motion to Reconsider Denial of Motion to Dismiss (Sep. 6, 2006)Original Image of this Document (PDF)

• 2006 WL 2631957 (Trial Motion, Memorandum and Affidavit) Motion to Reconsider Denial of Motion to Dismiss (Sep. 6, 2006)Original Image of this Document (PDF)

• 2006 WL 2582475 (Trial Pleading) Second Amended Complaint (Sep. 5, 2006)Original Image of this Document (PDF)

• 2006 WL 1222368 (Trial Motion, Memorandum and Affidavit) Reply to Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss and Defendants' Answering Brief in Opposition to Plaintiff's Motion to Strike (May 2, 2006)

• 2006 WL 2581729 (Trial Motion, Memorandum and Affidavit) Reply to Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss and to Strike Answering Brief in Opposition to Plaintiff's Motion to Strike (May 2, 2006)Original Image of this Document (PDF)

• 2006 WL 1324016 (Trial Pleading) Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss (Mar. 15, 2006)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

450 F.Supp.2d 440                                                                                    Page 12

450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.)

**(Cite as: 450 F.Supp.2d 440, 2006 WL 2458630 (D.Del.))**

• 2006 WL 2581727 (Trial Motion, Memorandum and Affidavit) Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss (Mar. 15, 2006)Original Image of this Document (PDF)

• 2006 WL 151870 (Trial Pleading) Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss (Jan. 18, 2006)

• 2005 WL 4708711 (Trial Pleading) First Amended Complaint (Nov. 15, 2005)Original Image of this Document (PDF)

• 2005 WL 4708710 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Further Support of Defendants' Motion to Dismiss (Apr. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 4708709 (Trial Motion, Memorandum and Affidavit) Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss (Mar. 21, 2005)Original Image of this Document (PDF)

• 2004 WL 2640437 (Trial Pleading) Complaint (Nov. 18, 2004)

• 1:04cv01453 (Docket) (Nov. 18, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                        Page 1

Not Reported in F.Supp.2d, 2005 WL 3525696 (D.Del.), 2006-1 Trade Cases P 75,106

**(Cite as: 2005 WL 3525696 (D.Del.))**

**C**

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware.
NOKIA CORPORATION and Nokia, Inc.,
Plaintiffs,
v.
INTERDIGITAL COMMUNICATIONS and
Interdigital Technology Corporation,
Defendants.
**No. Civ.A. 05-16-JJF.**

Dec. 21, 2005.
Jack B. Blumenfeld, of Morris, Nichols, Arsht &
Tunnell, Wilmington, Delaware, for Plaintiffs.

Richard L. Horowitz, and David Ellis Moore, of
Potter Anderson & Corroon, LLP, Wilmington,
Delaware, D. Dudley Oldham, Robert S. Harrell,
and Richard S. Zembek, of Fulbright & Jaworski,
LLP, Houston, Texas, Dan D. Davison, of Fulbright
& Jaworski, LLP, Dallas, Texas, for Defendants, of
counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Pending before the Court is Defendants' Motion
To Dismiss For Lack Of Jurisdiction Over The
Subject Matter Pursuant To Federal Rules Of Civil
Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I.10).
For the reasons discussed, the Motion will be
granted in part and denied in part.

I. Background

On January 12, 2005, Plaintiffs filed a Complaint
seeking a declaratory judgment that several of
Defendants' third generation wireless technology
patents ("3G patents") are either invalid or not
infringed by Plaintiffs' products. The patents at
issue are the subject of three licensing agreements,
whereby Plaintiffs are licensed to practice all of
Defendants' patents until the end of 2006. Plaintiffs
brought the instant action, alleging reasonable
apprehension that Defendants would bring suit at
the end of the licensing agreements. Additionally,
Plaintiffs alleged that Defendants violated Section
43 of the Lanham Act by using false or misleading
information in bad faith, thereby inhibiting
Plaintiffs' ability to develop technology and
damaging Plaintiffs' reputation in the market.
Defendants filed the instant Motion, requesting that
the Court dismiss Plaintiffs' claims pursuant to
Federal Rules of Civil Procedure 12(b)(1), 12(b)(6),
and 12(h)(3).

II. Parties' Contentions

By their Motion, Defendants contend that
Plaintiffs' Complaint should be dismissed pursuant
to Rules 12(b)(1) and 12(h)(3) for failure to plead
and prove an actual controversy. Defendants
contend that there is no actual controversy because
Plaintiffs could not be in reasonable apprehension
of a lawsuit when there is a licensing agreement
between the parties. Alternatively, Defendants
request that the Court exercise its "unique and
substantial" discretion and refuse to hear the case
because Plaintiffs brought the case for improper
purposes. Finally, Defendants contend that
Plaintiffs' Lanham Act claim should be dismissed
pursuant to Rule 12(b)(6), because Plaintiffs have
failed to state a claim under Section 43(a).

In response, Plaintiffs contend that reasonable
apprehension of suit exists because the parties'
licensing agreement expires at the end of 2006,
Defendants have a history of threatening other
wireless technology manufacturers with litigation,
and Defendants have threatened to sue Plaintiffs.
Alternatively, Plaintiffs contend that the Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2

Not Reported in F.Supp.2d, 2005 WL 3525696 (D.Del.), 2006-1 Trade Cases P 75,106

**(Cite as: 2005 WL 3525696 (D.Del.))**

should consider a ripeness test or that the Court should exercise its discretion to resolve the dispute because the case is fit for resolution and a declaratory judgment would be useful. Finally, Plaintiffs contend that they have sufficiently stated a claim under Section 43 of the Lanham Act to survive Defendants' motion to dismiss.

