

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ANDERSON CONTRACTING, INC., on behalf of itself and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>BAYER AG; BAYER POLYMERS, LLC n/k/a BAYER MATERIAL SCIENCE, LLC; BAYER CORPORATION; CROMPTON CORPORATION; UNIROYAL CHEMICAL COMPANY, INC. n/k/a CROMPTON MANUFACTURING, INC.; DOW CHEMICAL COMPANY; EI DUPONT DE NEMOURS & COMPANY; DUPONT DOW ELASTOMERS, LLC; DSM COPOLYMERS, INC.; DSM ELASTOMERS EUROPE B.V.; and EXXON MOBIL CHEMICAL COMPANY d/b/a EXXON MOBIL, INC.,<br><br>      Defendants. | Case No. CL 95959<br><br><br><br>RULING AND ORDER ON CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION PETITION AND DEFENDANT EXXONMOBIL CHEMICAL COMPANY'S SUPPLEMENTAL MOTION TO DISMISS PLAINTIFF'S CLASS ACTION PETITION |

A contested hearing was held by this Court on February 17, 2005. All parties appeared through their respective counsel. Following oral arguments, and upon review of the court file, parties' briefs, and applicable law, this Court enters the following ruling.

### BACKGROUND FACTS AND PROCEEDINGS

Plaintiff Anderson Contracting, Inc. is an Iowa corporation, engaged in contract roofing work in the State of Iowa. Defendants are numerous entities incorporated in various states and countries. During the relevant time period, Defendants manufactured, marketed and/or distributed a synthetic rubber known as ethylene propylene diene monomer ("EPDM"), throughout the United States. EPDM is used extensively in the automobile and roofing

industries. Plaintiff was an indirect purchaser of EPDM, during the period of January 1, 1994 to December 2002, when Plaintiff purchased roofing materials containing EPDM.

In its Second Amended and Substituted Class Action Petition[1], Plaintiff alleges that Defendants engaged in a conspiracy to fix the price of EPDM sold in the United States and elsewhere. Specifically, Plaintiff asserts that Defendants regularly increased prices for EPDM in a coordinated manner close in time and amounts. Plaintiff argues that Defendants' actions violated chapter 553 of the Iowa Code, the Iowa Competition Law. Plaintiff alleges that Defendants and co-conspirators effectuated their conspiracy by participating in meetings and conversations to discuss the prices of EPDM and EPDM customers and/or markets, agreeing during those meetings and conversations to charge prices at certain levels and otherwise increase or maintain prices of EPDM sold in the United States and elsewhere, and allocating markets and customers for the sale of EPDM pursuant to the agreements. As a result of this alleged conspiracy, Plaintiff contends it paid substantially higher prices for products containing EPDM than it would have paid absent the alleged restraint and conspiracy. Plaintiff filed a request for class action certification, requesting to represent other individuals presently unknown to Plaintiff who have been similarly harmed by Defendants' alleged price fixing by purchasing products containing EPDM.

On November 5, 2004, certain Defendants[2] filed a Motion to Dismiss Plaintiff's Petition, and supporting brief. Also on November 5, 2004, Defendant ExxonMobil Chemical Company (hereafter "ExxonMobil") filed a Supplemental Motion to Dismiss Plaintiff's Petition, and a

---

[1] On May 2, 2005, this Court granted Plaintiff's Motion to File Second Amended and Substituted Petition. This Court will rely on the allegations made in the Second Amended and Substituted Petition for purposes of ruling on Defendants' Motion to Dismiss and ExxonMobil Chemical Company's Supplemental Motion to Dismiss.

[2] According to Defendants' brief, the Defendants joining in the Motion to Dismiss are: Bayer Polymers, LLC (n/k/a Bayer MaterialScience LLC); Bayer Corporation; Crompton Corporation; Uniroyal Chemical Company, Inc.; The Dow Chemical Company; E.I. DuPont de Nemours & Company; DuPont Dow Elastomers LLC; DSM Copolymer, Inc.; and ExxonMobil Chemical Company.

supporting brief.  Plaintiff filed its Consolidated Resistance to Motions to Dismiss and

supporting brief on January 31, 2005.  On February 15, 2005, certain Defendants filed a Reply

Brief in support of their Motion to Dismiss and Defendant ExxonMobil filed its Reply Brief in

support of its Supplemental Motion to Dismiss.

### STATEMENT OF THE LAW

Defendants filed their pre-answer Motions to Dismiss pursuant to Iowa Rule of Civil

Procedure 1.421(1)(f), for Plaintiff's alleged failure to state a claim upon which relief may be

granted.  In a motion to dismiss, "[t]he petition is assessed in the light most favorable to the

plaintiffs, and all doubts and ambiguities are resolved in plaintiff's favor." *Robbins v. Heritage*

*Acres*, 578 N.W.2d 262, 264 (Iowa Ct. App. 1998) (citation omitted).  "A motion to dismiss must

stand or fall on the exclusive contents of the petition and cannot rely on acts not alleged in the

petition or facts presented at an evidentiary hearing." *Id.* (citation omitted).  At issue "is

[p]laintiffs' right of access to the district court, not the merit of [their] allegations." *Magers-*

*Fionof v. State*, 555 N.W.2d 672, 674 (Iowa 1996).

"Generally, a motion to dismiss may be granted only if the petition shows on its face no

right of recovery under any state of facts." *Gray v. Kinseth Corp.*, 636 N.W.2d 100, 102 (Iowa

2001) (citation omitted).  *See also Sanford v. Manternach*, 601 N.W.2d 360, 363 (Iowa 1999);

*Haupt v. Miller*, 514 N.W.2d 905, 911 (Iowa 1994) (to sustain a motion it must appear to a

certainty that plaintiff is not entitled to relief under any state of facts proved in support of claim

asserted); *Renander v. Inc., Ltd.*, 500 N.W.2d 39, 40-41 (Iowa 1993) (to deny a motion there

must be facts conceivable under which plaintiff might show a right of recovery).  "In a motion to

dismiss the movant 'admits the well-pleaded facts in the pleading [which the movant might

dispute,] for the purpose of testing their legal sufficiency.'" *Haupt*, 514 N.W.2d at 907 (quoting

*Jones v. Madison County*, 492 N.W.2d 690, 693-94 (Iowa 1992)). "Rulings on motions to dismiss do not depend on the district court's discretion...Such rulings rest on legal grounds." *DMH by Hefel v. Thompson*, 577 N.W.2d 643, 644 (Iowa 1998) (citing *Weber v. Madison*, 251 N.W.2d 523, 525 (Iowa 1977)). *See also Venard v. Winter*, 524 N.W.2d 163, 165 (Iowa 1994); *Berger v. General United Group, Inc.*, 268 N.W.2d 630, 633 (Iowa 1978).

