21

Westlaw.

Slip Copy

Slip Copy, 2006 WL 1751245 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
In re Canon Cameras.S.D.N.Y.,2006.Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re CANON CAMERAS LITIGATION
**No. 05 Civ. 7233(JSR).**

June 23, 2006.

*MEMORANDUM*
RAKOFF, J.
**\*1** This document relates to: All Actions

The plaintiffs in these consolidated cases (and proposed class action) are purchasers of various models of digital cameras manufactured by defendant. They allege, in essence, that these cameras suffer from various technological and physical defects and that the defendant, despite having knowledge of these defects, failed to inform the public of their existence. In their second consolidated amended class action complaint, plaintiffs bring claims for unjust enrichment, breach of the implied warranty of merchantability, and violations of New York General Business Law § 349 and Florida Deceptive and Unfair Trade Practices Act. The defendant moved to dismiss the unjust enrichment claims for failure to state a claim, to strike the class action allegations in the complaint, and upon striking the class action allegations, to dismiss the complaint in its entirety for lack of subject matter jurisdiction. By Order dated February 6, 2006, the Court denied defendant's motion in its entirety. This Memorandum serves to state briefly the reasons that warranted that result at that time.[FN1]

> FN1. It should be noted, however, that plaintiffs' counsel subsequently conceded that, in light of discovery, many of the allegations in the complaint are no longer

supportable and several of the counts must be dismissed.

As to defendant's motion to strike the class action allegations from the complaint, the action may be maintained as a class action only if, *inter alia*, " questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). Defendant argues, in essence, that common issues do not predominate here because certification of plaintiffs' proposed class would require application of the laws of nearly all the states. However, the existence of variation in the applicable state law does not necessarily mean that common issues of fact and law will not predominate, especially if the state laws treat the most important issues in the case in essentially identical fashion. *Cf. In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 165-66 (2d Cir.1987). At the stage of the litigation when this motion was made and decided, it was plainly too early to determine this issue. Accordingly, defendant's motion to strike the class action allegations was denied, without prejudice.

Having denied defendant's motion to strike the complaint's class action allegations, the Court also denied defendant's concomitant motion to dismiss the complaint for lack of subject matter jurisdiction.

As to defendant's motion to dismiss plaintiff's unjust enrichment claims for failure to state a claim, the governing laws of the relevant states [FN2] all require, in essence, that a plaintiff show that "(1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit ... defendant to retain what is sought to be recovered." *See, e.g ., Clark v. Daby,* 751 N.Y.S.2d 622, 623 (App.Div.2002) (internal quotation marks omitted); *see also HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.,* 545 N.E.2d 672, 679 (Ill.1989) ("To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." ); *Fasching v.. Kallinger,* 510 A.2d 694, 699 (N.J.App.Div.1986) ("Plaintiff must prove that defendant received a benefit, retention of which would be unjust."); *Watts v. Watts,* 405 N.W.2d 303, 313 (Wisc.1987) ("[A]n action for unjust enrichment ... is based upon proof of three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit."); *Va. Mun. Group Self-Insurance Ass'n v. Crawford,* 66 Va. Cir. 236, 242 (Va.Circ.2004) ( "[T]he moving party must typically demonstrate the existence of: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.") (internal quotation marks omitted).

> FN2. The parties agree that under New York choice of law rules, the state in which each plaintiff resides provides the governing law for unjust enrichment claims. Accordingly, plaintiffs' unjust enrichment claims, as they stood at the time this motion was considered, were governed by the laws of New York, New Jersey, Wisconsin, Illinois, and Virginia.

**\*2** Defendant argues that under the governing law plaintiffs must confer a "direct benefit" on the defendant to recover under the doctrine of unjust enrichment and that here it was third-party retailers, not the defendant, that were enriched. However, whether defendant received any benefit from plaintiffs' camera purchases is a question of fact not properly resolved on a motion to dismiss. Further, the laws of the relevant states do not require either a direct relationship between the parties or that a direct benefit be conferred on the defendant. The cases on which defendant relies suggest, at most,

only that some relationships may be too attenuated to support an unjust enrichment claim. Here, however, there is sufficient connection between the parties to support a claim for unjust enrichment. Defendant also argues that plaintiffs cannot state a claim for unjust enrichment because they have adequate remedies at law. However, although plaintiffs may not ultimately recover under both their legal and equitable theories, they may plead both claims in the alternative. *See* Fed.R.Civ.P. 8(e)(2).

The Court considered the defendant's other arguments and found them without merit. Accordingly, for the foregoing reasons, the defendant's motion was denied in its entirety.

S.D.N.Y.,2006.
In re Canon Cameras
Slip Copy, 2006 WL 1751245 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1098490 (Trial Pleading) First Amended Class Action Complaint (Mar. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 548746 (Trial Motion, Memorandum and Affidavit) Defendant Canon U.S.A., Inc's Reply Memorandum of Law in Further Support of its Motion to Dismiss Second Consolidated Amended Class Action Complaint and/or to Strike Class Allegations (Jan. 11, 2006)
• 2006 WL 548745 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Canon U.S.A., Inc.'s Motion to Dismiss Plaintiffs' Second Consolidated Amended Class Action Complaint and/or Strike Class Allegations (Jan. 4, 2006) Original Image of this Document (PDF)
• 1:05cv07233 (Docket) (Aug. 15, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

22

LEXSEE 2000 US DIST LEXIS 20443

Analysis
As of: Jan 05, 2007

## In re HEALTHSOUTH CORPORATION SECURITIES LITIGATION

### Master File No. CV-98-J-2634-S

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

### *2000 U.S. Dist. LEXIS 20443*

### December 20, 2000, Decided
### December 20, 2000, Filed, Entered

**PRIOR HISTORY:** [*1] Non-Adopting Magistrate's Document of September 13, 2000, Reported at: *2000 U.S. Dist. LEXIS 20650.*

**DISPOSITION:** Defendants' motion to dismiss (doc. 38) DENIED. Defendants' motion to strike (doc. 55) GRANTED.

**COUNSEL:** For ROBERT M GORDON, BERNARD R MCCOY, JAMES GENSTEIN, plaintiffs: M Clay Ragsdale, IV, RAGSDALE & WHEELER LLC, Birmingham, AL.

For ROBERT M GORDON, BERNARD R MCCOY, JAMES GENSTEIN, plaintiffs: Lawrence J Lederer, Lane L Vines, BERGER & MONTAGUE PC, Philadelphia, PA.

For HEALTHSOUTH CORPORATION, RICHARD M SCRUSHY, MICHAEL D MARTIN, JAMES P BENNETT, ANTHONY J TANNER, WILLIAM T OWENS, ROBERT E THOMSON, THOMAS W CARMAN, P DARYL BROWN, PHILLIP C WATKINS, RICHARD F CELESTE, PATRICK A FOSTER, defendants: W Michael Atchison, W Stancil Starnes, Anthony C Harlow, Rik S Tozzi, STARNES & ATCHISON LLP, N Lee Cooper, Carl S Burkhalter, Patrick C Cooper, MAYNARD COOPER & GALE, Birmingham, AL.

For HEALTHSOUTH CORPORATION, RICHARD M SCRUSHY, MICHAEL D MARTIN, JAMES P BENNETT, ANTHONY J TANNER, WILLIAM T OWENS, ROBERT E THOMSON, THOMAS W CARMAN, P

DARYL BROWN, PHILLIP C WATKINS, C SAGE GIVENS, RICHARD F CELESTE, PATRICK A FOSTER, defendants: Peter Q Bassett, Susan E Hurd, ALSTON & BIRD LLP, Atlanta, GA.

For LARRY R HOUSE, C SAGE GIVENS, defendants: W Michael Atchison, Rik S Tozzi, STARNES [*2] & ATCHISON LLP, Birmingham, AL.

For LARRY R HOUSE, defendant: Edward D Buckley, III, Daniel A Angelo, GREENE BUCKLEY JONES & MCQUEEN, Atlanta, GA.

For AARON BEAM, JR, defendant: W Stancil Starnes, Anthony C Harlow, STARNES & ATCHISON LLP, N Lee Cooper, Carl S Burkhalter, Patrick C Cooper, MAYNARD COOPER & GALE, Birmingham, AL.

For PENNSYLVANIA GROUP, movant: Richard A Freese, LANGSTON FRAZER SWEET & FREESE, Birmingham, AL.

For PURCHASERS OF HEALTHSOUTH CORPORATION SECURITIES, movant: M Clay Ragsdale, IV, Myles Stanley Herring, Jr, RAGSDALE & WHEELER LLC, Ansel Strickland, Birmingham, AL.

**JUDGES:** INGE P. JOHNSON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** INGE P. JOHNSON

**OPINION:**

## MEMORANDUM OPINION

This cause comes before this court on plaintiffs' objection to the report and recommendation of Magistrate Judge Ott (doc. 70). There are two basic issues in plaintiffs' objection: (1) whether the heightened pleading standard for fraud was met in plaintiffs' amended complaint; and (2) whether two declarations, Tiefer and Ping, were properly struck.

### Pleading Requirement for Fraud

In order to properly plead fraud, *Rule 9(b) of the Federal Rules of Civil Procedure* requires [*3] "the circumstances constituting fraud . . . be stated with particularity." The purpose for this heightened pleading standard is to alert "defendants to the 'precise misconduct with which they are charged'" and protect "defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1370-71 (11th Cir. 1997).* To properly allege a securities fraud claim plaintiffs must "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Bryant v. Avado Brands, Inc. 187 F.3d 1271, 1282 (11th Cir. 1999) quoting* Reform Act § 78u-4(b)(2).

In this action plaintiffs allege that the defendants, in February of 1997, lobbied against enactment of the Balanced Budget Act (BBA) by claiming it would devastate their business. (Consolidated Amended Class Action Complaint PP8-12; doc. 31). Plaintiffs also listed several statements allegedly made by the defendants to the investment world where the defendants claimed that the BBA would have no adverse effect on HealthSouth. (Consolidated Amended Class Action Complaint PP34-35, 38-41, 43-45, 50, [*4] 56, 62-63, 77; doc. 31). Plaintiffs have also alleged what specific provisions of the BBA would adversely effect HealthSouth and why. (Consolidated Amended Class Action Complaint PP14-15; doc. 31).

Plaintiffs claim that the defendants sold $ 163 million worth of stock within weeks of the BBA's enactment. (Consolidated Amended Class Action Complaint PP11-12, 93-99; doc. 31). Plaintiffs allege that the sale of this stock was before defendants announced the negative impact the BBA would have on HealthSouth, and while the defendants were actually claiming the BBA would have no impact on HealthSouth's earning. (Consolidated Amended Class Action Complaint PP34-35; doc. 31). According to plaintiffs, the defendants sold 82 percent of their stock, at inflated prices, during the class period. (Consolidated Amended Class Action Complaint PP93-95; doc. 31).

