

Not Reported in A.2d                                                                                                           Page 1
Not Reported in A.2d, 2005 WL 1403761 (D.C.Super.)
**(Cite as: Not Reported in A.2d)**

Peterson v. Visa U.S.A., Inc.D.C. Super.,2005.Only the Westlaw citation is currently available.
Superior Court of the District of Columbia.
David PETERSON, et al. Plaintiffs,
v.
VISA U.S.A. INC., et al. Defendants.
**No. Civ.A. 03-8080.**

April 22, 2005.

David E. Jones of Heller Ehrman White & McAuliffe LLP, Washington, D.C.; Stephen V. Bomse and David M. Goldstein of Heller Ehrman White & McAuliffe LLP, San Francisco, CA; Robert C. Mason of Arnold & Porter LLP, New York, NY, for Defendant Visa U.S.A. Inc.
Kenneth A. Gallo, Patricia C. Crowley and Douglas C. Melcher of Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC; Gary R. Carney of Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY; Noah J. Hanft, Eileen S. Simon and James P. Masterson of MasterCard International, Purchase, N.Y. for Defendant MasterCard International Incorporated.
Paul Y. Kiyonaga and Debra L. Soltis of Kiyonaga & Soltis, P.C., Washington, D.C.; Neal S. Manne, Mark A. Evetts and Marc M. Seltzer of Susman Godfrey L.L.P., Houston, TX, for Plaintiffs.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS*
HEDGE, J.
*1 This matter comes before the Court on the Motion to Dismiss filed by defendants Visa U.S.A., Inc. ("Visa") and Mastercard International, Inc. ("Mastercard"). The Court has reviewed the filings and the record in this case. In addition, the Court heard oral arguments on August 3, 2004. Because the Court finds that D.C. plaintiff lacks standing, his claims are dismissed. The non-D.C. plaintiffs' claims are also dismissed under the doctrine of *forum non conveniens*. Defendants' Motion to Dismiss is therefore granted.

I. BACKGROUND

This case centers on defendants' "Honor all Cards" rule, which requires merchants that accept defendants' credit cards to also accept their debit cards. The "Honor all Cards" rule led to an earlier lawsuit in federal court, in which a number of merchants, including Wal-Mart, brought suit under the Sherman Antitrust Act ("Sherman Act"). The merchants alleged that defendants' policy constituted an illegal tying arrangement and that defendants conspired to create a monopoly over the debit card market. See Wal-Mart Stores, Inc. v. VISA USA, Inc. (In re Visa Check/Mastermoney Antitrust Litig.), 280 F.3d 124, 131 (2d Cir.2001). Plaintiffs in the federal lawsuit argued that defendants' tying arrangement forced merchants to pay a high processing fee on debit transactions. See id. This federal lawsuit resulted in a $3 billion settlement agreement. See In re Visa Check/Mastermoney Antitrust Litig., 396 F.3d 96 (2d Cir.2005).

In contrast to the merchants in *In re Visa Check/Mastermoney Antitrust Litig.*, plaintiffs in the instant case consist of a District of Columbia consumer ("D.C.plaintiff"), as well as consumers from seventeen other states ("non-D.C.plaintiffs").[FN1] Plaintiffs argue that merchants cannot afford to forfeit credit card sales, and thus, "are coerced into paying [defendants'] supracompetitive rates" for debit card transactions. Amended Complaint at ¶ 4. Plaintiffs contend that as a result of this scheme, the merchants pass these overcharges on to consumers in the form of price inflation. See id. at ¶ 7. Significantly, plaintiffs fail to identify any specific goods that they purchased, and that were burdened by defendants' overcharges. Instead, they make the broad assertion that they were overcharged on all consumer goods. *Id.*

> FN1. The seventeen other states are: Arizona, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Vermont, and Wisconsin. Many of these non-D.C. plaintiffs have also filed claims in their respective states, and defendants have filed Motions to Dismiss these claims too. To date, defendants have advised the Court that 13 of these state courts have dismissed the cases.

Plaintiffs seek damages from defendants, arguing that the tying arrangement violates the District of Columbia Antitrust Act ("DCAA"), as well as the antitrust statutes of the seventeen other states. In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 2
Not Reported in A.2d, 2005 WL 1403761 (D.C.Super.)
**(Cite as: Not Reported in A.2d)**

addition, plaintiffs seek injunctive relief, preventing defendants from enforcing their "No Discount or Surcharge" ("NDS") Rules. These rules, plaintiffs contend, prevent merchants from tallying the alleged overcharges on debit card transactions and adding them to the receipts as surcharges. *See id.* at ¶ 223. As a result, they allege, consumers fail to see the extra charges, and therefore lack the incentive to change to alternative payment methods.

*2 Defendants now move to dismiss plaintiffs' claims, arguing (1) that D.C. plaintiff lacks standing; and (2) that the Court should dismiss non-D.C. plaintiffs' claims under the doctrine of *forum non conveniens.*

II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Superior Court Civil Rule 12(b)(6) "is warranted when it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Herbin v. Hoeffel,* 806 A.2d 186, 194 (D.C.2002) (quoting *Klahr v. District of Columbia,* 576 A.2d 718, 721 (D.C.1990)) (internal quotations omitted). The "purpose of a Rule 12(b)(6) motion is to test the formal sufficiency of a statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." *Fraser v. Gottfried,* 636 A.2d 430, 432 (D.C.1994) (quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 1356, at 294 (2d ed.1990)) (internal quotations omitted).

