## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>                              Plaintiffs,<br><br>              v.<br><br>INTEL CORPORATION,<br><br>                              Defendant. | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

## REPLY MEMORANDUM IN SUPPORT OF INTEL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FOREIGN CONDUCT CLAIMS

OF COUNSEL:

David M. Balabanian
James L. Hunt
Christopher B. Hockett
Nora C. Cregan
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
(415) 393-2000

Richard A. Ripley
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C. 20006
(202) 373-6000

Dated: January 10, 2007

Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com

*Attorneys for Defendant*
*Intel Corporation*

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................. 1

II.  THE FTAIA APPLIES TO CLASS PLAINTIFFS' FOREIGN
     CONDUCT CLAIMS ........................................................... 3

III. THE SPECIAL MASTER'S REPORT DOES NOT PRECLUDE
     DISMISSAL OF CLASS PLAINTIFFS' FOREIGN CONDUCT
     CLAIMS ......................................................................... 5

IV.  CLASS PLAINTIFFS' CLAIMS ARE TOO REMOTE AND INDIRECT
     UNDER THE FTAIA AND SHOULD BE STRICKEN ...................... 7

     A.  Intel's Alleged Foreign Conduct Cannot Support Jurisdiction
         Under The FTAIA And State Law ........................................ 7

     B.  There Are No Allegations Of Any Direct Effect On Domestic
         Commerce To Establish This Court's Jurisdiction ..................... 9

     C.  Class Plaintiffs' Reliance On Inapposite Case Law Fails To
         Support Their Arguments ................................................ 10

V.   PRINCIPLES OF COMITY CAUTION AGAINST GIVING STATE
     LAW A WIDER EXTRATERRITORIAL APPLICATION THAN
     PERMITTED UNDER THE FTAIA .......................................... 14

VI.  CONCLUSION ................................................................ 15

# TABLE OF AUTHORITIES

Page

## CASES

*Abbott Labs. v. Durrett,*
  746 So.2d 316 (Ala. 1999)..................................................................................... 4

*Amarel v. Connell,*
  202 Cal. App. 3d 137 (Cal. Ct. App. 1988) ................................................. 4

*Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.,*
  148 F.3d 1080 (D.C. Cir. 1998) ........................................................... 3, 10

*City of Pittsburgh v. West Penn Power Co.,*
  147 F.3d 256 (3d Cir. 1998).......................................................................... 9

*Coca-Cola Co. v. Harmar Bottling Co.,*
  __ S.W.3d __, 2006 WL 2997436 (Tex. Oct. 20, 2006)............................. 5

*Crosby v. National Foreign Trade Council,*
  530 U.S. 363 (2000)...................................................................................... 4

*CSR Ltd. v. Cigna Corp.,*
  405 F. Supp. 2d 526 (D.N.J. 2005) ...................................................... 4, 13

*Dailey v. First Correctional Med.,*
  C.A. No. 03-923-JJF, 2006 WL 1517767 (D. Del. May 30, 2006) ............ 9

*Den Norske Stats Oljeselskap AS v. HeereMac Vof,*
  241 F.3d 420 (5th Cir. 2001) ............................................................... 3, 11

*F. Hoffman La Roche Ltd. v. Empagran,*
  542 U.S. 155 (2004)............................................................. 3, 12, 14, 15

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l., Inc.,*
  424 F.3d 363 (3d Cir. 2005).......................................................................... 6

*In re Microsoft Corp. Antitrust Litig.,*
  127 F. Supp. 2d 702 (D. Md. 2001), *aff'd on other grounds sub nom* ...................... 12

*Information Resources, Inc. v. Dun & Bradstreet Corp.,*
  260 F. Supp. 2d 659 (S.D.N.Y. 2003)................................................... 3, 12

*Japan Line, LTD. v. County of Los Angeles,*
  441 U.S. 434 (1979)...................................................................................... 4

*Keating v. Philip Morris, Inc.,*
  417 N.W.2d 132 (Minn. Ct. App. 1987)....................................................... 5

*Kloth v. Microsoft,*
  444 F.3d 312 (4th Cir. 2006) ..................................................................... 12

*Martin v. City of Rochester,*
  642 N.W.2d 1 (Minn. 2002).......................................................................... 5

*MM Global Services, Inc. v. Dow Chemical Co.,*
  No. 3:02 CV 1107 (AVC), 2004 WL 556577 (D. Conn. Mar. 18, 2004)............ 12, 13

*The 'In' Porters, S.A. v. Hanes Printables, Inc.,*
  663 F. Supp. 494 (M.D.N.C. 1987) ........................................................... 4

