**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION
1310 KING STREET, BOX 1328
WILMINGTON, DELAWARE 19899
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial:
(302)888-6509
Writer's Telecopy Number::
(302)888-6333
Writer's E-Mail Address:
JLHolzman@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

March 29, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 N. Market Street
Wilmington, DE 19801-4226

**VIA eFILING AND HAND DELIVERY**

Re:   DM No. _____
*In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717-JJF;
*Advanced Micro Devices, Inc., et al. v. Intel Corp., et al.*, C.A. No. 05-441-JJF;
*Phil Paul v. Intel Corp.*, Consolidated C.A. No. 05-485-JJF

Dear Judge Poppiti:

Class Plaintiffs submit this letter brief in support of their request to compel Fry's Electronics, Inc. ("Fry's") to produce transactional data in response to the subpoena issued over nine months ago, on June 23, 2006. *See* Fry's Electronics Subpoena, D.I. 206 in MDL No. 05-1717, attached hereto as Exhibit 1.[1] Class Plaintiffs, AMD and Intel have each subpoenaed Fry's for electronic records of its transactions in buying computers containing x86 microprocessors and re-selling those same computers. These data are maintained by Fry's in one or more databases, and are directly relevant to Class Plaintiffs' proof of damages, the certifiability of the putative class, and the anticompetitive effect of Intel's challenged conduct. Prompt production of the data is important to maintain the current class certification briefing schedule.

Class Plaintiffs respectfully request entry of an Order that compels Fry's to produce within three weeks the subpoenaed transactional data, or any subset thereof negotiated by Fry's and the parties, under terms to be negotiated by Fry's and the parties.

Pursuant to Local Rule 7.1.1, and as detailed below, we have conferred with Fry's at length in an effort to resolve this dispute. The protracted negotiations with Fry's, however, have gone nowhere. Unlike any of the other eight retailers subpoenaed by Class Plaintiffs for their transactional data, Fry's has steadfastly clung to the position that it should not have to produce transactional data *at all*.[2] Thus, this dispute is *not* about the scope or terms of Fry's production; this

---

[1] The subpoena requires Fry's to produce documents in addition to data. This motion pertains only to Fry's failure to produce data, which, unlike Fry's documents, need to be produced soon because of their relevance to the upcoming class certification motion.

[2] The correspondence and exchanges referred to herein are detailed in the Certification of Richard M. Volin, Esq. ("Volin Cert."), which is attached hereto as Exhibit 2. Fry's February 9, 2007 letter is filed under seal because Fry's designated the document confidential under the Confidentiality Agreement and Protective Order ("Protective Order") entered in this litigation on September 26, 2006.

The Honorable Vincent J. Poppiti
March 29, 2007
Page 2

is a dispute about whether Fry's should have to produce *any* data.[3] Fry's should be compelled to comply with its obligations under Federal Rule of Civil Procedure 45[4] and produce its data within three weeks, with the details of the production to be determined through good faith negotiations.

1.  **Fry's Transactional Data Are Clearly Relevant**

Class Plaintiffs' First Amended Consolidated Complaint ("FACC," D.I. 108 in MD-05-1717) alleges that as a result of Intel's unlawful monopolization of the world-wide x86 microprocessor market, it was able to charge computer manufacturers, retailers and distributors supra-competitive prices for x86 microprocessors. FACC ¶ 242. Class Plaintiffs further allege that these overcharges were passed on to end users, who are the members of the putative class and who seek damages for the overcharges they paid. *Id.* ¶ 245. Thus, as an essential element of their damages claim, Class Plaintiffs must prove that the overcharges paid by Intel's customers were passed on to them.

