**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE<br>INTEL CORP.<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | )<br>)<br>)<br>)<br>) | MDL No. 05-1717-JJF |
| PHIL PAUL, *on behalf of himself*<br>*and all others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>INTEL CORPORATION,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-485-JJF |

## CERTIFICATION OF RICHARD M. VOLIN IN SUPPORT OF CLASS PLAINTIFFS' REQUEST TO COMPEL FRY'S ELECTRONICS, INC.

I, Richard M. Volin, file this certification pursuant to Local Rule 7.1.1 and state that the following efforts and exchanges have been made by the Class, or by AMD in coordination and on behalf of the Class, to reach agreement on the subject of the letter brief filed herewith:

1.      Attached hereto as Exhibit A is a true and correct copy of an August 28, 2006 email from Steve Fimmel, Plaintiffs' Class counsel, to Brian Henri, counsel for Fry's Electronics, Inc. ("Fry's"), briefly explaining the parties' coordination efforts and focus on transactional data, and requesting that Fry's provide certain preliminary information regarding any database or dataset that might contain relevant transactional data.

2.      Attached hereto as Exhibit B is a true and correct copy of a December 4, 2006 letter from Karen J. Marcus, Plaintiffs' Class counsel, and Jennifer Laser, counsel for plaintiff

Advanced Micro Devices, Inc. ("AMD"), to Mr. Henri requesting the production of certain transactional data and proposing a multi-step protocol for such production.

3.        Attached hereto as Exhibit C is a true and correct copy of a string of emails sent by Jennifer Laser to Mr. Henri, including (i) a December 4, 2006 email forwarding Exhibit B, above, requesting preliminary information regarding Fry's databases and suggesting a telephonic conference to discuss the letter; (ii) a December 11, 2006 email noting Fry's lack of response to the prior email and reiterating the telephonic conference request; and (iii) a December 12, 2006 email confirming that the parties are available for a call on December 13, 2006.

4.        On December 13, 2006, the parties conducted a telephonic conference with Mr. Henri which lasted for approximately one hour and covered many or all of the issues discussed in Plaintiffs' letter brief filed herewith.  Mr. Henri indicated that he would obtain additional information about Fry's databases and communicate that information to the parties.

5.        Attached hereto as Exhibit D is a true and correct copy of a January 8, 2007 email from Ms. Laser to Mr. Henri reiterating the information requests made during the December 13, 2006 telephonic conference and requesting another call to discuss transactional data.

6.        On January 11, 2007, the parties conducted a telephonic conference with Mr. Henri which lasted about one-half hour and covered many or all of the issues discussed in Plaintiffs' letter brief filed herewith.  The parties reiterated their request for Fry's to run a sample transactional data report and Mr. Henri indicated that he would inquire with his client as to running such a report.

7.        Attached hereto as Exhibit E is a true and correct copy of a January 25, 2007 letter from Richard M. Volin, Plaintiffs' Class counsel, to Mr. Henri following up on the January

11, 2007 telephonic conference, confirming certain details regarding the requested sample report and attaching a list of requested database fields to be used by Fry's in the sample report.

8.      Attached hereto as Exhibit F is a true and correct copy of a string of emails sent by Ms. Marcus and Ms. Laser, respectively, to Mr. Henri, including (i) a January 25, 2007 email from Ms. Marcus forwarding Exhibit E, above, and indicating the parties' anticipation of a response from Fry's; (ii) a February 1, 2007 follow-up email from Ms. Laser requesting an update on the status of the sample run discussed in prior letter and offering the parties' availability for a telephonic conference; and (iii) a February 7, 2007 second follow-up email from Ms. Laser reiterating the request for an update on the sample run, noting the existence of the transactional data production deadline, attaching the Court Order regarding same and requesting a telephonic conference.

9.      Attached hereto as Exhibit G is a true and correct copy of a February 9, 2007 letter from Mr. Henri to Mr. Volin responding to the parties January 25, 2007 letter.  Mr. Henri "question[s] the need for the information from Fry's given the fact that the parties are seeking identical information from the manufacturers." Ex. G at pg 1.  The letter describes the transactional data sought by the parties as "trade secret information," asserts that "many of the categories of documents that the parties seek such as Fry's profit margins, market development funds, and vendor rebate information are all confidential and proprietary trade secret information and are not relevant to the claims or defenses of any party," and designates the letter as confidential under the Protective Order. Ex. G at pgs. 1, 3.  Fry's counsel indicates that Fry's description of the products in its databases "would not enable Fry's to perform" a search of all products containing a particular component. Ex. G at pg. 2.

3

10.    Attached hereto as Exhibit H is a true and correct copy of a February 23, 2007 letter from Mr. Volin to Mr. Henri responding to Exhibit G, above.  The letter attaches an amended list of requested database fields, which were narrowed and divided for simplicity, to be used in the sample report as well as a set of "Lookup Tables" to be used as an aid by Fry's technical personnel.  The letter requests a response by February 27, 2007, particularly as to "whether Fry's is willing to run the requested sample report."

11.    Attached hereto as Exhibit I is a true and correct copy of a March 6, 2007 letter from Mr. Volin to Mr. Henri following up on Exhibit H, above, and reiterating the parties' request for a response from Fry's.

12.    Attached hereto as Exhibit J is a true and correct copy of a March 8, 2007 letter from Mr. Henri to Mr. Volin responding to Exhibit H, above.  The letter asks: "Why do you need the same information from both manufacturers and retailers?"  Ex. H at pg. 2.  The letter asserts that any confidentiality order "would not apply to Fry's" because Fry's counsel "never remotely agreed that said order would apply to Fry's document production" and because the initial subpoena was "issued from the Northern District of California and therefore are governed by said Courts."  *Id.*

13.    Attached hereto as Exhibit K is a true and correct copy of a March 12, 2007 letter from Mr. Volin to Mr. Henri.  The letter requests a response "by written or verbal communication by the March 14th deadline so that [the Class and AMD] may accurately report on the status of negotiations to the Special Master."

14.    Attached hereto as Exhibit L is a true and correct copy of a March 15, 2007 letter from Mr. Volin to Mr. Henri indicating Class Plaintiffs' intent to file a motion to compel in light

of Fry's failure to respond and the previous statement that Fry's counsel "cannot see how there is anything left to discuss."

Dated: March 22, 2007

                       Respectfully submitted,

By:                                   

                       Richard M. Volin
                       FINKELSTEIN THOMPSON LLP

                       Counsel for Class Plaintiffs

Filed on this 29th day of March, 2007 by:

                       PRICKETT, JONES & ELLIOTT, P.A.

