IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | ) ) ) ) ) | MDL Docket No. 05-1717 (JJF) |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-485 (JJF)<br><br>CONSOLIDATED |

**LETTER TO SPECIAL MASTER VINCENT J. POPPITI
FROM MARY B. GRAHAM**

                                         MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                         Mary B. Graham (#2256)
                                         Richard J. Bauer (#4828)
                                         1201 N. Market Street
                                         P.O. Box 1347
                                         Wilmington, DE  19899-1347
                                         302.658.9200

                                         *Attorneys for Nonparty Fry's Electronics, Inc.*

*OF COUNSEL:*

Robert W. Stone
Michael D. Powell
Quinn Emanuel Urquhart Oliver
& Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
650.801.5000

May 2, 2007

Dear Judge Poppiti:

Pursuant to the Court's request, this letter provides information about the modification by Judge Jordan to the protective order in the TriCor antitrust litigation. In that light, this letter also addresses the circumstances surrounding the proceedings relating to entry of the protective order as they relate to Fry's Electronics and might impact on the Court's determination of whether changes to the existing protective order are appropriate. Finally, we address the parties' stipulation governing electronic discovery which was first revealed to Fry's at yesterday's hearing and which we have now seen for the first time today. That stipulation demonstrates that the parties recognize that the protective order did not provide the only possible protections for information (and is in effect subject to modification) and that, in particular, electronic discovery as sought from Fry's warrants additional protections.

Fry's asserts that, should the Court require Fry's to produce information sought by Class Plaintiffs, then Fry's information is entitled to the highest protections possible, including restricting access to outside counsel, additional protection with respect to experts and further protections customarily given to electronic information such as source code. Particularly given the revelation by Class Plaintiffs that electronic discovery from the parties of the sort apparently sought by them from Fry's is being accorded additional protections, we ask that we have full opportunity to present specific protections for Fry's electronic information and that we have an opportunity to reply on Monday, May 7 to Class Plaintiffs' submission on Friday. If the Court agrees that additional protections are warranted for Fry's electronic information, then Fry's asks to be allowed to propose appropriate terms for the protection of its information.

## THE MODIFICATION OF THE PROTECTIVE ORDER IN TRICOR

The circumstances in the TriCor (fenofibrate) antitrust pharmaceutical litigation brought against Abbott Laboratories and Fournier Industrie by two generic drug manufacturers and various other purchaser groups, are as follows. The parties negotiated (subject to a dispute over a provision relating to experts), and the Court entered on March 1, 2006, a "Protective Order Governing Confidential Information." (Exh. A.) That Order had two, base tiers of confidentiality, with the higher confidentiality tier ("Highly Confidential") allowing access by limited numbers of in-house counsel for the parties and outside experts. (Exh. A at 8, ¶1(b).) Neither the in-house counsel nor the outside experts were permitted to be involved in "Competitive Fenofibrate Activities." (*Id*.) This district has a well established record of protecting against disclosure of information to those in a competitive decision making position.

In addition, the Order had an even higher, third tier for "Restricted Pricing Information" covering, for example, contract, pricing, sales and profit information relating to specific suppliers or customers. (Exh. A at 4, 10.) Information under that tier could only be shown to one in-house counsel for certain parties (and no in-house counsel for the others). Not only were those in-house counsel restricted from engaging in competitive fenofibrate activities, but they were further prohibited from drafting or negotiating contracts concerning any drug products at that time and for a period of two years following the final termination of the litigation.

Notwithstanding these protections, plaintiff Impax, a generic manufacturer, sought greater protections for its "company-wide manufacturing and sales models and strategic plans that go well beyond fenofibrate" which was relevant to damages, including a restriction such that Abbott's in-house counsel would not have access. (Exh. B at 1.) Abbott opposed that further restriction, arguing that the parties had negotiated the protective order, including the third tier allowing one Abbott in-house counsel, which should give sufficient protection to the sensitive Impax information at issue. (Exh. C at 2.) (Impax's reply letter is attached as Exh. D.)

