IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | )<br>)<br>)<br>)<br>) | MDL Docket No. 05-1717 (JJF) |
| PHIL PAUL, on behalf of himself and all<br>others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-485 (JJF)<br><br>CONSOLIDATED |

**CITED DECISIONS IN LETTER TO
SPECIAL MASTER VINCENT J. POPPITI
<u>FROM MARY B. GRAHAM</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Mary B. Graham (#2256)
Richard J. Bauer (#4828)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Nonparty Fry's Electronics, Inc.*

*OF COUNSEL:*

Robert W. Stone
Michael D. Powell
Quinn Emanuel Urquhart Oliver
& Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
650.801.5000

May 2, 2007

## TABLE OF CITED DECISIONS

| CITATION | TAB |
|---|---|
| *Adobe Sys. v. Macromedia, Inc.*,<br>No. 00-743-JJF, 2001 U.S. Dist. LEXIS 18630 (D. Del. Nov. 5, 2001) | 1 |
| *Beckman Indus. Inc. v. International Ins. Co.*,<br>966 F.2d 470 (9th Cir. 1992) | 2 |
| *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*,<br>No. 98-1434(MTB), 1999 WL 33454801 (D. N.J. Nov. 12, 1999) | 3 |
| *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers*,<br>No. 00-3058, 2002 U.S. Dist. LEXIS 11389 (E.D. Pa. Feb. 6, 2002) | 4 |
| *Pansy v. Borough of Stroudsburg*,<br>23 F.3d 772 (3d Cir.1994) | 5 |
| *Phillips v. GMC*,<br>307 F.3d 1206 (9th Cir. 2002) | 6 |
| *San Jose Mercury News v. United States Dist. Court- N. Dist.*,<br>187 F.3d 1096 (9th Cir. 1999) | 7 |
| *United States of America v. Dentsply International*,<br>187 F.R.D. 152 (D. Del. June 11, 1999) | 8 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 2, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on May 2, 2007 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

**VIA E-MAIL:**

Vincent J. Poppiti
BLANK ROME LLP
**poppiti@blankrome.com**

WITH A COPY TO:

Dale R. Dube
BLANK ROME LLP
**dube@blankrome.com**

Mary Levan
BLANK ROME LLP
**levan@blankrome.com**

Carrie David
BLANK ROME LLP
**david-c@blankrome.com**

**VIA E-MAIL:**

J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A.
**jcathey@prickett.com**

*/s/ Mary B. Graham (#2256)*
_____
Mary B. Graham (#2256)

# TAB 1

LEXSEE 2001 U.S. DIST. LEXIS 18630



Analysis
As of: May 02, 2007

**ADOBE SYSTEMS INC., Plaintiff, v. MACROMEDIA, INC., Defendant.**

**Civil Action No. 00-743 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2001 U.S. Dist. LEXIS 18630*

**November 5, 2001, Decided**

**DISPOSITION:** [*1] Plaintiff's motion for confidentiality order DENIED and Defendant's proposed protective order GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff and defendant disputed the form in which to produce software source code as part of a discovery request. Third party objected to the discovery requests. Plaintiff moved for a confidentiality order.

**OVERVIEW:** The court found that due to the state of current technology plaintiff was unable by encryption to unconditionally guarantee the protection of the defendant source code, the printed form suggested by defendant was the appropriate method for use and exchange of the software source code. Plaintiff description of its proposed encryption method as essentially unbreakable was not enough under the circumstances of the case. Defendant sought an absolute standard. Also, defendant's suggested printed form, although possibly burdensome, was not unnecessarily onerous.

**OUTCOME:** Plaintiff's motion for a confidentiality order was denied and defendant's proposed protective order was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pretrial Matters > Subpoenas*

[HN1] Fed. R. Civ. P. 45(d)(2) requires a non-party who objects to a discovery request to respond to the request by describing the reasons for the non-party's objection to the request.

**COUNSEL:** Mary B. Graham, and Rodger D. Smith, Esquire, MORRIS, NICHOLS, ARSHT, & TUNNELL, Wilmington, Delaware, for Plaintiff.

Ian N. Feinberg, James Pooley, and M. Elizabeth Day, Esquire, Of Counsel, GRAY CARY WARE & FREIDENRICH LLP, Palo Alto, California, for Plaintiff.

William J. Wade, Esquire, RICHARDS, LAYTON & FINGER, Wilmington, Delaware, for Defendant.

Darryl M. Woo, Charlene M. Morrow, Sean DeBruine, Michael J. Sacksteder, Eulonda G. Skyles, Lorrel Birnschein, Michele Mackey, Esquire, Of Counsel, FENWICK & WEST LLP, Palo Alto, California, for Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION:**

**MEMORANDUM OPINION**

November 5, 2001
Wilmington, Delaware

**FARNAN, District Judge.**

The parties present two issues, the production of software source code and third party objections to discovery requests, that require resolution in order to enter a protective order in this case.

### A. Production of Software Source Code

In reviewing the positions of plaintiff Abode Systems, Inc. ("Abode") [*2] and Macromedia, Inc. ("Macromedia"), I have focused on two phrases used by Adobe in its letter brief (D.I. 39) which I believe sum up this dispute. The phrases are:

"essentially unbreakable code" and "unnecessarily onerous"

Abode proposes to handle the Macromedia software source code exchange by use of key cryptography (essentially unbreakable code) while Macromedia proposes the exchange occur in printed form (unnecessarily onerous) because I find that due to the state of current technology Abode is unable by encryption to unconditionally guarantee the protection of the Macromedia source code, the printed form suggested by Macromedia is the appropriate method for use and exchange of the software source code in this case. In reaching this conclusion, I am persuaded by two factors. First, Macromedia's assertion that no known encryption scheme is absolutely secure; and, second, Adobe's description of its proposed encryption method as "essentially unbreakable". I find that a standard of essentially unbreakable just isn't good enough in the circumstances of this case. Macromedia is asking for an absolute standard, and I have concluded that it is entitled to such a guarantee. Further, [*3] it is for this reason that I find that Macromedia's suggested printed form, although possibly somewhat burdensome, is not "unnecessarily onerous." As argued by Macromedia, the source codes of a software company such as Macromedia are of critical importance to its business and must be provided the highest form of protection a court can provide in the context of a particular case. Macromedia has not sought to prohibit access to the source codes for its products but only to protect them from intentional or inadvertent access by persons not a party to this litigation. Therefore, I conclude that the method proposed by Macromedia is not unreasonable or unduly burdensome and provides Adobe with the information it needs.

### B. Third Party Objections to Discovery Requests

The second issue in dispute concerns discovery requests directed to a non-party involving confidentiality obligations owed by that non-party to another. Abode proposes that the objecting non-party seek a protective order rather than require the requesting party to pursue the requested discovery by a motion to compel. Macromedia proposes that the non-party interpose an objection on the basis of an asserted confidentiality [*4] provision and then require the requesting party to file a motion to compel the discovery (D.I. 38).

In my view, the solution to this dispute is governed by *Federal Rule of Civil Procedure 45(d)(2)* and an interpretation of the words "to enable the demanding party to contest the claim." [HN1] Rule 45(d)(2) requires a non-party who objects to a discovery request to respond to the request by describing the reasons for the non-party's objection to the request. In the present context, the non-party would assert the purported confidentiality provision as its reason for objecting. It is then up to the requesting party to move to challenge the confidentiality assertion, if it chooses to, by filing a motion to compel. See *Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422 (Fed. Cir. 1993)* (affirming the district court in requiring the requesting party to prove a need for requested documents after the non-party objected to the request and made a prima facie showing that discovery was burdensome). In essence, I treat an assertion of a confidentiality provision exactly as Rule 45(d)(2) treats a claim of privilege when asserted by a non-party in response to a party's discovery [*5] request. I see no reason to craft onto Rule 45 a separate protective order procedure, as suggested by Adobe, since it seems clear to me that the drafters of Rule 45 have already addressed the issue.

Therefore, for the reasons discussed, I conclude that Adobe's Motion For Confidentiality Order (D.I.39) in the form proposed by Macromedia (D.I.83) is appropriate. Furthermore, any third party who objects to a discovery request shall enter an objection and state their reasons. If the requesting party wants to pursue the discovery, it must do so by filing a motion to compel.

An appropriate Order will be entered.

### ORDER

At Wilmington, Delaware this 5 day of November 2001, for the reasons discussed in the Memorandum Opinion issued this day, IT IS HEREBY ORDERED that:

(1) Adobe's Motion For Confidentiality Order (D.I.39) is **DENIED** and Macromedia's Proposed Protective Order (D.I.83) is **GRANTED**.

(2) The parties shall submit a Stipulated Protective Order consistent with this Memorandum Opinion no later than November 9, 2001.

JOSEPH J. FARNAN, JR.

2001 U.S. Dist. LEXIS 18630, *

UNITED STATES DISTRICT JUDGE

TAB 2

LEXSEE 966 F.2D 470,AT 472


Caution
As of: May 01, 2007

**BECKMAN INDUSTRIES, INC.; SMITHKLINE BECKMAN, Plaintiffs-Appellees, and STAUFFER CHEMICAL COMPANY, Intervenors-Appellees, v. INTERNATIONAL INSURANCE COMPANY, Defendant-Appellant. BECKMAN INDUSTRIES, INC.; SMITHKLINE BECKMAN, Plaintiffs-Appellees, and MONSANTO COMPANY; REICHHOLD LIMITED; FMC CORPORATION; BRIDGESTONE/FIRESTONE, Intervenors-Appellees, v. INTERNATIONAL INSURANCE COMPANY, Defendant-Appellant.**

**No. 90-55859, No. 90-55871**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

*966 F.2d 470; 1992 U.S. App. LEXIS 12324; 22 Fed. R. Serv. 3d (Callaghan) 932; 92 Cal. Daily Op. Service 4700; 92 Daily Journal DAR 7499*

**February 4, 1992 *, Submitted, Pasadena, California**

\* The members of the panel unanimously agree that this case is appropriate for submission on the briefs and record pursuant to Fed. R. App. P. 34(a) and 9th Cir. R. 34-4.

**June 4, 1992, Filed**

**PRIOR HISTORY:  [**1]**  Appeal from the United States District Court for the Central District of California. D.C. No. CV-85-8382-MRP. Mariana R. Pfaelzer, District Judge, Presiding.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant insurer sought to overturn the order of the United States District Court for the Central District of California, which held that appellee insureds were permitted to intervene in appellant's action involving another insured.

**OVERVIEW:** Appellant insurer and an insured settled a dispute over insurance coverage, and as part of the settlement they agreed to make six depositions filed in the case confidential. The trial court, pursuant to the parties' stipulation, issued a blanket protective order keeping all of the depositions confidential. Appellee insureds sought access to the depositions pursuant to a *Fed. R. Civ. P. 24(b)(2)* motion, and the lower court granted their mo-

tion to intervene and lifted the protective order. The court affirmed the lower court's decision, holding that Rule 24(b)(2) did permit intervention for the purpose of challenging a protective order. The court held that there was a sufficient commonality between appellees' insurance claims against appellant and the insurance claim under which the protective order was issued for appellees to intervene under Rule 24. The court also ruled that because appellant had obtained a blanket protective order and had not made a good cause showing under *Fed. R. Civ. P. 26(c)* its reliance interests were not sufficient to overcome the needs of appellees for discovery.

**OUTCOME:** The court affirmed the lower court's order, which permitted appellee insureds to intervene in a settled action and to gain access to the depositions which were filed therein. The court held that there was a sufficient commonality between appellees' insurance claims against appellant and the insurance claim under which the protective order was issued for appellees to intervene.

**LexisNexis(R) Headnotes**

966 F.2d 470, *; 1992 U.S. App. LEXIS 12324, **;
22 Fed. R. Serv. 3d (Callaghan) 932; 92 Cal. Daily Op. Service 4700

*Civil Procedure > Parties > Intervention > Permissive Interventions*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN1] A court of appeals reviews a decision whether to grant permissive intervention under an abuse of discretion standard.

*Civil Procedure > Parties > Intervention > Permissive Interventions*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN2] Where the questions before a court of appeal are legal ones, concerning the coverage and interpretation of the federal rules of civil procedure, review is de novo as to whether *Fed. R. Civ. P. 24(b)* permits intervention for the purpose of seeking a modification of a protective order after the conclusion of the underlying action.

*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN3] The court reviews the grant of a protective order for abuse of discretion, as well as a request to modify a protective order.

*Civil Procedure > Parties > Intervention > Permissive Interventions*
[HN4] *Fed. R. Civ. P. 24(b)(2)* allows intervention in an action when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

*Civil Procedure > Parties > Intervention > Limited Interventions*
*Civil Procedure > Parties > Intervention > Permissive Interventions*
[HN5] *Fed. R. Civ. P. 24(b)* permits limited intervention for the purpose of challenging a protective order.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > General Overview*
*Civil Procedure > Parties > Intervention > Limited Interventions*

*Civil Procedure > Parties > Intervention > Permissive Interventions*
[HN6] Permissive intervention to litigate a claim on the merits under *Fed. R. Civ. 24(b)* requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action. *Fed. R. Civ. P. 24(c)* requires that a person seeking to intervene under Rule 24 file a motion accompanied by a pleading setting forth the claim or defense for which intervention is sought.

*Civil Procedure > Parties > Intervention > General Overview*
[HN7] A court retains power to modify protective order even if underlying suit dismissed.

*Civil Procedure > Parties > Intervention > General Overview*
[HN8] Where the movant describes the basis for intervention with sufficient specificity to allow the district court to rule, its failure to submit a pleading is not grounds for reversal.

*Civil Procedure > Discovery > Protective Orders*
[HN9] *Fed. R. Civ. P. 26(c)* states that for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
[HN10] Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the *Fed. R. Civ. P. 26(c)* test for the issuance of a protective order.

**COUNSEL:** Kathryn Doi, Orrick, Herrington & Sutcliffe, Los Angeles, California, for the defendant-appellant.

Andrew Lundberg, Latham & Watkins, Los Angeles, California, for the plaintiffs-appellees.

Jeffrey B. Maletta, Kirkpatrick & Lockhart, Washington, D.C., for intervenor Stauffer Chemical Company.

Karen L. Bush, Anderson, Kill, Olick & Oshinsky, Washington, D.C. for intervenors Monsanto Company,

966 F.2d 470, *; 1992 U.S. App. LEXIS 12324, **;
22 Fed. R. Serv. 3d (Callaghan) 932; 92 Cal. Daily Op. Service 4700

Reichhold Limited, FMC Corporation and Bridgestone-Firestone, Inc.

**JUDGES:** Before: J. Clifford Wallace, Chief Judge, James R. Browning and Warren J. Ferguson, Circuit Judges.

Opinion by Judge Ferguson.

**OPINION BY:** FERGUSON

**OPINION: [*471]** OPINION

FERGUSON, Circuit Judge:

International Insurance Company ("International") appeals orders of the district court granting motions of the intervenors to (1) intervene under *Fed. R. Civ. P. 24(b)* and (2) modify a protective order to permit the intervenors access to six deposition transcripts taken in an earlier action. International contends that the intervenors failed both to satisfy the requirements for intervention and to justify **[**2]** modification of the protective order. We affirm.

The main action between Beckman Industries (Beckman), plaintiff, and International, defendant, was settled and dismissed in 1988. At issue was whether environmental impairment liability (EIL) insurance policies issued by International to Beckman provided coverage for certain environmental liabilities. Discovery included the depositions of six International employees involved in the development and administration of the EIL policies sold to policy holders around the country. As part of the *Beckman* action the district court, pursuant to a stipulation, issued a blanket protective order in 1986 keeping all discovery confidential.

Stauffer Chemical Company, Monsanto Company, Reichhold Limited, FMC Corporation and Bridgestone/Firestone, Inc. ("intervenors") are currently involved in litigation in state courts in which the scope of coverage of International's EIL policies is at issue. Stauffer and International are parties in two consolidated cases pending in Los Angeles County Superior Court. In April 1990 Stauffer filed a motion to intervene in the *Beckman* action for the purpose of moving to modify the protective order to gain access **[**3]** to the six deposition transcripts. The other intervenors filed a joint motion based on the same grounds and seeking the same relief as Stauffer. Beckman did not object to the modification, and the intervenors agreed to use the six deposition transcripts in accordance with the **[*472]** protective orders in the pending state actions.

Intervenors claimed the six transcripts (1) will provide relevant information regarding the drafting, inter-

pretation, underwriting and administration of the standard EIL insurance policies; (2) may contain admissions against interest as to policy interpretation; and (3) may contain inconsistent statements. The district court granted the intervenors' motions. International appeals.

I.

The underlying order is appealable either as a final order under *28 U.S.C. § 1291* or as a collateral order. *United Nuclear Corp. v. Cranford Insurance Co., 905 F.2d 1424, 1426 (10th Cir. 1990), cert. denied, 111 S. Ct. 799, 112 L. Ed. 2d 860 (1991). See also Wilk v. American Medical Ass'n, 635 F.2d 1295, 1298 (7th Cir. 1980)* (appeal from modification of protective order proper under collateral order doctrine); *Martindell v. International Tel. & Tel. Corp., 594 F.2d 291, 293-94 (2nd Cir. 1979)* **[**4]** (appeal from orders granting intervenor status and modification of protective order proper under *28 U.S.C. § 1291* because no other matter pending before the court).

II.

Intervenors propose that the proper standard of review is abuse of discretion, while International urges de novo review.

[HN1] We review a decision whether to grant permissive intervention under an abuse of discretion standard. *Venegas v. Skaggs, 867 F.2d 527, 529 (9th Cir. 1989), aff'd, 495 U.S. 82, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990).* However, the [HN2] initial questions before us are legal ones, concerning the coverage and interpretation of the Federal Rules of Civil Procedure. Review is therefore de novo as to whether Rule 24(b) permits intervention for the purpose of seeking a modification of a protective order after the conclusion of the underlying action. *See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc)* (issues of law subject to de novo review), *cert. denied, 469 U.S. 824, 83 L. Ed. 2d 46, 105 S. Ct. 101 (1984).*

[HN3] The court reviews the grant of a protective order for abuse of discretion, *Roat v. C.I.R., 847 F.2d 1379, 1382 (9th Cir. 1988),* as well as a request to **[**5]** modify a protective order. *United Nuclear Corp. v. Cranford Insurance Co., 905 F.2d 1424, 1427 (10th Cir. 1990), cert. denied, 111 S. Ct. 799 (1991); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 790 (1st Cir. 1988), cert. denied, 488 U.S. 1030, 102 L. Ed. 2d 970, 109 S. Ct. 838 (1989).*

III.

[HN4] *Fed. R. Civ. P. 24(b)(2)* allows intervention in an action "when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall con-

966 F.2d 470, *; 1992 U.S. App. LEXIS 12324, **;
22 Fed. R. Serv. 3d (Callaghan) 932; 92 Cal. Daily Op. Service 4700

sider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Fed. R. Civ. P. 24(b)(2)*.

International argues that Rule 24(b) only permits intervention for the purpose of litigating a claim on the merits in a pending action, in order to dispose of related controversies together. International is correct that the primary focus of Rule 24(b) is intervention for the purpose of litigating a claim on the merits. Nevertheless, there is ample support for intervenor's argument that courts also recognize Rule 24(b) intervention as a proper method to modify a protective order. *See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 783-784 (1st Cir. 1988)* [**6] (Rule 24 is correct course for third parties to challenge protective orders), *cert. denied, 488 U.S. 1030, 102 L. Ed. 2d 970, 109 S. Ct. 838 (1989); Meyer Goldberg, Inc. of Lorain v. Fisher Foods, 823 F.2d 159, 162 (6th Cir. 1987)* (recognizing 24(b) intervention as proper method for nonparty to seek protected materials); *Martindell v. International Tel. & Tel. Corp., 594 F.2d 291, 294 (2nd Cir. 1979)* (intervention under Rule 24(b) proper method for third party challenges to protective [*473] order); *In re Beef Industry Antitrust Litigation, 589 F.2d 786, 789 (5th Cir. 1979)* (same).

The Tenth Circuit recently adopted this view in a case directly on point involving the same defendant, International. *United Nuclear Corp. v. Cranford Insurance Co., 905 F.2d 1424, 1427 (10th Cir. 1990), cert. denied, 111 S. Ct. 799, 112 L. Ed. 2d 860 (1991)*. There, the intervenors, litigants in state and federal courts, sought determinations of the scope of coverage of policies issued by International. International had also been a defendant in an earlier action brought by United Nuclear Corporation in which a protective order had been issued. As [**7] in this case, the intervenors sought modification of the protective order in the earlier action to get access to depositions. The Tenth Circuit found intervention proper under Rule 24(b). It found that the request was timely, there was no prejudice to the existing parties, and the interpretation of the EIL policy was a sufficient common issue between the underlying suit and the intervenors' suits. *United Nuclear, 905 F.2d at 1427*.

Thus, contrary to International's contention, there is wide approval of Rule 24(b) intervention as a method for seeking to modify a protective order. We join these circuits in recognizing that [HN5] Rule 24(b) permits limited intervention for the purpose of challenging a protective order. We next address whether the requirements of Rule 24(b) intervention for the purpose of litigating a claim on the merits are applicable to the limited type of intervention at issue here.

IV.

[HN6] Permissive intervention to litigate a claim on the merits under Rule 24(b) requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action. *Garza v. County of Los Angeles, 918 F.2d 763, 777 (9th Cir. 1990)*, [**8] *cert. denied, 112 L. Ed. 2d 673, 111 S. Ct. 681 (1991)*. *Fed. R. Civ. P. 24(c)* requires that a person seeking to intervene under Rule 24 file a motion "accompanied by a pleading setting forth the claim or defense for which intervention is sought." *Fed. R. Civ. P. 24(c)*. International claims that all these requirements are applicable where, as here, limited intervention is sought, and that the intervenors failed to satisfy them.

Permissive intervention ordinarily requires independent jurisdictional grounds. 7C Charles A. Wright, Arthur R. Miller, Mary K. Kane, Federal Practice and Procedure § 1917 at 466 (2nd ed. 1986); *see also Blake v. Pallan, 554 F.2d 947, 955-56 (9th Cir. 1977)*. Here, however, an independent jurisdictional basis is not required because intervenors do not seek to litigate a claim on the merits. The district court retained the power to modify the protective order. *United Nuclear Corp., 905 F.2d at 1427* ([HN7] court retains power to modify protective order even if underlying suit dismissed); *Public Citizen, 858 F.2d at 782-83* (analogizing to power to modify an injunction, court ruled that district court retained [**9] power to modify protective order after judgment); *In re Agent Orange Product Liability Litigation, 821 F.2d 139, 145 (2nd Cir. 1987)* (district court has undisputed power to modify or lift protective orders it has entered), *cert. denied, 484 U.S. 953, 108 S. ct. 344, 98 L. Ed. 2d 370 (1987)*. *See also* 8 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2043 at 163 (Supp. 1991). Intervenors do not ask the district to rule on additional claims or seek to become parties to the action. They ask the court only to exercise that power which it already has, *i.e.,* the power to modify the protective order. For that reason, no independent jurisdictional basis is needed.

International asserts that the words "claim or defense" in Rule 24(b) refer only to the type of valid claim or defense that can be basis for intervention in an actual or impending lawsuit. This, it argues, is confirmed by the requirement in Rule 24(c) n1 [*474] that a person desiring to intervene must serve a motion accompanied by a pleading. *See Diamond v. Charles, 476 U.S. 54, 76-77, 90 L. Ed. 2d 48, 106 S. Ct. 1697 (1986)* (O'Connor, J., concurring). International argues that intervenors failed to identify such [**10] a claim or defense with sufficient specificity. The district court found that the importance of access to documents prepared for similar litigation involving the same parties satisfied the commonality requirement of 24(b).

Case 1:05-md-01717-JJF    Document 453    Filed 05/03/2007    Page 13 of 85

Page 5
966 F.2d 470, *; 1992 U.S. App. LEXIS 12324, **;
22 Fed. R. Serv. 3d (Callaghan) 932; 92 Cal. Daily Op. Service 4700

n1 The relevant portion of Rule 24(c) states that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought."

We agree. The issue of interpretation of the policy supplies a sufficiently strong nexus between the district court action and the state actions to satisfy the commonality requirement. Further specificity, *e.g.*, that the claim involve the same clause of the policy, or the same legal theory, is not required when intervenors are not becoming parties to the litigation. There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying [**11] a protective order. *United Nuclear Corp., 905 F.2d at 1427; Meyer Goldberg, Inc., 823 F.2d at 164.*

International further asserts that the intervenors must submit a pleading to the court describing the common issue pursuant to *Fed. R. Civ. P. 24(c).* International charges that intervenors' failure to submit such a pleading is fatal to their claim. It argues that the submission of a pleading is not a mere formality, but gives the court an informed basis on which to decide the motion.

Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion. In *Shores v. Hendy Realization, 133 F.2d 738, 742 (9th Cir. 1943),* we construed an earlier version of Rule 24 and found that although the literal terms of Rule 24 were not met, the petition fully stated the legal and factual grounds for intervention. We therefore rejected the type of technical objection International makes here.

Our decision in *Smith v. Pangilinan, 651 F.2d 1320, 1325-26 (9th Cir. 1981),* was similar. The intervenor had sought permission to intervene under both [**12] Fed. R. Civ. P. 24(a) and (b). The latter was referenced only in one sentence in the intervenor's motion requesting intervention of right pursuant to Rule 24(a) n2, but the court held that this one sentence was sufficient to satisfy the requirements of 24(c). n3 *Id. at 1326. See also Shevlin v. Schewe, 809 F.2d 447, 450 (7th Cir. 1987)* (applying strict interpretation of Rule 24(c) to the case at hand, but recognizing that it would not do so in all circumstances); *Spring Construction Co., Inc. v. Harris, 614 F.2d 374, 377 (4th Cir. 1980)* (proper approach is to disregard nonprejudicial technical defects); *Beef Industry Antitrust Litigation, 589 F.2d 786, 788-89 (5th Cir. 1979)* (discussing Fifth Circuit's lenience regarding compliance with 24(c)). There is contrary authority, but in cases in which a strict attitude is taken towards procedural compliance, the court has also indicated a substantive reason why intervention should not be permitted. 7C Charles A. Wright, Arthur R. Miller, Mary K. Kane, Federal Practice and Procedure § 1914 at 415 (2d Ed. 1986).

n2 The concluding sentence of the intervenor's motion under Rule 24(a) stated, "in any event, the Intervenor may be permitted to intervene by the court pursuant to *F.R.C.P. 24(b)* as the intervention will not delay or prejudice the rights of the original parties." *Smith v. Pangilinan, 651 F.2d at 1326.*

[**13]

n3 *Spangler v. Pasadena City Bd. of Ed., 552 F.2d 1326 (9th Cir. 1977),* cited by International to support strict compliance with Rule 24, is not on point. The issue was the importance of filing a motion to intervene when a person seeks to become a party. *Id. at 1329.* The court did not discuss *Fed. R. Civ. P. 24(c)* or the level of formal compliance that is required.

Further support for our approach is found in *Public Citizen v. Liggett Group, Inc., 858 F.2d at 783-84.* In that case, the First Circuit discussed the mandatory language in Rule 24(c) and declined "to create a special category of non-Rule 24 intervention for third parties who wish to challenge [*475] protective orders through informal motion," but nevertheless recognized intervenor status where the third party had requested intervention under Rule 24(b) and the district court had implicitly granted the request. Thus, [HN8] where, as here, the movant describes the basis for intervention with sufficient specificity to allow the district court to rule, its failure to submit a pleading is not grounds [**14] for reversal.

V.

International contends that even if intervention is permitted, intervenors failed to justify the order permitting modification of the protective order. n4 The district court based its ruling in favor of intervention and modification on the grounds of the importance of access to the documents, a lack of prejudice to International and the absence of extraordinary circumstances militating against intervention and modification.

n4 [HN9] For "good cause shown," the court may make any order which justice requires to

966 F.2d 470, *; 1992 U.S. App. LEXIS 12324, **;
22 Fed. R. Serv. 3d (Callaghan) 932; 92 Cal. Daily Op. Service 4700

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *Fed. R. Civ. P. 26(c)*.

International, citing Second Circuit case law, argues that intervenors should show "extraordinary circumstances" or "compelling need" before modification of the protection order is warranted. *See In re "Agent Orange" Product Liability Litig., 821 F.2d 139, 147* (2nd Cir.), *cert. denied, 484 U.S. 953, 108 S. Ct. 344, 98 L. Ed. 2d 370 (1987). But see United Nuclear, 905 F.2d at 1428 n. 1* **[**15]** (describing limits to extraordinary circumstances test); *Westchester Radiological v. Blue Cross/Blue Shield, 138 F.R.D. 33, 36 (S.D.N.Y. 1991)* (questioning whether extraordinary circumstances standard is still valid). Intervenors urge the court to retain the approach of Rule 26(c) for modification as well, *i.e., the* party opposing modification should have the burden of showing "good cause" for continued protection.

The "extraordinary circumstances" test is incompatible with our circuit's law. Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation. In *Olympic Refining Company v. Carter, 332 F.2d 260, 264-65 (9th Cir.), cert. denied, 379 U.S. 900, 13 L. Ed. 2d 175, 85 S. Ct. 186 (1964),* an anti-trust action, the district court had declined to modify protective orders, citing the defendants' reliance on them in providing disclosure beyond that required and in agreeing to a consent decree. *Id. at 264.* We observed that "none of these circumstances, in our opinion, support the view that these orders are not subject to modification to meet the reasonable needs of other parties in other litigation." **[**16]** *Id. at 264.* Trials ordinarily take place in public and the purpose of federal discovery is to force full disclosure. *Id.* We held that Olympic was entitled to modification of the order and access to the information, subject to reasonable restrictions on disclosure. *Id. at 266.*

The Seventh Circuit, citing *Olympic* with approval, stresses the importance of eliminating duplicative discovery. *See Wilk v. American Medical Ass'n, 635 F.2d 1295, 1301 (7th Cir. 1980).* Of course there is a countervailing argument: that allowing modification may slow down the initial litigation, because parties are discouraged from disclosing for fear of forced disclosure in a later action. However, legitimate interests in privacy can be protected by putting the intervenors under the same restrictions as those contained in the original protective order. *United Nuclear, 905 F.2d at 1428.* Here, intervenors already have agreed to use the information in accordance with protective orders in the state actions. International has not argued that this protection is insufficient.

