FREDERICK L. COTTRELL, III
DIRECTOR

RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

DIRECT DIAL
(302) 651-7509
COTTRELL@RLF.COM

June 4, 2007

**VIA ELECTRONIC MAIL & HAND DELIVERY**
The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
Wilimington, DE 19801-4226

    Re: *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.* **C.A. No. 05-441-JJF,** *In re Intel Corporation***, C.A. No. 05-1717-JJF**

Dear Judge Poppiti:

  On behalf of Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively "AMD"), we write to seek an Order protecting AMD from having to respond further at this time to the First Set of Interrogatories (Ex. A) served by Intel Corporation and Intel Kabushiki Kaisha (collectively "Intel"). Intel's First Set of Interrogatories are improper -- and a protective order is warranted -- for two reasons. First, Intel's Interrogatories Nos. 1-4 and 6 are premature contention interrogatories, inappropriately propounded during the initial stages of discovery. AMD has agreed to respond to those interrogatories at an appropriate time, when discovery is completed or substantially completed. (Ex. B). Given the specific factual allegations in AMD's Complaint and the preliminary stage of discovery, AMD should not be required to respond further now. Second, Intel's Interrogatory No. 5 is overbroad and seeks information that is irrelevant, privileged, and protected from discovery. Intel has refused to narrow the Interrogatory and it is objectionable as framed.

**I. INTERROGATORIES 1-4 AND 6 ARE PREMATURE AT THIS EARLY STAGE OF THE CASE AND AMD SHOULD NOT BE REQUIRED TO RESPOND TO THOSE INTERROGATORIES AT THIS TIME.**

  Under Rule 26 of the Federal Rules of Civil Procedure, the Court may prohibit or limit any discovery if it "is obtainable from any source that is more convenient, less burdensome, or less expensive," or if "the burden or expense of the proposed discovery outweighs its likely benefit." Similarly, Rule 33(c) of the Federal Rules of Civil Procedure permits the Court to order that an interrogatory seeking "a contention that relates to fact or the application of law to fact . . . need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time." Fed. R. Civ. Pro. 33(c).

District Courts long have recognized, as does Rule 33 itself, that contention interrogatories propounded in the early stages of discovery can be "a serious form of discovery abuse," and are improper when "substantial" discovery remains to be completed. *See Fischer and Porter Co. v. Tolson,* 143 F.R.D. 93, 96 (E.D. Pa. 1992) (contention interrogatories improper where "substantial discovery remains to be conducted"); *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 336-37 (1985) ("wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period"); *McCarthy v. Paine Webber Group, Inc.* 168 F.R.D., 448, 450 (D. Conn. 1996)(motion to compel interrogatory responses denied because "substantial discovery remains to be conducted."). Courts' concerns about premature contention interrogatories are particularly acute where, as here, the Complaint pleads specific facts and the defendant has control over or adequate access to much of the information needed to respond to the interrogatories. *Fischer and Porter Co.*, 143 F.R.D. at 96 (defendant failed to meet burden of justifying early contention interrogatories).

As the Court knows, discovery in this case is in its very, very early stages. Intel has produced documents from only approximately one-third of the custodians whose documents it has promised to produce, has not yet even begun to produce transactional data, and is in the midst of a Court supervised remediation effort through which it is supposed to attempt to recover relevant evidence it may have destroyed or failed to preserve. At this point, neither AMD nor Intel itself knows even what documents and information Intel has, much less what Intel eventually will produce or AMD ultimately will rely upon. Third party production is also in its incipient stages, and deposition discovery is still some distance over the horizon. Thus, any response AMD might possibly provide to Intel's interrogatories at this point in time necessarily will be preliminary, incomplete, and subject to substantial change, modification, and expansion. Yet, providing even such tentative and incomplete responses would impose a tremendous burden on AMD because the proportionally small amount of document discovery so far is, in this enormous case, still very large in the absolute sense. (Intel, for example, has already produced electronic documents from 148 custodians, approximately 1.1 million electronic files.) Given the early stage of discovery, there is no sound reason to impose that burden. *See In Re Convergent Technologies*, 108 F.R.D. at 338 ("in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions early in the pretrial period is sufficiently likely to be productive to justify the burden that responding can entail.")

Rather than dispute the general principle that contention interrogatories would be premature and improper at such an early stage of this case, Intel instead insisted during the parties' meet and confer discussion that its interrogatories are not contention interrogatories at all. According to Intel's counsel, the interrogatories do not seek AMD's contentions or legal positions. But that plainly is incorrect. Contention interrogatories include interrogatories that "ask an opponent to state all the facts on which it bases some specified contention . . . [or] to state all the evidence on which it bases some contention." *In re Convergent Technologies*, 108 F.R.D. at 332. Interrogatories 1-4 and 6 are precisely these types of questions. AMD's Complaint asserts that Intel entered into "exclusive or near exclusive deals" with certain

