# EXHIBIT 1

1 of 1 DOCUMENT

JEFF SOUTHARD, TRISH SOUTHARD, JEFFREY STICKEL, HEATHER STICKEL, MEL LINT, KEITH GOODYK, and GREG DANA, On Behalf of Themselves and All Others Similarly Situated in the State of Iowa, Appellants, vs. VISA U.S.A. INC. and MASTERCARD INTERNATIONAL INC., Appellees.

No. 137 / 04-1972

SUPREME COURT OF IOWA

2007 Iowa Sup. LEXIS 82

June 22, 2007, Filed

**PRIOR HISTORY:** [*1]
Appeal from the Iowa District Court for Dallas County, Darrell J. Goodhue, Judge. Plaintiff consumers appeal the dismissal of their class action against defendant national bank card associations in which plaintiffs sought recovery based on defendants' alleged violation of Iowa's competition law, Iowa Code ch. 553 (2003), and based on a theory of unjust enrichment.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff consumers sought review of an order from the Iowa District Court for Dallas County, which granted a motion to dismiss filed by defendants, credit/debit card companies, in an action for violation of Iowa's competition law, *Iowa Code §§ 553.4 and 553.5 (2003)*, and unjust enrichment.

**OVERVIEW:** The consumers brought an action against the companies for violation of Iowa's competition law. They also sought relief against the companies on the ground of unjust enrichment. The consumers alleged that they purchased goods for cash or used debit cards to make purchases. They contended that the companies required merchants who accepted credit cards to also accept the companies' debit cards. Due to the tying arrangement, the consumers alleged, merchants were forced to pay inflated fees for processing debit transactions. The consumers asserted that the magnified costs were passed along in the form of higher prices for the goods sold by the merchants. The trial court granted the companies' motion to dismiss. On appeal, the court found that, considering the factors used in Associated General Contractors, the trial court properly determined the consumers' injuries were too remote to be compensable under Iowa's competition law. The consumers were not participants in the relevant market, and their injuries were not of the type sought to be compensated by antitrust laws. The injuries alleged by the consumers were not even indirect, as they were not in the chain of distribution.

**OUTCOME:** The court affirmed the judgment of the trial court.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Appeals > Standards of Review > General Overview*
[HN1] An appellate court reviews a ruling on a motion to dismiss for the correction of errors at law. A dismissal will be affirmed only if the petition shows no right of recovery under any state of the facts.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN2] A motion to dismiss tests the legal sufficiency of the challenged pleading. Thus, the motion must stand or fall on the contents of the petition and matters of which the court can take judicial notice. Well-pled facts in the pleading assailed are deemed admitted. In addition, the petition is assessed in the light most favorable to the plaintiffs, and all doubts and ambiguities are resolved in the plaintiffs' favor.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN3] If the viability of a claim is at all debatable, courts should not sustain a motion to dismiss. Although motions to dismiss are not favored, they continue to be used, particularly when the issue is standing or the capacity to sue.

*Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage*
[HN4] See *Iowa Code § 553.12(2) (2003)*.

*Antitrust & Trade Law > Private Actions > Purchasers > Indirect Purchasers*
*Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage*
[HN5] Iowa law bars recovery of derivative and remote injuries in a variety of situations. The remoteness doctrine is not based upon a factual inquiry to determine whether the damages claimed were foreseeable or whether they were a proximate cause; rather, it is a legal doctrine incorporating public policy considerations. In determining whether this doctrine precludes a plaintiff's antitrust claims, a court first examines whether recovery for derivative or remote injuries is permitted under Iowa's competition law.

*Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage*
[HN6] The Iowa legislature does not intend to allow every person tangentially affected by a violation of *Iowa Code § 553.4 (2003)* to have a remedy in damages.

