IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                :
                                      :
INTEL CORP. MICROPROCESSOR            : MDL Docket No. 05-1717-JJF
ANTITRUST LITIGATION                  :
_____ :_____
                                      :
PHIL PAUL, on behalf of himself       :
and all others similarly              :
situated,                             :
                                      : **CONSOLIDATED ACTION**
          Plaintiffs,                 : Civil Action No. 05-485-JJF
                                      :
     v.                               :
                                      :
INTEL CORPORATION,                    :
                                      :
          Defendant.                  :
     _____

Michael D. Hausfeld, Esquire; Daniel A. Small, Esquire; Brent W.
Landau, Esquire and Allyson B. Baker, Esquire of COHEN, MILSTEIN,
HAUSFELD & TOLL, P.L.L.C., Washington, D.C.
Michael P. Lehmann, Esquire; Thomas P. Dove, Esquire and Alex C.
Turan, Esquire of FURTH LEHMANN & GRANT LLP, San Francisco,
California.
James L. Holzman, Esquire; J. Clayton Athey, Esquire and Laina M.
Herbert, Esquire of PRICKETT JONES & ELLIOTT, P.A., Wilmington,
Delaware.

Interim Liaison Counsel for the Class Plaintiffs.

David M. Balabanian, Esquire; James L. Hunt, Esquire; Christopher
B. Hockett, Esquire and Nora C. Cregan, Esquire of BINGHAM
McCUTCHEN LLP, San Francisco, California.
Richard A. Ripley, Esquire of BINGHAM McCUTCHEN LLP, Washington,
D.C.
Richard L. Horwitz, Esquire and W. Harding Drane, Jr., Esquire of
POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Attorneys for Defendant Intel Corporation.

_____

**<u>MEMORANDUM OPINION</u>**


July 12, 2007
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendant Intel Corporation's Motion To Dismiss The First Amended Consolidated Complaint (D.I. 217 in Civil Action No. 05-485 and D.I. 307 in MDL Docket No. 05-1717).[1] For the reasons discussed the Court will grant-in-part and deny-in-part Defendant's Motion.

### BACKGROUND

The background related to this action has been set forth by the Court in its previous decision (D.I. 299) addressing the Motion To Dismiss Class Plaintiffs Foreign Conduct Claims filed by Defendant Intel Corporation ("Intel"). In re Intel Corp. Microprocessor Litig., 2007 WL 685564, *1-2 (D. Del. Mar. 7, 2007). By way of brief summary, Class Plaintiffs filed multiple class action lawsuits against Intel after it was sued by Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively, "AMD"). Those lawsuits have been consolidated here.

Class Plaintiffs represent United States consumers who purchased computers containing Intel x86 microprocessors. The allegations of Class Plaintiffs' First Amended Consolidated Complaint (the "Complaint") are similar to, and at times, identical to the allegations of AMD's Complaint. Class

---

[1]    In citing to additional documents throughout this Memorandum Opinion, the Court will refer to the docket item numbers used in Civil Action No. 05-485-JJF.

1

Plaintiffs allege seven causes of action, including: (1) Section 2 of the Sherman Act, 15 U.S.C. § 2 (Count I); (2) Section 16720 of the California Business and Professional Code for unlawful trust in restraint of trade and commerce (Count II); (3) the prohibition against monopolies under California state tort law (Count III); (4) Section 1700 et seq. of the California Business and Professional Code for unfair competition (Count IV); (5) antitrust and restraint of trade violations under the laws of nineteen states and the District of Columbia (Count V); (6) consumer protection and/or unfair competition violations under the laws of twenty-two states and the District of Columbia (Count VI); and (7) unjust enrichment and disgorgement of profits under the common law of California, or alternatively the common law of the other States at issue and the District of Columbia (Count VII). Class Plaintiffs seek a variety of relief, including punitive damages, treble damages, disgorgement of profits, the establishment of a constructive trust from which the Class Plaintiffs can seek restitution based on the disgorgement of profits, the costs of bringing this lawsuit, and reasonable attorneys' fees.

By the instant Motion, Intel requests the Court to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim and lack of standing. The parties have fully briefed Intel's Motion, and therefore, this matter is ready for the

Court's review.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is also invoked for questions of antitrust standing. Maio v. Aetna, Inc., 221 F.3d 472, 481 n. 7 (3d Cir. 2000).

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). While the Court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).[2] Heightened fact pleading

---

[2]    Intel filed a Supplemental Brief addressing the Twombly decision. Class Plaintiffs have also filed a response. The Second Circuit recently identified and discussed the "conflicting signals" from Twombly in determining how that decision impacts the standard for reviewing a motion to dismiss. Iqbal v. Hasty, 2007 WL 1717803, *8-*11 (2d Cir. June 14, 2007). While the Second Circuit acknowledged that Twombly dealt with antitrust claims under Section 1 of the Sherman Act, the Second Circuit also acknowledged that the Supreme Court likely intended some change in the dismissal standard extending beyond antitrust conspiracy cases.

       The Court understands Twombly to primarily be a decision aimed at bringing the standard of dismissal back to its "roots" by undoing the literal reading of Conley v. Gibson, 355 U.S. 41 (1957), engaged in by some courts and emphasizing that

is not required, but enough facts must be alleged to state a claim to relief that is plausible on its face. Id. at 1974. The Court is not required to accept legal conclusions alleged or inferred from the pleaded facts. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S. Ct. at 1969. The burden of demonstrating that dismissal is appropriate rests on the movant.

