**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION
**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial:
(302)888-6509
Writer's Telecopy Number::
(302)888-6333
Writer's E-Mail Address:
JLHolzman@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

August 7, 2007

**VIA ELECTRONIC FILING**
**and HAND DELIVERY**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801

Re:   DM No. 7;
      *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717-JJF and
      *Paul v. Intel Corp.*, Consolidated Civil Action No. 05-485-JJF

Dear Judge Poppiti:

    Class Plaintiffs respectfully submit this letter brief in opposition to Intel's motion to compel (D.I. 542 in 05-MD-1717) the proposed class representatives to produce tax returns and other personal financial documents. Contrary to Intel's argument, such information is not relevant to the adequacy of the proposed class representatives under Federal Rule of Civil Procedure 23(a)(4). But it is highly sensitive, as it belongs primarily to individual consumers who have a strong interest in keeping their tax returns and other personal financial information private.

    Intel's motion relies exclusively on this Court's decision in *In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig.*, 149 F.R.D. 506 (D. Del. 1993) ("*ML-Lee*"). However, under the terms of Class Plaintiffs' retention of their counsel in this case and under Federal Rule of Civil Procedure 23(g)(1), which did not exist at the time *ML-Lee* was decided, *ML-Lee* has no application here.

    In *ML-Lee*, the Court ordered the two named plaintiffs to produce tax returns and other financial records. The Court found such documents to be relevant to whether the plaintiffs were adequate class representatives. The Court determined that to be an adequate class representative under Rule 23(a)(4), a plaintiff must be willing and able to finance the case even if his lawyers have agreed to advance costs. 149 F.R.D. at 508-09. Otherwise, the Court concluded, the plaintiff "could be coerced into complying with an attorneys' advice with regard to different options that may be available on legal issues in a class action because of the potential threat of funding revocation." *Id.* at 509.

IMANAGE 300526.2 21180001

August 7, 2007
Page 2

    No such coercion could occur here. Many Class Plaintiffs have retainer agreements with their counsel in this case that *require* counsel to advance costs and create *no* contingency under which the client could become liable for such costs.[1] Further, the four law firms appointed interim class counsel in this case represented under Rule 23(g)(1)(C) that they could and would commit adequate resources to zealously representing the class. *See* Fed. R. Civ. P 23(g)(1)(C) (directing court to select class counsel based in part on "the resources counsel will commit to representing the class"); *see also* Motion By Cohen Milstein Hausfeld & Toll, The Furth Firm, Hagens Berman Sobol & Shapiro, and Saveri & Saveri for Appointment as Interim Class Counsel, filed January 24, 2006 (D.I. 20 in 05-MD-1717), at 16 (representing to the Court that proposed interim class counsel "are willing and able to deploy the necessary resources to litigate these actions zealously and effectively."). This commitment, coupled with counsel's retainer agreement obligation, makes any threat to revoke funding a hollow threat indeed. Class Counsel are obligated, contractually and through their representation under Rule 23(g)(1)(C), to adequately fund this case. *See Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 399 (D.N.J. 1998) (distinguishing *ML-Lee* and concluding that where a plaintiff "has no obligation to pay the expenses of litigation, regardless of the outcome, there is no possibility the threat of funding revocation will lead to coercion.").[2]

    Moreover, a key factual premise of the *ML-Lee* decision – that class counsel's decisions are solely directed by the named plaintiffs – is not consistent with class counsel's role as set forth in Federal Rule of Civil Procedure 23(g)(1)(B), which was added to Rule 23 in 2003 after the *ML-Lee* decision. Rule 23(g)(1)(B) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of *the class*." (Emphasis added.) The

---

[1] Under American Bar Association Model Rule of Professional Conduct 1.8(e)(1), "a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter." ABA Model R. Prof. Conduct 1.8(e)(1). Pursuant to District of Delaware Local Rule 83.6(d), all attorneys who are admitted or authorized to practice before the Court "shall be governed by the Model Rules of Professional Conduct of the American Bar Association." L.R. 83.6(d). The text of ABA Model Rule 1.8(e)(1) is virtually identical to Delaware Rule of Professional Conduct 1.8(e)(1). In the experience of Interim Class Counsel, it is standard practice for a class representative retainer agreement to follow ABA Model Rule 1.8(e)(1), making it clear that the client will not be liable for advancing or reimbursing counsel for litigation expenses.

[2] The *ML-Lee* court relied on a decision in a gender discrimination class action that permitted limited discovery of a named plaintiff's financial status in part because the defendant there had a "direct interest in whether or not [the] plaintiff [would] be able to reimburse defendant for its attorneys fees as provided by Section 706(k) of Title VII or for costs if defendant should prevail." *Rode v. Emery Air Freight Corp.*, 76 F.R.D. 229, 232 (W.D. Pa. 1977). Another District Court subsequently distinguished *Rode*, noting that "where a plaintiff's attorney has agreed to advance the cost of the litigation, to permit the plaintiff's financial status to preclude class representation . . . would be to limit the class action device to wealthy litigants, a result antithetical to the purposes of both Title VII and Rule 23." *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657, 675 (E.D. Pa. 1980).

