IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | ) ) ) ) ) ) | MDL No. 1717-JJF |
| ADVANCED MICRO DEVICES, INC., a Delaware corporation, and AMD INTERNATIONAL SALES & SERVICES, LTD., a Delaware corporation,<br><br>                    Plaintiffs,<br><br>     v.<br><br>INTEL CORPORATION, a Delaware corporation, and INTEL KABUSHIKI KAISHA, a Japanese corporation,<br><br>                    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-441-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>INTEL CORPORATION,<br><br>                    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

STIPULATED  **CASE MANAGEMENT ORDER #  3**

WHEREAS, on May 16, 2006 the Court entered Case Management Order No. 1 (D.I. 123 in Docket 05-441-JJF), establishing a December 31, 2006 cut-off date for the exchange of party documents, subject to one reasonable agreed-upon extension; and

RLF1-3201378-1

WHEREAS, on May 17, 2006, the Court approved the parties' Proposed Order Regarding Document Production (D.I. 122) (hereafter the "Custodian Stipulation"), which among other things, established a custodian approach to the production of party documents, set various numerical limits on party-designated, adverse-party-designated and "free-throw" custodians, and reserved for future negotiation a cut-off date for supplemental production from these custodians; and

WHEREAS on May 17, 2006, the Court approved Intel's and AMD's Proposed Order Regarding Electronic Discovery and Format of Document Production (D.I. 121), on June 26, 2006 all parties' First Amended Stipulation Regarding Electronic Discovery (D.I. 175), and on February 20, 2007 all parties' Second Amended Stipulation Regarding Electronic Discovery (D.I. 288) (hereafter collectively the "Native Format Stipulation"), which collectively establish various protocols for the harvest, review and production of custodian documents; and

WHEREAS, in light of the volume of documents thus far exchanged and the additional volumes required by the existing orders, and in light of the additional production requirements Intel has assumed in its April 24, 2007 Proposed Plan of Remediation (D.I. 321), the parties have negotiated revised limits and protocols governing the custodian document exchange that will permit them to complete the custodian document exchange on or before February 15, 2008;

NOW, THEREFORE, the parties through their respective counsel of record, hereby stipulate that subject to the approval of the Court, the following provisions shall apply to the custodian document exchange and, where applicable, supersede contrary provisions of the Custodian and Native Format Stipulations.

1. **Custodian Document Exchange Cut-Off.** The party custodian document exchange (including the production of all custodian documents identified by Intel during the

course of executing its Remediation Plan) shall be completed by February 15, 2008 except for: (a) foreign language documents, the production of which will be completed by March 31, 2008; (b) documents redacted for privilege or which require a detailed privilege review that become subject to such a later cut-off date as the parties may agree; (c) the production of documents from Custodians identified in Paragraph 4 of the Custodian Stipulation (the "Free Throw Custodians"); and (d) the production of "Deposition Reharvest" data described in Paragraph 4 below. Cut-offs for the exchange of documents covered by corporate requests (as defined in Paragraph 7 of the Custodian Stipulation) or stored on shared servers (as defined in Paragraph 7(c) of the Custodian Stipulation) shall be the subject of a separate stipulation and order.

2. **Custodian Limitations and Designation Dates.** The number of custodians from whose files data must be produced under the Custodian Stipulation shall be reduced as follows: AMD and the Class shall be entitled to designate 107 "Adverse-Designated" Custodians (as described in Paragraph 3 of the Custodian Stipulation) and 50 Free Throw Custodians. Intel shall be entitled to designate 44 Adverse-Designated Custodians and 25 Free Throw Custodians. Each party shall finalize and communicate to the other its final list of Adverse-Designated Custodians by September 30, 2007. Following completion of the custodian document exchange as defined in Paragraph 1, the parties will negotiate in good faith to arrive at a date by which all Free Throw Custodians must be identified. The custodian reduction set forth in this paragraph is without prejudice to any party's position in connection with disputes over the completeness of the parties' respective custodian lists or party-designated production custodian lists, which are reserved for later resolution.

3.  **Production Cut-Offs.**

    a.  The production cut-off date for "Party-Designated" Custodians (as described in Paragraph 2 of the Custodian Stipulation) shall be June 1, 2006. The production cut-off date for Adverse Designated Custodians shall be the later of the designation date or the date on which the Custodian's data was last harvested; except that if Custodian's data was harvested on or after March 31, 2007, the cut-off shall be the date of harvest regardless of the date of designation.

    b.  In the case of Free Throw Custodians harvested or designated after December 31, 2007, production may be date-restricted to December 31, 2007, except upon a showing of good cause for the need for production of later-generated data.

    c.  Intel's productions shall include all responsive remedial data dated on or before the latest applicable production cut-off.

