IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | MDL Docket No. 05-MD-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | Civil Action No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

**RULE 53(g) OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS COMPELLING PRODUCTION OF CLASS PLAINTIFFS' FINANCIAL DOCUMENTS**

PRICKETT, JONES & ELLIOTT, P.A.
James L. Holzman (#663)
J. Clayton Athey (#4378)
Laina M. Herbert (#4717)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com

*Interim Liaison Counsel for the Class Plaintiffs*

Dated: October 11, 2007

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

Michael P. Lehmann
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
One Embarcadero Center, Suite 526A
San Francisco, CA  94111

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA  94104
Telephone:  (415) 433-2070
Facsimile:  (415) 982-2076

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA  94111

*Interim Co-Lead Counsel for the Class Plaintiffs*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................ iii

I.    NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.   SUMMARY OF ARGUMENT ....................................................................... 1

III.  STATEMENT OF FACTS .............................................................................. 4

IV.   STANDARD OF REVIEW ............................................................................ 6

V.    ARGUMENT ................................................................................................. 6

    A.    The Named Plaintiffs' Financial Status Is Not Relevant to Determining Adequacy and Compelling Production of Confidential Documents Concerning Such Status Would Undermine an Essential Goal and Public Benefit of Class-Action Suits .......................................................... 6

        1.    Rule 1.8 of the Model Rules Professional Conduct and the corresponding Delaware Lawyers' Rules of Professional Conduct specifically permit counsel to fund class-action litigation ........... 9

        2.    Many pre-ABA Model Rules amendment cases and even cases from jurisdictions applying more restrictive codes than the Model Rules likewise do not require disclosure of financial information .......... 16

        3.    Compelling discovery of named plaintiffs' financial records would harass the plaintiffs and chill class actions ............................................... 21

        4.    The 2003 Amendments to Rule 23(g) confirm that class counsel's primary duty is to represent the class as a whole rather than individual class representatives, thus removing any possible coercion motive ........................................................................................... 22

            a.    The responsibilities of plaintiffs and their counsel ...................... 23

            b.    Disagreements between class counsel and the class representatives .............................................................................. 26

            c.    Removal of class counsel or class representatives ....................... 29

    B.    To the Extent Intel Seeks Production of Tax Returns, They are Privileged ........................................................................................... 31

C.   The Court's Inherent Supervisory Power Read Together with the
     Factual Record Here Both Removes and Rebuts any Concern That
     Class Counsel Might Not Protect the Interests of the Class................................. 33

D.   Clearly Distinguishable on Both Factual and Decisional Grounds,
     *ML-Lee* Is Not Controlling as to the Current Case and Thus Does
     Not Support the R&R......................................................................................... 37

VI.  CONCLUSION ................................................................................................................. 38

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*In Re "Agent Orange" Prod. Liability Litig.,*
    611 F. Supp. 1452 (E.D.N.Y. 1985) ........................................................................ 25, 33

*In re "Agent Orange" Prod. Liability Litig.,*
    800 F.2d 14 (2d Cir. 1986)............................................................................................ 25

*Aliotti v. The Vessel Senora,*
    217 F.R.D. 496 (N.D. Cal. 2003) ................................................................................. 31

*Banyai v. Mazur,*
    No. 00 Civ. 9806 (SHS), 2004 U.S. Dist. LEXIS 17572 (S.D.N.Y. Sept. 1, 2004) ......... 29

*Banyai v. Mazur,*
    No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. Mar. 27, 2007)........ 29

*Bartelson v. Dean Witter & Co.,*
    86 F.R.D. 657 (E.D. Pa. 1980) ............................................................................... 17, 36

*Birmingham Steel Corp. v. Tenn. Valley Auth.,*
    353 F.3d 1331 (11th Cir. 2003)................................................................................... 30

*Boccardo v. Commissioner of Internal Revenue,*
    56 F.3d 1016 (9th Cir. 1995)....................................................................................... 14

*Bogosian v. Gulf Oil Corp.,*
    337 F. Supp. 1128 (E.D. Pa. 1971) ............................................................................. 18

*Bogosian v. Gulf Oil Corp.,*
    337 F. Supp. 1228 (E.D. Pa. 1971) ............................................................................. 17

*Brown v. Superior Ct.,*
    71 Cal. App. 3d 141, 139 Cal. Rptr. 327 (1977) .......................................................... 33

*Buford v. H&R Block,*
    168 F.R.D. 340 (S.D. Ga. 1996)................................................................................. 34

*Bujnicki v. American Paving & Excavating, Inc.,*
    No. 99-CV-0646S (SR), 2004 U.S. Dist. LEXIS 8869, 2004 WL 1071736
    (W.D.N.Y. Feb. 25, 2004)........................................................................................... 31

*Campinas Foundation v. Simoni*,
    2005 U.S. Dist. LEXIS 7574,
    2005 WL 1006511 (S.D.N.Y. April 28, 2005) .................................................................. 31

*Cannon v. Nationwide Acceptance Corp.*,
    No. 96 C 1136, 1997 U.S. Dist. LEXIS 3517,
    1997 WL 139472 (N.D. Ill. Mar. 25, 1997) .................................................................. 9, 12

*Cavin v. Home Loan Ctr., Inc.*,
    236 F.R.D. 387 (N.D. Ill. 2006) ...................................................................................... 24

*Chisholm v. Transouth Finance Corp.*,
    194 F.R.D. 538 (E.D. Va. 2000) .................................................................................. 9, 13

*In re Corn Derivatives Antitrust Litig.*,,
    748 F.2d 157 (3d Cir. 1984) ...................................................................................... 25, 34

*County of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1407 (E. D. N. Y. 1989), *aff'd*,
    907 F.2d 1295 (2d Cir. 1990) ...................................................................................... 9, 20

*D'Aurizio v. Borough of Palisades Park*,
    899 F. Supp. 1352 (D.N.J. 1995) .................................................................................... 32

*Davis v. Leal*,
    43 F. Supp. 2d 1102 (E.D. Cal. 1999) ............................................................................ 31

*Dennis v. Saks & Co.*,
    No. 74-4419, 1975 U.S. Dist. LEXIS 11, 1975 WL 909 (S.D.N.Y. July 10, 1975) ......... 17

*Dujanovic v. Mortgage America, Inc.*,
    185 F.R.D. 660 (N.D. Ala. 1999) ............................................................................... 9, 13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................................ 17

*F.D.I.C. v. Fidelity & Deposit Co. of Md.*,
    196 F.R.D. 375 (S.D. Cal. 2000) .................................................................................... 31

*Federal Savings & Loan Insurance Corp. v. Krueger*,
    55 F.R.D. 512 (N.D. Ill. 1972) ...................................................................................... 18

*Ferraro v. General Motors Corp.*,
    105 F.R.D. 429 (D.N.J. 1986) ................................................................................ *passim*

*Fort Washington Resources, Inc. v. Tannen*,
    153 F.R.D. 78 (E.D. Pa. 1994) ....................................................................................... 31

*Fortunato v. Superior Ct.*,
    114 Cal. App. 4th 475, 8 Cal. Rptr. 3d 82 (2003).............................................................. 33

*Gangemi v. Moor*,
    268 F. Supp. 19 (D. Del. 1967) ..................................................................................... 18

*Gattegno v. PricewaterhouseCoopers, LLC*,
    205 F.R.D. 70 (D. Conn. 2001)....................................................................................... 31

*Goodman v. Lukens Steel Co.*,
    777 F.2d 113 (3d Cir. 1985)...................................................................................... 24, 30

*Goodrich v. E. F. Hutton Group, Inc.*,
    No. 8279, 1993 U.S. Dist. LEXIS 44,
    1993 WL 94456 (Del. Ch. Mar. 24, 1993) ...................................................................... 10

*Greenfield v. Villager Indus., Inc.*,
    483 F.2d 824 (3d Cir. 1973)................................................................................. 24, 25, 33

*Guse v. J.C. Penney Co.*,
    409 F. Supp. 28 (E.D. Wis. 1976) .................................................................................. 17

*Heit v. van Octhen*,
    126 F. Supp. 2d 487 (W.D. Mich. 2001) ........................................................................ 30

*Howard's Rexall Stores v. Aetna*,
    No. 00-CV-31-B, 2001 U.S. Dist. LEXIS 6029 (D.Me. May 8, 2001) ............................ 37

*In re Independent Gasoline Antitrust Litig.*,
    79 F.R.D. 552 (D. Md. 1978).......................................................................................... 17

*Jansen v. Greyhound Corp.*,
    692 F. Supp. 1027 (N.D. Iowa 1986)................................................................................ 9

*In re KMart Corp. Sec. Litig.*,
    1996 U.S. Dist. LEXIS 22609 (E.D. Mich. 1996) ........................................................... 37

*Kamens v. Horizon Corp.*,
    81 F.R.D. 444 (S.D.N.Y. 1979) ..................................................................................... 17

*Kaplan v. Pomerantz*,
    131 F.R.D. 118 (N.D. Ill. 1990) ............................................................................ 9, 13, 21

*King v. Mobile Home Rent Review Bd.,*
   216 Cal. App. 3d 1532, 265 Cal. Rptr. 624 (1990) ............................................................ 33

*Klein v. Checker Motors,*
   87 F.R.D. 5 (N.D. Ill. 1979) ..................................................................................... 17, 36

*Kleinman v. Sibley,*
   1975 U.S. Dist. LEXIS 15827 (E.D. Pa. Oct. 8, 1975) ..................................................... 17

*Laskey v. UAW,*
   638 F.2d 954 (6th Cir. 1981) ...................................................................................... 27

*Lazy Oil Co. v. Witco Corp.,*
   166 F.3d 581 (3d Cir. 1999) ................................................................................ *passim*

*In re Linerboard Antitrust Litig.,*
   203 F.R.D. 197 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002) ........................... 9, 11

*In re ML-Lee Acquisition Fund II, L.P.,*
   149 F.R.D. 506 (D. Del. 1993) ............................................................................. *passim*

*Maywalt v. Parker & Parsley Petroleum Co.,*
   67 F.3d 1072 (2d Cir. 1995) ............................................................................ 26, 29, 33

*Maywalt v. Parker & Parsley Petroleum Co.,*
   155 F.R.D. 494 (S.D.N.Y. 1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995) .............................. 24

*In re McDonnell Douglas Sec. Litig.,*
   92 F.R.D. 761 (E.D. Mo. 1981) ................................................................................. 17

*Mendez v. Redec Corp.,*
   232 F.R.D. 78 (W.D.N.Y. 2005) .................................................................................. 9

*Moeller v. Taco Bell Corp.,*
   220 F.R.D. 604 (N.D. Cal. 2004) ........................................................................... 9, 11

*Mohnot v. Bhansali,*
   2001 U.S. Dist. LEXIS 6815, 2001 WL 515242 (E.D. La. 2001) ................................... 31

*Murray v. ETrade Fin. Corp.,*
   240 F.R.D. 392 (N.D. Ill. 2006) .............................................................................. 23, 24

*Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,*
   2 F.3d 1397 (5th Cir. 1993) ...................................................................................... 31

*Olden v. Lafarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007) ........................................................ 30

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ............................................................... 25, 27

*Pearson v. Miller*,
    211 F.3d 57 (3d Cir. 2000) ..................................................................... 32

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    226 F.R.D. 492 (M.D. Pa. 2005) ................................................................. 9

*Ragonetti v. Epitope*,
    No. 92 759 RE, 1992 U.S. Dist. LEXIS 22706,
    1992 WL 473767 (D. Ore. Oct. 8, 1992) ......................................................... 9

*Rand v. Monsanto*,
    926 F.2d 596 (7th Cir. 1991) ............................................................... *passim*

*Riley v. City of Chester*,
    612 F.2d 708 (3d Cir. 1979) ..................................................................... 32

*Rode v. Emery Air Freight Corp.*,
    76 F.R.D. 229 (W.D. Pa. 1977) ............................................................... 22, 36

*Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports and Recreation*,
    165 F.R.D. 108 (M.D. Fla. 1996) ......................................................... 9, 11, 37

*Sanderson v. Winner*,
    507 F.2d 477 (10th Cir. 1974) ................................................................... 17

*Sav-On Drugs, Inc. v. Superior Ct.*,
    15 Cal. 3d 1, 538 P.2d 739 (1975) ............................................................. 33

*Sayre v. Abraham Lincoln Sav. & Loan Ass'n*,
    65 F.R.D. 379 (E.D. Pa. 1974), *amended*,
    69 F.R.D. 117 (E.D. Pa. 1975) ................................................................. 17

*Schaffer v. The Timberland Co.*,
    No. 94-634JD, 1996 U.S. Dist. LEXIS 5372 (D.N.H. Mar. 19, 1996) ................... 9, 10, 11

*Schnabel v. Superior Ct.*,
    5 Cal. 4th 704, 854 P.2d 1117 (1993) .......................................................... 32

*Shamberg v. Ahlstrom*,
    111 F.R.D. 689 (D.N.J. 1986) ............................................................... 9, 11

*Shelter Realty Corp. v. Allied Maint. Corp.*,
    75 F.R.D. 34 (S.D.N.Y. 1976) ....................................................................... 17

*Smith v. Dominion Bridge Corp.*,
    Civ. A. No. 96-7580, 1998 U.S. Dist. LEXIS 2586 (E.D. Pa. Mar. 6, 1998) ................... 24

*Snider v. Upjohn Co.*,
    115 F.R.D. 536 (E.D. Pa. 1987) ..................................................................... 24

*In re South Central States Bakery Prods. Antitrust Litig.*,
    86 F.R.D. 407 (M.D. La. 1980)........................................................................ 17

*Stabilus v. Haynsworth, Baldwin, Johnson & Greaves*,
    144 F.R.D. 258 (E.D. Pa. 1992) ................................................................. 18, 31

*Terwilliger v. York Int'l Corp.*,
    176 F.R.D. 214 (W.D. Va. 1997) ..................................................................... 31

*Thomas v. Albright*,
    77 F. Supp. 2d 114 (D.D.C. 1999) ................................................................... 29

*In re Toilet Seat Antitrust Litig.*,
    1977 U.S. Dist. LEXIS 17256, 1977 WL 1363 (E.D. Mich. Feb. 22, 1977) ................... 17

*In re Toilet Seat Antitrust Litig.*,
    No. 75-184, 1976 U.S. Dist. LEXIS 14904,
    1976 WL 1265 (E.D. Mich., May 26, 1976)....................................................... 17

*Trudeau v. New York State Consumer Prot. Board*,
    237 F.R.D. 325 (N.D.N.Y. 2006)..................................................................... 31

*Vanderbilt v. Geo-Energy Ltd.*,
    725 F.2d 204 (3d Cir. 1983).......................................................................... 2, 9

*Walker v. Rent-A-Center, Inc.*,
    No. 5:02CV3, 2006 U.S. Dist. LEXIS 72232,
    2006 WL 2860533 (E.D. Tex. Oct. 3, 2006)..................................................... 9, 30

*Walsh v. Great Atlantic & Pacific Tea Co.*,
    726 F.2d 956 (3d Cir. 1983).............................................................. 26, 27, 29

*Webb v. Standard Oil Co.*,
    49 Cal. 2d 509, 319 P.2d 621 (1958) ................................................................ 32

*Wei v. Bodner*,
   127 F.R.D. 91 (D.N.J. 1989) ............................................................................ 32

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984).............................................................................. 23

*In re West Coast Dep't Stores Antitrust Litig.*,
   1979 U.S. Dist. LEXIS 8500, 1979 WL 1721 (N.D. Cal. Nov. 16, 1979) ....................... 17

*Wirebound Boxes Antitrust Litig.*,
   131 F.R.D. 578 (D. Minn. 1990).................................................................. 9, 11

*In re WorldCom Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................. 9, 20

## MISCELLANEOUS

Chief Judge Edward R. Becker, *Report: Third Circuit Task Force Report on
   Selection of Class Counsel*, 74 TEMP. L. REV. 689, 691-92 (2001) ................................. 24

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21,27 ............................................... 24

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 cmt. f (2000).......................... 27

## I.    NATURE AND STAGE OF PROCEEDINGS

On July 31, 2007, Defendant Intel Corporation ("Intel") filed its Request to Compel Production of Documents, which concerns two sets of document requests served on Plaintiffs by Intel demanding production of personal tax returns and other confidential financial records from each of the putative class representatives herein. This Court referred the matter to Special Master Vincent Poppiti, who by his Report and Recommendations of the Special Master ("R&R"), filed on September 6, 2007, granted Intel's request. Plaintiffs hereby appeal that ruling.

## II.    SUMMARY OF ARGUMENT

The Court should not compel putative class representatives in this case to divulge tax returns and other confidential financial information. Intel's request for such information in this consumer antitrust action is for irrelevant information, unduly oppressive and would effectively limit access to the courthouse for the vast majority of consumers, potentially eviscerating this area of antitrust law. Few consumers would ever step forward to serve as a class representative in an antitrust case if in doing so they can be forced, without good reason shown, to produce their private tax returns and other confidential financial records. In its initial letter brief to the Special Master, Intel relied exclusively on *In re ML-Lee Acquisition Fund II, L.P.*, 149 F.R.D. 506 (D. Del. 1993) (Farnan, J.) ("*ML-Lee*"), a ruling recognized by other courts as unique to securities litigation and one that is readily distinguishable, in fact and law, from the present case. The Court should decline the invitation to extend its ruling in *ML-Lee* to this consumer antitrust action. In its letter briefing to the Special Master, Intel did not cite a single case wherein an indirect consumer purchaser alleging antitrust violations was compelled to produce tax returns in order to satisfy the "adequacy" requirement under Fed. R. Civ. P. 23(a)(4). This lacuna is understandable as the weight of authority following the promulgation in 1983 of the Model Rules

of Professional Conduct has protected putative class representatives from being forced to divulge such personal financial information.

The Special Master nonetheless relied heavily on the *ML-Lee* opinion in support of his ruling, concluding that the class members' financial wherewithal was a material factual issue here in light of potential litigation costs and also expressing concerns about potential coercion of class representatives by class counsel. With all due respect to the Special Master, none of these concerns is applicable here and *ML-Lee* is therefore not controlling.

There are at least four grounds to reject the R&R and deny Intel's motion to compel. First, the weight of case authority recognizes that the personal financial histories of class representatives are irrelevant to determining their "adequacy" under Fed. R. Civ. P. 23(a)(4), particularly in light of the promulgation of Model Rule of Professional Conduct 1.8(e)(1) (adopted in Delaware and many other jurisdictions), which allows class counsel to fund litigation costs and expenses. As early as *Vanderbilt v. Geo-Energy Ltd.*, 725 F.2d 204, 209-10 (3d Cir. 1983), the Third Circuit has recognized that "[i]t is not uncommon in class actions to have persons other than the named plaintiff pay the costs of litigation." Class representation is not a procedure to be reserved only for the wealthy. Any ruling that would have a chilling effect on class-action practice by deterring potential class plaintiffs from bringing otherwise meritorious claims, deterrence solely based upon their financial worth, is contrary to the very essence of Rule 23. Indeed, "only a lunatic" would agree to pay these class expenses, and "[a] madman is not a good representative of the class!" *Rand v. Monsanto*, 926 F.2d 596, 599 (7th Cir. 1991). The requested ruling would surely defeat a principal purpose of class actions: a sanctioned procedure allowing and enabling small claimants, who could not or would not pay huge litigation expenses,

to have their day in court. The public policy of encouraging antitrust class actions is often the only or best way to achieve effective enforcement of our antitrust laws. *See infra* at 6-22.

Second, case law in the Third Circuit (such as *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999)) and the 2003 amendments to Fed. R. Civ. P. 23(g) confirm that class counsel's primary duty is to the entire class rather than to any individual class representative, thus removing any conceivable threat of coercion to an individual class representative by class counsel's threatened revocation of funding. *See infra* at 22-30.

Third, federal and state decisions recognize that tax returns are privileged and should be subject to disclosure only upon a showing of compelling need. *See infra* at 31-33.

Finally, the factual record here is patently distinct from the record in *ML-Lee* and overwhelmingly demonstrates that (i) interim class counsel, appointed by this Court based on a showing of a collective pool of resources available to litigate this case, will not threaten to revoke funding of these class actions, and (ii) in any event, the making of such a threat is both inherently improbable and would be wholly ineffective, even if made. Absent any reasonable possibility of any effective threat by counsel to revoke funding, there is no reason for this court to order the class representatives to demonstrate their capacity to finance this litigation on their own. *See infra* at 33-37.

In sum, the concerns raised by the Special Master are not present here and *ML-Lee* is simply not controlling. That decision should be confined to its specific factual and legal setting, which is far different from the present one. *See infra* at 37-38.

A number of these issues are addressed in the accompanying "Declaration of Bruce A. Green" ("Green Decl.") (Exhibit A) and the accompanying "Declaration of David Rosenberg" ("Rosenberg Decl.") (Exhibit B). Professor Green is the Stein Professor at Fordham University

- 3 -

School of Law, where he directs the Louis Stein Center for Law and Ethics.  Professor

Rosenberg is the Lee S. Kreindler Professor of Law at Harvard University, whose teaching

subjects include the legal profession, civil procedure and complex litigation.

### III.    STATEMENT OF FACTS

Approximately 90 individual consumers and small businesses filed class actions in

federal court, each asserting antitrust claims against Intel on behalf of a class of end-users of

computers containing Intel x86 microprocessors.  Two groups of plaintiffs' counsel filed

competing applications for appointment as interim class counsel under Fed. R. Civ. P. 23(g).  In

their "Memorandum of Law In Support of Motion to Consolidate Cases and For Appointment of

Co-Lead Counsel And Liaison Counsel," at 4 (Nov. 10, 2005), the firms of Cohen, Milstein,

Hausfeld & Toll, P.L.L.C., The Furth Firm LLP, Hagens Berman Sobol & Shapiro LLP, and

Saveri & Saveri, Inc., pointed to their demonstrated commitment to invest resources in other

class-action cases and their willingness to do so here.  D.I. 5.[1]  In its "Memorandum and Order"

(Apr. 18, 2006), D.I. 51, the Court appointed these four firms as interim class counsel under Fed.

R. Civ. P. 23(g).  In so doing, the Court expressly considered and made findings on, among other

factors, "the resources counsel will commit to representing the class."  *Id.* at 2 (citing Fed. R.

Civ. P. 23(g)(1)(C)(i)).  Indeed, the Court selected these firms because, among other reasons,

they "appear[ed] to be capable of drawing upon a greater pool of resources than the [competing

group]."  *Id.* at 3.  The Court added that these additional resources "could prove to be especially

beneficial in a large and complex case such as this."  *Id.*

Interim counsel committed in their Rule 23(g) application to dedicate sufficient resources

to effectively litigate the class claims.  Each of the four interim counsel have submitted a

---

[1] All citations to "D.I. ___" are to docket items in action 05-MD-1717-JJF unless otherwise noted.

declaration in conjunction with this objection that it has never revoked funding for a class action with which it has been involved and has never threatened to do so. (Exhibits C-F). Interim class counsel are fully committed to funding this case. Under no circumstances will counsel seek reimbursement of any such expenditures directly from any named plaintiff.

Intel's initial set of document requests, served on December 5, 2006, included Requests 8 and 9, which sought tax returns, financial documents and records from 2000-06 to the extent any plaintiff claimed a deduction for the expense or depreciated value of any x86 microprocessor or product containing such a microprocessor. Intel's second set of document requests, served on July 12, 2007, included Requests 1 and 2, which sought federal tax returns and financial informa-tion "sufficient to demonstrate plaintiffs' assets and liabilities." Letter Brief of July 31, 2007, D.I. 542-43. The parties briefed the issue under the "Procedures For The Handling Of Discovery Disputes Before The Special Master." D.I. 222. The opening, opposition and reply letter briefs were filed on July 31st, August 7th, and August 9th, respectively. D.I. 542-43, D.I. 553, D.I. 556. Telephonic oral argument heard on August 22, 2007.

