# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE:

**INTEL CORP. MICROPROCESSOR
ANTITRUST LITIGATION**

**PHIL PAUL, on behalf of himself and all
others similarly situated,**

    Plaintiffs,

v.

**INTEL CORPORATION,**

    Defendant.

MDL Docket No. 05-1717 (JJF)

C.A.  No. 05-485 (JJF)
**CONSOLIDATED**

## DECLARATION OF BRUCE A. GREEN

October 8, 2007

I, Bruce Green, declare:

1.     I have been retained by counsel on behalf of the proposed class representatives to address issues of legal ethics raised by the Special Master's Report and Recommendation on Intel Corporation's Motion to Compel Production of Documents (DM 7) ("Special Master's Report").

## QUALIFICATIONS

2.     I am the Stein Professor at Fordham University School of Law, where I direct the Louis Stein Center for Law and Ethics. A copy of my professional vita is attached.

3.     I have been a member of the full-time faculty of Fordham University School of Law since 1987. I previously served as a law clerk to Judge James L. Oakes of the U.S. Court of Appeals for the Second Circuit, as a law clerk to Justice Thurgood Marshall of the U.S. Supreme Court, and as an Assistant United States Attorney for the Southern District of New York.

4.     I have regularly taught courses in the area of legal ethics at Fordham and elsewhere since 1987, I speak frequently at CLE programs on the subject of legal ethics, and I have authored a variety of scholarly articles and other writings in the area of legal ethics.

5.     I have engaged in various other professional work relating to legal ethics. Nationally, I serve as a member of the Multistate Professional Responsibility Examination drafting committee, I am Reporter to the ABA Task Force on Attorney-Client Privilege, and I co-chair the ABA Criminal Justice Section's Committee on Ethics,

Gideon and Professionalism. I have previously served as chair of the ABA Litigation Section's Committee on Ethics and Professionalism, as a member of the ABA Litigation Section's Task Force on Settlement Ethics, as Reporter to the ABA Commission on Multijurisdictional Practice, and as chair of the Section on Professional Responsibility of the Association of American Law Schools.

6.     On the state and local level, I currently serve as a member and past chair of the New York State Bar Association's Committee on Professional Ethics, which issues opinions interpreting the New York Code of Professional Responsibility ("New York Code"). I am also a current member of the New York State Bar Association's Committee on Standards of Attorney Conduct, which has been engaged in the multi-year project of reviewing the New York Code and proposing comprehensive revisions. I previously served as a member of the Departmental Disciplinary Committee of the New York State Supreme Court, Appellate Division, First Department, and as a member of the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York.

7.     I render opinions in my individual capacity and do not speak on behalf of Fordham University School of Law, any of the other above-listed entities, or any other entities with which I have worked.

## RELEVANT FACTS

8.     I have no first-hand knowledge of the facts of this case. For purposes of rendering an opinion, I have reviewed the following: Intel's July 31, 2007 letter brief and accompanying exhibits in support of its motion to compel the proposed class representatives to produce certain documents; the Class Plaintiff's August 7, 2007 letter

brief and accompanying exhibits in opposition; Intel's August 9, 2007 reply letter brief
and accompanying exhibit; the transcript of the August 28, 2007 hearing before the
Special Master on the motion and accompanying exhibits; the Special Master's Report;
and the decision in In re ML-Lee Acquisition Fund II, L.P., 149 F.R.D. 506 (D. Del.
1993), which the Special Master cited.

## DISCUSSION

9.    I understand that counsel for the proposed class will present an expert
declaration from a civil procedure professor addressing relevant questions from the
perspective of Fed. R. Civ. P. 23 and other applicable procedural rules and
understandings. I have been asked to address relevant questions from the perspective of
legal ethics. I understand that the federal district court in Delaware has adopted the ABA
Model Rules of Professional Conduct ("ABA Model Rules"),[1] and I have therefore
focused principally on the ABA Model Rules. However, I have also considered these
questions under the Delaware Rules of Professional Conduct. I do not believe the
analysis or result would be materially different under either set of rules.

*The role of class counsel*

10.    The drafters of the ABA Model Rules made a considered decision to defer
to Rule 23 and the case law developed under it to resolve issues regarding decision
making in the class action context, including where class counsel and class
representatives disagree, rather than tailoring specific rules to the class action context.

---

[1] District of Delaware Local Rule 83.6(d) ("Standards for Professional Conduct. Subject to such
modifications as may be required or permitted by federal statute, court rule, or decision, all attorneys
admitted or authorized to practice before this Court, including attorneys admitted on motion or otherwise,
shall be governed by the Model Rules of Professional Conduct of the American Bar Association ("Model
Rules"), as amended from time to time."). This rule went into effect on June 30, 2007.

This is addressed in an article by Boston University law professor Nancy Moore, who served as Reporter to the Ethics 2000 Commission, chaired by Justice Norman Vesey, which was responsible for the comprehensive amendments to the ABA Model Rules that were adopted in 2002.

11.    As Professor Moore discussed in her article, cases hold that although class counsel owes duties to class representatives, class counsel's ultimate client is the class as an entity, not the class representatives individually. *See* Nancy J. Moore, Who Should Regulate Class Action Lawyers?, 2003 U. Ill. L. Rev. 1477. That understanding is consistent with case law holding that class counsel must consult with class representatives but must act in the class's best interest, and that class counsel may therefore advocate for a settlement over the objection of a class representative (or vice versa) where necessary to serve the best interests of the class. *See, e.g., Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999) ("In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class). If, by applying the usual rules on attorney-client relations, class counsel could be easily disqualified in these cases, not only would the objectors enjoy great 'leverage,' but many fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations."); *In re M&F Worldwide Corp. Shareholders Litigation*, 799 A.2d 1164 (Del. Ch. 2002). Even if the ABA Model Rules might otherwise be read to reach a different result, it is understood that the ethics provisions must be read consistently with, and deferentially to, judicial decisions applying Rule 23 in the class action setting. *Restatement (Third) of the Law Governing Lawyers* § 14, Cmt. f (2000)

("Lawyers in class actions thus have duties to the class as well as to the class representatives. [¶] A class-action lawyer may therefore be privileged or obliged to oppose the views of the class representatives after having consulted with them. . . . The lawyer should act for the benefit of the class as its members would reasonably define that benefit."); *id.* § 22 Cmt. C ("In class actions, special rules apply; a court, after notice and hearing, may approve a settlement negotiated by the lawyer for the class without the approval of named representatives or members of the class "); *see generally* Bruce A. Green, Conflicts of Interest in Litigation: The Judicial Role, 65 Fordham L. Rev. 71, 127-28 (1996).

*Ethical implications of class counsel's responsibility for financing class action litigation*

12.      Federal courts have recognized that class-action litigation cannot realistically be financed by class representatives or other class members, and that as a practical matter, class counsel must accept responsibility for the costs of litigation, subject to recovering costs in the event that the class prevails.  As a Third Circuit task force observed a few years ago:

> It does not impugn the service that the plaintiffs' class action bar provides to note that the driving force in most cases is the opportunity to share in the plaintiffs' risk and ultimately in any reward they may receive. Like most prudent individuals, plaintiffs' counsel would not seek involvement in most class action cases, particularly those involving no principle greater than "the defendant wrongly deprived me of something of value," unless the financial reward justified the risk that counsel undertakes. Because they have abilities that could be put to other uses, plaintiffs' counsel must find something in a class action that signals that it is financially attractive to be class counsel.
>
> It is plaintiffs' counsel who pay the expenses of the lawsuit, and who expect that they will lose much if not all of their out-of-pocket expenses if they are not ultimately successful in having a court certify a class and

achieving either a settlement or a litigation victory. It is plaintiffs' counsel who work to obtain whatever recovery any member of the class who has not opted out of the litigation will receive. The fact that there will be no payment if there is no settlement or trial victory means that there is greater risk for plaintiffs' counsel in these class action cases than in cases in which an hourly rate or flat fee is guaranteed. The quid pro quo for the risk, and for the delay in receiving any compensation in the best of circumstances, is some kind of risk premium if the case is successful.

Chief Judge Edward R. Becker, Report: Third Circuit Task Force Report on Selection of

Class Counsel, 74 Temp. L. Rev. 689, 691-92 (2001).

