# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | MDL No. 05-1717-JJF |
| PHIL PAUL, *on behalf of himself and all others similarly situated*, | Civil Action No. 05-485-JJF |
| Plaintiffs, | |
| v. | |
| INTEL CORPORATION, | |
| Defendant. | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATION
## ON MOTION TO COMPEL FRY'S ELECTRONICS, INC. (DM NO. 5)[1]

WHEREAS, Class Plaintiffs served a subpoena on Fry's Electronics, Inc. ("Fry's") on

June 23, 2006 that requested production of documents, including documents sufficient to show

Fry's monthly purchases and sales of computer systems; and

WHEREAS, on March 29, 2007, after several months of negotiations, Class Plaintiffs

filed a motion to compel transactional data responsive to the June 23, 2006 subpoena; and

WHEREAS, Class Plaintiffs' motion to compel was fully briefed and argued before the

Special Master on May 1, 2007; and

---

[1]     In entering this Report and Recommendation the Special Master considered the proposed form of Report and Recommendations submitted by Class Plaintiffs as well as Fry's counter submittal. In this regard, the Special Master concludes that the language of paragraph 1. c. herein is consistent with the Class Plaintiffs' proposal of July 16, 2007 as modified on July 19, 2007 and as ultimately described in Class Plaintiffs' August 10, 2007 letter brief at Exhibit 3. (D.I. 560). The Special Master is mindful that the language contained in Exhibit 3 is different from and in the Special Master's view more precise than language contained in earlier communications between Class Plaintiffs and Fry's. The Special Master also concludes that language of paragraph 1. c. which is in addition to the language contained in Exhibit 3 accomplishes the purpose of making it as clear as possible what Fry's is obligated to produce. The Special Master agrees with Class Plaintiffs that the precision of the ultimate language will hopefully minimize the potential for further disagreement in what has been a hard-fought discovery dispute.

WHEREAS, on May 18, 2007, the Special Master issued a Report and Recommendation (the "May 18 Report") that concluded: (1) this Court has the power to enforce the subpoena served on Fry's, and (2) Fry's had not shown good cause to modify the protective order entered in this case on September 26, 2006 (the "Protective Order"); and

WHEREAS, on June 14, 2007, having received no objection, the Court adopted the May 18 Report; and

WHEREAS, on July 16, 2007 and July 18, 2007, Class Plaintiffs proposed that Fry's produce monthly purchase and sales transaction and annual aggregate financial inducement data for Gateway, Compaq, HP and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel, in full satisfaction of Fry's obligations under the subpoena ("Class Plaintiffs' July 18 Proposal"); and

WHEREAS, on or about July 26, 2007, Fry's proposed that it produce monthly purchase and sales transaction and annual aggregate financial inducement data for Gateway, Compaq and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel, in full satisfaction of its obligations under the subpoena ("Fry's July 26 Proposal"); and

WHEREAS, pursuant to the Stipulation and Order entered by the Court on August 6, 2007, Fry's and Class Plaintiffs agreed, and the Court determined, that the issue to be decided by the Court on the motion to compel would be limited to whether (a) Class Plaintiffs' July 18 Proposal, (b) Fry's July 26 Proposal, or (c) any new position, proposed to the Court in good faith by Fry's or Class Plaintiffs as falling between the other two proposals, should be accepted by the Court as the most appropriate resolution of the motion to compel; and

WHEREAS, in its August 20, 2007 letter brief to the Special Master, Fry's proposed to produce monthly purchase and sales transaction and annual aggregate financial inducement data

for Gateway, eMachines and Toshiba brands, in addition to monthly financial inducements received by Fry's directly from Intel, in full satisfaction of its obligations under the subpoena ("Fry's August 20 Proposal"); and

WHEREAS, the Special Master heard argument on September 11, 2007 regarding whether Class Plaintiffs' July 18 Proposal or Fry's August 20 Proposal was the more appropriate resolution of the motion to compel; and

WHEREAS, the Special Master ruled in the May 18 Report at page 22 that "Fry's commercial or trade secrets are adequately protected under the Protective Order"; and

WHEREAS, the Special Master concluded: (a) that the data are subject to production in this litigation if they are relevant and not unduly burdensome to produce; (b) that this standard applies here regardless of whether, as Fry's contends, the data are a trade secret; and (c) that because Fry's data are adequately protected by the Protective Order, the stricter standard that can govern whether trade secrets must be produced does not apply here; and

WHEREAS, the Special Master concluded that Class Plaintiffs, through the declarations of Jonathan M. Orszag submitted in support of their motion, have established the relevance of the data specified in Class Plaintiffs' July 18 Proposal, and Fry's has not established that production of such data would be unduly burdensome;

NOW, THEREFORE, IT IS HEREBY **RECOMMENDED** that:

1. Class Plaintiffs' motion to compel Fry's is granted. Fry's is ordered to produce the following:

   a. By month, the PLU, description, number of units received, cost of units received, number of units sold, and revenue for each HP, Compaq, Toshiba and Gateway

computer system sold by Fry's as reflected in Fry's Merchant Master system from January 2000 until the present;

b. For each PLU included in these data, a look up table that identifies the manufacturer, the manufacturer model number, and the vendor;

c. By OEM, yearly aggregate totals of all incentive payments received from HP, Compaq, Toshiba and Gateway for the years 2000-2006, inclusive. The incentives data must be specific to computers of the brand in question, and not include any incentives for other brands or non-computer products. Thus, as to incentive payments received from HP after its acquisition of Compaq in 2002, Fry's must produce either data based on a proper allocation of the incentive payments to Fry's purchases of HP-brand computers alone, or documents and/or data sufficient for Class Plaintiffs to perform such allocation; and as to incentive payments received from Gateway, Inc. after its acquisition of eMachines in 2004, Fry's must produce either data based on a proper allocation of the incentive payments to Fry's purchases of Gateway-brand computers alone, or documents and/or data sufficient for Class Plaintiffs to perform such allocation; and

d. By month, all incentive payments received directly from Intel from January 2000 to the present.

2.    Fry's shall make the production described above in a reasonable format and manner, no later than 35 days after entry of a final, non-appealable order.

3.    Fry's production shall be in full satisfaction of Class Plaintiffs' June 23, 2006 subpoena.

4.      All out-of-pocket costs relating to Fry's production pursuit to this Report and
Recommendation shall be borne in equal shares by Class Plaintiffs and Fry's.  As to other
expenses, included but not limited to, attorney, consultant and paralegal fees – Class Plaintiffs
and Fry's shall bear their own costs.  As to the fees and expenses of the Special Master, the
matter is the subject of further briefing by the parties.

**This Special Master's Report and Recommendation will become a final order of the
Court unless Fry's files an objection to or a motion to modify same in accordance with
Federal Rules of Civil Procedure 53.**

ENTERED this _27_ day of September 2007.

Vincent J. Poppiti (#100614)
Special Master

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSOR<br>ANTITRUST LITIGATION | ) ) ) ) | MDL Docket No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all<br>others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 05-485-JJF |
| v. | ) ) | CONSOLIDATED ACTION |
| INTEL CORPORATION, | ) ) | |
| Defendant. | ) ) | |

### NOTICE OF SUBPOENA

TO:     Counsel of Record
        (Per the Attached Service List)

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure,

on June 22, 2006, the attached subpoena was served on Fry's Electronics, Inc. c/o Kathryn J.

Kolder, 600 E Brokaw Road, San Jose, CA 95112 commanding it to produce for inspection and

copying on July 24, 2006 the documents identified in Schedule A appended thereto.

Dated: June 23, 2006

PRICKETT, JONES & ELLIOTT, P.A.

/s/ James L. Hozman
James L. Holzman (DE Bar # 663)
J. Clayton Athey (DE Bar #4378)
1310 King Street, Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

*Interim Liaison Counsel for Plaintiffs*

\307159v1

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
Allyson B. Baker
COHEN, MILSTEIN, HAUSFELD & TOLL,
P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
mhausfeld@cmht.com dsmall@cmht.com
blandau@cmht.com abaker@cmht.com

Michael P. Lehmann
Thomas P. Dove
Alex C. Turan
THE FURTH FIRM, LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
mplehmann@furth.com
tdove@furth.com
aturan@furth.com

Steve W. Berman
Anthony Shapiro
Craig R. Spiegel
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
tony@hbsslaw.com
craig@hbsslaw.com

Guido Saveri
R. Alexander Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com

*Co-Lead and Interim Counsel for Plaintiffs*

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court
## NORTHERN DISTRICT OF CALIFORNIA

In Re Intel Corp. Microprocessors
Antitrust Litig.;

Phil Paul, et al.

v.

Intel Corp.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: [1] 05-485-JJF
MDL Docket No. 1717 JJF
United States District Court, District of
Delaware

To: Fry's Electronics, Inc.
c/o Kathryn J. Kolder
600 E Brokaw Road
San Jose, CA 95112

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

| X | YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): |
|---|---|

See Schedule A

| PLACE<br>Saveri & Saveri, Inc.<br>111 Pine Street, Ste 1700<br>San Francisco, CA 94111 | DATE AND TIME<br>July 24, 2006<br>5:00 P.M. |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*R. Alexander Saveri*     (Attorney for Plaintiff) | DATE<br><br>JUNE 22, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
R. Alexander Saveri (415)217-6810
Saveri & Saveri, Inc.
111 Pine Street, Ste 1700, San Francisco, CA 94111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                    Date                                    Signature of Server

                                                  _____
                                                  Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specified events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

<u>Schedule A</u>

<u>FRY'S ELECTRONICS, INC.</u>

<u>Definitions</u>

1.      For purposes of this document request, "DOCUMENT" includes, without limitation, any hard copy writings and documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases created, accessed, modified or dated on or after January 1, 2000.

2.      With respect to electronically stored data, "DOCUMENT" also includes, without limitation, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

3.      For purposes of this document request, "MICROPROCESSOR" means general purpose microprocessors using the x86 instruction set (e.g., Sempron, Athlon, Turion, Opteron, Celeron, Pentium, Core, Core Duo, and Xeon).

4.      For purposes of this document request, "FINANCIAL INDUCEMENT" means any payment, subsidy, rebate, discount (on MICROPROCESSORS or on any other INTEL product), Intel Inside funds, E-CAP (exceptions to corporate approved pricing), Market Development Funds ("MDF"), "meeting competition" or "meet comp" payments, "depo" payments, program monies, or any advertising or pricing support.

5.      For purposes of this document request, "COMPANY" refers to FRY'S ELECTRONICS, INC. and any of its controlled present or former subsidiaries, parents, and predecessor or successor companies.

6.      "INTEL" refers to Intel Corporation, Intel Kabushiki Kaisha, and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

7.      "AMD" refers to Advanced Micro Devices, Inc., AMD International Sales and Service Ltd., and any of their present or former subsidiaries, affiliates, parents, assigns, predecessor or successor companies and divisions thereof.

8.      "SKU" means stock keeping unit.

9.      For purposes of this request, "COMPUTER SYSTEM" means any product that utilizes a MICROPROCESSOR including, without limitation, desktop computers, notebook computers, and workstations.

<u>Instructions</u>

1.      The time period, unless otherwise specified, covered by each request set forth below is from January 1, 2000 up to and including the present.

