IN THE UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | MDL No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>INTEL CORPORATION,<br><br>                              Defendant. | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

**DEFENDANT INTEL CORPORATION'S OPPOSITION TO PLAINTIFFS' RULE 53(g)
OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION
COMPELLING PRODUCTION OF CLASS PLAINTIFFS' FINANCIAL DOCUMENTS**

OF COUNSEL:

David M. Balabanian
James L. Hunt
Christopher B. Hockett
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
(415) 393-2000

Richard A. Ripley
Gregory F. Wells
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C. 20006
(202) 373-6000

Dated: October 29, 2007

Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com

*Attorneys for Defendant
Intel Corporation*

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDING ................................................................. 1

II.   SUMMARY OF ARGUMENT ................................................................................... 1

III.  STATEMENT OF FACTS RELEVANT TO THIS MOTION ......................................... 3

IV.   ARGUMENT ......................................................................................................... 4

    A.    The Court Should Reject Plaintiffs' New "Evidence" ........................................... 4

    B.    Special Master Poppiti Properly Concluded that Plaintiffs' Financial
          Documents Are Relevant and Discoverable ........................................................ 6

    C.    Plaintiffs' Objections to Special Master's Poppiti's Recommendation Lack
          Merit .................................................................................................................. 8

          1.    Plaintiffs' Failure to Disclose the Actual Terms of Their Fee
                Arrangements Dooms Their Objections ..................................................... 8

          2.    The Hypothetical Fee Arrangements Plaintiffs Describe Would
                Not Render Their Financial Status Irrelevant ......................................... 10

          3.    The Court's Decision in *ML-Lee* Is Consistent with Rule
                23(g)(1)(B) ............................................................................................... 12

          4.    Plaintiffs' Tax Returns Are Not Privileged ............................................ 14

V.    CONCLUSION ..................................................................................................... 18

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aliotti v. The Vessel Senora,*
    217 F.R.D. 496 (N.D. Cal. 2003) ................................................................... 17

*Apanewicz v. General Motors Corp.,*
    80 F.R.D. 672 (E.D.Pa. 1978) ......................................................................... 7

*Blake v. Chemlawn Servs. Corp.,*
    Civ. A. No. 86-3413, 1988 WL 6151 (E.D. Pa. Jan. 26, 1988) .................. 7, 8

*Bogosian v. Gulf Oil Corp.,*
    337 F. Supp. 1228 (E.D. Pa. 1971) ................................................................. 7

*Bujnicki v. American Paving & Excavating, Inc.,*
    No. 99-CV-0646S (SR), 2004 WL 1071736 (W.D.N.Y. Feb. 25, 2004) ......... 17

*Campinas Foundation v. Simoni,*
    No. 02 Civ. 3965BSJKNF, 2005 WL 1006511 (S.D.N.Y. April 27, 2005) ...... 17

*Commissariat A L'Energie Atomique v. Samsung Electronics Co.,*
    C.A. No. 03-484-MPT, 2007 WL 3002975 (D. Del. Oct. 16, 2007) ............ 5, 6

*D'Aurizio v. Borough of Palisades Park,*
    899 F. Supp. 1352 (D.N.J. 1995) .................................................................. 16

*Davis v. Leal,*
    43 F. Supp.2d 1102 (E.D. Cal. 1999) ............................................................ 15

*Doe v. Special Investigations Agency, Inc.,*
    779 F. Supp. 21 (E.D. Pa. 1991) .................................................................... 16

*F.D.I.C. v. Fidelity & Deposit Co. of Maryland,*
    196 F.R.D. 375 (S.D. Cal. 2000) .................................................................. 15

*Ferraro v. General Motors Corp.,*
    105 F.R.D. 429 (D.N.J. 1986) ......................................................................... 9

*Fort Washington Resources, Inc. v. Tannen,*
    153 F.R.D. 78 (E.D. Pa. 1994) ...................................................................... 17

*Gattegno v. PricewaterhouseCoopers LLC,*
    205 F.R.D. 70 (D. Conn. 2001) ..................................................................... 17

ii

TABLE OF AUTHORITIES
(Cont'd)

Page(s)

*Heathman v. United States Dist. Court*,
  503 F.2d 1032 (9th Cir. 1974) ...................................................................14

*In re "Agent Orange" Prod. Liab. Litig.*,
  800 F.2d 14 (2d Cir. 1986)........................................................................13

*In re Initial Public Offering Sec. Litig.*,
  174 F. Supp.2d 61 (S.D.N.Y. 2001).............................................................6

*Mascol v. E&L Transp., Inc.*,
  No. CV-03-3343 CPS, 2005 WL 1541045, *6 (E.D.N.Y. June 29, 2005)...................8, 13

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995)......................................................................13

*ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts)
II, L.P. Sec. Litig.*,
  149 F.R.D. 506 (D. Del. 1993) .............................................................. *passim*

*North Carolina v. Rice*,
  404 U.S. 244 (1971).................................................................................10

*Packer v. Hansen*,
  No. 98-380, 1999 WL 1038343 (E.D. Pa. Nov. 12, 1999) .........................................15, 17

*P.D.Q., Inc. of Miami v. Nissan Motor Corp.*,
  61 F.R.D. 372 (S.D. Fla. 1973)....................................................................7

*Pearson v. Miller*,
  211 F.3d 57 (3d Cir. 2000)........................................................................16

*Playboy Enters., Inc. v. Welles*,
  60 F. Supp.2d 1050 (S.D. Cal. 1999)............................................................15

*Poulos v. Naas Foods, Inc.*,
  959 F.2d 69 (7th Cir. 1992) ......................................................................14

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*,
  511 F.2d 225 (9th Cir. 1975) .....................................................................14

