# EXHIBIT A



Home → News          Quick Links



General Public

Bar Admission

Lawyer Resources

Ethics &
Professionalism

CLE

Legal Research

News & Events

Find a Lawyer

my okbar

OBA-NET

Calendar
of Events

## OBA Legal Ethics Advisory Panel Issues Opinion

Bar
News

Press
Releases

*Applications requesting its modification, correction, clarification or withdrawal
must be made in accordance with Legal Ethics Advisory Panel rules
governing appeals and received by the panel coordinator on or before
**Monday, June 11, 2007**. Unless an application for the revision or withdrawal
of an advisory opinion is timely received, the opinion shall become final.*

*The rules governing appeals may be found on the* <u>OBA Web site</u>.

*Send comments to Panel Coordinator Roger R. Scott, 525 South Main, Suite
1111, Tulsa, OK 74103.*

**OBA Legal Ethics Advisory Opinion 2007-OK LEG ETH 01**

**Inquiry :**

May an attorney representing a plaintiff in a lawsuit agree in advance to
indemnify his client against attorney's fees and costs that might be awarded
to the defendant in the event that the defendant is the prevailing party?

**Opinion :**

An attorney may *not* agree to indemnify his client against attorney's fees and
costs in the event that such fees and costs are awarded to the opposing
party and taxed as costs against the client.

I.

The controlling rule is Rule 1.8 of the Oklahoma Rules of Professional
Conduct. Rule 1.8(e) provides:

> A lawyer shall not provide financial assistance to a client in
> connection with pending or contemplated litigation, except that
> a lawyer may *advance* court costs and expenses of litigation,
> the repayment of which may be contingent on the outcome of
> the matter.

(emphasis added).

Rule 1.8(j) provides that:

> *A lawyer shall not acquire a proprietary interest in the cause of
> action or subject matter of litigation the lawyer is conducting for
> a client* , except that the lawyer may:
>
> (1) acquire a lien granted by law or contract to secure the
> lawyer's fee or expenses; and

(2) contract with a client for a reasonable contingent fee in a
civil case.

(emphasis added).

Rule 1.8(e) allows a lawyer to "*advance* court costs expenses of litigation"
when the repayment of such costs and expenses may be "contingent on the
outcome of the matter" (emphasis added). "Advance" means "to supply or
furnish in expectation of repayment". Merriam-Webster's Collegiate
Dictionary 17 (10 th ed. 1999). To agree to indemnify is not to "advance".
The lawyer who agrees to indemnify would have no expectation of
repayment under any circumstances. *See* Cynthia Bulan, *A Small Question
in the Big Statute: Does Section 402 of Sarbanes-Oxley Prohibit Defense
Advancements?*, 39 Creighton L. Rev. 357, 360 & n. 21 (2006) (hereinafter,
"Bulan"). According to Bulan,

> [t]he right to indemnification is not the same as the right to
> advancement of defense costs. The right to indemnification
> gives a person the right to reimbursement of losses or
> expenses; it is not a right for payment at the time the loss is
> incurred. On the other hand, a right to advancement requires
> payment of the defense costs as the costs are incurred.

Bulan, 39 Creighton L. Rev. at 360-361 & n. 21, *citing* John F. Olson et al.,
Director & Officer Liability: Indemnification and Insurance § 5.03[2] (2001)
(footnote omitted).

Rule 1.8(j) generally prohibits a lawyer's acquisition of a proprietary interest
in "the cause of action or subject matter of the litigation the lawyer is
conducting for a client." The only exceptions to the general prohibition are
attorneys' liens and contingent fees in civil cases. No exception is made for
an indemnification agreement.

The general rule against lawyer acquisition of a proprietary interest in the
client's cause of action, and/or the subject matter of the client's litigation, is
based upon the old common law rules against champerty and
maintenance. *See* Comments to Rule 1.8 of the Oklahoma Rules of
Professional Conduct; Charles W. Wolfram, Modern Legal Ethics § 9.2.3 at
507 n. 76. The notion is that payment of expenses not expressly authorized
by the rule creates a conflict between the client and the lawyer, in that the
lawyer has a financial interest in the case. The conflict could adversely affect
the lawyer's professional judgment in determining whether to accept a
settlement or proceed to trial. Unconditionally guaranteeing the payment of
attorney's fees and costs would create the same conflict. *Cf. South Carolina
Bar Ethics Committee, Ethics Advisory Opinion 89-12*, 1989 WL 608452 at
page *2 (1989).

II.

