IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | MDL Docket No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>INTEL CORPORATION,<br><br>　　　　　　　　　Defendant. | Civil Action No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' RULE 53(g) OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION COMPELLING PRODUCTION OF CLASS PLAINTIFFS' FINANCIAL DOCUMENTS (DM 7)**

PRICKETT, JONES & ELLIOTT, P.A.
James L. Holzman (#663)
J. Clayton Athey (#4378)
Laina M. Herbert (#4717)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com

*Interim Liaison Counsel for the Class Plaintiffs*

Dated: November 8, 2007

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Michael P. Lehmann
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA  94104
Telephone:  (415) 433-2070
Facsimile:  (415) 982-2076

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Co-Lead Counsel for the Class Plaintiffs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ................................................................................................................ 2

      A.    Standard of Review:  The Special Master's Proceedings Pertain to
            "Discovery Disputes" not "Evidentiary Hearings" as Were Conducted
            in Cases Cited by Intel; as Such *De Novo* Review Properly Includes
            Declarations of Plaintiffs Experts .......................................................................... 2

      B.    The So-Called "Split" of Authority on this Issue is Illusory ................................... 4

      C.    It is Undisputed That Third Circuit Decisions, Other Case Authority
            and the Ethical Rules all Permit a Non-Litigant to Fund Cases and Raise
            no Concern Regarding Potential Coercion ............................................................. 9

      D.    The 2003 Amendments to Federal Rule of Civil Procedure 23 and
            Post-1993 Third Circuit Precedent Support the Conclusion That
            the Special Master's Order Should be Overruled .................................................. 14

      E.    Fee Agreements Should not be Disclosed to Intel and are Available
            for *In Camera* Inspection if the Court Deems Them Potentially Relevant
            to its Decision ...................................................................................................... 17

      F.    Intel's Arguments About the Unprivileged Nature of Tax Returns are
            Unavailing ........................................................................................................... 18

III.  CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Page**

### CASES

*In Re: Application of the OBA to Amend the Rules of Prof'l Conduct,*
2007 OK 22, _ P.3d __ (Okla. April 17, 2007) ............................................................. 12

*Bartelson v. Dean Witter & Co.,*
86 F.R.D. 657 (E.D. Pa. 1980) .......................................................................... 8

*Blake v. Chemlaw Servs. Corp.,*
*No. 86-3413,* 1988 U.S. Dist. Lexis 534, 1988 WL 6151
(E.D. Pa. Jan. 26, 1988) .................................................................................. 4, 5

*Bujnicki v. Am. Paving & Excavating, Inc.,*
No. 99-CV-0646S (SR), 2004 U.S. Dist. Lexis 8869,
2004 WL 1071736 (W.D.N.Y. Feb. 25, 2004) .................................................. 19

*Cantor v. Perelman,*
2006 U.S. Dist. Lexis 86329, 2006 WL 3462596 (D. Del. Nov. 30, 2006) ...................... 9

*Commissariat a l'Energie Atomique v. Samsung Elecs. Co.,*
No. 03-484-MPT, 2007 U.S. Dist. Lexis 76716, 2007 WL 3002975 (D. Del. Oct.
16, 2007) ......................................................................................................... 2

*Cooper v. Hallgarten & Co.,*
34 F.R.D. 482 (S.D.N.Y. 1964) ....................................................................... 18

*D'Aurizio v. Borough of Palisades Park,*
899 F. Supp. 1352 (D.N.J. 1995) ..................................................................... 20

*In re DaimlerChrysler AG Sec. Litig.,*
216 F.R.D. 291 (D. Del. 2003) .......................................................................... 7

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ........................................................................................ 17

*Federal Sav. & Loan Ins. Corp. v. Krueger,*
55 F.R.D. 512 (N.D. Ill. 1972) ......................................................................... 17

*In re Fedex Ground Package Sys. Employment Practices Litig.,*
No. 3:05-MD-527 RM, 2006 U.S. Dist. Lexis 67760, 2006 WL 2604599 (S.D.
Ind. Sept. 6, 2006) .......................................................................................... 16

*In re Fedex Ground Package Sys. Employment Practices Litig.,*
No. 3:05-MD-527 RM, 2006 U.S. Dist. Lexis 92636, 2006 WL 3755311 (S.D.
Ind. Dec. 14, 2006) .......................................................................................... 16

*Ferraro v. General Motors Corp.,*
105 F.R.D. 429 (D.N.J. 1984) ..................................................................... 17, 19

*Gangemi v. Moor,*

268 F. Supp. 19 (D. Del. 1967) .......................................................................................17

*Gattegno v. PricewaterhouseCoopers, LLC*,
    205 F.R.D. 70 (D. Conn. 2001) ......................................................................................18

*Ghorbani v. Pacific Gas & Elec. Co. Group Life Ins.*,
    100 F. Supp. 2d 1165 (N.D. Cal. 2000)....................................................................12, 13

*Goodrich v. E. F. Hutton Group., Inc.*,
    No. 8279, 1993 U.S. Dist. Lexis 44, 1993 WL 94456 (Del. Ch. Mar. 24, 1993)...............9

*Guse v. J. C. Penney Co, Inc.*,
    409 F. Supp. 28 (E.D. Wis. 1976) ....................................................................................8

*Howard's Rexall Stores v. Aetna*,
    No. 00-CV-31-B, 2001 U.S. Dist. Lexis 6029 (D. Me. May 8, 2001) ...............................6

*In re KMart Corp. Sec. Litig.*,
    No. 95-CS-75584, 1996 U.S. Dist. Lexis 22609 (E.D. Mich. 1996)...................................6

*Klein v. Checker Motors Corp.*,
    87 F.R.D. 5 (N.D. Ill. 1979) .............................................................................................8

*LaSalle Nat. Bank v. Perelman*,
    141 F. Supp. 2d 451 (D. Del. 2001) .................................................................................9

*Lazy Oil Co. v. Witco Corp.*,
    166  F.3d 581 (3d Cir. 1999) ....................................................................................14, 15

*In re ML-Lee Acquisition Fund II, L.P.*,
    149 F.R.D. 506 (D. Del. 1993) ....................................................................................1, 6

*Major v. Microsoft Corp.*,
    60 P.3d 511 (Okla. Civ. App. 2002)................................................................................12

*Mascol v. E&L Transp. Inc.*,
    No. CV-03-3343 CPS, 2005 U.S. Dist. Lexis 32634 (E.D.N.Y. June 29, 2005) ..........4, 16

*Mendez v. Radec Corp.*,
    232 F.R.D. 78 (W.D.N.Y. 2005) ....................................................................................16

*Mitchell-Tracey v. United Gen. Life Ins. Co.*,
    No. AMD-05-1428, 2006 U.S. Dist. Lexis 1308, 2006 WL 149105 (D. Md. Jan.
    9, 2006)...........................................................................................................................16

*Moeller v. Taco Bell Corp.*,
    220 F.R.D. 604 (N.D. Cal. 2004) ...................................................................................16

*Packer v. Hansen*,
    No. 98-30, 1999 U.S. Dist. Lexis 17618, 1999 WL 1038343 (E.D. Pa. Nov. 12,
    1999)...............................................................................................................................19

