# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | ) ) ) ) | MDL No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC. and AMD INTERNATIONAL SALES & SERVICE, LTD., | ) ) ) ) | C. A. No. 05-441-JJF |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| INTEL CORPORATION and INTEL KABUSHIKI KAISHA, | ) ) ) | |
| Defendants. | ) | |
| PHIL PAUL, on behalf of himself and all others similarly situated, | ) ) ) | C. A. No. 05-485-JJF |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| INTEL CORPORATION, | ) ) | |
| Defendant. | ) | |

**NOTICE OF TAKING DEPOSITION OF**
**INTEL CORPORATION AND INTEL KABUSHIKI KAISHA AND REQUEST FOR**
**PRODUCTION OF DOCUMENTS**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, plaintiffs Advanced Micro Devices, Inc. and AMD International Sales & Service,

Ltd. (collectively, "AMD") will take the deposition of defendants Intel Corporation and Intel

Kabushiki Kaisha (collectively, "Intel") on April 24, 2007, beginning at 9:30 a.m., at the offices

of O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, California, or at

such other time and place as the parties may agree.  The deposition will be recorded by

stenographic and sound-and-visual (videographic) means, will be taken before a Notary Public or

other officer authorized to administer oaths, and will continue from day to day until completed, weekends and public holidays excepted.

Reference is made to the "Description of Matters on Which Examination is Requested" attached hereto as Exhibit A and incorporated herein by this reference.  In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Intel is hereby notified of its obligation to designate one or more officers, directors, or managing agents (or other persons who consent to do so) to testify on its behalf as to all matters embraced in the "Description of Matters on Which Examination is Requested" and known or reasonably available to Intel.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rules 35(b) and 34 of the Federal Rules of Civil Procedure, AMD requests that Intel produce for inspection, copying and use at the deposition all of the documents and other tangible things in their possession, custody, or control and responsive to the "Categories of Documents and Tangible Things Requested for Production" attached hereto as Exhibit B and incorporated herein by reference.  Production shall take place at the time and place of the deposition (9:30 a.m. on April 24, 2007, at the offices of O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, California) or at such other time and place as the parties may agree.

RLF1-3137164-1

/s/ *Chad M. Shandler*
Jesse A. Finkelstein (#1090)
Frederick L. Cottrell, III (#2555)
Chad M. Shandler (#3796)
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Finkelstein@rlf.com
Cottrell@rlf.com
Shandler@rlf.com
Fineman@rlf.com
Attorneys for Plaintiffs Advanced Micro
  Devices, Inc. and AMD International Sales &
Service, Ltd.

OF COUNSEL:
Charles P. Diamond
  cdiamond@omm.com
Linda J. Smith
  lsmith@omm.com
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067
(310) 246-6800

Mark A. Samuels
  msamuels@omm.com
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
213-430-6000

Dated:  April 10, 2007

3

# EXHIBIT A

# EXHIBIT A

## DESCRIPTION OF MATTERS ON
## WHICH EXAMINATION IS REQUESTED

### I.

### DEFINITIONS

1.        "Intel" shall mean and refer collectively to defendants Intel Corporation and Intel

Kabushiki Kaisha, including their respective past and present officers, directors, agents,

attorneys, employees, consultants, or other persons acting on either of their behalf.

2.        This "Litigation" means and refers to the litigation in which this Notice of Taking

Deposition has been served.

3.        "Intel Custodians" means and refers to the approximately 1,027 individuals

identified by Intel on its Custodian List served on June 1, 2006, pursuant to the Stipulation and

Order Regarding Document Production entered by the Court in this Litigation.

4.        The "Special Master's Order" means and refers to the March 16, 2007 Order

Regarding Intel's Evidence Preservation Issues entered by Special Master Vincent J. Poppiti.

5.        "Litigation Hold Notices" means and refers to the means by which Intel

communicated its preservation obligations to Intel employees, including all oral, written or

electronic notices, reminders, or other communications by Intel to Intel Custodians or other Intel

employees.

6.        "Weekly Backup Tapes" means and refers to the backup tapes described by Intel

in its March 5, 2007 Letter Brief filed with the Court.

