IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSSOR<br>ANTITRUST LITIGATION | )<br>)<br>)   MDL Docket No. 05-1717 (JJF)<br>) |
| PHIL PAUL, on behalf of himself and all<br>others similarly situated,<br><br>           Plaintiffs,<br>    v.<br><br>INTEL CORPORATION,<br><br>           Defendant. | )<br>)<br>)<br>)   C.A. No. 05-485 (JJF)<br>)<br>)   CONSOLIDATED<br>)<br>)<br>)   **DM5**<br>) |

**FRY'S OBJECTION TO AND REQUEST TO MODIFY SPECIAL MASTER'S
REPORT AND RECOMMENDATIONS REGARDING ALLOCATION OF FEES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Nonparty Fry's Electronics, Inc.*

OF COUNSEL:

Robert W. Stone
Michael D. Powell
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
650.801.5000

Dated:  January 7, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................2

ARGUMENT......................................................................................................................4

    I.    FRY'S CONDUCT WAS IN GOOD FAITH AND THE OUTCOME OF THIS DISPUTE DEMONSTRATES THAT FRY'S CONDUCT WAS NOT A "WASTE OF TIME"........................................4

    II.    NO AUTHORITY HAS BEEN PRESENTED WHEREBY SANCTIONS HAVE BEEN IMPOSED ON A NON-PARTY DEPONENT ........................................................................................7

CONCLUSION..................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Corder v. Howard Johnson & Co.*,
    53 F.3d 225 (9th Cir. 1994) ................................................................................................ 8-9

*Moten v. Bricklayers, Masons and Plasterers Int'l Union of America*,
    543 F.2d 224 (D.C. Cir. 1976) ................................................................................................8

*Pennwalt Corp. v. Duran-Wayland, Inc.*,
    708 F.2d 492 (9th Cir. 1983) ...................................................................................................5

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) .................................................................................................................8

*SECO Nevada v. McMordie (In re Holloway)*,
    884 F.2d 476 (9th Cir. 1989) ..............................................................................................3, 8


**RULES**

Fed. R. Civ. P. 37 ................................................................................................................ 3-4, 9

Fed. R. Civ. P. 45 ................................................................................................................. 4-5, 8

Fed. R. Civ. P. 53 ................................................................................................................. 1, 3-4

# **INTRODUCTION**

Fry's Electronics is a privately held business and a relatively small outlet for retail sales of computer systems at issue in the underlying antitrust litigation. As a privately held company, Fry's does not publicly disclose any of its financial information, including the sales and transaction information sought by Class Plaintiffs. As a result, Fry's enjoys a competitive advantage over the larger, publicly traded retailers as it is able to prevent its competitors from learning what volume of sales Fry's has at any given point in time, or from determining what pricing and incentives Fry's is able to negotiate from the computer manufacturers.

Fry's is not a party to the Intel antitrust proceedings. Despite its non-party status, the Special Master has determined that Fry's should be required to pay one half of the Special Master's fees and costs incurred in connection with a motion to compel documents brought by Class Plaintiffs. Fry's has asserted that Federal Rule of Civil Procedure 53 does not authorize the allocation of a special master's fees to a non-party.[1] Nevertheless, the Special Master relied on the Court's inherent authority to sanction parties or nonparties in recommending that Fry's be sanctioned $39,618.21 (representing 50% of the Special Master's fees and costs incurred in this Discovery Matter No. 5).

Fry's respectfully objects to the Special Master recommendation that Fry's, a non-party, be sanctioned $39,618.21. During the parties' extensive meet-and-confer discussions, Fry's legitimately sought a narrowing of Class Plaintiffs' unreasonably broad document requests as well as a modification to the existing protective order to include an "Outside Counsel Only"

---

[1]   The Special Master determined that "[w]hile Fry's arguments on this issue are persuasive . . . the Special Master need not reach this question." *See* Declaration of Michael D. Powell ("Powell Decl," filed herewith), Ex. 1.

designation to prevent Fry's most sensitive trade secret information from being disseminated to in-house attorneys at AMD and Intel.

The inequity of sanctioning Fry's in this case is underscored by the outcome of these proceedings. Fry's initially faced nineteen separate document requests seeking nearly every internal record related in any way to every computer purchase and sale from every one of Fry's 30+ stores for the past seven years. As a result of its negotiations with Class Plaintiffs, Class Plaintiffs ultimately accepted (as full satisfaction of the subpoena) a very limited set of documents concerning just four brands of computers in response to just two of the original nineteen requests. Moreover, Class Plaintiffs also agreed during the negotiations to additional safeguards beyond those provided in the Court-ordered protective order.

Fry's therefore requests that the Court sustain Fry's objection and order that the Special Master's fees and costs be allocated among the parties (Intel, AMD and Class Plaintiffs), rather than non-party Fry's.

