**RICHARDS, LAYTON & FINGER**
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

STEVEN J. FINEMAN

DIRECT DIAL NUMBER
302-651-7592
fineman@rlf.com

January 16, 2008

**BY ELECTRONIC MAIL**
**AND BY HAND DELIVERY**
The Honorable Vincent J. Poppiti
Special Master
Blank Rome LLP
Chase Manhattan Centre, Suite 800
Wilmington, DE 19801-4226

   Re: *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.*, C.A. No. 05-441-JJF; *In re Intel Corporation*, C.A. No. 05-MD-1717-JJF; and *Phil Paul, et al. v. Intel Corporation*, C.A. 05-485-JJF, Discovery Matter No. 4b

Dear Judge Poppiti:

  Intel knows precisely what information Plaintiffs seek with respect to Intel's prior litigation practices. Intel has steadfastly refused to provide any information as to its past practices despite several months of negotiations, thereby forcing Plaintiffs to file a motion on the issue. Now, for the first time in its opposition, Intel proclaims an answer of "no" to a question that Plaintiffs never asked: it states that it has never "***modified*** its email management system ***to eliminate the auto-delete function*** in connection with any prior litigations or government investigations." Intel Opp., at 1 (Jan. 11, 2008) (D.I. 489 in Docket 05-441) (emphasis added). The careful phrasing of Intel's self-posed question makes it difficult to know what exactly Intel is now representing as to its past practices. But, to be clear, Plaintiffs' requests and motion seek more than an answer to one question. *See* D.I. 312 at Deposition Topics 1 and 2, Document Requests 1 and 2 (seeking "details of any standard Intel corporate evidence preservation policies . . . including the development and implementation of such policies and practices . . . the reasons and rationale for such policies and practices, and any suspension or deviation from such policies and practices in connection with this Litigation or other litigations.")

  Plaintiffs' discovery seeks to test Intel's principal defenses to its failure properly to preserve evidence: (1) that suspending auto-delete was too expensive and would have posed a risk to its servers, (2) that its preservation measures were reasonable and "exemplified best practices", and (3) that its actions were consistent with procedures taken during prior litigations. *See* Intel's Report and Proposed Remediation Plan (Apr. 23, 2007), at 13-14 (D.I. 321); Letter from Richard L. Horwitz to the Hon. Joseph J. Farnan, Jr., at 2-3 (Mar. 5, 2007) (D.I. 293). Each of these inquiries requires an understanding of what Intel has done in past cases. With respect to auto-delete, Plaintiffs identified to Intel exactly the sort of information sought: "testimony on, *inter alia*, the cases or investigations in which Intel suspended auto-delete, the number of

The Honorable Vincent J. Poppiti
January 16, 2008
Page 2

custodians for which Intel suspended auto-delete, how much it cost to do so, whether Intel had to implement any special systems to suspend the auto-delete feature, and whether Intel was the defendant or plaintiff in those cases." Letter from Mark A. Samuels to Daniel Floyd (Jan. 3, 2008), attached hereto as Ex. A. Intel's self-posed question does not address these questions and, even if it did, Plaintiffs are entitled to obtain these answers under oath with an opportunity to ask follow-up questions and probe the representations.

The immediate question before the Court is a narrow one: Whether discovery into Intel's past retention practices is relevant in determining whether Intel acted responsibly to halt the destruction of evidence in this case. As established in our opening brief, the court in *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 348 F. Supp. 2d 332 (D.N.J. 2004) found defendant's litigation hold practices in prior litigation to be highly relevant to its spoliation inquiry. Intel does not dispute that the *Mosaid* court found the prior suspension of auto-delete to be a persuasive factor in the Court's issuance of a spoliation inference. Indeed, the plain language of the opinion ends the inquiry: "Samsung also knew how to institute a 'litigation hold'[1] and **stop the spoliation of e-mails, having done so in one of its divisions in another litigation beginning in 2002**." 348 F. Supp. 2d at 338. Instead, Intel quibbles about whether *Mosaid* sets forth a bright-line rule regarding the operation of auto-delete. Whether it does or not, this argument is simply a diversion because *Mosaid* establishes that past practices are relevant, and the discovery is proper.

Intel retreats from discussing the relevance of Intel's prior practices into a policy argument about what the drafters of Rule 37(f) must have intended. Conspicuously absent from its discussion is *any mention* of the post-2006 FRCP Amendments cases cited in Plaintiffs' motion. These cases hold that Rule 37(f) does not protect litigants who fail to turn off email automatic deletion features once litigation can reasonably be anticipated. *See also Doe v. Norwalk Community College*, No. 3:04-CV-1976, 2007 WL 2066497, at *4 (D. Conn. July 16, 2007) ("[I]n order to take advantage of the good faith exception, a party needs to act affirmatively to prevent the system from destroying or altering information, even if such destruction would occur in the regular course of business. Because the [defendants] failed to suspend it at any time . . . the court finds that the defendants cannot take advantage of Rule 37(f)'s good faith exception."). Without any case support for its argument, Intel clings to the "good faith" exception. Intel cannot dispute that Intel's prior practices are a relevant data point for determining whether Intel acted in good faith in this case.

For the reasons stated herein, the Court should grant the relief requested and order Intel to produce documents and testimony responsive to Document Requests 1 and 2, and Deposition Topics 1 and 2.

---

[1] The court used the term "litigation hold" to mean the suspension or termination of the defendant's automatic deletion email policy. *See id.* at 333 ("More specifically, after the inception of this litigation in September 2001, Samsung never placed a 'litigation hold' or 'off switch' on its document retention policy concerning email. Unchecked, Samsung's automatic computer e-mail policy allowed e-mails to be deleted, or at least to become inaccessible, on a rolling basis.").

RLF1-3244341-1

The Honorable Vincent J. Poppiti
January 16, 2008
Page 3

                            Respectfully,

                            */s/ Steven J. Fineman*

                            Steven J. Fineman (#4025)

SJF/lll
Enclosure

cc:    Clerk of the Court (w/e) (By E-file)
       Richard L. Horwitz, Esquire (w/e) (By Email)
       James L. Holzman, Esquire (w/e) (By Email)

RLF1-3244341-1