# EXHIBIT A

# O'MELVENY & MYERS LLP

| | 400 South Hope Street | |
|---|---|---|
| BEIJING | Los Angeles, California 90071-2899 | NEW YORK |
| BRUSSELS | | SAN FRANCISCO |
| CENTURY CITY | TELEPHONE (213) 430-6000 | SHANGHAI |
| HONG KONG | FACSIMILE (213) 430-6407 | SILICON VALLEY |
| LONDON | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |

OUR FILE NUMBER
8,346-0163

January 3, 2008

WRITER'S DIRECT DIAL
(213) 430-6340

**VIA E-MAIL AND U.S. MAIL**

WRITER'S E-MAIL ADDRESS
msamuels@omm.com

Daniel Floyd, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071

Re:   *AMD v. Intel*

Dear Dan:

      This letter responds to your January 2, 2008 email in which Intel offered to answer under oath whether it has suspended the email auto-delete function in connection with any other litigation. While we appreciate Intel's willingness to reconsider its prior refusal to provide this information, your proposal falls well short of mooting AMD's December 28, 2007 motion to compel documents and testimony relating to Intel's document preservation practices in prior litigations. Our motion sought documents and testimony on our requests as noticed. As our deposition topics show, our requests seek much more than the answer to a single yes-or-no question:

    1.    The existence, nature and details of any standard Intel corporate evidence preservation policies and practices applied in connection with actual or threatened litigation, or governmental or internal investigations, including the development and implementation of such policies and practices, the identity of those persons involved in the creation of such policies and practices, the reasons and rationale for such policies and practices, and any suspension or deviation from such policies and practices in connection with this Litigation or other litigations, or governmental or internal investigations, over the past ten years.

    2.    The existence, details and application of all Intel corporate "auto-deletion" policies and practices applied to email or other electronic data, including the development and implementation of such policies and practices, the identity of those persons involved in the creation of such policies and practices, the reasons and rationale for such policies and practices, and any suspension or deviation from such policies and practices in connection

O'MELVENY & MYERS LLP

Daniel Floyd, Esq., January 3, 2008 - Page 2

     with this Litigation or other litigations or investigations over the past ten years.

 Our motion pointed out the necessity of this discovery to test Intel's unsupported assertions (1) that suspending auto-delete was too expensive and would have posed a risk to its servers, (2) that its preservation measures were reasonable and "exemplified best practices", and (3) that its actions were consistent with procedures taken during prior litigations. Intel's offer to answer one discrete and narrow question, then, does not adequately address the discovery sought by AMD's motion. Intel's answer to your proposed question would be of little value to AMD or the Court without additional information concerning the circumstances surrounding, and rationale for, any auto-delete suspensions. Specifically, we will want to elicit testimony on, *inter alia*, the cases or investigations in which Intel suspended auto-delete, the number of custodians for which Intel suspended auto-delete, how much it cost to do so, whether Intel had to implement any special systems to suspend the auto-delete feature, and whether Intel was the defendant or plaintiff in those cases. Put simply, we seek information on all the circumstances surrounding Intel's suspension of auto-delete in other cases.

 Regarding Intel's privilege concerns, as we stated in our motion, our inquiry is factual in nature and does not implicate the attorney-client privilege. Again, we are not interested in internal legal discussions about whether Intel's practices complied with its document preservation obligations. We are willing to stipulate that the answers to our questions on these topics (*i.e.* Intel's practices in other litigation) will not constitute a waiver of the attorney-client privilege, so that your designated deponent may fully answer the questions posed without risk.

 Finally, with respect to your point that the motion was not accompanied by a certification, the certification inadvertently was not filed with the motion, and we plan to file it with the Court today. But to answer your question as to whether this issue was "sufficiently vetted in the meet and confer process," I will refresh you on the events leading up to the motion. During the September 25, 2007 meet and confer, you and Rich Levy indicated to my colleagues that Intel would not produce documents relating to its practices in other litigations. Intel's position was reconfirmed in its Supplemental Responses and Objections, served on October 4, 2007. On November 8, 2007, I sent a letter to Rich seeking clarification on Intel's Supplemental Responses. With respect to Deposition Topics 1 and 2, I wrote, "We have negotiated on these Deposition Topics for several months, and consider the parties at an impasse. We intend to bring them to the attention of the Special Master at the earliest available opportunity." Rich responded on November 21, 2007, stating that "Intel stands on its Supplemental Responses to these topics."

 Please let me know if Intel is willing to offer a more comprehensive proposal to fully resolve the issues raised by Plaintiffs' motion, wherein the deponent will testify as to all of the

O'MELVENY & MYERS LLP

Daniel Floyd, Esq., January 3, 2008 - Page 3

circumstances surrounding Intel's suspension of auto-delete in prior cases, including the questions identified above.

Very truly yours,

Mark A. Samuels
of O'MELVENY & MYERS LLP

CC1:776705.1