

W. Harding Drane, Jr.
Partner
Attorney at Law
wdrane@potteranderson.com
302 984-6019 Direct Phone
302 658-1192 Fax

Potter Anderson & Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

February 15, 2008

**VIA ELECTRONIC FILING AND BY HAND**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801-4226

    Re:    *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.*, C.A. No. 05-441-JJF; *In re Intel Corporation*, C.A. No. 05-MD-1717-JJF; and *Phil Paul, et al. v. Intel Corporation*, C.A. 05-485-JJF

Dear Judge Poppiti:

    Intel hereby submits this letter, requesting a conference to discuss the entry of a further case management order addressing the taking of depositions in these matters. Intel and Plaintiffs have engaged in a lengthy meet and confer process, including correspondence and a face to face meeting, but appear to remain far apart in our views. Plaintiffs insisted that Intel proceed first, rather than provide simultaneous proposals, followed by simultaneous replies. In the interests of having this important issue timely addressed, Intel agreed to provide its views first, but does want to be sure that the briefing schedule allows some time for Intel to respond to the proposal AMD submits.[1]

    The Federal Rules require that counsel develop a cost-effective plan for discovery, including depositions. The parties have postponed addressing depositions to deal with the massive document productions. And the document productions have exceeded all bounds of reason, contrary to the parties' expectations when agreeing to a custodian based approach. Intel estimates that its custodian based production will approximate 140 million pages of documents.

---

[1] The parties have reached agreement on a number of other deposition related issues. They have jointly retained a court reporting service, and have agreed to protocols establishing deposition "point persons" for scheduling, a timetable for noticing depositions, as well as the presumptive locations for depositions. These agreements will be embodied in a separate stipulation.

The Honorable Vincent J. Poppiti
February 15, 2008
Page 2

This figure does not include data or corporate based requests. Once the AMD production and third party productions are added in, it is clear that more than the equivalent of 200 million pages of documents -- easily 9 miles high if printed out -- will have been produced. The costs are also at a level both unexpected and stunning. In approaching deposition discovery, it is obvious that a different approach -- one focused on a potential trial of this case -- must be employed, or this case will be notable as a failure of our litigation system. In the meet and confer process, it was apparent that Plaintiffs were seeking hundreds of depositions, and proposing a five-track deposition process that would simply continue the unmanageable and unnecessarily expensive approach employed to date.

We also presently have an April 2009 trial date. Given the massive amount of work ahead (including document review of the 200 million of pages recently produced or soon to be produced by AMD, Intel and third parties, preparation of expert reports and related discovery, motion practice and trial preparation), Intel believes it is critical that reasonable parameters of deposition discovery be established now, to allow the matter to be litigated at all. As set forth above, the scope and costs of document discovery in this matter are staggering, and it is obvious that it will be an extraordinary challenge and will require aggressive management to develop a reasonable deposition plan.

No party has suggested that the limits on the number and length of depositions in Rule 30(a)(2)(A) and (d)(2) should be strictly adhered to in this case, but the Rule requires by its express terms either a stipulation of the parties or an Order of the Court before the limits are exceeded. *See* FED. R. CIV. P. 30, advisory committee's note ("One aim of [Rule 30(a)(2)(A)] is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties."); *Lopez v. Patrick*, No. 2:05 cv 452, 2007 U.S. Dist. LEXIS 59093, at *2-3 (N.D. Ind. Aug. 7, 2007); *Lloyd v. Valley Forge Life Ins. Co.*, No. C06-5325 FDB, 2007 U.S. Dist. LEXIS 40526, at *5-7 (D. Wash. Mar. 23, 2007). The Federal Rules no longer allow a party to decide unilaterally on the scope of discovery, in favor of a system that requires case management plan up front, reflecting a meaningful balancing of the burdens and benefits from the requested discovery. Intel recognizes that the plan may need to be revised as the deposition process continues, but a first step is a realistic plan.

It is against this backdrop that Intel makes the following proposal for deposition discovery. It is substantially similar to what it proposed to Plaintiffs in the meet and confer process. The proposal has the following components:

1.      There should be basic parity between the sides on the number of depositions. Plaintiffs cannot fairly demand the right to conduct more depositions than Intel. The argument that plaintiffs bear the burden of proof cannot justify inequality in depositions. Plaintiffs get to present their proof first at trial, and in a case of this magnitude will have to choose what issues to pursue and what to drop. Intel, on the other hand, must prepare for every eventuality. While Intel has to date agreed to significantly greater discovery burdens, it can no longer do so without being unfairly prejudiced. If events later justify a need on the part of either side for an additional allotment of depositions, that can be addressed by the Court at that time.

