IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSOR<br>ANTITRUST LITIGATION | MDL Docket No. 05-1717-JJF |
| PHIL PAUL, *on behalf of himself and all others similarly situated*,<br><br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>INTEL CORPORATION,<br>　　　　　　　　　　Defendant. | Civil Action No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

<u>REPLY SUPPLEMENTAL LETTER BRIEF REGARDING ALLOCATION OF THE SPECIAL MASTER'S COSTS (Discovery Matter No. 5)</u>

PUBLIC VERSION

　　　　　　　　　　　　　　　　　　PRICKETT, JONES & ELLIOTT, P.A.
　　　　　　　　　　　　　　　　　　James L. Holzman (#663)
　　　　　　　　　　　　　　　　　　J. Clayton Athey (#4378)
　　　　　　　　　　　　　　　　　　Laina M. Herbert (#4717)
　　　　　　　　　　　　　　　　　　1310 King Street
　　　　　　　　　　　　　　　　　　P.O. Box 1328
　　　　　　　　　　　　　　　　　　Wilmington, DE 19899
　　　　　　　　　　　　　　　　　　(302) 888-6500
　　　　　　　　　　　　　　　　　　jlholzman@prickett.com
　　　　　　　　　　　　　　　　　　jcathey@prickett.com
　　　　　　　　　　　　　　　　　　lmherbert@prickett.com

　　　　　　　　　　　　　　　　　　*Interim Liaison Counsel for the Class Plaintiffs*

Dated: October 26, 2007

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Michael P. Lehmann
Brent W. Landau

COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 433-2070
Facsimile: (415) 982-2076

Steven W. Berman
Anthony Shapiro
HAGENS BERMAN SOBOL
SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Guido Saveri
R. Alexander Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Co-Lead Counsel for the Class Plaintiffs*

# PRICKETT, JONES & ELLIOTT
A PROFESSIONAL ASSOCIATION

1310 KING STREET, BOX 1328
WILMINGTON, DELAWARE 19899
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial:
(302)888-6507
Writer's Telecopy Number:
(302)658-8111
Writer's E-Mail Address:
JCATHEY@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

October 26, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801

VIA ELECTRONIC FILING
and HAND DELIVERY

<u>PUBLIC VERSION</u>

RE:  DM No. 5; *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717-JJF and *Paul v. Intel Corp.*, Consolidated Civil Action No. 05-485-JJF;

Dear Judge Poppiti:

Fry's October 19, 2007 letter brief in opposition to Your Honor's May 25, 2007 allocation of fees and expenses relating to Discovery Matter 5 ("Opposition") fails to undermine -- or, in some cases, even address -- the grounds provided by Class Plaintiffs in their October 9, 2007 letter brief for upholding the allocation. Eager to limit the Court's inquiry to the "single question" of defining the term "party" in Rule 53, Fry's offers only a cursory response to Class Plaintiffs' showing that: (1) the Court has inherent power to respond to a non-party's improper behavior with sanctions, and (2) the litany of Fry's bad conduct before and after the motion to compel was filed is sufficient to warrant the exercise of such power here. The Special Master's May 25, 2007 allocation was a proper exercise of the Court's authority under Rules 45 and 53, as well as the Court's inherent authority under governing Circuit law.

<u>The Undisputed Record Demonstrates Fry's Bad Faith</u>

Fry's does not challenge Class Plaintiffs' description in their October 9, 2007 letter brief of *twelve* specific instances of unreasonable and bad faith conduct, each of which is supported by uncontroverted record evidence. Nor does Fry's deny the conclusion that such conduct precipitated and expanded the proceedings before the Special Master. Rather, Fry's tries to show good faith by quoting transcript excerpts where Class Counsel commented favorably on the progress of then-ongoing negotiations with Fry's in May, June and July.

