IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | MDL Docket No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | Civil Action No. 05-485-JJF<br><br>CONSOLIDATED ACTION<br><br>**DM 5** |

**CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FRY'S OBJECTION TO AND REQUEST TO MODIFY SPECIAL MASTER'S REPORT AND RECOMMENDATIONS REGARDING ALLOCATION OF FEES**

PRICKETT, JONES & ELLIOTT, P.A.
James L. Holzman (#663)
J. Clayton Athey (#4378)
Laina M. Herbert (#4717)
Matthew P. D'Emilio (#4845)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com
mpdemilio@prickett.com

*Interim Liaison Counsel for the Class Plaintiffs*

Dated: January 24, 2008

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Michael P. Lehmann
COHEN, MILSTEIN, HAUSFELD &
TOLL, P.L.L.C.
One Embarcadero Center, Suite 526A
San Francisco, CA 94111

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 433-2070
Facsimile: (415) 982-2076

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111

*Interim Co-Lead Counsel for the Class Plaintiffs*

# Table of Contents

Page

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

I. FRY'S OBJECTIONS DO NOT ADDRESS, MUCH LESS REFUTE, THE SPECIAL MASTER'S FINDINGS OF MISCONDUCT .......... 2

II. FRY'S LEGAL DISTINCTIONS ARE UNAVAILING .......... 9

A. Fry's Purported "Direct and Control" Requirement Has No Legal Foundation .......... 9

B. The Standard Applied by the Special Master Is Not More Restrictive than the Rule 37 Standard .......... 11

CONCLUSION .......... 13

# Table of Authorities

**Cases**

*American Trust v. Sabino*,
No. 99-4214, 2000 WL 1478372 (6th Cir. Sept. 28, 2000) .................... 9, 10

*Asea, Inc. v. Southern Pac. Transp. Co.*,
669 F.2d 1242 (9th Cir. 1981).................... 6

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991).................... 9, 10

*Corder v. Howard Johnson & Co*,
53 F.3d 225 (9th Cir. 1994).................... 9, 10

*Donovan v. Petrancosta Corp.*,
No. 81-1978, 1984 WL 3185 (W.D. Pa. 1984).................... 12

*In re Al Lapin*,
226 B.R. 637 (B.A.P. 9th Cir. 1998).................... 9

*In re Automobile Refinishing Paint*,
229 F.R.D. 482 (E.D. Pa. 2005).................... 2

*In re Ikon Office Solutions, Inc. Securities Litigation*,
86 F. Supp. 2d 481 (E.D. Pa. 2000) .................... 2

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
829 F.2d 1171 (D.C. Cir. 1987) .................... 2

*In re Linerboard Antitrust Litigation*,
MDL No. 1261, 2005 WL 1625040 (E.D. Pa. 2005).................... 2

*In re A & E Family Investment, LLC*,
359 B.R. 249 (Bankr. D. Ariz. 2007).................... 9

*In the Matter of Holloway*,
884 F.2d 476 (9th Cir. 1988).................... 9

*Jemison v. National Baptist Convention*,
720 A.2d 275 (D.C. 1998).................... 9, 10, 11

*Landon v. Hunt*,
938 F.2d 450 (3d Cir. 1991).................... 6

*Lockarry v. Kayfetz*,
974 F.2d 1166 (9th Cir. 1992).................... 9

*Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*,
507 F. Supp. 1146 (E.D. Pa. 1980) .................... 11

*Pennwalt Corp. v. Duran-Wayland, Inc.*,
708 F.2d 492 (9th Cir. 1983).................... 6

*Republic of Philippines v. Westinghouse Elec. Corp.*,
43 F.3d 65, (3d Cir. 1994) ..... 6, 7

*Wachtel v. Health Net, Inc.*,
239 F.R.D. 81 (D.N.J. 2006) ..... 10

**Statutes**

28 U.S.C. § 1407 ..... 2

Class Plaintiffs oppose Fry's Electronics, Inc.'s ("Fry's") objection to and request to modify the Special Master's December 13, 2007 Report and Recommendations Regarding Allocation of the Special Master's Compensation and Costs as A Sanction Against Nonparty Fry's Electronics, Inc. ("December 13 Report"). Class Plaintiffs ask that the Court adopt the December 13 Report in full.

