EXHIBIT 7

EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSOR<br>ANTITRUST LITIGATION | )<br>)<br>)   MDL Docket No. 05-1717-JJF<br>) |
| PHIL PAUL, *on behalf of himself*<br>*and all others similarly situated,*<br><br>                            Plaintiffs,<br>        v.<br><br>INTEL CORPORATION,<br><br>                            Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No. 05-485-JJF<br>)<br>)   CONSOLIDATED ACTION<br>)<br>)<br>) |

## SUPPLEMENTAL LETTER BRIEF REGARDING ALLOCATION OF THE SPECIAL MASTER'S COSTS (Discovery Matter No. 5)

PUBLIC VERSION

                                      PRICKETT, JONES & ELLIOTT, P.A.
                                      James L. Holzman (#663)
                                      J. Clayton Athey (#4378)
                                      Laina M. Herbert (#4717)
                                      1310 King Street
                                      P.O. Box 1328
                                      Wilmington, DE 19899
                                      (302) 888-6500
                                      jlholzman@prickett.com
                                      jcathey@prickett.com
                                      lmherbert@prickett.com

                                      *Interim Liaison Counsel for the Class Plaintiffs*

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Michael P. Lehmann
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.

1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
Telephone:     (202) 408-4600
Facsimile:     (202) 408-4699

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone:     (415) 433-2070
Facsimile:     (415) 982-2076

Steven W. Berman
Anthony Shapiro
HAGENS BERMAN SOBOL
SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone:     (206) 623-7292
Facsimile:     (206) 623-0594

Guido Saveri
R. Alexander Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone:     (415) 217-6810
Facsimile:     (415) 217-6813

*Interim Co-Lead Counsel for the Class Plaintiffs*

Dated:  October 9, 2007

Writer's Direct Dial:
(302)888-6507
Writer's Telecopy Number:
(302)658-8111
Writer's E-Mail Address:
JCATHEY@prickett.com

PRICKETT, JONES & ELLIOTT
A PROFESSIONAL ASSOCIATION
1310 KING STREET, BOX 1328
WILMINGTON, DELAWARE 19899
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

October 9, 2007

**VIA ELECTRONIC FILING
and HAND DELIVERY**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801

RE: DM No. 5; *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717-JJF and *Paul v. Intel Corp.*, Consolidated Civil Action No. 05-485-JJF;

Dear Judge Poppiti:

Class Plaintiffs respectfully submit this letter brief in further support of the fee allocation contained in Your Honor's May 25, 2007 correspondence, which split the Special Master's fees and expenses in respect of Discovery Matter 5 ("DM 5") equally between Class Plaintiffs and Fry's Electronics, Inc. ("Fry's"). This letter brief supplements the arguments and record contained in Class Plaintiffs' June 25, 2007 letter brief. D.I. 520.[1]

## INTRODUCTION

Fry's should be required to pay half of the Special Master fees and expenses incurred in this matter because it was Fry's bad faith and unreasonable conduct that necessitated the Special Master's intervention and that then expanded the proceedings before the Special Master. Given that (a) Class Plaintiffs' subpoena requested relevant data (b) the data were not unduly burdensome to produce, (c) the data were adequately protected by the existing Protective Order, and (d) Class Plaintiffs throughout were willing to share in Fry's production costs, only bad faith and unreasonable positions can explain Fry's refusal to produce responsive data.

As we explain below, before Class Plaintiffs filed the motion to compel, Fry's never negotiated for any purpose other than to avoid production of its data. In negotiations after the motion was filed, Fry's insisted that it would produce only some minimum amount of data,[2] while simultaneously refusing to provide basic information that Class Plaintiffs needed to formulate a more narrowly tailored production request. In addition, Fry's unreasonable insistence that additional protections be added to the protective order, though Fry's had already received and benefited from a full opportunity for input into the protective order, forced the Special Master to address that issue at length at the May 1 hearing and in his May 18, 2007 Report and Recommendations ("May 18 Report", D.I. 482).

