

Potter
Anderson
&Corroon LLP

Richard L. Horwitz, Esq.
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

January 29, 2008
PUBLIC VERSION DATED: March 4, 2008

**VIA ELECTRONIC MAIL**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE  19801-4226

>  Re:  *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al., C.A.*
>  *No. 05-441-JJF; In re Intel Corporation, C.A. No. 05-MD-1717-JJF; and*
>  *Phil Paul, et al. v. Intel Corporation, C.A. 05-485-JJF Discovery Matter*
>  *No. 4a*

Dear Judge Poppiti:

Intel herewith responds to AMD's letter to you of January 22, 2008, regarding the submission of materials for Your Honor's *in camera* review of documents.  Therein, AMD's counsel addresses as "troubling issues" the following:

1.  The possible existence of Weil Gotshal attorneys' contemporaneous interview notes as well as any later prepared summaries and memoranda based upon those notes.

2.  The existence of possible interview notes taken by "Intel paralegals" or a confirmation that no such notes exist.

3.  AMD's position that previous production of documents by Intel demonstrates a waiver of the attorney-client privilege "that may have attached to the Weil Gotshal interview materials."

The Honorable Vincent J. Poppiti
January 29, 2008
Page 2

As to Point 1, in its January 18th production to the Court, Intel provided notes taken by Weil attorneys during the process of interviewing 901 custodians.[1] The "later" prepared "summaries or memoranda" referenced in AMD's January 22 letter are "derivative materials" which Intel is not required to produce. The issue of "derivative materials" was addressed during the hearing (by a teleconference) on January 3, 2008 (Transcript pp. 6-10), and had been discussed by the parties prior to that hearing. On January 3, Ms. Kochenderfer described what Intel believes are "derivative materials" (which description was amplified upon by Mr. Floyd) and then Mr. Samuels stated (at 9):

> [A]nd I would like to make a suggestion about those. If, as Mr. Floyd believes, those derivative materials contain no factual information that isn't otherwise contained in the interview notes, the interview notes themselves, and if we can get representation to that effect and a representation that all the—that the balance of these derivative materials are core work product, I think we would be satisfied. But I think they need to finish the process of gathering materials so that they can make that representation to us.

Subsequently, on January 17, 2008, Ms. Kochenderfer in an email to Mr. Samuels responding to some of Mr. Samuels' questions, wrote: "This will confirm that, after diligent search and completion of the collection and review process, Intel will make representation that it has provided for *in camera* review all interview notes and follow-up materials that reflect factual information provided by custodians during the Weil interview process. With respect to the 'derivative materials,' Intel will confirm its belief, based on a reasonable inquiry, that any derivative materials that exist do not contain information that is not otherwise contained in the Weil interview notes or follow-up materials."

In conformance with the discussion at the hearing on January 3 and the communications with Mr. Samuels, Intel intends, *when the collection and review process is completed,* to make such a representation. Obviously, until the process is completed, Intel cannot make any final representation to AMD or the Court regarding the Weil materials.

At this time, in accordance with AMD's request, Intel is prepared to provide AMD with the Word document described in Intel's transmittal letter (a copy of summaries previously provided to Your Honor, reorganized alphabetically in a separate Word document) upon AMD's confirmation that it will not assert that such a production is a waiver of any privilege or work product protection.

---

[1] Intel is still in the process of collecting, reviewing and preparing proposed redactions for potential follow-up materials that may reflect notes taken by Weil attorneys during follow-up interviews with certain custodians.

The Honorable Vincent J. Poppiti
January 29, 2008
Page 3

As to Point 2, Intel has confirmed through a reasonable inquiry that its paralegals did not take notes during the Weil interviews and, therefore, there is nothing further to be provided in that connection.

Finally, with regard to Point 3, AMD's claim that Intel has waived privilege over the Weil Gotshal materials is refuted by the very documents AMD attaches to its January 22 letter. By claiming waiver, moreover, AMD has exposed its true strategy—parlay Intel's good-faith efforts to narrow privilege claims and produce as much information as possible into a broad subject-matter waiver.

None of the three documents AMD cites in footnote 5 of its letter can fairly be cited as "evidence of waiver." AMD first refers to a February 8, 2007 email between Intel legal personnel and Weil Gotshal attorneys. AMD neglects to mention that Intel produced five versions of this document, all of which redacted the Weil Gotshal attorney's report except the one AMD attaches. Plainly, Intel's intent was to redact the Weil report; the lone document that fell through the "reviewing cracks" was produced inadvertently in the process of review and producing about 9,000 other documents. The parties have stipulated that each side is entitled to "claw back" inadvertently produced documents, and Intel is requesting that AMD comply with that stipulation with regard to the February 8, 2007 email.

Intel did not deem the other two documents AMD mentions to be privileged. In one email, a Weil Gotshal attorney told an Intel paralegal that an Intel custodian "would like someone to call him to help him set up a rule to capture sent email." Intel did not assert privilege here because the employee was seeking technical IT assistance, not legal advice, and the email did not disclose attorney mental impressions. AMD can not have it both ways. It has claimed previously that it is entitled to "factual" and non-core work product. But when it receives such, it then claims a broad attorney-work product waiver. Likewise, the other email which AMD provided to the Court (between outside counsel at Howrey and Weil Gotshal and an in-house Intel attorney) merely reflected facts about Intel's efforts to locate data for various document custodians. It neither requested nor reflected legal advice and it did not contain any analysis or other impressions that would qualify as core work product.

Ultimately, AMD's attempt to manufacture a subject-matter waiver argument implicates a larger issue. For months, Intel has been required to walk a thin line with allegations of concealment awaiting on one side and allegations of waiver on the other. Throughout this process, Intel has sought to provide more, rather than less, information to AMD. This has included working diligently to minimize its privilege assertions and produce communications that merely disclosed facts or that described ministerial tasks. AMD is now seizing on Intel's good-faith production and claiming that Intel has waived attorney-client privilege over "all of the documents submitted for inspection" or, in other words to virtually all of Weil Gotshal's investigation. While this type of gamesmanship may have been predictable, it should not be rewarded. Subject-matter waiver is reserved for instances where a litigant has used privilege as

The Honorable Vincent J. Poppiti
January 29, 2008
Page 4

both a sword and a shield. Here Intel has not done that—indeed, it is not attempting to affirmatively use the Weil documents as a sword at all. Rather, Intel has produced those documents only because AMD has demanded them, and in doing so, has simply tried to draw a reasonable line between privileged and non-privileged material. If AMD is now going to play, "I gotcha," and claim that Intel has erred too far on the side of production, then Intel will insist on claw-back treatment for all documents involved. The one thing that is clear—besides AMD's strategy—is that Intel has not intentionally waived either its attorney-client privilege or its immunity from producing core work product.

If the Court has any questions of its own, we would be pleased for the opportunity to respond to them.

Respectfully,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

RLH/rb
852762/29282