# EXHIBIT 1

5 août 2006          JOURNAL OFFICIEL DE LA RÉPUBLIQUE FRANÇAISE          Texte 1 sur 67

# Décrets, arrêtés, circulaires

## TEXTES GÉNÉRAUX

### MINISTÈRE DE L'ÉCONOMIE, DES FINANCES ET DE L'INDUSTRIE

**Arrêté du 27 juillet 2006 portant renouvellement de l'agrément
de l'Union fédérale des consommateurs-Que Choisir (UFC- Que Choisir)**

NOR : *ECOC0600068A*

Le ministre de l'économie, des finances et de l'industrie et le garde des sceaux, ministre de la justice,

Vu les articles L. 411-1 à L. 422-3 et R. 411-1 à R. 422-10 du code de la consommation relatifs à l'agrément et aux actions en justice des associations de consommateurs ;

Vu l'arrêté d'agrément du 3 avril 2001 portant agrément de l'Union fédérale des consommateurs-Que Choisir ;

Vu la demande déposée par l'association,

Arrêtent :

**Art. 1er.** – L'agrément de l'Union fédérale des consommateurs-Que Choisir pour exercer sur le plan national les droits reconnus aux associations agréées de consommateurs par le code de la consommation est renouvelé pour une période de cinq ans à compter du 21 septembre 2006.

**Art. 2.** – Le directeur des affaires civiles et du sceau, le directeur des affaires criminelles et des grâces et le directeur général de la concurrence, de la consommation et de la répression des fraudes sont chargés, chacun en ce qui le concerne, de l'exécution du présent arrêté, qui sera publié au *Journal officiel* de la République française.

Fait à Paris, le 27 juillet 2006.

*Le ministre de l'économie,
des finances et de l'industrie,*
THIERRY BRETON

*Le garde des sceaux, ministre de la justice,*
PASCAL CLÉMENT

# EXHIBIT 2

## OFFICIAL JOURNAL OF THE FRENCH REPUBLIC

5 August 2006

Decrees, orders, circulars

GENERAL TEXTS

MINISTRY OF THE ECONOMY, FINANCE AND INDUSTRY

Order of 27 July 2006 renewing the authorisation of the Union Federale des Consommateurs - Que Choisir (UFC-Que Choisir)

The Minister of the Economy, Finance and Industry and the Minster of Justice and Guardian of the Seal,

Having regard to Articles L 411-1 to L422-3 and R 411-1 to R 422-10 of the Consumer Code concerning authorisation of and actions before the courts by consumer associations;

Having regard to the order of 3 April 2001 authorising UFC Que Choisir ;

Having regard to the application of the association;

Hereby order

Art. 1 – The authorisation for the Union federale des consommateurs-Que Choisir to carry out throughout the country all rights recognised to authorised consumers associations under the Consumer Code is renewed for a period of five years from 21 September 2006.

Art. 2 – The Director of Civil Justice [...], the Director of Criminal Justice and of Pardons and the Director General for Competition, Consumer Affairs and Trading Standards are each required, as far as relevant to them, with the implementation of this order, which will be published in the Official Journal of the French Republic.

Done in Paris, 27 July 2006

The Minister of the Economy, Finance and Industry

THIERRY BRETON

The Minister of Justice, Guardian of the Seal

PASCAL CLEMENT

# EXHIBIT 3

Détail d'un code                                                          Page 1 of 1



## Code de la consommation

▶ **Partie législative**
   ▶ **Livre IV : Les associations de consommateurs**
      ▶ **Titre Ier : Agrément des associations**

## Chapitre Ier : Les associations.

Article L411-1 En savoir plus sur cet article...

Les conditions dans lesquelles les associations de défense des consommateurs peuvent être agréées, après avis du ministère public, compte tenu de leur représentativité sur le plan national ou local ainsi que les conditions de retrait de cet agrément sont fixées par décret.

Détail d'un code                                                    Page 1 of 2



## Code de la consommation

▸ Partie réglementaire - Décrets en Conseil d'Etat
  ▸ Livre IV : Les associations de consommateurs
    ▸ Titre Ier : Agrément des associations

## Chapitre Ier : Les associations.

### Article R*411-1 En savoir plus sur cet article...
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

L'agrément des associations de consommateurs prévu au titre Ier du livre IV de la partie législative du présent code peut être accordé à toute association :

1° Qui justifie à la date de la demande d'agrément d'une année d'existence à compter de sa déclaration ;

2° Qui, pendant cette année d'existence, justifie d'une activité effective et publique en vue de la défense des intérêts des consommateurs, appréciée notamment en fonction de la réalisation et de la diffusion de publications de la tenue de réunions d'information et de permanences ;

3° Qui réunit, à la date de la demande d'agrément, un nombre de membres cotisant individuellement :

a) Au moins égal à 10 000 pour les associations nationales, cette condition pouvant ne pas être exigée des associations se livrant à des activités de recherche et d'analyse de caractère scientifique ;

b) Suffisant, eu égard au cadre territorial de leur activité, pour les associations locales, départementales ou régionales.

Lorsque l'association a une structure fédérale ou confédérale, il est tenu compte du nombre total de cotisants des associations la constituant.

### Article R*411-2 En savoir plus sur cet article...
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

L'agrément des associations nationales est accordé par arrêté conjoint du ministre chargé de la consommation et du garde des sceaux. Il est publié au Journal officiel de la République française.

L'agrément des associations locales, départementales ou régionales est accordé par arrêté du préfet du département dans lequel l'association a son siège social. Il est publié au Recueil des actes administratifs.

L'avis du ministère public prévu à l'article L. 411-1 est donné par le procureur général près la cour d'appel dans le ressort de laquelle l'association a son siège.

L'agrément est accordé pour cinq années. Il est renouvelable dans les mêmes conditions que l'agrément initial.

### Article R*411-3 En savoir plus sur cet article...
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

Lorsque plusieurs associations, dont l'une au moins est agréée, se transforment en une seule, l'agrément doit être à nouveau sollicité. Dans ce cas, la condition d'ancienneté prévue à l'article R. 411-1 n'est pas exigible.

### Article R*411-4 En savoir plus sur cet article...
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

Les demandes d'agrément et de renouvellement sont adressées à la direction départementale de la concurrence, de la consommation et de la répression des fraudes du département dans lequel l'association a son siège social.

La composition du dossier et les modalités d'instruction sont fixées par arrêté conjoint du ministre chargé de la consommation et du garde des sceaux.

Lorsque le dossier remis à l'administration est complet, il en est délivré récépissé.

### Article R*411-5 En savoir plus sur cet article...
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

La décision d'agrément ou de refus est notifiée dans un délai de six mois à compter de la délivrance du récépissé. Passé ce délai, l'agrément est réputé accordé.

Les décisions de refus doivent être motivées.

### Article R*411-6 En savoir plus sur cet article...
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

Les associations rendent compte annuellement de leur activité selon des modalités fixées par arrêté pris dans les formes prévues à l'article R. 411-4.

### Article R*411-7 En savoir plus sur cet article...
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

L'agrément peut être retiré après avis du procureur général, lorsque l'association n'a plus le nombre d'adhérents requis pour son agrément, lorsqu'elle ne peut plus justifier de l'activité définie à l'article R. 411-1 ou lorsqu'il est établi qu'elle n'est plus indépendante de toutes formes d'activités professionnelles, à l'exception des associations émanant de sociétés coopératives visées à l'article L. 412-1. L'association doit être au préalable mise à même de présenter ses observations.

Détail d'un code



## Code de la consommation

▷ Partie législative
   ▷ Livre IV : Les associations de consommateurs
      ▷ Titre II : Actions en justice des associations
         ▷ Chapitre Ier : Action exercée dans l'intérêt collectif des consommateurs

## Section 1 : Action civile.

### Article L421-1 En savoir plus sur cet article...

Les associations régulièrement déclarées ayant pour objet statutaire explicite la défense des intérêts des consommateurs peuvent, si elles ont été agréées à cette fin, exercer les droits reconnus à la partie civile relativement aux faits portant un préjudice direct ou indirect à l'intérêt collectif des consommateurs.

Les organisations définies à l'article L. 211-2 du code de l'action sociale et des familles sont dispensées de l'agrément pour agir en justice dans les conditions prévues au présent article.

### Article L421-2 En savoir plus sur cet article...

Les associations de consommateurs mentionnées à l'article L. 421-1 et agissant dans les conditions précisées à cet article peuvent demander à la juridiction civile, statuant sur l'action civile, ou à la juridiction répressive, statuant sur l'action civile, d'ordonner au défenseur ou au prévenu, le cas échéant sous astreinte, toute mesure destinée à faire cesser des agissements illicites ou à supprimer dans le contrat ou le type de contrat proposé aux consommateurs une clause illicite.

### Article L421-3 En savoir plus sur cet article...
Créé par Loi 93-949 1993-07-26 annexe JORF 27 Juillet 1993

La juridiction répressive saisie dans les conditions de l'article L. 421-2 peut, après avoir déclaré le prévenu coupable, ajourner le prononcé de la peine en lui enjoignant, sous astreinte le cas échéant, de se conformer, dans un délai fixé, aux prescriptions qu'elle détermine et qui ont pour objet de faire cesser l'agissement illicite ou de supprimer dans le contrat ou le type de contrat proposé aux consommateurs une clause illicite.

Dans le cas où la juridiction répressive assortit l'ajournement d'une astreinte, elle doit en prévoir le taux et la date à compter de laquelle elle commencera à courir. L'ajournement, qui ne peut intervenir qu'une seule fois, peut être décidé même si le prévenu ne comparaît pas en personne. Le juge peut ordonner l'exécution provisoire de la décision d'injonction.

### Article L421-4 En savoir plus sur cet article...
Modifié par Loi n°2004-204 du 9 mars 2004 - art. 198 (V) JORF 10 mars 2004 en vigueur le 1er janvier 2005

A l'audience de renvoi, qui doit intervenir au plus tard dans le délai d'un an à compter de la décision d'ajournement, la juridiction statue sur la peine et liquide l'astreinte s'il y a lieu. Elle peut, le cas échéant, supprimer cette dernière ou en réduire le montant. L'astreinte est recouvrée par le comptable du Trésor

Détail d'un code                                                    Page 2 of 2

comme une amende pénale. Elle ne peut donner lieu à contrainte judiciaire.

*NOTA: Loi 2004-204 2004-03-09 art. 207 II : Les articles 159 à 193 et 198 entreront en vigueur, sous réserve des dispositions des III et IV du présent article, le 1er janvier 2005.*

Article L421-5 <u>En savoir plus sur cet article...</u>

L'astreinte est de plein droit supprimée à chaque fois qu'il est établi que la personne concernée s'est conformée à une injonction sous astreinte prononcée par un autre juge répressif ayant ordonné de faire cesser une infraction identique à celle qui fonde les poursuites.

Détail d'un code                                                                 Page 1 of 1



## Code de la consommation

▶ Partie législative
  ▶ Livre IV : Les associations de consommateurs
    ▶ Titre II : Actions en justice des associations
      ▶ Chapitre Ier : Action exercée dans l'intérêt collectif des consommateurs

### Section 2 : Action en cessation d'agissements illicites

Article L421-6 En savoir plus sur cet article...
Modifié par Ordonnance n°2001-741 du 23 août 2001 - art. 19 () JORF 25 août 2001
Modifié par Ordonnance n°2001-741 du 23 août 2001 - art. 20 () JORF 25 août 2001

Les associations mentionnées à l'article L. 421-1 et les organismes justifiant de leur inscription sur la liste publiée au Journal officiel des Communautés européennes en application de l'article 4 de la directive 98/27/CE du Parlement européen et du Conseil relative aux actions en cessation en matière de protection des consommateurs peuvent agir devant la juridiction civile pour faire cesser ou interdire tout agissement illicite au regard des dispositions transposant les directives mentionnées à l'article 1er de la directive précitée.

Le juge peut à ce titre ordonner, le cas échéant sous astreinte, la suppression d'une clause illicite ou abusive dans tout contrat ou type de contrat proposé ou destiné au consommateur.

Détail d'un code



Code de la consommation

▶ Partie législative
  ▶ Livre IV : Les associations de consommateurs
    ▶ Titre II : Actions en justice des associations
      ▶ Chapitre Ier : Action exercée dans l'intérêt collectif des consommateurs

Section 3 : Interventions en justice.

Article L421-7 En savoir plus sur cet article...

Les associations mentionnées à l'article L. 421-1 peuvent intervenir devant les juridictions civiles et demander notamment l'application des mesures prévues à l'article L. 421-2, lorsque la demande initiale a pour objet la réparation d'un préjudice subi par un ou plusieurs consommateurs à raison de faits non constitutifs d'une infraction pénale.



## Code de la consommation

▶ Partie législative
  ▶ Livre IV : Les associations de consommateurs
    ▶ Titre II : Actions en justice des associations
      ▶ Chapitre Ier : Action exercée dans l'intérêt collectif des consommateurs

## Section 4 : Dispositions communes.

Article L421-8 En savoir plus sur cet article...
Créé par Loi 93-949 1993-07-26 annexe JORF 27 juillet 1993

Le ministère public peut produire devant la juridiction saisie, nonobstant les dispositions législatives contraires, les procès-verbaux ou rapports d'enquête qu'il détient, dont la production est utile à la solution du litige.

Article L421-9 En savoir plus sur cet article...
Modifié par Loi n°92-1336 du 16 décembre 1992 - art. 331 (V) JORF 23 décembre 1992 en vigueur le 1er mars 1994

La juridiction saisie peut ordonner la diffusion, par tous moyens appropriés, de l'information au public du jugement rendu. Lorsqu'elle ordonne l'affichage de l'information en application du présent alinéa, il est procédé à celui-ci dans les conditions et sous les peines prévues par l'article 131-35 du code pénal.

Cette diffusion a lieu aux frais de la partie qui succombe ou du condamné ou de l'association qui s'est constituée partie civile lorsque les poursuites engagées à son initiative ont donné lieu à une décision de relaxe.

Détail d'un code                                            Page 1 of 1



LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de la consommation

▸ Partie législative
  ▸ Livre IV : Les associations de consommateurs
    ▸ Titre II : Actions en justice des associations

## Chapitre II : Action en représentation conjointe.

### Article L422-1 En savoir plus sur cet article...
Créé par Loi 93-949 1993-07-26 annexe JORF 27 juillet 1993

Lorsque plusieurs consommateurs, personnes physiques, identifiés ont subi des préjudices individuels qui ont été causés par le fait d'un même professionnel, et qui ont une origine commune, toute association agréée et reconnue représentative sur le plan national en application des dispositions du titre Ier peut, si elle a été mandatée par au moins deux des consommateurs concernés, agir en réparation devant toute juridiction au nom de ces consommateurs.

Le mandat ne peut être sollicité par voie d'appel public télévisé ou radiophonique, ni par voie d'affichage, de tract ou de lettre personnalisée. Il doit être donné par écrit par chaque consommateur.

### Article L422-2 En savoir plus sur cet article...
Créé par Loi 93-949 1993-07-26 annexe JORF 27 juillet 1993

Tout consommateur ayant donné son accord, dans les conditions prévues à l'article L. 422-1, à l'exercice d'une action devant une juridiction pénale est considéré en ce cas comme exerçant les droits reconnus à la partie civile en application du code de procédure pénale. Toutefois, les significations et notifications qui concernent le consommateur sont adressées à l'association.

### Article L422-3 En savoir plus sur cet article...

L'association qui exerce une action en justice en application des dispositions des articles L. 422-1 et L. 422-2 peut se constituer partie civile devant le juge d'instruction ou la juridiction de jugement du siège social de l'entreprise mise en cause ou, à défaut, du lieu de la première infraction.

# EXHIBIT 4

CONSUMER CODE

REGULATORY PART – DECREES IN COUNCIL OF STATE

BOOK IV – Consumer associations

TITLE I: Authorisation of associations

Chapter I: the associations

Article R 411-1

(Decree 97-298 of 27 March 1997)

The authorisation of consumer associations provided for in Title I of Book IV of the legislative part of this Code may be granted to any association:

1. Which can show at the date of the request for authorisation one year of existence from its constitution;

2. Which, in that year of existence, can show effective public action aimed at defending the interests of consumers, in particular through the production and distribution of publications and holding information meetings and advice sessions;

3. Which has, at the date of the request for authorisation, the following number of individual subscribing members:

    a. At least 10,000 for national associations: this conditions may be waived for those associations devoted to activities of scientific research; or

    b. A sufficient number for local, county or regional associations having regard to teh territorial scope of their activity.

    Where the association has a federal or confederated structure, the total number of subscribers to the affiliated associations is taken into consideration.

Article R 411-2

(Decree 97-298 of 27 March 1997)

Authorisation of national associations is granted by joint order of the Minister responsible for consumer affairs and the Guardian of the Seals. It shall be published in the Official Journal of the French Republic.

Authorisation of local, county or regional associations is granted by order of the prefect of the county in which the association has its headquarters. It shall be published in the Digest of administrative acts.

The advice of the public prosecutor provided in Article L 411-1 is given by the attorney general of the Court of Appeal in whose jurisdiction the association is headquartered.

Authorisations are granted for five years, renewable on the same grounds as the original grant.

Article R 411-3

(Decree 97-298 of 27 March 1997)

Where several associations, of which at least one is authorised, merge, a new authorisation must be sought. However, in this case the condition of one year's existence provided for n Art R 411-1 is not required.

Article R 411-4

(Decree 97-298 of 27 March 1997)

Requests for authorisation and renewal shall be sent to the county office of the Directorate for Competition, Consumers and Trading Standards in the county where the association has its headquarters.

The contents of the request and the procedure for authorisation shall be set out in a joint decision of the Minister for consumers and the Guardian of the Seals.

A receipt shall be given on delivery of a complete application to the authorities.

Article R 411-5

(Decree 97-298 of 27 March 1997)

A decision accepting or refusing authorisation shall be notified to the applicant association within six months of delivery of the receipt. An authorisation is considered granted if this period is exceeded.

Refusal decisions must be reasoned.

Article R 411-6

(Decree 97-298 of 27 March 1997)

Authorised associations shall make an annual report of their activities in the form set out in a joint decision made in the form set out in Article R 411-4.

Article R 411-7

(Decree 97-298 of 27 March 1997)

An authorisation may be withdrawn following the advice of the competent attorney general where the association no longer has the necessary number of members necessary for its authorisation, where it can no longer show an activity as set out in Article R 411-1 or where it can be shown that it is no longer independent of any commercial activity with the exception of co-operative societies specified in Article L412-1. The association must be given the opportunity in advance to make representations.

CONSUMER CODE

LEGISLATIVE PART

Book IV: Consumer associations

Title I: Authorisation of associations

Chapter I: The association

Article L411-1

The conditions under which associations for the defence of consumers may be authorised, after the advice of the public attorney, and having regard to their representative nature at national or local level as well as the conditions for withdrawing this authorisation are provided by decree.

[....]

