IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>INTEL CORP. MICROPROCESSOR<br>ANTITRUST LITIGATION | )<br>)<br>)    MDL Docket No. 05-1717-JJF<br>)  |
| PHIL PAUL, *on behalf of himself*<br>*and all others similarly situated*,<br><br>    Plaintiffs,<br><br>v.<br><br>INTEL CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>)    Civil Action No. 05-485-JJF<br>)<br>)    CONSOLIDATED ACTION<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF JUDITH A. ZAHID**

PRICKETT JONES & ELLIOTT, P.A.
James L. Holzman (#663)
J. Clayton Athey (#4378)
Laina M. Herbert (#4717)
Melissa N. Donimirski (#4701)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com
mndonimirski@prickett.com
Interim Liaison Counsel and Attorneys for Phil Paul, on behalf of himself and all others similarly situated

OF COUNSEL:

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005

Michael P. Lehmann
Jon T. King
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
One Embarcadero Center
Suite 2440
San Francisco, CA 94111

Steve W. Berman
Anthony D. Shapiro
Erin K. Flory
Steve W. Fimmel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Guido Saveri
R. Alexander Saveri
Lisa Saveri
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111

Craig C. Corbitt
Judith A. Zahid
ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
44 Montgomery St., Suite 3400
San Francisco, CA 94104

I, Judith A. Zahid, declare as follows:

1. I am an associate of the law firm of Zelle, Hofmann, Voelbel, Mason & Gette, LLP, and my firm serves as attorneys of record for plaintiffs in this consolidated action. I submit this Declaration in support of Class Plaintiffs' opposition to Intel's motion to extend the class certification briefing schedule. The matters set forth herein are within my personal knowledge except as to those facts which I state upon information and belief, as to which I believe them to be true. If called upon and sworn as a witness I could competently testify regarding them.

2. On June 22, 2006, the parties served approximately 65 subpoenas on third-party original equipment manufacturers (OEMs), retailers, distributors, and value added resellers (VARs), which requested both documents and data relevant to their purchase and sale of x86 microprocessors, as well as personal computers containing x86 microprocessors. The parties promptly coordinated with each other, and particular attorneys from each party took responsibility for particular third-party negotiations. Early-on, I became directly involved in the data negotiations for the majority of the subpoenaed OEMs, and have remained fully-updated as to the details of the negotiations with the other subpoenaed OEMs, in addition to those with the retailers, distributors and VARs.

3. Beginning in early 2007 and continuing through the rest of that year, the parties received full data productions from eight large, nationwide retailers, distributors, and VARs. The parties, however, have yet to receive a full usable data set from any one of the OEMs (except for one small server-manufacturer). From each of these OEMs, the parties are seeking several categories of data, including: transactional sales data, purchase data, cost data, and rebate/financial-incentive data. For Acer, Dell, HP, Lenovo, MPC, and NEC U.S.A., the parties have yet to finalize an agreement as to any of the data categories.

4. When I and other attorneys for the parties began negotiating with Dell, its counsel expressed to us that one of Dell's principal concerns was how to limit the scope of the subpoenas to account for the huge volume of Dell's transactional sales data. Dell's direct-to-consumer sales model, which generates a large volume of small transactions, results in a large volume of

transactional data, more than other large OEMs (e.g., HP and Lenovo) which rely more on bulk sales to retailers and distributors. Throughout 2007, the parties talked about how they could propose a sampling method to Dell that would decrease the overall volume of the sales data that they would be requesting. After a year of working through the details of a proposal, in March of this year, Intel changed its position and announced that it would no longer agree to such a method. I expressed surprise when I spoke with Intel's counsel about this, because I thought it was a non-starter with Dell to seek a full data set that did not make use of some sort of sampling method. Intel spoke with Dell about its inability to accept anything but a daily data pull (365 days a year per relevant year), and suggested that it take a 30(b)(6) deposition of a Dell witness to better understand the sales data in an effort to limit the scope by some other means than sampling. For approximately two months, the parties have waited while Intel has made only vague references to this proposed 30(b)(6) deposition and, even when urged, has not yet served a subpoena. The parties have remained on hold as they wait for Intel to move the negotiation forward. An additional consideration regarding the timing of a full Dell production is that Dell has repeatedly warned the parties that it may need significant time to gather and produce the agreed-upon data.

5. In the negotiations with HP, Lenovo and Acer, the parties are still working with initial data samples to try to understand how these OEMs maintain their sales databases to assist in working out the scope of full productions. This process has proven to be time-consuming since it involves substantial coordination among the parties, their consultants, counsel for the third parties, and often the technical representatives who assisted in collecting the data samples.

6. In the negotiation with Lenovo, the parties have yet to receive any samples other than from its sales database. Having received no sample from Lenovo's cost, rebate and financial-incentives databases, the parties do not know at this time what problems might be revealed when they receive those samples. Without knowing what issues there might be, there is no way to predict at this time how long it will take to finalize the agreement with Lenovo as to those categories of data.

7.    In the negotiation with MPC, the parties are still discussing sending one of their consultants to MPC's headquarters in Idaho, as was suggested by the third party, to examine the databases and work out the scope of production.

8.    In the negotiation with NEC U.S.A., the parties have yet to receive data samples of any kind.

I declare under penalties of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated:  May 30, 2008

_____
Judith A. Zahid