# EXHIBIT A

Case 1:05-md-01717-JJF   Document 954-2   Filed 06/03/2008   Page 1 of 14

| | |
|---|---|
| **From:** | Samuels, Mark |
| **Sent:** | Monday, June 02, 2008 2:27 PM |
| **To:** | Samuels, Mark; 'Levy, Richard P.'; ' (KKochenderfer@gibsondunn.com)' |
| **Cc:** | 'Eric Friedberg (efriedberg@strozllc.com)'; 'Jennifer Martin'; Herron, David; Pearl, James |
| **Subject:** | RE: Intel's Letter to Judge Poppiti of May 30 |

Rich and Kay, can we get an answer to this question, please?

Mark

| | |
|---|---|
| **From:** | Samuels, Mark |
| **Sent:** | Monday, June 02, 2008 8:42 AM |
| **To:** | Levy, Richard P.; (KKochenderfer@gibsondunn.com) |
| **Cc:** | Eric Friedberg (efriedberg@strozllc.com); Jennifer Martin; Herron, David; Pearl, James |
| **Subject:** | Intel's Letter to Judge Poppiti of May 30 |

Rich, we would like to schedule a meeting with you or whomever is the right person on your side so we can understand the referenced letter and its implications both with respect to Intel's remediation efforts, compliance with CMO 3, and upcoming depositions. We're available tomorrow morning and would suggest that Mr. Friedberg participate as well if he is available.

Thanks,
Mark

**Mark A. Samuels**
**O'Melveny & Myers LLP**
400 S. Hope St., #1800
Los Angeles, CA 90071
ph: (213) 430-6340
fax: (213) 430-6407
msamuels@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

1

**From:** Levy, Richard P. [mailto:RPLevy@gibsondunn.com]
**Sent:** Monday, June 02, 2008 3:15 PM
**To:** Samuels, Mark; Herron, David; Pearl, James
**Cc:** efriedberg@strozllc.com; Jennifer Martin; Kochenderfer, Kay E.
**Subject:** Intel's Letter to Judge Poppiti of May 30

Mark: Due to difficulties with travel schedules and other scheduling issues, we are not going to be able get people together by tomorrow for a meeting. If you have any specific questions or issues you need immediately addressed, please let us know. We will be getting out (or trying to get out) some clarification communication that might address some or all of your concerns in the next day or so.

Richard P. Levy || Gibson, Dunn & Crutcher LLP
Direct Dial: (213) 229-7556 || Direct Fax: (213) 229-6556
Email: rplevy@gibsondunn.com

===============================================================

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.
===============================================================

# EXHIBIT B



1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

**James G. Kress**
Partner
**T** 202.383.6842
**F** 202.383.6610
kressj@howrey.com

May 21, 2008

**VIA E-MAIL AND REGULAR MAIL**

Bernard C. Barmann, Jr.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899

    Re:    AMD v. Intel

Dear Bernard:

    Pursuant to our conversation today, Intel is producing approximately 900 additional custodial documents for former Intel employee Jeff Hoogenboom. These documents will be shipped tonight for next-day delivery to your vendor, Forensics Consulting. These documents were located as part of the custodian reharvest of a laptop computer Mr. Hoogenboom turned in when he left the company.

    Per our discussion, we are not requiring any advance notification of documents from this supplemental production for use with this witness.

                          Sincerely,

                          James G. Kress

AMSTERDAM   BRUSSELS   CHICAGO   EAST PALO ALTO   HOUSTON   IRVINE   LONDON   LOS ANGELES
MADRID   MUNICH   NEW YORK   NORTHERN VIRGINIA   PARIS   SALT LAKE CITY   SAN FRANCISCO   TAIPEI   WASHINGTON, DC

# EXHIBIT C

**From:** Kress, James [mailto:KressJ@howrey.com]
**Sent:** Tuesday, May 27, 2008 2:32 PM
**To:** Pearl, James
**Subject:** Additional Hoogenboom Production

Bo:

I wanted to make you aware, if you were not already, that approximately 1600 documents potentially relevant to Jeff Hoogenboom were delivered to your vendor today. These are separate from the 900 or so from last week that we discussed (i.e., those documents which were from a Hoogenboom laptop reharvest).

While some of the terms are not quite well-known to me, it is my understanding that this latest set of documents were located as part of a Kevin Rusche harvest or reharvest. Mr. Rusche is an Intel employee who has worked on the IBM/Lenovo accounts. In that regard, the documents that were produced today are "repop" documents for Mr. Hoogenboom.

If you have any questions about these, let me know.

