# EXHIBIT A

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

333 South Grand Avenue  Los Angeles, California 90071-3197
(213) 229-7000
www.gibsondunn.com

RCooper@gibsondunn.com

## April 11, 2007

| | |
|---|---|
| **Direct Dial** | **Client No.** |
| (213) 229-7179 | T 42376-00764 |
| **Fax No.** | |
| (213) 229-6179 | |

David L. Herron
Jeffrey J. Fowler
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Re:    *AMD v. Intel - eDiscovery Issues*

Gentlemen:

In the last several weeks, Intel has shared with AMD detailed information with regard to the steps it designed to retain all documents, including emails, relevant to this litigation, the implementation of those steps, and some lapses that Intel has discovered with regard to that implementation.  We are now engaged in a Court supervised accounting of those lapses and the creation of a remediation plan to deal with them.  It is thus reasonable and timely for Intel to ask AMD for certain updated information with regard to its document retention activities so that Intel will be in a position, as the parties go forward in discovery, to understand whether there might be any lapses in AMD's document retention.  We assume the information Intel is seeking should not be burdensome since we are merely seeking to  update and confirm representations that AMD has made to Intel about its retention practices.

We do not mean to suggest that AMD has not undertaken its preservation obligations. The spirit of the Amended Federal Rules, however, contemplate that the parties will continue to keep each other apprised on the status of preservation, especially in case of this complexity and length.

### A.    Document Retention In General.

Is AMD aware of the loss of any documents potentially relevant to this litigation, and/or any non-compliance with all hold instructions issued to AMD employees, either as a result of human conduct, the operation of a computing system, or otherwise?  If so, please provide a full

GIBSON, DUNN & CRUTCHER LLP

David L. Herron
Jeffrey J. Fowler
April 11, 2007
Page 2

description of the loss or non-compliance, including: (i) the custodian(s) involved; (ii) the nature of the loss or non-compliance; (iii) when AMD first discovered the loss or non-compliance; and (iv) all remedial steps undertaken by AMD to address the loss or non-compliance.

Whether or not AMD is aware of any loss or non-compliance, has AMD made any efforts to determine whether any loss or non-compliance has occurred? Please describe AMD's efforts in detail.

**B.      Enterprise Level Preservation.**

**"March 11, 2005, AMD sent preservation letters to its IT personnel in its various offices. The oldest full backup of the Exchange servers and Windows environment, network servers were located and preserved."**

Please describe, in detail, why AMD chose March 11, 2005, to send these letters. Please also confirm that the oldest full backup of the Exchange and Windows, network servers are being preserved. In this regard, we would appreciate a list of the location of the Exchange servers and the individual custodians subject to the legal hold that is on those servers. With respect to the windows environment and network shared files servers, we would appreciate a list of those servers, a general description of their content and the date upon which the backup was created.

**"Beginning March 19, 2005, full backups were made and retained. Over the next several weeks the backup schedules were coordinated; going forward, full backups are taken and retained every month." (10/24/05 AMD Letter at 1)**

Please confirm, as represented, that full backups were being made and retained beginning on March 19, 2005, and on a monthly basis thereafter. In particular, confirm the location and storage of the backups, including whether the backups have or are being indexed. In this regard, are there any servers that were initially part of the March 19, 2005 backups that have been taken off the monthly backup process or added to the monthly backup process? In addition, is there a person or group of people responsible for this backup process at AMD? If so, please identify that individual(s).

**"The monthly full backups are retained in secure locations. Most of these sites send their tapes to Austin, although a few offices retain their backups locally. Compliance is tracked and monitored on a weekly basis." (10/24/05 AMD Letter at 1)**

# GIBSON, DUNN & CRUTCHER LLP

David L. Herron
Jeffrey J. Fowler
April 11, 2007
Page 3

Have each of these backups been retained? With respect to these backup tapes, are any of these tapes lost or missing or not readable? In addition, has AMD attempted or restored any of these backup tapes and, if so, for what purpose?

> **"AMD's document retention and destruction policies were suspended to prevent inadvertent description of documents that may be relevant to this lawsuit." (10/24/05 AMD letter at 1-2)**

It is unclear what you mean by the policies were "suspended." Was this suspension limited to categories of potentially relevant records to this litigation or to all records. And was the suspension ever lifted for any custodian or corporate groups? Please confirm that each of the custodians subject to the legal hold has, in fact, complied with this suspension directive? Please state whether AMD's computer system has an auto-delete process

### C.    Custodian Level Presentation And Legal Holds.

> **"On April 1, 2005, AMD issued its first wave of document preservation notices to approximately 150 custodians likely to have relevant information. The custodians were instructed to preserve all documents and data relevant to the lawsuit. This includes, of course, e-mail." (10/24/05 AMD Letter at 2)**

