# EXHIBIT H

# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

333 South Grand Avenue  Los Angeles, California 90071-3197
(213) 229-7000
www.gibsondunn.com

RPlevy@gibsondunn.com

September 19, 2007

*Via E-Mail and U.S. Mail*

Direct Dial
(213) 229-7556

Fax No.
(213) 229-6556

Client No.
C 42376-00830

James Bo Pearl
O'Melveny & Myers LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035

Re:    *AMD v. Intel:  Notice by Intel of 30(b)(6) Deposition*

Dear Bo:

In response to the email request that I sent to you and Mark, seeking to be notified of the identities of the people that would be attending the deposition Intel noticed for this Friday, I received your email sent at 5:03 a.m. yesterday morning (hopefully, you were in Europe at the time). You reference the fact that your office has done a "diligent search" and has "not located any legal authority which could justify the discovery Intel seeks." You support this statement by writing that "Intel's failure to provide any such authority, despite our previous written request to you" evidently underscores our legal research. We will address these points herein.

In Chuck Diamond's letter to Bob Cooper of August 23, 2007, Chuck requested a "meet and confer" regarding the propriety and scope of the 30(b)(6) deposition notice. My understanding is that a "meet and confer" was held on September 7, at our offices, regarding several topics and that no one from your office brought up this issue at that time. Moreover, the request for the legal research for a deposition notice that is otherwise authorized under the Federal Rules of Civil Procedure, Rule 26(b)(1) and Rule 30 makes little sense to us. AMD has for months now been informing us that it has instituted document retention protocols and directives to its personnel. In his August 10, 2007 letter, Mark Samuels informed us that AMD was "pleased to report that our preservation program appears to be operating as designed and intended; no lapses in their program have been identified." Despite these representations, we provided your office with information concerning what our investigation to date has disclosed

**GIBSON, DUNN & CRUTCHER LLP**

James Bo Pearl
September 19, 2007
Page 2

concerning several discrepancies in those programs. While we have recently received some assurances from your office, together with dismissive responses and threats of retaliation about our concerns, we are entitled to investigate Mark's statements that AMD's program "appears" to be "operating as designed and intended." *See*, FRCP 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant . . . , including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things . . . .")

Indeed, deposing an opposing party regarding its document retention practices, seems uncontroversial. For example, in *Doe v. District of Columbia*, 230 F.R.D. 47, 55 (D.C.C. 2005), the plaintiff sought to depose the defendant's 30(b)(6) witness on, inter alia, the defendant's "document retention policies and procedures, and the process used to collect the documents that have been produced or will be produced by the [defendant] in response to plaintiff's requests for production of documents." Defendant objected to the deposition notice on the grounds of privilege. *Id.* The court rejected that argument, explaining that Rule 26(b)(1) "allow[s] for discovery of document production policies and procedures in allowing '[p]arties [to] obtain discovery regarding any matter, including the existence, description, nature, custody, condition, and location of any documents,'" and therefore plaintiff may "request information as to the 'existence,' 'custody,' or 'condition' of documents[.]" *Id.* at 56 (quoting Fed. R. Civ. P. 26(b)(1).

In Mark Samuels' most recent letter of September 14, 2007, he informed us that AMD unilaterally adopted a "near duplicate" protocol instead of a complete de-duplication called for in the Court ordered Stipulation. It is unclear from your letter precisely what that protocol is, but it does not appear to be the same protocol that was agreed upon and provided to the Court. That same letter references that there are various items evidently from Mr. Calandra's data, that "is in the queue for review and production to Intel." Mark also referenced recent productions of Mr. Calandra's documents, productions which, unfortunately, our e-discovery vendor has informed us are corrupt. (We have brought this to your office's attention and hopefully we will be receiving an uncorrupted version soon.) In any event, Mark's assertion that AMD has not completed its production for this custodian is in seeming contrast to Linda Smith's unambiguous confirmation to Mark Weber, in her May 8, 2007 letter, in which she stated "AMD will complete its production of all of its party-designated custodians on May 21, 2007."