III. Discussion

A. *Whether Plaintiffs' Claims For Declaratory Judgment Should Be Dismissed Pursuant To Federal Rules Of Civil Procedure 12(b)(1) and 12(h)(3)*

1. *Standard of Review*

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of a court to address the merits of a plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of [the] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Coxson v. Commonwealth of Pennsylvania,* 935 F.Supp. 624, 626 (W.D.Pa.1996) (citations omitted).

**\*2** A motion to dismiss under 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. *See Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). A factual challenge to subject matter jurisdiction exists where there is an attack on "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Id.*

When a Court considers a factual challenge to jurisdiction, it does not presume the truth of the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. *Id* . Moreover, the plaintiff has the burden of proof that jurisdiction does in fact exist. *Id.*

The Court concludes that the instant case presents a factual challenge because Defendants dispute the existence of the jurisdictional facts alleged in the

Complaint. Thus, the Court is not required to presume the truth of Plaintiffs' allegations, and Plaintiffs bear the burden of proving that jurisdiction exists.

2. *Analysis*

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction ." 28 U.S.C. § 2201(a); *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 801 (Fed.Cir.2004). An actual controversy exists when there is both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Gen-Probe, Inc. v. Vysis, Inc.,* 359 F.3d 1376, 1380 (Fed.Cir.2004) (quoting *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993)). A court must look to the circumstances and facts at the time the complaint is filed to determine whether there is an actual controversy. *MedImmune, Inc. v. Centocor, Inc.,* 409 F.3d 1376, 1381 (Fed.Cir.2005).

The parties do not dispute that the second prong, present infringing activity, of the two-part test is satisfied. Rather, the motion turns on the first prong, reasonable apprehension of suit. "When the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988) (quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987)).

The Court concludes that, under the totality of the circumstances, Plaintiffs have not demonstrated reasonable apprehension of suit. First, and most damaging to Plaintiffs, is the existence of a licensing agreement that does not expire until the end of 2006. While the existence of a licensing agreement is not conclusive as to the Court's jurisdiction, *C.R. Bard, Inc. v. Schwartz,* 716 F.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 3525696 (D.Del.), 2006-1 Trade Cases P 75,106

**(Cite as: 2005 WL 3525696 (D.Del.))**

874, 880 (Fed.Cir.1983), the Federal Circuit has been reluctant to find reasonable apprehension where a licensing agreement exists. *See Gen-Probe,* 359 F.3d 1376; *MedImmune,* 409 F.3d 1376. Furthermore, the Federal Circuit has recently distinguished those cases finding reasonable apprehension despite a licensing agreement from the type of case at bar; in the cases finding reasonable apprehension, there was a breach of the licensing agreement or the plaintiff sought to prevent such a breach. *See Gen-Probe,* 359 F.3d at 1380 (finding no reasonable apprehension of suit due to the existence of a licensing agreement and the absence of two "critical circumstances" from *C.R. Bard:* a material breach of the licensing agreement and a suit brought by the defendant); *MedImmune,* 409 F.3d at 1381 (distinguishing the case from *Cordis Corp. v. Medtronic, Inc.,* 835 F.2d 859 (Fed.Cir.1987) in which the licensee also "sought to pay royalties into escrow pendente lite, and to enjoin the licensor from canceling the license agreement"). In this case, there is a licensing agreement between Plaintiffs and Defendants, there has been no breach or threat of breach, and Defendants have not brought any lawsuits against Plaintiffs.

**\*3** Second, where a licensing agreement has been formed, a court must only consider a defendant's actions occurring after formation of the licensing agreement. *Gen-Probe,* 359 F.3d at 1381. Thus, the Court will examine whether the following facts alleged by Plaintiffs, occurring after formation, give rise to reasonable apprehension:

. "Since the early 1990s, InterDigital has been accusing *every* mobile telephone equipment manufacturer of patent infringement." (D.I. 14 at 17).
. "InterDigital was the cause of *all* of the patent proceedings to which it has been a party." (*Id.*).
. "InterDigital also directly filed suit against OKI America and Qualcomm in 1993 and against Lucent this past year." (*Id.*).
. "After Nokia initiated the arbitration proceeding to obtain information, InterDigital escalated the proceedings by counterclaiming against Nokia for the massive royalties it promised its shareholders in its press release." (*Id.* at 9).

. "For at least ten years, through correspondence, licensing presentations, meetings, and public statements, InterDigital has been claiming that Nokia's products infringed its patents." (*Id.* at 17).
. "In its licensing negotiations, InterDigital has repeatedly referenced its suits against other mobile telephone equipment manufacturers." (*Id.* at 17- 18).
. "InterDigital's CEO, Howard Goldberg, recently threatened Nokia with suit, stating that InterDigital was considering litigation as a means of obtaining 'leverage' in the negotiations with Nokia." (*I d.* at 18).