Motions to dismiss are not ordinarily favored by Iowa's appellate courts. *See Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 181 (Iowa 1991) (recognizing that "the temptation is strong for a defendant to strike a vulnerable petition at the earliest opportunity" and noting that "[t]wo appeals often result where one would have sufficed had the defense moved by way of summary judgment, or even by way of defense at trial.").

## ANALYSIS AND CONCLUSIONS OF LAW

I.  **Whether Plaintiff, as an indirect purchaser of EPDM, has antitrust standing under the Iowa Competition Law**

A.  **Federal and State Antitrust Statutes and Cases**

The Iowa Competition Law, chapter 553 of the Iowa Code, prohibits restraint on trade as follows: "A contract, combination, or conspiracy between two or more persons shall not restrain or monopolize trade or commerce in the relevant market." IOWA CODE § 553.4 (2005). Chapter 553 authorizes a broad category of persons to maintain suit in Iowa state courts for damages resulting from anti-competitive conduct. Section 553.12 gives standing to "a person who is injured or threatened with injury by conduct prohibited under this chapter...to...[r]ecover actual damages resulting from conduct prohibited under this chapter." IOWA CODE § 553.12(2) (2005). The issue before this Court is whether Plaintiff, as an indirect purchaser of roofing materials containing EPDM, has antitrust standing to recover damages under the Iowa Competition Law. Defendants maintain the Plaintiff's alleged injuries are simply too remote to allow Plaintiff to

recover under the state antitrust statute; thus, Defendants posit that Plaintiff has failed to state a claim upon which relief may be granted, and ask this Court to dismiss Plaintiff's action.

Plaintiff's Second Amended Petition specifically states that Plaintiff's cause of action asserts no federal question or statute and, therefore, does not arise under federal law. Plaintiff's cause of action rests solely upon Iowa law. In construing the Iowa Competition Law, however, this Court may look to federal courts' interpretations of the federal antitrust laws. *See Neyens v. Roth*, 326 N.W.2d 294, 297 (stating federal cases construing the federal antitrust laws are of "some help" in construing chapter 553). Additionally, section 553.2 requires the Iowa Competition Law to be harmonized with the federal antitrust statutes.

> This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter. This construction shall not be made in such a way as to constitute a delegation of state authority to the federal government, but shall be made to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices.

IOWA CODE § 553.2 (2005).

The case law on antitrust standing has evolved, and given the vast number of cases analyzing such standing, which the parties explore in detail in their briefs, this Court need only consider the seminal cases on antitrust standing, beginning with the United States Supreme Court decision in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968). In *Hanover Shoe*, the plaintiff shoe manufacturer alleged that the defendant manufacturer and distributor of shoe-making machinery unlawfully inflated the price of the machinery, in violation of the federal antitrust laws. *Id.* at 483. The defendant argued that the plaintiff, a direct purchaser, did not suffer a legally cognizable injury because the plaintiff had passed on the overcharge to indirect purchasers. *Id.* at 487-88. The United States Supreme Court held that the defendant could not

use the "pass-on" theory[3] as a defense. *Id.* at 494. "As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows. At whatever price the buyer sells, the price he pays the seller remains illegally high, and his profits would be greater were his costs lower." *Id.* at 489. The Court further found that if it affirmed the use of the pass-on defense, antitrust violators would rarely face consequences for their actions.

> [I]f buyers are subjected to the passing-on defense, those who buy from them would also have to meet the challenge that they passed on the higher price to their customers. These ultimate consumers, in today's case the buyers of single pairs of shoes, would have only a tiny stake in a lawsuit and little interest in attempting a class action. In consequence, those who violate the antitrust laws by price fixing or monopolizing would retain the fruits of their illegality because no one was available who would bring suit against them. [Antitrust] actions, the importance of which the Court has many times emphasized, would be substantially reduced in effectiveness.

*Hanover Shoe*, 392 U.S. at 494.

Following *Hanover Shoe*, the United States Supreme Court revisited antitrust issues in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), in which the State of Illinois brought suit against concrete block manufacturers for allegedly engaging in a price-fixing conspiracy. The Court found that the State of Illinois was an indirect purchaser because it did not buy the concrete blocks directly from the manufacturers. *Id.* at 726. The Court discussed the impact of *Hanover Shoe* precluding the defensive use of the pass-on theory. *Id.* at 724-26. The Court then held that the offensive use of the pass-on theory was also precluded for the same reasons the *Hanover Shoe* Court barred its defensive use. *Id.* at 730-33. The Court also concluded that a direct purchaser, and not others in the chain of manufacture or distribution, was the "injured

---

[3] "The term 'pass on' describes 'the process by which a middleman in the chain of distribution who has been charged by a manufacturer or by a producer adjusts his prices upward so as to pass on his increased costs to his own customers.'" *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 443, n. 1 (Iowa 2002) (quoting Annot., 55 A.L.R. Fed. 919, 922, n. 3 (1981)).

party" within the meaning of the federal antitrust statute.[4]  *Id.* at 729.  The Court was concerned that lawsuits involving both direct and indirect purchasers might create multiple liability risks for defendants, and that such actions would be overly complicated.  *Id.* at 732.  Thus, the Court held that federal antitrust law bars claims by indirect purchasers for overcharges.  *Id.* at 727-28.  The bright-line rule from *Illinois Brick* has become known as the "indirect purchaser rule."  *See Comes v. Microsoft Corp.*, 646 N.W.2d 440, 444 (Iowa 2002).