When ruling on a motion to dismiss a court "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Beck v. Deloitte & Touche, 144 F.3d 732 (11th Cir. 1998).* When viewing the facts as plead, the court finds that the complaint alleges sufficient particularity to place the [*5] defendants on proper notice and to identify the requisite scienter for securities fraud. Pursuant to *Rule 72 of the Federal Rules of Civil Procedure* the court therefore rejects the recommendation of the Magistrate Judge.

As to the stricken declarations of Tiefer and Ping, a court may not go outside the pleadings when ruling on a motion to dismiss. *Bryant,* F.3d at 1279. Affidavits are "clearly the sort of evidentiary material that is not appropriate at the 12(b)(6) stage." *Id.,* at 1280. However a court may take judicial notice of documents at the motion to dismiss stage. *See Fed.R.Evid. 201(b); Bryant,* F.3d at 1280. The plaintiffs have asked that the court take judicial notice of portions of the BBA's legislative history as well as selected congressional testimony. These documents are directly relevant to the allegations of the complaint, the testimony was offered by Health-South executives, as such there is little concern that the defendants will be "caught by surprise". *See Bryant,* at 1297. Therefore the court does take judicial notice of these documents: A1-3 and B1-12.

Based on the foregoing the Magistrate Judge's Report and Recommendation is rejected. Defendants' [*6] motion to dismiss (doc. 38) is **DENIED**. Defendants' motion to strike (doc. 55) is **GRANTED** with the exception of the judicial notice as discussed above.

**DONE** and **ORDERED** this 20 day of December 2000.

INGE P. JOHNSON

UNITED STATES DISTRICT JUDGE

### ORDER

In accordance with the memorandum opinion issued this day the Magistrate Judge's Report and Recommendation is rejected. Defendants' motion to dismiss (doc. 38) is **DENIED**. Defendants' motion to strike (doc. 55) is **GRANTED** with the exception of the judicial notice as discussed in the memorandum opinion.

**DONE** and **ORDERED** this 20 day of December 2000.

INGE P. JOHNSON

UNITED STATES DISTRICT JUDGE

23

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Briefs and Other Related Documents
In re Heritage Bond LitigationC.D.Cal.,2004.Only the Westlaw citation is currently available.

United States District Court,C.D. California.
In re HERITAGE BOND LITIGATION
Nos. MDL 02-ML-1475 DT, CV 01-5752 DT, CV 02-382 DT, CV 02-993 DT, CV 02-2745 DT, CV 02-6484 DT, CV 02-6841 DT, CV 02-9221 DT, CV 02-6512 DT.

July 12, 2004.

Brian Barry, Jill Levine Betts, Rick Xiao, Law Office of Brian Barry, Los Angeles, CA, Lionel Z. Glancy, Kevin Ruf, Glancy Binkow & Goldberg, LLP, Los Angeles, Co-Lead Counsel for Plaintiffs.
Daniel S. Sommers, Joshua S. Devore, Julie Goldsmith, Steven J. Toll, Cohen Milstein Hausfeld & Toll, Washington, DC, for Plaintiffs.
Arnold D. Woo, Steven W. Bacon, Hill Farrer & Burrill, Los Angeles, CA, Christopher Frank Wong, Bryan Cave, Santa Monica, CA, Charles R. Grebing, Kimberly Diane Howatt, Wingert Grebing Brubaker & Ryan, San Diego, CA, Gary Kurtz, Gary A. Kurtz Law Offices, Woodland Hills, CA, William E. Crockett, Dion-Kindem & Crockett, Woodland Hills, CA Marlene D. Greenly, Beverly Hills, CA, Daniel M. White, Patrick J. Shipley, White and Oliver, Paul J. Dechary, Steven Cruz Uribe, Butz Dunn Desantis & Bingham, San Diego, CA, Michael H. Gottschlich, Barnes & Thornburg, Indianapolis, IN, Richard D. Gluck, Fairbank & Vincent, Roman P. Mosqueda, Roman P. Mosqueda Law Offices, Los Angeles, CA, Kevin W. Alexander, Gordon & Rees, San Diego, CA, Kenneth R. Heitz, Craig Varnen, Irell & Manella, Los Angeles, CA, John M. Caron, Reback McAndrews & Kjar, Manhattan Beach, CA, Michael J. Schiff, Pastor Schiff and Summers, Encino, CA, Brian E. Palmer, Dorsey & Whitney, Minneapolis, MN, Diane L. Dragan, Nitz Walton & Heaton, Las Vegas, NV, Norman J. Baer, Anthony Ostlund & Baer PA, Minneapolis, MN, for Defendants.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION
TEVRIZIAN, J.
**\*1** This Document Relates to: CV 02-382 DT (RCx)

I. Background

Because the parties are generally familiar with the factual and procedural history of this case, the Court does not recount it here except as necessary to explain its decision with response to the issues raised herein.

A. Factual History

This matter arises from damages that Class Plaintiffs ("Plaintiffs") [FN1] sustained after investing in eleven (11) municipal bond offerings which raised over $130,000,000 between December 1996 and March 1999. The bond offerings include: Texas City in 1996; Houston, Forth Worth, and Sarasota in 1997; Austin, Chicago, Rancho II, Forth Worth II, East Houston, and Seminole in 1998; and Brownsville in 1999. The monies raised from these offerings were to be used to acquire, renovate and operate former hospitals as facilities designed to assist elderly persons. (Class Plaintiffs' Fourth Amended Consolidated Class Action Complaint ("FAC"), ¶ ¶ 1-2.)

> FN1. By Order dated January 15, 2003, this Court appointed Lead Plaintiffs. Additional Plaintiffs are listed as additional proposed class representatives in the Fourth Amended Complaint ("FAC"). Ray Stits previously withdrew as a lead plaintiff. Due to the decreased mental capacities of Gilbert Kivenson, which according to Plaintiffs became clear in his deposition, he is not put forward as a class representative. All others are put forward as class representatives.

B. Procedural History

On April 12, 2004, Plaintiffs filed their Motion for Class Certification, which is currently before this Court.

On May 13, 2004, Plaintiffs filed an Amended Notice of Motion and Motion for Class Certification.

On June 7, 2004, U.S. Trust Company, N.A. and U.S. Trust Corporation (collectively, "U.S.Trust") filed their Opposition to Plaintiffs' Motion for Class Certification.

On June 7, 2004, Valuation Counselors Group, Inc.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

and Zelenkofske Axelrod & Co., Ltd. filed their Opposition to Plaintiffs' Motion for Class Certification.

On June 7, 2004, Capital Valuation Group filed its Opposition to Plaintiffs' Motion for Class Certification.

On June 7, 2004, Herrmann Plaintiffs filed a Memorandum of Points and Authorities in Support of Motion for Class Certification and Requesting Modification to the Proposed Class Definition.

On June 28, 2004, Plaintiffs filed their Reply to Opposition of U.S. Trust to Motion for Class Certification. On this same date, Plaintiffs also filed their Reply to Opposition of Valuation Counselors Group, Inc. and Zelenkofske Axelrod & Co., Ltd.

On June 28, 2004, James E. Iverson filed a Brief in Support of Plaintiffs' Motion for Class Certification.

On June 28, 2004, Mark Epstein, Attorney for Defendant Healtcare Financial Solutions, filed a Declaration in Support of Order for Class Certification.

On June 28, 2004, defendants Joel Boehm and Atkinson, Andelson, Loya, Ruud & Romo ("AALR & R") filed a Reply in Support of Plaintiffs' Motion for Class Certification.

On July 7, 2004, U.S. Trust filed a Joint Supplemental Statement of Class Plaintiffs and U.S. Trust Defendants Re Class Certification.

## II. Discussion

### A. Standard for Class Certification

Federal Rule of Civil Procedure 23 ("Rule 23") governs class actions. A class action, "may be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

**\*2** "To certify a class action, Plaintiff must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity (a class [so large] that joinder of all members is impracticable); (2) commonality (questions of law or fact common to

class); (3) typicality (named parties claims or defenses are typical ... of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Mego Financial Corp. Securities Litigation v. Nadler,* 213 F.3d 454, 462 (9th Cir.2000) (internal quotations omitted). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (quoting *General Telephone Co. of Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319). Because of the early and thus necessarily speculative stage at which the certification hearing is held, an extensive evidentiary showing is not required. Rather, all that is required is enough for the court to form a "reasonable judgment" on each requirement. *See Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975). Where the party seeking class certification has met its burden, the district court has broad discretion to certify a class. *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1186 (9th Cir.2001), as amended, 273 F.3d 1266 (9th Cir.2001).

In addition to the party satisfying 23(a)'s four requirements, the Court, before certifying the class, must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### B. Plaintiffs' Motion for Class Certification

In the instant Motion, Plaintiffs seek an order certifying a class. Although there have been several class definitions suggested by Plaintiffs [FN2] and certain defendants, after an independent review of said propositions, it is this Court's determination that the final proposal agreed to by both Plaintiffs and U.S. Trust and submitted within the Joint Supplemental Statement of Class Plaintiffs and U.S. Trust Defendants Re Class Certification is not only the most appropriate, but substantially resolves the issues that have been raised regarding the class definition thus far. The Class is defined as follows:

> FN2. Including Herrmann Plaintiffs' request for modification of the proposed class definition.

The Class consists of all Persons who purchased or

Not Reported in F.Supp.2d                                                                                                     Page 3
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

otherwise acquired Heritage Bonds at any time, but excludes the following: (i) any Person otherwise qualifying for inclusion in the Class who makes a timely and valid request for exclusion from the Class; (ii) the Settling Defendants, or their immediate families; (iii) any Person (and, in the case of a natural person, any member of his or her immediate family) that is or at any time has been a defendant in this Class Action; (iv) any entity in which a current or former defendant in this Class Action has a controlling interest; (v) any Person who, as of the date that notice is sent to the Class of the pendency of this Class Action, has recovered monies in excess of $2,000, whether via settlement, judgment, or otherwise, in any Individual Proceeding; and (vi) any Person who, as of the deadline for opting out of the Class, files or maintains an Individual Proceeding. As used herein the term "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, retirement plan, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees. As used herein, the term "Individual Proceeding" means an action or proceeding initiated and prosecuted by a Person or Persons, other than this Class Action, whether in state court, federal court or an arbitration tribunal; excluded from the term "Individual Proceeding" are the following: (i) that certain matter now pending entitled, *The Bank of New York, as successor indenture trustee v. O.V. Bertolini, et al.,* previously consolidated with this Class Action; and (ii) all foreclosure actions, receivership proceedings and/or bankruptcy proceedings brought on behalf of the owners of Heritage Bonds, or in connection with the Heritage Bonds, including such actions as have been initiated and/or maintained on behalf of the owners of Heritage Bonds by any indenture trustee.
**\*3** (Joint Supplemental Statement of Class Plaintiffs and U.S. Trust Defendants Re Class Certification, p. 3.)