III. DISCUSSION

A. STANDING

D.C. plaintiff opposes defendants' Motion to Dismiss, arguing that he has standing to sue as an indirect purchaser pursuant to D.C.Code § 28-4508 and § 28-4509. Defendants argue that the plain language of these two sections and applicable case law prove that D.C. plaintiff lacks standing. Whether D.C.Code § 28-4508 and § 28-4509 provide D.C. plaintiff with standing raises an essential question for the Court because the absence of standing constitutes an appropriate basis for dismissal under Rule 12(b)(6). *See Friends of Tilden Park, Inc. v. District of Columbia,* 806 A.2d 1201 (D.C.2002) (remanding with directions to dismiss complaint for lack of standing).

1. Standing under § 28-4509

Section 28-4509 of the DCAA provides, "[a]ny indirect purchaser in the chain of manufacture, production, or distribution of goods or services, upon proof of payment of all or any part of any overcharge for such goods or services, shall be deemed to be injured within the meaning of this chapter." D.C.Code § 28-4509(a). Defendants argue that D.C. plaintiff lacks standing as an indirect purchaser under § 28-4509 because he fails to "allege that he purchased-directly or indirectly-the purportedly excessively priced debit card services that Visa and MasterCard provided to merchants." Def. Mem. at 14. D.C. plaintiff counters that he purchased certain goods that were burdened with the monopoly overcharge. *See* Plaintiffs' Mem. in Opp. at 19.

D.C. plaintiff lacks standing under § 28-4509 because he is not an indirect purchaser of defendants' debit card services. The merchants are the direct purchasers, and an appropriate indirect purchaser would be the next purchaser in the chain of distribution, ie., an individual who purchases the debit card services from the merchants. D.C. plaintiff, however, does not fit anywhere in the chain of distribution for defendants' debit card services. He is a non-purchaser of the services.

*3 The history behind the passage of § 28-4509 helps to illustrate that D.C. plaintiff is not an indirect purchaser. This provision was passed in response to the Supreme Court's decision in *Illinois Brick v. Illinois,* 431 U.S. 720 (1977). *Illinois Brick* involved a manufacturer of concrete block that conspired to fix the prices in violation of the Sherman Act. Plaintiffs in *Illinois Brick,* the State of Illinois and local governmental entities in the Chicago area, were not direct purchasers of the concrete block. Rather, they were indirect purchasers, as the concrete block reached them only through a three-part chain of distribution. First, the defendants manufactured the block and sold it to masonry contractors. Second, the masonry contractors built masonry structures using the block. Finally, general contractors added the masonry structures into buildings and sold them to plaintiffs. *See id.* at 727.

The Supreme Court rejected plaintiffs' claim for standing as an indirect purchaser, holding, "the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

injured in his business or property." *Id.* at 729 (internal quotations omitted). After the *Illinois Brick* decision, the D.C. Council passed § 28-4509, and in doing so "deliberately chose to reject the gloss put on the Clayton Act by *Illinois Brick* and to provide a contrasting antitrust scheme for the District of Columbia." *Holder v. Archer Daniels Midland Co., Civ. Action No. 96-2975, 1998 WL 1469620 at 3.*

D.C. plaintiff details the D.C. Council's reaction to *Illinois Brick* and emphasizes that it explicitly rejected the Supreme Court's holding. *See* Plaintiffs' Mem. in Opp. at 17-19. While it is true that the D.C. Council enacted § 28-4509 to overrule *Illinois Brick* and to allow indirect purchaser claims, D.C. plaintiff's claim does not fit into the indirect purchaser category. This is evident when comparing the facts of the instant case to *Illinois Brick.* Plaintiffs in *Illinois Brick* fit within the chain of manufacture, as they purchased buildings that contained the overpriced concrete block. In contrast, D.C. plaintiff did not purchase the debit card services from the merchants.

D.C. plaintiff contends that an indirect purchaser "need only have purchased some good or service that is burdened with a monopoly overcharge ... not have purchased the restrained good or service itself." Plaintiffs' Mem. in Opp. at 19. The problem with this argument is that D.C. plaintiff is claiming to have been overcharged on an enormous amount of products, and such a broad claim presents extraordinary complexities regarding proof. This proof would have to come from discovery from each merchant from whom goods were purchased. As the court in the parallel case filed in North Carolina accurately described: "[t]he Court cannot conceive of an economically feasible way to administer a trial which would require inquiry into how every retailer set the price for every consumer good sold in this state." *Morris v. Visa, et al.,* No. 03 CVS 2514, at ¶ 90 (attached as exhibit A to defendants' Consent Motion for Notice of Supplemental Authority, filed on October 28, 2004). Stated another way, the alleged harm is sufficiently indirect to the source of the alleged causative agent so as to be wholly speculative.