## TABLE OF AUTHORITIES
### (continued)

Page

*Turicentro S.A. v. American Airlines, Inc.*,
  303 F.3d 293 (3d Cir. 2002)................................................................................ 11, 12

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
  131 F. Supp. 2d 1003 (N.D. Ill. 2001) ...................................................... 13

*United States v. LSL Biotechs.*,
  379 F.3d 672 (9th Cir. 2004) ................................................................. 7, 13

## STATUTES

15 U.S.C. § 6a........................................................................................................... 3

MINN. STAT. ANN. § 325D.66 (2006)......................................................................... 4

## RULES

FED.R.CIV.P. 26(b)(1).............................................................................................. 6

## OTHER AUTHORITIES

H.R. REP. NO. 97-686 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487................................ 8

## I.  INTRODUCTION

Class Plaintiffs' opposition to Intel's motion to dismiss their foreign conduct claims simply re-argues — on no new grounds — an issue this Court has already decided. In its September 26, 2006 Memorandum Opinion, the Court determined that the effects on U.S. commerce of Intel's alleged foreign conduct were too remote and indirect to support AMD's antitrust claims. Class Plaintiffs challenge the same alleged foreign conduct, in the same words, as AMD did. If those allegations were insufficient for AMD's case, they are also insufficient for Class Plaintiffs' even more attenuated case.

Class Plaintiffs make four arguments in support of their position. All are unpersuasive.

First, they note that they previously argued to the Special Master in a discovery motion that the FTAIA does not prevent state laws from reaching foreign conduct that is beyond the reach of federal law. The Special Master declined to consider that issue, concluding it was beyond the scope of his authority.[1] And, of course, this Court previously decided otherwise, dismissing all of AMD's claims under both federal and state law to the extent they were based on Intel's alleged foreign conduct. In their opposition here, Class Plaintiffs half-heartedly mention that they still "dispute" whether the FTAIA applies to state laws, but make no attempt to argue the point.[2] In fact, the FTAIA's jurisdictional limits apply to state antitrust and unfair competition law, both as a matter of constitutional law and state jurisprudence.[3]

---

[1]    D.I. 365 (12/15/06 Special Master's Report and Recommendations on Plaintiffs' Motions to Compel ("12/15/06 Report")) at 8.

[2]    D.I. 366 (Class Plaintiffs' Memo. of Law in Opp. to Intel's Mot. to Dismiss Class Plaintiffs' Foreign Conduct Claims ("Opp.")) at 1.

[3]    *See* below, pp. 3-5, and D.I. 312 (Memo. In Support of Intel's Motion to Dismiss Class Plaintiffs' Foreign Conduct Allegations) ("Mot.")) at 7-13.

Second, Class Plaintiffs argue that the Special Master's December 15, 2006 Report shows that discovery into Intel's alleged foreign conduct could be relevant to proving their antitrust claims in U.S. courts. They seem to assume that it would conflict with the 12/15/06 Report for this Court to grant Intel's motion. This is simply wrong: whether facts are discoverable and whether they are actionable are two very different conclusions from two very different inquiries. Indeed, the 12/15/06 Report itself underscores the difference. The Special Master allowed AMD to take *discovery* of Intel's actions abroad despite the fact that this Court had stricken all of AMD's *claims* based on foreign conduct in foreign commerce. If the Court grants Intel's motion and strikes Class Plaintiffs' foreign conduct claims (which are identical to AMD's), it will leave the discovery picture unchanged. There is no inconsistency between the 12/15/06 Report and granting this motion.

Third, Class Plaintiffs stress that the proper test under the FTAIA is whether the conduct had a direct, substantial and foreseeable effect on U.S. *commerce*, rather than on any particular plaintiff. This point merely highlights that the Court's 9/26/06 Memorandum Opinion — which decided that the effects on U.S. commerce of Intel's alleged foreign conduct were insufficient to meet the jurisdictional requirements of the FTAIA — applies with equal force to AMD *and any other plaintiff, including Class Plaintiffs*. Thus, Class Plaintiffs are in no better position than AMD was to argue for this Court's jurisdiction over claims based on Intel's alleged foreign conduct. Rather, they are just re-arguing an issue that this Court thoroughly considered and correctly decided in Intel's favor three months ago.

Finally, Class Plaintiffs claim that their opposition relies on key authorities "not brought to the Court's attention" in connection with Intel's earlier motion to dismiss.[4]

---

[4]      Opp. at 2.