Proof of pass-on primarily involves a statistical showing that higher costs paid by intermediaries in the chain of distribution result in higher prices charged to end users. *See Romero v. Philip Morris Inc.*, 137 N.M. 229, 234 (N.M. Ct. App. 2005) (describing the use of data from retailers and others to determine the extent of overcharges passed on to consumers). In this case, therefore, Class Plaintiffs need to know, for an appropriate sample of re-sellers, the prices they paid for Intel's x86 chips or for computers containing those chips, and the prices at which they re-sold those same products. Fry's is a large retailer of computers, including computers with Intel chips, with 33 stores in nine states. *See http://www.frys-electronics-ads.com/frys-store-location.htm*. The company is part of the sample of re-sellers that Class Plaintiffs, with the assistance of their experts, selected to obtain an appropriate collection of data with which to conduct their pass-on analysis.

The pass-on issue does not apply only to proof of damages. Intel may argue in opposition to class certification that Class Plaintiffs will not be able to prove pass-on as part of a classwide damages formula. *See In re S.D. Microsoft Antitrust Litig.*, 657 N.W.2d 668, 677 (S.D. 2003) (discussing conflicting expert testimony on this issue). Thus, Class Plaintiffs seek re-seller transactional data because such data may be an important part of rebutting this argument, and they

---

[3] To be sure, Fry's has also raised issues that go to the scope and terms of production, but the parties have not sufficiently negotiated those yet, given Fry's other objections, which deny the need to produce data at all. If the Court were to grant the relief sought herein, the parties would engage in good faith negotiations with Fry's to work out the details of its production.

[4] "The non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45, advisory committee's notes to 1991 amendment. A court addressing a discovery dispute arising from a document subpoena should refer to the Rules set forth in Fed. R. Civ. P. 26-37. *In re Wagar*, No. 1:06-MC-127, 2006 WL 3699544, at *5 (N.D.N.Y. Dec. 13, 2006). A request for production submitted to a non-party thus meets the standard of relevance so long as it seeks documents "relevant to the claim or defense of any party" or if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002).

The Honorable Vincent J. Poppiti
March 29, 2007
Page 3

seek prompt production of the data because class briefing begins in a few months. Transactional data are also relevant to proving that Intel's challenged conduct was anticompetitive, i.e., that it caused consumers to be worse off through higher prices or otherwise. *See LePage's, Inc. v. 3M*, 324 F.3d 141, 163 (3d Cir. 2003). Demonstrating that consumers paid higher prices for x86 computers as a result of Intel's anticompetitive behavior is one way to make this showing.

Fry's has never denied the relevance of transactional data to this case. Instead, Fry's asserts only that *its* data are unnecessary because other subpoenaed entities may possess similar data. *See* Volin Cert. ¶¶ 9, 12 and Exhibits G, J thereto. However, as Class Plaintiffs repeatedly explained to Fry's, any overlap in subpoenaed data would not relieve Fry's of its discovery obligations. First, it is *not* the case that Fry's data completely or exactly duplicate another actual or potential data production. At most, Fry's data could *partially* overlap with other producing parties' data. Fry's is the *only* practical source of data regarding its computer sales – the parties obviously cannot subpoena thousands or millions of consumers (even assuming they could be identified and located). As to its computer purchases, Fry's data are unique to the extent it purchased from a non-subpoenaed computer manufacturer or from any subpoenaed computer manufacturer that sells to Fry's but, for whatever reason, does not produce its sales data in this case or has gaps in that data. Moreover, Fry's purchase data are important even to the extent they might overlap data produced by one of its suppliers. Fry's data may be more robust and in all events would serve as a check on the accuracy of the other data, and vice versa. Furthermore, the mere potential for overlap cannot be a basis for refusing to produce data because otherwise *both* producing entities could refuse production on that basis, leaving the parties with no source of the data. The possibility of partially overlapping data simply cannot justify Fry's refusal to produce its data.

2.    **Fry's Transactional Data Will Be Safeguarded by the Protective Order**

Fry's also refuses to produce its data on that ground that they constitute trade secrets. *See* Volin Cert. ¶¶ 9, 12. However, the data will be appropriately safeguarded by the Protective Order, which protects the confidentiality of discovery materials produced in this litigation by parties and non-parties alike. The Protective Order by its terms affords "the full benefits and protections" to third parties, who are entitled to "designate documents or deposition testimony as Confidential Discovery Material." *See* Protective Order ¶ 15.