                       James L. Holzman (DE Bar #660)
                       J. Clayton Athey (DE Bar #4378)
                       Laina M. Herbert (DE Bar #4717)
                       1310 King Street, Box 1328
                       Wilmington, DE 19899
                       (302) 888-6500
                       jlholzman@prickett.com
                       jcathey@prickett.com
                       lmherbert@prickett.com

                       *Interim Liaison Counsel for Plaintiffs*

**Exhibit A**

**Richard M. Volin**

| | |
|---|---|
| **From:** | Steve Fimmel [stevef@hbsslaw.com] |
| **ent:** | Monday, August 28, 2006 4:08 PM |
| **o:** | bdh@i.frys.com |
| **Cc:** | Lesa Liston; Richard M. Volin |
| **Subject:** | RE: AMD vs. Intel Class subpoena |

Mr. Henri-

    The class plaintiffs are still in the process of working with AMD's counsel on how
to best coordinate our production requests under the separate subpoenas, although I
understand from O'Melveney & Myers that, without waiving its objections, Fry's has begun
collecting documents and are awaiting a protective order.  In the interim, because the
class plaintiffs have an early deadline next March on class certification, we are
requesting from you some information on transactional data.  Under the subpoena, we are
seeking the transactional, customer and product datasets related to each computer
containing x86 compatible chips that was purchased or sold by your company from January
2000 through the present,including information regarding rebates and discounts related to
each purchase or sale.  Such information is responsive to Requests 7C, 7D, 8A, 9 and 10.

    To simplify and expedite discovery of this information, please list and describe any
database or dataset that you have which either contains or can produce such information.
Please include on your list any archived database or dataset relevant to such information.
With regard to each database or dataset that you list, please include a "data dictionary"
(i.e. a description of the included fields), the time period covered by such database or
dataset, and the software and computer system producing such databases or datasets.

    Please feel free to contact me if you have any questions regarding this request or
to discuss any other request covered by the subpoena.

Sincerely,


Steve Fimmel

Hagens, Berman, Sobol, & Shapiro

(206) 268-9362


-----Original Message-----
From: bdh@i.frys.com [mailto:bdh@i.frys.com]
Sent: Thursday, August 10, 2006 9:42 AM
To: Steve Fimmel
Subject: Re: AMD vs. Intel Class subpoena

Mr. Fimmel:

There was some confusion on our end regarding the subpoena.  It was received and our
responses were timely served on July 7, 2006, to Saveri & Saveri.
I apologize for the confusion (this took place while I was out of the office).

Very truly yours,

Brian Henri
Fry's Electronics, Inc.

>
> Mr. Henri-
>

1

```
>
>
> I am having our paralegal, Lesa Liston, forward you a copy of the
> subpeona.
>
>
> My phone number is (206) 268-9362
>
>
>
> Thank you-
>
>
>
> Steve Fimmel
>
>
```

**Exhibit B**

# FINKELSTEIN THOMPSON & LOUGHRAN

## ATTORNEYS AT LAW

December 4, 2006

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Brian Henri
**Fry's Electronics, Inc.**
600 East Brokaw Road
San Jose, CA 95112
bdh@frys.com

RE:     *In re Intel Corp. Microprocessor Antitrust Litigation* (MDL No. 1717-JJF)
        *Phil Paul v. Intel Corp.* (C.A. No. 05-485-JJF)

Dear Mr. Henri:

Plaintiffs' counsel for AMD and the Class are writing to streamline the production of transactional data by Fry's Electronic, Inc. ("Fry's"). Plaintiffs seek transactional data reflecting: (1) the net costs of x86 chips and computer products containing x86 chips that Fry's purchased from January 2000 to the present – by transaction for each computer product; and (2) the net sales prices of x86 chips and computer products containing x86 chips that Fry's sold from January 2000 to the present – by transaction for each computer product.

Plaintiffs have conferred and agreed upon the below protocol for a coordinated production, which we hope and expect will be responsive to their subpoena requests concerning transactional data.

1.  **Information**: Fry's should initially produce the following information: (i) a list and description of each database or dataset from which you would produce any of the costs and sales data described above, including within your list any relevant archived database or dataset; (ii) a "data dictionary" (i.e. a description of the included fields) for each database or dataset that you list; (iii) the time period covered by each database or dataset that you list; and (iv) the software and computer system producing each database or dataset that you list.

2.  **Sample Dataset:** Fry's should also initially provide a sample dataset from the list described above, in ASCII tab-delimited format. Plaintiffs will review the sample database and corresponding data dictionary

FINKELSTEIN, THOMPSON & LOUGHRAN

Letter to Mr. Henri
December 4, 2006
Page 2 of 2

provided by Fry's with the goal of prioritizing and/or limiting the
production to the most relevant fields, taking into account customer
privacy concerns.

3.  **Data Production**: Following review, plaintiffs will inform Fry's as to
which fields were selected and ask for production of such data from the
datasets and databases described above.

4.  **Related Sales Info**:  Plaintiffs also request information regarding rebates,
credits, discounts, marketing funds and/or any other payments related to
each purchase or sale in such databases, in whatever format such
information is kept in the ordinary course of business.  Plaintiffs also
request quarterly financial information, specifically to include net
revenues, costs of goods sold (COGS), selling and marketing expenses,
and other operational costs for any computer containing x86 chips sold
during the relevant time period.   If these costs cannot be disaggregated at
the product level, then aggregated figures should be provided.

We appreciate your client's cooperation and look forward to working with you on
these matters.  Please contact us with any questions or comments that you may have
regarding this protocol.

Very truly yours,

/s/

_____
Karen J. Marcus
FINKELSTEIN, THOMPSON
& LOUGHRAN
Counsel for the Class Plaintiffs

/s/

_____
Jennifer Laser
O'MELVENY & MYERS LLP
Counsel for AMD International Sales &
Service LTD and Advanced Micro Devices,
Inc.

Exhibit C

## Richard M. Volin

**From:**    Laser, Jennifer [JLaser@OMM.com]
**Sent:**    Tuesday, December 12, 2006 5:15 PM
**To:**    bdh@i.frys.com
**Cc:**    Liversidge, Samuel G.; Karen J. Marcus; Richard M. Volin
**Subject:** RE: Fry's Electronics

Brian,

I spoke with counsel for Intel and the Class, and we are all available to speak with you tomorrow at **2:00 p.m. PST.**  Here is the call in information:

Call in:  1-866-244-8528
Passcode:  984507

**Jennifer Laser**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars #700
Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged.  If you are not the intended recipient, you may not read, copy, distribute, or use this information.  If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

**From:** Laser, Jennifer
**Sent:** Monday, December 11, 2006 9:27 AM
**To:** 'bdh@i.frys.com'
**Cc:** 'Liversidge, Samuel G.'; 'Karen J. Marcus'; 'Richard M. Volin'
**Subject:** RE: Fry's Electronics

Dear Brian,

We haven't head from you in response to my email below, and would like to set up a call with you later this week to discuss Fry's transactional data and the databases that contain it.  We are all mindful of the Court-imposed deadline of December 21 and want to make sure our discussions move forward expeditiously.  I have checked with counsel for Intel and the Class and all three of us are available tomorrow afternoon (December 12) and Wed. afternoon (Dec. 13) at any time that's convenient for you.