At a hearing on the matter, Judge Jordan granted Impax's request for a fourth tier with an outside counsel-only category. (Exh. E at 25.) In so modifying the protective order, Judge Jordan did not articulate a standard, but he plainly applied the "good cause" standard applicable in the Third Circuit which balances injury and need (*see* p. 3 *infra*). Specifically, he observed that:

> I'm satisfied when you ask for the most sensitive documents you can possibly get from a company, you ought to expect they're not going to want anybody from inside the company, no matter what title they carry, to see it if it's not absolutely necessary. That is not an unreasonable position. And, you haven't persuaded me that it's absolutely necessary for anybody inside Abbott to see this set of documents, which sounds to me like it is indeed the most sensitive documents that a pharmaceutical company has it would expose and which indeed, … are the "keys to the kingdom."

(Exh. F at 24.) He noted that, while in-house counsel are as trustworthy as outside counsel, their position puts them in greater proximity to business persons and thereby puts information at greater risk. (Exh. E at 12-13.)

Notably, Judge Jordan found "apt" Impax's analogy that the documents being sought were as sensitive to it as is source code to a software company and that therefore similar protection was warranted: "I think they've made an apt analogy when they say it's a little like giving away the source code for a software company. There is not something a lot more sensitive I wouldn't think for a pharmaceutical company than a layout of their product development pipeline in detail." (Exh E at 25.) This district, including Judge Farnan, routinely protects source code, even of parties, with special outside counsel eyes only provisions (and other protections). *See e.g.*, *Pitney Bowes Inc. v. Stamps.com Inc*., No. 99-381-JJF, slip op. at 2 (D. Del. Dec. 13, 2001) (observing that any litigant "should be afforded the utmost protection, within reason, when required to disclose proprietary material.") (Exh. F); *Adobe Sys. v. Macromedia, Inc*., No. 00-743-JJF, 2001 U.S. Dist. LEXIS 18630, at *3 (D. Del. Nov. 5, 2001) ("[T]he source codes of a software company . . . are of critical importance to its business and must be provided the highest form of protection a court can provide in the context of a particular case.").

## THE MODIFICATION SOUGHT BY FRY'S IS FULLY WARRANTED

We submit that, just as Judge Jordan modified the TriCor order, the protective order here should be modified to provide Fry's information with greater protection. As demonstrated by the

TriCor ruling, the fact that a protective order was previously entered does not preclude a Court from ordering greater protection for certain information when down the line in a case specific discovery creates a specific issue. Given that this was true in TriCor for a *party*, who had been fully involved in the negotiation of the protective order and even agreed to the provisions it sought to have modified, it follows *a fortiori* that a *nonparty* who did not agree to the provisions in dispute should have at least as much opportunity to obtain additional protections for its information. Our letter to the Special Master of April 17, 2007 (p. 3) cites authority for the proposition that a court should be especially protective of nonparty information. *See also*, *United States of America v. Dentsply Int'l. Inc.*, 187 F.R.D. 152, 160 (D. Del. 1999).

This case should be governed by the "good cause" standard as the applicable standard in both the Ninth and Third Circuits and the standard evidently applied by Judge Jordan. "Good cause is required for modification of a protective order." *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers*, No. 00-3058, 2002 U.S. Dist. LEXIS 11389, at *9 (E.D. Pa. Feb. 6, 2002); *see also Biovail Corp. Int'l v. Hoechst Aktiengesellschaft,* No. 98-1434(MTB), 1999 WL 33454801 at *6 (D. N.J. Nov. 12, 1999) ("[T]here is no doubt that only good cause is required for modification of a protective order," citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 789-790 (3d Cir.1994)).[1]