A related concern is the reliance interests of the **[**17]** party opposing modification. The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery or to settle the case. For instance, reliance would be greater where a trade secret was involved, or where witnesses had testified pursuant to a protective order without invoking their Fifth Amendment privilege. *See Public Citizen, 858 F.2d at 791.* **[*476]**

In the instant case, the parties stipulated to a blanket protective order. Reliance will be less with a blanket order, because it is by nature overinclusive. *Public Citizen, 858 F.2d at 790.* International thus never made a particular showing of reliance with regard to the six deposition transcripts at issue here. In addition, the stipulation and stipulated order dismissing the *Beckman* action recognized that "as insurers and insureds, [the parties] share interests and fiduciary relationships which should be protected" and that the parties wished to protect business advantage and proprietary information. The state litigation concerns exactly the same relationship in the same type of action, *i.e., a* dispute between insurer **[**18]** and insureds over the interpretation of EIL policies. In this situation, we see no unfair prejudice to International by allowing access to the transcripts.

Further, because the protective order was a stipulated blanket order, International never had to make a "good cause" showing under *Fed. R. Civ. P. 26(c)* of the need for protection of the deposition transcripts in the first place. Nor does it allege specific prejudice or harm now. [HN10] "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121c (3rd Cir. 1986).* Thus, International has never made the showing necessary to justify continued protection of the transcripts.

*Olympic* controls this case. The discovery here is sought to meet the "reasonable needs of other parties in other litigation." *Olympic, 332 F.2d at 264.* International never made a "good cause" showing under *Fed. R. Civ. P. 26(c)* justifying initial protection of the transcripts. It did rely on the protective order in granting discovery and settling the case. However, *Olympic* held that reliance on a protective **[**19]** order under these circumstances could not, without more, justify refusal to modify when there is a reasonable request for disclosure. *Olympic, 332 F.2d at 264.* International has not provided the court with "more." The decision to modify the protective order was well within the discretionary powers of the trial court, and we affirm.

AFFIRMED.

TAB 3

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 33454801 (D.N.J.), 45 Fed.R.Serv.3d 1056
**(Cite as: Not Reported in F.Supp.2d)**

Biovail Corp. Intern. v. Hoechst Aktiengesellschaft
D.N.J.,1999.

United States District Court, D. New Jersey.
BIOVAIL CORPORATION INTERNATIONAL,
Plaintiff,
v.
HOECHST AKTIENGESELLSCHAFT, Hoechst
Marion Roussel, Inc., Hoechst Marion Roussel North
America, Inc., Carderm Capital L.P., Horst Waesche,
Daniel Camus, Richard J. Markham, Peter W. Ladell,
Gerald P. Belle, and Jurgen Dormann, Defendants.
**No. Civ.A. 98-1434(MTB).**

Nov. 12, 1999.

*OPINION*
BARRY, J.
**\*1** This matter comes before the court on a motion to
vacate the August 9, 1999 [FN1] order of the Honorable
Stanley R Chesler, U.S.M.J., pursuant to
Fed.R.Civ.P. 72,(a) filed by defendants Hoechst
Aktiengesellschatt("Hoechst AG"), Hoechst Marion
Roussel, Inc. ("HMRI"), Hoechst Marion Roussel
North America, Inc., Carderm Capital L.P.
("Carderm"), Horst Waesche ("Waesche"), Daniel
Camus ("Camus"), Richard J. Markham
("Markham"), Peter W. Ladell ("Ladell"), Gerald P.
Belle ("Belle"), and Jurgen Dormann ("Dormann")
(collectively as "defendants" or "Hoechst".
Defendants request that this court reverse that order
which requires each party to disclose the identities of
nontestifying experts and consultants prior to their
review of certain confidential documents. For the
following reasons, this court will affirm.

> FN1. The order was dated August 9, 1999,
> filed on August 10, 1999, and entered on the
> docket on August 11, 1999.

*I. Statement of Facts*

The facts of this case are long and complicated, and
have been previously set forth at length by this court.
*See Biovail Corp. Int'l v. Aktiengesellschaft, 49
F.Supp.2d 750, 755-59 (D.N.J.1999).* Only those
facts essential to this limited appeal, therefore, will
be discussed here.

Biovail Corporation International ("Biovail") is a
Canadian pharmaceutical company involved in the
manufacture and development of drugs for the
treatment of chronic conditions such as high blood
pressure. *See* Compl. ¶ 4. Defendants are also
engaged in the production and sale of pharmaceutical
products. *Id.* ¶¶ 5-10.

Marion Merrell Dow initially introduced a pioneer
drug which used diltiazem, a calcium channel
blocker, as an active ingredient to treat high blood
pressure and angina. *Id.* ¶¶ 21-22. The brand name
of the drug was Cardizem. *Id.* In June of 1993,
Hoechst-Roussel Pharmaceuticals, Inc. ("HRP"), a
subsidiary of Hoechst AG and a company associated
with Hoechst-USA, entered into a Rights Agreement
with Biovail by which the companies would jointly
develop diltiazem-based drugs that would compete
with Cardizem. *Id* . ¶ 29. The first such product
developed was a once-daily form of diltiazem to be
sold under the name of Tiazac. *See id.* ¶ 29. HRP
filed a New Drug Application ("NDA") for Tiazac
with the FDA certifying its safety and effectiveness.
*Id.*

In late 1994, Hoechst AG announced that it planned
to acquire Marion Merrell Dow and thereafter HRP
terminated its joint venture with Biovail. *Id.* ¶ 31.
Biovail sued Hoechst AG for contract and antitrust
violations and on April 28, 1995, the parties entered
into a settlement agreement. *Id.* ¶¶ 32-33. Among
other things, the settlement agreement assigned
Biovail the rights to the Tiazac NDA. *See* Compl. 35.

The Federal Trade Commission ("FTC") initiated an
investigation into the proposed acquisition of Marion
Merrell Dow by Hoechst AG. *Id.* ¶ 36. This
investigation was settled by a consent order that
became final on April 17, 1996 ("FTC Order"). *Id.* In
order to rectify the potential anticompetitive effects
of the acquisition, the FTC ordered, *inter alia,* that
Hoechst and Marion Merrell Dow give Biovail a
right of reference to the pharmacology and
toxicology data filed with the FDA in support of
Marion Merrell Dow's NDA covering Cardizem.

**\*2** On December 18, 1995, a representative of
Hoechst-USA provided Biovail with the FTC
mandated "right of reference" letter to the FDA. *See
id.* ¶ 55. The reference letter, however, did not

permit reference for any once-a-day formulation of diltiazem. Thus, in November 1997, when Biovail attempted to file an NDA (No. 20-939) with the FDA for a generic version of Cardizem CD, the once-daily dosage form of Cardizem, it was rejected because it did not contain nonclinical pharmacology or toxicology data.

On March 27, 1998, Biovail filed this action against Hoechst asserting antitrust violations, breach of contract, violations of the New Jersey Consumer Fraud Act, and unfair competition. Biovail claims, *inter alia,* that Hoechst interfered with the regulatory approval process in the United States by repudiating the FTC Order. In addition, Biovail contends that Hoechst interfered with the regulatory approval process of Tiazac by Canada's Health Protection Branch ("HPB") by sending a letter to the HPB expressing "specious safety concerns" regarding the non-bioequivalence of Tiazac to Cardizem CD. *See id.* ¶¶ 41-53.

During the discovery period, Biovail and Hoechst agreed that a protective order would be required to maintain the confidential nature of the information being exchanged by the parties. *See* Spears Decl. ¶ 3. Among the materials sought to be protected were Biovail's regulatory files and other correspondence relating to its diltiazem product, as well as its filings with the FDA and the Canadian Health Protection Branch. *See* Def. Br. Supp. at 3. Notwithstanding Biovail's argument that the materials were nondiscoverable and confidential, this court had previously ordered their production. *See* Order, Mar. 17, 1999.

The parties ultimately negotiated a Stipulated Protective Order ("Protective Order") pursuant to Fed.R.Civ.P. 26(c), which the court approved on August 25, 1998. The Protective Order basically sets up a two-tier system whereby a party producing a document containing confidential information may designate that document as either "Confidential Subject to Protective Order" ("Confidential") or "Restricted Confidential, Attorneys Eyes Only" ("Restricted Confidential"). *See* Protective Order ¶¶ 1-2. Where the document "contains or reveals any trade secrets, confidential business information, know-how or confidential matter that may be protected pursuant to Fed.R.Civ.P. 26(c)," it is to be labeled Confidential. *Id.* ¶ 1. Alternatively, if it contains "sensitive business strategic plans and/or competitive analyses, the parties may designate" it as Restricted Confidential. *Id.* ¶ 3. Whether designated as Confidential or Restricted Confidential, all of the

documents are collectively referred to as "Confidential Information" throughout the Order. *See id.*

Paragraphs Four through Six of the Protective Order indicate who may view the Confidential Information, and are the ones at issue in this case. Paragraph Four states:

*3 4. Confidential Information shall be used by any person receiving it for no purpose other than prosecution or defense of this action and shall be disclosed by the party receiving it to no one except (i) to the Court presiding over this action and its personnel; (ii) to any court to which an appeal in this action might lie and its personnel; (iii) court and deposition stenographers and videographers; (iv) to outside counsel engaged by a party, including paralegal, secretarial and clerical personnel; (v) to independent outside consultants and/or experts provided that such outside counsel and independent outside consultants and/or experts sign an Undertaking ... before such disclosure. *Such executed affidavit or declaration shall be maintained on file by the receiving party and shall only be made available to the producing party if the individual to whom the Confidential Information has been disclosed is designated as a trial witness in the manner set forth in paragraph 4 infra or for good cause shown by the producing party* [.]

*Id.* ¶ 4 (emphasis added).

Paragraph Five sets forth the procedures for objecting to the disclosure of Confidential Information to an outside expert or consultant who has been designated as an expert witness. *See id.* ¶ 5. Paragraph Six relates to "any individual defendant as well as in-house counsel and certain designated executives" who will be reviewing the Confidential Information and requires them to also sign an Undertaking that is to be submitted to counsel for the opposing party at least fourteen days prior to the disclosure of any information to that party. *See id.* The party receiving the Undertaking may then object to the disclosure of such information and, as in the case of trial experts, any unresolved disputes may be submitted to the court for resolution. *See id.*

As is evident from Paragraph Four, a party will not be notified of the identity of an outside consultant or expert *unless* that individual is designated as a witness for trial. *See* Protective Order ¶ 4. Biovail attempted to include in the Protective Order a provision for the disclosure of the identity of a nontestifying expert or consultant, *see* Pl. Br. Opp. at

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 1999 WL 33454801 (D.N.J.), 45 Fed.R.Serv.3d 1056
**(Cite as: Not Reported in F.Supp.2d)**

3; Def. Br. Supp. at 3-4. It is not entirely clear why, but the issue was not addressed in the final draft of the Protective Order.

In accordance with the terms of the Protective Order, Hoechst has produced "in excess of 61 boxes of documents." Spears Decl. ¶ 14. Biovail also produced some documents, but none designated as Restricted Confidential and, perhaps most important, has never produced the regulatory materials it was required to produce pursuant to this court's order of July 6, 1998. Spears Decl. ¶ 14. Instead, Biovail sought modification of the Protective Order to provide for the disclosure of the identity of a nontestifying expert or consultant prior to the release of Confidential Information to that person. *See* Def. Br. Supp. at 4; Pl. Br. Opp. at 3.

**\*4** On March 29, 1999, Biovail wrote to Hoechst expressing concern that the Protective Order "is not adequate to protect Biovail's interest in confidentiality regarding the orange jacket materials." Landrey Decl., Exh. 3. [FN2] Biovail asked that the orange jacket materials be designated as Restricted Confidential and "that materials so designated cannot be shown to non-testifying consultants or testifying experts without prior notice to the producing party; and that such consultants and experts must be unaffiliated with any company in the business of manufacturing and marketing pharmaceuticals." *Id.* Biovail subsequently sent to Hoechst a proposed stipulation and order modifying the Protective Order to include several provisions addressing Biovail's concerns. *See id.,* Exhs. 4, 5. The proposed modifications added "sensitive confidential scientific information" to the documents that the parties could designate as Restricted Confidential, required the disclosure of the "name, employment history and curriculum vitae of [any] outside consultant and/or expert" without regard to whether he or she would be testifying at trial, and severally restricted the individuals who could be obtained as outside [FN3] consultants or experts. *See id.* The parties were not, however, able to reach a compromise and the issue was submitted to the court for resolution.

FN2. The term "orange jacket materials" refers to the standardized, color-coded system by which the FDA organizes the section of each drug application. Orange jacket materials are the data that relates to human pharmacokinetics and bioavailability. *See* Order, Mar. 17, 1999.

FN3. The proposed modification restricting the employment of consultants and experts provided that "outside experts and consultants and their respective staffs shall not include anyone who is or has been within the last three years an officer, director or employee of any of the parties or their affiliated entities .... [nor] anyone who is an officer, director, or employee of any entity or the affiliate of any entity that manufacturers or markets or is developing any hypertension or angina product, or that has engaged within the last five years in a Transaction (as defined below) with a party, nor anyone who is engaged in providing services of any kind concerning the manufacture, marketing, or development of any hypertension or angina product." Landrey Decl. Exh. 4.

On June 14, 1999, Magistrate Judge Chesler heard oral argument on Biovail's motion for modification of the Protective Order. *See* Transcript of Hearing, June 14, 1999 (cited as "T"). Biovail argued that modification was required to cure "a flaw or an anomaly in the existing Protective order." T3:17. It explained that although the Protective order addresses the "concern about protection of confidential information" to outside experts who will testify, it fails to do the same with regard to outside experts who will only consult. T4:8-16. Biovail argued that there is a risk that a party could select "business people or product development people or scientists at a competitor ... designate them as consultants" and expose them to "highly confidential and sensitive information [that] the parties have." T5:4-12. Biovail submitted that the risk is substantial given the fact that "it is common in litigation of this sort for the parties to work with experts on a consulting basis and ... decide later whether or not they will be testifying experts." T5:19-22. By that time, however, it would be too late to object to the disclosure of confidential information. Accordingly, Biovail asserted that there was "good cause" for modifying that Protective Order. *See* T6-7.

Defendants vigorously objected to that modification, contending that Biovail "failed or refused to demonstrate good cause required ... before any Protective Order may be modified." T10:19-21. Moreover, because the modification would require the disclosure of the identity of nontestifying consultants or experts, Hoechst argued that Biovail must show exceptional circumstances. T10:23-25. In response to the alleged "anomaly," Hoechst

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 4
Not Reported in F.Supp.2d, 1999 WL 33454801 (D.N.J.), 45 Fed.R.Serv.3d 1056
(Cite as: Not Reported in F.Supp.2d)

explained that it "does nothing more than mimic the Federal Rules of Civil Procedure ... where the party has a right to object to the use of a particular testifying expert under Rule 26(a)(2)(6), but which protects the identity and work of non-testifying consulting experts under Rule 26(b)(4)(b)." T12:4-10. Hoechst then asserted that the modification, it adopted, would strip away a party's protection under the Federal Rules, *see* T19:7, would "make the pool of potential experts much smaller because they are the ones who will only consult based on a promise that their identity will not be disclosed," T19:9-12, and would reveal to the other party what strategies are being considered based on which experts are being consulted, T19:18-23.

**\*5** Magistrate Judge Chesler concluded that regardless of whether the standard of good cause or exceptional circumstances is applied, "there is a sufficient basis under the facts of this case to warrant the requirements that nontestifying experts be disclosed before they get information which is covered by the Protective Order ." T27:1-6. He explained "that given the highly proprietary nature of the information which is at stake in this case, that which ever of those standards utilized is met by the need of both parties to preserve the contidential nature of their information." T27:6-10. Although he recognized that disclosing the identity of an expert would "provide the opposition with at least a hint of where" a party is heading, he concluded that "at a minimum ... it is only appropriate that each side know at least the identity of an expert before the information covered by the Protective Order is provided." T27:17-20. He was not, however, convinced that "there is any particular need for the extensive resume information" which Biovail sought. T27:21-22. He also did not accept Biovail's request that outside consultants or experts be limited in the manner it proposed and he denied Biovail's request that scientific information be designated as Restricted Confidential. T30:20-23; *see also* Order, Aug. 9, 1999.

Hoechst now moves to have the Order of Magistrate Judge Chesler vacated. It argues that Magistrate Judge Chesler clearly erred in granting the modification as to the identity of a non-testifying consultant because Biovail "did not, and cannot, show good cause or exceptional circumstances to justify its proposed intrusion into the defendants' trial preparation." Def. Br. Supp. at 2-3.

II. *Discussion*

A district court may reverse a magistrate judge's order regarding a nondispositive issue if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. P. Civ. P. 72(a). Findings of fact are reviewed for clear error and legal conclusions are reviewed *de novo. See Cooper Hospital/University Medical Center v. Sullivan,* 183 F.R.D. 119, 127 (D.N.J.1998). Where the only issue is the exercise of a magistrate judge's order it will only be reversed if there was an abuse of that discretion. *Id.*

First, Hoechst argues that Biovail has failed to articulate good cause for modifying the Protective Order. *See* Def. Br. Supp. at 9. It contends that Biovail's "broad and unsubstantiated allegations of injury are insufficient," particularly "in light of the defendant's reliance upon the existing order" when they produced numerous documents designated as Restricted Confidential. *Id.* Hoechst also notes that "Biovail did not, and cannot, point to a single change in circumstances that would justify modification." *Id.* at 10. Second, Hoechst submits that modification requires a showing of exceptional circumstances because it calls for the identification of defendants' nontestifying experts or consultants. *See id.* Hoechst reasons that although Fed.R.Civ.P. 26(b)(4)(b) does not refer to the identification of such persons, several courts addressing the issue have concluded that a party must "make a showing of exceptional circumstances before it could discover the identification of its opponent's nontestifying experts." *Id.* at 11. Last, Hoechst contents that "[f]orced disclosure of the identities of the defendants' consultants represents an unwarranted intrusion into the defendants' litigation strategy." *Id.* at 15.

**\*6** Biovail counters that, although the proper standard should be good cause, the evidence, nonetheless, supports both good cause and exceptional circumstances. *See* Pl. Br. Opp. at 10. Biovail argues that "under the initial Protective Order the Hoechst defendants could hire a competitor of Biovail ... to be their consultant and then freely disclose to that competitor Biovail's most sensitive confidential information without Biovail knowing or having the opportunity to object." *Id.* at 10-11. Biovail also asserts that modification is necessary to correct the anomaly that "permit[ted] virtually unrestricted disclosure of confidences to a consultant," but "then, when the party determines to designate the consultant as a testifying expert," the opposing party gets the chance to object to the disclosure of confidences to that expert. *Id.* at 11. Biovail submits that at the time the consultant is designated an expert the confidences

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 1999 WL 33454801 (D.N.J.), 45 Fed.R.Serv.3d 1056
**(Cite as: Not Reported in F.Supp.2d)**

may have already been disclosed and the opportunity to object becomes moot. *See id.*

The Court of Appeals for the Third Circuit has stated that in determining whether to modify an already existing confidentiality order pursuant to Fed.R.Civ.P. 26(c), the court should employ the same factors that are "used in determining whether to grant such orders in the first instance." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 790 (3d Cir.1994). The court, therefore, should consider whether the party seeking the order has made " 'a showing that disclosure will work a clearly defined and serious injury.' " *id.* at 786 (quoting *Publicker Indus, Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir.1984)); *see also Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995) (clarifying that "[b]road allegations of harm, unsubstantiated by specific examples ... will not suffice"). The analysis requires " 'a judicial balancing of the harm to the party seeking protection (or third person) and the importance of disclosure to the public.' " *Pansy,* 23 F.3d at 787 (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L.Rev. 427, 432-33 (1991) (footnotes omitted)). Additionally, where the party is seeking a modification, the opposing party's reliance on the original order is a relevant factor. *See id.* at 789. Such reliance, however, is not to "be outcome determinative" and "should only be one factor to be considered." *Id.* at 790.

The parties have discussed at length, in their submissions to this court, whether the proper standard for modification in this case should be "good cause" or "exceptional circumstances." *See* Def. Br. Supp. at 8-14; Pl. Br. Opp. at 5-10. As discussed above, there is no doubt that only good cause is required for modification of a protective order. *See Pansy,* 23 F.3d at 789-90. The issue of a heightened standard, however, arises in this case because the disclosure mandated by the modification at issue here relates to the identify of a nontestifying consultant or expert and Hoechst submits that, pursuant to Fed.R.Civ.P. 26(b)(4)(b), such disclosure requires extraordinary circumstances. In support, Hoechst relies on several cases that have held "that the 'proper showing' required to compel discovery of a nonwitness expert retained or specially employed in anticipation of litigation corresponds to a showing of 'exceptional circumstances.' " *Ager v. Jane C. Stormont Hosp. & Training School for Nurses,* 622 F.2d 496, (10th Cir.1980) (footnote omitted); *see also Cooper v. Paul Revere Life Ins. Co.,* 1997 WL 289706, at *1 (E.D.La. May 28, 1997); *Bove v.*

*Worlco Data Sys., Inc.,* 1987 WL 5715, at *2-3 (E. D.Pa. Jan. 21, 1987); *In re Pizza Time Theatre Secs. Litig.,* 113 F.R.D. 94, 97 (N.D.Cal.1986).

**\*7** This court, however, is not entirely convinced that a heightened showing must be made in order to obtain a modification of an already existing order simply because it would entail the disclosure of a nontestifying consultant or expert's identity. Although, as Hoechst points out, there are cases which have required a showing of extraordinary circumstances, there are also many cases which have rejected the heightened standard. *See, e.g., MacGillivray v. Consolidated Rail Corp.,* 1992 WL 57915, at *3 (E.D.Pa. Mar. 17, 1992) (recognizing that "[t]he identify of experts who have been retained or specially employed by a party has been found to be discoverable"); *Threlkeld v. Haskins Law Firm,* 1990 WL 124876, at *1 (E.D.La. Aug. 21, 1990) ("Rule 26(b)(4)(b) .... does not explicitly preclude discovering the identity of such experts and, therefore, the overarching policy of encouraging broad discovery practices weighs in favor of allowing discovery[.]") (citation omitted); *Butler v. Harrah's Marina Hotel Casino,* 1987 WL 16691, at *2 (E.D.Pa. Sept. 8, 1987) ("This Court believes that the proper interpretation of Rule 26 allows for the discovery of the identities of experts who are not expected to testify as witnesses.").

Moreover, even assuming that a showing of extraordinary circumstances is required pursuant to Fed.R.Civ.P. 26(b)(4)(b), it does not necessarily follow that such a showing would also be mandated where the issue is the modification of a protective order. Rule 26(b)(4)(b) "was largely developed around the doctrine of unfairness designed to prevent a party from building his own case by means of his opponent's financial resources, superior diligence and more aggressive preparation." *Ager,* 622 F.2d at 502. By preventing the disclosure of the identity of a party's consultants, the rule prevents a party from discovering his or her opponent's trial strategy. By contrast, where a party is seeking a protective order because the documents that will be exchanged between the parties contain highly confidential information, the same concerns are not present, at least as a primary consideration. In such instances, the desirability, if not necessity, of obtaining the identity of an opponents' consultants rests primarily on the need to ensure the confidentiality of the information and not on an attempt to gain an unfair advantage. *See In re Neubauer,* 173 B.R. 505, 507-08 (D.Md.1994) (holding that "[e]ven assuming ... that the scope of the discovery procedures set forth in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[Fed.R.Civ.P. 26(b)(4)(b) ] extends to the discovery of the identity of ... experts," it is not implicated where the party seeking the identity "only wants the opportunity to prevent competitors from gaining access to its confidential business information").

Nonetheless, given the fact that the exceptional circumstances standard requires a greater showing than good cause, and because Magistrate Judge Chesler explicitly employed the heightened standard in reaching his decision [FN4] this court will review the order granting the modification at issue here pursuant to the heightened standard. After doing so, this court concludes that Magistrate Judge Chesler's finding that the facts satisfied a showing of exceptional circumstances, *see* T27:2-6, is not clearly erroneous.

> FN4. Magistrate Judge Chesler concluded that "whether the standard is good cause or exceptional cause or exceptional circumstances test ... there is a sufficient basis under the facts of this case to warrant the [modification]." T27:1-4.
> Parenthetically, it should be noted that this court relied, in part, on the existence of the Protective Order and the fact that it would "protect the parties' trade secrets and confidential business information" when it ordered Biovail to produce the orange jacket materials. Order, Mar. 17, 1999.

**\*8** The facts in this case support the conclusion that disclosure of the identity of nontestifying consultants or experts is necessary to protect the confidentiality of the documents. The parties themselves recognize that the information each side is producing is highly confidential; it is the very reason that they negotiated a protective order in the first instance. *See* Spears Decl. ¶ 3 ("counsel agreed that a protective offer was necessary to ensure confidentiality of information exchanged between the parties"). Paragraph Five of that Protective Order requires the disclosure of the identity of an outside consultant or expert designated as an expert witness for trial prior to him or her obtaining confidential information. *See* Protective Order ¶ 5. The purpose of that provision is to prevent the disclosure of confidential information to an individual when the opposing party determines it to be "injurious or prejudicial." *Id.* Biovail states that it was concerned with preventing highly confidential and sensitive information from reaching individuals associated with its competitors. *See* T5:4-12. Clearly, that risk would be equally present whether the consultant or expert is designated as an expert

witness for trial or whether he or she remains merely a consultant. Moreover, the opportunity to object to the disclosure of confidential information to a consultant or expert who is designated as an expert witness for trial pursuant to Paragraph Five of the Protective [FN5] Order becomes meaningless if the information has already been disclosed to that individual prior to his or her designation as an expert witness.

> FN5. Further evidence of the fact that this and other of Magistrate Judge Chesler's findings were not clearly erroneous and that, when discretionary calls were made, Magistrate Judge Chesler did not abuse his discretion is seen in his refusal to grant Biovail the overly intrusive information it sought, *i.e.,* the consultant's employment history and curriculum vitae and the curricula vitae of the consultant's staff members. *See* T28:14-18. Instead, he limited the modification to that which is necessary to ensure that the parties' confidentiality interests are protected, *i.e.,* the consultant's identity.

Magistrate Judge Chesler properly evaluated "the highly proprietary nature of the information which is at stake in this case" and concluded that "at a minimum ... it is only appropriate that each side know at least the identity of an expert before the information covered by the Protective Order is provided." T27:6-20. He acknowledged that the information would, to some extent, "provide the opposition with a least a hint of where ... [the other] party is looking to go in this litigation." T27:25. Nonetheless, he concluded that modification was warranted. In light of the fact that the purpose of the disclosure of identity at issue here is to prevent the parties' competitors from gaining access to its confidential business information, that finding is not clearly erroneous

### III. Conclusion

For the above reasons, this court will affirm the order dated August 9, 1999. An appropriate order will issue.

D.N.J.,1999.
Biovail Corp. Intern. v. Hoechst Aktiengesellschaft
Not Reported in F.Supp.2d, 1999 WL 33454801
(D.N.J.), 45 Fed.R.Serv.3d 1056

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 7
Not Reported in F.Supp.2d, 1999 WL 33454801 (D.N.J.), 45 Fed.R.Serv.3d 1056
**(Cite as: Not Reported in F.Supp.2d)**

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 4

FOCUS - 6 of 13 DOCUMENTS



Positive
As of: May 01, 2007

### GREENE, TWEED OF DELAWARE, INC. v. DUPONT DOW ELASTOMERS, L.L.C., et al.

### CIVIL ACTION NO. 00-3058

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2002 U.S. Dist. LEXIS 11389*

### February 5, 2002, Decided
### February 6, 2002, Filed; February 6, 2002, Entered

**DISPOSITION:** [*1] Defendants' motion to modify Stipulation and Protective Order denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder sued defendants, several corporations, alleging that they had infringed and continue to infringe the holder's patents. The corporations filed an emergency motion to modify the stipulation and protective order by precluding the patent holder's president from having access to the corporation's customer names and sales information.

**OVERVIEW:** The holder alleged that the corporations infringed the patent by manufacturing, using, and selling various products. The corporations sought to modify the existing stipulation and protective order by precluding the holder's president from having access to the corporation's customer names and sales information which the corporations were ordered to produce and any further discovery flowing from the production of such information. The holder argued that the corporations did not meet their high burden to show why the previously entered order was not sufficient to protect the information and why they had a compelling need for the additional measure of protection. The court found that in applying the good cause balancing test, to the extent that the corporations asserted broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, those assertions did not support a good cause showing. The court had already found that the discovery at issue

was sought for a legitimate purpose. The information which the corporation sought to preclude the holder from seeing was the very type of information to which the parties previously agreed to allow the holder access.

**OUTCOME:** The corporations' motion to modify the stipulation and protective order was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
[HN1] In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that good cause exists for the order of protection. *Fed. R. Civ. P. 26(c).* Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing. The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order.

*Civil Procedure > Discovery > Protective Orders*

[HN2] In order to determine whether good cause exists for a protective order, a balancing approach is used under which a district court must balance the need for information against the injury that might result if uncontrolled disclosure is compelled. Several factors have been identified, which are neither mandatory nor exhaustive, that may be considered in evaluating whether good cause exists: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for improper interests; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Civil Procedure > Discovery > Protective Orders*
[HN3] In the context of granting a protective order, a district court is best situated to determine what factors are relevant to the dispute. The district court also has wide discretion in weighing the relevant factors and deciding whether to grant a motion for a protective order.

*Civil Procedure > Discovery > Protective Orders*
[HN4] A district court retains the power to modify or lift confidentiality orders that it has entered.

*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*
*Criminal Law & Procedure > Sentencing > Corrections, Modifications & Reductions > Eligibility, Circumstances & Factors*
*Trade Secrets Law > Misappropriation Actions > Elements > Confidentiality*
[HN5] The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors a district court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order. Thus, good cause is required for modification of a protective order.

*Civil Procedure > Discovery > Protective Orders*
[HN6] In the context of a request to modify a protective order, in applying the good cause balancing test, it is initially noted that to the extent that a defendant asserts broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, those assertions do not support a good cause showing. Rather, a clearly defined and serious injury must be shown with specificity.