2

customers (*see e.g.* ¶¶ 38-46) and Interrogatory No. 1 asks AMD to state the evidence that supports that contention by cataloguing "each and every" such customer and the date and specifics of each and every such deal. Similarly, AMD's Complaint alleges that Intel conditions certain payments to customers on their agreement to limit or forego purchases from AMD (see e.g. ¶¶ 38-107 ), and Interrogatory No. 2 therefore asks AMD to state all the evidence that supports that contention by identifying each and every such customer and payment. Interrogatory No. 3 likewise seeks the evidence showing "each and every customer" and each and every act of retaliation that supports AMD's contention that Intel retaliated against companies doing or contemplating doing business with AMD (see Compl. ¶¶72-76, 88-107). Interrogatory No. 4 also seeks a statement of facts and evidence to support AMD's contentions, particularly its allegation that Intel interfered with AMD's prospective economic advantage (see e.g. Compl. ¶¶ 77-84, 88-107). Finally, Interrogatory No. 6 asks AMD to state "each and every instance of `Intel's exclusionary acts'" alleged in the Complaint. These interrogatories may not use the words "do you contend" or "state all facts" but they nevertheless plainly ask AMD to state all the evidence it presently has to support its key contentions. It is precisely this type of question, regardless of the label or precise words used, that courts have found premature and abusive at this early stage of a massive and complex case.

## II.    INTERROGATORY NO. 5 IS OVERBROAD AND SEEKS PRIVILEGED INFORMATION.

Intel's fifth interrogatory asks AMD to "[i]dentify each and every communication you have had with any governmental entity concerning Intel's pricing, sales and/or marketing practices." As drafted, Interrogatory No. 5 is overbroad and requires AMD to provide information that is protected from disclosure by various laws and privileges, including the attorney-client privilege, the work product doctrine, and statutory and other privileges.

First, as to overbreadth, given Intel's stated definitions of "AMD" and "identify" (which includes an identification of the "source or sources" of information provided to the government and the "identity of all documents relating thereto"), Interrogatory No. 5 appears to require AMD to list every Intel-related communication between any of its employees, officers, directors, agents, attorneys, or other representatives, and any government employee, as well as to explain in some fashion the way in which the AMD representative knew the communicated information. During the parties' meet and confer, Intel refused to narrow the scope of this request other than to note that it only applied to "official" communications. This is not a meaningful qualifier since the interrogatory would still cover countless casual contacts between AMD employees and government employees at conferences and events of mutual interest, communications unrelated to this case. To give a concrete example, a communication between an AMD employee and a zoning official for the City of Austin in which the zoning official casually mentions that he has seen a recent Intel commercial or that he is glad Dell has decided to sell AMD products rather than just Intel's appear to be covered by this interrogatory as drafted.

Even if narrowed to communications germane to the case, Intel's fifth interrogatory would remain inappropriate because it seeks information protected by various statutes and privileges. Though others also may apply (the breadth of the interrogatory makes it difficult to

3

rule any privileges out and also may implicate policies designed to protect information disclosed in the course of ongoing government investigations), we will focus here on the attorney-work product doctrine. Because the interrogatory asks AMD to provide the basis for and analysis underlying each and every communication with the government about Intel, it seeks information protected by the work product doctrine, at least in circumstances where attorney analysis preceded the communication with the government. (And, in the case of information originally provided by someone from AMD to AMD's attorneys, it also would invade the attorney-client privilege since it requires AMD to divulge the "source" of the information supplied to the government.) This work product does not necessarily lose its protection by being communicated to the government because the work product privilege is only waived when work product information is provided to an adversary. *See Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991) ("work product doctrine requires us to distinguish between disclosures to adversaries and disclosure to non-adversaries."). Here, agencies such as the Federal Trade Commission, the Department of Justice, and the European Union share AMD's desire to protect consumers against the harmful effects of Intel's anti-competitive behavior and, as a result, work product protection would not be waived merely by providing information to government agencies in the course of an investigation of Intel. *See United States v. AT&T*, 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980) (MCI's transfer of information to the Government did not waive the work product privilege because the two shared a common interest in pursuing antitrust action against AT&T).

Most significantly, Interrogatory No. 5 is duplicative of an Intel RFP and therefore unnecessary. Intel's Request for the Production of Documents No. 165 asked AMD to produce "[a]ll documents or submissions voluntarily provided to any U.S., state or foreign governmental entity that relate to Intel competition in the microprocessor industry, or the subject matter of this case, and all communications with any governmental entity that relate to Intel, competition in the microprocessor industry, or the subject matter of this case. . . ." Subject to objections on the basis of attorney-client, work product, statutory, and other privileges, AMD agreed to produce non-privileged and non-protected information responsive to that request. If Intel believes AMD's assertion of any privilege or protection is inappropriate, that dispute should be addressed on the basis of specific privileges asserted with respect to particular withheld documents, not in an up-front, across the board fashion, based on an overbroad and improper interrogatory.

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)

FLC,III/afg
cc: Clerk of the Court (By Electronic Filing)
    Richard L. Horwitz, Esquire (Via Electronic Mail)
    James L. Holzman, Esquire (Via Electronic Mail)