*Antitrust & Trade Law > Private Actions > Standing > Requirements*
[HN7] To determine standing under antitrust law, a court will examine the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them. Courts focus on five factors to guide their examination: (1) whether the claim alleges a causal connection between the antitrust violation and the plaintiff's alleged harm; (2) whether the plaintiff's alleged injury is of a type sought to be redressed by the antitrust laws; (3) the directness or indirectness of the asserted injury; (4) whether denying a remedy is likely to leave a significant antitrust violation undetected or unremedied; and (5) whether the damages claimed are highly speculative or abstract.

*Contracts Law > Remedies > Equitable Relief > Quantum Meruit*
*Contracts Law > Remedies > Restitution*
[HN8] Unjust enrichment can stand on its own as an open-ended, broad theory of restitution.

*Antitrust & Trade Law > Private Actions > Purchasers > Indirect Purchasers*
*Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage*
[HN9] Iowa's competition law does not provide a remedy to every person who can trace an injury to a defendant's anticompetitive conduct. Injuries that are remote under the analysis used in Associated General Contractors may not be recovered under Iowa Code ch. 553 (2003).

**COUNSEL:** Andrew B. Howie of Hudson, Mallaney & Shindler, P.C., West Des Moines, for appellants.

Edward W. Remsburg of Ahlers & Cooney, P.C., Des Moines; Robert C. Mason of Arnold & Porter LLP, New York, New York; and Stephen V. Bomse and David M. Goldstein of Heller Ehrman LLP, San Francisco, California, for appellee Visa U.S.A. Inc.

Kim J. Walker of Faegre & Benson LLP, Des Moines; Kenneth A. Gallo of Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, D.C.; and Gary R. Carney of Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, for appellee MasterCard International Inc.

**JUDGES:** TERNUS, Chief Justice. All justices concur except Hecht and Appel, JJ., who take no part.

**OPINION BY:** TERNUS

**OPINION**

**TERNUS, Chief Justice.**

The plaintiffs, Jeff **Southard**, Trish **Southard**, Jeffrey Stickel, Heather Stickel, Mel Lint, Keith Goodyk, and Greg Dana, [*2] filed this class action on September 18, 2003, alleging the defendants, Visa U.S.A. Inc. and MasterCard International Inc., violated Iowa's competition law, Iowa Code chapter 553 (2003). They also sought relief against the defendants on the common-law ground of unjust enrichment.

The defendants filed a motion to dismiss the plaintiffs' action on the basis that under well-established, common-law principles the plaintiffs could not recover for derivative or remote injuries. The district court

granted the defendants' motion and dismissed the plaintiffs' petition in its entirety.

The plaintiffs appealed. We affirm.

I. *Standard of Review.*

[HN1] We review a ruling on a motion to dismiss for the correction of errors at law. *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 442 (Iowa 2002). A dismissal will be affirmed "only if the petition shows no right of recovery under any state of the facts." *Id.*

[HN2] A motion to dismiss tests the legal sufficiency of the challenged pleading. *Haupt v. Miller*, 514 N.W.2d 905, 907 (Iowa 1994). Thus, the motion must stand or fall on the contents of the petition and matters of which the court can take judicial notice. *See Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 861 (Iowa 1990). [*3] Well-pled facts in the pleading assailed are deemed admitted. *Haupt*, 514 N.W.2d at 907. In addition, the petition is assessed in the light most favorable to the plaintiffs, and all doubts and ambiguities are resolved in the plaintiffs' favor. *State ex rel. Miller v. Philip Morris Inc.*, 577 N.W.2d 401, 403 (Iowa 1998).

[HN3] "If the viability of a claim is at all debatable, courts should not sustain a motion to dismiss." *Muzingo v. St. Luke's Hosp.*, 518 N.W.2d 776, 777 (Iowa 1994). Although motions to dismiss are not favored, they continue to be used, particularly when the issue is standing or the capacity to sue. *See, e.g., Philip Morris Inc.*, 577 N.W.2d at 406-07 (affirming dismissal of State's claims against tobacco manufacturers as too remote and derivative).