## DISCUSSION

## I.   Whether Class Plaintiffs Have Stated A Claim Under Federal Or State Antitrust Laws

### A.   Antitrust Standing

To demonstrate standing for the purposes of pursuing an antitrust claim, Class Plaintiffs must demonstrate the Constitutional standing requirements of Article III, § 2, namely a "case" or "controversy." However, the Constitutional standing requirements are "augmented by consideration of prudential limitations." City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 264 (3d Cir. 1998). Specifically, Class Plaintiffs must demonstrate that they have antitrust standing and are the

---

Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." 127 S. Ct. at 1969. For purposes of Intel's motion here, the Court will apply, where applicable, what the Second Circuit has coined the "flexible plausibility standard" of Twombly to Class Plaintiffs' claims as outlined by the Court in its recitation of the standard of review governing Intel's Motion.

proper parties to bring a private antitrust action.  Id.  In
Associated General Contractors of California  v. California State
Council of Carpenters, 459 U.S. 519, 537-545 (1983), the Supreme
Court outlined five factors that courts should consider when
determining whether a party has standing to bring a private
action under the antitrust laws.  These factors include:  (1)
whether plaintiff's alleged injury is the type of injury that the
antitrust laws were intended to redress (i.e., the antitrust
injury requirement); (2) the causal connection between the
antitrust violation and the harm to the plaintiff, including the
defendant's intent to cause that harm; (3) whether the injury is
a direct injury or a speculative injury; (4) whether there are
more direct victims of the alleged antitrust violations; and (5)
the potential for duplicative recovery or complex apportionment
of damages.  West Penn, 147 F.3d at 264 (restating the Associated
General Contractors ("AGC") factors).

     Intel contends that Class Plaintiffs cannot demonstrate
antitrust injury because they received the benefit of Intel's
alleged price cuts and rebates.  According to Intel, Class
Plaintiffs cannot allege antitrust injury, because low prices
benefit consumers, regardless of how those prices are set.  Intel
further contends that Class Plaintiffs cannot demonstrate that
the remaining AGC factors support their assertion that they have
antitrust standing.

5

In response, Class Plaintiffs contend that the heightened prudential standing requirements represented by the AGC five-factor test are not relevant to Class Plaintiffs' antitrust claims.  Class Plaintiffs point out that their only federal claim is a claim for injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 16, and Class Plaintiffs contend that Section 16 is not as demanding as Section 4.  Under Section 16, Class Plaintiffs contend that they need only establish a threat of antitrust injury.

Although Class Plaintiffs seek damages under state antitrust laws, Class Plaintiffs contend that the AGC factors do not apply to those claims.  Rather, Class Plaintiffs contend that the appropriate standing analysis for these claims must look to state law, not federal law, because state law permits indirect purchasers to bring antitrust claims.  In the alternative, Class Plaintiffs contend that the AGC factors weigh in favor of Class Plaintiffs' standing, and in any event, standing is a fact-intensive inquiry best left to later stages of the proceedings when the parties have the benefit of a more fully developed factual record.

The Court begins its analysis by determining whether it is appropriate to apply the AGC five-factor test to all of Class Plaintiffs' claims.  The Court has reviewed the parties' arguments concerning this issue and concludes that it is

appropriate to apply the AGC factors if not directly, at least as
a guide, in evaluating Class Plaintiffs' state law antitrust
claims.  Relying on D.R. Ward Construction Co. v. Rohm & Haas
Co., 2006 U.S. Dist. LEXIS 61828 (E.D. Pa. May 31, 2006), Class
Plaintiffs contend that the AGC factors are inapplicable to state
law claims, even where the applicable state law has a
"permissive" harmonization statute that allows federal courts to
use federal law as a guide in interpreting them.  However, the
Court finds D.R. Ward to be inconsistent with the prevailing
approach to this question by courts applying the laws of states
that have rejected the Illinois Brick prohibition on indirect
purchaser suits.  Lorix v. Crompton Corp., 720 N.W.2d 15, 18-19
(Minn. 2006); Kanne v. Visa U.S.A., Inc., 723 N.W.2d 293, 301
(Neb. 2006); Strang v. Visa U.S.A., Inc., 2005 WL 1403769, *3-5
(Wis. Cir. Ct. Feb. 8, 2005); Peterson v. Visa U.S.A., Inc., 2005
WL 1403761, *3-6 (D.C. Super Ct. Apr. 22, 2005); Southard v. Visa
U.S.A., Inc., 2004 WL 3030028, *3-4 (Iowa Dist. Ct. Nov. 17,
2004).

      The Court further agrees with Intel, that Class Plaintiffs'
argument against the use of federal law as a guideline blurs the
distinction between the question of standing and the question of
whether indirect purchasers may sue for antitrust injury.  That
numerous state courts have declined to apply the indirect
purchaser bar announced by the Supreme Court in Illinois Brick

7

does not equate with the question of whether standing under those states' laws should be informed by federal law.

As for Class Plaintiffs' federal law claim, the Court notes that Class Plaintiffs are correct that plaintiffs bringing claims under Section 16 of the Sherman Act need only demonstrate a threat of loss for injunctive relief; however, Section 16 plaintiffs are still required to demonstrate that the threatened injury is the type of injury the antitrust laws were designed to prevent.  Accordingly, in light of the foregoing, the Court will loosely apply the AGC factors as a guide in analyzing the standing issues relevant to Class Plaintiffs' federal and state law claims.

To establish an antitrust injury, a plaintiff must allege a type of injury that the antitrust laws were designed to prevent and which flows from the conduct that makes the defendant's actions unlawful.[3]  Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977).  Reviewing the Complaint in the light most favorable to Class Plaintiffs as the Court must on a motion to dismiss, the Court concludes that Class Plaintiffs have sufficiently alleged antitrust injury at this juncture.  Class Plaintiffs have alleged that Intel engaged in a variety of

---

[3]     Class Plaintiffs agree with Intel that this element of AGC applies to both their federal and state claims; however, Class Plaintiffs contend that the antitrust injury under Section 16 is less demanding than Section 4 and broader for their state law claims.

anticompetitive actions

> with the goal of keeping competitors small and keeping
> Intel's customers dependent on Intel for very
> substantial amounts of product.  In this way, OEMs
> remain vulnerable to continual threats of Intel
> retaliation, Intel's competitors remain capacity-
> constrained, the OEMs remain Intel-dependent, and Intel
> thereby perpetuates its economic hold over them,
> allowing it to continue to demand that customers
> curtail their dealings with Intel's competitors.

Complaint at ¶ 141.  According to Class Plaintiffs this

anticompetitive conduct allowed Intel to garner a higher market

share, which allowed Intel to charge higher prices to consumers.

Id. at 1, 2, 5.  By keeping their rivals small, Class Plaintiffs

contend that Intel prevents them from offering lower-priced or

higher quality products.  If its rivals were able to offer such

products, Intel would then be forced in turn to lower its own

prices.  Stated another way, Class Plaintiffs have alleged that

"but for" Intel's anticompetitive conduct, Intel's prices would

have been lower.  Injury in the form of higher prices to

consumers is within the type of injury that the antitrust laws

are designed to prevent.  See e.g., Allegheny Gen. Hosp. v.