August 7, 2007
Page 3

obligation is to the class, not to counsel's individual clients other than as members of the class. Thus, if the client were to insist on a course of action not in the class's best interest as a whole, class counsel is duty-bound to reject his client's wishes in favor of the class's interests. As the advisory committee's note to the 2003 amendments to Rule 23 makes clear, "the primary responsibility of class counsel, resulting from appointment as class counsel, is to represent the best interests of the class. The rule thus establishes the obligation of class counsel, an obligation that may be different from the customary obligations of counsel to individual clients. Appointment as class counsel means that the primary obligation of counsel is to the class rather than to any individual members of it." Fed. R. Civ. P. 23 Advisory Committee's Note.

Rule 23(g)(1)(B) thus insists that class counsel always put the interests of the class first; in contrast, the *ML-Lee* decision was designed to ensure that the individual class representative's interests were always paramount. Importantly, therefore, the potential coercion addressed in *ML-Lee* – against individual plaintiffs – is not the coercion that is of concern under Rule 23(g)(1)(B). Rather, the concern under that rule is whether the class can be coerced. But, clearly, no such coercion will occur. Not only is funding revocation not a viable threat for the reasons discussed above, in addition, class counsel in class actions are fully empowered to exercise their best judgment on behalf of the class. *See* Fed. R. Civ. P. 23(b)(1)(B). Given that authority, there is no reason or occasion for any class counsel to attempt to coerce the class. Accordingly, Intel's reliance on *ML-Lee* is misplaced.

In addition, denial of Intel's motion would align this Court with the many others holding that a named plaintiff's financial status is irrelevant to determining adequacy under Rule 23(a)(4). *See, e.g., Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 612 (N.D. Cal. 2004) (and cases cited therein) (agreeing that courts should not take into account named plaintiff's financial status in the context of class certification); *Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports and Recreation*, 165 F.R.D. 108, 13 (M.D. Fla. 1996) (and cases cited therein) (denying motion to compel production of plaintiffs' tax returns because "requested information is not relevant to the class certification issues."); *Kaplan v. Pomerantz*, 131 F.R.D. 118, 125 (N.D. Ill. 1990) (where plaintiffs' counsel agrees to advance cost of litigation, "it is not relevant whether plaintiffs themselves . . . ha[ve] sufficient resources to fund the litigation")[3]; *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578, 578 (D. Minn. 1990) (where plaintiffs' damages theory based on unlawful overcharge and not lost profits, "plaintiffs' financial information is not relevant to any outstanding issue in this litigation."); *Ferraro v. General Motors Corp.*, 105 F.R.D. 429 (D.N.J. 1985) (to extent fee agreement provides for full advancement of litigation costs, motion to compel plaintiffs to produce financial status documents "will be denied as irrelevant"; moreover, given "prospect of embarrassment in the forced disclosure of [] personal financial information" plaintiffs not required to produce tax returns); *Kamens v. Horizon Corp.*, 81 F.R.D. 444, 447

---

[3] The court in *Kaplan* noted that "[o]rdinarily courts do not inquire into the financial responsibility of litigants. We generally eschew the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation." 131 F.R.D. at 125 (agreeing with concern expressed in *Sanderson v. Winner*, 507 F.2d 477, 479-80 (10th Cir. 1974) about "the use of discovery in this sensitive area as a means for discouraging otherwise meritorious class actions.").

August 7, 2007
Page 4

(S.D.N.Y. 1979) (where contingent fee arrangement exists, "[i]n the absence of any contention that the funds necessary to effectively prosecute this action will not be advanced, we find no basis for questioning plaintiff about her financial resources."); *In re Toilet Seat Antitrust Litig.*, No. 75-184, 1977 WL 1363, at *1 (E.D. Mich. Feb. 22, 1977) (Ex. A) (denying motion to compel production of plaintiffs' current financial statements and concluding that "an extensive inquiry into the financial capability of the plaintiffs is not a necessary prerequisite to assure that plaintiffs meet the requirement of adequate representation stated in Rule 23 . . . .").[4]

For the foregoing reasons, Class Plaintiffs respectfully submit that they should not be compelled to turn over their tax returns and other personal financial records. Such documents are not relevant to any issue in this case. Intel's motion to compel production of documents responsive to Requests 8 and 9 from Intel's First Set of Requests for Production and to Requests 1 and 2 from Intel's Second Set of Requests for Production should be denied.

Respectfully,

James L. Holzman

cc:   Frederick L. Cottrell, III, Esq.
      Richard L. Horwitz, Esq.

---

[4] During the meet and confer process, Intel asserted that plaintiffs' tax returns were "relevant to testing Plaintiffs' claims of actual damages suffered" and whether a particular plaintiff "suffered actual damages at all." *See* Exhibits A and C to Certification of Bree Hann in Support of Intel Corporation's Request to Compel Class Plaintiffs to Produce Documents ("Hann Cert."). Plaintiffs responded by noting that tax returns are generally afforded a heightened level of protection from discovery and citing to authority for the proposition that tax deductions may not be used as an offset to damages. *See* Exhibit D to Hann Cert. Intel has evidently now abandoned its original justification for wanting plaintiffs' tax returns. *See* July 31, 2007 Intel Letter Brief at p. 3 ("That is beside the point.").