4.  **Deposition Reharvests.** The parties shall be entitled to a limited number of "Deposition Reharvests" for the purpose of updating and supplementing productions of documents from custodians who will or may be deposed ("Reharvest Custodians").

    a.  AMD and the Class shall be entitled to designate 120 Deposition Reharvests and Intel shall be entitled to designate 60 Deposition Reharvests.

    b.  Deposition Reharvests shall consist solely of email files and attachments and may be harvested exclusively from each side's journaling and archiving systems or databases, provided the producing party represents that taken together such a systems and databases contain a complete collection of the respective Reharvest Custodian's email for the Reharvest Period (*e.g.*, from the cut-off date of his or her prior production as specified in Paragraph 3 through the agreed-upon Reharvest cut-off). Intel's Reharvest productions shall also

include all additional responsive remedial data collected for such a custodian for the Reharvest Period. The parties will use reasonable efforts to sequence the reharvest requests to avoid undue burdens.

  c. To reduce the volume of potentially responsive material to be reviewed in connection with Deposition Reharvests, the requesting party shall furnish the producing party's e-discovery vendor with a set of search terms or strings, individualized for each Reharvest Custodian, to be run against the Custodian's reharvested email. The vendor shall promptly and diligently cooperate with the requesting party, to the same extent it would the party retaining it, to assure that the search terms or strings run properly on the e-discovery vendor's systems.

  d. The producing party shall complete the review and production of Deposition Reharvested email within sixty days of provision of search terms or strings to its vendor; provided, however, that if the number of "hits" of a particular custodian's email exceeds four gigabytes of data, the producing party shall have an additional fifteen days for each gigabyte beyond the initial four.

  5. **TIFFs**. The following provisions apply to native format documents exchanged by the parties and do not apply to third-party documents or to a party's own documents.

  a. Paragraph 25 of the Native Stipulation shall be deemed amended to permit each party to self-TIFF native format documents furnished to it by the other party. The parties shall negotiate in good faith to arrive at an agreement concerning the manner and timing of the identification and exchange of TIFF images produced for use in the litigation (as opposed to those produced solely for a party's counsel's internal use).

  b. Except for those documents selected pursuant to Paragraph 25 of the Native Format Stipulation for TIFFing prior to September 1, 2007, the parties shall be entitled to

TIFF only the following number of additional documents furnished by the other for use in the litigation (for these purposes "document" means a native format document bearing a unique Document Control Number, including attachments):

        Intel:               114,500 AMD-produced documents

        AMD and the Class:   236,600 Intel-produced documents

Upon good cause shown and liberally construed, the Special Master may enlarge these limits.

        c.        In addition to TIFFs created for use in the litigation, each party shall be entitled to create an unlimited number of TIFFs for its outside counsel's internal use. Such TIFFs will be disclosed only to those persons permitted to view native format documents pursuant to the Native Format Stipulation and to experts and non-testifying experts and consultants subject to their compliance with the terms of Paragraph 19 of the Native Format Stipulation.

        d.        No TIFF subject to this paragraph shall be used at a deposition unless it has been provided to the other side at least fourteen calendar days in advance of the date of its use. TIFFs subject to this paragraph that are furnished to and considered by a testifying expert shall be identified and provided to the other side no later than the time the expert is required to furnish a written report pursuant to F.R.C.P. 26(a)(2)(B), but only those documents an expert relies upon (which will be so identified to the other side at the time the witness furnishes his report) will count against the sponsoring party's TIFF limit. With the exception of impeachment materials, all TIFFs subject to this paragraph that a party expects to use at trial must be exchanged at or prior to the time required for submission of the exhibit list pursuant to Delaware District Court Local Rule 16.4(d)(6).

6.  **Privilege Logs.** For the next thirty days, the parties shall be relieved of their obligations under Paragraph 11 of the Custodian Stipulation to prepare and exchange privilege logs. During this period, the parties will negotiate in good faith to arrive at significant modifications in approach, timing and number of logs that will be required in the future.

**RICHARDS, LAYTON & FINGER, P.A.**

By: /s/ Steven J. Fineman
    Frederick L. Cottrell, III (#2555)
    Chad M. Shandler (#3796)
    Steven J. Fineman (#4025)
    One Rodney Square
    920 North King Street
    Wilmington, DE 19899
    (302) 651-7836
    cottrell@rlf.com
    shandler@rlf.com
    fineman@rlf.com

*Attorneys for Advance Micro Devices, Inc. and AMD International Sales & Service, Ltd.*


**PRICKETT JONES & ELLIOTT, P.A.**

By: /s/ James L. Holzman
    James L. Holzman (#663)
    J. Clayton Athey (#4378)
    1310 King Street
    P. O. Box 1328
    Wilmington, DE 19899
    (302) 888-6509
    jlholzman@prickett.com
    jcathey@prickett.com

*Interim Liaison Counsel and Attorneys for Phil Paul, on behalf of himself and all others similarly situated*

POTTER ANDERSON & CORROON LLP

By: */s/ W. Harding Drane, Jr.*
    Richard L. Horwitz (#2246)
    W. Harding Drane, Jr. (#1023)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19890-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    wdrane@potteranderson.com

*Attorneys for Intel Corporation and Intel Kabushiki Kaisha*

Having read and considered the foregoing Stipulation and Proposed Case Management Order # 2, the Special Master **HEREBY RECOMMENDS THAT THE COURT ADOPT SAME.**

ENTERED this 18th day of September, 2007.

_____
Vincent J. Poppiti (DSBA No. 100614)
Special Master

SO ORDERED this 19 day of September, 2007.

_____
United States District Court Judge