The Special Master filed the R&R on September 6, 2007. D.I. 585. The R&R granted Intel's motion to compel on the basis that plaintiffs' financial capacity was at issue, "particularly in a case such as this one, where there is a substantial alleged class with an expectation of sub-stantial costs going forward...." D.I. 585 at 2 (quoting *ML-Lee*). The Special Master also determined that the Court "can appropriately entertain issues with respect to whether the class is able to satisfy any and all obligations as this issue relates to the prosecution of the lawsuit" and that "the 2003 Amendments to FRCP 23(g) [do not affect the relevance under Rule 23(a)(4) of the class representatives' financial capacity, because the additional duties of class counsel under

Rule 23(g)] do not obviate concerns of coercion of class representatives by class counsel (*see ML-Lee, supra*)." D.I. 585 at 2.

Under Paragraph 8 of D.I. 222 and Fed. R. Civ. P. 53(g), Plaintiffs now file these objections to the R&R.

## IV.    STANDARD OF REVIEW

This Court reviews *de novo* objections to a Special Master's Findings of Fact and Conclusions of Law. Fed. R. Civ. P. 53(g)(3), (4).

## V.    ARGUMENT

### A.    The Named Plaintiffs' Financial Status Is Not Relevant to Determining Adequacy and Compelling Production of Confidential Documents Concerning Such Status Would Undermine an Essential Goal and Public Benefit of Class-Action Suits

Individual consumers who agreed to serve as class representatives in this case should not be ordered to produce tax returns and other highly sensitive personal financial information to Intel. The oppressive nature of compelling disclosure of personal financial information such as tax returns would likely deter individuals from serving as class representatives herein because class-action plaintiffs typically lack a sufficient economic stake to pursue individual claims. Forcing putative class representatives to divulge the confidential details of their finances thus would jeopardize a fundamental purpose of class actions, *i.e.*, vindicating claims that, on an individual basis, might not ever be economically justified.

The Special Master's R&R rests in part on the concern about whether the named plaintiffs had the ability to cover the costs of litigation. Courts also recognize, however, that access to the courthouse should not depend on the financial means of the putative class plaintiffs. Indeed, the American Bar Association's ("ABA") Model Rules of Professional Conduct ("Model Rules") promote this very access to the courthouse. It is now the case that many class plaintiffs in actions such as this one have retainer agreements with their counsel that *require* counsel to

- 6 -

advance costs and expenses and create *no* contingency under which the client could become liable for such costs and expenses. Such agreements, particularly in the class-action setting, have been proper since the promulgation in 1983 of the Model Rules of Professional Conduct.[2]  In particular, Model Rule 1.8(e)(1) allows class counsel to accept full responsibility for costs and litigation expenses:

> (e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation except that:
>
> (1) a lawyer may advance court costs and expenses of litigation, *the repayment of which may be contingent on the outcome of the matter*.... [Emphasis added.]

The Model Rule serves as the framework for the Delaware Lawyers' Rules of Professional Conduct ("Delaware Rules"), which were first adopted by order of the Delaware Supreme Court dated September 12, 1985. *Order Adopting Changes to the Delaware Lawyers' Rules of Professional Conduct*, Order at 1, ¶ 1 (Del. April 29, 2003) (*en banc*) ("Delaware Rules Order"), available at http://courts.delaware.gov/rules/?orderadoptDLRPC.pdf (viewed Sept. 6, 2007). Both Model Rule 1.8(e) and Delaware Rule 1.8(e) specifically contemplate that plaintiffs' counsel in class actions will undertake to fund "court costs and expenses of litigations" in class actions. Model Rule 1.8(e)(1); Del. Lawyers' Rules of Prof'l Conduct R. 1.8(e)(1), effective July 1, 2003.

Accordingly, since the 1983 passage of the ABA Model Rules, the weight of authority holds that a class representative's personal finances are not relevant and are not subject to discovery by the defendant for purposes of determining whether the proposed plaintiff would be an "adequate" representative under Fed. R. Civ. P. 23(a)(4).

---

[2] Under Rule 83.6(d) of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, amended effective June 30, 2007, "all attorneys admitted or authorized to practice before this Court, including attorneys admitted on motion or otherwise, shall be governed by the Model Rules of Professional Conduct of the American Bar Association ("Model Rules")...." *See* Green Decl. at ¶ 9.

Subsequent revisions to the "Comments" to the Delaware Rules, as adopted by the

Delaware Supreme Court in 2003, consistent with "Comments" to the ABA Model Rules,

confirm that Rule 1.8(e)(1) rule applies to class actions. Delaware Rule 1.8, Comments 10 and

13, effective July 1, 2003; *see* Model Rule 1.8, Comments 10 and 13.[3] Moreover, these same

revisions contemplate that counsel would fund class litigation and express no concern that such

funding would subject the class representative to potential coercion. *Id*. To the contrary, the

comments expressly reject the argument that allowing counsel to fund litigation "gives lawyers

too great a financial stake in the litigation." Del. Lawyers' Rules of Prof'l Conduct R. 1.8 cmt.

10; *see* Model Rule 1.8, Comment 10. Thus, where, as here, counsel has agreed to fund the

litigation, as is permitted by Model Rules and the Delaware Rules, class representatives'

financial information is not relevant.

Accordingly, since the 1983 passage of the ABA Model Rules, the weight of authority

holds that a class representative's personal finances are not relevant and are not subject to

discovery to defendant for purposes of determining whether the proposed plaintiff would be an

"adequate" representative under Fed. R. Civ. P. 23(a)(4).

Furthermore, many pre-1983 cases did not require class plaintiffs to divulge personal

financial information, reasoning that discovery of such information would eliminate many types

of otherwise meritorious class actions.

---

[3] See also *Delaware Lawyers' Rules of Professional Conduct*, effective July 1, 2003, "black-lined"
version ("Delaware Rules black-line"), Rule 1.8 and Comments, at pp. 51, 55-57, available at:
http://courts.delaware.gov/Courts/Supreme%20Court/pdf/?FinalDLRPCblklnd.pdf  (viewed Sept. 6, 2007)
(Rule 1.8(e) unchanged and Comments 10 and 13 added by July 1, 2003 revisions );  Delaware Rules, Rule 1.8(e),
Comments 10 and 13, effective July 1, 2003, available at:
http://courts.state.de.us/Rules/?DLRPCwithComments2005.pdf (viewed Sept. 6, 2007).

1.    **Rule 1.8 of the Model Rules Professional Conduct and the corresponding Delaware Lawyers' Rules of Professional Conduct specifically permit counsel to fund class-action litigation**

Federal courts commonly deny discovery of tax returns or similar financial information from putative class representatives.[4] Many federal courts have likewise concluded since 1983 that a class representative's personal finances do not and should not determine his or her adequacy under Fed. R. Civ. P. 23(a)(4). *See, e.g., Vanderbilt*, 725 F.2d at 209-10.[5] The Third Circuit in *Vanderbilt* rejected a challenge to a plaintiff's adequacy as a class representative in a securities action where someone other than plaintiff was financing the litigation. The Third Circuit noted that there is nothing "inherently perfidious in an arrangement whereby a litigant's counsel fees and litigation expenses are financed by someone other than the litigant.... It is not uncommon in class actions to have persons other than the named plaintiff pay the costs of litigation." *Id.* at 210. Analogizing the situation to class actions involving indigent plaintiffs or human rights issues where attorneys' fees are sometimes even paid indirectly by the government through grants to public interest law firms, the court concluded:

> We do not see why class plaintiffs in corporate derivative actions
> must be obliged to pay the litigation costs out of their own pockets
> when class plaintiffs in these other class actions do not have the

---

[4] *See Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports and Recreation*, 165 F.R.D. 108, 112-13 (M.D. Fla. 1996); In *re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578, 578 (D. Minn. 1990); *Ferraro v. General Motors Corp.*, 105 F.R.D. 429, 434 (D.N.J. 1986); *Ragonetti v. Epitope*, No. 92 759 RE, 1992 U.S. Dist. LEXIS 22706, at *2-3, 1992 WL 473767 at *1 (D. Ore. Oct. 8, 1992).

[5] *See also County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1407, 1413-14 (E. D. N. Y. 1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990); *Jansen v. Greyhound Corp.*, 692 F. Supp. 1027, 1028 n.6 (N.D. Iowa 1986); *Mendez v. Redec Corp.*, 232 F.R.D. 78, 93 (W.D.N.Y. 2005); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 n. 1 (M.D. Pa. 2005); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 612 (N.D. Cal. 2004); *In re WorldCom Inc. Sec. Litig.*, 219 F.R.D. 267, 284-86 (S.D.N.Y. 2003); *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 213 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002); *Chisholm v. Transouth Fin. Corp.*, 194 F.R.D. 538, 556 (E.D. Va. 2000); *Dujanovic v. Mortgage Am., Inc.*, 185 F.R.D. 660, 668 n.11 (N.D. Ala. 1999); *Kaplan v. Pomerantz*, 131 F.R.D. 118, 124-25 (N.D. Ill. 1990); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 694 (D.N.J. 1986); *Walker v. Rent-A-Center, Inc.*, No. 5:02CV3, 2006 U.S. Dist. LEXIS 72232, at *7-9, 2006 WL 2860533 at *2 (E.D. Tex. Oct. 3, 2006); *Cannon v. Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 U.S. Dist. LEXIS 3517, at *16-17, 1997 WL 139472 at *6 (N.D. Ill. Mar. 25, 1997); *Schaffer v. The Timberland Co.*, No. 94-634 JD, 1996 U.S. Dist. LEXIS 5372, at *26-27 (D.N.H. Mar. 19, 1996).

- 9 -

same obligation. When functioning as class plaintiffs in the
federal courts the rich are entitled to the same privileges as the
poor. [*Id.* at 210.[6]]

Nothing in the Model Rules of Professional Conduct or Delaware Rules requires a class

representative to have the financial ability to fund an antitrust class action. Further, nothing in

those Rules suggests that counsel's payment of costs and expenses on a contingent basis, even

the substantial costs of notice and discovery in a class-action case, creates any further or

extraordinary conflict between counsel and the client such that the client is susceptible to

coercion under threat of revocation of funding by counsel.[7] As noted above, Rule 1.8(e)

expressly permits plaintiffs' counsel to finance a lawsuit.

Following the Third Circuit's lead, Delaware courts have confirmed that under the Dela-

ware Rules a plaintiff's financial status is not relevant to his or her adequacy as a class represen-

tative where counsel had agreed to fund the litigation. Thus, for example, on a motion for class

certification, the Delaware Court of Chancery rejected defendants' claims that the plaintiff was

not an adequate class representative where there was no showing that plaintiff was responsible

for costs and counsel stated that costs were being advanced by counsel, repayment contingent on

the outcome of the litigation as permitted by Delaware Rule 1.8(e). *Goodrich v. E. F. Hutton*

*Group, Inc.*, No. 8279, 1993 U.S. Dist. LEXIS 44, at *7, 1993 WL 94456 at *3 (Del. Ch.

Mar. 24, 1993).

The district court reached the same conclusion in *Schaffer v. The Timberland Co.*,

No. 94-634 JD,1996 U.S. Dist. LEXIS 5372, at *22 (D.N.H. March 19, 1996), a securities case

where defendants, on a motion for class certification, challenged the adequacy of the class repre-

---

[6] *See, e.g.*, Model Rule 1.8(e)(2)("a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client"). Del. Lawyers' Rules of Prof'l Conduct R. 1.8(e)(2)(same).