13.     ABA Model Rule 1.8(e)(1) authorizes lawyers to finance litigation

expenses in class actions and other actions in which the representation is undertaken on a

contingent-fee basis. It provides: "A lawyer shall not provide financial assistance to a

client in connection with pending or contemplated litigation, except that . . . a lawyer may

advance court costs and expenses of litigation, the repayment of which may be contingent

on the outcome of the matter." Rule 1.8(e)(1) replaced Disciplinary Rule ("DR") 5-

103(B) of the ABA Model Code of Professional Responsibility, which required clients to

be ultimately liable for litigation costs. Rule 1.8(e)(1) was generally adopted by state

courts as they replaced their disciplinary rules modeled on the ABA Model Code of

Professional Responsibility with disciplinary rules modeled on the ABA Model Rules.

However, some states, notably Illinois and New York, were slow to amend their rules.

14.     The change in the rules to allow lawyers to finance contingent-fee

litigation reflects the recognition that "condition[ing] repayment on recovery . . . is

thought to be virtually indistinguishable from a contingent fee," *Annotated ABA Model

Rules of Professional Conduct* 146 (6th ed. 2007), and "help[s] assure access to the

courts." ABA Model Rules of Professional Conduct, Rule 1.8, Cmt. [10]. As the

Restatement recognizes, allowing lawyers to advance litigation expenses and make

repayment conditioned on success "enable[s] poor clients to assert their rights," and

further, "[r]equiring the client to refund such expenses regardless of success would have a

particularly crippling effect on class actions, where the named plaintiffs often have

financial stakes much smaller than the litigation expenses." *Restatement (Third) of the*

*Law Governing Lawyers* § 36, Cmt. c (2000).

     15.    In federal class actions prior to the relevant state's adoption of ABA

Model Rule 1.8(e)(1), defendants sometimes argued that lawyer-financed class actions

offended state ethics rules based on Disciplinary Rule ("DR") 5-103(B). The prevailing

view of federal courts, however, came to be that applying DR 5-103(B) to require class

representatives to be responsible for litigation expenses would thwart the intent of Rule

23 and that the disciplinary rule was therefore either superseded by Rule 23 or had to be

interpreted in light of it. Federal courts generally held that, despite DR 5-103(B), lawyers

would be entirely responsible for litigation expenses. *See, e.g., Rand v. Monsanto*, 926

F.2d 596, 599-602 (7th Cir. 1991); *County of Suffolk v. Long Island Lighting Co.*, 710 F.

Supp. 1407, 1413-15 (E.D.N.Y. 1989); *see also* Committee on Professional

Responsibility, Financial Arrangements in Class Actions, 20 Fordham Urb. L.J. 831, 848

(1993) ("insisting on ultimate client responsibility would render many class action suits

impracticable and have the effect of limiting the access of legitimate claims, particularly

those where losses to individual claimants are very small"). Although some courts held

that DR 5-103(B) might require class representatives to be responsible for their *pro rata*

share of expenses, *see, e.g., Weber v. Goodman*, 9 F. Supp. 2d 163, 174 (E.D.N.Y. 1998),

that view became disfavored. As the district court recently recognized in *In re*

*Worldcom, Inc. Securities Litigation*, 219 F.R.D. 267, 284-85 (S.D.N.Y. 2003),

"requiring compliance with DR 5-103 and requiring named plaintiffs to pay litigation expenses, even their pro rata share of litigation expenses, can have deleterious effects on the federal class action device. Most states no longer follow this rule, and have instead adopted the ABA's Model Rules of Professional Conduct."

16.    At the same time, even those courts analyzing the applicability of the earlier rule, DR 5-103, universally recognized that the propriety of lawyer-financed class actions is clearly established by Rule 1.8(e)(1), and that in any state that has adopted the rule, class counsel plainly may accept exclusive responsibility for litigation expenses. *See, e.g., Rand v. Monsanto*, 926 F.2d at 600 (7th Cir. 1991) ("DR 5-103(B) is part of the Model Code, long in the tooth and being replaced by the ABA's Model Rules of Professional Conduct (1983). Model Rule 1.8(e) allows a lawyer to pick up the tab for costs if the suit is unsuccessful."); *In re Worldcom, Inc. Securities Litigation*, 219 F.R.D. at 285 (S.D.N.Y. 2003); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. At 1413-15.

*The inclusion of court-ordered costs and legal fees as "expenses of litigation"*

17.    In general, "expenses of litigation" that may be advanced under Rule 1.8(e)(1) include the costs of investigators and experts, travel expenses, document discovery expenses, costs of transcripts, witness fees, and any other expenses attributable to the representation. Although a lawyer in most jurisdictions may not advance living expenses to a plaintiff as an expense of litigation, *see Annotated ABA Model Rules of Professional Conduct, supra*, at 146, that limitation would not be relevant to an antitrust class action. Decisions also distinguish among expenses incurred by counsel, recognizing that certain expenses attributable to overhead must be absorbed by the lawyer

and may not ultimately be recovered as an expense of litigation. *See, e.g.*, ABA Standing

Committee on Ethics and Professional Responsibility, Formal Op. 93-379; ABA Standing

Committee on Ethics and Professional Responsibility, Formal Op. 00-420. But that

distinction is also irrelevant for present purposes. The significant point is that there is no

genuine litigation expense that a lawyer in a class action undertaken on a contingent-fee

basis must require class representatives to advance or to assume responsibility for in the

event the class action is unsuccessful.

18.    In my judgment, legal fees and costs awarded at the conclusion of a

litigation are among the expenses for which class counsel may accept ultimate

responsibility if the class action is unsuccessful, notwithstanding that doing so might be

said to constitute an "indemnification" rather than "advancement" of litigation expenses.

As the ethics committee of the Los Angeles County Bar Association explained in a 2006

opinion, although the rule "does not expressly address indemnifications of clients for

costs if the client does not prevail . . ., such an indemnification is not materially different

from advancing costs repayment of which is contingent on the outcome." L.A. County

Bar Ass'n, Professional Responsibility and Ethics Committee, Op. 517 (Apr. 17, 2006).

Earlier, the ethics committee of the Alaska Bar Association reached the same conclusion:

> Although the "expenses of litigation" referenced in paragraph (e) are
> neither defined or explained in the Alaska Rules, the Committee can see
> no practical or rational basis for excluding an attorney fee award from the
> definition of "expenses of litigation." The Committee is also of the
> opinion that an attorney's agreement to pay an attorney fee award, is a
> natural extension of, or at least not sufficiently distinguishable from, a
> traditional and permissible contingency fee agreement.
>
> The Committee is not unaware of concerns its opinion may raise.
> Consideration was specifically given as to whether permitting an attorney
> to guarantee the payment of an attorney fee award could be construed as
> an impermissible loan guarantee or whether it could reduce a client's

incentive to weigh the merits of his or her case before filing suit, or run counter to the other Civil Rule 82 objectives of encouraging settlement and avoiding protracted litigation. Risks of frivolous litigation, compromised loyalty or overreaching on account of an attorney's economic self-interest were also taken into account. Ultimately, however, it is the Committee's opinion that all of these risks are generally inherent and acceptable in any contingency fee representation and that viewing them any differently where the contingency is that of paying an attorney fee award is not justified.

Alaska Bar Ass'n, Ethics Committee, Op. 2004-02 (Apr. 27, 2004).

19.    I recognize that the Oklahoma Bar Association's ethics committee, unlike the Los Angeles and Alaska committees, draws a distinction between advancing and indemnifying litigation expenses. It takes the view that a lawyer's payment of court-ordered legal fees and costs in an unsuccessful litigation comprises the provision of "financial assistance to a client in connection with pending or contemplated litigation," and that such a payment is not authorized by Rule 1.8(e)(1) because it does not involve the "advancement" of costs and expenses. Oklahoma Bar Ass'n Legal Ethics Advisory Op. 2007-OK LEG ETH 01 . For a variety of reasons, the opinion is unpersuasive even with respect to the context it addressed, namely, litigation on behalf of an individual as distinct from a class. These reasons include:

•    There is nothing to suggest that the rule intends to distinguish between lawyers' payments of fees before the conclusion of a litigation (i.e., an "advance") or after (i.e., "indemnification"). It makes no sense to suggest, for example, that a lawyer's payment for expert services during the litigation is a permissible "advance," but that if the expert's invoice is rendered and paid after the proceeding, the lawyer's payment is an impermissible "indemnification."

• Even if such a linguistic distinction were to be made, the rule would not forbid lawyers' post-litigation payments of legal costs and expenses. Rule 1.8(e) generally proscribes financial assistance "in connection with pending or contemplated litigation." If the payment is made after the litigation, the litigation is no longer "pending or contemplated," and therefore the rule by its terms is inapplicable. If the litigation is ongoing - e.g., if there may be post-judgment proceedings – then the payment is in fact an "advance".