1

2.      In responding to each request set forth below, please set forth each request in full before each response.

3.      If any DOCUMENT covered by these requests is withheld by reason of a claim of privilege, please furnish a list at the time the DOCUMENTS are produced identifying any such DOCUMENT for which the privilege is claimed, together with the following information with respect to any such DOCUMENT withheld: author; recipient; sender; indicated or blind copies; date; general subject matter; basis upon which privilege is claimed and the paragraph of these requests to which such DOCUMENT relates.  For each DOCUMENT withheld under a claim that it constitutes or contains attorney work product, also state whether your COMPANY asserts that the DOCUMENT was prepared in anticipation of litigation or for trial.

4.      If your COMPANY objects to a request in part, please state specifically which part of the request your COMPANY objects to and produce all DOCUMENTS responsive to all other parts of the request.

5.      With respect to any DOCUMENT maintained or stored electronically, please harvest it in a manner that maintains the integrity and readability of all data, including all metadata.

6.      Please produce all DOCUMENTS maintained or stored electronically in native, electronic format with all relevant metadata intact and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).  Encrypted or password-protected DOCUMENTS should be produced in a form permitting them to be reviewed.

7.      In connection with your production of DOCUMENTS, please produce any relevant data dictionaries, data translations, lookup tables, and/or any other documentation designed to facilitate use of the data contained within the DOCUMENTS produced.

8.      Please organize electronic DOCUMENTS produced for inspection in the same manner that the COMPANY stores them (e.g., if maintained by a custodian, such as email residing on an email server, please organize DOCUMENTS for production by custodian; if maintained in a subfolder of "My Documents" on a custodian's hard drive, please organize DOCUMENTS for production by custodian with path information preserved, etc.).

9.      To the extent responsive DOCUMENTS reside on databases and other such systems and files, your COMPANY shall either produce the relevant database in useable form and/or shall permit access for inspection, review, and extraction of responsive information.

10.     At your COMPANY's election, DOCUMENTS maintained or stored in paper, hard-copy form can be produced as searchable .PDF (i.e., portable document format files with embedded text) and in an appropriate and useable manner (e.g., by copying such data onto a USB 2.0 external hard drive).

2

## DOCUMENT REQUESTS

1.    All DOCUMENTS that Intel and/or AMD have requested in connection with the *In re Intel Corporation Microprocessor Antitrust Litigation*, MDL No. 05-1717-JJF; *Paul v. Intel*, Civil Action No. 05-485-JJF; and *AMD v. Intel*, Civil Action No. 05-441-JJF.

2.    DOCUMENTS sufficient to identify the (1) product type; (2) brand; (3) model; (4) components (e.g., CPU, Keyboard, Monitor); and (5) SKUs of x86 COMPUTER SYSTEMS that you sell.

### Acquisition of Computer Systems

3.    All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning your COMPANY's participation in or support of any AMD product launch or promotion, or support of AMD products at any trade show, conference, product launch, promotion or industry meeting.

4.    All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to "meet competition," including all forms relating to "meeting competition."

5.    All DOCUMENTS constituting, reflecting, or discussing E-CAP funds.

6.    All documents constituting or discussing any past or present contractual relationship between you and AMD or INTEL, including, but not limited to, all advertising, marketing or promotional agreements and all communications with AMD or INTEL regarding the terms of any such contractual relationship.

### Purchase and Sales History

7.    DOCUMENTS sufficient to show:

a)    the aggregate amount by month of the FINANCIAL INDUCEMENTS provided by INTEL to your COMPANY, broken down by type as regularly recorded in your accounting systems, in connection with your COMPANY'S purchases of COMPUTER SYSTEMS (by month) since January 1, 2000.

b)    your COMPANY'S use of FINANCIAL INDUCEMENTS provided by INTEL including, without limitation, for advertising, newspapers circulars, in-store promotions, and sales personnel training since January 1, 2000.

c)    your COMPANY'S purchases of COMPUTER SYSTEMS for resale on a monthly basis since January 1, 2000, broken down by (i) the SKU; (ii) the number of units purchased; (iii) the purchase price; (iv) the original equipment manufacturer or other source of the purchase; (v) computer specification(s) (including the type of MICROPROCESSOR, type of

3

operating system, type of memory, type of hard drive, type of monitor, and any software, other hardware, or warranties factored into the total price of the computer) and (vi) the amount paid for each computer specification.

d)    your COMPANY'S purchases of COMPUTER SYSTEMS for use in your business on a monthly basis since January 1, 2000, broken down by (i) the SKU; (ii) the number of units purchased; (iii) the purchase price; (iv) the original equipment manufacturer or other source of the purchase; (v) computer specification(s) (including the type of MICROPROCESSOR, type of operating system, type of memory, type of hard drive, type of monitor, and any software, other hardware, or warranties factored into the total price of the computer) and (vi) the amount paid for each computer specification.

8.    DOCUMENTS sufficient to show:

a)    your COMPANY'S unit and dollar volume of retail sales and/or leases of COMPUTER SYSTEMS on a monthly basis since January 1, 2000 broken down by (i) the SKUs sold or leased; (ii) COMPUTER SYSTEM specification (including the type of MICROPROCESSOR, type of operating system, type of memory, type of hard drive, type of monitor, and any software, other hardware, or warranties factored into the total price of the computer); (iii) the number of units sold or leased; (iv) the price of each sale or lease; (v) the amount paid for each COMPUTER SYSTEM specification in each sale or lease; (vi) the revenue generated by that sale or lease; (vii) the name and address of the customer to whom the sale or lease was made; (viii) the ship to zip code and the zip code of the store location that made the sale or lease; and (ix) the date of the sale or lease.

9.    DOCUMENTS sufficient to describe the name, scope, financial and other terms, conditions and effective dates of any rebate, marketing, other promotional program that you have offered purchasers of your COMPUTER SYSTEMS using x86 microprocessors.

10.    With regard to payments made under the programs identified in response to Request No. 9 above, DOCUMENTS sufficient to show: (1) the program under which the payment was made; (2) the amounts that you paid; (3) the zip code where you sent the payment; (4) the store number and/or store location, identified by zip code, to which the payment was attributed or assigned; (5) the SKU to which the payment relates; (6) the date of the payment; and (7) the date of the purchase to which the payment relates.

**Miscellaneous**

11.    All DOCUMENTS constituting, reflecting or discussing any product defects involving INTEL MICROPROCESSORS or INTEL'S inability to deliver or timely deliver an adequate supply of MICROPROCESSORS to your COMPANY.

12.    All DOCUMENTS constituting, reflecting, or discussing any monthly or quarterly business review by INTEL and/or between your COMPANY and INTEL.

13.    All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase computers containing microprocessors from AMD or INTEL (including any evaluation relating to the quantity or timing of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's or INTEL'S microprocessors or computer systems incorporating those microprocessors; (b) the quality or reliability of AMD's or INTEL's microprocessors or systems incorporating those microprocessors; (c) the reliability of INTEL or AMD as suppliers, including, but not limited to, your ability to obtain supply of computer systems containing INTEL or AMD microprocessors; (d) the suitability of AMD's or INTEL's microprocessors for your business objectives; (e) the future roadmap of INTEL or AMD; (f) actual or expected consumer demand for systems incorporating AMD's or INTEL's microprocessors; or (g) any other reasons influencing your decision to purchase (or not purchase) computers containing microprocessors from AMD or INTEL.

14.    All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of claims made by AMD or INTEL regarding the attributes of its microprocessors or computer systems incorporating its microprocessors.

15.    All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning product placement or the amount of your shelf space allocated or to be allocated to computer systems containing INTEL or AMD microprocessors.

16.    All DOCUMENTS constituting, reflecting or discussing communications or negotiations with OEMs or other suppliers or distributors of computers concerning any financial, advertising, marketing, promotional, training or technical support or payments by AMD or INTEL to you in connection with the purchase and/or resale of computer systems containing AMD or INTEL microprocessors.

17.    All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning the above-captioned matter, *AMD v. Intel*, Civil Action No. 05-441 (D. Del.), or any of the allegations about you in AMD's Complaint in that matter, or any other litigation involving AMD and INTEL, or any investigation relating to INTEL by the Fair Trade Commission of Japan or the European Commission.

18.    DOCUMENTS sufficient to show the zip code and store number of all your retail locations.

19.    All DOCUMENTS sufficient to show the steps taken by your COMPANY to preserve DOCUMENTS with respect to this litigation or related litigation or proceeding including, without limitation, all DOCUMENTS that constitute, reflect or discuss your COMPANY'S DOCUMENT retention policy or policies from January 1, 2000 to the present.

5

## CERTIFICATE OF SERVICE

I, James L. Holzman, hereby certify that on this 23rd day of June, 2006, I caused the

foregoing Notice of Subpoena to be served on the following counsel via electronic filing:

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire<br>Chad Michael Shandler, Esquire<br>Steven J. Fineman, Esquire<br>Richards, Layton & Finger<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899<br>cottrell@rlf.com<br>shandler@rlf.com<br>fineman@rlf.com<br>*Counsel for AMD International Sales &*<br>*Service LTD and Advanced Micro Devices,*<br>*Inc.* | Charles P. Diamond, Esquire<br>Mark A. Samuels, Esquire<br>Linda J. Smith, Esquire<br>O'Melveny & Myers LLP<br>1999 Avenue of the Stars, 7th Floor<br>Los Angeles, CA 90067<br>CDiamond@omm.com<br>MSamuels@omm.com<br>lsmith@omm.com<br>*Counsel for AMD International Sales &*<br>*Service LTD and Advanced Micro Devices,*<br>*Inc.* |
| Adam L. Balick, Esquire<br>Bifferato Gentilotti Biden & Balick<br>711 North King Street<br>Wilmington, DE 19801-3503<br>abalick@bgbblaw.com<br>*Counsel for AMD International Sales &*<br>*Service LTD and Advanced Micro Devices,*<br>*Inc.* | Laurin Grollman, Esquire<br>Salem M. Katsh, Esquire<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, New York 10019<br>lgrollman@kasowitz.com<br>skatsh@kasowitz.com<br>*Counsel for AMD International Sales &*<br>*Service LTD and Advanced Micro Devices,*<br>*Inc.* |
| Richard L. Horwitz, Esquire<br>W. Harding Drane, Jr., Esquire<br>Potter Anderson & Corroon, LLP<br>1313 N. Market St., Hercules Plaza, 6th Flr.<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>rhorwitz@potteranderson.com<br>wdrane@potteranderson.com<br>*Counsel for Intel Corporation and Intel*<br>*Kabushiki Kaisha* | David Mark Balabanian, Esquire<br>Joy K. Fuyuno, Esquire<br>Bingham McCutchen LLP<br>Three Embarcadero Center<br>San Francisco, CA 94111-4067<br>david.balabanian@bingham.com<br>joy.fuyuno@bingham.com<br>*Counsel for Intel Corporation* |