*Ralston v. Volkswagenwerk, A.G.*,
  61 F.R.D. 427 (W.D. Mo. 1973)....................................................................7

## TABLE OF AUTHORITIES
### (Cont'd)

Page(s)

*Riley v. City of Chester,*
    612 F.2d 708 (3d Cir. 1979)...........................................................................16

*Rode v. Emery Air Freight Corp.,*
    76 F.R.D. 229 (W.D. Pa. 1977) ......................................................................7

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.,*
    136 F.R.D. 658 (D. Or. 1991)..........................................................................7

*Sanderson v. Winner,*
    507 F.2d 477 (10th Cir. 1974) ........................................................................8

*Schnabel v. Superior Court,*
    5 Cal.4th 704 (1993) .....................................................................................17

*St. Regis Paper Co. v. United States,*
    368 U.S. 208 ................................................................................................14

*Stabilius, A Div. of Fichtel & Sachs Indus., Inc. v. Haynsworth, Baldwin, Johnson &
Greaves,*
    144 F.R.D. 258 (E.D. Pa. 1992) ...................................................................17

*Surrick v. Killion,*
    449 F.3d 520 (3d Cir. 2006)..........................................................................10

*Taberer v. Armstrong World Industries, Inc.,*
    954 F.2d 888 (3d Cir. 1992)............................................................................5

*Terwilliger v. York Int'l Corp.,*
    176 F.R.D. 214 (W.D. Va. 1997).................................................................17

*Trudeau v. New York State Consumer Prot. Bd.,*
    237 F.R.D. 325 (N.D.N.Y. 2006) ...........................................................16, 17

*United States v. Bonnano Organized Crime Family of La Casa Nostra,*
    119 F.R.D. 625 (E.D.N.Y. 1988) .................................................................15

*United States v. Raddatz,*
    447 U.S. 667 (1980).......................................................................................5

*Walker v. Rent-A-Center, Inc.,*
    No. 5:02CV3, 2006 WL 2860553 (E.D. Tex. Oct. 3, 2006)......................7, 16

A/72271623.9

# TABLE OF AUTHORITIES
## (Cont'd)

Page(s)

*Wirebound Boxes Antitrust Litig.,*
    131 F.R.D. 578 (D. Minn. 1990)..........................................................................................7

*Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,*
    671 F.2d 100 (3d Cir. 1982)..................................................................................15, 16

*Young v. United States Dist. Court,*
    149 F.R.D. 199 (S.D. Cal. 1999) ................................................................................15

## STATUTES

28 U.S.C. § 636(b)(1)(C) .............................................................................................5

Fed.R.Civ.P. 23(a)(4)...........................................................................................*passim*

Fed.R.Civ.P. 23(g) ..............................................................................................*passim*

Fed.R.Civ.P. 23, Advisory Committee Notes, 2003 Amendments, Subdivision (g)...............12, 13

Fed.R.Civ.P. 53 ..............................................................................................1, 5

## OTHER

Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *8 Fed. Prac. & Proc. Civ. §*
    2019 (2d ed. 1994).....................................................................................................15

Restatement (Third) of Law Governing Lawyers § 14 cmt. f (2000)............................................13

v

## I.     NATURE AND STAGE OF PROCEEDING

On July 31, 2007, pursuant to the Procedures for the Handling of Discovery Disputes before Special Master, Intel Corporation ("Intel") submitted to Special Master Vincent J. Poppiti its motion to compel class plaintiffs to produce tax returns and other financial information. After full briefing and argument, on September 6, 2007, Special Master Poppiti issued a Report and Recommendation granting Intel's motion. On October 11, 2007, plaintiffs filed their Rule 53(g) Objections to the Special Master's Report and Recommendation Compelling Production of Class Plaintiffs' Financial Documents ("Objections"). Plaintiffs' Objections ask that the Court overturn the Special Master's recommendation and deny Intel's motion. Intel requests that the Court deny plaintiffs' Objections, adopt the Special Master's Report and Recommendation, and grant Intel's motion.

## II.    SUMMARY OF ARGUMENT

The law of this Court is clear: class representatives' financial capacity (and thus their financial information) is relevant to their adequacy to serve as class representatives under Federal Rule of Civil Procedure 23(a)(4). This is particularly true here, where there is a substantial alleged class with an expectation of substantial costs going forward. As they did in their opposition to Intel's motion to compel before the Special Master, plaintiffs simply reargue many of the same points that this Court specifically rejected in *ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig.*, 149 F.R.D. 506 (D. Del. 1993). There is a split of authority on the relevance and discoverability of the financial capacity of potential class representatives, with a number of courts, in cases decided both before and after *ML-Lee*, adhering to *ML-Lee*'s approach. Nothing about this case warrants a departure from this Court's well-established precedent.

If anything, this case is even more compelling than *ML-Lee*. While the plaintiffs argue here that their fee arrangements with Interim Class Counsel would protect them from coercion, they fail to provide any details of those arrangements. Instead, their Objections rely only on assertions about what their agreements *might* be. That is a fundamental failure of proof:

hypothetical fee agreements cannot properly serve as a basis for denying Intel's discovery requests. To rule otherwise would put the Court in a position of rendering an improper advisory opinion. For that reason alone, the Court should deny plaintiffs' Objections.

Moreover, even if the hypothetical fee arrangements existed, that would not render plaintiffs' financial information irrelevant. Indeed, *ML-Lee* considered and rejected most of the same arguments plaintiffs make here. As in *ML-Lee*, plaintiffs here argue that Interim Class Counsel's promises to pay costs render the class representatives' financial capacity irrelevant, and downplay concerns that Interim Class Counsel would ever attempt to coerce the class representatives by threatening to withdraw funding. However, *ML-Lee* squarely addresses those points, and decides them against the plaintiffs. The law has not changed since this Court decided *ML-Lee*,[1] and the rationale of that decision fully applies to the facts -- even the hypothetical facts presented by the plaintiffs -- of this case.