The Alaska Bar Association has addressed a related question--whether an
attorney may contingently agree to pay attorney's fees assessed against a
client if the client loses on appeal. Ethics Opinion No. 2004-02, 2004 WL
1853007 ( April 27, 2004). That opinion dealt with a situation where an
attorney fee might be assessed against a client in the event that an appeal in
a civil case were to be unsuccessful. The Alaska Bar Association, citing no
authority other than Rule 1.8 of the Alaska Rules of Professional
Responsibility, concluded that such an agreement was permissible. The
Alaska ethics opinion, however, failed to deal with the use of the term

"advance" in Rule 1.8(e). In particular, there was no discussion of how an agreement to indemnify--to make a payment in the future--could be an "advance". The distinction between "payments" and "advances" is discussed in *Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility, Informal Opinion Number 2000-14*, 2000 WL 1616267 at page *2 (2000). *And see* Bulan, 39 Creighton L. Rev. at 360-361 & n. 21 (quoted above).

III.

The history of Rule 1.8(e) suggests that the class of costs and expenses that a lawyer may permissibly advance is limited to traditional case preparation expenses. Old Ethics Rule 42, 5 O.S. 1961, Ch. 1, App. 3, provided:

> **Expenses of litigation.** A lawyer may not properly agree with a client that the lawyer shall pay or bear the expenses of litigation; he may in good faith advance expenses as a matter of convenience, but subject to reimbursement.

Ethics Rule 42 was superceded by Disciplinary Rule 5-103(B) of the Oklahoma Code of Professional Responsibility, 5 O.S. 1981, Ch. 1, App. 3. DR 5-103(B) was in turn superceded by Rule 1.8(e) of the Oklahoma Rules of Professional Conduct, effective from July 1, 1988. The language of Rule 1.8 (e) is identical to the language of DR 5-103(B), except for a gender neutrality change from "his" to "a" client. The 1988 version of Rule 1.8 stated:

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to a client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

Rule 1.8(e), Rules of Professional Conduct, 5 O.S.Supp. 1988, Ch. 1, App. 3-A.

Rule 1.8 (e) was amended in 1993. The 1993 language (set forth in Part I. above) tracks amendments to ABA Model Rules of Professional Conduct, and is the current rule. As noted above, the current rule allows repayment of advances to be contingent on the outcome of a case. The current Rule 1.8(e) also deletes the limiting language of prior ABA rules describing permissible "expenses" of litigation. This change may seem to suggest that adverse party attorney's fees might be considered to be "costs" of litigation. It seems more reasonable, however, to read the new language in Rule 1.8(e) as a reversion to the simpler language of the original Ethics Rule 42, without the contingent component.

Until recently, "court costs and expenses of litigation" were not considered to include attorney's fees. As a consequence, it is unlikely that the ABA Model Rule drafters, the Oklahoma Bar Association committee, or the Oklahoma Supreme Court believed that the phrase "court costs and expenses of litigation" included attorney's fees awarded at the end of litigation. Indeed, the Comment to the ABA Model Rule suggests that the ABA drafters eliminated the limiting language (relating to investigation, medical exams, and costs of obtaining and presenting evidence) in order to shorten the rule, that they did not intend to change the accepted understanding of court costs.

The Comment in the ABA Model Code to the most recent version Rule 1.8 (e)--the version that will become effective in Oklahoma on January 1, 2008-- reads:

> [10] Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation. *These dangers do not warrant a prohibition on a lawyer lending a client court costs and litigation expenses, including the expenses of medical examination and the costs of obtaining and presenting evidence, because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts.* Similarly, an exception allowing lawyers representing indigent clients to pay court costs and litigation expenses regardless of whether these funds will be repaid is warranted.

(emphasis added).

The rationale for allowing a lawyer to advance costs of litigation is to ensure an indigent client access to justice: A case can neither start nor proceed without payment of costs, experts and discovery. But the access-to-justice rationale does not warrant or justify the provision of an indemnity against an unconventional, non-traditional litigation risk--a risk which will not even be determined until after the case is over. A client can get to his or her day in court without being first insured against the possibility of adverse party attorney's fees.

IV.

An agreement to indemnify a client against attorney's fees and costs that might be awarded to a defendant as a prevailing party--an agreement to make a payment in the future, upon the fulfillment of a condition--is not an "advance" within the meaning of Rule 1.8(e). Such agreements are prohibited by Rule 1.8(e) and Rule 1.8(j).

On April 17, 2007, the Oklahoma Supreme Court adopted amendments to the Oklahoma Rules of Professional Conduct. *In re: Application of the OBA to Amend the Rules of Professional Conduct*, 2007 OK 22, _____ P.3d _____. Effective January 1, 2008, Rule 1.8(e) will read as follows:

1. A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

> (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; *and*

> (2) *a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.*

(emphasis added).

The change in the rule is shown in italics. This opinion does not depend on

the current language of Rule 1.8(e) and will not be affected by the amendment.

2. A similar distinction must be drawn between "advancement" and "payment" of costs and expenses. Under the version of Rule 1.8(e) that will become effective on January 1, 2008, it will be possible for a lawyer to *pay* court costs and expenses of indigent clients. Agreements to indemnify indigent clients are not expressly authorized.