*In re Paoli R.R. Yard PCB Litig.*,
    221 F.3d 449 (3d Cir. 2000) ...........................................................................................11

*Pearson v. Miller,*
    211 F.3d 57 (3d Cir. 2000) ......................................................................................20

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
    226 F.R.D. 492 (M.D. Pa. 2005) ...........................................................................16

*Riley v. City of Chester,*
    612 F.2d 708 (3d Cir. 1979) ...................................................................................20

*Rode v. Emory Air Freight Corp.,*
    76 F.R.D. 229 (W.D. Pa. 1977) .......................................................................*passim*

*Rolex Employees Ret. Trust v. Mentor Graphics Corp.,*
    136 F.R.D. 658 (D. Or. 1991)...................................................................................5

*Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports and Recreation,*
    165 F.R.D. 108 (M.D. Fla. 1996) .............................................................................7

*Sanderson w. Winner,*
    507 F.2d 477 (10th Cir. 1974) ..........................................................................17, 18

*Schaffer v. The Timberland Co.,*
    No. 94-634 JD, 1996 U.S. Dist. Lexis 5372 (D.N.H. Mar. 19, 1996) .................9

*Taberer v. Armstrong World Indus., Inc.,*
    954 F.2d 888 (3d Cir. 1992) .....................................................................................3

*Trammel v. United States,*
    445 U.S. 40 (1980) ................................................................................................18

*United States v. Bonanno Organized Crime Family of La Cosa Nostra,*
    119 F.R.D. 625 (E.D.N.Y. 1988)...........................................................................19

*Vanderbilt v. Geo-Energy Ltd.,*
    725 F.2d 204 (3d Cir. 1983) ..............................................................................9, 13

*Walker v. Rent-A-Center, Inc.,*
    No. 5:02CV3, 2006 U.S. Dist. Lexis 72232,
    2006 WL 2860533 (E.D. Tex. Oct. 3, 2006) .....................................................16

*Wei v. Bodner,*
    127 F.R.D. 91 (D.N.J. 1989) .................................................................................20

*William T. Thompson Co. v. General Nutrition Corp., Inc.,*
    671 F.2d 100 (3d Cir. 1982) ...................................................................................20

## CODES/RULES

28 U.S.C. § 1924, Fed. R. Civ. P. 54...........................................................................11

28 U.S.C. § 636 ...............................................................................................................3

28 U.S.C. § 636(b)(1)(A)..................................................................................................3

28 U.S.C. § 636(b)(1)(B) ................................................................................................ 3

28 U.S.C. § 636(b)(1)(C) ................................................................................................ 3

Fed. R. Civ. P. 23(a)(4) ................................................................................................. 1

Fed. R. Civ. P. 11 ....................................................................................................... 14

Fed. R. Civ. P. 23 .................................................................................................... 5, 14

Fed. R. Civ. P. 23(g) ........................................................................................... 1, 7, 15

Fed. R. Civ. P. 54 ....................................................................................................... 11

Fed. R. Civ. P. 54(d)(1) .............................................................................................. 11

Fed. R. Evid. 501 ....................................................................................................... 19

Fed. R. Evid. 1101(c) .................................................................................................. 19

## MISCELLANEOUS

Oklahoma Bar Association Legal Ethics Advisory Opinion, *Notice: OBA Legal Ethics
   Advisory Opinion 2007-OK LEG ETH 01* (May 12, 2007),
   http://okbar.org/news/news07/opinion0701.htm ................................................. 12

## I.    INTRODUCTION

Intel's Opposition to Plaintiffs' Objections to the Special Master's Report and Recommendation ("Opposition" or "Opp.")[1] is most notable for what it does ***not*** address.  Intel ignores that the "weight" of authority since the passage of the 1983 Model Rule 1.8(e)(1) ***holds*** that a class representative's personal finances are not relevant to the determination of "adequacy" under Fed. R. Civ. P. 23(a)(4).  Using 1983 as a frame of reference, there is no "split of authority" as Intel asserts and many of the cases to which it cites antedate the Model Rules or proffer only *dicta*.  Intel ignores the argument that production of tax returns from class representatives – consumer purchasers of computers powered by Intel microprocessors – would effectively eviscerate this field of antitrust law because of its oppressive and chilling nature and effect.  Intel ignores the unique facts and circumstances of *In re ML-Lee Acquisition Fund II, L.P.*, 149 F.R.D. 506 (D. Del. 1993) – a securities-fraud case – which prompted the Court's "legitimate concern" about the adequacy of the alleged "professional plaintiffs" to represent the class.  Intel ignores that this Court has already made a determination under Fed. R. Civ. P. 23(g) that Plaintiffs' co-lead counsel have available a "greater pool of resources" that "could prove to be especially beneficial in a large and complex case such as this."  Fed. R. Civ. P. 23(g) did not exist at the time of the *ML-Lee* decision.  Finally, Intel ignores that – aside from *Rode v. Emory Air Freight Corp.*, 76 F.R.D. 229 (W.D. Pa. 1977) and *ML-Lee* – it can cite no other case for the proposition that the threat of funding revocation is a ground for finding a class representative's financial capacity to be relevant.

Intel's submission is largely procedural in that it seeks to exclude expert declarations properly filed by Class Plaintiffs, ignoring that the procedures the parties and Special Master are

---

[1] Class Plaintiffs note here that the Court entered an order on October 29, 2007 (D.I. 634 in MDL No. 05-1717) adopting the Special Master's Report and Recommendation ("R&R") based on the assumption that Class Plaintiffs' had not filed objections to the R&R.  Class Plaintiffs moved for reconsideration because, in fact, Plaintiffs' objections were timely filed (D.I. 614 in MDL No. 05-1717).  As set forth in Class Plaintiffs' motion for reconsideration (D.I. 637 in MDL No. 05-1717), which Intel does not oppose, it appears that the Court may not have detected Class Plaintiffs' objections due to an apparent docket entry numbering error in the Court's electronic case filing system.

operating under here govern "discovery disputes" and did not contemplate nor involve

"evidentiary hearings" such as those conducted in the principal case relied upon by Intel.

As a final prefatory point, Intel has been highly critical of the fact that Plaintiffs have not

produced the fee agreements themselves. Opp. at 1-2. In response, Interim Counsel hereby offer

to make a representative set of fee agreements available for *in camera* review by the Court

should it be deemed necessary to the determination of this discovery dispute.

## II.    ARGUMENT

**A.    Standard of Review: The Special Master's Proceedings Pertain to "Discovery Disputes" not "Evidentiary Hearings" as Were Conducted in Cases Cited by Intel; as Such *De Novo* Review Properly Includes Declarations of Plaintiffs Experts**

Intel's chief argument is procedural, to wit, that the Court should not consider the

declarations of Bruce Green and David Rosenberg as they constitute "new evidence." Opp. at

4-6 (citing *Commissariat a l'Energie Atomique v. Samsung Elecs Co.*, 2007 U.S. Dist. Lexis

76716, at *6, 2007 WL 3002975, at *2 (D. Del. Oct. 16, 2007)). But as the quote cited by Intel

makes clear, "particularly when *evidentiary* proceedings occurred before the Special Master" the

Court need not consider "new" evidence. Opp. at 5 (citing *Commissariat*; emphasis added).