7.      "Complaint Freeze Tapes" means and refers to tapes generated by the "one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store emails" as described by Intel in its March 5, 2007 Letter Brief filed with the Court.

8.      "Intel's Remediation Plan" refers to the plan that Intel is required to submit on April 17, 2007, pursuant to the Special Master's Order.

## II.

## SUBJECT MATTER

1.      The existence, nature and details of any standard Intel corporate evidence preservation policies and practices applied in connection with actual or threatened litigation, or governmental or internal investigations, including the development and implementation of such policies and practices, the identity of those persons involved in the creation of such policies and practices, the reasons and rationale for such policies and practices, and any suspension or deviation from such policies and practices in connection with this Litigation or other litigations, or governmental or internal investigations, over the past ten years.

2.      The existence, details and application of all Intel corporate "auto-deletion" policies and practices applied to email or other electronic data, including the development and implementation of such policies and practices, the identity of those persons involved in the creation of such policies and practices, the reasons and rationale for such policies and practices, and any suspension or deviation from such policies and practices in connection with this Litigation or other litigations or investigations over the past ten years.

3.      The development and details of the "tiered process to identify and preserve potentially relevant paper and electronic records" referred to in Intel's March 5, 2007 letter to the Court, and any other overall Intel plan to preserve electronic and other data and documents relevant to this Litigation, including the design, implementation and monitoring of that process or plan and its execution, and the identity of those persons involved in the design, development or monitoring of Intel's compliance with or execution of that process or plan.

4.      The nature and details of any Intel efforts to ensure that information relevant to this Litigation was not subject to, or being deleted by, the "auto-delete" functions of any computer system or storage device operating with respect to or containing any Intel Custodian data, including the timing of those efforts and the persons involved in directing or carrying out those efforts.

2

5.    The preparation, timing, contents, and distribution of all Litigation Hold Notices issued by Intel in connection with this Litigation, including the identity of those persons involved in preparing, communicating or distributing such Litigation Hold Notices.

6.    Details concerning the discovery of any defects, deficiencies, errors or ambiguities in Litigation Hold Notices issued by Intel in connection with this Litigation, the identity of those persons discovering them, and the timing and nature of all steps taken following such discovery.

7.    The facts surrounding Intel's failure to timely issue Litigation Hold Notices to any Intel Custodian, the facts surrounding and timing of Intel's discovery of such failure, the identity of those persons discovering such failure, and the timing and nature of all steps taken following such discovery.

8.    The details and timing of all Intel efforts to monitor and ensure compliance with Litigation Hold Notices issued by Intel in connection with this Litigation, including the identity of those persons involved in such monitoring efforts.

9.    The details and circumstances concerning any known or suspected non-compliance with Litigation Hold Notices issued by Intel in connection with this Litigation, the facts and timing of Intel's discovery of such non-compliance, the identity of those persons discovering such non-compliance, and the timing and nature of all steps taken following such discovery.

10.    Any differences, deviations or discrepancies between Intel's Litigation Hold Notice activities and monitoring efforts in connection with this Litigation and its standard or customary practices and protocols.

11.    The details of Intel's "$10 million discovery management program" referenced in the March 16, 2007 article entitled *Intel Worker's Error Led to Lost E-Mail, Company Lawyer Says* (Bloomberg, New York, 2007-03-16 16:12), a copy of which is attached hereto as Attachment 1.

12.    Intel's harvest of Intel Custodians' data in this Litigation, including the harvest instructions and protocols employed and the identity of those persons involved in developing and executing such instructions and protocols.

13.    The operation, functionality, capabilities and implementation of Intel's Exchange journaling system and EMC-based archive, as described in letters dated March 20 and 28, 2007, from Intel attorney Robert E. Cooper.

14.    The nature and timing of Intel's efforts to migrate Intel Custodians' email accounts to dedicated servers, including the IT protocols used to migrate the data, the existence of records reflecting those migration efforts, and the specific dates of migration.

15.    The operation and functionality of, and internal Intel operational management responsibility for, dedicated servers operating with respect to or containing any Intel Custodian data.