## FACTUAL AND PROCEDURAL BACKGROUND

The fees in question were incurred by the Special Master in connection with a discovery dispute wherein Class Plaintiffs sought to compel non-party Fry's Electronics, Inc. to produce certain trade secret sales transaction data.[2] On May 25, 2007, Fry's received an invoice from the Special Master indicating that a portion of the Special Master fees had been allocated to Fry's. Powell Decl., Ex. 2 [May 25, 2007 Invoice]. On June 11, 2007, Fry's emailed the Special Master asking whether the allocation to Fry's was in error. Powell Decl., Ex. 3 [June 11 Email].

---

[2] The importance of this data to Fry's is highlighted by the fact that Fry's promptly retained outside counsel upon Class Plaintiffs' filing of its motion to compel and asked to be heard on these issues in person in Delaware.

In response, the Special Master invited the Class Plaintiffs to respond. Powell Decl., Ex. 4 [June 13 Email from Special Master].

Thereafter, on June 25, 2007, Class Plaintiffs submitted a letter brief to the Special Master in support of their position that half of the Special Master's fees should be allocated to Fry's. Powell Decl., Ex. 5. In its July 10, 2007 response, Fry's explained that none of the cases relied upon by Class Plaintiffs were applicable to the allocation of a master's fees under Rule 53 to a non-party. Powell Decl., Ex. 6 at 3-4. Unable to present any legal authority to support its position, Class Plaintiffs tortuously argued that the term "party" must include a "non-party." Ex. 5 at 2. In its response, Fry's pointed out that such a construction of "party" would render Rule 53's use of the term "non-party" superfluous – in contravention of the rules of statutory construction. Ex. 6 at 3.

In their more recent October 9th submission, Class Plaintiffs cite ten separate cases – none of which hold that a court may allocate a master's fees to a non-party. Powell Decl., Ex. 7. As set forth in Fry's October 19, 2007 response, all ten cases (with the exception of the *In re Halloway* case) dealt with sanctions requests directed to conduct by a party (or its counsel) or to a non-party that acted to direct or control the underlying litigation in situations found to be an abuse of judicial process.[3]

Class Plaintiffs have never sought sanctions from Fry's. Indeed, at the September 27, 2007 discovery hearing, Class Plaintiffs were asked point blank by the Special Master: "[D]o you see your request [to allocate half of the Special Master's fees to Fry's] being in the nature of a Rule 37 request [for sanctions]?" Powell Decl., Ex. 8 at 9:13-14

---

[3] The *In re Halloway* case dealt with a court reporter's failure to comply with a court order and therefore has no bearing on the issues presented here.

[September 27, 2007 Hearing Transcript]. To which Class Plaintiffs' counsel responded unambiguously: "I would not actually think it would be handled under Rule 37." *Id.* at lines 15-18 (indicating the fee allocation is to be governed by Fed. R. Civ. P. 45 and 53). Despite their disavowal of any request for sanctions, Class Plaintiffs subsequently argued that Fry's acted in bad faith by demanding that Class Plaintiffs make a showing of need before production of Fry's trade secret sales and financial data could be compelled.

Following Class Plaintiffs' October 26, 2007 reply brief, the Special Master issued his report and recommendation on December 13, 2007, sanctioning Fry's in the amount of $39,618.21 under the Court's inherent power to award such sanctions. Powell Decl., Ex. 9 [October 26 Reply]; Ex. 1 [December 13 Report].

## ARGUMENT

### I. FRY'S CONDUCT WAS IN GOOD FAITH AND THE OUTCOME OF THIS DISPUTE DEMONSTRATES THAT FRY'S CONDUCT WAS NOT A "WASTE OF TIME"

In his Order, the Special Master goes to great lengths to depict Fry's conduct as wasting the time of those involved in the dispute. Fry's respectfully disagrees. Throughout the parties' meet and confer efforts, Fry's worked hard to resolve the instant dispute concerning the production of Fry's extremely sensitive trade secret information. Fry's conduct was not in bad faith as it was expressly authorized by the Federal Rules of Civil Procedure.[4] Pursuant to Rule 45, a non-party served with a subpoena is <u>excused</u> from complying with the subpoena upon timely service of objections. Fed. R. Civ. P. 45(c)(2)(B). Fry's timely served objections and was

---

[4] The Special Master expressly declined to make a finding of bad faith against Fry's. December 13 Report at 3 ("[T]he Special Master, under the Court's inherent power to sanction, need not make a finding of bad faith in order to impose sanctions on Fry's actions").

therefore excused from producing any documents absent a court order.[5] At no time did the Court enter an order compelling Fry's to produce any documents. Moreover, under Ninth Circuit law, which controls this dispute arising from a subpoena issued from the United States District Court for the Northern District of California, there is no authority for an award of monetary sanctions against a non-party absent a finding of contempt. *Pennwalt Corp. v. Duran-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) ("Having objected, [person served with document subpoena] was not obligated to produce the subpoenaed documents, or even to search for them, until [requesting party] obtained an order directing compliance."). And contempt under Rule 45 may be shown only where the responding person violates a court order. *Id*. There has been no violation of a court order in these proceedings; therefore, there can be no contempt.