The Honorable Vincent J. Poppiti
February 15, 2008
Page 3

    2.    No witness should be subjected to more than one deposition, absent Court order based on a showing of compelling circumstances.

    3.    Each side would have total of 75 depositions that could be taken without any showing of good cause, divided between 50 party related (current and former employees of a party) depositions and 25 third party witnesses. Expert discovery would be addressed separately. We believe that the parties should up front identify their initial proposed list of deponents, which they would then be free to change, in good faith, based on the progress of deposition discovery. This will give each party the ability to begin and focus preparation on those persons who will be deposed, and not have the burden of attempting to anticipate who from a list of several hundred custodians might be deposed and do unnecessary preparation. The unprecedented volume of documents and the costs of discovery make any other approach unreasonable. Then each party, after exchanging the list of deponents, would also provide preliminary trial witness lists of party related witnesses (which again would be subject to change based on discovery). Each party would also have the right to take the deposition of any person on the other's preliminary witness list or who is subsequently added. Any depositions beyond those set forth here would require a stipulation of the parties, or an individual showing of good cause. Intel would agree to an expedited procedure for consideration of such requests.

These are very significant numbers of depositions under any objective standard, and requiring the parties to plan and prioritize their depositions of the other side's witnesses is reasonable. And if these numbers are inadequate (as Intel believes Plaintiffs will suggest), it is also reasonable to require that a good cause showing be made in the context of specific requests, for specific deponents.[2]

    4.    The parties would be allowed presumptively to double-track depositions, but anything beyond that would require agreement of the parties or good cause.

    5.    Each party would be able to choose 15 party related witnesses and 10 third party witnesses for 14 hour depositions, to the extent agreed to by the third parties. All other witnesses would be subject to the 7 hour limit. Any witness requiring a translator could be deposed for 1 1/2 times the standard time. Each defending party would have the option of taking up to an additional 2 hours for direct examination on the succeeding day, with a reasonable period allowed for further cross if the opportunity for direct examination is taken.

    6.    The parties would each be allowed 10 days of Rule 30(b)(6) deposition, with any additional time requiring a specific showing of good cause.

---

[2] With respect to the class action litigation, Intel recognizes that there will be deposition discovery that does not overlap with the AMD case, that would not contemplated in the above schedule, and which will need to be addressed separately

The Honorable Vincent J. Poppiti
February 15, 2008
Page 4

7. The cut-off for all custodian document discovery has been set for February 15, 2008. Additionally, all deposition reharvest requests and free throw custodian designations would be made by July 31, 2008. The document production in this case needs to be concluded. Once again, while the parties envisioned a process where additional document production would occur to address issues arising in discovery, that process too must have limits now, in light of the size and costs of the production to date.

The overwhelming burdens of this litigation, and the interests of the parties, as well as the judicial system require deposition discovery be structured with a clear view to what can realistically be accomplished at a trial and within reasonable time parameters. This deposition plan set forth above will require well over 200 days of actual deposition time, and enormous expenditure of resources on the part of all parties to prepare for these depositions. Even after this ambitious deposition schedule the parties will need meaningful time to complete expert reports and discovery, and engage in pre-trial motion practice. As a result, we believe, based on the considerations above, that the deposition limit must be tuned to the realistic length of any trial, as opposed to one reflexively based on the numbers of custodians. Intel presumes a trial of no longer than about 3 months – which would be at most about 45-50 trial days of testimony. No jury can be expected to sit longer, or to endure more. This deposition plan would call for many more depositions than there will be trial witnesses. But to allow hundreds of depositions on top of the massive document production would mean that most of the time and money spent would be wasted.

The huge document productions made by all parties ensure that Intel and Plaintiffs should be extremely well informed about the relevant facts. Filing a monopolization case is not a license for unfocused, unlimited discovery. The limits and procedures set out here will force the parties to figure out what is really important and focus their efforts to that end. *See In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527, 532 (N.D. Ill. 2005). Intel's proposal is intended to facilitate a trial, not to block legitimate discovery. But unless the Court imposes a realistic schedule on the parties now, thus forcing the parties to prioritize and limit deposition discovery upfront, the cost of deposition discovery will be beyond staggering, the trial date will be hopelessly delayed, and a record will be accumulated that cannot possibly be used at trial.

Respectfully,

W. Harding Drane, Jr. (#1023)

WHD/mho

cc: The Honorable Vincent J. Poppiti (via electronic mail)
    Charles Diamond, Counsel for AMD (via electronic mail)
    Michael Hausfeld, Interim Class Counsel (via electronic mail)
    Frederick L. Cottrell, III (via electronic mail)
    James L. Holzman (via electronic mail)

#849003/29282