Fry's cannot escape responsibility for its behavior based on these comments. Class Plaintiffs have never contended that *everything* Fry's has done in response to the subpoena has been unreasonable. In fact, as counsel's comments to the Special Master reflect, there was a period of about three months, from approximately mid-May to mid-August, when it appeared that Class Plaintiffs might be able to work out a deal with Fry's.[1] But Fry's apparent willingness to engage in serious negotiations for a few months after the motion to compel had been briefed and argued does not excuse months of pre-motion intransigence and post-motion bad faith through the May 1 hearing. It was this earlier behavior that required the Special Master's assistance and expanded the proceedings before the Special Master.[2]

---

[1] The negotiations during this time frame progressed largely because of the great degree to which Class Plaintiffs were willing to compromise.

[2] Because the negotiations with Fry's ultimately were unsuccessful, despite the far-reaching compromises that Class Plaintiffs were willing to accept, one cannot be sure in retrospect what Fry's goals were even during the May-August time period.

19684.1\350181v1

The Honorable Vincent J. Poppiti
October 26, 2007
Page 2

Fry's also argues that all it has done is insist that Class Plaintiffs demonstrate their need for Fry's (self proclaimed) trade secrets. Manifestly, that is *not* all that Fry's has done. Fry's again ignores both its pre-motion conduct -- during which it sought to avoid, not just limit, its production -- and other, unreasonable arguments it made to the Special Master. Fry's also ignores the point, which proved dispositive of the motion to compel, that Fry's data were adequately protected by the Protective Order, so that they were discoverable based on a relevancy standard, not a need standard. *See* Special Master's September 27, 2007 Report and Recommendation (D.I. 608 in 05-md-1717, on objection to Judge Farnan). Fry's contrary position was unreasonable in light of the extensive consideration already given by the Special Master in earlier, plenary proceedings to the question of the Protective Order's adequacy to protect trade secrets and other proprietary and confidential information. *See* Special Master's May 18, 2007 Report and Recommendation (D.I. 482 in 05-md-1717) at 15.

Fry's other attempts to show good faith are no more meritorious. Fry's points out that the Special Master recommended that it be compelled to produce data in response to just two of the subpoena's 19 requests. But Fry's, disingenuously, ignores that Class Plaintiffs only moved to compel production of Fry's data, not its documents, and that Class Plaintiffs prevailed before the Special Master. That the data that Fry's must produce happens to be responsive to just two of Class Plaintiffs' subpoena requests clearly does not demonstrate good faith. Fry's further argues that it spent countless hours explaining its information systems to Class Plaintiffs. But Fry's overlooks (1) that before the motion to compel was filed, it had refused to provide any meaningful description of its data, *see* Certification of Richard M. Volin ("Volin Cert."), dated March 22, 2007, Ex. G at 2, Ex. H at 1, Ex. J at 2; Declaration of Richard M. Volin ("Volin Decl."), dated April 23, 2007, ¶ 6; (2) that this refusal led to an order compelling Fry's to meet and confer with Class Plaintiffs to describe its data, *see* Transcript of May 1, 2007 Hearing at 94:3-95:6, 103:14-104:11; (3) that at the meet and confer, Fry's refused to and/or could not answer significant questions, *see* Declaration of Daniel A. Small, ¶¶ 2, 11; and (4) that throughout the negotiations, Fry's refused to provide certain information that was highly relevant to efforts to define the parameters of a representative data sample. *Id.* In addition, Fry's argues that this dispute was ultimately caused by alleged overbreadth and vagueness of Class Plaintiffs' subpoena. Not true. As the Special Master knows, the negotiations evolved into specific competing proposals by Fry's and Class Plaintiffs, so any asserted problems with the subpoena became irrelevant. Moreover, Class Plaintiffs made great efforts pre-motion to persuade Fry's to describe its data fields so that the data requests could be more narrowly tailored, but Fry's would not cooperate. *See* Volin Cert., Ex. G at 2, Ex. H at 1, Ex. J at 2; Volin Decl., ¶ 6.

The record of Fry's bad faith and unreasonable conduct is clear and unrefuted. Fry's attempts to show good faith fail. Fry's should be held accountable for its conduct.