**INTRODUCTION**

Fry's Objections to the December 13 Report ("Objections") recognize the authority of the Court to impose sanctions. Indeed, Fry's concedes that "the Court has the inherent authority to sanction any person subject to its jurisdiction in furtherance of its duties." Objections at 9, D.I. 695.[1] Fry's asks the Court to "refrain from exercising its inherent authority" to impose sanctions – initially by challenging the Special Master's factual findings as to Fry's unreasonable and wasteful conduct, and then by suggesting that, if such findings are rejected, the cases cited by both the Special Master and Class Plaintiffs no longer militate in favor of sanctions. *Id.* at 4-9.

Fry's Objections are unpersuasive. The briefing, argument and documentary evidence presented to the Special Master over the course of nine months demonstrate that Fry's conduct leading to and immediately following the filing of Class Plaintiffs' motion to compel was inconsistent, unreasonable, wasteful, unfounded in law and the root of unnecessary delay and expense. Prior to the issuance of the December 13 Report, Fry's did not refute, or even address, this specific evidence of misconduct presented to the Special Master. The instant Objections do nothing to cure this deficiency.

---

[1] All citations to "D.I. ___" are to docket items in action 05-MD-1717-JJF unless otherwise noted. In his report, the Special Master notes: "Except to say that Class Plaintiffs request that the Special Master utilize the inherent authority of the Court to sanction comes too late, Fry's did not address the principle of the Court's inherent authority in its papers." December 13 Report at 4 n.2, D.I. 680. As explained below, Fry's effort to dispute this observation – by citing the argument in its October 19, 2007 brief that the "inherent authority" cases all concerned entities that "directed or controlled the underlying litigation" – is unavailing.

Instead, Fry's relies on the fact that the Special Master – despite finding that "Fry's actions support a finding of bad faith," December 13 Report at 15 – did not make an explicit finding of bad faith. Objections at 4 n.4. As noted by the Special Master, however, controlling Third Circuit law[2] does not require a finding of bad faith.

Fry's also challenges the Special Master's conclusions by claiming that cases on which the December 13 Report relies involve non-parties that, unlike Fry's, have acted to "direct or control" the underlying litigation. Fry's fails to explain why this distinction has any relevance to the Court's decision. Fry's appears to believe that it can engage in *any* conduct before the Court, no matter how egregious, as long as it does not act to direct or control the litigation. Fry's position makes no sense, and no such limitation is found in the case law.

## I. FRY'S OBJECTIONS DO NOT ADDRESS, MUCH LESS REFUTE, THE SPECIAL MASTER'S FINDINGS OF MISCONDUCT

Class Plaintiffs presented to the Special Master a litany of specific instances of Fry's misconduct that "assertedly precipitated, and then extended and expanded the discovery proceedings before the Special Master, resulting in unnecessary expense and delay of the Special Master's issuance of the September 27, 2007 Report and Recommendation." *See* December 13 Report at 6 (citing D.I. 610 at 2-4; D.I. 422, Class Plaintiffs' Letter Briefs of March 29, 2007;

---

[2] Fry's asserts that Ninth Circuit law is controlling here because the subpoena was issued by the United States District Court for the Northern District of California. *See* Objection at 5. Fry's gets this choice of law issue wrong. *See In re Automobile Refinishing Paint*, 229 F.R.D. 482, 486 (E.D. Pa. 2005) (noting that, in MDL proceeding, "the goals of § 1407(b) are best served by applying the transferee court's interpretations of federal law, rather than being bound by the precedents of the subpoena-issuing court."); *see also In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1184 (D.C. Cir. 1987); *In re Linerboard Antitrust Litigation*, MDL No. 1261, 2005 WL 1625040, at *4 (E.D. Pa. 2005) (noting "[c]ourts . . . have held that, although the law of the transferor court merits consideration, only the law of the transferee court is binding on issues of federal law in an action transferred pursuant to 28 U.S.C. § 1407," and citing cases); *In re Ikon Office Solutions, Inc. Securities Litigation*, 86 F. Supp. 2d 481, 484 (E.D. Pa. 2000).