---

[1] All references to "D.I. 440" are to docket entries in action 05-md-1717 unless otherwise noted.
[2] *See* Transcript of May 1, 2007 Hearing on Class Plaintiffs' Motion to Compel ("May 1 Tr."), 51:6 – 52:21.

## STATEMENT OF FACTS

<u>Fry's Pre-Motion Intransigence</u>

The details of Fry's early intransigence are well-documented in Class Plaintiffs' March 29, 2007 and April 23, 2007 letter briefs in support of their motion to compel (D.I. 422 and D.I. 440) and the exhibits thereto.[3] The tactics employed by Fry's from the inception of these negotiations included:

- Taking the irreconcilable positions that its data both are a trade secret *and* should not be produced because they are easily obtained from other sources (Volin Cert., Ex. G at 1, Ex. J at 2);

- Refusing to comply with the subpoena until it was narrowed, yet refusing to provide a tiny data sample or a description of its data fields that would have enabled the parties to narrow the subpoena (*Id.*, Ex. G at 2, Ex. H at 1, Ex. J at 2; Volin Decl. ¶ 6);

- Attempting to derail the negotiations with red herrings, such as insisting that Class Plaintiffs verify whether any of them had purchased an Intel-based computer from Fry's (Volin Cert., Ex. G at 1, Ex. J at 1; Volin Decl. ¶ 3, Ex. A);

- Invoking the protections of the Protective Order for its meet and confer correspondence, (Volin Cert. ¶ 9, Ex. G at 1,3), and participating in the process that led to the entry of the Protective Order, (May 18 Report at 15; Volin Decl. ¶ 18), but then denying that the order applied to production of Fry's data (Volin Cert. ¶ 12, Ex. J at 2; Volin Decl. ¶ 19);

- Raising cost-sharing issues, even though the parties had offered to negotiate a cost-sharing agreement (Volin Cert. Ex. J at 2, Ex. K at 2; Volin Decl. ¶ 4);

- Arguing that the requested data were duplicative of data sought from other nonparties, even though such duplication either did not exist or was not a bar to production (Volin Cert., Ex. J at 2, Ex. K at 4); and

- Generally refusing to engage in any meaningful dialogue about producing its data, and instead throwing up make-weight roadblocks in an effort to avoid production. (*Id.*, Exhs. G, J, K; Volin Decl. ¶¶ 8-10).

This behavior by Fry's had only one purpose: to avoid production of its data even though the data were relevant, adequately safeguarded by the existing Protective Order and not unduly burdensome to produce, especially given Class Plaintiffs' agreement to share in the cost of production. This behavior represents a bad faith effort by Fry's to avoid complying with a reasonable discovery request and required Class Plaintiffs to seek the Special Master's assistance.

---

[3] *See generally* Certification of Richard M. Volin in support of Class Plaintiffs' Request to Compel Fry's Electronics, Inc. ("Volin Cert."), and Declaration of Richard M. Volin ("Volin Decl."), and exhibits thereto.

<u>Fry's Bad Faith During Proceedings Before the Special Master</u>

Fry's bad faith continued during the first round of briefing and the May 1, 2007 hearing, as the following examples demonstrate.

- Fry's insisted that the existing Protective Order be modified as a prerequisite to any production, even though Fry's and other third parties had thoroughly aired their objections to a draft of that order in extensive proceedings before the Special Master. *See* May 1 Tr., 78:1-7. The Court rejected Fry's proposed modification precisely on this ground, concluding that "Fry's present concerns with respect to the existing Protective Order were previously raised in the context of Third Party Objections. These concerns were specifically considered in the Protective Order Report and Recommendations and were addressed either through revisions or rejected." May 18 Report at 15.

- In its April 17, 2007 letter brief in opposition to the motion to compel, Fry's argued that Class Plaintiffs had not adequately met and conferred. *See* April 17 Letter Brief, D.I. 323 in 05-cv-485, at 1. Yet, it was Fry's counsel who wrote to the parties' counsel in early March 2007 that, "I cannot see how there is anything left to discuss." *See* Volin Cert., Ex. J; Volin Decl. ¶ 9.