Title II: Court proceedings by associations

Chapter I: Proceedings in the collective interest of consumers

Section 1: Civil proceedings

Article L421-1

Properly constituted associations having as an express object in their statutes the defence of consumer interests may, if they have been authorised for that purpose, exercise all rights of a civil law intervener in any case concerning facts affecting collective consumer interests, whether directly or indirectly.

Organisations defined in Article L 211-2 of the Code for Social and Family matters are exempt from the authorisation requirement when bringing proceedings described in this Article.

Article L421-2

Consumer associations of the kind mentioned in Article L421-1 and acting in accordance with the conditions laid down in that Article may apply to the civil courts which are deciding a civil action, or the criminal courts which are deciding on the civil law consequences of a criminal act, to order the defendant, if necessary on pain of a daily fine, to take all steps required to cease the unlawful practices or to remove from its consumer contracts or standard terms any unlawful term.

Article L421-3

The criminal court acting or the purposes of Article 421-1 may, after having found the defendant guilty, adjourn sentencing and require him, if necessary under daily penalty, to comply within a period fixed by the Court with any conditions it may see fit having as their purpose the cessation of the unlawful conduct or the removal of unlawful terms from any contract or standard terms offered to consumers.

Where the criminal court sanctions any adjournment of sentencing with a daily penalty, it must stipulate the amount and the date from which it will run. An adjournment (which may only be ordered once) may be required even if the defendant does not appear in person. The Court may also order the interim enforcement of the conditions.

Article L421-4

At the return hearing, which must take place within one year of the adjournment decision at the latest, the court shall sentence the defendant and fix the total amount of the daily penalties if necessary. It may, where appropriate, cancel or reduce the amount of the daily penalties. The penalty is recoverable by the public Treasury as a criminal fine. It may not be enforced through further court proceedings.

Article L421-5

The daily penalty is automatically cancelled where it can be shown that the defendant has complied with conditions attached to an order imposing daily penalties imposed by another criminal court and requiring the cessation of identical unlawful conduct to that forming the basis of the case against the defendant.

Section 2: Injunctive action against unlawful practices

Article L421-6

Associations mentioned in article L421-1 and organisations able to show that they are on the list published in the Official Journal of the European Communities pursuant to Article 4 of European Parliament and Council Directive 98/27 CE on injunctive proceedings in consumer protection cases  may bring proceedings before the civil courts to require the cessation or prohibition any act which is unlawful within the meaning of the legislation transposing the European Directives mentioned in Article 1 of that Directive.

The court may require, if necessary under a daily penalty, the removal of nay unlawful or unfair terms in any contract or standard terms offered to or intended for use by the consumer.

Section 3: Intervention as third parties in court proceedings

Article L421-7

Associations described in Article 421-1 may intervene in civil proceedings and may, in particular, request the imposition of any of the measures set out in Article L421-2, where the case was first brought with the aim of claiming damages for loss caused to one or more consumers arising from facts not giving rise to criminal liability.

Section 4: General provisions

Article L421-8

The public prosecutor may produce before any court seised, and notwithstanding any contrary legislative requirements, any transcripts, minutes or inquiry reports in his possession and whose disclose will be useful for the outcome of the case.

Article L421-9

The court seised may order the publication by any appropriate means of information on the judgment it gives.  Where it orders the advertising of that information in accordance with this paragraph, this shall be carried out on the conditions and subject to the penalties provided in Article 131-5 of the Criminal Code.

This publicity shall be carried out at the expense of the losing or guilty party or the intervening third party association where the proceedings were commenced on its initiative but led to an acquittal.

Chapter II: Joint representation action

Article L422-1

Where several individual and identified consumers have suffered individual losses caused due to the fault of a single trader and having a common origin, any authorised association recognised as representative at a national level under the provisions of Title I may, if it has been instructed by at least two of the consumers concerned, bring a claim for damages before any court in the name of those consumers.

Article L422-2

Any consumer having agreed for the purposes of Article 422-1 to the commencement of proceedings before a criminal court is considered in that case to be exercising the rights of a third

party intervener set out in the Code of Criminal Procedure. However, all notices concerning the consumer are to be addressed to the association.

Article 422-3

An association bringing proceedings pursuant to Articles l422-1and L422-2 may become a third party intervener in an judicial enquiry or the competent court for the registered office of the defendant company or, if there is none, of the place where the first of the unlawful acts occurred.

# EXHIBIT 5

Détail d'un article de code                                        Page 1 of 1


LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

# Code de commerce

▸ **Partie législative**
  ▸ **LIVRE IV : De la liberté des prix et de la concurrence**
    ▸ **TITRE VI : Du conseil de la concurrence**
      ▸ **Chapitre II : Des attributions.**

### Article L462-5

Le Conseil de la concurrence peut être saisi par le ministre chargé de l'économie de toute pratique mentionnée aux articles L. 420-1, L. 420-2 et L. 420-5. Il peut se saisir d'office ou être saisi par les entreprises ou, pour toute affaire qui concerne les intérêts dont ils ont la charge, par les organismes visés au deuxième alinéa de l'article L. 462-1.

Cite :
..........Code de commerce L420-1, L420-2, L420-5, L462-1 al. 2
..........Code de commerce. - art. L420-1 (M)
..........Code de commerce. - art. L420-2 (M)
..........Code de commerce. - art. L420-5 (M)

Cité par :
..........Décret n°2002-689 du 30 avril 2002 - art. 18 (Ab)
..........Décret n°2002-689 du 30 avril 2002 - art. 42-2 (MMN)
..........Décret n°2002-689 du 30 avril 2002 - art. 47 (Ab)
..........Code de commerce. - art. L463-7 (M)
..........Code de commerce. - art. L463-7 (V)
..........Code de commerce. - art. R463-5 (V)
..........Code de commerce. - art. R464-3 (V)
..........Code de commerce. - art. R464-9 (V)

Ancien texte :
..........Ordonnance n°86-1243 du 1 décembre 1986 - art. 11 (Ab)

Ancien texte :
..........Ordonnance 86-1243 1986-12-01 art. 11 al. 1



.gouv.fr

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de commerce

**Version consolidée au 7 janvier 2008**

▸ Partie législative
  ▸ LIVRE IV : De la liberté des prix et de la concurrence
    ▸ TITRE VI : Du conseil de la concurrence

## Chapitre II : Des attributions.

### Article L462-1 En savoir plus sur cet article...

Le Conseil de la concurrence peut être consulté par les commissions parlementaires sur les propositions de loi ainsi que sur toute question concernant la concurrence.

Il donne son avis sur toute question de concurrence à la demande du Gouvernement. Il peut également donner son avis sur les mêmes questions à la demande des collectivités territoriales, des organisations professionnelles et syndicales, des organisations de consommateurs agréées, des chambres d'agriculture, des chambres de métiers ou des chambres de commerce et d'industrie, en ce qui concerne les intérêts dont elles ont la charge.

### Article L462-2 En savoir plus sur cet article...

Le conseil est obligatoirement consulté par le Gouvernement sur tout projet de texte réglementaire instituant un régime nouveau ayant directement pour effet :

1° De soumettre l'exercice d'une profession ou l'accès à un marché à des restrictions quantitatives ;

2° D'établir des droits exclusifs dans certaines zones ;

3° D'imposer des pratiques uniformes en matière de prix ou de conditions de vente.

### Article L462-3 En savoir plus sur cet article...
**Modifié par Ordonnance n°2004-1173 du 4 novembre 2004 - art. 4 () JORF 5 novembre 2004**

Le conseil peut être consulté par les juridictions sur les pratiques anticoncurrentielles définies aux articles L. 420-1, L. 420-2 et L. 420-5 ainsi qu'aux articles 81 et 82 du traité instituant la Communauté européenne et relevées dans les affaires dont elles sont saisies. Il ne peut donner un avis qu'après une procédure contradictoire. Toutefois, s'il dispose d'informations déjà recueillies au cours d'une procédure antérieure, il peut émettre son avis sans avoir à mettre en oeuvre la procédure prévue au présent texte.

Le cours de la prescription est suspendu, le cas échéant, par la consultation du conseil.

L'avis du conseil peut être publié après le non-lieu ou le jugement.

# EXHIBIT 6

COMMERCIAL CODE

LEGISLATIVE PART

BOOK IV Freedom to price and compete

TITLE VI: The Competition Council

Chapter II: Powers

Article L462-1

The Competition Council may be consulted by parliamentary committees on any proposed legislation as well as on any other question concerning competition.

The Council shall give its opinion on any question concerning competition put by the government. It may also give its opinion on the same type of question at the request of local government bodies, trade and labour union bodies, authorised consumer associations, agricultural co-operatives and craft organisations or chambers of commerce in relation to issues falling within their remit.

Article L462-2

The Council must be consulted by the government on all draft secondary legislation imposing a new regulatory scheme having the effect of:
1.    imposing restrictions on the number of persons carrying out a trade or profession or any other form of business activity;
2.    creating exclusive rights in certain geographical areas;
3.    imposing uniform pricing or other sales practices.

Article L462-3

The Council may be consulted by the courts about anti-competitive practices, as defined in Articles I420-1, L420-2 and L 420-5 as well as in Articles 81 and 82 of the EC Treaty, which are raised in cases pending before them. The Council may not give its opinion without hearing the parties. However, if it has information already in its possession from previous proceedings, it may give its opinion without the need for the hearing contemplated in this Article.

All limitation periods are suspended by a request to the Council for its opinion.

The Council's opinion may be published after the case is tried or dismissed.

[...]

Article L462-5

The Competition Council may be consulted by the Minister responsible for the economy in relation to any activity mentioned in Articles L 420-1, L420-2 and L 420-5. The Council may also act ex officio or be consulted by businesses or, for any case within the scope of their remit, by the organisations described in Article L 462-1.

# EXHIBIT 7



**Contact:** **Caroline Hayat, Anne Fily**
**Date:** **11/03/2008**
**Reference:** **PR 014/2008**

## The price of 'chips' is an important consumer issue

BEUC has intervened in the current competition case arising from complaints against Intel from AMD.

BEUC believes that the good functioning of a market is a core element of consumer welfare; a competitive market brings high quality products at low prices for consumers. It also stimulates industrial innovation to the benefit of consumer choice. Any hindrance to competition, at any stage of the production and distribution process, by a company that has a dominant position in a given market, should be assessed with regard to its impact on consumer welfare, not only in the short term, but also in the long run, by elimination of competitors.

In competition cases, particularly between companies that do not sell directly to consumers, there can be a tendency to give too much weight to the interests of the companies involved and not sufficient weight to the downstream interests, direct and indirect, of consumers[1].

Why the Intel case is important from a consumer perspective:

- computer chips are a significant element of computers and their prices directly impact on the final price that consumers pay for computers;
- since computers are used everywhere in business nowadays the price of computer chips has a direct effect on business costs and therefore on consumer prices;
- in this quickly developing sector, access to the most innovative technology is a major element of consumer choice and should not be stifled by anti-competitive practices.

We are not at this stage expressing a view as to the validity or otherwise of the complaint or of the facts alleged by any of the parties involved. We may do so later.

Monique Goyens, BEUC Director General, declared: "We want to ensure that the consumer interests are fully taken into account in competition policy in general and in its enforcement in the computer sector in particular".

END

---

[1] In a similar anti dumping case that we took against the Commission in 1997 (T-256/97), the European Court of First Instance affirmed the validity of our interest as a consumer organisation in proceedings relating to products that are not sold directly to the consumer.

BEUC, the European Consumers' Organisation
+32 2 743 15 90 - mob.: +32 476 86 01 04 - press@beuc.eu
**Want to know more about BEUC? Visit www.beuc.eu**

# EXHIBIT 8

EUROPA - Rapid - Press Releases                    http://europa.eu/rapid/pressReleasesAction.do?reference=MEMO/07/314





EUROPA > Press Room > Press Releases

RSS | Midday Express | Recent Press Releases | Select a topic                    Contact | Search on EUROPA    Search

## Competition: Commission confirms sending of Statement of Objections to Intel

Reference: MEMO/07/314   Date: 27/07/2007

HTML: EN
PDF: EN
DOC: EN

**MEMO/07/314**

Brussels, 27 July 2007

**Competition: Commission confirms sending of Statement of Objections to Intel**

*The European Commission can confirm that it has sent a Statement of Objections (SO) to Intel on 26th July 2007. The SO outlines the Commission's preliminary view that Intel has infringed the EC Treaty rules on abuse of a dominant position (Article 82) with the aim of excluding its main rival, AMD, from the x86 Computer Processing Units (CPU) market.*

In the SO, the Commission outlines its preliminary conclusion that Intel has engaged in three types of abuse of a dominant market position. First, Intel has provided substantial rebates to various Original Equipment Manufacturers (OEMs) conditional on them obtaining all or the great majority of their CPU requirements from Intel. Secondly, in a number of instances, Intel made payments in order to induce an OEM to either delay or cancel the launch of a product line incorporating an AMD-based CPU. Thirdly, in the context of bids against AMD-based products for strategic customers in the server segment of the market, Intel has offered CPUs on average below cost.

These three types of conduct are aimed at excluding AMD, Intel's main rival, from the market. Each of them is provisionally considered to constitute an abuse of a dominant position in its own right. However, the Commission also considers at this stage of its analysis that the three types of conduct reinforce each other and are part of a single overall anti-competitive strategy.

Intel has 10 weeks to reply to the SO, and will then have the right to be heard in an Oral Hearing. If the preliminary views expressed in the SO are confirmed, the Commission may require Intel to cease the abuse and may impose a fine.

**Background**

A Statement of Objections is a formal step in Commission antitrust investigations in which the Commission informs the parties concerned in writing of the objections raised against them. The addressee of a Statement of Objections can reply in writing to the Statement of Objections, setting out all facts known to it which are relevant to its defence against the objections raised by the Commission. The party may also request an oral hearing to present its comments on the case.

The Commission may then take a decision on whether conduct addressed in the Statement of Objections is compatible or not with the EC Treaty's antitrust rules. Sending a Statement of Objections does not prejudge the final outcome of the procedure.

# EXHIBIT 9

EUROPA - Rapid - Press Releases                    http://europa.eu/rapid/pressReleasesAction.do?reference=MEMO/08/83...





EUROPA > Press Room > Press Releases

RSS | Midday Express | Recent Press Release | Select a topic

Contact | Search on EUROPA

Search

**Antitrust: Commission carries out inspections in the Central Processing Unit (CPU) and PC sector**

- Login
- Register
- Documentation
- What's New
- Poll
- About

Reference: MEMO/08/83   Date: 12/02/2008

HTML: EN
PDF: EN
DOC: EN

MEMO/08/83

Brussels, February 12th 2008

Antitrust: Commission carries out inspections in the Central Processing Unit (CPU) and PC sector

*The European Commission can confirm that on 12th February 2008, Commission officials carried out unannounced inspections at the premises of a manufacturer of Central Processing Units (CPUs) and a number of personal computer (PC) retailers. The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on restrictive business practices (Article 81) and/or abuse of a dominant market position (Article 82).*

The Commission officials were accompanied by their counterparts from the relevant national competition authorities.

Surprise inspections are a preliminary step in investigations into suspected infringements of EC competition law. The fact that the European Commission carries out such inspections does not mean that the companies are guilty of anti-competitive behaviour; nor does it prejudge the outcome of the investigation itself. The European Commission respects the rights of defence, in particular the right of companies to be heard in antitrust proceedings.

There is no strict deadline to complete such investigations. Their duration depends on a number of factors, including the complexity of each case, the extent to which the undertakings concerned co-operate and the exercise of the rights of defence.

4/4/2008 4:56 PM

# EXHIBIT 10

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

**(Mark One)**

☒    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 29, 2007.

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____.

Commission File Number 000-06217

# INTEL CORPORATION
### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **94-1672743** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **2200 Mission College Boulevard, Santa Clara, California** | **95054-1549** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code **(408) 765-8080**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common stock, $0.001 par value | The NASDAQ Global Select Market* |

Securities registered pursuant to Section 12(g) of the Act:
None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☒ No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

| Large accelerated filer ☒ | Accelerated filer ☐ | Non-accelerated filer ☐ | Smaller reporting company ☐ |
|---|---|---|---|
| | | (Do not check if a smaller reporting company) | |

Source: INTEL CORP, 10-K, February 20, 2008

Table of Contents

INTEL CORPORATION
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

Commitments for construction or purchase of property, plant and equipment decreased from $3.3 billion at December 30, 2006 to $2.3 billion at December 29, 2007. Other purchase obligations and commitments as of December 29, 2007 totaled $1.7 billion. Other purchase obligations and commitments include payments due under various types of licenses, agreements to purchase raw material or other goods, as well as payments due under non-contingent funding obligations. Funding obligations include, for example, agreements to fund various projects with other companies. In addition, we have various contractual commitments with Micron, IMFT, and IMFS (see "Note 19: Ventures").

**Note 21: Contingencies**

*Tax Matters*

In connection with the regular examination of our tax returns for the years 1999 through 2005, the IRS had formally assessed adjustments to the amounts that we had recorded on those returns as a tax benefit for export sales. In 2007, we resolved these matters with the IRS. See "Note 17: Taxes" for further discussion.

*Legal Proceedings*

We are currently a party to various legal proceedings, including those noted in this section. While management presently believes that the ultimate outcome of these proceedings, individually and in the aggregate, will not materially harm the company's financial position, cash flows, or overall trends in results of operations, litigation is subject to inherent uncertainties, and unfavorable rulings could occur. An unfavorable ruling could include money damages or, in cases for which injunctive relief is sought, an injunction prohibiting us from selling one or more products at all or in particular ways. Were an unfavorable ruling to occur, our business or results of operations could be materially harmed.

*Advanced Micro Devices, Inc. (AMD) and AMD International Sales & Service, Ltd. v. Intel Corporation and Intel Kabushiki Kaisha, and Related Consumer Class Actions and Government Investigations*

In June 2005, AMD filed a complaint in the United States District Court for the District of Delaware alleging that we and our Japanese subsidiary engaged in various actions in violation of the Sherman Act and the California Business and Professions Code, including providing secret and discriminatory discounts and rebates and intentionally interfering with prospective business advantages of AMD. AMD's complaint seeks unspecified treble damages, punitive damages, an injunction, and attorneys' fees and costs. Subsequently, AMD's Japanese subsidiary also filed suits in the Tokyo High Court and the Tokyo District Court against our Japanese subsidiary, asserting violations of Japan's Antimonopoly Law and alleging damages in each suit of approximately $55 million, plus various other costs and fees. At least 83 separate class actions have been filed in the U.S. District Courts for the Northern District of California, Southern District of California, District of Idaho, District of Nebraska, District of New Mexico, District of Maine, and the District of Delaware, as well as in various California, Kansas, and Tennessee state courts. These actions generally repeat AMD's allegations and assert various consumer injuries, including that consumers in various states have been injured by paying higher prices for computers containing our microprocessors. All of the federal class actions and the Kansas and Tennessee state court class actions have been or will be consolidated by the Multidistrict Litigation Panel to the District of Delaware. All California class actions have been consolidated to the Superior Court of California in Santa Clara County. We dispute AMD's claims and the class-action claims, and intend to defend the lawsuits vigorously.