Regards,

Jim

-----------------------------------------------------------------------------------------------------
This email and any attachments contain information from the law firm of Howrey LLP, which may be confidential and/or privileged. The information is intended to be for the use of the individual or entity named on this email. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this email is prohibited. If you receive this email in error, please notify us by reply email immediately so that we can arrange for the retrieval of the original documents at no cost to you. We take steps to remove metadata in attachments sent by email, and any remaining metadata should be presumed inadvertent and should not be viewed or used without our expre permission. If you receive an attachment containing metadata, please notify the sender immediately and replacement will be provided. Howrey LLP consists of two separate limited liability partnerships, one formed in the United States (Howrey US) and one formed in the United Kingdom (Howrey UK). Howre registered in England and Wales under number OC311537 and regulated by the Solicitors Regulation Aι (http://www.sra.org.uk/code-of-conduct.page). Howrey's London and Paris offices are operated as part c Howrey UK. A list of the partners of Howrey UK is available for inspection at its registered office: 22 Tudor Street, London EC4Y 0AY. A consolidated list of all Howrey US and Howrey UK attorneys and jurisdictions where they are authorized to practice and/or are registered can be obtained by contacting emailrequest@howrey.com.
-----------------------------------------------------------------------------------------------------

# EXHIBIT D

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars, 7th Floor | NEW YORK |
| BRUSSELS | Los Angeles, California 90067-6035 | SAN FRANCISCO |
| HONG KONG | | SHANGHAI |
| LONDON | TELEPHONE (310) 553-6700 | SILICON VALLEY |
| LOS ANGELES | FACSIMILE (310) 246-6779 | TOKYO |
| NEWPORT BEACH | www.omm.com | WASHINGTON, D.C. |

January 31, 2008

OUR FILE NUMBER
008,346-0163

**VIA E-MAIL AND U.S. MAIL**

WRITER'S DIRECT DIAL
(310) 246-8434

Richard Levy, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071

WRITER'S E-MAIL ADDRESS
jpearl@omm.com

Re:   *AMD v. Intel*

Dear Rich:

We have received several recent Intel productions of remedial data that violate both the letter and spirit of the Second Amended Stipulation Regarding Electronic Discovery and Format of Document Production (the "Order"). In the most recent productions from Intel, we have seen thousands of documents labeled as "Multiple" instead of being attributed to a single custodian or specific custodians. *See e.g.*, January 10, 2008 Letter from Edward Oh to Anthony Cardine; January 23, 2008 Letter from Edward Oh to Anthony Cardine; January 24, 2008 Letter from Edward Oh to Anthony Cardine.[1] As you know, the Order requires that "The native format documents shall be delivered to opposing counsel on CD, DVD or a portable hard drive. Each piece of media will be identified by a unique media control number. **The documents contained on the media will be organized and identified by custodian**, where applicable." *See* Order at § A2 (emphasis added); Order at § C4 (De-duplication shall be done "by custodian"). Not only do these productions violate both the letter and intent of the Order, which envisions and prescribes custodian-based productions, but the productions also break with the uniform standard and practice adhered to by both parties without exception so far, which has been to organize productions by custodian.

AMD is not raising this issue simply to be a "stickler" to the Order. Instead, Intel's new manner of production imposes a substantially more burdensome search and review obligation onto AMD. Because of the Order's dictates and the party protocols on document production to date, AMD conducts custodian-based reviews. To collect the custodian's documents from the "multiple" productions, we would have to search each "multiple production" (there are many), consolidate the documents from each production, create an artificial assignment, and then

---

[1] We assume these are productions that originate from Intel's "Global Database." Please let us know if we are mistaken in that assumption.

O'MELVENY & MYERS LLP
Richard Levy, Esq., January 31, 2008 - Page 2

review. And this has to be done for each and every custodian for whom Intel has produced documents, since we have no way of knowing what custodian names are on the emails within each "multiple" production. Custodian-based productions do not impose this same burden, and it was precisely this burden the custodian-based production sought to avoid. The second harm from this new production format is tracking burden. We have to track what we receive for each custodian, and have a pristine set we can go back to later. "Multiple" productions make this tracking very difficult or impossible.

We therefore request that you re-produce these documents "organized by custodian" consistent with the Order and the past practices of the parties as soon as possible.

Please feel free to give me a call if you have any questions.

Very truly yours,

James M. Pearl
for O'MELVENY & MYERS LLP

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| LOS ANGELES | **1999 Avenue of the Stars** | HONG KONG |
| NEWPORT BEACH | **Los Angeles, California 90067-6035** | LONDON |
| NEW YORK | TELEPHONE (310) 553-6700 | SHANGHAI |
| SAN FRANCISCO | FACSIMILE (310) 246-6779 | TOKYO |
| WASHINGTON, D.C. | INTERNET: www.omm.com | |

OUR FILE NUMBER
008.346.163

February 14, 2008

WRITER'S DIRECT DIAL
310.246.8434

**VIA EMAIL AND U.S. MAIL**

Richard P. Levy, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071-3197

WRITER'S E-MAIL ADDRESS
jpearl@omm.com

Re:   *AMD v. Intel*

Dear Rich:

This responds to your February 8, 2008 letter regarding Intel's non-custodian based, "multiple" productions of remedial documents for designated custodians.