> **"As additional custodians are identified, preservation notices are sent to them and they are put on the litigation hold. To date, the list of custodians includes approximately 440 people. Appropriate follow-up is conducted as needed to ensure custodian understanding and continued compliance with that hold." (10/24/05 AMD Letter at 2)**

> **"The current count of custodians to whom a litigation hold has been issued is roughly 440. AMD continues to assess the propriety of maintaining that hold with respect to all of these employees, some of whom AMD does not believe have any relevant information or involvement with any issue relevant to this lawsuit. Accordingly AMD currently is in the process of reviewing its hold list and is considering paring that list, as appropriate." (10/24/05 AMD Letter at 3)**

Please provide a list of the 440 custodians originally issued a legal hold, and the date they were issued the legal hold. To the extent any custodians were added, please identify them by

**GIBSON, DUNN & CRUTCHER LLP**

David L. Herron
Jeffrey J. Fowler
April 11, 2007
Page 4


name, job title and office location, and indicate the day they were issued legal hold notices. If AMD has identified and removed from hold custodians that "it does not believe has any relevant information or involvement with any issues relevant to this lawsuit," please identify those custodians, the date they were removed from hold and the rationale as to why they were removed?

For each witness identified on AMD's Rule 26 disclosure, provide the date on which they were provided a legal hold notice, the date on which they were placed on journaling, and whether their emails are preserved on any monthly backup tapes. Please also identify each witness on AMD's Rule 26 disclosure who, at the time of the disclosure, had not been provided a legal hold notice, and an explanation of why they had not been provided a notice.

AMD has previously suggested that the parties exchange the content of their legal hold orders, and that the production of these orders will not constitute a waiver of any privilege, including a subject matter waiver. We accept this proposal. Please provide a copy of the legal hold order sent to AMD custodians (and any differing versions) and Intel will do the same.

> **"When a custodian is terminated during the pendency of the
> litigation hold, AMD harvests that custodian's potentially
> relevant data and documents. AMD either retains or makes a
> forensic copy of that custodian's hard drive; segregates and
> preserves data and documents on Exchange and Windows-
> environment, shared network servers; and paper documents
> and other physical storage media are collected as appropriate."
> (10/24/05 AMD Letter at 3).**

Please identify any custodian that was originally subject to the legal hold notice, but was terminated. As to those employees, please confirm that AMD has undertaken the preservation obligations described above. With respect to AMD's efforts, what is meant by a forensic copy (e.g., bit-by-bit). Please identify any terminated employee, whose data has been lost.

### D.    E-mail Preservation

> **"AMD also is in the process of moving its custodians subject to
> the hold notice to a new Exchange server on which e-mail can
> be more easily stored." (10/24/05 AMD Letter at 1).**

We remain confused regarding the steps that AMD has undertaken to preserve the potentially relevant e-mails in this action. In the course of our preservation discussions in the summer of 2005, AMD represented that it was relying upon the individual custodians to preserve the relevant e-mails by the issuance of the written legal hold notice. You further indicated, and

# GIBSON, DUNN & CRUTCHER LLP

David L. Herron
Jeffrey J. Fowler
April 11, 2007
Page 5

confirmed in writing, that "AMD was in the process of moving custodians to a new Exchange server on which e-mail could be more easily stored" and, presumably, backed up per the representations described in your October 2005 letter.

In the meeting in Los Angeles in February 2007, AMD indicated that it had implemented a "journaling system" to preserve potentially relevant e-mails. It is unclear what AMD means by a "journaling system." Are you merely describing using MS Exchange Journaling of all sent and received e-mails that are then written off to backup tapes or has AMD implemented an archive solution where the e-mail is written off to some type of a storage area network drive? We would appreciate a full description of what AMD has implemented, including its configuration, when it was implemented when specific custodians subject to the legal hold in this matter where added to the system and whether AMD has experienced an issues or problems with this system.

### E.    Harvesting of Drives

Please identify the dates upon which each custodian's drive was harvested or reharvested. With respect to those drives, please identify any drive that AMD has been unable to harvest for any reason.

### F.    One-Time Backup

**"AMD is extracting monthly full backups of its Exchange and Windows-environment, shared network servers. Roughly 200 tapes are collected in these backups." (10124/05 AMD Letter at 2).**

**"The oldest, full backup in existence as of March 11, 2005, was preserved and full backups were to be taken on and in the few weeks immediately after March 19, 2005. The exact date varied by a week or two depending on the sites' backup schedules. Since about May 2005, backup schedules were (and arc now) coordinated worldwide." (10/24/05 AMD Letter at 2).**

We are concerned about the low number of tapes taken as part of this "one-time backup." Your letter suggests that for each server, there should be two tapes: (i) the oldest full backup in rotation at that time; and (ii) a new backup taken on or about March 19, 2005. Accordingly, this would mean that only 100 potential servers were backed-up.