In short, based on the limited information AMD has provided at this time, it appears that AMD has not completed its production, has adopted a de-duplication protocol with which Intel is unfamiliar, and has not fully responded to inquiries regarding the subject of legal hold notices, the timing of legal hold notices, the use of, and disabling of, AMD's "auto-delete function" on individual AMD computers and other issues pertinent to the understanding of AMD's document production and retention practices. Certainly, AMD thinks that such similar questions with regard to Intel's production are relevant. We are simply pursuing similar information in what

**GIBSON, DUNN & CRUTCHER LLP**

James Bo Pearl
September 19, 2007
Page 3

seems to be the most logical, reasonable, time efficient manner provided for under the Federal Rules

    We believe that the 30(b)(6) deposition should go forward as noticed, but assume that you will not produce a witness this week even though no motion for a protective order will be filed. We will, therefore, take you up on your offer to "provide some of the information" that has been requested by Intel "in an informal exchange." We are available to be at your office in connection with such an informal exchange at your earliest convenience, but we suggest doing so on the morning of September 26th or 27th. At such time, if you would like, we can also discuss any of the issues you may wish to discuss concerning our scheduled 30(b)(6) deposition.

    In the meantime, we are not intending to waive any rights Intel may have to insist that such a deposition was appropriately noticed and should go forward. Please let us know if either of the dates offered for your suggested meeting are acceptable.

Yours very truly,

Richard P. Levy

RPL/shv
100301758_1 (2).DOC

cc:    Mark A. Samuels
       Robert E. Cooper
       Kay E. Kochenderfer

# EXHIBIT I



# O'MELVENY & MYERS LLP

| | 1999 Avenue of the Stars | |
|---|---|---|
| BEIJING | Los Angeles, California 90067-6035 | NEW YORK |
| BRUSSELS | | SAN FRANCISCO |
| HONG KONG | TELEPHONE (310) 553-6700 | SHANGHAI |
| LONDON | FACSIMILE (310) 246-6779 | SILICON VALLEY |
| LOS ANGELES | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |

OUR FILE NUMBER
8,346-163

September 24, 2007

WRITER'S DIRECT DIAL
(310) 246-6789

**VIA E-MAIL AND U.S. MAIL**

Richard P. Levy, Esq.
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071-3197

WRITER'S E-MAIL ADDRESS
cdiamond@omm.com

Re:   *AMD v. Intel*

Dear Rich:

We are in receipt of your September 19 letter to Bo Pearl concerning your right to conduct discovery into AMD's document preservation efforts.

We appreciate your views on this subject, even if we disagree with some of them. But with all due respect, your letter contains material inaccuracies that do not advance the discussion.

Suffice it to say that our views are laid out in our response to your Rule 30(b)(6) notice, which crossed in the email with your letter. To put it in a nutshell, we believe that most of the discovery you requested is far out of bounds -- particularly in the absence of any evidence that AMD or its custodians have failed to take appropriate document preservation steps. You have offered no such evidence, and false claims of failures by AMD's custodians is not a substitute for it. I note in this regard that we have received no response to Mark Samuels' September 14 letter to Kay Kochenderfer, where we demonstrated as unfounded her suspicions that AMD custodians failed to comply with preservation instructions.

We also find unpersuasive your response to our now second written request to supply legal authority justifying the discovery Intel propounded. AMD's prior, detailed disclosures fully complied with any obligation under Rule 26(b)(1). The sole case you cite does not begin to support the wide-ranging, invasive inquiry Intel has launched.

We do agree with your letter's assertion that proper focus of Intel's current inquiry should be on "issues pertinent to the understanding of AMD's document production and retention practices." We believe that the prior disclosures AMD has made as well as the significant additional disclosures AMD has obligated itself to produce as set forth in AMD's

O'MELVENY & MYERS LLP

Richard P. Levy, Esq.
September 24, 2007
Page 2


Response will provide Intel with the information it needs to assess AMD's retention program. We are, as our Response indicates, prepared to work cooperatively with you to that end.