The Court concludes that, under the totality of the circumstances, the facts alleged do not give rise to a reasonable apprehension of a lawsuit. As to Defendants' litigation tactics, in the past twelve years, Defendants have brought only three actions to defend their patents. The fact that two of them were brought in 1993, "against two other parties unconnected with [Plaintiffs, is] too remote to make [Plaintiffs'] apprehension of further litigation in [2005] reasonable." *Indium Corp. of Am. v. Semi-Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985) (finding that a seven-year difference was too remote). Furthermore, even if Defendants have claimed for ten years that Plaintiffs are infringing their patents, Plaintiffs' reasonableness is belied by the fact that not once in those ten years have Defendants sued Plaintiffs. To the contrary, Plaintiffs have filed lawsuits against Defendants, most notably, the arbitration Plaintiffs initiated "regarding Nokia's royalty payment obligations ... under the existing patent license agreement." (D.I.15, Ex. G, p. 54). It was hardly escalation of the proceedings for Defendants to counterclaim on their right to receive those royalties. (*Id.* at 55).

Additionally, as to Defendants' conduct in negotiations for a potential 2006 license, "the Federal Circuit has concluded that the objective test for determining declaratory justiciability is not met 'when a patentee does nothing more than exercise its lawful commercial prerogatives....' " *DuPont Dow Elastomers, LLC v. Greene Tweed of Del., Inc.,* 148 F.Supp.2d 412, 415 (D.Del.2001) (quoting *Cygnus*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2005 WL 3525696 (D.Del.), 2006-1 Trade Cases P 75,106

**(Cite as: 2005 WL 3525696 (D.Del.))**

*Therapeutic Sys. v. Alza Corp.,* 92 F.3d 1153, 1160 (Fed.Cir.1996)). Mere " 'jawboning,' which typically occurs in licensing negotiations," is not sufficient to give rise to reasonable apprehension. *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 889 (Fed.Cir.1992).

*4 Finally, Plaintiffs' argument is not furthered by its allegation that InterDigital's CEO, Howard Goldberg, recently threatened it with a lawsuit. In the allegedly threatening conversation, Mr. Goldberg was responding to a question in a conference call from an analyst regarding whether Defendants had any leverage in the arbitration that had been initiated by Plaintiffs:

> FRANK MARSALA: Then just a Nokia question on that issue. Is there any leverage that you guys have today? Is there anything you can do to influence Nokia to bring this matter to a close--here I'm talking about things like bringing injunctions against them--shipping handsets--things of that sort of [sic]. So, I'm curious about that.
> HOWARD GOLDBERG: Let me first say that we certainly will look at every point of leverage. The dynamics in a situation such as this are very important. We will look--and have been looking--at how we can drive this to a successful resolution. Through internal and external resources. One of the ways that leverage is best used is as a surprise or-certainly you don't want to create an anticipation of anything that you may do. So the answer is yes. But I would be very reluctant to talk about it and layout our plan for dealing with this particular matter.

(D.I.1, Ex. T, p. 14). In the Court's view, Mr. Goldberg is discussing the leverage that Defendants will use to defend their rights in the arbitration *initiated by Plaintiffs.* It would be illogical to require patent owners to state that they have no leverage in legal proceedings initiated by a competitor in order to avoid giving rise to that competitor's reasonable apprehension. Thus, the Court finds that the answer by Mr. Goldberg was "reflexive and obligatory." *Shell,* 970 F.2d at 889.

The Federal Circuit has stated that satisfaction of the two-part test is not a requirement for every

declaratory judgment action. *Fina Oil & Chem. Co. v. Ewen,* 123 F.3d 1466, 1470 (Fed.Cir.2003). Plaintiffs, therefore, contend that the Court should also consider a ripeness test to determine whether there is a sufficient controversy. Plaintiffs cite several cases in support of this standard, but in each of those cases, the court still applied the two-prong test. See *Teva Pharm. USA, Inc. v. Pfizer, Inc.,* 395 F .3d 1324 (Fed.Cir.2005); *Fina Oil,* 123 F.3d 1466; *GAF Bldg. Materials Corp. v. Elk Corp.,* 90 F.3d 479 (Fed.Cir.1996); *EMC Corp.,* 89 F.3d 807. Other cases cited in Plaintiffs' analysis either did not discuss the Declaratory Judgment Act or did not discuss whether an actual controversy existed. *See Dow Chem. Co. v. Exxon Corp.,* 30 F.Supp.2d 673 (D.Del.1998); *Cedars-Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573 (Fed.Cir.1993). *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,* 330 F.3d 1345 (Fed.Cir.2003) Moreover, even if the case were ripe for review, the Court still could not hear the case unless an actual controversy existed, which the Court has concluded does not. Accordingly, the Court declines to apply a test different from the two-prong test applied above.

*5 In sum, the Court concludes that Plaintiffs did not have a reasonable apprehension of litigation at the time the Complaint was filed. Therefore, there is no actual controversy to support the Court's jurisdiction over the declaratory judgment claims under the Declaratory Judgment Act. Accordingly, the Court will dismiss Plaintiffs' declaratory judgment claims for lack of subject matter jurisdiction.