The United States Supreme Court again addressed antitrust issues in *Associated General Contractors of Ca., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 520 (1983), wherein the plaintiff unions alleged that a multiemployer association and its members coerced certain third parties to enter into business relationships with nonunion firms, in violation of the antitrust laws.  The issue before the Court was whether the complaint sufficiently alleged that the unions had been injured by reason of anything forbidden under the antitrust laws.  *Id.*  Upon conducting a multi-factor analysis, the Court found that the plaintiff union was not a person injured by reason of a violation of the antitrust laws within the meaning of the federal statute.  *Id.* at 545-46.  Thus, the union did not have standing to bring its antitrust claims, and the district court was correct in dismissing the plaintiff's action for failure to state a claim.  *Id.*

Following the *Associated General Contractors* decision, the United States Supreme Court issued another antitrust decision in *California, et al. v. ARC America Corp.*, 490 U.S. 93 (1989).  In *ARC America*, several states brought class actions against various cement producers in federal court, alleging a nationwide conspiracy to fix cement prices, and seeking damages under both federal antitrust laws and state antitrust laws.  *Id.* at 96.  The issue before the Court

---

[4] The applicable federal statute provides, in part: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee." 15 U.S.C. § 15.  This statute is referred to as section 4 of the Clayton Act.

was whether the *Illinois Brick* rule limiting recoveries under the federal act also prevented

indirect purchasers from recovering damages flowing from violations of state law. *Id.* at 100.

> As construed in *Illinois Brick*, § 4 of the Clayton Act authorizes only direct purchasers to
> recover monopoly overcharges under federal law. We construed § 4 as not authorizing
> indirect purchasers to recover under federal law because that would be contrary to the
> purposes of Congress. But nothing in *Illinois Brick* suggests that it would be contrary to
> congressional purposes for States to allow indirect purchasers to recover under their own
> antitrust laws.

*Id.* at 103. The *ARC America* Court recognized that the area of monopolies and unfair business

practices is traditionally regulated by the States. *Id.* at 101. "When viewed properly, *Illinois*

*Brick* was a decision construing the federal antitrust laws, not a decision defining the

interrelationship between the federal and state antitrust laws. The congressional purposes on

which *Illinois Brick* was based provide no support for a finding that state indirect purchaser

statutes are preempted by federal law." *ARC America*, 490 U.S. at 105-06. Thus, the *ARC*

*America* Court held that the States had a right to enact and enforce laws permitting indirect

purchasers to recover for antitrust violations.

The *ARC America* decision brings this Court to the Iowa Supreme Court's analysis of

indirect purchaser standing in *Comes v. Microsoft Corporation*, 646 N.W.2d 440 (Iowa 2002)

(hereafter "*Comes I*"). In *Comes I*, a group of computer and software purchasers, all of whom

were indirect purchasers, brought a class action antitrust suit against a computer operating

system supplier alleging a violation of the Iowa Competition Law. *Id.* at 441. Joe Comes, a

resident of Polk County, Iowa, and Comes Vending, Inc., an Iowa corporation, purchased a

Gateway Solo Computer directly from Gateway, which came pre-installed with the Windows 98

operating system, manufactured by Microsoft. *Id.* In order to use the Windows 98 operating

system, Comes and Comes Vending, Inc. became end-user licensees of Microsoft. *Id.* at 441-

442. Comes and Comes Vending, Inc. represented a group of Iowa end-user licensees of

Windows 98, and filed suit against Microsoft, alleging Microsoft maintained or used a monopoly in conjunction with its Windows 98 operating system for the purpose of excluding competition or controlling, fixing, or maintaining prices in violation of chapter 553. *Id.* at 442.

Microsoft filed a motion to dismiss, arguing that chapter 553 must be interpreted consistently with federal law, and under federal law, indirect purchasers do not have standing to recover damages for any alleged antitrust violation. *Comes I*, 646 N.W.2d at 442. The district court granted Microsoft's motion, holding that the statutory directive to harmonize federal and state antitrust laws led to the conclusion that the plaintiffs did not have standing. *Id.* On appeal, the Iowa Supreme Court reversed the district court's decision, finding that the plaintiffs, as indirect purchasers, did have antitrust standing. *Id.* at 451.

In reaching its conclusions, the Iowa Supreme Court considered the relevant United States Supreme Court decisions, including *Hanover Shoe*, *Illinois Brick*, and *ARC America*. *Id.* at 443-45. The court stated that the issue before it was whether it "should interpret Iowa antitrust law in the same way the United States Supreme Court has interpreted federal antitrust law." *Id.* The court first conducted a statutory interpretation analysis to arrive at the conclusion that nothing in chapter 553 indicates that only a purchaser who has been directly injured may seek redress for antitrust violations. *Id.* at 445. "Given the clear, broad language of the state antitrust law, we conclude the Iowa Competition Law creates a cause of action for *all* consumers, regardless of one's technical status as a direct or indirect purchaser." *Id.* (emphasis supplied).

The court then examined the harmonization provision in section 553.2, holding that the statute does not require Iowa courts to interpret the Iowa Competition Law the same way the federal courts have interpreted federal law. *Id.* at 446.

> [O]ur legislature clearly announced the purpose of the harmonization statute by stating it is designed to achieve uniform application of the state and federal laws prohibiting

9

monopolistic practices. The purpose behind both state and federal antitrust law is to apply a uniform standard of conduct so that businesses will know what is acceptable conduct and what is not acceptable conduct. To achieve this uniformity or predictability, we are not required to define who may sue in our state courts in the same way federal courts have defined who may maintain an action in federal court. Rather, our guiding principle in interpreting the Iowa Competition Law is to do so in such way as to prohibit "restraints of economic activity and monopolistic conduct." Harmonizing our construction and interpretation of state law as to what conduct is governed by the law satisfies the harmonization provision.

*Comes I*, 646 N.W.2d at 446 (internal citations omitted). Microsoft argued that the harmonization provision requires Iowa courts to prohibit suits by indirect purchasers because federal law prohibits such suits. *Id.* at 447. The court responded that such a result would mean the real victims of price-fixing cannot recover, which would defeat the purpose of the Iowa Competition Law. *Id.* "Consumers in this state are best protected by permitting all injured purchasers to bring suit against those who violate our antitrust laws." *Id.*

The court also noted that the Iowa Competition Law was enacted before *Illinois Brick*, and indicated that the federal case law in place before *Illinois Brick* was instructive because prior to *Illinois Brick* most federal courts construed section 4 of the Clayton Act to allow suits by indirect purchasers. *Comes I*, 646 N.W.2d at 447. "[W]e find the status of federal law before *Illinois Brick* supports our conclusion that the Iowa legislature intended indirect purchasers to have standing under the Iowa Competition Law." *Id.* at 448. The court concluded that Iowa antitrust law is not bound by the federal antitrust law announced in *Illinois Brick*. *Id.* at 449. The court also noted that *Illinois Brick* was a decision construing only federal antitrust law, and did not address the connection between federal and state antitrust laws. *Id.* at 446.