It should be noted that defendants Valuation Counselors Group, Inc. ("VC"), Zelenkofske, Axelrod & Co., Ltd. ("ZA"), and Capital Valuation Group, Inc. ("VG")[FN3] are the only parties that have filed Oppositions and currently oppose Plaintiffs' Motion for Class Certification.[FN4]

> FN3. VC, ZA and VG evaluated properties and provided marketability reports / studies with respect to certain offerings which were

appended to and incorporated as part of the Official Statements. VC, ZA and VG are defendants only in Plaintiffs' negligence count and request that this Court deny Plaintiffs' Motion for Class Certification as to the negligence claim asserted against them. As a point of reference, it should be noted that defendant Healthcare Financial Solutions, who also prepared feasibility studies with respect to certain offerings and who also is named only in Plaintiffs' negligence count, supports Class Certification.

> FN4. Although U.S. Trust initially opposed Plaintiffs' Motion for Class Certification, said parties have recently reached an agreement in principal to settle this matter and as part of that settlement, said parties have agreed to the redefinition of the Class as described above. With the redefinition of the Class meeting with this Court's approval and per U.S. Trust's request, a specific provision for allocation of U.S. Trust settlement monies following in the settlement agreement or stipulation of partial settlement between U.S. Trust and Plaintiffs, this Court acknowledges that U.S. Trust is prepared to withdraw its opposition to class certification herein. (*See* Joint Supplemental Statement of Class Plaintiffs and U.S. Trust Defendants Re Class Certification, 4.)

1. Plaintiffs' Proposed Class Satisfies the Prerequisites of Rule 23(a)

Plaintiffs maintain that the criteria for certification of a class set forth in Rule 23(a) is satisfied in the instant case. For the reasons set forth below, the Court agrees.

a. Numerosity

To establish numerosity, plaintiffs must demonstrate that the class they seek to represent is so numerous that joinder of all class members is impracticable. Fed.R.Civ.P. 23(a)(1). "Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity. Rather, whether joinder is impracticable depends on the facts and circumstances of each case." *Bates v. United Parcel Service,* 204 F.R.D. 440, 444 (N.D.Cal.2001). "[I]n general, courts have held that joinder is practicable where there are less than 25

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

parties, and impracticable where there are more than 35.” *In re THO, Inc. Securities Litigation,* 2002 WL 1832145, at *3.

Although the exact number of Plaintiffs' proposed class is unknown at this time, it is estimated that there are at least hundreds if not thousands of individuals and entities who purchased these Heritage Bonds. As such, the number of proposed class members is sufficiently numerous to make joinder of all class members impracticable. Defendants do not dispute this point. Therefore, this Court concludes that Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### b. Commonality

Rule 23(a)(2) requires there be “questions of law or fact common to the class.” However, to establish commonality, it is not necessary that every issue of law or fact be identical for all class members or that all injuries be the same. *See generally Holsey v. Armour & Co.,* 743 F.2d 199 (1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985). “All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.” *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998); *Walters v. Reno,* 145 F.3d 1032, 1044 (9th Cir.1998) (“Differences among the class members with respect to the merits of their actual ... cases ... are simply insufficient to defeat the propriety of class certification.”); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992) (“The fact that there is some factual variation among the class grievances will not defeat a class action.... A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2).”). Despite the presence of individual factual questions, the commonality criterion of Rule 23(a)(2) is satisfied by the common questions of law. *Id.*

**\*4** According to Plaintiffs, this Action will address a series of questions which affect all members of the Class. Plaintiffs contend that underlying these basic common questions is a common nucleus of operative facts pertaining to the Heritage Entities' alleged Ponzi scheme. This Court agrees with Plaintiffs in that the existence and nature of the material omissions/false and misleading statements in the Official Statements and the question of whether these bonds could have been marketed at all if the truth was known present nearly identical issues. These issues of fact and law are the common thread running through all the Class members' claims. Accordingly, this Court finds sufficient common questions of law and fact among the class members to meet the commonality requirement of Rule 23(a)(2).

### c. Typicality

Typicality requires that the claims or defenses of the proposed Class representatives are typical of the claims or defenses of the Class as a whole. Fed.R.Civ.P. 23(a)(3). A plaintiff's claim will be deemed typical if “they are reasonably co-extensive with those of absent class members.” *Hanlon,* 150 F.3d at 1020. The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical. *General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). This Court further notes that the typicality requirement is not demanding. *In re Enron Corp. Securities, Derivative and ERISA Litigation,* 2004 WL 405886 at *25 (S.D.Texas Feb.25, 2004) (citations omitted). “In the securities context, the fact that the class representatives may have reviewed different documents from other members of the class or purchased different amounts of stock does not mean their claims are not typical of the class.” *In re THO,* 2002 WL 1832145 at *3 (citing *Schlagel v. Learning Tree Int'l.,* 1999 WL 672306 (C.D.Cal.1999)). “Rather, the test of typicality is ‘whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.” ’ *Id.* (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992).

Plaintiffs argue and this Court agrees that Defendants' course of conduct uniformly affected all members of the Class, causing each to suffer economic injury. Plaintiffs further argue that the fraud that created a market for these bonds was a fraud on all members of the Class and was, in no way, unique to Plaintiffs.

Defendants VC and ZA contend that Plaintiffs fail to meet the typicality requirements because Plaintiffs are allegedly subject to unique defenses with respect to (1) lack of standing, (2) the applicable statue of limitations, and (3) the causation element of the negligence claim against VC and ZA.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 5
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

(i). Standing argument

Defendants VC and ZA contend that some of the named Plaintiffs lack standing. Specifically, they argue that five of the seven putative class representatives (plaintiffs Langdon Parrill, Barrett Anderson, Laurence Pilgeram, Scott McKenry, and Ralph Allman) lack standing and are not typical for purposes of satisfying <u>Rule 23(a)</u> because they purchased their Heritage bonds not in their individual capacity, but in the name of their family trust. According to VC and ZA, because these specific plaintiffs sued in their individual capacity and not through the executor or administrator of their estate, they are not real parties in interest as required by Rule 17(a) and <u>California Code of Civil Procedure section 369(2)</u>. This Court disagrees and determines that class certification is unaffected by VC's and ZA's contentions regarding standing.

**\*5** First, this Court notes that VC and ZA attack the standing of only some of the named Plaintiffs, so this Court cannot deny class certification simply on those grounds. Secondly, where the same persons are both the trustee and the beneficiary of a trust, they may maintain an action in their own name. *See <u>Hassoldt v. Patrick Media Group, Inc.,</u> 84 Cal.App.4th 153, 173, 100 Cal.Rptr.2d 662 (2000)*). As demonstrated by Plaintiffs, Messrs. Pilgeram and McKenry are the sole trustees and sole beneficiaries of the revocable trusts in which their Heritage bonds were deposited. (Betts Decl. Ex. 3, 4.) Mr. Parrill is the co-trustee and co-beneficiary of a revocable family trust in which his Heritage bonds were deposited. (Betts Decl. Ex. 1.) Mr. Allman held his Heritage bonds in two separate accounts: (1) a family trust; and (2) as joint tenants with his mother and brother. In January 2003, after Plaintiffs filed the FAC, Mr. Allman amended one of his family trusts so that he is no longer the trustee or beneficiary. However, Mr. Allman still owns Heritage bonds jointly with his mother and brother, thus, allowing him the right to sue. (Betts Decl. ¶ 8.) Mr. Anderson is the sole trustee of his IRA and makes all investment decisions related to the IRA. (Betts Decl. Ex. 2.)

Finally, the individual representative Plaintiffs are the ones that actually purchased the Heritage Bonds by and through their respective Brokers and the losses suffered ultimately and indisputably impacted the personal interests of the individual lead Plaintiffs. Thus, it cannot be said that the representative Plaintiffs do not have standing, considering their large personal stake in the present litigation.

This Court disagrees that Rule 17(a) and <u>California Code of Civil Procedure section 369(2)</u> are sufficient to deprive these Plaintiffs of standing to bring suit.

(ii). Applicable statue of limitations

Next, VC and ZA defendants argue that there are choice of law issues and depending on which state law applies, as well as in which particular bond offering the class member invested (i.e., injuries suffered at different times), the applicable statute of limitations for Plaintiffs' negligence claim will alter and vary the outcome of the proceeding from class member to class member. Accordingly, VC and ZA defendants contend that Plaintiffs cannot satisfy the typicality requirement because Plaintiffs are arguably subject to unique defenses with respect to the varying statute of limitations from different states.<u>FN5</u>

> <u>FN5</u>. The choice of law argument is raised again and discussed in more detail in section II. B. 2. a. of this Order entitled "Common questions predominate."

This choice of law argument is unpersuasive and is not sufficient to defeat class certification for several reasons. As an initial matter, the argument is untimely and prejudicial to the parties involved in this litigation because all parties have litigated the common law claims under California law since the commencement of this action several years ago. Moreover, this Court has also made findings and issued rulings under California law.

Furthermore, and as demonstrated in section II. B. 2. a. of this Order, applying the laws of California in this action are not only permissible, but fully appropriate and proper in light of California's significant interest in this action.

**\*6** Finally, Federal courts in California presume that California law applies to common law claims unless the party challenging the applicability of California law meets their burden of proving otherwise. *See <u>Hurtado v. Superior Court,</u> 11 Cal.3d 574, 581, 114 Cal.Rptr. 106, 522 P.2d 666 (1974)* (California law applies unless a party "timely invokes the law of a foreign state."). Here, defendants VC and ZA who are the proponents of the foreign law have not satisfied their burden of demonstrating which other state law should apply and therefore, have not overcome this presumption at this time. Thus, class certification should not be defeated for this basis.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

### (iii). Causation element

Finally, defendants VC and ZA argue that Plaintiffs fail to meet the typicality requirements of Rule 23(a)(3) because they are subject to unique defenses with respect to the causation element of the negligence claim. Specifically, VC and ZA argue that Plaintiffs' ability to demonstrate causation will depend on the individual circumstances of each purchaser because it logically depends upon whether the purchasers actually considered the information contained in the reports and whether this information influenced their decision to purchase the bonds. VC and ZA then proceed to identify and target each of the five plaintiffs who did not read and allegedly could not have relied on the Official Statements before buying the bonds, arguing that those specific plaintiffs now have to show other causation methods (i.e. relying on their respective brokers who themselves had read the official statements). For support, VC and ZA cite to *In re Woodward & Lothrop Holdings, 205 B.R. 365 (Bankr.S.D.N.Y.1997)*. In that case, the complaint alleged that the defendant made false and misleading statements in connection with the price that it charged for bedding it sold in its stores. *Id. at 368.* The court found that individualized issues of proof did not satisfy the requirements of Rule 23. *Id.* at 375. However, that case is neither binding nor persuasive and is in fact factually distinguishable because it does not involve a securities or negligence claim, rather, it deals with common law fraud. This Court does not apply the same reasoning here.

First, it should be noted that arguments on the merits are improper at the class certification stage. *See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1074)* ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." *Miller v. Mackey International, 452 F.2d 424, 427 (5th Cir.1971)* (citations omitted). Accordingly, whether or how

Plaintiffs can establish class-wide causation or reliance is an issue that goes to the merits of their negligence claim and is inappropriate to consider at the class certification stage.