2. Standing under § 28-4508

*4 Section 28-4508 of the DCAA provides, "[a]ny person who is injured in that person's business or property by reason of anything forbidden by this chapter may bring a civil action for damages, for appropriate injunctive or other equitable relief, or for both." D.C.Code § 28-4508(a). A dispute exists as to whether the Court should look to federal or local case law in interpreting the "by reason of" language. The wording in § 28-4508 is similar to that in the federal antitrust private cause of action provision. *See* 15 U.S.C. § 15(a) ("any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides...."). Defendants argue that because of the identical "by reason of" language in the federal statute, the Court should look to federal precedent in interpreting the local provision. Federal case law limits the potentially endless scope of the "by reason of" language. D.C. plaintiff counters that the Court should be guided by the analysis in *Holder v. Archer Daniels Midland Co., Civ. Action No. 96-2975, 1998 WL 1469620,* not federal case law. He alleges that *Holder* adopted the "target area" test for standing, which considers "whether the injury to the plaintiff is a reasonably foreseeable consequence of the defendant's illegal conduct." *Id.* at 4 (quoting *Illinois Brick,* 431 U.S. at 760 n. 18) (internal quotations omitted).

The Court agrees with defendants' analysis. The DCAA allows "a court of competent jurisdiction ... [to] use as a guide interpretations given by federal courts to comparable antitrust statutes." D.C.Code § 28-4515. The identical "by reason of" language in § 28-4508 and its federal counterpart, together with the express authorization in § 28-4515 to look to federal precedent, convinces the Court of the merit of defendants' position. The Court will thus look at federal case law to determine whether D.C. plaintiff has standing under § 28-4508.[FN2]

> FN2. Even if the Court were to apply *Holder* and the "target area" test, D.C. plaintiff would still lack standing under § 28-4508. Under this test the Court would need to consider "whether the injury to the plaintiff is a reasonably foreseeable consequence of the defendant's illegal conduct." D.C. plaintiff purchased consumer goods, which, he alleges, were burdened by defendants' overcharges. An endless amount of plaintiffs could make similar claims. All one has to do is purchase goods from a merchant who accepts Visa and Mastercard credit cards. Such a remote and speculative injury is not a "reasonably foreseeable consequence of the defendant's illegal conduct."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Federal courts recognize that a literal reading of the "by reason of" language would grant standing to an endless amount of purchasers within the chain of manufacture or distribution. The seminal case declining to adopt such a broad scope to the law of antitrust standing is *Associated General Contractors of Cal. Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519 (1983). In *Associated General Contractors* the Supreme Court noted, "federal courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Id.* at 534 (quoting *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262 n. 14 (1972)) (internal quotations omitted).

In an effort to limit the scope of the federal provision's potentially broad sweep, the Supreme Court in *Associated General Contractors* described factors for a court to consider in deciding whether a plaintiff has standing. *See id.* at 537-45. Lower federal courts have subsequently summarized the Supreme Court's directive by enumerating the following five factors for a court to consider:
*5 (1) the causal connection between the alleged violation and the harm and the defendant's intent to cause the harm; (2) the directness of the claim; (3) the existence of more direct victims of the alleged antitrust violations; (4) the problem of speculative injury or complex apportionment of damages; and (5) whether the harm is the type for which the antitrust laws provide redress.

*In re Vitamins Antitrust Litig.,* 2001 U.S. Dist. LEXIS 8903, at 26-27 (D.D.C.2001) (citing *Associated General Contractors,* 459 U.S. at 537-45). Application of these factors convinces the Court that D.C. plaintiff lacks standing under § 28-4508.

*Causal Connection and Intent to Harm*

D.C. plaintiff sufficiently alleges a causal connection between defendants' antitrust violation and his injury, claiming that his purchases were burdened by defendants' overcharges. Such a connection, however, is so difficult to prove that it results in speculation. Further, this single factor is not enough by itself to confer standing. *See Associated General Contractors,* 459 U.S. at 537 (holding, "the mere fact that the claim is literally encompassed by the Clayton Act does not end the inquiry.").

As for the intent to harm factor, defendants could have reasonably anticipated harm to the merchants. In addition, they could have foreseen harm to consumers who were within the chain of distribution. It is unclear, however, that defendants could have predicted harm to purchasers without any connection to the chain of distribution of defendants' debit card services.

*Directness of Claim*

*Associated General Contractors* looked into the "directness or indirectness of the asserted injury." *Associated General Contractors,* 459 U.S. at 540. Merchants, not D.C. plaintiff, are the parties with the direct injuries in this case. D.C. plaintiff is neither a direct purchaser nor an indirect purchaser of defendants' debit card services. He is a non-purchaser of the services.

*Existence of More Direct Victims*

*Associated General Contractors* looked at whether the "existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party...." *Associated General Contractors,* 459 U.S. at 542. This factor clearly weighs in favor of defendants. The merchants are the motivated class to "vindicate the public interest in antitrust enforcement." They have, in fact, already brought suit against defendants, which resulted in a $3 billion settlement agreement. [FN3]

> FN3. As a result of this settlement, the merchants actually hold the money to which plaintiffs claim they are entitled. This assumes the merchants passed on the costs. That assumption, however, may not be accurate since the merchants claim they are entitled to the funds thereby implying they absorbed the costs. In any event, allowing plaintiffs to recover from defendants would result in defendants paying double damages for the same injury. Moreover, the merchants could only claim the damages if they did not pass on the costs.