The most recent of those authorities is three years old, and all of them pre-date the Supreme Court's decision in *F. Hoffman La Roche Ltd. v. Empagran*, 542 U.S. 155 (2004), the leading case interpreting the FTAIA, and the centerpiece of the parties' briefing and this Court's 9/26/06 Memorandum Opinion.[5]  Neither the Court nor the parties missed key cases or overlooked the FTAIA's legislative history when Intel's earlier motion was before the Court.  As discussed in further detail below, these pre-*Empagran* authorities have no effect on the conclusions this Court has already reached.

Consistent with the Court's treatment of AMD's claims, it should strike the foreign conduct allegations from the Class Complaint and dismiss the Class Plaintiffs' claims to the extent they are based on Intel's alleged foreign conduct in foreign commerce.

## II.     THE FTAIA APPLIES TO CLASS PLAINTIFFS' FOREIGN CONDUCT CLAIMS

Other than a single, passing reference to arguments made in their recent motion to compel, Opp. at 1, Class Plaintiffs fail to make any argument here that the FTAIA does not apply to their state law claims.  As a result, it appears they have all but abandoned this point — as they should.

The FTAIA's jurisdictional limits apply here because the extraterritorial reach of the state antitrust and consumer protection laws at issue must be limited in the same way that the FTAIA limits the reach of federal antitrust law — i.e., to cover only foreign conduct that has a "direct, substantial and reasonably foreseeable effect" on the domestic commerce that gives rise to Class Plaintiffs' claims. *See* 15 U.S.C. § 6a.  Interpreting the reach of state laws to be coextensive with the Sherman Act is necessary to effectuate the

---

[5]     Three of the four cases discussed at length in Class Plaintiffs' opposition, *Caribbean Broadcasting*, *Den Norske*, and *Information Resources*, were presented in the parties' papers, and the Court discussed *Caribbean Broadcasting* in its 9/26/06 Memorandum Opinion.

congressional intent behind the FTAIA: providing a uniform, clear test for the application of American antitrust laws to foreign commerce. To do otherwise would violate the U.S. Constitution's Commerce and Supremacy Clauses. *See Japan Line, LTD. v. County of Los Angeles*, 441 U.S. 434 (1979); *Crosby v. National Foreign Trade Council,* 530 U.S. 363 (2000); *accord Amarel v. Connell*, 202 Cal. App. 3d 137, 149-50 (1988). Further, as a matter of state law, the FTAIA also limits the relevant state antitrust and consumer protection statutes through the states' harmonization provisions. *See, e.g., CSR Ltd. v. Cigna Corp.*, 405 F. Supp. 2d 526 (D.N.J. 2005); *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987).

That the FTAIA is silent as to its effect on state law does not signify that it has no effect. In neither *Japan Line* (under a Commerce Clause analysis) nor *Crosby* (under a Supremacy Clause analysis) did the operative federal law or treaty speak to the role of state law. Yet in both situations, given the purpose of the federal laws and the potentially disruptive effects of the state regimes, the Supreme Court ruled that the state laws must yield to the federal laws. *See Japan Line,* 441 U.S. at 448-49; *Crosby*, 530 U.S. at 379-80.

Similarly, that no states have enacted "FTAIA-equivalent provisions" supports Intel rather than Class Plaintiffs. States have not enacted analogs to the FTAIA because federal-state antitrust harmonization laws make them unnecessary. *See* D.I. 312 (Mot.) at 16-21. What is revealing is the *absence* of any state enactments, indicating that the FTAIA does not affect state law.[6]

---

[6]    Minnesota's antitrust long-arm statute is not to the contrary. Section 325D.66 of the Minnesota Code provides that no antitrust action "shall be barred on the ground that the activity or conduct complained of in any way affects or involved interstate or foreign commerce." MINN. STAT. ANN. § 325D.66 (2006). This code provision, which predates the FTAIA, was clearly meant to extend the reach of Minnesota law beyond purely intrastate commerce. *Cf., Abbott Labs. v. Durrett*, 746 So.2d 316, 339 (Ala. 1999) (holding Alabama's antitrust laws limited to intrastate commerce). Moreover, section 325D.66 is not inconsistent with the FTAIA, which expressly permits the application of

(Footnote continued)

For these reasons, this Court should find — as it did already in dismissing all of AMD's claims, federal *and* state, to the extent based on foreign conduct allegations — that the FTAIA limits the reach of Class Plaintiffs' state law claims in the same way it does federal claims.