Remarkably, Fry's denies that the Protective Order's protections apply to it. Even were this true – which it clearly is not – that would be no reason to refuse to comply with the subpoena. The parties certainly could work out an appropriate protective order or agreement with Fry's if that were necessary – but it is not. As noted above, the Protective Order fully applies to third parties. Fry's actions, as opposed to its position in negotiations, acknowledge as much. Fry's participated in the proceedings in this Court that led to the entry of the Protective Order, including filing an extensive set of objections and comments to the parties' proposed form of protective order. *See* Objections and Comments of Third Party Fry's Electronics, Inc. to the [Proposed] Protective Order, attached hereto as Exhibit 3; Volin Cert. ¶ 9. In addition, ironically, Fry's designated its February 9, 2007 letter to Class Plaintiffs' counsel (*see* Volin Cert. ¶ 9 and Exhibit G thereto) as "'Attorneys' Eyes Only' *Pursuant to Protective Order in the Below-Mentioned Matter*." (Emphasis added.) As Fry's

The Honorable Vincent J. Poppiti
March 29, 2007
Page 4

itself knows, the Protective Order applies to its data and will more than adequately protect any confidential information therein.

In a related argument, Fry's challenges this Court's authority to enforce the subpoena, which was issued out of the Northern District of California. *See* Volin Cert. ¶ 12. This argument, however, conflicts with several cases holding that the multidistrict litigation statute (28 U.S.C. § 1407) authorizes the transferee court to enforce subpoenas issued by other federal district courts. *See Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F.Supp.2d 270, 275-76 (D.D.C.2002) (§1407 authorizes MDL transferee judge to enforce subpoena issued by another district court); *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 174 F.R.D. 412 (N.D. Ill. 1997) (§ 1407 authorizes transferee court to rule on motion to compel compliance with subpoena issued by another district court); *In re Sunrise Sec. Litig.*, 130 F.R.D. 560 (E.D. Pa. 1989) (transferee court may exercise power of court issuing subpoena). This Court has jurisdiction over this dispute.

### 3. The Parties Have Offered to Narrow Their Data Requests to Ease Fry's Burden

Fry's makes vague assertions about excessive burden of producing the requested data and claims that the parties have "refused . . . to limit their requests in any meaningful manner." *Id.* To the contrary, the parties have twice offered to limit the scope of Fry's production (*see* Volin Cert. ¶¶ 7, 10 and Exhibits E, H thereto) and have asked Fry's for preliminary information, such as a sample data set, which should then allow the parties to further narrow their data request (*see* Volin Cert. ¶¶ 2, 10, 13 and Exhibits B, H, K thereto). But Fry's has been unwilling to negotiate the scope of its production or provide the preliminary information. Class Plaintiffs are prepared to accommodate any true burden concerns Fry's may have, but can do so only if Fry's will participate in and facilitate that dialogue in good faith. As noted above, Class Plaintiffs believe that compelling Fry's to produce its data in three weeks will have the salutary effect of making Fry's an active and willing partner in those discussions.

### 4. Conclusion

Despite extensive efforts to negotiate a data production from Fry's, the company continues to resist making any production at all, based on grounds that are wholly without merit. Fry's appears stuck in objection mode. Class Plaintiffs believe that an order compelling Fry's to produce its data in three weeks will bring the company to the negotiating table in good faith, so that the details of the production can worked out promptly.

Respectfully submitted,

James L. Holzman (DE Bar ID # 663)
*Interim Liaison Counsel for the Class Plaintiffs*

JLH/sam
Enclosures

The Honorable Vincent J. Poppiti
March 29, 2007
Page 5


cc: Clerk of the Court (By electronic filing and hand delivery)
Richard L. Horwitz, Esquire (By electronic filing and hand delivery)
Frederick L. Cottrell, III, Esquire (By electronic filing and hand delivery)
Brian D. Henri, Esquire (By email and overnight delivery)