Would you be available to speak with us at any of those times?

Best regards,

**Jennifer Laser**
**O'Melveny & Myers LLP**

3/21/2007

1999 Avenue of the Stars #700
Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Laser, Jennifer
**Sent:** Monday, December 04, 2006 3:47 PM
**To:** bdh@i.frys.com
**Cc:** Liversidge, Samuel G.; Karen J. Marcus; Richard M. Volin
**Subject:** Fry's Electronics

Dear Brian,

It was a pleasure to speak with you last Thursday.  As we discussed, I am forwarding you a letter from class plaintiffs and AMD summarizing transactional data requests to Fry's Electronics.  I understand from class counsel that class already sent you a similar summary back in August, but in a more informal e-mail form.

To ensure that we proceed in an efficient and expeditious manner, it might be useful to set up a call between Fry's IT person knowledgeable about Fry's electronic databases that store this type of transactional data and counsel for class, AMD and Intel to discuss the most effective way to extract data responsive to the parties' subpoenas to Fry's.  (I am cc'ing counsel for each party on this email).  It would also be of great help if, prior to that call, the parties received some basic information regarding Fry's databases (e.g. description of the database, description of available fields, etc.) so that we can discuss those specifics during the call.

Please call or email me once you've had a chance to review the attached letter and discuss it Fry's database professionals.  We are pressing up against the court-imposed discovery deadline and would, therefore, like to proceed as quickly as your schedule will allow it.  We are available to speak with you and your IT professional at the time that's convenient for you.  Just propose some dates, and we'll get back to you promptly.

Best regards,

**Jennifer Laser**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars #700
Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

3/21/2007

Exhibit D

### Richard M. Volin

**From:** Laser, Jennifer [JLaser@OMM.com]
**Sent:** Monday, January 08, 2007 7:36 PM
**To:** Laser, Jennifer; bdh@i.frys.com
**Cc:** Liversidge, Samuel G.; Karen J. Marcus; Richard M. Volin
**Subject:** RE: Fry's Electronics

Brian,

Happy New Year to you  I just wanted to check in with you regarding status.  When we last spoke on December 13, you promised to obtain further information on Fry's databases that contain transactional data and speak with us about it.  Now that the holiday season is behind us, could we set up another call to discuss transactional data. What date and time is good for you?

**Jennifer Laser**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars #700
Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged.  If you are not the intended recipient, you may not read, copy, distribute, or use this information.  If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Laser, Jennifer
**Sent:** Tuesday, December 12, 2006 2:15 PM
**To:** 'bdh@i.frys.com'
**Cc:** 'Liversidge, Samuel G.'; 'Karen J. Marcus'; 'Richard M. Volin'
**Subject:** RE: Fry's Electronics

Brian,

I spoke with counsel for Intel and the Class, and we are all available to speak with you tomorrow at **2:00 p.m. PST.**  Here is the call in information:

Call in:  1-866-244-8528
Passcode:  984507

**Jennifer Laser**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars #700
Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

3/15/2007

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Laser, Jennifer
**Sent:** Monday, December 11, 2006 9:27 AM
**To:** 'bdh@i.frys.com'
**Cc:** 'Liversidge, Samuel G.'; 'Karen J. Marcus'; 'Richard M. Volin'
**Subject:** RE: Fry's Electronics

Dear Brian,

We haven't head from you in response to my email below, and would like to set up a call with you later this week to discuss Fry's transactional data and the databases that contain it. We are all mindful of the Court-imposed deadline of December 21 and want to make sure our discussions move forward expeditiously. I have checked with counsel for Intel and the Class and all three of us are available tomorrow afternoon (December 12) and Wed. afternoon (Dec. 13) at any time that's convenient for you.

Would you be available to speak with us at any of those times?

Best regards,

**Jennifer Laser**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars #700
Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Laser, Jennifer
**Sent:** Monday, December 04, 2006 3:47 PM
**To:** bdh@i.frys.com
**Cc:** Liversidge, Samuel G.; Karen J. Marcus; Richard M. Volin
**Subject:** Fry's Electronics

Dear Brian,

It was a pleasure to speak with you last Thursday. As we discussed, I am forwarding you a letter from class plaintiffs and AMD summarizing transactional data requests to Fry's Electronics. I understand from class counsel that class already sent you a similar summary back in August, but in a more informal e-mail form.

3/15/2007

To ensure that we proceed in an efficient and expeditious manner, it might be useful to set up a call between Fry's IT person knowledgeable about Fry's electronic databases that store this type of transactional data and counsel for class, AMD and Intel to discuss the most effective way to extract data responsive to the parties' subpoenas to Fry's. (I am cc'ing counsel for each party on this email). It would also be of great help if, prior to that call, the parties received some basic information regarding Fry's databases (e.g. description of the database, description of available fields, etc.) so that we can discuss those specifics during the call.

Please call or email me once you've had a chance to review the attached letter and discuss it Fry's database professionals. We are pressing up against the court-imposed discovery deadline and would, therefore, like to proceed as quickly as your schedule will allow it. We are available to speak with you and your IT professional at the time that's convenient for you. Just propose some dates, and we'll get back to you promptly.

Best regards,

**Jennifer Laser**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars #700
Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

Exhibit E


# FINKELSTEIN THOMPSON LLP

January 25, 2006

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Brian Henri
**Fry's Electronics, Inc.**
600 East Brokaw Road
San Jose, CA 95112
bdh@frys.com

RE:  *In re Intel Corp. Microprocessor Antitrust Litigation* (MDL No. 1717-JJF)
     *Phil Paul v. Intel Corp.* (C.A. No. 05-485-JJF)

Dear Mr. Henri:

        The parties have compiled the below list of database fields for Fry's use in
running an initial sample report of randomly selected PLUs/SKUs, as discussed on our
January 11th conference call.  It is our understanding that you will inquire with your
client as to running a sample report using these fields.

        For purposes of this sample run, Fry's will supply PLUs/SKUs related to AMD
and Intel purchases by Fry's.  Additionally, the parties will seek production of data or
documents reflecting rebate and market development funds that were received from Intel,
AMD and the manufacturers but not contained in the transactional data, e.g. quarterly or
annual payments.