Under the "good cause" standard, as applied in the Third Circuit, the moving party must "come forward with a reason to modify the order." *Pansy*, 23 F.3d at 790; *see also Green, Tweed, supra.* Certainly, Fry's (at least as much as Impax) has come forward with a reason to modify the protective order. Once such a reason has been given, whether "good cause" exists for a modification is determined by balancing the "need for information against the injury that might result if uncontrolled disclosure is compelled." *Pansy*, 23 F.3d at 787.[2] *See also Biovail v.*

---

[1] In *Greene, Tweed*, defendants sought modification of an existing protective order to preclude plaintiff's president from having access to defendants' customer names and sales information. The court characterized the motion as requesting "more protection than the protective order currently provides." *Id*. at *7. The court corrected the parties' erroneous view that the standard for modifying protective orders was "compelling need," explaining that, "unlike the 'extraordinary circumstance or 'compelling need' standard applied in the Second and Sixth Circuits, in the Third Circuit, 'good cause is required for modification of a protective order.'" *Id.* at *9. Although the Court denied the relief, an important factor was that the parties had "mutually agreed" to the disclosure of just such types of information to the specified in-house personnel, including the plaintiff's president. Here, by contrast, Fry's has objected, from the time of its first involvement, to its information being shown to in-house personnel. (D.I. 98, MDL No. 05-1717.)

[2] Similarly, a "good cause" standard applies in the Ninth Circuit. *Beckman Indus. Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992) (holding party seeking protection must show "good cause," and not "extraordinary circumstances," for modification of a protective order); *see also Phillips v. GMC*, 307 F.3d 1206, 1212 (9th Cir. 2002) (remanding district court's decision to lift stipulated protective order with instructions to conduct a "good cause" analysis). Neither the Third Circuit nor the Ninth Circuit sets a threshold hurdle for a party (or nonparty) seeking a modification to an existing protective order beyond simply coming forward with a reason to modify the protective order. Indeed, the Ninth Circuit has held that blanket protection orders "are inherently subject to challenge and modification." *See*, *e.g*, *San Jose Mercury News, Inc. v. U. S. Dist. Court -*

(Continued . . .)

*Hoechst,* 1999 WL 33454801 at \*6 (The court "should consider whether the party seeking the order has made 'a showing that disclosure will work a clearly defined and serious injury.'"). We also note that Judge Farnan has permitted modification of an existing protective order, balancing injury and need, to include stringent restrictions on a party's access to another party's proprietary information (in that case source code). *See Pitney Bowes, Inc. v. Stamps.com,* C.A. No. 99-381-JJF (Exh. F.)

Fry's has, by way of affidavit, established the injury to it that will occur, while no one has even attempted to show need by in-house counsel of AMD and Intel to review Fry's information. Indeed, it is difficult to conceive of a reason why all the parties' in-house counsel, and even all of their outside counsel, need access to Fry's financial data. Nor has anyone attempted to show why the customary provisions relating to disclosure of experts with an opportunity to object should not apply.

The analogy accepted in the TriCor case by Judge Jordan, that Impax's information was like source code to a software company, applies with full force here. Fry's business is founded on the business concept of providing a large array of computer systems and components at the lowest price. How it successfully achieves that has been a carefully maintained trade secret, as averred by Fry's affiant Rajesh Seth. To allow the access by in-house counsel sought by Class Plaintiffs to Fry's underlying data that will reveal how its business model is effectuated presents exactly the concerns expressed by Impax and software companies. Such information is fully deserving of all the protections accorded the "keys to the kingdom" information. Indeed, as a nonparty, Fry's information is deserving of greater protection than a party's because it has done nothing to invoke the litigation and because it is not in as good a position as a party to monitor what happens to its information.[3]

In addition, Fry's should have full opportunity to have its electronic information, which is apparently the bulk of what Class Plaintiffs are seeking, protected by the customary protections given to source code in the District of Delaware. Those protections include not only limitations excluding in-house counsel, but also restrictions requiring an opportunity to object to experts having access (*e.g.*, if the expert is a competitor) and severe restrictions on viewing the information and what can then be done with it. Indeed, as we now know from the parties' electronic discovery stipulation, the parties have already acknowledged that further such restrictions are appropriate for their own electronic information -- although they elected not to

---

(. . . continued)
*N. Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (noting the Ninth Circuit "has held that a nonparty may seek permissive intervention in order to test whether the 'good cause' requirements of Rule 26(c) have been met with respect to a particular item of discovery") (citing *Pansy*, 23 F.3d at 783-92).