COUNSEL: For GREENE, TWEED OF DELAWARE, INC., PLAINTIFF: RONALD L. PANITCH, PANITCH, SCHWARZE, JACOBS AND NADEL, PHILA, PA, USA. KEVIN R. HAMEL, AKIN, GUMP, STRAUSS, HAUER & FELD, LLP., PHILA, PA, USA. MICHAEL S. CALDWELL, SHARI L. FLEISHMAN, AKIN GUMP STRAUSS HAUER & FELD, WASHINGTON, DC, USA. LYNDA L. CALDERONE, KRISTYNE A. BULLOCK, AKIN GUMP STRAUSS HAUER & FELD, PHILA, PA, USA. NICOLE H. SPRINZEN, AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., WASHINGTON, DC, USA.

For DUPONT DOW ELASTOMERS, L.L.C., DEFENDANT: MARK S. STEWART, BALLARD, SPAHR, ANDREWS AND INGERSOLL, PHILA, PA, USA. LEORA BEN-AMI, CLIFFORD, CHANCE, ROGERS & WELLS, LLP, NEW YORK, NY, USA. GERARD P. NORTON, PHILIP E. ROUX, CLIFFORD CHANCE ROGERS & WELLS LLP, NEW YORK, NY, USA. NEER GUPTA, CLIFFORD CHANCE ROGERS & WELLS LLP, NEW YORK, NY, USA. SAMUEL WAXMAN, CLIFFORD CHANCE ROGERS & WELLS LLP, NEW YORK, NY, USA. STEVEN J. LEVER, CLIFFORD CHANCE ROGERS & WELLS LLP, NEW YORK, NY, USA. JACQUELINE M. VERNON, CLIFFORD CHANCE ROGERS & WELLS LLP, NEW YORK, NY, USA. CHRISTOPHER SERBAGI, CLIFFORD CHANCE ROGERS & WELLS LLP, NEW YORK, NY, USA.

For E.I. DU PONT **[*2]** DE NEMOURS & COMPANY, INC., DEFENDANT: MARK S. STEWART, BALLARD, SPAHR, ANDREWS AND INGERSOLL, PHILA, PA, USA. CHRISTOPHER SERBAGI, CLIFFORD CHANCE ROGERS & WELLS LLP, NEW YORK, NY, USA.

JUDGES: DIANE M. WELSH, UNITED STATES MAGISTRATE JUDGE.

OPINION BY: DIANE M. WELSH

OPINION:

     MEMORANDUM AND ORDER

DIANE M. WELSH
UNITED STATES MAGISTRATE JUDGE

     February 5, 2002

Plaintiff, Greene, Tweed of Delaware, Inc. ("Greene, Tweed"), brought this action alleging that defendants, DuPont Dow Elastomers, L.L.C. ("DuPont Dow") and E.I. Du Pont de Nemours and Co., Inc. ("DuPont"), have infringed and continue to infringe United States Patent No. 5,461,107 ("the '107 patent"). n1 Specifically, plaintiff alleges that defendants have infringed the '107 patent by, among other things, manufacturing, using, and selling various products, including, but not limited to, products under the names Kalrez 8101, 4120, and 325ZR and Kalrez Sahara 8375 and 8385.

n1 The '107 patent relates to perfluoroclastomeric compositions and seals having improved chemical resistance and methods of making the same. At issue in this case are specially formulated O-rings that are highly resistant to heat and chemical attack.

[*3]

Presently before the Court is Defendants' "Emergency Motion to Modify the Stipulation and Protective Order [by] Precluding Felix A. Paino From Having Access to Defendants' Customer Names and Sales Information." Specifically, defendants request that the Court modify the existing Stipulation and Protective Order n2 by precluding Felix A. Paino, President of Greene, Tweed, "from having access to defendants' customer names and sales information" which defendants were ordered to produce to plaintiff pursuant to the Court's January 8, 2002 Order and "any further discovery flowing from" the production of this information. n3 See Defs.' Br. at 4. In opposition to defendants' motion, plaintiff argues that defendants "have not met their high burden to show why the Stipulation and Protective Order entered in this case on March 16, 2001 is not sufficient to protect this information and why they have a compelling need for the additional measure of protection." See Pl.'s Br. at 2.

n2 A Stipulation and Protective Order was negotiated and entered into by the parties and approved and issued by this Court on March 16, 2001.

[*4]

n3 By Memorandum and Order dated Jan. 8, 2002, the Court granted Plaintiff's Motion to Compel Production of Customer Names and Sales Information. Pursuant to that Order, defendants were directed to produce the following discovery to plaintiff: (1) the names of all customers

(distributors, end users, and any other individuals or entities) that purchase any product alleged by plaintiff to be made by a process that infringes the '107 patent; (2) the names of all customers (distributors, end users, and any other individuals or entities) that have purchased any product alleged by defendants to be an acceptable non-infringing alternative; (3) information sufficient to correlate customer names with customer codes used in existing discovery materials; and, (4) documents reflecting the intended or actual end use, process, and/or application of any allegedly infringing product and/or any product alleged to be an acceptable non-infringing substitute.

**DISCUSSION**

[HN1] "In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate [*5] that 'good cause' exists for the order of protection." *Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)* (citing *Fed. R. Civ. P. 26(c)*); see *Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).* In describing a party's burden in demonstrating good cause, the Third Circuit stated:

"Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984).* "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing. *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986),* cert. denied, *484 U.S. 976 (1987).* The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order. *Id. at 1122.*

*Pansy, 23 F.3d at 786-87;* see *Glenmede Trust, 56 F.3d at 483.*

[HN2] In order to determine whether [*6] "good cause" exists for a protective order, the Third Circuit has adopted a balancing approach under which the district court must balance the "need for information against the injury that might result if uncontrolled disclosure is compelled." *Pansy, 23 F.3d at 787* (quoting Arthur R.

Miller, Confidentiality, Protective Orders, and Public Access to the Courts, *105 Harv. L. Rev. 427, 432-33 (1991)*). In Pansy, the Court identified several factors, which are neither mandatory nor exhaustive, that may be considered in evaluating whether good cause exists: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for improper interests; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Glenmede Trust Co., 56 F.3d at 483;* **[*7]** *Pansy, 23 F.3d at 788-89.*

The Third Circuit has recognized that [HN3] the district court is best situated to determine what factors are relevant to the dispute. *Glenmede Trust Co., 56 F.3d at 483.* The district court also has wide discretion in weighing the relevant factors and deciding whether to grant a motion for a protective order. *Pansy, 23 F.3d at 789.*

In the present case, defendants request that the Court modify the existing protective order. n4 Specifically, defendants' motion is limited to a request that the protective order should be modified by precluding Mr. Paino from having access to the specific discovery which defendants were ordered to produce pursuant to the Court's January 8th Memorandum and Order, see supra note 3. Thus, the present motion requests that the Court provide more protection than the protective order currently provides with regard to the aforementioned discovery, i.e., protection from disclosure of the relevant information to Mr. Paine.

n4 It is noted that the factors establishing "good cause" for the existing protective order include the following factors: the parties in the present case are private litigants; the case concerns matters of little legitimate public interest, and the relevant information is of no apparent importance to public health and safety, see *Pansy, 23 F.3d at 787-88* ("If a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality."); the protective order promotes fairness and efficiency in the sharing of information among the litigants, since the parties have been able to rely on the existing protective order in exchanging proprietary and confidential information with the understanding that such information would, pursuant to agreement of the parties, not be dis-

closed to the public and would only be disclosed to those individuals identified in the protective order.

**[*8]**

"It is well-established that [HN4] a district court retains the power to modify or lift confidentiality orders that it has entered." *Pansy, 23 F.3d at 784.* With regard to the burden which must be met for the Court to modify an existing protective order, the parties in the present case appear to be in agreement that this Court should "allow modification of [the] protective order[] upon a showing of 'compelling need.'" See Defs.' Br. at 5 (citing *Federal Deposit Ins. Corp. v. Ernst & Ernst, 677 F.2d 230, 232 (2d Cir. 1982));* see also Pl.'s Br. at 2 ("Defendants have not met their high burden to show . . . why they have a compelling need for the additional measure of protection."); Defs.' Br. at 5 ("Here, the compelling need standard is met . . ."). Indeed, the Second Circuit has held that a confidentiality order can only be modified "if an extraordinary circumstance or 'compelling need' warrants the requested modification." n5 *Ernst & Ernst, 677 F.2d at 232.*

n5 "The Sixth Circuit has apparently adopted the Second Circuit's standard." *Pansy, 23 F.3d at 789 n.24* (citing *United States v. Kentucky Utils. Co., 927 F.2d 252, 255 (6th Cir. 1991)).*

**[*9]**

However, in *Pansy v. Borough of Stroudsburg, 23 F.3d 772 at 784,* the Court of Appeals for the Third Circuit rejected the standard applied by the Second Circuit, stating that "the standard of the Court of Appeals for the Second Circuit for modification [of a confidentiality order] is too stringent." *Id. at 789-90.* Pursuant to Pansy,

[HN5] the appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order.

*Id. at 790.* n6 Thus, unlike the "extraordinary circumstance or 'compelling need'" standard applied in the Second and Sixth Circuits, see *Ernst & Ernst, 677 F.2d at 232;* see also supra note 5, in the Third Circuit, "good

cause is required for modification of a protective order." *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft, 1999 WL 33454801,* at *6 (D. N.J. Nov. 12, 1999) (citing **[*10]** *Pansy, 23 F.3d at 789-90).*

> n6 The Court noted that "the parties' reliance on an order . . . should not be outcome determinative, and should only be one factor that a court considers when determining whether to **modify** an order of confidentiality." *Pansy, 23 F.3d at 790.*

In the present case, in support of their request to **modify the protective order,** defendants argue that "allowing Mr. Paino to have access to defendants' customer names and sales information as well as any further **third-party** discovery into the customer preferences and desires constitutes a clearly defined and serious injury to defendants," including "the risk of [plaintiff] obtaining an unfair business advantage." See Defs.' Br. at 6-7. Defendants further assert that, "the need for this . . . information can be met by allowing outside counsel and expert access to the documents." See Defs.' Br. at 8.

[HN6] In applying the good cause balancing test in the present case, it is initially noted that to the extent **[*11]** that defendants assert "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," those assertions "do not support a good cause showing." See *Pansy, 23 F.3d at 786-87* (quoting *Cipollone, 785 F.2d at 1121).* Rather, a "clearly defined and serious injury . . . must be shown with specificity." See *Pansy, 23 F.3d at 786-87* (quoting *Publicker Indus., 733 F.2d at 1071)* (emphasis added).

It is further noted that the Court has already found that the discovery at issue has been sought for a legitimate purpose. See Mem. and Order dated 1/8/02. Specifically, the discovery ordered to be produced in the January 8, 2002 Order is relevant to the issue of whether plaintiff can establish lost profits damages, and in particular, the absence of acceptable non-infringing substitutes to the patented products. Id. at 3, 7-8.

In addition, plaintiff has a legitimate purpose in wanting Mr. Paino to have access to the discovery. Under the existing protective order, defendants have designated three "in-house" individuals -- James MacLachlan, Marilyn Bromels, and Andrew Schaeffer -- who have access **[*12]** to all of plaintiff's confidential discovery produced in this case. n7 Plaintiff has only one "in-house" individual -- Felix Paino -- designated under the protective order to have access to defendants' confidential discovery in order to aid outside counsel in the case. See Stip. and Prot. Order dated 3/16/01, P6(b).

> n7 Although the original Stipulation and Protective Order dated March 16, 2001 identified only Mr. MacLachlan as the "in-house" person designated to see confidential information on behalf of defendants, see Stip. and Prot. Order dated 3/16/01, P6(b), Ms. Bromels and Mr. Schaeffer were subsequently also designated to such status, see Order dated 9/5/01, P3. Ms. Bromels is DuPont Dow's in-house patent attorney, and Mr. MacLachlan is the Technology Manager for Fluoroelastomers within DuPont Dow, see N.T. MacLachlan Dep. 6/6/01, at 236-40 (attached to Pl.'s Br. at Ex. 3). According to plaintiff, Andrew Schaeffer is in-house counsel for DuPont. See Pl.'s Br. at 5.

Although defendants **[*13]** assert in conclusory fashion that, plaintiff's "need for this . . . information can be met by allowing [merely] outside counsel and expert access to the documents," see Defs.' Br. at 8, the parties have already mutually agreed to permit specifically identified "in-house" individuals to have access to all confidential discovery. This was an acknowledgment by the parties who entered into the Stipulation and Protective Order of the necessity of having respective "in-house" individuals able to view the confidential documents to aid in each party's case and settlement considerations. Indeed, courts have observed that parties "are entitled to participate in the preparation of their own defense." See *Merit Indus., Inc. v. Feuer, 201 F.R.D. 382, 385 (E.D. Pa. 2001)* (finding that "the information which Defendants seek in discovery is for a legitimate purpose and that the interests of fairness and efficiency will be served by allowing them to have access to the documents"): see also *Schofield v. Trustees of Univ. of Pennsylvania., 161 F.R.D. 302, 303 (E.D. Pa. 1995)* (holding that plaintiff's motion to preclude defendant's representatives from having **[*14]** access to confidential discovery "would unduly hamper Defendant's ability to defend the action.").

Furthermore, the interests of fairness and efficiency and the parties' reliance on the protective order which has been in place since March of last year are factors which weigh against the requested modification to the protective order. The fact discovery deadline has passed, and almost all discovery other than expert discovery has already been exchanged by the parties under the conditions of the existing protective order. Therefore, under the negotiated and agreed upon protective order, the parties have already exchanged much highly confidential business information, to which all individuals "qualified" under the protective order, including "in-house" individuals, have had access.

Furthermore, the information which defendants presently seek to preclude Mr. Paino from seeing is the

very type of information to which the parties agreed to allow Mr. Paino access. In particular, included in the categories of information which the parties contemplated and agreed was subject to the existing protective order is "customer information (including lists, preferences, purchases, sales, **[*15]** margins, volumes, profits and terms of specific customer accounts)." See Stip. and Prot. Order dated 3/16/01, Ex. "A." P9 (emphasis added). Indeed, plaintiff argues, see Pl.'s Br. at 8, and defendants have not denied that, in addition to the parties having already exchanged business and marketing plans, research and development information, and detailed sales and financial information, the parties have already exchanged many documents containing customer identification information, in reliance on the Stipulation and Protective Order. In any event, defendants' "in-house" individuals who are specifically identified in the protective order, as with plaintiff's designated "in-house" individual, have already had access to all of the highly confidential discovery exchanged. n8

> n8 Although defendants complain that Mr. Paino has "responsibility for competitive decision making," see Defs.' Br. at 7, Mr. MacLachlan, one of DuPont Dow's "in-house" individuals permitted access to plaintiff's confidential discovery, testified that he manages employees, budgets, and programs of the technology organization of DuPont Dow, and that he is a member of the "leadership team" which manages the business strategies for DuPont Dow's Kalrez business. See N.T. MacLachlan Dep. 6/6/01, at 236-40.

**[*16]**

Defendants have expressed concern that under the existing protective order Mr. Paino would have access to "further discovery" if plaintiff "depos[es] individual customers" based on the discovery produced pursuant to the January 8, 2002 Order. See Defs.' Br. at 6. However, as plaintiff acknowledges: "Fact discovery closed on November 20, 2001, except for the limited additional discovery ordered by the Court in its January 8 and 16, 2002 orders and during the hearing on January 10, 2002. Thus, Greene, Tweed cannot take any third party discov-

ery at this point." See Pl.'s Br. at 6. Therefore, at this stage in the proceedings, it appears that defendants' concerns regarding plaintiff's opportunity to conduct further discovery are baseless.

Having applied the good cause balancing test in the present case, and after considering the factors relevant to the present dispute, see *Glenmede Trust Co., 56 F.3d at 483; Pansy, 23 F.3d at 789,* I find that defendants have failed to show good cause to preclude Mr. Paino from having access to the discovery ordered to be produced in the Court's January 8, 2002 Order. n9 Accordingly, defendants' motion to modify **[*17]** the Stipulation and Protective Order is denied.

> n9 Under the March 16, 2001 Stipulation and Protective Order, "any information designated pursuant to this Stipulation and Protective Order as Confidential Information . . . shall be used . . . solely for the preparation, trial and appeal of this lawsuit; settlement discussions and negotiations pertaining to this lawsuit; or any form of alternative dispute resolution of this lawsuit; and for no other purpose or publication whatsoever, whether directly or indirectly." See Stip. and Prot. Order dated Mar. 16, 2001, P2.

An implementing Order follows.

ORDER

AND NOW, this 5th day of February, 2002, upon consideration of Defendants' Emergency Motion to Modify the Stipulation and Protective Order Precluding Felix A. Paino From Having Access to Defendants' Customer Names and Sales Information and plaintiff's opposition thereto, for the reasons explained in the accompanying Memorandum, it is hereby ORDERED that defendants' motion is DENIED.

BY THE COURT:

DIANE **[*18]** M. WELSH

UNITED STATES MAGISTRATE JUDGE

TAB 5

FOCUS - 2 of 13 DOCUMENTS



Caution
As of: May 01, 2007

**JOHN A. PANSY, Plaintiff/Appellee, v. BOROUGH OF STROUDSBURG; HAR-
OLD A. BENTZONI; KATHRYN MIKELS; JOHN W. OSBORNE, II; WILLIAM
REBER; MARY JEAN KNAPIK; MARYANN WEST KOWALSHYN; RICHARD
F. OSSWALD; CARL R. ROGERS Defendants/Appellees, v. OTTAWAY NEWS-
PAPERS, INC. t/a POCONO RECORD, RONALD F. BOUCHARD; PENNSYL-
VANIA NEWSPAPER PUBLISHERS ASSOCIATION, Intervenors/Appellants.**

No. 93-7396

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

*23 F.3d 772; 1994 U.S. App. LEXIS 9389; 28 Fed. R. Serv. 3d (Callaghan) 1129;
22 Media L. Rep. 1641*

**January 11, 1994, Argued
May 2, 1994, Filed**

**SUBSEQUENT HISTORY:** As Corrected May 4, 1994.

**PRIOR HISTORY:** [**1] On Appeal from the United States District Court for the Middle District of Pennsylvania. D.C. Civ. No. 91-00682

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant newspapers challenged an order of the United States District Court for the Middle District of Pennsylvania, denying their motion to intervene and motion to reconsider, vacate, or modify an order of confidentiality. Appellants sought access to a settlement agreement between a governmental entity and a former employee.

**OVERVIEW:** Appellant newspapers sought access to a settlement agreement between a governmental entity and a former employee. The district court denied their motion to intervene and motion to reconsider, vacate, or modify an order of confidentiality and the court reversed and remanded. The court found that appellants had standing because the confidentiality order interfered with their attempt to obtain access to the settlement agreement. Because appellants challenged the validity of the confidentiality order, the court found that their claim had a question of law or fact in common with the main action, that they could intervene, and that the intervention was timely. The settlement agreement was not a judicial record which could be obtained under the right of access doctrine because it was never filed with, interpreted or enforced by the district court. However, the court found that the district court did not properly balance the competing public and privacy interests before entering the confidentiality order or before denying the motion to reconsider. On remand, the district court was to consider whether there were circumstances justifying the order of confidentiality.

**OUTCOME:** The court reversed the order denying appellant newspaper's motion to intervene and motion to reconsider, vacate, or modify an order of confidentiality. Intervention was appropriate and the district court was required to reconsider, after balancing the public and privacy interests, whether the confidentiality order was justified.

**LexisNexis(R) Headnotes**

*Constitutional Law > The Judiciary > Case or Contro-
versy > Standing > General Overview*

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

[HN1] U.S. Const. art. III requires the party who invokes the district court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

*Civil Procedure > Justiciability > Standing > General Overview*
*Civil Procedure > Parties > Intervention > General Overview*
[HN2] Third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings.

*Civil Procedure > Justiciability > Standing > Injury in Fact*
*Civil Procedure > Parties > Intervention > General Overview*
[HN3] Intervenors may have standing notwithstanding the fact that they assert rights that may belong to a broad portion of the public at large. So long as the "injury in fact" alleged by each intervenor is a distinct and palpable injury to himself, standing should not be denied even if it is an injury shared by a large class of other possible litigants.

*Civil Procedure > Justiciability > Standing > General Overview*
*Civil Procedure > Settlements > General Overview*
[HN4] To establish standing, it is not necessary for litigants to demonstrate that they will prevail on the merits of their claim.

*Civil Procedure > Parties > Intervention > Motions to Intervene*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN5] An appellate court normally reviews a district court's denial of a Motion for Intervention for abuse of discretion. However, when the question raised is whether the district court applied the correct legal standard for intervention, the appellate court exercises plenary review.

*Civil Procedure > Parties > Intervention > General Overview*

[HN6] *Fed. R. Civ. P. 24(b)* provides in part: Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

*Civil Procedure > Parties > Intervention > Permissive Interventions*
[HN7] The procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action. Specificity, e.g., that the intervenors' claim involve the same legal theory that was raised in the main action, is not required when intervenors are not becoming parties to the litigation.

*Civil Procedure > Parties > Intervention > Motions to Intervene*
[HN8] A district court may properly consider a motion to intervene permissively for the limited purpose of modifying or vacating a confidentiality order even after the underlying dispute between the parties has long been settled.

*Civil Procedure > Settlements > General Overview*
*Contracts Law > Types of Contracts > Settlement Agreements*
*Governments > Courts > Court Records*
[HN9] A settlement agreement deemed a judicial record is accessible under the right of access doctrine.

*Civil Procedure > Settlements > Settlement Agreements > Enforcement > General Overview*
*Contracts Law > Types of Contracts > Settlement Agreements*
*Governments > Courts > Court Records*
[HN10] When a settlement agreement is not filed with, placed under seal, interpreted, or enforced by the district court, it is not a "judicial record" for purposes of the right of access doctrine.

*Civil Procedure > Settlements > Settlement Agreements > Effects*
*Contracts Law > Types of Contracts > Settlement Agreements*
*Governments > Courts > Court Records*
[HN11] Simply because a district court has entered a confidentiality order over documents does not automati-

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

cally convert those documents into "judicial records" accessible under the right of access doctrine.

*Civil Procedure > Settlements > General Overview*
*Evidence > Procedural Considerations > Preliminary Questions > Admissibility of Evidence > General Overview*
*Governments > Courts > Court Records*
[HN12] Exhibits that have been admitted into evidence and relied upon by the district court do not remain judicial records after the case is closed and they are returned to the parties.

*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN13] The appellate court exercises plenary review over a district court's interpretation and application of the legal standard for granting or modifying a confidentiality order.

*Civil Procedure > Judgments > Relief From Judgment > General Overview*
*Torts > Products Liability > Privacy*
[HN14] A district court retains the power to modify or lift confidentiality orders that it has entered.

*Governments > Courts > Authority to Adjudicate*
[HN15] District courts have inherent power to grant orders of confidentiality over materials in the court file.

*Civil Procedure > Settlements > General Overview*
*Governments > Courts > Authority to Adjudicate*
[HN16] District courts have inherent equitable power to grant confidentiality orders, whether or not such orders are specifically authorized by procedural rules.

*Civil Procedure > Discovery > Protective Orders*
*Contracts Law > Types of Contracts > Settlement Agreements*
*Governments > Courts > Court Records*
[HN17] Whether an order of confidentiality is granted at the discovery stage or any other stage of litigation, including settlement, good cause must be demonstrated to justify the order. Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, un-

substantiated by specific examples or articulated reasoning, do not support a good cause showing. The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order.

*Civil Procedure > Discovery > Protective Orders*
[HN18] Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
*Trade Secrets Law > Civil Actions > Discovery*
[HN19] When considering whether to grant confidentiality orders at any stage of litigation, including settlement the district court must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. Once the district court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should be disclosed only in a designated way, as authorized by the last clause of *Fed. R. Civ. P. 26(c)(7)*. Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. District courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

*Civil Procedure > Discovery > Protective Orders*
*Trade Secrets Law > Misappropriation Actions > Elements > Confidentiality*
[HN20] It is appropriate for district courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the district court reasonably finds are entitled to such protection. In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose. However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny.

*Civil Procedure > Discovery > Protective Orders*
[HN21] While preventing embarrassment may be a factor satisfying the "good cause" standard, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particu-

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

larly serious. As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.

*Civil Procedure > Discovery > Protective Orders*
[HN22] Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety and when the sharing of information among litigants would promote fairness and efficiency.

*Civil Procedure > Discovery > Protective Orders*
*Civil Procedure > Settlements > General Overview*
*Contracts Law > Types of Contracts > Settlement Agreements*
[HN23] A factor which a district court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public entity or official. Similarly, the district court should consider whether the case involves issues important to the public. If a settlement agreement involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality. On the other hand, if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

*Civil Procedure > Discovery > Protective Orders*
[HN24] In deciding how much weight should be assigned the interest in encouraging settlements, district courts should not rely on the general interest in encouraging settlement and should require a particularized showing of the need for confidentiality in reaching a settlement. Even when a particularized need for confidentiality is put forth by the parties, the interest in furthering settlement should only be one factor in the district court's determination.

*Civil Procedure > Discovery > Protective Orders*
*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*
*Trade Secrets Law > Misappropriation Actions > Elements > Confidentiality*
[HN25] To facilitate effective appellate review of a district court decision of whether to grant or modify an order of protection or confidentiality, a district court should articulate on the record findings supporting its judgment.

In appropriate cases, the district court may seal that portion of the record which contains its findings, for in some circumstances the district court's articulation of its findings might destroy the very confidentiality being sought.

*Civil Procedure > Discovery > Protective Orders*
[HN26] In determining whether to modify an already-existing confidentiality order, the parties' reliance on the order is a relevant factor.

*Civil Procedure > Settlements > Settlement Agreements > Modifications*
*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*
*Trade Secrets Law > Misappropriation Actions > Elements > Confidentiality*
[HN27] The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the district court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order. The parties' reliance on an order, however, should not be outcome determinative, and should only be one factor that a district court considers when determining whether to modify an order of confidentiality.

*Civil Procedure > Discovery > Protective Orders*
[HN28] The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the district court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order. If access to protected material can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need for the protected materials is minimal. When that is not the case, the district court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted. Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns.

*Civil Procedure > Discovery > Protective Orders*
[HN29] Where a governmental entity is a party to litigation, no protective, sealing or other confidentiality order shall be entered without consideration of its effect on

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

disclosure of government records to the public under state and federal freedom of information laws. An order binding governmental entities shall be narrowly drawn to avoid interference with the rights of the public to obtain disclosure of government records and shall provide an explanation of the extent to which the order is intended to alter those rights.

*Administrative Law > Governmental Information > Freedom of Information > General Overview*
*Civil Procedure > Discovery > Protective Orders*

[HN30] Where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law. In the good cause balancing test, this strong presumption tilts the scales heavily against entering or maintaining an order of confidentiality. To avoid complicated inquiries as to whether certain information would in fact be available under a freedom of information law, district courts may choose to grant conditional orders. Courts have discretion to fashion such orders according to the needs and circumstances of each case.

COUNSEL: George W. Westervelt, Jr. (argued), 304 Park Avenue, P.O. Box 549, Stroudsburg, PA 18360, Counsel for Appellants Ottaway Newspapers, Inc. t/a Pcono Record and Ronald F. Bouchard.

James A. Swetz, Cramer, Swetz & McManus, 711 Sarah Street, Stroudsburg, PA 18360, Counsel for Appellee John A. Pansy.

Ralph A. Matergia, Esq. (argued), Matergia & Dunn, 530 Main Street, Stroudsburg, PA 18360, Counsel for Appellees Borough of Stroudsburg, Harold A. Bentzoni, Kathryn Mikels, John W. Osborne, II, William Reber, Mary Jean Knapik, Maryann West Kowalyshyn, Richard F. Osswald, Carl R. Rogers.

JUDGES: Before: STAPLETON, COWEN and ALITO, Circuit Judges.

OPINION BY: COWEN

OPINION: [*775] OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal raises several questions of first impression in this court concerning the ability of intervenors to challenge orders of confidentiality pertaining to settlement agreements. These questions are extremely impor-

tant in light of the widespread and increasing use by district courts of confidentiality orders to facilitate settlements, and the consequential sacrifice of public access [**2] to the information deemed confidential by such orders.

Ottaway Newspapers, Inc. ("Ottaway"), The Pocono Record ("the Record"), Ronald F. Bouchard and the Pennsylvania Newspaper Publishers Association (collectively, "the Newspapers") filed this action in the district court seeking to intervene in an action that had been settled between John A. Pansy and the Borough of Stroudsburg ("the Borough"). The Newspapers' purpose for intervening was to gain access to the Settlement Agreement which was entered into between Pansy and the Borough. The Newspapers argued that either the Agreement was a judicial record to which it had a right of access, or that the Order of Confidentiality which the court entered concerning the Agreement should be modified or vacated. The district court ruled that the Newspapers' motion for intervention was untimely. In the alternative, the district court held that the Agreement was not a judicial record, and therefore not accessible under the right of access doctrine. The district court denied the Newspapers' Motion to Intervene and Motion to Reconsider, Vacate or Modify the Order of Confidentiality. This appeal followed.

For the reasons stated below, we will reverse [**3] the order of the district court and direct that the Newspapers be permitted to intervene. We will remand the case to the district court for proceedings consistent with this opinion.

[*776] JURISDICTION AND STANDARD OF REVIEW

The district court entered a final order denying the Motion to Intervene and the Motion to Amend, Vacate or Modify by the Newspapers. Accordingly, we have jurisdiction under *28 U.S.C. § 1291.* See *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 341 n.2 (3d Cir. 1986).*

The standard of review for each issue raised in this appeal will be discussed in the analysis of the issue. Where this appeal raises a legal question, we exercise plenary review. *Prisco v. Talty, 993 F.2d 21, 24 (3d Cir. 1993).*

DISCUSSION

A. BACKGROUND

In May, 1991, Pansy filed an action in the district court pursuant to *42 U.S.C. § 1983* alleging that the Borough violated his civil rights. Prior to Pansy's filing that action, he had been Chief of the Borough's Police De-

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

partment. While Chief, he was investigated and later arrested **[\*\*4]** by agents of the Pennsylvania Attorney General's Office. Pansy was charged with offenses relating to the alleged improper handling of parking meter money. The Borough subsequently suspended him from the force and demoted him to patrolman. The demotion and suspension, in turn, led to Pansy's filing a civil rights action. Ultimately, Pansy was tried and acquitted of all criminal charges.