II. *Background Proceedings.*

The plaintiffs filed a detailed, forty-eight-page petition. In their petition, they allege they are and they represent consumers who purchased goods for cash or used Visa or MasterCard debit cards to make purchases from merchants who accept Visa or MasterCard credit cards as a form of payment. The plaintiffs contend the defendants required merchants who accepted Visa and MasterCard credit cards to also [*4] accept Visa and MasterCard debit cards. Due to this tying arrangement, the plaintiffs allege, merchants were forced to pay inflated fees for processing debit transactions over the Visa and MasterCard networks. The plaintiffs assert these magnified costs were passed along to all consumers in the form of higher prices for the goods sold by the merchants.

The plaintiffs allege the tying arrangement orchestrated by the defendants was a violation of Iowa's competition law. *See Iowa Code §§ 553.4, .5.* They claim they and others in the class were injured by the defendants' illegal conduct because all consumers paid merchants artificially inflated prices for all merchandise. *See id. § 553.12(2)* ([HN4] "[A] person who is injured . . . by conduct prohibited under this chapter may bring suit to . . . [r]ecover actual damages resulting from conduct prohibited under this chapter.").

The plaintiffs also allege the same conduct of the defendants resulted in the defendants' unjust enrichment at the expense of the plaintiffs and other class members. The plaintiffs seek restitution of the monies received by the defendants as a result of the defendants' conduct.[1]

1   The plaintiffs also allege a claim for "money [*5] had and received." This claim was ultimately dismissed by the district court, who concluded this theory was indistinguishable from the plaintiffs' unjust enrichment claim. On appeal, the plaintiffs state the district court erred in dismissing their claim for money had and received, but make no argument with respect to this theory and cite no authorities to support this statement distinct from their briefing of the unjust enrichment claim. We therefore do not separately consider or discuss the plaintiffs' theory of money had and received.

The defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. *See Iowa R. Civ. P. 1.421(1).* They asserted the plaintiffs could not recover because the plaintiffs' injuries were derivative and remote. *See Philip Morris Inc.*, 577 N.W.2d at 406-07 (explaining and applying the remoteness doctrine). They further contended the plaintiffs were not "indirect purchasers" who may sue under Iowa's antitrust law. *See Comes*, 646 N.W.2d at 451 (allowing suit by indirect purchasers under Iowa's competition law). Finally, the defendants argued the plaintiffs' unjust enrichment claim was unsupported by the facts alleged in [*6] the petition.

The district court granted the defendants' motion to dismiss. Employing the test set forth in *Associated General Contractors v. California Council of Carpenters*, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983), the district court held the plaintiffs' injuries were too remote to support a claim under chapter 553. The court agreed with the defendants that the plaintiffs in this action were not indirect purchasers like the plaintiffs permitted to sue Microsoft in the *Comes* suit.

The district court also rejected the plaintiffs' claim of unjust enrichment. It concluded the same obstacles to recovery that existed with respect to the plaintiffs' statutory claim precluded their recovery under an unjust enrichment theory. The court further held that as a result of the merchants' previous recovery from the defendants for injuries the merchants sustained as a result of the defen-

dants' illegal tying arrangement, the defendants had been stripped of their ill-gotten gains and no unjust enrichment remained. *See In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 506-09 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005). [*7]

III. *Issues on Appeal.*

The plaintiffs claim the district court's dismissal of their antitrust claims due to the remoteness of their injuries was error. They maintain this court rejected such a limitation when we held in *Comes* that indirect purchasers could sue under Iowa's competition law. The plaintiffs argue that if we do not find *Comes* dispositive, we should use the "target area" test to analyze whether they can bring suit under the Iowa competition law, rather than the *Associated General Contractors* test employed by the district court.

The plaintiffs also claim the dismissal of their unjust enrichment claim constitutes error. They assert any deficiency in their antitrust claims should not impact the viability of their unjust enrichment theory. The plaintiffs further argue they have sufficiently alleged the required elements for this common-law claim. IV. *Applicability of* Comes.