Philip Morris, Inc., 228 F.3d 429, 439 (3d Cir. 2000).

Intel contends that Class Plaintiffs cannot state an

antitrust injury because their arguments are based on Intel's

average prices overall, and Plaintiffs have not alleged (and

cannot allege) how industry-wide average prices of Intel chips

affect the transaction prices of the products they actually

9

purchased.  (D.I. 293 at 10.)  However, the cases Intel cites to support its argument are in the context of class certification disputes.

Intel also contends that Class Plaintiffs' argument involves too speculative a chain of events, and therefore, any alleged injury is too remote and speculative to establish that the alleged injury flowed from Intel's alleged anticompetitive conduct.  "The concept of antitrust injury overlaps with the [causation] factor in the balancing test because the injury must be causally related to the defendant's allegedly anticompetitive activity."  West Penn, 147 F.3d at 265.  At this early stage of the proceedings, the Court concludes that Class Plaintiffs have sufficiently alleged "but for" causation.  However, the Court acknowledges that the parties' arguments are complex and intensely factual, and therefore, the Court concludes that a more fully developed factual record is necessary to address them.

As for the remaining three AGC factors, the Court concludes that they carry less weight in the standing analysis in jurisdictions rejecting Illinois Brick.  For example, in applying the fourth AGC factor, the Court must determine whether there are more direct victims of the alleged antitrust violations.  However, under the state statutes asserted by Class Plaintiffs, indirect purchasers are permitted to bring claims, and therefore, the existence of more direct victims would not necessarily

undercut Class Plaintiffs' standing.  Accordingly, the Court
concludes that the allegation of the Complaint are sufficient to
withstand dismissal, and therefore, the Court will deny Intel's
Motion To Dismiss based on the failure to allege antitrust
standing.

     B.   <u>Choice Of Law</u>

     Intel next requests the Court to dismiss Class Plaintiffs'
claims for violation of California law as alleged in Count II
(violation of the Cartwright Act); Count III (California tort law
against monopolization) and Count IV (violation of the California
Unfair Competition Law), as those Counts pertain to non-
California Plaintiffs.  Intel's request for dismissal implicates
a choice of law analysis.  Specifically, Intel contends that it
is inappropriate to apply California law on a nation-wide basis,
because such application would frustrate the laws of other states
who also have an interest in this litigation.  In conducting this
choice of law analysis, Intel contends that the Court must apply
the choice of law rules of the transferor forum states, namely
Delaware, California, Florida and Tennessee.

     Class Plaintiffs agree that a choice of law analysis is
necessary in this case; however, they believe it should be
reserved until class certification proceedings.  In any event,
Class Plaintiffs contend that the appropriate choice of law
analysis is for this Court to apply California choice of law

principles because the majority of the transferred cases came from California, with only two cases coming from Tennessee and only one case from Florida.

The Court agrees with Class Plaintiffs that analysis of the choice of law questions presented in this litigation should be deferred. This litigation is still in its infancy, and the Court concludes that these complex and sometimes dispositive choice of law questions should be made with the benefit of a more complete context for this litigation. Accordingly, the Court declines to engage in a choice of law analysis at this time, and therefore, the Court will deny Intel's Motion to the extent that it seeks dismissal of claims under California law asserted by Class Plaintiffs who do not live in California.

   C.   <u>Antitrust Claims Asserted Under The Laws Of The States Of Mississippi, Nevada, South Dakota, West Virginia And The District Of Columbia</u>

Intel next contends that Class Plaintiffs have failed to state claims under the antitrust laws of Mississippi, Nevada, South Dakota, West Virginia and the District of Columbia.[4]  Intel contends that these jurisdictions limit the reach of their antitrust laws to intrastate conduct. According to Intel, Class

_____

     [4]    Defendants have included the State of New York in their argument as the fifth state at issue. However, Plaintiffs' claims under New York law fail for reasons apart from the intrastate pleading requirement, and therefore, the Court will not discuss New York law here. <u>See</u> <u>infra</u> Section I.D. of the Discussion portion of this Memorandum Opinion.

Plaintiffs' Complaint alleges the monopolization of a world-wide market.  Thus, Intel contends that Class Plaintiffs have failed to allege that Intel engaged in any state-specific conduct or that Intel directed its alleged anticompetitive conduct toward any particular state.

Directing the Court to case law applying the laws of the four states at issue and the District of Columbia, Class Plaintiffs respond that Intel's alleged conduct has both an intrastate and interstate component.  Class Plaintiffs contend that the sales of computers containing Intel x86 microprocessors occurred wholly within the four states and the District of Columbia, and therefore, any intrastate component required by these laws is satisfied.  Class Plaintiffs also point out that they have alleged injury throughout the United States and the District of Columbia.  Specifically, Class Plaintiffs direct the Court to the following allegations contained in the Complaint:

> 248. Intel's contracts, trusts or conspiracies were entered into, carried out, effectuated and perfected mainly within the State of California, and Intel's conduct within California injured all Class members throughout the United States.  Therefore, this claim for relief under California law is brought on behalf of all Class members, whether or not they are California residents.

> 251. The contracts, trusts or conspiracies alleged herein have had, inter alia, the following effects:

> > a.    price competition in the sale of microprocessors has been restrained, suppressed and/or eliminated in the State of California and throughout the United States;

13

       b.   prices for microprocessors sold by Intel
and its co-conspirators have been fixed,
raised, maintained and stabilized at
artificially high, non-competitive levels in
the State of California and throughout the
United States; and

       c.   those who purchased microprocessors from
Intel have been deprived of the benefit of
free and open competition.

252. Plaintiffs and the Class members paid and continue
to pay supra-competitive, artificially inflated prices
for microprocessors.

253. As a direct and proximate result of Intel's
unlawful conduct, Plaintiffs and the Class members have
been injured in their business and property in that
they paid more for Intel's x86 microprocessors (or for
products containing such microprocessors) than they
would have paid absent Intel's unlawful conduct.  As a
result of Intel's violation of Section 16720,
Plaintiffs and the Class members seek treble damages
and the costs of suit, including reasonable attorneys'
fees, pursuant to Section 16750(a) of the California
Business and Professions Code.