[7] To the contrary, both the ABA Model Rules and Delaware Rules recognize that the potential for conflict is present in any litigation. "In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person while earning a satisfactory living." ABA Model Rules, Preamble, Comment 9; Delaware Rules, Preamble, Comment 9, effective July 1, 2003.

sentatives in part because they "have not accepted financial responsibility for the prosecution of the case." The court concluded that the challenges based on the named plaintiffs' ability to finance the litigation lacked merit. Relying on ABA Model Rule 1.8(e), the court rejected defendants' contention, stating:

> The plaintiffs have entered into ... [a contingent] agreement with counsel and, even if they personally lack the resources to finance a litigation of this magnitude, the court finds that counsels' assumption of this obligation will protect the unnamed class members and, in the event of a fee award or monetary sanction, will protect the defendants from financial loss should the defendants ultimately prevail.... The court finds that the named plaintiffs are not rendered inadequate by virtue of their financial arrangements with counsel. [*Id.* at *26-27.]

Courts elsewhere applying or recognizing Model Rule 1.8(e)(1) have also deemed the class representative's financial wherewithal irrelevant to Rule 23(a)(4)'s adequacy determination. *See Moller*, 220 F.R.D. at 612 (named plaintiff's financial status irrelevant in the context of class certification; citing cases); *In re Linerboard Antitrust Litig.*, 203 F.R.D. at 213 (under Pennsylvania Rule 1.8(e), plaintiffs' financial resources irrelevant and decision based on prior rule outdated; furthermore, named plaintiffs need not take responsibility for all expenses because entire class may benefit from litigation); *Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports and Recreation,* 165 F.R.D. 108, 113 (M.D. Fla. 1996) (denying motion to compel production of plaintiffs' tax returns because "requested information is not relevant to the class certification issues"; citing cases); *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578, 578 (D. Minn 1990) (where plaintiffs' damages theory based on unlawful overcharge and not lost profits, "Plaintiffs' financial information is not relevant to any outstanding issue in this litigation"); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 694 (D.N.J. 1986) (relying on Rule 1.8, court noted that "[t]o preclude these plaintiffs from pursuing this case as a class action merely because their attorneys are advancing costs would contravene 'the very purposes which class actions were

designed to achieve'"); *Ferraro v. General Motors Corp.*, 105 F.R.D. 429, 434 (D.N.J. 1986) (to

extent fee agreement provides for full advancement of litigation costs, motion to compel

plaintiffs to produce financial status documents "will be denied as irrelevant"); *Cannon v.*

*Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 U.S. Dist. LEXIS 3517, at *16-17, 1997

WL 139472 at *6 (N.D. Ill. Mar. 25, 1997) ("Thus, any argument regarding Cannon's inability to

financially support this litigation is moot. Nonetheless, it should be made clear that a named

plaintiff's willingness to vouch for the entire costs of litigation is not determinative of her

adequacy to be a fair representative"; citing Rule 1.8).

      Professor Rosenberg makes a similar point at paragraph 20 of his declaration:

> The Special Master in this case seems to have concluded that the
> class counsel's funding agreement would not cover all costs; in
> particular, in the event of judgment against the class, the
> suggestion is that class members could be subject to court-taxed
> defense costs under Rule 54. No reason is given why such costs
> are not, let alone should not, be covered by class counsel's funding
> agreement. The defendant's distinction between "indemnifying"
> and "advancing" costs has no functional significance. In the
> course of prosecuting the class claim, the litigation-related debt
> owed to defendant as well as to vendors and other third parties is
> owed by the class and paid by class counsel on behalf of the class,
> regardless of whether the class, class representative, or class
> counsel is the first to receive the bill. The benefits of the
> contingent fee agreement shifting the burden of litigation costs to
> class counsel in the event the class claim fails hold fully for court-
> taxed costs as it does for all other costs. Class counsel payment of
> court-taxed costs under the contingent fee agreement poses no
> realistic danger of a coercive threat to cutoff funding, not only
> because of the reasons discussed above, but also because the class
> members' pro rata share of court-taxed costs will be negligible and
> there is no evidence defendants have ever collected them directly.
> Indeed, the only way defendants could ever receive payment of
> these costs is that class counsel would pay them as the attorney
> would any litigation cost. [Footnotes omitted.]

      The decisions cited above are consistent with the goal underlying Federal Rule of Civil

Procedure 23: that the class-action-litigation option be available to all litigants, regardless of

personal wealth. *See* Rosenberg Decl. ¶¶ 11-13. In *Chisholm v. Transouth Fin. Corp.*, 194

F.R.D. 538 (E.D. Va. 2000), for example, where the court certified a class of used-car purchasers

who had defaulted on loans and had their vehicles repossessed under a challenged security

agreement, the court deemed irrelevant the class representatives' financial resources.

Emphasizing that Rule 23 does not restrict courthouse access just to the wealthy, *Chisholm*

certified the adequacy of named plaintiffs with limited financial means:

> **The test to be a class representative has never been, nor should it
> ever be, a wealth test.** Justice does not permit such an absurd
> limitation on the ability of citizens to access the courts under
> Rule 23. Financial ability only is relevant insofar as trying to
> measure the overall ability of the named Plaintiffs to represent the
> class. A test based upon the possession of deep financial reserves
> doubtless would render this class without any representative. This
> Court does not believe that a financial capacity bright line test is
> consistent with the intent, purposes or goals of Rule 23. [*Id.* at 556
> (emphasis added).]

The court in *Dujanovic v. MortgageAMERICA, Inc.*, 185 F.R.D. 660 (N.D. Ala. 1999),

reasoned likewise:

> The amount and extent of the [named] plaintiffs' finances are not
> determinative of his adequacy as a class representative.... To
> refuse to certify a class because the plaintiff is not wealthy enough
> to bear the expenses of the litigation would defeat one of the
> purposes of the class action device. [*Id.* at 668 n.11.]

Acknowledging the same financial arrangements between counsel and the class repre-

sentative, the court in *Kaplan v. Pomerantz*, 131 F.R.D. 118 (N.D. Ill. 1990), held that because

the plaintiffs' "attorneys have agreed to advance the costs of the litigation ... 'it is not relevant

whether Plaintiffs themselves or the decedents' estate have sufficient resources to fund the

litigation.'" *Id.* at 125 (quoting *Shamberg*, 111 F.R.D. at 694). *Kaplan* permitted plaintiff to

refuse to answer certain questions about his financial affairs, ruling that this refusal did not

render the plaintiff an inadequate class representative: "the need to ensure that class members

will receive proper notice and that the class action will be properly funded does not warrant wholesale discovery into the named Plaintiff's personal affairs." *Id.*

In permitting counsel to fund class-action litigation, the Rules are thus consistent with this ever growing body of case law. To provide otherwise would subject the ABA Model Rules and the Delaware Rules to invalidation as frustrating Rule 23 of the Federal Rules of Civil Procedure. *See, e.g., Boccardo v. Commissioner of Internal Revenue*, 56 F. 3d 1016, 1019 (9th Cir. 1995) ("in a federal class action, a state prohibition against the lawyer picking up the tab for costs has been invalidated as frustrating the Federal Rules of Civil Procedure, Rule 23"); *Rand v. Monsanto*, 926 F. 2d at 600.

Professor Green makes the same point in his accompanying declaration. He notes that the change reflected in Model Rule 1.8(e) from the prior Code of Professional Responsibility that allows lawyers to finance contingent-fee litigation,

> reflects the recognition that "condition[ing] repayment on recovery … is thought to be virtually indistinguishable from a contingent fee," *Annotated ABA Model Rules of Professional Conduct* 146 (6th ed. 2007), and "help[s] assure access to the courts." ABA Model Rules of Professional Conduct, Rule 1.8, Cmt. [10]. As the Restatement recognizes, allowing lawyers to advance litigation expenses and make repayment conditioned on success "enable[s] poor clients to assert their rights," and further, "[r]equiring the client to refund such expenses regardless of success would have a particularly crippling effect on class actions, where the named plaintiffs often have financial stakes much smaller than the litigation expenses. *Restatement (Third) of the Law Governing Lawyers* § 36, Cmt. c (2000). [Green Decl. ¶14.]

Delaware has since removed any possible doubt that its Rule 1.8 permits counsel to fund class litigation. In 2002, following a four-year deliberative process, the ABA adopted a compre-hensive set of changes to its Model Rules. In light of the ABA's evaluation of the Model Rules, in October 2001, the Delaware Supreme Court appointed eleven members of the Delaware Bar to serve as the Permanent Advisory Committee on the Delaware Lawyers' Rules of Professional

Conduct. The Court charged the Advisory Committee with the task of evaluating, on an ongoing

basis, the need for changes to the Delaware Rules and to recommend changes for the Court to

consider for adoption. Delaware Rules Order at 1-2, ¶¶ 2-3. After an 18-month process that

included public comment, the Supreme Court adopted revisions to the Delaware Rules and

Comments, effective July 1, 2003. Delaware Rules Order at 6, ¶ 6.

Rule 1.8(e) was unchanged. The Comments to Rule 1.8, however, underwent substantial

revision. *See* Delaware Rules Order at 3, ¶ 7; Delaware Rules "black-line." These changes

***strengthen*** the policy in favor of permitting lawyers to fund the costs and expenses of litigation

to "ensure access to the courts." Del. Lawyers' Rules of Prof'l Conduct R. 1.8 cmt. 10.

Comment 10 regarding "Financial Assistance" reiterates that counsel may advance court

costs and litigation expenses:

> Lawyers may not subsidize law suits or administrative proceedings
> brought on behalf of their clients, including making or guaranteeing
> loans to their clients for living expenses, because to do so would
> encourage clients to pursue law suits that might not otherwise be
> brought and because such assistance gives lawyers too great a
> financial stake in the litigation. ***These dangers do not warrant a***
> ***prohibition on a lawyer lending a client court costs and litigation***
> ***expenses***, including the expenses of medial examination ***and the***
> ***costs of obtaining and presenting evidence, because these***
> ***advances are virtually indistinguishable from contingent fees and***
> ***help ensure access to the courts***. Similarly, an exception allowing
> lawyers representing indigent clients to pay court costs and
> litigation expenses regardless of whether these funds will be repaid
> is warranted.

Del. Lawyers' Rules of Prof'l Conduct R. 1.8 cmt. 10, effective July 1, 2003 (emphasis added).

*See also* Model Rule 1.8, cmt. 10 (same).

The express discussion of class actions in new Comment 13 regarding "Aggregate

Settlements" removes any doubt that class actions are included within the ambit of Delaware

Rule 1.8 financing. It provides:

- 15 -

> Lawyers representing a class of plaintiffs or defendants, or those proceeding derivatively, may not have a full client-lawyer relationship with each member of the class; nevertheless, such lawyers must comply with applicable rules regulating notification of class members and other procedural requirements designed to ensure adequate protection of the entire class.

Del. Lawyers' Rules of Prof'l Conduct R. 1.8 cmt. 13. *See also* Model Rule 1.8, cmt. 13 (same).