• There is no merit to the Oklahoma opinion's suggestion that an agreement to pay court-ordered costs and expenses, as opposed to other litigation expenses, creates an impermissible conflict between the lawyer's self-interest and the client's interest. As the Alaska and Los Angeles opinions recognize, the lawyer's agreement to pay court-ordered costs and expenses in the event the litigation is unsuccessful creates no different an interest or incentive than the lawyer's contingent fee and contingent responsibility for other litigation costs and expenses.

• The Oklahoma opinion's interpretation would thwart the essential purpose of Rule 1.8(e), which is to expand access to justice for those who cannot afford to finance litigation. To allow lawyers to pay litigation costs and expenses generally but not to pay court-ordered costs and legal fees would have the effect of giving with one hand and taking with the other, closing the courthouse door to low-income parties with potentially and actually meritorious claims who cannot afford the risk of bearing responsibility for costs and legal fees at the end of the litigation.

20. Even if one accepted the Oklahoma committee's view that, in the case of an individual plaintiff, the rule against providing financial assistance to a client forecloses

a lawyer's agreement to pay court-ordered costs and legal fees, it does not follow that the rule should so apply in class action litigation. In a class action, the real party is the actual or putative class, not the class representatives. Extending the Oklahoma opinion to antitrust class actions such as this one would discourage even prosperous parties from seeking to vindicate meritorious claims by serving as class representatives, given the tremendous cost of litigating such cases and the risk, even if it were small, that the class representatives would be required personally to pay large court-ordered expenses. As discussed in ¶ 15 above, courts have interpreted the ethics rules regarding lawyer responsibility for litigation costs to advance, rather than thwart, the purposes of class actions. The same should be true here. An important purpose of Rule 23 is to permit aggregation of small claims in order to make their vindication through litigation economically viable. Forbidding class counsel in contingent-fee representations from assuming contingent responsibility for court-ordered costs and legal fees, as with other litigation expenses, would undermine the purpose of Rule 23 no less than that of Rule 1.8(e)(1).

*The ethical implications of class counsel's agreement to advance litigation expenses*

21.    If class counsel provide in their engagement agreement with the class representatives that they will finance the litigation as permitted by Rule 1.8(e)(1) and represent to the Court that they have the financial wherewithal to do so, legal and ethical consequences follow. The agreement would be subject to enforcement under contract law. Further, while a court might, in proper circumstances, allow for substitution of class counsel when litigation expenses that counsel has agreed to advance became

unexpectedly high, *see, e.g.*, *In re "Agent Orange" Product Liability Litigation*, 571

F.Supp. 481 (E.D.N.Y.1983) (allowing substitution of class-action lead counsel because

of enormous financial burden); ABA Model Rules, Rule 1.16(b)(6), the court would not

be obligated to do so.   Class counsel must apply to the court for substitution; it cannot

withdraw on its own.  *See* District of Delaware Local Rule 83.7; ABA Model Rules, Rule

1.16(c).  Most significantly, if class counsel's representations concerning its intention to

finance the litigation and its financial ability to do so prove to have been false when

made, the lawyers would be subject to discipline.  ABA Model Rules, Rule 3.3(a)(1) ("A

lawyer shall not knowingly . . . make a false statement of fact . . . to a tribunal"); *id..*,

Rule 4.1(a) ("In the course of representing a client a lawyer shall not knowingly . . . make

a false statement of material fact . . . to a third person"); *id.*, Rule 8.4(c) ("It is

professional misconduct for a lawyer to . . . engage in conduct involving dishonesty,

fraud, deceit or misrepresentation.").   Further, a deliberate refusal to comply with a court

order to fulfill such an agreement would similarly subject the lawyer to discipline.  *Cf.*

*People v. Hanks*, 967 P.2d 144 (Colo. 1998) (suspending lawyer who deliberately failed

to pay court-ordered child-support for violating, *inter alia*, Rule 3.4(c) (knowingly

disobeying an obligation under the rules of a tribunal) and Rule 8.4(d) (engaging in

conduct prejudicial to the administration of justice)).

22.      Accordingly, in light of the applicable ethical understandings, it seems

more than reasonable to presume that class counsel will carry out their undertaking when

they represent that they have the ability to, and will in fact, finance litigation expenses in

a class action.  Not only is it generally fair to assume that lawyers, as officers of the

court, will comply with their professional obligations, but in this context, wholly apart

from their financial and legal risks and incentives, class counsel run a significant disciplinary risk if they fail to comply. Given class counsel's legal and ethical responsibilities to fulfill their commitments, there seems little point in investigating the class representatives' financial wherewithal. If anyone's financial abilities are relevant, it is those of class counsel, not the class representatives.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on October 8, 2007 in New York, New York.


_____

Bruce A. Green

**BRUCE A. GREEN**
**Louis Stein Professor of Law**
**Fordham University School of Law**
**140 West 62nd Street**
**New York, NY 10023**
**(212) 636-6851; (212) 636-6899 (FAX)**
**bgreen@law.fordham.edu**

## Bar Admissions

New York State (since 1982)
U.S. District Courts for the Southern and Eastern Districts of New York
U.S. Court of Appeals for the Second Circuit
U.S. Supreme Court

## Education

**Columbia University School of Law**: J.D. 1981
    Honors: James Kent Scholar; Harlan Fiske Stone Scholar
    Associate Editor, *Columbia Law Review*

**Princeton University**: A.B. 1978, *summa cum laude*

## Current Legal Employment

**Fordham University School of Law:**
    Louis Stein Professor of Law, since 1997
    Professor, 1996-97; Associate Professor, 1987-96
    Director, Louis Stein Center for Law and Ethics, since 1997
    Director, Stein Center for Ethics and Public Interest Law, 1992-97
    Responsible for teaching courses in the areas of legal ethics, criminal law and criminal
procedure, and for overseeing the Stein Scholars Program

**New York University School of Law**: Visiting Professor: January-May 2007

## Prior Full-time Legal Employment

**Office of the United States Attorney for the Southern District of New York:**
    October 1983 to August 1987, Assistant United States Attorney
    Deputy Chief Appellate Attorney, 1986-87; Chief Appellate Attorney, 1987

**U.S. Supreme Court**: Law clerk to Justice Thurgood Marshall, 1982-83

**U.S. Court of Appeals for the Second Circuit**: Law clerk to Judge James L. Oakes, 1981-82

### Other Legal Positions

**Departmental Disciplinary Committee, Appellate Division, First Department**: Member, 1997-2002

**New York City Conflicts of Interest Board**: Member, Nov. 1995 to March 2005

**Handschu Authority**: Civilian member, July 1994 to Nov. 1995

**Office of Investigations Officer (U.S. v. I.B.T.)**: Special Counsel (part-time), 1991

**Office of Independent Counsel Lawrence Walsh**, Associate Counsel (part-time), 1988-91

**New York State Commission on Government Integrity**: Consultant and special investigator, 1988-90

**Columbia University School of Law**: Adjunct Professor (part-time), 1990

**Office of the United States Attorney for the Southern District of New York**: Special Assistant United States Attorney (part-time), September 1987 to June 1988

**Fordham University School of Law**: Adjunct Assoc. Professor (part-time), 1985-87

### Professional Service

**American Bar Association**:
    Commission on the American Jury Project: member, 2006 to present
    Commission on Multijurisdictional Practice: reporter, 2000-02
    Coordinating Group on Bioethics and the Law: member, 1997-2003
    Section of Criminal Law:
        Ethics, Gideon and Professionalism Committee: co-chair, 2006 to present
    Section of Litigation:
        Council member, 2004-07
        Committee on Law Faculty Involvement: co-chair, 1998-2001, 2003-04
        Civil Justice Institute: member, 2001-03
        Task Force on Ethical Guidelines for Settlement Negotiations: member, 2000-02
        Ethics 2000 Task Force: member, 1999-2000
        Committee on Ethics and Professionalism: co-chair, 1995-98
        Task Force on the Independent Counsel Act: reporter, 1997-99
        Rep. to Sec./Div. Committee on Professionalism and Ethics, 1996-2003
        Committee on Amicus Curiae Briefs: chair, 1991-95
    Special Committee on Death Penalty Representation: member, 2006 to present
    Standing Committee on Professionalism: reporter, 2000-01

2

**American Bar Association (continued)**:
Steering Committee for the Symposium on the Multijurisdictional Practice of Law: reporter, 1999-2000
Task Force on the Attorney-Client Privilege: reporter, 2004 to present
Task Force on Law Schools and the Profession: consultant, 1991-92