| | |
|---|---|
| Christopher B. Hockett, Esquire<br>Bingham McCutchen LLP<br>Three Embarcadero Center<br>San Francisco, CA 94111<br>chris.hockett@bingham.com<br>*Counsel for Intel Corporation* | Darren B. Bernhard, Esquire<br>Peter E. Moll, Esquire<br>Howrey LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004<br>Bernhardd@howrey.com<br>*Counsel for Intel Corporation and Intel Kabushiki Kaisha* |
| Daniel S. Floyd, Esquire<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, California<br>90071-3197<br>dfloyd@gibsondunn.com<br>*Counsel for Intel Corporation* | B.J. Wade, Esquire<br>Glassman Edwards Wade & Wyatt, P.C.<br>26 N. Second Street<br>Memphis, TN 38103<br>bwade@gewwlaw.com<br>*Counsel for Cory Wiles* |
| Robert E. Cooper, Esquire<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, California<br>90071-3197<br>rcooper@gibsondunn.com<br>*Counsel for Intel Corporation* | Nancy L. Fineman, Esquire<br>Cotchett, Pitre, Simon & McCarthy<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>nfineman@cpsmlaw.com<br>*Counsel for Trotter-Vogel Realty Inc.* |
| Donald F. Drummond, Esquire<br>Drummond & Associates<br>One California Street, Suite 300<br>San Francisco, CA 94111<br>ballen@drummondlaw.net<br>*Counsel for Dressed to Kill Custom Draperies LLC, Jose Juan, Tracy Kinder and Edward Rush* | Robert D. Goldberg, Esquire<br>Biggs and Battaglia<br>921 North Orange Street, P.O. Box 1489<br>Wilmington, DE 19899<br>goldberg@batlaw.com<br>*Counsel for Charles Dupraz, Vanessa Z. DeGeorge, Melissa Goeke, Nancy Bjork, James R. Conley, Jeff Vaught, Jim Kidwell Richard Caplan, Virginia Deering, Ficor Acquisition Co. LLC, Tom Hobbs, David Kurzman, Leslie March, Andrew Marcus, Paula Nardella, Bill Richards, Maria Pilar Salgado, Ron Terranova, Nancy Wolft Ryan James Volden and Carl Yamaguchi* |

| | |
|---|---|
| Donald Chidi Amamgbo, Esquire<br>Amamgbo & Associates, APC<br>1940 Embarcadero Cove<br>Oakland, CA. 94606<br>donaldamamgbo@citycom.com<br>*Counsel for Athan Uwakwe* | Jeffrey F. Keller, Esquire<br>Jade Butman, Esquire<br>Law Offices of Jeffrey F. Keller<br>425 Second Street, Suite 500<br>San Francisco, CA 94107<br>jkeller@jfkellerlaw.com<br>jbutman@kellergrover.com<br>*Counsel for David E. Lipton, Maria I. Prohias,*<br>*Patricia M. Niehaus, Peter Jon Naigow, Ronld*<br>*Konieczka, Steve J. Hamilton, Susan Baxley*<br>*and Kevin Stoltz* |
| Gordon Ball, Esquire<br>Ball & Scott<br>550 W. Main Ave., Suite 750<br>Knoxville, TN 37902<br>gball@ballandscott.com<br>*Counsel for Andrew Armbrister and Melissa*<br>*Armbrister* | Joseph M. Patane, Esquire<br>Law Offices of Joseph M. Patane<br>2280 Union Street<br>San Francisco, CA 94123<br>jpatane@tatp.com<br>*Counsel for Karol Juskiewicz and Lawrence*<br>*Lang* |
| James Gordon McMillan, III, Esquire<br>Bouchard Margules & Friedlander<br>222 Delaware Avenue,<br>Suite 1400<br>Wilmington, DE 19801<br>jmcmillan@bmf-law.com<br>*Counsel for Raphael Allison and Matthew*<br>*Kravitz* | Michele C. Jackson, Esquire<br>Lieff Cabraser Heimann & Bernstein, LLP<br>Embarcadero Center West, 275 Battery Street,<br>30th Floor<br>San Francisco, CA 94111<br>mjackson@lchb.com<br>*Counsel for Huston Frazier, Jeanne Cook*<br>*Frazier and Brian Weiner* |

| | |
|---|---|
| A. Zachary Naylor, Esquire<br>Robert Kriner, Jr., Esquire<br>Robert R. Davis, Esquire<br>James R. Malone, Jr., Esquire<br>Chimicles & Tikellis, LLP<br>One Rodney Square, P.O. Box 1035<br>Wilmington, DE 19899<br>zacharynaylor@chimicles.com<br>robertkriner@chimicles.com<br>robertdavis@chimicles.com<br>jamesmalone@chimicles.com<br>*Counsel for Gideon Elliott, Angel Genese, Nir*<br>*Goldman, Paul C. Czysz, Elizabeth Bruderle*<br>*Baran, Carrol Cowan, Russell Dennis, Damon*<br>*DiMarco, Kathy Ann Chapman, Caresse*<br>*Harms, JWRE Inc., Leonard Lorenzo, Michael*<br>*E. Ludt, John Maita, Chrystal Moeller, Robert*<br>*J. Rainwater, Mary Reeder, Stuart Schupler*<br>*and Sonia Yaco* | Harry Shulman, Esquire<br>Robert Mills, Esquire<br>The Mills Law Firm<br>145 Marina Boulevard<br>San Rafeal, CA 94901<br>harry@millslawfirm.com<br>deepbluesky341@hotmail.com<br>*Counsel for Stuart Munson* |
| Ali Oromchian, Esquire<br>Finkelstein, Thompson & Loughran<br>601 Montgomery Street, Suite 665<br>San Francisco, CA 94111<br>ao@ftllaw.com<br>*Counsel for Ian Walker, Damon DiMarco,*<br>*Carrol Cowan, Leonard Lorenzo and Russell*<br>*Dennis* | Douglas A. Millen, Esquire<br>Steven A. Kanner, Esquire<br>Much Shelist Freed Denenberg Ament &<br>Rubenstein, P.C.<br>191 North Wacker Drive, Suite 1800<br>Chicago, IL 60606<br>dmillen@muchshelist.com<br>skanner@muchshelist.com<br>*Counsel for HP Consulting Services Inc. and*<br>*Phillip Boeding* |
| Vincent J. Esades, Esquire<br>Muria J. Kruger, Esquire<br>Marguerite E. O'Brien, Esquire<br>Heins Mills & Olson, P.L.C.<br>3550 I.D.S. Center<br>80 S. Eight Street<br>Minneapolis, MN 55402<br>vesades@heinsmills.com<br>mkruger@heinsmills.com<br>mobrien@heinsmills.com<br>*Counsel for Bergerson & Associates Inc.* | Garrett D. Blanchfield, Jr., Esquire<br>Mark Reinhardt, Esquire<br>Reinhardt Wendorf & Blanchfield<br>332 Minnesota Street, Suite E-1250<br>St. Paul, MN 55101<br>g.blanchfield@rwblawfirm.com<br>mreinhardt@comcast.net<br>*Counsel for Susan Baxley* |

4

| | |
|---|---|
| Hollis L. Salzman, Esquire<br>Kellie Safar, Esquire<br>Goodking Labaton Rudoff & Sucharow, LLP<br>100 Park Avenue<br>New York, NY 10017<br>hsalzman@labaton.com<br>ksafar@labaton.com<br>*Counsel for Angel Genese, Gideon Elliott and Nir Goldman* | R. Bruce McNew, Esquire<br>Taylor & McNew, LLP<br>3711 Kennett Pike, Suite 210<br>Greenville, DE 19807<br>mcnew@taylormcnew.com<br>*Counsel for Robert Marshall* |
| Jason S. Kilene, Esquire<br>Daniel E. Gustafson, Esquire<br>Gustafson Gluek PLLC<br>650 Northstar East, 608 Second Avenue South<br>Minneapolis, MN 55402<br>jkilene@gustafsongluek.com<br>dgustafson@gustafsongluek.com<br>*Counsel for Fiarmont Orthopedics & Sports Medicine PA* | David Boies, III, Esquire<br>Straus & Boies, LLP<br>4041 University Drive, 5th Floor<br>Fairfax, VA 22030<br>dboies@straus-boies.com<br>*Counsel for Dressed to Kill Custom Draperies LLC, Jose Juan, Edward Rush and Tracy Kinder* |
| Lance A. Harke, Esquire<br>Harke & Clasby<br>155 S. Miami Avenue<br>Miami, FL 33130<br>lharke@harkeclasby.com<br>*Counsel for Nathaniel Schwartz and Maria I. Prohias* | Allan Steyer, Esquire<br>Steyer Lowenthal Boodrookas Alvarez & Smith LLP<br>One California Street, Third Floor<br>San Francisco, CA 94111<br>asteyer@steyerlaw.com<br>*Counsel for Cheryl Glick-Salpeter, Jay Salpeter, Jodi Salpeter and Michael H. Roach* |
| Bruce J. Wecker, Esquire<br>Hosie McArthur LLP<br>One Market Street<br>Spear Street Tower #2200<br>San Francisco, CA 94105<br>bwecker@hosielaw.com<br>*Counsel for Dwight E. Dickerson* | Mario Nunzio Alioto, Esquire<br>Trump Alioto Trump & Prescott LLP<br>2280 Union Street<br>San Francisco, CA 94123<br>malioto@tatp.com<br>*Counsel for Karol Juskiewicz and Lawrence Lang* |
| Francis O. Scarpulla, Esquire<br>Law Offices of Francis O. Scarpulla<br>44 Montgomery Street, Suite 3400<br>San Francisco, CA 94104<br>foslaw@pacbell.net<br>*Counsel for Lazio Family Products, Law Offices of Laurel Stanley, William F. Cronin, Michael Brauch and Andrew Meimes* | Steven A. Asher, Esquire<br>Robert S. Kitchenoff, Esquire<br>Weinstein Kitchenoff & Asher, LLC<br>1845 Walnut Street, Suite 1100<br>Philadelphia, PA 19103<br>asher@wka-law.com kithenoff@wka-law.com<br>*Counsel for Joseph Samuel Cone* |

| | |
|---|---|
| Francis A. Bottini, Jr., Esquire<br>Wolf Haldenstein Adler Freeman & Herz<br>750 B Street, Suite2770<br>San Diego, CA 92101<br>bottini@whafh.com<br>*Counsel for Ryan James Volden, Ficor Acquisition Co LLC, Giacobbe-Fritz Fine Art LLC, Andrew Marcus, Bill Richards, Carl Yamaguchi, Charles Dupraz, David Kurzman, James R. Conley, Jeff Vaught, John Matia, Kathy Ann Chapman, Caresse Harms, JWRE Inc., Jim Kidwell, John Maita, Leslie March, Maria Pilar Salgado, Melissa Goeke, Nancy Bjork, Nancy Wolfe, Paula Nardella, Richard Caplan, Ron Terranova, Tom Hobbs, Vanessa Z. DeGeorge, Virginia Deering, Chrystal Moeller, Robert J. Rainwater, Mary Reeder and Sonia Yaco* | Fred Taylor Isquith, Esquire<br>Adam J. Levitt, Esquire<br>Wolf Haldenstein Adler Freeman & Herz<br>270 Madison Ave., 11th Floor<br>New York, NY 10016<br>isquith@whafh.com<br>levitt@whafh.com<br>*Counsel for Ryan James Volden, Ficor Acquisition Co LLC, Giacobbe-Fritz Fine Art LLC, Andrew Marcus, Bill Richards, Carl Yamaguchi, Charles Dupraz, David Kurzman, James R. Conley, Jeff Vaught, John Matia, Kathy Ann Chapman, Caresse Harms, JWRE Inc., Jim Kidwell, John Maita, Leslie March, Maria Pilar Salgado, Melissa Goeke, Nancy Bjork, Nancy Wolfe, Paula Nardella, Richard Caplan, Ron Terranova, Tom Hobbs, Vanessa Z. DeGeorge, Virginia Deering, Chrystal Moeller, Robert J. Rainwater, Mary Reeder and Sonia Yaco* |
| Edward A. Wallace, Esquire<br>The Wexler Firm LLP<br>One N. LaSalle Street, Suite 2000<br>Chicago, IL 60602<br>eawallace@wexlerfirm.com<br>*Counsel for Peter Jon Naigow* | Jeffrey S. Goddess, Esquire<br>Rosenthal, Monhait, Gross & Goddess<br>Mellon Bank Center, Suite 1401<br>P.O. Box 1070<br>Wilmington, DE 19899<br>jgoddess@rmgglaw.com<br>*Counsel for Ludy A. Chacon, Joseph Samuel Cone, Darice Russ and Michael K. Simon* |
| Jason S. Hartley, Esquire<br>Ross, Dixon & Bell LLP<br>550 West B Street, Suite 400<br>San Diego, CA 92101<br>jhartley@rdblaw.com<br>*Counsel for Gabriella Herroeder-Perras* | Craig C. Corbitt, Esquire<br>Zelle, Hofmann, Voelbel, Mason & Gette LLP<br>44 Montgomery Street, Suite 3400<br>San Francisco, CA 94104<br>ccorbitt@zelle.com<br>*Counsel for William F. Cronin, Law Offices of Laurel Stanley and Lazio Family Products* |