Contrary to plaintiffs' suggestion, the 2003 amendments to Rule 23 do not eliminate the possibility of coercion, nor the requirement under Rule 23(a) that the Court consider the ability of the class representatives to represent the class adequately. Indeed, the addition of Rule 23(g) was expressly *not* intended to have that effect. Before and after Rule 23(g), class representatives have had a duty to represent the class. That duty -- and the need to ensure that the class representatives were adequate to discharge it -- was not affected by the addition of Rule 23(g). Oddly, plaintiffs here appear to express the view that, after Rule 23(g), their lawyers have the unilateral right to dictate what is in the interests of the class, and that the views of class representatives are irrelevant. In other words, the class representatives don't need

---

[1]    In support of their Objections, plaintiffs submit two improper "expert" declarations from Professors Bruce Green and David Rosenberg. The declarations offer interpretations of Rule 23(g) and certain ethical rules, and argue that the decisions of Special Master Poppiti and this Court in *ML-Lee* were wrong. Under well-established federal law, these kinds of legal conclusions and argument are improper subjects of expert testimony and should be stricken. Accordingly, Intel has separately objected to and moved to strike both declarations. *See* Intel's accompanying Objections to and Motion to Strike Declarations of Professor Bruce Green and Professor David Rosenberg ("Intel's Objections to Evidence").

2

to be protected from coercion because they have no role in making decisions anyway. That view is not only incorrect (Rule 23(g) did not eliminate the role of class representatives), but it also raises concerns that the class representatives here may be especially vulnerable to coercion if they ever found themselves in a disagreement with their counsel.

Finally, plaintiffs' argument that their tax returns are "privileged" is wrong. Under well-established federal common law (which applies in this federal question case), tax returns are not privileged. While their sensitive and confidential nature entitles them to protection under the parties' protective order, it does not immunize them from discovery. In addition, this information is not reasonably available elsewhere; indeed, plaintiffs do not even attempt to argue otherwise.

For all these reasons, Special Master Poppiti properly concluded that Intel is entitled to the requested documents. The Court should deny plaintiffs' Objections, adopt the Special Master's Report and Recommendation, and grant Intel's motion.

## III.    STATEMENT OF FACTS RELEVANT TO THIS MOTION

On July 31, 2007, pursuant to the Procedures for the Handling of Discovery Disputes before Special Master (Docket No. 222[2]), Intel submitted to Special Master Poppiti its request to compel class plaintiffs to produce documents responsive to Requests for Production 8 and 9 from Intel's First Set of Requests for Production and to Requests for Production 1 and 2 from Intel's Second Set of Requests for Production. (Docket Nos. 542-43.) Requests 8 and 9 seek tax returns and financial documents and records from 2000-2006 to the extent any plaintiff has claimed as a tax deduction the expense or depreciated value of any microprocessor. (Exhibit 1 to Docket No. 542.) Requests 1 and 2 seek federal tax returns from 2004-2006 and documents, from all plaintiffs, sufficient to demonstrate plaintiffs' assets and liabilities. (Exhibit 2 to Docket No. 542.) Intel moved to compel production of the documents on the ground that they are

---

[2]    All citations to "Docket No." are to docket items in action 05-MDL-1717-JJF unless otherwise noted.

relevant to class certification issues, particularly the adequacy of the class representatives. The parties briefed the issue before the Special Master (Docket Nos. 542-43, 553, 556), and a telephonic hearing was held on August 22, 2007.

On September 6, 2007, Special Master Poppiti recommended that Intel's motion be granted on the grounds that "Federal Rule of Civil Procedure 23(a)(4), which addresses class representatives' adequacy to represent the class, puts the class representatives' financial capacity [– and thus their financial records – ] at issue, particularly in a case such as this one, where there is a substantial alleged class with an expectation of substantial costs going forward." Report & Recommendation (Docket No. 585) at 1-2 (citing *ML-Lee*) (brackets in original). The Special Master further determined that (1) "although the class representatives have not provided specific information regarding their fee arrangement with class counsel, it appears to provide that costs and expenses of litigation are advanced by class counsel as they are incurred and repayment is contingent on the outcome of the matter;" and (2) "where there is an opportunity in any litigation for the prevailing defendant to apply to the Court for costs, the Court appropriately can entertain issues with respect to whether the class is able to satisfy any and all obligations as this issue relates to the prosecution of the lawsuit." *Id.* at 2. Finally, the Special Master found that "in this jurisdiction, the 2003 amendments to Federal Rule of Civil Procedure 23(g) [do not affect the relevance under Rule 23(a)(4) of the class representatives' financial capacity, because the additional duties of class counsel under Rule 23(g)] do not obviate concerns of coercion of class members by class counsel." *Id.* (citing *ML-Lee*) (brackets in original).

On October 11, 2007, plaintiffs filed their Objections to the Report and Recommendation.

## IV.    ARGUMENT

### A.    The Court Should Reject Plaintiffs' New "Evidence"

In support of their Objections, plaintiffs submit two new "expert" declarations on "issues of legal ethics raised by the Special Master's Report and Recommendation" and "the respective and related qualifications and roles of the class representatives and class counsel

under the adequate representation requirements of Federal Rule 23(a)(4) and (g)." Declaration of Bruce A. Green, ¶ 1; Declaration of David Rosenberg, ¶ 1. Even if the declarations were admissible under the Federal Rules of Evidence -- and they are not[3] -- the Court should still decline to consider them.