3. *See also* 1 Restatement (Third) of the Law Governing Lawyers § 36 (2000) ("Forbidden Client-Lawyer Financial Arrangements"); *State ex rel. Oklahoma Bar Ass'n v. Smolen*, 2000 OK 95, 17 P.3d 456, 458, 459, 462; *State ex rel. Oklahoma Bar Ass'n v. Carpenter*, 1993 OK 86, 863 P.2d 1123, 1127, 1132, 1133; *State ex. Rel. Oklahoma Bar Ass'n v. Smolen*, 1992 OK 116, 837 P.2d 894, 897, 900-901, 905-906 (citing the Restatement and tentative drafts thereof).

4. The Alaska Bar Association opinion seems to be incorrect for other, fact-driven reasons. According to the opinion, the appeal had a substantial chance of success. Absent a successful appeal, the attorney would not be paid. The plaintiff-client might be reluctant to proceed with the appeal for various reasons (*e.g.*, a settlement offer contingent on foregoing the appeal).

The attorney had an interest in proceeding with the appeal. The plaintiff-client, in theory, had an interest in foregoing the appeal. If the attorney is allowed to indemnify the plaintiff-client, the plaintiff-client might be persuaded to reject a settlement offer that is in his or her interest.

If an attorney is allowed to indemnify his or her client, the client may need to submit the question of the fairness of the indemnity proposal to an independent attorney for evaluation. A second order question immediately arises: Can the first lawyer pay for the independent lawyer's evaluation?

5. Two additional points should be noted. *First*, the current version of Rule 1.8(e) of the Oklahoma Rules of Professional Conduct (set forth in Part I., above) is not identical with the most recent revision of Rule 1.8(e) of the ABA Model Rules of Professional Conduct. The most recent revision of the Model Rule authorizes "a lawyer representing an indigent client" to "pay court costs and expenses of litigation on behalf of the client". The Model Rule language emphasizes the distinction--made in the text--between "advances" and "payments". Model Rule 1.8(e) has been adopted by some states (*e.g.*, Alaska). The Supreme Court of Oklahoma recently adopted Model Rule 1.8 (e); it will become effective on January 1, 2008. *See* notes 1 and 2, *supra*.

*Second*, the practice of advancing expenses is sometimes governed by rules of substantive law and procedure. This is the case, for example, with respect to class actions. *See* 5 Alba Conte & Herbert Newberg, Newberg on Class Actions § 15:22 at 79-82 (4 th ed. 2002) (if class representative has no financial responsibility for costs and expenses, class certification may be denied). *See, e.g., Ferraro v. General Motors Corp.*, 105 F.R.D. 429, 433 & n. 3 (D. N.J. 1985) ("[A]greement whereby plaintiff's attorneys agree to advance or reimburse the costs of litigation is highly relevant to the issue of adequate representation."). In addition, advancements of costs and indemnity agreements may be prohibited by the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002). *See* Bulan, 39 Creighton L. Rev. at 357-385.

Copyright © 2007 Oklahoma Bar Association

Oklahoma Bar Association

P.O. Box 53036, 1901 N. Lincoln Blvd., Oklahoma City, OK 73152-
3036
Phone (405) 416-7000; Fax (405) 416-7001

web@okbar.or
Disclaime

# EXHIBIT B

 THE BAR ASSOCIATION OF SAN FRANCISCO





## OPINION 1985-2

It is ethically proper for an attorney who advances costs in litigation to provide in the contingent fee agreement that costs will be recoverable only out of a judgment or settlement.

### QUESTION:

Attorney is representing client in a personal injury case on a contingent fee basis. Client's financial status is such that it is virtually certain that he would be unable to reimburse attorney for costs advanced in connection with the litigation. Under such circumstances, it is attorney's practice not to attempt to collect from a client costs advanced for litigation expenses. Client has requested that the contingent fee contract contain an express provision that costs will be recoverable by the attorney only in the event of a favorable settlement or judgment. Attorney has asked whether the inclusion of such a provision in the contingent fee contract is ethically permissible.

### DISCUSSION

### (A) INTRODUCTION

Preliminarily, it should be noted that section 6147 of the Business & Professions Code requires that all contingent fee contracts be in writing, that the plaintiff or his representative receive a copy of such contract, and that the contract, at a minimum, include five specified provisions. Failure to comply with any provision of section 6147 renders the contract voidable at the option of the client, leaving the attorney to a quantum meruit recovery. With respect to costs, section 6147(a)(2) provides that the contract shall include "A statement as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingent fee and the client's recovery." [1]

### (B) RELEVANT CODE PROVISIONS

Rule 5-104 of the California Rules of Professional Conduct provides in part, that:

"(A) A member of the State Bar shall not directly or indirectly pay or agree to pay, guarantee, or represent or sanction the representation that he will pay personal or business expenses incurred by or for a client, prospective or existing and shall not prior to his employment enter into any discussion or other communication with a prospective client regarding any such payments or agreements to pay; provided this rule shall not prohibit a member:

1.  with the consent of the client, from paying or agreeing to pay to third persons such expenses from funds collected or to be collected for the client; or

2.  after he has been employed, from lending money to his client upon the client's promise to repay such a loan; or

3.  from advancing the costs of prosecuting or defending a claim or action or otherwise

protecting or promoting the client's interest. Such costs within the meaning of this subparagraph (3) shall be limited to all reasonable expenses of litigation or reasonable expenses in preparation for litigation or in providing any legal services to the client.