That is not the situation now before the court as no such "evidentiary proceedings" below is at

issue.

*Commissariat* involved an "evidentiary hearing," complete with a schedule for document

discovery, presentation of organizational charts, "a due date for identification by the parties of

any fact witnesses expected to testify at the evidentiary hearing, along with the nature of their

expected testimony; and deposition dates for any fact witnesses, the court-appointed expert and

the parties' expert witnesses. The hearing and submission of relevant evidence occurred on

April 21, 2006...." 2007 U.S. Dist. Lexis 76716, at *4. The objector then sought a second

bite by introducing new declarations to the district court, which the court, in its discretion,

rejected because the Special Master had already conducted a full *evidentiary hearing*.

Intel ignores, however, that while the parties' stipulation in this litigation empowers the

Special Master to handle "Discovery Disputes" – no similar stipulation has been entered into that

governs "evidentiary hearings." The current matter is solely governed by the "Procedures for the

Handling of ***Discovery Disputes*** Before Special Master" (D.I. 222):[2]

> WHEREAS, it is in the interest of all parties to streamline the
> discovery process and to facilitate the efficient and expeditious
> resolution of discovery disputes:
>
> NOW THEREFORE, the following procedures shall
> govern the management of discovery and the handling of
> discovery disputes ....

The Order then goes on to provide that "Opposition letter briefs shall be served no later than

five (5) days following service of the letter application and shall not exceed four (4) pages,

single-spaced, unless the Special Master permits otherwise."

In entering into this stipulation, the parties did not intend for "discovery disputes" to

mushroom into full evidentiary hearings. There are no provisions in the Stipulation covering

discovery disputes authorizing the parties to elicit live testimony or take depositions.

Intel also cites *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 904 (3d Cir. 1992)

(quoted in *Commiseriat*) attempting to draw a parallel between a "*de novo* determination" under

28 U.S.C. § 636(b)(1)(C) of the "Federal Magistrate Judges Act" and how this Court should

apply that more deferential "determination" standard in reviewing the Special Master's decision,

which it mischaracterizes as a "*de novo* hearing." Opp. at 10. But Intel omitted from its citation

to *Taberer* the preceding and companion subsection, *i.e.*, 28 U.S.C. § 636(b)(1)(B) (emphases

added): "... a judge may also designate a magistrate judge to conduct hearings, including

***evidentiary hearings***" on ***dispositive motions***. See 28 U.S.C. § 636(b)(1)(A), where dispositive

motions therein may be heard under the procedures set forth in § 636(b)(1)(B) which include

preparation of findings of fact and recommendations that are in turn subject to *de novo*

determination under subsection (C). In other words where there has been a full-blown

evidentiary hearing as authorized under § 636(b)(1)(B), a *de novo* determination then follows. In

contrast, the Special Master here has not been empowered to conduct "evidentiary hearings" a

power enjoyed by Magistrate Judges under 28 U.S.C. § 636 and, given that these Objections

---

[2] References to "D.I. ___ " are to docket items in MDL No. 05-1717-JJF unless otherwise noted.

pertain to a "discovery dispute," the Plaintiffs have not had the "ample opportunity to present relevant evidence" to the Special Master as Intel asserts. Opp. at 5.[3]

Both Professors Rosenberg and Green are highly respected scholars on the topics of civil procedure and legal ethics.[4]  Their declarations have frequently been both admitted and considered by the courts on complex issues involving the intersection of legal ethics and Rule 23. *See* Class Plaintiffs' Memorandum in Opposition to Defendant Intel Corporation's Objections and Motion to Strike Declarations of Bruce A. Green and David Rosenberg, filed herewith, at 2-4.  There is no procedural impediment to this Court's considering those declarations.

**B.    The So-Called "Split" of Authority on this Issue is Illusory**

Intel insists there is a "split of authority" on the relevance and discoverability of personal financial information as it pertains to the determination of adequacy.  Opp. at 1, 7.  But Intel ignores the clear weight of authority following the 1983 passage of ABA Model Rule 1.8(e)(1) that attorneys may advance the costs of litigation, recovery being contingent on the outcome of the litigation. *See* Plaintiffs' Objections at 9-21.  Intel instead cites *only* three post-1983 cases, none of which actually detract from the efficacy of Plaintiffs' arguments.  Neither *Mascol v. E&L Transp. Inc.*, No. CV-03-3343 CPS, 2005 U.S. Dist. Lexis 32634 (E.D.N.Y. June 29, 2005), nor *Blake v. Chemlaw Servs. Corp.*, No. 86-3413, 1988 U.S. Dist. Lexis 534, 1988 WL 6151 (E.D. Pa. Jan. 26, 1988), compelled class representatives to produce tax returns and other documents related to their personal finances.  Furthermore, in neither case was the court's discussion as to the "large" or "nationwide" size of the class even remotely part of the holding as the proposed class representatives were deemed adequate in both cases. *See Mascol*, 2005 U.S. Dist. Lexis 32634, at *21 (class representatives found adequate and "[f]urthermore, Plaintiffs' counsel are offering their services in the hopes of recovering costs and attorneys fees from the

---

[3] Intel also challenges the admissibility of the expert declarations submitted by plaintiffs in support of their Objections. Plaintiffs address those contentions in a separate opposition to Intel's motion to strike.

[4] Plaintiffs' Objections at 3-4, and accompanying Declarations of Professors Rosenberg and Green.

defendants." *Mascol's dicta* addresses class representatives' ability to finance notice in nationwide class actions based exclusively on cases from the 1970s); *Blake*, 1988 U.S. Dist. Lexis 534, at *6-7, 1988 WL 6151, *3 (class representatives found adequate because "[t]he named plaintiffs' interests are not antagonistic to those of the class" – "nationwide scope" of the action was not any part of the holding).

The only other post-Model Rule case relied upon by Intel is *Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658 (D. Or. 1991). Just as in *Mascol*, the court in *Rolex* relied exclusively on pre-Model Rule cases, concluding that the class representative must be able to "independently fund this litigation." *Id.* at 666. Because the plaintiff lacked ability to do that, it was determined that the "suit is being financed by [plaintiff's] counsel," which the court deemed improper. *Id.* The Model Rule is clear, however, that counsel can finance class litigation.

The theoretical threat of coercion from possible revocation of funding by class counsel has only been raised twice, *i.e.*, in *ML-Lee* and the 1977 decision in *Rode*. Intel points to no other authority – no case law, nothing from the 2003 Amendments to Fed. R. Civ. P. 23, nothing from any jurisdiction such as Delaware which adopted Model Rule 1.8(e)(1) – to support its assertion that such a threat of funding revocation is either "real" (Opp. at 10) or a reason to compel disclosure of a class representative's private, personal finances. Surely in the three decades since the first reference to such a "threat of coercion" appeared in *Rode*, and if this sort of "threat" had real substance, then Intel could have unearthed some opinion from either federal or state jurisprudence discussing an ***actual*** case finding that class counsel had somehow "coerced" a class representative through threat of funding revocation. Such activity would surely have been the subject of a judicial finding, if this concept of such a "threat" was anything more than ephemeral.