16.    The facts and circumstances of any failure by Intel to migrate Intel Custodians' electronic data to dedicated servers, including the failure to migrate Intel

3

Custodians to dedicated servers in October or November 2005 as disclosed by Intel to the Court, AMD or Class Plaintiffs, the facts and timing surrounding Intel's discovery of such failures, the identity of those persons discovering such failures, and the timing and nature of all steps taken following such discovery.

17.    The operation and content of Intel's Weekly Backup Tapes, including Intel's practices and procedures for cataloguing and preserving Weekly Backup Tapes.

18.    The facts and circumstances concerning Intel's European IT Department's recycling of Weekly Backup Tapes (as described in the February 8, 2007 email from Intel attorney Robert E. Cooper to AMD attorney Charles P. Diamond, and in Intel's March 5, 2007 letter to the Court at page 2, footnote 1), as well as any other known or suspected recycling of backup tapes containing any Intel Custodian data.

19.    The facts and timing surrounding Intel's discovery of any actual or suspected recycling of Weekly Backup Tapes or other backup tapes containing any Intel Custodian data, the identity of those persons discovering such recycling, and the timing and nature of all steps taken following such discovery.

20.    The facts and circumstances concerning the preparation and transmission of the Excel spreadsheet relating to migration of Intel Custodians and/or their electronic data to dedicated exchange servers as described in Intel's March 5, 2007 letter to the Court, including the identity of those persons involved the creation and transmission of the spreadsheet, the facts, circumstances and timing surrounding Intel's discovery of the failure to migrate Intel Custodians identified on such spreadsheet, and the timing and nature of all steps taken following such discovery.

21.    The operation, content, preservation, maintenance, and restoration of, and internal Intel operational management responsibility for, Complaint Freeze Tapes containing any Intel Custodian data.

22.    The details of any disaster recovery backup systems, protocols or procedures in place at Intel since January 1, 2000, including backup tape system structure and design, backup tape rotation schedules and protocols, backup tape retention policies and practices, and backup tape restoration protocols.

23.    The facts and timing surrounding Intel's discovery of any actual or suspected loss or recycling of Complaint Freeze Tapes containing any Intel Custodian data (including without limitation those relevant to Intel's Munich, Germany operations), the identity of those persons discovering such loss or recycling, and the timing and nature of all steps taken following such discovery.

24.    The details of any steps, policies, practices or other measures undertaken by Intel to preserve the electronic data and other documents of departing Intel Custodians, including the details and timing of any Intel efforts to monitor or otherwise ensure compliance with such steps, policies, practices or measures.

25.    The facts surrounding any Intel failure or suspected failure to preserve the electronic data or other documents of departing Intel Custodians, the facts and timing surrounding Intel's discovery of such failures or suspected failures, the

4

identity of those persons discovering such failures, and the timing and nature of all steps taken following such discovery.

26. The accuracy of, and basis for, the representations made by Intel attorney John Rosenthal in his October 14, 2005 letter to AMD concerning Intel's evidence preservation.

27. The facts and circumstances underlying the disclosures and representations made by Intel to the Court regarding Intel's evidence preservation issues, including those contained in Intel's March 5, 2007 letter to the Court.

28. The facts and circumstances underlying the disclosures and representations made in Intel's disclosures to AMD and Class Plaintiffs pursuant to the Special Master's Order, including without limitation Intel's March 16, March 20, March 28, March 29, April 5, April 17, and April 27, 2007 letters and disclosures.

29. Intel's Remediation Plan submitted pursuant to the Special Master's Order, including the basis, rationale, and justifications for, and assumptions underlying, the terms and proposals set forth in Intel's Remediation Plan.

30. Intel's IT infrastructure relevant to the support, storage (including email storage conventions), maintenance and backup of electronic data relevant to this Litigation, including data residing on hard drives or other off-network media.

31. Intel's remediation and backup data restoration efforts, including volumes and nature of data restored and vendors and processes used.

**Attachment 1**

## ATTACHMENT 1

Intel Worker's Error Led to Lost E-Mail, Company Lawyer Says

2007-03-16 16:12 (New York)

By Phil Milford and Carlyn Kolker

    March 16 (Bloomberg) -- Intel Corp. e-mail sought for an antitrust lawsuit with Advanced Micro Devices Inc. was wiped out because of a computer technician's error, Intel's top lawyer told a group of attorneys.