In addition, the outcome of these proceedings is the best evidence that Fry's acted in good faith and that its efforts did not constitute a "waste of time." Not only did Class Plaintiffs agree to treat any materials produced by Fry's as "Outside Counsel's Eyes Only" even though the Court-ordered protective order did not provide this level of protection for discovery materials, Fry's and Class Plaintiffs ultimately reached a compromise whereby the Special Master was to select between two competing proposals – each of which represented a small fraction of the amount of materials and information originally requested. Under Class Plaintiffs' proposal, Fry's would produce monthly sales transaction and annual financial inducement data for Toshiba, Hewlett Packard, Compaq and Gateway computers in full satisfaction of the

---

[5] In fact, Federal Rule of Civil Procedure 45(c)(2)(B) provides that "[s]uch an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded." Ordering a non-party to pay a special master's fees of nearly $40,000 would seem to undermine the letter and spirit of this statutory protection for nonparties facing discovery demands.

subpoena.  Under Fry's proposal, Fry's would produce monthly sales transaction and annual financial inducement data for Toshiba, Gateway and eMachines computers in full satisfaction of the subpoena.  And although the Special Master ordered production in accordance with Class Plaintiffs' proposal, the production consists of monthly sales transaction and annual financial inducement data for only four brands and is responsive to only two of the original nineteen document requests.  Because a finding of bad faith requires "some indication of an intentional advancement of a baseless contention,"[6] Fry's conduct cannot be considered bad faith as its position – as shown by the favorable outcome achieved – was meritorious.

Moreover, Class Plaintiffs can hardly argue that Fry's conduct wasted time or was in bad faith.  Class Plaintiffs repeatedly told the Special Master that the parties were proceeding in "good faith" during the negotiations and that the Class Plaintiffs and Fry's discussions were "productive," and that they had been working "hard" and making "substantial progress" at every step of the way.  The following are but a few examples:

- At the May 15 Status Conference, Class Plaintiffs' counsel Dan Small commented: "We met . . . yesterday . . . [i]t was a very full conversation, a good faith conversation, and a productive one."  Powell Decl., Ex. 10 at 4:1-7 [May 15, 2007 Transcript].

- At the May 24 Status Conference, Mr. Small reported: "Some real quick history, just to put in context recent progress we made. . . . We reported back to Your Honor . . . and we reported that we had made very substantial progress, both in terms of understanding the data and in trying to resolve the dispute . . . In any event, we had a brief call with Fry's today in which they made that counter-

---

[6] December 13 Report at 16 (D.I. 545).

proposal . . . it does appear at first blush to be a good-faith counteroffer." Powell Decl., Ex. 11 at 3:4-5 [May 24, 2007 Transcript].

- At the June 6 Status Conference, Mr. Small remarked: "The proposal appears to represent very significant progress, and I actually say, with some caution, that we may be close to an agreement." Powell Decl., Ex. 12 at 6:13-16 [June 6, 2007 Transcript].

- And at the July 20 Status Conference, Mr. Small indicated: "we have continued to work hard . . . I believe that we are very close to an agreement." Powell Decl., Ex. 13 [July 20, 2007 Transcript].

As the preceding excerpts make clear, Class Plaintiffs repeatedly acknowledged throughout Fry's and Class Plaintiffs' lengthy negotiations that Fry's was proceeding in good faith. And now that the underlying discovery dispute has been resolved by the Special Master, and Fry's has been ordered to produce documents responsive to only 2 of the 19 original document requests in full and complete satisfaction of the subpoena, it is readily apparent that Fry's acted in good faith to protect its legitimate trade secret concerns. Such a result was certainly not a "waste of time" for Fry's which was dragged into this dispute as a third party and had to expend substantial time and expenses of its own to obtain this outcome.

## II. NO AUTHORITY HAS BEEN PRESENTED WHEREBY SANCTIONS HAVE BEEN IMPOSED ON A NON-PARTY DEPONENT

Each case presented by Class Plaintiffs and/or relied on by the Special Master deals with sanctions requests directed to conduct by a party (or its counsel) or to a non-party that acted to <u>direct or control</u> the underlying litigation in situations found to be an abuse of judicial process. The present situation, in contrast, presents a non-party deponent that properly served

objections under Rule 45 and then opposed a motion to compel in good faith on the grounds that (1) the discovery requests were overbroad; (2) the materials being sought were trade secret and highly sensitive; and (3) the requesting party had not made a particularized showing of need for the materials being requested.