<u>The Court May and Should Require Fry's to Share in the Costs of the Special Master as a Sanction</u>

Fry's argues that the Court is powerless to hold Fry's accountable for its conduct in connection with a subpoena enforceable in this Court and proceedings before this Court to enforce that subpoena. Fry's is wrong.

Rule 53 does not, as Fry's suggests, preclude the Court from exercising its inherent authority to sanction those who engage in improper conduct in litigation before it. *See Chambers*

19684.1\350181v1

The Honorable Vincent J. Poppiti
October 26, 2007
Page 3

*v. NASCCO, Inc.*, 501 U.S. 32, 50 (1991). The Court's inherent authority provides a separate and independent basis for the Court to allocate a portion of the Special Master's fees and expenses to Fry's as a sanction. *See Republic of Phillipines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994) (noting inherent power to sanction litigants exists independent of "formal rules and legislative dictates."). In any event, Rule 53 only addresses the allocation of the Special Master's fees and expenses *in the ordinary course*. Because it is silent on the allocation of those fees as a sanction, it clearly does not limit the Court's inherent authority to impose such a sanction.[3]

Fry's argument that Class Plaintiffs made a "clear disavowal of any request for sanctions," Opposition at 2, carries no weight. Class Counsel simply advised the Special Master in response to his inquiry during a recent telephone conference that Class Plaintiffs did not expect to rely on Rule 37 to support the Special Master's allocation of his fees and expenses in this matter. This statement -- whatever effect it might have on a claim for sanctions under Rule 37 -- certainly poses no obstacle to a claim for sanctions under the Court's inherent authority, a wholly separate basis from Rule 37 for awarding sanctions.[4]

Fry's contention that it is subject to sanctions only for contempt must be rejected for a similar reason. While contempt is punishable by sanctions, it certainly is not the sole basis upon which sanctions can be awarded. Improper conduct before the court, even if it involves no violation of a court order or court process, is sanctionable under the court's inherent authority. Indeed, the Supreme Court has expressly distinguished sanctions pursuant to the court's inherent authority from sanctions awarded for contempt, demonstrating that the two are separate and independent grounds for awarding sanctions. *See Chambers*, 501 U.S. at 46 (noting that sanctions pursuant to the court's inherent authority "vindicate judicial authority without resort to the more drastic sanctions available for contempt of court.").

Finally, Fry's argues that it would be unfair and unconstitutional for it to bear a portion of the Special Master's fees and expenses because it allegedly had no opportunity to oppose appointment of a special master. However, Fry's puts form over substance. Fry's could be sanctioned the same amount of money, whether it be deemed a portion of the Special Master's fees and expenses or a straight monetary sanction. Indeed, the Special Master's fees and expenses can properly be viewed as just a reasonable and appropriate basis for determining the amount of the sanction given that such fees and expenses were generated as a result of Fry's conduct. Moreover, Fry's conduct occurred long after the Special Master had been appointed. Fry's therefore knew or should have know that such conduct could subject it to a monetary sanction, including being required to pay a portion of the expense that the conduct caused.

It is clear that the Court may impose sanctions on Fry's under its inherent power. Requiring Fry's to pay half of the Special Master costs caused by Fry's bad faith and unreasonable conduct is an eminently reasonable sanction. The Special Master's allocation of his fees and expenses is proper and appropriate, and Fry's objection thereto should be overruled.

---

[3] For the same reason, Fed. R. Civ. P. 45(c)(2)(B) [erroneously cited by Fry's as "FRCP 53(b)(2)(B)," *see* Opposition at 5 n.7] does not curtail this Court's inherent authority.
[4] The reason that Class Counsel said that Class Plaintiffs did not intend to proceed under Rule 37 is that the rule by its terms applies only to parties (not third parties) and deponents. *See* Fed. R. Civ. P. 37(a)(2).

The Honorable Vincent J. Poppiti
October 26, 2007
Page 4

                                  Respectfully submitted,

                                  J. Clayton Athey
                                *Bar I.D. #4378*

JCA/sam

cc:    Frederick L. Cottrell, III, Esq.
        Richard L. Horwitz, Esq.
        Mary B. Graham, Esq.

19684.1\350181v1