D.I. 440, April 23, 2007 Letter in Support of Motion to Compel).[3] This misconduct occurred during two time periods: (1) during months of negotiations between the parties and Fry's leading up to the motion to compel, (2) during the initial round of briefing and at the May 1, 2007 hearing on the motion. Rather than respond to any of the specific instances of misconduct cited by Class Plaintiffs to the Special Master, Fry's instead pointed to its assertedly good faith conduct during a *later* period of time – after the May 1 hearing -- when Class Plaintiffs and Fry's tried to negotiate a resolution of the motion. However, the instances of misconduct about which Class Plaintiffs complained did not occur during this later time period, and in any event, by then, substantial expense and delay before the Special Master had already occurred. As explained by the Special Master:

> Fry's makes no attempt to respond to any specific allegation made by Class Plaintiffs except for the allegation that it did not, in so many words, participate in meaningful good faith dialogue. In this regard Fry's relies on examples of comments made by counsel for Class Plaintiffs during one phase of the process. . . . While the Special Master must accept the plain meaning of Mr. Small's own statements, they are accepted for what they were, statements made during discrete phases of the process. At the same time, in the Special Master's view, many of the Class Plaintiffs' allegations go without a meaningful answer.

December 13 Report at 7.

Fry's Objections, like its prior briefing, fall short of offering any meaningful answers to Class Plaintiffs' myriad examples of misconduct. Fry's offers the generic declaration that it "worked hard to resolve the instant dispute," Objections at 4, but fails to address the findings in the Special Master's report as to Fry's pre-motion conduct, such as:

---

[3] Fry's continues to offer the puzzling reasoning that, because Class Plaintiffs are not pursuing sanctions *under Rule 37*, Class Plaintiffs cannot pursue sanctions *at all*. *See* Objections at 3-4. The Special Master rejected this precise argument. *See* December 13 Report at 17 (noting that Class Plaintiffs "properly rest their arguments on the authority of the Special Master under Fed. R. Civ. P. 53 read in conjunction with the Court's inherent power"). To the extent that it seeks to challenge the December 13 Report on this point, Fry's offers no explanation or basis for the Court to disturb the Special Master's conclusion.

- How could Fry's claim trade secret protection for data that it maintains are easily obtained from other sources, and refuse to produce such "trade secret" data on the basis that requests to other parties for similar data were pending?
- Why did Fry's request that the subpoena be narrowed, but then prevent the parties from complying with that request by refusing to supply such basic information as a data sample or a description of the data fields it maintains?
- Why did Fry's premise continued negotiations upon the wholly irrelevant condition that Class Plaintiff verify whether any named plaintiff purchased a computer from Fry's?
- How could Fry's refuse production based on burden grounds, when the parties had indicated on several occasions their willingness to discuss reasonable cost reimbursement, and when Fry's was unwilling or unable to provide any cost estimate?
- Why did Fry's insist that the Protective Order entered in this case does not apply to the production of its data, even though Fry's participated in the process that led to that Order's entry and even invoked the protections of that Order for its meet and confer correspondence?
- Why did Fry's claim that it does not maintain the transactional data sought by the parties when Fry's IT personnel revealed the existence of sales and purchase databases, in addition to the Merchant Master database, that keep transaction level data?

*See* December 13 Report at 7-13.

Fry's also fails adequately to address its post-motion conduct occurring through the May 1, 2007 hearing that "resulted in the further protraction of the process and the commensurate increase of Special Master compensation and costs," including:

- Demanding as a prerequisite to any production the modification of the highly-negotiated and highly-litigated Protective Order, which was entered after Fry's "concerns were specifically considered in the Protective Order Report and Recommendations and addressed either through revisions or rejected";[4]
- Asserting that Class Plaintiffs "had failed to adequately meet and confer" even though "it was Fry's in-house counsel . . . who stated, 'Accordingly I cannot see there is anything left to discuss.'"; and
- Arguing that Class Plaintiffs "had not adequately identified the data that it sought to compel," and that Fry's "did not have data in the form that Class Plaintiffs sought" (i.e. "'relating to individual transactions'"), even though Class Plaintiffs could have further targeted their requests had Fry's provided a data sample or data field descriptions.

December 13 Report at 10-13 (citations omitted).

Fry's Objections offer no answers to these and other inconsistencies and misconduct articulated in the Special Master's report. Fry's thus has failed to provide any basis for disturbing these findings. Therefore, Fry's also does nothing to rebut to the Special Master's analysis of the *Westinghouse* factors, December 13 Report at 18-19, each of which demonstrates the propriety of sanctions here under the Court's inherent powers.

---

[4] Fry's suggests that the only change to the Protective Order it sought as a condition of producing any data in this case was a restriction against sharing its data with AMD and Intel's inside counsel. *See* Objections at 1-2. This is far from a candid description of the far-reaching changes to the Protective Order sought by Fry's *See* Special Master's May 18, 2007 Report and Recommendation at 15-17, D.I. 482; April 23, 2007 Certification of Richard M. Volin, ¶¶ 20-23, D.I. 440.