- Fry's argued in opposition to the motion that Class Plaintiffs had not adequately identified the data they sought to compel. But, as Fry's knew full well, it had refused to comply with the parties' request for a tiny sample of its data, or a description of its data fields, which information would have enabled Class Plaintiffs to describe Fry's data in great detail. *See* Volin Cert. Ex. B, Ex. G at 2, Ex. H at 1-2, Ex. J at 2. Fry's refusal to adequately describe its data not only was unreasonable on its face, but was in breach of Fry's commitment to provide Class Plaintiffs with "a description of the responsive and available data in its possession ...." *See* Volin Decl. ¶ 11 (*quoting* April 4, 2007 letter from J.C. Athey to Hon. Vincent J. Poppiti). Fry's refusal led to the Special Master deferring ruling on the motion to compel and ordering a further meet and confer for Fry's to describe its data to Class Plaintiffs, *see* May 1 Tr., 94:3 – 95:6; 103:14 – 104:11, which was later followed by a second round of briefing and a second hearing.

- In an effort to persuade the Court that it did not have data in the form that Class Counsel sought, Fry's represented at the May 1 hearing that it "does not maintain data relating to individual transactions." May 1 Tr., 85:12-14. In a subsequent meet and confer, however, Fry's indicated that it did have transaction level purchase and sales data. When Class Plaintiffs confronted Fry's with this discrepancy, *see* Class Plaintiffs' August 10, 2007 letter brief, D.I. 560, at 4 n.5, Fry's did not deny that it had transaction level data. Rather, it carefully stated only that it does not maintain "accessible" "sales data" at the transaction level. *See* Second Declaration of Daniel A. Small, August 27, 2007, ¶ 3. It made no effort to explain how its transaction level sales data were in its possession but not accessible, and did not deny that it had transaction level purchase data. *Id.*

- Fry's argument that Class Plaintiffs had refused to state "if and how they would pay for the production," was not in good faith in light of the parties' offer "to discuss

costs with an eye toward reasonable cost-sharing of reasonable out-of-pocket expenses incurred by Fry's," Volin Decl. ¶ 4, and Fry's failure to comply with the parties' request for a reasonable estimate of its production costs. *See* Declaration of Daniel A. Small, August 10, 2007, ¶ 12.

Fry's failure to be more candid with the Court and to take only good faith and reasonable positions precluded a decision based on the record as of the May 1 hearing, thereby expanding the proceedings before the Special Master.

<u>Fry's Refusal to Provide the Information Needed for Class Plaintiffs to Devise a Representative Sample</u>

After the May 1 hearing, in an effort to reach a compromise, Class Plaintiffs attempted to negotiate production of a representative sample of Fry's purchase, sales and financial incentives data. Key to this effort was Fry's willingness to disclose certain information about its computer purchases and sales to allow formulation of a statistically meaningful sample. Fry's provided wholly inadequate cooperation. Despite requests from Class Plaintiffs, it never divulged important information such as the breakdown of its computer sales by brand or details about the financial incentives it received from its computer vendors. *See* Declaration of Daniel A. Small ¶¶ 2, 11. This lack of cooperation frustrated efforts to reach a negotiated resolution of the discovery dispute and required the parties to brief and argue the motion to compel a second time.

## ARGUMENT

<u>The Special Master May -- and Should -- Require Fry's to Share in the Special Master Costs Incurred Because of Fry's Unreasonable and Bad Faith Behavior</u>

In their June 25 letter brief, Class Plaintiffs explained that the Court had authority under Rules 45 and 53 to require Fry's to share in the costs of the Special Master. In addition, as we now discuss, the Court has inherent authority to require Fry's to pay part of those costs as a sanction.

It has long been recognized that federal courts possess inherent powers to control the proceedings before them. *See United States v. Hudson,* 11 U.S. 32, 33 (1812) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution."). These powers include the authority to sanction those who engage in improper conduct in the course of litigation. *Chambers v. NASCCO, Inc.,* 501 U.S. 32, 50 (1991). Such sanctions are appropriate when "a party 'shows bad faith by delaying or disrupting the litigation. . . .'" *Id.* at 46 (*quoting Hutto v. Finney,* 437 U.S. 678, 689 n.14 (1978)). They "serve the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Id.* at 46 (citations omitted).