We are also subject to certain antitrust regulatory inquiries. In 2001, the European Commission commenced an investigation regarding claims by AMD that we used unfair business practices to persuade clients to buy our microprocessors. The European Commission sent us a Statement of Objections in July 2007 alleging that certain Intel marketing and pricing practices amounted to an abuse of a dominant position that infringed European law. The Statement recognized that such allegations were preliminary, not final, conclusions. We responded to those allegations in January 2008. We intend to contest this matter vigorously in the administrative procedure, which has now begun and, if necessary, in European courts. On February 12, 2008, the European Commission initiated an inspection of documents at our Feldkirchen, Germany offices, and we are cooperating with the investigation.

87

Source: INTEL CORP, 10-K, February 20, 2008

# EXHIBIT 11

EU regulators raid Intel, computer retailers in antitrust probe - Yahoo! News                    Page 1 of 3

Yahoo!   My Yahoo!   Mail   More                                                    New User? Sign Up   **Sign In**   Help

Search: [                                    ]   **Web Search**
Brought to you by Yahoo! Finance

**Home    U.S.    Business    World    Entertainment    Sports    Tech    Politics    Elections    Science    Health    Most Popular**

Business Video    U.S. Economy    Stock Markets    Earnings    Opinion    Personal Finance    Press Releases

**Search:**                        All News            -   [ Search ]   Advanced

# EU regulators raid Intel, computer retailers in antitrust probe 



AFP/File Photo: Intel logo. EU antitrust regulators stepped up a probe into microchip giant Intel on Monday...

**BUSINESS VIDEO**


**Spoiled Brat Syndrome, Part I**
FOX Business Now


**Placed-Based Media Pt. 1**
FOX Business Now

» All news video

**RELATED QUOTES**

| | | |
|---|---|---|
| ^DJI | 12266.39 | -315.79 |
| ^IXIC | 2271.48 | -60.09 |
| ^GSPC | 1330.63 | -37.05 |

[ Get Quotes ]

Delayed Data
Providers - Disclaimer



Tue Feb 12, 1:43 PM ET

BRUSSELS (AFP) - EU antitrust regulators stepped up a probe into microchip giant Intel on Monday by raiding the US company's German offices and computer retailers on suspicions they might have stifled competition.

The European Commission "has reason to believe that the companies concerned may have violated (EU) rules on restrictive business practices and/or abuse of a dominant market position," a statement said.

It did not disclose the number or names of companies raided, or divulge where they took place, saying only that "commission officials were accompanied by their counterparts from the relevant national competition authorities."

But Intel spokesman Chuck Mulloy confirmed the company's offices in Munich had been targetted and said: "As is our practice, we are cooperating with investigators."

ADVERTISEMENT



The antitrust watchdog said "the fact that the European Commission carries out such inspections does not mean that the companies are guilty of anti-competitive behaviour."

EU regulators have already filed antitrust charges against Intel in a long-standing case related to suspicions that it had abused its dominant market position.

British company DSG International, German store chain MediaMarkt and French retailing group PPR all confirmed that EU antitrust inspectors had visited their premises.

"I can confirm that officials from the EU Commission are currently conducting an inspection" at a site northwest of London, said a spokesman for DSG International, which is one of Europe's leading electrical retailers.

"We understand similar inspections have taken place at other companies' premises.

"This inspection relates to the ongoing investigation between Intel and AMD. We are fully cooperating with the inspection."

Case 1:05-md-01717-JJF    Document 855-2    Filed 04/09/2008    Page 39 of 86

EU regulators raid Intel, computer retailers in antitrust probe - Yahoo! News    Page 2 of 3



The ongoing antitrust case into Intel was prompted by a complaint from its smaller rival Advanced Micro Devices (AMD).

The commission accused Intel in July of offering "substantial" rebates to computer makers that mostly used its chips, making payments to clients to delay or cancel products using AMD's chips, and selling its chips at below cost in some cases.

AMD voiced satisfaction that the commission was widening its investigation into its arch-rival.

**ELSEWHERE ON THE WEB**

**CNN.com:** Brutal selloff on Wall Street

**ABC News:** America's Rogue 'French' Trader

**Time.com:** Oil's Sky-High Forecast

"This is an important expansion of the commission's investigation into Intel's illegal business practices and the resulting harm to consumers," said Giuliano Meroni, AMD president for Europe, Middle East and Africa.

Intel could face hefty fines if the European Commission finds the company guilty of the charges.

Email Story    IM Story    Printable View    (b) Yahoo! Buzz



**RECOMMEND THIS STORY**

Recommend it:    Average (2 votes) ★★★★★    » Recommended Stories

## Business News

Stocks fall sharply on economic worries AP

Northrop, EADS win $35B Air Force deal AP

Profit-taking pulls oil back from $103 AP

Berkshire profit drops 18 percent in 4Q AP

Consumer spending stalls AP

## Most Viewed - Business

Stocks fall sharply on economic worries AP

CEO says Victoria's Secret is too sexy AP

Wall St tumbles on recession fears, AIG Reuters

Credit crisis throws AIG into "uncharted waters" Reuters

Microsoft cuts Vista prices to urge upgrades Reuters



## Business Video

Spoiled Brat Syndrome, Part I FOX Business Now - 2 hours, 1 minute ago

Placed-Based Media Pt. 1 FOX Business Now - Fri Feb 29, 2:28 PM ET

Tying Oil To The Euro FOX Business Now - 2 hours, 2 minutes ago

Charter Communications FOX Business Now - Fri Feb 29, 2:27 PM ET



ADVERTISEMENT

omg!

VANESSA WILLIAMS USES BOTOX AND WEARS SPANX!

Add headlines to your personalized My Yahoo page (About My Yahoo and RSS)

Business

Sponsored Links                                              ( What's this? )

CE Marking Assistance
CE directives, standards, seminars, consulting: Duquesne University.
www.citra.duq.edu

Countrywide® Home Loans
No Closing Cost Refi. No Points. No Credit Report or Processing Fees.
www.Countrywide.com

Try Forex Currency Trading at Forex.com
Free $50,000 practice account with real-time charts, news and research.

# EXHIBIT 12

06/03/2008    15:24    CECAN800F013--04 → 00033144931951                                    NO.326    D06



**EUROPEAN COMMISSION**

The Hearing Officer

Brussels, 6 March 2008
KW/SW/vd    D *30* 2008

**UFC Que Choisir**

233 Bd Voltaire
75011 Paris

Fax: 0033 – 1 44 93 19 51

Subject:    Case COMP/C-3/37.990 - Intel
Ref:        Your letter of 26 January 2008 requesting UFC Que Choisir to be
            recognized as third-party with legitimate interest

Dear Mr Bazot,

I write in answer to your initial of 26 February 2008 and to the email of 4 March 2008 by
your Service Juridique providing further reasons for your request that the Union Fédérale
des Consommateurs — Que Choisir ("UFC") be admitted as a third party in the ongoing
proceedings in the above-referenced case.

After examination of the arguments put forward in your letter and email, I conclude that
UFC has overall shown a sufficient interest to be heard as a third party under Article 27(3)
of Council Regulation No. 1/2003. I therefore grant your application.

However, I wish to draw your attention to the fact that your stated purpose to possibly
demand in your own name damages before national courts in the future (with reference to
the judgment of the ECJ Courage v. Crehan, C-453/99) is of itself no reason to participate
in the Hearing.

Pursuant to Article 13 (1) of Commission Regulation (EC) No. 773/2004 relating to the
conduct of proceedings by the Commission pursuant to Articles 81 and 82 of the EC Treaty
(O.J. L 123, 27.04.2004, p. 18), UFC will be informed in writing of the nature and subject
matter of the procedure, the scope of which is to be determined in the first place by the case
team, and will be afforded the opportunity to make known its views in writing.

Furthermore, I herewith admit you as requested to participate in the Oral Hearing. You will
receive an invitation to the Oral Hearing still today. The Hearing will take place on March
11 and 12, 2008, in Brussels.

Commission européenne, B-1049 Bruxelles / Europese Commissie, B-1049 Brussel - Belgium. Telephone: (32-2) 299 11 11.
Office: J 79 • 05/215. Telephone: direct line (32-2) 296 55 75. Fax: (32-2) 296 85 78.
E-mail: hearing.officer@ec.europa.eu

☑002                                                        UFC QUE CHOISIR                    1981934441100 XAF 84:41 8002 80/70

For further details please contact the case handler Mr. Brice Allibert, by email Brice.Allibert@ec.europa.eu or telephone (02) 29 99396 and with regard to the Hearing Mr Stephan Wernicke, stephan.wernicke@ec.europa.eu.

This decision is based on Articles 6 and 7 of Commission Decision 2001/462/EC, ECSC of 23 May 2001 on the terms of reference of hearing officers in certain competition proceedings (O.J. No. L 162, 19.6.2001, p. 21).

For reasons of time this letter has been written in English. If you wish, I will provide you with a French translation.

Yours sincerely,

Karen WILLIAMS

cc: Hellstrom Per, Allibert Brice

2

# EXHIBIT 13

Avis juridique important

# 12002E211

**Treaty establishing the European Community (Nice consolidated version) - Part Five: Institutions of the Community - Title I: Provisions governing the Institutions - Chapter 1: The Institutions - Section 3: The Commission - Article 211 - Article 155 - EC Treaty (Maastricht consolidated version) - Article 155 - EEC Treaty**

*Official Journal C 325 , 24/12/2002 P. 0119 - 0120*
*Official Journal C 340 , 10/11/1997 P. 0266 - Consolidated version*
*Official Journal C 224 , 31/08/1992 P. 0059 - Consolidated version*
*(EEC Treaty - no official publication available)*

---

Treaty establishing the European Community (Nice consolidated version)

Part Five: Institutions of the Community

Title I: Provisions governing the Institutions

Chapter 1: The Institutions

Section 3: The Commission

Article 211

Article 155 - EC Treaty (Maastricht consolidated version)

Article 155 - EEC Treaty

Article 211

In order to ensure the proper functioning and development of the common market, the Commission shall:

- ensure that the provisions of this Treaty and the measures taken by the institutions pursuant thereto are applied,

- formulate recommendations or deliver opinions on matters dealt with in this Treaty, if it expressly so provides or if the Commission considers it necessary,

- have its own power of decision and participate in the shaping of measures taken by the Council and by the European Parliament in the manner provided for in this Treaty,

- exercise the powers conferred on it by the Council for the implementation of the rules laid down by the latter.

---

# EXHIBIT 14

4.1.2003    [ EN ]    Official Journal of the European Communities    L 1/1

I

*(Acts whose publication is obligatory)*

**COUNCIL REGULATION (EC) No 1/2003**

**of 16 December 2002**

**on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty**

(Text with EEA relevance)

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Article 83 thereof,

Having regard to the proposal from the Commission ([1]),

Having regard to the opinion of the European Parliament ([2]),

Having regard to the opinion of the European Economic and Social Committee ([3]),

Whereas:

(1) In order to establish a system which ensures that competition in the common market is not distorted, Articles 81 and 82 of the Treaty must be applied effectively and uniformly in the Community. Council Regulation No 17 of 6 February 1962, First Regulation implementing Articles 81 and 82 ([4]) of the Treaty ([5]), has allowed a Community competition policy to develop that has helped to disseminate a competition culture within the Community. In the light of experience, however, that Regulation should now be replaced by legislation designed to meet the challenges of an integrated market and a future enlargement of the Community.

(2) In particular, there is a need to rethink the arrangements for applying the exception from the prohibition on agreements, which restrict competition, laid down in Article 81(3) of the Treaty. Under Article 83(2)(b) of the Treaty, account must be taken in this regard of the need to ensure effective supervision, on the one hand, and to simplify administration to the greatest possible extent, on the other.

(3) The centralised scheme set up by Regulation No 17 no longer secures a balance between those two objectives. It hampers application of the Community competition rules by the courts and competition authorities of the Member States, and the system of notification it involves prevents the Commission from concentrating its resources on curbing the most serious infringements. It also imposes considerable costs on undertakings.

(4) The present system should therefore be replaced by a directly applicable exception system in which the competition authorities and courts of the Member States have the power to apply not only Article 81(1) and Article 82 of the Treaty, which have direct applicability by virtue of the case-law of the Court of Justice of the European Communities, but also Article 81(3) of the Treaty.

([1]) OJ C 365 E, 19.12.2000, p. 284.
([2]) OJ C 72 E, 21.3.2002, p. 305.
([3]) OJ C 155, 29.5.2001, p. 73.
([4]) The title of Regulation No 17 has been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Articles 85 and 86 of the Treaty.
([5]) OJ 13, 21.2.1962, p. 204/62. Regulation as last amended by Regulation (EC) No 1216/1999 (OJ L 148, 15.6.1999, p. 5).

(5)    In order to ensure an effective enforcement of the Community competition rules and at the same time the respect of fundamental rights of defence, this Regulation should regulate the burden of proof under Articles 81 and 82 of the Treaty. It should be for the party or the authority alleging an infringement of Article 81(1) and Article 82 of the Treaty to prove the existence thereof to the required legal standard. It should be for the undertaking or association of undertakings invoking the benefit of a defence against a finding of an infringement to demonstrate to the required legal standard that the conditions for applying such defence are satisfied. This Regulation affects neither national rules on the standard of proof nor obligations of competition authorities and courts of the Member States to ascertain the relevant facts of a case, provided that such rules and obligations are compatible with general principles of Community law.

(6)    In order to ensure that the Community competition rules are applied effectively, the competition authorities of the Member States should be associated more closely with their application. To this end, they should be empowered to apply Community law.

(7)    National courts have an essential part to play in applying the Community competition rules. When deciding disputes between private individuals, they protect the subjective rights under Community law, for example by awarding damages to the victims of infringements. The role of the national courts here complements that of the competition authorities of the Member States. They should therefore be allowed to apply Articles 81 and 82 of the Treaty in full.

(8)    In order to ensure the effective enforcement of the Community competition rules and the proper functioning of the cooperation mechanisms contained in this Regulation, it is necessary to oblige the competition authorities and courts of the Member States to also apply Articles 81 and 82 of the Treaty where they apply national competition law to agreements and practices which may affect trade between Member States. In order to create a level playing field for agreements, decisions by associations of undertakings and concerted practices within the internal market, it is also necessary to determine pursuant to Article 83(2)(e) of the Treaty the relationship between national laws and Community competition law. To that effect it is necessary to provide that the application of national competition laws to agreements, decisions or concerted practices within the meaning of Article 81(1) of the Treaty may not lead to the prohibition of such agreements, decisions and concerted practices if they are not also prohibited under Community competition law. The notions of agreements, decisions and concerted practices are autonomous concepts of Community competition law covering the coordination of behaviour of undertakings on the market as interpreted by the Community Courts. Member States should not under this Regulation be precluded from adopting and applying on their territory stricter national competition laws which prohibit or impose sanctions on unilateral conduct engaged in by undertakings. These stricter national laws may include provisions which prohibit or impose sanctions on abusive behaviour toward economically dependent undertakings. Furthermore, this Regulation does not apply to national laws which impose criminal sanctions on natural persons except to the extent that such sanctions are the means whereby competition rules applying to undertakings are enforced.

(9)    Articles 81 and 82 of the Treaty have as their objective the protection of competition on the market. This Regulation, which is adopted for the implementation of these Treaty provisions, does not preclude Member States from implementing on their territory national legislation, which protects other legitimate interests provided that such legislation is compatible with general principles and other provisions of Community law. In so far as such national legislation pursues predominantly an objective different from that of protecting competition on the market, the competition authorities and courts of the Member States may apply such legislation on their territory. Accordingly, Member States may under this Regulation implement on their territory national legislation that prohibits or imposes sanctions on acts of unfair trading practice, be they unilateral or contractual. Such legislation pursues a specific objective, irrespective of the actual or presumed effects of such acts on competition on the market. This is particularly the case of legislation which prohibits undertakings from imposing on their trading partners, obtaining or attempting to obtain from them terms and conditions that are unjustified, disproportionate or without consideration.

(10)    Regulations such as 19/65/EEC (¹), (EEC) No 2821/71 (²), (EEC) No 3976/87 (³), (EEC) No 1534/
91 (⁴), or (EEC) No 479/92 (⁵) empower the Commission to apply Article 81(3) of the Treaty by
Regulation to certain categories of agreements, decisions by associations of undertakings and
concerted practices. In the areas defined by such Regulations, the Commission has adopted and may
continue to adopt so called 'block' exemption Regulations by which it declares Article 81(1) of the
Treaty inapplicable to categories of agreements, decisions and concerted practices. Where agree-
ments, decisions and concerted practices to which such Regulations apply nonetheless have effects
that are incompatible with Article 81(3) of the Treaty, the Commission and the competition authori-
ties of the Member States should have the power to withdraw in a particular case the benefit of the
block exemption Regulation.

(11)    For it to ensure that the provisions of the Treaty are applied, the Commission should be able to
address decisions to undertakings or associations of undertakings for the purpose of bringing to an
end infringements of Articles 81 and 82 of the Treaty. Provided there is a legitimate interest in
doing so, the Commission should also be able to adopt decisions which find that an infringement
has been committed in the past even if it does not impose a fine. This Regulation should also make
explicit provision for the Commission's power to adopt decisions ordering interim measures, which
has been acknowledged by the Court of Justice.

(12)    This Regulation should make explicit provision for the Commission's power to impose any remedy,
whether behavioural or structural, which is necessary to bring the infringement effectively to an
end, having regard to the principle of proportionality. Structural remedies should only be imposed
either where there is no equally effective behavioural remedy or where any equally effective beha-
vioural remedy would be more burdensome for the undertaking concerned than the structural
remedy. Changes to the structure of an undertaking as it existed before the infringement was
committed would only be proportionate where there is a substantial risk of a lasting or repeated
infringement that derives from the very structure of the undertaking.

(13)    Where, in the course of proceedings which might lead to an agreement or practice being prohibited,
undertakings offer the Commission commitments such as to meet its concerns, the Commission
should be able to adopt decisions which make those commitments binding on the undertakings
concerned. Commitment decisions should find that there are no longer grounds for action by the
Commission without concluding whether or not there has been or still is an infringement. Commit-
ment decisions are without prejudice to the powers of competition authorities and courts of the
Member States to make such a finding and decide upon the case. Commitment decisions are not
appropriate in cases where the Commission intends to impose a fine.