As outlined in my January 31 letter to you, Intel's "multiple" productions do not comply with the Court's Order that documents be produced on a custodian-by-custodian basis. The Order requires that "[t]he documents contained on the media will be organized and identified by custodian, where applicable." While you seize on the last two words of this sentence to assert an exception, none applies. That language was added for one specific purpose, which was to make clear that document productions responsive to corporate requests -- which the Order also addresses -- need not be produced on a per-custodian basis because they cannot be. Custodian-based productions, including Intel's remedial productions that supply documents each custodian lost, necessarily must be made on a custodian-by-custodian basis. Intel's "multiple" productions do not comply with this explicit regimen. Intel has thus violated and is in violation of the Order.

We also must reject the notion your February 8 letter proposes that remedial documents produced to supplement a designated custodian's documents are not that individual's documents at all. Intel's remediation plan intends the documents obtained from other employees' file to supplement the non-preserving but designated custodian's own production. We could further debate the theoretical Smith/Jones distinction you suggest but, bottom line, the documents' source does not excuse a production which is not made on a custodian-by-custodian basis.

You suggest that Intel unilaterally selected its non-complying "multiple" production methodology in order to "maximize efficiency." This provides AMD no comfort. As you point out, we had to "surmise" what these "multiple" productions were in the first place. That is because you neither raised this issue, explained why it will not impose a burden on AMD (and

O'MELVENY & MYERS LLP

Richard P. Levy, Esq., February 14, 2008 - Page 2

still have not), nor sought our acquiescence in this departure from the Order's requirements prior to production. While we readily acknowledge the difficulty that both sides face in complying with the February 15 production cut-off, Intel's self-help on this point -- which was not preceded by any discussion with us whatsoever -- strikes us as a significant departure from reasonable protocol.

Our concerns about the burden this imposes on AMD are outlined in my January 31 letter. We are forced by circumstance to await completion of Intel's remedial productions, as well as the production of the "overlay database" and Intel's explanation of it that you have promised. If, in fact, what Intel contemplates is a sufficiently useful surrogate for the custodian-based productions the Order requires, then the issues we have raised will resolve themselves. We hope that is the case. Of course, AMD reserves its rights to argue Intel's violations of the Order and non-compliance with the production deadline should that prove untrue.

Very truly yours,

James M. Pearl
of O'MELVENY & MYERS LLP

# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

333 South Grand Avenue  Los Angeles, California 90071-3197
(213) 229-7000
www.gibsondunn.com

RPlevy@gibsondunn.com

February 8, 2008

*Via E-Mail and U.S. Mail*

Direct Dial
(213) 229-7556
Fax No.
(213) 229-6556

Client No.
C 42376-00830

James Bo Pearl
O'Melveny & Myers LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035

Re:   *AMD v. Intel*

Dear Bo:

    We are writing in response to your letter of January 31, 2008. Intel's electronic data production neither violates the letter nor spirit of the Order you reference  While I do not pretend to be as technically "advanced" as you or those closely involved with this project, I can report the following: The sentence you referenced, in bold, from the Order, ends with the words "where applicable." In this instance, organizing and identifying documents by custodian is "not applicable." Let me explain.

    As you correctly surmise, these are documents produced in connection with Intel's remediation plan. Rather than imposing a burden on AMD, Intel produced the documents in this manner in order to maximize efficiency and to meet production deadlines. As noted in Intel's April 23, 2007 submission to the Court, Intel created a global database, the details of which you are aware. From this dataset, Intel agreed to "search for any document sent from or to (including cc and bcc), any Party Designated Custodian or Adverse Party Designated Custodian." (Intel's Remediation Plan at 38). Thus, the "actual" custodian for documents that are produced in this regard are not the Intel or AMD Designated Custodians in question, but the individual from whose files the document in question is being provided. For example, if Designated Custodian Jones sends an email to non-Designated Custodian Smith, and the email is found only within Smith's files, the "custodian" is Smith, while the Designated Custodian whose production is being supplemented is Jones.

**GIBSON, DUNN & CRUTCHER LLP**

James Bo Pearl
February 8, 2008
Page 2

      In order to allow AMD to understand this system, Intel intends to supply an overlay database that will provide identifying information. In this manner, AMD can readily sort the documents, and maintain efficient tracking by the Designated Custodian or Custodians for whom a particular document remediates. In order to avoid confusion, we propose to supply AMD with a single database overlay on February 22, 2008. This will hopefully avoid any additional burden on AMD or its vendors in processing the data.

      Our intent here was not to create any additional work for AMD, but to streamline the process, and provide as much clarity as possible. Your colleagues have acknowledged how difficult a task this production is for AMD; Intel's production is significantly larger and more difficult. Hopefully, both sides can figure out how to resolve issues that are sure to arise. Please let me know if you would like to discuss this further, and we will bring in the appropriate people.

Yours very truly,

Richard P. Levy

RPL/shv/100385989_1.DOC
cc:    Robert E. Cooper
        Kay E. Kochenderfer