It would also be helpful if AMD could identify the specific severs that were backed up and the general purpose of that server (e-g., Exchange, NT shared drive). With respect to these tapes, please confirm that they have been preserved as indicated in your October 2005 letter. In

# GIBSON, DUNN & CRUTCHER LLP

David L. Herron
Jeffrey J. Fowler
April 11, 2007
Page 6


addition, are any of these tapes lost or missing or not readable?  In addition, has AMD attempted to restore or restored any of these backup tapes and, if so, for what purpose?

On a separate matter, your October 2005 letter indicates that the "oldest, full backup in existence as of March 11, 2005, was preserved.  This would obviously mean that AMD was contemplating litigation as early as March 11, 2005.  However, we are concerned that the first legal hold notices to custodians were not issued until April 1, 2005. (10/24/05 AMD Letter at 2). Accordingly, we would like to know when AMD first contemplated litigation, who was involved in the decision to file the instant action, when that decision was made, the specific dates of any communications or meetings in which the topic of potential litigation was discussed, when did the issue of preservation of potentially relevant records first arise, whether there was any discussion about the timing of the issuance of the legal hold records and who was involved in such discussions?  To the extent you are asserting privilege around these communications, we would anticipate that you will provide us with log from which we can evaluate the claim of privilege.

Finally, to the extent AMD has information about any other issues relating to the preservation of its documents, please provide us with a full report.  We look forward to hearing from you on the above issues.  Of course, we will be happy to discuss our requests with you and respond to any questions you may have.

Very truly yours,

Robert E. Cooper

KEK:REC/lsj

100203202_1.DOC

# EXHIBIT B



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

CENTURY CITY

HONG KONG

LONDON

NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

TOKYO

WASHINGTON, D.C.

April 23, 2007

**VIA E-MAIL & U.S. MAIL**

Robert E. Cooper
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071

OUR FILE NUMBER
008346-163

WRITER'S DIRECT DIAL
(213) 430-6230

WRITER'S E-MAIL ADDRESS
dherron@omm.com

> Re:     *AMD v. Intel: eDiscovery Issues*

Dear Bob:

This will respond to your April 11 letter.

Your letter begins by noting that, as a result of "some lapses that Intel has discovered" with respect to its document preservation efforts, Intel recently shared with AMD certain information about "the steps it designed to retain" documents relevant to this litigation. As your letter itself states, however, Intel has provided that information about its preservation program solely as part of the "court supervised accounting" of its document retention lapses. While acknowledging that you "do not mean to suggest" that AMD has experienced any similar lapses, your letter nevertheless proceeds to ask AMD to provide very detailed information similar to -- and in many instances far exceeding -- what Intel is providing as part of its Court-ordered accounting.

We question whether, in the absence of any evidence whatsoever of any systematic failure to preserve documents on AMD's part, Intel is entitled to conduct the searching inquiry your letter seems to contemplate. Indeed, the timing and scope of your letter might lead a cynic to conclude that Intel is trying to distract attention from its own evidence preservation lapses by attempting to "gin up" problems on AMD's side, while at the same time diverting AMD from the real task at hand -- analyzing and preparing a response to Intel's imminent disclosures and remediation plans. Nevertheless, because we agree that the "spirit" of the Amended Federal Rules supports transparency and disclosure, we will provide appropriate information concerning AMD's document preservation activities.

Your letter poses a series of detailed questions about numerous aspects of AMD's retention program. In order to respond appropriately, we have commenced a thorough follow-up review of AMD's preservation program to date, on a custodian by custodian basis, to ensure that

O'MELVENY & MYERS LLP
Robert E. Cooper, April 23, 2007 - Page 2

its preservation processes are working as previously described to you, and as intended. When our review is complete, we will provide an appropriate report to Intel, and we believe that that report will address many of the areas about which your letter inquires. For now, as we work to gather the type of detailed information necessary to our analysis, we wanted to respond to three of the questions (or, more accurately, series of questions) posed in your letter.

First, you asked whether AMD is aware of any loss of documents relevant to this litigation or any non-compliance with any instructions to retain documents. We can represent that AMD's overall preservation program appears to be working as intended and that, at this time, we are aware of no systemic failure in the execution of that preservation plan, much less a systemic destruction of evidence in any sense comparable to what Intel has disclosed to date. We are able to make this representation mainly because AMD's multi-layered preservation plan was designed to ensure that evidence would be preserved even if one aspect of the plan failed. Because of that multi-layered preservation plan, we do not expect to find any systemic data loss issues. However, should we learn of any such issues in the course of our review, we will so advise you in our follow-up letter.