As indicated in our Response, we would like to provide on an informal basis the technical information you have requested about how AMD's vaulting and journaling systems operate. To this end, we will make Mr. Jerry Meeker of AMD available to you this coming Friday, September 28, at noon in Austin. If there are other IP preservation infrastructure subjects that you think Jerry might be able to address, pass them along and I will inquire.

Please let me know if you are interested in meeting with Mr. Meeker at noon on Friday, and whether you plan to do so in person or by telephone. If Friday is not convenient, we will work with you to find another mutually-convenient time.


Very truly yours,

Chuck

Charles P. Diamond
of O'MELVENY & MYERS LLP


CC1:771165.1

# EXHIBIT J

# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

333 South Grand Avenue  Los Angeles, California 90071-3197
(213) 229-7000
www.gibsondunn.com

RPLevy@gibsondunn.com

November 7, 2007

*Via E-Mail and U.S. Mail*

Direct Dial
(213) 229-7556
Fax No.
(213) 229-6556

Client No.
C 42376-00830

Charles P. Diamond
O'Melveny & Myers LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035

David Herron
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Re:  *Response of AMD to Notice of Taking Deposition and Request for Production of Documents*

Dear Chuck and Dave:

     On September 19, 2007, your office served the response of AMD to Intel's Notice of Taking Deposition and Request for Production of Documents. The response consisted primarily of objections and some agreements to provide information. Since that time, we have had a number of e-mail exchanges and telephone conversations concerning the follow-up discovery with regard to the issues raised in Intel's formal discovery requests. The purpose of this letter is to address other of Intel's inquiries and discuss the offer of "informal exchanges" that have been made by your office. In doing so, hopefully, we can narrow, or even eliminate, the issues that might be open for discovery. Accordingly, let me outline the areas that we propose to now pursue. In delineating certain issues now, it is not our intention to waive the right to pursue the discovery requested in the August 22, 2007 Notice and Request but instead to see if we can address the certain targeted issues. You will see that we have, in this letter, reduced considerably the number of topics for which we are requesting information which, in turn, should simplify your task and hopefully, result in what we view, as an appropriate exchange of information.

**GIBSON, DUNN & CRUTCHER LLP**

Charles P. Diamond
David Herron
November 7, 2007
Page 2

      1.  In connection with Depo Topic #4, (and RFP #3) which sought information concerning AMD's e-mail journaling system, we would like to depose a knowledgeable witness regarding these issues but understand that, at least for the time being, you will consider supplying us with a "informal exchange" similar to that which we did for the AMD Enterprise Vault System with Jerry Meeker.  Please let us know if you are willing to provide us with an exchange or interview and when we might do such an interview.  As you know, the Meeker interview lasted approximately an hour so clearly we are not interested in wasting anyone's time.  We are interested simply in learning how the system worked both from an AMD user's prospective and from AMD's IT perspective.

      2.  You have also offered to provide us with written summary responses to Depo Topic #8 which asked for a witness on "AMD's harvest of data from AMD's custodians, including the harvest instructions and protocols employed and the identities of those persons involved in developing and executing such instructions and protocols."  Please let us know whether you are going to provide such a written summary and when we might expect it.

      3.  Depo Topic #5 (RFP #2) asked for information concerning preparation, timing, contents and distribution of all Litigation Hold Notices including the identity (name, location and position) of anyone receiving such Litigation Hold Notice and the date of receipt by each AMD Custodian of each Litigation Hold Notice.  While AMD objected on the grounds of burden and over breadth (and we are not here debating whether any of the objections which you asserted are appropriate; only that we understand that you have made them), you noted that you had provided responsive information in your letters and disclosures of 8/10/07, 8/23/07 and 9/14/07.  You further noted that AMD has already provided Intel with its general forms of preservation notice on 9/6/07.  This is an area in which we do need to have some follow-up communications, determine whether AMD will provide us with a Rule 30(b)(6) witness, an informal exchange of information and/or have a meet and confer with regard to this (and related) discovery requests.