**B. *Whether Plaintiffs' Claim Under Section 43 Of the Lanham Act Should Be Dismissed Pursuant to Rule 12(b)(6) For Failure To State A Claim***

**1. *Legal Standard***

Defendants also request that the Court dismiss Plaintiffs' claim under Section 43 of the Lanham Act pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 3525696 (D.Del.), 2006-1 Trade Cases P 75,106

**(Cite as: 2005 WL 3525696 (D.Del.))**

case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

2. *Analysis*

To state a claim under § 43(a) of the Lanham Act, a plaintiff must allege that: (1) defendant made false or misleading statements as to its products, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.,* 19 F.3d 125, 129 (3d Cir.1994). Additionally, a plaintiff must demonstrate that the patent holder acted in bad faith. *Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1353 (Fed.Cir.1999).

Accepting as true all allegations in Plaintiffs' Complaint and drawing all reasonable inferences therefrom, the Court concludes that, at this juncture, Plaintiff has stated a claim under Section 43 of the Lanham Act sufficient to survive Defendants' motion to dismiss. Plaintiffs allege that Defendants made false or misleading statements in bad faith to the effect that Defendants' patents cover Plaintiffs' 3G products. Plaintiffs further allege that these statements are material and "have caused actual deception or have a tendency to deceive." (D.I. 1 at 35). Additionally, Plaintiffs have alleged that the misrepresentations have injured Plaintiffs in their business and have damaged their reputations.

The requirement that the advertised goods have traveled in interstate commerce is not as clearly alleged as the other requirements. Drawing all reasonable inferences in the light most favorable to Plaintiffs, however, the Court concludes that the statement "Nokia is currently designing, rolling out and further developing 3G products in the United States that will be manufactured and sold by Nokia after 2006" means that at least some 3G products have already been developed and entered interstate commerce. [FN1] (D.I. 1 at 6). Accordingly, the Court will deny Defendants' motion to dismiss pursuant to Rule 12(b)(6).

> FN1. Defendants quote this statement to demonstrate that Plaintiffs are suing on future products. Read in the context of the entire paragraph and in the light most favorable to Plaintiffs, however, the Court concludes the statement means that some 3G products have already been made ("rolled out") and will continue to be made after the licensing agreement expires ("further developed").

IV. Conclusion

*6 For the reasons discussed, Defendants' Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I.10) will be granted in part and denied in part.

An appropriate Order will be entered.

*ORDER*

At Wilmington, the *21* day of December 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I.10) is *GRANTED* as to Plaintiffs' declaratory judgment claims and *DENIED* as to Plaintiffs' claim under Section 43 of the Lanham Act.

Not Reported in F.Supp.2d, 2005 WL 3525696 (D.Del.), 2006-1 Trade Cases P 75,106

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3242218 (Trial Pleading) Complaint

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 6

Not Reported in F.Supp.2d, 2005 WL 3525696 (D.Del.), 2006-1 Trade Cases P 75,106

**(Cite as: 2005 WL 3525696 (D.Del.))**


for Declaratory Judgments of Patent Invalidity and
Noninfringement and Violations of the Lanham Act
Relating to 3g Mobile Phone Techonology (Jan. 12,
2005)Original Image of this Document (PDF)

• 1:05cv00016 (Docket) (Jan. 12, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 2004 WL 556577 (D.Conn.), 2004-1 Trade Cases P 74,335

**(Cite as: 2004 WL 556577 (D.Conn.))**

**H**

**Motions, Pleadings and Filings**

United States District Court,
D. Connecticut.
MM GLOBAL SERVICES, INC.; MM Global
Services Pte., Ltd, Mega Vista Solutions
(S) Pte., Ltd., and Mega Visa Marketing Solutions
Ltd.; Plaintiffs,
v.
THE DOW CHEMICAL COMPANY; Union
Carbide Corporation, Union Carbide Asia
Pacific, Inc., Union Carbide Customer Services
Pte., Ltd, and Dow Chemical
Pacific (Singapore) Pte., Ltd., Defendants.
**No. Civ. 3:02CV 1107(AVC.**

March 18, 2004.

Michael S. Elkin, Susan B. McInerney, Alyson L. Redman, Paul A. Winick, Thelen Reid & Priest, Richard S. Taffet, Bingham McCutchen, New York, NY, Robert M. Langer, Wiggin & Dana, Steven Bruce Malech, Wiggin & Dana, Hartford, CT, Stephen B. Harris, Wiggin & Dana-NH, New Haven, CT, Suzanne Ellen Wachsstock, Wiggin & Dana, Stamford, CT, William L. Webber, Morgan, Lewis & Bockius, Washington, DC, for Plaintiffs.

Andrew S. Marovitz, Britt M. Miller, Dana S. Douglas, Mayer Brown Rowe & Maw LLP, Chicago, IL, Christopher J. Kelly, Mayer, Brown, Rowe & Maw, Washington, DC, Craig A. Raabe, Edward J. Heath, Elizabeth A. Fowler, Robinson & Cole, Hartford, CT, Mark P. Edwards, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Defendants.

*RULING ON THE DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S RULING DENYING THE MOTION TO DISMISS THE FEDERAL ANTITRUST CLAIM*

COVELLO, J.

**\*1** This is an action for damages arising out of a business arrangement pursuant to which the plaintiffs purchased chemicals, polymers, and other products from the defendants and resold them to customers located in India. The amended complaint alleges violations of the Sherman Antitrust Act, 15 U.S.C. § 1, breach of contract, and negligent misrepresentation.