Even though the Iowa Supreme Court held it was not bound by *Illinois Brick*, the court addressed the concerns raised by the *Illinois Brick* Court to determine whether those issues were applicable in *Comes I*. Specifically, the court examined *Illinois Brick*'s concern for complexity

10

of litigation and the possibility of multiple liability if indirect purchasers were allowed to pursue antitrust claims. *Comes I*, 646 N.W.2d at 449.    Multiple liability focuses on the fear that both direct and indirect purchasers would each recover the full amount of the overcharge, which would subject the antitrust violator to greater liability than allowed under the statute. *Id.* The Iowa Supreme Court concluded that multiple liability was a remote possibility because the district courts are capable of ensuring that antitrust defendants are not forced to pay more damages than the amounts to which injured parties are entitled. *Id.* at 449-50. "Even assuming such danger of multiple liability exists, there is no federal policy against states imposing liability in addition to that imposed under federal law." *Id.* at 450. Therefore, the court found it was in the best interests of Iowa citizens to allow indirect purchaser suits despite the remote possibility of multiple liability. *Id.*

Another issue addressed in *Illinois Brick* was whether direct purchasers have a greater incentive to bring suit to enforce antitrust laws, or whether direct purchasers would not enforce the antitrust laws for fear of retaliation by their suppliers. *Comes I*, 646 N.W.2d at 450.

> The *Illinois Brick* majority conceded the ultimate effect of allowing only direct purchaser suits is that the person "actually injured" – the indirect purchaser who paid the overcharge – will have no redress. The true incentive to enforce antitrust law lies with the real victims, like those of the Class, who may lack a direct business relationship with the antitrust violator. Therefore, to facilitate enforcement of the policies behind the Iowa Competition Law, indirect purchasers, the real victims, must be authorized to bring a cause of action in state court. In allowing indirect purchaser suits in Iowa, we do nothing more than recognize the concern articulated by the *Illinois Brick* Court and fashion a remedy for the ultimate victims of antitrust violations.

*Comes I*, 646 N.W.2d at 450 (internal citations omitted).

The Iowa Supreme Court also addressed the *Illinois Brick* Court's concern that allowing indirect purchasers to sue would result in highly complex litigation. *Comes I*, 646 N.W.2d at 450.    Specifically, the *Illinois Brick* Court was concerned with how damages would be

11

apportioned among a number of parties and feared that litigation would grow more complicated because the determination of proportionate damages would be difficult. *Id.* "Complexity is not a foreign concept in the world of antitrust. These cases typically involve highly intricate litigation." *Comes I*, 646 N.W.2d at 451. "We conclude the possibility of complex litigation is an insufficient reason for us to find indirect purchasers must be barred from bringing a state cause of action for antitrust violations." *Id.*

This Court notes that *Comes I* has developed procedurally; nonetheless, its development has not affected the precedential nature of *Comes I*, allowing indirect purchasers to maintain antitrust claims in state courts under the Iowa Competition Law. In *Comes v. Microsoft Corp.*, Polk Co. Case No. CL 82311 (Iowa Dist. Ct. Sept. 16, 2003) (hereafter "*Comes II*"), the Honorable Artis Reis granted the plaintiffs' motion for class certification. Most recently, the Iowa Supreme Court ruled that the district court did not abuse its discretion in granting class certification to the plaintiffs in *Comes II*. *Comes v. Microsoft Corp.*, ___ N.W.2d ___, 2005 WL 1124767 (Iowa May 13, 2005) (hereafter "*Comes III*"). The Iowa Supreme Court found that the plaintiffs had established the requirements for class certification, and the district court appropriately certified the two plaintiff classes. *Id.*

**B.    Analysis of Defendants' Argument under Federal and State Antitrust Law**

In support of their Motion to Dismiss, Defendants rely heavily on *Associated General Contractors*, which found that an analysis of antitrust standing requires the Court "to evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Associated General Contractors*, 459 U.S. at 535. Defendants delve into an extensive analysis of Plaintiff's claim under the multi-factor test, which includes the following elements: (1) a causal connection between the alleged antitrust violation and the alleged harm to the

plaintiff, and whether the defendant intended to injure the plaintiff; (2) whether the plaintiff's injury is of a type that Congress sought to redress with the antitrust law; (3) the directness or indirectness of the asserted injury; (4) the speculative nature of the claimed damages; (5) the existence of more direct victims of the alleged violation; and (6) the risk of duplicative recoveries and/or complex damage apportionment. *Id.* at 537-44.

In sum, Defendants maintain that Plaintiff's alleged injuries are too remote from any alleged wrongdoing by Defendants to allow Plaintiff to recover damages. Defendants contend that the causal chain connecting Plaintiff's alleged harm to Defendants' alleged price fixing of the price of EPDM is too attenuated to support antitrust standing. Defendants manufacture EPDM, which they then sell to manufacturers who incorporate EPDM, as one of many ingredients, into numerous different end-use products. Plaintiff then purchased those products containing EPDM from the manufacturers. Defendants maintain that Plaintiff is not the true end-user of the product because Plaintiff uses the roofing material containing EPDM in its construction projects, making homeowners the actual end-users.

Defendants also contend that Plaintiff's claimed damages are too speculative because EPDM is only one ingredient in the derivative products purchased by Plaintiff, and many factors other than the cost of EPDM influence the price Plaintiff paid for the products. Additionally, Defendants maintain that other more appropriate plaintiffs, specifically direct purchasers, are already pursuing antitrust claims based on alleged price-fixing related to EPDM in the United States District Court for the District of Connecticut (known as the "MDL action"). According to Defendants, because of the MDL action, the potential risk for duplicative recoveries exists if Plaintiff is allowed to pursue its claims. Defendants also argue it would be unmanageable to

apportion damages wholly because of the wide array of products that incorporate varying amounts of EPDM.