**\*7** Even in considering VC's and ZA's causation argument, this Court does not agree that Plaintiffs are subject to unique defenses because certain named Plaintiffs purchased Heritage Bonds before receiving the Official Statements. In fact, this is the typical manner in which the purchases were made because investors were typically solicited by the brokers at Miller & Schroeder over the phone. Moreover, the available evidence (i.e. deposition testimony) demonstrates that the information conveyed by the brokers to investors was the same information represented in the Official Statements. If the investors agreed to purchase a particular bond, they would be sent an Official Statement, as required by law. In any regard, this Court will not deny class certification because some class members received the misleading information from brokers while others read it in the Official Statements. Each member of the Class has suffered damages as a result of the same course of conduct, specifically, the written misrepresentations and omissions in the Official Statements.

Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences. *In re Prudential Ins. Co. Sales Practices Litig., 148 F.3d 283, 302-03 (3d. Cir.1998), cert. denied, 525 U.S. 1114 (1999); see also Barnes v. American Tobacco Co., 161 F.3d 127, 141 (3d. Cir.1998. This Court finds Schneider v. Traweek, 1990 WL 132716 (C.D.Cal. July 31, 1990)* instructive. In *Schneider,* the plaintiffs sought class certification for a case that arose out of the allegedly material misrepresentations and omissions contained in various sets of prospectuses used to market eight limited partnerships. The court found that the typicality requirement was met because:
All of the claims in this action arise out of the investors' reliance on the allegedly misleading offering materials prepared and issued by the Defendants to sell securities in the ... [l]imited [p]artnerships. All of the named Plaintiffs and the rest of the ... class members suffered similar injuries in that everyone bought soon-to-be worthless securities in the [l]imited [p]artnerhips based on the misleading offering materials.

*Id.* at \*8.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 7
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Since Plaintiffs will have to prove the same course of conduct as the members of the Class would in order to establish their claims, Plaintiffs' claims are typical of the Class as a whole as they stand in the same position as other investors in relationship to the alleged misrepresentations and omission prepared by VC and ZA, among others. Accordingly, this Court finds the proposed class allegations sufficiently meets the typicality pleading requirement of Rule 23(a)(3).

#### d. Adequate Representation

In order to satisfy this element of Rule 23(a)(4), the proposed class representative must fairly and adequately represent the interests of the class. "A named plaintiff will adequately represent the absent class members if: (1) the attorney representing the class is qualified and competent; and (2) the class representative does not have interests antagonistic to the remainder of the class." *Rodriquez v. Gates,* 2002 WL 1162675, at *8 (C.D.Cal. May 30, 2002) (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978)). "To determine if the attorney representing the class is qualified, the court must consider his or her professional qualifications, skills, experience and resources." *Id.* at *8. "Whether a proposed representative can adequately represent the class depends on the circumstances of each case. *Id.* (citing *McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554, 559 (5th Cir.1981)).

**\*8** Here, Plaintiffs have expressed their willingness to serve as Class representatives and to prosecute this case on behalf of the entire Class. In addition, based on this Court's independent evaluation and because Defendants do not dispute the competence, adequacy and qualifications of Plaintiffs' counsel in representing the proposed class, this Court finds the proposed class allegations meet the adequate representation requirement of Rule 23(a)(4).

#### 2. Class Certification is Appropriate Under Rule 23(b)(3)

In addition to satisfying the prerequisites of subdivision (a), an action may be maintained as a class action if one of Rule 23(b)'s subdivisions are satisfied. Here, Plaintiffs seek to certify the class under Rule 23(b)(3). Rule 23(b)(3) permits an action to proceed as a class action if "the court finds that the questions of law *or* fact common to the members of the class predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. Rule 23(b)(3) (emphasis added). "The questions of whether common questions predominate and whether a class action would be superior are interrelated." *Rodriguez,* 2002 WL 1162675 at *11 (citing *Haley v. Medtronic, Inc.,* 169 F.F.D. 643, 650 (C.D.Cal.1996)). As demonstrated below, both criteria are met in this case.

#### a. Common questions predominate

In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of Plaintiffs' claims can be done through common questions of fact or law, or whether such proof will be overwhelmed with individual issues. *See Hanlon,* 150 F.3d 1022. "[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 693 (D.Minn.1995) (citing 7A Wright, Federal Practice and Procedure, § 1778 at 528-30). Courts generally find securities fraud class actions satisfy the predominance requirement. *See In re THO,* 2002 WL 1832145 at *8 ("Plaintiffs' claim-which is based on a series of misrepresentations and market manipulations-clearly satisfies the requirement that common questions predominate over those affecting individual members."); *In re United Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.,* 122 F.R.D. 251, 256 (C.D.Cal.1988) (finding that common questions such as the knowledge of the defendants and the truth or falsity of their representations predominate over individual questions); *In re Unioil Sec. Litig.,* 107 F.R.D. 615, 622 (C.D.Cal.1985) (holding that common questions predominate where the plaintiffs' claim was based on a "common nucleus of misrepresentations, material omissions and market manipulations ..."). As discussed above, this case does involve common questions of law and fact. Whether such questions predominate is at issue.

**\*9** According to Plaintiffs, all liability issues are common to members of the Class and there are no other significant, much less predominant, individual issues involved. Specifically, Plaintiffs argue that they can show their injury was caused by defendants by demonstrating that the bonds would not have been offered but for the fraud, including VC's and ZA's

Not Reported in F.Supp.2d                                                                                          Page 8
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

preparation of inflated appraisals and feasability studies that contained material misrepresentations and omissions.

Although proving either common issues of law or fact predominate would be sufficient Rule 23(b)(3), VC and ZA argue that neither predominate with respect to the negligence claim asserted against them. First, VC, ZA and VG [FN6] argue that the substantive law of many different states will apply to Plaintiffs' negligence claim depending on where each individual plaintiff resides. Given that the proposed class numbers in the hundreds and maybe thousands, VC, ZA and VG argue that it will necessarily include plaintiffs who reside in many different states, thus necessitating the application of the law of negligence from many different states. [FN7]

> FN6. VGs' brief Opposition simply restates the same choice of law arguments made by VC and ZA in regards to the negligence claim asserted against them.

> FN7. VC and ZA point out that the differing degree to which different states apply comparative negligence concepts can expose VC and ZA to different amounts of liability for the same report depending on which state law applied. According to VC and ZA, such a situation demonstrates the problems of certifying a single class as to the negligence claim against VC or ZA.

Next, VC and ZA argue that individual issues will similarly predominate with regard to the sources of information upon which the purported class members allegedly relied (i.e. either by reading the Official Statements themselves or relying on their respective brokers). VC and ZA contend that further individualized issues exist because the different appraisers, including themselves, that are named as defendants provided different services and reports with respect to different bond offerings and had no role whatsoever with respect to certain other offerings. Finally, VC and ZA again argue that individual inquiries will be necessary with respect to the differing statue of limitations periods applicable to each class member.

This Court is not compelled by VC's, ZA's and VG's arguments. As discussed above, VC's, ZA's and VG's choice of law argument appears untimely considering the law of a foreign state has not been invoked since this action commenced in November 2001. In fact,

parties (including VC and ZA) have litigated the common law claims under California law and this Court has previously issued rulings under California law in this action.

Even by entertaining the merits of VC's, ZA's and VG's choice of law argument, California law would still apply. This Court finds _In re Seagate Technologies Securities Litigation,_ 115 F.R.D. 264, 270 (N.D.Cal.1986) instructive. In _Seagate Technologies,_ the Court granted conditional certification of a plaintiff class as to pendant state law claims when plaintiffs brought a securities fraud class action, alleging federal securities claims and common law claims (negligent misrepresentation and fraud) arising out of alleged misrepresentations and omissions contained in a registration statement and prospectus issued by a defendant in connection with a public offering. Although the stock in question was sold in twenty-two (22) states, including California, the court found that based on California significant contacts, California had an "interest" in the action. The court based its decision on the fact that the corporate defendant was headquartered in California, the dissemination of the statement, prospectus and various annual and quarterly reports occurred in California, individual defendants were California residents, and many of the prospective witnesses were California residents.

**\*10** Here, as in _Seagate,_ Plaintiffs as well as defendants AALR & R and Boehm have more than sufficiently demonstrated in their Reply briefs that there is a "significant aggregation of contacts" between California and Plaintiffs' common law claims against VC and ZA which supports California's "interest in applying its law." _Allstate Inc. Co. v. Hague,_ 449 U.S. 302, 312-13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). (For a complete listing of these extensive contacts, see AALR & R's and Boehm's Reply brief, p. 6-7 and Plaintiffs' Reply to Opposition of VC and ZA, p. 6-7.) Moreover, while challenging the application of California law, VC, ZA or VG have not invoked the laws of foreign states and therefore, have not met their burden in demonstrating why the substantive law of other states will apply in this action. Therefore, this Court presumes California law controls unless and until defendants show that choice of law problems render the common law claims inappropriate for class treatment. [FN8]

> FN8. Based on the above finding, this Court need not address Plaintiffs' alternative

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

argument that even if the laws of many states were to apply, the elements of negligence in the various states where the Heritage Bond properties are located are practically identical.

As for finding that common questions of fact predominate, this Court finds *Lubin v. Sybedon Corp., 688 F.Supp. 1425 (S.D.Cal.1988)* instructive. In *Lubin,* the court held that commonality was satisfied because:

Here, Lubin has alleged a common course of wrongdoing, which he has restricted to fairly narrow circumstances (i.e., those relating to the sale of Grant Associates limited partnerships). He has alleged that each putative class member is similarly situated (as a limited partner), and that the role of each defendant is identical vis-a-vis each investor. He has alleged that each investor relief upon precisely the same misrepresentations and omissions, and that each has suffered similar damages. Given such a discrete, identifiable fraud scheme, it would defy common sense to find that class certification is defeated by the possibility of individual questions appertaining to one of the elements of one of the case's causes of action. Even assuming that individual reliance must be shown, this case would still encompass a multitude of common issues.

*Id.* at 1460.