*Speculative or Complex Apportionment of Damages*

It is speculative whether merchants passed on the overcharges to all of the goods purchased by D.C.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 1403761 (D.C.Super.)
(Cite as: Not Reported in A.2d)

Page 5

plaintiff. D.C. plaintiff fails to point to any particular products. Rather, he claims that all items were burdened by defendants' overcharges. As discussed above, such a broad claim presents extraordinary problems regarding proof and speculation.[FN4]

> FN4. For example, was it gas prices, increased labor costs, or debit card charges, to name a few factors, that increased the cost of a purchased item, and if so, by how much?

*Type of Harm for Which Antitrust Laws Provide Redress*

\*6 It is not clear that Congress intended to provide redress for the type of harm alleged by D.C. plaintiff. D.C. plaintiff is not an indirect purchaser, and thus, does not fit into the class of individuals Congress intended to protect under § 28-4509. It is doubtful that Congress intended to provide a remedy for claims as remote and speculative as the claims filed by D.C. plaintiff.

In sum, D.C. plaintiff's attempt to establish standing fails under both § 28-4509 and § 28-4508. He lacks standing under § 28-4509 because he is not an indirect purchaser. His argument that an indirect purchaser need only have been burdened by a monopoly overcharge presents great complexities with regard to proof. In addition, he lacks standing under § 28-4508 because of the following *Associated General Contractors* factors: (1) his claims are remote and speculative; (2) more direct victims exist to enforce the antitrust laws; and (3) he has not shown that his harm is the type for which the antitrust laws provide redress.[FN5]

> FN5. D.C. plaintiff lacks standing to pursue his claim for injunctive relief for the same reasons he lacks standing for his damages claim. He argues that even if he lacks standing to pursue his damages claim, he still would have standing to pursue his claim for injunctive relief because broader standing principles would apply. *See* Plaintiffs' Mem. in Opp. at 34. For this proposition, he cites *Cargill, Inc. v. Montfort of Colorado, Inc.*, 479 U.S. 104 (1986), a case in which the Supreme Court recognized that certain differences exist under the Clayton Act between standing for injunctive relief and standing for damages.
> 
> *Id.* at 111 n.6. While the Court did find some differences, it also "found that under both § 16 [dealing with injunctive relief] and § 4 [dealing with damages] the plaintiff must still allege an injury of the type the antitrust laws were designed to prevent." *Id.* at 111. As discussed above, D.C. plaintiff fails to show that Congress intended to provide a remedy for his remote and speculative injuries.

3. D.C. Plaintiff's Attempt to Redefine the Class for Standing Purposes

During oral arguments, plaintiffs' counsel asked for leave to amend the complaint in the event the Court accepts all of defendants' arguments. Counsel indicated that he could sufficiently redefine the class for standing purposes by asserting claims on behalf of consumers who actually purchased goods or services using a debit card. Such a redefinition, however, would not help to establish standing for D.C. plaintiff. For the purposes of D.C. plaintiff's allegations, a debit card consumer is no different than a consumer who pays with a credit card or cash. Plaintiffs' counsel conceded at oral argument that debit card consumers do not pay more per transaction than those who use a credit card or cash. More importantly, debit card consumers, like consumers using credit cards and cash, fail to fit within the chain of distribution of defendants' debit card services. Thus, they are not indirect purchasers under § 28-4509.

Redefining the class also fails to help D.C. plaintiff overcome the hurdles posed by the *Associated General Contractors* factors. For example, debit card consumers, like consumers paying with credit cards or cash, are not the direct victims of defendants' antitrust violations. Merchants suffer the direct injury, and as discussed above, they have already been compensated through the $3 billion settlement. Moreover, redefining the class does not solve the complexities that result from the remote and speculative nature of D.C. plaintiff's injuries.

B. *FORUM NON CONVENIENS*

This Court has discretionary authority to dismiss a claim when it "finds that in the interest of substantial justice the action should be heard in another forum." D.C.Code § 13-425. The Court has the power to exercise this authority based "on any conditions that may be just." *Id.* Defendants argue that the Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-md-01717-JJF    Document 376-10    Filed 01/05/2007    Page 7 of 15

Not Reported in A.2d                                                                                         Page 6
Not Reported in A.2d, 2005 WL 1403761 (D.C.Super.)
(Cite as: Not Reported in A.2d)

should exercise its power under § 13-425 for non-D.C. plaintiffs' claims because of the claims' minor connection to the District of Columbia. *See* Def. Mem. at 32. Non-D.C. plaintiffs counter that defendants' "Honor all Cards" rule is a nationwide policy that affects thousands of District of Columbia residents. *See* Plaintiffs' Mem. in Opp. at 41.

*7 When evaluating a *forum non conveniens* claim, "the basic question to be resolved is whether the District has so little to do with [the] case that its courts should decline to hear it." *Wyeth Labs., Inc. v. Jefferson,* 725 A.2d 487, 491 (D.C.1999) (quoting *Jenkins v. Smith,* 535 A.2d 1367, 1371 (D.C.1987)) (internal quotations omitted). This jurisdiction considers the following private and public interest factors when considering this issue:

The private factors include potential obstacles to a fair trial, including the relative ease of access to proof, the availability and cost of compulsory process, the enforceability of any judgment obtained, and evidence of vexatiousness or harassment ... The public factors are those affecting the District's own interests, including the congestion of its court dockets with foreign litigation, the imposition of jury duty on District residents for litigation in which the District has no concern, and the inappropriateness of calling on District of Columbia courts to construe the law of another jurisdiction.