## III.    THE SPECIAL MASTER'S REPORT DOES NOT PRECLUDE DISMISSAL OF CLASS PLAINTIFFS' FOREIGN CONDUCT CLAIMS

Class Plaintiffs incorrectly suggest that the Special Master's 12/15/06 Report allowing AMD and Class Plaintiffs to take discovery on Intel's foreign conduct somehow undermines Intel's motion to dismiss the foreign conduct claims. D.I. 366 (Opp.) at 7-9. The issue before the Special Master was a narrow and straightforward one — whether, in support of its domestic commerce claims, AMD was entitled to discovery of foreign conduct since, as AMD argued, the foreign conduct was relevant to AMD's domestic commerce claims. The parties and the Special Master recognized that the foreign conduct claims were out of the case, *see* D.I. 365 (12/15/06 Report) at 5-6, but the Special Master concluded that the foreign conduct could nonetheless be relevant to the remaining "domestic commerce" claims. *Id.* at 20-21. Nowhere in the 12/15/06 Report does the Special Master purport to decide the issue now before the Court — whether

---

(Footnote continued from previous page)

the Sherman Act to foreign, non-import commerce so long as it meets the FTAIA's direct, substantial and reasonably foreseeable jurisdictional requirements. Because the Minnesota statute must be construed to avoid conflicting with the FTAIA, section 325D.66 should be interpreted to be consistent with the FTAIA's jurisdictional limits. *See Martin v. City of Rochester*, 642 N.W.2d 1, 18 (Minn. 2002) (explaining that where "state [statute] is susceptible to an alternative interpretation that allows it to operate in harmony with the federal [statute] and not be preempted, we must apply that interpretation."); *see also Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 136 (Minn. App. 1987) ("The Minnesota Supreme Court has consistently held that the Minnesota Antitrust Law should be construed consistently with the federal courts' construction of the federal antitrust laws."); *c.f., Coca-Cola Co. v. Harmar Bottling Co.*, __ S.W.3d __, 2006 WL 2997436, *6-8 (Tex. Oct. 20, 2006) (holding that Texas antitrust statute with identical language did not permit broad application to conduct occurring in other states). (Ex. A hereto)

Class Plaintiffs' foreign conduct allegations show a "direct, substantial and reasonably foreseeable effect" on domestic commerce. Indeed, the Special Master made explicit that he was *not* authorized to decide any substantive issues relating to Intel's motion to dismiss. *Id.* at 8.

Furthermore, relevance in the discovery context and actionable claims in a complaint are two very different legal concepts. Special Master Poppiti stressed that relevance in terms of permissible discovery is very broad, and includes facts that are merely "germane" to a claim and even evidence which is not itself admissible but may lead to the discovery of admissible evidence. *Id.* at 14 (citations omitted); 10 (citing FED.R.CIV.P. 26(b)(1)).[7] What may constitute actionable claims in a complaint is a distinct concept, because it establishes the limits of a defendant's potential liability and the measure of the plaintiffs' damages. *See, e.g., Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*, 424 F.3d 363, 372 -373 (3d Cir. 2005) (plaintiffs barred from claiming damages for direct purchases of teeth where complaint pled only indirect purchases). While the scope of potential liability may, and often does, have an effect on the scope of relevance for discovery, the two need not be coextensive.

The difference between the two concepts is important here. Intel is moving to dismiss Class Plaintiffs' foreign conduct claims in foreign commerce and, as a result, *restrict the scope of potential liability*. The Special Master's recommendation that Class Plaintiffs be permitted to take discovery on Intel's alleged foreign conduct to try to obtain admissible evidence for their remaining *domestic commerce claims* does not speak to whether Class Plaintiffs can attempt to hold Intel liable under federal or state law for Intel's alleged foreign conduct in competing against AMD's foreign-manufactured microprocessors with foreign buyers. Because, like AMD, Class Plaintiffs have failed to

---

[7]    Nowhere in the Report does the Special Master make any findings with respect to the potential admissibility of foreign conduct evidence.

allege a direct domestic effect of Intel's alleged foreign conduct, all claims arising from that conduct should be dismissed from the Class Plaintiffs' complaint.

## IV.  CLASS PLAINTIFFS' CLAIMS ARE TOO REMOTE AND INDIRECT UNDER THE FTAIA AND SHOULD BE STRICKEN

As noted in Intel's moving papers, the paragraphs that this Court struck from AMD's complaint appear in Class Plaintiffs' Complaint virtually unaltered. *See* Exhibit A, App. A1-A16 (*comparing* 6/27/05 AMD Complaint ¶¶ 40-44, 54-57, 65, 74-75, 81, 83, 86, 89, 93-94, 100-101, and 106 *with* 5/26/06 Complaint ¶¶ 145-149, 159-162, 169, 178-79, 185, 187, 190, 193, 197-98, 204-05, 210). These paragraphs cannot form the basis of Class Plaintiffs' antitrust claims any more than they could form the basis of AMD's claims. Class Plaintiffs nonetheless assert that the link between Intel's foreign conduct and the effect on domestic commerce is sufficiently direct and substantial to meet the requirements under the FTAIA. As shown below, this argument lacks merit.