        You have asked whether any of Fry's customers are class representatives in this
litigation.  Class Counsel does not believe that this information is relevant or should
affect your production, but we are collecting it from our clients.  Is it Fry's position that –
if Fry's customers are not class representatives – Fry's will restrict their production in
any way?

        We appreciate Fry's cooperation and look forward to completing the above
production with you.  Please contact us with any questions that you may have regarding
the attached list of fields.

                        Very truly yours,

                        /s/

                        _____
                        Richard M. Volin
                        FINKELSTEIN THOMPSON LLP
                        Counsel for the Class Plaintiffs

1050 30TH STREET, NW • WASHINGTON, DC 20007 • PHONE: 202.337.8000 • FAX: 202.337.8090 • TOLL-FREE: 877.337.1050

601 MONTGOMERY STREET • SUITE 665 • SAN FRANCISCO, CA 94111 • PHONE: 415.398.8700 • FAX: 415.398.8704
WWW.FINKELSTEINTHOMPSON.COM

Letter to Fry's Electronics
January 25, 2007
Page 2 of 2



## ATTACHMENT A
### Requested Database Fields

1. Product SKU (for both purchases and sales) and any other number or code that identifies a product
2. SKU category
3. Product description (with as much detail as possible, including whether the PC or laptop is Intel or AMD based)
4. Any number or code (or combination of numbers or codes) that would correspond to Vendor Name, Customer Name, Ship-from location, Ship-to location, as well as any number or code that links a subsidiary to a parent company
5. Vendor Name (i.e. who Fry's bought the product from)
6. Quantity Purchased
7. Invoice Date
8. Invoice Number
9. Unit Cost (i.e., the price Fry's paid to the vendor, after adjusting for all discounts, rebates, returns, credits, debits, freight), along with an understanding of which combination of these adjustments are incorporated into the Unit Cost)
10. Customer name (i.e., who Fry's sold the product to)
11. Quantity sold
12. Net Sale Price/Actual Price Paid (i.e., the price paid to Fry's, after adjusting for all discounts, rebates, returns, credits, debits, freight), along with an understanding of which combination of these adjustments are incorporated into the Net Sale Price/Actual Price Paid
13. Rebate or Marketing Dollar Amount associated with the sale (separate breakouts for any price reductions and description of the type of reductions, i.e., discounts, rebates, returns, credits, debits, freight)
14. Net Revenues
15. Gross profit margin
16. Suggested retail price
17. Transaction Location (Ship-from location and Ship-to location )
18. Type of Transaction (e.g. website, telephone)
19. Any downstream sales data

Exhibit F

## Richard M. Volin

| | |
|---|---|
| **From:** | Laser, Jennifer [JLaser@OMM.com] |
| **Sent:** | Wednesday, February 07, 2007 6:26 PM |
| **To:** | bdh@i.frys.com |
| **Cc:** | Richard M. Volin; MDore@gibsondunn.com; Liversidge, Samuel G.; Karen J. Marcus |
| **Subject:** | RE: Intel Litigation |
| **Attachments:** | 3rd Party Discov Deadline Order 2007.pdf |

*Dear Brian,*

*In follow-up to my last email, could you please let us know the status of a sample data run discussed in Karen Marcus' letter of January 25. We are now under a Court-imposed deadline to complete* transactional data *production by mid-March. (The Order is attached). This should give us sufficient time to work out the issues we discussed during our last call, but we do need to proceed expeditiously. Could we set up some time to talk early next week?*

*Best regards,*

**Jennifer Laser**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars #700
Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Laser, Jennifer
**Sent:** Thursday, February 01, 2007 9:51 AM
**To:** bdh@i.frys.com
**Cc:** Richard M. Volin; MDore@gibsondunn.com; Liversidge, Samuel G.; Karen J. Marcus
**Subject:** RE: Intel Litigation

Dear Brian,

I just wanted to follow-up on Karen's letter of January 25. Could you please let us know the status of a sample data run discussed in the letter. If there are some technical and other issues you'd like to address with us, we are available for a quick conference call at a time that's convenient for you.

Best regards,

**Jennifer Laser**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars #700

3/15/2007

Los Angeles, California 90067
(310) 246-8445 direct line
(310) 246-6779 fax
jlaser@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.*

---

**From:** Karen J. Marcus [mailto:KMarcus@finkelsteinthompson.com]
**Sent:** Thursday, January 25, 2007 9:51 AM
**To:** bdh@i.frys.com
**Cc:** Laser, Jennifer; Richard M. Volin; MDore@gibsondunn.com; Liversidge, Samuel G.
**Subject:** Intel Litigation

Mr. Henri,

Please review the attached letter, written on behalf of all the Intel litigation parties, regarding the parties' field list request for a sample report of Fry's transactional data. Please let me know if you have any questions. We look forward to your response.

Karen

*Karen J. Marcus*
*Finkelstein Thompson LLP*
(202) 337-8000 telephone
(202) 337-8090 fax
www.finkelsteinthompson.com

*CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Finkelstein Thompson LLP which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.*



CONFIDENTIAL--SEALED DOCUMENT--ATTORNEYS' EYES ONLY

# SEALED

# DOCUMENT

CONFIDENTIAL--SEALED DOCUMENT--ATTORNEYS' EYES ONLY

Exhibit H


## FINKELSTEIN
## THOMPSON LLP

February 23, 2007

**VIA FACSIMILE AND ELECTRONIC MAIL**

Brian Henri, Esq.
**Fry's Electronics, Inc.**
600 East Brokaw Road
San Jose, CA 95112
Fax: 408.487.4741
bdh@frys.com

      RE:     *In re Intel Corp. Microprocessor Antitrust Litigation* (MDL No. 1717-JJF)
               *Phil Paul v. Intel Corp.* (C.A. No. 05-485-JJF)

Dear Mr. Henri:

      I am writing on behalf of the Class, AMD and Intel in response to your February 9, 2007 letter. While we appreciate your letter, the parties believe that it mischaracterizes our exchanges and exaggerates Fry's production burden. We hope to clarify below any misconceptions that may have arisen from our prior conversations, and remain optimistic that we can come to agreement and avoid motion practice. As you know, the Special Master has set a deadline of February 21, 2007 for negotiation of agreements with third parties with respect to the production of transactional data, and has ordered that such data be produced by March 14, 2007. Therefore, this letter carries a sense of urgency on the part of all parties to move forward expeditiously and efficiently.

      With this urgency in mind, let us now turn to the process. Your letter identifies several issues that you believe make production overly burdensome, including document requests that seek data in a format that is different than how Fry's tracks and stores such data. The parties have taken much effort to reduce any burden. To begin, we have sought information regarding the structure of Fry's systems so that our expert consultants can tailor our request for a sample dataset to include only the most relevant database fields. Second, by analyzing this limited sample dataset in the context of only a handful of relevant products, the parties can further target our requests with regard to a complete transactional data production.