3   For example, at yesterday's hearing, counsel was apparently unaware that he was disclosing Fry's confidential information regarding the number of sales and different models of computer products sold at Fry's contained in a declaration filed under seal. This sort of inadvertent disclosure can happen, and a nonparty, who will not be present at all proceedings and reviewing all papers, cannot possibly monitor for such disclosures.

have that order apply to the benefit of nonparties. For example, the parties' electronic discovery can only be reviewed by a limited number of reviewers, using password protected web-based electronic review applications, and cannot be used in the litigation unless the producing party agrees or the receiving party establishes "good cause" for using the file in native format -- and importantly, "native documents" cannot be accessed by in-house counsel. (*See* D.I. 288 ¶¶16-22; 29-30.)

Finally, while Fry's appreciates the opportunity given to nonparties a year ago to comment on and object to the protective order that had been negotiated by the parties, it submits that this opportunity cannot be viewed as the legal equivalent of standing or as having created some form of estoppel as Class Plaintiffs seem to argue, particularly where, as here, the subpoena in question had not yet even been served on Fry's. Moreover, Fry's was invited to comment only *after* the numerous parties had negotiated an order that presumably balanced their various interests and traded some provisions for others. For example, in the parties' negotiations, the parties apparently were willing to balance any concerns about their own information being viewed by others by the right to have their own in-house representatives see others' information. That balance does not benefit Fry's and it would not have negotiated away keeping others' in-house counsel from seeing its trade secret information. It is very different to be involved in the original negotiation of a protective order than to be in the after-the-fact position of only being able to object to what others have negotiated.[4] The difficulties that circumstance creates for nonparties is compounded by their lack of knowledge of what else is going on in the case that may be relevant, such as the electronic discovery stipulation the parties negotiated to provide additional protections for their own electronic information.

Respectfully,

*/s/ Mary B. Graham (#2256)*

Mary B. Graham (#2256)

MBG/lmc
cc:  Clerk of the Court (via e-filing and hand delivery)
     J. Clayton Athey (via e-mail)
     David R. Dube (via e-mail)
     Mary Levan (via e-mail)
     Carrie David (via e-mail)

---

[4]  Moreover, while it was suggested yesterday that Fry's chose not to attend the Monday, June 12, 2006 hearing, Fry's did not have a realistic opportunity to participate. Fry's received notice via the parties a week before the hearing (Exh. G), but on Friday afternoon, June 9, 2006, was informed that participation would have to be in person and could not be by phone. (Exh. H.) Given that Fry's is in California (and had not previously retained Delaware counsel), participation in the Delaware hearing was not a practical reality. Additionally, Fry's had no reason to believe that failure to participate in the hearing or to take other steps at that time would be deemed an estoppel of any sort against future assertions that its information warranted greater protections.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 2, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on May 2, 2007 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE 19801-4226

| **VIA E-MAIL:** | **VIA E-MAIL:** |
|---|---|
| Vincent J. Poppiti | J. Clayton Athey |
| BLANK ROME LLP | PRICKETT, JONES & ELLIOTT, P.A. |
| **poppiti@blankrome.com** | **jcathey@prickett.com** |

WITH A COPY TO:

Dale R. Dube
BLANK ROME LLP
**dube@blankrome.com**

Mary Levan
BLANK ROME LLP
**levan@blankrome.com**

Carrie David
BLANK ROME LLP
**david-c@blankrome.com**

/s/ *Mary B. Graham* (#2256)
_____
Mary B. Graham (#2256)