Pansy and the Borough agreed to settle the civil rights action and the Settlement Agreement was presented to and reviewed by the district court. The Newspapers were not involved with the settlement. On June 5, 1992, the district court entered an order indicating that it had reviewed the terms of settlement and directing that the case be considered dismissed with prejudice upon the expiration of sixty days or consummation of settlement. The order also stated that "the terms of settlement are confidential and the parties hereby are ordered and directed to abide by the order of confidentiality." App. at 54-55. The Settlement Agreement was never filed with the district court.

On October 22, 1992, the Record sent the Borough a request for information pursuant to the Pennsylvania Right to Know Act ("the Act"), **[\*\*5]** *Pa. Stat. Ann. tit. 65, §§ 66.1-.4.* (1959 & Supp. 1993). The request sought information and documents pertaining to the civil rights case, including the Settlement Agreement.

On November 25, 1992, the Borough sent a response to the Record which included some information concerning the monetary cost to the Borough in settling the case. However, the Borough refused to provide access to the Settlement Agreement itself, and related documents, ostensibly because the district court's June 5, 1992 Order of Confidentiality prohibited its divulgence. The Borough has continued to refuse to provide the Settlement Agreement to the Newspapers.

On December 23, 1992, the Newspapers filed a petition in the Court of Common Pleas of Monroe County, Pennsylvania, challenging the Borough's refusal to produce documents pursuant to §§ 66.3 and 66.4 of the Right to Know Act. By order of that court, the state court litigation has been stayed pending the resolution of this case.

On December 23, 1992, the Newspapers also filed the motions in the district court which are the subject of this appeal. They filed a Motion to Intervene in the settled civil rights action between Pansy and the Borough, as well as a **[\*\*6]** Motion to Reconsider, Vacate, or Modify the district court's June 5, 1992 Order. Specifically, the Newspapers sought the Settlement Agreement as a judicial record. In the alternative, they sought to modify or vacate the June 5, 1992 Order of Confidential-

ity so they could obtain the Settlement Agreement pursuant to the Pennsylvania Right to Know Act.

The district court concluded that the Motion to Intervene was untimely. Alternatively, the district court addressed the merits of the right of access claim. It found that even if intervention was proper, the Settlement Agreement was not a judicial record because it was never filed with the court and, therefore, the Newspapers had no right to obtain the Settlement Agreement under the right of access doctrine. The district court also denied **[\*777]** the Motion to Reconsider, Vacate or Modify the Order of Confidentiality.

B. ANALYSIS

1. Standing

The appellees have not challenged the Newspapers' standing in this appeal. Nevertheless, we are obliged to consider whether the Newspapers have standing to intervene in this action to either obtain the sought-after Settlement Agreement under the right of access doctrine, or to attack the Order of Confidentiality **[\*\*7]** so that they may seek access to the document under the Pennsylvania Right to Know Act. The requirements for an Article III case or controversy were stated in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982):*

> [HN1] Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

*Id. at 472, 102 S. Ct. at 758* (internal quotations and citations omitted).

We have routinely found, as have other courts, that [HN2] third parties have standing to challenge protective orders and confidentiality orders n1 in an effort to obtain access to information or judicial proceedings. E.g., *Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992); Public Citizen v. Liggett Group Inc., 858 F.2d 775, 787 & n.12 (1st Cir. 1988),* **[\*\*8]** cert. denied, *488 U.S. 1030, 109 S. Ct. 838, 102 L. Ed. 2d 970 (1989); In re Alexander Grant & Co. Litig., 820 F.2d 352, 354 (11th Cir. 1987); United States v. Cianfrani, 573 F.2d 835, 845 (3d Cir. 1978); City of Hartford v. Chase, 733 F. Supp. 533, 534 (D. Conn. 1990),* rev'd on

other grounds, *942 F.2d 130 (2d Cir. 1991)*. [HN3] The Newspapers may have standing notwithstanding the fact that "they assert rights that may belong to a broad portion of the public at large. So long as the 'injury in fact' alleged by each intervenor is 'a distinct and palpable injury to himself,' standing should not be denied 'even if it is an injury shared by a large class of other possible litigants.'" *Cianfrani, 573 F.2d at 845* (quoting *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975))*.

n1 In this opinion, the term "confidentiality order" will be used to denote any court order which in any way restricts access to or disclosure of any form of information or proceeding, including but not limited to "protective orders", "sealing orders" and "secrecy orders". "Protective orders" properly denote court orders over information exchanged during discovery. See *Fed. R. Civ. P. 26(c)*.

[**9]

Moreover, [HN4] to establish standing, it is not necessary for litigants to demonstrate that they will prevail on the merits of their claim. See *Warth, 422 U.S. at 500, 95 S. Ct. at 2206*. Therefore, in determining whether the Newspapers have standing, we need not determine that the Newspapers will ultimately obtain access to the sought-after Settlement Agreement. We need only find that the Order of Confidentiality being challenged presents an obstacle to the Newspapers' attempt to obtain access. The Newspapers have met the standing requirements in this case: they have shown that the putatively invalid Confidentiality Order which the district court entered interferes with their attempt to obtain access to the Settlement Agreement, either under the right of access doctrine or pursuant to the Pennsylvania Right to Know Act.

2. Intervention

The district court denied the Newspapers' Motion for Intervention. [HN5] We normally review the district court's denial of the Newspapers' Motion for Intervention for abuse of discretion. *Harris v. Pernsley, 820 F.2d 592, 597* (3d Cir.), cert. denied, *484 U.S. 947, 108 S. Ct. 336, 98 L. Ed. 2d 363 (1987)*. [**10] However, because the question raised is whether the district court applied the correct legal standard for intervention, we exercise plenary review. Cf. *Savarese v. Agriss, 883 F.2d 1194, 1200 (3d Cir. 1989)*.

The district court denied the Newspapers' Motion for Intervention for two reasons. First, it determined that the Motion for Intervention **[*778]** was untimely because

the case had already been settled for at least six months. Second, it found that the Newspapers did not demonstrate that their interest in the case had anything in common with a question of law or fact in the main action and therefore did not meet the requirements of *Fed. R. Civ. P. 24(b)(2)*. n2

n2 [HN6] *Fed. R. Civ. P. 24(b)* provides in part:

Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

[**11]

The district court applied incorrect legal standards in denying the Newspapers' Motion for Intervention. As to the district court's finding that the Newspapers have not shown that their claim has anything in common with a question of law or fact in the case, the district court ruled contrary to a forming consensus in the federal courts. We agree with other courts that have held that [HN7] the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action. E.g., *Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 473-74* (9th Cir.), cert. denied, *U.S. , 113 S. Ct. 197 (1992); United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990)*, cert. denied, *498 U.S. 1073, 111 S. Ct. 799 (1991); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 783-87 (1st Cir. 1988)*, cert. denied, *488 U.S. 1030, 109 S. Ct. 838, 102 L. Ed. 2d 970 (1989);* **[**12]** *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 161-64 (6th Cir. 1987); Martindell v. International Tel. & Tel. Corp., 594 F.2d 291, 294 (2d Cir. 1979); In re Beef Indus. Antitrust Litig., 589 F.2d 786, 788-89 (5th Cir. 1979); City of Hartford v. Chase, 733 F. Supp. 533, 534 (D. Conn. 1990)*, rev'd on other grounds, *942 F.2d 130 (2d Cir. 1991); In re Franklin Nat'l Bank Sec. Litig., 92 F.R.D. 468, 470-71 (E.D.N.Y. 1981)*, aff'd sub nom. *Federal Deposit Ins. Corp. v. Ernst & Ernst, 677 F.2d 230 (2d Cir. 1982)* [hereinafter FDIC]. In Beckman, the Court of Appeals for the Ninth Circuit stated:

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

Specificity, e.g., that the [intervenors'] claim involve . . . the same legal theory [that was raised in the main action], is not required when intervenors are not becoming parties to the litigation. There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.

**[**13]**

*966 F.2d at 474.* n3 The reasoning in Beckman is persuasive, and we adopt it. We therefore reject the district court's conclusion that the Newspapers have not shown their claim has anything in common with a question of law or fact in the case, and therefore cannot intervene. By virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of *Fed. R. Civ. P. 24(b)(2)* that their claim must have "a question of law or fact in common" with the main action. n4

n3 The Beckman court also noted that although permissive intervention ordinarily requires independent jurisdictional grounds, an independent jurisdictional basis is not required because intervenors do not seek to litigate a claim on the merits. *966 F.2d at 473.* Thus, in cases where intervenors seek to **modify** an order of the court, the court has jurisdiction based on the fact that it already has the power to **modify the protective order** and no independent jurisdictional basis is needed. Id.

n4 We therefore do not follow dicta in our decision in *Littlejohn v. Bic Corp., 851 F.2d 673 (3d Cir. 1988),* which stated: "**Third parties** seeking access to the judicial record after the termination of an action may therefore be required to proceed by complaint or order to show cause." *Id. at 677 n.7.* That statement is dicta because, as the Littlejohn court pointed out, the intervention issue was not raised on appeal. Id. Of course, as an alternative to permissive intervention, parties may choose to proceed by complaint or order to show cause to challenge confidentiality orders.

**[**14]**

The district court's second reason for denying the Newspapers' motion for intervention was that the motion to intervene was untimely, as it was made approximately six and one-half months from the date of settlement. In

support of its holding, the district court cited dicta from a footnote in an opinion by this court, *Littlejohn v. Bic Corp., 851 F.2d 673, 677 n.7* **[*779]** *(3d Cir. 1988),* which stated that "'intervention is ancillary and subordinate to a main cause and whenever an action is terminated, for whatever reason, there no longer remains an action in which there can be an intervention,'" id. (quoting *Black v. Central Motor Lines, Inc., 500 F.2d 407, 408 (4th Cir. 1974)).*

We do not follow the dicta quoted above from Littlejohn because it announces an inappropriate rule and is contrary to the majority of courts that have decided the issue. These courts have allowed intervention by parties for the limited purpose of modifying a confidentiality or protective order even after the underlying dispute between the parties has been settled. See, e.g., *Beckman, 966 F.2d at 471, 473-75; Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1014-16 (11th Cir. 1992);* **[**15]** *United Nuclear, 905 F.2d at 1426-29; Public Citizen, 858 F.2d at 783-87; Meyer Goldberg, 823 F.2d at 161-64; Stallworth v. Monsanto Co., 558 F.2d 257, 260-70 (5th Cir. 1977); In re Franklin Nat'l Bank Sec. Litig., 92 F.R.D. at 469-71;* see *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 342 n.2 (3d Cir. 1986).* n5 Discussion in a recent decision by this court reflects the growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated. In *Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir. 1993),* we stated that "a district court may properly consider a motion to intervene permissively for the limited purpose of modifying a protective order even after the underlying dispute between the parties has long been settled." *Id. at 161 n.5.* This recognition in Leucadia, in combination with the forming **[**16]** consensus in other courts of appeals, provides strong reasons to allow a district court to grant permissive intervention in order to allow litigation of ancillary issues even after a case has been concluded.

n5 One case has been found which contradicts the general rule that intervenors will be granted permissive intervention to challenge confidentiality orders. In *United States v. Kentucky Utils. Co., 927 F.2d 252 (6th Cir. 1991),* the Court of Appeals for the Sixth Circuit expressed skepticism as to whether intervention to challenge a confidentiality order would be appropriate. The court stated:

Because the papers [sought] are not in the court record, but are instead copies of private documents

that came into the possession of the DOJ only for the limited purposes of discovery and were not safeguarded by a protective order during discovery, [the potential intervenor] faces a formidable burden in attempting to demonstrate that her desire for access to materials of such a private nature rises to the status of an interest of so significant a magnitude as to entitle her to participate as a party to the action and challenge the . . . order.

*Id.* at 255. It should be noted that the Kentucky Utilities court cited no authority for the above-quoted passage. It contains no analysis, nor does it articulate any workable standards, concerning whether a party may intervene in an action to challenge a protective or confidentiality order. It merely asserts the phrase "formidable burden". Moreover, as a matter of policy the holding in Kentucky Utilities is unacceptable since it makes it almost impossible for the public to intervene in actions even involving important public matters to challenge protective and confidentiality orders. We therefore cannot join the position taken by the Sixth Circuit in Kentucky Utilities.

[**17]

In Public Citizen, the Court of Appeals for the First Circuit reasoned that where an intervenor is litigating an ancillary issue, the potential for prejudice to the original parties due to the delay in intervention n6 is minimized:

n6 *Fed. R. Civ. P. 24(b)* provides, in part, that in exercising its discretion in determining whether to allow permissive intervention, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

[A] factor to be considered is the prejudice to existing parties due to [a litigant's] delay in intervening. This factor encompasses the basic fairness notion that intervention should not work a "last minute disruption of painstaking work by the par-

ties and the court." For purposes of this factor, therefore, it is necessary to ask why a would-be intervenor seeks to participate, for if the desired intervention relates to an ancillary issue and will not disrupt the resolution of the underlying merits, untimely [**18] intervention is much less likely to prejudice the parties. Here, of course, [the intervenor's] motion pertains to a particularly discrete and ancillary issue, as demonstrated by the fact that the merits of [*780] the case have been already concluded and are no longer subject to review. Because [the intervenor] sought to litigate only the issue of the protective order, and not to reopen the merits, we find that its delayed intervention caused little prejudice to the existing parties in this case.

*858 F.2d at 786* (citations omitted).

This reasoning is persuasive and we adopt it. We also note that in cases dealing with access to information, the public and third parties may often have no way of knowing at the time a confidentiality order is granted what relevance the settling case has to their interests. Therefore, to preclude third parties from challenging a confidentiality order once a case has been settled would often make it impossible for third parties to have their day in court to contest the scope or need for confidentiality. We therefore expressly hold today what we observed in our opinion in Leucadia: [HN8] "a district court may properly consider a motion [**19] to intervene permissively for the limited purpose of modifying [or vacating] a [confidentiality] order even after the underlying dispute between the parties has long been settled." *998 F.2d at 161 n.5*. n7

n7 In *Commonwealth of Pa. v. Rizzo, 530 F.2d 501* (3d Cir.), cert. denied, *426 U.S. 921, 96 S. Ct. 2628 (1976)*, we listed three factors to consider in determining whether a motion to intervene is timely: (1) how far the proceedings have gone when the movant seeks to intervene; (2) prejudice which resultant delay might cause to other parties; and (3) the reason for the delay. *Id. at 506*. In *Delaware Valley Citizens' Council v. Commonwealth of Pa., 674 F.2d 970 (3d Cir. 1982)*, we also stated that "a motion to intervene after entry of a decree should be denied except in extraordinary circumstances," *id. at 974*. However, Rizzo and Delaware Valley involved parties seeking to intervene and litigate the merits of the

underlying suit. The standards articulated in Rizzo and Delaware Valley are therefore not helpful in cases such as the instant one, where the intervenors do not wish to litigate the merits of the underlying suit, but rather only seek to litigate an ancillary issue, such as a protective or confidentiality order. For example, the first Rizzo factor will rarely be helpful in cases where the intervenor is challenging a confidentiality order over a settlement agreement, because the order usually takes effect upon the termination of an action. Thus, to ask how far the proceedings have gone is pointless. Therefore, although Rizzo, Delaware Valley and their progeny are good law, they do not control in cases such as the one which is the subject of this appeal, where the potential intervenors wish only to litigate a question ancillary to the underlying suit.

**[**20]**

The facts of this case lead us to conclude that intervention should not be deemed untimely. In United Nuclear, intervention was permitted approximately three years after the underlying action was settled and dismissed, *905 F.2d at 1427*, and in Beckman, intervention was allowed approximately two years after the underlying case was terminated, *966 F.2d at 471, 473*. In the instant case, there was only a six and one-half month delay between the time of settlement and the motion for intervention. n8 This relatively short delay, in itself, leads us to the conclusion that intervention should be permitted. n9

> n8 We also note that the Record sent the Borough a request for information pursuant to the Pennsylvania Right to Know Act on October 22, 1992, just over four months from the date of settlement. Only after the Borough refused to provide the Record with the Settlement Agreement did the Record realize that court action would be necessary. These facts indicate that the Record was diligent in seeking the Settlement Agreement, and that its motion for intervention therefore cannot be deemed untimely.

**[**21]**

> n9 We need not address whether in some circumstances a trial court, in the exercise of its discretion, may rightly conclude that untimeliness or other factors relating to the particular claimant justify refusal of intervention where the intervenors seek to contest an ancillary issue.

### 3. The Right of Access Doctrine

Although the district court denied intervention by the Newspapers, it made an alternative holding. Assuming that intervention was proper, the district court considered the merits of the Newspapers' challenge to the Order of Confidentiality and their attempt to obtain access to the Settlement Agreement. The district court determined that the Settlement Agreement was not a "judicial record," and it therefore denied the Newspapers' motion to obtain access to the Settlement Agreement under the right of access doctrine.

We have previously recognized a right of access to judicial proceedings and judicial records, and this right of access is "beyond **[*781]** dispute." *Littlejohn v. Bic Corp., 851 F.2d 673, 677-78 (3d Cir. 1988)* (quoting *Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1066 (3d Cir. 1984))*. **[**22]** "The balancing of factors for and against access is a decision committed to the discretion of the district court, although it is not generally accorded the narrow review reserved for discretionary decisions based on first-hand observations." *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986)* (citations omitted). In this case, however, the district court reached its conclusion through a legal determination that the Settlement Agreement was not a "judicial record" accessible under the right of access doctrine. We will therefore exercise plenary review over the district court's legal determination. See 1 st *Westco Corp. v. School Dist. of Phila., 6 F.3d 108, 112 (3d Cir. 1993)*.

The Newspapers argue that the Settlement Agreement which Pansy and the Borough entered into is a "judicial record," accessible under the right of access doctrine. If the Settlement Agreement is a judicial record, then Rittenhouse would be binding and the Agreement should be released by the district court. In Rittenhouse, this court held [HN9] a settlement agreement deemed a judicial record is **[**23]** accessible under the right of access doctrine. *800 F.2d at 344-45.* We specifically held that the strong presumption of access outweighed the interest in promoting settlements, which in the matter before us is the only interest which the Borough has argued in favor of maintaining the Order of Confidentiality. Id. Therefore, if the Settlement Agreement is a judicial record, it should be released by the district court itself under the right of access doctrine, and there would be no need for the Newspapers to demonstrate that the Settlement Agreement is a public record under the Pennsylvania Right to Know Act.

However, our prior decisions preclude a finding that the Settlement Agreement is a judicial record accessible under the right of access doctrine. See Internal Operating Procedures of the United States Court of Appeals for the

Third Circuit 9.1 (July 1990) ("It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels."). In *Enprotech Corp. v. Renda, 983 F.2d 17 (3d Cir. 1993),* we indicated that [HN10] when a settlement agreement is not filed with the court, it is not **[**24]** a "judicial record" for purposes of the right of access doctrine. *Id. at 20-21.* In Enprotech, we held that since the "Settlement Agreement had not been filed with, placed under seal, interpreted or enforced by the district court", it was not a judicial record. *Id. at 20.* The Enprotech court went on to hold: "Moreover, the Agreement will not become a part of the public record unless and until the district court may order the parties to comply with its terms." *Id. at 21.* The Enprotech Court so held even though the district court in that case specifically retained jurisdiction over the settlement agreement until its expiration so that it could enforce its terms. Id.

In the instant case, the Settlement Agreement which is subject to the Order of Confidentiality was never filed with, interpreted or enforced by the district court. The district court has not ordered any of the terms of the Settlement Agreement to be complied with. Accordingly, Enprotech controls the instant case and leads us to conclude that the Settlement Agreement is not a judicial record, and the right of access **[**25]** doctrine cannot be a basis for the Newspapers to obtain access to the Agreement. In contrast, in Rittenhouse we found that the settlement agreement was a judicial record because it had been filed with and enforced by the district court. *800 F.2d at 344-45.*

Another decision by this court indicates that the Settlement Agreement is not a judicial record accessible under the right of access doctrine. In *Littlejohn v. Bic Corp., 851 F.2d 673 (3d Cir. 1988),* we addressed the question of whether documents which were admitted into evidence and had become judicial records were accessible under the right of access doctrine after the underlying litigation had been settled and the documents had been returned to the party resisting disclosure. We stated:

> We . . . hold that, absent allegations of fraud or other extraordinary circumstances, trial exhibits that were restored to their owner after a case has been completely **[*782]** terminated and which were properly subject to destruction by the clerk of court are no longer judicial records within the "supervisory power" of the district court.

*Id. at 683.* Under **[**26]** Littlejohn, even where there is no dispute that documents were at one time judicial records, once such documents are no longer part of the court file they lose their status as judicial records. n10 Thus, in Littlejohn, as in Enprotech, we focused on the technical question of whether a document is physically on file with the court. If it is not, it is not a "judicial record." We pointed out in Leucadia that "numerous other courts have also recognized the principle that the filing of a document gives rise to a presumptive right of public access." *998 F.2d at 161-62* (emphasis added). See also *Rittenhouse, 800 F.2d at 345* ("Once a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records." (emphasis added)). In the matter presently before the court, the parties agree that the Settlement Agreement has never been filed with the court.

> n10 But see *Littlejohn, 851 F.2d at 688* (Scirica, J., dissenting). In his dissent, Judge Scirica stated:
>
>> Any member of the public, whether a student of the law, an interested observer, or a historian, will be required to assert his rights within two months or lose them forever. . . . I do not view a local rule permitting return or destruction of exhibits as controlling the determination of right of access. Rather, the district judge should be permitted to inquire whether the contested items are still available from any source. If the items exist, their character as judicial records renders them presumptively open to public examination, absent "improper purposes."
>
> Id. (citation omitted).

**[**27]**

The Newspapers nevertheless argue that since the district court has entered an Order of Confidentiality over the Settlement Agreement, this in effect has converted the unfiled Settlement Agreement into a judicial record. This argument fails. [HN11] Simply because a court has entered a confidentiality order over documents does not automatically convert those documents into "judicial records" accessible under the right of access doctrine. For example, when a court enters an order of

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

protection over documents exchanged during discovery, and these documents have not been filed with the court, such documents are not, by reason of the protective order alone, deemed judicial records to which the right of access attaches. See *Seattle Times Co. v. Rhinehart, 467 U.S. 20, 30-37, 104 S. Ct. 2199, 2206-10, 81 L. Ed. 2d 17 (1984); Leucadia, 998 F.2d at 163 & n.9; Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1119-20 (3d Cir. 1986),* cert. denied, *484 U.S. 976, 108 S. Ct. 487, 98 L. Ed. 2d 485 (1987).*

The district court **[\*\*28]** in this case stated that "it is further ordered that the terms of the settlement are confidential and the parties hereby are ordered and directed to abide by the order of confidentiality." App. at 54-55. Therefore, the district court granted an order of confidentiality over the terms of the Settlement Agreement. It did not order the terms of the Settlement Agreement to be abided by the parties--nor could it, since the Settlement Agreement itself was never filed with the court.

The Order of Confidentiality is independent of any of the terms included within the Settlement Agreement, just as protective orders over discovery materials are independent of the items actually exchanged subject to such protective orders. Indeed, we have no way of knowing whether the Settlement Agreement itself includes a provision for confidentiality because the Settlement Agreement was never filed with the court and is not a part of the court record. It is therefore not possible for us to find, as Enprotech requires in order to deem a settlement agreement a judicial record, that the district court ordered the parties to comply with the terms of the *Settlement Agreement. 983 F.2d at 21* **[\*\*29]** ("The [Settlement] Agreement will not become a part of the public record unless and until the district court may order the parties to comply with its terms.").

The Newspapers further argue that the Settlement Agreement is a judicial record because the district court actually reviewed the Settlement Agreement before granting the Order of Confidentiality. In its June 5, 1992 order, the district court stated: "The parties having informed the Court that the . . . matter is settled and the Court having reviewed the terms of settlement, this action **[\*783]** is hereby discontinued . . . ." App. at 54 (emphasis added). By virtue of the fact that the district court reviewed the Settlement Agreement before granting its order, the Newspapers argue this converts the Settlement Agreement into a judicial record. In support of this position, the Newspapers cite the decision by the Court of Appeals for the First Circuit in *FTC v. Standard Fin. Management Corp., 830 F.2d 404 (1st Cir. 1987).*

In Standard Financial, the court held that "relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudica-tory proceedings, **[\*\*30]** become documents to which the presumption of public access applies." *Id. at 409.* Even though the disputed documents were not part of the court file, *id. at 405-407, 413,* the Standard Financial court held that they were nevertheless accessible under the right of access doctrine because "they were duly submitted to the court", *id. at 410,* and "were relevant and material to the matters sub judice", id. The Newspapers argue that since the Settlement Agreement was duly submitted to the district court, and the district court based its June 5, 1992 Order partly in reliance on this submission, Standard Financial controls and the Settlement Agreement is accessible under the right of access doctrine.

The Court of Appeals for the First Circuit in Standard Financial has articulated a persuasive and perhaps desirable rule. Moreover, it may well be that during the life of a case, the issue of whether a document is a judicial record should turn on the use the court has made of it rather than on whether it has found its way into the clerk's file. However, when the "judicial record" issue **[\*\*31]** arose in this case, final judgment had been entered and no possibility of an appeal remained. As a result, we find this case to be indistinguishable from Littlejohn and we are bound by the Internal Operating Procedures of this court to follow that decision. Internal Operating Procedures of the United States Court of Appeals for the Third Circuit 9.1 (July 1990). In Littlejohn, this court held that [HN12] exhibits that have been admitted into evidence and relied upon by the court do not remain judicial records after the case is closed and they are returned to the parties. *851 F.2d at 683.* We are therefore clearly not at liberty here to bestow judicial record status on the Settlement Agreement, which the court briefly perused and returned to the parties in a now closed case. But see *Littlejohn, 851 F.2d at 688* (Scirica, J., dissenting) (A "district judge should be permitted to inquire whether the contested items are still available from any source."). The Settlement Agreement is not a "judicial record," and the district court correctly concluded that the Newspapers cannot obtain access to that document under the right of **[\*\*32]** access doctrine. n11

n11 The Newspapers make a technical argument as to why the Settlement Agreement is a judicial record accessible under the right of access doctrine. Citing *Bank of Am. Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986),* the Newspapers argue that since in settling the case the appellees did not meet the specific requirements of *Fed. R. Civ. P. 41(a),* governing voluntary dismissal, the Settlement Agreement must be considered a judicial record. Although in Rittenhouse we did state

in dicta that documents relating to a voluntary stipulation of dismissal under *Fed. R. Civ. P. 41(a)(1)* would likely not be accessible under the right of access doctrine, *800 F.2d at 344*, we did not at all suggest that any documents not relating to a Rule 41(a)(1) dismissal would automatically be accessible under the right of access doctrine. The Newspapers' argument overlooks the fact that the settlement agreement in Rittenhouse, unlike the one in the case presently before the court, was filed with the court. *800 F.2d at 344-45.* As the above discussion indicates, whether the relevant document is in the court file is the critical inquiry.

**[**33]**

4. Challenging the Order of Confidentiality

The Newspapers also made a motion in the district court to reconsider, vacate or modify the Confidentiality Order, as a matter independent of the right of access doctrine. The district court denied the Newspapers' motion. We review the grant or modification of a confidentiality order for abuse of discretion. See *Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 664 (3d Cir. 1991); Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir. 1989).* However, [HN3] we exercise plenary review over the district court's interpretation and application of the legal standard **[*784]** for granting or modifying a confidentiality order. Cf. *Savarese v. Agriss, 883 F.2d 1194 (3d Cir. 1989).*

Even if the Settlement Agreement is not a judicial record, the Newspapers seek to modify or vacate the Order of Confidentiality controlling the Settlement Agreement. Their reason for doing so is that if the Newspapers are successful in vacating the Order of Confidentiality, they will then be able to seek access to the Settlement Agreement under the Pennsylvania Right to Know Act, **[**34]** *Pa. Stat. Ann. tit. 65, §§ 66.1-.4.* (1959 & Supp. 1993), without interference by the federal court Order of Confidentiality.

It is important to note the practical difference between the Newspapers' failed attempt to obtain the Settlement Agreement under the right of access doctrine on the one hand, and on the other hand the Newspapers' attempt only to modify or vacate the Order of Confidentiality. If the Newspapers had been successful in demonstrating that the Settlement Agreement was a judicial record for purposes of the right of access doctrine, the Settlement Agreement would have been made available by the district court itself, as a judicial record. In contrast, if the Newspapers are successful in vacating the Order of Confidentiality, as a matter independent of the right of access doctrine, the district court will not then

automatically grant access to the Settlement Agreement. Rather, the Order of Confidentiality would merely be vacated, and the Newspapers would then be free to seek access to the Settlement Agreement through other legal channels, without interference by the Order of Confidentiality. In fact, the Newspapers have already commenced a suit in Pennsylvania state **[**35]** court, seeking the Settlement Agreement as a "public record" under the Pennsylvania Right to Know Act. The state court stayed that action pending the outcome of this federal action.

If the Order of Confidentiality is vacated, then it appears that the Settlement Agreement will be made available by order of the state court pursuant to the Pennsylvania Right to Know Act. n12 If the Order of Confidentiality is not vacated, then the state court would be unable to order the document accessible. This is because even though the Settlement Agreement would likely be available under the Pennsylvania Right to Know Act, the state court would be obligated to respect the already-existing federal court Order of Confidentiality. n13 From these observations, it is clear that the Newspapers have an interest in vacating the Order of Confidentiality even though we have rejected their attempt to obtain the Settlement Agreement under the right of access doctrine.

n12 In *Morning Call, Inc. v. Lower Saucon Township, 156 Pa. Commw. 397, 627 A.2d 297 (Pa. Commw. Ct. 1993),* the Commonwealth Court of Pennsylvania held that a settlement agreement entered into between a township and a private party was a "public record" subject to disclosure under the Pennsylvania Right to Know Act. Id. at 299-301. The court so held even though the parties to the settlement agreement had included a non-disclosure clause within the settlement agreement. Id. at 298.

**[**36]**

n13 The Pennsylvania Right to Know Act provides that information restricted by order of a court is not a "public record" for the purposes of the Act. *Pa. Stat. Ann. tit. 65, § 66.1(2)* (Supp. 1993).