We begin our analysis by addressing the plaintiffs' assertion that our decision in *Comes*--that indirect purchasers may bring suit under chapter 553--is dispositive of the present appeal. The premise underlying the plaintiffs' position is that this court in *Comes* held common-law rules barring recovery for remote [*8] and derivative injuries do not apply to actions brought under chapter 553.

Admittedly, our *Comes* decision contains some expansive statements with respect to the reach of Iowa's antitrust statute. *See, e.g., Comes*, 646 N.W.2d at 445 ("Given the clear, broad language of the state antitrust law, we conclude the Iowa Competition Law creates a cause of action for *all* consumers, regardless of one's technical status as a direct or indirect purchaser."), 451 ("We conclude our antitrust law contemplates *all* injured consumers are authorized to bring suit to enforce our antitrust laws."). Nonetheless, these statements must be interpreted within the context in which they were made. As we stated in *Comes*: "The only issue on appeal is whether the United States Supreme Court case, *Illinois Brick [Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977)], should be followed in interpreting the Iowa Competition Law." *Id.* at 442. It is appropriate, therefore, to briefly examine the holding in *Illinois Brick*.

In *Illinois Brick*, the Supreme Court held that "the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business [*9] or property' within the meaning of [the federal antitrust law.]" 431 U.S. at 729, 97 S. Ct. at 2066, 52 L. Ed. 2d at 714. The Court pointed out that this issue was "analytically distinct from the question of which persons have sustained injuries too remote to give them standing to sue for damages" under federal law. *Id.* at 728 n.7, 97 S. Ct. at 2065 n.7, 52 L. Ed. 2d at 714 n.7.

In *Comes*, this court decided the *Illinois Brick* rule prohibiting indirect-purchaser suits should not be followed in interpreting Iowa's competition law. 646 N.W.2d at 450. Accordingly, we held "indirect purchasers may maintain an antitrust action in state court." *Id.* at 441. Because the plaintiffs in *Comes* qualified as indirect purchasers who had standing under state law, we had no need in that case to determine whether persons who were *not* indirect purchasers and who suffered injuries even more remote than those sustained by indirect purchasers had standing.

Thus, with respect to setting the outer limits of what injuries are compensable under Iowa's competition law, our decision in *Comes* is narrow. We simply rejected the federal rule barring claims by indirect purchasers. We certainly did not, as suggested [*10] by the plaintiffs, determine there were *no* limits on who could sue under chapter 553. *Cf. Kanne v. Visa U.S.A. Inc.*, 272 Neb. 489, 723 N.W.2d 293, 299-301 (Neb. 2006) (holding Nebraska decision rejecting *Illinois Brick* indirect-purchaser rule in antitrust suit against Microsoft did not reject all standing requirements).

Before discussing what limits exist with respect to who may sue under Iowa antitrust law due to the common-law remoteness doctrine, we address the plaintiffs' argument that they are indirect purchasers in the same position as the *Comes* plaintiffs. The plaintiffs in *Comes* had purchased computers that came with the Windows 98 operating system preinstalled. *Comes*, 646 N.W.2d at 441. As a precondition to the use of this operating system, the plaintiffs became end-user licensees of Microsoft. *Id.* at 441-42. The plaintiffs alleged in the class action filed on behalf of all end-user licensees of Windows 98 living in Iowa that "Microsoft maintained or used a monopoly in conjunction with its Windows 98 operating system for the purpose of excluding competition or controlling, fixing, or maintaining prices in violation of the Iowa Competition Law." *Id.* at 442. As a result of this illegal conduct, [*11] alleged the plaintiffs, Microsoft charged a higher price for its Windows 98 system than what it would have been able to charge in a competitive market. *Id.*

The plaintiffs bringing suit in *Comes* were indirect purchasers of the Windows 98 operating system because "Microsoft did not directly sell its products [to the plaintiffs, but the plaintiffs] ultimately obtained the products

through the stream of commerce." *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005). The plaintiffs in the present action are not in a comparable position because they did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity by Visa and MasterCard--debit processing services. It is clear from the petition that the plaintiffs are nonpurchasers; they simply bought merchandise from businesses that used the defendants' debit processing services. *Kanne*, 723 N.W.2d at 301 (holding consumer plaintiffs in identical Nebraska antitrust suit were not indirect purchasers of Visa and MasterCard services). Consequently, our decision in *Comes* is not dispositive of the issue presented by the present appeal: can a nonpurchaser suffering a derivative injury recover under Iowa's [*12] competition statute?