The Court will address the parties' arguments in the context

of the law of each of the challenged jurisdictions.

       1.   District of Columbia

In full, the District of Columbia's antitrust legislation

provides:

It shall be unlawful for any person to monopolize,
attempt to monopolize, or combine or conspire with any
other person or persons to monopolize any part of trade
or commerce, all or any part of which is within the
District of Columbia.

D.C. Code § 25-4503 (emphasis added).  In GTE New Media Servs,

Inc. v. Ameritech Corp., 21 F. Supp. 2d 27, 45 (D.D.C. 1998), the

United States District Court for the District of Columbia applied

14

this statute in the context of addressing the defendants' motion to dismiss the plaintiff's antitrust claims. Specifically, the plaintiff alleged that the defendants illegally combined to restrain trade and monopolize the Internet Yellow pages market by controlling Internet access points through which competing Internet Yellow Pages providers offered their services. In this way, users who sought Yellow Pages information were directed by web browsers exclusively to the defendants' companies. Recognizing that D.C. Code § 25-403 requires the plaintiff to allege a "connection with this jurisdiction," the court found that "the plaintiff ha[d] satisfied this separate requirement by alleging the defendants' anti-competitive activity impacts upon Internet users and businesses purchasing Internet Yellow Pages advertisements in the District of Columbia." Id. at 45.

Construing the allegations of the Complaint in the light most favorable to Class Plaintiffs and drawing all reasonable inferences in favor of Class Plaintiffs as the Court must on a Motion To Dismiss, the Court concludes that Class Plaintiffs have alleged an impact upon consumers in the District of Columbia through their allegations that the putative class members were injured by Intel's alleged conduct throughout the United States and in the District of Columbia. Accordingly, at this juncture, the Court will deny Intel's Motion To Dismiss Class Plaintiffs' claims under the antitrust laws of the District of Columbia.

15

        2.   Mississippi

     Mississippi's antitrust laws prohibit agreements to

"restrain trade," "increase . . . the price of a commodity," or

"hinder competition in the production, importation, . . . sale or

purchase of a commodity."  Miss. Code Ann. § 75-21-1.  In In re

New Motor Vehicles Canadian Export Antitrust Litig. ("NMV"), 350

F. Supp. 2d 160, 171 (D. Me. 2004), the defendants raised the

same argument that Intel raises here, that Mississippi's

antitrust laws are limited to intrastate conduct and the

plaintiffs' failure to allege state specific activity required

dismissal of their complaint.  However, the NMV court recognized

that the Mississippi Supreme Court has characterized sales and

distribution within Mississippi as intrastate in character when

made "'after the ... products [have] been received ... in this

state and ... incorporated into the general mass of property

therein.'"  Id. (quoting Standard Oil Co. of Kentucky v. State,

65 So. 468, 471 (1914)).  In Standard Oil, the Mississippi

Supreme Court went on to conclude that "to be punishable under

state laws, [a conspiracy to monopolize trade] must have as one

of its objects a monopoly in the intrastate trade ... to be

accomplished in part at least by transactions which are also

wholly intrastate."  65 So. at 471.  Extrapolating from this line

of reasoning, the NMV court found it reasonable to infer from the

complaint that the defendants wanted Mississippi car dealerships,

                                                              16

like the dealerships in all states, to charge Mississippi consumers higher prices as a result of the lack of competition from Canadian imports.  The court concluded that some of these sales "would occur wholly within the State of Mississippi, after the vehicle had been 'incorporated into the general mass of property' in the state, thereby falling within the compass of the Mississippi antitrust statute." NMV, 350 F. Supp. 2d at 171.  In the Court's view, Class Plaintiffs' Complaint satisfies this requirement.[5]  Accordingly, the Court will deny Intel's Motion To Dismiss Class Plaintiffs' claims under Mississippi's antitrust laws.

       3.    Nevada

    Nevada's antitrust statute, the Nevada Unfair Trade Practices Act ("NUTPA"), delineates certain anticompetitive conduct and states that it is "unlawful to conduct any part of such activity in this state."  Nev. Rev. Stat. § 598A.060.  In NMV, the court also examined this statute and concluded that it was reasonable to construe the plaintiffs' complaint as alleging

_____

        [5]    Intel argues that no part of Intel's conduct can be considered "wholly intrastate" in character, because Intel is a component maker and Class Plaintiffs are indirect purchasers of downstream products who are several links down the manufacturing and distribution chain from Intel's alleged conduct.  However, the component part argument does not appear to be relevant to the Mississippi Supreme Court's approach to when sales and distributions within the state assume an intrastate character. Standard Oil, 65 So. at 471.

a conspiracy among car manufacturers and Nevada dealers which
"contemplated vehicle sales in Nevada at higher prices because of
the exclusion of Canadian vehicles." 350 F. Supp. 2d at 171-172.
This approach is also consistent with the approach taken by the
United States District Court for the District of Nevada in Pooler
v. R.J. Reynolds Tobacco Co., 2001 WL 403167, *2 (Nev. Dist. Ct.
Apr. 4, 2001) (concluding that allegations of anticompetitive
conduct in domestic and foreign markets included the marketing
and sale of tobacco products in Nevada and denying motion to
dismiss complaint for failure to allege acts committed in the
state which were part of the alleged illegal activity).

In this case, the sale of computers containing the x86
microprocessor is at least part of the anticompetitive conduct
alleged by Class Plaintiffs, and the Court concludes that it is
reasonable to infer from Class Plaintiffs' allegations of
indirect purchaser injury throughout the United States that Class
Plaintiffs' allegations of anticompetitive conduct by Intel
include the sale of the x86 microprocessor in Nevada markets.
Accordingly, the Court will deny Defendants' Motion To Dismiss
Class Plaintiffs' claims under the NUTPA.

    4.  South Dakota

South Dakota's antitrust law provides that "[a] contract,
combination or conspiracy between two or more persons in
restraint of trade or commerce any part of which is within this

18

state is unlawful." S.D. Rev. Code § 37-1-31 (emphasis added).
As the court in NMV recognized, this statute is ambiguous
regarding whether part of the conspiracy or part of the trade or
commerce must be within the state. The NMV court went on to
assume that the State of South Dakota intended its antitrust
coverage to be as broad as possible, and therefore, allegations
that part of the trade or commerce occurred within South Dakota
were sufficient to bring the related conspiracy into the reach of
South Dakota law. Intel has not persuaded the Court that this
construction of South Dakota law is erroneous, and Class
Plaintiffs have, at least by reasonable inference, alleged the
sale of computers containing Intel x86 microprocessors in South
Dakota. Accordingly, the Court will deny Intel's Motion To
Dismiss Class Plaintiffs' claims under South Dakota's antitrust
laws.