Comment 10 specifically rejects the notion that funding court costs and litigation expenses "gives lawyers too great a financial stake in the litigation." Such advances "are virtually indistinguishable from contingent fees" and, therefore, create no greater threat of coercion by an attorney than would any contingent fee arrangement. The Rules specifically acknowledge that a contingent cost arrangement serves the greater good of helping "ensure access to the courts." Del. Lawyers' Rules of Prof'l Conduct R. 1.8 cmt. 10. The specter of an unnecessary and unjustified inquiry into a client's financial status would only serve to deter litigants from bringing their claims to court and effectively precludes litigants of modest means from access to court.[8]

### 2. Many pre-ABA Model Rules amendment cases and even cases from jurisdictions applying more restrictive codes than the Model Rules likewise do not require disclosure of financial information

Courts have long protected class representatives from disclosing their personal financial information even from before the publication of Model Rule 1.8(e)(1). Numerous decisions

---

[8] In briefing before the Special Master, Intel relied on a draft Oklahoma Bar Association Legal Ethics Advisory Opinion (Notice: OBA Legal Ethics Advisory Opinion 2007-OK LEG ETH 01, 78 Okla. Bar. J. 15 at 1318-20 (May 12, 2007) ("Oklahoma Opinion"), available at: http://www.okbar.org/obj/journals_full/OBJ2007May12.pdf. The draft Oklahoma Opinion has not and may not ever become final (see http://www.okbar.org/ethics/opinions.htm, viewed Oct. 1, 2007); and Oklahoma Rule 1.8(e), on which the draft Opinion principally relies, is superseded effective Jan. 1, 2008. Furthermore, current Oklahoma Rule 1.8(e) is substantially different from Delaware Rule 1.8(e). For these reasons, Professor Green found the draft Oklahoma opinion to be unpersuasive. Green Decl. ¶ 19 As he also explains, it is inconsistent with ethics opinions from other states. *Id.* ¶ 18. See Los Angeles Bar County Bar Association Professional Responsibility and Ethics Committee, Opinion No. 517, Indemnification of Client's Litigation Costs, Apr. 17, 2006 available at:
http://www.lacba.org/Files/Main%20Folder/Documents/%20Ethics%20%20%20Opinions/Files/Ethics_Opinion_51 7.pdf (viewed October 9, 2007); Alaska Bar Association's Ethics Committee Opinion No. 2004-02, issued on April 27, 2004, available at: http://www.alaskabar.org/index.cfm?id=5844 (viewed October 9, 2007).

rendered before 1983 denied discovery of such materials[9] and held in the context of class

certification that a class representative's personal finances do not determine adequacy under Fed.

R. Civ. P. Rule 23(a)(4).[10]

Thus, for example, in *Sanderson v. Winner*, 507 F.2d 477, 478 (10th Cir. 1974), an anti-

trust case under § 1 of the Sherman Act, the court reviewed the district court's order compelling

plaintiff to produce information about his financial condition and with the arrangements with his

attorneys concerning litigation costs and fees. The circuit court found the discovery so improper,

irrelevant and "unwarranted" that it issued a writ of mandamus to stop it. *Id.* at 479. The court

rejected any notion that *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (pre-ABA

amendment decision requiring class-action plaintiffs to pay the costs of individual notice),

approved oppressive discovery as a means of discouraging otherwise meritorious actions:

> [T]here is nothing in [*Eisen*] which calls for unlimited inquiry into
> the financial capacity of plaintiff or which authorizes exposure of
> the plaintiff's income tax returns together with financial statements,
> plus documents showing specific financial capacity. Nor are fee
> arrangements with lawyers a prescribed discovery subject.
>
> Defendants considered it important to ascertain whether
> plaintiffs were able to pay all the costs in the litigation including
> extensive depositions. We fail to see relevancy in these inquiries
> particularly with respect to *in limine* inquiry as to whether a class
> action is to be allowed. Ordinarily courts do not inquire into the

---

[9] *Sanderson v. Winner*, 507 F.2d 477, 479 (10th Cir. 1974); *Guse v. J.C. Penney Co.*, 409 F. Supp. 28, 31-32 (E.D. Wis. 1976); *Bogosian v. Gulf Oil Corp.*, 337 F. Supp. 1228, 1229 (E.D. Pa. 1971); *In re McDonnell Douglas Sec. Litig.*, 92 F.R.D. 761, 763 (E.D. Mo. 1981); *Klein v. Checker Motors*, 87 F.R.D. 5,6 (N.D. Ill. 1979); *Kamens v. Horizon Corp.*, 81 F.R.D. 444, 447 (S.D.N.Y. 1979); *Sayre v. Abraham Lincoln Sav. & Loan Ass'n*, 65 F.R.D. 379, 382-83 (E.D. Pa. 1974), *amended*, 69 F.R.D. 117 (E.D. Pa. 1975); *In re West Coast Dep't Stores Antitrust Litig.*, 1979 U.S. Dist. LEXIS 8500, at *1-4, 1979 WL 1721 at *2 (N.D. Cal. Nov. 16, 1979); *In re Toilet Seat Antitrust Litig.*, 1977 U.S. Dist. LEXIS 17256, at *1-2, 1977 WL 1363 at *1 (E.D. Mich. Feb. 22, 1977); *Kleinman v. Sibley*, 1975 U.S. Dist. LEXIS 15827, at *3 (E.D. Pa. Oct. 8, 1975).

[10] *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657, 674 (E.D. Pa. 1980); *In re South Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 418 (M.D. La. 1980); *In re Independent Gasoline Antitrust Litig.*, 79 F.R.D. 552, 557 (D. Md. 1978); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 39-40 (S.D.N.Y. 1976); *In re Toilet Seat Antitrust Litig.*, No. 75-184, 1976 U.S. Dist. LEXIS 14904, at *12, 1976 WL 1265 at *5 (E.D. Mich., May 26, 1976); *Dennis v. Saks & Co.*, No. 74-4419, 1975 U.S. Dist. LEXIS 11,502, at *8, 1975 WL 909 at *3 (S.D.N.Y. July 10, 1975).

financial responsibility of litigants. We generally eschew the ques-
tion whether litigants are rich or poor. Instead, we address our-
selves to the merits of the litigation. We recognize that the class
action is unique and we see the necessity for the court to be satisfied
that the plaintiff or plaintiffs can pay the notice costs, and we also
agree fully with the Court's ruling in *Eisen* that due process requires
decent notice. But we do not read *Eisen* as creating a presumption
against finding a class action. Nor does it approve oppressive dis-
covery as a means of discouraging a private antitrust action which,
if meritorious, advances an important interest of the government."

... [W]e see no difference between the case at bar and any
other lawsuit. Defendant will have ample opportunity for discovery
under Rule 69 Fed.R.Civ.P, if it obtains judgment. *See: Federal
Savings & Loan Insurance Corp. v. Krueger*, 55 F.R.D. 512 (N.D.
Ill. 1972); *Gangemi v. Moor*, 268 F. Supp. 19 (D. Del. 1967). (Both
cases suggest that there is no right to discovery of assets until
judgment is obtained.)

507 F.2d at 479-80. *See also Stabilus v. Haynsworth, Baldwin, Johnson & Greaves*, 144 F.R.D.

258, 269 (E.D. Pa. 1992) (refusing discovery of tax returns, citing "the reluctance of courts to

order the production of income tax returns"); *Bogosian v. Gulf Oil Corp.*, 337 F. Supp. 1128,

1230 (E.D. Pa. 1971) (refusing discovery of plaintiff's financial arrangements with counsel or

net worth and ability to satisfy a judgment for costs as not relevant to subject matter of lawsuit).

Post-1983 decisions from jurisdictions that have not adopted Model Rule 1.8 are also

instructive. In *Rand*, the applicable Disciplinary Rule made the client ultimately responsible for

the costs of the litigation. The court nonetheless deemed a class representative's limited finan-

cial resources not a *per se* basis for finding inadequacy under Fed. R. Civ. P. 23(a)(4). *Rand*,

926 F.2d at 601. Unlike and contrary to ABA Model Rule 1.8(e)(1) and Delaware's

Rule 1.8(e)(1), the provision applicable in *Rand* "forbids counsel to bear the costs of suit

themselves." 926 F.2d at 598. While this prompted the district court to find plaintiff to be an

inadequate class representative, the Seventh Circuit reversed. The appellate court acknowledged

that it is a common and rational practice for class attorneys to advance the costs of litigation with

the recovery of the expenses dependent on the case outcome:

- 18 -

Class actions assemble small claims – usually too small to be worth litigating separately but repaying the effort in the aggregate. A representative plaintiff gains nothing from the collective proceeding. Under the district court's rationale, however, he could well lose, because filing the class suit would expose him to the entire costs of the case. The class as a whole might be willing to pay the costs. Lawyers, who unlike the representative plaintiff receive compensation reflecting any benefits conferred on the class as a whole, also may be willing to underwrite the costs. Lawyers can spread risk not only across the partners of the firms but also across cases. One loss does not mean disaster if the firms have portfolios of actions, as they will. But the representative cannot diversify in this way and cannot collect a reward for bearing exceptional risk in a single case. ***The very feature that makes class treatment appropriate – small individual stakes and large aggregate ones – ensure that the representative will be unwilling to vouch for the entire costs. Only a lunatic would do so.*** A madman is not a good representative of the class!

*Id*. at 599 (emphasis added). The court in *Rand* then reasoned that any conscientious class representative would rightfully demand counsel to advance costs:

Rule 23 contemplates, and the district court should insist on, a conscientious representative. All class suits create some conflict between the representative and the class; the representative and counsel may be tempted to sell out the class for benefits to themselves. Judges are on the lookout for persons who may pay inadequate attention to the interests of the others they purport to represent. A conscientious plaintiff is likely to be willing to make some financial commitment to the case. But no person need be willing to stake her or his entire fortune for the benefit of strangers. Class lawsuits can be frightfully expensive: the costs (apart from legal fees) include not only the notice to the class but also the reporter's fees for depositions, duplication expenses, payments to express delivery services, and the like. No (sane) person would pay the entire costs of a securities class action in exchange for a maximum benefit of $1,135. [*Id*.]

*Rand* criticized the local rule incorporating DR 5-103(B) prohibiting counsel from bearing litigation costs: "At all events, DR 5-103(B) is part of the Model Code, long in the tooth and being replaced by the ABA's Model Rules of Profession Conduct (1983). Model Rule 1.8(e) allows a lawyer to pick up the tab for costs if the suit is unsuccessful." 926 F.2d at 600. The

- 19 -

court noted that "[a] majority of the states now follow the Model Rules." *Id.* (citing Geoffrey C.

Hazard, Jr., & W. William Hodes, 2 *The Law of Lawyering: A Handbook on the Model Rules of*

*Professional Conduct* 1255 (1990 ed.)).

New York had a similar disciplinary rule in 1989. In *County of Suffolk v. Long Island*

*Lighting Co.*, 710 F. Supp. 1407, 1413-14 (E.D.N.Y. 1989) ("*Lilco*"), *aff'd*, 907 F.2d 1295 (2d

Cir. 1990), Judge Weinstein stated: "Rule 23 requires, as a practical matter, that attorneys

advance costs on a scale not reimbursable by any normal client. A federal court cannot allow

outmoded and unrealistic concepts of ethics to inhibit it unduly in providing an effective forum

to those persons of limited means who seek vindication of federal rights."

As the court noted in *In re WorldCom Inc. Sec. Litig.*, 219 F.R.D. 267, 285 (S.D.N.Y.

2003), the New York rule was deemed inconsistent with and thus inapplicable to class actions:

> Following *Rand* and *Lilco*, the Committee on Professional
> Responsibility of the Association of the Bar of the City of New
> York concluded "that DR 5-103(b) should be inapplicable to class
> actions," and observed that "[i]nsisting on ultimate client
> responsibility would render many class action suits impracticable
> and have the effect of limiting the access of legitimate claims,
> particularly those where losses to individual claimants are very
> small." Committee on Professional Responsibility, *Financial*
> *Arrangements in Class Actions*, 20 Fordham Urb. L.J. at 848.

*WorldCom* agreed, concluding that the ethical rule undermined the purposes of Rule 23 and

recent revisions to the federal securities laws:

> Enforcing DR 5-103 in the context of this securities class action
> would undermine the purposes of both the [Private Securities Litiga-
> tion Reform Act] and Rule 23. Requiring the named plaintiffs to
> shoulder their pro rata share of what are sure to be substantial
> expenses is unnecessary in this context. In appointing lead plaintiff
> and approving co-lead counsel, the Court carefully evaluated
> NYSCRF's willingness and ability to shepherd this litigation. There
> is no indication that the assumption by their attorneys of the financial
> risk of litigation has diminished NYSCRF's diligence in supervising
> the lawsuit. 219 F.R.D. at 286.

Professor Green in his declaration notes and discusses all of these decisions and the evolution of

the law in this area. *See* Green Decl. ¶¶ 15-16.