**Association of American Law Schools:** Chair, Section of Professional Responsibility, 1999

**Association of the Bar of the City of New York**:
Delegate to NYS Bar Association, 2003-07
Committee on Professional and Judicial Ethics: member, 1994-97, 2003-06
Nominating Committee: member, 2005
Ethics 2000 Committee: member, 1999-2001
Jt. Committee on the Legal Referral Service: chair, 1993-96; member, 1996-2000
Committee on International Access to Justice: member,1999-2000
Committee on Disaster Plan: member, 1996-97
Marden Lecture Committee: member, 1991-94
Criminal Law Committee: member, 1991-94
Task Force on Lawyer Training: member, 1992-94
Corrections Committee: member, 1988-91

**Criminal Law Bulletin**: Contributing editor, 1988-98

**Evan B. Donaldson Adoption Institute**: Ethics Advisory Committee: member, 1998-2001

**Federal Bar Council**:
Second Circuit Courts Committee: member, 1994-97; chair, Subcommittee on Criminal Law and Ethics
*Federal Bar Council News*: member of the Editorial Board, 1995 to present
Inn of Court: master, 2000-02

**Fund for the City of New York:** Member of Advisory Committee for the New York Housing Court Online Preparation System (COPE), 1999

**National Conference of Bar Examiners:** Member of MPRE Drafting Committee, 2001 to present

**New York County Lawyers' Association**:
Director, 2004-07
Member of Justice Center advisory board, 2003 to present

3

**New York State Bar Association:**
> House of Delegates member, 2003-07
> Committee on Professional Ethics: Chair, 1998-2001; member, 1991 to present
> Committee on Standards of Attorney Conduct (formerly Special Committee to Review
the Code of Professional Responsibility): member, 1997 to present
> Task Force on Attorney Client Privilege, 2006 to present
> Task Force on "Pay to Play" Concerns, member, 1998-2000

**New York State Task Force on Attorney Professionalism and Conduct:** Member, 1996-98

## Awards

Powell Pierpont Award, given by the N.Y.C. Conflicts of Interest Board "for outstanding service to the New York City Conflicts of Interest Board," May 23, 2006

New York State Bar Association Criminal Justice Section Award for "outstanding contribution in the field of criminal law education," Jan. 23, 2003

Sanford D. Levy Award, given by New York State Bar Association Committee on Professional and Judicial Ethics, 1990

4

## PUBLICATIONS

### Articles in Law Journals

Teaching Lawyers Ethics, 51 St. Louis L.J. 1091 (2007)

Permissive Rules of Professional Conduct, 91 Minn. L. Rev. 265 (2006) (with Fred C. Zacharias)

Taking Cues: Inferring Legality from Others' Conduct, 75 Fordham L. Rev. 1429 (2006)

The Religious Lawyering Critique, 21 J. of Law & Religion 283 (2006)

Representing Children in Families – Foreword, 6 Nevada L. Rev. 571 (2006) (with Annette R. Appell)

"Anything Rather Than a Deliberate and Well-Considered Opinion"–Henry Lord Brougham, Written by Himself, 19 Georgetown J. Legal Ethics 1221 (2006) (with Fred C. Zacharias)

Reconceptualizing Advocacy Ethics, 74 George Washington L. Rev. 1 (2005) (with Fred C. Zacharias)

Foreword, Professional Challenges in Large Firm Practices, 33 Fordham Urb. L.J. 7 (2005)

Prosecutorial Neutrality, 2004 Wisconsin L. Rev. 837  (with Fred C. Zacharias)

Foreword, Colloquium, Deborah Rhode's *Access to Justice*, 73 Fordham L. Rev. 841 (2004)

Federal Court Authority to Regulate Lawyers: A Practice in Search of a Theory, 56 Vand. L. Rev. 1303 (2003) (with Fred C. Zacharias)

Prosecutorial Ethics as Usual, 2003 Illinois L. Rev. 1573

Criminal Neglect: Indigent Defense from an Ethics Perspective, 52 Emory Law Review 1169 (2003)

Regulating Federal Prosecutors' Ethics, 55 Vand. L. Rev. 381 (2002) (with Fred C. Zacharias)

Bar Association Ethics Committees: Are They Broken?, 30 Hofstra L. Rev. 731 (2002)

May Judges Attend Privately Funded Educational Programs?  Should Judicial Education Be Privatized?: Questions of Judicial Ethics and Policy, 29 Fordham Urb. L.J. 941 (2002)

John D. Feerick: The Dean of Ethics and Public Service, 70 Fordham L. Rev. 2165 (2002)

Judicial Rationalizations for Rationing Justice: How Sixth Amendment Doctrine Undermines Reform, 70 Fordham L. Rev. 1729 (2002)

Thoughts About Corporate Lawyers After Reading *The Cigarette Papers*: Has the "Wise Counselor" Given Way to the "Hired Gun"?, 51 DePaul L. Rev. 407 (2001)

Reflections on the Ethics of Legal Academics: Law Schools as MDPs; or, Should Law Professors Practice What They Teach?, 42 S. Tex. L. Rev. 301 (2001)

Public Declarations of Professionalism, 52 S. Car. L. Rev. 729 (2001)

The Disciplinary Restrictions on Multidisciplinary Practice: Their Derivation, Their Development, and Some Implications for the Core Values Debate, 84 Minn. L. Rev. 1115 (2000)

The Uniqueness of Federal Prosecutors, 88 Georgetown L.J. 207 (2000) (with Fred C. Zacharias)

Must Government Lawyers "Seek Justice" in Civil Litigation?, 9 Widener J. Pub. L. 235 (2000)

There But for Fortune: Real-Life vs. Fictional "Case Studies" in Legal Ethics, 64 Fordham L. Rev. 977 (2000)

Rationing Lawyers: Ethical and Professional Issues in the Delivery of Legal Services to Low-Income Clients, 67 Fordham L. Rev. 1713 (1999)

Why Should Prosecutors "Seek Justice"?, 26 Fordham Urb. L.J. 609 (1999)

The Criminal Regulation of Lawyers, 67 Fordham L. Rev. 327 (1998)

Lawyers as Nonlawyers in Child-Custody and Visitation Cases: Questions From a "Legal Ethics" Perspective, 73 Ind. L.J. 665 (1998)

Lawyer Discipline: Conscientious Noncompliance, Conscious Avoidance, and Prosecutorial Discretion, 66 Fordham L. Rev. 1307 (1998)

Less is More: Teaching Legal Ethics in Context, 39 Wm. & Mary L. Rev. 357 (1998)

Conflicts of Interest in Legal Representation: Should the Appearance of Impropriety Rule Be Eliminated in New Jersey--Or Revived Everywhere Else?, 28 Seton Hall L. Rev. 315 (1997)

The Role of Personal Values in Professional Decisionmaking, 11 Geo. J. of Legal Ethics 19 (1997)

Conflicts of Interest in Litigation: The Judicial Role, 65 Fordham L. Rev. 71 (1996)

Whose Rules of Professional Conduct Should Govern Lawyers in Federal Court and How Should the Rules Be Created?, 64 George Washington L. Rev. 460 (1996)

Foreword: Children and the Ethical Practice of Law, in Ethical Issues in the Legal Representation of Children, 64 Fordham L. Rev. 1281 (1996) (with Bernardine Dohrn)

Contextualizing Professional Responsibility: A New Curriculum for a New Age, 58 Law & Contemp. Probs. 193 (1995) (with Mary Daly & Russell Pearce)

Policing Federal Prosecutors: Do Too Many Regulators Produce Too Little Enforcement?, 8 St. Thomas L. Rev. 69 (1995)

Of Laws and Men: An Essay on Justice Marshall's View of Criminal Procedure, 26 Ariz. St. L.J. 369 (1994) (with Daniel Richman)

Foreword, Ethical Issues in Representing Older Clients, 62 Fordham L. Rev. 961 (1994) (with Nancy Coleman)

Foreword, Urban Environmental Equity, 21 Fordham Urb. L.J. 425 (1994)

Lethal Fiction: The Meaning of "Counsel" in the Sixth Amendment, 78 Iowa L. Rev. 433 (1993) [reprinted in 6 Crim. Prac. L. Rev. 183 (1994)]

"The Whole Truth?": How Rules of Evidence Make Lawyers Deceitful, 25 Loyola of Los Angeles L. Rev. 699 (1992)

"Power, Not Reason": Justice Marshall's Valedictory and the Fourth Amendment in the Supreme Court's 1990-91 Term, 70 N.C.L. Rev. 373 (1992)

After the Fall: The Criminal Law Enforcement Response to the S&L Crisis, 59 Fordham L. Rev. S155 (1991)

Zealous Representation Bound: The Intersection of the Ethical Codes and the Criminal Law, 69 N.C.L. Rev. 687 (1991) [reprinted in 4 Crim. Prac. L. Rev. 323 (1992)]