6

| | |
|---|---|
| Scott E. Chambers, Esquire<br>Schmittinger & Rodriguez, P.A.<br>414 S. State Street<br>P.O. Box 497<br>Dover, DE 19903<br>schambers@scbmittrod.com<br>*Counsel for David Arnold, Andrew S. Cohn,*<br>*Jason Craig, Maria Griffin, Lena K. Manyin,*<br>*Paul Ramos and Michael Ruccolo* | Reginald Von Terrell, Esquire<br>The Terrell Law Group<br>223 25th Street<br>Richmond, CA 94804<br>REGGIET2@aol.com<br>*Counsel for Athan Uwakwe* |
| Juden Justice Reed, Esquire<br>Schubert & Reed LLP<br>Two Embarcadero Center, Suite 1600<br>San Francisco, CA 94111<br>jreed@schubert-reed.com<br>*Counsel for Patrick J. Hewson* | Natalie Finkelman Bennett, Esquire<br>Shepherd, Finkelman, Miller & Shah<br>65 Main Street<br>Chester, CT 06412-1311<br>nfinkelman@classactioncounsel.com<br>*Counsel for Ludy A. Chacon* |
| Russell M. Aoki, Esquire<br>Aoki Sakamoto Grant LLP<br>One Convention Place<br>701 Pike Street, Suite 1525<br>Seattle, WA 98101<br>russ@aoki-sakamoto.com<br>*Counsel for Kevin Stoltz* | Michael L. Kirby, Esquire<br>Kirby Noonan Lance & Hoge LLP<br>One America Plaza<br>600 West Broadway, Suite 1100<br>San Diego, CA 92101<br>mkirby@knlh.com<br>*Counsel for Justin Suarez* |
| Richard A. Ripley, Esquire<br>Bingham McCutchen<br>1120 20th Street, NW, Suite 800<br>Washington, DC 20036<br>richard.ripley@bingham.com<br>*Counsel for Intel Corporation* | Jeffrey A. Bartos, Esquire<br>Guerrieri, Edmond, Clayman & Bartos, PC<br>1625 Massachusetts Avenue, NW<br>Washington, DC 20036<br>jbartos@geclaw.com<br>*Counsel for Jose Juan, Dressed to Kill Custom*<br>*Draperies, LLC, Tracy Kinder and Edward*<br>*Rush* |
| Donald L. Perelman, Esquire<br>Fine Kaplan & Black, RPC<br>1835 Market Street, 28th Flr<br>Philadelphia, PA 19103<br>dperelman@finekaplan.com<br>*Counsel for Kevin Stoltz* | Randy R. Renick, Esquire<br>Law Offices of Randy Renick<br>128 North Fair Oaks Avenue, Suite 204<br>Pasadena, CA 91103<br>rrr@renicklaw.com<br>*Counsel for Shanghai 1930 Restaurant*<br>*Partners L.P. and Major League Softball Inc.* |

7

| | |
|---|---|
| Daniel Hume, Esquire<br>Kirby McInerney & Squire LLP<br>830 Third Avenue, 10th Floor<br>New York, NY 10022<br>dhume@kmslaw.com<br>*Counsel for Raphael Allison and Matthew Kravitz* | Daniel B. Allanoff, Esquire<br>Steven Greenfogel, Esquire<br>Meredith Cohen Greenfogel & Skirnick, P.C.<br>22nd Floor, Architects Building<br>117 S. 17th Street<br>Philadelphia, PA 19103<br>dallanoff@mcgslaw.com<br>sgreenfogel@mcgslaw.com<br>*Counsel for Benjamin Allanoff* |
| Scott Ames, Esquire<br>Serratore & Ames<br>9595 Wilshire Blvd., Suite 201<br>Los Angeles, CA 90212<br>scott@serratoreames.com<br>*Counsel for Major League Softball, Inc.* | Harvey W. Gurland, Jr., Esquire<br>Duane Morris<br>200 S. Biscayne Blvd., Suite 3400<br>Miami, FL 33131<br>HWGurland@duanemorris.com<br>*Counsel for Intel Corporation* |
| Douglas G. Thompson, Jr., Esquire<br>Finkelstein, Thompson & Loughran<br>1050 30th Street N.W.<br>Washington, DC 20007<br>dgt@ftllaw.com<br>*Counsel for Ian Walker, Damon DiMarco, Carrol Cowan, Leonard Lorenzo and Russell Dennis* | Barbara C. Frankland, Esquire<br>Rex A. Sharp, Esquire<br>Gunderson Sharp & Walke, L.L.P.<br>4121 W. 83rd St., Ste. 256<br>Prairie Village, KS 66208<br>bfrankland@midwest-law.com<br>rsharp@midwest-law.com<br>*Counsel for Marvin D. Chance, Jr.* |
| VIA U.S. MAIL<br><br>Clerk Michael J. Beck<br>Clerk, MDL Judicial Panel<br>One Columbus Circle, N.E.<br>Room G-255, Federal Judiciary Bldg.<br>Washington, DC 20002-8004<br>*Pro Se* | |

/s/ James L. Holzman
James L. Holzman (DE Bar No. 663)

EXHIBIT 3

BRIAN D. HENRI, ESQ. (CSBN 200205)
FRY'S ELECTRONICS, INC.
600 E. Brokaw Road
San Jose, CA 95112
Telephone: (408) 487-4747
Fax: (408) 487-4741
Email: bdh@i.frys.com

Attorneys for Third Party Witness
FRY'S ELECTRONICS, INC.

## UNTIED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In Re Intel Corp. Microprocessors Antitrust Litig.: | Case No. 05-485-JJF **MDL Docket No. 1717 JJF** **United States District Court, District of Delaware** |
| PHIL PAUL, et al. | |
| Plaintiff, | **NON-PARTY FRY'S ELECTRONICS, INC.'S OBJECTIONS TO PHIL PAUL SUBPOENA** |
| vs. | |
| INTEL CORPORATION | |
| Defendants. | |

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Fry's Electronics, Inc. ("Fry's"), a non-party in the above-entitled and numbered cause, timely asserts the following objections to the document production subpoena dated June 22, 2006.

By filing these objections, Fry's in no way waives any objection that it has to the exercise of jurisdiction over it, and expressly reserves the right to assert such objections and to seek related relief in the future, including without limitation via motions to quash.

Fry's objections are based on Fry's current knowledge, information and belief, based on

- 1 -

reasonable and diligent inquiry. Fry's is continuing to review its files and reserves the rights to modify, correct, supplement or clarify its responses.

## GENERAL OBJECTIONS

The following general objections apply to each document request and, accordingly, Fry's incorporates each of them into the specific responses set forth below. The assertion of the same or additional objections in any particular response to these document requests does not waive other general objections set forth below.

These objections are preliminary. Fry's investigation of the subject matter of this litigation is ongoing, and it may discover information to support additional objections applicable to this subpoena. Fry's reserves the right to raise further objections as it proceeds with its investigation.

Further, a statement by Fry's, in response to a particular request, that it will produce, subject to his objections, all responsive documents in his possession, custody or control is not a representation that any such documents exist, but only that such documents will be produced if they exist and are not subject to any of Fry's objections.

1.    Fry's objects to all definitions, instructions and document requests to the extent they call for documents protected from disclosure by the attorney-client privilege or the work-product doctrine. Such documents shall not be provided in response hereto, and inadvertent disclosure shall not be deemed a waiver of any privilege or of the work-product doctrine. Fry's therefore construes each document request to exclude documents protected by the attorney-client privilege or the work-product doctrine.

2.    Fry's objects to all definitions, instructions and document requests to the extent they call for documents or portions of documents not related to the subject matter of this litigation. Fry's will produce only those excerpts of the requested documents which relate to or refer to the subject matter of this litigation, and which are not otherwise subject to any objection by Fry's.

3.    Fry's objects to all document requests and to the definition of "COMPANY" to the extent it requests documents in the custody or control of Fry's agents, employees,

are unduly burdensome and serve to expand Fry's obligations beyond those required by the Federal Rules of Civil Procedure.

4.    Nothing contained in these responses is intended to be or should be construed as a waiver of any attorney-client privilege, work product protection, the right to privacy, trade secret or confidential information, or any applicable privilege or doctrine, and to the extent that any request may be construed as calling for disclosure of information protected by such privilege or doctrine, a continuing objection to each and every such request is hereby imposed.

5.    Finally, Fry's further objects to each request to the extent it seeks Fry's trade secrets, confidential and/or proprietary information. Without waiving the foregoing objections, if the Propounding Party narrows the scope of some of these demands by designating the exact topics/subject matter on which it seeks information, the Fry's will consider producing relevant portions of the documents requested.   Further, the Fry's acknowledges that in the event that the court orders the production of any such documents, it will seek a protective order to limit the scope and method in which these documents are produced.

Without waiving the foregoing, and subject to the limitations stated above, Fry's responds as follows:

## DOCUMENT REQUESTS

I.    <u>Acquisition of Computer Systems</u>

<u>DOCUMENT REQUEST NO. 1:</u>

All DOCUMENTS that Intel and/or AMD have requested in connection with the *In re Intel Corporation Microprocessor Antitrust Litigation*, MDL No. 05-1717-JJF; *Paul v. Intel*, Civil Action No. 05-485-JJF; and *AMD v. Intel*, Civil Action No. 05-441-JJF.

<u>RESPONSE TO DOCUMENT REQUEST NO. 1:</u>

- 3 -

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is overbroad and unduly burdensome; (ii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iii) seeks confidential and proprietary business information; (iv) is harassing and oppressive; (v) seeks trade secret information; (vi) is compound; (vii) is vague and ambiguous; (viii) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

**DOCUMENT REQUEST NO. 2:**

DOCUMENTS sufficient to identify the (1) product type; (2) brand; (3) model; (4) components (e.g., CPU, Keyboard, Monitor); and (5) SKUs of x86 COMPUTER SYSTEMS that you sell.