The Court is not obligated to consider newly-submitted evidence when reviewing a special master's recommendation *de novo*; instead, it is within the Court's discretion to consider the record as developed before the special master and make its own determination accordingly. *See Commissariat A L'Energie Atomique v. Samsung Electronics Co.*, No. 03-484-MPT, 2007 WL 3002975, *2 (D. Del. Oct. 16, 2007) ("*De novo* review . . . does not necessarily mean a review that includes the submission of new evidence, particularly when evidentiary proceedings previously occurred before the Special Master . . . . Although *de novo* review refers to the review based on the record below plus any additional evidence received by the reviewing court, it also refers to review of the decision based only on the record below."). As noted by the court in *Commissariat*, Rule 53 is similar to 28 U.S.C. § 636(b)(1)(C), which provides that in reviewing the recommendations of a magistrate judge *de novo*, the district judge "may receive further evidence." *Id.* A "*de novo* determination" under section 636(b)(1)(C), unlike a "*de novo* hearing," "requires the district judge to 'consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." *Taberer v. Armstrong World Industries, Inc.*, 954 F.2d 888, 904 (3d Cir. 1992) (quoting *United States v. Raddatz*, 447 U.S. 667 (1980)).[4] The same rules apply here. *See Commissariat*, 2007 WL 3002975 at *2.

Plaintiffs had ample opportunity to present relevant evidence and argument to the Special Master (and do not attempt to argue otherwise), but they chose not to submit the "expert"

---

[3]        *See generally* Intel's Objections to Evidence.

[4]        "In contrast, a *de novo* hearing entails a new proceeding at which the decision is based solely on the evidence freshly presented at the new proceeding." *Id.*

declarations from Professors Green and Rosenberg. There is no explanation for their failure to do so. Like the court in *Commissariat*, this Court should exercise its discretion and decline to consider plaintiffs' proposed new evidence. There is no need to augment the record with improper expert testimony regarding what the law is, what the law should be and how the Court should rule. *See, e.g., In re Initial Public Offering Sec. Litig.*, 174 F. Supp.2d 61, 69 (S.D.N.Y. 2001) ("In our adversarial system, lawyers make arguments, judges write legal opinions -- and there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court."); *see also* Intel's Objections to Evidence.

Moreover, as discussed below, even if the Court were to consider plaintiffs' new evidence, it would not change the outcome – the law of this Court clearly supports adoption of the Special Master's Report and Recommendation.

**B.    Special Master Poppiti Properly Concluded that Plaintiffs' Financial Documents Are Relevant and Discoverable**

Intel is entitled to test the plaintiffs' contentions that class certification is appropriate for this action and that these plaintiffs are adequate class representatives. Federal Rule of Civil Procedure 23(a)(4) requires plaintiffs to demonstrate their ability to prosecute the case "vigorously." *ML-Lee*, 149 F.R.D. at 508. Part of vigorous representation is the ability to carry through with the action: "Before allowing a plaintiff to represent a class, the Court must be convinced that the plaintiffs are willing and financially able to shoulder the burdens of class representation. Thus, the financial status of a proposed representative plaintiff is relevant to the determination of whether that Plaintiff is capable of adequately representing the class." *Id.*

For example, in *ML-Lee*, since plaintiffs would have to engage in substantial discovery and serve notice on more than 33,000 potential class members, this Court held that limited discovery into the plaintiffs' financial history -- including multiple years' worth of tax returns -- was warranted. *Id.* at 508-09. Plaintiffs in this case will certainly have to engage in prolonged and extensive discovery and, if a class were ever certified, to serve notice on

potentially millions of class members.[5]  Accordingly, Intel is entitled to explore the proposed

class representatives' ability to meet these obligations, or alternatively to resist any attempt by

their counsel to coercively threaten to withdraw funding for them.

Plaintiffs suggest that the Court should ignore its own decision in *ML-Lee* and

instead follow the decisions of other courts on this issue.[6]  There is a split in the courts and many

courts side with this Court's analysis in *ML-Lee*.  *See, e.g., Blake v. Chemlawn Servs. Corp.*,

Civ. A. No. 86-3413, 1988 WL 6151, *3 (E.D. Pa. Jan. 26, 1988) ("Financial data concerning

representative plaintiffs in a class action of nationwide scope is relevant in determining the

adequacy of class representation."); *Rode v. Emery Air Freight Corp.*, 76 F.R.D. 229, 232 (W.D.

Pa. 1977) (same); *Apanewicz v. General Motors Corp.*, 80 F.R.D. 672, 679-80 (E.D. Pa. 1978)

(similar); *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427, 433-34 (W.D. Mo. 1973) ("Seeking

to represent a large group of people as a class representative in a lawsuit is a very heavy

responsibility.  It should never be undertaken lightly, and the court should allow such

representation only upon a firm foundation that the named plaintiffs are willing and financially

able to shoulder that burden."); *P.D.Q., Inc. of Miami v. Nissan Motor Corp.*, 61 F.R.D. 372, 377

n.5 (S.D. Fla. 1973) ("The financial means of the representative, bearing as it does on the vigor

of the prosecution, becomes an important area of inquiry for the Court."); *Rolex Employees*

*Retirement Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 666 (D. Or. 1991) (denying class

certification motion where, although counsel agreed to advance litigation costs, class

---

[5]     Plaintiffs' purported class in this case is everyone that bought a computer in the United
States from 2000 forward, which could amount to millions of potential class members.