Rule 5-104 was derived from former rule 3a, which provided that:

"Any member of the State Bar shall not directly or indirectly pay or agree to pay, or represent or sanction the representation that he will pay medical, hospital or nursing bills or other personal expenses incurred by or for a client, prospective or existing; provided this rule shall not prohibit a member

1.  with the consent of the client, from paying or agreeing to pay to third persons such expenses from funds collected or to be collected for the client; or
2.  after he has been employed, from lending money to his client upon the client's promise in writing to repay such loan; or
3.  from advancing the costs of prosecuting or defending a claim or action. Such costs within the meaning of this subparagraph (3) include all taxable costs or disbursements, costs of investigation and costs of obtaining and presenting evidence."

In dramatic contrast to California rule 5-104 and its predecessor, disciplinary rule 5-103(B) of the ABA Code of Professional Responsibility provides that:

"While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses or investigation, expenses or medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses." (Emphasis added).

Disciplinary rule 5-103(B) was derived from former Canon 42 of the ABA Canon of Ethics, which provided that:

"Expenses of Litigation. A lawyer may not properly agree with a client that the lawyer shall pay or bear the expenses of litigation; he may in good faith advance expenses as a matter of convenience, but subject to reimbursement."

In short, both the present and former ABA rules clearly and specifically prohibit an attorney from agreeing to bear the costs and expenses of litigation in the event there is no recovery for the client. Both the present and former California rules are silent on the issue of ultimate liability. The recently adopted ABA Model Rules of Professional Conduct provide in rule 1.8 (e) that:

"A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client."

In summary, then, there are two significant differences between the ABA Code provisions and the California Rules of Professional Conduct. First, the ABA Code precludes any financial assistance except the advancement of costs; the California Rules allow financial assistance in the form of loans to the client. Second, the ABA Code requires that the client be ultimately responsible for payment of costs advanced by the lawyer; the California Rules

are silent on the matter. And, as noted, the new Model Rules continue the prohibition on financial assistance other than the advancement of costs but allow the attorney to make reimbursement of those costs contingent upon a successful outcome.

## (C) AUTHORITY

Several ethics opinions deal with the question presented. In Formal Opinion No. 1976-38, issued by the Standing Committee on Professional Responsibility and Conduct of the State Bar (COPRAC), it was held that:

> "Compliance with the existing rule 5-104 of the Rules of Professional Conduct, therefore, involves as an essential element, that the client is obligated to repay the advanced costs and the client must be informed of his liability to reimburse the client."

COPRAC, however, went on to state:

> "Nothing in the rule, however, requires the attorney to attempt to evaluate his client's prospective ability to pay such costs in the event that the lawsuit involved is unsuccessful. Nor does the rule require any initial decision by the attorney as to whether, or under what circumstances, he would be willing to sue his client for such costs, should the client fail to pay them."

In support of its conclusion, COPRAC cited three opinions issued by the Committee on Legal Ethics of the Los Angeles County Bar Association [2] and Disciplinary Rule 5-103(B) (and the corresponding Ethical Consideration, 5-8) of the ABA Code of Professional Responsibility.

In the opinion of the Committee the conclusion arrived at in Opinion 1976-38 is not supported by the authorities cited by COPRAC. In light of the dramatic differences in the language of DR 5-103(B) and rule 5-104(A)(3), it seems clear that a rule flatly prohibiting a lawyer from absorbing costs of unsuccessful litigation in no way supports a similar reading of a rule that is silent on the matter. Given the absence of any analysis in Opinion 1976-38, its citation of the ABA Code is not persuasive.

Nor, in the opinion of the Committee, is the citation to the Los Angeles County Bar Association opinions conclusive. It is true that in each of those opinions, the Legal Ethics Committee held that the client must be ultimately responsible for costs. It is, however, also true that in each of those opinions the Committee relied on Canon 42 of the Canons of Ethics and made no reference to either former rule 3a or present rule 5-103(B). (It should be noted that rule 5-103(B) was not adopted until December 31, 1974). In short, the continuing validity of the Los Angeles County Opinions rests on the assumption that the difference in language between the Canons of Ethics and the California rules is meaningless. It is the opinion of this Committee that assumption is unwarranted. Consequently, we treat the question not as one controlled by precedent, but as one of statutory interpretation.