Furthermore, these two cases are distinguishable. With respect to *ML-Lee,* ignoring both the special circumstances of that discovery dispute and Class Plaintiffs' discussion thereof (Plaintiffs' Objections at 37-38), Intel concludes that *ML-Lee* is "on all-fours with the present

case." Opp. at 12. But it ignores the fact that *ML-Lee* arose in a unique factual context, one that appears to have decisively influenced the Court's decision to allow discovery in that case.

In *ML-Lee*, defendant mutual funds sought tax returns and other "investment" information principally to bolster their accusation that class representatives were "professional plaintiffs" who filed "strike suits." The Court observed that a class representative had been involved in seven other class actions within a two-year timeframe. 149 F.R.D. at 508. This Court was concerned that such "professional plaintiffs" would not be adequate class representatives:

> A plaintiff who purchases securities for the sole purpose of
> bringing strike suits in an effort to coerce settlements or to affect
> stock prices and without the intent of vigorously prosecuting the
> litigation *is not an adequate representative of the proposed class*.
> [*Id*. (emphasis added).]

This Court's ultimate decision to order disclosure of the plaintiffs' personal finances stemmed directly from the history of that particular plaintiff: "The Court is persuaded that this information is sufficient to warrant further inquiry into Plaintiffs' adequacy to represent the class." *Id.*

It was only after expressing this threshold concern about the prior litigation history of the particular proffered class representative and his counsel and the possible implications for this history for his "adequacy" that the Court turned next to scrutinizing his case-funding arrangements:

> When, as here, a Defendant *demonstrates* a *legitimate concern*
> about the ability of a Plaintiff to successfully lead a particular
> class, *limited* discovery into a Plaintiff's financial history is
> warranted. [*Id*. at 508-09 (emphasis added).]

As Plaintiffs have noted in their prior brief, other courts have distinguished *ML-Lee* on these same facts.[5]

---

[5] *See Howard's Rexall Stores v. Aetna*, No. 00-CV-31-B, 2001 U.S. Dist. Lexis 6029, at *24 (D. Me. May 8, 2001) (*ML-Lee* "concerns the issue of whether a named plaintiff can adequately represent his class if his true intent is to maintain a strike suit"); *In re KMart Corp. Sec. Litig.*, No. 95-CS-75584, 1996 U.S. Dist. Lexis 22609, at *20-21 (E.D. Mich. 1996) (characterizing *ML-Lee* as ruling that "plaintiff who had brought several class action suits within past two years with same counsel in four actions warranted further inquiry into qualifications to represent

In contrast to *ML-Lee,* here Intel has not "demonstrated" any grounds or other "legitimate concern" that calls into question the abilities of the Class Plaintiffs adequately to represent the class, particularly in light of the Fed. R. Civ. P. 23(g) proceedings which the Court has already conducted. When the Court conducted the Rule 23(g) hearings assessing the suitability of the Interim Class Counsel Firms to prosecute this litigation, including their financial ability to advance costs, the issue of the possibility of threat of coercion as voiced in *ML-Lee* never arose. The Court did not raise any concern whatsoever that this group of Interim Counsel ***might*** someday coerce the class representatives by threat of funding revocation. This Court has addressed class certification many times since *ML-Lee* without ever once mentioning such a potential risk of coercion, and has certified such class actions, each time without ordering any named putative class plaintiffs to produce evidence of their individual financial ability to cover all class costs and expenses. *See, e.g., In re DaimlerChrysler AG Sec. Litig.,* 216 F.R.D. 291, 299-300 (D. Del. 2003).[6]

Also distinguishable is Intel's other authority, *Rode,* a case of first impression that, unlike the situation here, arose in the context of Title VII's fee-shifting provision, which permitted an award of attorneys fees to a prevailing defendant that can demonstrate plaintiff's bad faith in bringing the discrimination suit. *See, e.g., Rode,* 76 F.R.D. at 230, 232 n.4 ("[i]f it be held that the financial status of a representative plaintiff is not discoverable, then every class action brought under Title VII presents grave problems. By utilizing an indigent class representative the defendant can be assured that any award of costs and attorneys fees at the conclusion of suit under Section 706(k) of Title VII will be meaningless, while at the same time such a representative in no way prejudices either plaintiff's case or his attorney's potential fee recovery"). The court in *Rode* observed that this was indeed the first time a court was required

---

class"); *Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports and Recreation,* 165 F.R.D. 108, 111 (M.D. Fla. 1996) (same).

[6] *ML-Lee* is also distinguishable because the factual record in this case, unlike in *ML-Lee,* rules out any risk of coercion. *See* Plaintiffs' Objections at 37-38.

to address the unique intersection of a Title VII class action and an agreement to advance costs. *Id.* at 230- 31 & n.3.[7]

The court concluded that this fee shifting provision "would be completely abrogated if financial data of the representative plaintiff were deemed irrelevant." *Id.* at 231-32. The court was concerned that "indigent" nominal plaintiffs could bring frivolous class suits without "fear of reprisal" in the hopes of "blackmailing" the corporate defendant into settling under threat of "unmanageable and expensive litigation." *Id.* at 232 & n.5. The court also concluded that the defendant in that case had a direct interest in whether or not plaintiff would be able to reimburse defendant for its attorneys' fees as provided by the relevant Title VII section or for costs if defendant should prevail. *Id.* at 232.[8]

To the extent the court in *Rode* considered the plaintiff counsel's agreement to advance costs, the court specifically viewed the agreement with skepticism. *Id.* at 231 & n.1. Further, employing what is now simply legally outmoded analysis, the court condemned the advancement agreement itself as creating a "potentially dangerous situation" because "the attorney is able to assume primary control over the lawsuit." *Id.* at 232-33. The court concluded, "The result of advancing litigation costs is that the Rule 23 responsibility of adequately representing the class becomes entrusted to the attorney rather that the litigant." *Id.* at 233.

There are no similar concerns in the present case. There is no statutory fee-shifting provision at issue, and in any event, class counsel has agreed to fund all costs, including taxable costs, just as three decades of Rule 23 and Model Rule jurisprudence since *Rode* confirms they can. See Plaintiffs' Objections at 9-16.

---

[7] The court noted the only other Title VII class action that involved an agreement to advance costs (*Guse v. J. C. Penney Co, Inc.*, 409 F. Supp. 28 (E.D. Wis. 1976), held that "an inquiry into the assets of plaintiff's attorney would be proper under appropriate circumstances," but that court was not presented with the issue of discovery into plaintiff's resources. *Rode*, 76 F.R.D. at 231 n.3.

[8] Other courts have distinguished *Rode* on this basis. *See, e.g., Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657, 674 (E.D. Pa. 1980); *Klein v. Checker Motors Corp.*, 87 F.R.D. 5, 6 (N.D. Ill. 1979).