    About 150 of 400 Intel employees who were supposed to be told to keep their e-mail didn't get the message, General Counsel D. Bruce Sewell told a March 14 gathering of corporate lawyers. Intel officials sent ``a two-page spreadsheet'' to information technology technicians, and one ``didn't recognize the second tab'' and omitted the 150 names, Sewell said.

    ``We've got a $10 million discovery-management program, and yet that human interface can often be overlooked,'' Sewell told the lawyers. His advice: ``Talk to your IT department.''

    The missing-mail problem arose during evidence-gathering in Advanced Micro's 2005 suit against Intel, the world's largest maker of microprocessors. Santa Clara, California-based Intel informed the trial judge this month that ``human error'' caused ``some document retention lapses.'' Advanced Micro countered that ``massive amounts'' of e-mail ``may be irretrievably lost.''

    Sewell didn't name Intel executives who didn't get the message to save the mail.

Antitrust Claim


Intel Chairman Craig Barrett and Chief Executive Officer
Paul Otellini apparently weren't warned to retain documents,
Advanced Micro lawyer Linda Smith said in a March 12 conference
in Wilmington, Delaware. The meeting was before court Special
Master Vincent Poppiti, who is investigating the document problem
for U.S. District Judge Joseph J. Farnan Jr.

Advanced Micro, based in Sunnyvale, California, the second-
largest microprocessor-maker, sued Intel in 2005 claiming the
larger company created a monopoly by coercing computer-makers to
buy its products.

Sewell talked to the lawyers at a meeting of the Argyle
Executive Forum in New York.

``It's not accurate to say information is never destroyed''
on a computer, Sewell told the lawyers' gathering. Data on a
server can be overwritten, ``and that data is gone,'' he said.

Each of Intel's 90,000 employees generates as many as 100
e-mail messages a day, ``a staggering number of gigabytes,''
Sewell said. Intel is now going to ``a fully automated system''
to back up e-mail and avoid future losses, he said.

Chuck Mulloy, an Intel spokesman, declined to comment
further. Drew Prairie, an Advanced Micro spokesman, didn't
immediately return phone and e-mail messages.

Shares of Intel, with $35.3 billion in 2006 sales, rose
1 cent to $19.15 at 4 p.m. in Nasdaq Stock Market composite
trading. Advanced Micro, with $5.64 billion in sales last year,
rose 8 cents to $14.01 on the New York Stock Exchange.

     The case is Advanced Micro Devices Inc. v. Intel Corp., CA
05CV441, U.S. District Court, District of Delaware (Wilmington).


--With reporting by Ian King in San Francisco. Editor: Carter.


Story illustration: For a Bloomberg link to the case
docket and documents, see {NXTW BBLS DD X1OQVL4TDRRK <GO>}. For a
graph of Intel's sales and earnings, see
{INTC US <Equity> DES5 <GO>}. For a menu of Bloomberg legal
resources, see {BLAW <GO>}. To read today's top legal news, see
{TLAW <GO>}.


To contact the reporters on this story:
Phil Milford in Wilmington, Delaware,
at +1-302-661-7615 or pmilford@bloomberg.net;
Carlyn Kolker in New York
at +1-212-617-4056 or ckolker@bloomberg.net.


To contact the editor responsible for this story:
Patrick Oster at +1-212-617-4088 or poster@bloomberg.net.


LA3:1131706.1

# EXHIBIT B

# EXHIBIT B

## CATEGORIES OF
## DOCUMENTS AND TANGIBLE THINGS
## REQUESTED FOR PRODUCTION

### DEFINITIONS

1.      "Intel" shall mean and refer collectively to defendants Intel Corporation and Intel

Kabushiki Kaisha, including their respective past and present officers, directors, agents,

attorneys, employees, consultants, or other persons acting on either of their behalf.

2.      This "Litigation" means and refers to the litigation in which this Notice of Taking

Deposition and request for Production of Documents and Tangible Things has been served.