In his report, the Special Master asserts that "Fry's did not address the principle of the Court's inherent authority in its papers." December 13 Report at 4 (D.I. 545). Fry's did, however, argue in its October 19, 2007 letter brief that of the ten "inherent authority" cases relied upon by Class Plaintiffs, none held that a court may allocate a special master's fees to a non-party absent additional findings that the non-party directed or controlled the underlying litigation, or was counsel for a party. And the Ninth Circuit case cited by the Special Master, *Corder v. Howard Johnson & Co.*, is no different. Although *Corder* held that sanctions could be imposed on a nonparty "to curb abusive litigation practices," the court based its holding on three cases, each of which presents unique circumstances involving either counsel to a party, violation of a court order, or efforts by a non-party to become a party to the underlying litigation: (1) *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980), wherein the Supreme Court held that the court may assess attorney's fees against counsel who willfully abuse the judicial process; (2) *SECO Nevada v. McMordie (In re Holloway)*, 884 F.2d 476, 477 (9th Cir. 1989), wherein the court sanctioned a court reporter for "repeated and flagrant failures to meet court-imposed deadlines;" and (3) *Moten v. Bricklayers, Masons and Plasterers Int'l Union of America*, 543 F.2d 224 (D.C. Cir. 1976), wherein the court imposed an attorneys fees and costs award on a non-party that sought unsuccessfully to become a party to the litigation. *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994). Moreover, in *Corder*, the court ultimately reversed the district court's imposition of a sanction against a nonparty individual who, while

- 8 -

acting as ERISA Plan administrator, was responsible for "engineering the Plan's suit and inducing the Beneficiaries to sue Howard Johnsons & Co," finding that such actions were "insufficient to trigger sanctions against a non-party." *Id.* Again, with the exception of *In re Holloway*, each of the cases presented have uniformly imposed sanctions on a nonparty only under circumstances where the nonparty was directly or indirectly controlling (or seeking to control) the underlying litigation.

Fry's does not dispute that the Court has the inherent authority to sanction any person subject to its jurisdiction in furtherance of its duties; rather, Fry's position is that no court has done so under circumstances even remotely similar to those presented here (i.e., where the nonparty is merely a recipient of a subpoena for the production of documents). Moreover, the standard applied to Fry's conduct by the Special Master is more restrictive than the standard applicable to a party's conduct under Fed. R. Civ. P. 37, which precludes an award of expenses and attorneys fees to a prevailing party on a motion to compel where the opposing party's response or objection was "substantially justified." Because Fry's acted in good faith to protect its critical trade secrets, the Court should appropriately refrain from exercising its inherent authority to impose this substantial monetary sanction. This is particularly so in light of the fact that in a non-MDL proceeding, this dispute would have been resolved by a district court judge or magistrate in the Northern District of California and would therefore not have generated any special master fees.

# CONCLUSION

Class Plaintiffs seek production of Fry's most sensitive commercial information including the price it pays manufacturers for the computer systems it then resells to consumers and its profit margins. Class Plaintiffs could not, however, make a particularized showing of need for all of the data originally requested, which is evident in the Special Master's reluctance at the initial hearing to grant Class Plaintiffs' motion to compel. Moreover, as set forth in its objections to the Special Master's September 28, 2007 report and recommendation, Fry's believes that the Special Master has utilized an incorrect legal standard in evaluating what trade secret data is to be produced by Fry's. Because Fry's position is meritorious and supported by legal precedent, Fry's should not be subject to any sanctions.

Based on the foregoing, Fry's respectfully requests that the Court sustain its objection and order that the Special Masters fees are to be allocated solely among the parties (Class Plaintiffs, Intel and AMD).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*

_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Nonparty Fry's Electronics, Inc.*

OF COUNSEL:

Robert W. Stone
Michael D. Powell
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
650.801.5000

Dated:  January 7, 2008
1376466

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 7, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on January 7, 2008 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**VIA HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

**VIA E-MAIL:**

Vincent J. Poppiti
BLANK ROME LLP
**poppiti@blankrome.com**

WITH A COPY TO:

Elizabeth Oestreich
BLANK ROME LLP
**oestreich@blankrome.com**

Mary Levan
BLANK ROME LLP
**levan@blankrome.com**

Carrie David
BLANK ROME LLP
**david-c@blankrome.com**

**VIA E-MAIL:**

J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A.
**jcathey@prickett.com**

James L. Holzman
PRICKETT, JONES & ELLIOTT, P.A.
**jlholzman@prickett.com**

Frederick L. Cottrell, III
RICHARDS, LAYTON & FINGER, P.A.
**cottrell@rlf.com**

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP
**rhorwitz@potteranderson.com**

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)

802096