Rather, Fry's now seeks to avoid the consequences of its misconduct based on the mere fact that it timely filed objections to the parties' subpoenas. *See* Objections at 4-5 (citing Federal Rule of Civil Procedure 45(c)(2)(B)). However, compliance with one procedural command of the Federal Rules hardly authorizes Fry's to violate the overarching obligation to avoid wasteful, dilatory and vexatious conduct in discovery proceedings. *See Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981) ("The discovery process is subject to the overriding limitation of good faith.").

Fry's position is also based on the erroneous view that sanctions cannot be awarded against a non-party "absent a finding of contempt." Objections at 5 (citing *Pennwalt Corp. v. Duran-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983)). As noted by the Special Master in rejecting this same reasoning in Fry's prior submissions, "Pennwalt discussed the Court's inherent power to sanction as ***independent of its power to issue contempt sanctions***." December 13 Report at 15 (emphasis added) (citations omitted).

Fry's disingenuously argues that a finding of good faith is supported here because the Special Master "declined to make a finding of bad faith against Fry's." Objections at 4 n.4 (citing December 13 Report at 3). Fry's attempts to transform the Special Master's highly critical findings into some type of endorsement, contrary to a fair reading of the December 13 Report. In truth, the Special Master stated that Fry's actions supported a finding of bad faith, but concluded that such a finding was not necessary because the Court had inherent power to impose sanctions without such a finding. *See* December 13 Report at 15-17; *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 n.11 (3d Cir. 1994). As the *Westinghouse* court explained:

> Although we stated in *Landon v. Hunt*, 938 F.2d 450 (3d Cir. 1991), that "a prerequisite for the exercise of the district court's

> inherent power to sanction is a finding of bad faith conduct" (*id.* at 454), that statement should not be read to require a finding of bad faith in every case, regardless of the sanction contemplated. *Landon* addressed the propriety of assessing *attorneys' fees* against a litigant; thus, we followed the Supreme Court's decision in *Chambers*, which also involved assessment of attorneys' fees. Under the American Rule, attorneys' fees ordinarily may not be shifted to a losing party. However, the Court in *Chambers* had relied on an exception to that rule allowing fees to be shifted when the losing party exhibited "bad faith." As Justice Scalia pointed out in his dissent, however, the fact that fee-shifting as a sanction requires a finding of bad faith "in no way means that *all* sanctions imposed under the courts' inherent authority require a finding of bad faith." Thus, a court need not always find bad faith before sanctioning under its inherent powers: "[s]ince necessity does not depend upon a litigant's state of mind, ***the inherent sanctioning power must extend to situations involving less than bad faith***."

*Westinghouse*, 43 F.3d at 74 n.11 (emphasis added) (citations omitted).

Regardless, even if a finding of bad faith were required for sanctions, the Court has been presented with sufficient record evidence to make such a finding. *See* December 13 Report at 7-14, and sources cited therein. Thus, Fry's observation is neither compelling nor relevant.

Fry's also claims that the "outcome of this dispute" is the best evidence that Fry's acted in good faith, arguing that (i) the ordered production represents a "small fraction" of the materials originally sought and "is responsive to only two of the original nineteen documents requests," and that (ii) "Class Plaintiffs agreed to treat any materials produced by Fry's as 'Outside Counsel's Eyes Only.'" Objections at 2, 4-7. Neither argument constitutes any evidence of good faith. Fry's ignores the reality that the parties began negotiations by focusing only on transactional data that are responsive to the two subpoena requests at issue in this dispute, and that Class Plaintiffs only moved to compel production of Fry's data, not its documents. *See* October 26, 2007 letter, D.I. 632. Fry's endeavor to take credit for Class Plaintiffs' own litigation choices and compromises, and to use that limitation as evidence of

victory as to a motion on which Class Plaintiffs prevailed, should be rejected. Moreover, what Fry's now calls a "small fraction" of the data originally sought, it described just three months ago, when its incentives were different, as REDACTED Fry's Oct. 18, 2007 Objections at 10, D.I. 624. Clearly, Fry's does not really view the Special Master's September 27, 2007 ruling as a "favorable outcome" (Objection at 6) because it has objected to that ruling. Further, however one characterizes Fry's conduct before the Special Master, such conduct cannot excuse Fry's obstructionist behavior in the meet and confers occurring before the motion to compel was filed – behavior which necessitated the filing of the motion.[5]