When, as here, the sanctions requested do not include attorneys' fees, a court can impose them even absent a finding of bad faith. *Republic of Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 74 n.11 (3rd Cir. 1994).[4] The court imposing sanctions must "consider the conduct at

---

[4] As the *Westinghouse* court explained:
> Although we stated in *Landon v. Hunt,* 938 F.2d 450 (3d Cir.1991), that "a prerequisite for the exercise of the district court's inherent power to sanction is a finding of bad faith conduct" ( *id.* at 454), that statement should not be read to require a finding of bad faith in every case, regardless of the sanction contemplated.

The Honorable Vincent J. Poppiti
October 9, 2007
Page 5

issue and explain why the conduct warrants sanction" as well as "consider the range of possible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate." *Id.* at 74; *see also id.* at 73 n.10 (describing appropriate exercises of inherent powers).

Because Fry's has appeared before this Court in multiple proceedings and the Court has jurisdiction to enforce the subpoena served on Fry's, *see* May 18 Report at 10, Fry's nonparty status is no barrier to the imposition of sanctions. *See, e.g., Jemison v. National Baptist Convention*, 720 A.2d 275, 282 & n.5 (D.C. 1998) (rejecting contention that "the court could not impose sanctions of any kind upon [the nonparty]" and instead describing issue as "whether the trial court had personal jurisdiction over [the sanctioned entity] which would enable the court to impose sanctions on him for his wrongful conduct."); *see also American Trust v. Sabino*, 99-4214, 2000 WL 1478372, at *1 (6th Cir. Sept. 28, 2000) (noting that a "federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); *In re A & E Family Investment, LLC*, 359 B.R. 249, 259 (Bkrtcy. D. Ariz. 2007); *In re Al Lapin.*, 226 B.R. 637, 642 (B.A.P. 9th Cir. 1998) ("Read together, the authorities make clear that the bankruptcy court has the inherent powers of contempt, to sanction, and to sanction non-parties in appropriate circumstances."); *Lockary v. Kayfetz*, 974 F.2d 1166, 1169 (9th Cir. 1992), *superseded by statute on other grounds as stated in Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998). Indeed, the reach of the Court's inherent powers is far enough that one court sanctioned a *court reporter* for failing to timely submit transcripts. *In the Matter of Holloway*, 884 F.2d 476, 477 (9th Cir. 1988).

Here, the record demonstrates that Fry's conduct warrants the imposition of sanctions. Fry's obstructionist behavior and unreasonable and bad faith positions delayed the discovery process, necessitated the Special Master's intervention, and expanded the proceedings before the Special Master. It is entirely appropriate and measured to require Fry's to pay for half of one type of expense caused by its sanctionable behavior. *See Massachusetts School of Law at Andover v. American Bar Association*, 914 F. Supp. 1172, 1177 (E.D. Pa. 1996) (stating that it "is not good faith for a lawyer to frustrate discovery requests and court orders with successive objections like a magician pulling another and another and then still another rabbit out of a hat.").

## CONCLUSION

Fry's should bear half of the Special Master costs caused by its bad faith and unreasonable conduct. Class Plaintiffs respectfully request that Fry's challenge to the Special Master's invoice be rejected.

---

Landon addressed the propriety of assessing attorneys' fees against a litigant; thus, we followed the Supreme Court's decision in *Chambers*, which also involved assessment of attorneys' fees. Under the American Rule, attorneys' fees ordinarily may not be shifted to a losing party. However, the Court in *Chambers* had relied on an exception to that rule allowing fees to be shifted when the losing party exhibited "bad faith." As Justice Scalia pointed out in his dissent, however, the fact that fee-shifting as a sanction requires a finding of bad faith "in no way means that all sanctions imposed under the courts' inherent authority require a finding of bad faith." Thus, a court need not always find bad faith before sanctioning under its inherent powers: "[s]ince necessity does not depend upon a litigant's state of mind, the inherent sanctioning power must extend to situations involving less than bad faith."
*Westinghouse*, 43 F.3d at 74 n.11 (citations omitted).