(¹)    Council Regulation No 19/65/EEC of 2 March 1965 on the application of Article 81(3) (The titles of the Regulations
have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article
12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty to certain cate-
gories of agreements and concerted practices (OJ 36, 6.3.1965, p. 533). Regulation as last amended by Regulation
(EC) No 1215/1999 (OJ L 148, 15.6.1999, p. 1).
(²)    Council Regulation (EEC) No 2821/71 of 20 December 1971 on the application of Article 81(3) (The titles of the
Regulations have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance
with Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty
to categories of agreements, decisions and concerted practices (OJ L 285, 29.12.1971, p. 46). Regulation as last
amended by the Act of Accession of 1994.
(³)    Council Regulation (EEC) No 3976/87 of 14 December 1987 on the application of Article 81(3) (The titles of the
Regulations have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance
with Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty
to certain categories of agreements and concerted practices in the air transport sector (OJ L 374, 31.12.1987, p. 9).
Regulation as last amended by the Act of Accession of 1994.
(⁴)    Council Regulation (EEC) No 1534/91 of 31 May 1991 on the application of Article 81(3) (The titles of the Regula-
tions have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with
Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty to
certain categories of agreements, decisions and concerted practices in the insurance sector (OJ L 143, 7.6.1991, p. 1).
(⁵)    Council Regulation (EEC) No 479/92 of 25 February 1992 on the application of Article 81(3) (The titles of the Regu-
lations have been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with
Article 12 of the Treaty of Amsterdam; the original reference was to Article 85(3) of the Treaty) of the Treaty to
certain categories of agreements, decisions and concerted practices between liner shipping companies (Consortia) (OJ
L 55, 29.2.1992, p. 3). Regulation amended by the Act of Accession of 1994.

(14) In exceptional cases where the public interest of the Community so requires, it may also be expedient for the Commission to adopt a decision of a declaratory nature finding that the prohibition in Article 81 or Article 82 of the Treaty does not apply, with a view to clarifying the law and ensuring its consistent application throughout the Community, in particular with regard to new types of agreements or practices that have not been settled in the existing case-law and administrative practice.

(15) The Commission and the competition authorities of the Member States should form together a network of public authorities applying the Community competition rules in close cooperation. For that purpose it is necessary to set up arrangements for information and consultation. Further modalities for the cooperation within the network will be laid down and revised by the Commission, in close cooperation with the Member States.

(16) Notwithstanding any national provision to the contrary, the exchange of information and the use of such information in evidence should be allowed between the members of the network even where the information is confidential. This information may be used for the application of Articles 81 and 82 of the Treaty as well as for the parallel application of national competition law, provided that the latter application relates to the same case and does not lead to a different outcome. When the information exchanged is used by the receiving authority to impose sanctions on undertakings, there should be no other limit to the use of the information than the obligation to use it for the purpose for which it was collected given the fact that the sanctions imposed on undertakings are of the same type in all systems. The rights of defence enjoyed by undertakings in the various systems can be considered as sufficiently equivalent. However, as regards natural persons, they may be subject to substantially different types of sanctions across the various systems. Where that is the case, it is necessary to ensure that information can only be used if it has been collected in a way which respects the same level of protection of the rights of defence of natural persons as provided for under the national rules of the receiving authority.

(17) If the competition rules are to be applied consistently and, at the same time, the network is to be managed in the best possible way, it is essential to retain the rule that the competition authorities of the Member States are automatically relieved of their competence if the Commission initiates its own proceedings. Where a competition authority of a Member State is already acting on a case and the Commission intends to initiate proceedings, it should endeavour to do so as soon as possible. Before initiating proceedings, the Commission should consult the national authority concerned.

(18) To ensure that cases are dealt with by the most appropriate authorities within the network, a general provision should be laid down allowing a competition authority to suspend or close a case on the ground that another authority is dealing with it or has already dealt with it, the objective being that each case should be handled by a single authority. This provision should not prevent the Commission from rejecting a complaint for lack of Community interest, as the case-law of the Court of Justice has acknowledged it may do, even if no other competition authority has indicated its intention of dealing with the case.

(19) The Advisory Committee on Restrictive Practices and Dominant Positions set up by Regulation No 17 has functioned in a very satisfactory manner. It will fit well into the new system of decentralised application. It is necessary, therefore, to build upon the rules laid down by Regulation No 17, while improving the effectiveness of the organisational arrangements. To this end, it would be expedient to allow opinions to be delivered by written procedure. The Advisory Committee should also be able to act as a forum for discussing cases that are being handled by the competition authorities of the Member States, so as to help safeguard the consistent application of the Community competition rules.

(20) The Advisory Committee should be composed of representatives of the competition authorities of the Member States. For meetings in which general issues are being discussed, Member States should be able to appoint an additional representative. This is without prejudice to members of the Committee being assisted by other experts from the Member States.

(21) Consistency in the application of the competition rules also requires that arrangements be established for cooperation between the courts of the Member States and the Commission. This is relevant for all courts of the Member States that apply Articles 81 and 82 of the Treaty, whether applying these rules in lawsuits between private parties, acting as public enforcers or as review courts. In particular, national courts should be able to ask the Commission for information or for its opinion on points concerning the application of Community competition law. The Commission and the competition authorities of the Member States should also be able to submit written or oral observations to courts called upon to apply Article 81 or Article 82 of the Treaty. These observations should be submitted within the framework of national procedural rules and practices including those safeguarding the rights of the parties. Steps should therefore be taken to ensure that the Commission and the competition authorities of the Member States are kept sufficiently well informed of proceedings before national courts.

(22) In order to ensure compliance with the principles of legal certainty and the uniform application of the Community competition rules in a system of parallel powers, conflicting decisions must be avoided. It is therefore necessary to clarify, in accordance with the case-law of the Court of Justice, the effects of Commission decisions and proceedings on courts and competition authorities of the Member States. Commitment decisions adopted by the Commission do not affect the power of the courts and the competition authorities of the Member States to apply Articles 81 and 82 of the Treaty.

(23) The Commission should be empowered throughout the Community to require such information to be supplied as is necessary to detect any agreement, decision or concerted practice prohibited by Article 81 of the Treaty or any abuse of a dominant position prohibited by Article 82 of the Treaty. When complying with a decision of the Commission, undertakings cannot be forced to admit that they have committed an infringement, but they are in any event obliged to answer factual questions and to provide documents, even if this information may be used to establish against them or against another undertaking the existence of an infringement.

(24) The Commission should also be empowered to undertake such inspections as are necessary to detect any agreement, decision or concerted practice prohibited by Article 81 of the Treaty or any abuse of a dominant position prohibited by Article 82 of the Treaty. The competition authorities of the Member States should cooperate actively in the exercise of these powers.

(25) The detection of infringements of the competition rules is growing ever more difficult, and, in order to protect competition effectively, the Commission's powers of investigation need to be supplemented. The Commission should in particular be empowered to interview any persons who may be in possession of useful information and to record the statements made. In the course of an inspection, officials authorised by the Commission should be empowered to affix seals for the period of time necessary for the inspection. Seals should normally not be affixed for more than 72 hours. Officials authorised by the Commission should also be empowered to ask for any information relevant to the subject matter and purpose of the inspection.

(26) Experience has shown that there are cases where business records are kept in the homes of directors or other people working for an undertaking. In order to safeguard the effectiveness of inspections, therefore, officials and other persons authorised by the Commission should be empowered to enter any premises where business records may be kept, including private homes. However, the exercise of this latter power should be subject to the authorisation of the judicial authority.

(27) Without prejudice to the case-law of the Court of Justice, it is useful to set out the scope of the control that the national judicial authority may carry out when it authorises, as foreseen by national law including as a precautionary measure, assistance from law enforcement authorities in order to overcome possible opposition on the part of the undertaking or the execution of the decision to carry out inspections in non-business premises. It results from the case-law that the national judicial authority may in particular ask the Commission for further information which it needs to carry out its control and in the absence of which it could refuse the authorisation. The case-law also confirms the competence of the national courts to control the application of national rules governing the implementation of coercive measures.

(28) In order to help the competition authorities of the Member States to apply Articles 81 and 82 of the Treaty effectively, it is expedient to enable them to assist one another by carrying out inspections and other fact-finding measures.

(29) Compliance with Articles 81 and 82 of the Treaty and the fulfilment of the obligations imposed on undertakings and associations of undertakings under this Regulation should be enforceable by means of fines and periodic penalty payments. To that end, appropriate levels of fine should also be laid down for infringements of the procedural rules.

(30) In order to ensure effective recovery of fines imposed on associations of undertakings for infringements that they have committed, it is necessary to lay down the conditions on which the Commission may require payment of the fine from the members of the association where the association is not solvent. In doing so, the Commission should have regard to the relative size of the undertakings belonging to the association and in particular to the situation of small and medium-sized enterprises. Payment of the fine by one or several members of an association is without prejudice to rules of national law that provide for recovery of the amount paid from other members of the association.

(31) The rules on periods of limitation for the imposition of fines and periodic penalty payments were laid down in Council Regulation (EEC) No 2988/74 (¹), which also concerns penalties in the field of transport. In a system of parallel powers, the acts, which may interrupt a limitation period, should include procedural steps taken independently by the competition authority of a Member State. To clarify the legal framework, Regulation (EEC) No 2988/74 should therefore be amended to prevent it applying to matters covered by this Regulation, and this Regulation should include provisions on periods of limitation.

(32) The undertakings concerned should be accorded the right to be heard by the Commission, third parties whose interests may be affected by a decision should be given the opportunity of submitting their observations beforehand, and the decisions taken should be widely publicised. While ensuring the rights of defence of the undertakings concerned, in particular, the right of access to the file, it is essential that business secrets be protected. The confidentiality of information exchanged in the network should likewise be safeguarded.

(33) Since all decisions taken by the Commission under this Regulation are subject to review by the Court of Justice in accordance with the Treaty, the Court of Justice should, in accordance with Article 229 thereof be given unlimited jurisdiction in respect of decisions by which the Commission imposes fines or periodic penalty payments.

(34) The principles laid down in Articles 81 and 82 of the Treaty, as they have been applied by Regulation No 17, have given a central role to the Community bodies. This central role should be retained, whilst associating the Member States more closely with the application of the Community competition rules. In accordance with the principles of subsidiarity and proportionality as set out in Article 5 of the Treaty, this Regulation does not go beyond what is necessary in order to achieve its objective, which is to allow the Community competition rules to be applied effectively.

(35) In order to attain a proper enforcement of Community competition law, Member States should designate and empower authorities to apply Articles 81 and 82 of the Treaty as public enforcers. They should be able to designate administrative as well as judicial authorities to carry out the various functions conferred upon competition authorities in this Regulation. This Regulation recognises the wide variation which exists in the public enforcement systems of Member States. The effects of Article 11(6) of this Regulation should apply to all competition authorities. As an exception to this general rule, where a prosecuting authority brings a case before a separate judicial

---

(¹) Council Regulation (EEC) No 2988/74 of 26 November 1974 concerning limitation periods in proceedings and the enforcement of sanctions under the rules of the European Economic Community relating to transport and competition (OJ L 319, 29.11.1974, p. 1).

4.1.2003        EN        Official Journal of the European Communities        L 1/7

authority, Article 11(6) should apply to the prosecuting authority subject to the conditions in Article 35(4) of this Regulation. Where these conditions are not fulfilled, the general rule should apply. In any case, Article 11(6) should not apply to courts insofar as they are acting as review courts.

(36)    As the case-law has made it clear that the competition rules apply to transport, that sector should be made subject to the procedural provisions of this Regulation. Council Regulation No 141 of 26 November 1962 exempting transport from the application of Regulation No 17 (¹) should therefore be repealed and Regulations (EEC) No 1017/68 (²), (EEC) No 4056/86 (³) and (EEC) No 3975/87 (⁴) should be amended in order to delete the specific procedural provisions they contain.

(37)    This Regulation respects the fundamental rights and observes the principles recognised in particular by the Charter of Fundamental Rights of the European Union. Accordingly, this Regulation should be interpreted and applied with respect to those rights and principles.

(38)    Legal certainty for undertakings operating under the Community competition rules contributes to the promotion of innovation and investment. Where cases give rise to genuine uncertainty because they present novel or unresolved questions for the application of these rules, individual undertakings may wish to seek informal guidance from the Commission. This Regulation is without prejudice to the ability of the Commission to issue such informal guidance,

HAS ADOPTED THIS REGULATION:

CHAPTER I

PRINCIPLES

Article 1

Application of Articles 81 and 82 of the Treaty

1.    Agreements, decisions and concerted practices caught by Article 81(1) of the Treaty which do not satisfy the conditions of Article 81(3) of the Treaty shall be prohibited, no prior decision to that effect being required.

2.    Agreements, decisions and concerted practices caught by Article 81(1) of the Treaty which satisfy the conditions of Article 81(3) of the Treaty shall not be prohibited, no prior decision to that effect being required.

3.    The abuse of a dominant position referred to in Article 82 of the Treaty shall be prohibited, no prior decision to that effect being required.

(¹)  OJ 124, 28.11.1962, p. 2751/62; Regulation as last amended by Regulation No 1002/67/EEC (OJ 306, 16.12.1967, p. 1).
(²)  Council Regulation (EEC) No 1017/68 of 19 July 1968 applying rules of competition to transport by rail, road and inland waterway (OJ L 175, 23.7.1968, p. 1). Regulation as last amended by the Act of Accession of 1994.
(³)  Council Regulation (EEC) No 4056/86 of 22 December 1986 laying down detailed rules for the application of Articles 81 and 82 (The title of the Regulation has been adjusted to take account of the renumbering of the Articles of the EC Treaty, in accordance with Article 12 of the Treaty of Amsterdam; the original reference was to Articles 85 and 86 of the Treaty) of the Treaty to maritime transport (OJ L 378, 31.12.1986, p. 4). Regulation as last amended by the Act of Accession of 1994.
(⁴)  Council Regulation (EEC) No 3975/87 of 14 December 1987 laying down the procedure for the application of the rules on competition to undertakings in the air transport sector (OJ L 374, 31.12.1987, p. 1). Regulation as last amended by Regulation (EEC) No 2410/92 (OJ L 240, 24.8.1992, p. 18).

### Article 2

### Burden of proof

In any national or Community proceedings for the application of Articles 81 and 82 of the Treaty, the burden of proving an infringement of Article 81(1) or of Article 82 of the Treaty shall rest on the party or the authority alleging the infringement. The undertaking or association of undertakings claiming the benefit of Article 81(3) of the Treaty shall bear the burden of proving that the conditions of that paragraph are fulfilled.

### Article 3

### Relationship between Articles 81 and 82 of the Treaty and national competition laws

1.    Where the competition authorities of the Member States or national courts apply national competition law to agreements, decisions by associations of undertakings or concerted practices within the meaning of Article 81(1) of the Treaty which may affect trade between Member States within the meaning of that provision, they shall also apply Article 81 of the Treaty to such agreements, decisions or concerted practices. Where the competition authorities of the Member States or national courts apply national competition law to any abuse prohibited by Article 82 of the Treaty, they shall also apply Article 82 of the Treaty.

2.    The application of national competition law may not lead to the prohibition of agreements, decisions by associations of undertakings or concerted practices which may affect trade between Member States but which do not restrict competition within the meaning of Article 81(1) of the Treaty, or which fulfil the conditions of Article 81(3) of the Treaty or which are covered by a Regulation for the application of Article 81(3) of the Treaty. Member States shall not under this Regulation be precluded from adopting and applying on their territory stricter national laws which prohibit or sanction unilateral conduct engaged in by undertakings.

3.    Without prejudice to general principles and other provisions of Community law, paragraphs 1 and 2 do not apply when the competition authorities and the courts of the Member States apply national merger control laws nor do they preclude the application of provisions of national law that predominantly pursue an objective different from that pursued by Articles 81 and 82 of the Treaty.

### CHAPTER II

### POWERS

### Article 4

### Powers of the Commission

For the purpose of applying Articles 81 and 82 of the Treaty, the Commission shall have the powers provided for by this Regulation.

### Article 5

### Powers of the competition authorities of the Member States

The competition authorities of the Member States shall have the power to apply Articles 81 and 82 of the Treaty in individual cases. For this purpose, acting on their own initiative or on a complaint, they may take the following decisions:

— requiring that an infringement be brought to an end,

— ordering interim measures,

— accepting commitments,

— imposing fines, periodic penalty payments or any other penalty provided for in their national law.

Where on the basis of the information in their possession the conditions for prohibition are not met they may likewise decide that there are no grounds for action on their part.

### Article 6

### Powers of the national courts

National courts shall have the power to apply Articles 81 and 82 of the Treaty.

### CHAPTER III

### COMMISSION DECISIONS

### Article 7

### Finding and termination of infringement

1.    Where the Commission, acting on a complaint or on its own initiative, finds that there is an infringement of Article 81 or of Article 82 of the Treaty, it may by decision require the undertakings and associations of undertakings concerned to bring such infringement to an end. For this purpose, it may impose on them any behavioural or structural remedies which are proportionate to the infringement committed and necessary to bring the infringement effectively to an end. Structural remedies can only be imposed either where there is no equally effective behavioural remedy or where any equally effective behavioural remedy would be more burdensome for the undertaking concerned than the structural remedy. If the Commission has a legitimate interest in doing so, it may also find that an infringement has been committed in the past.

2.    Those entitled to lodge a complaint for the purposes of paragraph 1 are natural or legal persons who can show a legitimate interest and Member States.

### Article 8

### Interim measures

1.    In cases of urgency due to the risk of serious and irreparable damage to competition, the Commission, acting on its own initiative may by decision, on the basis of a *prima facie* finding of infringement, order interim measures.

2.    A decision under paragraph 1 shall apply for a specified period of time and may be renewed in so far this is necessary and appropriate.

### Article 9

### Commitments

1.    Where the Commission intends to adopt a decision requiring that an infringement be brought to an end and the undertakings concerned offer commitments to meet the concerns expressed to them by the Commission in its preliminary assessment, the Commission may by decision make those commitments binding on the undertakings. Such a decision may be adopted for a specified period and shall conclude that there are no longer grounds for action by the Commission.

2.    The Commission may, upon request or on its own initiative, reopen the proceedings:

(a)  where there has been a material change in any of the facts on which the decision was based;

(b)  where the undertakings concerned act contrary to their commitments; or

(c)  where the decision was based on incomplete, incorrect or misleading information provided by the parties.

### Article 10

### Finding of inapplicability

Where the Community public interest relating to the application of Articles 81 and 82 of the Treaty so requires, the Commission, acting on its own initiative, may by decision find that Article 81 of the Treaty is not applicable to an agreement, a decision by an association of undertakings or a concerted practice, either because the conditions of Article 81(1) of the Treaty are not fulfilled, or because the conditions of Article 81(3) of the Treaty are satisfied.

The Commission may likewise make such a finding with reference to Article 82 of the Treaty.

### CHAPTER IV

### COOPERATION

### Article 11

### Cooperation between the Commission and the competition authorities of the Member States

1.    The Commission and the competition authorities of the Member States shall apply the Community competition rules in close cooperation.

2.    The Commission shall transmit to the competition authorities of the Member States copies of the most important documents it has collected with a view to applying Articles 7, 8, 9, 10 and Article 29(1). At the request of the competition authority of a Member State, the Commission shall provide it with a copy of other existing documents necessary for the assessment of the case.