Second, your letter poses a series of questions about AMD's "enterprise level" retention efforts, focusing on email retention and backup tapes. Because AMD, unlike Intel, did not employ a routine program of automatic email deletion, AMD does not face the same move-it-or-lose-it data loss issues currently facing Intel. In short, AMD's email communications were being systematically preserved at the same time Intel's were being systematically destroyed. AMD continues to make monthly backups of all Exchange Servers and to preserve those backup tapes as a fail-safe measure. Even those backup tapes are not the only fail-safe for deleted emails, however, because, beginning in November 2005, AMD activated an email journaling system that is used to ensure that even email deleted by a journaled custodian nevertheless would be preserved. AMD also obtained and implemented the use of the Enterprise Vault.

Third, your letter asks about AMD's document preservation or "hold" notices. As we have previously advised, beginning in April 2005, AMD began distributing preservation notices to employees it believed might possess documents relevant to contemplated litigation. In an abundance of caution, AMD instructed over 800 employees to preserve documents that relate to the x86 microprocessor business. AMD also directed suspension of its ordinary document retention and destruction policies to ensure that relevant evidence was not being systematically destroyed pursuant to a pre-existing policy.

As noted, we currently are undertaking a thorough review of AMD's preservation program. We will appreciate Intel's patience while we conduct this review. Although it took Intel nearly six months to investigate, analyze, disclose, and propose a fix for its massive data loss, we will endeavor to complete our review with significantly greater dispatch.

O'MELVENY & MYERS LLP
Robert E. Cooper, April 23, 2007 - Page 3

Please feel free to call if you have any questions.

Sincerely,

David L. Herron
of O'MELVENY & MYERS LLP

DLH:ad

LA2:829501.3

# EXHIBIT C



# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 400 South Hope Street | NEW YORK |
| BRUSSELS | Los Angeles, California 90071-2899 | SAN FRANCISCO |
| CENTURY CITY | TELEPHONE (213) 430-6000 | SHANGHAI |
| HONG KONG | FACSIMILE (213) 430-6407 | SILICON VALLEY |
| LONDON | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |

OUR FILE NUMBER
8,346-163

August 10, 2007

WRITER'S DIRECT DIAL
(213) 430-6340

**VIA E-MAIL AND U.S. MAIL**

WRITER'S E-MAIL ADDRESS
msamuels@omm.com

Robert E. Cooper, Esq.
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071-3197

Re:    *AMD v. Intel*

Dear Bob:

This is to follow up on David Herron's letter to you of April 23, 2007. It also addresses the portion of your August 1, 2007 letter to Chuck Diamond in which you suggest that there may be lapses in AMD's own document preservation effort.

We have now completed a review of AMD's preservation program with respect to each of the 108 AMD party-designated production custodians. We are pleased to report that our preservation program appears to be operating as designed and intended; no lapses in that program have been identified.

During our review, we identified a small number of custodians (including Messrs. Ruiz and Colandro) whose initial productions did not include all available .pst files. In some cases, this was because the files were corrupted and required repair. In others, some .pst's were apparently not located during the initial harvest of the custodian's data. In any event, these files are now being processed and reviewed for production, and the supplemental productions should be in your hands shortly. There are also responsive materials that are still in privilege review, and to the extent ultimately determined to be nonprivileged, they will be released to you in due course. I understand that some such materials were released earlier this week together with the privilege log for Mr. Rivet, and that Mr. Ruiz's privilege log is not due until mid-September. Finally, let me say that while we cannot verify the so-called "discrepancies" you cite in your letter, and putting aside the fact that the supplemental productions are still in process, it is hardly surprising that different reviewers looking at multiple copies of the same email might reach different conclusions as to responsiveness. We are sure the same phenomenon pervades the Intel production. This does not in any respect suggest a breakdown in AMD's document preservation, and as noted above, we are currently aware of none.

**O'MELVENY & MYERS LLP**

Robert E. Cooper, Esq., August 10, 2007 - Page 2


Let me also add that we have found two instances in which party-designated custodians do not appear to have received formal written preservation instructions until September 2006; in both instances, it is clear that the custodians were nonetheless aware of their preservation obligations, and understood and complied with them.

We have previously agreed to provide you with exemplar preservation notices on a "no waiver" basis.  We stand ready to do so once we have received Intel's, which were to have been provided to us long ago under the July 10 Remediation Discovery Order.

A review of the 71 adverse party designated production custodians is under way, and we will advise you when it has been completed, as well as any issues identified.

Should you have any questions, please do not hesitate to call.

Very truly yours,

Mark A. Samuels
of O'MELVENY & MYERS LLP


LA2:838030.3