      AMD has provided us, thus far, with three undated Litigation Hold Notices ("LHNs").  The first commences with the sentence "The Japanese FTC announced recently that Intel had violated Japanese antitrust laws.  We understand that other antitrust authorities are following these developments closely and may institute proceedings against Intel on their own."  Given the timing of the Japanese announcement, this notice "might" have been circulated sometime around the beginning of March 2005 - - but we do not know.  Your office has informed us that on 3/11/05, AMD sent preservation notices to "appropriate IT personnel" in its various offices but we do not believe we have yet received the notice.  This first (undated) LHN states that "we are asking key members of CPG and other AMD individuals with relevant information to preserve all documents – whether hard copy or electronic – relating to CPG's business."  This would not appear to be the notice that was sent on 3/11/05 to the IT personnel.  You also told us that, on 4/1/05, AMD issued it's "first wave of document preservation notices to approximately

**GIBSON, DUNN & CRUTCHER LLP**

Charles P. Diamond
David Herron
November 7, 2007
Page 3

150 custodians likely to have relevant information." Here, again, we cannot be certain whether this first LHN is the one referenced for 4/1/05. Moreover, in the "Frequently Asked Questions and Answers" attachment to this first notice, there is a section entitled "Electronic Documents" that states, in part, "be sure to disable any auto-delete features or email (e.g., auto-delete of "sent" email messages)." In Herron's 4/23/07 letter to Cooper, he makes the statement "because AMD, unlike Intel, did not employ a routine program of automatic deletion, AMD does not face the same move-it-or-lose-it data loss issues currently facing Intel. In short, AMD's email communications were being systematically preserved at the same time Intel's were being systematically destroyed." At other times, your office has referenced the fact that AMD did not have an "auto-delete problem." If so, the Q&A response "please be sure to disable any auto-delete features on email" is confusing to us. The example given (auto-delete of "sent" email messages) further muddles the picture.

The second Litigation Hold Notice (produced by AMD) is also undated but commences: "As you know, on June 27, AMD initiated legal proceedings against Intel Corporation and Intel KK Japan . . . ." This is clearly not the 4/1/05 AMD "First Wave of Document Preservation Notices to approximately 150 custodians" referenced in Herron's 10/24/05 letter. The second notice further states (in the third paragraph): "We are asking key members of the microprocessor solution sector (MSS), or its predecessor-the Computational Products Group (CPG) and other AMD individuals with potentially relevant information to preserve all documents – whether hard copy or electronic-relating to the MSS business." The Frequently Asked Q&A section states in part that "In April 2005, the Company announced the formation of the Microprocessor Solution Section (MSS) . . . . This realignment combined the Computational Product Group (CPG) . . . under one roof. The preservation notice is intended to cover only documents related to what was formally the CPG business-i.e. X86 General Purposed Microprocessors: Opteron, Athlon, Turion, Sempron, and their predecessors." Seemingly, since the first notice was undated but referenced only "key members of CPG," it must have been distributed before the formation of MSS, but we do not know when it was first circulated. Additionally, the second LHN's Q&A has the same reference as contained in the first: "Please be sure to disable any auto-delete features on email (e.g., auto delete of 'sent' email messages)."

Finally, the third undated LHN - - which also references the filing on June 27 of the AMD/Intel legal proceedings - - does not contain the reference in the Q&A to the auto-delete issue but states that "AMD is in the process of migrating the emails of all document custodians to the AMD Enterprise Vault Archival System. The new archival system allows AMD to turn on a feature called 'Journaling' for effected employees. When this feature has been activated for a mailbox, all new emails for that mailbox will be preserved immediately and indefinitely in the archive without any action required on the employees part." Jerry Meeker (AMD IT) informed us that the institution of the Vault System commenced in November of 2005 and we can only

**GIBSON, DUNN & CRUTCHER LLP**

Charles P. Diamond
David Herron
November 7, 2007
Page 4

assume this notice came out around that time but would like confirmation of the date it was first circulated.