The defendants, Dow Chemical Company, Union Carbide Corporation, and Union Carbide Asia Pacific, Inc., now move pursuant to Rule 7(c) of the Local Rules of the District of Connecticut for reconsideration of the court's September 12, 2003 order denying the motion to dismiss the cause of action arising under the Sherman Antitrust Act, 15 U.S.C. § 1. For the reasons hereinafter set forth, the motion for reconsideration is GRANTED. The relief requested, however, is DENIED.

*FACTS*
The background giving rise to the instant action is more fully discussed in the court's September 12, 2004 decision. *See MM Global Services, Inc. et al v. Dow Chemcial Co., et al.,* 283 F.Supp.2d 689 (D.Conn.2003). While familiarity is presumed, the facts are summarized as follows.

In 1984, the defendant, Union Carbide, a New York corporation headquartered in Connecticut, owned and operated a chemical plant in Bhopal, India. In December of that year, lethal gas escaped from the plant and caused the death of 3,800 persons and injuries to an additional 200,000. In February 1989, Union Carbide and its Indian affiliate were ordered to pay a total of $470 million for all civil claims arising from the tragedy.

In the aftermath of this tragedy, Union Carbide ceased selling products directly to customers in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 2

Not Reported in F.Supp.2d, 2004 WL 556577 (D.Conn.), 2004-1 Trade Cases P 74,335

**(Cite as: 2004 WL 556577 (D.Conn.))**

India and, in 1987, appointed the plaintiff, Mega Vista Marketing Solutions Ltd. ("MVMS") as a non-exclusive distributor to maintain Union Carbide's access to the Indian marketplace. MVMS is an Indian corporation, having its principal place of business in Mumbai, India.

Over the next several years, MVMS formed corporate affiliates with the purpose of assisting with product sales in India. The affiliates purchased Union Carbide products in the United States and resold them to end-users in India. The affiliates included the plaintiffs, Mega Global Services, Inc. ("MMGS"), Mega Vista Marketing Solutions, Ltd. ("MVMS"), Mega Global Services, Inc.-- Singapore ("MMGS-S"), and Mega Vista Solutions (S) Pte Ltd ("MVS").

In or around August 1999, Union Carbide announced a plan of merger with the co-defendant herein, Dow Chemical Company ("Dow"). Dow is a corporation organized under the laws of Delaware, with a principal place of business in Midland, Michigan. The amended complaint alleges that with the plan of merger, the need dropped for the re-sale services in India previously performed by MVMS, MVS, MMGS and MMGS-S. Consequently, the amended complaint alleges that Union Carbide and its affiliates ceased acting consistently with their alleged contractual and legal obligations and, in particular, undertook efforts to establish Dow, untainted by the Bhopal tragedy, in place of the plaintiffs as a direct seller of products to end-users in India.

**\*2** On February 6, 2001, Union Carbide merged with a subsidiary of Dow and became a wholly owned subsidiary of Dow. At around this time, Dow also created the defendant, Dow Chemical Pacific (Singapore) Private Ltd. ("Dow Singapore"). Dow created Dow Singapore to effectuate sales of Union Carbide products to the plaintiffs and to further Union Carbide and Dow's relationship with the plaintiffs.

On January 16, 2002, Dow Singapore advised MVS that, effective March 31, 2002, MVS would no longer be a distributor for Union Carbide

products other than wire and cable compounds. MVS refused to continue the relationship with Dow Singapore on those terms.

On June 25, 2003, the plaintiffs commenced this lawsuit against the defendants, Union Carbide and Dow, alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and common law precepts concerning breach of contract and negligent misrepresentation, among other theories. The plaintiffs also sued several Union Carbide/Dow affiliates, including the defendants Union Carbide Asia Pacific, Inc. ("UCAP") (Singapore), Union Carbide Customer Service Pte Ltd ("UCCS") (Singapore), and Dow Chemical Pacific Private Pte Ltd. (Singapore). [FN1]

> FN1. On November 17, 2003, the court dismissed the amended complaint with respect to UCCS and Dow Singapore for want of personal jurisdiction.

In connection with the federal antitrust claim, the plaintiffs alleged that, from 1993 through March 2002, Union Carbide and Dow, directly and through their affiliates, compelled the plaintiffs to agree to engage in a price maintenance conspiracy with respect to the resale of Union Carbide products in India, and refused to accept orders or cancelled accepted orders if the prospective resale prices to end-users in India were below certain levels. According to the amended complaint, Dow and Union Carbide sought to "ensure that prices charged by [the][p]laintiffs to end-users in India for [p]roducts would not cause erosion to prices for the [p]roducts charged by [Union Carbide] and Dow to end-users ... in the United States as well as in other jurisdictions. .," and that,
> [a]s a direct and proximate result of [the][d]efendants fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from the United States was improperly diminished and restrained ...

The defendants thereafter moved to dismiss the antitrust claim, arguing that, because the amended complaint failed to allege antitrust conduct having a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 3

Not Reported in F.Supp.2d, 2004 WL 556577 (D.Conn.), 2004-1 Trade Cases P 74,335

**(Cite as: 2004 WL 556577 (D.Conn.))**

direct, substantial, and reasonably foreseeable effect on the commerce of the United States, the court was without subject matter jurisdiction to hear the claim under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S .C. § 6a(1).