Defendants' reliance on *Associated General Contractors* is misplaced, and the facts are distinguishable from the facts of the present case. In *Associated General Contractors*, the union sued the multiemployer association based on an allegation that the association and its members violated the antitrust laws by coercing certain third parties to enter into business relationships with nonunion firms. 459 U.S. at 520. The union alleged that such activity affected the trade of certain unionized firms and restrained the business activities of the unions. *Id.* at 520-21. *Associated General Contractors* is distinguishable from the case at bar because it involved no product, no purchase, and consequently, no price-fixing. Rather, *Associated General Contractors* dealt with competitors, not consumers, which were potentially injured from alleged antitrust activity. The United States Supreme Court simply held that the plaintiff was not a person injured within the meaning of section 4 of the Clayton Act, and failed to state a claim due to lack of standing. *Id.* at 545-46. Thus, this Court finds that *Associated General Contractors* is not as applicable to the present case as Defendants urge.

This Court believes *Comes I*, holding indirect purchasers may pursue their antitrust claims under the Iowa Competition Law, is highly relevant to the present case. Plaintiff, an indirect purchaser, is attempting to pursue its antitrust claims under the Iowa Competition Law. *Comes I* leads this Court to no other conclusion than that Plaintiff has standing to pursue its state antitrust claims. Defendants attempt to distinguish *Comes I* from the facts of the present case. The distinguishing factors, however, are not dispositive, and do not lead to the conclusion that Defendants' Motion to Dismiss should be granted.

In *Comes I*, the plaintiffs were end-users of the software allegedly affected by anti-competitive conduct, and the software reached the plaintiffs without change when it left the defendant manufacturer.  Defendants maintain that Plaintiff is not an end-user of products containing EPDM, but is, at best, an indirect purchaser of products containing EPDM as one of several ingredients.  Defendants also argue that because Plaintiff is not the end-user, Plaintiff could pass through any overcharge to the true end-users.  Defendants also maintain that Plaintiff did not purchase EPDM, but rather purchased products containing EPDM, as one of several ingredients; therefore, the products did not arrive in Plaintiff's possession unchanged from when it left Defendants' control.  Thus, Defendants argue that Plaintiff does not qualify for indirect purchaser standing under *Comes I*.

This Court disagrees with Defendants' argument.  The amount of EPDM in the products purchased by Plaintiff is not at issue, nor is the fact that Plaintiff did not purchase EPDM itself at issue.  Viewing the facts in the light most favorable to Plaintiff for purposes of the pending motion to dismiss, if Defendants conspired to fix the prices of EPDM, such price-fixing would undoubtedly have an effect on the price of the products purchased by Plaintiff.  Accordingly, this Court rejects Defendants' "remoteness" argument because the occurrence of any price-fixing by Defendants would likely impact Plaintiff's purchase of products containing EPDM.  The cost of the whole bears some relation to the cost of the ingredients or parts.  The fact that EPDM was merely one of several ingredients in the products Plaintiff purchased does not lead to the conclusion that Plaintiff is not an indirect purchaser of EPDM.  As stated in *Comes III*, an indirect purchaser is a party to whom Defendants did not directly sell their products, but "who ultimately obtained the products through the stream of commerce." 2005 WL 1124767. Plaintiff is clearly an indirect purchaser because it obtained the products containing EPDM through the

stream of commerce. Defendants' attempt to argue that Plaintiff will pass on any alleged overcharge to the actual end-users is also rejected because, under the holding of *Hanover Shoe*, Defendants are precluded from using the pass-on theory as a defense. 392 U.S. at 494.

Defendants attempt to raise another distinction between *Comes I* and the present case. In *Comes I*, direct purchasers of the software at issue had not filed suit to remedy the defendants' alleged misconduct, while in the present case direct purchasers of EPDM have filed suit against Defendants under the federal antitrust laws in the MDL action. This Court again disagrees with Defendants' contention. The fact that direct purchasers are currently pursuing their federal antitrust claims against Defendants in the MDL action does not prevent Plaintiff from pursuing its claims against Defendants under the Iowa Competition Law. The *Comes I* court specifically noted the absence of any federal policy against states imposing liability in addition to that imposed under federal law. 646 N.W.2d at 450. Despite the remote possibility of multiple liability, it is in the best interests of the citizens of Iowa to allow indirect purchasers suits. *Id.*

Defendants also fear that allowing Plaintiff to pursue its antitrust claims would result in an unmanageable case because of the apportionment of damages. Due to the number of products containing EPDM and the possibility of the number of potential class members who purchased such products, Defendants argue that this case presents increased difficulties in determining and apportioning damages. As the *Comes I* court recognized, antitrust cases are commonly complex, but the potential for complex litigation is not a sufficient reason to find that indirect purchasers are barred from bringing suit under the Iowa Competition Law. *Comes I*, 646 N.W.2d at 451. This Court believes that all of Defendants' concerns were addressed in *Comes I* and are insufficient reasons for granting Defendants' motion to dismiss. Accordingly, this Court finds

under the *Comes I* holding, Plaintiff is an indirect purchaser who has standing to pursue its antitrust claims under the Iowa Competition Law against Defendants.

The parties cite to and rely upon numerous other federal and state decisions analyzing antitrust issues. This Court need not explore all of those cases, but believes it should address some of the cases upon which Defendants rely in order to distinguish them from the present case. In support of their Motion to Dismiss, Defendants rely on the decision of the Honorable Glenn E. Pille in *Next Generation Realty, Inc. v. Iowa Realty Co., Inc.*, Polk Co. No. CE 38825 (Iowa Dist. Ct. Feb. 18, 2003), in which the district court dismissed claims brought under Iowa Code sections 553.4 and 553.5 because the plaintiff did not suffer a cognizable antitrust injury. The district court's order was affirmed by the Iowa Supreme Court in *Next Generation Realty, Inc. v. Iowa Realty Co., Inc.*, 686 N.W.2d 206 (Iowa 2004). *Next Generation*, however, is distinguishable from the present case because it had nothing to do with indirect purchasers or consumers in general, and this Court believes Defendants' reliance on *Next Generation* is misplaced. *Next Generation* involved two competing realty companies. The plaintiff brought a claim against the defendants, claiming the defendants conspired to take control of an association that maintained a multiple listing service in order to exclude certain plaintiffs from the association and the multiple listing service. The Iowa Supreme Court held that the antitrust laws were not intended to deal with claims inflicted on individual parties and chapter 553 does not provide a remedy for a private wrong. 686 N.W.2d at 208-09. "Antitrust is in place to protect the market, not any individual merchant doing business there." *Id.* The court concluded that the public was not affected by the alleged antitrust activities. *Id.* In essence, the court believed the Iowa Competition Law was intended to protect consumers, not competitors. In the present case,

Plaintiff intends to represent a class of consumers who purchased products containing EPDM. Those consumers should be protected by the Iowa Competition Law.