The same applies here. Plaintiffs have alleged a common course of wrongdoing that specifically pertain to the misrepresentations and omission in the Official Statements and have restricted it to the sale of the Heritage Bonds. The same question remains whether these bonds could have been marketed at all if the truth was know. Moreover, each Class member is similarly situated as an investor of these Heritage Bonds who has relied upon the identical misrepresentations and omissions allegedly put forth by VC, ZA, and VG, among others. Finally, each Class member has suffered the similar economic loss of their investment. Thus, it cannot be disputed that there are central issues in this action that are predominately common to the proposed Class.

b. A class action is the superior method for the fair and efficient adjudication of this controversy

Superiority is demonstrated where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th*

Cir.1996). In securities cases, courts have concluded that "any doubts should be resolved in favor of allowing a class action." *In re Seagate Technology II Security Litigation, 843 F.Supp. 1341, 1350 (N.D.Cal.1994)* (citing *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 122 F.R.D. 177, 179 (E.D.Pa.1988)*). In reaching this conclusion, the *Seagate* court considered that the damages of a single plaintiff suffers in a securities action is usually too small to justify litigation and class action offers plaintiffs with these small claims a chance to obtain redress through aggregation. *Id.*

**\*11** Defendants VC and ZA contend that a class action is an inferior means of adjudication because of alleged "manageability problems created by having to apply differing state law and liability standards for negligence" pertaining to the different studies performed by VC and ZA for the various offerings. (*See* VC and ZA Opposition, p. 18.) VC and ZA further contend that these differing factors pose a potential for jury confusion in regards to the negligence claim. (*See id.*)

Although VC and ZA work hard at creating differences in law and fact to render a class action an inferior means of adjudication, this Court is not convinced. Throughout the two year pendency of this litigation, this Court has taken great efforts to consolidate and manage the Heritage class action and is prepared to continue this task. Although defendants VC and ZA raise similar arguments herein, it is indisputable that there are many existing factors, as discussed below, which heavily weigh in favor of class certification in this matter.

In line with *Seagate'* s consideration about individual amounts invested by purchasers in securities actions being too small to justify litigation, Plaintiffs argue that the proposed Class consists of numerous individual bondholders whose loss is less than $15,000. According to Plaintiffs, of the three-hundred and thirty one (331) class members who have contacted Plaintiff's Counsel to date, two-hundred and twenty (220) have losses ranging from $5,000-$50,000. Furthermore, many of these Heritage Bond investors as a group are elderly, just like plaintiff Lew Herrmann, and have consistently advocated class certification as the most efficient, orderly and just means to resolve their claims. (*See* Declaration of Brian Miller in Support of Motion for Class Certification, p. 1.) Thus, the class litigation of the claims of potentially hundreds, if not thousands, of Heritage Bond purchasers not only gives plaintiffs with small claims a chance to obtain redress through

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 10
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

aggregation against a well financed and organized defense but also promotes greater fiscal and logistical efficiency. Denying certification would be drastic because it would create the prospect of inefficient and costly multi-forum litigation that would not only be undesirable, but prejudicial to all parties-plaintiffs, defendants and witnesses-as well as the courts.

In light of the foregoing, this Court concludes that Plaintiffs meet the superiority requirement and that a class action is superior to any other method of adjudicating the litigation of the Heritage Bond claims.

### III. Conclusion

In light of the foregoing, this Court grants Plaintiffs' Motion for Class Certification.

IT IS SO ORDERED.

C.D.Cal.,2004.
In re Heritage Bond Litigation
Not Reported in F.Supp.2d, 2004 WL 1638201 (C.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2:02ml01475 (Docket) (Aug. 20, 2002)
• 2002 WL 33950379 (Trial Pleading) Second Amended Complaint (Mar. 18, 2002) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**



| | |
|---|---|
| IN RE OSB ANTITRUST LITIGATION | Master File No.  06-826 (PSD) |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | JURY TRIAL DEMANDED |

## O R D E R

AND NOW, this 25th day of September, 2006, upon consideration of Defendants'
Motion to Dismiss The Consolidated Class Action Complaint (Doc. No. 127), Indirect Purchaser
Plaintiffs' Response to Defendants' Motions to Dismiss and for Summary Judgment (Doc. No.
146-1), Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss The
Consolidated Amended Class Action Complaint (Doc. No. 156), and any related submissions, it
is Ordered as follows:

**State Law Claims**

1.     The parties have failed to cite any clear authority respecting whether California,
the District of Columbia, or New Mexico permit claims by indirect purchaser plaintiffs.
Accordingly, Defendants' motion to dismiss the following state law claims is **DENIED without
prejudice**: California Business and Professions Code §17200, *et seq.* (2006); D.C. Code §28-
3904 (2006); N.M.S.A. Stat. §57-12-3 (2006). Defendants may renew their motion at summary
judgment.

100754
Electronically Received
ZHVMG

September 26 2006
File No. #: 3-360-0001

2.    In their motion to dismiss Plaintiffs' claim under Massachusetts Consumer Protection Act, G.L.C. 93A (2006), Defendants address §11 of the Act. Plaintiffs have brought their claim under §9 of the Act, however. Defendants' arguments and citations are therefore inapposite. Accordingly, Defendants' motion to dismiss this claim is **DENIED**.

3.    In their motion to dismiss, Defendants address Plaintiffs' claim under New York General Business Law addresses §340, the Donnelly Act. Plaintiffs have brought their claim not under the Donnelly Act, however, but under §349. NY CLS Gen. Bus. §349 (2006). Defendants' arguments and citations are therefore inapposite.  Accordingly, Defendants' motion to dismiss this claim is **DENIED**.

4.    Defendants have moved to dismiss Plaintiffs' claim brought under Mississippi Code §75-21-3 (2006), arguing that the statute requires that conspiratorial conduct be carried out entirely within the state of Mississippi. The authority cited in the parties' briefs is less than clear. The only Court to address the issue in any substantial way held that plaintiffs in a Mississippi antitrust action must allege "at least *some* conduct by [the defendants] which was performed wholly intrastate." In re Microsoft Corp. Antitrust Litigation, 2003 WL 22070561, at *2 (D. Md. 2003). The court did not, however, specify the extent of the conduct necessary to satisfy this standard. In the absence of clear authority, I cannot say that Plaintiffs' allegations do not indicate sufficient intrastate conduct to survive a motion to dismiss. Accordingly, Defendants' motion to dismiss this claim is **DENIED**.

5.    Defendants have moved to dismiss Plaintiffs' claim under the "catch-all" provision of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-2(4)(xxi) (UTPCPL). Defendants argue that the statute requires Plaintiffs to plead all the

-2-

elements of fraud, including justifiable reliance. Plaintiffs contend that recent Pennsylvania state court decisions have dispensed with the requirement to plead justifiable reliance as part of a fraud claim.

6.    The Third Circuit recently held that Pennsylvania state court decisions require plaintiffs to plead justifiable reliance in connection with UTPCPL claims. See Tran v. Metropolitan Life Insurance Co., 408 F.3d 130, 141 (3d Cir. 2005). Plaintiffs have not done so. Accordingly, Defendants' motion to dismiss this claim is **GRANTED**. Plaintiffs' claim under the UTPCPL is **DISMISSED with prejudice**.


**Standing**

7.    Defendants argue that the named Plaintiffs lack standing to assert claims based on state laws if they are not residents of those particular states. To establish standing, Plaintiffs must allege actual injury, traceable to Defendants' allegedly wrongful action, that will likely be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs have satisfied the elements of standing; they have alleged a concrete economic injury, traceable to Defendants' alleged conspiracy, that may be remedied by a judgment in Plaintiffs' favor. The remaining issue is whether named plaintiffs who do not reside in the challenged states, but who nonetheless were injured by Defendants' alleged conduct, may bring claims on behalf of residents of those states. This is a question of whether named Plaintiffs may properly represent the purported class, not whether they have standing to bring their claims in the first instance. Accordingly, Defendants' motion to dismiss on this basis is **DENIED**. Defendants may renew their standing arguments at the class certification stage.

## Unjust Enrichment

8.    Defendants have moved to dismiss Plaintiffs' unjust enrichment claims brought under the laws of "all" jurisdictions except Iowa. *See Defendants' Reply Memorandum, at 12.* In their briefs, however, both parties offer coherent argument respecting only the case law of Florida, New York, North Carolina, and Pennsylvania. Accordingly, I will consider only these claims.

9.    Florida law does not permit indirect purchaser plaintiffs to recover under a theory of unjust enrichment. See Nova Information Systems, Inc. v. Greenwich Ins. Co., 2002 WL 32075792, at *10 (M.D. Fla. 2002) ("Plaintiff's claim of unjust enrichment fails because Plaintiff did not confer any direct benefit upon Defendants."). Accordingly, Plaintiffs' claim for unjust enrichment under Florida law is **DISMISSED with prejudice**.

10.    The parties have failed to cite any clear authority respecting whether New York law permits indirect purchaser plaintiffs to recover in unjust enrichment. Compare Jet Star Enterprises, Ltd. v. Soros, 2006 WL 2270375, at *5 (S.D.N.Y. 2006) ("To succeed on a claim for unjust enrichment ... plaintiff must have had direct dealings or some sort of quasi-contractual relationship with each defendant) with Cox v. Microsoft Corp., 8 A.D.3d 39, 40-41 (N.Y. App. Div. 2004) ("[Indirect purchaser] plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment.") and Manufacturers Hanover Trust Co. v. Chemical Bank, 160 A.D.2d 113, 117 (N.Y. App. Div. 1990) ("It does not matter whether the benefit is directly or indirectly conveyed."). Accordingly, Defendants' motion to dismiss Plaintiffs' claim for unjust enrichment under New York law is **DENIED**.

11.     North Carolina law permits indirect purchaser plaintiffs to recover on a theory of unjust enrichment. See Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd., 72 Fed.Appx. 916, 921 (4th Cir. 2003) ("Under North Carolina law, it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction."). Accordingly, Defendants' motion to dismiss Plaintiffs' unjust enrichment claim under North Carolina law is **DENIED**.

12.     Under Pennsylvania law, indirect purchaser plaintiffs may not recover on a theory of unjust enrichment. Stutzle v. Rhone-Poulenc S.A., 2003 WL 22250424, at *1 (Pa. Com. Pl. 2003) ("To state a claim for unjust enrichment, the plaintiffs must allege that they conferred a benefit on the defendant, that defendant appreciated the benefit under the circumstances and that the defendant accepted and retained the benefit without payment for value."). Because indirect purchaser plaintiffs by definition have "no direct dealings with defendants ... any unjust enrichment claim would belong to the direct purchasers, not to indirect purchasers." Id. Accordingly, Plaintiffs' unjust enrichment claim under Pennsylvania law is **DISMISSED with prejudice.**

**Fraudulent Concealment**

13.     Defendants have moved to dismiss Plaintiffs' claims under the laws of the District of Columbia, Kansas, Mississippi, North Carolina, Tennessee, and Wisconsin, on the ground that Plaintiffs have not adequately pled fraudulent concealment under Fed. R. Civ. P. 9(b) to toll the statute of limitations in these jurisdictions. The Third Circuit requires plaintiffs to plead fraudulent concealment with particularity, except where "factual information is peculiarly within

the defendant's knowledge or control." In re Craftmatic Securities Litigation, 890 F.2d 628, 645 (3d Cir. 1989). The Craftmatic Court did not specify what type of factual information is generally regarded as "peculiarly within the defendant's knowledge or control," nor the degree of particularity required under Rule 9(b). Plaintiffs have not alleged that information that would have alerted them to Defendants' allegedly conspiratorial actions was "peculiarly within the defendant's knowledge or control."