*Id.* (quoting *Jenkins,* 535 A.2d at 1369).

The burden of proof is ordinarily on the defendant raising the *forum non conveniens* issue. *See id.* (citing *Mills v. Aetna Fire Underwriters Insurance Co.,* 511 A.2d 8, 10 (D.C.1986)). The situation, however, is much different " 'when the plaintiff is from another jurisdiction ... [because] it is much less reasonable to assume that his choice of a District of Columbia forum is convenient,' and therefore the plaintiff's choice deserves substantially less deference." *Id.* (quoting *Mills,* 511 A.2d at 10-11). "Moreover, when neither party resides in the District and the plaintiff's claim has arisen in another jurisdiction, the burden shifts to the plaintiff to justify bringing suit in the District rather than in a forum more significantly connected to the case." *Id.*

Applying these burden-shifting principles to the instant case makes it clear that non-D.C. plaintiffs bear the burden to justify trying this case in the District of Columbia. Neither party resides in the District, and non-D.C. plaintiffs' claims all arose in their own respective states. The burden in this case thus shifts to non-D.C. plaintiffs, and the following review of the private and public interest factors reveals that they fail to meet this burden.

*Private Interest Factors*

Consideration of the private interest factors points away from the District of Columbia and to non-D.C. plaintiffs' respective states as the most convenient forums. First, the District of Columbia is not especially convenient to the parties in this case because neither non-D.C. plaintiffs nor defendants are residents of the District of Columbia. *See Eric T. v. Nat'l Med. Enters., Inc.,* 700 A.2d 749, 755 (D.C.1997) ("Because all of the plaintiffs and defendants ... are non-residents of the District, Judge Keary did not abuse her discretion in drawing the obvious conclusion that Maryland was a superior forum to the District in terms of the conventional 'private interest' factors, i.e. the convenience of the parties...."). Also, the choice of forum factor in this case is "a relatively minor item since the [non-D.C.] plaintiffs are not District residents." *Wyeth Labs., Inc.,* 725 A.2d at 493. Finally, non-D.C. plaintiffs' respective states would provide easier access to proof because non-D.C. plaintiffs allegedly made their purchases in retail establishments located in their states. *See id.* ("the private factors favor Maryland as a forum because ... the medical records are all located in Maryland.").

*Public Interest Factors*

*8 The Court's review of the public interest factors overwhelmingly fails to provide any justification for trying this case in the District of Columbia. First, the Court must consider the burden on its overcrowded docket, a factor that holds significant weight in this jurisdiction. *See Mills,* 511 A.2d at 11 ("in actions involving nonresident plaintiffs bringing claims arising outside the District of Columbia, this court has emphasized the decisiveness of the public interest in reducing the volume of cases on our overcrowded court calendars."); *Jimmerson v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.,* 663 A.2d 540, 546-47 (D.C.1995) ("we are well aware that our courts are congested with litigation, and that to the extent we can alleviate the case load of our courts by dismissing foreign litigation, the courts can reach other cases more promptly."). There is no justification for this Court to delve into this complex, foreign litigation when it already has an overcrowded calendar.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 1403761 (D.C.Super.)
(Cite as: Not Reported in A.2d)

Page 7

Second, the Court must consider the inappropriateness of requiring District of Columbia jurors to hear about alleged overcharges that occurred outside of their region. In *Eric T.*, the Court considered whether District jurors should be burdened by litigation involving Maryland and Virginia plaintiffs, and incidents that arose outside of the District. In dismissing the case based on *forum non conveniens*, the Court emphasized the impact on jurors, noting, "to dragoon D.C. residents into coming and sitting in this court for two or three or four weeks to hear how some Maryland providers improperly confined a Maryland resident, I think would be quite an improper imposition on our D.C. jurors." *Eric T.*, 700 A.2d at 757 (quoting *Michele K. v. Psychiatric Inst. of Montgomery County, et al.*, No. CA 3321-95 (Super Ct. D.C. June 14, 1995) (Von Kann, J.)) (internal quotations omitted). If the Court in *Eric T.* felt that jurors should not have to hear about plaintiffs' injuries in Maryland and Virginia, then certainly jurors should not have to hear about non-D.C. plaintiffs' allegations, which occurred in states entirely outside the Washington D.C. metropolitan area.

Finally, the Court must consider the "inappropriateness of calling on District of Columbia courts to construe the law of another jurisdiction." *Wyeth Labs., Inc.*, 725 A.2d at 491 (quoting *Jenkins*, 535 A.2d at 1369). Trying this case would require this Court to construe the law of not just one other jurisdiction, but rather, of seventeen separate states. This jurisdiction has explained that the doctrine of *forum non conveniens* is designed "in part to help a court avoid having to untangle problems ... in law foreign to itself." *Mills*, 511 A.2d at 13 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)) (internal quotations omitted). This factor holds significant weight in the instant case in light of the number of state court decisions from around the country dismissing non-D.C. plaintiffs' claims. Non-D.C. plaintiffs ask this Court to entertain suits from seventeen other jurisdictions when thirteen of those seventeen states have already ruled against them.