### A.  Intel's Alleged Foreign Conduct Cannot Support Jurisdiction Under The FTAIA And State Law

This Court concluded that AMD's allegations did not establish that "Intel's conduct resulted in a substantial and direct domestic effect," and therefore were "insufficient to support the exercise of the Court's jurisdiction over AMD's claim." D.I. 279 (9/26/06 Memorandum Opinion) at 7, 11, 14. Those allegations, the Court found, were replete with "intervening developments," *id.* at 9 (citing *United States v. LSL Biotechs.*, 379 F.3d 672, 680 (9th Cir. 2004)), and constitute a "chain of effects full of twists and turns, which themselves are contingent upon numerous developments." D.I. 279 (9/26/06 Memorandum Opinion) at 9-10. Intel's alleged foreign conduct, it concluded, merely had a "ripple effect" on the United States domestic market, an effect insufficient to give rise to a Sherman Act claim. *Id.* at 11.

Class Plaintiffs cannot hide that their foreign conduct allegations are virtually identical to the AMD claims this Court dismissed. In fact, in his 12/15/06 Report,

Special Master Poppiti noted that the Class Plaintiffs' claims "are either identical to, or derivative of, those asserted by AMD." D.I. 365 (12/15/06 Report) at 11. Intel has already explained the convoluted chain of effects Class Plaintiffs would need to prove to recover for domestic injuries allegedly caused by Intel's foreign conduct in foreign commerce. *See* D.I. 312 (Mot.) at 4-7. Because Class Plaintiffs are several steps removed, even from AMD, their chain of domestic causation has even more "twists and turns" than AMD's, and cannot support this Court's jurisdiction. *Id.*

Similarly, Class Plaintiffs cannot avail themselves of a "ripple" or "spillover" domestic effect to support their argument. This Court has already determined that AMD's claim that "Intel's alleged [foreign] conduct has resulted in higher PC prices and a 'loss of freedom' or consumer choice for computer purchasers in the United States" is "insufficient to establish the proximate causation required by the FTAIA." D.I. 279 (9/26/06 Memorandum Opinion) at 12. As goes AMD's spillover theory, so goes Class Plaintiffs' theory.[8]

---

[8]     Class Plaintiffs cite to the legislative history of the FTAIA to contend that a "spillover effect" on domestic commerce is sufficient to justify application of federal, and by extension, state antitrust laws. *See* D.I. 366 (Opp.) at 19-20 (citing H.R. REP. NO. 97-686, at 13-14 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487). Contrary to Class Plaintiffs' assertions, the hypothetical situation posed by the report — creating a worldwide shortage or artificially-inflated prices that affect domestic prices — is far more direct and substantial than the causation chain Class Plaintiffs would need to prove to establish liability here. A price increase normally follows from a shortage. By comparison, Class Plaintiffs' claims are based on the indirect effects of discounting outside the United States that allegedly deprived AMD of foreign sales, which in turn allegedly reduced the funds that AMD repatriated to the United States, which in turn allegedly reduced the funding available for AMD's investments, which in turn allegedly caused AMD to forego some investments, which in turn allegedly made AMD a less efficient manufacturer, which in turn allegedly raised AMD's costs, which in turn allegedly made AMD less competitive, which in turn allegedly caused microprocessor prices to increase, which in turn allegedly caused PC prices to increase.

**B.    There Are No Allegations Of Any Direct Effect On Domestic Commerce To Establish This Court's Jurisdiction**

Class Plaintiffs place great emphasis on the fact that the FTAIA requires a direct effect on domestic *commerce*, not simply on their particular claims. D.I. 366 (Opp.) at 11. This is a matter of semantics. Class Plaintiffs plead no factual allegations with respect to "domestic commerce" other than their claims that they purchased computers at allegedly inflated prices due to the inclusion of Intel microprocessors in those PCs. *See* D.I. 59 (Class Compl.) at ¶¶ 231, 234.[9] Their class claims and the so-called effects on domestic commerce are one and the same.