      While your description of Fry's data is helpful, it does not adequately provide the parties with the information necessary to develop a sound strategy. In fact, even the limited information supplied in your letter – acknowledging that terms such as "Pentium" and "Intel" are often used in the description field – indicates that such a field would help identify

1050 30TH Street, NW • Washington, DC 20007 • Phone: 202.337.8000 • Fax: 202.337.8090 • Toll-Free: 877.337.1050

601 Montgomery Street • Suite 665 • San Francisco, CA 94111 • Phone: 415.398.8700 • Fax: 415.398.8704
www.FinkelsteinThompson.com



products relevant to this litigation. Again, each of the steps proposed by the parties has as its goal the minimization of any burden on your client, and reflects an approach that has been used with almost every other third party involved in this litigation.

Many of the other concerns raised in your letter have been discussed previously. You raise an objection on the ground that the requested data contain trade secrets. While we appreciate this concern, the Confidentiality Order entered in this litigation compels the production of confidential information from non-parties as well as parties, and is specifically designed to protect Fry's trade secrets and other confidential documents. The Order was the product of hard-fought negotiations among the parties and various non-parties – including Fry's, which submitted comments and was given an opportunity to be heard in court. Thus, while it is unclear from your letter whether you intend to withhold all or some data on this ground, confidentiality should not prevent a good faith production by Fry's.

You also question the relevancy of the production on the grounds that the parties have sought transactional data from third-party manufacturers. To begin, transactional data from retailers such as Fry's is not merely relevant; it is critical to this litigation, especially in the context of upcoming class certification briefing. The purported class is comprised of all purchasers of x86 microprocessors and of computers containing x86 microprocessors. Fry's is a large and successful retailer that sells these products to the class.[1] Moreover, any overlap would only exist as to transactional data reflecting sales made by the subpoenaed manufacturer to Fry's and should not serve as an impediment to Fry's production of any other transactional data, such as data regarding its own sales.

More importantly, it is simplistic to label information sought from Fry's as "identical" to information sought from a manufacturer merely because the information pertains to the same sales. The parties are entitled to seek both sources of information, compare their robustness or availability within a certain time frame, and use the data as a check on accuracy. Fry's cannot assert that the parties have requested information that is otherwise within their possession or control; merely that the parties are attempting to seek from another third-party data covering the same sales. What is to prevent the other third party – in this instance, manufacturers – from asserting the same argument: that all sales to Fry's by that manufacturer can be procured from Fry's and therefore need not be produced by the manufacturer? Accepting such logic would leave the parties without *any* source for the data, which is unreasonable.

As to the objections you raise regarding the specific fields suggested by the parties for inclusion in the sample database report, the parties spent considerable resources and

---

[1] In the past, you have inquired as to purchases made by class representatives, not purchases made by "any members of the purposed class," as stated in your letter. Whether the class representatives themselves have purchased products from Fry's is irrelevant. Regardless, we have been willing to pursue and are currently investigating this issue, but will challenge any effort by Fry's to limit their production based on whether the class representatives, as opposed to putative class members, have purchased from Fry's.

Letter to Fry's Electronics
February 23, 2007
Page 3 of 6



employed technical consultants to cull the proposed fields as the most relevant to the parties' claims and defenses in this litigation. The parties are entitled to collect information that may have bearing upon any such claims and defenses, including damage theories and calculations, pass-on analysis and any effect that rebates or marketing may have upon pricing. Fry's profit margins, market development funds and vendor rebate information are relevant, or likely to lead to information relevant, to these and other aspects of the litigation.

In an effort to better streamline the process and address any confusion regarding our requests, the parties have further narrowed the suggested fields and also divided them according to the three primary categories we have discussed: Sales Transaction Data, Cost/Purchase Related Transaction Data and Rebate and Marketing Fund Data. (See Attachment A – Requested Field List). We have also attached a set of Lookup Tables that we believe will greatly reduce the volume of the data extract by allowing certain fields to be produced once rather than for each transaction. (See Attachment B – Lookup Tables). We have considered your objection regarding customer names and have agreed to withdraw our request to include that field.

Finally, you raise again the issue of costs. In December, the parties requested an estimate of the costs that you anticipate. We have not received that estimate. However, the parties do not believe that such an estimate is necessary at this stage because the initial transactional data production should result in only nominal costs. Once the sample data is created, the parties will better understand the costs associated with additional production. A cost discussion then would be more useful. However, if you believe that Fry's will incur unreasonable expenses in creating the sample database, please explain in detail the expected costs and the amount that you anticipate incurring in producing the sample database so we can have a more informed discussion about such costs.

We hope that this letter fully clarifies the process that we propose. As it stands, your letter simply identifies reasons for not producing. Given the relevance and importance of transactional data from Fry's, I am sure that you understand why such a letter will not prevent the parties from seeking such data. We recommend that you once again consider the utility of collecting sample data. If you do not agree to produce the sample data, we ask that you send us a letter explaining how you propose to comply with your subpoena obligations and the costs that you expect to incur in meeting those obligations.

Letter to Fry's Electronics
February 23, 2007
Page 4 of 6



Because the Court deadline for agreement has already passed, and the deadline for transactional data production is looming, I hope you understand why we need a response as soon as possible, but no later than Tuesday, February 27. I look forward to your prompt response, including your decision as to whether Fry's is willing to run the requested sample report.

Very truly yours,

Richard M. Volin
FINKELSTEIN THOMPSON LLP
Counsel for the Class Plaintiffs

CC:    Jennifer Laser, Esq.
       Michael H. Dore, Esq.
       Samuel G. Liversidge, Esq.

Letter to Fry's Electronics
February 23, 2007
Page 5 of 6



**ATTACHMENT A**
**Requested Database Fields**


**Sales Transaction Data**


1. Product SKU  or any other number or code that identifies a unique product
2. Transaction Date
3. Unit Acquisition Cost (if available in the sales data; i.e., the price Fry's paid to the product vendor, after adjusting for all discounts, rebates, returns, credits, debits, freight, along with an understanding of which combination of these adjustments are incorporated into the Unit Cost)
4. Quantity sold
5. Net Sale Price (i.e., the price paid to Fry's, after adjusting for all discounts, rebates, returns, credits, debits, freight), along with an understanding of which combination of these adjustments are incorporated into the Net Sale Price
6. Transaction Location (Store Code, including a way to identify a web based sale)
7. Type of Transaction (e.g., sale, return, credit, etc.)