Although neither the Full Faith and Credit Statute, *28 U.S.C. § 1738,* nor the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, mentions what obligations exist for state courts confronting federal court judgments, it is well recognized that state courts must give full faith and credit to federal court judgments. E.g., *Stoll v. Gottlieb, 305 U.S. 165, 170-71, 59 S. Ct. 134, 136-37, 83 L. Ed. 104*

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

(1938); *Crescent City Live-Stock Landing & Slaughter-House Co. v. Butchers' Union Slaughter-House & Live-Stock Landing Co., 120 U.S. 141, 146-47, 156-59, 7 S. Ct. 472, 474-75, 480-81, 30 L. Ed. 614 (1887).* The state court's obligation to respect a prior federal court order which conflicts with state law also follows from the principle that states cannot curtail the jurisdiction of the federal courts. Janice Toran, Secrecy Orders and Government Litigants: "A Northwest Passage Around the Freedom of Information Act"?, *27 Ga. L. Rev. 121, 170-71 (1992).*

**[**37]**

It is well-established that [HN14] a district court retains the power to modify or lift confidentiality orders that it has entered. See, e.g., *United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990),* cert. denied, *498 U.S. 1073, 111 S. Ct. 799 (1991);* In re "Agent Orange" *Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir.),* cert. denied , *484 U.S. 953, 108 S. Ct. 344 (1987); Palmieri v. New* **[*785]** *York, 779 F.2d 861, 864-65 (2d Cir. 1985); In re Franklin Nat'l Bank Sec. Litig., 92 F.R.D. 468, 471 (E.D.N.Y 1981),* aff'd sub nom. *FDIC, 677 F.2d 230 (2d Cir. 1982).* The issue of whether an order of confidentiality should be modified is separable from the question concerning whether a settlement agreement subject to that order is a judicial record for purposes of the right of access doctrine. Cf., e.g., *Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 471-76 (9th Cir. 1992); City of Hartford v. Chase, 942 F.2d 130, 134-37 (2d Cir. 1991)* **[**38]** (allowing intervening third parties to challenge confidentiality order over documents not part of court file); *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1110-23 (3d Cir. 1986),* cert. denied, *484 U.S. 976, 108 S. Ct. 487, 98 L. Ed. 2d 485 (1987).* Therefore, although we have already determined that the Settlement Agreement is not available under the right of access doctrine, we will consider whether the district court should have nevertheless modified or vacated the Order the Confidentiality which it ordered over the Settlement Agreement.

In favor of its position that the Order of Confidentiality should be vacated, the Newspapers argue that the district court lacked the power to enter an order of confidentiality over a document which is not in the court file nor incorporated into an order of the court. We reject this argument. [HN15] Courts have inherent power to grant orders of confidentiality over materials not in the court file. In *Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984),* the Supreme **[**39]** Court confirmed that courts have the power to grant confidentiality orders over material not on file with the court, *id. at 33 n.19, 104 S. Ct. at 2207 n.19,* holding that

"we have no question as to the court's jurisdiction to [enter protective orders] under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices,'" *id. at 35, 104 S. Ct. at 2209* (quoting *International Prods. Corp. v. Koons, 325 F.2d 403, 407-08 (2d Cir. 1963)).* See also, e.g., *FDIC, 677 F.2d at 232* ("It is beyond question that a court may issue orders prohibiting disclosure of documents or information.").

The Newspapers also challenge the validity of the Order of Confidentiality because the Order was not entered pursuant to a rule of civil procedure or any other court rule. The Order was entered over the Settlement Agreement, while the Federal Rules of Civil Procedure only address protective orders over materials exchanged during discovery, *Fed. R. Civ. P. 26(c).* However, **[**40]** in *Seattle Times,* the Supreme Court made clear that [HN16] courts have inherent equitable power to grant confidentiality orders, whether or not such orders are specifically authorized by procedural rules. *467 U.S. at 35, 104 S. Ct. at 2209.*

Nevertheless, simply because courts have the power to grant orders of confidentiality does not mean that such orders may be granted arbitrarily. Disturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders. n14 Because defendants request orders of confidentiality as a condition of **[*786]** settlement, courts are willing to grant these requests in an effort to facilitate settlement without sufficiently inquiring into the potential public interest in obtaining information concerning the settlement agreement. The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official.

n14 In *City of Hartford v. Chase, 942 F.2d 130 (2d Cir. 1991),* Judge Pratt, in a concurring opinion, made the following insightful observations:

A . . . troubling tendency accompanies the increasing frequency and scope of confidentiality agreements that are ordered by the court. These agreements are reached by private parties and often involve materials and information that is never even presented to the court. With the signature of a federal judge, however, they are converted into a powerful means

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

of maintaining and enforcing se-
crecy. Once signed, a confidential-
ity order, which has converted a
private agreement into an order of
the court, requires the court to use
its contempt power to enforce the
private agreement. . . . Because
they often involve information not
in the control of the court, and
may . . . implicate public concerns,
confidentiality orders, when not
subject to proper supervision, have
a great potential for abuse. For this
reason, judges should review such
agreements carefully and skepti-
cally before signing them.

*Id.* at 137-38 (Pratt, J., concurring). See also To-
ran, *supra* note 13, at 124-26; Brian T. FitzGer-
ald, Note, *Sealed v. Sealed: A Public Court Sys-
tem Going Secretly Private, 6 J.L. & Pol. 381,
382 (1990)* ("Unfortunately, the incidence of se-
crecy in the judicial process appears to be on the
rise, particularly in the complex litigation area.
Equally disturbing is the trend for parties to con-
dition any pre-trial settlement on the court's
granting a total sealing order covering all materi-
als in the court's possession." (footnotes omit-
ted)).

[**41]

In this case, the district court made no findings for
the record when it initially granted the Order of Confi-
dentiality, and apparently did not balance the competing
public and privacy interests before entering the Order. In
denying the Newspapers' Motion to Reconsider, Vacate
or Modify the Order, the district court did not explain
why the need for confidentiality outweighed the News-
papers' interest in obtaining access to the Settlement
Agreement pursuant to the Pennsylvania Right to Know
Act. n15 We must determine whether the district court
appropriately exercised its discretion in granting and
maintaining the Order of Confidentiality.

n15 See *supra* note 12.

In the context of discovery, it is well-established that
a party wishing to obtain an order of protection over dis-
covery material must demonstrate that "good cause" ex-
ists for the order of protection. *Fed. R. Civ. P. 26(c)*;
*Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir. 1989)*. In
this case, the Order of Confidentiality was [**42] not
entered over discovery materials, but rather over a set-

tlement agreement. Protective orders over discovery ma-
terials and orders of confidentiality over matters relating
to other stages of litigation have comparable features and
raise similar public policy concerns. All such orders are
intended to offer litigants a measure of privacy, while
balancing against this privacy interest the public's right
to obtain information concerning judicial proceedings.
Also, protective orders over discovery and confidential-
ity orders over matters concerning other stages of litiga-
tion are often used by courts as a means to aid the pro-
gression of litigation and facilitate settlements. Protective
orders and orders of confidentiality are functionally simi-
lar, and require similar balancing between public and
private concerns. We therefore exercise our inherent su-
pervisory power n16 to conclude that [HN17] whether an
order of confidentiality is granted at the discovery stage
or any other stage of litigation, including settlement,
good cause must be demonstrated to justify the order. Cf.
*City of Hartford v. Chase, 942 F.2d 130, 136 (2d Cir.
1991)* ("We do not . . . give parties [**43] carte blanche
either to seal documents related to a settlement agree-
ment or to withhold documents they deem so 'related.'
Rather, the trial court--not the parties themselves--should
scrutinize every such agreement involving the sealing of
court papers and [determine] what, if any, of them are to
be sealed, and it is only after very careful, particularized
review by the court that a Confidentiality Order may be
executed.").

n16 "While we adhere firmly to the view
that our supervisory power should not be invoked
lightly, we believe that circumstances warrant its
application here." *Sowell v. Butcher & Singer,
Inc., 926 F.2d 289, 295 (3d Cir. 1991)* (requiring
district courts entering a directed verdict to set
forth an explanation for the court's order). The
Federal Rules of Civil Procedure do not discuss
confidentiality orders outside the context of dis-
covery. See *Fed. R. Civ. P. 26(c)* (protective or-
ders). "In the absence of procedural rules specifi-
cally covering a situation, the court may, pursuant
to its inherent power . . . fashion a rule not incon-
sistent with the Federal Rules." *Franquez v.
United States, 604 F.2d 1239, 1244-45 (9th Cir.
1979)* (footnote omitted). If, as we have recog-
nized above, a district court has inherent power to
enter orders of confidentiality outside the context
of discovery despite the fact that such orders are
not made pursuant to any federal rule, it is appro-
priate for an appellate court to exercise its super-
visory power to ensure that such orders are not
granted arbitrarily.

[**44]

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

[HN18] "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984).* "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing. *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986),* cert. denied, *484 U.S. 976, 108 S. Ct. 487, 98 L. Ed. 2d 485 (1987).* The burden of justifying the confidentiality of each **[*787]** and every document sought to be covered by a protective order remains on the party seeking the order. *785 F.2d at 1122.* n17

n17 However, because of the benefits of umbrella protective orders in cases involving large-scale discovery, the court may construct a broad umbrella protective order upon a threshold showing by the movant of good cause. *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1122 (3d Cir. 1986),* cert. denied, *484 U.S. 976, 108 S. Ct. 487, 98 L. Ed. 2d 485 (1987).* After delivery of the documents, the opposing party would have the opportunity to indicate precisely which documents it believed not to be confidential, and the party seeking to maintain the seal would have the burden of proof with respect to those documents. Id.

**[**45]**

In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process. Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, *105 Harv. L. Rev. 427, 432-33 (1991).* The balancing conducted in the discovery context should be applied by courts [HN19] when considering whether to grant confidentiality orders at any stage of litigation, including settlement:

The court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.

Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in

a designated way," as authorized by the last clause of Rule 26(c)(7) . . . . Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the **[**46]** importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

*Id. at 433-35* (footnotes omitted). "The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information." 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2043, at 305 (1970).

One interest which should be recognized in the balancing process is an interest in privacy. See *Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34-36, 104 S. Ct. 2199, 2208-09, 81 L. Ed. 2d 17 (1984).* [HN20] It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection. In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose. However, privacy interests **[**47]** are diminished when the party seeking protection is a public person subject to legitimate public scrutiny. Cf. *United States v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985)* ("The public has a substantial interest in the integrity or lack of integrity of those who serve them in public office."). n18

n18 See also *Vassiliades v. Israely, 714 F. Supp. 604, 606 (D. Conn. 1989)* ("Every lawsuit has the potential for creating some adverse or otherwise unwanted publicity for the parties involved. It is simply one of the costs attendant to the filing of an action.").

[HN21] While preventing embarrassment may be a factor satisfying the "good cause" standard,

an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

difficult for a business enterprise, whose primary measure of well-being [**48] is presumably monetizable, to argue for a protective order on this ground.

*Cipollone, 785 F.2d at 1121.* [HN22] Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety, e.g., Miller, *105 Harv. L. Rev. at 478,* and when the sharing of information among litigants would promote fairness and efficiency, e.g., *id. at 490.*

[*788] [HN23] A factor which a court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public entity or official. Similarly, the district court should consider whether the case involves issues important to the public. If a settlement agreement involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality. See, e.g., *FTC. v. Standard Fin. Management Corp., 830 F.2d 404, 412 (1st Cir. 1987)* (threshold for sealing is elevated because the case involves a government agency [**49] and matters of public concern). n19 On the other hand, if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

n19 See also *Johnson v. Greater Southeast Community Hosp. Corp., 293 U.S. App. D.C. 1, 951 F.2d 1268, 1277-78 (D.C. Cir. 1991); Arkwright Mutual Ins. Co. v. Garrett & West, Inc., 782 F. Supp. 376, 381 (N.D. Ill. 1991)* ("The courts are public institutions and their proceedings should be public unless a compelling argument for secrecy can be made. The matters with which this case is concerned are of significant and legitimate public concern. . . . The public has a right to know of this resolution."); *City of Hartford v. Chase, 733 F. Supp. 533, 536 n.5 (D. Conn. 1990)* ("Where the parties are private, the right to rely on confidentiality in their dealings is more compelling than where a government agency is involved, as the public has a countering interest in, and thus the claim of access to the conduct of public business by a governmental agency."), rev'd, *942 F.2d 130 (2d Cir. 1991); United States v. Kentucky Utils. Co., 124 F.R.D. 146, 150 (E.D. Ky. 1989)* ("[The parties'] attempt to assume the posture of private parties who have settled a case and have a right of privacy in documents maintained outside the court record. . .

. Here, however, the parties are not private parties. One of the parties is the federal government."), rev'd, *927 F.2d 252 (6th Cir. 1991);* In re "Agent Orange" *Prod. Liab. Litig., 99 F.R.D. 645, 648-50 (E.D.N.Y. 1983).*

[**50]

In this balancing process, the issue arises of [HN24] how much weight should be assigned the interest in encouraging settlements. District courts should not rely on the general interest in encouraging settlement, and should require a particularized showing of the need for confidentiality in reaching a settlement. Cf. *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 346 (3d Cir. 1986)* (requiring particularized showing of need for secrecy to further settlement in a right of access doctrine case). Even when a particularized need for confidentiality is put forth by the parties, the interest in furthering settlement should only be one factor in the district court's determination. This is because, as one court put it,

settlements will be entered into in most cases whether or not confidentiality can be maintained. The parties might prefer to have confidentiality, but this does not mean that they would not settle otherwise. For one thing, if the case goes to trial, even more is likely to be disclosed than if the public has access to pretrial matters.

*United States v. Kentucky Utils. Co., 124 F.R.D. 146, 153 (E.D. Ky. 1989),* [**51] rev'd, *927 F.2d 252 (6th Cir. 1991).* n20

n20 Accord Anne-Therese Bechamps, Note, Sealed Out-of-Court Settlements: When Does the Public Have a Right to Know?, *66 Notre Dame L. Rev. 117, 130 (1990)* ("The incentives for settling, such as saving time and expense and avoiding the publicity of a trial, are still valid whether or not the parties are allowed to seal the case files."). Cf. *Wilson v. American Motors Corp., 759 F.2d 1568 (11th Cir. 1985).* In Wilson, the court acknowledged that courts should encourage settlements. *Id. at 1571 n.4.* Nevertheless, the court said that encouraging monetary settlement between the parties was not even entitled to consideration in deciding whether to seal the record. Id.

Moreover, if parties cannot demonstrate good cause for a court order of confidentiality over the terms of settlement, they have the option of agreeing privately to keep information [**52] concerning settlement confidential, and may enforce such an agreement in a separate contract action. n21 See, e.g., *Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc., 821 F. Supp. 370, 371-74 (E.D. Pa. 1993).* Although it is more arduous to commence a new action to enforce a settlement [*789] agreement than to rely on the court's contempt power to enforce a court order of confidentiality, it must be remembered that balanced against the interest of settlement is the interest of the public to have access to information concerning judicial proceedings. Thus, to the extent that fewer orders of confidentiality are granted, and to the extent that parties may have to more often enforce orders of confidentiality in private contract suits, we believe that this may in fact be preferable to the current trend of increasing judicial secrecy.

n21 In some circumstances, a private agreement to keep terms of a settlement confidential may be unenforceable because it violates public policy. E.g., *Anchorage Sch. Dist. v. Anchorage Daily News, 779 P.2d 1191, 1193 (Alaska 1989)* (confidentiality provision unenforceable because it violated public records disclosure statutes).

[**53]

The factors discussed above are unavoidably vague and are of course not exhaustive. Although the balancing test discussed above may be criticized as being ambiguous and likely to lead to unpredictable results, we believe that such a balancing test is necessary to provide the district courts the flexibility needed to justly and properly consider the factors of each case.

Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of [confidentiality] orders and the unnecessary denial of confidentiality for information that deserves it . . . .

Miller, *105 Harv. L. Rev. at 492.*

[HN25] To facilitate effective appellate review of a district court decision of whether to grant or modify an order of protection or confidentiality, a district court should articulate on the record findings supporting its judgment. n22 In appropriate cases, the district court may seal that portion of the record which contains its findings, for in some circumstances the court's articulation [**54] of its findings might destroy the very confidentiality being sought.

n22 We have, when appropriate, exercised our inherent supervisory power to require the district courts to provide an explanation for certain types of orders to assist our statutory function of appellate review. E.g., *Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 295 (3d Cir. 1991)* (orders granting directed verdicts); *Vadino v. A. Valey Eng'rs, 903 F.2d 253, 258-59 (3d Cir. 1990)* (orders granting summary judgment).

[HN26] In determining whether to modify an already-existing confidentiality order, the parties' reliance on the order is a relevant factor. E.g., Anne-Therese Bechamps, Note, Sealed Out of Court Settlements: When Does the Public Have a Right to Know?, *66 Notre Dame L. Rev. 117, 130 (1990);* see also, e.g., *City of Hartford v. Chase, 942 F.2d 130, 136 (2d Cir. 1991).* n23 However, there is a split in authority [**55] on the weight to be accorded the reliance interest.

n23 The fact that the parties' reliance becomes relevant later on illustrates how important it is for courts to initially conduct a proper balancing analysis to determine whether a confidentiality order should be granted.

The Court of Appeals for the Second Circuit has announced a stringent standard for modification, holding that a confidentiality order can only be modified if an extraordinary circumstance or compelling need warrants the requested modification. *City of Hartford, 942 F.2d at 135-36; Palmieri v. New York, 779 F.2d 861, 864-66 (2d Cir. 1985); Federal Deposit Ins. Corp. v. Ernst & Ernst, 677 F.2d 230, 232 (2d Cir. 1982).* n24

n24 The Court of Appeals for the Sixth Circuit has apparently adopted the Second Circuit's standard. See *United States v. Kentucky Utils. Co., 927 F.2d 252, 255 (6th Cir. 1991).* But see *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 163-64 (6th Cir. 1987).*

[**56]

Other courts of appeals have rejected this stringent standard, have held that a more lenient test for modifica-

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

tion applies, but have failed to articulate precisely what that standard is. E.g., *Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 475-76* (9th Cir.), cert. denied, ___ U.S. ___, 113 S. Ct. 197 (1992); *United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1428 (10th Cir. 1990),* cert. denied, *498 U.S. 1073, 111 S. Ct. 799 (1991); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 791 (1st Cir. 1988),* cert. denied, *488 U.S. 1030, 109 S. Ct. 838, 102 L. Ed. 2d 970 (1989);* see *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 163-64 (6th Cir. 1987).*

[*790] We agree with these courts that the standard of the Court of Appeals for the Second Circuit for modification is too stringent. [HN27] The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing [**57] test that is used in determining whether to grant such orders in the first instance, n25 with one difference: one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order. The parties' reliance on an order, however, should not be outcome determinative, and should only be one factor that a court considers when determining whether to modify an order of confidentiality. "Even though the parties to [a] settlement agreement have acted in reliance upon that order, they [do] so with knowledge that under some circumstances such orders may be modified by the court." *City of Hartford, 942 F.2d at 138* (Pratt, J., concurring).

n25 Cf. *Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 166 (3d Cir. 1993)* ("Although our decision [in a previous case] concerned the challenge by a party to the confidentiality designation made by its opponent, our reasoning applies with equal force when a non-party moves to intervene in a pending or settled lawsuit for the limited purpose of modifying a protective order and inspecting documents filed under seal.").

[**58]

The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery or to settle the case. For instance, reliance would be greater where a trade secret was involved, or where witnesses had testified pursuant to a protective order without invoking their Fifth Amendment privilege. . . .

. . . Reliance will be less with a blanket order, because it is by nature overinclusive.

*Beckman, 966 F.2d at 475-76* (citation omitted). n26

n26 Accord *Public Citizen, 858 F.2d at 790* ("Although . . . blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification.").

"Reliance on [confidentiality] orders [will] not insulate those orders from subsequent modification or vacating if the orders were improvidently granted ab initio. . . . No amount of official encouragement [**59] and reliance thereon could substantiate an unquestioning adherence to an order improvidently granted." *Palmieri, 779 F.2d at 865.* "Improvidence in the granting of a protective order is [a] justification for lifting or modifying the order." In re "Agent Orange" *Prod. Liab. Litig., 821 F.2d 139, 148 (2d Cir.),* cert. denied, *484 U.S. 953, 108 S. Ct. 344 (1987).* It would be improper and unfair to afford an order presumptive correctness if it is apparent that the court did not engage in the proper balancing to initially determine whether the order should have been granted. n27

n27 But see *Mokhiber v. Davis, 537 A.2d 1100, 1116 n.15 (D.C. 1988)* ("It is quite proper for the trial court to place upon the attacking party the burden of showing that no such 'good cause' in fact existed; that is, the presumption in favor of the correctness of trial court actions is operative.").

[HN28] The party [**60] seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order.

If access to protected [material] can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need for the protected materials is minimal. When that is not the

case, the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted. Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns.

Note, Nonparty Access to Discovery Materials in the Federal Courts, 94 Harv. L. Rev. 1085, 1092 (1981), cited with approval in [*791] Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 163 (6th Cir. 1987).

This case [**61] presents another factor which must be considered in the good cause balancing test. The Settlement Agreement to which the Newspapers are seeking access would, but for the Confidentiality Order, likely be accessible under the Pennsylvania Right to Know Act, Pa. Stat. Ann. tit. 65, §§ 66.1-.4 (1959 & Supp. 1993). n28 This case thus illustrates how confidentiality orders can frustrate, if not render useless, federal and state freedom of information laws. n29 When a court orders confidentiality in a suit involving a governmental entity, as the district court in this case did, there arises a troublesome conflict between the governmental entity's interest as a litigant and its public disclosure obligations. The difficult problems created by such a conflict have finally received scholarly attention. See generally Janice Toran, Secrecy Orders and Government Litigants: "A Northwest Passage Around the Freedom of Information Act"?, 27 Ga. L. Rev. 121 (1992). In this case, the Newspapers have had to endure considerable time and expense to obtain access to information which, but for the Order of Confidentiality, is likely available under the applicable freedom [**62] of information law. n30 Because the Newspapers have been forced to challenge the Order of Confidentiality, many months have passed since they made their initial request for the desired documents. This case thus illustrates the need for increased judicial awareness of the public interest in access to information under relevant freedom of information laws. Accordingly,

n28 See supra notes 12-13.

n29 The federal Freedom of Information Act ("FOIA") is codified at 5 U.S.C. § 552. All fifty states have some form of freedom of information legislation. Toran, supra note 13, at 129 n.38 (1992).

Federal courts are explicitly exempt from the Freedom of Information Act's coverage. 5 U.S.C. § 551(1)(B). In GTE Sylvania, Inc. v. Consumers Union of the United States, Inc., 445 U.S. 375, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980), the Supreme Court held that a federal agency which had been previously ordered by a court not to disclose information was not required to release such information under the FOIA. Id. at 386-87, 100 S. Ct. at 1201-02. It is precisely because courts have the power to trump freedom of information laws that they should exercise this power judiciously and sparingly.

[**63]

n30 See supra note 12.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - [HN29] -

where [a governmental entity] is a party to litigation, no protective, sealing or other confidentiality order shall be entered without consideration of its effect on disclosure of [government] records to the public under [state and federal freedom of information laws]. An order binding [governmental entities] shall be narrowly drawn to avoid interference with the rights of the public to obtain disclosure of [government] records and shall provide an explanation of the extent to which the order is intended to alter those rights.

Id. at 182.

To provide some measure of uniformity and predictability of outcome in this important area, we hold that [HN30] where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law. In the good cause balancing test, this strong presumption tilts the scales heavily against entering or maintaining an order of confidentiality. [**64] To avoid complicated inquiries as to whether certain information would in fact be available under a freedom of information law, courts may choose to grant

23 F.3d 772, *; 1994 U.S. App. LEXIS 9389, **;
28 Fed. R. Serv. 3d (Callaghan) 1129; 22 Media L. Rep. 1641

conditional orders. For example, a court could order that the order of confidentiality will become inoperative if the information it orders confidential is later determined to be available under a freedom of information law. Or a court could grant an order of confidentiality while specifying that the scope of the confidentiality order does not extend so as to prevent disclosure pursuant to any freedom of information law. Courts have discretion to fashion such orders according to the needs and circumstances of each case.

We acknowledge the important role that court-aided settlement plays in our overburdened court system, and we realize that a strong presumption against confidentiality [*792] orders when freedom of information laws are implicated may interfere with the ability of courts to successfully encourage the settlement of cases. However, we believe that a strong presumption against entering or maintaining confidentiality orders strikes the appropriate balance by recognizing the enduring beliefs underlying freedom of information laws: [**65] that an informed public is desirable, that access to information prevents governmental abuse and helps secure freedom, and that, ultimately, government must answer to its citizens. Neither the interests of parties in settling cases, nor the interests of the federal courts in cleaning their dockets, can be said to outweigh the important values manifested by freedom of information laws.

In the case before us, the district court made no findings for the record supporting its initial grant of the Order of Confidentiality. The district court apparently did not conduct any balancing test at all before signing the Order. The Order of Confidentiality was thus improvidently granted, and the reliance interest of the parties in the confidentiality of the Settlement Agreement must be considered weak in this case. Moreover, in denying the Newspapers' Motion to Reconsider, Vacate or Modify the Order of Confidentiality, the district court again did not articulate any findings demonstrating good cause for the Order. The district court noted in passing that some information concerning the cost of the settlement to the Borough has been made public. But it never explained why the Newspapers' interest [**66] in obtaining access to the Settlement Agreement itself under the Pennsylvania Right to Know Act was outweighed by the need for confidentiality. The entry of the Order of Confidentiality therefore did not reflect the proper exercise of discretion by the district court. n31

n31 Because the Order of Confidentiality was ordered over a settlement agreement that was never filed with the court, and the order of confi-

dentiality did not close a judicial proceeding to the public or seal judicial records, we do not apply the standards we have articulated in our line of cases dealing with access to judicial proceedings and documents. E.g., *Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071-75 (3d Cir. 1984); United States v. Criden, 675 F.2d 550, 554-62 (3d Cir. 1982).*

Also, the Newspapers have not challenged the Order of Confidentiality as a prior restraint or "gag order", and we therefore do not conduct any prior restraint analysis under the First Amendment. We note that in this case, a prior restraint claim by the Newspapers would lack merit because none of the parties subject to the Order of Confidentiality has indicated that it would willingly provide the Settlement Agreement to the Newspapers if the Order of Confidentiality were vacated. Cf. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 756-57, 96 S. Ct. 1817, 1822-23, 48 L. Ed. 2d 346 (1976).*

[**67]

Because we have provided guidance in a previously unchartered area, we will remand the case to the district court and provide it an opportunity to determine whether there are circumstances justifying an order of confidentiality over the Settlement Agreement. This case involves a governmental body, a public official, and a Settlement Agreement which is likely available under the Pennsylvania Right to Know Act. Given these facts, it would be unusual if on remand the district court were to find that circumstances exist which justify the Order of Confidentiality being maintained over the Settlement Agreement, but we do not foreclose that determination. n32

n32 However, any interest in confidentiality either must arise under federal law or must be an interest which the Pennsylvania state courts would determine is sufficient to prevent disclosure under the Right to Know Act.

We will reverse the district court's order denying intervention, dated May 13, 1993. We will remand the case to the district court with a direction [**68] that the Newspapers be permitted to intervene, and for further proceedings consistent with this opinion.

TAB 6

Westlaw.

307 F.3d 1206                                                                                    Page 1
307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978
**(Cite as: 307 F.3d 1206)**

▷
Phillips ex rel. Estates of Byrd v. General Motors
Corp.
C.A.9 (Mont.),2002.

United States Court of Appeals,Ninth Circuit.
Alvin K. PHILLIPS, as Personal Representative of
the ESTATES OF Timothy BYRD, Darrell L. Byrd,
and Angela Byrd, deceased, and as Guardian of
Samuel Byrd, minor child, Plaintiffs-Appellees,
v.
GENERAL MOTORS CORPORATION, Defendant-
Appellant, with
Los Angeles Times, Intervenor-Appellee.
**No. 01-35126.**

Argued and Submitted March 6, 2002.
Filed Oct. 15, 2002.

Newspaper intervened in settled products liability
case against truck manufacturer, seeking access to
information produced by manufacturer as to total
number and aggregate dollar amount of settlements in
prior cases involving pickup truck fuel-fed fires. The
United States District Court for the District of
Montana, Donald W. Molloy, J., 126 F.Supp.2d
1328, ruled in newspaper's favor. Manufacturer
appealed. The Court of Appeals, Rudi M. Brewster,
Senior United States District Judge for the Southern
District of California, sitting by designation, held
that: (1) manufacturer waived right to appeal
magistrate judge's order requiring it to produce
confidential settlement information during discovery;
(2) remand to permit district court to conduct or
discuss its good cause analysis was warranted; (3)
when a party attaches a sealed discovery document to
a nondispositive motion, the usual presumption of the
public's right of access is rebutted, so that the party
seeking disclosure must present sufficiently
compelling reasons why the sealed discovery
document should be released; and (4) consideration,
for first time on appeal, of newspaper's alleged First
Amendment right of access was not warranted.

Vacated and remanded.

Superseding 289 F.3d 1117.
West Headnotes
**[1] United States Magistrates 394 ⚷ 31**

394 United States Magistrates

394k31 k. Further Review;  Direct Appeal. Most
Cited Cases
Litigant waived right to appeal magistrate judge's
order requiring litigant to produce confidential
settlement information during discovery when it
failed to file objection to order within 10 days, as
required by rule. Fed.Rules Civ.Proc.Rule 72(a), 28
U.S.C.A.

**[2] Federal Courts 170B ⚷ 813**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk813 k. Allowance of Remedy and
Matters of Procedure in General. Most Cited Cases
Court of Appeals reviews a lower court's decision to
grant, lift, or modify a protective order for abuse of
discretion.

**[3] Federal Courts 170B ⚷ 776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited
Cases
Court of Appeals reviews de novo whether district
court used correct legal standard in determining
whether it should have granted a protective order.