V. *Recovery by Person Having a Derivative or Remote Injury.*

[HN5] Iowa law bars recovery of derivative and remote injuries in a variety of situations. *See, e.g., Philip Morris Inc.*, 577 N.W.2d at 406-07 (suit by State against tobacco manufacturers for State's payment of medical expenses for citizens' tobacco-related illnesses); *Anderson Plasterers v. Meinecke*, 543 N.W.2d 612, 613 (Iowa 1996) (suit by employer for its losses due to third-party's negligent injury of employee). As we explained in *Philip Morris Inc.*, "The remoteness doctrine 'is not based upon a factual inquiry to determine whether the damages claimed were foreseeable or whether they were a proximate cause; rather, it is a legal doctrine incorporating public policy considerations.'" 577 N.W.2d at 406 (quoting *Kraft Chem. Co. v. Ill. Bell Tel. Co.*, 240 Ill. App. 3d 192, 608 N.E.2d 243, 245, 181 Ill. Dec. 170 (Ill. App. Ct. 1993)).

In determining whether this doctrine precludes the plaintiffs' antitrust claims, we first examine whether recovery for derivative or remote injuries is permitted under Iowa's competition law. As we noted in *Comes*, the Iowa statute authorizes recovery by a very broad category of persons: "[A] person who is injured . . . [*13] by conduct prohibited under this chapter may bring suit to: . . . [r]ecover actual damages resulting from conduct prohibited under this chapter." 646 N.W.2d at 443 (quoting Iowa Code § 533.12(2)). In part due to the broad language of the statute, this court in *Comes* rejected application of the federal rule barring suits by indirect purchasers. *Id.* at 445. Our decision was also based on the fact that although Iowa's competition law "took its cues from federal law," the indirect-purchaser rule was not a part of federal antitrust law at the time the Iowa general assembly enacted its statute. *Id.* at 447 (noting "six of the seven federal courts of appeals that considered this issue [had] held indirect purchasers could recover damages for antitrust violations"). We concluded, therefore, that "it was impossible for the legislature to have adopted a judicial construction which did not exist at that time." *Id.*

Obviously, in considering the application of the remoteness doctrine in the present case, we are dealing with the same broad statutory language interpreted in *Comes*. The history of federal antitrust law is, however, quite different with respect to the remoteness doctrine than it was with [*14] respect to the indirect-purchaser rule. Prior to the enactment of the Iowa competition law in 1976, *see* 1976 Iowa Acts ch. 1224, the United States Supreme Court observed, "The lower courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 n.14, 92 S. Ct. 885, 892 n.14, 31 L. Ed. 2d 184, 193 n.14 (1972).

As we determined in *Comes*, the interpretation given to the federal antitrust law at the time the Iowa competition law was adopted informs our search for legislative intent. Therefore, we conclude [HN6] the Iowa legislature did not intend to allow every person tangentially affected by a violation of the statute to have a remedy in damages. This conclusion leads us to consider whether the plaintiffs' injuries are too remote to be recoverable under chapter 553.