     5.   West Virginia

West Virginia's antitrust statute provides that "[e]very
contract, combination in the form of trust or otherwise, or
conspiracy in restraint of trade or commerce in this State shall
be unlawful." W. Va. Code § 37-18-3 (emphasis added). Further,
the portion of the West Virginia Code dealing with monopoly
provides that "[t]he establishment, maintenance or use of a
monopoly or an attempt to establish a monopoly of trade or
commerce, any part of which is within this State, by any persons

for the purpose of excluding competition or controlling, fixing or maintaining prices is unlawful." W. Va. Code § 37-18-4 (emphasis added). Because Class Plaintiffs have, at least by reasonable inference, alleged the sale of computers containing Intel x86 microprocessors in West Virginia, the Court concludes at this juncture, that Class Plaintiffs' claims under West Virginia law withstand dismissal. Accordingly, the Court will deny Intel's Motion To Dismiss Class Plaintiffs' West Virginia antitrust claims.

   D.   Class Plaintiff's Class Action Claim For Violation Of New York's Antitrust Law

In their Complaint, Class Plaintiffs allege a claim under New York Gen. Bus. Law § 30 et seq. (the "Donnelly Act") for antitrust violations. By its Motion, Intel contends that Class Plaintiffs cannot maintain this claim, because New York's class action statute, CPLR § 901(b)[6], prohibits class actions under statutes like the Donnelly Act that provide for a treble damages remedy, but do not specifically authorize class action recovery.

In response, Class Plaintiffs contend that this Court need not apply CPLR § 901(b), because it is a procedural rule whose

_____

   [6]   CPLR § 901(b) provides:

   Unless a statute creating or imposing a penalty, or a
   minimum measure of recovery specifically authorizes the
   recovery thereof in a class action, an action to
   recover a penalty, or minimum measure of recovery
   created or imposed by statute may not be maintained as
   a class action.

application is usurped by Federal Rule of Civil Procedure 23.
Because Rule 23 does not prohibit class recovery on treble
damages claims, Class Plaintiffs maintain that class
certification is not precluded, and therefore, dismissal of their
Donnelly Act claim is not warranted.

This Court has previously concluded that Federal Rule of
Civil Procedure 23 does not conflict with § 901(b), and that
under the principles set forth in Erie R.R. v. Tompkins, 304 U.S.
64, 78 (1938), application of CPLR § 901(b) is appropriate.
United States v. Dentsply Int'l, Inc., 2001 WL 624807, 15-16 (D.
Del. Mar. 30, 2001) (Robinson, C.J.).  The Court finds no reason
to depart from the rationale in Dentsply.[7]

As Class Plaintiffs recognize, if Section 901(b) applies,
this Court is bound by the interpretation of New York law
provided by the Court of Appeals of New York.  See Gruber v.
Owens-Illinois, Inc., 899 F.2d 1366, 1369 (3d Cir. 1990) ("In
interpreting state statutes, decisions of the state's highest
court are binding upon us.")  In Sperry v. Crompton, 2007 WL
527726 (N.Y. Feb. 22, 2007), the Court of Appeals of New York

_____

[7]    Further, a majority of courts have concluded that § 901
is a substantive rule and not a procedural rule.  Therefore,
under Erie principles, § 901 applies in federal court diversity
actions.  See Holster v. Gatco, Inc., 2007 WL 923086, *4-6
(E.D.N.Y. Mar. 23, 2007).  For additional discussion of Erie
principles in the context of Class Plaintiffs' class action
consumer protection claims see infra Section II of the Discussion
portion of this Memorandum Opinion.

concluded that a class action for treble damages cannot be
maintained under the Donnelly Act.  Accordingly, the Court will
grant Intel's Motion To Dismiss Class Plaintiffs' antitrust claim
for treble damages under the Donnelly Act.

## II.  Whether Class Plaintiffs Have Stated A Claim Under State Consumer Protection Statutes

In arguing that Class Plaintiffs' claims under state
consumer protection statutes should be dismissed, Intel first
reiterates its argument that Class Plaintiffs have not suffered
any injury, and therefore, they lack standing to pursue claims
under state consumer protection laws.  For the reasons discussed
in the context of Plaintiffs' antitrust claims, the Court
concludes that Intel is not entitled to dismissal on this ground.

Intel's remaining arguments raise two points.  First, Intel
contends that the consumer protection statues of Alaska, Georgia,
Louisiana and Montana prohibit class actions, and therefore,
Class Plaintiffs' claims under these statutes should be
dismissed.  Intel's second argument is directed to the consumer
protection laws of Arkansas, Idaho, Kansas, Maine, New Mexico,
New York and Utah.  Intel contends that the consumer protection
laws of these states prohibit only fraudulent, deceptive or
unconscionable conduct, and Class Plaintiffs' allegations are
insufficient to meet these pleading requirements.  The Court will
address each of Intel's arguments in turn.

A.   <u>Class Plaintiffs' Class Action Claims For Violation Of</u>
<u>The Consumer Protection Laws of Alaska, Georgia,</u>
<u>Louisiana And Montana</u>

Intel contends that Class Plaintiffs' claims under the laws
of Alaska, Georgia, Louisiana and Montana for consumer protection
violations should be dismissed because each state expressly
prohibits class actions.  In response, Class Plaintiffs contend
that the limits on class actions imposed by these states' laws
are procedural rules which directly conflict with Federal Rule of
Civil Procedure 23, and therefore, Rule 23 should prevail over
the conflicting states' procedural laws.

As this Court explained in addressing New York's Donnelly
Act, state statutes prohibiting class certification do not
directly conflict with Rule 23, which governs the manner in which
a court should determine if class certification is appropriate.
Because no direct conflict exists, the Court must apply <u>Erie</u>
principles to determine if state law should apply.