### 3.    Compelling discovery of named plaintiffs' financial records would harass the plaintiffs and chill class actions

Courts also recognize that discovery into named plaintiffs' financial affairs can harass

plaintiffs and discourage class actions:

> This Court [is concerned] about the use of discovery into this
> sensitive area as a means for discouraging otherwise meritorious
> class actions. The need to ensure that class members will receive
> proper notice and that class action will be properly funded does not
> warrant wholesale discovery into the named plaintiff's personal
> financial affairs.

*Kaplan*, 131 F.R.D. at 125. The court in *Ferraro* also cited the potential for harassment as one

of several decisive factors weighing against broad discovery of a plaintiff's financial ability:

> There is a potential for mischief if a defendant is permitted to
> obtain uncircumscribed financial ability discovery from its adversary.
> After determining the precise amount of resources that its adversary is
> willing to commit to the litigation, a defendant might be tempted to
> overwhelm the plaintiff's financial resources rather than to seek a
> resolution of the case. Moreover, permitting detailed financial scru-
> tiny of the representative's personal finances might deter plaintiffs
> from seeking class action redress. Such potentially invasive scrutiny,
> although having no relationship to the merits of the class action itself,
> could be misused as a device to deter such suits entirely.
>
>         …
>
> Second, the ultimate costs of this class action are unknowable.
> Discovery of plaintiff's ability to make repayment to his counsel
> would produce information which might not be relevant to predicting
> plaintiff's financial obligations, let alone the impact that plaintiff's
> present knowledge of such speculative obligations might have upon
> his willingness to vigorously prosecute the class action.
>
> Third, even if the action becomes protracted and its costs
> become great, the funding of the litigation itself is undermined only if
> plaintiff's counsel breaches an apparent promise to advance the costs
> of litigation. Discovery of the adequacy of representation should not
> be launched on the premise that class counsel will not live up to their
> agreement with the class representative. Pre-certification discovery of

> the issue of adequacy in this case is to be more narrowly focused upon
> the agreement of counsel to advance fees and the willingness of the
> class representative to be liable for repayment, rather than upon the
> ability of the class representative to make repayment to his attorneys.

105 F.R.D. at 432-33.

In short, courts have long refused to allow defendants to use oppressive discovery requests to discourage an otherwise meritorious class action. And since the passage of Model Rule 1.8(e)(1), most courts have found that when attorneys advance court costs and expenses contingent upon the outcome of the matter, class plaintiffs' individual financial records are not relevant and not discoverable.

4.    **The 2003 Amendments to Rule 23(g) confirm that class counsel's primary duty is to represent the class as a whole rather than individual class representatives, thus removing any possible coercion motive**

The Special Master's R&R was also based on the putative possible concern of coercion of class representatives by class counsel. Class counsel appointed by the Court have no need, however, to coerce a class representative because they already have the legally sanctioned right and authority – as well as the responsibility – to act in the best interests of the class as a whole, even if an individual class representative disagrees. To the extent this distinction may have been unclear at the time of the 1993 *ML-Lee* decision, it certainly was clarified by both the Third Circuit's 1999 decision in *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999), and the 2003 amendments to Federal Rule of Civil Procedure 23. With the specter of any possible need or reason for the application of coercion thus eliminated, any purely theoretical threat of coercion cannot and should not render a plaintiff's financial resources relevant to the Rule 23(a)(4) adequacy analysis. Indeed, Plaintiffs have been unable to locate any case – other than *ML-Lee* and the one case on which it relies, *Rode v. Emery Air Freight Corp.*, 76 F.R.D. 229 (W.D. Pa.

1977) – that cited the threat of funding revocation as a ground for finding a class representative's
financial capacity to be relevant.

Class actions are different from other types of litigation, and plaintiffs, their counsel, and
the court all have distinct responsibilities. Class counsel must use their own judgment in repre-
senting the class, even if the class representatives have a different view. "[A]lthough class
counsel owes duties to class representatives, class counsel's ultimate client is the class as an
entity, not the class representatives individually." Green Decl. ¶ 11 (citing Nancy J. Moore, *Who
Should Regulate Class Action Lawyers?*, 2003 U. ILL. L. REV. 1477). For example, a class
representative's opposition to a proposed settlement cannot prevent class counsel from submit-
ting it or the court from approving it. Class representatives cannot discharge class counsel as an
ordinary client could; to the contrary, a class representative that does not act in the best interests
of the class as a whole can be replaced by another class member in that role. Given the fact that
class counsel do not need the class representative's approval to take actions in the best interests
of the class, there can logically be no reason for, nor danger of coercion of the class
representative.[11]

### a.    The responsibilities of plaintiffs and their counsel

Rule 23(a)(4) requires only that the proposed class representatives not have interests con-
trary to those of other class members and that proposed class counsel be qualified and competent.
*See Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984). "Thus, the adequacy requirement
places only a 'modest' burden on the class representative to demonstrate '[a]n understanding of
the basis facts underlying the claims, some general knowledge, and a willingness and ability to
participate in discovery.'" *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 398 (N.D. Ill. 2006)

---

[11] In addition, "[d]iscovery of the adequacy of representation should not be launched on the premise that class
counsel will not live up to their agreement with the class representative." *Ferraro*, 105 F.R.D. at 433.

(quoting *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 394 (N.D. Ill. 2006)). As one court has observed, the precise "rights and duties of the Class Representatives are ill defined by the case law and federal rules at best." *Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494, 495 (S.D.N.Y. 1994) ("*Maywalt I*"), *aff'd*, 67 F.3d 1072 (2d Cir. 1995); *see also id.* at 496 n.5 (discussing "the amorphous nature of Class Representative's duties").

On the other hand, the Third Circuit has long taken a realistic view of class counsel's responsibilities, explaining that "[e]xperience teaches that it is counsel for the class representative, and not the named parties, who direct and manage these actions." *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 832 n.9 (3d Cir. 1973). *See* Green Decl. ¶ 11; *Smith v. Dominion Bridge Corp.*, Civ. A. No. 96-7580, 1998 U.S. Dist. Lexis 2586, at *13 (E.D. Pa. Mar. 6, 1998) ("the courts in this circuit have consistently found that it is counsel, not the named plaintiff, who controls the class action"); *Snider v. Upjohn Co.*, 115 F.R.D. 536, 541 (E.D. Pa. 1987) ("[t]he third circuit has recognized that class counsel, not the named plaintiff, directs and manages the class action"); Chief Judge Edward R. Becker, *Report: Third Circuit Task Force Report on Selection of Class Counsel*, 74 Temp. L. Rev. 689, 691-92 (2001).[12]

Such an approach makes sense in light of the nature of class actions. While "[t]he class representatives furnish the factual basis to invoke the jurisdiction of the court and provide the outline of the controversy," in "a massive class action ... it is counsel for the class who has the laboring oar." *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 124 (3d Cir. 1985). *See also* Manual for Complex Litigation, Fourth § 21.27, at 278 (2004) ("Manual") ("[u]nlike

---

[12] *See also Maywalt I*, 155 F.R.D. at 496 ("the legal obligations of Class Counsel, once certified as such, appear to extend much further than those imposed upon Class Representatives"); *Murray*, 240 F.R.D. at 398 (Rule 23(a)(4) "does not require that the class representative control the litigation because '[r]ealistically, functionally, practically' class counsel 'direct[s] and manage[s]' the suit"; quoting *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002)).

other civil litigation, many class action suits do not involve a client who chooses a lawyer, negotiates the terms of the engagement, and monitors the lawyer's performance").

Thus, "the duty owed in a class action is in some ways unique and cannot be equated with that in the traditional lawyer-client setting." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 164-65 (3d Cir. 1984) (Adams, J., concurring). This is because "in addition to the normal obligations of an officer of the court, and as counsel to parties to the litigation, class action counsel possess, in a very real sense, fiduciary obligations to those not before the court." *Greenfield*, 483 F.2d at 832. "The obligation of counsel representing a class runs to the class as a whole, although as a general matter class counsel may have worked closely only with the named parties." *Corn Derivatives*, 748 F.2d at 163 (Adams, J., concurring). *Accord In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18 (2d Cir. 1986) ("the class attorney's duty does not run just to the plaintiff's [*sic*] named in the caption of the case; it runs to all of the members of the class"); *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) ("The compelling obligation of class counsel in class action litigation is to the group which makes up the class. Counsel must be aware of and motivated by that which is in the maximum best interests of the class considered as a unit").[13]

To the extent any of this was unclear at the time of the *ML-Lee* decision,[14] the 2003 amendments to the Federal Rules of Civil Procedure clearly support the plaintiffs' position by

---

[13] Accordingly, "courts cannot mechanically transpose to class actions the rules developed in the traditional lawyer-client setting context...." *Corn Derivatives*, 748 F.2d at 163 (Adams, J., concurring). *See also Agent Orange*, 800 F.2d at 19 ("the traditional rules that have developed in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation"); *Parker*, 667 F.2d at 1211 ("The duty owed to the client sharply distinguishes litigation on behalf of one or more individuals and litigation on behalf of a class. Objectors emphasize the duty of counsel in non-class litigation. The prevailing principles in that situation cannot be imported wholesale into a class action setting. The fairness and adequacy of counsel's performance cannot be gauged in terms of the representation of the named plaintiffs.").

[14] For example, Judge Adams's view in *Corn Derivatives* was expressed only in a concurring opinion.

- 25 -

"recogniz[ing] that the primary responsibility of class counsel, resulting from appointment as class counsel, is to represent the best interests of the class. The rule thus *establishes* the obligation of class counsel, an obligation that may be different from the customary obligations of counsel to individual clients. Appointment as class counsel means that the primary obligation of counsel is to the class rather than to any individual members of it." Fed. R. Civ. P. 23(g), Advisory Committee Note (emphasis added). *See* Rosenberg Decl. ¶¶ 6-10.

        **b.**    **Disagreements between class counsel and the class representatives**

In some cases, "[c]lass counsel's duty to the class as a whole" can "diverge[] from the opinion of" the class representatives. *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983). When this happens, class counsel are "responsible for protecting the interests of the class as a whole, even in circumstances where the class representatives take a position that counsel consider contrary to the interests of absent class members." MANUAL § 21.641, at 323; *see also Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) ("*Maywalt II*") ("[t]he attorneys themselves have an obligation to all of the class members, and 'when a potential conflict arises between the named plaintiffs and the rest of the class, the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs'").

Such disagreements most commonly arise in the context of a proposed settlement. *See Lazy Oil*, 166 F.3d at 589 ("[i]n many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class)"). "Class counsel must discuss with the class representatives the terms of any settlement offered to the class. Approval or rejection of the offer by the representatives, however, does not end the attorneys' obligations, because they must act in the best interests of the class as a whole." MANUAL § 21.641, at 323. As the 2003 amendments to the Federal Rules make clear,

"the class representatives cannot command class counsel to accept or reject a settlement proposal. To the contrary, class counsel must determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole." Fed. R. Civ. P. 23(g), Advisory Committee Note. Indeed, courts often approve settlements endorsed by class counsel over the objection of named plaintiffs. *See, e.g., Lazy Oil*, 166 F.3d at 591; *Walsh*, 726 F.2d at 966; *Parker*, 667 F.2d at 1214; *Laskey v. UAW*, 638 F.2d 954, 956 (6th Cir. 1981). *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 cmt. f (2000) ("[l]awyers in class actions thus have duties to the class as well as to the class representatives. [¶] A class-action lawyer may therefore be privileged or obliged to oppose the views of the class representatives after having consulted with them…. The lawyer should act for the benefit of the class as its members would reasonably define that benefit."); *id.* § 22 cmt. C ("[i]n class actions, special rules apply; a court, after notice and hearing, may approve a settlement negotiated by the lawyer for the class without the approval of named representatives or members of the class").