"Hare and Hounds": The Fugitive Defendant's Constitutional Right to Be Pursued, 56 Brooklyn L. Rev. 439 (1990) [reprinted in 4 Crim. Prac. L. Rev. 67 (1992)]

The Good-Faith Exception to the Fruit of the Poisonous Tree Doctrine, 26 Crim. L. Bull. 509 (1990)

Doe v. Federal Grievance Committee: On the Interpretation of Ethical Rules, 55 Brooklyn L.Rev. 485 (1989)

7

"Through a Glass, Darkly": How the Court Views Motions to Disqualify Criminal Defense Lawyers, 89 Colum. L. Rev. 1201 (1989) [reprinted in 2 Crim. Prac. L. Rev. 551 (1990)]

Her Brother's Keeper: The Prosecutor's Responsibility When Criminal Defense Counsel Has a Conflict of Interest, 16 Am. J. Crim. L. 323 (1989)

"Package" Plea Bargaining and the Prosecutor's Duty of Good Faith, 25 Crim. L. Bull. 507 (1989)

Limits on a Prosecutor's Communications With Prospective Defense Witnesses, 25 Crim. L. Bull. 139 (1989)

A Prosecutor's Communications With Represented Defendants: What Are the Limits?, 24 Crim. L. Bull. 283 (1988)

The Ethical Prosecutor and the Adversary System, 24 Crim. L. Bull. 126 (1988)

Note, Court Appointment of Attorneys in Civil Cases: The Constitutionality of Uncompensated Legal Assistance, 81 Colum. L. Rev. 366 (1981)

Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Colum. L. Rev. 1053 (1980)

### Articles in Legal Periodicals

Articles in *Federal Bar Council News*: "Privileges in the Corporate Context," vol. 12, no. 1, p. 4 (2005); "Ethics Reform in New York," vol. 11, no. 2, p. 11 (2004); "MJP for Litigators," vol. 10, no. 4, p. 14 (2003); "Privately-Funded Seminars for Judges," vol. 9, no. 5, p. 1 (2002); "Multijurisdictional Issues," vol. 7, no. 4, p. 11 (2000); "Moral Ambiguity/Ambiguous Morals: Morgan Stanley and the $10,000 Payment," vol. 6, no. 4, p. 1 (1999); "When Prosecutors Accuse Criminal Defense Lawyers of Wrongdoing," vol. 5, no. 5, p. 1 (1998); "Prosecuting Lawyers," vol. 5, no. 4, p. 11 (1998); "A View From The 'Ethics' Front," vol. 5, no. 3, p. 7 (1998); "Professional Detachment," vol. 4, no. 4, p. 8 (1997); "The Philosophy of Our Ethical Rules," vol. 4, no. 3, p. 23 (1997); "The President vs. Mrs. Jones," vol. 4, no. 1, p. 11 (1997); "Should Judges Promote Professionalism?," vol. 3, no. 4, p. 4 (1996); "Bad Arguments," vol. 3, no. 1, p. 7 (1996); "The Sins of the Lawyer (and the Procedural Consequences)," vol. 2, no. 4, p. 9 (1995); "Attorney Discipline in the Second Circuit," vol. 2, no. 2, p. 11 (1995)

"Prosecutors' Professional Independence: Reflections on *Garcetti v. Ceballos*," 22 [ABA] Criminal Justice, no. 2, pp. 4, 6-10 (Summer 2007)

"Deceitful Silence," 33 Litigation 24 (Winter 2007)

"Feeling a Chill," ABA Journal, Dec. 2005, pp. 61-65 (with David C. Clifton)

"Prosecuting Means More Than Locking Up Bad Guys," 32 Litigation 12 (Fall 2005)

"Interviewing Corporate Client Officers and Employees: Ethical Considerations," ABA Section of Litigation, Committee on Corporate Counsel Newsletter, vol. 19, no. 1, p. 1 (Fall 2004) [reprinted in ABA Section of Litigation, Professional Liability Litigation [Newsletter], vol. 3, no. 1, p. 1 (Winter 2005)]

Client Confidences: Should Lawyers Be Allowed to Reveal Them to Prevent Death or Serious Bodily Harm?: Yes, New York Lawyer, Oct. 2001, p. 20

Adventures in the Mortgage Trade: A Case Study in Legal Ethics, 27 N.Y. Real Property Law Journal 49 (Spring, 1999) (with Joshua Stein) [also published in Commercial Real Estate Financing: What Borrowers and Lenders Need to Know 1999 vol. 2, p. 749 (PLI 1999)]

Lying Clients: An Age-Old Problem, 26 Litigation 19 (Fall 1999) [updated and reprinted in Priscilla Anne Schwab, ed., *The Litigation Manual, First Supplement* 1105 (2007)]

When Conflicts of Interest Arise Unexpectedly, Litigation Ethics (Spring/Summer 1998), p. 11

The "No-Contact" Rule in New York State--Some Less Contentious Questions, N.Y. Professional Responsibility Report (Aug. 1998), p.1

The Ten Most Common Ethical Violations, 24 Litigation 48 (Summer 1998) [reprinted in Trial (March 1999), p. 70; updated and reprinted in Priscilla Anne Schwab, ed., *The Litigation Manual, First Supplement* 1077 (2007)]

Teaching Legal Ethics in Context, 70 N.Y.S.B.J. 6 (May/June 1998) (with Mary Daly)

Ethical Issues in Representing Children, 7 The Professional Lawyer 9 (1996)

Federal Prosecutors' Ethics: Who Should Draw the Lines?, 7 The Professional Lawyer 1 (1995)

Ethical Issues in Representing Older Clients, 5 The Professional Lawyer 18 (1994)

Crime and Punishment After the S&L Crisis, 46 Consumer Finance L.Q. Rep. 195 (1992)

Conflicts of Interest in Corporate Criminal Cases, 1 Corp. Crim. & Const'l L. Rptr. 98 (1990)

"Judge Kennedy Might Not Meet Expectations of Administration," Nat'l L.J., Dec. 21, 1987, p. 20

## Other Legal Writings

"Interviewing Corporate Client Officers and Employees: Ethical Considerations," in ABA Section of Litigation, 2004 Annual Conference.

Report of the Commission on Multijurisdictional Practice (Aug. 2002)

"Representing Corporations Under Fire: Ethical Considerations – A Hypothetical," and "Representing Corporations Under Fire: Ethical Considerations," in MCLE Marathon 2002 521, 527 (PLI 2002)

Interim Report of the Commission on Multijurisdictional Practice (Nov. 2001)

"A Guide to Professionalism Commissions" report of the ABA Standing Committee on Professionalism (2001)

"Recent Federal Court Decisions in Professional Responsibility," in Current Developments in Federal Civil Practice 2001 413 (PLI 2001) (with Mary Lu Bilek)

Editor, *Litigation Ethics: Course Materials for Continuing Legal Education* (ABA Section of Litigation 2000) (with John Q. Barrett)

"Assisting Clients with Multi-State and Interstate Legal Problems: The Need to Bring the Professional Regulation of Lawyers into the 21st Century" (report summarizing the proceedings of the Symposium on the Multijurisdictional Practice of Law) (June 2000)

"Recent Federal Court Decisions in Professional Responsibility," in Current Developments in Federal Civil Practice 1999 311 (PLI 1999)

"The Duty to Report Ethical Misconduct," in ABA Section of Family Law, *1998 Annual Meeting* 17 (July 31-Aug. 3, 1998)

"The Ethics of Marketing Legal Services," in *Effective Marketing for Lawyers* (N.Y.S. Bar Ass'n 1996) (with Russell Pearce), and *Effective Marketing for Lawyers* (N.Y.S. Bar Ass'n 2d ed. 2005) (with Russell Pearce)

"Local Rules Limiting Attorney Speech in Criminal Proceedings" (Federal Bar Council, June 1996) (principal author)

"Establishing Ethical Standards for Federal Prosecutors and Defense Attorneys," 49 The Record of the Assn. of the Bar of the City of New York 21 (1994) (principal author)

*Tax Fraud and Money Laundering* (The John Marshall Publ. Co., 1993) (with Robert H. Hishon & Richard A. Westin)

Editor, *Government Ethics for the 1990's: The Collected Reports of the New York State Commission on Government Integrity* (Fordham Univ. Press, 1991)

Reporter to *Evidence in America: The Federal Rules in the United States* (1989-91 supp., Fed. R. Evid. 801, 802, and 804)

"Ex Parte Contacts With Employees of a Corporate Party in Civil Litigation," <u>in</u> ABA Section of Litigation, *Best Evidence Seminar* 41 (Apr. 19, 1991)