**RESPONSE TO DOCUMENT REQUEST NO. 2:**

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is grossly compound; (viii) is vague and ambiguous as to the terms and phrases "product type," "brand," "model," and "component;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

**Acquisition of Computer Systems**

**DOCUMENT REQUEST NO. 3:**

All DOCUMENTS constituting, reflecting, or discussing communications with INTEL concerning your COMPANY'S participation in or support of any AMD product launch or promotion, or support of AMD products at any trade show, conference, product launch, promotion or industry meeting.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the

- 4 -

1  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is

2  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

3  proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;

4  (vii) is grossly compound; (viii) is vague and ambiguous as to the terms and phrases "constituting,"

5  "reflecting," "discussing," "COMPANY'S participation or support of any AMD product launch or

6  promotion," " trade show," "conference," "product launch," "promotion," and "industry meeting;" and

7  (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work

8  product doctrine.

9

10  **DOCUMENT REQUEST NO. 4:**

11      All DOCUMENTS constituting, reflecting, or discussing any offer by INTEL to "meet

12  competition," including all forms relating to "meeting competition."

13  **RESPONSE TO DOCUMENT REQUEST NO. 4:**

14      Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the

15  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is

16  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

17  proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;

18  (vii) is grossly compound; (viii) is vague and ambiguous as to the terms and phrases "constituting,"

19  "reflecting," "discussing," "concerning," "training," and "meet competition;" (ix) seeks documents

20  protected from disclosure by the attorney-client privilege and attorney work product doctrine; and (x)

21  is duplicative.

22

23  **DOCUMENT REQUEST NO. 5:**

24      All DOCUMENTS constituting, reflecting, or discussing E-CAP funds.

25  **RESPONSE TO DOCUMENT REQUEST NO. 5:**

26      Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the

27  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is

28  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting," "discussing," "E-CAP funds;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

**DOCUMENT REQUEST NO. 6:**

All documents constituting or discussing any past or present contractual relationship between you and AMD or INTEL, including, but not limited to, all advertising, marketing or promotional agreements and all communications with AMD or INTEL regarding the terms of any such contractual relationship.

**RESPONSE TO DOCUMENT REQUEST NO. 6:**

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting," "discussing," "contractual relationship," "advertising," "marketing," promotional agreements;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine; (x) is duplicative.

**Purchase and Sales History**

**DOCUMENT REQUEST NO. 7:**

DOCUMENTS sufficient to show:

a)    the aggregate amount by month of the FINANCIAL INDUCEMENTS provided by INTEL to your COMPANY, broken down by type as regularly recorded in your accounting systems, in connection with your COMPANY'S purchases of COMPUTER SYSTEMS (by month) since January 1, 2000.

b)    your COMPANY'S use of FINANCIAL INDUCEMENTS provided by INTEL

- 6 -

1   including, without limitation, for advertising, newspapers circulars, in-store

2   promotions, and sales personnel training since January 1, 2000.

3   c)   your COMPANY purchases of COMPUTER SYSTEMS for resale on a monthly basis

4        since January 1,2000, broken down by (i) the SKU; (ii) the number of units purchased;

5        (iii) the purchase price; (iv) the original equipment manufacturer or other source of the

6        purchase; (y) computer specification(s) (including (he type of MICROPROCESSOR,

7        type of operating system, type of memory, type of hard drive, type of monitor, and any

8        software, other hardware, or warranties factored into the total-price of the computer)

9        and (vi) (he amount paid for each computer specification.

10  d)   your COMPANY'S purchases of COMPUTER SYSTEMS for use in your business on a

11       monthly basis since January 1, 2000, broken down by (i) the SKU; (ii) the number of

12       units purchased; (iii) the purchase price; (iv) the original equipment manufacturer or

13       other source of the purchase; (v) computer specifications) (including (he type of

14       MICROPROCESSOR, type of operating system, type of memory, type of hard drive,

15       type of monitor, and any software, other hardware, or warranties factored into the total

16       price of the computer) and (vi) the amount paid for each Computer specification.

17  **RESPONSE TO DOCUMENT REQUEST NO. 7:**

18       Fry's incorporates each of its general objections.  Fry's further objects on the grounds that the

19  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is

20  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

21  proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;

22  (vii) is compound; (viii) is vague and ambiguous in its entirety; (ix) seeks documents protected from

23  disclosure by the attorney-client privilege and attorney work product doctrine; (x) is duplicative.

24

25  **DOCUMENT REQUEST NO. 8:**

26       DOCUMENTS sufficient to show:

27  a)   your COMPANY'S unit and dollar volume of retail sales arid/or leases of COMPUTER

28       SYSTEMS on a monthly basis since January 1, 2000 broken down by (i) the SKUs sold

1  or leased; (ii) COMPUTER SYSTEM specification (including the type of
2  MICROPROCESSOR, type of operating system, type of memory, type of hard drive,
3  type of monitor, and, any software, other hardware, or warranties factored into the total
4  price of the computer); (iii) the number of units sold or leased; (iv) the price of each
5  sale or lease; (v) the amount paid for each COMPUTER SYSTEM specification in each
6  sale or lease; (vi) the revenue generated by that sale or lease; (vii) the name and address
7  of the customer to whom the sale or lease was made; (viii) the ship (o zip code and the
8  zip code of the store location that made the sale or lease; and (ix) the date of the sale or
9  lease.

10  **RESPONSE TO DOCUMENT REQUEST NO. 8:**

11      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the
12  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is
13  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and
14  proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;
15  (vii) is compound; (viii) is vague and ambiguous in its entirety;" (ix) seeks documents protected from
16  disclosure by the attorney-client privilege and attorney work product doctrine; (x) is duplicative.

17

18  **DOCUMENT REQUEST NO. 9:**

19      DOCUMENTS sufficient to describe the name, scope, financial and other terms, conditions
20  and effective dates of any rebate, marketing, other promotional program that you have offered
21  purchasers of your COMPUTER SYSTEMS using x86 microprocessors.

22  **RESPONSE TO DOCUMENT REQUEST NO. 9:**

23      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the
24  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is
25  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and
26  proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;
27  (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "describe the name,"
28  "scope," "financial and other terms," "conditions and effective dates of any rebate," "marketing,"

- 8 -

1  other promotional program that you have offered purchasers," "your COMPUTER SYSTEMS using

2  x86 microprocessors;" (ix) assumes facts not in evidence; (x) is argumentative' (xi) seeks documents

3  protected from disclosure by the attorney-client privilege and attorney work product doctrine; (xii) is

4  duplicative.

5

6  **DOCUMENT REQUEST NO. 10:**

7    With regard to payments made under the programs identified in response to Request No. 9

8  above, DOCUMENTS sufficient to show: (I) the program under which the payment was made; (2)

9  (be amounts that you paid; (3) the zip code where you sent the payment; (4) the store number and/or

10  store location, identified by zip code, to which the payment was attributed or assigned; (5) the SKU to

11  which the payment relates; (6) the date of the payment; and (7) the date of the purchase to which the

12  payment relates.

13  **RESPONSE TO DOCUMENT REQUEST NO. 10:**

14    Fry's incorporates each of its general objections. Fry's further objects on the grounds that the

15  demand: (i) is unintelligible; (ii) is grossly compound; (iii) is overbroad and unduly burdensome; (iv)

16  seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence;

17  (v) seeks confidential and proprietary business information; (vi) is harassing and oppressive; (vii)

18  seeks trade secret information; (viii) is vague and ambiguous in its entirety.

19

20  Miscellaneous

21  **DOCUMENT REQUEST NO. 11:**

22    All DOCUMENTS constituting, reflecting or discussing any product defects involving INTEL

23  MICROPROCESSORS or INTEL'S inability to deliver or timely deliver an adequate supply of

24  MICROPROCESSORS to your COMPANY.

25  **RESPONSE TO DOCUMENT REQUEST NO. 11:**

26    Fry's incorporates each of its general objections. Fry's further objects on the grounds that the

27  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is

28  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

- 9 -

proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting or discussing," "product defects," "inability to deliver or timely deliver an adequate supply of MICROPROCESSORS to your COMPANY;" (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

**DOCUMENT REQUEST NO. 12:**

All DOCUMENTS constituting, reflecting, or discussing any monthly or quarterly business review by INTEL and/or between your COMPANY and INTEL.

**RESPONSE TO DOCUMENT REQUEST NO. 12:**

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is overbroad and unduly burdensome; (ii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iii) seeks confidential and proprietary business information; (iv) is harassing and oppressive; (v) seeks trade secret information; (vi) is compound; (vii) is vague and ambiguous as to the terms and phrases "constituting," "reflecting or discussing," "business review;" (viii) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine; (ix) seeks documents, such as newspaper advertisements, that are equally available to the requesting party.

**DOCUMENT REQUEST NO. 13:**

All DOCUMENTS reflecting or concerning any evaluation by you whether to purchase computers containing microprocessors from AMD or INTEL (including any evaluation relating to the quantity or riming of such purchase), including, but not limited to, DOCUMENTS discussing or concerning (a) the technical specifications or performance of AMD's pr INTEL'S microprocessors or computer systems incorporating those microprocessors; (b) the quality or reliability of AMD's or INTEL'S microprocessors or systems incorporating those microprocessors; (c) the reliability of INTEL or AMD as suppliers, including, but, not limited to, your ability to obtain supply of computer systems containing INTEL or AMD microprocessors; (d) the suitability of AMD's or INTEL'S

1  microprocessors for your business objectives; (e) the future roadmap of INTEL or AMD; (0 actual or

2  expected consumer demand for systems incorporating AMD's or INTEL'S microprocessors; or(g) or

3  any other reasons influencing your decision to purchase (or not purchase) computers containing

4  microprocessors from AMD or INTEL.

5  **RESPONSE TO DOCUMENT REQUEST NO. 13:**

6      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the

7  demand: (i) unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is

8  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

9  proprietary business information; (v) is harassing and oppressive; (v) seeks trade secret information;

10  (vi) is compound; (vii) is hopelessly compound; (viii) is vague and ambiguous in its entirety; (viii)

11  seeks documents protected from disclosure by the attorney-client privilege and attorney work product

12  doctrine.

13

14  **DOCUMENT REQUEST NO. 14:**

15      All DOCUMENTS reflecting or discussing any evaluation of the truthfulness or reliability of

16  claims made by AMD or INTEL regarding the attributes of its microprocessors or computer systems

17  incorporating its microprocessors.

18  **RESPONSE TO DOCUMENT REQUEST NO. 14:**

19      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the

20  demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is

21  neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and

22  proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information;

23  (vii) is compound; (viii) is vague and ambiguous as to the terms and phrases "constituting,"

24  "reflecting," "discussing," "evaluation of the truthfulness or reliability," "claims made by AMD or

25  INTEL ," "regarding the attributes of its microprocessors or computer systems incorporating its

26  microprocessors;" (ix) seeks documents protected from disclosure by the attorney-client privilege and

27  attorney work product doctrine.

28  //

- 11 -

## DOCUMENT REQUEST NO. 15:

All DOCUMENTS constituting, reflecting or discussing communications with AMD or INTEL concerning product placement or the amount of your shelf space allocated or to be allocated to computer systems containing INTEL or AMD microprocessors.

## RESPONSE TO DOCUMENT REQUEST NO. 15:

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is compound; (viii) is vague and ambiguous in its entirety.