[6]     Some of the cases plaintiffs cite have nothing to do with the discoverability of class
representatives' financial documents in the class certification context. *See Wirebound Boxes
Antitrust Litig.*, 131 F.R.D. 578 (D. Minn. 1990); *Bogosian v. Gulf Oil Corp.*, 337 F. Supp. 1228
(E.D. Pa. 1971); *Walker v. Rent-A-Center, Inc.*, No. 5:02CV3, 2006 WL 2860553 (E.D. Tex.
Oct. 3, 2006).  In addition, while plaintiffs cite cases in which courts have held that the plaintiffs'
financial wherewithal (or the fact that someone else is financing the litigation) is not
determinative of their ability to adequately represent the class (*see* cases cited at Objection, pp.
9-10, 13), this is a separate issue from whether the financial status and facts related to the class
representatives are discoverable.

representative failed to demonstrate he had "sufficient resources to allow him to check the actions of counsel and truly serve as the representative of the proposed class").

This approach is particularly well-suited to "large, nationwide classes," as here. *Mascol v. E&L Transp., Inc.*, No. CV-03-3343 CPS, 2005 WL 1541045, *6 (E.D.N.Y. June 29, 2005); *see also, e.g., Blake*, 1998 WL 6151, *2-3; *cf. Sanderson v. Winner*, 507 F.2d 477, 480 (10th Cir. 1974) (noting that in antitrust cases with large, nationwide classes in which these issues were held relevant, "there was legitimate concern about the ability of the plaintiffs to successfully lead a class of this magnitude").

Plaintiffs cite no cases to the contrary from this district.  In short, *ML-Lee* controls, and Special Master Poppiti properly concluded that Intel is entitled to the requested documents.

### C.     Plaintiffs' Objections to Special Master's Poppiti's Recommendation Lack Merit

Plaintiffs assert four reasons why Special Master Poppiti was wrong and *ML-Lee* inapplicable:  (1) the potential terms of the fee agreements with Interim Class Counsel (terms which plaintiffs do not disclose) free the plaintiffs of any obligation to fund the litigation; (2) the concern expressed by the Court in *ML-Lee* about a coercive threat of funding revocation is not based in reality; (3) *ML-Lee* was rendered a nullity by the 2003 amendments to Rule 23, specifically Rule 23(g)(1)(B); and (4) plaintiffs' tax returns are privileged and should be subject to disclosure only upon a showing of "compelling need."  None of these arguments has merit, and the Special Master properly rejected all of them.

### 1.     Plaintiffs' Failure to Disclose the Actual Terms of Their Fee Arrangements Dooms Their Objections

Plaintiffs contend that *ML-Lee* does not apply and plaintiffs' financial information is irrelevant because the ABA Model Rules of Professional Conduct and the Delaware Lawyers' Rules of Professional Conduct generally permit plaintiffs' counsel to advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter. But while plaintiffs discuss a hypothetical fee arrangement with Interim Class Counsel to

8

advance litigation costs, they do not disclose the actual terms of the arrangement they have with their counsel. They also did not produce or detail any fee agreement during the parties' extensive meet and confer prior to the filing of Intel's motion, or in connection with plaintiffs' opposition to Intel's motion to compel before the Special Master. *See* Report & Recommendation at 2 (noting that "the class representatives have not provided specific information regarding their fee arrangement with class counsel").

Instead, plaintiffs argue to this Court only about what the terms of the fee arrangement *might* be. For example: "It is now the case that many class plaintiffs **in actions such as this one** have retainer agreements with their counsel that *require* counsel to advance costs and expenses and create *no* contingency under which the client could become liable for such costs and expenses." Objection at 6-7 (bolded emphasis added). And while Interim Class Counsel declare that they are "willing and able to fully fund this case," Berman Decl., ¶ 4; Dove Decl., ¶ 4; Saveri Decl., ¶ 4; Small Decl., ¶ 3, they are silent on whether they have actually promised to do so.[7]

Plaintiffs should not be permitted to hide the actual terms of their fee arrangements while arguing against Intel's discovery requests on the basis of terms that *might* be in them. Even cases disallowing discovery of class representatives' tax returns and other personal financial information would not allow that result. *See, e.g., Ferraro v. General Motors Corp.*, 105 F.R.D. 429, 434 (D.N.J. 1984) ("I disagree with those cases in which the fee agreement to advance costs of litigation was found to be privileged or irrelevant. In this instance, where the fee agreement to advance costs of litigation has been paraphrased by plaintiff's counsel and cited in the court as a major reason why further inquiry into plaintiff's personal financial situation is irrelevant, the fee agreement is discoverable in its entirety.")

---

[7]    Interim Class Counsel's representation that they will "commit adequate resources to litigate this case zealously" and "will not renege on that commitment" is not the same as a specific and irrevocable promise to the class representatives that class counsel will fund all expenses of the litigation. Berman Decl., ¶ 6; Dove Decl., ¶ 6; Saveri Decl., ¶ 6; Small Decl., ¶ 5.

9

The reason for that is clear: it is not the business of the courts to issue opinions "advising what the law would be upon a hypothetical state of facts." *Surrick v. Killion,* 449 F.3d 520, 527 (3d Cir. 2006) (quoting *North Carolina v. Rice,* 404 U.S. 244, 246 (1971)).

For that reason alone, plaintiffs' Objections should be denied.

### 2. The Hypothetical Fee Arrangements Plaintiffs Describe Would Not Render Their Financial Status Irrelevant

Even if the plaintiffs' hypothetical fee arrangements existed, they would not justify a departure from *ML-Lee.* There is no evidence that the fee arrangements plaintiffs discuss would be any different than the arrangement discussed in *ML-Lee,* where the Court rejected the same argument plaintiffs make here: "[T]he agreement by Plaintiffs' counsel to advance the costs of litigation does not defeat the relevance of Plaintiffs' own financial status. Sole reliance on the financial backing of the representatives' legal counsel creates the undesirable situation of entrusting the responsibility of adequately representing the class to the attorney rather than the litigant." 149 F.R.D. at 509. The concerns that the Court expressed in *ML-Lee* expressly involved the attorneys reneging on a funding agreement. That plaintiffs' counsel in the future may not require payment of fronted costs if the litigation is unsuccessful does not negate the concern that plaintiffs "could be coerced into complying with attorneys' advice with regard to different options that may be available on legal issues in a class action because of the potential threat of funding revocation." *Id.*