## (D) ANALYSIS

First, looking to the language of the rule, a lawyer in California is not precluded from "advancing the costs of prosecuting or defending a claim or action." Certainly, the concept of an "advance" is distinguishable from the concept of a gift. In the latter case, the donor anticipates receiving nothing in return; in the former case, the person advancing funds expects to receive something in return. But it does not follow that an "advance" implies an absolute obligation to repay. Advances to authors, for example, are typically not recoverable by publishers and simply represent a non-refundable portion of royalties that may or may not ever be earned. Similarly, it does not strain the meaning of "advance" in the context of

litigation to read it as requiring repayment out of a recovery and only to the extent that there is a recovery.

Second, unlike the ABA Code which precludes any other financial assistance, the California rule does allow a lawyer to lend money to his client. But in that situation the lawyer must obtain "the client's promise in writing to repay such loan." A requirement that specific financial assistance be repaid (and that the promise to do so be in writing) strongly suggests that repayment of other financial assistance allowed by the rule is properly a matter of negotiation between lawyer and client.

Third, it is clear that at the time of the enactment of former rule 3a, the California Supreme Court was aware of Canon 42, and at the time of the enactment of rule 5-104, the Court was aware of the existence of Disciplinary Rule 5-103 (B) of the ABA Code. The failure to include in either California rule a requirement of ultimate liability on the part of the client seems deliberate and, in our view, supports an interpretation that would allow this to be a matter of negotiation between attorney and client.

Moreover, as a matter of policy, the historical reasons for rules prohibiting lawyers from financing litigation seem much less persuasive today. Historically, such prohibition was based on common law doctrines of maintenance and champerty, both of which reflected . a suspicion of and distaste for litigation as such. Certainly today, the assertion of one's rights in litigation is hardly viewed as an evil indeed, that fact is dramatically illustrated by the recent series of decisions relating to attorney advertising and solicitation as well as the above provisions of rule 5-104. And to the extent that these rules are designed to assure the preservation of independent judgment, on the part of the lawyer, it is difficult to see how an agreement to bear costs in the event of an unfavorable result will compromise an attorney's judgment significantly more than the agreement to work for nothing, or the agreement to lend a client living expenses based on a promise that is, in many cases, valueless unless the case is brought to a successful conclusion.

The Committee is also disturbed by an interpretation - not compelled by the language of the rule -that encourages disingenuous behavior. It is common knowledge that lawyers simply do not enforce their "right" to reimbursement against impecunious clients [3]. To persist in an interpretation which is, in reality, completely disregarded by most attorneys does not, in our view, encourage respect for the rules or compliance with high ethical standards.

We note that our opinion is supported by the recent case of Kroff v. Larson (1985) 167 Cal.App.3d 857. In Kroff , plaintiff attorney (Kroff) entered into a contingent fee contract with defendant which provided in part, that "costs advanced will be reimbursed to attorney out of the gross recovery on behalf of client." (Emphasis in original.) When plaintiff was discharged by his client, he brought suit for reimbursement of approximately $700 he had advanced in costs. In affirming the trial court's sustaining of defendant's demurrer, the appellate court held the action premature, as the contingency-the recovery on behalf of the client-had not occurred. The court specifically rejected plaintiff's contention that recovery of costs be treated differently than quantum meruit recovery of fees. Implicit in the Kroff court's holding is its acceptance of the validity of the cited contractual provision.

For all the foregoing reasons, it is the opinion of the Committee that the provision in a contingent fee contract making recovery of costs advanced by the lawyer contingent upon the successful outcome of the litigation, is ethically proper and is permissible under California Rule of Professional Conduct 5-104. To the extent that this opinion is inconsistent with Informal Opinion 1974-4, issued by the Committee, that opinion is disapproved. Nevertheless, the Committee recommends that this matter be clarified by an amendment to the rule similar to Model Rule 1.8 of the ABA Rules of Professional Conduct.

Finally, the Committee wishes to point out several issues that should be considered by

attorneys who agree to bear costs. First, any dollar limitation should, of course, be
specifically provided for. Second, the contract should make clear that costs or attorneys' fees
awarded to one's adversary are not included in the attorney's undertaking. Finally, any
"communication" made pursuant to California Rule of Professional Conduct 2-101 should be
carefully drafted to insure that it is not misleading or deceptive.

**Footnotes:**

1. For purposes of this opinion, "costs" are defined as out of pocket
   expenses incurred on behalf of the client in the prosecution of an
   action. They would include such things as expert witness fees, costs of
   discovery, filing fees, witness fees, transportation expenses, and the
   like. Again, for purposes of this opinion, "costs" do not include costs
   assessed against the client in the event of an unsuccessful outcome,
   nor do they include attorneys fees assessed against the client
   pursuant to any statutory or common law fee-shifting provision. The
   Committee strongly urges that attorneys who agree to bear the costs
   of litigation make clear precisely which "costs" are included in their
   undertaking.