**C.    It is Undisputed That Third Circuit Decisions, Other Case Authority and the Ethical Rules all Permit a Non-Litigant to Fund Cases and Raise no Concern Regarding Potential Coercion**

On the issue of what ethical rules do and do not permit, Intel's opposition brief is perhaps again remarkable for what it does *not* say. The Third Circuit makes clear that there is nothing "inherently perfidious" in having someone other than the litigant fund the litigation and "[i]t is not uncommon in class actions to have persons other than the named plaintiff pay the costs of litigation." *Vanderbilt v. Geo-Energy Ltd.*, 725 F.2d 204, 210 (3d Cir. 1983). Intel does not disagree; indeed, it does not even address the point. Furthermore, the Delaware Court of Chancery has concluded that a plaintiffs' ability to fund the litigation was not relevant to his adequacy as a class representative where counsel agrees to fund the litigation, repayment contingent on the outcome of the litigation, as permitted by Delaware Lawyers' Rules of Professional Conduct Rule 1.8(e) ("Delaware Rules"). *Goodrich v. E. F. Hutton Group., Inc.*, No. 8279, 1993 U. S. Dist. Lexis 44, at *7, 1993 WL 94456, at *3 (Del. Ch. Mar. 24, 1993). Intel likewise neither disputes nor addresses *Goodrich*, an opinion that is both consistent with *Vanderbilt* and persuasive here.[9] Nor does Intel dispute the persuasiveness of *Schaffer v. The Timberland Co.*, No. 94-634 JD, 1996 U.S. Dist. Lexis 5372, at *26-27 (D. N.H. Mar. 19, 1996), where the district court, relying on Model Rule 1.8(e), specifically found that counsel's assumption of the obligation to finance a securities class action "will protect the unnamed class members, and in the event of a fee award or monetary sanction, will protect the defendants from financial loss should the defendants ultimately prevail" and that "the named plaintiffs are not rendered inadequate by virtue of their financial arrangements with counsel."

Instead, by mischaracterizing Plaintiffs' argument as one that merely asserts that the Model and Delaware Rules render *ML-Lee* inapplicable and that financial information is irrelevant (Opp. at 8), Intel disingenuously attempts first to minimize the full significance of the

---

[9] *See Cantor v. Perelman*, No. 97-586, 2006 U.S. Dist. Lexis 86329, 2006 WL 3462596, at *6 (D. Del. Nov. 30, 2006) (relying on Delaware Court of Chancery authority as persuasive); *LaSalle Nat. Bank v. Perelman*, 141 F. Supp. 2d 451, 463 (D. Del. 2001) (citing Delaware Court of Chancery authority as persuasive, particularly where no contradictory authority was offered).

ethical rules and then seeks to obscure the thrust of Plaintiffs' arguments going to the heart of the Court's decision in *ML-Lee* – coercion. Although Intel concedes that both the Model and Delaware Rules specifically permit counsel to fund litigation, it ignores the fact that those rules raise *no* concern that such funding places a client in a position to be coerced by counsel. It further ignores that the Third Circuit in *Vanderbilt* likewise voiced *no* concern that the funding of litigation by someone other than the litigant would place that litigant in a position to be susceptible to coercion under a threat of funding revocation.

Intel also ignores Comments 10 and 13 to Model and Delaware Rules 1.8, both of which specifically contemplate that counsel will fund the costs and expenses of class action litigation, including the substantial costs of discovery and notice. Model Rule 1.8, cmts. 10, 13; Delaware Rule 1.8, cmts. 10, 13. It is an assault on logic to suggest, as Intel does, that the Model and Delaware Rules would specifically permit an attorney-client financing relationship in the class-action context that would in and of itself create a further or extraordinary conflict between counsel and the client such that the client would be susceptible to coercion under threat of revocation of funding by counsel. Furthermore, such a self serving conclusion runs afoul of both *Vanderbilt* and the freedom of counsel and the client to negotiate the terms of their contingent-fee agreement. Nothing in the Model or Delaware Rules requires a class representative to have the financial wherewithal to fund an antitrust class action. Intel does not disagree, nor does it provide any Third Circuit authority to the contrary.

It is undisputed that counsel may properly fund the substantial costs and expenses associated with a class action of this magnitude pursuant to a fee arrangement providing for repayment contingent upon the outcome of the litigation. As set forth above, such funding is specifically permitted by the Model and Delaware Rules, endorsed by the Third Circuit and approved by other case law cited by Plaintiffs. In the face of this legal reality, Intel protests that "no fee arrangement can properly cover *all* costs of this litigation" (Opp. at 11 (emphasis added)) and focuses its arguments on one particular type of costs – taxable costs.

According to Intel, Plaintiffs' financial resources are relevant because they may be responsible for taxable costs. But such a self-limiting argument thus simply ignores the only stated area of concern of the Court in *ML-Lee* – the threat of undue coercion upon the plaintiffs – a concern that did not involve or address the ability of plaintiff to satisfy a cost award. First, any award of taxable costs is purely speculative.[10]  Second, even if awarded, the amount of any such taxable costs pales in comparison to the magnitude of the costs and expenses already funded and to be funded by counsel in prosecuting this litigation, not to mention the enormous expenditure of attorney time by counsel. To suggest that the possibility of plaintiffs having to pay relatively trivial amount of speculative "taxable costs" creates an undue risk of coercion when undisputed authority makes clear that the expenditure of vastly larger amounts by class counsel on behalf of the plaintiffs does not create a coercive situation, is a claim which defies reason.

In claiming that a fee agreement cannot extend to taxable costs (Opp. at 9), Intel completely ignores case law to the contrary such as *Schaffer,* where the district court, in certifying the class, noted that counsel's agreement to finance the litigation will protect defendants from financial loss if they ultimately prevail and are awarded taxable costs. *Schaffer*, 1996 U.S. Dist. Lexis 5372, at *26-27.  As now Chief Judge Walker of the Northern District of California reasoned in determining whether a contingent-fee counsel in an ERISA lawsuit should be subject to liability for a prevailing defendant's fees and costs, counsel's potential liability for

---

[10] The obligation to pay taxable costs arises, if at all, at the conclusion of the litigation. Even assuming plaintiffs do not prevail, it is purely speculative that the court will award costs. An award of costs under Rule 54(d)(1) is subject to judicial discretion. Fed. R. Civ. P. 54(d)(1) ("costs other than attorney's fees shall be allowed as of course to the prevailing party *unless the court otherwise directs*" (emphasis added)); *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 458 (3d Cir. 2000). Moreover, a court may decline to award costs to the prevailing party if the non-prevailing party is indigent or unable to pay the award. *Id.* at 463.

Furthermore, the taxing of costs in this action is governed by 28 U.S.C. § 1924, Fed. R. Civ. P. 54, and Local Rules of this Court. Local Rule 54.1 carefully circumscribes the costs that may be awarded to the prevailing party. The Rule imposes limitations on taxing costs of deposition and trial transcript fees, witness fees, and exhibits to name a few. Other costs, such as those for jury consultants, focus groups, and the like are not taxable. Local Rule 54.1(b)(11) disallows other than enumerated costs unless supported by statute or binding court decision.

taxable costs is part of the "contingent fee bargain." *Ghorbani v. Pacific Gas & Elec. Co. Group Life Ins.*, 100 F. Supp. 2d 1165, 1170 (N.D. Cal. 2000) (fee-shifting statute).