3.      "Intel Custodians" means and refers to the approximately 1,027 individuals

identified by Intel on its Custodian List served on June 1, 2006, pursuant to the Stipulation and

Order Regarding Document Production entered by the Court in this Litigation.

4.      The "Special Master's Order" means and refers to the March 16, 2007 Order

Regarding Intel's Evidence Preservation Issues entered by Special Master Vincent J. Poppiti.

5.      "Litigation Hold Notices" means and refers to the means by which Intel

communicated its preservation obligations to Intel employees, including all oral or written

notices, reminders, or other communications by Intel to Intel Custodians or other Intel

employees.

6.      "Weekly Backup Tapes" means and refers to the backup tapes described by Intel

in its March 5, 2007 Letter Brief filed with the Court.

7.      "Complaint Freeze Tapes" means and refers to tapes generated by the "one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store e-mails" as described by Intel in its March 5, 2007 Letter Brief filed with the Court.

8.      "Intel's Remediation Plan" refers to the plan that Intel is required to submit on April 17, 2007, pursuant to the Special Master's Order.

9.      "Documents" shall mean and include all "writings," "recordings" or "photographs" as those terms are defined in Rule 1001 of the Federal Rules of Evidence. Without limiting the generality of the foregoing, the term "documents" includes both hard copy documents as well as electronically stored data-files including email, instant messaging, shared network files, and databases.  With respect to electronically stored data, "documents" also includes, without limitation, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage device, etc.) stored as an "active" or backup file, in its native format.

## INSTRUCTIONS

1.      These requests call for the production of all responsive documents that are within the possession, custody or control of Intel, including its officers, directors, agents, attorneys, employees, and other persons acting on Intel's behalf.

2.      If any document covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, please furnish a log providing the following information with respect to each such withheld

2

document: date; author; recipients; general subject matter; and legal basis upon which the document has been withheld.

3.    These requests shall be deemed continuing so as to require further and supplemental production in accordance with F.R.C.P. 26(e).

## REQUESTS

1.  Documents sufficient to describe fully any standard Intel corporate evidence preservation policies and practices applied in connection with actual or threatened litigation, and/or governmental or internal investigations.

2.  Documents sufficient to describe fully the operation, purpose and application of Intel's automatic deletion policies and practices applied to email or other electronic data.

3.  Documents sufficient to describe fully how Intel's automatic deletion policies and practices have operated with respect to the email or other electronic data of each Intel Custodian, including the specific interval or period of time (whether 35 days, 45 days, 60 days or another period) each Intel Custodian's email or other electronic data was subjected to such automatic deletion.

4.  Documents sufficient to describe fully the "tiered process to identify and preserve potentially relevant paper and electronic records" developed by Intel and referred to on page 1 of Intel's March 5, 2007 letter to the Court.

5.  Documents sufficient to evidence fully all efforts undertaken by Intel to ensure that information relevant to this Litigation was not subject to, or being deleted by, the "auto-delete" functions of any computer system or storage device operating with respect to or containing any Intel Custodian data.

6.  All documents constituting or evidencing communications by Intel to any Intel Custodian informing them that if they did not act affirmatively to preserve their email and/or other electronic data, it would be automatically deleted pursuant to an "auto-delete" function.

7.  Documents sufficient to evidence fully the timing, content, distribution and identity of the recipients of all Litigation Hold Notices issued by Intel in connection with this Litigation, including the "hundreds of employees" to whom Litigation Hold Notices were sent as described on page 2 of Intel's March 5, 2007 letter to the Court.

8.  Documents sufficient to show the "basic form of notice that had been used in

previous Intel litigation," as referenced on page 2 of Intel's March 5, 2007 letter to the Court.

9. Documents sufficient to evidence fully the timing, content, distribution and identity of the recipients of the "retention notices" sent out "on a rolling basis, throughout 2005, 2006 and 2007," as referenced on page 2 of Intel's March 5, 2007 letter to the Court.

10. Documents sufficient to evidence fully any and all efforts by Intel to monitor, assure and/or enforce compliance with Litigation Hold Notices, including without limitation the efforts referred to in Intel's March 5, 2007 letter to the Court and in the February 8, 2007 email of Intel attorney Robert E. Cooper.