Moreover, the "Outside Counsel's Eyes Only" restriction was merely an interim measure – before the Special Master had ruled on Fry's request to amend the Protective Order – to permit certain disclosures by Fry's in connection with the court-ordered May 14, 2007 meet and confer. *See* December 13 Report at 13; Transcript of May 1, 2007 Hearing at 99:14-100:13, D.I. 551. No similar restriction governs the data production by Fry's that the Special Master has recommended be compelled. *See* Sept. 27, 2007 Report and Recommendation, D.I. 608. Indeed, Class Plaintiffs opposed, successfully, any modification of the Protective Order before the Special Master.

Fry's also offers the tangential hypothetical that, were this "a non-MDL proceeding, this dispute would have been resolved by a district court judge or magistrate in the Northern District of California and would therefore not have generated any special master fees." Objections at 9. Needless to say, this ***is*** an MDL proceeding and the Special Master fees ***were*** incurred as a result

---

[5] Similarly, Fry's apparent willingness to negotiate in good faith for a few months after the motion to compel had been filed, briefed and argued hardly excuses its misconduct occurring before that time. *See* Objection at 6-7.

of Fry's dilatory and unreasonable conduct. Fry's "but for" argument provides no reason why it should not be held accountable for its fair share of such fees.

## II. FRY'S LEGAL DISTINCTIONS ARE UNAVAILING

### A. Fry's Purported "Direct and Control" Requirement Has No Legal Foundation

Fry's concedes (as it must) that this Court has the inherent power to impose monetary sanctions against it,[6] but argues that it should escape sanctions because (i) the sanctions are based on the special master's fees, as opposed to some other litigation expense, and (ii) Fry's did not act to "direct or control" the litigation. *See* Objections at 3, 9.[7]

Initially, Fry's argues that the many cases endorsing sanctions against nonparties are inapplicable because "none . . . hold that a court may allocate a master's fees to a non-party." Fry's fails to explain why the type of litigation expense is dispositive, or why master's fees should be treated any differently from other litigation expenses generated or enlarged through litigation abuse. Such a conclusion would be unfounded under relevant case law. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (noting primary aspect of district court's discretion in exercising its inherent powers is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). Expenses – like the Special Master's fees here – are commonly

---

[6] It is beyond dispute that this Court has the inherent power to sanction non-parties for improper tactics. *See American Trust v. Sabino*, No. 99-4214, 2000 WL 1478372, at *1 (6th Cir. Sept. 28, 2000); *Corder v. Howard Johnson & Co*, 53 F.3d 225, 232 (9th Cir. 1994); *Lockarry v. Kayfetz*, 974 F.2d 1166, 1169 (9th Cir. 1992), *superceded by statue on other grounds as stated in Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998); *In the Matter of Holloway*, 884 F.2d 476, 477 (9th Cir. 1988); *In re A & E Family Investment, LLC*, 359 B.R. 249, 259 (Bankr. D. Ariz. 2007); *In re Al Lapin*, 226 B.R. 637, 642 (B.A.P. 9th Cir. 1998); *Jemison v. National Baptist Convention*, 720 A.2d 275, 282 & n.5 (D.C. 1998).

[7] Fry's also asks this Court to ignore *In re Holloway*, 884 F.2d 476, 477 (9th Cir. 1989), on which the Special Master relied in his December 13 Report, with the conclusory argument that the *Holloway* case "dealt with a court reporter's failure to comply with a court order and therefore has no bearing on the issues presented here." Objections at 3 n.3; *see also id.* at 9. Fry's provides no explanation as to why sanctions on the court reporter in *Holloway* were appropriate whereas sanctions on Fry's, which the Special Master found "intentionally undertook dilatory conduct resulting in a waste of time and increased financial costs," December 13 Report at 16, are not.

taxed as sanctions. *See, e.g.*, *Jemison*, 720 A.2d at 278 (ordering nonparty to pay "attorneys' fees, ***costs, and expenses***" as sanction) (emphasis added); *cf.* *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 112-113 (D.N.J. 2006) ("Because . . . [Defendant's] unreasonable behavior has occasioned the need to appoint a master to review their compliance with this Courts' Orders for production of responsive discovery, this Court will require that [Defendant] pay the entirety of the Special Master's fees.").