19684.1\348393v1

The Honorable Vincent J. Poppiti
October 9, 2007
Page 6

Respectfully submitted,

J. Clayton Athey
*Bar I.D. #4378*

JCA/sam

cc:   Frederick L. Cottrell, III, Esq.
      Richard L. Horwitz, Esq.
      Mary B. Graham, Esq.

19684.1\348393v1

EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSOR<br>ANTITRUST LITIGATION | )<br>)<br>)<br>)    MDL Docket No. 05-1717-JJF<br>) |
| PHIL PAUL, *on behalf of himself<br>and all others similarly situated*,<br><br>                                    Plaintiffs,<br>         v.<br><br>INTEL CORPORATION,<br><br>                                    Defendant. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-485-JJF<br>)<br>)    CONSOLIDATED ACTION<br>)<br>)<br>)<br>) |

<u>REPLY SUPPLEMENTAL LETTER BRIEF REGARDING ALLOCATION OF THE
SPECIAL MASTER'S COSTS (Discovery Matter No. 5)</u>

PUBLIC VERSION

                                              PRICKETT, JONES & ELLIOTT, P.A.
                                              James L. Holzman (#663)
                                              J. Clayton Athey (#4378)
                                              Laina M. Herbert (#4717)
                                              1310 King Street
                                              P.O. Box 1328
                                              Wilmington, DE  19899
                                              (302) 888-6500
                                              jlholzman @prickett.com
                                              jcathey@prickett.com
                                              lmherbert@prickett.com

                                              *Interim Liaison Counsel for the Class Plaintiffs*

Dated:  October 26, 2007

Of Counsel:

Michael D. Hausfeld
Daniel A. Small
Michael P. Lehmann
Brent W. Landau

COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 433-2070
Facsimile: (415) 982-2076

Steven W. Berman
Anthony Shapiro
HAGENS BERMAN SOBOL
SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Guido Saveri
R. Alexander Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Co-Lead Counsel for the Class Plaintiffs*

**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION
**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial:
(302) 888-6507
Writer's Telecopy Number:
(302) 658-8111
Writer's E-Mail Address:
JCATHEY@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

October 26, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801

VIA ELECTRONIC FILING
and HAND DELIVERY

<u>**PUBLIC VERSION**</u>

RE: DM No. 5; *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717-JJF and *Paul v. Intel Corp.*, Consolidated Civil Action No. 05-485-JJF;

Dear Judge Poppiti:

Fry's October 19, 2007 letter brief in opposition to Your Honor's May 25, 2007 allocation of fees and expenses relating to Discovery Matter 5 ("Opposition") fails to undermine -- or, in some cases, even address -- the grounds provided by Class Plaintiffs in their October 9, 2007 letter brief for upholding the allocation. Eager to limit the Court's inquiry to the "single question" of defining the term "party" in Rule 53, Fry's offers only a cursory response to Class Plaintiffs' showing that: (1) the Court has inherent power to respond to a non-party's improper behavior with sanctions, and (2) the litany of Fry's bad conduct before and after the motion to compel was filed is sufficient to warrant the exercise of such power here. The Special Master's May 25, 2007 allocation was a proper exercise of the Court's authority under Rules 45 and 53, as well as the Court's inherent authority under governing Circuit law.

<u>The Undisputed Record Demonstrates Fry's Bad Faith</u>

Fry's does not challenge Class Plaintiffs' description in their October 9, 2007 letter brief of *twelve* specific instances of unreasonable and bad faith conduct, each of which is supported by uncontroverted record evidence. Nor does Fry's deny the conclusion that such conduct precipitated and expanded the proceedings before the Special Master. Rather, Fry's tries to show good faith by quoting transcript excerpts where Class Counsel commented favorably on the progress of then-ongoing negotiations with Fry's in May, June and July.