3.    The competition authorities of the Member States shall, when acting under Article 81 or Article 82 of the Treaty, inform the Commission in writing before or without delay after commencing the first formal investigative measure. This information may also be made available to the competition authorities of the other Member States.

4.    No later than 30 days before the adoption of a decision requiring that an infringement be brought to an end, accepting commitments or withdrawing the benefit of a block exemption Regulation, the competition authorities of the Member States shall inform the Commission. To that effect, they shall provide the Commission with a summary of the case, the envisaged decision or, in the absence thereof, any other document indicating the proposed course of action. This information may also be made available to the competition authorities of the other Member States. At the request of the Commission, the acting competition authority shall make available to the Commission other documents it holds which are necessary for the assessment of the case. The information supplied to the Commission may be made available to the competition authorities of the other Member States. National competition authorities may also exchange between themselves information necessary for the assessment of a case that they are dealing with under Article 81 or Article 82 of the Treaty.

5.    The competition authorities of the Member States may consult the Commission on any case involving the application of Community law.

6.    The initiation by the Commission of proceedings for the adoption of a decision under Chapter III shall relieve the competition authorities of the Member States of their competence to apply Articles 81 and 82 of the Treaty. If a competition authority of a Member State is already acting on a case, the Commission shall only initiate proceedings after consulting with that national competition authority.

## Article 12

### Exchange of information

1.    For the purpose of applying Articles 81 and 82 of the Treaty the Commission and the competition authorities of the Member States shall have the power to provide one another with and use in evidence any matter of fact or of law, including confidential information.

2.    Information exchanged shall only be used in evidence for the purpose of applying Article 81 or Article 82 of the Treaty and in respect of the subject-matter for which it was collected by the transmitting authority. However, where national competition law is applied in the same case and in parallel to Community competition law and does not lead to a different outcome, information exchanged under this Article may also be used for the application of national competition law.

3.    Information exchanged pursuant to paragraph 1 can only be used in evidence to impose sanctions on natural persons where:

— the law of the transmitting authority foresees sanctions of a similar kind in relation to an infringement of Article 81 or Article 82 of the Treaty or, in the absence thereof,

— the information has been collected in a way which respects the same level of protection of the rights of defence of natural persons as provided for under the national rules of the receiving authority. However, in this case, the information exchanged cannot be used by the receiving authority to impose custodial sanctions.

## Article 13

### Suspension or termination of proceedings

1.    Where competition authorities of two or more Member States have received a complaint or are acting on their own initiative under Article 81 or Article 82 of the Treaty against the same agreement, decision of an association or practice, the fact that one authority is dealing with the case shall be sufficient grounds for the others to suspend the proceedings before them or to reject the complaint. The Commission may likewise reject a complaint on the ground that a competition authority of a Member State is dealing with the case.

2.    Where a competition authority of a Member State or the Commission has received a complaint against an agreement, decision of an association or practice which has already been dealt with by another competition authority, it may reject it.

## Article 14

### Advisory Committee

1.    The Commission shall consult an Advisory Committee on Restrictive Practices and Dominant Positions prior to the taking of any decision under Articles 7, 8, 9, 10, 23, Article 24(2) and Article 29(1).

2.    For the discussion of individual cases, the Advisory Committee shall be composed of representatives of the competition authorities of the Member States. For meetings in which issues other than individual cases are being discussed, an additional Member State representative competent in competition matters may be appointed. Representatives may, if unable to attend, be replaced by other representatives.

3.    The consultation may take place at a meeting convened and chaired by the Commission, held not earlier than 14 days after dispatch of the notice convening it, together with a summary of the case, an indication of the most important documents and a preliminary draft decision. In respect of decisions pursuant to Article 8, the meeting may be held seven days after the dispatch of the operative part of a draft decision. Where the Commission dispatches a notice convening the meeting which gives a shorter period of notice than those specified above, the meeting may take place on the proposed date in the absence of an objection by any Member State. The Advisory Committee shall deliver a written opinion on the Commission's preliminary draft decision. It may deliver an opinion even if some members are absent and are not represented. At the request of one or several members, the positions stated in the opinion shall be reasoned.

4.    Consultation may also take place by written procedure. However, if any Member State so requests, the Commission shall convene a meeting. In case of written procedure, the Commission shall determine a time-limit of not less than 14 days within which the Member States are to put forward their observations for circulation to all other Member States. In case of decisions to be taken pursuant to Article 8, the time-limit of 14 days is replaced by seven days. Where the Commission determines a time-limit for the written procedure which is shorter than those specified above, the proposed time-limit shall be applicable in the absence of an objection by any Member State.

5.    The Commission shall take the utmost account of the opinion delivered by the Advisory Committee. It shall inform the Committee of the manner in which its opinion has been taken into account.

6.    Where the Advisory Committee delivers a written opinion, this opinion shall be appended to the draft decision. If the Advisory Committee recommends publication of the opinion, the Commission shall carry out such publication taking into account the legitimate interest of undertakings in the protection of their business secrets.

7.    At the request of a competition authority of a Member State, the Commission shall include on the agenda of the Advisory Committee cases that are being dealt with by a competition authority of a Member State under Article 81 or Article 82 of the Treaty. The Commission may also do so on its own initiative. In either case, the Commission shall inform the competition authority concerned.

A request may in particular be made by a competition authority of a Member State in respect of a case where the Commission intends to initiate proceedings with the effect of Article 11(6).

The Advisory Committee shall not issue opinions on cases dealt with by competition authorities of the Member States. The Advisory Committee may also discuss general issues of Community competition law.

*Article 15*

### Cooperation with national courts

1.    In proceedings for the application of Article 81 or Article 82 of the Treaty, courts of the Member States may ask the Commission to transmit to them information in its possession or its opinion on questions concerning the application of the Community competition rules.

2.    Member States shall forward to the Commission a copy of any written judgment of national courts deciding on the application of Article 81 or Article 82 of the Treaty. Such copy shall be forwarded without delay after the full written judgment is notified to the parties.

3.    Competition authorities of the Member States, acting on their own initiative, may submit written observations to the national courts of their Member State on issues relating to the application of Article 81 or Article 82 of the Treaty. With the permission of the court in question, they may also submit oral observations to the national courts of their Member State. Where the coherent application of Article 81 or Article 82 of the Treaty so requires, the Commission, acting on its own initiative, may submit written observations to courts of the Member States. With the permission of the court in question, it may also make oral observations.

For the purpose of the preparation of their observations only, the competition authorities of the Member States and the Commission may request the relevant court of the Member State to transmit or ensure the transmission to them of any documents necessary for the assessment of the case.

4. This Article is without prejudice to wider powers to make observations before courts conferred on competition authorities of the Member States under the law of their Member State.

## Article 16

### Uniform application of Community competition law

1. When national courts rule on agreements, decisions or practices under Article 81 or Article 82 of the Treaty which are already the subject of a Commission decision, they cannot take decisions running counter to the decision adopted by the Commission. They must also avoid giving decisions which would conflict with a decision contemplated by the Commission in proceedings it has initiated. To that effect, the national court may assess whether it is necessary to stay its proceedings. This obligation is without prejudice to the rights and obligations under Article 234 of the Treaty.

2. When competition authorities of the Member States rule on agreements, decisions or practices under Article 81 or Article 82 of the Treaty which are already the subject of a Commission decision, they cannot take decisions which would run counter to the decision adopted by the Commission.

## CHAPTER V

## POWERS OF INVESTIGATION

## Article 17

### Investigations into sectors of the economy and into types of agreements

1. Where the trend of trade between Member States, the rigidity of prices or other circumstances suggest that competition may be restricted or distorted within the common market, the Commission may conduct its inquiry into a particular sector of the economy or into a particular type of agreements across various sectors. In the course of that inquiry, the Commission may request the undertakings or associations of undertakings concerned to supply the information necessary for giving effect to Articles 81 and 82 of the Treaty and may carry out any inspections necessary for that purpose.

The Commission may in particular request the undertakings or associations of undertakings concerned to communicate to it all agreements, decisions and concerted practices.

The Commission may publish a report on the results of its inquiry into particular sectors of the economy or particular types of agreements across various sectors and invite comments from interested parties.

2. Articles 14, 18, 19, 20, 22, 23 and 24 shall apply *mutatis mutandis*.

## Article 18

### Requests for information

1. In order to carry out the duties assigned to it by this Regulation, the Commission may, by simple request or by decision, require undertakings and associations of undertakings to provide all necessary information.

2. When sending a simple request for information to an undertaking or association of undertakings, the Commission shall state the legal basis and the purpose of the request, specify what information is required and fix the time-limit within which the information is to be provided, and the penalties provided for in Article 23 for supplying incorrect or misleading information.

3.     Where the Commission requires undertakings and associations of undertakings to supply information by decision, it shall state the legal basis and the purpose of the request, specify what information is required and fix the time-limit within which it is to be provided. It shall also indicate the penalties provided for in Article 23 and indicate or impose the penalties provided for in Article 24. It shall further indicate the right to have the decision reviewed by the Court of Justice.

4.     The owners of the undertakings or their representatives and, in the case of legal persons, companies or firms, or associations having no legal personality, the persons authorised to represent them by law or by their constitution shall supply the information requested on behalf of the undertaking or the association of undertakings concerned. Lawyers duly authorised to act may supply the information on behalf of their clients. The latter shall remain fully responsible if the information supplied is incomplete, incorrect or misleading.

5.     The Commission shall without delay forward a copy of the simple request or of the decision to the competition authority of the Member State in whose territory the seat of the undertaking or association of undertakings is situated and the competition authority of the Member State whose territory is affected.

6.     At the request of the Commission the governments and competition authorities of the Member States shall provide the Commission with all necessary information to carry out the duties assigned to it by this Regulation.

## Article 19

### Power to take statements

1.     In order to carry out the duties assigned to it by this Regulation, the Commission may interview any natural or legal person who consents to be interviewed for the purpose of collecting information relating to the subject-matter of an investigation.

2.     Where an interview pursuant to paragraph 1 is conducted in the premises of an undertaking, the Commission shall inform the competition authority of the Member State in whose territory the interview takes place. If so requested by the competition authority of that Member State, its officials may assist the officials and other accompanying persons authorised by the Commission to conduct the interview.

## Article 20

### The Commission's powers of inspection

1.     In order to carry out the duties assigned to it by this Regulation, the Commission may conduct all necessary inspections of undertakings and associations of undertakings.

2.     The officials and other accompanying persons authorised by the Commission to conduct an inspection are empowered:

(a) to enter any premises, land and means of transport of undertakings and associations of undertakings;

(b) to examine the books and other records related to the business, irrespective of the medium on which they are stored;

(c) to take or obtain in any form copies of or extracts from such books or records;

(d) to seal any business premises and books or records for the period and to the extent necessary for the inspection;

(e) to ask any representative or member of staff of the undertaking or association of undertakings for explanations on facts or documents relating to the subject-matter and purpose of the inspection and to record the answers.

3.    The officials and other accompanying persons authorised by the Commission to conduct an inspection shall exercise their powers upon production of a written authorisation specifying the subject matter and purpose of the inspection and the penalties provided for in Article 23 in case the production of the required books or other records related to the business is incomplete or where the answers to questions asked under paragraph 2 of the present Article are incorrect or misleading. In good time before the inspection, the Commission shall give notice of the inspection to the competition authority of the Member State in whose territory it is to be conducted.

4.    Undertakings and associations of undertakings are required to submit to inspections ordered by decision of the Commission. The decision shall specify the subject matter and purpose of the inspection, appoint the date on which it is to begin and indicate the penalties provided for in Articles 23 and 24 and the right to have the decision reviewed by the Court of Justice. The Commission shall take such decisions after consulting the competition authority of the Member State in whose territory the inspection is to be conducted.

5.    Officials of as well as those authorised or appointed by the competition authority of the Member State in whose territory the inspection is to be conducted shall, at the request of that authority or of the Commission, actively assist the officials and other accompanying persons authorised by the Commission. To this end, they shall enjoy the powers specified in paragraph 2.

6.    Where the officials and other accompanying persons authorised by the Commission find that an undertaking opposes an inspection ordered pursuant to this Article, the Member State concerned shall afford them the necessary assistance, requesting where appropriate the assistance of the police or of an equivalent enforcement authority, so as to enable them to conduct their inspection.

7.    If the assistance provided for in paragraph 6 requires authorisation from a judicial authority according to national rules, such authorisation shall be applied for. Such authorisation may also be applied for as a precautionary measure.

8.    Where authorisation as referred to in paragraph 7 is applied for, the national judicial authority shall control that the Commission decision is authentic and that the coercive measures envisaged are neither arbitrary nor excessive having regard to the subject matter of the inspection. In its control of the proportionality of the coercive measures, the national judicial authority may ask the Commission, directly or through the Member State competition authority, for detailed explanations in particular on the grounds the Commission has for suspecting infringement of Articles 81 and 82 of the Treaty, as well as on the seriousness of the suspected infringement and on the nature of the involvement of the undertaking concerned. However, the national judicial authority may not call into question the necessity for the inspection nor demand that it be provided with the information in the Commission's file. The lawfulness of the Commission decision shall be subject to review only by the Court of Justice.

*Article 21*

**Inspection of other premises**

1.    If a reasonable suspicion exists that books or other records related to the business and to the subject-matter of the inspection, which may be relevant to prove a serious violation of Article 81 or Article 82 of the Treaty, are being kept in any other premises, land and means of transport, including the homes of directors, managers and other members of staff of the undertakings and associations of undertakings concerned, the Commission can by decision order an inspection to be conducted in such other premises, land and means of transport.

2.    The decision shall specify the subject matter and purpose of the inspection, appoint the date on which it is to begin and indicate the right to have the decision reviewed by the Court of Justice. It shall in particular state the reasons that have led the Commission to conclude that a suspicion in the sense of paragraph 1 exists. The Commission shall take such decisions after consulting the competition authority of the Member State in whose territory the inspection is to be conducted.

L 1/16    EN    Official Journal of the European Communities    4.1.2003

3.   A decision adopted pursuant to paragraph 1 cannot be executed without prior authorisation from the national judicial authority of the Member State concerned. The national judicial authority shall control that the Commission decision is authentic and that the coercive measures envisaged are neither arbitrary nor excessive having regard in particular to the seriousness of the suspected infringement, to the importance of the evidence sought, to the involvement of the undertaking concerned and to the reasonable likelihood that business books and records relating to the subject matter of the inspection are kept in the premises for which the authorisation is requested. The national judicial authority may ask the Commission, directly or through the Member State competition authority, for detailed explanations on those elements which are necessary to allow its control of the proportionality of the coercive measures envisaged.

However, the national judicial authority may not call into question the necessity for the inspection nor demand that it be provided with information in the Commission's file. The lawfulness of the Commission decision shall be subject to review only by the Court of Justice.

4.   The officials and other accompanying persons authorised by the Commission to conduct an inspection ordered in accordance with paragraph 1 of this Article shall have the powers set out in Article 20(2)(a), (b) and (c). Article 20(5) and (6) shall apply *mutatis mutandis*.

### Article 22

### Investigations by competition authorities of Member States

1.   The competition authority of a Member State may in its own territory carry out any inspection or other fact-finding measure under its national law on behalf and for the account of the competition authority of another Member State in order to establish whether there has been an infringement of Article 81 or Article 82 of the Treaty. Any exchange and use of the information collected shall be carried out in accordance with Article 12.

2.   At the request of the Commission, the competition authorities of the Member States shall undertake the inspections which the Commission considers to be necessary under Article 20(1) or which it has ordered by decision pursuant to Article 20(4). The officials of the competition authorities of the Member States who are responsible for conducting these inspections as well as those authorised or appointed by them shall exercise their powers in accordance with their national law.

If so requested by the Commission or by the competition authority of the Member State in whose territory the inspection is to be conducted, officials and other accompanying persons authorised by the Commission may assist the officials of the authority concerned.

### CHAPTER VI

### PENALTIES

### Article 23

### Fines

1.   The Commission may by decision impose on undertakings and associations of undertakings fines not exceeding 1 % of the total turnover in the preceding business year where, intentionally or negligently:

(a) they supply incorrect or misleading information in response to a request made pursuant to Article 17 or Article 18(2);

(b) in response to a request made by decision adopted pursuant to Article 17 or Article 18(3), they supply incorrect, incomplete or misleading information or do not supply information within the required time-limit;

(c) they produce the required books or other records related to the business in incomplete form during inspections under Article 20 or refuse to submit to inspections ordered by a decision adopted pursuant to Article 20(4);

(d) in response to a question asked in accordance with Article 20(2)(e),

— they give an incorrect or misleading answer,

— they fail to rectify within a time-limit set by the Commission an incorrect, incomplete or misleading answer given by a member of staff, or

— they fail or refuse to provide a complete answer on facts relating to the subject-matter and purpose of an inspection ordered by a decision adopted pursuant to Article 20(4);

(e) seals affixed in accordance with Article 20(2)(d) by officials or other accompanying persons authorised by the Commission have been broken.

2.    The Commission may by decision impose fines on undertakings and associations of undertakings where, either intentionally or negligently:

(a) they infringe Article 81 or Article 82 of the Treaty; or

(b) they contravene a decision ordering interim measures under Article 8; or

(c) they fail to comply with a commitment made binding by a decision pursuant to Article 9.

For each undertaking and association of undertakings participating in the infringement, the fine shall not exceed 10 % of its total turnover in the preceding business year.

Where the infringement of an association relates to the activities of its members, the fine shall not exceed 10 % of the sum of the total turnover of each member active on the market affected by the infringement of the association.

3.    In fixing the amount of the fine, regard shall be had both to the gravity and to the duration of the infringement.

4.    When a fine is imposed on an association of undertakings taking account of the turnover of its members and the association is not solvent, the association is obliged to call for contributions from its members to cover the amount of the fine.

Where such contributions have not been made to the association within a time-limit fixed by the Commission, the Commission may require payment of the fine directly by any of the undertakings whose representatives were members of the decision-making bodies concerned of the association.

After the Commission has required payment under the second subparagraph, where necessary to ensure full payment of the fine, the Commission may require payment of the balance by any of the members of the association which were active on the market on which the infringement occurred.

However, the Commission shall not require payment under the second or the third subparagraph from undertakings which show that they have not implemented the infringing decision of the association and either were not aware of its existence or have actively distanced themselves from it before the Commission started investigating the case.

The financial liability of each undertaking in respect of the payment of the fine shall not exceed 10 % of its total turnover in the preceding business year.

5.    Decisions taken pursuant to paragraphs 1 and 2 shall not be of a criminal law nature.


### Article 24

### Periodic penalty payments

1.    The Commission may, by decision, impose on undertakings or associations of undertakings periodic penalty payments not exceeding 5 % of the average daily turnover in the preceding business year per day and calculated from the date appointed by the decision, in order to compel them:

(a) to put an end to an infringement of Article 81 or Article 82 of the Treaty, in accordance with a decision taken pursuant to Article 7;

(b) to comply with a decision ordering interim measures taken pursuant to Article 8;

(c) to comply with a commitment made binding by a decision pursuant to Article 9;

(d) to supply complete and correct information which it has requested by decision taken pursuant to Article 17 or Article 18(3);

(e) to submit to an inspection which it has ordered by decision taken pursuant to Article 20(4).