  As you can see, there are a number of questions that arise as a result of the three LHNs that you have provided to Intel. One, of course, is whether or not there were any other LHNs sent. The second, is what was the notice sent to the "appropriate IT personnel" on March 11, 2005. The third is what were the approximate dates of the distribution of the three LHNs that we did receive. Additional questions go to when AMD "reasonably anticipated" the filing of the lawsuit against Intel and why AMD chose the beginning of March 2005 (or whenever the first LHN was circulated) as the time to commence its document retention efforts.

  After you have had an opportunity to review this letter, please let me know how you suggest we proceed. If you do not believe that it is AMD's obligation to provide us any further information in this regard, we can have a meet and confer so that the issues can be refined and presented to the Special Master. If you believe that other kinds of exchanges or perhaps even an appropriate Rule 30(b)(6) deposition can be taken, please let us know that too.

  4. Depo Topic #6 asks for details and circumstances concerning any known or suspected non-compliance with the LHNs and the timing and nature of all steps taken following the discovery of any non-compliance. AMD objected to providing a witness (based on burden and over breadth) and indicated it already provided responsive information on 8/10/07, 8/23/07 and 9/14/07. In that correspondence, your office has assured Intel that AMD's document retention was working well and that you are unaware of any "systemic" problem with regard to AMD's document retention efforts. That obviously raises the question of what is meant by "systemic" problems and whether there are any "non-systemic" problems/issues that might have resulted in non-compliance with the LHNs that AMD circulated. We are in need of some form of definitive response in this regard. Perhaps, there was absolutely no problem encountered by AMD and that we were thrown off by the reference to "systemic" in the responses that we received. Regardless, we do need to address this issue.

  5. Depo Topic #7 (RFPs #5 and #6) asks for details and circumstances of any known or suspected document retention failures, whether on a systemic or individual basis, and the preservation of potentially relevant documents on the AMD's Complaint Freeze Tapes, Back-Up Tapes, e-mail journaling system, Enterprise Vault System or hard drives of any AMD custodian. AMD objected on the grounds of burden, over breadth and further indicated that it provided us with some responsive information in the letters referred to in the paragraph above. Perhaps, here again, there is nothing to be discovered and a written response can be agreed upon.

  6. Depo Topic #10 (RFP #7) asks, with regard to each AMD Custodian, (a) the date Custodian's documents were harvested for the Litigation; (b) date on which Custodian was put

GIBSON, DUNN & CRUTCHER LLP

Charles P. Diamond
David Herron
November 7, 2007
Page 5


on Email Journaling System; (c) the date on which Enterprise Vault was first used to capture and preserve Custodian's email; (d) whether Custodian deleted any potentially relevant documents from the hard drive of Custodian's desktop or laptop; (e) whether Custodian has deleted any potentially relevant emails from the Exchange server hosting that Custodian's email; (f) whether any of the Custodian's potentially relevant documents have been lost from the Custodian's hard drive due to file corruption, lost laptop or other means of loss; (g) whether data for the Custodian has been preserved on Monthly Backup Tapes, and if so, what months; and (h) whether the data for the Custodian has been preserved on the Complaint Freeze Tapes. AMD objected to this request on the grounds of burden, over breadth, relevance and additionally that the topic is inappropriate for deposition and to the extent that it requires AMD to restore, load and review back up tapes. We can probably reach some accommodation that will provide Intel with most of the information we have requested (much of which is covered in the requests referred to above) based upon some kind of a written summary. Nevertheless, we do need to address it.

    7. Depo Topic #11 inquires about information concerning whether any "AMD custodian manually deleted or otherwise lost any potentially relevant electronic data prior to the date on which the custodians data was harvested and posed some follow-up questions. Perhaps this request can be responded to when we address Depo Topics #6 and #7 as referenced above.

    As you can see, the discovery questions specifically addressed herein greatly reduce the original requests that we have made and are specifically targeted. After you have had a chance to review this letter, please let me know when you would like to either meet to discuss these issues or whether we can anticipate some kind of written response or both. Thanks very much for your attention to these matters.

Yours very truly,

Richard Levy

RPL/shv/100333314_1.DOC

cc: Robert Cooper
     Kay Kochenderfer
     Daniel Floyd