On September 12, 2003, the court denied the motion, concluding that, to the contrary, the amended complaint did in fact allege antitrust conduct having a direct, substantial, and reasonably foreseeable effect on the commerce of the United States and, accordingly, FTAIA § 6a(1) presented no limitation to court's subject matter jurisdiction. *MM Global Services, Inc. et al v. Dow Chemcial Co., et al.,* 283 F.Supp.2d 689, 698 (D.Conn.2003). In reaching this conclusion, the court observed that, because the amended complaint alleged price fixing, that is, a *per se* violation of the Sherman Act, anti-competitive effects would be presumed. *See id; see also id.* at 697 (*quoting Gianna Enterprises v. Miss World Ltd.,* 551 F.Supp. 1348, 1354 (S.D.N.Y.1982) ("*Per se* violations ... create a presumption of anti-competitive effect"). Further, because the amended complaint alleged antitrust conduct directed at both domestic and foreign markets that reduced the competitiveness of a domestic market, the amended complaint sufficiently alleged conduct having a direct, substantial, and reasonably foreseeable effect on the commerce of the United States within the meaning of FTAIA § 6a(1) and, consequently, jurisdiction was authorized as explained by the Second Circuit in *Kruman v. Christie's Int'l PLC,* 284 F.3d 384, 395 (2d Cir.2001).

**\*3** On October 10, 2003, the defendants filed a motion seeking immediate interlocutory appeal of the court's September 12, 2003 ruling. On December 9, 2003, the court denied the motion without prejudice to its refiling after the defendants filed and served, and the court had ruled, on a motion for reconsideration. In the court's December 9, 2003 order, the court ordered the plaintiffs to identify all known antitrust effects on domestic commerce arising from the defendant's conduct that could be considered "substantial and reasonably foreseeable."

*STANDARD*

Reconsideration of a previous ruling is appropriate where there has been an intervening change in controlling law, new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice. *United States v. Sanchez,* 35 F.3d 673, 677 (2d Cir.1994).

*DISCUSSION*

The defendants assert that the court erred in denying their motion to dismiss the Sherman Antitrust claim, arguing that the court's September 12, 2003 ruling misconstrued both FTAIA § 6a(1) and the Second Circuit's decision in *Kruman v. Christie's Int'l PLC,* 284 F.3d 384 (2d Cir.2001), and hence, improperly concluded that federal subject matter jurisdiction existed under § 6a(1), i.e., the first prong of the FTAIA test. In the defendants' view, because the amended complaint alleges price fixing directed at end-user customers located exclusively in India, and there is no averment or evidence to suggest that such conduct had a direct, substantial and reasonably foreseeable effect on the domestic market as required by § 6a(1) , the court is deprived of subject matter jurisdiction over the claim by FTAIA.

In response, the plaintiffs maintain that the court's September 12, 2003 ruling is entirely consistent with applicable authority, and is further supported by the Second Circuit's most recent discussion concerning the requirements of § 6a(1) in *Sniado v. Bank Austria AG,* 352 F.3d 73 (2d Cir.2003). In this regard, the plaintiffs argue that, when adopting a broad view of antitrust conduct as mandated by the Second Circuit in *Sniado,* the relevant conduct for FTAIA purposes is the defendants' resale price conspiracy, formed within the United States by United States companies to fix the plaintiffs' resale prices in India for the purpose of maintaining supra-competitive prices in the United States. Allegations of such conduct that directly target the domestic market for the anti-competitive purpose of maintaining artificially high prices plainly satisfies, in the plaintiffs view, the first prong of the FTAIA test. The plaintiffs maintain that they have shown that such conduct was intended to and did in fact cause significant anti-competitive effects on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 556577 (D.Conn.), 2004-1 Trade Cases P 74,335

**(Cite as: 2004 WL 556577 (D.Conn.))**

commerce in the United States by limiting the plaintiffs ability to compete freely in the United States and by raising prices for products sold to others, including the United States.

Section 1 of the Sherman Act provides in relevant part:

   **\*4** Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1. An agreement between a manufacturer and a distributor to fix prices is *per se* illegal under the Sherman Act. *Monsanto Company v. Spray-Rite Service Corp.,* 465 U.S. 752, 759, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); *see also Dr. Miles Medical Co. v. John D. Park & Sons Co.,* 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911) (vertical price fixing is *per se* illegal). "Per se violations do not require a showing of deleterious impact on competition ... [and] create a presumption of anticompetitive effect." *Gianna Enterprises v. Miss World Ltd.,* 551 F.Supp. 1348, 1354 (S.D.N.Y.1982); *see also United States v. National Assoc. of Real Estate Bds.,* 339 U.S. 485, 489, 70 S.Ct. 711, 94 L.Ed. 1007 (1950). This is so because of their "pernicious effect on competition and lack of any redeeming virtue." *Northern Pacific Railroad Co. v. United States,* 365 U.S. 1, 5, 78 S.Ct. 514, 518 (1958).

The reach of the Sherman Act, however, is limited. *Metallgesellschaft AG v. Sumitomo Corp.,* 325 F.3d 836, 838 (7th Cir.2003). Under an amendment to the Sherman Act, known as the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a, the court does not have jurisdiction to adjudicate antitrust conduct that:

   involv[es] trade or commerce (other than import trade or import commerce) with foreign nations unless:

   (1) such conduct has a direct, substantial, and reasonably foreseeable effect:

   (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or

   (B) on export trade or export commerce With foreign nations, of a person engaged In such trade

or commerce in the United States; and

   (2) such *effect* gives rise to a claim under the provisions of [the Sherman Act], other than this section.