In their Reply Brief, Defendants also draw this Court's attention to a recent unpublished decision of a sister district court in *Southard v. Visa USA, Inc.*, 2004 WL 3030028 (Iowa Dist. Ct. Nov. 17, 2004). In *Southard*, the district court held that consumers, who purchased from merchants that allegedly paid excessive fees to defendants that tied the use of credit and debit cards, were too remote to sue those defendants even though the consumers allegedly paid too much when retailers pass on the overcharge in fees. The *Southard* court relied on the *Associated General Contractors* decision, including the multi-factor analysis discussed above, in reaching its conclusions. The court noted that the *Southard* plaintiffs were not indirect purchasers because they did not end up with a product supplied by the defendants. Like *Associated General Contractors*, the *Southard* decision is distinguishable from the case at bar. Neither *Associated General Contractors* nor *Southard* involved a product, and thus price-fixing was not at issue, as it is in the present case. Plaintiff is, in fact, an indirect purchaser of products containing EPDM, and this Court, recognizing the importance of examining standing and remoteness as suggested by the *Southard* court, still finds Plaintiff has standing to pursue its antitrust claims under the Iowa Competition Law.

Defendants also assert that while Plaintiff may have purchased roofing material made primarily of EPDM, other members of the putative class may have bought products that contain relatively small amounts of EPDM. Thus, Defendants argue that to say that a consumer who purchases these products is a purchaser of EPDM does violence to the concept of an indirect purchaser. Defendants maintain that Plaintiff cannot prosecute this action on behalf of just any final purchaser of a product containing EPDM. Class certification, including defining the

members of the class, is not at issue before this Court for purposes of the pending motions to dismiss. Rather, this Court must determine whether Plaintiff has stated a claim upon which relief may be granted. As the facts indicate that Plaintiff purchased roofing materials containing EPDM, Plaintiff is an indirect purchaser of EPDM. The issue of the appropriate members of the putative class will arise in the class certification proceedings, and Defendants' argument on this issue is presently irrelevant.

II.    **Whether Plaintiff can state a monopolization claim under section 553.5 or a private claim under the Iowa Consumer Protection Act**

Defendants argue the Plaintiff's Petition fails to support its claim under section 553.5 of the Iowa Competition Law, which provides: "A person shall not attempt to establish, maintain, or use a monopoly of trade or commerce in a relevant market for the purpose of excluding competition or of controlling, fixing, or maintaining prices." IOWA CODE § 553.5 (2005). Defendants contend that Plaintiff's Petition lacks any allegations of a monopoly or attempted monopoly within any relevant Iowa market. Defendants also argue that Plaintiff's Petition fails to assert any allegations to support any alleged cause of action under the Iowa Consumer Protection Act, Iowa Code section 714.16.

In its Brief, Plaintiff states that this is an indirect purchaser price-fixing case, and it is not a monopoly case or a private claim under the Iowa Consumer Protection Act. Therefore, this Court need not further consider Defendants' arguments on this issue because Plaintiff has not pursued a claim under either Iowa Code section 553.5 or 714.16.

III.    **Whether the statute of limitations of section 553.16 is tolled for Plaintiff's claim by the fraudulent concealment doctrine**

Pursuant to Iowa Code section 553.16, a claim under section 553.12 "must be commenced within four years after the cause of action accrues or, if there is a fraudulent

concealment of this cause of action, within four years after the cause of action becomes known, whichever period is later." IOWA CODE § 553.16(2) (2005). Plaintiff maintains that it did not learn of the conspiracy among the Defendants until December 2002 when it was reported that Defendant Crompton Corporation was being investigated by Canadian, European, and United States law enforcement and antitrust investigators for participating in an international cartel to fix prices of EPDM in violation of the antitrust laws. Defendants argue that Plaintiff's claims are barred by the four-year statute of limitations. Contrary to Plaintiff's assertion, Defendants maintain that the statutory bar cannot be tolled because Plaintiff has failed to plead acts of fraudulent concealment independent of and subsequent to the alleged price-fixing conspiracy.

> The common-law doctrine of fraudulent concealment provides: "[W]here the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the time the right of action was discovered, or might, by the use of diligence, have been discovered."

*McClendon v. Beck*, 569 N.W.2d 382, 385 (Iowa 1997) (quoting *Koppes v. Pearson*, 384 N.W.2d 381, 386 (Iowa 1986)). To establish fraudulent concealment, Plaintiff must allege and prove facts showing (1) that the party against whom the cause of action exists did some affirmative act to conceal the cause of action, and (2) that Plaintiff exercised diligence to discover the cause of action. *Pride v. Peterson*, 173 N.W.2d 549, 555 (Iowa 1970). The alleged acts of concealment must be independent of the alleged act ruled on to establish liability. *Van Overbeke v. Youberg*, 540 N.W.2d 273, 276 (Iowa 1995).

Plaintiff's Petition alleges that Defendants conducted the affairs of the alleged EPDM conspiracy in secret, and Plaintiff had no knowledge of this alleged conspiracy until approximately December 2002. This Court finds sufficient factual allegations in Plaintiff's Petition to reject Defendants' argument that Plaintiff has not properly plead fraudulent

concealment to toll the statute of limitations. Plaintiff alleges that Defendants conspired to fix the prices of EPDM, and Plaintiff, in the exercise of reasonable diligence, had no knowledge of the existence of the alleged conspiracy. This Court denies Defendants' Motion to Dismiss raised on the grounds that Plaintiff's action is barred by the statute of limitations. Plaintiff's Petition properly plead fraudulent concealment, and the four-year statute of limitations in section 553.16 was tolled until at least December 2002.