14.    Nevertheless, other courts in this Circuit addressing this issue have held that "the fraud may be self-concealing or the conspiracy of such a character that its successful operation conceals itself." Pennsylvania v. Milk Industry Mgm't Corp., 812 F.Supp. 500, 504 (E.D.Pa. 1992). See also Bethlehem Steel Corp. v. Fischbach & Moore, Inc., 641 F.Supp. 271, 274 (E.D.Pa. 1986); In re Mercedes-Benz Anti-Trust Litigation, 157 F. Supp. 2d 355, 369 (D.NJ. 2001) (finding a single allegation of an affirmative act of concealment sufficiently particular to survive a Rule 12(b)(6) motion to dismiss). Plaintiffs have alleged that Defendants entered into a "successful, illegal price-fixing conspiracy that by its nature was inherently self-concealing." Indirect Purchaser Plaintiffs' Consolidated Amended Class Action Complaint, at ¶ 185. Plaintiffs have further alleged that Defendants employed "secret and surreptitious communications by use of the telephone or in-person meetings, covert signals, intentional avoidance of written records and misrepresentations to customers falsely attributing price increases to competitive factors." Id., at ¶ 188. Construing these factual allegations in the light most favorable to Plaintiffs, I cannot say that Plaintiffs' claim does not survive a Rule 12(b)(6) motion under the Craftmatic standard. Accordingly, Defendants' motion to dismiss Plaintiffs' fraudulent concealment claim is **DENIED without prejudice.** Defendants may renew the

motion at summary judgment.

AND IT IS SO ORDERED.

Paul S. Diamond, J.

25

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
In re Worlds of Wonder Securities
LitigationN.D.Cal.,1990.
      United States District Court, N.D. California.
   In re WORLDS OF WONDER SECURITIES
                  LITIGATION.
              **No. C 87 5491 SC.**

             March 23, 1990.

                  Opinion
CONTI, Senior District Judge.

              I. Introduction

**\*1** Plaintiffs move this court for a class certification
pursuant to Fed.R.Civ.P. 23 in this action for federal
securities laws violations and state law claims.
Plaintiffs seek certification of a plaintiff class,
exclusive of Defendants, comprising persons who
purchased securities of Worlds of Wonder, Inc.
("WOW"), during the period from June 20, 1986,
through November 9, 1987, inclusive (the "Class
Period"). Within this primary class, Plaintiffs seek
certification of two subclasses: Subclass One to
comprise class members who purchased WOW
common stock; and Subclass Two to comprise class
members who purchased WOW 9% convertible
subordinated debentures due in the year 2012
("Debentures").

Plaintiffs [FN1] Third Amended and Consolidated
Complaint (the "Complaint") pleads claims against
WOW, its directors and certain of its senior officers
[FN2] its venture capitalists,[FN3] its auditor,[FN4] its
underwriters,[FN5] and its investment banker.[FN6]
The Complaint alleges that Defendants pursued a
common course of conduct in knowingly or
recklessly making false and misleading statements,
while omitting material adverse facts, about WOW's
earnings, assets, revenues, inventories, financial
condition, and business prospects in public financial
statements and prospectuses disseminated during the
Class Period.[FN7]

              II. Background

On June 20, 1986, WOW offered 6,000,000 shares of
common stock in a Initial Public Offering ("IPO")

which was underwritten by defendants Smith Barney
and Dean Witter. Complaint ¶ 35. WOW made
several post IPO public statements regarding its
financial condition and prospects. Complaint ¶ ¶
40, 46(a), 52(a), 46(c), 51(a), 66. On June 4, 1987,
WOW offered $80 million of the Debentures
pursuant to a registration statement and a prospectus.
Complaint ¶ 53.[FN8] On November 9, 1987, WOW
announced that it had suffered a net loss of $53.5
million for the prior six months. Complaint ¶ 77.
In December WOW defaulted on its first interest
payment to the Debenture holders and on December
21, 1987, WOW filed for bankruptcy. Complaint ¶ ¶
78, 79.

              III. Discussion

Before discussing the merits of this motion, two
preliminary comments are in order. First, the court
notes that class actions commonly arise in securities
fraud cases as the claims of separate investors are
often too small to justify individual lawsuits, making
class actions the only efficient deterrent against
securities fraud. Harris v. Palm Springs Alpine
Estates Inc., 329 F.2d 909, 913 (9th Cir.1964).
Accordingly, the Ninth Circuit and courts in this
district hold a liberal view towards class actions in
securities litigation. See In Re Activision Securities
Litigation, 621 F.Supp. 415, 428 (N.D.Cal.1985).
Second, the issues in a class certification motion are
of a limited and transient nature. A district court
must not consider the merits of the action when
determining whether class certification is appropriate.
Eisen v. Carlise-Jacquelin, 417 U.S. 156, 178 (1974);
Blackie v. Barrack, 524 F.2d 891, 901 (9th
Cir.1975).[FN9] Additionally, class certification under
Rule 23 is a preliminary ruling and is subject to
modification. Weinberger v. Jackson, 102 F.R.D.
839, 843 (N.D.Cal.1984). A district court, however,
should determine that the proposed class
representatives are part of the class and suffered the
same injury as the putative class members. General
Telephone Co. of the Southwest v. Falcon, 457 U.S.
147; 156 (1982). With these preliminary comments
in mind, the court turns to Rule 23 and the merits of
Plaintiffs' motion.

              A. Rule 23

**\*2** Rule 23(a) requires that a court to consider four
prerequisites when determining whether a class

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                         Page 2
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
**(Cite as: Not Reported in F.Supp.)**

should be certified. It provides as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four prerequisites are commonly called (1) Numerosity, (2) Commonality, (3) Typicality, and (4) Adequacy. *See Weinberger,* 102 F.R.D. at 844. If a court finds that Rule 23(a)'s prerequisites are satisfied it then should consider if the conditions for the requested form of class action under Rule 23(b) are satisfied. Plaintiffs' request a class certification under Rule 23(b)(3) [FN10] which requires the court to find

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The court will now apply Rule 23 to this case.

### B. Rule 23(a)

The court will first determine if the prerequisites of Rule 23(a) are satisfied in this case.

### 1. Numerosity

Plaintiffs' proposed class would comprise thousands of purchasers of 6,000,000 shares of WOW stock and at least $80 million of the Debentures. The proposed Debenture Subclass would comprise at least 71 investors. Declarations of Ray Condon ¶ 3 and Carl

Doerge ¶ 3. Under these circumstances, the court finds that the proposed class is so numerous that joinder of all class members is impracticable. [FN11]

### 2. Commonality

The gravamen of Plaintiffs' complaint is that Defendants, over a 18 month period, disseminated misrepresentative information or omitted to state material facts in public statements and prospectuses, all of which artificially inflated the price of WOW's securities and consequently caused harm to the purchasers of the securities. The court finds that Plaintiffs' allegations give rise to common questions sufficient to satisfy Rule 23.

In *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), the Ninth Circuit commented:

Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken a common sense approach that the class is united by a common interest in determining whether a defendants' course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class member's positions, and that the issue may profitably be tried in one suit.

**\*3** Thus, it is not necessary that all members of Plaintiffs' proposed class be identically situated; it is only necessary that they were all harmed through Defendants' alleged course of fraudulent conduct over the Class Period. [FN12]

### 3. Typicality

Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. Accordingly, differences in the amount of damage, the size or manner of [stock] purchase, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.

*Weinberger,* 102 F.R.D. at 844 (*quoting* 5 Newberg on Class Actions, § 8816, at 850 (1977)). The court finds that Plaintiffs' claims are typical of the putative class in that the claims all arise out of the same alleged misrepresentations and omissions. Contrary to Defendants' arguments, it is of no consequence that the named Plaintiffs purchased their securities at a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 3
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
(Cite as: Not Reported in F.Supp.)

different time and price than the putative class members or that the named Plaintiffs purchased a lesser amount of securities than other class members. *Id.; see also Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 476-77 (9th Cir.1976). If the court were to follow Defendants' reasoning it would be nearly impossible to ever certify a class action in a securities fraud case involving any significant period of time as the putative class would always comprise investors who purchased securities at different times and prices. [FN13]

### 4. Adequacy

There are two criteria for determining adequacy of representation: (1) the named plaintiffs must appear to be represented by qualified counsel and able to prosecute the class action vigorously, and (2) the named plaintiffs must not have antagonistic or conflicting interests with the putative class members. *Leverill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978); *Weinberger,* 102 F.R.D. at 844-45. The court finds that this test is satisfied. Defendants' argument that the named Plaintiffs are not adequate because they do not possess enough personal knowledge of the facts underlying this action is unconvincing. The named Plaintiffs all appear familiar with the basic outline of this action in that they understand the gravamen of the claims in the Complaint. It is not necessary that they be intimately familiar with every factual and legal issue in the case. "A complex securities action cannot be founded upon an investigation of a litigant." *Weinberger,* 102 F.R.D. at 845. The reality of complex cases of this type is that clients must defer a great amount of discretion to their lawyers. *Id.* Accordingly, the named Plaintiffs are adequate representatives of the putative class.

The court therefore finds that the Numerosity, Commonality, Typicality, and Adequacy prerequisite requirements of Rule 23(a) are satisfied.

### C. Rule 23(b)(3)

Rule 23(b)(3) requires that the common issues of law or fact predominate over individual issues and that a class action be the superior means to resolve the litigation. "The mere presence of potential individual issues does not defeat the predominance of common questions." *McFarland v. Memorex,* 96 F.R.D. 357, 363 (N.D.Cal.1982). The court finds that the common issues of law and fact predominate over any

individual issues and that, given the large number of WOW investors, a class action is the superior means of adjudicating this litigation. The bulk of Defendants' arguments concern the extent to which individual issues will make Plaintiffs' proposed class action unmanageable; they will be addressed below.

### 1. The Rule 10b-5 Claim Involving the IPO (Count I).

**\*4** Defendants contend that individual issues of reliance will predominate the common issues in Plaintiffs' Rule 10b-5 claim because reliance must be proven for each individual plaintiff. Defendants concede that under *Basic v. Levinson,* 485 U.S. 224 (1988), reliance on misrepresentations may be presumed for Rule 10b-5 claims based on purchases on a free and open market. They contend, however, that this "fraud-on-the-market" reliance cannot be presumed for purchases made during an IPO and that therefore each member of the putative class would have to prove actual reliance on the prospectus. Regardless of the merits of Defendants' argument, it is incomplete.

In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153-54 (1972), the Supreme Court held that individual proof of reliance is presumed where an action is based on material *omissions.* This presumption remains even where a complaint alleges a mixture of omissions and misrepresentations. *Weinberger,* 102 F.R.D. at 846; *Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 477 n. 3 (9th Cir.1976). Plaintiffs' complaint alleges a course of conduct involving both misrepresentations and omissions and thus, under *Ute Citizens,* reliance on the alleged omissions in the prospectuses can be presumed. Accordingly, individual issues of reliance regarding the IPO will not predominate the common issues.