*9 In sum, after considering the private and public interest factors, the Court is convinced that non-D.C. plaintiffs' respective states provide the most convenient forums for this case.

Accordingly, it is by the Court this 22nd day of April 2005, hereby

ORDERED that defendants' Motion to Dismiss is GRANTED; and it is further

ORDERED that the case is DISMISSED.

D.C. Super.,2005.
Peterson v. Visa U.S.A., Inc.
Not Reported in A.2d, 2005 WL 1403761 (D.C.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

32

Not Reported in P.3d                                                                                                          Page 1
Not Reported in P.3d, 2001 WL 403167 (Nev.Dist.Ct.), 2001-1 Trade Cases P 73,232
**(Cite as: Not Reported in P.3d)**

Pooler v. R.J. Reynolds Tobacco Co.Nev.Dist.Ct., 2001.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
District Court of Nevada.
Lucille POOLER, et al, Plaintiff,
v.
R.J. REYNOLDS TOBACCO COMPANY, et al, Defendant.
No. CV00-02674.

April 4, 2001.

Jerry H. Mowbray, Esq., Reno, for Plaintiff.
Ben Furth, Esq., the Furth Firm, San Francisco, CA, for Plaintiff.
Thomas R.C. Wilson, Esq., McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks, Reno, for Defendant Philip Morris Inc.
David Boies, Esq., Jonathan D. Schiller, Esq., Sherab Posel, Esq., Boies Schiller & Flexner, Armouk, NY, for Defendant Philip Morris Inc.
Darryl Snider, Esq., Michael T. Williams, Esq., Kenneth L. Cherrof, Esq., Heller, Ehrman, White & McAuliffe, LLP, Washington, DC, for Defendant Philip Morris Inc.
Dan C. Bowen, Esq., Lionel, Sawyer & Collins, Reno, for Defendants Brown & Williamson Tobacco Corporation and R.J. Reynolds Tobacco Company.
Thomas F. Cullen, Esq., Edward L. Fourntain, Esq., William V. O'Reilly, Esq., Jones, Day, Reavis & Pogue, Washington, DC, for Defendant R.J. Reynolds Tobacco Company.
Irving Scher, Esq., Weil, Gotshal & Manges LLP, New York, N.Y., for Defendant Lorillard Tobacco Company.
Peter D. Isakoff, Esq., Holly E. Loiseau, Esq., Weil, Gotshal & Manges LLP, Washington, D.C., for Defendant Lorillard Tobacco Company.
Colin R. Kaas, Esq., Andrew R. McGaan, Esq., Barack S. Echois, Esq., Stephen R. Patton, Esq., Kirkland & Ellis, Washington, D.C., for Defendant Brown & Williamson Tobacco Corporation.

ORDER DENYING MOTION TO DISMISS

*1 The court has carefully considered the legal memoranda and exhibits submitted in support of and in opposition to defendants' motion to dismiss filed November 3, 2000 and the argument of counsel presented on March 30, 2001.

Three arguments are asserted in support of the motion to dismiss: (1) NRS 598A.210(2) does not permit suit by indirect purchasers for conduct that allegedly took place prior to amendment of the statute, effective October 1, 1999.(2) The Second Amended Complaint fails to allege acts committed in this state which are part of the alleged illegal conspiracy, as required by NRS 598A.060. (3) This action is barred by the applicable statute of limitations, NRS 598A.220, because the plaintiff does not allege with particularity affirmative acts of fraudulent concealment on the part of the defendants.

The Nevada Unfair Trade Practice Act (UTPA), as enacted in 1975, provided that "*any person* injured in his business or property," by reason of an alleged violation of the act may sue for treble damages, attorney fees and costs. The Nevada legislature declared that the provisions of the UTPA shall be "construed in harmony with prevailing interpretations of the federal antitrust statutes." NRS 598A.050. In *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the United States Supreme Court decided that indirect purchasers had standing to bring antitrust claims under federal law but only for injunctive relief, not money damages. Applying the *Illinois Brick* decision under the authority of NRS 598A.050, Judge Mark Handelsman entered a decision on April 3, 1995 in *DeVincenzi vs. Abbott Laboratories, et al,* Case No. CV94-02528, concluding that indirect purchasers had no standing under NRS 598A.210 to bring an action for recovery under UTPA.

The 1999 amendment of NRS 598A.210(2) provides that an action for damages may be instituted by "any person injured or damaged *directly or indirectly* in his business or property" by reason of a violation of UTPA. Does this amendment "change" prior law, thus precluding indirect purchaser actions for conduct occurring prior to October 1, 1999. or is it a "clarification" of the unaltered legislative intent to permit such actions by any injured party (whether damaged directly or indirectly) before and after the effective date of the amendment?