Moreover, this Court's 9/26/06 Memorandum Opinion holds that those very same effects are beyond the reach of American antitrust laws:

> AMD alleges in its Complaint that Intel's alleged conduct has resulted in higher PC prices and a "loss of freedom" or consumer choice for computer purchasers in the United States. (D.I. 1 in Civil Action No. 05-411 at pp 6, 136). To the extent that these effects are based on Intel's alleged foreign conduct, the Court concludes that they too are insufficient to establish the proximate causation required by the FTAIA. As explained by the Court previously, these types of effects are not direct domestic effects of any alleged foreign conduct of Intel, but secondary and indirect effects that are also the by-product of numerous factors relevant to market conditions and the like. Second, AMD's allegations refer to the computer market and not the microprocessor market, and therefore, the effects to which AMD refers are not effects linked to the relevant market.

---

[9]    Paragraph 231 is a conclusory paragraph devoid of factual allegations and simply states that Intel's foreign conduct limited competition in the domestic market. Conclusory allegations like this one cannot withstand a motion to dismiss. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998); *accord Dailey v. First Correctional Med.*, No. 03-923-JJF, 2006 WL 1517767 at *1 (D. Del. May 30, 2006) (Ex. B hereto). Paragraph 234 merely restates Class Plaintiffs' causation argument that Intel allegedly stifled competition, causing higher prices for Intel's microprocessors which, indirectly, caused Class Plaintiffs to allegedly pay more for PCs.

D.I. 279 (9/26/06 Memorandum Opinion) at 12. The same reasoning applies here, and, as Class Plaintiffs themselves point out, it makes no difference who the plaintiff is.

### C.     Class Plaintiffs' Reliance On Inapposite Case Law Fails To Support Their Arguments

The so-called "new" cases to which Class Plaintiffs cite are inapposite and do not support a finding that Intel's alleged foreign conduct had the requisite direct domestic effects. None involved a claim brought by indirect purchasers, and the link between the foreign conduct and the domestic effect was far more direct and substantial in those cases than is the case here. Moreover, these cases are not "new" as they all pre-date *Empagran*, and the Court has already addressed some of this authority in its 9/26/06 Memorandum Opinion.

For example, in *Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080 (D.C. Cir. 1998), although the alleged conduct included a foreign element — *i.e.*, the attempted monopolization of English-language radio broadcasting in the Caribbean — there was a *direct domestic harm* to U.S. advertisers who paid supra-competitive prices for their advertising purchases in the Caribbean market as well as to the competitor who lost advertising sales to those domestic purchasers due to the defendant's anticompetitive conduct. *Id.* at 1086.

Indeed, this Court has already found that *Caribbean Broadcasting* does not support the sweeping proposition that Class Plaintiffs advance:

> [I]n *Caribbean Broad.*, the same [foreign] conduct had simultaneous, foreign and direct domestic effects, with the plaintiffs' antitrust claim arising from those direct domestic effects. *Here, there is no direct domestic effect from Intel's alleged foreign conduct* . . . . To the extent that the alleged foreign conduct caused any domestic effects at all, those effects are outside the direct causal chain, and thus, insufficient to support the exercise of the Court's jurisdiction over AMD's claims.

D.I. 279 (9/26/06 Memorandum Opinion) at 13-14 (emphasis added).

Similarly, in *Den Norske Stats Oljeselskap AS v. HeereMac Vof*, 241 F.3d 420 (5th Cir. 2001) — another case the Court considered — the link between the defendants' conduct and the effect on domestic commerce was far more direct than the link between Intel's alleged foreign conduct and the effect on domestic commerce. In *Den Norske*, the court held defendants' anticompetitive conduct — price-fixing for heavy-lift barge services used by off-shore oil drilling companies to transport oil drilling platforms — had a direct effect on the domestic market because that conduct affected commerce in the Gulf of Mexico, where the purchasers of those services (namely U.S. companies or companies selling oil to the U.S. market) paid inflated prices. *Id.* at 426-27. Thus, the link to domestic commerce in the heavy-lift services market was clearly supported by the allegations.[10]

In contrast, Class Plaintiffs' foreign conduct allegations relate to *foreign* sales to *foreign* OEMs, or *foreign* distributors, or *foreign* retailers. The only alleged domestic harm — the downstream purchase of PCs that incorporate microprocessors sold abroad — is, at best, remote and indirect. While higher prices in the United States follow directly from a worldwide conspiracy, the link between Intel's conduct in foreign commerce and the harm alleged by the Class Plaintiffs is far more attenuated. The logic