**Cost/Purchase Related Transaction Data**

1. Purchase Order Number
2. Transaction Date
3. Product SKU  or any other number or code that identifies a unique product
4. Vendor number or code that would correspond to specific vendor
5. Quantity Purchased
6. Unit Purchase Cost (i.e., price per unit paid by Fry's)
7. Type of Transaction (e.g., purchase, return, credit, etc.)


**Rebate and Marketing Fund Data**

1. Rebate or Marketing Dollar Amount
2. Vendor number supplying rebate/MDFs
3. Purpose for such funds
4. Date funds were received
5. If applicable, period for which these funds apply (i.e., time sensitive rebates)
6. If applicable, purchase order number for which funds may apply

Letter to Fry's Electronics
February 23, 2007
Page 6 of 6



## ATTACHMENT B
### Requested Lookup Tables

*Product lookup table*

1.  SKU (should link to product SKU in sales and cost data)
2.  SKU category (e.g., desktop, notebook, server, etc.)
3.  SKU/Product description (with as much detail as possible, including whether the machine is Intel or AMD based)
4.  Manufacturer of SKU
5.  Model # of SKU

*Store lookup table*

1.  Store Code (link to store code in sales data)
2.  Store Location (address and zip)

*Vendor Lookup Table*

1.  Vendor Code (should link to Cost and Rebate data)
2.  Parent number (if vendor belongs to a parent company)
3.  Vendor Name (i.e. who retailer/distributor bought the product from)
4.  Vendor Location (address and zip)

**Exhibit I**


# FINKELSTEIN THOMPSON LLP

March 6, 2007

## VIA FACSIMILE AND ELECTRONIC MAIL

Brian Henri, Esq.
**Fry's Electronics, Inc.**
600 East Brokaw Road
San Jose, CA 95112
Fax: 408.487.4741
bdh@i.frys.com

RE:     *In re Intel Corp. Microprocessor Antitrust Litigation* (MDL No. 1717-JJF)
        *Phil Paul v. Intel Corp.* (C.A. No. 05-485-JJF)

Dear Mr. Henri:

On February 23, 2007, the parties sent Fry's a letter which intended to clarify our requests and address the issues that you had previously raised. The February 23rd letter attached a further-narrowed list of fields relevant to the requested database, and provided a set of lookup tables in an effort to ease the process. The parties reiterated the March 14, 2007 deadline set by the Court and asked that Fry's provide a response by February 27th, particularly as to whether Fry's is willing to run the requested sample report.

The parties did not receive any communication from Fry's by February 27th, so a follow-up email was sent to you on March 1, 2007 inquiring as to whether you had conferred with your client and whether Fry's intended to provide any further response to the subpoena.

As of the writing of this letter, the parties have yet to receive any response from Fry's on these issues, despite next week's deadline. Please let us know whether Fry's will be responding and provide details as to the scope of any such response. Time is of the essence, and we appreciate your prompt reply.

Very truly yours,

Richard M. Volin
FINKELSTEIN THOMPSON LLP
Counsel for the Class Plaintiffs

CC:     Jennifer Laser, Esq.
        Michael H. Dore, Esq.
        Samuel G. Liversidge, Esq.

1050 30TH STREET, NW · WASHINGTON, DC 20007 · PHONE: 202.337.8000 · FAX: 202.337.8090 · TOLL-FREE: 877.337.1050

601 MONTGOMERY STREET · SUITE 665 · SAN FRANCISCO, CA 94111 · PHONE: 415.398.8700 · FAX: 415.398.8704
WWW.FINKELSTEINTHOMPSON.COM

Exhibit J

# Fry's ELECTRONICS
## LEGAL DEPARTMENT

600 E. Brokaw Road ♦ San Jose, CA 95112 ♦ Ph: (408) 487-4748 ♦ Fax: (408) 487-4741

March 8, 2007

VIA FACSIMILE

Richard Volin, Esq.
Finklestein Thompson, LLP
1050 30th Street, Suite 665
Washington D.C., 20007

Re:    Intel Litigation

Dear Mr. Volin:

I write in response to your letter dated February 23, 2007 in response to my letter dated February 9, 2007. I am surprised and disappointed by your letter. First, you assert that the Court ordered deadline for meeting and conferring is February 21, 2007 and state it is urgent that I respond to your letter in *two business days*. The question must be asked Mr. Volin, if it is so urgent than why did you wait *two weeks* to respond to my letter *and until after the court ordered deadline*? Moreover, why did the parties wait so long to initiate the meet and confer process in the first place – some of the subpoenas were served in October, 2005?

Second, your letter still fails to answer the basic questions I posed in my letter and in every discussion we have had since you first contacted me in December: (1) Did any of the purported class representative purchase products from Fry's; and, (2) How do the parties intend to pay for the requested information? With regard to the first issue you assert that you "are currently investigating this issue . . . " See, Letter from Richard Volin to Brian Henri, dated February 23, 2007 *fn.* 1. Your assertion is nonsense. It has been more than three months since I asked you this basic question. Your refusal to answer this question when I have spent hours answering the parties' questions lacks good faith. As I stated in my February 9, 2007 letter, meeting and conferring is a two-way street. See, Soto v. City of Concord, F.R.D. 603, 623 (N.D. Cal. 1995) (holding, "[s]ending a letter to the opposing party demanding compliance with a discovery request is not what this Court regards as an earnest attempt to "meet and confer" on the issues [r]ather, a live exchange of ideas and opinions is required"). Your repeated requests for information from Fry's and refusal to respond to Fry's

1

requests for information clearly fail to comply with the requirements for meeting and conferring. Moreover, it strains credulity for you to assert that you have been investigating this question for three months and still do not have the answer. If your assertion is accurate, then how can you possibly assert that you will adequately represent the class of consumers you seek to represent?

Likewise, your assertion that you have not responded to Fry's question as to how the parties intend to pay for the production because the parties are waiting to receive an estimate of the costs from Fry's is simply not accurate. The parties did not request such an estimate of costs from Fry's. Furthermore, how could Fry's provide such an estimate without knowing how the parties will limit the requests?

The remaining assertions in your letter are also not well taken. For example, you assert that Fry's trade secret objections are not founded because "the Confidentiality Order entered in this litigation compels the production of confidential information from non-parties as well as parties, and is specifically designed to protect Fry's trade secrets and other confidential documents." First, I believe you greatly mischaracterize the "Confidentiality Order." Second, even if there were such an order, it would not apply to Fry's. Indeed, Fry's does not have a confidentiality agreement with the parties. Moreover, although I agreed to meet and confer with the parties pursuant to the Confidentiality Order between the parties, I never remotely agreed that said order would apply to Fry's document production. Furthermore, you seem to forget that the subpoenas were issued from the Northern District of California and therefore are governed by said Courts.