**[4] ⚷ 1271.5**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1271.5 k. Protective Orders. Most
Cited Cases
(Formerly 170Ak1271)
Generally, the public can gain access to litigation
documents and information produced during
discovery unless the party opposing disclosure shows
good cause why a protective order is necessary.
Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[5] ⚷ 1271.5**

170A Federal Civil Procedure
    170AX Depositions and Discovery

307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978
**(Cite as: 307 F.3d 1206)**

170AX(A) In General
170Ak1271.5 k. Protective Orders. Most Cited Cases
(Formerly 170Ak1271)

For good cause to exist, the party seeking protection from public disclosure of documents and information produced during discovery bears the burden of showing that specific prejudice or harm will result if no protective order is granted. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[6]** 1271.5

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1271.5 k. Protective Orders. Most Cited Cases
(Formerly 170Ak1271)

If a court finds that particularized harm will result from public disclosure of information obtained via discovery, it balances the public and private interests to decide whether a protective order is necessary. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[7]** 1271.5

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1271.5 k. Protective Orders. Most Cited Cases
(Formerly 170Ak1271)

Manufacturer bore burden of proving that protective order was necessary in contesting intervening newspaper's request for access to settlement information produced as discovery in products liability case where magistrate judge never conducted "good cause" analysis, but instead placed settlement information, on an interim basis, within existing share protective order to which parties had previously stipulated. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[8] Federal Courts 170B** 947

170B Federal Courts
170BVIII Courts of Appeals
170BVIII(L) Determination and Disposition of Cause
170Bk943 Ordering New Trial or Other Proceeding
170Bk947 k. Further Evidence, Findings or Conclusions. Most Cited Cases

Remand for reconsideration of order granting intervening newspaper access to confidential settlement information produced by manufacturer during products liability case was warranted when it appeared that district court never engaged in required good cause analysis and possibility existed that court's decision was based upon failure to recognize its authority to grant protective orders for confidential settlement agreements; to the extent that order had such basis, it was erroneous, necessitating consideration of good cause issue, and to the extent no such error occurred, court needed to identify and discuss factors considered in good cause analysis so as to permit appellate review. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[9]** 1271.5

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1271.5 k. Protective Orders. Most Cited Cases
(Formerly 170Ak1271)

District courts have broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information. Fed.Rules Civ.Proc.Rule 26(c), (c)(7), 28 U.S.C.A.

**[10] Records 326** 32

326 Records
326II Public Access
326II(A) In General
326k32 k. Court Records. Most Cited Cases

Not only can the public generally gain access to unprotected information produced during discovery, but it also has a federal common law right of access to all information filed with the court.

**[11] Records 326** 32

326 Records
326II Public Access
326II(A) In General
326k32 k. Court Records. Most Cited Cases

Federal common law right of access to information filed with court creates a strong presumption in favor of access to judicial documents which can be overcome only by showing sufficiently important countervailing interests.

307 F.3d 1206                                                                                                                                    Page 3
307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978
**(Cite as: 307 F.3d 1206)**

**[12] Records 326 🔑32**

326 Records
   326II Public Access
     326II(A) In General
      326k32 k. Court Records. Most Cited Cases
In deciding whether sufficient countervailing interests exist to overcome strong presumption in favor of access to judicial documents, pursuant to federal common law right of access, the courts will look to the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.

**[13] Federal Courts 170B 🔑776**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)1 In General
       170Bk776 k. Trial De Novo. Most Cited Cases
Court of Appeals reviews de novo whether the presumption of access under federal common law right of access to judicial documents applies to particular document.

**[14] Records 326 🔑32**

326 Records
   326II Public Access
     326II(A) In General
      326k32 k. Court Records. Most Cited Cases
Strong presumption of access arising under federal common law right of access to information filed with the courts does not apply to materials filed with the court pursuant to a valid protective order.

**[15] Records 326 🔑32**

326 Records
   326II Public Access
     326II(A) In General
      326k32 k. Court Records. Most Cited Cases
When a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released.

**[16] Federal Courts 170B 🔑613**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(D) Presentation and Reservation in Lower Court of Grounds of Review
      170BVIII(D)1 Issues and Questions in Lower Court
       170Bk612 Nature or Subject-Matter of Issues or Questions
       170Bk613 k. Constitutional Questions. Most Cited Cases

**Federal Courts 170B 🔑915**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)7 Waiver of Error in Appellate Court
       170Bk915 k. In General. Most Cited Cases
Court of Appeals would not address issue of whether intervening newspaper had First Amendment right to settlement information produced by manufacturer in products liability case when district court did not adjudicate issue and parties barely raised it in their briefs. U.S.C.A. Const.Amend. 1.

William E. Jones & Lucy T. France, Garlington Lohn & Robinson, PLLP, Missoula, MO; Richard A. Cordray, Andrew B. Clubok & Eric R. Claeys, Kirkland & Ellis, Washington, DC, for the defendant-appellant.

James H. Goetz, Goetz, Gallik, Baldwin & Dolan, P.C., Bozeman, MO; James E. Butler, Jr. & Peter J. Daughtery, Butler, Wooten, Overby, Pearson, Fryhofer & Daughtery, Columbus, GA, for the plaintiffs-appellees.

Kelli L. Sager & Rochelle L. Wilcox, Davis Wright Tremaine LLP, Los Angeles, CA; Peter M. Meloy & Jennifer S. Hendricks, Meloy Law Firm, Helena, MO, for the intervenor-appellee.

Lee Levine & Seth D. Berlin, Levine Sullivan & Koch, L.L.P., Washington, DC; David A. Schulz, Clifford Chance Rogers & Wells LLP, New York, NY; Thomas W. Newton & James W. Ewert, California Newspaper Publishers Assoc., Sacramento, CA; Harold W. Fuson, Jr. Judith L. Fanshaw & Scott A. Wahrenbrock, The Copley Press, Inc., La Jolla, CA; Nancy Gillespie, Dow Jones & Co., Inc., New York, NY; Karole Morgan-Prager & Stephen J. Burns, McClatchy Newspapers, Inc., Sacramento, CA; George Freeman, The New York Times, New York, NY; Guy Kerr, Belo Corp.,

307 F.3d 1206                                                                                          Page 4
307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978
(Cite as: 307 F.3d 1206)

Dallas, TX; Alan Lewis, The Herst Corp., New York, NY; Edward P. Davis, Jr., Guylyn R. Cummins, James M. Chadwick, Gray Cary Ware & Freidenrich LLP, Palo Alto, CA; Mary Ann Werner, Eric Lieberman, The Washington Post, Washington, DC, for the Amici Curiae.

Appeal from the United States District Court for the District of Montana;  Donald W. Molloy, District Judge, Presiding.  D.C. Nos. CV-98-168-M-DWM to CV-98-171-M-DWM.

Before ALARC ON and SILVERMAN, Circuit Judges, and BREWSTER,[FN*] Senior District Judge.

> FN* The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

### OPINION

BREWSTER, Senior District Judge.
General Motors Corporation ("GM") appeals an order of the district court granting the intervenor, the Los Angeles Times, access to confidential settlement information produced by GM under a protective order during discovery in the underlying *1209 action.  In ordering the documents released to the public, the district court determined (1) the protective order to prevent disclosure of this information was not appropriate, and (2) the Los Angeles Times had a federal common law right of access to these materials.  GM appeals, arguing the district court applied incorrect legal standards in deciding whether disclosure was appropriate.  We have jurisdiction pursuant to 28 U.S.C. 1291.  *See Beckman Indus. Inc. v. International Ins. Co., 966 F.2d 470, 472 (9th Cir.1992)*.  We vacate and remand for further proceedings.

### I. Background

On November 20, 1998, the underlying plaintiffs in this case, Darrell and Angela Byrd and their two minor sons, Timothy and Samuel, filed a complaint for damages against GM allegedly caused by a defect in the gas tank of a GM C/K pickup truck.  Before discovery, both sides stipulated to a "share" protective order that allowed the parties to share all information covered under the order with other litigants in similar cases, but not the public.  The order covered "Executive Committee Documents, production, sales and profit forecasts, procedures for

evaluating defects or non-compliance with federal safety standards and meetings minutes of the truck and bus fuel system coordination groups."

One of GM's experts testified by deposition that information about the amount GM paid in previous settlements involving C/K pickup post-collision fuel-fed fires could be important to his analysis of punitive damages.  Accordingly, the plaintiffs filed a motion to compel GM to produce this settlement information either in the form of individual or aggregate settlement numbers.  GM had previously settled cases involving C/K pickup trucks pursuant to agreements which provided that both parties would keep the terms confidential and, thus, vigorously contested the motion.  On August 14, 2000, the magistrate judge partially granted the plaintiffs' motion and directed GM to produce the total number and aggregate dollar amount of all settlements involving C/K pickup truck fuel-fed fires.  At GM's request, the magistrate judge ordered this discovery pursuant to the share "Protective order in place subject to further review and determination by Judge Molloy as to whether the information produced should be subject to his Order."  Prior to this appeal, GM did not file any objection to this ruling.

Pursuant to the magistrate court's order, on or about August 24, 2000, GM produced under seal the total number and aggregate dollar amount of its previous settlements for C/K pickups fuel tank claims.  In addition, GM included a computed arithmetic average settlement award.  On August 30, 2000, plaintiffs filed a discovery-sanctions motion against GM and attached to their motion as Exhibit 8 under seal a copy of the settlement information produced by GM pursuant to the August 14, 2000 order.  The plaintiffs contended that GM had violated the magistrate judge's order by additionally including the calculation of the "average" settlement award, which had not been requested.  The case settled in October 2000 before the court had an opportunity to rule on the discovery-sanctions motion.  The court dismissed the action on November 14, 2000.

After the case had been dismissed, the Los Angeles Times moved to intervene, and requested the district court to unseal Exhibit 8. The Los Angeles Times provided three reasons why the lower court should release the confidential settlement information:  (1) this information did not deserve a protective order;  (2) the LA Times has a common law right of access to Exhibit 8;  and (3) the newspaper had a *1210 First Amendment right to these materials.  On January 5, 2001, the district court ordered the release of the

307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978
**(Cite as: 307 F.3d 1206)**

settlement information on the grounds that (1) it was not covered under the share protective order stipulated by the parties and (2) it independently did not deserve a protective order. Furthermore, the court found the common law right of access permitted the Los Angeles Times to receive the information contained in Exhibit 8. The lower court did not address the First Amendment issue. The district court stayed this order pending the resolution of this appeal.

## II. Discussion

General Motors raises three issues on appeal: (1) whether the magistrate judge committed legal error when it ordered GM to produce the settlement information even under a protective order; (2) whether the lower court erred by lifting the protective order; and (3) whether the lower court erred by deciding the Los Angeles Times had a common law right of access to Exhibit 8.

### A. August 14th Order of the Magistrate Judge

[1] GM argues the magistrate judge committed legal error by ordering GM to produce confidential settlement information during discovery. GM, however, has waived its right to appeal this ruling to this panel. *fed. R. Civ. Proc. 72(a)* requires an aggrieved party to object to any magistrate order within ten days. If the party does not file any objections within ten days, it cannot "[assign] as error a defect in the magistrate judge's order." *Fed.R.Civ.P. 72(a)*; *see also Simpson v. Lear, 77 F.3d 1170, 1174 (9th Cir.1995)*.

### B. Protective Order

[2][3] We review a lower court's decision to grant, lift, or modify a protective order for abuse of discretion. *See Anderson v. Calderon, 232 F.3d 1053, 1099 (9th Cir.2000); Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc., 62 F.3d 1217, 1219 (9th Cir.1995)*. We review *de novo*, however, whether the lower court used the correct legal standard in determining whether it should have granted a protective order. *See Kulas v. Flores, 255 F.3d 780, 783 (9th Cir.2001)* (legal issues are reviewed de novo).

[4] Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows "good cause" why a protective order is necessary. In *San Jose Mercury News, Inc. v. United States Dist. Ct., 187 F.3d 1096, 1103 (9th Cir.1999)*, the court said, "[i]t is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. *Rule 26(c)* authorizes a district court to override this presumption where 'good cause' is shown." *See also In re Agent Orange Product Liability Litig., 821 F.2d 139, 145 (2d Cir.1987)* ("[I]f good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public."). *Rule 26(c)* states, in relevant part:

Upon motion by a party or by a person from whom discovery is sought ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one of more of the following:

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ....

*fed. R. Civ. 26(c), 26(c)(7)*.

[5][6] For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will **\*1211** result if no protective order is granted. *See Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir.1992)* (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the *Rule 26(c)* test"); *see also San Jose Mercury News, Inc., 187 F.3d at 1102*(holding that to gain a protective order the party must make "particularized showing of good cause with respect to any individual document"). If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary. *See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir.1995)* (citing factors).

[7] In this case, the magistrate judge never conducted a "good cause" analysis, but decided to put the settlement information into the existing share protective order, previously stipulated by the parties, on an interim basis subject to "further review and determination" by the district court. Upon review, the district judge determined that a protective order was not appropriate.[FN1]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

307 F.3d 1206                                                                                          Page 6
307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978
**(Cite as: 307 F.3d 1206)**

FN1. Although not an issue on appeal, we note how the lower court properly put the burden of proof on GM to show why a protective order was necessary. In *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 472 (9th Cir.1992), we rejected the argument that intervenors need to show "extraordinary circumstances" before modifying a protective order. We explained how the burden of proof will remain with the party seeking protection when the protective order was a stipulated order and no party had made a "good cause" showing.

[8] It appears, however, that the district court never engaged in a "good cause" analysis, but held that, based on Rule 26(c)(7), *only* trade secrets or other confidential research, development, or commercial information could be protected from disclosure under Rule 26(c). In a letter to the parties, the court below stated it had "reviewed the file for materials that might be trade secrets, proprietary matters, research, development or other commercial information that should be protected under Rule 26(c)." Appellant's Excerpts of Record, 90. The court reiterated this position in its January 5th order denying the protective order. The court noted that the "narrow issue" before the court was whether "information a party seeks to keep quiet does not fall within the *four corners* of Rule 26(c)." *Phillips v. GMC,* 126 F.Supp.2d 1328, 1329 (D.Mont.2001) (emphasis added). Finally, the court implies only certain types of information can be subject to a protective order. The court, commenting upon the type of information covered under the share protective order stipulated to by the parties, claims "this is the kind of information Rule 26(c) recognizes as being legally protectable." *Id.* at 1330.

[9] The law, however, gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to,* trade secrets or other confidential research, development, or commercial information. *See* fed. R. Civ. P. 26(c)(7). Rule 26(c) authorizes the district court to issue "*any* order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden." The Supreme Court has interpreted this language as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of

protection is required." *Seattle Times Co. v. Rinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). The Court continued, by noting that the "trial court is in the best position to weigh the fairly competing needs and interests of the parties affected **\*1212** by discovery. The unique character of the discovery process requires that the *trial court have substantial latitude to fashion protective orders.*" *Id.* (emphasis added; *see also* 8 Wright, Miller & Marcus, federal Practice and Procedure, Civil § 2036, at 489 (2d ed. 1994) ("Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule.").

Although courts may be more likely to grant protective orders for the information listed in Rule 26(c)(7), courts have consistently granted protective orders that prevent disclosure of many types of information, such as letters protected under attorney-client privilege which revealed the weaknesses in a party's position and was inadvertently sent to the opposing side, *see* *KL Group v. Case, Kay, and Lynch,* 829 F.2d 909, 917-19 (9th Cir.1987); medical and psychiatric records confidential under state law, *see* *Pearson v. Miller,* 211 F.3d 57, 62-64 (3d Cir.2000); and federal and grand jury secrecy provisions, *see* *Krause v. Rhodes,* 671 F.2d 212, 216 (6th Cir.1982). Most significantly, courts have granted protective orders to protect confidential settlement agreements. *See* *Hasbrouck v. BankAmerica Housing Serv.,* 187 F.R.D. 453, 455 (N.D.N.Y.1999); *Kalinauskas v. Wong,* 151 F.R.D. 363, 365-67 (D.Nev.1993).

If the district court decision was based on a failure to recognize that lower courts have the authority to grant protective orders for confidential settlement agreements, it was erroneous, and the district court must determine whether good cause exists. If the lower court did not make this legal error, then it needs to identify and discuss the factors it considered in its "good cause" examination to allow appellate review of the exercise of its discretion. The decision to lift the protective order is remanded and the lower court is instructed to conduct a "good cause" analysis consistent with the principles laid out in this opinion. *See* *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir.1992); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995).

### C. Common Law Right of Access

After conducting a "good cause" analysis, if the

307 F.3d 1206                                                                                           Page 7
307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978
**(Cite as: 307 F.3d 1206)**

district court were to find a protective order is not appropriate for the confidential settlement information produced to the underlying plaintiffs, then this information could be distributed to the Los Angeles Times. *See San Jose Mercury News, Inc. v. United States Dist. Ct., 187 F.3d 1096, 1103 (9th Cir.1999).* Under this circumstance, the lower court would not need to analyze the common law right of access issue.

[10][11][12] If, however, the court finds "good cause" exists to protect this information, then it must determine whether the Los Angeles Times has a right to Exhibit 8 under the common law right of access, a separate and independent basis for obtaining this information. Not only can the public generally gain access to unprotected information produced during discovery, but it also has a federal common law right of access to all information filed with the court. This common law right of access to inspect various judicial documents is well settled in the law of the Supreme Court and this circuit. *See Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); San Jose Mercury News, Inc. v. U.S. Dist. Ct., 187 F.3d 1096, 1102 (9th Cir.1999); Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir.1995).* This common law right "creates a strong presumption in favor of access" to judicial documents which "can be overcome" only by showing "sufficiently important countervailing interests." *San Jose Mercury News, Inc.,* 187 F.3d at 1102; *see also Hagestad,* 49 F.3d at 1434. **\*1213** In deciding whether sufficient countervailing interests exist, the courts will look to the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Tragesser,* 49 F.3d at 1434.

[13] Relying on this body of law, the appellees argue that even if Exhibit 8 has been filed with the court pursuant to a protective order, GM must still show "sufficiently important countervailing interests" to overcome the strong presumption of access to this sealed information. We review de novo whether the presumption of access applies to Exhibit 8.

[14] The issue thus presented is whether the strong presumption of access applies to materials filed with the court under seal pursuant to a valid protective order. Although the Ninth Circuit has never addressed this issue, other courts have determined that the federal common law right of access does not apply to documents filed under seal. *See United States v. Corbitt, 879 F.2d 224, 228 (7th Cir.1989)* ("While this Court has recognized that the common law right of access creates a strong presumption in favor of public access to materials submitted as evidence in open court, this presumption should not apply to materials properly submitted to the court under seal."); *see also Lawmaster v. United States, 993 F.2d 773, 775 (10th Cir.1993); United States v. Certain Real Property Located In Romulus, Wayne County, Michigan, 977 F.Supp. 833, 836 (E.D.Mich.1997); Grundberg v. Upjohn Co., 140 F.R.D. 459, 465 (D.Utah 1991).* We agree with these courts. When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality. Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders. Although we understand the public policy reasons behind a presumption of access to judicial documents (judicial accountability, understanding the judicial process etc.), it makes little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a nondispositive sanctions motion filed with the court. *See, e.g., Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1983)* ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."). *Cf. Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir.1988)* ("Once the [sealed discovery] documents are made part of a *dispositive* motion [summary judgment motion ruled upon by the court] ... they lose their status of being raw fruits of discovery." (emphasis added and quotation omitted)).

[15] Therefore, when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted, so that the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released.

**D. First Amendment**

[16] The appellees ask this panel to decide whether it

307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978
**(Cite as: 307 F.3d 1206)**

has a First Amendment right to the information contained in Exhibit**\*1214** 8 if we were to reverse and/or remand to the lower court with respect to the protective order and the common law right of access.

The district court did not adjudicate this issue and the parties barely raised it in their briefs. We decline to address this issue under the state of the record below. *See Barsten v. Department of Interior,* 896 F.2d 422, 424 (9th Cir.1990) ("We decline to consider the issue here, believing that the wiser course is to allow the district court to rule on it in the first instance.").

### III. Conclusion

The district court failed to apply the correct legal standard when it determined a protective order was not appropriate for this discovery material. If the court, after conducting a good cause analysis, lifts the protective order on the confidential settlement information produced, then this information can be distributed to the public pursuant to its presumptive right of access. Case closed. If, however, the lower court on remand does not modify the protective order already in place, the presumption is rebutted, and the intervenor must then provide sufficiently compelling reasons why the sealed discovery information should be released. We vacate and remand to the district court for further proceedings not inconsistent with the legal standards set forth in this opinion.

VACATED AND REMANDED.

C.A.9 (Mont.),2002.
Phillips ex rel. Estates of Byrd v. General Motors Corp.
307 F.3d 1206, 31 Media L. Rep. 1060, 02 Cal. Daily Op. Serv. 10,397, 2002 Daily Journal D.A.R. 11,978

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 7

LEXSEE 187 F.3D 1103



Caution
As of: May 02, 2007

### SAN JOSE MERCURY NEWS, INC., Petitioner, v. U.S. DISTRICT COURT - NORTHERN DISTRICT (SAN JOSE), Respondent, LORA SALDIVAR; SHAN-NON CALBY; CITY OF MOUNTAIN VIEW, Real Parties in Interest.

### No. 99-70062

### UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

### 187 F.3d 1096; 1999 U.S. App. LEXIS 18767; 80 Fair Empl. Prac. Cas. (BNA) 1053; 44 Fed. R. Serv. 3d (Callaghan) 944; 27 Media L. Rep. 2268; 99 Cal. Daily Op. Service 6521; 99 Daily Journal DAR 8367

### July 16, 1999, Argued and Submitted, San Francisco, California
### August 13, 1999, Filed

**PRIOR HISTORY:** [**1] Petition for Writ of Mandamus to Review an Order Entered by the United States District Court for the Northern District of California. D.C. No. CV-96-20718-JW. James Ware, District Judge, Presiding.

**DISPOSITION:** Petition for writ of mandamus GRANTED. District court's order denying the Mercury News' motion to intervene VACATED and REMANDED for further proceedings.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner newspaper sought a writ of mandamus to review an order of the United States District Court for the Northern District of California, denying petitioner's motion to intervene in a sexual harassment suit filed by plaintiff female police officers against defendant city and to gain access to an investigatory report.

**OVERVIEW:** Petitioner newspaper sought access to a report detailing a sexual harassment suit filed by plaintiff female police officers against defendant city. The district court denied petitioner's motions for permissive intervention in the suit and for the public release of the report. Petitioner sought a writ of mandamus under *28 U.S.C.S. § 1651.* The court granted the writ of mandamus, vacated the denial of the intervention motion, and remanded for

reconsideration of the intervention motion. Mandamus was warranted because the district court erred in its conclusion that the public did not have right of access to court records in civil cases before a ruling is rendered; both federal common law and the Federal Rules of Civil Procedure supported such a right. Although petitioner could have directly appealed the denial of the intervention motion, petitioner, regarding its interest in newsworthy information, was likely to be prejudiced by the delay caused by a direct appeal. The appeal was timely.

**OUTCOME:** The court granted the writ of mandamus, vacated the denial of petitioner's intervention motion, and remanded for reconsideration because the public has a right of access to court records in pre-judgment civil cases; the district court, having ruled otherwise, erroneously denied the motion.

**LexisNexis(R) Headnotes**

*Civil Procedure > Remedies > Writs > Common Law Writs > Mandamus*
*Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review*
[HN1] Mandamus is a drastic remedy, to be invoked only in extraordinary situations. The court has recognized five factors, commonly known as the "Bauman factors," that are the analytic starting point in determin-

187 F.3d 1096, *; 1999 U.S. App. LEXIS 18767, **;
80 Fair Empl. Prac. Cas. (BNA) 1053; 44 Fed. R. Serv. 3d (Callaghan) 944

ing whether mandamus should issue: whether the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires; whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; whether the district court's order is clearly erroneous as a matter of law; whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and whether the district court's order raises new and important problems, or issues of law of first impression. A petitioner need not satisfy all five factors. The considerations are cumulative and proper disposition will often require a balancing of conflicting indicators. Mandamus review is at bottom discretionary; even where the Bauman factors are satisfied, the court may deny the petition.

*Civil Procedure > Parties > Intervention > Motions to Intervene*
*Civil Procedure > Parties > Intervention > Permissive Interventions*
[HN2] A denial of a motion for permissive intervention in a civil case is directly appealable.

*Civil Procedure > Remedies > Writs > General Overview*
[HN3] As a general matter, mandamus is not to be used as a substitute for an appeal.

*Civil Procedure > Remedies > Writs > General Overview*
*Governments > Courts > Court Records*
[HN4] In cases involving a request by the press for access to judicial records, the court has recognized that the delay entailed by a direct appeal can constitute an irreparable injury.

*Civil Procedure > Remedies > Writs > General Overview*
*Governments > Courts > Court Records*
[HN5] Where a petition for mandamus raises an important issue of first impression, a petitioner need show only ordinary, as opposed to clear, error.

*Civil Procedure > Parties > Intervention > Motions to Intervene*
*Civil Procedure > Parties > Intervention > Permissive Interventions*
*Governments > Courts > Court Records*

[HN6] Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under *Fed. R. Civ. P. 24(b)(2)*. A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court.

*Civil Procedure > Parties > Intervention > Motions to Intervene*
*Civil Procedure > Parties > Intervention > Permissive Interventions*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN7] Where the district court's decision regarding a motion for intervention under *Fed. R. Civ. P. 24(b)(2)* turns on a legal question, its underlying legal determination is subject to de novo review.

*Civil Procedure > Parties > Intervention > Permissive Interventions*
[HN8] There are three necessary prerequisites for allowing permissive intervention pursuant to *Fed. R. Civ. P. 24(b)(2)*. A court may grant permissive intervention where the applicant for intervention shows independent grounds for jurisdiction; the motion is timely; and the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.

*Civil Procedure > Parties > Intervention > Motions to Intervene*
*Civil Procedure > Parties > Intervention > Permissive Interventions*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN9] Generally, a district court's determination of timeliness in connection with a motion to intervene pursuant to *Fed. R. Civ. P. 24(b)(2)* is reviewed for an abuse of discretion. However, where the district court does not expressly base its decision on timeliness grounds and does not make any factual findings regarding timeliness, the reviewing court reviews de novo.

*Civil Procedure > Parties > Intervention > Motions to Intervene*
*Civil Procedure > Parties > Intervention > Timeliness*
[HN10] In determining whether a motion for intervention is timely, a court must consider three factors: the stage of the proceeding at which an applicant seeks to intervene; the prejudice to other parties; and the reason for and length of the delay. In measuring any delay in seeking intervention, the inquiry looks to when the intervenor

187 F.3d 1096, *; 1999 U.S. App. LEXIS 18767, **;
80 Fair Empl. Prac. Cas. (BNA) 1053; 44 Fed. R. Serv. 3d (Callaghan) 944

first became aware that its interests would no longer be adequately protected by the parties.

*Civil Procedure > Parties > Intervention > General Overview*
*Governments > Courts > Court Records*
[HN11] Delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records.

*Civil Procedure > Parties > Intervention > Right to Intervene*
*Governments > Courts > Court Records*
[HN12] Assuming an intervenor does assert a legitimate, presumptive right to open the court record of a particular dispute, the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
*Governments > Courts > Common Law*
*Governments > Courts > Court Records*
[HN13] A federal common law right to inspect and copy public records and documents exists. Federal appellate courts have uniformly concluded that this common law right extends to both criminal and civil cases. The court has expressly recognized that the federal common law right of access extends to pretrial documents filed in civil cases, and that the right of access applies prior to judgment in the criminal context.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
*Governments > Courts > Common Law*
*Governments > Courts > Court Records*
[HN14] The federal common law right of public access extends to materials submitted in connection with motions for summary judgment in civil cases prior to judgment.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
*Governments > Courts > Common Law*
*Governments > Courts > Court Records*
[HN15] The federal common law right of access is not absolute, and is not entitled to the same level of protection accorded a constitutional right. Thus, although the common law right creates a strong presumption in favor

of access, the presumption can be overcome by sufficiently important countervailing interests. Where the district court conscientiously undertakes this balancing test, basing its decision on compelling reasons and specific factual findings, its determination will be reviewed only for abuse of discretion.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
*Civil Procedure > Pretrial Matters > General Overview*
[HN16] It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. *Fed. R. Civ. P. 26(c)* authorizes a district court to override this presumption where "good cause" is shown.

*Civil Procedure > Parties > Intervention > Permissive Interventions*
*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
[HN17] Where the district court enters a blanket stipulated protective order pursuant to *Fed. R. Civ. P. 26(c)*, such blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document. A nonparty may seek permissive intervention in order to test whether the "good cause" requirements of Rule 26(c) have been met with respect to a particular item of discovery.

**COUNSEL:** Edward P. Davis, Jr., Gray, Cary, Ware & Friedenrich, Palo Alto, California, for the petitioner.

Gregory E. Stubbs and H. Christopher Hittig, Stubbs, Hittig & Leone, San Francisco, California, for the City of Mountain View, real party in interest.

Vanessa A. Zecher, San Jose, California, for Lora Saldivar and Shannon Calby, real parties in interest.

**JUDGES:** Before: Mary M. Schroeder, Betty B. Fletcher, and Cynthia Holcomb Hall, Circuit Judges. Opinion by Judge B. Fletcher.

**OPINION BY:** BETTY B. FLETCHER

**OPINION:**

     **[*1098]** OPINION

B. FLETCHER, Circuit Judge:

187 F.3d 1096, *; 1999 U.S. App. LEXIS 18767, **;
80 Fair Empl. Prac. Cas. (BNA) 1053; 44 Fed. R. Serv. 3d (Callaghan) 944

The San Jose Mercury News, Inc. ("Mercury News") petitions for mandamus in an effort to gain access to an investigatory report commissioned by the City of Mountain View ("Mountain View") in connection with a sexual harassment suit brought by two female police officers ("Plaintiffs") **[\*\*2]** against Mountain View and its police department ("Defendants"). In order to obtain the report, the Mercury News sought permissive intervention in the action before the district court. The district court denied the motion, prompting the newspaper's petition for mandamus relief. We grant the writ, vacate the district court's order denying the Mercury News' motion to intervene, and remand for further proceedings.

I.

The relevant facts are undisputed. In early 1996, the Plaintiffs filed discrimination charges with the EEOC against the Defendants. After receiving "right to sue" letters from the EEOC, the Plaintiffs filed the underlying suits alleging, among other things, that the Mountain View Police Department maintained a work environment hostile to its female employees in violation of state and federal law.