VI. *Test to Determine Antitrust Standing.*

Although lower courts had unanimously rejected claims for remote injuries prior to Iowa's adoption of its antitrust law in 1976, the United States Supreme Court did not directly address this issue until [*15] its 1983 decision in *Associated General Contractors*. In that case, the Court noted the federal antitrust statute was "broad enough to encompass every harm that can be attributed directly or indirectly to the consequences of an antitrust violation," but concluded "Congress intended the Act to be construed in the light of its common-law background." *Associated Gen. Contractors*, 459 U.S. at 529, 531, 103 S. Ct. at 904-05, 74 L. Ed. 2d at 733. This common-law background encompassed constraints on who could recover, including limitations on recovery for remote injuries. *Id.* at 532 n.25, 103 S. Ct. at 905 n.25, 74 L. Ed. 2d at 734-35 n.25. In determining who could recover under the federal act, i.e., who has "antitrust standing," the Court focused on "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Id.* at 535, 103 S. Ct. at 907, 74 L. Ed. 2d at 736.

The defendants urge us to reject the *Associated General Contractors* (*AGC*) test and employ the "target area" test to analyze standing. Under the latter test, a plaintiff

must simply be in the "target area" of the antitrust conspiracy, that is, "the area of the economy which is endangered by a [*16] breakdown of competitive conditions in a particular industry." *Id. at 537 n.33, 103 S. Ct. at 908 n.33, 74 L. Ed. 2d at 737 n.33*. The United States Supreme Court rejected this test in *Associated General Contractors*, instructing courts to consider the multiple factors set forth in that decision. *Id.* Moreover, contrary to the defendants' claim the "target area" test is more widely accepted, it appears federal and state courts have uniformly applied the *AGC* test.

The "target area" test, which is in essence an analysis of foreseeability, is inconsistent with Iowa's common-law limitation on recovery for remote injuries, which is *not* based on the foreseeability of the plaintiff's damages. *See Philip Morris Inc., 577 N.W.2d at 406* ("The remoteness doctrine 'is not based upon a factual inquiry to determine whether the damages claimed were foreseeable . . . .'" (quoting *Kraft Chem. Co., 608 N.E.2d at 245*)). We think the *AGC* test is more reflective of the legal context within which the Iowa legislature enacted Iowa's competition law. Therefore, we apply the *AGC* factors to determine whether the plaintiffs may recover under Iowa law.

VII. *Application of the AGC Test.*

[HN7] To determine standing under [*17] our antitrust law, we will examine "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Associated Gen. Contractors, 459 U.S. at 535, 103 S. Ct. at 907, 74 L. Ed. 2d at 736*. In *Associated General Contractors*, the Court focused on five factors to guide its examination: (1) whether the claim alleges a causal connection between the antitrust violation and the plaintiff's alleged harm; (2) whether the plaintiff's alleged injury is of a type sought to be redressed by the antitrust laws; (3) the directness or indirectness of the asserted injury; (4) whether denying a remedy is likely to leave a significant antitrust violation undetected or unremedied; and (5) whether the damages claimed are highly speculative or abstract. *Id. at 536-45, 103 S. Ct. at 908-12, 74 L. Ed. 2d at 737-43*. We think the district court properly applied these factors in deciding the plaintiffs had no standing under Iowa's competition law.

It is not disputed the plaintiffs have alleged a causal connection between the defendants' illegal conduct and the plaintiffs' alleged injuries. On the other hand, the plaintiffs are neither consumers of the defendants' products nor competitors [*18] of the defendants. Therefore, the plaintiffs are not "participants in the relevant market," and their injuries are not of the type sought to be compensated by antitrust laws. *Id. at 538, 103 S. Ct. at 908-09, 74 L. Ed. 2d at 738*. Clearly, the injuries alleged by the plaintiffs are not even indirect, as the plaintiffs are not in the chain of distribution. Their injuries are better described as derivative. Denying a remedy will not leave the alleged antitrust violation undetected or unremedied. Indeed, the action brought by merchants against Visa and MasterCard was settled by the defendants' payment of more than three billion dollars into a settlement fund and an agreement to abandon the alleged tying arrangements. *See In re Visa Check/MasterMoney Antitrust Litig., 297 F. Supp. 2d at 506-09*. Finally, a determination of the plaintiffs' damages would be a complex process at best and speculative at worst because many factors impact a retailer's decision-making process when setting prices on products sold to consumers. Considering the *AGC* factors, we hold the district court properly determined the plaintiffs' injuries were too remote to be compensable under Iowa's competition law. *See Kanne, 723 N.W.2d at 298-99* [*19] (affirming dismissal of identical action brought under Nebraska antitrust law, holding consumers' injuries were too remote under *AGC* test); *Ho v. Visa U.S.A., Inc., 16 A.D.3d 256, 793 N.Y.S.2d 8, 9 (App. Div. 2005)* (same).