Under <u>Erie</u>, a federal court with diversity jurisdiction must
apply state substantive law and federal procedural law.  The
application of the substantive/procedural dichotomy is applied
with an outcome determinative goal so that "'in all cases where a
federal court is exercising jurisdiction solely because of the
diversity of citizenship of the parties, the outcome of the
litigation in the federal court [will] be substantially the same,
so far as legal rules determine the outcome of a litigation, as

23

it would be if tried in a State court.'"  Chamberlain v.
Giampapa, 210 F.3d 154, 158-159 (3d Cir. 2000) (quoting Guaranty
Trust Co. v. York, 326 U.S. 99, 109 (1945)).  The outcome
determinative focus serves the "twin aims" of discouraging forum
shopping and avoiding inequitable administration of the laws.
Id. (citing Hanna v. Plumer, 380 U.S. 460, 468 (1965)).  Thus,
application of the outcome determinative test should not favor
the use of state law unless one of these aims is furthered.  Id.
As the Supreme Court explained in Hanna:

> Erie and its progeny make clear that when a federal
> court sitting in a diversity case is faced with a
> question of whether or not to apply state law, the
> importance of a state rule is indeed relevant, but only
> in the context of asking whether application of the
> rule would make so important a difference to the
> character or result of the litigation that failure to
> enforce it would unfairly discriminate against citizens
> of the forum State, or whether application of the rule
> would have so important an effect upon the fortunes of
> one or both of the litigants that failure to enforce it
> would be likely to cause a plaintiff to choose the
> federal court.

380 U.S. at 468.  Even if state law affects the outcome of the
litigation, however, it will not be applied if a strong
countervailing federal interest dictates recourse to the federal
rules, or if the Erie rule is used to void a Federal Rule of
Civil Procedure.  Giampapa, 210 F.3d at 159 (citations omitted).

    In this case, the Court concludes that application of the
Erie principles favors application of the state laws prohibiting
class actions.  19 Charles Alan Wright, et al., Federal Practice

& Procedure: Jurisdiction 2d § 4513 at 442 n. 63 (2d ed. 1996)

("[A] specific state policy denying class action enforcement of a

particular state-created right should be honored by a federal

court."). In the Court's view, a contrary result would alter the

character of this litigation and provide a result that is at odds

with the result that would be reached by the respective state

courts had this action been brought in those jurisdictions.

Further, the Court is persuaded that application of the

respective state bans on class actions will discourage forum

shopping.

Class Plaintiffs direct the Court to three cases taking a

contrary approach, O'Keefe v. Mercedes Benz USA, LLC, 214 F.R.D.

266, 285-286 (E.D. Pa. 2003); In re Bridgestone/Firestone Inc.

Tires Prods. Liability Litig., 205 F.R.D. 503 (S.D. Ind. 2001),

rev'd in part on other grounds, 288 F.3d 1012 (7th Cir. 2002);

and Kristiansen v. John Mullins & Sons, Inc., 59 F.R.D. 99, 109-

110 n.13 (E.D.N.Y. 1973). In these cases, the respective courts

found that limitations on class actions were procedural rules

which directly conflicted with Federal Rule of Civil Procedure

23, and therefore, Rule 23 should apply to allow class

certification. However, the Court finds these decisions to be

distinguishable from the circumstances here. Notably, none of

the cases identified by Class Plaintiffs address the laws of the

particular states at issue here. In O'Keefe, the court

determined that an Alabama ban on class actions was a procedural rule; however, it did so in the face of an Alabama Supreme Court case expressly referring to the rule as a procedural rule.  By way of further example, <u>Bridgestone/Firestone</u> addressed Tennessee law and Michigan law; however, neither of these states banned class actions outright.  In fact, the Tennessee law was silent on the questions of class actions and the Michigan law under consideration allowed class actions, but with certain requirements that were additional to those set forth in Rule 23.

In contrast, federal courts considering the laws of the states at issue here have concluded that class actions were precluded in federal courts based on the respective state law bans.  <u>See</u> <u>e.g.</u>, <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 230 F.R.D. 61, 84 (D. Mass. 2005) (excluding consumers from Alaska, Georgia and Montana from class because consumer protection statutes in those state prohibit class actions); <u>O'Quin v. Verizon Wireless</u>, 256 F. Supp. 2d 512, 519 (M.D. La. 2003) (recognizing Louisiana's ban on class actions and expressing view that plaintiffs "could not get a class certified under that particular law in either state or federal court").  Accordingly, the Court will grant Defendants' Motion To Dismiss Class Plaintiffs' consumer protection claims based on the laws of the States of Alaska, Georgia, Louisiana and Montana.

B.    Whether Class Plaintiffs Have Sufficiently Alleged
      Deceptive Or Unconscionable Conduct To State Claims
      Under The Consumer Protection Laws Of Arkansas, Idaho,
      Kansas, Maine, New Mexico, New York and Utah

Intel contends that Class Plaintiffs' claims under the
consumer protection laws of Arkansas, Idaho, Kansas, Maine, New
Mexico, New York and Utah should be dismissed, because these laws
require fraudulent or deceptive conduct and/or unconscionable
trade practices, and Plaintiffs' allegations do not rise to that
level.  Specifically, Intel contends that Class Plaintiffs'
allegations of "fraudulent practices" are conclusory and
insufficient to satisfy the fraudulent or deceptive component of
these state laws.  Intel also contends that, to the extent Class
Plaintiffs are alleging unconscionable trade practices, as
opposed to and separate from fraudulent practices, Class
Plaintiffs fail to state a cause of action.  Because Class
Plaintiffs are indirect purchasers who had no direct contact with
Intel, Intel contends that they cannot allege that Intel took
grossly unfair advantage of them.  Intel also contends that Class
Plaintiffs stood to benefit from the discounts on Intel's
microprocessors and that the reduction in the prices of
microprocessors cannot be said to be conduct which is an "affront
to justice," "conscience-shocking" or "grossly disparate."

In response, Class Plaintiffs contend that the allegations
concerning Intel's discriminatory rebates and discounts, its
below-cost pricing, its threats toward customers who were

27

considering making deals with AMD, and its retaliation against
customers who did make such deals are inherently deceptive and
self-concealing actions, of which Class Plaintiffs could not have
been aware.  Class Plaintiffs also contend that Intel acted
fraudulently when it used compiler programs to secretly degrade
computer performance when a program is run on an AMD platform.