In *Lazy Oil* – decided in 1999, six years after the *ML-Lee* ruling – three of the class representatives had objected to a settlement negotiated by class counsel. *See* 166 F.3d at 584. The district court nonetheless approved the settlement as fair and reasonable, allowed class counsel to withdraw as attorneys for the objecting class representatives, and denied the objectors' request to disqualify class counsel. *Id. See* Green Decl. ¶ 11.

The Third Circuit affirmed, citing with approval Judge Adams' concurring opinion in *Corn Derivatives* and "adopt[ing] a balancing approach to motions to remove or disqualify class counsel on conflict-of-interest grounds once former class representatives, *i.e.*, former clients of class counsel, become objectors and therefore adversaries to class counsel's remaining clients." *Id.* The court held that "in the class action context, once some class representatives object to a

- 27 -

settlement negotiated on their behalf, class counsel may continue to represent the remaining class

representatives and the class, as long as the interest of the class in continued representation by

experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed

by their former counsel." *Id.* at 590. It went on to explain that "[i]n a case such as the present

one, the balance weighs heavily in favor of denying a motion for disqualification of class counsel

that is made on the basis of nothing more than the fact that the objectors include former clients

(in the same case) of class counsel, without any showing of prejudice." *Id.*

Thus, class counsel not only need not obtain the consent of class representatives to sub-

mit a proposed settlement to the court or take other action on behalf of the class, they may do so

over the named plaintiffs' objections and continue to represent the remaining class representa-

tives and the class. There is thus no reason for class counsel to attempt to coerce actions on the

part of class representatives, through financial threats or otherwise.

Professor Rosenberg's declaration thoroughly supports this conclusion:

> (1) ... [A]ny conflict over litigation options is precluded by
> Rule 23's empowerment of class counsel as the exclusive, single-
> mindedly devoted legal representative of the class. Class counsel's
> judgment and decision on legal options is final, subject only to over-
> ruling by the Court on a finding of unfair or inadequate representa-
> tion. Because no such conflict could arise, there is no conflict for
> class counsel to seek to resolve by threatening funding cutoff or
> otherwise.
>
> (2) Moreover, even if such a conflict could arise, counsel
> would not attempt to compel the class representative's compliance by
> threatening to cutoff funding the class action. To carry out the threat
> would entail violating his or her express and legally enforceable
> funding agreement with the court and the client, thereby inevitably
> incurring grave financial sanctions – both formal and reputational.
>
> (3) Furthermore, a funding-cutoff threat would be irrational
> and lack credibility. Both the class representative and class counsel
> would know that the threat was not credible, because to carry it out
> would harm class counsel much more than the class representative.
> Class counsel would lose the prospect of the class action fee-award in

addition to suffering severe financial and other penalties for reneging on the funding agreement. In contrast, the representative would lose nothing at all, because he or she would report the threat to the court and the defalcating lawyer would be required to pay for any losses and costs incurred by the representative and would be replaced by proper class counsel. Even if the class representative did nothing, the most he or she could lose is the chance of winning a few dollars on a "small" claim. [Rosenberg Decl. ¶ 2(b).]

c.    **Removal of class counsel or class representatives**

The 2003 amendments further establish that "the class representatives do not have an unfettered right to 'fire' class counsel." Fed. R. Civ. P. 23(g), Advisory Committee Note. *See also Maywalt II*, 67 F.3d at 1078 ("fact that the named plaintiffs in a certified class action have been found to be adequate representatives of the class does not, however, mean that they have the right to replace class counsel at will"). In *Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2004 U.S. Dist. Lexis 17572, at *1-2 (S.D.N.Y. Sept. 1, 2004), the class representatives repeatedly sought to discharge class counsel, contending that a proposed settlement negotiated by class counsel was inadequate and that the class representatives should have been included in the settlement negotiations. The court refused to do so, holding that class counsel were "obligated to make independent judgments as to the interests of class members" and that class counsel "had the authority to engage in settlement negotiations on behalf of the class members." *Id*. at *3, 5. Citing Rule 23(c) and new Rule 23(g), *Banyai* explained that "the authority to appoint or to discharge Class Counsel rests with this Court, not with the named representative plaintiffs." *Id*. at *5-6.[15] Other courts have likewise denied class representatives' attempts to remove class counsel. *See, e.g., Maywalt II*, 67 F.3d at 1078; *Walsh*, 726 F.2d at 964.[16]

---

[15] The court subsequently approved the proposed settlement over the named plaintiffs' objections. *See Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. Mar. 27, 2007).

[16] In *Thomas v. Albright*, 77 F. Supp. 2d 114 (D.D.C. 1999), the court similarly enjoined a state court malpractice action brought by named plaintiffs against their attorneys in a federal class action. It rejected the class represen-

Indeed, when class counsel acts in the best interests of the class notwithstanding a "breakdown of the attorney-client relationship," the proper remedy is judicial removal of the class representatives, not class counsel. *Olden v. Lafarge Corp.*, 472 F. Supp. 2d 922, 936-38 (E.D. Mich. 2007) ("[i]f the named class representatives object to a settlement recommended by class counsel that the court otherwise finds in the better interests of the class as a whole, then class counsel cannot continue to represent that party and the class representatives ought to be replaced"). *See also Heit v. van Octhen*, 126 F. Supp. 2d 487 (W.D. Mich. 2001) (approving proposed settlement, allowing class counsel to withdraw from representing a named plaintiff who objected to the settlement, and permitting class counsel to substitute a new class representative).[17]

Ultimately, it is for the court to resolve any disagreements between class counsel and class representatives. There is no requirement, however, for class counsel to obtain the approval of the class representative – or to coerce the class representative to obtain such approval – because class counsel acting in the best interests of the class may continue to serve as class counsel, if necessary with a new class representative, despite any disagreement with a client. Accordingly, there can be no reason for or danger of coercion, and thus a plaintiff's financial information is not relevant and not subject to discovery for that reason.

---

tatives' argument that "class counsel failed zealously to protect the individual interests of the plaintiffs, over those of the class," holding that the argument "runs counter to the requirements of class counsel in a class action." *Id.* at 122.

[17] *Cf., Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1334, 1342 (11th Cir. 2003) ("the efficient administration of justice and the interests of the class were not served when the district court decertified the class without first giving class members an opportunity to intervene as the class representative," despite the defendant's opposition to "any efforts by class counsel to 'beat the bushes begging' for a new representative to step forth"); *Goodman*, 777 F.2d at 124 (directing the district court to "explore the possibility of intervention by qualified class representatives").

**B.    To the Extent Intel Seeks Production of Tax Returns, They are Privileged**

To the extent Intel seeks production of class representatives' tax returns, they are

privileged and Intel has not made any showing to overcome that privilege.  Tax returns are

confidential by law. 26 U.S.C. § 6103.  As stated in *Walker v. Rent-A-Center, Inc.*, No. 5:02CV3,

2006 U.S. Dist. LEXIS 72232, at *7-8 (E.D. Tex. Oct. 3, 2006):

> The Fifth Circuit has stated, "[i]ncome tax returns are highly
> sensitive documents; courts are reluctant to order their routine
> disclosure as a part of discovery." *Natural Gas Pipeline Co. of
> Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993)
> (citation omitted).  Further, "[n]ot only are the taxpayer's privacy
> concerns at stake, but unanticipated disclosure also threatens the
> effective administration of our federal tax laws given the self-
> reporting, self-assessing character of the income tax system." *Id.*
> (citation omitted).  For a court to order disclosure of tax returns,
> the court must find both "that the returns are relevant to the subject
> matter of the action," and "that there is a compelling need for the
> returns because the information contained therein is not otherwise
> readily obtainable." *Mohnot v. Bhansali*, 2001 U.S. Dist. LEXIS
> 6815, at 2, 2001 WL 515242 at *1 (E.D. La. 2001) (citation and
> internal quotation marks omitted).

Many other federal courts have reached a similar conclusion. *E.g.*, *Trudeau v. New York

State Consumer Prot. Bd.*, 237 F.R.D. 325, 331-32 (N.D.N.Y. 2006); *Aliotti v. The Vessel

Senora,* 217 F.R.D. 496, 497 (N.D. Cal. 2003); *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214,

216-17 (W.D. Va. 1997); *Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 78, 80 (E.D.

Pa. 1994); *Stabilus*, 144 F.R.D. at 269; *Campinas Foundation v. Simoni*, 2005 U.S. Dist. LEXIS

7574, at *12-13, 2005 WL 1006511, at *5 (S.D.N.Y. April 28, 2005).  Some have viewed this

two-part standard as creating a qualified privilege for tax returns. *Gattegno v. Pricewaterhouse-

Coopers*, LLC, 205 F.R.D. 70, 73 (D. Conn. 2001); *Bujnicki v. American Paving & Excavating,

Inc.*, No. 99-CV-0646S (SR), 2004 U.S. Dist. LEXIS 8869, at *41-42, 2004 WL 1071736 at *14-

*15 (W.D.N.Y. Feb. 25, 2004).

California law is also relevant on this point.  In cases where state law provides the basis

for a rule of decision (as would be true under the 50-state California claims presented in the com-

plaint), federal courts look to state law on privilege. Fed. R. Evid. 501 (where "State law supplies the rule of decision, the privilege of a witness [or other] person … shall be determined in accordance with State law"). *See Davis v. Leal*, 43 F. Supp. 2d 1102, 1108 (E.D. Cal. 1999) (rejecting F.D.I.C.'s request for debtor's tax returns); *F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375, 380 (S.D. Cal. 2000) (following *Davis*). In the Third Circuit, where, as here, a lawsuit's underlying claims stem from both federal and state statutes, courts routinely consider state law policies in analyzing privilege issues. *D'Aurizio v. Borough of Palisades Park*, 899 F. Supp. 1352, 1354 (D.N.J. 1995) (stating that courts should look to "state law analogies for the development of a federal common law of privileges"). *See also Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000) ("[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to [federal policy]"); *Riley v. City of Chester*, 612 F. 2d 708, 715 (3d Cir. 1979) ("[i]n some cases [federal courts] may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect"); *Wei v. Bodner*, 127 F.R.D. 91, 95 (D.N.J. 1989) ("the state privilege should be considered … by balancing the need for discovery against the importance of [the privilege]").

The California Supreme Court interprets California Revenue and Tax Code §§ 19542 and 19545 as "establish[ing] an implied privilege against forced disclosure [of federal and state tax returns] in civil discovery proceedings." *Schnabel v. Superior Ct.*, 5 Cal. 4th 704, 719, 854 P.2d 1117, 1126 (1993). In *Webb v. Standard Oil Co.*, 49 Cal. 2d 509, 513, 319 P.2d 621, 624 (1958), for example, the California Supreme Court held that "[t]he purpose of [these statutes] is to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes."

- 32 -

The court stated that "[i]f the information can be secured by forcing the taxpayer to produce a copy of his return, the primary legislative purpose of the secrecy provisions will be defeated." *Id.* The court also made it clear that "[t]he effect of the statutory prohibition is to render the returns privileged, and the privilege should not be nullified by permitting third parties to obtain the information by adopting the indirect procedure of demanding copies of the tax returns.' *Id.*

California courts have consistently followed *Webb*'s holding that individuals' tax returns are privileged and cannot be legally procured by subpoena or otherwise. *See, e.g., Fortunato v. Superior Ct.*, 114 Cal. App. 4th 475, 483, 8 Cal. Rptr. 3d 82, 88 (2003) ("[p]ublic policy favoring discovery in civil litigation is not, by itself, sufficiently compelling to overcome the privilege"); *King v. Mobile Home Rent Review Bd.*, 216 Cal. App. 3d 1532, 1539, 265 Cal. Rptr. 624, 628-29 (1990) (applicant not entitled to respondent's tax returns in rent dispute); *Brown v. Superior Ct.*, 71 Cal. App. 3d 141, 143-44, 139 Cal. Rptr. 327, 328-29 (1977) (respondent's Form W-2s were privileged); *Sav-On Drugs, Inc. v. Superior Ct.*, 15 Cal. 3d 1, 7, 538 P.2d 739, 742-43 (1975) (privilege also protects the information contained in the returns). Intel's request is thus improper as it is clearly prohibited under California law.