"Use of an Attorney's Statements Against His or Her Client," <u>in</u> ABA Section of Litigation, *Best Evidence Seminar* 35 (Mar. 9-10, 1990)

**Participation in Professional and Academic Programs** (since January 2000)

Moderator, "Corporate Representation after DOJ's McNulty Memo: The Implications of DOJ Policy for White Collar Defenders, Internal Investigators, Civil Litigators and Everyday Business Advisors," ABA-CLE Teleconference, Oct. 3, 2007

Panelist, "Ethical Considerations for Corporate Investigations: Update 2007," Association of the Bar of the City of New York, September 18, 2007

Panelist, "Issues in Judicial Ethics," Appellate Judges Seminar – New Judges Series, NYU Univ. School of Law, July 12, 2007

Panelist, Professional Ethics Workshop, Securities Indus. and Financial Markets Assn., June 12, 2007

Panelist, "Legal Industry Outsourcing," The American Lawyer, Corporate Counsel & Law Firm Inc., New York, NY, May 23, 2007

Speaker, "Ethical Limits on Informal Discovery," program on Winning Cases in Federal Court – Day 2, New York County Lawyers' Ass'n, May 22, 2007

Panelist, "After Hewlett Packard: Methods & Ethics of Conducting Corporate Investigations," Association of the Bar of the City of New York, May 17, 2007

Trainer, "Ethical Issues in Legal Services Practice," Legal Services of New York, May 7, 2007

Speaker, "Inquiring, Prying, Snooping and Spying -- The Use and Misuse of Private Investigators," American Academy of Matrimonial Lawyers, New York Chapter, May 4, 2007, NY, NY

Panelist, "Technology and Ethical Issues," Technology in the Practice & Workplace Committee Midwinter Meeting, ABA Section of Labor & Employment Law, NYU School of Law, April 27, 2007

Co-presenter, "The Private Bar and the Public Interest: Structuring Deliberation within Professional Associations," 13th Annual Clifford Symposium on Tort Law and Social Policy ("Distortions in the Attorney/Client Relationship: Threats to Sound Advice?"), DePaul Univ. College of Law, April 19, 2007

Panelist, "When the Ends Justify the Means: Use of Dissembling in Investigations in Aid of Civil and Criminal Litigation," NYCLA Inn of Court, March 22, 2007

Speaker, "Prosecutorial Ethics," Goldstock Criminal Law Lunch Seminar, N.Y.U. School of Law, March 8, 2007

Panelist, "Ethics and Mediation – Where There's Smoke, There's Fire!," Goliath vs. Goliath - Organizing the Construction Case for Mediation, ABA Section of Dispute Resolution, Feb. 23, 2007

Moderator, The Executive Branch's Legal Response to the Post 9-11 World: Unconstitutional Overreach or Necessary Precaution?, Fordham Law School, Feb. 22, 2007

Panelist, "The Prosecution and Defense of American White Collars - An Ethical Quagmire," Federal Bar Council Inn of Court, Jan. 25, 2006

Moderator, "Legal Ethics CLE in the Law School Setting: Can It Be Practical, Academic, and Interesting at the Same Time?," AALS 2007 Annual Meeting, Washington, D.C., Jan. 4, 2007

Co-panelist, Ethics in Criminal Practice, "2006 Legislative Program, Part I," Office of the NYS Attorney General, Dec. 7, 2006

Panelist, "Ethics and Professionalism," N.Y. State Bar Ass'n, Dec. 7, 2006

Speaker and moderator, "Ethics for Government Lawyers," Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, Dec. 5, 2006

Co-panelist, "Ethical Issues Raised by Internal & Governmental Investigations," Mealey's Corporate Liability & Compliance Conference," Miami, Fla., Nov. 14, 2006

Panelist, "The Seventh Annual 'Ethics for Corporate Counsel' Program: Corporations in Crisis," N.Y. State Bar Ass'n, Oct. 13, 2006

Panelist, "NYCLA Retreat: Ethics," N.Y. County Lawyers' Association, Oct. 9, 2006

Response, "When Conscience Clashes with State Law & Policy: Distinctions between the Roles of Lawyers and Judges," Inst. on Religion, Law and Lawyer's Work, Fordham Law School, Sept. 22, 2006

Panelist, "Ethical Considerations for Corporate Investigations: Update 2006," Association of the Bar of the City of New York, Sept. 12, 2006

Panelist, "Assault on the Attorney-Client Privilege: What Every Lawyer Needs to Know," Fall 2006 National Legal Malpractice Conference, ABA Standing Committee on Lawyers' Professional Liability, Chicago, IL, Sept. 8, 2006

Panelist, "Avoiding Inadvertent Production of Privileged Documents," ABA TeleConference and Audio Webcast, August 8, 2006

Speaker, "Choice of Ethics Rules in Arbitration," Transatlantic Perspectives on ADR, St. John's Univ. School of Law & Chartered Institute of Arbitrators, London, England, July 27, 2006

Panelist, "Privileges in Regulatory & Criminal Investigations: Legal & Ethical Issues," Association of the Bar of the City of New York, June 27, 2006

Panelist, "Common Conflicts of Interest in Transactional Law Settings," ABA TeleConference and Audio Webcast, June 27, 2006

Panelist, "Emerging Issues: Money and Government," Twelfth Citywide Seminar on Ethics in New York City Government, N.Y.C. Conflicts of Interest Board/New York Law School, May 23, 2006

Panelist, "Preparing or Coaching the Witness: Where is the Ethical Line?," New York County Lawyers' Association, May 16, 2006

Keynote speaker, "The Conversation Between Law and Medicine," Student Physician Awareness Day, New York Medical College, Mt. Kisco, NY, April 27, 2006

Panelist, "Common Conflicts of Interest in Transactional Law Settings," Spring 2006 National Legal Malpractice Conference, NY, NY, April 6, 2006

Trainer, "Ethical Issues in Legal Services Practice," Legal Services for New York City, March 30, 2006

Co-speaker, "Ethics and Public Interest Law: Discussion of Current Issues (2006)," N.Y. Lawyers for the Public Interest, March 30, 2006

Panelist, "Ethical Considerations of an In-House Lawyer," Annual Seminar of the Securities Industry Association Compliance and Legal Division, Hollywood, Florida, March 20, 2006

Moderator, "Ethical Issues in Private Funds Practice," 7th Annual International Conference on Private Investment Funds, International Bar Ass'n & ABA Section of Business Law, London, England, Feb. 27, 2006

Panelist, "Ethics in Commercial Mortgage Practice," Commercial Real Estate Financing 2006, PLI, Feb. 17, 2006

Panelist, "Government Requests for Corporate Waivers of the Attorney-Client Privilege," NYSBA Annual Meeting, Jan. 25, 2006

Facilitator, "Conference on Representing Children in Families: Children's Advocacy and Justice Ten Years After Fordham," William S. Boyd School of Law, Las Vegas, NV, Jan. 12-14, 2006

Commentator, "Professional Responsibility and the Religious Traditions," AALS Annual Meeting, Washington, D.C., Jan. 4, 2006

Panelist, "Checking the Pulse of the Attorney-Client Privilege," ABA Connection teleconference, Dec. 21, 2005

Moderator, "Litigation Ethics: Problems of Conflicts, Confidentiality and Candor," Federal Bar Council 2005 Fall Bench & Bar Retreat, Nov. 6, 2005

Panelist, "Le secret Professionnel des Avocats en France et aux USA" [Attorney-Client Privilege in France and the U.S.], La Barreau de Lille & New York County Lawyers' Association, Lille, France, Oct. 28, 2005

Panelist, "Le Plaider coupable" [The Guilty Plea], La Barreau de Lille & New York County Lawyers' Association, Lille, France, Oct. 27, 2005

Panelist, "Corporate Crimes: Investigating and Prosecuting the Entity and its Employee," New York Council of Defense Lawyers Retreat, Oct. 15, 2005

Panelist, "Zealous Advocacy: Ethics for the Criminal Defense Attorney," Fordham Univ. School of Law, Oct. 11, 2005

Panelist, "Ethical Considerations for Corporate Investigations," Association of the Bar of the City of New York, September 14, 2005

Moderator, "The Attorney-Client Privilege from Cradle to Grave: An Examination of the Role, Implications, and Viability of the Attorney-Client Privilege," ABA Annual Meeting, Chicago, IL, Aug. 7, 2005

Moderator, "Ethical Issues in Pro Bono," Association of the Bar of the City of New York, June 28, 2005

Panelist, "Ethical Dilemmas for Financial Services Attorneys," SIA Compliance & Legal Division, June 21, 2005