## DOCUMENT REQUEST NO. 16:

All DOCUMENTS constituting, reflecting or discussing communication's or negotiations with OEMs or other suppliers or distributors of computers concerning, any financial, advertising, marketing, promotional, training or technical support or payments by AMD or INTEL to you in connection with the purchase and/or resale of computer systems containing AMD or INTEL microprocessors.

## RESPONSE TO DOCUMENT REQUEST NO. 16:

Fry's incorporates each of its general objections. Fry's further objects on the grounds that the demand: (i) is unintelligible; (ii) is overbroad and unduly burdensome; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence; (iv) seeks confidential and proprietary business information; (v) is harassing and oppressive; (vi) seeks trade secret information; (vii) is grossly compound; (viii) is vague and ambiguous in its entirety; (ix) seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.

## DOCUMENT REQUEST NO. 17:

All DOCUMENTS constituting, reflecting or discussing communications with

- 12 -

1  AMD or INTEL concerning the above-captioned matter, *AMD v. Intel*, Civil Action No. 05-441
2  (D. Del.), or any of the allegations about you in AMD's Complaint in that matter, or any other
3  litigation involving AMD and INTEL, or any investigation relating to INTEL by the Fair Trade
4  Commission of Japan or the European Commission.

5  **RESPONSE TO DOCUMENT REQUEST NO. 17:**

6      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the
7  demand: (i) seeks documents protected from disclosure by the attorney-client privilege and attorney
8  work product doctrine; (ii) is unintelligible; (iii) is compound; (iv) seeks information that is neither
9  relevant nor likely to lead to the discovery of admissible evidence; (v) seeks confidential and
10  proprietary business information; (vi) is harassing and oppressive; (vii) seeks trade secret information;
11  (viii) seeks information equally available to requesting party.

12

13  **DOCUMENT REQUEST NO. 18:**

14      DOCUMENTS sufficient to show the zip code and store number of all your retail locations.

15  **RESPONSE TO DOCUMENT REQUEST NO. 18:**

16      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the
17  demand: (i) seeks public information equally available to the requesting party; (ii) is improper as to
18  form; (iii) seeks information that is neither relevant nor likely to lead to the discovery of admissible
19  evidence; (iv) seeks a compilation or summary.

20

21  **DOCUMENT REQUEST NO. 19:**

22      All DOCUMENTS sufficient to show the steps taken by your COMPANY to preserve
23  DOCUMENTS with respect to this litigation or related litigation or proceeding including, without
24  limitation, all DOCUMENTS that constitute, reflect or discuss your COMPANY'S DOCUMENT
25  retention policy or policies from January 1, 2000 to the present.

26  **RESPONSE TO DOCUMENT REQUEST NO. 19:**

27      Fry's incorporates each of its general objections. Fry's further objects on the grounds that the
28  demand: (i) seeks documents protected from disclosure by the attorney-client privilege and attorney

- 13 -

1  work product doctrine; (x) seeks an improper compilation or summary; (iii) is overbroad and unduly

2  burdensome; (iv) seeks information that is neither relevant nor likely to lead to the discovery of

3  admissible evidence; (v) seeks confidential and proprietary business information; (vi) is harassing and

4  oppressive; (vii) seeks trade secret information; (viii) is compound; (ix) is vague and ambiguous.

5

6  DATED: July 7, 2006

7                                                          FRY'S ELECTRONICS, INC.

8

9                                        By: _____

10                                              Brian D. Henri
                                               Legal Counsel

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 14 -

1  Case Name:   Phil Paul, et al. v. Intel Corp.
2  Case Number: USDC - District of Delaware-Proceeding No.: 05-485-JJF

3

4                  PROOF OF SERVICE BY OVERNIGHT COURIER

5        I, the under signed, declare and state that I am over 18 years of age, employed in the City of

6  San Jose, County of Santa Clara, California, and not a party to this action.  My business address is

7  600 E. Brokaw Road, San Jose, CA 95112.  I am readily familiar with my employer's business

8  practice for collection and processing of correspondence for mailing with the United States Postal

   Service.

9        On July 7, 2006, at my place of business following ordinary business practice, I served

10 **NON-PARTY FRY'S ELECTRONICS, INC.'S OBJECTIONS TO PHIL PAUL**

11 **SUBPOENA** by placing a true and correct copy thereof in a sealed envelope(s) and depositing such

12 envelope(s) in a box or other facility regularly maintained by **Golden State Overnight Delivery** an

13 express service carrier providing overnight delivery, or delivering it to an authorized courier or driver

14 authorized by the express service carrier to receive document, in an envelope or package designated

15 by the express service carrier, with overnight delivery fees paid or provided for, clearly labeled to

16 identify the person being served at the address indicated below:

17 R. Alexander Saveri, Esq.
   SAVERI & SAVERI, INC.
18 111 Pine Street, Suite 1700
   San Francisco, California 94111
19

20       I declare under penalty of perjury that the forgoing is true and correct.

21

22 DATED: 7/7/06                                    STEVEN DELANEY
23

24

25

26

27

28

        PROOF OF SERVICE - OVERNIGHT COURIER - NON-PARTY FRY'S ELECTRONICS, INC.'S
                          OBJECTIONS TO PHIL PAUL SUBPOEN

EXHIBIT 4

# PRICKETT, JONES & ELLIOTT
A PROFESSIONAL ASSOCIATION

**1310 KING STREET, BOX 1328**

**WILMINGTON, DELAWARE 19899**

TEL: (302) 888-6500

FAX: (302) 658-8111

http://www.prickett.com

Writer's Direct Dial:
(302)888-6509
Writer's Telecopy Number:
(302)888-6333
Writer's E-Mail Address:
JLHolzman@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

March 29, 2007

The Honorable Vincent J. Poppiti                    **VIA eFILING AND HAND DELIVERY**
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 N. Market Street
Wilmington, DE  19801-4226

> Re:   DM No. _____
>       *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717-JJF;
>       *Advanced Micro Devices, Inc., et al. v. Intel Corp., et al.*, C.A. No. 05-441-JJF;
>       *Phil Paul v. Intel Corp.*, Consolidated C.A. No. 05-485-JJF

Dear Judge Poppiti:

Class Plaintiffs submit this letter brief in support of their request to compel Fry's Electronics, Inc. ("Fry's") to produce transactional data in response to the subpoena issued over nine months ago, on June 23, 2006. *See* Fry's Electronics Subpoena, D.I. 206 in MDL No. 05-1717, attached hereto as Exhibit 1.[1] Class Plaintiffs, AMD and Intel have each subpoenaed Fry's for electronic records of its transactions in buying computers containing x86 microprocessors and re-selling those same computers. These data are maintained by Fry's in one or more databases, and are directly relevant to Class Plaintiffs' proof of damages, the certifiability of the putative class, and the anticompetitive effect of Intel's challenged conduct. Prompt production of the data is important to maintain the current class certification briefing schedule.

Class Plaintiffs respectfully request entry of an Order that compels Fry's to produce within three weeks the subpoenaed transactional data, or any subset thereof negotiated by Fry's and the parties, under terms to be negotiated by Fry's and the parties.

Pursuant to Local Rule 7.1.1, and as detailed below, we have conferred with Fry's at length in an effort to resolve this dispute. The protracted negotiations with Fry's, however, have gone nowhere. Unlike any of the other eight retailers subpoenaed by Class Plaintiffs for their transactional data, Fry's has steadfastly clung to the position that it should not have to produce transactional data *at all*.[2] Thus, this dispute is *not* about the scope or terms of Fry's production; this

---

[1] The subpoena requires Fry's to produce documents in addition to data. This motion pertains only to Fry's failure to produce data, which, unlike Fry's documents, need to be produced soon because of their relevance to the upcoming class certification motion.

[2] The correspondence and exchanges referred to herein are detailed in the Certification of Richard M. Volin, Esq. ("Volin Cert."), which is attached hereto as Exhibit 2. Fry's February 9, 2007 letter is filed under seal because Fry's designated the document confidential under the Confidentiality Agreement and Protective Order ("Protective Order") entered in this litigation on September 26, 2006.

The Honorable Vincent J. Poppiti
March 29, 2007
Page 2

is a dispute about whether Fry's should have to produce *any* data.[3] Fry's should be compelled to comply with its obligations under Federal Rule of Civil Procedure 45[4] and produce its data within three weeks, with the details of the production to be determined through good faith negotiations.

## 1.    Fry's Transactional Data Are Clearly Relevant

Class Plaintiffs' First Amended Consolidated Complaint ("FACC," D.I. 108 in MD-05-1717) alleges that as a result of Intel's unlawful monopolization of the world-wide x86 microprocessor market, it was able to charge computer manufacturers, retailers and distributors supra-competitive prices for x86 microprocessors. FACC ¶ 242. Class Plaintiffs further allege that these overcharges were passed on to end users, who are the members of the putative class and who seek damages for the overcharges they paid. *Id.* ¶ 245. Thus, as an essential element of their damages claim, Class Plaintiffs must prove that the overcharges paid by Intel's customers were passed on to them.

Proof of pass-on primarily involves a statistical showing that higher costs paid by intermediaries in the chain of distribution result in higher prices charged to end users. *See Romero v. Philip Morris Inc.*, 137 N.M. 229, 234 (N.M. Ct. App. 2005) (describing the use of data from retailers and others to determine the extent of overcharges passed on to consumers). In this case, therefore, Class Plaintiffs need to know, for an appropriate sample of re-sellers, the prices they paid for Intel's x86 chips or for computers containing those chips, and the prices at which they re-sold those same products. Fry's is a large retailer of computers, including computers with Intel chips, with 33 stores in nine states. *See http://www.frys-electronics-ads.com/frys-store-location.htm.* The company is part of the sample of re-sellers that Class Plaintiffs, with the assistance of their experts, selected to obtain an appropriate collection of data with which to conduct their pass-on analysis.

The pass-on issue does not apply only to proof of damages. Intel may argue in opposition to class certification that Class Plaintiffs will not be able to prove pass-on as part of a classwide damages formula. *See In re S.D. Microsoft Antitrust Litig.*, 657 N.W.2d 668, 677 (S.D. 2003) (discussing conflicting expert testimony on this issue). Thus, Class Plaintiffs seek re-seller transactional data because such data may be an important part of rebutting this argument, and they

---

[3] To be sure, Fry's has also raised issues that go to the scope and terms of production, but the parties have not sufficiently negotiated those yet, given Fry's other objections, which deny the need to produce data at all. If the Court were to grant the relief sought herein, the parties would engage in good faith negotiations with Fry's to work out the details of its production.

[4] "The non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45, advisory committee's notes to 1991 amendment. A court addressing a discovery dispute arising from a document subpoena should refer to the Rules set forth in Fed. R. Civ. P. 26-37. *In re Wagar*, No. 1:06-MC-127, 2006 WL 3699544, at *5 (N.D.N.Y. Dec. 13, 2006). A request for production submitted to a non-party thus meets the standard of relevance so long as it seeks documents "relevant to the claim or defense of any party" or if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002).

The Honorable Vincent J. Poppiti
March 29, 2007
Page 3

seek prompt production of the data because class briefing begins in a few months. Transactional data are also relevant to proving that Intel's challenged conduct was anticompetitive, i.e., that it caused consumers to be worse off through higher prices or otherwise. *See LePage's, Inc. v. 3M*, 324 F.3d 141, 163 (3d Cir. 2003). Demonstrating that consumers paid higher prices for x86 computers as a result of Intel's anticompetitive behavior is one way to make this showing.