Plaintiffs argue that concerns of coercive threats of funding revocation have no basis in reality, in light of the financial, legal, ethical and reputational consequences that may follow if counsel followed through with those kinds of threats. *See* Objection at 3, 28-29, 37-38. However, that argument, too, was considered and rejected in *ML-Lee,* where this Court regarded the threat of coercion as far from imaginary. To the contrary, the Court made clear that coercion by threat of funding revocation is a real and serious concern, against which class representatives need protection. There is no showing that the class representatives here are any less vulnerable to coercion than the plaintiffs in *ML-Lee* (or in any other class action for that matter). And, if

10

anything, as discussed below, plaintiffs' views of the 2003 amendments to Rule 23 -- that class counsel can call the shots and need answer to no plaintiff -- only heightens concerns of coercion in this case.

Moreover, no fee arrangement can properly cover all the costs of this litigation. The Model Rule on which plaintiffs rely permits only an "advance" of "court costs and expenses of litigation." This Rule does not permit an attorney to indemnify a non-indigent client against all costs related to the case. *See, e.g.,* Oklahoma Bar Association Legal Ethics Advisory Opinion, 2007-OK LEG ETH 01 (pending approval) (Declaration of Kristen A. Palumbo In Support of Intel's Opposition ("Palumbo Decl."), Ex. A) (Rule 1.8(e) does not permit an attorney to agree in advance to indemnify his client against attorney's fees and costs in the event that such fees and costs are awarded to the opposing party and taxed against the client.); Bar Association of San Francisco Opinion 1985-2 at 5 & n.1 (Palumbo Decl., Ex. B) (Rule allowing attorney to advance costs in litigation does not include "costs assessed against the client in the event of an unsuccessful outcome" and counsel should make clear in contracts with client that such costs "are not included in the attorney's undertaking"); *cf.* Florida Bar Association Opinion 96-3 (Feb. 15, 1997) (Palumbo Decl., Ex. C) (Costs and fees assessed against unsuccessful client pursuant to state's Offer of Judgment statute "are not the type of 'financial assistance' contemplated by Rule 4-1.8(e)" and would defeat the purpose of the Offer of Judgment statute.).

Thus, the purported arrangement cannot extend to, for example, any costs that Intel might obtain at the conclusion of the case which include certain transcript, deposition, photocopying, and witness fee costs and which, under Local Rule 54.1, are taxable against the party.[8] Given the magnitude of this case, the total amount of these taxable costs could be quite high.

---

[8]   Plaintiffs refer to contrary opinions of the Los Angeles County and Alaska Bar Associations' ethics committees. However, the San Francisco and Oklahoma Bar Association opinions are more consistent with the plain language of Model Rule 1.8(e), and are thus more persuasive. Also, the provision of the California Rules of Professional Conduct upon which the Los Angeles County Bar Association relied -- allowing for the advancement of "the costs of prosecuting or defending a claim or action *or otherwise protecting or promoting the client's*

11

In short, *ML-Lee* is on all-fours with the present case and its rationale fully applies here. Because Rule 23(a)(4) "puts the class representatives' financial capacity [– and thus their financial records – ] at issue, particularly in a case such as this one, where there is a substantial alleged class with an expectation of substantial costs going forward" (Report & Recommendation at 2), the Court should order plaintiffs to produce the requested tax returns and other financial documents, as it did in *ML-Lee*, and adopt Special Master Poppiti's recommendation in its entirety.

### 3. The Court's Decision in *ML-Lee* Is Consistent with Rule 23(g)(1)(B)

Contrary to plaintiffs' contention, the 2003 amendments to Federal Rule of Civil Procedure 23, particularly the addition of Rule 23(g)(1)(B), did not render *ML-Lee* a nullity. Plaintiffs' interpretation of Rule 23(g) is wrong.

Rule 23(g), by its terms, addresses how courts should evaluate the adequacy of counsel. The addition of Rule 23(g) explicitly left intact Rule 23(a), which still requires the Court to consider the adequacy of the class representatives: "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while this subdivision will guide the court in assessing proposed class counsel as part of the certification decision." Fed.R.Civ.P. 23, Advisory Committee Notes, 2003 Amendments, Subdivision (g). Thus, Rule 23(g) expressly was not intended to affect anything related to the analysis of the adequacy of class representatives, including their ability to fulfill their obligations to prosecute and carry through with the case on behalf of the class.[9] It therefore did not and could not have *impliedly* revoked or

---

*interests*" (Palumbo Decl., Ex. D at 2-3 (emphasis added)) -- is significantly different from Model Rule 1.8(e). At a minimum, the conflict in these various ethics opinions shows that the law is unsettled; plaintiffs therefore could never be certain that their attorneys could ethically obligate themselves to cover all possible costs.

[9]    Thus, that the Court approved the appointment of Interim Class Counsel and determined, under Rule 23(g)(1)(C), "that counsel will adequately commit the necessary resources to litigate this case" does not, as plaintiffs suggest (*see* Objection at 4, 35-37), obviate the need for the Court to assess the adequacy of these class representatives under Rule 23(a)(4), which includes an evaluation of their financial ability "to shoulder the burdens of class representation." *ML-Lee*, 149 F.R.D. at 508.

undermined the body of case law, of which *ML-Lee* is a part, that says that the financial capacity of plaintiffs is relevant to that determination. *See Mascol*, 2005 WL 1541045 at *6 (decided after 2003 amendments; noting that class representatives' financial resources are a "relevant factor in determining the adequacy of class representation when the ability of the class representative to finance notice to large, nationwide classes is questionable").