2. It should be noted that these opinions were promulgated prior to the
   enactment of the present Rules of Professional Conduct.

3. Interestingly, the suggested form in Deering's Annotated Code is a
   nineteen paragraph contract, paragraph 15 of which reads as follows:
   "In the event no recovery is obtained on the claim that compromises
   (sic) the subject matter of this agreement, the attorney will make no
   charges for his time, services, fees, costs, or other expenses that he
   may have advanced ." (Emphasis added.)

**All opinions of the Committee are subject to the following disclaimer:**
Opinions rendered by the Ethics Committee are an uncompensated service of The Bar
Association of San Francisco. Opinions are advisory only, and no liability whatsoever is
assumed by the Committee or The Bar Association of San Francisco in rendering such
opinions, and the opinions are relied upon at the risk of the user thereof. Opinions of the
Committee are not binding in any manner upon the State Bar of California, the Board of
Governors, any disciplinary committee, The Bar Association of San Francisco, or the individual
members of the Ethics Committee.

In using these opinions you should be aware that subsequent judicial opinions and revised
rules of professional conduct may have dealt with the areas covered by these ethics opinions.

« Back to full Ethics Opinions List

# EXHIBIT C

## Member Services

### Ethics Opinions

---

### OPINION 96-3
### (February 15, 1997)

An attorney may not ethically agree to pay fees and costs assessed to a client pursuant to the Offer of Judgment statute.

**RPC:** Rule 4-8.4(d), Rule 4-1.8(e)

**Cases:** The Florida Bar re: Amendment to Rules , 550 So. 2d 442 (Fla. 1989), Goode v. Udhwani , 648 So. 2d 247 (Fla. 4th DCA 1995),

**Opinions:** New York State Bar Ethics Opinion 1989-3

**Misc:** Florida Statute 768.79, Florida Rule of Civil Procedure 1.442

A member of the Florida Bar requests an advisory ethics opinion regarding the lawyer's ability to agree to pay costs and fees assessed against the lawyer's client in accordance with section 768.79, Florida Statutes. Specifically, the inquiring attorney has asked the following question:

> Whether or not I, as attorney for plaintiff, may enter into an agreement with my client that if we go to trial and if we are unsuccessful and become subject to sanctions of attorney's fees and costs pursuant to the first defendant's Offer of Judgment, may I, as the attorney, agree to pay my clients' attorney's fees and costs to the defendant's insurer if we lose?

Pursuant to section 768.79 of the Florida Statutes (hereinafter, the "statute"), a plaintiff who refuses an offer of settlement made by the defendant must pay reasonable costs, including attorney's fees, incurred by the defendant from the date of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than the offer. Under the statute, the assessment of costs and fees against a client will occur, if at all, only at the conclusion of the litigation. The statute provides that a court must either set off such costs and fees against any award obtained by the client, or, if the client obtains an award less than the amount of the costs and fees, the court will enter a judgment against the plaintiff for the amount of costs and fees not covered by the plaintiff's award.

Referring to Florida Rule of Civil Procedure 1.442, which requires parties to comply with the procedures set forth in section 768.79, the Supreme Court of Florida has described the procedure governing offers of judgment as one "by which parties are sanctioned for failure to accept bona fide offers of settlement prior to trial." The Florida Bar re: Amendment to Rules , 550 So. 2d 442 (Fla. 1989). Additionally, in

Goode v. Udhwani , 648 So. 2d 247 (Fla. 4th DCA 1995), the court stated that, "The purpose of section 768.79 was to serve as a penalty if parties did not act reasonably and in good faith in settling lawsuits."

The committee concludes that the proposed conduct would be prejudicial to the administration of justice, in violation of Rule 4-8.4(d), because it would defeat the purpose of the Offer of Judgment statute. In Opinion 1989-3, the New York State Bar Association Committee on Professional Ethics found that an agreement requiring a client to pay Rule 11 sanctions imposed upon a lawyer for filing non-meritorious claims was unethical because it defeated the purpose of the Rule and improperly shifted liability to the client. Similarly, the deterrent effect of the Offer of Judgment statute would be defeated if lawyers could insulate their clients from potential financial liability.

Furthermore, costs and fees assessed pursuant to this statute are not the type of "financial assistance" contemplated by Rule 4-1.8(e).

Based upon the foregoing, the committee concludes that the proposed conduct is ethically impermissible.

[Updated: 06-01-2005 ]

© 2005 The Florida Bar

# EXHIBIT D

LOS ANGELES COUNTY BAR ASSOCIATION

PROFESSIONAL RESPONSIBILITY AND ETHICS COMMITTEE

OPINION NO. 517
April 17, 2006

INDEMNIFICATION OF CLIENT'S LITIGATION COSTS

### SUMMARY

An attorney may agree to advance the reasonable expenses of prosecuting or defending a client's matter and waiving the right to repayment by the client if there is no recovery. Similarly, at either the inception of the representation or during the course of litigation, an attorney may agree to indemnify the client for court ordered costs if the client is not the prevailing party.