As before, Intel continues to rely primarily on a ***draft*** Oklahoma Bar Association Legal Ethics Advisory Opinion, *Notice: OBA Legal Ethics Advisory Opinion 2007-OK LEG ETH 01* (May 12, 2007), http://www.okbar.org/news/news07/opinion0701.htm ("Oklahoma Opinion"). That reliance on such an insubstantial authority clearly underscores the weakness of Intel's argument. The draft Oklahoma Opinion still has not and may never become final particularly as Oklahoma Rule 1.8(e), on which the draft Opinion principally relies, is to be superseded effective January 1, 2008. Current Oklahoma Rule 1.8(e) is also substantially different[11] from Model and Delaware Rules 1.8(e) and the jurisdiction from which it emanates has no connection with this case.[12] Furthermore, the draft Opinion is not relevant; it evaluates a proposed agreement to indemnify ***attorneys fees*** and costs potentially awarded to a prevailing defendant[13]

---

[11] Rule 1.8(e), Oklahoma Rules of Professional Conduct, 5 O.S. 1993, CH. 1, App.3-A provides: "A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter." The rule does not include any provision for the indigent client or append Comments 10 and 13. The Oklahoma Supreme Court amended the Oklahoma Rules of Professional Conduct, effective January 1, 2008, by order dated April 9, 2007. *In Re: Application of the OBA to Amend the Rules of Professional Conduct*, 2007 OK 22, __ P. 3d __ (April 17, 2007), http://www.oscn.net/applications/oscn/deliverdocument.asp?citeid=448812. The new, amended Rule 1.8(e), effective January 1, 2008, is identical to Delaware Rule 1.8(e) and appends Comments 10 and 13. *In Re: Application of the OBA to Amend the Rules of Professional Conduct*, 2007 OK 22, __ P. 3d __ (April 17, 2007), http://www.oscn.net/applications/oscn/deliverdocument.asp?citeid=448812 (redline version).

[12] There are several significant connections between the Los Angeles Opinion and this case. Plaintiffs allege that "Intel's business acts and practices were centered in, carried out, effectuated and perfected mainly within the State of California. . . ." First Amended Consolidated Complaint ("FAC"), ¶ 260 (D.I. 108). Plaintiffs will seek certification of a nationwide class of consumers under California law. Absent such certification, Oklahoma consumers may no longer be a part of this litigation. Oklahoma law does not permit private, indirect purchaser lawsuits. *Major v. Microsoft Corp.*, 60 P.3d 511, 512-13 (Okla. Civ. App. 2002); Oklahoma Statutes Title 79, § 212. Plaintiffs hence do not allege an alternative Oklahoma subclass. *See* FAC, ¶¶ 291-315.

[13] *Compare* Oklahoma Opinion at 1318 (award of attorneys' fees and costs) *with* Los Angeles Opinion No. 517 at 1 (memorandum of costs filed).

(as with a fee-shifting statute), which is not an issue here.[14]  Finally, the rationale supporting the draft Opinion, based on a distinction between permissible "payment" for an indigent client and mere "advancement" for a non-indigent client,[15] is inconsistent with *Vanderbilt* where the Third Circuit concluded that in a class action both indigent and non-indigent clients should receive equal treatment.  Indeed, "[w]hen functioning as class plaintiffs in federal courts the rich are entitled to the same privileges as the poor." *Vanderbilt*, 725 F.2d at 210.

Equally unavailing are the two newly cited ethics opinions now relied upon by Intel.  It first misinterprets a 1985 Bar Association of San Francisco Opinion, stating parenthetically, that the "[r]ule allowing an attorney to advance costs in litigation does not include 'costs assessed against the client in the event of an unsuccessful outcome' and counsel should make clear in contracts with client that such costs 'are not included in the attorney's undertaking[.]'"  Opp. at. 11, quoting Bar Association of San Francisco Opinion 1985-2 at 5 & n.1 ("San Francisco Opinion").  The San Francisco Opinion, however, simply never addresses the propriety of contingency fee contracts that cover taxable costs.  It instead merely opines as to the propriety of the clause in the current California ethical rule that allows for the repayment of advanced costs to be contingent on the outcome of the litigation.  At the time of the 1985 Opinion, California Rule of Professional Conduct 4-210 did not yet exist; instead, its precursor, Rule 5-104 governed.  The only difference, one relevant here is that Rule 4-210 contains a clause that "the repayment of [advancement of costs] may be contingent on the outcome of the matter."  The Bar Committee thus read into Rule 5-104, the contingency clause that was later adopted by Rule 4-210.[16]

---

[14] Even the conclusion is contradicted by case law such as *Ghorbani* where the court held that the contingent fee bargain places financial responsibility for all expenses, including taxable costs and attorney fee awards, on the attorney when a case is brought under a fee shifting statute. *Ghorbani,* 100 F. Supp. 2d at 1167.

[15] Oklahoma Opinion at 1320, endnotes 1, 2, 5.

[16] The flaw in Intel's taxable cost argument is further highlighted by the San Francisco Bar's observation that "it is difficult to see how an agreement to bear costs in the event of an unfavorable result will compromise an attorney's judgment significantly more than the agreement to work for nothing. . . ." San Francisco Opinion at 4.  This same logic applies here. It is difficult to see how an agreement  to bear all costs creates a greater risk of coercion than an agreement to bear advanced costs only, particularly where, as here, the amount of taxable costs, if any, are miniscule relative to the costs and expenses of litigation.

The Florida Bar Association Opinion 96-3 (Feb. 15, 1997) ("Florida Opinion") now cited by Intel (Opp. at. 11) is equally unavailing. It has nothing to do with coercion but instead addresses whether an attorney can indemnify a client against costs assessed against the client pursuant to the state's Offer of Judgment statute, which likewise is not at issue here. The Florida Opinion reasons that because Fed. R. Civ. P. 11 sanctions can be levied solely against a client, the same should hold true for statutory costs assessed against the client. While theoretically a court could exclusively sanction a plaintiff, and preclude indemnification by the attorney, such a situation is, and would be, both speculative and obviously exceedingly rare and thus should not form the basis for authorizing an inquiry into a plaintiff's financial resources here and now.

Unlike the Oklahoma and Florida opinions, the Los Angeles Opinion Plaintiffs cited previously addresses the ethical implications of counsel's funding taxable costs, the particular costs which Intel claims cannot be funded by counsel here (Opp. at 11), concluding that indemnification of taxable costs is permissible and that an indemnification of costs agreement between and attorney and a client does not create an impermissible adverse interest between the attorney and client. The Los Angeles Opinion is consistent with both *Vanderbilt* and cases such as *Schaffer* and *Ghorbani*. Moreover, contrary to Intel's assertion (Opp. at 11 n.8), the California ethical rule is also consistent with the Model and Delaware Rules which contain the same obligation to protect and promote the client's interests. *See* Model Rules, Rule 1.3, cmt.1; Delaware Rules, Rule. 1, cmt. 1, effective July 1, 2003 ("[a] lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf").