11. All documents evidencing or concerning Intel's discovery of any known or suspected defects, deficiencies, errors or ambiguities in Litigation Hold Notices issued by Intel in connection with this Litigation.

12. Documents sufficient to evidence fully the "additional follow-up program" Intel instituted in or after October 2006 to "make sure Intel custodians were complying with the retention instructions," as referred to in the February 8, 2006 email of Intel attorney Robert E. Cooper.

13. Documents sufficient to evidence fully Intel's protocols, instructions, systems and practices for harvesting Intel Custodians' data.

14. Documents sufficient to show the operation, functionality, capabilities and implementation of Intel's Exchange journaling system, as described in letters dated March 20 and 28, 2007, from Intel attorney Robert E. Cooper.

15. Documents sufficient to show the operation, functionality, capabilities, and implementation of the EMC-based product, "EmailXtender", "DiskXtender" and "Centera," as referenced at page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

16. Documents sufficient to describe fully and show the results of the "beta testing" undertaken with respect to the "archiving system," as described on page 6 of Intel's March 5, 2007 letter to the Court, including documents sufficient to show the basis for the statement that "[v]endor testing at the time of installation validated that the Archive was properly capturing email from the Exchange journaling system according to the parameters and design of the EMC software/hardware," as stated at page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

17. All documents related to Intel's procurement from EMC of the "archive system" as described on page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper including, without limitation, any request for proposal by Intel and request for proposal response by EMC, and any contracts between Intel and EMC relating thereto.

18. Documents sufficient to show fully the design, architecture, implementation and functionality of the "archive system" system described on page 1 of the letter dated March 20, 2007, from Intel attorney Robert E. Cooper.

19. All documents constituting or reflecting communications with, or instructions to, Intel's IT group pertaining to the migration of, or failure to migrate, Intel employees to dedicated servers for purposes of this Litigation.

20. All documents evidencing or pertaining to the facts and circumstances under which some Intel Custodians "were inadvertently not migrated to the server in 2005 and some, who were late identified, were not migrated upon such identification," as referenced on page 2, footnote 1 of Intel's March 5, 2007 letter to the Court.

21. All documents evidencing or pertaining to the facts and circumstances under which "custodians added after the first 900 were not migrated to the [dedicated e-mail] servers," as referenced in the February 8, 2007 email from Intel attorney Robert E. Cooper.

22. Documents sufficient to show when and how Intel learned that some Intel Custodians "were not migrated to the server" as stated on page 2, footnote 1 of Intel's March 5, 2007 letter to the Court.

23. Documents sufficient to describe fully Intel's policies and practices with respect to the creation, preservation and cataloguing of Weekly Backup Tapes.

24. All documents constituting or reflecting communications with, or instructions to, Intel's IT group pertaining to the creation, preservation and cataloguing of Weekly Backup Tapes, including specifically the "instructions to [sic] the IT Department to back up these [dedicated] servers on a weekly basis going forward and retain the back up tapes for purposes of this case" as described in the February 8, 2007 email of Intel attorney Robert E. Cooper.

25. Documents sufficient to describe fully the "routine back-up recycling procedures" as set forth on page 2, footnote 1 of Intel'sMarch 5, 2007 letter to the Court and in the email dated February 8, 2007, from Intel attorney Robert E. Cooper.

26. All documents evidencing or pertaining to the recycling of Weekly Backup Tapes by Europe Intel's IT department, and Intel's discovery thereof, as referenced in the email dated February 8, 2007, from Intel attorney Robert E. Cooper.

27. Documents sufficient to describe Intel's disaster recovery backup systems protocols or procedures in place since January 1, 2000, including backup tape system structure and design, backup tape rotation schedules and protocols, backup tape retention policies and practices, and backup tape restoration protocols.

28. Documents sufficient to show fully the timing, protocol, extent and methodology of Intel's creation, preservation and cataloguing of the Complaint Freeze Tapes,

including specifically the instructions to "preserve a one time company-wide snapshot of email and other electronic documents that were stored on Intel's servers, including Exchange servers that store emails" as described in Intel's March 5, 2007 letter to the Court.