Fry's also attempts to distinguish itself from entities that have sought to "direct or control" the underlying litigation, but again offers no explanation as to why this distinction holds any significance. The Objections do not to cite a single case where sanctions were denied because a nonparty did not act to "direct or control" the litigation. Courts hold, ***without limitation***, that a court's inherent powers include the discretion to "impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices." *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994) (quoted in December 13 Report at 5); *see also American Trust v. Sabino*, No. 99-4214, 2000 WL 1478372, at *1 (6th Cir. Sept. 28, 2000) (holding that a "federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons").

The United States Supreme Court has explicitly rejected the idea that the inherent power to sanction "reaches only certain individuals or conduct," instead holding that it "extends to a full range of litigation abuses." *Chambers*, 501 U.S. at 46. Inherent powers are not premised on the court's "power concerning relations between the parties," but instead "reach[] a court's inherent power to police itself." *Id.* As such, sanctions are contingent only on the nature and severity of

the sanctioned entity's litigation abuses, not on that entity's relationship to the underlying litigation. *Id.*

Fry's continued focus on its nonparty status simply misses the mark; this Court should look to Fry's discovery abuses. *Cf. Jemison*, 720 A.2d at 282 & n.5 (noting that "whether [sanctioned entity] was or was not a party is not the real issue" and holding that "the issue is whether the trial court had personal jurisdiction over [sanctioned entity] which would enable the court to impose sanctions on him for his wrongful conduct.").

Fry's abuses here were vexatious, dilatory, and unnecessarily multiplied the fees and expenses in this matter. As such, it is entirely appropriate for the Court to require Fry's to pay for half of one type of expense caused by its sanctionable behavior. *See Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*, 507 F. Supp. 1146, 1163 (E.D. Pa. 1980), *aff'd without opinion*, 648 F.2d 923 (3d Cir. 1981), *rev'd on other grounds*, 458 U.S. 375 (1982) (noting that "the cost of a master should be borne by the party or parties whose conduct necessitated the reference to the master.").

**B. The Standard Applied by the Special Master Is Not More Restrictive than the Rule 37 Standard**

Fry's asserts, without explanation, that the standard applied by the Special Master "is more restrictive than the standard applicable to a party's conduct under Fed. R. Civ. P. 37, which precludes an award of expenses and attorneys' fees to a prevailing party on a motion to compel where the opposing party's response or objection was 'substantially justified.'" The December 13 Report belies Fry's assertion. The Special Master recited a litany of discovery abuses by Fry's, observed that "the goal of Fry's was to avoid the timely production of relevant data," *Id.* at 10, and noted that "Fry's conduct suggest[s] a finding of bad faith." *Id.* at 3. Such circumstances hardly suggest that the Special Master applied a standard *more* restrictive than the

"substantial justification" standard of Rule 37. *Cf. Donovan v. Petrancosta Corp.*, No. 81-1978, 1984 WL 3185, at *4 (W.D. Pa. 1984) ("The "substantial justification" standard constitutes a middle ground between an automatic fee award to a prevailing party and an award made only when the Government's position was frivolous or taken in bad faith.").

## CONCLUSION

Fry's challenge to the December 13 Report is unavailing. Fry's neither disputes the inherent power of the Court to impose sanctions in an appropriate situation, nor makes any real attempt to dispute the Special Master's detailed factual findings that warrant the exercise of such inherent power under the present circumstances.

Fry's "intentionally undertook dilatory conduct resulting in a waste of time and increased financial costs associated with discovery of its information." December 13 Report at 16. The Special Master found that "Fry's vexatious positions and conduct hindered the administration of justice" by creating unwarranted delay, and concluded that "Fry's should not be able to precipitate such delays and receive a 'free ride' in the allocation of costs." *Id.* at 13.

Class Plaintiffs respectfully request that the Court adopt the Special Master's December 13 Report in full.

Dated: January 24, 2008

PRICKETT, JONES & ELLIOTT, P.A.

/s/ James L. Holzman
James L. Holzman (DE Bar # 663)
J. Clayton Athey (DE Bar #4378)
Laina M. Herbert (#4717)
Matthew P. D'Emilio (#4845)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com
mpdemilio@prickett.com

*Interim Liaison Counsel for the Class Plaintiffs*

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Michael P. Lehmann
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
One Embarcadero Center, Suite 526A
San Francisco, CA 94111

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 433-2070
Facsimile: (415) 982-2076

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111

Interim Co-Lead Counsel for the Class Plaintiffs