Fry's cannot escape responsibility for its behavior based on these comments. Class Plaintiffs have never contended that *everything* Fry's has done in response to the subpoena has been unreasonable. In fact, as counsel's comments to the Special Master reflect, there was a period of about three months, from approximately mid-May to mid-August, when it appeared that Class Plaintiffs might be able to work out a deal with Fry's.[1] But Fry's apparent willingness to engage in serious negotiations for a few months after the motion to compel had been briefed and argued does not excuse months of pre-motion intransigence and post-motion bad faith through the May 1 hearing. It was this earlier behavior that required the Special Master's assistance and expanded the proceedings before the Special Master.[2]

---

[1] The negotiations during this time frame progressed largely because of the great degree to which Class Plaintiffs were willing to compromise.

[2] Because the negotiations with Fry's ultimately were unsuccessful, despite the far-reaching compromises that Class Plaintiffs were willing to accept, one cannot be sure in retrospect what Fry's goals were even during the May-August time period.

19684.1\350181v1

The Honorable Vincent J. Poppiti
October 26, 2007
Page 2

Fry's also argues that all it has done is insist that Class Plaintiffs demonstrate their need for Fry's (self proclaimed) trade secrets. Manifestly, that is *not* all that Fry's has done. Fry's again ignores both its pre-motion conduct -- during which it sought to avoid, not just limit, its production -- and other, unreasonable arguments it made to the Special Master. Fry's also ignores the point, which proved dispositive of the motion to compel, that Fry's data were adequately protected by the Protective Order, so that they were discoverable based on a relevancy standard, not a need standard. *See* Special Master's September 27, 2007 Report and Recommendation (D.I. 608 in 05-md-1717, on objection to Judge Farnan). Fry's contrary position was unreasonable in light of the extensive consideration already given by the Special Master in earlier, plenary proceedings to the question of the Protective Order's adequacy to protect trade secrets and other proprietary and confidential information. *See* Special Master's May 18, 2007 Report and Recommendation (D.I. 482 in 05-md-1717) at 15.

Fry's other attempts to show good faith are no more meritorious. Fry's points out that the Special Master recommended that it be compelled to produce data in response to just two of the subpoena's 19 requests. But Fry's, disingenuously, ignores that Class Plaintiffs only moved to compel production of Fry's data, not its documents, and that Class Plaintiffs prevailed before the Special Master. That the data that Fry's must produce happens to be responsive to just two of Class Plaintiffs' subpoena requests clearly does not demonstrate good faith. Fry's further argues that it spent countless hours explaining its information systems to Class Plaintiffs. But Fry's overlooks (1) that before the motion to compel was filed, it had refused to provide any meaningful description of its data, *see* Certification of Richard M. Volin ("Volin Cert."), dated March 22, 2007, Ex. G at 2, Ex. H at 1, Ex. J at 2; Declaration of Richard M. Volin ("Volin Decl."), dated April 23, 2007, ¶ 6; (2) that this refusal led to an order compelling Fry's to meet and confer with Class Plaintiffs to describe its data, *see* Transcript of May 1, 2007 Hearing at 94:3-95:6, 103:14-104:11; (3) that at the meet and confer, Fry's refused to and/or could not answer significant questions, *see* Declaration of Daniel A. Small, ¶¶ 2, 11; and (4) that throughout the negotiations, Fry's refused to provide certain information that was highly relevant to efforts to define the parameters of a representative data sample. *Id.* In addition, Fry's argues that this dispute was ultimately caused by alleged overbreadth and vagueness of Class Plaintiffs' subpoena. Not true. As the Special Master knows, the negotiations evolved into specific competing proposals by Fry's and Class Plaintiffs, so any asserted problems with the subpoena became irrelevant. Moreover, Class Plaintiffs made great efforts pre-motion to persuade Fry's to describe its data fields so that the data requests could be more narrowly tailored, but Fry's would not cooperate. *See* Volin Cert., Ex. G at 2, Ex. H at 1, Ex. J at 2; Volin Decl., ¶ 6.

The record of Fry's bad faith and unreasonable conduct is clear and unrefuted. Fry's attempts to show good faith fail. Fry's should be held accountable for its conduct.