2.    Where the undertakings or associations of undertakings have satisfied the obligation which the periodic penalty payment was intended to enforce, the Commission may fix the definitive amount of the periodic penalty payment at a figure lower than that which would arise under the original decision. Article 23(4) shall apply correspondingly.

CHAPTER VII

LIMITATION PERIODS

*Article 25*

Limitation periods for the imposition of penalties

1.    The powers conferred on the Commission by Articles 23 and 24 shall be subject to the following limitation periods:

(a) three years in the case of infringements of provisions concerning requests for information or the conduct of inspections;

(b) five years in the case of all other infringements.

2.    Time shall begin to run on the day on which the infringement is committed. However, in the case of continuing or repeated infringements, time shall begin to run on the day on which the infringement ceases.

3.    Any action taken by the Commission or by the competition authority of a Member State for the purpose of the investigation or proceedings in respect of an infringement shall interrupt the limitation period for the imposition of fines or periodic penalty payments. The limitation period shall be interrupted with effect from the date on which the action is notified to at least one undertaking or association of undertakings which has participated in the infringement. Actions which interrupt the running of the period shall include in particular the following:

(a) written requests for information by the Commission or by the competition authority of a Member State;

(b) written authorisations to conduct inspections issued to its officials by the Commission or by the competition authority of a Member State;

(c) the initiation of proceedings by the Commission or by the competition authority of a Member State;

(d) notification of the statement of objections of the Commission or of the competition authority of a Member State.

4.    The interruption of the limitation period shall apply for all the undertakings or associations of undertakings which have participated in the infringement.

5.    Each interruption shall start time running afresh. However, the limitation period shall expire at the latest on the day on which a period equal to twice the limitation period has elapsed without the Commission having imposed a fine or a periodic penalty payment. That period shall be extended by the time during which limitation is suspended pursuant to paragraph 6.

6.    The limitation period for the imposition of fines or periodic penalty payments shall be suspended for as long as the decision of the Commission is the subject of proceedings pending before the Court of Justice.

## Article 26

### Limitation period for the enforcement of penalties

1.    The power of the Commission to enforce decisions taken pursuant to Articles 23 and 24 shall be subject to a limitation period of five years.

2.    Time shall begin to run on the day on which the decision becomes final.

3.    The limitation period for the enforcement of penalties shall be interrupted:

(a) by notification of a decision varying the original amount of the fine or periodic penalty payment or refusing an application for variation;

(b) by any action of the Commission or of a Member State, acting at the request of the Commission, designed to enforce payment of the fine or periodic penalty payment.

4.    Each interruption shall start time running afresh.

5.    The limitation period for the enforcement of penalties shall be suspended for so long as:

(a) time to pay is allowed;

(b) enforcement of payment is suspended pursuant to a decision of the Court of Justice.

CHAPTER VIII

HEARINGS AND PROFESSIONAL SECRECY

## Article 27

### Hearing of the parties, complainants and others

1.    Before taking decisions as provided for in Articles 7, 8, 23 and Article 24(2), the Commission shall give the undertakings or associations of undertakings which are the subject of the proceedings conducted by the Commission the opportunity of being heard on the matters to which the Commission has taken objection. The Commission shall base its decisions only on objections on which the parties concerned have been able to comment. Complainants shall be associated closely with the proceedings.

2.    The rights of defence of the parties concerned shall be fully respected in the proceedings. They shall be entitled to have access to the Commission's file, subject to the legitimate interest of undertakings in the protection of their business secrets. The right of access to the file shall not extend to confidential information and internal documents of the Commission or the competition authorities of the Member States. In particular, the right of access shall not extend to correspondence between the Commission and the competition authorities of the Member States, or between the latter, including documents drawn up pursuant to Articles 11 and 14. Nothing in this paragraph shall prevent the Commission from disclosing and using information necessary to prove an infringement.

3.    If the Commission considers it necessary, it may also hear other natural or legal persons. Applications to be heard on the part of such persons shall, where they show a sufficient interest, be granted. The competition authorities of the Member States may also ask the Commission to hear other natural or legal persons.

4.    Where the Commission intends to adopt a decision pursuant to Article 9 or Article 10, it shall publish a concise summary of the case and the main content of the commitments or of the proposed course of action. Interested third parties may submit their observations within a time limit which is fixed by the Commission in its publication and which may not be less than one month. Publication shall have regard to the legitimate interest of undertakings in the protection of their business secrets.

*Article 28*

**Professional secrecy**

1.    Without prejudice to Articles 12 and 15, information collected pursuant to Articles 17 to 22 shall be used only for the purpose for which it was acquired.

2.    Without prejudice to the exchange and to the use of information foreseen in Articles 11, 12, 14, 15 and 27, the Commission and the competition authorities of the Member States, their officials, servants and other persons working under the supervision of these authorities as well as officials and civil servants of other authorities of the Member States shall not disclose information acquired or exchanged by them pursuant to this Regulation and of the kind covered by the obligation of professional secrecy. This obligation also applies to all representatives and experts of Member States attending meetings of the Advisory Committee pursuant to Article 14.

CHAPTER IX

EXEMPTION REGULATIONS

*Article 29*

**Withdrawal in individual cases**

1.    Where the Commission, empowered by a Council Regulation, such as Regulations 19/65/EEC, (EEC) No 2821/71, (EEC) No 3976/87, (EEC) No 1534/91 or (EEC) No 479/92, to apply Article 81(3) of the Treaty by regulation, has declared Article 81(1) of the Treaty inapplicable to certain categories of agreements, decisions by associations of undertakings or concerted practices, it may, acting on its own initiative or on a complaint, withdraw the benefit of such an exemption Regulation when it finds that in any particular case an agreement, decision or concerted practice to which the exemption Regulation applies has certain effects which are incompatible with Article 81(3) of the Treaty.

2.    Where, in any particular case, agreements, decisions by associations of undertakings or concerted practices to which a Commission Regulation referred to in paragraph 1 applies have effects which are incompatible with Article 81(3) of the Treaty in the territory of a Member State, or in a part thereof, which has all the characteristics of a distinct geographic market, the competition authority of that Member State may withdraw the benefit of the Regulation in question in respect of that territory.

CHAPTER X

GENERAL PROVISIONS

*Article 30*

**Publication of decisions**

1.    The Commission shall publish the decisions, which it takes pursuant to Articles 7 to 10, 23 and 24.

2.    The publication shall state the names of the parties and the main content of the decision, including any penalties imposed. It shall have regard to the legitimate interest of undertakings in the protection of their business secrets.

*Article 31*

**Review by the Court of Justice**

The Court of Justice shall have unlimited jurisdiction to review decisions whereby the Commission has fixed a fine or periodic penalty payment. It may cancel, reduce or increase the fine or periodic penalty payment imposed.

*Article 32*

**Exclusions**

This Regulation shall not apply to:

(a) international tramp vessel services as defined in Article 1(3)(a) of Regulation (EEC) No 4056/86;

(b) a maritime transport service that takes place exclusively between ports in one and the same Member State as foreseen in Article 1(2) of Regulation (EEC) No 4056/86;

(c) air transport between Community airports and third countries.

*Article 33*

**Implementing provisions**

1.    The Commission shall be authorised to take such measures as may be appropriate in order to apply this Regulation. The measures may concern, *inter alia*:

(a) the form, content and other details of complaints lodged pursuant to Article 7 and the procedure for rejecting complaints;

(b) the practical arrangements for the exchange of information and consultations provided for in Article 11;

(c) the practical arrangements for the hearings provided for in Article 27.

2.    Before the adoption of any measures pursuant to paragraph 1, the Commission shall publish a draft thereof and invite all interested parties to submit their comments within the time-limit it lays down, which may not be less than one month. Before publishing a draft measure and before adopting it, the Commission shall consult the Advisory Committee on Restrictive Practices and Dominant Positions.

CHAPTER XI

TRANSITIONAL, AMENDING AND FINAL PROVISIONS

*Article 34*

**Transitional provisions**

1.    Applications made to the Commission under Article 2 of Regulation No 17, notifications made under Articles 4 and 5 of that Regulation and the corresponding applications and notifications made under Regulations (EEC) No 1017/68, (EEC) No 4056/86 and (EEC) No 3975/87 shall lapse as from the date of application of this Regulation.

2.    Procedural steps taken under Regulation No 17 and Regulations (EEC) No 1017/68, (EEC) No 4056/86 and (EEC) No 3975/87 shall continue to have effect for the purposes of applying this Regulation.

*Article 35*

**Designation of competition authorities of Member States**

1.    The Member States shall designate the competition authority or authorities responsible for the application of Articles 81 and 82 of the Treaty in such a way that the provisions of this regulation are effectively complied with. The measures necessary to empower those authorities to apply those Articles shall be taken before 1 May 2004. The authorities designated may include courts.

2.    When enforcement of Community competition law is entrusted to national administrative and judicial authorities, the Member States may allocate different powers and functions to those different national authorities, whether administrative or judicial.

3.    The effects of Article 11(6) apply to the authorities designated by the Member States including courts that exercise functions regarding the preparation and the adoption of the types of decisions foreseen in Article 5. The effects of Article 11(6) do not extend to courts insofar as they act as review courts in respect of the types of decisions foreseen in Article 5.

4.    Notwithstanding paragraph 3, in the Member States where, for the adoption of certain types of decisions foreseen in Article 5, an authority brings an action before a judicial authority that is separate and different from the prosecuting authority and provided that the terms of this paragraph are complied with, the effects of Article 11(6) shall be limited to the authority prosecuting the case which shall withdraw its claim before the judicial authority when the Commission opens proceedings and this withdrawal shall bring the national proceedings effectively to an end.

*Article 36*

### Amendment of Regulation (EEC) No 1017/68

Regulation (EEC) No 1017/68 is amended as follows:

1. Article 2 is repealed;

2. in Article 3(1), the words 'The prohibition laid down in Article 2' are replaced by the words 'The prohibition in Article 81(1) of the Treaty';

3. Article 4 is amended as follows:

    (a) In paragraph 1, the words 'The agreements, decisions and concerted practices referred to in Article 2' are replaced by the words 'Agreements, decisions and concerted practices pursuant to Article 81(1) of the Treaty';

    (b) Paragraph 2 is replaced by the following:

    '2.    If the implementation of any agreement, decision or concerted practice covered by paragraph 1 has, in a given case, effects which are incompatible with the requirements of Article 81(3) of the Treaty, undertakings or associations of undertakings may be required to make such effects cease.'

4. Articles 5 to 29 are repealed with the exception of Article 13(3) which continues to apply to decisions adopted pursuant to Article 5 of Regulation (EEC) No 1017/68 prior to the date of application of this Regulation until the date of expiration of those decisions;

5. in Article 30, paragraphs 2, 3 and 4 are deleted.

*Article 37*

### Amendment of Regulation (EEC) No 2988/74

In Regulation (EEC) No 2988/74, the following Article is inserted:

'*Article 7a*

**Exclusion**

This Regulation shall not apply to measures taken under Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (*).

(*) OJ L 1, 4.1.2003, p. 1.'

### Article 38

### Amendment of Regulation (EEC) No 4056/86

Regulation (EEC) No 4056/86 is amended as follows:

1. Article 7 is amended as follows:

    (a) Paragraph 1 is replaced by the following:

    '1. *Breach of an obligation*

    Where the persons concerned are in breach of an obligation which, pursuant to Article 5, attaches to the exemption provided for in Article 3, the Commission may, in order to put an end to such breach and under the conditions laid down in Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (*) adopt a decision that either prohibits them from carrying out or requires them to perform certain specific acts, or withdraws the benefit of the block exemption which they enjoyed.

    (*) OJ L 1, 4.1.2003, p. 1.'

    (b) Paragraph 2 is amended as follows:

    (i) In point (a), the words 'under the conditions laid down in Section II' are replaced by the words 'under the conditions laid down in Regulation (EC) No 1/2003';

    (ii) The second sentence of the second subparagraph of point (c)(i) is replaced by the following:

    'At the same time it shall decide, in accordance with Article 9 of Regulation (EC) No 1/2003, whether to accept commitments offered by the undertakings concerned with a view, *inter alia*, to obtaining access to the market for non-conference lines.'

2. Article 8 is amended as follows:

    (a) Paragraph 1 is deleted.

    (b) In paragraph 2 the words 'pursuant to Article 10' are replaced by the words 'pursuant to Regulation (EC) No 1/2003'.

    (c) Paragraph 3 is deleted;

3. Article 9 is amended as follows:

    (a) In paragraph 1, the words 'Advisory Committee referred to in Article 15' are replaced by the words 'Advisory Committee referred to in Article 14 of Regulation (EC) No 1/2003';

    (b) In paragraph 2, the words 'Advisory Committee as referred to in Article 15' are replaced by the words 'Advisory Committee referred to in Article 14 of Regulation (EC) No 1/2003';

4. Articles 10 to 25 are repealed with the exception of Article 13(3) which continues to apply to decisions adopted pursuant to Article 81(3) of the Treaty prior to the date of application of this Regulation until the date of expiration of those decisions;

5. in Article 26, the words 'the form, content and other details of complaints pursuant to Article 10, applications pursuant to Article 12 and the hearings provided for in Article 23(1) and (2)' are deleted.

### Article 39

### Amendment of Regulation (EEC) No 3975/87

Articles 3 to 19 of Regulation (EEC) No 3975/87 are repealed with the exception of Article 6(3) which continues to apply to decisions adopted pursuant to Article 81(3) of the Treaty prior to the date of application of this Regulation until the date of expiration of those decisions.

*Article 40*

### Amendment of Regulations No 19/65/EEC, (EEC) No 2821/71 and (EEC) No 1534/91

Article 7 of Regulation No 19/65/EEC, Article 7 of Regulation (EEC) No 2821/71 and Article 7 of Regulation (EEC) No 1534/91 are repealed.

*Article 41*

### Amendment of Regulation (EEC) No 3976/87

Regulation (EEC) No 3976/87 is amended as follows:

1. Article 6 is replaced by the following:

   '*Article 6*

   The Commission shall consult the Advisory Committee referred to in Article 14 of Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (*) before publishing a draft Regulation and before adopting a Regulation.

   (*) OJ L 1, 4.1.2003, p. 1.'

2. Article 7 is repealed.

*Article 42*

### Amendment of Regulation (EEC) No 479/92

Regulation (EEC) No 479/92 is amended as follows:

1. Article 5 is replaced by the following:

   '*Article 5*

   Before publishing the draft Regulation and before adopting the Regulation, the Commission shall consult the Advisory Committee referred to in Article 14 of Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (*).

   (*) OJ L 1, 4.1.2003, p. 1.'

2. Article 6 is repealed.

*Article 43*

### Repeal of Regulations No 17 and No 141

1.   Regulation No 17 is repealed with the exception of Article 8(3) which continues to apply to decisions adopted pursuant to Article 81(3) of the Treaty prior to the date of application of this Regulation until the date of expiration of those decisions.

2.   Regulation No 141 is repealed.

3.   References to the repealed Regulations shall be construed as references to this Regulation.

*Article 44*

### Report on the application of the present Regulation

Five years from the date of application of this Regulation, the Commission shall report to the European Parliament and the Council on the functioning of this Regulation, in particular on the application of Article 11(6) and Article 17.

On the basis of this report, the Commission shall assess whether it is appropriate to propose to the Council a revision of this Regulation.

4.1.2003     EN     Official Journal of the European Communities     L 1/25

### Article 45

### Entry into force

This Regulation shall enter into force on the 20th day following that of its publication in the *Official Journal of the European Communities.*

It shall apply from 1 May 2004.

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Brussels, 16 December 2002.

*For the Council*
*The President*
M. FISCHER BOEL

# EXHIBIT 15

L 123/18     EN     Official Journal of the European Union     27.4.2004

## COMMISSION REGULATION (EC) No 773/2004

### of 7 April 2004

### relating to the conduct of proceedings by the Commission pursuant to Articles 81 and 82 of the EC Treaty

#### (Text with EEA relevance)

THE COMMISSION OF THE EUROPEAN COMMUNITIES,

Having regard to the Treaty establishing the European Community,

Having regard to the Agreement on the European Economic Area,

Having regard to Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (¹), and in particular Article 33 thereof,

After consulting the Advisory Committee on Restrictive Practices and Dominant Positions,

Whereas:

(1) Regulation (EC) No 1/2003 empowers the Commission to regulate certain aspects of proceedings for the application of Articles 81 and 82 of the Treaty. It is necessary to lay down rules concerning the initiation of proceedings by the Commission as well as the handling of complaints and the hearing of the parties concerned.

(2) According to Regulation (EC) No 1/2003, national courts are under an obligation to avoid taking decisions which could run counter to decisions envisaged by the Commission in the same case. According to Article 11(6) of that Regulation, national competition authorities are relieved from their competence once the Commission has initiated proceedings for the adoption of a decision under Chapter III of Regulation (EC) No 1/2003. In this context, it is important that courts and competition authorities of the Member States are aware of the initiation of proceedings by the Commission. The Commission should therefore be able to make public its decisions to initiate proceedings.

(3) Before taking oral statements from natural or legal persons who consent to be interviewed, the Commission should inform those persons of the legal basis of the interview and its voluntary nature. The persons interviewed should also be informed of the purpose of the interview and of any record which may be made. In order to enhance the accuracy of the statements, the persons interviewed should also be given an opportunity to correct the statements recorded. Where information gathered from oral statements is exchanged pursuant to Article 12 of Regulation (EC) No 1/2003, that information should only be used in evidence to impose sanctions on natural persons where the conditions set out in that Article are fulfilled.

(4) Pursuant to Article 23(1)(d) of Regulation (EC) No 1/2003 fines may be imposed on undertakings and associations of undertakings where they fail to rectify within the time limit fixed by the Commission an incorrect, incomplete or misleading answer given by a member of their staff to questions in the course of inspections. It is therefore necessary to provide the undertaking concerned with a record of any explanations given and to establish a procedure enabling it to add any rectification, amendment or supplement to the explanations given by the member of staff who is not or was not authorised to provide explanations on behalf of the undertaking. The explanations given by a member of staff should remain in the Commission file as recorded during the inspection.

(5) Complaints are an essential source of information for detecting infringements of competition rules. It is important to define clear and efficient procedures for handling complaints lodged with the Commission.

(6) In order to be admissible for the purposes of Article 7 of Regulation (EC) No 1/2003, a complaint must contain certain specified information.

(7) In order to assist complainants in submitting the necessary facts to the Commission, a form should be drawn up. The submission of the information listed in that form should be a condition for a complaint to be treated as a complaint as referred to in Article 7 of Regulation (EC) No 1/2003.