   If [the Sherman Act applies] to such conduct because of the operation of paragraph (1)(B), then [the Sherman Act] shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a (emphasis added). In *Kruman v. Christie's Int'l PLC,* 284 F.3d 384, 395 (2d Cir.2001), the Second Circuit considered the limitations imposed by the FTAIA in a class action that alleged antitrust violations by international auction houses. After noting therein that the defendants had not disputed that the alleged conduct had a direct, substantial, and reasonably foreseeable effect on the commerce of the United States under subsection *one* of the FTAIA, *see Kruman* 284 F.3d at 399 n. 5, the court turned to the issue presented in that appeal, that is, the scope of the term "effect" as used in subsection *two* of FTAIA § 6a. *Id.* at 399. There, the court explained that subsection two provided an additional limitation on the reach of the Sherman Act, and, specifically, that in order for a federal court to have subject matter jurisdiction, there must also be antitrust effect, where:

   **\*5** (2) such effect gives rise to a claim under the provisions of [the Sherman Act]..

*Kruman,* 284 F.3d at 399. The Second Circuit further explained that, consistent with the rule for determining subject matter jurisdiction that existed prior to the 1982 enactment of FTAIA, i.e., the *National Bank of Canada* test, the requisite "effect" for establishing jurisdiction under subsection two is that which stems from antitrust conduct that is directed:

   at both domestic and foreign markets [that] actually reduced the competitiveness of a domestic market ... [or] [otherwise] mak[es] possible anticompetitive conduct that 'gives rise to a claim' under the Sherman Act.

*Kruman,* 284 F.3d at 401 (*citing National Bank of Canada v. Interbrook Card Assoc.,* 666 F.2d 6, 8 (2d Cir.1981)).

This court's September 12, 2003 decision

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5

Not Reported in F.Supp.2d, 2004 WL 556577 (D.Conn.), 2004-1 Trade Cases P 74,335

**(Cite as: 2004 WL 556577 (D.Conn.))**

misinterpreted *Kruman* to mean that federal subject matter jurisdiction may exist where a plaintiff only makes a showing under the *National Bank of Canada* test. *MM Global Services, Inc. et al v. Dow Chemcial Co., et al.,* 283 F.Supp.2d 689, 698 (D.Conn.2003) (*quoting Kruman,* 284 F.3d at 401) ). This was error as "the FTAIA provides another significant limit on the reach of the antitrust laws [not considered in *Kruman* but in issue here], i.e ., "[t]he 'effect' of the conduct must be 'direct, substantial, and reasonably foreseeable." ' *Kruman,* 284 F.3d at 402 (quoting FTAIA, 15 U.S.C. § 6a(1) ). Such effects may not be *presumed* when jurisdiction is contested--even in cases where a *per se* violation of the Sherman Antitrust Act is alleged. If domestic effects could be presumed, then in every case alleging a *per se* violation "United States courts would have jurisdiction [however foreign the conduct] without any showing whatsoever of an effect on United States commerce." *Dee-K Enters. v. Heveafil Sdn. Bhd.,* 299 F.3d 281, 292 (4th Cir.2002).

Without the benefit of presumed effects, the parties present a close contest. At this juncture, however, the court is persuaded that both the amended complaint and evidentiary record support a finding of conduct having a direct, substantial, and reasonably foreseeable effect on domestic trade or commence. The amended complaint alleges that the defendants coerced the plaintiffs into agreeing to fix the resale price of Union Carbide products in India, and that they did so in order to "ensure that prices charged by [the][p]laintiffs to end-users in India for [p]roducts would not cause erosion to prices for the [p]roducts charged by [Union Carbide] and Dow to end-users ... in the United States as well as in other jurisdictions. .," and that,
   [a]s a *direct* and proximate result of [the][d]efendants fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from the *United States* was improperly diminished and restrained ... (emphasis added).
*6 The amended complaint alleges a price fixing conspiracy for product sales in India that was intended to prevent erosion to prices and, in this way, maintain artificially high prices for products

that Union Carbide and Dow sold to end-users in the United States.

Arguably, these allegations amount to little more than activities directed at a foreign market with domestic spillover effects--effects that are not direct and would therefore not constitute a basis for jurisdiction within the meaning of FTAIA. *See Eurim-Pharm GmnH v. Pfizer, Inc.,* 593 F.Supp. 1102, 1106-07 (S.D.N.Y.1984) (spillover effect in the United States in the form of inflated prices for the same product was insufficient to constitute direct, substantial, and reasonably foreseeable effect on the domestic market). However, as Congress contemplated when enacting the FTAIA, even spillover effects that cause artificially inflated prices can rise to direct and substantial over time. *See* H.R.Rep. No. 97-686 at 13 (1982). Moreover, as the Second Circuit has recently stated in *Sniado v. Bank Austria AG,* 352 F.3d 73 (2d Cir.2003), the district courts must adopt a broad view of the proscribed conduct when considering effects under 6a(1). *Id .* at 78. Certainly, it is the conduct at issue that, while directly informing whether jurisdiction would be proper under FTAIA § 6a(2), necessarily informs, though indirectly, the issue of whether the effects of such conduct are direct, substantial, and reasonably foreseeable for jurisdiction under FTAIA § 6a(1). Focusing on the conduct alleged here, that is, conduct involving quite possibly the largest industrial chemical manufacturers in the world--it is not a stretch in logic, and quite foreseeable, to conclude that a conspiracy to fix prices in the Indian market might reasonably cause direct and substantial effects on the prices charged for the same products in the United States. Certainly, the evidentiary records amply supports the conclusion that Union Carbide was at all times concerned with this very probability, in that the record reflects various e-mails and correspondence in which Union Carbide: (1) refused orders placed by the plaintiffs because of domestic market pricing concerns; (2) directed the plaintiffs to "keep moving prices UP" in order to be on par with U.S. and Canadian prices; (3) examined competitive pricing during world strategy meetings: and (4) considered the firmness of domestic prices before deciding to meet competitive pricing in the Indian market.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                  Page 6