IV.    **Whether Plaintiff's Petition fails to state a claim against Defendant ExxonMobil Chemical Company**

Defendant ExxonMobil filed a Supplemental Motion to Dismiss, arguing that Plaintiff's Petition fails to state a claim upon which relief may be granted because the Petition fails to put ExxonMobil on fair notice of the claims against it, and fails to allege ExxonMobil's specific participation in any alleged conspiracy. ExxonMobil contends that the Petition contains bare allegations of the alleged anticompetitive activities, and none of the allegations specifically refer to ExxonMobil or any alleged wrongdoing on the part of ExxonMobil. According to ExxonMobil, the Petition lacks basic factual allegations, such as the time, place, parties, terms and effects of the alleged conspiratorial meetings, communications and/or agreements, and thus, the Petition does not satisfy the pleadings requirements of the rules of civil procedure. Additionally, ExxonMobil opines that it was simply named as a defendant because it is alleged to have sold a product in an industry that is the subject of government investigations, yet the Plaintiff has failed to make any specific allegations as to how ExxonMobil is connected to the alleged conspiracy.

Iowa Rule of Civil Procedure 1.403(1) requires a petition set forth a claim for relief that contains "a short and plain statement of the claim showing that the pleader is entitled to relief." IOWA R. CIV. P. 1.403(1) (2005). Rule 1.402(1) provides: "The form and sufficiency of all

pleadings shall be determined by these rules, construed and enforced to secure a just, speedy and inexpensive determination of all controversies on their merits." IOWA R. CIV. P. 1.402(1) (2005).

A petition is not required to identify the plaintiff's specific legal theory. *Soike v. Evan Matthews and Co.*, 302 N.W.2d 841, 842 (Iowa 1981). "[I]t is sufficient if the prima facie elements of a claim are stated, and this statement is 'fair notice' to the defendant." *Id.* Under notice pleading, it is sufficient if the petition informs the defendant of the incident giving rise to the plaintiff's claim and of the general nature of the action. *Id.* To require a plaintiff to go further and identify the specific legal theory underlying the plaintiff's claim would be inconsistent with notice pleading requiring a short and plain statement of the claim. *Id.* The allegations in the petition are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. *Curtis v. Board of Supervisors*, 270 N.W.2d 447, 448 (Iowa 1978).

"The impact of this philosophy of pleading has virtually emasculated the motion to dismiss for failure to state a claim. For such a motion to be sustained, it must be concluded that no state of facts is conceivable under which the plaintiff might show a right of recovery." *Unertl v. Bezanson*, 414 N.W.2d 321, 324 (Iowa 1987). "A motion to dismiss should not be liberally granted." *Rieff v. Evans*, 630 N.W.2d 278, 284 (Iowa 2001). Since the advent of notice pleading, it is only a rare case that will not survive a motion to dismiss for failure to state a claim upon which any relief can be granted. *American Nat'l Bank v. Sivers*, 387 N.W.2d 138, 140 (Iowa 1986).

This is not one of those rare cases in which a motion to dismiss for failure to state a claim should be granted. The Iowa rules of civil procedure provide for notice pleading, and Plaintiff has included sufficient allegations in its Petition to inform Defendants of the incidents giving rise

22

to Plaintiff's claim and the general nature of this action alleging an antitrust conspiracy amongst Defendants. Alleging that Defendants regularly increased prices of EPDM in a coordinated manner, Plaintiff believes Defendants engaged in a conspiracy to fix the prices of EPDM. Plaintiff includes ExxonMobil in the class of Defendants because ExxonMobil manufactures, markets, sells, and/or distributes EPDM in the United States, as do the remaining Defendants. Thus, Plaintiff alleges ExxonMobil was a conspirator in the alleged price-fixing scheme. Plaintiff need not identify its specific legal theory against ExxonMobil, or any Defendant, in its Petition. Plaintiff sufficiently identified ExxonMobil's role, as well as the remaining Defendants' roles, in the alleged conspiracy within the parameters of notice pleading, and all doubts and ambiguities in the Petition are construed in Plaintiff's favor. Plaintiff is allowed to develop its legal theory and more specific factual allegations against ExxonMobil through the discovery process. At this stage in the litigation, no question is presented as to the truth of the allegations in Plaintiff's Petition. Rather, the sole issue is whether Plaintiff is entitled to its day in court. *Gradischnig v. Polk County*, 164 N.W.2d 104, 106 (Iowa 1969). Relying solely on the allegations of the Petition, this Court believes Plaintiff is entitled to its day in court because Plaintiff's Petition sets forth a short and plain statement of the claim, pursuant to the rules of notice pleading. ExxonMobil's Supplemental Motion to Dismiss must be denied.

<u>ORDER</u>

**IT IS THE ORDER OF THE COURT** that Certain Defendants' Motion to Dismiss Plaintiff's First Amended and Substituted Class Action Petition is **DENIED**.

**IT IS FURTHER THE ORDER OF THE COURT** that Defendant ExxonMobil Chemical Company's Supplemental Motion to Dismiss Plaintiff's First Amended and Substituted Class Action Petition is **DENIED**.

SO ORDERED this _31 ST_ day of May, 2005.

RICHARD G. BLANE, II, District Judge
Fifth Judicial District of Iowa

COPIES TO:

Joseph R. Gunderson
Jason D. Walke
Gunderson, Sharp & Walke, LLP
317 Sixth Avenue, Suite 600
Des Moines, Iowa 50309

Rex A. Sharp
Gunderson, Sharp & Walke, LLP
4121 West 83rd Street, Suite 256
Prairie Village, Kansas 66208

Isaac L. Diel
Law Office of Isaac L. Diel
135 Oak Street
Bonner Springs, Kansas 66012

Krishna B. Narine
Law Office of Krishna B. Narine
7839 Montgomery Avenue, Third Floor
Elkins Park, Pennsylvania 19027

Kendall S. Zylstra
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

Daniel R. Karon
Goldman Scarlato & Karon P.C.
55 Public Square, Suite 1500
Cleveland, Ohio 44113

Todd Seelman
Wells Fargo Center
1700 Lincoln Street, Suite 3900
Denver, Colorado 80203

ATTORNEYS FOR PLAINTIFFS

Edward W. Remsburg
Ahlers & Cooney, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309

Andrew S. Marovitz
Gary A. Winters
Britt M. Miller
May, Brown, Rowe & Maw, LLP
190 South La Salle Street
Chicago, Illinois 60603

ATTORNEYS FOR DEFENDANT DSM
COPOLYMER, INC. AND DSM ELASTOMERS
EUROPE B.V.