### 2. The Pendant State Law Claims

Defendants argue that because it is likely that the putative class members reside in many different states, the necessity of applying California's choice-of-law rule renders class treatment of the state law claims unmanageable. Further, even in the event that the court were to undertake this burden, Defendants argue, California's choice-of-law rules would require the court to apply the substantive state law of the state in which each class member resides, again rendering a class action unmanageable. Moreover, even if the court undertook the burden of

Not Reported in F.Supp.                                                                                  Page 4
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
(Cite as: Not Reported in F.Supp.)

applying the substantive law of several states. Defendants contend that individual issues of reliance, causation, and defenses would predominate over the common issues.

The court shares Defendants' concerns over the difficulty of applying various states' substantive laws, but this concern does not militate against class certification at this juncture. Courts in this district generally presume in class certification motions that California law will apply unless the defendants demonstrate conclusively that the laws of other states will apply. _Robert v. Heim,_ 670 F.Supp. 1466, 1494 (N.D.Cal.1987). In this motion, Defendants have not overcome this "substantial burden." _In Re Activision Securities Litigation,_ 621 F.Supp. 415, 430 (N.D.Cal.1985).

A court in this district is required to apply California choice-of-law rules to a conflict of law question. _Harmsen v. Smith,_ 693 F.2d 932, 946-47 (9th Cir.1982). Under _Harmsen,_ the burden is on the defendant to show: (1) that a true conflict exists; (2) that each state has an interest in applying its own law; and (3) if each state has an interest, which state's interest would be more impaired if its law were not applied. _Heim,_ 670 F.Supp. at 1493. Defendants argue that under this test the other states' interests would be more impaired than California's interest because California does not have an interest in deterring California defendants from injuring non-resident plaintiffs.[FN14]

*5 The court finds that Defendants have not met their burden. At this juncture, there is insufficient information regarding the putative class members' residences for the court to make an informed choice-of-law ruling. At this point, the conflicts problem is only a possibility and it would be premature for the court to consider it in this initial class certification motion. _Weinberger,_ 102 F.R.D. at 847.

The court notes that it does not believe applying California law to this class action would violate due process. In _Phillips Petroleum Co. v. Shutts,_ 472 U.S. 797 (1985), the Supreme Court formulated a two-step test for determining whether a state may constitutionally apply its law to all of the claims of a nationwide class. First, a court must determine if a conflict exists; second, if there is a conflict, the court must determine whether the state has "a 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests in order to ensure that the choice of law is not arbitrary or unfair.' " _Id._

at 821-822. Given that Plaintiffs have alleged that WOW has its principal place of business in California, that the corporate officers are all residents of California, and that the alleged misrepresentations emanated from California, there appears to be significant contact between Plaintiffs' claims and California such that application of California law would not be arbitrary or fundamentally unfair. _See Heim,_ 670 F.Supp. at 1494.

The court also notes that at least one court in this district found California law to be applicable under facts similar to the facts in this action. In _In Re Pizza Time Theatre Securities Litigation,_ 112 F.R.D. 15, 20 (N.D.Cal.1986), the court found, after applying the _Harmsen_ test, that California law should be applied to pendant state law claims in a class action involving class members from many states. The court found that the various states shared the goals of deterring fraudulent conduct and providing a remedy for those who are injured by fraudulent conduct. It also found that all the states would prefer that their citizens' claims be litigated under California law than not at all. _Id._ The court then found that the realities of complex litigation and class actions made it unlikely that nonresident plaintiffs could afford to litigate their individual state claims except in the class action. Consequently, the court ruled that "defendants cannot show that any jurisdiction has a greater interest in applying its own law than in assuring the maintenance of a class action" ... and that "no state's interest would be more impaired by the blanket application of another state's law than by its own." _Id._

Defendants also argue that even if California law were applied, the individual issues would predominate the common issues. The court does not agree. The evidence necessary to prove the federal securities law claims is similar to that needed to prove the state law claims. _Cameron,_ 547 F.2d at 479. Moreover, under California law "if the trial court finds that material misrepresentations were made to the class members, at least a inference of reliance ... arise[s] as to the entire class." _Vasquez v. Superior Court,_ 4 Cal.3d 800, 814, 94 Cal.Rptr. 796, 484 P.2d 964 (1971).

*6 If at a later time it appears that the choice-of-law issues are too cumbersome for class action treatment, the court can modify this Order accordingly.

3. Debenture Class

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
**(Cite as: Not Reported in F.Supp.)**

Defendants argue that a class action is not the most superior method for the fair and efficient adjudication of the Debenture related claims because the Debenture investors are mostly large-scale purchasers [FN15] who do not need a class action to press their claims. In support of this contention, Defendants refer the court to a lawsuit pending before this court in which the plaintiff is a WOW Debenture purchaser and alleges similar claims against virtually the same parties as the defendants in this action. *See Steinhart Partners v. Smith Barney, et. al.,* No. C 89-1566 SC.

At this juncture the court believes that a class action is the best way for the Debenture related issues to be adjudicated. Defendants only argue that the size and number of most of the Debenture purchasers militate against certifying a class action because they can afford to maintain independent suits. There is not a specific class size at which a class action becomes better than a group of individual actions. *See Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986) (class of 29 certified); *see* C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil 2d § 1762 (1986). Although Defendants aver that most of the Debenture investors are large institutions, they do not aver that *all* the proposed Debenture subclass members can maintain independent law suits. Defendants have not identified any other reasons why a class action would not be appropriate for the Debenture claims. The court has already found that the Numerosity requirement of Rule 23(a) is satisfied and, thus, will not now find that a class action is not the best method to adjudicate the Debenture claims without some showing that a class action will prejudice the parties or be too cumbersome to manage.

If at a future time it becomes apparent that a significant number of the Debenture purchasers have opted-out of the class then the court can decertify the Debenture subclass.

### D. Plaintiffs' Standing Under Section 12(2)

Defendants argue that none of the named Plaintiffs have standing to represent the proposed class of plaintiffs under section 12(2) because section 12(2) only applies to an initial distribution of securities and none of the named plaintiffs purchased WOW shares in the IPO. Defendants' argument would be best considered in a motion to dismiss as they essentially contend that Plaintiffs have not stated a claim for which relief can be granted. Accordingly, the court will not rule on this issue in this motion. Instead,

defendants should file a motion to dismiss at which time the parties and the court can give fuller consideration to the issue. For the benefit of the court and the parties, however, the court will note some preliminary observations on this issue.

Apparently, the original 4 million shares were underwritten by Smith Barney and Dean Witter and were sold at $18 a share to various subunderwriters. Defendants contend that plaintiff Wind purchased her shares on the same day as the IPO at $28.25 from one of the sub-underwriters who brought the shares to market. [FN16] On the factual record before the court, the court is unable to determine conclusively from whom plaintiff Wind purchased her WOW shares.

*7 There is a split in the case law on the issue of the scope of section 12(2) liability. Some courts have found that section 12(2) applies to only an initial distribution of securities. *See e.g.* Strong v. Paine Webber, Inc., 700 F.Supp. 4, 5 (S.D.N.Y.1988). Others have ruled that section 12(2) also applies to fraud occurring in secondary markets. *See e.g.* Elysian Fed. Sav. v. First Interregional Equity, 713 F.Supp. 737, 747-51 (D.N.J.1989). These latter courts have emphasized that section 12(2) refers to a person who "sells a security ... by means of a[n] ... oral communication" and that this language indicates that Congress intended section 12(2) to be applied to sales by means of oral communications in secondary markets as well as "offers" to sell a security "by means of a prospectus" in initial public offerings. *Id.* at 750. Plaintiffs' section 12(2) claim, however, does not allege any oral communication in connection with the WOW stock sale; they allege only that the prospectus contained material misrepresentations and omissions. Complaint ¶ 139. Thus, even if section 12(2) should be applied to sales in secondary markets, Plaintiffs' section 12(2) claim, even under an expansive reading of section 12(2) seems limited to sales in the IPO.

The issue now becomes whether defendants Smith Barney and Dean Witter were persons who sold WOW shares by means of a prospectus to plaintiff Wind. It is well settled that section 12 "imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against his seller's seller." Pinter v. Dahl, 486 U.S. 622, 644 n. 21 (1989). The court already has determined that Smith Barney and Dean Witter were "sellers" under section 12(2). Order Re: Motions to Dismiss Second Amended Consolidated Complaint, p. 19. Although Wind may not have purchased her

Not Reported in F.Supp.                                                                                                      Page 6
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
(Cite as: Not Reported in F.Supp.)

WOW shares directly from these defendants, it is unnecessary for title to pass to establish liability under section 12. _Pinter,_ 486 U.S. at 644. In _Pinter,_ the Supreme Court ruled that section 12 "liability extends, to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." _Pinter,_ 486 U.S. at 647.[FN17] Plaintiffs allege that Smith Barney and Dean Witter prepared the prospectus and actively promoted the WOW stock before the IPO in "road shows" and "direct meetings" with members of the putative class in addition to orchestrating the sale of the WOW shares to the investing public. Complaint ¶ 138. Plaintiff Wind purchased her WOW shares on the same day as the IPO. Under these circumstances, it is plausible that Smith Barney and Dean Witter were "sellers" of the WOW shares which plaintiff Wind purchased.[FN18]

If Plaintiffs are able to state a section 12(2) claim then plaintiff Wind would have standing to represent a class of WOW investors who purchased WOW shares in connection with the IPO. The factual record is simply too undeveloped for the court to determine conclusively when and from whom plaintiff Wind purchased her shares. If the court ultimately finds that she and other class members similarly situated purchased their WOW shares in connection with the IPO and that they are able to state a section 12(2) claim then an appropriate sub-class can be certified assuming the Rule 23 requirements remain satisfied.

### E. Insider Trading Claims

**\*8** Defendants Abercrombie, WSP, and Robinson argue that none of the named Plaintiffs has standing to allege insider trading claims because none traded "contemporaneously" with their alleged violative sales. Under rule 10b-5, a seller who possesses "inside" information has a duty to disclose that information before trading, or abstain from trading all together. _Wilson v. Comtech Telecommunications Corp.,_ 648 F.2d 88, 94 (2d Cir.1981). The duty of disclosure, however, "is owed only to those investors trading contemporaneously with the insider; noncontemporaneous traders do not require the protection of the 'disclose or abstain' rule because they do not suffer the disadvantage of trading with someone who has superior access to information." _Id._ at 94-95. A review of the case law demonstrates that the length of time constituting "contemporaneous trading" is not a fixed period but must be determined

on a case by case basis. _See_ W. Wang, _The "Contemporaneous" Traders Who Can Sue an Inside Trader,_ 38 Hastings L.J. 1175, 1179-84 (August 1987).

Given the unclear status of the law on this issue and the undeveloped factual record in this action, it would be premature for the court to determine conclusively the parameters of the "contemporaneous trading" window. _See In Re McDonnell Douglas Securities Litigation,_ [1982 Transfer Binder] FED.SEC.L.REP. (CCH) ¶ 98,737, at p. 93,721 (E.D.Mo.1982). Plaintiff's allegations demonstrate that some of the named Plaintiffs purchased WOW shares shortly after some of the Defendants sold their WOW shares. Complaint ¶¶ 4-12, 80. Whether these transactions constitute "contemporaneous trading" does not need to be determined now.