Although the word "change" appears in the legislative history of the amendment, it is apparent that the legislative action in 1999 was a response to the application of *Illinois Brick* to the Nevada act by Judge Handelsman in the *DeVincenzi* decision. The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-md-01717-JJF    Document 376-10    Filed 01/05/2007    Page 11 of 15

Not Reported in P.3d                                                                                                    Page 2
Not Reported in P.3d, 2001 WL 403167 (Nev.Dist.Ct.), 2001-1 Trade Cases P 73,232
**(Cite as: Not Reported in P.3d)**

language of NRS 598A.210(2) prior to amendment is unambiguous: Any injured person may sue. There is no legislative history to suggest that when the UTPA was originally adopted the legislature distinguished between whether the injury was direct or indirect, or intended to preclude indirectly injured persons from bringing suit. The 1999 amendment, expressly including indirectly injured parties, does no more than to respond to the results in *Illinois Brick* and *DeVincenzi* by reaffirming the original legislative intent: any person injured by an alleged violation of the act may sue. Therefore, plaintiff's UTPA claims may be pursued in this action whether the alleged conduct of defendants occurred before or after the 1999 amendment of NRS 598A.210(2).

**\*2** Defendants next argue that the marketing and retail sale in Nevada of cigarettes at prices allegedly established by an illegal conspiracy is insufficient to confer jurisdiction under UTPA because such sales alone do not constitute a conspiracy in restraint of trade or any part of activity prohibited under NRS 598A.060. The UTPA should be construed consistently with the legislative policy declared in NRS 598A.030, including preserving and protecting the free, open and competitive nature of our market system and penalizing "to the full extent allowed by law" of all persons engaged in anticompetitive practices. NRS 598A.030(2)(b), (c).

The Second Amended Complaint alleges that for decades the defendants have conspired to set the price of cigarettes significantly above competitive levels and that distributors and wholesalers routinely receive notification of impending price increases within hours and often minutes of defendants' price increase notification. It is alleged that through various incentive programs to distributors and/or retailers, defendants were able to monitor their conspiratorial actions and ensure that the mutually-agreed price levels were honored and thus that the conspiracy was enforced. Allegedly this course of conduct was implemented in both domestic and foreign markets. By obtaining the benefit of Nevada laws enabling the sale of cigarettes to indirect purchasers in this state, it is claimed that defendants "reaped at least tens of millions of dollars of profits." Second Amended Complaint, page 2, lines 24-27. The allegations of the Second Amended Complaint, taken as a whole, describe an illegal scheme whereby the price-fixing agreement, wholesale and retail marketing, incentive programs and retail sales to the ultimate consumer are integral to the nature, implementation, enforcement and success of the conspiracy. Therefore, the marketing and sales of tobacco products in Nevada during the time alleged and in the context of the other allegations of the Second Amended Complaint is sufficient to confer jurisdiction under NRS 598A.060.

Finally, defendants argue that the failure of plaintiff to allege the elements of fraudulent concealment requires dismissal of the UTPA claim under NRS 598A.220, the applicable statute of limitations. However, NRS 598A.220(1) does not require proof of fraudulent concealment, but only that the action be brought within four years "after the plaintiff discovered, or by the exercise of reasonable diligence, should have discovered the facts relied upon for proof of the conspiracy." The allegations of the Second Amended Complaint, if true, are sufficient to demonstrate that the plaintiff could not have discovered, by the exercise of due diligence, the alleged facts relied upon for proof of the conspiracy.

Accordingly, the motion to dismiss is denied.

Nev.Dist.Ct., 2001.
Pooler v. R.J. Reynolds Tobacco Co.
Not Reported in P.3d, 2001 WL 403167 (Nev.Dist.Ct.), 2001-1 Trade Cases P 73,232

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



33

LEXSEE 1999 ME SUPER LEXIS 358

ERIN B. SEMBA, on behalf of herself and all others similarly situated, Plaintiffs vs. LONZA AG; LONZA INC.; HOFFMAN-LAROCHE INC.; ROCHE VITAMINS, INC.; RHONE-POULENC INC.; RHONE-POULENC ANIMAL NUTRITION, INC.; BASF CORPORATION; CHINOOK GROUP INC.; and DUCOA, L.P., Defendants.

Docket No. CV-99-50

SUPERIOR COURT OF MAINE, HANCOCK COUNTY

*1999 Me. Super. LEXIS 358*

July 28, 1999, Decided
July 28, 1999, Filed

**JUDGES:** [*1] Andrew M. Mead, JUSTICE, SUPERIOR COURT.

**OPINION BY:** Andrew M. Mead

**OPINION:**

ORDER CERTIFYING CLASS ACTION

This matter came before the Court for consideration upon application of the Plaintiff for class action certification, pursuant to a Class Action Complaint filed by the Plaintiff and dated July 26, 1999, on her own behalf and on behalf of the Class she represents, to obtain damages, costs of suit, attorney's fees, and expert fees from the named Defendants:

This Court has reviewed the Complaint and, in its discretion finds that class action certification is appropriate pursuant to Rule 23 of the Maine Rules of Civil Procedure. This Court therefore makes the following Findings, Conclusions and Order:

**FINDINGS OF FACT**

1. This is an action filed by the Plaintiff on July 27, 1999, on her own behalf and on behalf of the Class she represents, to recover monetary damages for unfair and deceptive trade practices by reason of alleged wrongful acts by Defendants in connection with their alleged antitrust violations by price fixing in the Vitamin industry.