---

[10]    The court in *Den Norske* also noted that the defendants' agreements compelled Americans to pay supra-competitive prices for oil. 241 F.3d. at 426-27. In *Den Norske*, U.S. oil companies purchased crude oil for sale in the U.S. (using defendants' heavy-lift services in the Gulf of Mexico). The link between foreign conduct (the price-fixing with foreign providers of heavy-lift services) and domestic effect (higher oil prices) was significantly more direct than the harmed claimed by Class Plaintiffs in this case in that domestic trade was involved throughout the chain in *Den Norske* — *e.g.*, U.S. companies used heavy-lift services in the Gulf to transport drilling equipment for oil that was then sold to U.S. buyers. Here, the conduct at issue in Intel's motion involves only foreign sales to foreign PC manufacturers, retailers and distributors. Moreover, it is questionable whether even the harm in *Den Norske* is sufficiently direct under the more recent case law cited in Intel's opening brief. *See* D.I. 312 (Mot.) at 6-7; *see also Turicentro S.A. v. American Airlines, Inc.*, 303 F.3d 293, 304-306 & n. 15 (3d Cir. 2002) (finding no direct domestic effect from allegedly price-fixing commissions for foreign travel agents while acknowledging that agents "performed services for travelers based in their countries and elsewhere, including the United States.").

of the Class Plaintiffs' claims of injury is that Intel's discounting to foreign purchasers caused AMD to lose foreign sales which caused AMD to repatriate less money from its foreign subsidiaries which caused AMD to be less profitable which caused AMD to forego some unidentified opportunities to invest in future manufacturing capacity which raised AMD's costs which reduced AMD's competitive vigor which caused PC makers to pay more for microprocessors and which thus caused the Class Plaintiffs to pay more for their PCs. Such an alleged chain of causation is far, far more attenuated than the conduct in *Den Norske* and does not fall within the scope of American antitrust law under the FTAIA. *See e.g., Turicentro*, 303 F.3d at 304-306 & n. 15 (conduct directed at and affecting foreign markets falls outside of reach of U.S. antitrust laws); *see also Empagran*, 542 U.S. at 166 ("Congress sought to release domestic (and foreign) anticompetitive conduct from Sherman Act constraints when that conduct causes foreign harm"); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 716 (D. Md. 2001) (Sherman Act's reach "obviously does not include engaging in a commercial transaction with a foreign firm solely within the geographic boundaries of a foreign country"), *aff'd on other grounds sub nom. Kloth v. Microsoft*, 444 F.3d 312 (4th Cir. 2006).

Class Plaintiffs' reliance on *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 260 F. Supp. 2d 659 (S.D.N.Y. 2003), and *MM Global Services, Inc. v. Dow Chemical Co.*, No. 3:02 CV 1107 (AVC), 2004 WL 556577 (D. Conn. March 18, 2004), (Ex. C hereto) is equally misplaced. In *Information Resources*, another pre-*Empagran* case, the plaintiffs alleged that the funds allocated to combating the defendant's illegal foreign conduct resulted in fewer funds available for use domestically. 260 F. Supp. 2d at 662-63. The district court found that the loss of domestic funds was actionable under the FTAIA. *Id.* at 669-70. This is much the same complaint that AMD raised, and which the Court already found too indirect to justify application of U.S. antitrust laws. Class Plaintiffs' claims of impact on U.S. commerce as indirect purchasers of microprocessors that were sold to foreign OEMs and then potentially inserted into PCs that potentially

made their way into the domestic market is even more attenuated than AMD's position, and certainly than that of the plaintiffs in *Information Resources*.

In *MM Global Services*, in what the district court admitted was a "close" call, the court found that price-fixing in the market for chemical sales to India had a sufficient "spillover" effect to the domestic chemical market to support jurisdiction under the FTAIA. 2004 WL 556577 at *5-6. The reasoning of the district court in *MM Global,* a pre-*Empagran* case, particularly as characterized by plaintiffs, is at odds with this Court's and other courts' interpretations of the FTAIA. *See* D.I. 279 at 9-10; *LSL Biotechs.*, 379 F.3d at 680 (holding that "direct effect" under FTAIA is one that has "an immediate consequence" and is not dependent upon "intervening developments"); *CSR Ltd.*, 405 F. Supp. 2d at 545 (adopting Ninth Circuit's definition of "direct effect").