Next, your argument concerning the obvious overlap of requested transactional data given that you are seeking the same information from manufacturers and retailers is confusing. Your letter merely states the conclusion that "transactional data from retailers such as Fry's is not merely relevant; it is critical to this litigation, especially in the context of class certification briefing." Your conclusory assertion is not helpful. Why do you need the same information from both manufacturers and retailers? How is the information "critical"?

I have attempted to discuss the subpoenas with the parties for months. In that time I have explained in detail the unreasonable burden the subpoenas seek to impose on Fry's. Moreover, the parties have refused to answer any of Fry's questions or to limit their requests in any meaningful manner. I have informed you repeatedly verbally and in writing that I will not continue to have one-sided discussions with you while you refuse to answer Fry's questions and concerns. Indeed, as stated above, it appears that you have intentionally failed to comply with the Court's deadline for

meeting and conferring regarding the transactional data. Accordingly, I cannot see how there is anything left to discuss.

Very truly yours,

Brian D. Henri
Legal Counsel

C.C.    Sam Liversidge, Esq.
        Jennifer Laser, Esq.

3

Exhibit K



# FINKELSTEIN THOMPSON LLP

March 12, 2007

**VIA FACSIMILE AND ELECTRONIC MAIL**

Brian Henri, Esq.
**Fry's Electronics, Inc.**
600 East Brokaw Road
San Jose, CA 95112
Fax: 408.487.4741
bdh@i.frys.com

RE:     *In re Intel Corp. Microprocessor Antitrust Litigation* (MDL No. 1717-JJF)
        *Phil Paul v. Intel Corp.* (C.A. No. 05-485-JJF)

Dear Mr. Henri:

        The Class and AMD write in response to your March 8, 2007 letter, and to express our disappointment at your continued unwillingness to provide any substantive production in response to the outstanding subpoenas served on Fry's. We reiterate our request for a sample transactional dataset. We disagree with the various reasons that you have raised as grounds for Fry's non-compliance and with your conclusion that there is nothing left to discuss. We are concerned that such a position may make motion practice unavoidable. Intel has withdrawn its participation in this correspondence in light of Fry's last letter.

        Nevertheless, the Class and AMD sincerely hope to resolve any differences that have arisen and work towards a reasonable production. Towards that end, we respond below to each of the points raised in your letter.

Class Representative Purchases

        You have asked whether any of the class representatives' purchases are from Fry's. Class counsel's investigation into that issue is ongoing but I can represent to you that, as of this writing, we have not found any documentation evidencing such purchases. As we have explained in prior correspondence and discussions, this should have no effect on Fry's production obligations pursuant to the Class' subpoena as members of the class undoubtedly have purchased from Fry's. In addition, such an objection does not apply to Fry's obligations pursuant to the AMD and Intel subpoenas.

1050 30TH STREET, NW • WASHINGTON, DC 20007 • PHONE: 202.337.8000 • FAX: 202.337.8090 • TOLL-FREE: 877.337.1050

601 MONTGOMERY STREET • SUITE 665 • SAN FRANCISCO, CA 94111 • PHONE: 415.398.8700 • FAX: 415.398.8704
WWW.FINKELSTEINTHOMPSON.COM

Letter to Fry's Electronics
March 12, 2007
Page 2 of 6



### Cost Issues

You state that the parties have not responded to the issue of costs and that a cost estimate was never requested by the parties. The Class and AMD do not believe that these statements are accurate, and have offered everything that we can reasonably offer on the cost issue:

- o  We have offered to discuss costs with an eye toward a reasonable cost-sharing of reasonable out-of-pocket expenses incurred by Fry's;

- o  The parties have explained that cost estimates are not necessary for the initial sample database, which will likely result in only nominal costs, and will inform all involved of potential future costs of the production;

- o  The parties have nevertheless offered to review and discuss a cost estimate on the initial sample database - an estimate that would need to come from Fry's;

- o  The parties have suggested that additional cost discussions take place after the initial sample database is produced and reviewed. The initial sample database will be used to narrow the parties' requests and lower the cost of the full production.

- o  The Class and AMD assert that a request for cost estimates was made during the December 13th conference with Fry's. However, regardless of whether such a request was communicated by the parties or heard by Fry's, you now claim that you are unable to offer a cost estimate. Ironically, the logic that Fry's now offers as to why it cannot provide cost estimates is the same logic offered by the parties as to why the initial production of a sample database would help inform the cost issue. See March 8, 2007 letter from Brian Henri to Richard Volin (questioning, "how could Fry's provide such an estimate without knowing how the parties will limit the requests?")

The ball is squarely in Fry's court. If you want the Class and AMD to consider cost estimates regarding the initial sample database, then give us your estimates. If you want us to discuss cost estimates as to the entire production, then give us the sample dataset so that we can analyze whether and how that informs the scope and costs associated with the entire production.

### Court-Ordered Deadline

Your letter asks why the parties sought a quick response to our February 23rd letter in light of the fact that it took the parties two weeks to send the letter, the letter was delivered after the Court's February 21st deadline and the parties waited a long time to initiate the meet and confer process.



○ As to the 2-week period between your letter and our response: The parties in this case are negotiating with dozens of third parties regarding subpoena productions and transactional data issues. Moreover, in an effort to lessen the burden on third parties, the parties make every effort to coordinate a unified position at every step of negotiations. In that context, this particular response on behalf of the parties took two weeks to finalize.

○ In our February 23rd letter, the parties were particularly interested in a quick response to the simple question of "whether Fry's is willing to run the requested sample report." The Class and AMD believe that a couple days are more than sufficient to communicate such a response.

○ The February 21st deadline applied to agreements with third parties with respect to the production of transactional data. The deadline for the actual production is March 14th. As the February 21st deadline approached, the parties were compelled to focus their resources on the numerous third parties with whom we were reaching agreement. It was apparent from your February 9th letter that Fry's was not willing to agree to a transactional data production, whether our responsive letter was sent a day or even a week prior. The Class and AMD are now focused on Fry's and hope to obtain an initial production by the March 14th deadline.

○ Finally, it is typical in a case of this magnitude for there to be some delay between the initial service of a subpoena and the eventual meet and confer process, especially where several parties are coordinating their efforts. It should also be noted that the Class did not serve its subpoena until June 2006, so any delay was minimal. In fact, the parties' pursuit of the Fry's subpoena after coordination of their discovery efforts saved Fry's the burden of duplicate responses, consistent with the intent of such coordination.

Confidentiality Order

You assert that the Confidentiality Order entered by the Court in this litigation does not compel production of confidential information from Fry's or, for that matter, even apply to Fry's. Part of your assertion is that the subpoena to Fry's was issued from the Northern District of California.