In response to the discrimination charges, the Defendants retained an independent expert, Geraldine Randall, to investigate the allegations and produce a report detailing her findings ("Report"). During discovery, the Plaintiffs sought production of the Report. This set off an extended series of discovery disputes between the parties, spanning almost six months. In the end, the **[\*\*3]** Defendants lost the fight - the district court ordered the Report produced. The parties, however, stipulated to a protective order that kept the Report from becoming public. n1 The district court entered the protective order on February 18, 1998.

> n1 Apparently the Plaintiffs preferred this compromise to the delays, uncertainty, and costs attendant on an appeal or motion for reconsideration.

Mercury News coverage of the discrimination suit apparently began in January 1998, with a story detailing the Plaintiffs' allegations and the Defendants' efforts to withhold the Report. On May 14, 1998, the Mercury News filed a motion seeking permissive intervention and an order modifying the protective order so as to unseal the Report. The district court denied the motion on July 27, 1998, holding that neither the First Amendment nor federal common law provides a right of public access to court records in civil cases prior to final judgment. On January 22, 1999, the Mercury News filed the instant petition for mandamus relief, **[\*\*4]** invoking our jurisdiction pursuant to the All Writs Act, *28 U.S.C. § 1651.*

**[\*1099]**  II.

[HN1] Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Kerr v. United States District Court, 426 U.S. 394, 402, 48 L. Ed. 2d 725, 96 S. Ct. 2119 (1976); Calderon v. United States District Court, 134 F.3d 981, 983* (9th Cir.) (quoting *Kerr*), cert. denied sub nom. *Calderon v. Taylor, 525 U.S. 920, 142 L. Ed. 2d 226, 119 S. Ct. 274 (1998)*. This court has recognized five factors, commonly known as the "*Bauman* factors," that are the analytic starting point in determining whether mandamus should issue: (1) whether the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems, or issues of law **[\*\*5]** of first impression. *See Phoenix Newspapers v. United States District Court, 156 F.3d 940, 951-52 (9th Cir. 1998); Bauman v. United States, 557 F.2d 650, 654-55 (9th Cir. 1977)*. A petitioner need not satisfy all five factors. "The considerations are cumulative and proper disposition will often require a balancing of conflicting indicators." *Bauman, 557 F.2d at 655*. Mandamus review is at bottom discretionary - even where the *Bauman* factors are satisfied, the court may deny the petition. *See Kerr, 426 U.S. at 403; Phoenix Newspapers, 156 F.3d at 952*.

The Mercury News contends that mandamus relief is appropriate because the district court's denial of the motion to intervene was based on an erroneous legal principle - that the public has no right of access to court records in civil cases before judgment. We agree, concluding that a right of access to such records can be derived from at least two independent sources: the federal common law and the Federal Rules of Civil Procedure. This legal conclusion notwithstanding, we must evaluate whether, in light of the *Bauman* factors, mandamus relief is **[\*\*6]** warranted.

A.

With respect to the first *Bauman* factor - the availability of alternate avenues of relief - we note that a direct appeal was available to the Mercury News here. [HN2] The precedents of this court make it clear that a denial of a motion for permissive intervention in a civil case is directly appealable. *See League of United Latin Amer. Citizens v. Wilson, 131 F.3d 1297, 1307-08 (9th Cir. 1997); see generally* 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1923 (2d ed. 1986) (recognizing this as the general rule).

[HN3] As a general matter, "mandamus is not to be used as a substitute for an appeal." *Calderon v. United States District Court*, 137 F.3d 1420, 1421 (9th Cir. 1998); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 8 n.6, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983).

Here, however, the second *Bauman* factor offsets the first to some degree. Because of the perishable nature of news, a direct appeal might not be an entirely adequate remedy here. [HN4] In cases involving a request by the press for access to judicial records, this court has recognized that the delay entailed by a direct appeal **[**7]** can constitute an irreparable injury. *See Valley Broadcasting Co. v. United States District Court*, 798 F.2d 1289, 1292 (9th Cir. 1986) ("[Petitioner] cannot attain the requested relief because the tapes it seeks to copy will lose much of their newsworthiness during the pendency of the trial."). At the same time, we are troubled by the fact that the Mercury News waited almost six months to bring this petition for mandamus. n2 Nevertheless, the Mercury News' **[*1100]** willingness to seek the writ, even if belatedly, suggests that the case was once again "newsworthy" in January 1999. To the extent this is true, the decay of newsworthiness would constitute an injury better addressed by a writ of mandamus than by a direct appeal.

> n2 This extended delay also precludes this court from construing the petition as a direct appeal. *See Calderon*, 137 F.3d at 1422 (where petition is filed within the time permitted for appeal, the court may construe it as a direct appeal, but this course is not available where the petition is filed outside the appeal period).

**[**8]**

Accordingly, we find that the first *Bauman* factors tips against mandamus relief, while the second tips in favor.

B.

As a general matter, the third *Bauman* factor demands that a petitioner seeking mandamus relief show that "the district court's order is clearly erroneous as a matter of law." *See Calderon v. United States District Court*, 134 F.3d at 983. [HN5] Where a petition for mandamus raises an important issue of first impression, however, a petitioner need show only "ordinary (as opposed to clear) error." *Id. at 984.* The instant case raises an important issue of first impression - whether the public has a pre-judgment right of access to judicial records in civil cases - and we conclude that the district court erred in resolving it.

[HN6] Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2). *See, e.g., EEOC v. National Children's Ctr.*, 331 U.S. App. D.C. 101, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases); *Hagestad v. Tragesser*, 49 F.3d 1430, 1432 (9th Cir. 1995) (permissive intervention granted to nonparty pressing federal common **[**9]** law right of access); *Beckman Indus. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (approving permissive intervention as method for challenging protective order under Rule 26(c)); *Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 657 (3d Cir. 1991) (permissive intervention granted to nonparty newspaper pressing both First Amendment and common law right of access). A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court. *See League of United Latin Amer. Citizens*, 131 F.3d at 1307; *Beckman*, 966 F.2d at 472. [HN7] Where, as here, the district court's decision turns on a legal question, however, its underlying legal determination is subject to *de novo* review. *See Beckman*, 966 F.2d at 472; *accord Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994).

[HN8] In this circuit, there are three necessary prerequisites for allowing permissive intervention pursuant to Rule 24(b)(2): "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; **[**10]** (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *League of United Latin Amer. Citizens*, 131 F.3d at 1308. Here, the Defendants do not challenge the first or third of these prerequisites. *See Beckman*, 966 F.2d at 473-74 (holding that independent jurisdictional basis and strong nexus of fact or law are not required where intervenor merely seeks to challenge a protective order). The Defendants do, however, argue that the Mercury News' motion was untimely, and that the district court thus did not abuse its discretion in denying it.

1.

[HN9] Generally, a district court's determination of timeliness in connection with a motion to intervene pursuant to Rule 24(b)(2) is reviewed for an abuse of discretion. *See League of United Latin Amer. Citizens*, 131 F.3d at 1302. Here, however, the district court did not expressly base its decision on timeliness grounds and did not make any factual findings regarding timeliness. As a result, we review *de novo*. *See id.*

[HN10] In determining whether a motion for intervention is timely, a court must **[*1101]** consider three **[**11]** factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other

187 F.3d 1096, *; 1999 U.S. App. LEXIS 18767, **;
80 Fair Empl. Prac. Cas. (BNA) 1053; 44 Fed. R. Serv. 3d (Callaghan) 944

parties; and (3) the reason for and length of the delay." *Id.* In measuring any delay in seeking intervention, the inquiry looks to when the intervenor first became aware that its interests would no longer be adequately protected by the parties. *See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 785 (1st Cir. 1988).*

Here, until the filing of the stipulated protective order on February 18, 1998, the interests of the Mercury News were being effectively represented by the Plaintiffs, who had persistently sought production of the Report. After the protective order was entered, the Mercury News waited 12 weeks before seeking to intervene. The Defendants do not argue that the length of this delay itself renders the intervention untimely. Indeed, [HN11] delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records. *See, e.g., Beckman, 966 F.2d at 471* (affirming intervention 2 years after settlement); *Public Citizen, 858 F.2d at 785* (collecting cases). Instead, the **[**12]** Defendants contend that the delay was prejudicial because they would not have agreed to the stipulated protective order had they known that the Report would become public. The Defendants argue that they passed up their opportunity to seek reconsideration of the district court's order to produce the Report in exchange for the confidentiality provisions of the stipulated protective order. In their view, permitting the Mercury News to intervene now would upset their bargained-for expectations.

The Defendants' argument is unavailing. First, on this view, any intervention after the entry of the stipulated protective order would be untimely, as it would upset the bargained-for expectations of the parties. It was, however, only upon entry of the stipulated protective order that the injury to the *public's* right of access became clear. Second, to the extent the Defendants relied on the stipulated protective order in making the decision to forgo a motion for reconsideration, such reliance was unreasonable. The right of access to court documents belongs to the public, and the Plaintiffs were in no position to bargain that right away. Third, if a motion to intervene is denied as untimely, **[**13]** it is likely that subsequent motions to intervene will also be held untimely, stymying the public's right of access altogether. Consequently, courts have recognized that,

> [HN12]
> assuming an intervenor does assert a legitimate, presumptive right to open the court record of a particular dispute, the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order.

*Public Citizen, 858 F.2d at 787* (quoting *Mokhiber v. Davis, 537 A.2d 1100, 1106 (D.C. 1988)).*

We conclude that the motion to intervene was timely.

2.

This brings us to the heart of the petition: does the public have a pre-judgment right of access to judicial records in civil cases? The Mercury News answers this question in the affirmative, relying on three independent bases: the First Amendment, the federal common law, and the Federal Rules of Civil Procedure. n3 **[\*1102]** For our purposes here, it is enough that we agree with the Mercury News as to the latter two bases. *See Hagestad, 49 F.3d at 1434 n.6.* We leave for another day the question of whether **[**14]** the First Amendment also bestows on the public a prejudgment right of access to civil court records.

> n3 Citing *United States v. Mindel, 80 F.3d 394, 398 (9th Cir. 1996),* the Defendants contend that the Mercury News, as a nonparty intervenor, only has standing to press its First Amendment theory. In *Mindel,* the court was called on to decide whether a crime victim had standing to challenge a district court's order rescinding a defendant's obligation to make criminal restitution payments to the victim. *Id. at 395.* After finding that the victim did not have standing to bring an appeal, the opinion went on to hold that the victim was also barred from obtaining mandamus relief. *Id. at 398.* In so holding, the court noted that it had granted mandamus standing to news organizations that had been denied access to criminal proceedings, notwithstanding their inability to bring a direct appeal, but declined to extend this rule beyond the First Amendment context. *Id.*
>
> The Defendants' reliance on *Mindel* is misplaced for at least two reasons. First, we have permitted news organizations to seek mandamus relief in order to vindicate the federal common law right of access to court proceedings. *See Valley Broadcasting, 798 F.2d at 1297.* Second, as discussed above, the Mercury News has standing to bring a direct appeal, thus taking this case completely outside the rationale of *Mindel. See League of United Latin Amer. Citizens, 131 F.3d 1297 at 1307-08.*

**[**15]**

187 F.3d 1096, *; 1999 U.S. App. LEXIS 18767, **;
80 Fair Empl. Prac. Cas. (BNA) 1053; 44 Fed. R. Serv. 3d (Callaghan) 944

In *Nixon v. Warner Communications, 435 U.S. 589, 55 L. Ed. 2d 570, 98 S. Ct. 1306 (1978),* [HN13] the Supreme Court recognized a federal common law right "to inspect and copy public records and documents." *Id. at 597.* Federal appellate courts have uniformly concluded that this common law right extends to both criminal and civil cases. *See, e.g., Leucadia, Inc. v. Applied Extrusion Tech., Inc., 998 F.2d 157, 161 (3d Cir. 1993); Smith v. United States District Court, 956 F.2d 647, 650 (7th Cir. 1992); EEOC v. Erection Co., 900 F.2d 168, 169 (9th Cir. 1990); FTC v. Standard Fin. Mgt., 830 F.2d 404, 408 n.4 (1st Cir. 1987); In re Continental Ill. Sec. Litig., 732 F.2d 1302, 1308 (7th Cir. 1984); Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983).* We have expressly recognized that the federal common law right of access extends to pretrial documents filed in civil cases, *see Hagestad, 49 F.3d at 1434,* and that the right of access applies prior to judgment in the criminal context, *see Valley Broadcasting, 798 F.2d at 1291 n.2.* [**16] Other circuits have expressly recognized that the common law right reaches documents filed in connection with motions for summary judgment. *See Westinghouse, 949 F.2d at 660-61; Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982); see also Leucadia, 998 F.2d at 164* (holding that common law right of access applies to all pretrial motions of a nondiscovery nature and the material filed in connection therewith). While we have never squarely held that [HN14] the federal common law right of public access extends to materials submitted in connection with motions for summary judgment in civil cases prior to judgment, we conclude that the unbroken string of authorities noted above leaves little doubt as to the answer. What doubt remains, we dispel for the Ninth Circuit today. n4

> n4 In resisting the unanimous authorities, the Defendants offer only *In re Reporters Committee for Freedom of the Press, 249 U.S. App. D.C. 119, 773 F.2d 1325 (D.C. Cir. 1985),* in support of their position that the common law right does not apply to civil cases prior to judgment. That reliance is misplaced, as that opinion limits its attention to the First Amendment right of access and expresses no opinion regarding the reach of the federal common law right. *See 773 F.2d at 1340.*

**[**17]**

That such a federal common law right exists, however, does not mandate disclosure in all cases. [HN15] The federal common law right of access is not absolute, and is not entitled to the same level of protection accorded a constitutional right. *See Valley Broadcasting, 798 F.2d at 1293.* Thus, although the common law right creates a strong presumption in favor of access, the presumption can be overcome by sufficiently important countervailing interests. *See Hagestad, 49 F.3d at 1434* (noting factors to weigh). Where the district court conscientiously undertakes this balancing test, basing its decision on compelling reasons and specific factual findings, its determination will be reviewed only for abuse of discretion. *Id.* Here, however, the district court never undertook this analysis, having barred the doors to the Mercury News by denying it leave to intervene. Insofar as the decision was based on a failure to recognize the existence of a pre-judgment federal common **[*1103]** law right of access to civil court documents, it was clearly erroneous.

The Mercury News also contends that it is entitled to intervene in order to press the public's right of access to discovery [**18] materials pursuant to *Federal Rule of Civil Procedure 26(c).* [HN16] It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. *See Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943, 1999 WL 342772* at *1 (7th Cir. 1999); *Public Citizen, 858 F.2d at 789; In re Agent Orange Product Liability Litig., 821 F.2d 139, 145-46 (2d Cir. 1987).* Rule 26(c) authorizes a district court to override this presumption where "good cause" is shown.

[HN17] In the instant case, the district court entered a blanket stipulated protective order pursuant to Rule 26(c). Such blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document. *See Beckman, 966 F.2d at 476; Public Citizen, 858 F.2d at 790.* Here, the Mercury News sought to intervene in order to modify the stipulated blanket protective order so as to unseal the Report. This circuit has held that a nonparty may seek permissive intervention [**19] in order to test whether the "good cause" requirements of Rule 26(c) have been met with respect to a particular item of discovery. *See Beckman, 966 F.2d at 473, 476; accord Pansy, 23 F.3d at 783-92; Public Citizen, 858 F.2d at 787-90.* Because the district court here denied the Mercury News' motion to intervene, it never reached the question of good cause under Rule 26(c). In light of *Beckman* and *Public Citizen,* this ruling was clearly erroneous.

For the reasons discussed above, we conclude that the third *Bauman* factor tips in favor of granting mandamus relief.

C.

It has been noted that the fourth and fifth *Bauman* factors are often mutually exclusive. *See Calderon v. United States District Court, 134 F.3d at 983 n.4.* The

187 F.3d 1096, *; 1999 U.S. App. LEXIS 18767, **;
80 Fair Empl. Prac. Cas. (BNA) 1053; 44 Fed. R. Serv. 3d (Callaghan) 944

Mercury News' petition does not implicate the fourth factor - there has been no showing of oft-recurring error on the part of the district courts of this circuit. However, as is plain from the discussion above, the fifth *Bauman* factor is implicated. The petition presents an important question that has not yet been directly addressed by this circuit - whether the federal common [**20] law right of access extends to documents filed in civil cases that have not yet gone to judgment. Thus, we conclude that the fifth *Bauman* factor weighs in favor of granting the petition for mandamus.

III.

We conclude that mandamus relief is appropriate. We vacate the district court's order denying the Mercury News' motion for permissive intervention pursuant to Rule 24(b)(2), and remand to the district court for further proceedings. We express no opinion on whether the Mercury News should ultimately prevail in its motion to intervene; this is a question properly addressed to the discretion of the district court. *See EEOC v. National Children's Ctr., 146 F.3d at 1048* (district court has considerable discretion in ruling on a motion for permissive intervention, even where all the prerequisites are met). We simply hold that the district court erred to the extent it premised its denial of the motion on a belief that the public had no prejudgment right of access to judicial records in civil cases.

The petition for writ of mandamus is GRANTED. The district court's order denying the Mercury News' motion to intervene is VACATED and this matter is REMANDED for further [**21] proceedings.

Tab 8

LEXSEE 187 FRD 152

**UNITED STATES OF AMERICA, Plaintiff, v. DENTSPLY INTERNATIONAL, INC., Defendant. HENRY SCHEIN, INC., Movant.**

**Civil Action No. 99-5 MMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*187 F.R.D. 152; 1999 U.S. Dist. LEXIS 10072*

**May 28, 1999, Argued, Wilmington, Delaware**
**June 11, 1999, Decided**

**DISPOSITION:** [**1] Schein's motion to intervene granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff United States filed against defendant in an antitrust action, and defendant filed a motion for discovery of the Civil Investigative Demands (CID) plaintiff made upon 184 witnesses regarding defendant's business practices, and confidential and propriety information. Movant, third-party respondent filed a motion for a protective order, to prohibit plaintiff from releasing the CID's to defendant.

**OVERVIEW:** Plaintiff United States filed an antitrust action against defendant, and defendant filed a motion for discovery on an interrogatory sent to plaintiff. Plaintiff refused to answer the interrogatory on work product privilege, and movant, third-party respondent filed a motion to intervene, and for a protective order, to prohibit plaintiff from releasing any confidential and propriety information movant gave to plaintiff as per a Civil Investigative Demand (CID). The court held that defendant's interrogatory did not violate plaintiff's work privilege, and order plaintiff to answer it. The court also granted movant's motion to intervene in the proceedings, and granted it and plaintiff a protective order for the release of any confidential information to defendant that would work a clearly defined and serious injury. However the court refused to prohibit defendant from limiting its outside counsel's employment. The court finally ordered that the parties agree to a third-party binding arbitrator to decide whether information to be

discovered would violate the protective order, in order to not tax judicial resources.

**OUTCOME:** The court granted defendant's motion for plaintiff to answer defendant's interrogatory, and for plaintiff's and movant's motion for a protective order to prohibit the release of any confidential information that would work a clearly defined and serious injury. The court also ordered the parties to agree to binding arbitration over whether information to be discovered was confidential and protected under the court's order.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*
[HN1] The work product doctrine protects from disclosure, inter alia, the legal strategies and mental impressions of an attorney formed in anticipation of or preparation for litigation.

*Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN2] The general rule is that one party may discover relevant facts known or available to the other party, even though such facts are contained in documents that are not discoverable. Counsel or litigants cannot use the work product doctrine to hide facts underlying the litigation from discovery.

*Civil Procedure > Class Actions > General Overview*

187 F.R.D. 152, *; 1999 U.S. Dist. LEXIS 10072, **1

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
[HN3] *Fed. R. Civ. P. 26(b)(3)* does not serve as a basis for a refusal to respond to discovery requests seeking the disclosure of facts by deposition or interrogatories. By its plain language, *Fed. R. Civ. P. 23(b)(3)* applies only to the production of documents and tangible things.

*Civil Procedure > Parties > Intervention > General Overview*
[HN4] The court should relax the requirement of a common question of law or fact when the intervenors are not seeking to become parties to the litigation. There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.

*Civil Procedure > Parties > Intervention > General Overview*
*Trade Secrets Law > Misappropriation Actions > Elements > Confidentiality*
[HN5] Intervention is appropriate to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action.

*Civil Procedure > Discovery > Protective Orders*
*Trade Secrets Law > Civil Actions > Discovery*
*Trade Secrets Law > Civil Actions > Protection Orders*
[HN6] Under *Fed. R. Civ. P. 26(c)(7)*, a court may, upon a showing of good cause, issue an order protecting a trade secret or other confidential research, development, or commercial information from disclosure. The court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
[HN7] A prerequisite to the issuance of a protective order governing discovery is a showing of good cause. *Fed. R. Civ. P. 26(c)*. Good cause exists when disclosure will

result in a clearly defined and serious injury to the party seeking the protective order. The litigant seeking the protective order must articulate the injury with specificity. Broad allegations of harm, unsubstantiated by specific examples, do not support a showing of good case. The burden of justifying a protective order remains on the litigant seeking the order. In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for the information. The court has wide discretion in determining the scope of a protective order.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
[HN8] Under *Fed. R. Civ. P. 26(c)* of the Federal Rules of Civil Procedure, the court may only grant a protective order where there is good cause shown. The appropriate standard for the confidential information designation in a protective order is information, the disclosure, or further disclosure, of which will work a clearly defined and serious injury.

*Civil Procedure > Discovery > Protective Orders*
*Trade Secrets Law > Misappropriation Actions > Elements > Confidentiality*
[HN9] Status as in house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access. A district court must examine the particular counsel's relationship and activities to determine an appropriate protective order. Prohibiting disclosure of confidential information to in-house counsel may be appropriate when in-house counsel is involved in competitive decision making activities in which counsel participates and advises in any or all of the client's decisions made in light of similar or corresponding information about a competitor. The critical inquiry is whether in-house counsel is involved in competitive decision making such that the attorney would have a difficult time compartmentalizing his knowledge.

*Civil Procedure > Judicial Officers > General Overview*
*Civil Procedure > Discovery > Protective Orders*
[HN10] While the Federal Rules of Civil Procedure obligate a judge to handle legitimate discovery disputes, the Federal Rules do not require a judge to process disagreements between party litigants, much less

187 F.R.D. 152, *; 1999 U.S. Dist. LEXIS 10072, **1

nonparty differences arising from lawyer crafted protective orders.

**COUNSEL:** For plaintiff: Carl Schnee, Esquire, United States Attorney, Judith M. Kinney, Esquire, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.

For plaintiff: Mark J. Botti, Esquire, Michael S. Spector, Esquire, Michael D. Farber, Esquire, Of Counsel, United States Department of Justice, Washington, D.C.

For defendant: James P. Hughes, Jr., Esquire, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware.

For defendant: Margaret M. Zwisler, Esquire, Richard A. Ripley, Esquire, Of Counsel, Howrey & Simon, Washington, D.C.

For Henry Schein, Inc., Movant: John E. James, Esquire, W. Harding Drane, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware.

For Henry Schein, Inc., Movant: Martha E. Gifford, Esquire, Heather Martinez, Esquire, Of Counsel, Proskauer Rose LLP, New York, New York.

**JUDGES:** Murray M. Schwartz, Senior District Judge.

**OPINION BY:** Murray M. Schwartz

**OPINION:**

[*154] **OPINION**

Argued: May 28, 1999
Dated: June 11, 1999
Wilmington, Delaware

**SCHWARTZ, Senior District Judge**

The United States Department of Justice ("Justice" or the "Government") has filed an antitrust [**2] action against Dentsply International, Inc. ("Dentsply") after a three-year investigation of Dentsply's business practices. That investigation included interviews of 184 witnesses and Civil Investigative Demands ("CIDs") on numerous companies, thereby allowing Justice to obtain confidential and proprietary information. Two matters, both of which stem from Justice's three-year

investigation, are presently before the Court.

[*155] First, pursuant to *Rule 37(a) of the Federal Rules of Civil Procedure*, Dentsply has filed a motion to compel the Government to answer an interrogatory seeking facts learned by the Government during its witness interviews in the course of its investigation of Dentsply. n1

> n1 While two document requests were also the subjects of the motion to compel, at oral argument counsel for Dentsply withdrew as moot its motion to compel production of the documents at issue in those requests.

Second, pursuant to *Federal Rule of Civil Procedure 26(c)*, the Government and Henry Schein, Inc. ("Schein"), a third-party [**3] respondent to a CID, have each filed a motion for protective a order. Schein both competes with and distributes for Dentsply, depending on the particular line of Dentsply's dental product. Schein has moved to intervene solely to urge the Court to adopt a protective order with provisions protecting it and other third-parties who have responded to the CIDs. Dentsply, the Government and Schein all agree, in principle, that a protective order is necessary to protect propriety information but disagree on its scope and content. Both the Government's and Schein's motions request, among other things, a protective order provision denying Brian Addison, Dentsply's General Counsel, access to third-party confidential information obtained pursuant to the CIDs. Schein also seeks a provision in the protective order restraining outside counsel's representation of Dentsply for a defined future period.

For reasons which follow the Court will grant Dentsply's motion to compel as well as Schein's motion to intervene. The Government's and Schein's motions for protective orders will also be granted with respect to shielding third-party proprietary information from Dentsply's general counsel subject to [**4] a safety valve which would allow Addison to see the information in what would have to be very unusual circumstances. The Court will deny Schein's motion to the extent it seeks to limit Dentsply's outside counsel's representation of Dentsply. Finally, the Court will make several rulings regarding its role in the proposed protective orders.

187 F.R.D. 152, *155; 1999 U.S. Dist. LEXIS 10072, **4

### I. Motion to Compel

Dentsply's motion to compel arises because of the Government's refusal to answer the following interrogatory:

> With regard to the 184 individuals and entities who were interviewed by the DOJ pursuant to its CID investigation of Dentsply and subsequently identified in Plaintiff's Rule 26(a)(1) Initial Disclosures, please identify in detail all facts known to these individuals and entities that are relevant to the DOJ's claims against Dentsply in this matter.

The Government contends that because the three-year Dentsply investigation, including issuance of the CIDs, was initiated and supervised by Department of Justice attorneys in anticipation of litigation, all facts learned during that investigation constitute work product.

Indeed, [HN1] the "work product doctrine" protects from disclosure, *inter alia*, [**5] the legal strategies and mental impressions of an attorney formed in anticipation of or preparation for litigation. *Hickman v. Taylor, 329 U.S. 495, 510, 91 L. Ed. 451, 67 S. Ct. 385 (1947); see also 6 Moore's Federal Practice § 26.70*[2][c] (3d ed. 1998) ("Courts have continued to apply Hickman to prevent parties from circumventing the work product doctrine by attempting to elicit an attorney's thought process through depositions or interrogatories.") Despite its protestations to the contrary, the Government is attempting here to extend work product protection to the facts which form the basis of its antitrust lawsuit. Justice is clearly not required to turn over its attorneys' memoranda resulting from the interviews, and Dentsply does not contend otherwise since this type of information involves the mental impressions protected by the work product doctrine. Rather, Dentsply seeks only the facts that form the basis of the lawsuit -- the interrogatory does not require the Government to supply its counsel's view of the case, identify the facts which counsel considered significant or reveal the specific questions asked by the Government attorneys.

[HN2] The general rule is [**6] that one party may discover relevant facts known or available [*156] to the other party, even though such facts are contained in documents that are not discoverable. *Bogosian v. Gulf Oil Corp., 738 F.2d 587, 595 (3d Cir. 1984)* ("Of course, where the same document contains both facts and legal theories of the attorney, the adversary party is entitled to discovery of the facts. It would represent a retreat from the philosophy underlying the Federal Rules of Civil Procedure if a party could shield facts from disclosure by the expedient of combining them or interlacing them with core work product."); *Farran v. Johnston Equip., Inc., 1995 U.S. Dist. LEXIS 13402, Civ. A. No. 93-6148, 1995 WL 549005,* at *3 (E.D. Pa. Sept. 12, 1995) ("The work product doctrine furnishes no shield against discovery by interrogatories or by depositions of the facts that the adverse party has learned of the persons from whom such facts were learned."); *Eoppolo v. National R.R. Passenger Corp., 108 F.R.D. 292, 294 (E.D. Pa. 1985); In re Dayco Corp. Derivative Sec. Litig., 99 F.R.D. 616, 624 (S.D. Ohio 1983)* (ordering plaintiff to answer defendants' interrogatory because "defendants may discover the facts upon which Plaintiffs, and/or [**7] their counsel, base their allegations"); *Fed. R. Civ. P. 26(b)(3)* advisory committee's note to 1970 amendments; 9 Charles Alan Wright et al., Federal Practice and Procedure § 2023, at 330 (2d ed. 1994) ("The work product concept furnishe[s] no shield against discovery, by interrogatories . . . of the facts that the adverse party's lawyer has learned"); *6 Moore's Federal Practice § 26.70*[2][a] (stating that work product doctrine does not protect facts contained within work product). Counsel or litigants cannot use the work product doctrine to hide facts underlying the litigation from discovery. *Hickman, 329 U.S. at 507* ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."); *Musko v. McCandless, 1995 U.S. Dist. LEXIS 14477, Civ. A. No. 94-3938, 1995 WL 580275,* at *1 n.2 (E.D. Pa. Sept. 29, 1995) ("Facts that attorneys witness or discover through their investigative efforts, as opposed to the impressions and conclusions drawn from them, are not protected by the work product doctrine."); *In re Convergent Technologies Second Half 1984 Sec.* [**8] *Litig., 122 F.R.D. 555, 558 (N.D. Cal. 1988)* ("Counsel can learn those facts . . . by posing interrogatories to [opposing] counsel that would compel disclosure of the substance of relevant information [opposing] counsel has learned from non-party witnesses."); *Laxalt v. McClatchy, 116 F.R.D. 438, 442 (D. Nev. 1987)* (holding that party must reveal all relevant facts in the case regardless of whether the facts were discovered in an investigation in anticipation of litigation).

The weakness of the Government's position is perhaps best exposed by its necessary concession at oral argument that at some point before trial it would have to reveal the facts upon which it would rely to prove its case against Dentsply. But, if facts developed during the three-year investigation were truly work product, the facts sought by Dentsply would never have to be disclosed. n2 The Government, therefore, under the guise of the work product doctrine, seeks to manipulate the timing of the revelation of facts it has gathered and upon which it intends to rely to suit its purposes. This was never the intent of the work product doctrine, and the Court declines the Government's invitation to extend **[**9] the scope of that doctrine.