VIII. *Unjust Enrichment Claim.*

The plaintiffs alleged in their petition that the defendants' illegal tying arrangements unjustly enriched the defendants at the plaintiffs' expense because the merchants who paid artificially high prices for the defendants' debit processing services passed those costs along to the plaintiff consumers. The district court dismissed this claim, concluding it suffered from the same remoteness-of-injury problem as the plaintiffs' antitrust claims and that there was no enrichment due to the defendants' settlement of the antitrust action brought by merchants.

Plaintiffs rely on the broad and open-ended nature of the equitable doctrine of unjust enrichment to support their claim. *See State ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 150 (Iowa 2001)* (stating that [HN8] unjust enrichment "can stand on its own as an open-ended, broad theory of restitution"). Plaintiffs overlook that this common-law theory is subject to the common-law rule that bars recovery for [*20] remote injuries. Relying on the remoteness doctrine, this court, in *Philip Morris Inc.*, concluded the district court had correctly dismissed the State's claim for indemnity, a form of unjust enrichment. *577 N.W.2d at 406. See generally Unisys Corp., 637 N.W.2d at 149-50* (noting the theory of unjust enrichment has "given rise to specific derivative theories, such as contribution and indemnity"). We held the State's injury--payment of citizens' medical expenses made necessary by the defendants' conduct--was too remote to recover. *Philip Morris Inc., 577 N.W.2d at 406-07*.

The same conclusion must logically be reached here. Therefore, the district court did not err in dismissing the

plaintiffs' unjust enrichment claim on the basis the plaintiffs' injuries were too remote.

IX. *Summary.*

[HN9] Iowa's competition law does not provide a remedy to every person who can trace an injury to a defendant's anticompetitive conduct. Injuries that are remote under the analysis used in the *Associated General Contractors* case may not be recovered under chapter 553.

In the present case, the plaintiff consumers' injuries are remote, and therefore, the plaintiffs lack antitrust standing. Moreover, the plaintiffs are [*21] not indirect purchasers of the defendants' services; they are nonpurchasers. Consequently, they cannot benefit from our decision in *Comes* to allow indirect purchasers to bring suit under Iowa's competition law.

Finally, the plaintiffs cannot recover under a theory of unjust enrichment because their injuries are too remote.

The district court correctly granted the defendants' motion to dismiss the plaintiffs' claims. Accordingly, we affirm.

**AFFIRMED.**

All justices concur except Hecht and Appel, JJ., who take no part.

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on July 12, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

**HAND DELIVERY:**

James L. Holzman (#663)
J. Clayton Athey (#4378)
Eric M. Andersen (#4376)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

**ELECTRONIC MAIL:**

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
Allyson B. Baker
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
mhausfeld@cmht.com
dsmall@cmht.com
blandau@cmht.com
abaker@cmht.com

Michael P. Lehman
Thomas P. Dove
Alex C. Turan
The Furth Firm LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
mplehmann@furth.com
tdove@furth.com
aturan@furth.com

1

| | |
|---|---|
| Steve W. Berman<br>Anthony D. Shapiro<br>Hagens Berman Sobol Shapiro LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA 98101<br>steve@hbsslaw.com<br>tony@hbsslaw.com | Guido Saveri<br>R. Alexander Saveri<br>Saveri & Saveri, Inc.<br>111 Pine Street, Suite 1700<br>San Francisco, CA 94111<br>guido@saveri.com<br>rick@saveri.com |

By: /s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000

806634/29282

2