    The Court concludes that Class Plaintiffs have sufficiently
alleged deceptive or unconscionable trade practices so as to
withstand dismissal for purposes of Rule 12(b)(6) under the laws
of the States of Arkansas, Idaho, Kansas, Maine, New Mexico, New
York and Utah.  Intel contends that Class Plaintiffs have failed
to allege that any of Intel's alleged conduct was directed
towards Class Plaintiffs personally.  Instead, Intel contends
that all of Class Plaintiffs' allegations are directed toward its
actions vis-à-vis AMD and others.  In the Court's view, Intel's
arguments are in the nature of the causation arguments that it
raised in the context of antitrust injury.  As the Court noted
there, these arguments are fact-driven and better left to a later
stage of the proceedings.

    At this juncture, the Court concludes that Class Plaintiffs
have alleged a scheme involving discriminatory rebates and
discounts, threats and intimidation of direct purchasers and
retaliation against direct purchasers, all of which ultimately
impacted consumers like Class Plaintiffs.  Intel contends that

Class Plaintiffs acknowledge that some of their alleged conduct resulted in below-cost pricing, and therefore, their conduct cannot be unconscionable.  While Class Plaintiffs acknowledge that Intel's conduct may "in some cases" have resulted in below-cost pricing on incremental sales, Class Plaintiffs have also alleged that the suppression of competition that has resulted from Intel's conduct has ultimately led to higher prices for consumers.  Specifically, Class Plaintiffs allege:

> 234. Intel's exclusionary and restrictive practices described herein have suppressed competition in the x86 Microprocessor Market, resulting in higher prices for Intel x86 microprocessors, even after discounts or rebates attributable to microprocessor purchases.  The overcharges imposed by Intel have been passed on to Plaintiffs and the Class members in the form of higher prices for personal computers, workstations, and servers containing Intel x86 microprocessors.

Further, the Court concludes that Class Plaintiffs' allegations concerning Intel's use of compiler programs to degrade computer performances of programs run on an AMD platform are in the nature of deceptive trade practices for purposes of the various state statutes.  Accordingly, on the face of the Class Complaint at this early stage of the proceedings, the Court cannot conclude that Class Plaintiffs allegations fail, as a matter of law, to state a claim for fraudulent, deceptive or unconscionable trade practices under the various state consumer protection laws.  Therefore, the Court will deny Intel's Motion To Dismiss these claims.

29

C.    <u>Whether Class Plaintiffs Have Sufficiently Pled A Claim
      Under California's Unfair Competition Law</u>

Intel separately challenges Class Plaintiffs' ability to
state a claim under California's Unfair Competition Law ("UCL").
Intel's argument is based upon its argument that Class Plaintiffs
lack standing to assert violations of either the Sherman Act or
the Cartwright Act.  Because the Court has concluded that a
determination of whether Class Plaintiffs have alleged antitrust
injury is best left to a later stage of the proceedings, the
Court will deny Intel's Motion To Dismiss Class Plaintiffs' claim
under the California UCL.

**V.    Whether Class Plaintiffs Have Stated Common Law Claims For
       Monopolization And Unjust Enrichment**

A.    <u>Monopolization</u>

Intel contends that Class Plaintiffs cannot state a claim
for the tort of monopolization under California's common law.  In
support of its argument, Intel points out that there are no
definitive California Appellate Court or Supreme Court cases
recognizing a damages claim based upon the common law tort of
actual or attempted monopolization, and therefore, Intel contends
that this Court should not "create" such a tort here.  In
response, Class Plaintiffs direct the Court to several California
Superior Court cases and one California Court of Appeals case
which Class Plaintiffs contend demonstrate that California
recognizes a common law tort of monopolization.

The Court has reviewed the cases cited by the parties and finds that there is no direct precedent from the California Supreme Court or the California Courts of Appeals on the question of whether California recognizes a common law claim for damages based upon monopolization. Class Plaintiffs direct the Court to In re Cipro Cases I & II, 121 Cal. App. 4th 402 (Cal. Ct. App. 2004) for the proposition that California courts recognize the common law tort of monopolization. However, in Cipro, the Court did not analyze this question specifically and only addressed whether a class alleging a claim for common law monopolization was properly certified. Class Plaintiffs also direct the Court to Natural Gas Anti-Trust Cases I, II, III and IV, 2002 WL 31570296 (Cal. Super. Ct. Oct. 16, 2002). In Natural Gas, the California Superior Court of San Diego County refused to strike a claim alleging the common law tort of monopolization stating:

> Additionally, the monopolization cause of action is not stricken because California courts have recognized that monopolization and attempted monopolization are against public policy and prohibited at common law. Burdell v. Grandi, 152 Cal. 376 (1907). California also recognizes the existence of the common law "business tort" of monopolization, separate and apart from statutory claims arising under the Cartright Act. Exxon Corp. v. Superior Court, . . . 51 Cal. App. 4th 1672 (1997).

2002 WL 31570296 at * 3. As Intel points out, however, neither case cited by the Natural Gas court actually analyzes whether a monopolization claim is available under California law in the first instance. In Burdell, the California Supreme Court found

31

that a restrictive covenant in a lease that was intended to
create a monopoly was void, but it did not address the
availability of damages for a monopoly claim.  Similarly in
Exxon, the court concluded that the plaintiffs' monopoly claim
could not survive summary judgment, but did not actually address
whether such a claim was cognizable under California law because
no such challenge was made to the claim.