Intel has not shown any such compelling need for tax returns or the relevance of tax return information, particularly where, as here, the requests for such information would invade the important privacy interests that individual consumers have with regard to their personal finances.

**C.    The Court's Inherent Supervisory Power Read Together with the Factual Record Here Both Removes and Rebuts any Concern That Class Counsel Might Not Protect the Interests of the Class**

The duty of ensuring that class counsel adequately represent the class falls not upon the class representatives, but on the court. *See Greenfield*, 483 F.2d at 832 ("[t]he ultimate responsibility of course is committed to the district court in whom, as the guardian of the rights of the absentees, is vested broad administrative, as well as adjudicative, power"); *Maywalt II*, 67 F.3d

- 33 -

at 1078 ("[t]he ultimate responsibility to ensure that the interests of class members are not subor-

dinated to the interests of either the class representatives or class counsel rests with the district

court"); *In Re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp 1452, 1455 (E.D.N.Y. 1985);

MANUAL § 21.27, at 278 ("the judge … creates the class by certifying it and must supervise

those who conduct the litigation on behalf of the class"); 2003 Amendments to Fed. R. Civ. P.

23(e) ("[b]ut court review and approval (of proposed class action settlements) are essential to

assure adequate representation of class members who have not participated in shaping the settle-

ment"). The legal system includes "an array of carefully calibrated safeguards" against "[t]he

inherent risks in a class action," including this "special responsibility of the trial judge to protect

the rights of class members" as well as the "strict procedural requirements on the conduct of

class actions" imposed by the Federal Rules. *Corn Derivatives*, 748 F.2d at 165 (Adams, J.,

concurring).

There are, thus, safeguards against any realistic threat of coercion of the type referenced

in *ML-Lee,* including strengthened judicial oversight of proposed class-action settlements. The

Court has the inherent power under its obligation to protect the class plaintiffs to engage in a

"balancing process" of the actual facts and current circumstances of this antitrust action in

ultimately deciding whether plaintiffs' must produce their personal financial information.

A district court conducted such a balancing in *Buford v. H&R Block*, 168 F.R.D. 340

(S.D. Ga. 1996), in which the element of "adequacy" was satisfied based on the class counsel's

ability to underwrite the litigation costs rather than the class representative's ability to do so:

> Regarding the adequacy requirement, Defendants have focused on
> the ability, *vel non*, of the class representatives to pay for the costs
> of conducting complex litigation. Courts normally do not examine
> the finances of class representatives. [*Id*. at 352 (citing *Sanderson
> v. Winner*).]

- 34 -

The court in *Buford* likewise declined to examine the class representative's finances, and instead inquired into class counsel's ability to finance a "bulk-mailing" to conclude that counsel's resources were sufficient to support an adequacy determination:

> After viewing the evidence on this matter, this Court is convinced that Plaintiffs have properly made arrangements with their counsel for their counsel to pay for the large costs associated with a class proceeding such as this one. Furthermore, this Court accepts Attorney Hansen's representation that his and/or Attorney Jones' firm have the financial means to underwrite the expenses of the litigation. Accordingly, this Court will not declare that the adequacy requirement has not been met for lack of sufficient resources. [*Id.* at 353.]

The four law firms appointed interim counsel in the present case represented to the Court under Rule 23(g)(1)(c) that they could and would commit adequate resources to zealously represent the class. *See* Fed. R. Civ. P. 23(g)(1)(C) (directing court to select class counsel based in part on "the resources counsel will commit to representing the class"). As was the case in *Buford*, there thus already exists in the record the Court's findings of a sufficient quantum of evidence that the group of co-lead counsel and associated counsel representing the class have the requisite financial means to underwrite all litigation expenses. The Court's approval of the four interim class counsel – the law firms of Cohen Milstein Hausfeld & Toll, P.L.L.C., Hagens Berman Sobol Shapiro, LLP, Saveri & Saveri, Inc. and The Furth Firm LLP – inherently addressed and therefore resolves this entire question.

In their "Memorandum of Law in Support of Motion for Consolidation and For Appointment of Co-Lead Counsel And Liaison Counsel" at 4 (Nov. 10, 2005) (D.I. 5), these four firms pointed to their demonstrated commitment to invest resources in other class-action cases and their willingness to do so here. In its "Memorandum and Order" (Apr. 18, 2006) (D.I. 51), the Court expressly considered, among other factors, "the resources counsel will commit to representing the class." *Id.* at 2 (citing Fed. R. Civ. P. 23(g)(1)(C)(i)). Indeed, as noted above,

the Court selected these firms because, among other reasons, they "appear[ed] to be capable of drawing upon a greater pool of resources than the [competing group]." *Id.* at 3. The Court then added that these additional resources "could prove to especially beneficial in a large and complex case such as this." *Id.*

Given the Court's prior findings and determination citing Fed. R. Civ. P. 23(g), Intel's requested discovery is simply not relevant. Interim class counsel are funding this putative class action, as both ABA Model Rule of Professional Conduct 1.8(e)(1) and Delaware Rule 1.8(e)(1) permit them to do, a fact that this Court's Order also recognized and deemed a positive factor in approving the representation of the class herein. There is therefore simply no logical or legitimate need for Intel to conduct a fishing expedition into the named class representatives' tax returns and financial records, a conclusion confirmed both in this Court's own ruling and in the cases discussed above.

The specific concern expressed in *ML-Lee* does not compel a different result:

> At a minimum, a Court must be satisfied that a Plaintiff's resources are sufficient to preclude the possibility that a Plaintiff could be coerced into complying with an attorneys' advice with regard to different options that may be available on legal issues in a class action because of the potential threat of funding revocation. Accordingly, the Plaintiffs will be ordered to produce the information requested regarding their personal financial histories. [149 F.R.D. at 509.[18]]

The various possible bases for this concern are completely absent here. In seeking discovery, Intel has demonstrated neither actual nor threatened coercion by interim class counsel of putative class representatives. The Court has already determined that counsel will adequately commit the necessary resources to litigate this case and, under Fed. R. Civ. P. 23(g) and its inherent supervisory powers, retains the authority to ensure that interim counsel fulfill their commitments

---

[18] This Court in *ML-Lee* cited *Rode* in support of its view. *Rode* was, however, a Title VII case where class plaintiffs were potentially liable for defendants' attorneys' fees. 76 F.R.D. at 232. Other courts have distinguished *Rode* on this basis. See, for example, *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657, 674 (E.D. Pa. 1980); *Klein v. Checker Motors*, 87 F.R.D. 5, 6 (N.D. Ill. 1979).

to both the Court and class. Moreover, each of the four interim class counsel selected by the Court – the law firms of Cohen Milstein Hausfeld & Toll, P.L.L.C., Hagens Berman Sobol Shapiro, LLP, Saveri & Saveri, Inc. and the Furth Firm LLP – has submitted a declaration in conjunction with this objection detailing that it has never revoked funding for a class action with which it has been involved and has never threatened to do. The declarations also reconfirm interim counsels' previous representations to this Court under Fed. R. Civ. P. 23(g) that interim counsel collectively will commit adequate resources to this litigation. The declarations also confirm that under no circumstances will counsel demand reimbursement directly from any named plaintiff. No similar legal context or factual record was either created for or at issue in *ML-Lee*, thus leaving this Court free to reach a different conclusion in this case as to the relevancy of named class representatives' tax returns or confidential financial records.

**D.    Clearly Distinguishable on Both Factual and Decisional Grounds, *ML-Lee* Is Not Controlling as to the Current Case and Thus Does Not Support the R&R**

The R&R finds that Rule 23(a)(4) places the named plaintiffs' "financial capacity" at issue, particularly "where there is a substantial alleged class with an expectation of substantial costs going forward." R&R at 1-2. The R&R cites just one authority, this Court's 14-year-old ruling in *ML-Lee*, where, after examining the named plaintiffs' history as "professional plain-tiffs" litigating seven other securities actions, this Court granted "limited" discovery into the plaintiffs' financial histories and financial records.

But, as noted above, *ML-Lee* is both legally and factually distinguishable from the case before this Court now. *ML-Lee* is based on a factual record – a concern over a possible strike suit – simply not present here.[19] Moreover, the record in *ML-Lee* did not include the existing

---

[19] One of the factors that colored the Court's decision in *ML-Lee* was that the defendant mutual funds there sought plaintiffs' tax returns and investment information to bolster their accusation that the plaintiffs were "profes-sional plaintiffs" who, allied with counsel, filed "strike suits" without intending to prosecute them. The Court observed that a plaintiff had been involved in seven previous class actions within a two-year timeframe and his attorney had served as counsel "for at least three of these prior actions." 149 F.R.D. at 508. This Court was con-cerned that "professional plaintiffs" who file "strike suits in an effort to coerce settlements ... and without the intent of vigorously prosecuting the litigation" could not adequately represent the class. *Id.* These facts are not present

body of evidence here – in the form of the relevant Rules, decisional authority and both attorney and expert declarations – that militates against any realistic concern with, much less actual finding of coercion. The case law then extant on Rule 1.8 was not fully briefed to the Court, as it now has been here. Nor did the Court have the benefit of multiple intervening developments, such as the 2003 amendments to Rule 23, the 1999 Third Circuit decision in *Lazy Oil*, the 2003 amended comments to Delaware Rule 1.8, or the raft of decisions since 1993 that have generally precluded discovery of class representatives' personal finances or determined that such finances are not relevant to an appropriate inquiry on class certification. Given all of these legal and factual distinctions, *ML-Lee* – the sole authority cited by the Special Master – is not controlling here.

## VI.    CONCLUSION

In summary, the Court should reach the ultimate conclusion reached by Professor Green:

> Accordingly, in light of the applicable ethical understandings, it seems more than reasonable to presume that class counsel will carry out their undertaking when they represent that they have the ability to, and will in fact, finance litigation expenses in a class action. Not only is it generally fair to assume that lawyers, as officers of the court, will comply with their professional obligations, but in this context, wholly apart from their financial and legal risks and incentives, class counsel run a significant disciplinary risk if they fail to comply. Given class counsel's legal and ethical responsibilities to fulfill their commitments, there seems little point in investigating the class representatives' financial wherewithal. If anyone's financial abilities are relevant, it is those of class counsel, not the class representatives. [Green Decl. ¶ 22.]

---

here and *ML-Lee* has been distinguished on this ground. *See Howard's Rexall Stores v. Aetna*, No. 00-CV-31-B, 2001 U.S. Dist. LEXIS 6029, at *24 (D.Me. May 8, 2001) (*ML-Lee* "concerns the issue of whether a named plaintiff can adequately represent his class if his true intent is to maintain a strike suit"); *In re KMart Corp. Sec. Litig.*, 1996 U.S. Dist. LEXIS 22609, at *20-21 (E.D. Mich. 1996) (characterizing *ML-Lee* as ruling that "plaintiff who had brought several class action suits within past two years with same counsel in four actions warranted further inquiry into qualifications to represent class"); *Roseman*, 165 F.R.D. at 111 (same).

Plaintiffs respectfully request that the Court reject the R&R and order that Plaintiffs need not produce tax returns or other sensitive financial records.

Dated:  October 11, 2007

PRICKETT, JONES & ELLIOTT, P.A.

 /s/ James L. Holzman
James L. Holzman (DE Bar # 663)
J. Clayton Athey (DE Bar #4378)
Laina M. Herbert (#4717)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com

*Interim Liaison Counsel for the Class Plaintiffs*

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699

Michael P. Lehmann
COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
One Embarcadero Center, Suite 526A
San Francisco, CA  94111

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA  94104
Telephone:  (415) 433-2070
Facsimile:  (415) 982-2076

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA  94111

*Interim Co-Lead Counsel for the Class Plaintiffs*

- 40 -