Panelist, "Civility & Zealous Advocacy – Building Blocks to Success: The American College of Trial Lawyers Codes of Pre-Trial & Trial Conduct," Association of the Bar of the City of New York, June 20, 2005

Presenter, Symposium: "Should There Be an Effort to Develop Uniform Statewide Attorney Disciplinary Rules?", NYCLA, May 13, 2005

Panelist, "The Efficacy of Unbundling Legal Services," Partners in Justice: A Colloquium on Developing Collaborations Among Courts, Law School Clinical Programs and the Practicing Bar, New York State Judicial Institute, May 9, 2005

Panelist, "You're Fired! Conflicts of Interest and Disqualification of Counsel," Federal Bar Council, April 26, 2005

Speaker, "Ethical Issues in Legal Services Practice," Legal Services of New York, March 15, 2005

Panelist, "Rising to the Challenge: How Should a Civil Practitioner Deal with Liars, Cheaters, Suicide Threateners, and Other Difficult Clients?," Fordham Univ. School of Law, March 14, 2005

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2005, PLI, Feb. 18, 2005

Speaker, "United States Regulation of Multijurisdictional Practice," Conference on Liabilities of Lawyers in Crossborder Transactions and Disputes, Center for International Legal Studies, Kitzbuhel, Austria, Jan. 25, 2005

Panelist, "New Developments in Ethical Considerations for the Business Attorney," in MCLE Marathon 2004, PLI, Dec. 16, 2004

Panelist, "Waivers That Work - Managing Conflicts Effectively," NYLJ & Stein Center, Dec. 6, 2004

Moderator, "Practical Problems in Litigation Ethics," Trial Evidence in the Courts: Problems and Solutions, ALI-ABA, Dec. 2, 2004

Panelist, "'Acceptable Lies?' - The Ethics of Negotiation, and Legal Duties of Disclosure," NYLJ & Stein Center, Dec. 1, 2004

Moderator, "Ethical and Professional Issues in Litigation," Marilyn Stein Bellet Conference on Law and Ethics, Hilton Head, SC, Nov. 13, 2004

16

Panelist, "Ethical Considerations for Corporate Investigations: Updates 2004," Association of the Bar of the City of New York, Sept. 14, 2004

Moderator, "Tattletales or Crimestoppers: Disclosure Ethics Under Model Rules 1.6 and 1.13," ABA Annual Meeting, Atlanta, GA, Aug. 7, 2004

Panelist, "Representing Clients with Diminished Capacity," NYSBA Legal Assistance Partnership Conference, Albany, NY, June 15, 2004

Panelist, "Avoiding Potholes: Discovery and Ethics on the Highway to Trial," ABA Section of Litigation Annual Meeting, Phoenix, AZ, May 6, 2004

Panelist, "Confronting Possible Client Fraud: Is 'Don't Ask, Don't Tell' an Ethically Acceptable Approach?," Brooklyn Bar Ass'n, Apr. 14, 2004

Panelist, "Ethical Issues in Pro Bono," Association of the Bar of the City of New York, Feb. 25, 2004

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2004, PLI, Feb. 24, 2004

Panelist, "Should New York Adopt the Model Rules of Professional Conduct?," NYSBA 2004 Annual Meeting, Jan. 28, 2004

Panelist, "Ethical Challenges in Employment Law," ABCNY, Jan. 16, 2004

Moderator, "Ethics in Action: The Role of Intergenerational Differences in Setting a Lawyer's Moral Compass," Northeast NALP, Jan. 15, 2004

Panelist, "The Attorney-Client Privilege and the Potential Abuse of Public and Private Power," AALS Annual Meeting, Atlanta, Ga., Jan. 5, 2004

Panelist, "Conflict of Interest Issues in Corporate Representation," PLI, Dec. 19, 2003

Panelist, "New Developments in Ethical Considerations for the Business Attorney," PLI, Dec. 18, 2003

Panelist, "Should Criminal Defense Lawyers Be Constrained by the Truth?: The Limits of Zealous Advocacy," Fordham Univ. School of Law, Nov. 25, 2003

Speaker, "Government Attorney Conduct from the Ethics Committees' Perspective," 2003 Ethics for Government Attorneys, Office of the NYS Attorney General, Nov. 14, 2003

Panelist, "Ethical Dilemmas Faced During the Defense of a Criminal Case," co-sponsored by the Legal Aid Society and the Stein Center, Fordham Univ. School of Law, Nov. 13, 2003

Panelist, "Ethics for Corporate Counsel," N.Y.S. Bar Ass'n Corporate Counsel Section, Oct. 27, 2003

Panelist, "Thorny Ethical Issues in Litigation," Federal Bar Council 2003 Fall Bench & Bar Retreat, CT, Oct. 18, 2003

Panelist, "Legal Ethics vs. Personal Morality: How to Resolve the Unresolvable," co-sponsored by the Legal Aid Society and the Stein Center, Fordham Univ. School of Law, Sept. 29, 2003

Commentator, conference on "Judging Judges' Ethics," Hofstra University School of Law, Sept. 14-15, 2003

Panelist, "Ethical Considerations for Corporate Investigation: Updates 2003," ABCNY, September 11, 2003

Panelist, panel on Ethics for program on "Real Estate Titles and Transfers, N.Y. State Bar Ass'n, June 19, 2003

Moderator, "Conflicts of Interest in Criminal Practice," ABA National Conference on Professional Responsibility, Chicago, IL, May 29, 2003

Co-panelist, "Ethical Considerations of Asset Protection," Estate Planners Day, Estate Planning Council of NYC, May 9, 2003

Panelist, "Plenary Session: Coming Soon to a State Rules Committee Near You: How Will Ethics 2000 Affect Lawyer Liability?," ABA National Legal Malpractice Conference, New Orleans, Apr. 24, 2003

Moderator, "Ethics for Litigators," Assoc. of the Bar of the City of New York, Apr. 14, 2003

Moderator, "Top Ten Reasons Why You Should Read the 2002 Model Rules of Professional Conduct," ABA Section of Litigation Annual Meeting, Houston, TX, April 12, 2003

Panelist, "Collaborations Between Lawyers and Social Workers: Avoiding Ethical Minefields," Fordham Univ. School of Law, April 7, 2003

Moderator, "Effect of Present Wartime Legislation on Practicing Attorneys: A Discussion of Future Implications," conference on American Democracy in Times of War, Benjamin N. Cardozo School of Law, March 24, 2003

Speaker, "Criminal Neglect: Non-diligent Criminal Defenders, Under-funded Public Defense Systems, and the Disciplinary Non-response," What Do Clients Want? Emory Conference on Ethics and Professionalism, Emory Univ. School of Law, March 14, 2003

Speaker, "Ethical Issues and the Practice of Public Interest Law," Brennan Center for Justice, March 6, 2003

Panelist, "The Ethics of Helping Clients Who Cannot Help Themselves," Fordham Univ. School of Law, March 3, 2003

Speaker, "Criminal Neglect: Non-Diligent Criminal Defenders, Under-funded Public Defender Systems, and the Disciplinary Non-response," Association for Practical and Professional Ethics annual meeting, Charlotte, N.C., Feb. 28, 2003

Panelist, "Benchmarks of Ethics Center Excellence: Funding Strength," Ethics Center Colloquium: Strategic Planning for Ethics Centers, Association for Practical and Professional Ethics, Charlotte, N.C., Feb. 27, 2003

Panelist, "Ethical Considerations in Commercial Mortgage Practice," Commercial Real Estate Financing 2003, PLI, Feb. 25, 2003

Moderator, panel on "Integrity in the Practice of Law," Conference on Integrity in the Law, Fordham Univ. School of Law, Feb. 7, 2003

Co-presenter, Asset Protection – Ethical Considerations, UJA Federation of NY, Feb. 4, 2003

Trainer, "Disciplinary Procedures and Overview of Issues Relevant to MELS' Practice," Legal Services for New York City, Feb. 3, 2003

Panelist, "New Developments in Ethical Considerations for the Business Attorney," PLI, December 19, 2002

Panelist, "Ethical Issues in Representing a Corporation Under Investigation," Fordham Univ. School of Law, November 19, 2002

Luncheon speaker, "Ethical Issues for Government Lawyers in Dealing with Witnesses," Professional Responsibility Officers' Conference, U.S. Department of Justice, Washington, D.C., November 13, 2002

Panelist, "Talking to the Media: Practical & Ethical Considerations Lawyers Need to Know about the Big, Bad World of TV & Radio," Association of the Bar of the City of New York, November 12, 2002