Fry's has never denied the relevance of transactional data to this case. Instead, Fry's asserts only that *its* data are unnecessary because other subpoenaed entities may possess similar data. *See* Volin Cert. ¶¶ 9, 12 and Exhibits G, J thereto. However, as Class Plaintiffs repeatedly explained to Fry's, any overlap in subpoenaed data would not relieve Fry's of its discovery obligations. First, it is *not* the case that Fry's data completely or exactly duplicate another actual or potential data production. At most, Fry's data could *partially* overlap with other producing parties' data. Fry's is the *only* practical source of data regarding its computer sales – the parties obviously cannot subpoena thousands or millions of consumers (even assuming they could be identified and located). As to its computer purchases, Fry's data are unique to the extent it purchased from a non-subpoenaed computer manufacturer or from any subpoenaed computer manufacturer that sells to Fry's but, for whatever reason, does not produce its sales data in this case or has gaps in that data. Moreover, Fry's purchase data are important even to the extent they might overlap data produced by one of its suppliers. Fry's data may be more robust and in all events would serve as a check on the accuracy of the other data, and vice versa. Furthermore, the mere potential for overlap cannot be a basis for refusing to produce data because otherwise *both* producing entities could refuse production on that basis, leaving the parties with no source of the data. The possibility of partially overlapping data simply cannot justify Fry's refusal to produce its data.

## 2.    Fry's Transactional Data Will Be Safeguarded by the Protective Order

Fry's also refuses to produce its data on that ground that they constitute trade secrets. *See* Volin Cert. ¶¶ 9, 12. However, the data will be appropriately safeguarded by the Protective Order, which protects the confidentiality of discovery materials produced in this litigation by parties and non-parties alike. The Protective Order by its terms affords "the full benefits and protections" to third parties, who are entitled to "designate documents or deposition testimony as Confidential Discovery Material." *See* Protective Order ¶ 15.

Remarkably, Fry's denies that the Protective Order's protections apply to it. Even were this true – which it clearly is not – that would be no reason to refuse to comply with the subpoena. The parties certainly could work out an appropriate protective order or agreement with Fry's if that were necessary – but it is not. As noted above, the Protective Order fully applies to third parties. Fry's actions, as opposed to its position in negotiations, acknowledge as much. Fry's participated in the proceedings in this Court that led to the entry of the Protective Order, including filing an extensive set of objections and comments to the parties' proposed form of protective order. *See* Objections and Comments of Third Party Fry's Electronics, Inc. to the [Proposed] Protective Order, attached hereto as Exhibit 3; Volin Cert. ¶ 9. In addition, ironically, Fry's designated its February 9, 2007 letter to Class Plaintiffs' counsel (*see* Volin Cert. ¶ 9 and Exhibit G thereto) as "'Attorneys' Eyes Only' *Pursuant to Protective Order in the Below-Mentioned Matter*." (Emphasis added.) As Fry's

The Honorable Vincent J. Poppiti
March 29, 2007
Page 4

itself knows, the Protective Order applies to its data and will more than adequately protect any confidential information therein.

In a related argument, Fry's challenges this Court's authority to enforce the subpoena, which was issued out of the Northern District of California. *See* Volin Cert. ¶ 12. This argument, however, conflicts with several cases holding that the multidistrict litigation statute (28 U.S.C. § 1407) authorizes the transferee court to enforce subpoenas issued by other federal district courts. *See Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F.Supp.2d 270, 275-76 (D.D.C.2002) (§1407 authorizes MDL transferee judge to enforce subpoena issued by another district court); *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 174 F.R.D. 412 (N.D. Ill. 1997) (§ 1407 authorizes transferee court to rule on motion to compel compliance with subpoena issued by another district court); *In re Sunrise Sec. Litig.*, 130 F.R.D. 560 (E.D. Pa. 1989) (transferee court may exercise power of court issuing subpoena). This Court has jurisdiction over this dispute.

### 3.  The Parties Have Offered to Narrow Their Data Requests to Ease Fry's Burden

Fry's makes vague assertions about excessive burden of producing the requested data and claims that the parties have "refused . . . to limit their requests in any meaningful manner." *Id.*  To the contrary, the parties have twice offered to limit the scope of Fry's production (*see* Volin Cert. ¶¶ 7, 10 and Exhibits E, H thereto) and have asked Fry's for preliminary information, such as a sample data set, which should then allow the parties to further narrow their data request (*see* Volin Cert. ¶¶ 2, 10, 13 and Exhibits B, H, K thereto). But Fry's has been unwilling to negotiate the scope of its production or provide the preliminary information. Class Plaintiffs are prepared to accommodate any true burden concerns Fry's may have, but can do so only if Fry's will participate in and facilitate that dialogue in good faith. As noted above, Class Plaintiffs believe that compelling Fry's to produce its data in three weeks will have the salutary effect of making Fry's an active and willing partner in those discussions.

### 4.  Conclusion

Despite extensive efforts to negotiate a data production from Fry's, the company continues to resist making any production at all, based on grounds that are wholly without merit. Fry's appears stuck in objection mode. Class Plaintiffs believe that an order compelling Fry's to produce its data in three weeks will bring the company to the negotiating table in good faith, so that the details of the production can worked out promptly.

Respectfully submitted,

James L. Holzman (DE Bar ID # 663)
*Interim Liaison Counsel for the Class Plaintiffs*

JLH/sam
Enclosures

The Honorable Vincent J. Poppiti
March 29, 2007
Page 5


cc:    Clerk of the Court (By electronic filing and hand delivery)
       Richard L. Horwitz, Esquire (By electronic filing and hand delivery)
       Frederick L. Cottrell, III, Esquire (By electronic filing and hand delivery)
       Brian D. Henri, Esquire (By email and overnight delivery)

EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | ) ) ) ) | MDL Docket No. 05-1717 (JJF) |
| | ) | |
| PHIL PAUL, on behalf of himself and all<br>others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-485 (JJF) |
| INTEL CORPORATION, | ) ) | CONSOLIDATED |
| Defendant. | ) ) ) | |

## LETTER TO SPECIAL MASTER VINCENT J. POPPITI
## FROM MARY B. GRAHAM

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Third Party Fry's Electronics, Inc.*

*OF COUNSEL:*

Robert W. Stone
Michael D. Powell
Quinn Emanuel Urquhart Oliver
& Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
650.801.5000

April 17, 2007

Dear Judge Poppiti:

Fry's Electronics, Inc. ("Fry's") submits this letter in response to the March 29, 2007, motion to compel ("Motion") filed by the Class Plaintiffs.[1] Initially it should be noted that Fry's objects to the motion on the grounds that Class Plaintiffs fail to identify with reasonable particularity the "transactional data" which they seek to compel. Indeed, *nowhere in the Motion do Class Plaintiffs identify the specific requests for which they seek to compel production.* Nor do they specifically address Fry's written objections, which are attached as Exhibit A to the Declaration of Michael D. Powell ("Powell Decl."). Moreover, on the one hand Class Plaintiffs argue that Fry's should be compelled to produce unidentified transactional data within three weeks. Motion at 1. On the other hand, Class Plaintiffs state that "this dispute is not about the scope or terms of Fry's production; this dispute is about whether Fry's should have to produce any data." Motion at 1-2. Furthermore, Class Plaintiffs state: "To be sure, Fry's has also raised issues that go to the scope and terms of the production, but the parties have not sufficiently negotiated those yet, given Fry's other objections which deny the need to produce any data at all. If the Court were to grant the relief sought herein, the parties would engage in good faith negotiations with Fry's to work out the details of its production."[2] Motion n.3. Thus, Fry's is at a loss as to exactly what Class Plaintiffs' Motion seeks to compel.

## I.    **INTRODUCTION.**

Class Plaintiffs apparently seek to compel Fry's, a non-party to the litigation and a privately held company, to comply with a subpoena seeking production of highly confidential and sensitive trade-secret information concerning every single transaction – which number in the millions -- involving computer systems with AMD or Intel chips sold at Fry's since January, 2000. The Motion should be denied for at least three reasons. First, Class Plaintiffs did not adequately meet and confer and their Motion is based upon arguments which were never raised in the meet-and-confer discussions. Second, the information and data requested are trade secrets, and Plaintiffs' cannot demonstrate the required substantial need for the information sufficient to compel its production. Third, the requests are grossly overbroad and unduly burdensome.

---

[1]    Fry's respectfully submits that this Court does not have the power to enforce the documents-only subpoena which issued out of the Northern District of California and is therefore governed by the laws of that district. *See Visx, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002) (holding that 28 U.S.C. § 1407(b) grants the transferee court (in multidistrict litigation) the power to enforce a pre-trial deposition subpoena but not a documents-only subpoena, and criticizing the cases relied upon by Class Plaintiffs). Accordingly, Fry's requests that this Court deny Class Plaintiffs' motion to compel without prejudice to their seeking relief in the N.D. Cal.

[2]    As mentioned below, Fry's has never stated that it would not produce any information.

## II.    CLASS PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY FAILED TO ADEQUATELY MEET AND CONFER AND FAILED TO COMPLY WITH THE COURT ORDERED DEADLINE.

This Court set a deadline of February 21, 2007, for the parties to complete negotiations regarding the production of transaction data from third parties. Yet Class Plaintiffs inexcusably failed to do so. Indeed, Class Plaintiffs candidly admit that, despite the Court's deadline, "the scope and terms of the production . . . have not sufficiently [been] negotiated [by the parties]. . ." Motion n.3.

Class Plaintiffs inaccurately represent the meet-and-confer discussions, and their Motion is based extensively upon arguments that they failed to raise prior to filing the Motion. For example, Class Plaintiffs argue that, "Fry's has never denied the relevance of the transactional data to this case." Motion at 3. Not so. In fact, the opposite is true: Class Plaintiffs refused to explain the relevance of the requested transactional data despite Fry's repeated requests, because they said they did not want to "tip their hand to Intel." Henri Decl. ¶ 2. Indeed, Class Plaintiffs argue that production of unspecified transactional data from Fry's is necessary so that they may prove "pass-on as part of a classwide (sic) damages formula" and that "Intel's challenged conduct was anticompetitive". Motion at 2-3. *Yet Class Plaintiffs failed to raise either of these arguments with Fry's in the meet and confer prior to filing the Motion.* Henri Decl. ¶ 3. Because Class Plaintiffs did not raise these issues prior to the Motion, the Motion is obviously premature and the Court should not consider these arguments.

In addition, Class Plaintiffs refused to identify during the meet and confer discussions any class representative that purchased products at Fry's and have consistently refused to state if and how they would pay for the production. Henri Decl. ¶¶ 4-5. To the contrary, prior to the meet and confer discussions with the parties regarding the subpoenas, Class Plaintiffs wrote Fry's and informed it *that they would not seek or pay for the production of any documents.* Powell Decl. Ex. B. Despite this waiver, Class Plaintiffs now argue that "[t]he subpoena requires Fry's produce documents in addition to data." Motion n.1.