Nor does Rule 23(g)(1)(B) eliminate the duties owed by class counsel to the class representatives, as plaintiffs appear to suggest. As the Advisory Committee Notes to the 2003 amendments make clear, Rule 23(g)(1)(B)'s recognition that "the primary responsibility of class counsel . . . is to represent the best interests of the class" and that "the primary obligation of class counsel is to the class rather than to any individual members of it" does not "introduce an entirely new element into the class certification process." Fed.R.Civ.P. 23, Advisory Committee Notes, 2003 Amendments, Subdivision (g). Instead, it builds on the jurisprudence developed through the application of Rule 23(a)(4) to the issue of adequacy of counsel. *Id.* That jurisprudence makes clear that class counsel owes duties both to the class representatives and to the class as a whole and provides that, when a conflict between the two arises, the best interest of the entire class, not the class representatives, controls. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18 (2d Cir. 1986) ("[T]he class attorneys' duty does not run *just* to the plaintiffs named in the caption of the case; it runs to all of the members of the class.") (emphasis added); Restatement (Third) of Law Governing Lawyers § 14 cmt. f (2000) ("Lawyers in class actions thus have duties to the class *as well as to the class representatives*") (emphasis added); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) ("The attorneys themselves have an obligation to all of the class members, and '*when a potential conflict arises between the named plaintiffs and the rest of the class*, the class attorney must not allow decisions on behalf of the class to rest *exclusively* with the named plaintiffs.'") (emphasis added) (citation omitted).

Rule 23(g) does not affect the obligation of the class representatives to protect the interests of the class and does not give counsel a trump card that allows it to coerce, without

consequence, individual class representatives because counsel believes it is in the best interest of the class. Because, after the enactment of Rule 23(g), both class counsel and the class representatives are supposed to be looking out for the interests of the class, protecting class representatives from coercion is just as important now as it has always been. Indeed, it may be even more important now if Rule 23(g) causes Interim Class Counsel in this matter to believe that they can always do as they please (so long as they think it is in the best interest of the class) and do not have to listen to class representatives.

Therefore, Special Master Poppiti was correct when he wrote that "in this jurisdiction, the 2003 amendments to Federal Rule of Civil Procedure 23(g) [do not affect the relevance under Rule 23(a)(4) of the class representatives' financial capacity, because the additional duties of class counsel under Rule 23(g)] do not obviate concerns of coercion of class representatives by class counsel." Report & Recommendation at 2 (brackets in original) (citing *ML-Lee*). The Court should endorse the Special Master's decision on this point.

### 4.    Plaintiffs' Tax Returns Are Not Privileged

Plaintiffs' argument that their tax returns are "privileged" misses the mark entirely.[10]

While some states (including California) recognize a privilege for tax returns, no such privilege exists under federal law. *See St. Regis Paper Co. v. United States*, 368 U.S. 208, 218-19 ("[A]lthough tax returns . . . are made confidential within the government bureau, . . . copies in the hands of the taxpayer are held subject to discovery."); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992) (same); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) ("Tax returns do not enjoy an absolute privilege from discovery."); *Heathman v. United States Dist. Court*, 503 F.2d 1032, 1035 (9th Cir. 1974) (holding that tax returns are not privileged under federal law, noting that "the district courts have held in

---

[10]    Plaintiffs have not contended that any heightened standard applies to financial records generally (which is the subject of Request 9), only to tax returns.

numerous cases that tax returns are subject to discovery in appropriate circumstances"); *Young v. United States Dist. Court*, 149 F.R.D. 199, 200 (S.D. Cal. 1999) ("California law recognizes a tax return privilege while federal law does not."); *Playboy Enters., Inc. v. Welles*, 60 F. Supp.2d 1050, 1056 (S.D. Cal. 1999) ("Under federal law, tax returns are not privileged."); *Packer v. Hansen*, No. 98-380, 1999 WL 1038343, at *3 (E.D. Pa. Nov. 12, 1999) ("It is widely recognized . . . that, in appropriate circumstances, tax returns are the proper subject of a discovery inquiry, and that there is no privilege against disclosure."); *United States v. Bonnano Organized Crime Family of La Casa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988) ("[J]udicial consensus is that, while tax returns are not privileged, courts, as a matter of policy, should be cautious in ordering their disclosure."); Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *8 Fed. Prac. & Proc. Civ.* § 2019 (2d ed. 1994) (reporting the "overwhelming authority" rejecting claims of taxpayer privilege; noting that "the matter should now be considered resolved").

Plaintiffs incorrectly suggest that because this case involves both federal and state law claims, the court should "look to state law on privilege." Objection at 31-32.[11] This is not correct.

In *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100 (3d Cir. 1982), a case involving federal antitrust and state law claims, the Third Circuit established a "bright line rule" that where, as here, "there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule" and applies to all claims. *Id.* at 104 (noting that "applying two separate

---

[11]     The two cases cited by plaintiffs, *Davis v. Leal*, 43 F. Supp.2d 1102 (E.D. Cal. 1999) and *F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375 (S.D. Cal. 2000) involved claims the resolution of which depended on state law, and only state law. *See Davis*, 43 F. Supp.2d at 1106 ("Plaintiffs have sued Leal under three state law theories -- breach of contract, unjust enrichment, and breach of implied covenant of good faith and fair dealing."); *F.D.I.C.*, 196 F.R.D. at 379-80 (federal statute "merely provide[d] federal forum for suits brought by the FDIC"; state law "would clearly provide the controlling law" on resolution of underlying claims).

disclosure rules with respect to the different claims . . . would be unworkable"); *Doe v. Special Investigations Agency, Inc.*, 779 F. Supp. 21, 23 (E.D. Pa. 1991) (describing "bright line rule" fashioned by court in *Wm. T. Thompson* for cases presenting both federal and state claims). The *Wm. T. Thompson* court, of course, did not "preclude resort to state law analogies for the development of a federal common law of privilege *in instances where the federal rule is unsettled*." *Wm. T. Thompson*, 671 F.2d at 104 (emphasis added) (citing *Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979)); *see also D'Aurizio v. Borough of Palisades Park*, 899 F. Supp. 1352, 1354 (D.N.J. 1995) (same); *Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000) (noting that where federal law on privilege unsettled, federal court "may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, *but in the last analysis its decision turns upon the laws of the United States, not that of any state*") (emphasis added) (citations omitted).