### AUTHORITIES CITED

Code of Civil Procedure §§ 998 and 1034

*Ripley v Pappadopolous* (1994) 23 Cal App. 4th 1616

California Rules of Professional Conduct, Rules 3-310(B) and 4-210(A)

State Bar Formal Opinion 1976-38 and State Bar Formal Opinion 1994-138

Los Angeles County Bar Association, Professional Responsibility and Ethics Committee, Formal Opinion No. 495

### STATEMENT OF FACTS

Attorney seeks to represent clients in civil litigation matters who are unable or unwilling to pay costs in the event they do not prevail in the litigation. Attorney wants to indemnify the clients from any costs that may be awarded by the court if the clients are not a prevailing party. In some cases, the request for an indemnity arises at the inception of the representation and in other cases it arises during the course of the litigation.

- 1 -

QUESTIONS PRESENTED

Is it permissible for a lawyer or law firm to indemnify a client for costs associated with litigation in the event the client loses and the prevailing party files a memorandum of costs?

DISCUSSION

California Rule of Professional Conduct 4-210(A), provides:

> A member shall not directly or indirectly agree to pay, guarantee, represent or sanction a representation that the member or the member's law firm will pay the personal or business expenses of a prospective or existing client, **except that this rule shall not prohibit a member:**
>
> ...
>
> (3) From advancing the costs of prosecuting or defending a claim or action or otherwise protecting or promoting the client's interests, the repayment of which may be contingent on the outcome of the matter. Such costs within the meaning of this subparagraph (3) shall be limited to all reasonable expenses of litigation or reasonable expenses in preparation for litigation or in providing any legal services to the client." (emphasis added).

The unambiguous language of Rule 4-210(A)(3) permits an attorney to agree to pay a client's reasonable litigation costs. (See *Ripley v Pappadopolous* (1994) 23 Cal.App.4th 1616, 1626, fn. 17 noting that the rule allows "an attorney to advance the costs of prosecuting or defending a claim and also permits repayment to be made contingent on the outcome of the matter.") Additionally, State Bar Formal Opinion 1976-38 provides that Rule 4-210 does not prohibit a lawyer from advancing expenses for which the client is responsible, even when there is a substantial likelihood that the client does not have the means to pay them. (Re-cited by analogy in State Bar Formal Opinion 1994-138). Los Angeles County Bar Association Formal Opinion No. 495 concludes that "an attorney may advance the reasonable expenses of prosecuting or defending an action notwithstanding the client's refusal to pay such costs, after they were incurred and even though the expenses might not be repaid."

- 2 -

Rule 4-210(A)(3) does not expressly address indemnifications of clients for costs if the client does not prevail. However, such an indemnification is not materially different from advancing costs repayment of which is contingent on the outcome[1]. To the extent an indemnification is not considered a form of advancing costs through an indirect, potential or ancillary obligation, the Committee believes it is permitted either at the inception of a matter or during the course of litigation under the general exception of "otherwise protecting or promoting the client's interests." Further, since the indemnified expenses of litigation are to be decided by the trial court as mandated under Code of Civil Procedure §§ 1033 and 1034[2], the amount determined by the court is presumptively reasonable and, therefore, permissible under Rule 4-210(A).

A related question is whether a proposed indemnification of costs agreement between an attorney and client implicates ethical consideration under Rule of Professional Conduct 3-310(B)[3] by creating an adverse interest between the attorney and the client. In the Committee's

---

[1] Unlike costs that are advanced by an attorney, an indemnification by an attorney could still result in liability to the client where the attorney fails to pay, however, the Committee does not believe that this potential distinction is relevant to the applicability of the Rule 4-210(A)(3) exception.

[2] C.C.P. §§ 1033 and 1034 state that "1033. (a) Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case.

(b) When a prevailing plaintiff in a limited civil case recovers less than the amount prescribed by law as the maximum limitation upon the jurisdiction of the small claims court, the following shall apply:

(1) When the party could have brought the action in the small claims division but did not do so, the court may, in its discretion, allow or deny costs to the prevailing party, or may allow costs in part in any amount as it deems proper.

(2) When the party could not have brought the action in the small claims court, costs and necessary disbursements shall be limited to the actual cost of the filing fee, the actual cost of service of process, and, when otherwise specifically allowed by law, reasonable attorneys' fees. However, those costs shall only be awarded to the plaintiff if the court is satisfied that prior to the commencement of the action, the plaintiff informed the defendant in writing of the intended legal action against the defendant and that legal action could result in a judgment against the defendant that would include the costs and necessary disbursements allowed by this paragraph."

"1034. (a) Prejudgment costs allowable under this chapter shall be claimed and contested in accordance with rules adopted by the Judicial Council.