**D.    The 2003 Amendments to Federal Rule of Civil Procedure 23 and Post-1993 Third Circuit Precedent Support the Conclusion That the Special Master's Order Should be Overruled**

Plaintiffs previously pointed out that the 2003 amendments to Fed. R. Civ. P. 23 and post-1993 Third Circuit precedent – particularly the decision in *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) – confirm that class counsel's primary duty is to the entire class rather than to any individual class representative, thus removing any conceivable threat of coercion to an individual class representative by class counsel's threatened revocation of funding. Plaintiffs'

Objections at 22-30. Intel never responds to this discussion of *Lazy Oil*, thus effectively conceding that point. It does respond to Plaintiffs' discussion of Rule 23(g), but its argument is unpersuasive. Intel essentially makes three points: (i) Rule 23(g) deals only with the adequacy of class counsel, not the adequacy of class representatives; (ii) Rule 23(g) does not change the law that class counsel have duties equally with respect to class members and class representatives and thus does not undermine *ML-Lee*; and (iii) post-2003 authorities continue to arrive at the same conclusion that this Court reached in *ML-Lee*. Opp. at 12-14. None of these arguments is persuasive.

On the first point, Rule 23(g) and Rule 23(a)(4) are not unrelated. The Advisory Committee notes to Rule 23(g) state that the new section recognizes the benefits of careful selection of class counsel to any class action's success:

> Subdivision (g) is new. It responds to the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action. Until now, courts have scrutinized proposed class counsel as well as the class representative under Rule 23(a)(4). ***This experience has recognized the importance of judicial evaluation of the proposed lawyer for the class, and this new subdivision builds on that experience rather than introducing an entirely new element into the class certification process***. Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while this subdivision will guide the court in assessing proposed class counsel as part of the certification decision. ***This subdivision recognizes the importance of class counsel, states the obligation to represent the interests of the class, and provides a framework for selection of class counsel***. [Fed. R. Civ. P. 23(g) (Emphasis added.)]

The requirement under Rule 23(a)(4) that the "representative parties will fairly and adequately protect the interests of the class" is thus still tied into the notion that those representatives have retained well-qualified counsel. Rule 23(g) provides courts with the criteria by which to assess those qualifications.

As for Intel's second point, Intel concedes that the Advisory Committee Notes to Rule 23(g) make clear that class counsel's primary duty is to "represent the interests of the class," not the goals of a particular class representative. Opp. at 14. By defining class counsel's duty as

such, Rule 23(g) *requires* class counsel to resolve any conflicts in the class's favor, hence eliminating any hypothetical motive for class counsel to resolve conflicts via coercive threats against a balky class representative, such as cutting off funding. Moreover, Rule 23(g)'s requirement that a court consider class counsel's resources, as did the Court here, renders irrelevant any similar inquiry under Rule 23(a)(4) of the class representative. *See* Plaintiffs' Objections at 35-36.

Finally, Intel ignores the fact that courts in cases decided since the promulgation of Rule 23(g) have ruled that a named class representative's finances are either not discoverable or are not relevant to a class certification inquiry. *See, e.g., Mendez v. Radec Corp.*, 232 F.R.D. 78, 93 (W.D.N.Y. 2005); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 n.1 (M.D. Pa. 2005); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 612 (N.D. Cal. 2004); *Mitchell-Tracey v. United Gen. Life Ins. Co.*, 2006 U.S. Dist. Lexis 1308, at *3 n.2, 2006 WL 149105, at *1 n.2 (D. Md. Jan. 9, 2006); *In re Fedex Ground Package Sys. Employment Practices Litig.*, 2006 U.S. Dist. Lexis 67760, at *26-31, 2006 WL 2604599, at *3-4 (S.D. Ind. Sept. 6, 2006), *aff'd in relevant part*, 2006 U.S. Dist. Lexis 92636, at *25, *37-41, 2006 WL 3755311 at *5-6 (S.D. Ind. Dec. 14, 2006); *Walker v. Rent-A-Center, Inc.*, No. 5:02CV3, 2006 U.S. Dist. Lexis 72232, at *7-8, 2006 WL 2860533, at *2 (E.D. Tex. Oct. 3, 2006). Intel instead relies on a single post-2003 case: *Mascol.* Opp. at 8. The problem with such reliance is that the court granted class certification over an objection that Plaintiffs lacked the finances to support the litigation, saying: "Defendants also argue that plaintiffs have not shown 'that they have the financial resources to represent a class.' As a general rule however, the financial resources of a putative class representative should not preclude the representative from litigating for the putative class. *See, e.g., Rode v. Emery Air Freight Corp.,* 76 F.R.D. 229, 230 (W.D. Pa. 1977) ('One of the major advantages of the class action suit was intended to be the increased accessibility to the judicial system for individuals of all income levels')." *Mascol*, 2005 U.S. Dist. Lexis 32634, at *19-20, 2005 WL 1540145 at *6. None of these cases, including *Mascol*, relies on the coercion point discussed in *ML-Lee* and *Rode*.

**E.    Fee Agreements Should not be Disclosed to Intel and are Available for *In Camera* Inspection if the Court Deems Them Potentially Relevant to its Decision**

Ignoring Interim Counsel's declarations filed under oath as to their financial commitments made to their clients, Intel maintains that Interim Counsel should have voluntarily disclosed their clients' fee agreements. Intel cites only *dicta* from *Ferraro v. General Motors Corp.*, 105 F.R.D. 429, 434 (D.N.J. 1984), which is easily distinguished on the basis that the court explicitly recognized that ABA Model Rule 1.8(e)(1) had "not been adopted in this District," 105 F.R.D. at 433. Discovery of fee agreements was permitted because the disciplinary rule existing at the time required the client to be ultimately liable for litigation expenses.

The class representatives were at that time similarly obligated in *Sanderson w. Winner*, 507 F.2d 477 (10th Cir. 1974), yet the Circuit Court of Appeals issued the extraordinary writ of mandamus overturning a district court's order compelling production of fee agreements. The Tenth Circuit did not read the decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), as making "fee arrangements with lawyers a prescribed discovery subject." 507 F.2d at 479. The *Sanderson* court observed that fee agreements are not relevant and thus discoverable unless defendants obtain a judgment against the plaintiff:

> Defendant will have ample opportunity for discovery under Rule 69 F.R.C.P. if it obtains judgment. *See Federal Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512 (N.D. Ill. 1972); *Gangemi v. Moor*, 268 F.Supp. 19 (D. Del. 1967) (Both cases suggest that there is no right to discovery of assets until judgment is obtained. [507 F.2d at 480].

The discovery Intel seeks of class representatives' private, personal financial information in this consumer purchaser case is no more than a fishing expedition for irrelevant information and a thinly veiled attempt to intimidate and dissuade class representatives and thus should not be authorized. This is particularly so where the fee agreements themselves have not been the subject of a discovery request. While seeing no real legal basis for the sharing of its fee agreements with Intel, Plaintiffs note that class counsel in *Sanderson* had "expressed a willingness to reveal the fee agreement to the court *in camera*." *Id.* The court commented that "[w]e do not know whether this would be helpful, but if it is deemed desirable by the court and counsel we see

- 17 -

no objection to it." *Id.* Interim Counsel hereby makes this same offer of an *in camera* inspection to the Court. Having obtained consent from class representatives, Interim Counsel is prepared to submit their fee agreements to the Court for *in camera* inspection. *See:* November 8, 2007 Letter from James Holzman, Esq. to Honorable Justice Joseph J. Farnan, Jr., filed with this Reply.