29. A full inventory of all Intel Complaint Freeze Tapes, including the identity of the Intel Custodian's data contained on each such tape.

30. All documents relating to any actual or suspected loss or recycling of Complaint Freeze Tapes containing any Intel Custodian data (including without limitation those relevant to Intel's Munich, Germany operations), and Intel's discovery thereof.

31. All documents relating to the failure to instruct certain Intel Custodians to preserve relevant data, and Intel's discovery thereof, as described on pages 4 and 5 of Intel's March 5, 2007 letter to the Court.

32. All documents relating to Intel's failure to timely provide Litigation Hold Notices or retention notices, and Intel's discovery thereof, as described in pages 4 and 5 of Intel's March 5, 2007 letter to the Court.

33. All documents evidencing or relating to the steps taken by Intel following discovery of its failure to timely provide Litigation Hold Notices or retention notices to any Intel Custodian, and the timing of such steps.

34. All documents evidencing, referring or relating to the failure or suspected failure of any Intel Custodian to comply with a Litigation Hold Notice or retention instruction, including the timing and means by which it was discovered.

35. Documents sufficient to fully show Intel's actions, plans, processes, procedures, and protocols for preventing the loss or destruction of Intel Custodian data belonging to terminated Intel employees, including "Intel's policies requiring collection of electronic information from departing employees subject to litigation holds" as described at page 5 of Intel's March 5, 2007 letter to the Court.

36. All documents evidencing or discussing Intel's failure or suspected failure to preserve the data of Intel Custodians identified for lay-off, redeployment, separation or termination prior to the effective date of such lay-off, redeployment, separation or termination.

37. Documents sufficient to show when and how Intel learned that "terminated employees' documents may not have been saved," as set forth at page 3 of Intel's March 5, 2007 letter to the Court, including documents evidencing what Intel Custodian data was lost or destroyed.

38. Documents sufficient to show when and how Intel learned of each of the "inadvertent mistakes in implementation" of its "tiered preservation process," as stated on page 3 of Intel's March 5, 2007 letter to the Court.

39. Documents sufficient to show when and how Intel "discovered further inadequacies in preserving emails," as stated in the February 8, 2007 email from Intel attorney Robert E. Cooper.

40. Documents sufficient to fully show the nature, timing and details of Intel's "preliminary review" as described on page 7 of Intel's March 5, 2007 letter to the Court.

41. All documents evidencing or relating to the nature, purpose and timing of the investigation reflected in the draft spreadsheet provided by Intel counsel to AMD counsel on February 22, 2007.

42. All documents evidencing or reflecting any Intel Custodians' mistaken belief that Intel's IT group was retaining and preserving their email, and the timing and means by which such mistaken belief was discovered by Intel.

43. All documents that support or form the bases for the disclosures made and submitted by Intel pursuant to the Special Master's Order.

44. All documents that support, form the basis for, or are cited or referred to in Intel's Remediation Plan submitted pursuant to the Special Master's Order, including all documents that show the basis, rationale, and justifications for, and assumptions underlying, the terms and proposals set forth in Intel's Remediation Plan.

45. Documents sufficient to identify and describe Intel's IT infrastructure relevant to the support, storage (including email storage conventions), maintenance and backup of electronic data relevant to this Litigation, including data residing on hard drives or other off-network media.

46. All documents that evidence or relate to Intel's remediation and backup data restoration efforts, including all documents that show the volumes and nature of data restored and the vendors and processes used.

LA3:1131631.4

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2007, I electronically filed the foregoing document with

the Clerk of Court using CM/ECF and have sent by Hand Delivery to the following:

Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899

James L. Holzman, Esquire
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899-1328

I hereby certify that on April 10, 2007, I have sent by Federal Express the foregoing

document to the following non-registered participants

Darren B. Bernhard, Esquire
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Robert E. Cooper, Esquire
Daniel S. Floyd, Esquire
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071-3197

/s/ *Chad M. Shandler*
Chad M. Shandler (#3796)
shandler@rlf.com