<u>The Court May and Should Require Fry's to Share in the Costs of the Special Master as a Sanction</u>

Fry's argues that the Court is powerless to hold Fry's accountable for its conduct in connection with a subpoena enforceable in this Court and proceedings before this Court to enforce that subpoena. Fry's is wrong.

Rule 53 does not, as Fry's suggests, preclude the Court from exercising its inherent authority to sanction those who engage in improper conduct in litigation before it. *See Chambers*

19684.1\350181v1

*v. NASCCO, Inc.*, 501 U.S. 32, 50 (1991). The Court's inherent authority provides a separate and independent basis for the Court to allocate a portion of the Special Master's fees and expenses to Fry's as a sanction. *See Republic of Phillipines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994) (noting inherent power to sanction litigants exists independent of "formal rules and legislative dictates."). In any event, Rule 53 only addresses the allocation of the Special Master's fees and expenses *in the ordinary course*. Because it is silent on the allocation of those fees as a sanction, it clearly does not limit the Court's inherent authority to impose such a sanction.[3]

Fry's argument that Class Plaintiffs made a "clear disavowal of any request for sanctions," Opposition at 2, carries no weight. Class Counsel simply advised the Special Master in response to his inquiry during a recent telephone conference that Class Plaintiffs did not expect to rely on Rule 37 to support the Special Master's allocation of his fees and expenses in this matter. This statement -- whatever effect it might have on a claim for sanctions under Rule 37 -- certainly poses no obstacle to a claim for sanctions under the Court's inherent authority, a wholly separate basis from Rule 37 for awarding sanctions.[4]

Fry's contention that it is subject to sanctions only for contempt must be rejected for a similar reason. While contempt is punishable by sanctions, it certainly is not the sole basis upon which sanctions can be awarded. Improper conduct before the court, even if it involves no violation of a court order or court process, is sanctionable under the court's inherent authority. Indeed, the Supreme Court has expressly distinguished sanctions pursuant to the court's inherent authority from sanctions awarded for contempt, demonstrating that the two are separate and independent grounds for awarding sanctions. *See Chambers*, 501 U.S. at 46 (noting that sanctions pursuant to the court's inherent authority "vindicate judicial authority without resort to the more drastic sanctions available for contempt of court.").

Finally, Fry's argues that it would be unfair and unconstitutional for it to bear a portion of the Special Master's fees and expenses because it allegedly had no opportunity to oppose appointment of a special master. However, Fry's puts form over substance. Fry's could be sanctioned the same amount of money, whether it be deemed a portion of the Special Master's fees and expenses or a straight monetary sanction. Indeed, the Special Master's fees and expenses can properly be viewed as just a reasonable and appropriate basis for determining the amount of the sanction given that such fees and expenses were generated as a result of Fry's conduct. Moreover, Fry's conduct occurred long after the Special Master had been appointed. Fry's therefore knew or should have know that such conduct could subject it to a monetary sanction, including being required to pay a portion of the expense that the conduct caused.

It is clear that the Court may impose sanctions on Fry's under its inherent power. Requiring Fry's to pay half of the Special Master costs caused by Fry's bad faith and unreasonable conduct is an eminently reasonable sanction. The Special Master's allocation of his fees and expenses is proper and appropriate, and Fry's objection thereto should be overruled.

---

[3] For the same reason, Fed. R. Civ. P. 45(c)(2)(B) [erroneously cited by Fry's as "FRCP 53(b)(2)(B)," *see* Opposition at 5 n.7] does not curtail this Court's inherent authority.

[4] The reason that Class Counsel said that Class Plaintiffs did not intend to proceed under Rule 37 is that the rule by its terms applies only to parties (not third parties) and deponents. *See* Fed. R. Civ. P. 37(a)(2).

19684.1\350181v1

The Honorable Vincent J. Poppiti
October 26, 2007
Page 4

                                                                        Respectfully submitted,

                                                                        J. Clayton Athey
                                                                        *Bar I.D. #4378*

JCA/sam

cc:     Frederick L. Cottrell, III, Esq.
         Richard L. Horwitz, Esq.
         Mary B. Graham, Esq.

19684.1\350181v1