(8) Natural or legal persons having chosen to lodge a complaint should be given the possibility to be associated closely with the proceedings initiated by the Commission with a view to finding an infringement. However, they should not have access to business secrets or other confidential information belonging to other parties involved in the proceedings.

(9) Complainants should be granted the opportunity of expressing their views if the Commission considers that there are insufficient grounds for acting on the complaint. Where the Commission rejects a complaint on the grounds that a competition authority of a Member State is dealing with it or has already done so, it should inform the complainant of the identity of that authority.

(¹) OJ L 1, 4.1.2003, p. 1. Regulation as amended by Regulation (EC) No 411/2004 (OJ L 68, 6.3.2004, p. 1).

27.4.2004   EN   Official Journal of the European Union   L 123/19

(10) In order to respect the rights of defence of undertakings, the Commission should give the parties concerned the right to be heard before it takes a decision.

(11) Provision should also be made for the hearing of persons who have not submitted a complaint as referred to in Article 7 of Regulation (EC) No 1/2003 and who are not parties to whom a statement of objections has been addressed but who can nevertheless show a sufficient interest. Consumer associations that apply to be heard should generally be regarded as having a sufficient interest, where the proceedings concern products or services used by the end-consumer or products or services that constitute a direct input into such products or services. Where it considers it to be useful for the proceedings, the Commission should also be able to invite other persons to express their views in writing and to attend the oral hearing of the parties to whom a statement of objections has been addressed. Where appropriate, it should also be able to invite such persons to express their views at that oral hearing.

(12) To improve the effectiveness of oral hearings, the Hearing Officer should have the power to allow the parties concerned, complainants, other persons invited to the hearing, the Commission services and the authorities of the Member States to ask questions during the hearing.

(13) When granting access to the file, the Commission should ensure the protection of business secrets and other confidential information. The category of 'other confidential information' includes information other than business secrets, which may be considered as confidential, insofar as its disclosure would significantly harm an undertaking or person. The Commission should be able to request undertakings or associations of undertakings that submit or have submitted documents or statements to identify confidential information.

(14) Where business secrets or other confidential information are necessary to prove an infringement, the Commission should assess for each individual document whether the need to disclose is greater than the harm which might result from disclosure.

(15) In the interest of legal certainty, a minimum time-limit for the various submissions provided for in this Regulation should be laid down.

(16) This Regulation replaces Commission Regulation (EC) No 2842/98 of 22 December 1998 on the hearing of parties in certain proceedings under Articles 85 and 86 of the EC Treaty (¹), which should therefore be repealed.

(¹) OJ L 354, 30.12.1998, p. 18.

(17) This Regulation aligns the procedural rules in the transport sector with the general rules of procedure in all sectors. Commission Regulation (EC) No 2843/98 of 22 December 1998 on the form, content and other details of applications and notifications provided for in Council Regulations (EEC) No 1017/68, (EEC) No 4056/86 and (EEC) No 3975/87 applying the rules on competition to the transport sector (¹) should therefore be repealed.

(18) Regulation (EC) No 1/2003 abolishes the notification and authorisation system. Commission Regulation (EC) No 3385/94 of 21 December 1994 on the form, content and other details of applications and notifications provided for in Council Regulation No 17 (²) should therefore be repealed,

HAS ADOPTED THIS REGULATION:

CHAPTER I

SCOPE

Article 1

Subject-matter and scope

This regulation applies to proceedings conducted by the Commission for the application of Articles 81 and 82 of the Treaty.

CHAPTER II

INITIATION OF PROCEEDINGS

Article 2

Initiation of proceedings

1. The Commission may decide to initiate proceedings with a view to adopting a decision pursuant to Chapter III of Regulation (EC) No 1/2003 at any point in time, but no later than the date on which it issues a preliminary assessment as referred to in Article 9(1) of that Regulation or a statement of objections or the date on which a notice pursuant to Article 27(4) of that Regulation is published, whichever is the earlier.

2. The Commission may make public the initiation of proceedings, in any appropriate way. Before doing so, it shall inform the parties concerned.

(¹) OJ L 354, 30.12.1998, p. 22.
(²) OJ L 377, 31.12.1994, p. 28.

3.    The Commission may exercise its powers of investigation pursuant to Chapter V of Regulation (EC) No 1/2003 before initiating proceedings.

4.    The Commission may reject a complaint pursuant to Article 7 of Regulation (EC) No 1/2003 without initiating proceedings.

### CHAPTER III

### INVESTIGATIONS BY THE COMMISSION

#### Article 3

#### Power to take statements

1.    Where the Commission interviews a person with his consent in accordance with Article 19 of Regulation (EC) No 1/2003, it shall, at the beginning of the interview, state the legal basis and the purpose of the interview, and recall its voluntary nature. It shall also inform the person interviewed of its intention to make a record of the interview.

2.    The interview may be conducted by any means including by telephone or electronic means.

3.    The Commission may record the statements made by the persons interviewed in any form. A copy of any recording shall be made available to the person interviewed for approval. Where necessary, the Commission shall set a time-limit within which the person interviewed may communicate to it any correction to be made to the statement.

#### Article 4

#### Oral questions during inspections

1.    When, pursuant to Article 20(2)(e) of Regulation (EC) No 1/2003, officials or other accompanying persons authorised by the Commission ask representatives or members of staff of an undertaking or of an association of undertakings for explanations, the explanations given may be recorded in any form.

2.    A copy of any recording made pursuant to paragraph 1 shall be made available to the undertaking or association of undertakings concerned after the inspection.

3.    In cases where a member of staff of an undertaking or of an association of undertakings who is not or was not authorised by the undertaking or by the association of undertakings to provide explanations on behalf of the undertaking or association of undertakings has been asked for explanations, the Commission shall set a time-limit within which the undertaking or the association of undertakings may communicate to the Commission any rectification, amendment or supplement to the explanations given by such member of staff. The rectification, amendment or supplement shall be added to the explanations as recorded pursuant to paragraph 1.

### CHAPTER IV

### HANDLING OF COMPLAINTS

#### Article 5

#### Admissibility of complaints

1.    Natural and legal persons shall show a legitimate interest in order to be entitled to lodge a complaint for the purposes of Article 7 of Regulation (EC) No 1/2003.

Such complaints shall contain the information required by Form C, as set out in the Annex. The Commission may dispense with this obligation as regards part of the information, including documents, required by Form C.

2.    Three paper copies as well as, if possible, an electronic copy of the complaint shall be submitted to the Commission. The complainant shall also submit a non-confidential version of the complaint, if confidentiality is claimed for any part of the complaint.

3.    Complaints shall be submitted in one of the official languages of the Community.

#### Article 6

#### Participation of complainants in proceedings

1.    Where the Commission issues a statement of objections relating to a matter in respect of which it has received a complaint, it shall provide the complainant with a copy of the non-confidential version of the statement of objections and set a time-limit within which the complainant may make known its views in writing.

2.    The Commission may, where appropriate, afford complainants the opportunity of expressing their views at the oral hearing of the parties to which a statement of objections has been issued, if complainants so request in their written comments.

#### Article 7

#### Rejection of complaints

1.    Where the Commission considers that on the basis of the information in its possession there are insufficient grounds for acting on a complaint, it shall inform the complainant of its reasons and set a time-limit within which the complainant may make known its views in writing. The Commission shall not be obliged to take into account any further written submission received after the expiry of that time-limit.

2.    If the complainant makes known its views within the time-limit set by the Commission and the written submissions made by the complainant do not lead to a different assessment of the complaint, the Commission shall reject the complaint by decision.

3.    If the complainant fails to make known its views within the time-limit set by the Commission, the complaint shall be deemed to have been withdrawn.

### Article 8

#### Access to information

1.    Where the Commission has informed the complainant of its intention to reject a complaint pursuant to Article 7(1) the complainant may request access to the documents on which the Commission bases its provisional assessment. For this purpose, the complainant may however not have access to business secrets and other confidential information belonging to other parties involved in the proceedings.

2.    The documents to which the complainant has had access in the context of proceedings conducted by the Commission under Articles 81 and 82 of the Treaty may only be used by the complainant for the purposes of judicial or administrative proceedings for the application of those Treaty provisions.

### Article 9

#### Rejections of complaints pursuant to Article 13 of Regulation (EC) No 1/2003

Where the Commission rejects a complaint pursuant to Article 13 of Regulation (EC) No 1/2003, it shall inform the complainant without delay of the national competition authority which is dealing or has already dealt with the case.

### CHAPTER V

#### EXERCISE OF THE RIGHT TO BE HEARD

### Article 10

#### Statement of objections and reply

1.    The Commission shall inform the parties concerned in writing of the objections raised against them. The statement of objections shall be notified to each of them.

2.    The Commission shall, when notifying the statement of objections to the parties concerned, set a time-limit within which these parties may inform it in writing of their views. The Commission shall not be obliged to take into account written submissions received after the expiry of that time-limit.

3.    The parties may, in their written submissions, set out all facts known to them which are relevant to their defence against the objections raised by the Commission. They shall attach any relevant documents as proof of the facts set out. They shall provide a paper original as well as an electronic copy or, where they do not provide an electronic copy, 28 paper copies of their submission and of the documents attached to it. They may propose that the Commission hear persons who may corroborate the facts set out in their submission.

### Article 11

#### Right to be heard

1.    The Commission shall give the parties to whom it has addressed a statement of objections the opportunity to be heard before consulting the Advisory Committee referred to in Article 14(1) of Regulation (EC) No 1/2003.

2.    The Commission shall, in its decisions, deal only with objections in respect of which the parties referred to in paragraph 1 have been able to comment.

### Article 12

#### Right to an oral hearing

The Commission shall give the parties to whom it has addressed a statement of objections the opportunity to develop their arguments at an oral hearing, if they so request in their written submissions.

### Article 13

#### Hearing of other persons

1.    If natural or legal persons other than those referred to in Articles 5 and 11 apply to be heard and show a sufficient interest, the Commission shall inform them in writing of the nature and subject matter of the procedure and shall set a time-limit within which they may make known their views in writing.

2.    The Commission may, where appropriate, invite persons referred to in paragraph 1 to develop their arguments at the oral hearing of the parties to whom a statement of objections has been addressed, if the persons referred to in paragraph 1 so request in their written comments.

3.    The Commission may invite any other person to express its views in writing and to attend the oral hearing of the parties to whom a statement of objections has been addressed. The Commission may also invite such persons to express their views at that oral hearing.

### Article 14

#### Conduct of oral hearings

1.    Hearings shall be conducted by a Hearing Officer in full independence.

2.    The Commission shall invite the persons to be heard to attend the oral hearing on such date as it shall determine.

3.    The Commission shall invite the competition authorities of the Member States to take part in the oral hearing. It may likewise invite officials and civil servants of other authorities of the Member States.

4.    Persons invited to attend shall either appear in person or be represented by legal representatives or by representatives authorised by their constitution as appropriate. Undertakings and associations of undertakings may also be represented by a duly authorised agent appointed from among their permanent staff.

5.    Persons heard by the Commission may be assisted by their lawyers or other qualified persons admitted by the Hearing Officer.

6.    Oral hearings shall not be public. Each person may be heard separately or in the presence of other persons invited to attend, having regard to the legitimate interest of the undertakings in the protection of their business secrets and other confidential information.

7.    The Hearing Officer may allow the parties to whom a statement of objections has been addressed, the complainants, other persons invited to the hearing, the Commission services and the authorities of the Member States to ask questions during the hearing.

8.    The statements made by each person heard shall be recorded. Upon request, the recording of the hearing shall be made available to the persons who attended the hearing. Regard shall be had to the legitimate interest of the parties in the protection of their business secrets and other confidential information.

## CHAPTER VI

## ACCESS TO THE FILE AND TREATMENT OF CONFIDENTIAL INFORMATION

## Article 15

### Access to the file and use of documents

1.    If so requested, the Commission shall grant access to the file to the parties to whom it has addressed a statement of objections. Access shall be granted after the notification of the statement of objections.

2.    The right of access to the file shall not extend to business secrets, other confidential information and internal documents of the Commission or of the competition authorities of the Member States. The right of access to the file shall also not extend to correspondence between the Commission and the competition authorities of the Member States or between the latter where such correspondence is contained in the file of the Commission.

3.    Nothing in this Regulation prevents the Commission from disclosing and using information necessary to prove an infringement of Articles 81 or 82 of the Treaty.

4.    Documents obtained through access to the file pursuant to this Article shall only be used for the purposes of judicial or administrative proceedings for the application of Articles 81 and 82 of the Treaty.

## Article 16

### Identification and protection of confidential information

1.    Information, including documents, shall not be communicated or made accessible by the Commission in so far as it contains business secrets or other confidential information of any person.

2.    Any person which makes known its views pursuant to Article 6(1), Article 7(1), Article 10(2) and Article 13(1) and (3) or subsequently submits further information to the Commission in the course of the same procedure, shall clearly identify any material which it considers to be confidential, giving reasons, and provide a separate non-confidential version by the date set by the Commission for making its views known.

3.    Without prejudice to paragraph 2 of this Article, the Commission may require undertakings and associations of undertakings which produce documents or statements pursuant to Regulation (EC) No 1/2003 to identify the documents or parts of documents which they consider to contain business secrets or other confidential information belonging to them and to identify the undertakings with regard to which such documents are to be considered confidential. The Commission may likewise require undertakings or associations of undertakings to identify any part of a statement of objections, a case summary drawn up pursuant to Article 27(4) of Regulation (EC) No 1/2003 or a decision adopted by the Commission which in their view contains business secrets.

The Commission may set a time-limit within which the undertakings and associations of undertakings are to:

(a)    substantiate their claim for confidentiality with regard to each individual document or part of document, statement or part of statement;

(b)    provide the Commission with a non-confidential version of the documents or statements, in which the confidential passages are deleted;

(c)    provide a concise description of each piece of deleted information.

4.    If undertakings or associations of undertakings fail to comply with paragraphs 2 and 3, the Commission may assume that the documents or statements concerned do not contain confidential information.

## CHAPTER VII

## GENERAL AND FINAL PROVISIONS

## Article 17

### Time-limits

1.    In setting the time-limits provided for in Article 3(3), Article 4(3), Article 6(1), Article 7(1), Article 10(2) and Article 16(3), the Commission shall have regard both to the time required for preparation of the submission and to the urgency of the case.

2.    The time-limits referred to in Article 6(1), Article 7(1) and Article 10(2) shall be at least four weeks. However, for proceedings initiated with a view to adopting interim measures pursuant to Article 8 of Regulation (EC) No 1/2003, the time-limit may be shortened to one week.

3.    The time-limits referred to in Article 3(3), Article 4(3) and Article 16(3) shall be at least two weeks.

4.    Where appropriate and upon reasoned request made before the expiry of the original time-limit, time-limits may be extended.

### Article 18

### Repeals

Regulations (EC) No 2842/98, (EC) No 2843/98 and (EC) No 3385/94 are repealed.

References to the repealed regulations shall be construed as references to this regulation.

### Article 19

### Transitional provisions

Procedural steps taken under Regulations (EC) No 2842/98 and (EC) No 2843/98 shall continue to have effect for the purpose of applying this Regulation.

### Article 20

### Entry into force

This Regulation shall enter into force on 1 May 2004.

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Brussels, 7 April 2004.

*For the Commission*
Mario MONTI
*Member of the Commission*

———

L 123/24    EN    Official Journal of the European Union    27.4.2004

ANNEX

---

**FORM C**

**COMPLAINT PURSUANT TO ARTICLE 7 OF REGULATION (EC) No 1/2003**

**I. Information regarding the complainant and the undertaking(s) or association of undertakings giving rise to the complaint**

1. Give full details on the identity of the legal or natural person submitting the complaint. Where the complainant is an undertaking, identify the corporate group to which it belongs and provide a concise overview of the nature and scope of its business activities. Provide a contact person (with telephone number, postal and e-mail-address) from which supplementary explanations can be obtained.

2. Identify the undertaking(s) or association of undertakings whose conduct the complaint relates to, including, where applicable, all available information on the corporate group to which the undertaking(s) complained of belong and the nature and scope of the business activities pursued by them. Indicate the position of the complainant vis-à-vis the undertaking(s) or association of undertakings complained of (e.g. customer, competitor).

**II. Details of the alleged infringement and evidence**

3. Set out in detail the facts from which, in your opinion, it appears that there exists an infringement of Article 81 or 82 of the Treaty and/or Article 53 or 54 of the EEA agreement. Indicate in particular the nature of the products (goods or services) affected by the alleged infringements and explain, where necessary, the commercial relationships concerning these products. Provide all available details on the agreements or practices of the undertakings or associations of undertakings to which this complaint relates. Indicate, to the extent possible, the relative market positions of the undertakings concerned by the complaint.

4. Submit all documentation in your possession relating to or directly connected with the facts set out in the complaint (for example, texts of agreements, minutes of negotiations or meetings, terms of transactions, business documents, circulars, correspondence, notes of telephone conversations…). State the names and address of the persons able to testify to the facts set out in the complaint, and in particular of persons affected by the alleged infringement. Submit statistics or other data in your possession which relate to the facts set out, in particular where they show developments in the marketplace (for example information relating to prices and price trends, barriers to entry to the market for new suppliers etc.).

5. Set out your view about the geographical scope of the alleged infringement and explain, where that is not obvious, to what extent trade between Member States or between the Community and one or more EFTA States that are contracting parties of the EEA Agreement may be affected by the conduct complained of.

**III. Finding sought from the Commission and legitimate interest**

6. Explain what finding or action you are seeking as a result of proceedings brought by the Commission.

7. Set out the grounds on which you claim a legitimate interest as complainant pursuant to Article 7 of Regulation (EC) No 1/2003. State in particular how the conduct complained of affects you and explain how, in your view, intervention by the Commission would be liable to remedy the alleged grievance.

**IV. Proceedings before national competition authorities or national courts**

8. Provide full information about whether you have approached, concerning the same or closely related subject-matters, any other competition authority and/or whether a lawsuit has been brought before a national court. If so, provide full details about the administrative or judicial authority contacted and your submissions to such authority.

Declaration that the information given in this form and in the Annexes thereto is given entirely in good faith.

Date and signature.