Not Reported in F.Supp.2d, 2004 WL 556577 (D.Conn.), 2004-1 Trade Cases P 74,335

**(Cite as: 2004 WL 556577 (D.Conn.))**

(Decl. of R. Taffet). Consequently, at this juncture, the court is of the opinion that the plaintiffs have, at the very least, presented a compelling case going far beyond speculation of direct, substantial, and foreseeable effects on domestic commerce. In the absence of additional discovery, it would be inappropriate to reach any conclusion to the contrary. The relief requested in the motion for reconsideration must therefore be denied.

*CONCLUSION*

**\*7** For the foregoing reasons, the motion for reconsideration is GRANTED. The relief requested is DENIED (document no. 147). While the court is grateful to the defendants for correcting an error of law, the court's September 12, 2003 order denying the motion to dismiss stands undisturbed.

Not Reported in F.Supp.2d, 2004 WL 556577 (D.Conn.), 2004-1 Trade Cases P 74,335

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 389461 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of their Motion for Summary Judgment (Jan. 23, 2006)Original Image of this Document (PDF)

• 2006 WL 389462 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion Pursuant to Fed. R. Civ. P. 37(a)(2)(B) to Compel Production of Plaintiffs' Financial Statements (Docket Entry 383) (Jan. 23, 2006)Original Image of this Document (PDF)

• 2006 WL 389459 (Trial Pleading) Answer, Affirmative Defenses and Counterclaims of Defendant Union Carbide Customer Services Pte. Ltd. to the First Amended Complaint (Jan. 11, 2006)Original Image of this Document (PDF)

• 2006 WL 389460 (Trial Pleading) Defendant Dow Chemical Pacific (Singapore) Pte. Ltd.'s Answer and Additional Defenses to Plaintiffs First Amended Complaint (Jan. 11, 2006)Original Image of this Document (PDF)

• 2006 WL 389458 (Trial Motion, Memorandum

and Affidavit) Plaintiffs' Opposition to Defendants' Amended Motion to Compel Production of Plaintiffs' Financial Statements (Jan. 6, 2006)Original Image of this Document with Appendix (PDF)

• 2005 WL 3627430 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Cross-Motion to Compel Return of Privileged Documents and in Opposition to Plaintiffs' Motion to Compel Production of Improperly Withheld and Redacted Documents (Nov. 1, 2005)Original Image of this Document (PDF)

• 2005 WL 3627431 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Cross-Motion to Compel Return of Privileged Documents and in Opposition to Plaintiffs' Motion to Compel Production of Improperly Withheld and Redacted Documents (Nov. 1, 2005)Original Image of this Document (PDF)

• 2005 WL 3627432 (Trial Motion, Memorandum and Affidavit) Trial Motion and Memorandum and Affidavit (Nov. 1, 2005)Original Image of this Document (PDF)

• 2005 WL 3627433 (Trial Motion, Memorandum and Affidavit) Defendant the Dow Chemical Company's Memorandum of Law in Response to Plaintiffs' Motion to Compel and in Support of its Motion for A Protective Order Precluding the Deposition of Andrew N. Liveris (Nov. 1, 2005)Original Image of this Document (PDF)

• 2005 WL 3627434 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiffs' Motion to Compel Production of Witnesses for Deposition Pursuant to Rule 30 (Nov. 1, 2005)Original Image of this Document (PDF)

• 2005 WL 3627429 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion for Substitution as Plaintiff (Oct. 27, 2005)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 556577 (D.Conn.), 2004-1 Trade Cases P 74,335

(Cite as: 2004 WL 556577 (D.Conn.))

• 2005 WL 3627428 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of their Motion to Compel Production of Witnesses for Deposition Pursuant to Rule 30 (Oct. 13, 2005)Original Image of this Document (PDF)

• 2005 WL 3627427 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of their Motion for Protective Order against Producing Anil Mittal for Deposition (Oct. 12, 2005)Original Image of this Document (PDF)

• 2005 WL 3627426 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Support of their Motion to Compel Production of Improperly Withheld and Redacted Documents (Oct. 11, 2005)Original Image of this Document (PDF)

• 2003 WL 24270170 (Trial Motion, Memorandum and Affidavit) Defendants the Dow Chemical Company and Union Carbide Corporation's Memorandum in Support of their Motion to Modify the Court's Ruling of April 17, 2003 Denying Defendants' Forum Non Conveniens Motion (May 1, 2003)Original Image of this Document (PDF)

• 3:02cv01107 (Docket) (Jun. 25, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.