William F. Fanter
John C. Palmer
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, Iowa 50309

James W. Quinn
Steven Alan Reiss
Christopher V. Roberts
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, New York 10153

ATTORNEYS FOR DEFENDANT EXXON
MOBIL CHEMICAL COMPANY

Jay Eaton
Nyemaster, Goode, West, Hansell & O'Brien
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309

William V. O'Reilly
J. Andrew Read
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

ATTORNEYS FOR DEFENDANTS BAYER
POLYMERS LLC (n/k/a BAYER MATERIALSCIENCE,
LLC) AND BAYER CORPORATION

Deborah Tharnish
Davis Brown Koehn Shors & Roberts, P.C.
The Financial Center
666 Walnut Street, Suite 2500
Des Moines, Iowa 50309

Benjamin Bradshaw
O'Melveny & Meyers, LLP
1625 Eye Street, N.W.
Washington, D.C. 20006

ATTORNEYS FOR DEFENDANTS CROMPTON
CORPORATION AND UNIROYAL CHEMICAL
COMPANY, INC.

Kim Walker
Chad R. Anderson
Faegre & Benson, LLP
801 Grand Avenue, Suite 3100
Des Moines, Iowa 50309

George D. Ruttinger
Crowell & Moring, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Cynthia M. Christian
Boies, Schiller & Flexner, LLP
255 South Orange Avenue, Suite 905
Orlando, Florida 32801

G. Hamilton Loeb
Paul, Hastings, Janofsky & Walker, LLP
1299 Pennsylvania, N.W.
Washington, D.C. 20004

ATTORNEYS FOR DEFENDANTS THE DOW
CHEMICAL COMPANY, E.I. DUPONT DE NEMOURS &
COMPANY, AND DUPONT DOW ELASTOMERS, LLC

[If you require the assistance of auxiliary aids or services to participate in court because of
a disability, immediately call your ADA Coordinator at 515-286-3394.  (If you are hearing
impaired, call Relay Iowa TTY at 1-800-735-2942.)]

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

ANDERSON CONTRACTING, INC., on
behalf of itself and all others similarly
situated,
    Plaintiff,

vs.

BAYER AG; et al,
    Defendants.

Case No. CL 95959

ORDER

     The Court has before it for consideration Plaintiffs' Motion to Stay Proceedings against

Dupont Dow Elastomers, L.L.C., E.I Dupont De Nemours & Co., and the Dow Chemical Company

filed on May 9, 2005. The motion requests a stay against these identified Defendants only due to the

Plaintiffs' inclusion in and settlement of a class action entitled <u>David Pearman, et al v. Crompton</u>

<u>Corporation, et al.,</u> Case No. 9192 in the Circuit Court for Claiborne County, Tennessee as to the

above specified Defendants. Plaintiffs' Motion for Stay recites that the attorneys for the Dupont and

Dow Defendants agree and consent to the entry of the stay. No representation is made that counsel

for any other Defendant in the Iowa action either does not resist or consents to the stay.

     Due to the delays in the Polk County Clerk of Court office in both docketing filings and

placing documents in the court file, this Court is unable at this time to verify whether any other

Defendant has filed resistances to Plaintiffs' Motion to Stay. For this reason, the Court enters the

following Order.



1

## ORDER

**IT IS ORDERED** that counsel for all Defendants shall file either a consent or resistance to Plaintiffs' Motion to Stay with a copy delivered to the undersigned Judge on or before June 10, 2005. If counsel have already filed a consent or resistance, a copy shall be delivered to the undersigned Judge by that date. The Court will not schedule a hearing on the motion, but will reserve ruling until June 10, 2005.

SO ORDERED on this 31ˢᵗ day of May, 2005.

RICHARD G. BLANE II, District Judge
Fifth Judicial District of Iowa

Clerk: ____ J ____ C ✓ ____ U ____ X

Copies to:

Joseph R. Gunderson
Jason D. Walke
317 Sixth Avenue, Suite 600
Des Moines, IA 50309

Rex A. Sharp
4121 W. 83ʳᵈ Street, Suite 256
Prairie Village, KS 66208

Isaac L. Diel
135 Oak Street
Bonner Springs, KS 66012

Todd Seelman
Wells Fargo Center
1700 Lincoln Street, Suite 3900
Denver, CO 80203

Krishna Narine
7839 Montgomery Avenue, Third Floor
Elkins Park, PA 19027

2

Daniel R. Karon
55 Public Square, Suite 1500
Cleveland, OH 44113-1998
**ATTORNEYS FOR PLAINTIFF**

Edward W. Remsburg
100 Court Avenue, Suite 600
Des Moines, IA 50309-2231

Gary A. Winters
1909 K. Street, N.W.
Washington, D.C. 20006

William F. Fanter
Jason C. Palmer
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004

Christopher V. Roberts
WEIL, GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York, NY 10153

Jay Eaton
700 Walnut Street, Suite 1600
Des Moines, IA 50309

William V. O'Reilly
J. Andrew Read
Steven A. Fredley
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

Thomas Demitrack
901 Lakeside Avenue
Cleveland, OH 44114

Kim J. Walker
Chad R. Anderson
801 Grand Avenue, Suite 3100
Des Moines, IA 50309

3

Deborah Tharnish
The Financial Center
666 Walnut Street, Suite 2500
Des Moines, IA 50309

Cynthia M. Christian
255 South Orange Avenue, Suite 905
Orlando, FL 32801

G. Hamilton Loeb
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

George D. Ruttinger
1001 Pennsylvania Avenue N.W.
Washington, D.C. 20004-2595

**ATTORNEYS FOR DEFENDANTS**

**[If auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3394.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.)]**