At this stage of the litigation, the common question of whether Defendants possessed inside information which required then to 'disclose or abstain' predominates over the individual issues. _See Backman v. Polaroid,_ [1983-84 Transfer Binder] FED.SEC.L.REP. (CCH) ¶ 99,631, at p. 97,487 (D.Mass.1982). If Plaintiffs establish that Defendants violated the insider trading laws then the issue concerning the "contemporaneousness" of the individual class members' purchases and individual questions of damages can be addressed separately.[FN19]

The parties also dispute whether plaintiff Miller, who only purchased Debentures, has standing to state an insider trading claim against Defendants. The law is unclear whether a debenture purchaser has standing to sue an inside trader who traded in stock. _See_ Wang, 38 Hastings L.Rev. at 1187-91. As Plaintiffs concede, there is no case law which holds that a debenture trader has standing to sue a stock trader; there is, however, case law permitting option holders to sue stock traders. _Id._

As with the section 12(2) claim, the court believes that this issue would be better addressed in a motion to dismiss. The parties have not addressed this issue thoroughly so it would be premature for the court to rule on this issue in this Order.

### F. Deloitte's Class Period Shortening Argument

**\*9** Defendant Deloitte argues that any class certified against it should be limited to investors who purchased common stock after May 14, 1987 because

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 7
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
**(Cite as: Not Reported in F.Supp.)**

that was the earliest date at which Deloitte's audit work could have been released to the public. Plaintiffs' complaint, however, seems to allege violative conduct by Deloitte throughout the Class Period.[FN20]  Because resolving this issue goes to the merits of Plaintiffs' action the court will not shorten the class period as to Defendant Deloitte at this juncture.  *See Weinberger v. Thorton,* 114 F.R.D. 599, 606 (S.D.Cal.1986).  Deloitte, however, is free to attack Plaintiffs' complaint in a motion to dismiss.


G. Section 11 Standing

Defendants argue that plaintiffs Nisselson and Untermeyer do not have standing to assert a section 11 claim because they cannot "trace" their WOW stock to the alleged misleading registration statement. Defendants concede, however, that plaintiffs Wind and Greenstein have standing to bring the section 11 claim.  Thus, because there are named Plaintiffs with uncontested standing it is not necessary for the court to determine whether Nisselson and Untermeyer also have standing.  Whether Nisselson and Untermeyer can "trace" their shares goes to the merits of their claims and should not be addressed in a class certification motion.  *See In Re LILCO Securities Litigation,* 111 F.R.D. 663, 671 (E.D.N.Y.1986).


IV. Conclusion

All parties should bear in mind the tentative nature of this class certification Order.  Rule 23 provides this court with much flexibility in managing this class action and adapting it to changed circumstances.  A class or subclass can be decertified for a particular claim if it appears that Rule 23's requirements are not satisfied; new subclasses can be certified if it appears that they are necessary and appropriate.   Also, Defendants are always free to challenge the merits of the class action through appropriate pretrial motions.

In accordance with the foregoing, it is hereby ORDERED that

(1) a plaintiff class be certified in this action consisting of all persons who purchased the securities of Worlds of Wonder, Inc. ("WOW"), during the period June 20, 1986, through November 9, 1987, both dates inclusive (the "Class Period");

(2) the overall Class Period shall include two subclasses, defined as follows:

(a) *Subclass One:*  All persons who purchased WOW common stock during the Class Period;

(b) *Subclass Two:*  All persons who purchases WOW 9% convertible debentures due 2012 during the Class Period;

Excluded from the overall class and the subclasses are the defendants herein, members of their families and the subsidiaries, affiliates, successors and assigns of any of the defendants.   As used herein, the term "person" includes any individual, corporation, partnership, association, joint stock company, trust, unincorporated association, entity, government and any political subdivision thereof.

(3) the attorneys of record for the named Plaintiffs are hereby designated as counsel for the above defined class;

**\*10** (4) a trial setting conference be scheduled on June 1, 1990, at 10:00 a.m., in Courtroom 1;

(5) Plaintiffs file within 45 days of the filing date of this Order their proposed forms of notice for the pendency of this class action.

IT IS SO ORDERED.


FN1. The plaintiffs named in the complaint are Walter Untermeyer, Helena Gottleib, Verico S.A., Alan Nisselson, Trudy Whitman, Rosetta Miller, Nathan and Ann B. Regal, Paul Greenstein, Howard H. Weston, and Sylvia Wind.  All the plaintiffs purchased either WOW common stock or Debentures during the Class Period. Relevant information regarding each plaintiff will be provided when necessary.

FN2.  The "Individual Defendants" are Donald D. Kingsborough, Angelo M. Pezzani, Richard B. Stein, Barry H. Margolis, and John B. Howenstine.

FN3. The "Venture Capitalist Defendants" are Josephine E. Abercrombie Interests, Inc. ("Abercrombie"), Robinson Interests Inc. ("Robinson"), and WOW Shares Partnership of Houston ("WSP").

FN4. The "Auditor Defendant" is Deloitte Haskins & Sells ("Deloitte").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 8
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
(Cite as: Not Reported in F.Supp.)

**FN5.** The "Underwriter Defendants" are Smith Barney, Harris Upham & Co. ("Smith Barney") and Dean Witter Reynolds ("Dean Witter").

**FN6.** Smith Barney is named also as the "Investment Banker Defendant."

**FN7.** Plaintiffs' specific claims are as follows:
Count I: Violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against all defendants. Count II: Violations of section 20 of the Exchange Act against all defendants. Count III: Fraud against all defendants. Count IV: Negligent Misrepresentation against all defendants except the Venture Capitalist Defendants. Count V: Violations of section 11 of the Securities Act against the Underwriter Defendants involving the initial public offer ("IPO"). Count VI: Violations of section 11 of the Securities Act against the Underwriter Defendants involving the Debentures. Count VII: Violations of section 12(2) of the Securities Act against the Underwriter Defendants involving the IPO. Count VIII: Violations of section 12(2) of the Securities Act against the Underwriter Defendants involving the Debentures. Count IX: Violations of section 15 of the Securities Act against the Individual Defendants.

**FN8.** Defendants aver that Smith Barney actually sold $89,621,000 of Debentures by making purchases on the open market and then reselling them. Declaration of Carl Doerge ¶ 2.

**FN9.** Accordingly, the court will only rule on issues which need to be resolved to reach a determination regarding class certification.

**FN10.** In a class action certified under Rule 23(b)(3), a class member may choose to "opt-out" of the class and not be included in the judgment. See Rule 23(c).

**FN11.** Defendants contend that Plaintiffs have not satisfied the Numerosity requirement with respect to the insider trading claims because they have not demonstrated that Plaintiffs or any putative class members traded "contemporaneously"

with Defendants' alleged violative trades. Thus, according to Defendants, Plaintiffs have offered no proof as to how many class members would be able to state an insider trading claim. The court concedes that Defendants argument has some merit, but under the circumstances of this case the court finds that the Numerosity requirement is satisfied with respect to the insider trading claims. There were millions of WOW shares sold on the National Over the Counter Market during the Class Period, so with respect to any particular alleged violative trade it is likely that there are a large number of putative class members who purchased shares contemporaneously. See III.E.

**FN12.** Defendants argue that there is no pattern of WOW announcements which gives rise to a common course of conduct. The court disagrees. Plaintiffs' complaint alleges that Defendants continually misrepresented the financial health of WOW and omitted to state facts which would cast doubt on Defendants' optimistic reports throughout the Class Period. The fact that the stock price fluctuated over this period does not vitiate this allegation because even if the prices were changing the fluctuations could have been in response to other factors. If, as Plaintiffs contend, Defendants had disseminated the truth, the stock prices, though possibly still fluctuating, indubitably would have been lower or, perhaps, many investors would have decided not to buy WOW stock in the first place. Under these circumstances, Plaintiffs have shown that the alleged misrepresentations and omissions were common to all investors during the Class Period. See *Clark v. Watchie,* 513 F.2d 994, 1000 (9th Cir.1975).

**FN13.** The court finds that plaintiff Untermeyer is not subject to a unique defense and that his status as a sophisticated investor does not make him atypical. Although Untermeyer may have had doubts about WOW's managements' credibility, it appears that at the time he purchased his shares he relied on the veracity of statements made by WOW management. Declaration of Earnest Kaufmann, Exhibit A, pp. 93-94.

**FN14.** Defendants base this contention on a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                     Page 9
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004
**(Cite as: Not Reported in F.Supp.)**

ruling in an order signed by Judge Dowds in Los Angeles County Superior Court. Defendants' Exhibit 1.

FN15. Defendants assert that 71 sophisticated investors purchased $84 million of the Debentures which constitutes 94% of the Debentures sold by Smith Barney. Opposition Memorandum, p. 37.

FN16. Plaintiffs contend that plaintiff Wind purchases her shares directly from Smith Barney but the evidence before the court does not establish this.

FN17. The court notes that *Pinter* involved only section 12(1) and that the Court explicitly stated that the holding did not cover section 12(2). *Pinter,* 486 U.S. at 642 n. 20.

FN18. It appears that on the day of the IPO the lowest bid price for the WOW stock was $24.75 and the lowest ask price was $25.75. Supplemental Declaration of Daniel J. Bergenson, Exhibit H. Plaintiffs explain that the shares sold for more than $18, the originally contemplated price, because the demand outstripped the supply and the dealers were able to raise the asking price. Thus, despite the difference in price, there appears to be a direct link between Smith Barney and Dean Witter's solicitation efforts and plaintiff Winds' ultimate purchase of WOW shares.

FN19. The court is aware that certifying a class of Plaintiffs for the insider trading claims is problematic because an insider trading claim must be based on a particular inside trade. Wang, 38 Hastings L.Rev. at 1178. Thus, it appears that sub-classes may eventually need to be certified; each sub-class would comprise all class members who traded WOW shares contemporaneously with a particular trade. As Plaintiffs have alleged that Defendants collectively made approximately 48 violative trades, the court ultimately may have to certify 48 separate subclasses corresponding to each of the trades. Of course, if this becomes too cumbersome to manage the court may decertify the class with respect to the insider trading claims.

FN20. The Complaint alleges that "Deloitte participated in the conspiracy, *inter alia,* through its acquiescence in the violations of sound accounting principles perpetrated by WOW," but it does not provide a corresponding date. Complaint ¶ 31(d). Additionally, the complaint alleges that "[t]hroughout the class period, Deloitte was aware that WOW was disseminating to the public corporate reports and financial statements reporting on WOW's sales, revenues, earnings and liquidity...." Complaint ¶ 85.

N.D.Cal.,1990.
In re Worlds of Wonder Securities Litigation
Not Reported in F.Supp., 1990 WL 61951 (N.D.Cal.), Fed. Sec. L. Rep. P 95,004

Briefs and Other Related Documents (Back to top)

• 3:87cv05491 (Docket) (Oct. 29, 1987)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.