2. The Class Action Complaint was filed and these proceedings were instituted pursuant to Rule 23 of the Maine Rules of Civil Procedure. [*2]

3. The Class is comprised of all persons, sole proprietorships, partnerships, corporations and other entities in the State of Maine who indirectly purchased vitamins in Maine from any of the Vitamin Defendants for use, but not for resale, at any time during the period January 1988 to and including the date of the filing of this Complaint. Excluded from the Class are governmental entities, the Defendants and other manufacturers of vitamins, along with their respective parents, subsidiaries and/or affiliates. Also excluded from this class are the legal representatives, heirs, successors and attorneys of any excluded person or entity, and any person acting on behalf of any excluded person or entity.

4. Plaintiff is a citizen and resident of Maine.

5. Plaintiff is unable to state precisely the size of the Class, but on information and belief, the members of the Class number at least into the thousands. The Class is sufficiently numerous that joinder of all its members is impracticable.

6. There are numerous common questions of law and fact with respect to the Class involving the Class Members. Among those questions common to the Class are:

> 1. whether the Vitamin Defendants [*3] conspired to fix, raise, maintain or stabilize vitamin prices;
>
> 2. whether this conspiracy was actively implemented, and whether each of the Vitamin Defendants was a participant in the conspiracy alleged;

    3. the operative time period of the conspiracy;

    4. whether the Vitamin Defendants' conduct violated Title 10 M.R.S.A. § 1101 et.seq.;

    5. the effect of the Vitamin Defendants' conduct upon, and the injury caused to, the business or property of the Plaintiff and the members of the Class; and

    6. the type and/or measure of damages by which the Vitamin Defendants' conduct injured all members of the suit.

    7. Based on the allegations in the Complaint, the Court finds that common questions of law and fact clearly predominate within the meaning of Rule 23 of the Maine Rules of Civil Procedure.

    8. Class action treatment provides a fair and efficient method for the adjudication of the controversy alleged in the Complaint, affecting a large number of persons, joinder of whom is impracticable. The Class action provides an effective method whereby the enforcement of the rights of Plaintiffs and members of the Class can be fairly managed without unnecessary expense [*4] of duplication.

    9. If class Members were to pursue individual litigation, it would be unduly burdensome to the Maine courts within which the individual litigation would proceed. Individual litigation would magnify the delay and expense to all parties in the court system of resolving the controversy engendered by Defendant's course of conduct with respect to the vitamin industry. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of individual Class Members, and result in judicial consistency. Notice for the pendency and any resolution of this action can be provided to the Class Members by publication.

    10. Further, the expense and burden of individual litigation of a case of this magnitude make it impractical for individual Class Members to seek redress for the wrongs done to them and, therefore, requires consolidation of all such claims in one action.

    11. The claims of Plaintiffs, as the Class Representatives, are typical [*5] of the claims of the members of the Class. There is no conflict of interest between members of the Class who are not parties and those Plaintiffs, named above, who are representing the Class. Further, there are no antagonistic interests between members of the Class.

    12. Plaintiffs will fairly and adequately protect the interests of the Class they represent. The interests of Plaintiffs, as the Class Representatives, are consistent with those of the members of the Class. In addition, Plaintiffs are represented by experienced and able counsel who have represented plaintiff classes.

    13. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

    14. Prosecution of this matter as an opt-out class action will significantly reduce the possibility of repetitious litigation, while providing redress for Class members who would not or could not prosecute this complex litigation on an individual basis. [*6]

    15. This Court envisions no unusual difficulty in the management of this action as a class action.

    16. Certification is appropriate under Rule 23 of the Maine Rules of Civil Procedure.

**WHEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, THE COURT MAKES THE FOLLOWING:**

**CONCLUSION OF LAW**

    17. Rule 23 has as its objectives the efficient resolution of the claims and liabilities of many individuals in a single action as well as the elimination of repetitious litigation and possible inconsistent adjudications involving common questions, related events, or requests for similar relief.

    18. Plaintiffs have established to the satisfaction of this Court the actual existence of a class, the existence of other prerequisites to utilizing the class action procedure, and the propriety of their proceeding on behalf of the Class.

    19. There are numerous common questions of law and fact with respect to the alleged antitrust activities engaged in by Defendants involving the Class Members.

    20. The named an unnamed members of the Class have an interest in either the same issues of law or of fact, and these issues predominate over issues affecting only individual Class Members.

    21. The [*7] parties representing the Class will fairly insure the adequate representation of all members of the Class.

22. Certification of this action as an opt-out class action is appropriate under Rule 23, of the North Carolina Rules of Civil Procedure.

**BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSION OF LAW, IT IS HEREBY ORDERED THAT:**

23. This action be, and the same is hereby certified as an opt-out class action, pursuant to Rule 23 of the Maine Rules of Civil Procedure.

24. notice of the pendency of this action shall be given by counsel for the representative Plaintiffs to the members of the Class in a manner and form to be approved by the Court. The Court appoints the following attorneys as Class Counsel: Jana S. Stabile and Michael McShane of Alexander, Hawes & Audet, LLP.

25. A copy of this Order shall be served promptly by counsel for the representative Plaintiffs upon the Defendants, or their counsel of record.

26. The entry of this Order shall be without prejudice to the right of the Defendants to be heard as to whether this matter should remain a class action.

This Court shall retain this matter for such other and further Orders as may become necessary.

Dated: [*8] July 28, 1999

Andrew M. Mead

JUSTICE, SUPERIOR COURT