Moreover, *MM Global* dealt with a distributor's claims that the defendant's foreign conduct in association with the plaintiff's distribution of defendant's products in India somehow affected the defendant's sales of the same products in the United States. Here, in contrast, the allegation is that Intel sold microprocessors to foreign OEMs (in competition with foreign-made microprocessors) who subsequently placed the microprocessors into PCs that were then, perhaps, ultimately shipped to the United States. The indirect nature of Class Plaintiffs' causation theory, as well as the fact that a microprocessor is but one component into the product purchased by Class Plaintiffs, makes this case materially different from *MM Global.* Courts have found that similar indirect, component causation theories premised upon foreign conduct with an alleged "spillover" into domestic commerce do not support jurisdiction under the FTAIA. *See, e.g., United Phosphorus, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003 (N.D. Ill. 2001) (alleged price-fixing of sale of ingredients that may be included in downstream products that may be imported to the United States not sufficient to justify jurisdiction under FTAIA).

Class Plaintiffs' claims based on Intel's alleged foreign conduct are simply too full of twists and turns to support application of state antitrust or unfair competition laws. For the same reasons that this Court dismissed AMD's foreign conduct claims, Class Plaintiffs' foreign conduct claims should likewise be dismissed.

## V.    PRINCIPLES OF COMITY CAUTION AGAINST GIVING STATE LAW A WIDER EXTRATERRITORIAL APPLICATION THAN PERMITTED UNDER THE FTAIA

As the Supreme Court recognized in *Empagran*, a fundamental justification for the FTAIA's restrictions on the reach of U.S. antitrust law was the principle of comity. 542 U.S. at 167-69. The Court in *Empagran* explained that comity does not mean that American antitrust law has no application beyond our shores, but rather that in giving deference to foreign sovereigns' regulation of foreign commerce, U.S. law will only reach foreign conduct that has the requisite "direct, substantial and reasonably foreseeable effect" on domestic commerce. *Id.*

Nonetheless, Class Plaintiffs ask this Court to apply state laws to foreign conduct beyond that permitted under the FTAIA because they say they "allege monopolization of a world market, [and therefore] no one country can claim that comity favors it." D.I. 366 (Opp.) at 22. This argument misses the point. Intel is *not* arguing that because Class Plaintiffs allege a global market, American antitrust laws do not apply, or that this Court must defer to foreign regulatory action or litigation.[11] Rather, consistent with the Supreme Court's decision in *Empagran*, comity requires that there be some direct link

---

[11]    As Intel noted in its motion to dismiss AMD's foreign conduct claims, in addition to the present lawsuits by AMD and the Class Plaintiffs, there are ongoing regulatory actions and/or litigation in Japan, Korea, and the European Union. D.I. 65 (Memo. in Support of Defendants' Motion to Dismiss AMD's Foreign Commerce Claims for Lack of Subject Matter Jurisdiction and Standing) at 4-5, 10-11. The idea fostered by Class Plaintiffs that Intel's alleged foreign conduct will somehow go uninvestigated is thus false. Intel stands ready and able to address in this Court the Class Plaintiffs' allegations of domestic conduct, and to address the foreign claims in the appropriate foreign fora.

between the foreign conduct and domestic commerce to justify application of American antitrust laws. *Empagran*, 542 U.S at 167-69. Otherwise, state antitrust laws will have the potential to disrupt other nations' competition regimes. *Id.* No such direct link exists here.

Moreover, *Empagran* explains that the purpose behind the FTAIA is to limit the need to undergo a case-by-base comity analysis which would be unwieldy and create the potential for inconsistent application of American antitrust laws to foreign conduct. *Id.* at 168. Instead, the FTAIA sets a uniform test for the extraterritorial application of U.S. antitrust laws. Thus, Class Plaintiffs' suggestion that the FTAIA's jurisdictional limits somehow ebb and flow based upon the global nature of the alleged anticompetitive conduct, *see* D.I. 366 (Opp.) at 22, runs contrary to the FTAIA's very purpose. Rather, the principles of comity which underlie the FTAIA further support dismissal of Class Plaintiffs' foreign conduct allegations.

## VI.    CONCLUSION

For the foregoing reasons and for the reasons stated in Intel's Memorandum, all of Class Plaintiffs' claims based upon foreign conduct should be dismissed, and paragraphs 145-149, 159-162, 169, 178-179, 185-187, 190, 193, 197-198, 204-205, and 210 of the First Amended Consolidated Complaint should be stricken.

Respectfully submitted,

/s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000

OF COUNSEL:

David M. Balabanian
James L. Hunt
Christopher B. Hockett
Nora C. Cregan
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA  94111-4067
(415) 393-2000

rhorwitz@potteranderson.com
wdrane@potteranderson.com


Attorneys for Defendant
Intel Corporation

Richard A. Ripley
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C.  20006
(202) 373-6000


Dated:  January 10, 2007

771041v2/29282