○ First, by its very terms, the Confidentiality Agreement and Protective Order ("Protective Order") in this case expressly contemplates the production of highly confidential documents by the third parties. *See* Preamble ("**WHEREAS**, a number of third parties, many of whom are competitors in, *inter alia*, the manufacture and sale of computer systems, will be the subject of document and deposition discovery in these actions; and **WHEREAS**, the preparation for trial of these actions may require the discovery and use of documents and other information which constitute



or contain commercial or technical trade secrets, or other confidential information the disclosure of which would be competitively harmful to the producing party; and . . . **WHEREAS**, the parties anticipate that this case will involve the production of hundreds of millions of pages of documents among and between actual and potential competitors and their customers")

o   Second, the confidentiality protections afforded by the Protective Order apply to all documents produced by Producing Parties in this case, including those produced by the third parties. *See* Definition L for definition of "Producing Party," which includes "a Third Party that produced or intends to produce Discovery Material in the AMD Litigation, the Japan Litigation, the Class Litigation, or the California Class Litigation");

o   Third, the District of Delaware, as the Court overseeing the Multi-District Litigation (MDL), has jurisdiction over all subpoenas, even those issued out of the Northern District of California.

<u>Overlap of Production from Other Third Parties</u>

Fry's refuses to produce any transactional data on the grounds that the parties are seeking identical information from other third parties. The parties have explained the flaws in this reasoning and you have expressed your confusion as to our explanation. The Class and AMD summarize the explanation as follows:

o   Fry's purchase data as to a particular product may differ in robustness from the selling entity's data corresponding to that product transaction;

o   such data may not be available for a given time frame from the selling entity;

o   even if both sets of data were identical and equally available, the parties are entitled to review and compare both sets as a check on accuracy;

o   even if the possibility of overlap were a legitimate basis for refusing production, such an overlap would only apply to data that is actually being requested from another entity. Because Fry's is the only source for data regarding Fry's sales to its customers or regarding Fry's purchases from non-subpoenaed entities, the possibility of overlap cannot be grounds for a refusal to produce such data; and

o   it is unreasonable to accept your logic – that the existence of an overlap warrants a refusal to produce – because then both you *and* the other subpoenaed entity that has overlapping data could refuse production, leaving the parties with no source for the data.

Letter to Fry's Electronics
March 12, 2007
Page 5 of 6



### Relevancy of Transactional Data

You challenge whether the requested data is relevant. As previously stated, Fry's is a large and successful retailer that purchases and sells the relevant products to class members. Data and other information regarding these transactions will be an important component to this case, especially in the context of class certification briefing. Such data will inform a variety of issues, including typicality and predominance inquiries under Federal Rule 23, exclusion of AMD from the microprocessor market, and expert analysis of damages.

### Limits on the Subpoena

We strongly disagree with your position that the parties have refused to "limit their requests in any meaningful manner." This statement ignores our continued efforts to narrow our requests. As previously explained, we have sought information regarding the structure of Fry's database systems so that our expert consultants can tailor our request for a sample dataset to include only the most relevant database fields. Moreover, if we could analyze a limited sample dataset in the context of only a handful of relevant products, we could further target our requests with regard to a complete transactional data production. Put another way, the transactional dataset that we now seek is, by its very nature, a limited subset of the entire subpoena and a concerted effort to focus our remaining requests.

### Fry's Responses

The Class and AMD have provided the responses above, and all our prior responses, as part of our sincere effort to facilitate this process fairly and professionally. We disagree with the accusations and rhetoric contained in your letters but we remain optimistic that we can put aside such disagreements and finalize an initial production by Fry's.

As explained in the parties' last letter and the corresponding attachments, the parties narrowed the suggested fields and divided them according to Sales Transaction Data, Cost/Purchase Related Transaction Data and Rebate and Marketing Fund Data. We provided Lookup Tables for your technical personnel to use as a means of reducing data volume by allowing certain fields to be produced once rather than for each transaction. Again, even the limited information that was supplied in your last letter – acknowledging that terms such as "Pentium" and "Intel" are often used in the description field – indicates that this sample database production will help identify products relevant to this litigation and aid in further honing the subpoenas to Fry's.

We understand that you feel that this process has been one-sided. The Class and AMD have the same feeling; we have attempted on numerous occasions to respond to your concerns and questions, and each time Fry's has provided a litany of reasons why it will not produce anything. We have asked for an explanation as to how you propose to comply with

Letter to Fry's Electronics
March 12, 2007
Page 6 of 6



your subpoena obligations and what costs you expect to incur in meeting those obligations. We respectfully renew those requests and ask that you respond by written or verbal communication by the March 14th deadline so that we may accurately report on the status of negotiations to the Special Master.

Very truly yours,

Richard M. Volin
FINKELSTEIN THOMPSON LLP
Counsel for the Class Plaintiffs

CC:    Jennifer Laser, Esq.
       Michael H. Dore, Esq.
       Samuel G. Liversidge, Esq.

**Exhibit L**



**FINKELSTEIN THOMPSON** LLP

March 15, 2007

**VIA FACSIMILE AND ELECTRONIC MAIL**

Brian Henri, Esq.
**Fry's Electronics, Inc.**
600 East Brokaw Road
San Jose, CA 95112
Fax: 408.487.4741
bdh@i.frys.com

RE:   *In re Intel Corp. Microprocessor Antitrust Litigation* (MDL No. 1717-JJF)
       *Phil Paul v. Intel Corp.* (C.A. No. 05-485-JJF)

Dear Mr. Henri:

In my previous letter, Class Plaintiffs and AMD repeated the requests previously
made by the parties for, among other things, an explanation as to how Fry's proposes to
comply with its subpoena obligations.  The letter asked that Fry's respond by written or
verbal communication by the March 14th deadline so that we may accurately report on the
status of negotiations to the Special Master.

Fry's has yet to provide any response to these requests or indicate a willingness to
produce any transactional data, including the initial sample report suggested by the parties.
In light of these refusals, as well as the statement in your March 8, 2007 letter that you
"cannot see how there is anything left to discuss," Class Plaintiffs are preparing a motion to
compel production in response to the subpoena issued to Fry's.

Very truly yours,

Richard M. Volin
FINKELSTEIN THOMPSON LLP
Counsel for the Class Plaintiffs

CC:   Jennifer Laser, Esq.
       Michael H. Dore, Esq.
       Samuel G. Liversidge, Esq.

1050 30TH STREET, NW · WASHINGTON, DC 20007 · PHONE: 202.337.8000 · FAX: 202.337.8090 · TOLL-FREE: 877.337.1050

601 MONTGOMERY STREET · SUITE 665 · SAN FRANCISCO, CA 94111 · PHONE: 415.398.8700 · FAX: 415.398.8704
WWW.FINKELSTEINTHOMPSON.COM