> n2 While an attorney's mental impressions or legal strategies might become apparent to opposing counsel in the course of discovery or trial, the attorney does not have to disclose them.

The Government also asserts its position is supported by *Federal Rule of Civil Procedure 26(b)(3)* which provides in pertinent part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has **[*157]** been made, the court shall protect against disclosures of the mental impressions, conclusions, **[**10]** opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The Government, seizing upon the language "the court shall protect against disclosures of mental impressions,

conclusions, opinions, or legal theories of an attorney" insists the Dentsply interrogatory is designed to obtain disclosures prohibited by Rule 26(b)(3). That argument, however, is misplaced because [HN3] Rule 26(b)(3) does not serve as a basis for a refusal to respond to discovery requests seeking the disclosure of facts by deposition or interrogatories. By its plain language, Rule 23(b)(3) applies only to the production of documents and tangible things. *Eoppolo, 108 F.R.D. at 294.*

The Government's position is against the overwhelming weight of authority. Therefore, the Government will be required answer the interrogatory.

## II. Motion to Intervene

Schein has moved to intervene solely for a protective order guarding confidential business information. The Government served CIDs on several companies that Schein has since acquired. In response to the CIDs, those companies produced material and information, some of which was confidential -- sales and marketing **[**11]** plans, strategic plans, financial forecasts, margin information, customer information, pricing information, and information concerning distribution agreements with vendors other than the defendant Dentsply. Dentsply has served a request for documents on the Government, seeking disclosure of the material containing this confidential information. Further, Dentsply acknowledges that "it appears likely that during the course of this litigation, the parties will take [additional] third party discovery of Schein."

In response to the CID, Schein has provided "sales and marketing plans, strategic plans, financial forecasts and margin information, customer information, pricing information and information concerning Zahn's distribution and other agreements with manufacturers[,] [and] amounts spent on particular product areas, plans for expansion into particular markets, and deals struck with other manufacturers." n3 Affidavit of Norman Weinstock ["Weinstock Aff."], Docket Item ("D.I.") 22, P 12. According to Schein, allowing Dentsply access to the materials would give Dentsply competitive advantage in multiple ways which were spelled out explicitly and with great detail in the affidavit. **[**12]** Weinstock Aff., D.I. 22, PP 14-18. n4

> n3 Zahn Dental, Inc. was acquired by Schein in 1995 and continues to operate as

Case 1:05-md-01717-JJF    Document 453    Filed 05/03/2007    Page 76 of 85

Page 6

187 F.R.D. 152, *157; 1999 U.S. Dist. LEXIS 10072, **12

a division of Schein. Weinstock Aff., D.I. 22, P 3.

n4 *See also infra* note 6.

Understandably motivated by a desire to protect its confidential information, Schein seeks to share its views on the provisions of any protective order governing this litigation. *Rule 24(b) of the Federal Rules of Civil Procedure* governs intervention. The Rule provides in part:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

However, *Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (3d Cir. 1994)*, teaches that [HN4] the Court should relax the requirement of a common question of law or fact when the intervenors are not seeking to become parties to the litigation. "There is no reason to require [**13] such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." *Id.* (citing *Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 474 (9th Cir. 1992)).*

Thus, [HN5] intervention is appropriate "to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Pansy, 23 F.3d at 778* (citations omitted). As of this date, no protective or confidentiality order has been entered because the parties were unable to agree upon one. Schein will be permitted to intervene for purposes of bringing to the Court's attention its view [*158] with respect to what should be contained in the protective order.

## III. Motions for Protective Order

Both Schein and the Government move for a protective order. [HN6] Under *Rule 26(c)(7) of the Federal Rules of Civil Procedure*, a court may, upon a showing of good cause, issue an order protecting a trade secret or other confidential research, development, or commercial information from disclosure. *Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir. 1989); C.A. Muer*

*Corp. v. Big River Fish Co., 1998 U.S. Dist. LEXIS 12639, Nos. Civ.A. 97-5402, 97-6073,* [**14] *97-7154, 1998 WL 488007,* at *2 (E.D. Pa. Aug. 10, 1998). The court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." *Fed. R. Civ. P. 26(c)(7).*

[HN7] A prerequisite to the issuance of a protective order governing discovery is a showing of "good cause." *Fed. R. Civ. P. 26(c); Pansy, 23 F.3d at 786;* 6 *Moore's Federal Practice § 26.105*[8][a]. Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order. *Pansy, 23 F.3d at 786.* The litigant seeking the protective order must articulate the injury with specificity. *Id.; Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984).* "Broad allegations of harm, unsubstantiated by specific examples," do not support a showing of good cause. *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).* The burden of justifying a protective order remains on the litigant seeking the order. [**15] *Id.* In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for the information. *Pansy, 23 F.3d at 787;* 6 *Moore's Federal Practice § 26.105*[8][a]. The court has wide discretion in determining the scope of a protective order. n5 *Pansy, 23 F.3d at 787.*

n5 The most common kind of protective order is an order limiting the persons who have access to the information disclosed and the purpose for which these persons may use the information. 8 Charles Alan Wright, et al., Federal Practice and Procedure § 2043 at 566 (2d ed. 1994); see 6 *Moore's Federal Practice § 26.105*[8][b].

The litigants agree that at least some of the information acquired pursuant to the CIDs or to be gathered in the future should be protected by a protective order. Indeed, the parties are in substantial agreement with respect to the majority of the content of a protective order. Because the parties have already reached such a degree of agreement, [**16] the Court will only rule on

Case 1:05-md-01717-JJF    Document 453    Filed 05/03/2007    Page 77 of 85

Page 7

187 F.R.D. 152, *158; 1999 U.S. Dist. LEXIS 10072, **16

three issues on which the parties could not agree along with a fourth concern raised by the Court *sua sponte*. They may then draft a proposed protective order incorporating the decisions explained in this Opinion and the accompanying Order. While the differences in the parties' positions are narrow, they are nonetheless significant. The parties disagree in three areas: 1) the standard governing when confidential status is conferred; 2) whether Brian Addison, General Counsel for Dentsply, may have access to confidential information; and 3) whether the Court should restrict outside counsel's future representation of Dentsply. In addition, the Court raises *sua sponte* the issue of whether the numerous proposed provisions for Court resolution of confidentiality designation and use at trial are manageable.

### A. Standard Governing Whether Documents Are To Be Designated Confidential

The proposed protective orders vary, in the first instance, in the standard upon which the "confidential" designation is based. In their proposed protective orders, Justice and Schein both agree that "confidential information" means "any trade secret or other confidential **[**17**]** research, development, or commercial information, as such terms are used in *Fed. R. Civ. P. 26(c)(7)* . . . the disclosure, or further disclosure, of which would result in a clearly defined and serious injury." D.I. 19, Exh. A; D.I. 31, Exh. A. Dentsply, on the other hand, has proposed a protective order defining as "confidential" "information of a type contemplated by *Rule 26(c)(7)* **[*159]** *of the Federal Rules of Civil Procedure*, and which has not been made public and which a provider regards as proprietary financial information, or other confidential business or technical information." The real point of difference, then, is whether confidential information should be defined as information the disclosure of which would result in a clearly defined and serious injury or whether the "confidential" designation should be based on the information provider's regard for the information as proprietary or confidential.

While Dentsply has proposed an arguably more inclusive standard for confidentiality, [HN8] under *Rule 26(c) of the Federal Rules of Civil Procedure*, the Court may only grant a protective order where there is "good cause shown." *Fed. R. Civ. P. 26(c)*; *Smith v. Bic Corp., 869 F.2d at 199.* **[**18**]** It follows the standard for confidentiality must be drawn such that Schein and

Justice can show "good cause" for protecting every document which falls within the ambit of that standard. As already rehearsed, the Third Circuit Court of Appeals has explained that "good cause is established on a showing that disclosure will work a clearly defined and serious injury . . . ." *Pansy, 23 F.3d at 786* (quoting *Publicker, 733 F.2d 1059 at 1071).* In the Third Circuit, the appropriate standard for the "confidential information" designation in a protective order is information, the disclosure, or further disclosure, of which will work a "clearly defined and serious injury." n6

> n6 Schein has already demonstrated the potential for such injury should Dentsply have access to some of the information at issue. For example, Schein notes access to Schein's strategies, sales plans, pricing and other sensitive information would, *inter alia*, allow Dentsply to anticipate Schein's marketing plans in the areas in which they compete and would give Dentsply an unfair advantage in negotiating contracts in areas where Schein distributes for Dentsply. Weinstock Aff. D.I. 22, PP 14-18. Similarly, providing customer information including customer contacts and customer lists to Dentsply could allow Dentsply to take clients away from Schein or allow Dentsply to go directly to Schein customers to obtain comprehensive margin information to the detriment of Schein in its negotiations with Dentsply. *Id.* at P 17. Finally, in the artificial tooth area, access by Dentsply to confidential sales and marketing plans, customer lists and financial information would allow Dentsply to interfere with Schein's operations. *Id.* at P 18.

**[**19**]**

### B. Access To Confidential Information By General Counsel of Dentsply

Schein and Justice seek a protective order provision prohibiting Brian Addison, Vice President, Secretary and General Counsel of Dentsply, from access to documents designated confidential. Dentsply urges that Addison should have access to all information disclosed or

187 F.R.D. 152, *159; 1999 U.S. Dist. LEXIS 10072, **19

produced, even if it is correctly designated as confidential -- that is so sensitive its disclosure or further disclosure would work a "clearly defined and serious injury."

Disclosure to employees of Dentsply generally of a nonparty competitors' sales and marketing plans, financial forecasts, margin, pricing, cost and customer information, etc., would obviously constitute a clearly defined and serious injury to all nonparties. The issue is whether the Government and Schein have carried their burden that access to confidential information by Dentsply's General Counsel, Addison, would also constitute a disclosure which would work a "clearly defined and serious injury."

The Government, Schein and Dentsply uniformly agree that the law and standard applied in *U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984),* should control. In [**20] that case, the Federal Circuit Court of Appeals first held "that [HN9] status as in house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *Id. at 1469.* It then instructed that a district court must examine the particular counsel's relationship and activities to determine an appropriate protective order. *Id. at 1468.* The Federal Circuit Court of Appeals concluded that prohibiting disclosure of confidential information to in-house counsel may be appropriate when in-house counsel is involved in "competitive decision making" -- activities in which counsel participates and advises "in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id. at 1468 & n.3.* This Court has similarly stated that the critical inquiry is whether in-house counsel is involved [*160] in competitive decision making such that the attorney "would have a difficult time compartmentalizing his knowledge." *Motorola, Inc. v. Interdigital Technology Corp., 1994 U.S. Dist. LEXIS 20714,* at *10, Civ.A. No. 93-488- LON (D. Del. Dec. 19, [**21] 1994) (citations omitted).

Typically, the "competitive decision making" standard for determining access to confidential competitive information has been applied to party-litigants. Counsel have not cited any case in which the "competitive decision making" standard has been applied, where, as here, proprietary information is that of a nonparty produced under governmental compulsion. The Court is concerned about applying the competitive decision making standard to confidential information to hapless nonparties. While some nonparties may rejoice in the Justice Department's antitrust investigation, others doubtless consider the risk inherent in sharing extremely sensitive information too high a price to pay for curing the alleged unlawful anticompetitive activity. These nonparties have produced or will produce information because they are law-abiding entities with severely limited options. Their information will be shared not because they are a litigant seeking redress or an accused wrongdoer defending a lawsuit, but because they have valuable information which may or may not shed light on whether Dentsply has engaged in proscribed anticompetitive activity. Because the litigants have [**22] agreed to the "competitive decision making" standard, the Court accepts the standard as applicable to nonparties only for purposes of the instant motions. The Court follows this course because it has not had the benefit of adversary briefing. However, in making its "good cause" determination, the Court will factor the nonparty status of Dentsply's competitors and distributors whose confidential information is at issue in balancing the risk of injury that might result without the protective order against Addison's need for the information. n7

n7 The risk of injury to the owner of confidential information is presumably greater where the owner was never in a position to accept or reject the risk of disclosure of confidential information. Indeed, when a private plaintiff decides to bring a lawsuit, or when a private defendant develops strategy for defending a lawsuit, they accept the inherent risk that they will be required to disclose confidential information and may be injured by that disclosure. A nonparty, on the other hand, is in precisely the opposite situation; the nonparty has never undertaken the risks of disclosure.

[**23]

Dentsply argues its general counsel is not involved in competitive decision making. Dentsply offers the affidavit of Addison, stating he does not provide business advice or participate in Dentsply's nonlegal matters. D.I. 34, Ex. 1, at P 4. According to the affidavit, Addison has no involvement with the development of Dentsply's

Case 1:05-md-01717-JJF    Document 453    Filed 05/03/2007    Page 79 of 85

Page 9

187 F.R.D. 152, *160; 1999 U.S. Dist. LEXIS 10072, **23

marketing or distribution strategies or in the formulation of Dentsply's pricing and rebate plans, other than to review such matters for legal compliance. *Id.*

Dentsply further urges it will be prejudiced if Addison cannot have access to confidential information. It maintains that barring access to any confidential information is unfair because Dentsply relies on its general counsel to direct the litigation, devise legal strategy, and provide assistance to outside counsel. *See* D.I. 34, Ex. 1, Addison Aff. at P 8; *see also Carpenter Tech. Corp v. Armco, Inc.,, 132 F.R.D. 24, 28 (E.D. Pa. 1990)* (allowing in-house counsel access to confidential information because "given the technical nature of this case, the advice of in-house counsel with specialized knowledge of the steel industry could be essential to the proper handling of this litigation by [**24] outside counsel"; *Boehringer Ingelheim Pharmaceuticals, Inc. v. Hercon Laboratories Corporation, 1990 U.S. Dist. LEXIS 14075,* Civ.A. No. 89-484- *CMW, 1990 WL 160666,* at *2 (D.Del. Oct. 12, 1990)* (allowing in-house counsel already involved in the case to receive confidential information because the members of the in-house counsel staff could avoid conflicting work in the future and in-house counsel were responsible for major decisions concerning the instant litigation). Further, Dentsply's in-house counsel has been supervising the litigation from the beginning of the plaintiff's CID investigation approximately four years ago. D.I. 34, Ex. 1, Addison Aff. at P 8.

In answer, Schein and the Government point to several factors counseling against [*161] Addison having access to this confidential information. Both assert that Addison, as an officer of Dentsply, could base future business decisions on information learned during discovery. Both Schein and the Government also assert giving Addison access to the confidential information increases the risk of its inadvertent disclosure. In addition, Justice argues that allowing defendant's in-house counsel to have access to the confidential information is likely to impede discovery [**25] in this and other litigation because nonparties may be less willing to cooperate.

Additionally, Schein and Justice argue that Addison is, in fact, involved in business decisions. In making this assertion, they rely on the affidavits of Norman Weinstock, formerly a regional sales manager for Dentsply and now President of the Zahn Dental, Inc.

Division of Schein, D.I. 22, Weinstock Aff., of Vern E. Hale, a Senior Vice President of Vident, a distributor of teeth manufactured by Dentsply competitor Vita Zahnfabrik, D.I. 49, Hale Aff., and of Monte M.F. Cooper, engaged as counsel for Vident with respect to matters involved in this litigation, D.I. 49, Cooper Aff. While, as developed below, the Weinstock and Hale affidavits are not particularly useful for clarifying these facts, the Cooper affidavit pinpoints an important deficiency in the Addison affidavit.

One need look no further than the carefully crafted Addison affidavit to conclude that the Government and Schein have carried their burden of demonstrating that the risk of injury which might result to third parties outweighs Addison's need for the information. Indeed, that affidavit demonstrates the reality of a situation in which [**26] Addison has a very real involvement in competitive decision making.

After asserting he does not participate in nonlegal operating business matters of Dentsply, D.I. 34, Exh. 1, n8 Addison goes on to state:

> 5. The one area where my responsibilities may be viewed as crossing over into the competitive, business environment is the area of Dentsply's acquisitions of other commercial entities or entering of contractual transactions. For certain of these transactions, I have become involved in shaping the operational structure of the newly acquired enterprise; however, I do not get involved in marketing and sales strategies or decisions. Other than the instances described above, I have no involvement in Dentsply's competitive decision-making.

D.I. 34, Exh. 1, P 5. Addison is thus involved in: (1) Dentsply's acquisition of companies; and (2) entering into contractual transactions. If Addison had access to information regarding a competitor's (i) marginal cost of production, (ii) long-term and short-term financial forecasts, (iii) strategic plans, and/or (iv) alliances with distributors and suppliers, he could make use of this information to augment Dentsply's efforts in making [**27] or implementing strategic acquisitions. This is particularly troublesome since Dentsply's efforts could be turned on acquiring a nonparty which has produced

Case 1:05-md-01717-JJF      Document 453      Filed 05/03/2007      Page 80 of 85

Page 10

187 F.R.D. 152, *161; 1999 U.S. Dist. LEXIS 10072, **27

confidential information. This alone would be enough to tip the balance in favor of nondisclosure to Addison. However, there is more.

n8 Paragraph 4 of the Addison affidavit reads:

4. As General Counsel, I do not participate in the non-legal operating business matters of the company, nor provide non-legal advice concerning competitive business issues. Nor do I have any such involvement in any other capacity that I serve at Dentsply. To be specific, other than providing review for legal compliance, I have no involvement in the development or formulation of pricing and rebate plans, the creation of marketing or distribution policies, or in the shaping of any sales strategies for any of Dentsply's divisions.

D.I. 34, Exh. 1.

Addison also states he is involved in entering contractual transactions. The affidavit is ambiguous as to whether these contractual [**28] transactions relate only to acquisitions or to contractual transactions independent of any acquisition. Either possibility entails an unacceptably high risk of either utilization or inadvertent disclosure of confidential information to the severe detriment of nonparties. n9

n9 For example, a declaration filed on behalf of a competitor recites:

. . . Presumably, the 'contractual transactions' referenced by . . . Addison include Dentsply's entering into agreements with dental laboratory dealers and other customers for the distribution and sale of Dentsply products (including premium artificial teeth). Such agreements may contain a variety of provisions, including indemnity agreements, production requirements, and similar sections which are negotiated without full knowledge by parties like Dentsply of the profit margins of its competitors . . ., or of the volumes of sales of products offered by its competitors. . . .

D.I. 49, Decl. of Cooper, P 6.

[*162] Weighing the interests of the Government and Schein against [**29] that of Dentsply dictates that the balance favors the Government and Schein. Accordingly, the protective order shall not provide for disclosure of confidential information to Addison, General Counsel for Dentsply.

Some factual matrix may evolve which would require that Addison have access to the specified detailed confidential information to allow Dentsply to defend itself. The protective order shall therefore include a provision providing for disclosure to Addison upon the making of a pre-defined requisite showing. At a minimum that requisite showing should include: 1) extraordinary detailing of the circumstances warranting disclosure; 2) an explanation of why employment of any and all filtering devices would not suffice; and 3) an explanation of why reliance on the representations and opinions of outside counsel would not be adequate. In addition, the provision will allow for notice and right to be heard by the affected nonparty and resolution by the Court. The above minimum mandatory conditions erect a very high barrier to Addison ever seeing the confidential information, but at the same time provide a safeguard against the unknown.

Case 1:05-md-01717-JJF    Document 453    Filed 05/03/2007    Page 81 of 85

Page 11

187 F.R.D. 152, *162; 1999 U.S. Dist. LEXIS 10072, **29

**IV. Outside Counsel's Future Representation [**30] of Dentsply**

A provision in Schein's proposed protective order provides:

> . . . outside counsel have not been, are not, and for the earlier of four (4) years from the date of this order or two (2) years from the conclusion of trial in this action, will not be, without prior approval of the Court, involved in any other matters on behalf of defendant relating to its competitors, distributors, or customers, with the exception of matters related to this action; . . .

D.I. 19, Exh. A, at 7. In its Reply Memorandum, Schein narrowed the wide scope of its proposed limitation to apply only "if the law firm is now or may be in the future advising Dentsply on non-litigation legal issues involving distribution, pricing or similar matters . . . ." D.I. 41 at 11. In that event, "Henry Schein's proposed order reasonably requires the firm to select lawyers other than this trial team for that work for a period of time." *Id.* Schein has also made clear it does not seek to preclude Dentsply's outside law firm from future representation of Dentsply. Rather, it seeks in the proposed order a provision that "reasonably requires the firm (Howery & Simon) to select lawyers other than [**31] this trial team." *Id.* n10

> n10 The Government's proposed protective order does not contain a restriction on outside counsel similar to that requested by Schein. At best the Justice position may be characterized as giving the concept lukewarm support presumably because "Henry Schein's proposal might force a choice on Dentsply to replace counsel on this matter or on some other pending matters." D.I. 32 at 17.

Schein cannot demonstrate "good cause" for the proposed draconian measures because it has not shown it would be injured unless the Court limited outside counsel's relationship to Dentsply. *See Pansy, 23 F.3d at 786* ("'Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning,' do not

support a good cause showing." (quoting *Cipollone, 785 F.2d at 1121)).* Schein only speculates that Dentsply's outside counsel may advise Dentsply on business matters, including those involving Dentsply's competitors and distributors, while Dentsply unequivocally states that its outside [**32] counsel does not advise Dentsply on competitive business decisions, a position which Schein accepts in its reply brief. *See* D.I. 41 at 10. The Court concludes the proposed restrictions on outside counsel shall not be contained in the protective order.

**V. Protective Order Provisions Which Might Tax Court Resources**

The Court raises *sua sponte* a concern arising out of similar provisions found in the various proposed protective orders. The [*163] Government and Schein have essentially three parallel provisions: first, the Court shall resolve any dispute as to whether information is properly classified as confidential; n11 second, a party must give a set of number of days notice to a nonparty before disclosure of its confidential information to prospective trial witnesses and, should the nonparty object, the party litigant must file a motion demonstrating good cause why the disclosure should be granted despite the objection, with the Court determining the motion; n12 and third, the Court is to resolve disputes between a party and nonparty over the former's desire to disclose the latter's proprietary information to experts and consultants. n13 In addition to the above projected [**33] Court involvement in confidentiality disputes, Dentsply would confer on a nonparty the right to file at any time for a separate protective order as to a particular document or information, including restrictions on use differing from those in any protective order adopted by the Court. n14 Finally, Dentsply [*164] would have the Court countenance unlimited successive applications for modification of any protective order it adopts.

> n11 Dentsply proposes a similar provision.

> n12 Although there are differences in language and time periods between the Government's and Schein's motion, the concept is the same. For illustrative purposes there is set out the pertinent provisions from the Government's proposed protective order:

187 F.R.D. 152, *164; 1999 U.S. Dist. LEXIS 10072, **33

10. Except as otherwise authorized by this Order, information designated as confidential shall be used only in connection with this action, shall not be disclosed to any person other than the individuals set forth below, may be disclosed only as necessary in connection with this action to the individuals set forth below, and may be used by those individuals only as necessary in connection with this action:

. . .

(g) subject to the provisions of Paragraph 13, other persons not included in the above Subparagraphs who testify, or who, trial counsel believes in good faith, may testify, at trial of this action, solely to disclose to them confidential materials relating to matters about which trial counsel believes in good faith they are likely to testify at trial of this action.

. . .

13. Before disclosure of confidential information is made to any person or persons specified in Subparagraph 10(g), the party wishing to make such a disclosure shall give notice in writing, via facsimile or hand delivery, at least five (5) business days before such disclosure, to the producing party or protected person,

stating the names, addresses, and employers of the person(s) to whom the disclosure will be made. The notice shall identify with particularity the documents or specific parts thereof to be disclosed and the substance of the information to be disclosed. If, within the five-business-day period, an objection is made regarding the proposed disclosure, disclosure of the confidential information shall not be made unless the party seeking to make such disclosure obtains permission to do so by motion to the Court. The Court will deny the motion and access to the documents or confidential information, unless the party seeking to make such disclosure shows good cause why the proposed disclosure should be permitted despite the objection.

D.I. 31, Exh. A, PP 10 and 13.

[**34]

n13 Illustrative is paragraph 15 of the Government's proposed protective order:

15. If a party wishes to disclose confidential information, pursuant to paragraph 10(d), to an expert or consultant employed or affiliated with defendant or with any of its competitors, the executed agreement included as Appendix A hereto shall be

Case 1:05-md-01717-JJF     Document 453     Filed 05/03/2007     Page 83 of 85

Page 13

187 F.R.D. 152, *164; 1999 U.S. Dist. LEXIS 10072, **34

transmitted, no later than ten (10) days prior to the disclosure of the confidential information, to the other party and, if applicable, to counsel for the protected person that had designated the information as confidential, along with a curriculum vita or resume of the person to whom the disclosure is to be made. If the party or protected person receiving such notice believes that disclosure of confidential information that it has produced to such person would result in a clearly defined and serious injury, it may object in writing within five (5) days of receipt of the executed agreement included as Appendix A hereto. If the party wishing to disclose information and the party or protected person receiving such notice cannot resolve their dispute, the party wishing to disclose confidential information may apply to the Court for an Order permitting disclosure of confidential information to such person. No disclosure of confidential information may be made by a party to any such person with respect to whom the objection has been made unless so ordered by the Court.

D.I. 31, Exh. A, P 15.

[**35]

n14 Paragraph 10 of Dentsply's proposed protective order provides:

10. This Protective Order shall be without prejudice to the right (a) of the parties to bring before the Court at any time (subject to, unless impractical, the procedural requirements of paragraph 7) the question of whether any particular document or information constitutes Confidential Information hereunder or whether its use should be so restricted or (b) of a Producing Party to present a motion to the Court under *Fed. R. Civ. P. 26(c)* for a separate protective order as to any particular document or information, including restrictions differing from those specified herein. This Protective Order shall not be deemed to prejudice the parties of Producing Parties in any way in any future application for its modification.

D.I. 34, Tab 2, P 10.

These myriad provisions calling for the Court refereeing confidentiality disputes have enormous potential for overwhelming scarce judicial resources. This nationwide antitrust action was filed after a three-year investigation involving over one hundred eighty witnesses and a staggering [**36] number of documents with an unknown percentage to be designated as confidential. Severe logistical problems could arise if an unknown number of nonparties had conferred upon them the right to obtain court rulings protecting their proprietary information. The only person available to handle this potential onslaught is one district judge n15 who, not surprisingly, has other cases on his docket.

187 F.R.D. 152, *164; 1999 U.S. Dist. LEXIS 10072, **36

n15 Magistrate Judge Thynge is totally occupied conducting extremely valuable alternative dispute resolution for all of the judges in this district. Mediating and settling cases for all nature of people (and entities) are arguably more important than presiding over classification and other disputes arising out of any protective order that is entered.

[HN10] While the Federal Rules of Civil Procedure obligate a judge to handle legitimate discovery disputes, the Federal Rules do not require a judge to process disagreements between party litigants, much less nonparty differences arising from lawyer crafted protective orders.

Judges [**37] sign off on protective orders obligingly, both as a convenience to party litigants and to assure administrative control of a case. Given the daunting potential for disputes built into the proffered protective orders, the Court has no alternative but to require the parties to include in their protective order a "back-up" private-sector mechanism, paid for by the parties, to issue binding resolution of confidentiality classification disputes if the Court, because of the press of other judicial business, cannot entertain the disputes.

While P 10 of the Government's proposed order providing for disclosure of confidential information to prospective witnesses is satisfactory, P 13, which requires the parties to move the Court for permission upon objection by a nonparty to release of the information, is not. n16 Inclusion of P 13 carries with it the very real possibility of interrupting the orderly flow of what might be a lengthy trial. Indeed, the proposed procedure would not allow the Court to make the decision with the benefit of the appropriate background context developed during the taking of evidence so that the requisite balancing of the competing interest can be done in an informed [**38] manner. In addition, it carries with it conferral of limited party status, upon nonparties, without benefit of intervention under *Rule 24 of the Federal Rules of Civil Procedure.* This is impermissible. n17

n16 To the extent P 15 contains similar provisions for the parties to move the Court for permission to disclose confidential information to experts or

consultants upon objection by a nonparty it is unsatisfactory for the same reasons.

n17 At trial yet another interest is implicated, the interest of the public flowing from the First Amendment.

The Court recognizes disallowance of P 13 carries with it some limited potential for abusive disclosure of confidential information. The Court is confident the Government and Dentsply's outside counsel will not allow this to happen. Moreover, the Government has demonstrated its intent to zealously protect the confidentiality of third-party proprietary information as evidenced by its strong opposition to disclosing confidential information to Addison. Finally, to the [**39] extent the Government's burden in inducing voluntary cooperation from nonparties is increased by reason of the deletion of the highly unusual P 13, it is a condition with which it will have to live.

Notwithstanding the Court's rejection of P 13 or any similar protective order provisions, the Court is not unmindful of the concerns of nonparties. Prudent use of a filtering mechanism can go a long way in protecting third parties when their confidential information is shown to witnesses. If an objection is made to showing a witness unfiltered [*165] confidential information, counsel should be prepared to demonstrate that showing the witness the unfiltered information is essential to the proponent's case. The Court will honor such an objection if a filtering mechanism is or was available and not employed.

There is left only Dentsply's provisions which would permit unlimited successive applications for modification of the protective order which will govern this case. It is rejected out of hand for obvious reasons.

The parties have advised they were in substantial agreement with respect to other provisions in the competing protective orders. Hopefully this Opinion and accompanying Order will [**40] enable the Government and Dentsply to submit a proposed protective order agreed to as to form, if not in substance.

## VI. Conclusion

In conclusion, therefore, the Court will order the Government to answer Interrogatory No. 1 and will grant

187 F.R.D. 152, *165; 1999 U.S. Dist. LEXIS 10072, **40

Schein's motion to intervene for the limited purpose of presenting its views on a protective order to protect its confidential information. The Court also makes the following rulings regarding the proposed protective orders to allow the parties to complete their preparation of a protective order to govern this case for submission to the Court: 1) confidential information shall be defined as information of the type described in Rule 26(c)(7) of the Federal Rules of Evidence, the disclosure, or further disclosure, of which would result in clearly defined and serious injury; 2) Addison may not, as a general rule, have access to documents designated confidential; 3) any protective order shall contain a "safety valve" which allows Addison access to confidential documents upon the showing described above; 4) the protective order may not purport to limit outside counsel's ability to represent Dentsply; and 5) the parties shall draft the protective [**41] order in light of the Court's rulings pertaining to its resources.

    An appropriate order will issue.