     More recently, another California Superior Court, the
Superior Court of Santa Clara County, has taken the opposite view
of the Natural Gas court.  In Branning v. Apple Computer, Inc,
the court concluded that "there is no cause of action for common
law monopoly under California law."  No. 1-05-CV-045719 at 3
(Cal. Super. Ct. May 9, 2006).  In support of its conclusion, the
Branning court pointed to legislative history concerning the 2002
attempt to amend the Cartwright Act.  In arguing that California
should adopt a clause similar to Section 2 of the Sherman Act,
the Attorney General of the State of California reported to the
Senate that "[a]ccording to Attorney General's Office, the
remedies for illegal monopolization are limited under current law
to relief in a federal court."  Assembly Comm. On Bus. & Profs.,
2001-2002 Reg. Session, analysis of Senate Bill  1814, at 3 (June
25, 2002).  The Branning court went on to cite to State of
California ex rel. Van de Kamp v. Texaco, Inc., 46 Cal. 3d 1147,
1167 (1988) and Phillip E. Areeda, Antitrust Law: An Analysis of

32

Antitrust Principles and their Application, for the proposition
that a civil claim for damages for monopolization was not
recognized under the common law.  As these sources point out,
under the common law, the remedy for illegal agreements resulting
in monopolies was the voiding of the offending agreements and not
the awarding of civil damages as provided for under statutory
law.  See also Joseph D. Zmore, Business Torts Vol. 2, ch. 20 §
20.01 ("The primary difference between common law trade
regulation and the Sherman Act is that the Sherman Act penalizes
anticompetitive conduct whereas the common law merely held that
contracts that unreasonably restrained trade were
unenforceable.")

        This rationale is in accord with the approach taken by the
Court of Appeals for the Ninth Circuit in Dimidowich v. Bell &
Howell, 803 F.2d 1473, 1478 (9th Cir. 1986).  Construing
California law, the Ninth Circuit recognized that California's
Cartwright Act does not contain a provision addressing unilateral
conduct that results in a monopoly, but only combinations or
conspiracies.  As a result, the Ninth Circuit affirmed the
district court's dismissal of the plaintiff's monopolization and
attempted monopolization claims concluding that the plaintiff's
monopoly claims challenging only the unilateral conduct of the
defendant "fail[ed] to state a cognizable claim under California
law . . ."  Id.

In the absence of California Supreme Court law to the contrary, the Court is persuaded by the rationale of the Branning court and finds it to be consistent with the state of the common law as described by leading commentators. Accordingly, the Court concludes that Class Plaintiffs' claim for damages based upon the common law tort of monopolization is not cognizable under California law, and therefore, the Court will dismiss Class Plaintiffs' common law monopolization claim.

B. Unjust Enrichment

In the Complaint, Class Plaintiffs allege that Intel has been unjustly enriched through the overpayments of Class Plaintiffs and the resulting profits such overpayments yielded to Intel. Class Plaintiffs raise this claim under California law on behalf of all Class Members, but alternatively allege that if California law is not applied on a nation-wide basis that this claim is brought under the laws of the individual States and the District of Columbia.

By its Motion, Intel contends that Class Plaintiffs' unjust enrichment claim should be dismissed, because California does not recognize a cause of action for unjust enrichment. Intel also contends that Class Plaintiffs cannot maintain a claim for unjust enrichment under the laws of the individual States because (1) Class Plaintiffs have no antitrust standing and therefore cannot maintain an unjust enrichment claim on the same facts; (2) a

34

successful unjust enrichment claim would expose Intel to the risk
of multiple liability, an outcome prohibited by states following
the Supreme Court's decision in Illinois Brick; and (3) Class
Plaintiffs cannot establish a claim for unjust enrichment on the
merits.

Generally, a claim for unjust enrichment requires a
plaintiff to demonstrate that (1) the plaintiff conferred a
benefit on the defendant; (2) the defendant knew of the benefit;
and (3) the defendant accepted or retained the benefit under such
circumstances as to make non-payment inequitable.  Unjust
enrichment only applies in circumstances in which the parties
have not entered into an express contract.  As Section 107(1) of
the Restatement (First) of Restitution provides:

> A person of full capacity who, pursuant to a contract
> with another, has performed services or transferred
> property to the other or otherwise conferred a benefit
> upon him, is not entitled to compensation therefor
> other than in accordance with the terms of such
> bargain, unless the transaction is rescinded for fraud,
> mistake, duress, undue influence or illegality, or
> unless the other has failed to perform his part of the
> bargain.

In NMV, the court recognized this principle and dismissed
the unjust enrichment claims of the plaintiffs who claimed that
automobile manufacturers and dealers conspired to keep Canadian
built cars out of the United States thereby causing overcharges
for cars built in the United States that the plaintiffs
purchased.  350 F. Supp. 2d at 210.  The NMV court stated that

35

"unjust enrichment ordinarily does not furnish a basis for
liability where parties voluntarily have negotiated, entered into
and fully performed their bargain, as consumers do in buying
vehicles."  According to the NMV court:

> The automobile purchasers here paid their purchase
> prices and obtained their vehicles.  The Second Amended
> Complaint does not seek to rescind these sales, and it
> does not assert that purchasers failed to receive the
> benefit for which they bargained in buying the
> vehicles.

Id. at 120.  The Court concludes that the circumstances in NMV
are analogous to the circumstances here.  The Class Plaintiffs
paid the purchase price for their computers and received their
computers.  Class Plaintiffs have not sought to rescind their
purchases, none of which involved Intel as a direct manufacturer
or seller, and Class Plaintiffs have not alleged that they did
not receive the benefit of their bargain.

Class Plaintiffs direct the Court to a contrary holding in
In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517 (D.N.J. 2004).
In K-Dur, the court rejected the defendants' argument that "'any
consideration' given for a benefit conferred necessarily defeats
unjust enrichment claims."  Id. at 545-546 (emphasis added).  The
court went on to conclude that the determination of the value of
the benefit received compared with the amount paid were fact
sensitive questions not suitable for adjudication in the context
of a motion to dismiss.  In this case, Class Plaintiffs do not

36

allege that they failed to receive the benefit of their bargain, and therefore, the Court is not persuaded that K-Dur is applicable here.  Further, to the extent that K-Dur can be read to adopt a general rule contrary to the rule discussed in NMV, the Court declines to adopt K-Dur and instead concludes that NMV and its adherence to the principles outlined in the Restatement (First) of Restitution is the better reasoned approach. Accordingly, the Court will grant Defendants' Motion to the extent it seeks dismissal of Class Plaintiffs' common law unjust enrichment claims.

## CONCLUSION

For the reasons discussed, the Court will grant Intel's Motion To Dismiss the following claims asserted by Class Plaintiffs:  (1) claims for antitrust violations under New York law; (2) class action consumer protection claims under the laws of the States of Alaska, Georgia, Louisiana and Montana; (3) claims under the common law for monopoly; and (4) claims under the common law for unjust enrichment.  Intel's Motion To Dismiss will be denied in all other respects.

An appropriate Order will be entered.