Moderator, "Moral Philosophy and the Practice of Justice," Federal Bar Council, Kerhonkson, NY, October 26, 2002

Panelist, "Representing the Corporation in Crisis," New York State Bar Association, Business Law Section Fall Meeting, St. Thomas, October 11, 2002

Panelist, "Seminars for Judges: Should Judges Attend Seminars Funded by Private Organizations, and if so, How Should Such Programs Be Funded?," Association of the Bar of the City of New York, October 9, 2002

Speaker, ABA National Legal Malpractice Conference, Chicago, IL, Sept. 13, 2002

Panelist, "Keeping to the Straight and Narrow: Ethical Issues for Civil Litigators," N.Y. State Bar Ass'n, June 7, 2002

Panelist, "Teaching Professional Responsibility: 'Woodshedding' or Coaching the Witness and Impeaching the Honest Witness," plenary session of AALS Conference on Evidence, Alexandria, Va., June 1, 2002

Moderator, "Law Practice at the Crossroads: How Far Should We Go in Changing Rules Governing Cross-Border Practice and Bar Admission?," N.J. State Bar Ass'n annual meeting, May 22, 2002

Panelist, "The New York Lawyer Practicing Delaware Law" (program on "The Delaware-New York Nexus 2002"), N.Y. County Lawyers' Ass'n, May 3, 2002

Speaker, "Prosecutorial Ethics as Usual," conference on ABA Model Rules of Professional Conduct, University of Illinois School of Law, April 5, 2002

Moderator, "Ethical Issues for the Lawyer in Dealing with Mentally Ill Clients," Association of the Bar of the City of New York, March 23, 2002

Moderator, "Legal Issues Arising from Acts of Terrorism and Anti-Terrorist Efforts," U.S. Judicial Conference for the District of New Jersey, March 20, 2002

Co-panelist, "Ethical Issues in Transactional Practice," Fordham Law School, March 6, 2002

Trainer, "Selected Topics in Legal Ethics," Legal Services for New York City, March 5, 2002

Speaker, "Ethical Considerations," program on "Commercial Real Estate Finance," PLI, February 26, 2002

Panelist, "Legal Ethics in the Practice of Criminal Law," Association of the Bar of the City of New York, February 21, 2002

Panelist, "Ethics Issues in Multijurisdictional Practice," ABA Connection, February 20, 2002 and February 21, 2002 (teleconference)

Panelist, "Dialogue Regarding the Issue: Justice Monitors Attorney/Client Communications," Joint program of APRL and ABA Center for Professional Responsibility, ABA Midyear Meeting, Philadelphia, Jan. 31, 2002

Panelist, "Preparing and Presenting Experts: Practical and Ethical Issues," N.Y.S. Bar Ass'n annual meeting, Antitrust Law Section, Jan. 24, 2002

Speaker, "Ethical Issues and the Practice of Public Interest Law," Brennan Center for Justice at NYU School of Law, Dec. 11, 2001

Panelist, New Developments in Ethical Considerations for the Business Lawyer, MCLE Marathon 2001, PLI, Dec. 7, 2001

Speaker, "Ethics and Professionalism," program titled "Update 2001," N.Y.S. Bar Ass'n, Nov. 2, 2001

Panelist, "Ethics and Discovery," Federal Bar Council, Oct. 14, 2001

Co-presenter, "Ethics for Transactional Lawyers," Fordham Law School, Oct. 10, 2001

Speaker, 2001 Legal Ethics Conference: "Legal Ethics: What Needs Fixing?," Hofstra University School of Law, Sept. 10, 2001

Panelist, "Ethics and Criminal Procedure," Israeli Ministry of Justice (in conjunction with the Stein Center), Jerusalem, Israel, July 5, 2001

Panelist, ethics issues in real estate practice, "Real Estate Titles and Transfers," N.Y.S. Bar Ass'n, June 14, 2001

Co-chair and speaker, "Ethics and Professionalism," N.Y.S. Bar Ass'n, June 13, 2001

Panelist, "Ethical Issues in Welfare Advocacy," The Legal Aid Society, June 11, 2001Panelist, "Ethics in Government," State of New York Office of the Attorney General, June 9, 2001

Panelist, "What Every New Attorney Must Know About Ethics, Part II," PLI, May 29, 2001

Panelist, "Training the Advocate," ABA Section of Litigation Annual Meeting, Phoenix, AZ, May 10, 2001

Presenter, ethics issues in commercial real estate finance, program on "Commercial Real Estate Finance," PLI, May 4, 2001

Panelist, program on Ethics in Litigation, New York County Lawyers' Assn., April 30, 2001

Presenter, Clifford Symposium on Tort Law and Social Policy ("Smoke Signals: The Changing Landscape of the Practice, Financing and Ethics of Civil Litigation in the Wake of the Tobacco Wars"), April 5-6, 2001, DePaul College of Law

Moderator, Ethical Issues in Settlement Negotiations, Walter F. George School of Law, Mercer University, March 9-10, 2001

Presenter, CLE program on ethics in criminal defense representation, Brooklyn Defender Services, Jan. 30, 2001

Panelist, Symposium on Unlawful Practice of Law: Toward a Definition of the "Practice of Law," NYSBA annual meeting, Jan. 25, 2001

Panelist, CLE program on legal ethics, PLI, Nov. 21, 2000

Panelist, CLE program on ethics in transactional representation, Fordham Univ. School of Law, Nov. 8, 2000

Panelist, CLE program on ethics in criminal advocacy, Fordham Univ. School of Law, Nov. 1, 2000

Panelist, CLE program on ethics in real estate transactions, Chicago Title, Oct. 30, 2000

Panelist, CLE program on witness preparation, Federal Bar Council, Oct. 25, 2000

Panelist, symposium on professionalism sponsored by S. Carolina Univ. School of Law, Savannah, Ga., Oct. 21, 2000

Panelist, CLE program on ethical issues for legal services lawyers, LSNY, Oct. 11, 2000

Presenter, symposium on ethics issues for law professors, S. Tex. College of Law, Oct. 6, 2000

Presenter, faculty workshop, ethics issues for law professors, Fordham Univ. School of Law, Sept. 28, 2000

22

Panelist, "Ethical Considerations in Asset Protection – Views from the Bench and Bar," ABA annual meeting, July 10, 2000

Panelist, "Lawyer vs. Client: Avoiding Ethical Pitfalls When the Attorney-Client Relationship Becomes Rocky," ABA annual meeting, July 9, 2000

Panelist, program on corporate internal investigations and cooperation, titled "I'm from the Government and I'm Here to Help You," ACCA, June 27, 2000

Panelist, program titled "Ethical Considerations for Criminal Practitioners," NYCLA, June 27, 2000

Speaker, "The Blurring Line Between Law & Business – Maintaining Ethical Standards," NYLJ General Counsel Conference, June 16, 2000

Panelist, panel on Ethics and the Newsgathering Process, for PLI program on "Newsgathering & Libel Litigation 2000," June 15, 2000

Member of planning committee, Partnerships Across Borders: A Global Forum on Access to Justice, ABCNY, Apr. 6-8, 2000.

Speaker, Symposium on "Prosecutorial Misconduct: Discretion, Remedies, and Ethics," Georgetown Law School, Mar. 30, 2000

Speaker, CLE program on legal ethics, Appellate Division, First Department, Mar. 27, 2000

Speaker, Symposium on "Legal Ethics for Government Lawyers: Straight Talk for Tough Times," Widener Univ. School of Law (Harrisburg), March 23, 2000

Organizer and participant, Symposium on the Multijurisdictional Practice of Law, Mar. 10-11, 2000

Speaker, CLE program on current topics in legal ethics, Fordham Law School, March 7, 2000

Panelist, "The Ethics, Tactics and the Law of Witness Preparation," Federal Bar Council annual winter meeting, Feb. 29, 2000

Panelist, "Lawyers Under Investigation: Are Prosecutors and Defense Lawyers Simply 'Doing Their Jobs'?", Federal Bar Counsel annual winter meeting, Feb. 28, 2000

Speaker, "The Future of the Legal Profession: A Symposium on Multidisciplinary Practice," Minnesota Law School, Feb. 26, 2000

Moderator, workshop program for deans and bar leaders, ABA Mid-Year Meeting, Feb. 11, 2000

Organizer and speaker, CLE program on ethics in litigation, Fordham Law School, Feb. 8, 2000

Invited guest, meeting of the Subcommittee on Attorney Conduct Rules, Committee on Rules of Practice and Procedure, Judicial Conference of the United States, Feb. 4, 2000

Organizer and introducer, program on "Ethics in Criminal Advocacy," AALS Annual Conference, Jan. 6, 2000