Furthermore, Class Plaintiffs inaccurately represent that " . . . Fry's has steadfastly clung to the position that it should not have to produce transactional data *at all*." Motion at 1. Fry's has never made such a representation. Rather, Fry's has spent considerable time trying to narrow the focus and scope of the requested transactional information. Moreover, Fry's informed the parties that unlike many other retailers, its database is a proprietary system which has taken Fry's years and thousands of man hours to develop and hone. Payne Declaration ¶ 2. As such, it is a closely guarded trade secret and Fry's will not produce its proprietary database. *Id.* ¶¶ 3-4. Along those lines, Fry's has offered to produce a sample set of the requested information in spreadsheet form provided that the Court enter a modified protective order to protect the disclosure of Fry's most sensitive information to anyone other than outside counsel and that Fry's be given the opportunity to object to the disclosure of the information to expert witnesses prior to its disclosure to them. Powell Decl. ¶¶ 6-13 (Exs. C-E). Class Plaintiffs have refused, however, to engage in discussions regarding the scope of the requested information unless Fry's were to reconsider its request to modify the protective order entered by the Court. Powell Decl., Exs. K & L.

2

## III. CLASS PLAINTIFFS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING A "PARTICULARIZED" NEED FOR THE REQUESTED TRADE-SECRET INFORMATION THAT OUTWEIGHS THE POTENTIAL BURDEN AND HARM OF THE PRODUCTION.

Class Plaintiffs do not dispute that the "transactional data" sought in their Motion is trade secret information.[3]  When, as here, a non-party objects to the disclosure of information that is trade secret, confidential, and protected by the right of privacy, the law is clear that the burden shifts to the requesting party to make a "particularized showing" that the "confidential information is relevant and necessary to its case." *In re Indep. Serv. Orgs. Antitrust Litig.*, 162 F.R.D. 355, 358 (D. Kan. 1995) ("Close examination of Xerox's arguments as to need reveal primarily supposition, rather than a particularized showing of substantial need."). Furthermore, "even if the information sought is relevant, discovery [from a nonparty] is *not* allowed where no need is shown or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (emphasis added); *accord Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980). Here, Class Plaintiffs do not come close to meeting the legal requirements for compelling production of the requested trade secret information. Instead, Class Plaintiffs incorrectly argue that all they need to show to compel production is that the requested information "is relevant to the claim or defense of a party" or "appears reasonably calculated to lead to the discovery of admissible evidence." Motion n.4.

### A. Class Plaintiffs Fail To Demonstrate A Particularized Need for The Requested Trade-Secret Information.

Class Plaintiffs have failed to make the required "particularized showing of substantial need" for the requested trade-secret information.  In fact, as discussed above, Class Plaintiffs fail to identify with any particularity the "transactional data" which they seek to compel.  Moreover, Plaintiffs' argument concerning the immediate need for the requested information is easily refuted.

Class Plaintiffs seek to put the cart before the horse.  Class Plaintiffs argue that they need the transactional data to prove "an essential element of their damages claim." Motion at 2.  In so arguing, Class Plaintiffs seek to skip several steps in the discovery and litigation of this case.  It is axiomatic that plaintiffs must first certify a class before they can begin merits discovery. *See Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 177-78 (1974) (holding "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action . . ." and that "such a procedure contravenes the Rule by allowing a representative plaintiff

---

[3]  Class Plaintiffs do not dispute that Fry's transactional data constitutes a "trade secret." *See*, Motion at 3.  Indeed, as set forth in the Declarations of Rajesh Seth and Jerry Payne, Fry's takes substantial measures to ensure the secrecy of its pricing information, inventories, marketing incentives, and profit margins.  Furthermore, it is axiomatic that such information is trade secret. *See e.g., Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278 (1990); *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244 (3d Cir. 1985).

3

to secure the benefits of a class action without first satisfying the requirements for it"). Certainly this precept is especially warranted with respect to non-party discovery. Thus, the discovery sought from Fry's is premature.

Class Plaintiffs cite *In re South Dakota Microsoft Antitrust Litigation* ("*In re SDMAL*") 657 N.W.2d 668, 676 (S.D. 2003) and argue that the requested information is necessary for class certification briefing. Motion at 2. This case, however, stands for the opposite position. Specifically, the *In re SDMAL* Court held that class plaintiffs "must advance a method for determining generalized damages on a class-wide basis" and ruled that all that is required at the class certification stage is "a reasonable basis for measuring the loss." *Id.* at 674-75. The Court found that this standard is satisfied even where the testifying experts have no empirical evidence and are merely proposing a methodology to use for determining class-wide damages once the empirical data becomes available through discovery **after the class is certified.** *Id.* at 676-77; *see also Romero v. Phillip Morris Inc.*, 137 N.M. 229, 231 (Ct. App. N.M. 2005) ("[P]laintiffs were not required to show that every single member of the class was injured").[4]

## B.    The Requested "Transactional Data" Is Grossly Overbroad and Duplicative.

As mentioned above, "even if the information sought is relevant, discovery [from a nonparty] is *not* allowed where no need is shown or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *Mannington Mills*, 206 F.R.D. at 529 (emphasis added). Here, Plaintiffs concede that much of the information they seek is duplicative of information sought from the parties and other third parties. Motion at 3. Specifically, Class Plaintiffs' subpoena seeks information such as Fry's purchase orders which is also being sought from the manufacturers. Likewise, Class Plaintiffs' subpoena seeks to obtain the marketing funds that Fry's received from Intel and AMD. Because Class Plaintiffs acknowledge that they are receiving such information from others, there is no need to put Fry's through the burden of also producing this information.

Furthermore, Class Plaintiffs' subpoena seeks to have Fry's produce information in several different fields on a monthly aggregate basis. *See*, Subpoena requests Nos. 7 and 8 (Volin Decl. Ex. 1). However, as set forth in the declarations of Rajesh Seth and Jerry Payne, Fry's does not maintain the requested information in the form Class Plaintiffs seek in its normal and ordinary course of business. Seth Decl. ¶¶ 7-8; Payne Decl. ¶¶ 5-10. Thus, to comply with the subpoena Fry's would have to create new documents and summaries of information that would be incredibly time consuming. Payne Decl. ¶¶ 5-8. To the extent Fry's is ordered to produce empirical data, Fry's submits that the data should be limited to a statistically relevant sample of transactional data rather than seven years of data in its entirety. Class Plaintiffs acknowledge in their Motion that not all transaction data from every putative class member is required for proof of pass-on, noting that they are seeking data from only a "sample of re-sellers." Motion at 2 ("[Fry's] is part of the sample of re-sellers that Class Plaintiffs, with the assistance of their experts, selected in order to obtain an appropriate collection of data with which to conduct their

---

[4]    Class Plaintiffs also cite *LePage's Incorporated v. 3M*, 324 F.3d 141 (3rd Cir. 2003). However, this case does not seem to have any bearing on the issues before this Court.

pass-on analysis."). Class Plaintiffs have made no showing as to why a sampling of transactional data is not sufficient to meet their burden of proof at the class certification stage.[5] It is undisputed that the production Class Plaintiffs seek would cover thousands of different products, from a number of different manufacturers, and includes millions of transactions. Seth Decl. ¶¶ 2-3. Moreover, there is simply no way for Fry's to obtain individual transaction data without going invoice by invoice. Payne Decl. ¶ 9. Such a process would take thousands of man hours and entail the production of millions of pages of documents. Payne Decl. ¶ 10. Given that Class Plaintiffs have unequivocally stated that they refuse to pay for any documents, their Motion must be denied.

### C.     Fry's Is Entitled To Additional Safeguards For Its Data.

Even assuming Class Plaintiffs had met their burden of showing substantial need, the Court must weigh the need against the potential for competitive harm to Fry's. *See e.g., Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533 (M.D. Fla. 2003). Class Plaintiffs seek production of Fry's most sensitive commercial information including the price it pays manufacturers for the computer systems it then resells to consumers. The consumer computer market is extremely competitive with low margins. If Fry's profit-margin, cost-of-goods-sold and other data were publicly disseminated, Fry's would lose its most critical competitive advantage -- its bargained-for acquisition pricing -- as each of its competitors would immediately demand each computer manufacturer to sell its systems to them at prices on par with those paid by Fry's. Seth Decl. ¶5. Moreover, if Fry's were compelled to produce information about the marketing development funds and other incentives it receives from Intel and AMD, Intel may learn of AMD's incentive programs and vice versa, thereby allowing one or the other to bargain for tighter incentives based on what its competitor is paying. *Id.* ¶ 6. Because the current protective order permits in-house counsel at Intel and AMD to access materials designated "Confidential," there is a legitimate risk of such disclosure.

Therefore, should the Court be inclined to compel Fry's to produce all or a statistical sampling of its transactional data or other confidential, proprietary or trade secret information, Fry's is entitled to additional safeguards through a modification of the current Confidentiality Agreement and Protective Order. *See e.g., Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*, 2006 U.S. Dist. LEXIS 81000 (E.D. Mo.) (recognizing that status of a person as a nonparty is a factor that weighs against disclosure and is grounds for additional protection for its confidential information even where another party has sought similar protections on the nonparty's behalf which were denied); *In re Indep. Serv. Orgs. Antitrust Litig.*, 162 F.R.D. 355 (D. Kan. 1995) (granting party's request for supplemental protective order to modify existing protective order in order to exclude another party's in-house counsel from accessing materials designated highly confidential). Here, as in *Bancorp*, the Court should order that an Attorney's Eyes Only designation be used with

---

[5]     In fact, Fry's has learned that other non-parties are currently negotiating for production of a sampling of transaction data as opposed to the full six-plus years requested in the subpoenas. Powell Decl., Ex. M. Class Plaintiffs had incorrectly told Fry's that no non-parties had even requested to produce a sampling of the data. *Id.*

sensitive third-party information. *Id.* at *8 ("[E]xisting protective order . . . does not provide for an 'Attorney's Eyes Only' designation.").[6]

## IV.    CONCLUSION

For the foregoing reasons, Fry's respectfully asks that the Court deny Class Plaintiffs' Motion or, alternatively, enter a modified protective order as proposed by Fry's and permit the parties a further opportunity to meet and confer concerning the scope of Fry's production. In the event the Court compels production of any documents, Class Plaintiffs should be ordered to pay the reasonable out-of-pocket expenses incurred by Fry's in collecting and producing those materials.[7]

Respectfully,

*Mary B. Graham*

Mary B. Graham (#2256)

MBG/dam
cc:   Clerk of the Court (via e-filing and hand delivery)
       J. Clayton Athey (via e-mail)
       David R. Dube (via e-mail)
       Mary Levan (via e-mail)
       Carrie David (via e-mail)

802538

---

[6]   To assist the Court, Fry's has submitted its proposed modifications to the protective order with this letter. Ex. E. Incidentally, the sample protective order provided by N.D. Cal., which district's law governs this motion, is a two-tiered protective order of the type requested by Fry's. Ex. F. Moreover, Judge Joseph Farnan routinely adopts multi-tiered protective orders for use in litigation. Exs. G-J.

[7]   Fry's reserves its rights to seek reimbursement for all expenses reasonably incurred in connection with the identification, collection and production of such materials.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 17, 2007, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on April 17, 2007 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE 19801-4226

**VIA E-MAIL:**

Vincent J. Poppiti
BLANK ROME LLP
**poppiti@blankrome.com**

WITH A COPY TO:

David R. Dube
BLANK ROME LLP
**dube@blankrome.com**

Mary Levan
BLANK ROME LLP
**levan@blankrome.com**

Carrie David
BLANK ROME LLP
**david-c@blankrome.com**

**VIA E-MAIL:**

J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A.
**jcathey@prickett.com**

*/s/ Mary B. Graham*

———————————————————
Mary B. Graham (#2256)

802096