Where, as here, the federal common law with respect to the privilege is settled, resort to state law is not warranted.[12]  *Wm. T. Thompson*, 671 F.2d at 104.  There is no federal privilege protecting tax returns from discovery.

Plaintiffs also argue that, under federal common law, Intel must demonstrate that it has a "compelling need" for plaintiffs' tax returns.  Objection at 33.  Plaintiffs misstate the standard by which federal courts consider the discoverability of tax returns.  Indeed, this Court applied no special or heightened standard in *ML-Lee*, and none of the cases cited by plaintiffs go as far as plaintiffs claim.  In *Walker v. Rent-A-Center, Inc.*, No. 5:02CV3, 2006 WL 2860553 (E.D. Tex. Oct. 3, 2006), for example, the court held tax returns were not discoverable because they would provide no more relevant information than the defendants had already received from "less-sensitive sources." *Id.* at *3.  *See also Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 332 (N.D.N.Y. 2006) (denying discovery of tax returns where there remained "less

---

[12]    This Court has deferred the issue of whether California law would apply nationwide in this case, so plaintiffs' argument -- that California privilege law would apply to a non-California resident bringing claims in a federal court -- lacks the requisite legal predicate.

A/72271623.9

intrusive sources not yet denied to Defendants"); *Campinas Foundation v. Simoni*, No. 02 Civ. 3965BSJKNF, 2005 WL 1006511, at *5 (S.D.N.Y. April 27, 2005) (same); *Bujnicki v. American Paving & Excavating, Inc.*, No. 99-CV-0646S (SR), 2004 WL 1071736 at *14-15 (W.D.N.Y. Feb. 25, 2004) (same); *Aliotti v. The Vessel Senora*, 217 F.R.D. 496, 498 (N.D. Cal. 2003) (same); *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 217-18 (W.D. Va. 1997) (denying discovery of tax returns where plaintiff "met his burden of establishing that the requested information is available from other sources other than his tax returns," including documents in the defendant's own possession); *Gattegno v. PricewaterhouseCoopers LLC*, 205 F.R.D. 70, 73 (D. Conn. 2001) (same); *Stabilius, A Div. of Fichtel & Sachs Indus., Inc. v. Haynsworth, Baldwin, Johnson & Greaves*, 144 F.R.D. 258, 268-69 (E.D. Pa. 1992) (denying discovery of tax returns where no showing of relevance).

By contrast, in *Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 78 (E.D. Pa. 1994), the court held the defendant's tax returns *were* discoverable because they were relevant and the defendant had not met its burden of showing "an alternative source from which Plaintiff can obtain the relevant information." *Id.* at 80. *See also Trudeau*, 237 F.R.D. at 331 (holding that it is the taxpayer's burden to identify alternative source of information); *Terwilliger*, 176 F.R.D. at 217 (same); *Packer,* 1999 WL 1038343 at *3 ("If relevant, the tax returns will be discoverable, unless the party resisting discovery meets its burden of proving there is no compelling need for the tax returns because the information available in the tax returns can be obtained from other sources."). Here, plaintiffs have not identified any alternative source for the information that this Court has previously held to be relevant and material to plaintiffs' burden under Fed.R.Civ.P. 23(a)(4).[13] The Court should therefore order production of

---

[13]    Intel also notes that even under California law, tax returns are not absolutely privileged and *can be* "legally procured by subpoena or otherwise" (Objection at 33) in appropriate circumstances. *See Schnabel v. Superior Court*, 5 Cal.4th 704, 719-21 (1993) (holding that privilege is "not absolute" and is waived or does not apply where: "(1) there is an intentional relinquishment, (2) the 'gravamen of [the] lawsuit is so inconsistent with the continued assertion of the taxpayer's privilege as to compel the conclusion that the privilege has in fact been waived,' or (3) a public policy greater than that of confidentiality of tax returns is involved")

plaintiffs' tax returns.

Finally, Intel acknowledges the sensitivity of plaintiffs' tax returns and financial information. However, there is a Protective Order in place in this case that plaintiffs can use to designate any confidential materials that they produce in response to Intel's requests. Confidentiality or sensitivity of plaintiffs' documents is not a basis for denying Intel's discovery rights.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' Objections, adopt Special Master Poppiti's Report and Recommendation, and grant Intel's motion to compel.

OF COUNSEL:

David M. Balabanian
James L. Hunt
Christopher B. Hockett
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA  94111-4067
(415) 393-2000

Richard A. Ripley
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C.  20006
(202) 373-6000


Dated:  October 29, 2007

POTTER ANDERSON & CORROON LLP


By:  */s/ W. Harding Drane, Jr.*
     Richard L. Horwitz (#2246)
     W. Harding Drane, Jr. (#1023)
     Hercules Plaza, 6th Floor
     1313 North Market Street
     P.O. Box 951
     Wilmington, DE 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     wdrane@potteranderson.com


     Attorneys for Defendant
     Intel Corporation

---

(internal citations omitted).  Here, the public policy of ensuring that class members are willing and financially able to shoulder the burdens of class representation outweighs the confidentiality of their tax returns.

A/72271623.9