(b) The Judicial Council shall establish by rule allowable costs on appeal and the procedure for claiming those costs."

[3] Rules of Professional Conduct, Rule 3-310(b): "(B) A member shall not accept or continue representation of a client without providing written disclosure to the client where:

(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or

- 3 -

view, the proposed agreement does not create a legal, business, financial, professional or

personal relationship with the client in violation of Rule 3-310(B)(1) or Rule 3-310(b)(3), nor

does it create a legal, business, financial or professional interest in the subject matter of the

representation in violation of Rule 3-310(B)(4). In this instance, the interests of the attorney and

the client are the same as they are with any other type of cost or expense associated with a

contingency case. The specter of increasing costs, as the case proceeds to trial or in the face of a

Code of Civil Procedure § 998[4] offer, are present in every contingency case. The proposed

---

(2) The member knows or reasonably should know that:
(a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and
(b) the previous relationship would substantially affect the member's representation; or
(3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or
(4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation."

[4]C.C.P. § 998 provides that "998. (a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.
(b) Not less than 10 days prior to commencement of trial or arbitration (as provided in Section 1281 or 1295) of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. Any acceptance of the offer, whether made on the document containing the offer or on a separate document of acceptance, shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the accepting party.
(1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. In the case of an arbitration, the offer with proof of acceptance shall be filed with the arbitrator or arbitrators who shall promptly render an award accordingly.
(2) If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration.
(3) For purposes of this subdivision, a trial or arbitration shall be deemed to be actually commenced at the beginning of the opening statement of the plaintiff or counsel, and if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence.
(c) (1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant.
(2) (A) In determining whether the plaintiff obtains a more favorable judgment, the court or arbitrator shall exclude the postoffer costs.
(B) It is the intent of the Legislature in enacting subparagraph (A) to supersede the holding in Encinitas Plaza Real v. Knight, 209 Cal.App.3d 996, that attorney's fees awarded to the prevailing party were not costs for purposes of this section but were part of the judgment.
(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs.

indemnity does not present a different ethical result and is simply a contractual expansion of the scope of reasonable expenses of litigation to be encompassed with the ambit of Rule 4-210(A)(3).

This opinion is advisory only. The committee acts on specific questions submitted ex parte and its opinions are based only on such facts as are set forth in the questions submitted.

---

(e) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the costs under this section, from the time of the offer, shall be deducted from any damages awarded in favor of the plaintiff. If the costs awarded under this section exceed the amount of the damages awarded to the plaintiff the net amount shall be awarded to the defendant and judgment or award shall be entered accordingly.

(f) Police officers shall be deemed to be expert witnesses for the purposes of this section. For purposes of this section, "plaintiff" includes a cross-complainant and "defendant" includes a cross-defendant. Any judgment or award entered pursuant to this section shall be deemed to be a compromise settlement.

(g) This chapter does not apply to either of the following:

(1) An offer that is made by a plaintiff in an eminent domain action.

(2) Any enforcement action brought in the name of the people of the State of California by the Attorney General, a district attorney, or a city attorney, acting as a public prosecutor.

(h) The costs for services of expert witnesses for trial under subdivisions (c) and (d) shall not exceed those specified in Section 68092.5 of the Government Code.

(i) This section shall not apply to labor arbitrations filed pursuant to memoranda of understanding under the Ralph C. Dills Act (Chapter 10.3 (commencing with Section 3512) of Division 4 of Title 1 of the Government Code)."

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I, W. Harding Drane, Jr., hereby certify that on October 29, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

James L. Holzman (#663)
J. Clayton Athey (#4378)
Eric M. Andersen (#4376)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

I hereby certify that on October 29, 2007, I have Electronically Mailed the attached document to the following non-registered participants:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
Allyson B. Baker
COHEN, MILSTEIN, HAUSFELD
   & TOLL , P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
mhausfeld@cmht.com
dsmall@cmht.com
blandau@cmht.com
abaker@cmht.com

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
tdove@furth.com
aturan@furth.com

Michael P. Lehmann
COHEN, MILSTEIN, HAUSFELD
   & TOLL , P.L.L.C.
One Embarcadero Center, Suite 526
San Francisco, CA  94111
mlehmann@cmht.com

A/72289381.1

Steve W. Berman
Anthony D. Shapiro
HAGENS BERMAN SOBOL
　SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
tony@hbsslaw.com

Guido Saveri
R. Alexander Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com


By:   _/s/ W. Harding Drane, Jr._
　　　Richard L. Horwitz (#2246)
　　　W. Harding Drane, Jr. (#1023)
　　　POTTER ANDERSON & CORROON
　　　LLP
　　　Hercules Plaza, 6th Floor
　　　1313 North Market Street
　　　P.O. Box 951
　　　Wilmington, DE 19899
　　　984-6000
　　　rhorwitz@potteranderson.com
　　　wdrane@potteranderson.com

828188v1/29282