## F.     Intel's Arguments About the Unprivileged Nature of Tax Returns are Unavailing

In Plaintiffs' Objections at 31-33, Class Plaintiffs argued: (i) as a matter of federal law, parties' tax returns are privileged or are at least subject to a heightened standard for production and (ii) that under state law, particularly that of California, a privilege is expressly recognized. Intel's response is that no privilege exists and state law is irrelevant. Opp. at 14-18.

On the first point, there have undoubtedly been federal cases that have declined to apply the term "privilege" to the judicial protection afforded tax returns. But the case law for decades has imposed a heightened standard in order to obtain such records. This standard was articulated as early as 1964 in *Cooper v. Hallgarten & Co.*, 34 F.R.D. 482 (S.D.N.Y. 1964). In *Cooper*, the court attempted to balance the policy favoring complete discovery and the policy disfavoring disclosure of confidential taxpayer information. It held that the production of tax returns should not be ordered unless (i) "it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder," and (ii) "there is a compelling need therefor because the information contained therein is not otherwise readily obtainable." *Id.* at 484.

In *Gattegno v. PricewaterhouseCoopers, LLC*, 205 F.R.D. 70, 72-73 (D. Conn. 2001), the district court recognized that this heightened standard amounted to a qualified privilege:

> This court believes that the additional protection afforded tax returns in civil discovery is aptly characterized as a "qualified privilege." First, Congress specifically left to the courts, "in light of reason and experience," the power to recognize evidentiary privileges. See Fed.R.Evid. 501. *See also Trammel v. United States*, 445 U.S. 40, 47 (1980) (interpreting Rule 501 as a congressional endorsement of further case-by-case development of the federal common law of privilege). This applies to privileges from discovery as well as traditional evidentiary privileges. *See, e.g.,* Fed.R.Evid. 1101(c) ("The rule with respect to privileges applies at all stages of all actions, cases, and proceedings")....

> Second, the two-part *Cooper* test, which has been adopted and
> followed by most courts – including those which do *not*
> characterize the protections as a "privilege," . . . is characterized by
> virtually the same features as tests for other qualified privileges . . .
> .
>
> In the court's view, there are sufficient grounds, and support, for
> the recognition of a qualified privilege for tax returns. If anything,
> Congress's passage of the 1976 Act only removed any doubt as to
> the protected nature of these documents. The court also believes
> that there is sufficient support for using the two-part *Cooper* test
> for determining the applicability of the qualified privilege in
> particular cases, both in this court . . . and others. [Citations and
> footnotes omitted.]

Other courts are in accord. *See, e.g., Bujnicki v. American Paving & Excavating, Inc.*,

No. 99-CV-0646S (SR), 2004 U.S. Dist. Lexis 8869, at *41, 2004 WL 1071736, at *14-15

(W.D.N.Y. Feb. 25, 2004).

Whether one characterizes the protection afforded tax returns as a qualified privilege

under federal law or something else,[17] Intel has made no showing to overcome it. Given the case

law discussed both in this reply and Plaintiffs' opening brief, tax returns are clearly not relevant

to the certification inquiry. But even assuming *arguendo* that they are, Intel has demonstrated no

compelling need for them. The information it seeks can be obtained through deposition

questions that elicit class representatives' general understanding of their obligations as class

representatives and their fee arrangements with their counsel. As the court stated in *Ferraro*,

105 F.R.D. at 434, one of the cases that Intel cites (Opp. at 9):

> The plaintiff will not be compelled to produce copies of his federal
> and state income tax returns for 1980 through 1983, nor will the
> plaintiff be required to testify regarding his personal financial
> resources and income. Such discovery, in the circumstances of this
> case in which counsel have agreed to advance the costs of litigation,
> is largely irrelevant to the issue of adequacy of representation.

---

[17] Even Intel's own cited cases support this point. *See United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988) ("courts, as a matter of policy, should be cautious in ordering their [tax returns'] disclosure."); *Packer v. Hansen*, No. 98-30, 1999 U.S. Dist. Lexis 17618, at *8, 1999 WL 1038343, at *3 (E.D. Pa. Nov. 12, 1999) ("[t]he Motion is denied to the extent that defendants seek the production of plaintiffs' tax returns, the Court finding that defendants have not shown a compelling need or why the same information is not discoverable by other means.").

> Whatever arguable relevance may be found in the facts regarding plaintiff's ability to reimburse his attorneys at the conclusion of the case is outweighed by the prospect of oppressiveness and embarrassment in the forced disclosure of such personal financial information.

As for the applicability of state law, Intel does not dispute that California law recognizes a privilege for tax returns (Opp. at 14) and that privilege ought to be afforded considerable weight in a case where California law is sought to provide the rule of decision for citizens of all 50 states and will provide the rule of decision for a significant portion of the putative class in any event. Cases in this circuit routinely consider state law policies in analyzing privilege issues in appropriate circumstances. *D'Aurizio v. Borough of Palisades Park*, 899 F. Supp. 1352, 1354 (D.N.J. 1995) (stating that courts should look to "state law analogies for the development of a federal common law of privileges."). *See also Pearson v. Miller*, 211 F.3d 57, 67 (3d Cir. 2000) ("[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal . . . policy."); *Riley v. City of Chester*, 612 F.2d 708, 715 (3d Cir. 1979) ("[i]n some cases [federal courts] may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect."); *Wei v. Bodner*, 127 F.R.D. 91, 95 (D.N.J. 1989) ("the state privilege should be considered . . . by balancing the need for discovery against the importance of [the privilege].").[18]  In this case, such appropriate circumstances exist.  Intel's blanket argument that state law privileges should be ignored here is therefore unavailing.

### III.    CONCLUSION

Plaintiffs respectfully request that the Court reject the Special Master's Report and Recommendation, deny Intel's Motion to Compel and order that Plaintiffs need not produce tax returns or other sensitive financial records.

---

[18] Intel cites *William T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100 (3d Cir. 1982) for the proposition that where state and federal claims are conjoined, federal privilege law controls.  Opp. at 15-16.  That decision, however, has to be read in light of later Third Circuit precedent cited above.  Moreover the court did say that "[o]ur holding does not, of course, preclude resort to state law analogies for the development of a federal common law of privileges in instances where the federal rule is unsettled." *William T. Thompson Co.*, 671 F.2d at 104. Here, as noted earlier, the federal law of privilege as to tax returns is unsettled.

Dated:  November 8, 2007

                                    PRICKETT, JONES & ELLIOTT, P.A.


                                    _____ /s/ James L. Holzman_____
                                    James L. Holzman (DE Bar # 663)
                                    J. Clayton Athey (DE Bar #4378)
                                    Laina M. Herbert (DE Bar #4717)
                                    1310 King Street
                                    P.O. Box 1328
                                    Wilmington, DE 19899
                                    (302) 888-6500
                                    jlholzman@prickett.com
                                    jcathey@prickett.com
                                    lmherbert@prickett.com

                                    *Interim Liaison Counsel for the Class Plaintiffs*

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Michael P. Lehmann
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA  94104
Telephone:  (415) 433-2070
Facsimile:   (415) 982-2076

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Co-Lead Counsel for the Class Plaintiffs*