# EXHIBIT 16

celex-txt - 61999J0453 -                                                      Page 1 of 7

**Avis juridique important**

BG ES CS DA DE ET EL EN FR GA IT LV LT HU MT NL PL PT RO SK SL FI SV

Site map | LexAlert | FAQ | Help | Contact | Links

## 61999J0453

**Judgment of the Court of 20 September 2001.**

**Courage Ltd v Bernard Crehan and Bernard Crehan v Courage Ltd and Others.**

**Reference for a preliminary ruling: Court of Appeal (England and Wales) (Civil Division) - United Kingdom.**

**Article 85 of the EC Treaty (now Article 81 EC) - Beer tie - Leasing of public houses - Restrictive agreement - Right to damages of a party to the contract.**

**Case C-453/99.**

*European Court reports 2001 Page I-06297*

| BG | ES | CS | DA | DE | ET | EL | EN | FR | GA | IT | LV | LT | HU | MT | NL | PL | PT | RO | SI |
|----|------|----|------|------|----|------|------|------|----|------|----|----|----|----|------|----|------|----|----|
|    | html |    | html | html |    | html | html | html |    | html |    |    |    |    | html |    | html |    |    |

---

**Summary**
**Parties**
**Grounds**
**Decision on costs**
**Operative part**

**Keywords**

1. Competition - Agreements - Contract liable to restrict or distort competition - Right of a party to the contract to rely on the breach of Article 85 of the Treaty (now Article 81 EC) to obtain relief

(EC Treaty, Art. 85 (now Art. 81 EC))

2. Competition - Agreements - Contract liable to restrict or distort competition - Right of a party to the contract to claim damages for loss caused by performance of that contract - Limits

(EC Treaty, Art. 85 (now Art. 81 EC))

**Summary**

*1. A party to a contract liable to restrict or distort competition within the meaning of Article 85 of the Treaty (now Article 81 EC) can rely on the breach of that provision to obtain relief from the other contracting party.*

*( see para. 36 and operative part 1 )*

*2. The full effectiveness of Article 85 of the Treaty (now Article 81 EC) and, in particular, the practical effect of the prohibition laid down in Article 85(1) would be put at risk if it were not open to any individual to claim damages for loss caused to him by a contract or by conduct liable to restrict or distort competition. Indeed, the existence of such a right strengthens the working of the Community competition rules and discourages agreements or practices, which are frequently covert, which are liable to restrict or distort competition.*

*Article 85 of the Treaty therefore precludes a rule of national law under which a party to a contract liable to restrict or distort competition within the meaning of that provision is barred from claiming damages for loss caused by performance of that contract on the sole ground that the claimant is a party to that contract.*

*However, in the absence of Community rules governing the matter, it is for the domestic legal system of each Member State to designate the courts and tribunals having jurisdiction and to lay down the detailed procedural rules governing actions for safeguarding rights which individuals derive directly from Community law, provided that such rules are not less favourable than those governing similar domestic actions (principle of equivalence) and that they do not render practically impossible or excessively difficult the exercise of rights conferred by Community law (principle of effectiveness).*

*Under those conditions, Community law does not preclude national law from denying a party who is found to bear significant responsibility for the distortion of competition the right to obtain damages from the other contracting party. Under a principle which is recognised in most of the legal systems of the Member States and which the Court has applied in the past, a litigant should not profit from his own unlawful conduct, where this is proven.*

*In particular, it is for the national court to ascertain whether the party who claims to have suffered loss through concluding a contract that is liable to restrict or distort competition found himself in a markedly weaker position than the other party, such as seriously to compromise or even eliminate his freedom to negotiate the terms of the contract and his capacity to avoid the loss or reduce its extent, in particular by availing himself in good time of all the legal remedies available to him.*

*( see paras 26-27, 29, 31, 33, 36 and operative part 2-3 )*

**Parties**

In Case C-453/99,

REFERENCE to the Court under Article 234 EC by the Court of Appeal (England amd Wales) (Civil Division) for a preliminary ruling in the proceedings pending before that court between

Courage Ltd

and

Bernard Crehan

and between

Bernard Crehan

and

Courage Ltd and Others,

on the interpretation of Article 85 of the EC Treaty (now Article 81 EC) and other provisions of Community law,

THE COURT,

composed of: G.C. Rodríguez Iglesias, President, C. Gulmann, M. Wathelet (Rapporteur) and V. Skouris (Presidents of Chambers), D.A.O. Edward, P. Jann, L. Sevón, F. Macken and N. Colneric, J.N. Cunha Rodrigues and C.W.A. Timmermans, Judges,

Advocate General: J. Mischo,

Registrar: L. Hewlett, Administrator,

after considering the written observations submitted on behalf of:

- Courage Ltd, by N. Green QC, instructed by A. Molyneux, Solicitor,

- Bernard Crehan, by D. Vaughan QC and M. Brealey, Barrister, instructed by R. Croft, solicitor,

- the United Kingdom Government, by J.E. Collins, acting as Agent, and K. Parker QC,

- the French Government, by K. Rispal-Bellanger et R. Loosli-Surrans, acting as Agents,

- the Italian Government, by U. Leanza, acting as Agent,

- the Swedish Government, by L. Nordling and I. Simfors, acting as Agents,

- the Commission of the European Communities, by K. Wiedner, acting as Agent, and N. Khan, Barrister,

having regard to the Report for the Hearing,

after hearing the oral observations of Courage Ltd, represented by N. Green and M. Gray, Barrister, of Bernard Crehan, represented by D. Vaughan and M. Brealey, of the United Kingdom Government, represented by J.E. Collins and K. Parker, and of the Commission, represented by K. Wiedner and N. Khan, at the hearing on 6 February 2001,

after hearing the Opinion of the Advocate General at the sitting on 22 March 2001,

gives the following

Judgment

## Grounds

1 By order of 16 July 1999, received at the Court on 30 November 1999, the Court of Appeal (England and Wales) (Civil Division) referred to the Court for a preliminary ruling under Article 234 EC four questions on the interpretation of Article 85 of the EC Treaty (now Article 81 EC) and other provisions of Community law.

2 The four questions have been raised in proceedings between Courage Ltd (hereinafter Courage) and Bernard Crehan, a publican, concerning unpaid supplies of beer.

Facts of the case and the questions referred for a preliminary ruling

3 In 1990, Courage, a brewery holding a 19% share of the United Kingdom market in sales of beer, and Grand Metropolitan plc (hereinafter Grand Met), a company with a range of catering and hotel interests, agreed to merge their leased public houses (hereinafter pubs). To this end, their respective pubs were transferred to Inntrepreneur Estates Ltd (hereinafter IEL), a company owned in equal shares by Courage and Grand Met. An agreement concluded between IEL and Courage provided that all IEL tenants had to buy their beer exclusively from Courage. Courage was to supply the quantities of beer ordered at the prices specified in the price lists applicable to the pubs leased by IEL.

4 IEL issued a standard form lease agreement to its tenants. While the level of rent could be the subject of negotiation with a prospective tenant, the exclusive purchase obligation (beer tie) and the other clauses of the contract were not negotiable.

5 In 1991, Mr Crehan concluded two 20-year leases with IEL imposing an obligation to purchase from Courage. The rent, subject to a five-year upward-only rent review, was to be the higher of the rent for the immediately preceding period or the best open market rent obtainable for the residue of the term on the other terms of the lease. The tenant had to purchase a fixed minimum quantity of specified beers and IEL agreed to procure the supply of specified beer to the tenant by Courage at the prices shown in the latter's price list.

6 In 1993, Courage, the plaintiff in the main proceedings, brought an action for the recovery from Mr Crehan of the sum of GBP 15 266 for unpaid deliveries of beer. Mr Crehan contested the action on its merits, contending that the beer tie was contrary to Article 85 of the Treaty. He also counter-claimed for damages.

7 Mr Crehan contended that Courage sold its beers to independent tenants of pubs at substantially lower prices than those in the price list imposed on IEL tenants subject to a beer tie. He contended that this price difference reduced the profitability of tied tenants, driving them out of business.

8 The standard form lease agreement used by Courage, Grand Met and their subsidiaries was notified to the Commission in 1992. In 1993, the Commission published a notice under Article 19(3) of Council Regulation No 17: First Regulation implementing Articles 85 and 86 of the Treaty (OJ, English Special Edition, 1959-1962, p. 87), stating its intention to grant an exemption under Article 85(3) of the Treaty.

9 That notification was withdrawn in October 1997 following the introduction by IEL of a new standard form lease agreement, which was also notified to the Commission. The new lease is, however, not at issue in the main proceedings, as the actions brought concern the operation of the beer tie under the old lease.

10 The considerations which led the Court of Appeal to refer questions to the Court of Justice for a preliminary

ruling were as follows.

11 According to the referring court, English law does not allow a party to an illegal agreement to claim damages from the other party. So, even if Mr Crehan's defence, that the lease into which he entered infringes Article 85 of the Treaty, were upheld, English law would bar his claim for damages.

12 Moreover, in a judgment which predated the present order for reference, the Court of Appeal had held, without considering it necessary to seek a ruling from the Court of Justice on the point, that Article 85(1) of the EC Treaty was intended to protect third parties, whether competitors or consumers, and not parties to the prohibited agreement. It was held that they were the cause, not the victims, of the restriction of competition.

13 The Court of Appeal points out that the Supreme Court of the United States of America held, in its decision in Perma Life Mufflers Inc. v International Parts Corp. 392 U.S. 134 (1968), that where a party to an anticompetitive agreement is in an economically weaker position he may sue the other contracting party for damages.

14 The Court of Appeal therefore raises the question of the compatibility with Community law of the bar in English law to Mr Crehan's claims set out at paragraph 6 above.

15 If Community law confers on a party to a contract liable to restrict or distort competition legal protection comparable to that offered by the law of the United States of America, the Court of Appeal points out that there might be tension between the principle of procedural autonomy and that of the uniform application of Community law.

16 In those circumstances, it decided to stay proceedings and refer the following questions to the Court of Justice for a preliminary ruling:

1. Is Article 81 EC (ex Article 85) to be interpreted as meaning that a party to a prohibited tied house agreement may rely upon that article to seek relief from the courts from the other contracting party?

2. If the answer to Question 1 is yes, is the party claiming relief entitled to recover damages alleged to arise as a result of his adherence to the clause in the agreement which is prohibited under Article 81?

3. Should a rule of national law which provides that courts should not allow a person to plead and/or rely on his own illegal actions as a necessary step to recovery of damages be allowed as consistent with Community law;

4. If the answer to Question 3 is that, in some circumstances, such a rule may be inconsistent with Community law, what circumstances should the national court take into consideration?

The questions

17 By its first, second and third questions, which should be considered together, the referring court is asking essentially whether a party to a contract liable to restrict or distort competition within the meaning of Article 85 of the Treaty can rely on the breach of that provision before a national court to obtain relief from the other contracting party. In particular, it asks whether that party can obtain compensation for loss which he alleges to result from his being subject to a contractual clause contrary to Article 85 and whether, therefore, Community law precludes a rule of national law which denies a person the right to rely on his own illegal actions to obtain damages.

18 If Community law precludes a national rule of that sort, the national court wishes to know, by its fourth question, what factors must be taken into consideration in assessing the merits of such a claim for damages.

19 It should be borne in mind, first of all, that the Treaty has created its own legal order, which is integrated into the legal systems of the Member States and which their courts are bound to apply. The subjects of that legal order are not only the Member States but also their nationals. Just as it imposes burdens on individuals, Community law is also intended to give rise to rights which become part of their legal assets. Those rights arise not only where they are expressly granted by the Treaty but also by virtue of obligations which the Treaty imposes in a clearly defined manner both on individuals and on the Member States and the Community institutions (see the judgments in Case 26/62 Van Gend en Loos [1963] ECR 1, Case 6/64 Costa [1964] ECR 585 and Joined Cases C-6/90 and C-9/90 Francovich and Others [1991] ECR I-5357, paragraph 31).

20 Secondly, according to Article 3(g) of the EC Treaty (now, after amendment, Article 3(1)(g) EC), Article 85 of the Treaty constitutes a fundamental provision which is essential for the accomplishment of the tasks entrusted to the Community and, in particular, for the functioning of the internal market (judgment in Case C-126/97 Eco

Swiss [1999] ECR I-3055, paragraph 36).

21 Indeed, the importance of such a provision led the framers of the Treaty to provide expressly, in Article 85(2) of the Treaty, that any agreements or decisions prohibited pursuant to that article are to be automatically void (judgment in Eco Swiss, cited above, paragraph 36).

22 That principle of automatic nullity can be relied on by anyone, and the courts are bound by it once the conditions for the application of Article 85(1) are met and so long as the agreement concerned does not justify the grant of an exemption under Article 85(3) of the Treaty (on the latter point, see inter alia Case 10/69 Portelange [1969] ECR 309, paragraph 10). Since the nullity referred to in Article 85(2) is absolute, an agreement which is null and void by virtue of this provision has no effect as between the contracting parties and cannot be set up against third parties (see the judgment in Case 22/71 Béguelin [1971] ECR 949, paragraph 29). Moreover, it is capable of having a bearing on all the effects, either past or future, of the agreement or decision concerned (see the judgment in Case 48/72 Brasserie de Haecht II [1973] ECR 77, paragraph 26).

23 Thirdly, it should be borne in mind that the Court has held that Article 85(1) of the Treaty and Article 86 of the EC Treaty (now Article 82 EC) produce direct effects in relations between individuals and create rights for the individuals concerned which the national courts must safeguard (judgments in Case 127/73 BRT and SABAM [1974] ECR 51, paragraph 16, (BRT I) and Case C-282/95 P Guérin Automobiles v Commission [1997] ECR I-1503, paragraph 39).

24 It follows from the foregoing considerations that any individual can rely on a breach of Article 85(1) of the Treaty before a national court even where he is a party to a contract that is liable to restrict or distort competition within the meaning of that provision.

25 As regards the possibility of seeking compensation for loss caused by a contract or by conduct liable to restrict or distort competition, it should be remembered from the outset that, in accordance with settled case-law, the national courts whose task it is to apply the provisions of Community law in areas within their jurisdiction must ensure that those rules take full effect and must protect the rights which they confer on individuals (see inter alia the judgments in Case 106/77 Simmenthal [1978] ECR 629, paragraph 16, and in Case C-213/89 Factortame [1990] ECR I-2433, paragraph 19).

26 The full effectiveness of Article 85 of the Treaty and, in particular, the practical effect of the prohibition laid down in Article 85(1) would be put at risk if it were not open to any individual to claim damages for loss caused to him by a contract or by conduct liable to restrict or distort competition.

27 Indeed, the existence of such a right strengthens the working of the Community competition rules and discourages agreements or practices, which are frequently covert, which are liable to restrict or distort competition. From that point of view, actions for damages before the national courts can make a significant contribution to the maintenance of effective competition in the Community.

28 There should not therefore be any absolute bar to such an action being brought by a party to a contract which would be held to violate the competition rules.

29 However, in the absence of Community rules governing the matter, it is for the domestic legal system of each Member State to designate the courts and tribunals having jurisdiction and to lay down the detailed procedural rules governing actions for safeguarding rights which individuals derive directly from Community law, provided that such rules are not less favourable than those governing similar domestic actions (principle of equivalence) and that they do not render practically impossible or excessively difficult the exercise of rights conferred by Community law (principle of effectiveness) (see Case C-261/95 Palmisani [1997] ECR I-4025, paragraph 27).

30 In that regard, the Court has held that Community law does not prevent national courts from taking steps to ensure that the protection of the rights guaranteed by Community law does not entail the unjust enrichment of those who enjoy them (see, in particular, Case 238/78 Ireks-Arkady v Council and Commission [1979] ECR 2955, paragraph 14, Case 68/79 Just [1980] ECR 501, paragraph 26, and Joined Cases C-441/98 and C-442/98 Michaïlidis [2000] ECR I-7145, paragraph 31).

31 Similarly, provided that the principles of equivalence and effectiveness are respected (see Palmisani, cited above, paragraph 27), Community law does not preclude national law from denying a party who is found to bear significant responsibility for the distortion of competition the right to obtain damages from the other contracting party. Under a principle which is recognised in most of the legal systems of the Member States and which the Court has applied in the past (see Case 39/72 Commission v Italy [1973] ECR 101, paragraph 10), a litigant

should not profit from his own unlawful conduct, where this is proven.

32 In that regard, the matters to be taken into account by the competent national court include the economic and legal context in which the parties find themselves an d, as the United Kingdom Government rightly points out, the respective bargaining power and conduct of the two parties to the contract.

33 In particular, it is for the national court to ascertain whether the party who claims to have suffered loss through concluding a contract that is liable to restrict or distort com petition found himself in a markedly weaker position than the other party, such as seriously to compromise or even eliminate his freedom to negotiate the terms of the contract and his capacity to avoid the loss or reduce its extent, in particular by availing himself in good time of all the legal remedies available to him.

34 Referring to the judgments in Case 23/67 Brasserie de Haecht [1967] ECR 127 and Case C-234/89 Delimitis [1991] ECR I-935, paragraphs 14 to 26, the Commission and the United Kingdom Government also rightly point out that a contract might prove to be contrary to Article 85( 1) of the Treaty for the sole reason that it is part of a network of similar contracts which have a cumulative effect on competition. In such a case, the party contracting with the person controlling the network cannot bear significant responsibility for the breach of Article 85, particularly where in practice the terms of the contract were imposed on him by the party controlling the network.

35 Contrary to the submission of Courage, making a distinction as to the extent of the parties' liability does not conflict with the case-law of the Court to the effect that it does not matter, for the purposes of the application of Article 85 of the Treaty, whether the parties to an agreement are on an equal footing as regards their economic position and function (see inter alia Joined Cases 56/64 and 58/64 Consten and Grundig v Commission [1966] ECR 382). That case-law concerns the conditions for application of Article 85 of the Treaty while the questions put before the Court in the present case concern certain consequences in civil law of a breach of that provision.

36 Having regard to all the foregoing considerations, the questions referred are to be answered as follows:

- a party to a contract liable to restrict or distort competition within the meaning of Article 85 of the Treaty can rely on the breach of that article to obtain relief from the other contracting party;

- Article 85 of the Treaty precludes a rule of national law under which a party to a contract liable to restrict or distort competition within the meaning of that provision is barred from claiming damages for loss caused by performance of that contract on the sole ground that the claimant is a party to that contract;

- Community law does not preclude a rule of national law barring a party to a contract liable to restrict or distort competition from relying on his own unlawful actions to obtain damages where it is established th at that party bears significant responsibility for the distortion of competition.

**Decision on costs**

Costs

37 The costs incurred by the United Kingdom, French, Italian and Swedish Governments and by the Commission, which have submitted observations to the Court, are not recoverable. Since these proceedings are, for the parties to the main proceedings, a step in the proceedings pending before the national court, the decision on costs is a matter for that court.

**Operative part**

On those grounds,

THE COURT,

In answer to the questions referred to it by the Court of Appeal (England and Wales) (Civil Division) by order of 16 July 1999, hereby rules:

1. A party to a contract liable to restrict or distort competition within the meaning of Article 85 of the EC Treaty (now Article 81 EC) can rely on the breach of that provisio n to obtain relief from the other contracting party.

2. Article 85 of the Treaty precludes a rule of national law under which a party to a contract liable to restrict or distort competition within the meaning of that provision is barred from claiming damages for loss caused by

performance of that contract on the sole ground that the claimant is a party to that contract.

3. Community law does not preclude a rule of national law barring a party to a contract liable to restrict or distort competition from relying on his own unlawful actions to obtain damages where it is established that that party bears significant responsibility for the distortion of competition.

## Haut

**Managed by the Publications Office**