

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

W. Harding Drane, Jr.
Partner
302  984-6019 Direct Dial
302  658-1192 FAX
wdrane@potteranderson.com

June 25, 2008

**VIA ELECTRONIC FILING, BY HAND & E-MAIL**
The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE  19801

> **Re:** ***Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.,***
> **C.A. No. 05-441-JJF;**
> ***In re Intel Corp.,* C.A. No. 05-1717-JJF; and**
> ***Phil Paul v. Intel Corporation (Consolidated)*, C. A. No. 05-485 (JJF)**

Dear Judge Poppiti:

As this Court directed at the June 20, 2008 hearing, Intel Corp. ("Intel") submits this letter brief on the following two issues:

(1)     Should the time spent deposing the 53 named representatives in the class actions, as well as the upcoming third party 30(b)(6) depositions on the class certification issue, count against the parties' respective deposition hour allotments; and

(2)     Are the 30(b)(6) depositions referenced in (1) above subject to CMO-6, in particular Paragraphs 5 and 6 of that Order.

The short answer to Issue (1) is no.  The basic procedures for scheduling depositions in CMO 6 have been in place in the AMD case for some time, and have never been used for class discovery, and do not work because of the accelerated time schedule.  None of the parties, including the Class, provided the Court any information concerning the discovery previously taken or contemplated, much less argued the time allocation for such discovery.  Intel had expressly made its position clear in writing, i.e., that class discovery should be addressed separately, and no party took issue with that position, or made any argument  or took any position whatsoever in the recent hearing relating to class discovery.  To now simply construe the agreements reached under those circumstances, with those understandings, as applying to class certification discovery will harm Intel significantly and unfairly.  If there is a need to address the  timing  and  protocol  for  the  remaining  class  certification  discovery,  Intel  will participate in good faith.  But the apparent positions being taken by Plaintiffs ignore the record.

Honorable Vincent J. Poppiti
June 25, 2008
Page 2

    With regard to Issue (2), the parties have reached an agreement in principle regarding the application of CMO-6 to the third party depositions at issue. The parties will submit a stipulation for the Court's approval that certain provisions of CMO-6 does not apply to these depositions, provided, that if a third party has not completed its data production at least 14 days prior to the deposition, any party will be entitled to resume the deposition for the sole purpose of examining the third party on the matters fairly raised by the data produced subsequently. This resumed examination will not be barred by the one deposition rule in this case. If the Court is agreeable with this resolution, Issue (2) is no longer in dispute.

Issue 1:    Do the previously taken and scheduled class action depositions count against the
            deposition hour allocations?

    There are currently 53 individuals and entities seeking the status of class representative in the pending class certification motion. This is less than one-half of the individuals and entities that originally brought putative class claims against Intel.[1] Despite this reduction, there are still states with multiple proffered class representatives: Arizona (2); California (9); Florida (3); Minnesota (2); New Mexico (2); New York (2); Vermont (2) and Wisconsin (3). (Class Certification Brief, Exhibit A).

    Intel deposed each of these individuals and entities between January 2008 and April 2008. Those depositions covered three general areas of examination: (1) the details of the plaintiff's computer purchase(s) that purported to bring them with the proposed class definition; (2) their personal knowledge, or lack thereof, regarding the allegations they made against Intel in the FACC; and (3) facts relevant to their adequacy as class representatives. AMD was invited to participate in the depositions, but did not. These were not "merits" depositions as the parties have defined them.

    It is clear that the time spent deposing these individual plaintiffs, on what were predominately class issues, does not count against parties' hour allocation. First, Intel's entire presentation to the Court, including its deposition requests — from which the Court crafted the compromise hour allocations — expressly excluded these depositions. (*See* Exhibit A -- February 15, 2008 Letter from W. Drane at 3 n.2 ("With respect to the class action litigation, Intel recognizes that there will be deposition discovery that does not overlap with the AMD case, that would not be contemplated by [Intel's proposed] schedule, and which will need to be considered separately.")). Intel's Pretrial Statement focused solely on the merits of the Section 2 claim and related merits discovery. Issues in the class action litigation that do not overlap with

_____

[1]    Some of these individual parties were not included in the First Amended Consolidated Complaint ("FACC") filed in April 2006; over 50 of these parties dismissed their claims because they did not want to be deposed.

Honorable Vincent J. Poppiti
June 25, 2008
Page 3

AMD's claim (*e.g.*, class certification issues and the basis for the individual consumer's claims against Intel) were not part of the discussion. The Class was invited to use 20 pages to discuss class only issues, but limited itself to a page on damages – no reference was made to class related discovery, and the Class's current position was not articulated or argued at any time. So, the Court had no information before regarding class discovery, much less a proposed plan.

Further, the Court's initial plan was focused on hour allocations relating the merits deposition program, then proposed to be in four stages. No mention was made of class discovery, and no party argued it. To now apply it to merits discovery in the AMD case would be unfair and highly prejudicial to Intel. Thus, prior to June 20, 2008, Plaintiffs did not challenge Intel's position that depositions in the class action litigation were separate from the merits depositions. They did not take issue with Intel's qualification in its February 15, 2008 submission. They did not address any class discovery needs in their preliminary pretrial filings. Thus, there is simply no basis to argue that these 53 depositions should be counted against Intel's hour allocation.

The same holds true for the third party depositions that Intel has scheduled this summer in connection with its class certification opposition. These depositions were part of the qualification in Intel's February 15, 2008 letter to this Court and formed no part of the number of depositions that Intel proposed in its Preliminary Pretrial Statement. Neither did the Plaintiffs address this deposition discovery in their Statement; in fact, AMD counsel represented to this Court during the June 5, 2008 hearing that even the *merits* depositions of some of these entities (the retailers) had little meaning to AMD. June 5, 2008 Tr. At 41-42.

On this record, the *post hoc* attribution that Plaintiffs urge would be fundamentally inequitable. Just the Class Plaintiffs' depositions would consume 25-30% of Intel's allocation. With respect to the third party class certification depositions, Intel would be forced to use its allocation on issues with which it would be not be concerned but for the class certification motion. Conversely, a decision that these depositions fall outside the hours allocation comports with the record and imposes no prejudice on AMD or the Class. They would retain the budget advantage that this Court afforded them with the allocations, and allow them to participate in the depositions to the extent necessary.

Respectfully submitted,

W. Harding Drane, Jr. (#1023)
*Attorneys for Intel Corporation*

WHD/rb
871427/29282

# EXHIBIT A



**W. Harding Drane, Jr.**
Partner
Attorney at Law
wdrane@potteranderson.com
302 984-6019  Direct Phone
302 658-1192  Fax

Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

February 15, 2008



**VIA ELECTRONIC FILING AND BY HAND**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE  19801-4226

> Re:   *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al., C.A.*
> *No. 05-441-JJF; In re Intel Corporation, C.A. No. 05-MD-1717-JJF;*
> *and Phil Paul, et al. v. Intel Corporation, C.A. 05-485-JJF*

Dear Judge Poppiti:

Intel hereby submits this letter, requesting a conference to discuss the entry of a further case management order addressing the taking of depositions in these matters.  Intel and Plaintiffs have engaged in a lengthy meet and confer process, including correspondence and a face to face meeting, but appear to remain far apart in our views.  Plaintiffs insisted that Intel proceed first, rather than provide simultaneous proposals, followed by simultaneous replies.  In the interests of having this important issue timely addressed, Intel agreed to provide its views first, but does want to be sure that the briefing schedule allows some time for Intel to respond to the proposal AMD submits.[1]

The Federal Rules require that counsel develop a cost-effective plan for discovery, including depositions.  The parties have postponed addressing depositions to deal with the massive document productions.  And the document productions have exceeded all bounds of reason, contrary to the parties' expectations when agreeing to a custodian based approach.  Intel estimates that its custodian based production will approximate 140 million pages of documents.

---

[1] The parties have reached agreement on a number of other deposition related  issues.  They have jointly retained a court reporting service, and have agreed to protocols establishing deposition "point persons" for scheduling, a timetable for noticing depositions, as well as the presumptive locations for depositions.  These agreements will be embodied in a separate stipulation.

The Honorable Vincent J. Poppiti
February 15, 2008
Page 2

This figure does not include data or corporate based requests. Once the AMD production and third party productions are added in, it is clear that more than the equivalent of 200 million pages of documents – easily 9 miles high if printed out – will have been produced. The costs are also at a level both unexpected and stunning. In approaching deposition discovery, it is obvious that a different approach – one focused on a potential trial of this case – must be employed, or this case will be notable as a failure of our litigation system. In the meet and confer process, it was apparent that Plaintiffs were seeking hundreds of depositions, and proposing a five-track deposition process that would simply continue the unmanageable and unnecessarily expensive approach employed to date.

We also presently have an April 2009 trial date. Given the massive amount of work ahead (including document review of the 200 million of pages recently produced or soon to be produced by AMD, Intel and third parties, preparation of expert reports and related discovery, motion practice and trial preparation), Intel believes it is critical that reasonable parameters of deposition discovery be established now, to allow the matter to be litigated at all. As set forth above, the scope and costs of document discovery in this matter are staggering, and it is obvious that it will be an extraordinary challenge and will require aggressive management to develop a reasonable deposition plan.

No party has suggested that the limits on the number and length of depositions in Rule 30(a)(2)(A) and (d)(2) should be strictly adhered to in this case, but the Rule requires by its express terms either a stipulation of the parties or an Order of the Court before the limits are exceeded. *See* FED. R. CIV. P. 30, advisory committee's note ("One aim of [Rule 30(a)(2)(A)] is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties."); *Lopez v. Patrick*, No. 2:05 cv 452, 2007 U.S. Dist. LEXIS 59093, at *2-3 (N.D. Ind. Aug. 7, 2007); *Lloyd v. Valley Forge Life Ins. Co.*, No. C06-5325 FDB, 2007 U.S. Dist. LEXIS 40526, at *5-7 (D. Wash. Mar. 23, 2007). The Federal Rules no longer allow a party to decide unilaterally on the scope of discovery, in favor of a system that requires case management plan up front, reflecting a meaningful balancing of the burdens and benefits from the requested discovery. Intel recognizes that the plan may need to be revised as the deposition process continues, but a first step is a realistic plan.

It is against this backdrop that Intel makes the following proposal for deposition discovery. It is substantially similar to what it proposed to Plaintiffs in the meet and confer process. The proposal has the following components:

1.    There should be basic parity between the sides on the number of depositions. Plaintiffs cannot fairly demand the right to conduct more depositions than Intel. The argument that plaintiffs bear the burden of proof cannot justify inequality in depositions. Plaintiffs get to present their case first at trial, and in a case of this magnitude will have to choose what issues to pursue and what to drop. Intel, on the other hand, must prepare for every eventuality. While Intel has to date agreed to significantly greater discovery burdens, it can no longer do so without being unfairly prejudiced. If events later justify a need on the part of either side for an additional allotment of depositions, that can be addressed by the Court at that time.

The Honorable Vincent J. Poppiti
February 15, 2008
Page 3

2.      No witness should be subjected to more than one deposition, absent Court order based on a showing of compelling circumstances.

3.      Each side would have total of 75 depositions that could be taken without any showing of good cause, divided between 50 party related (current and former employees of a party) depositions and 25 third party witnesses. Expert discovery would be addressed separately. We believe that the parties should up front identify their initial proposed list of deponents, which they would then be free to change, in good faith, based on the progress of deposition discovery. This will give each party the ability to begin and focus preparation on those persons who will be deposed, and not have the burden of attempting to anticipate who from a list of several hundred custodians might be deposed and do unnecessary preparation. The unprecedented volume of documents and the costs of discovery make any other approach unreasonable. Then each party, after exchanging the list of deponents, would also provide preliminary trial witness lists of party related witnesses (which again would be subject to change based on discovery). Each party would also have the right to take the deposition of any person on the other's preliminary witness list or who is subsequently added. Any depositions beyond those set forth here would require a stipulation of the parties, or an individual showing of good cause. Intel would agree to an expedited procedure for consideration of such requests.

These are very significant numbers of depositions under any objective standard, and requiring the parties to plan and prioritize their depositions of the other side's witnesses is reasonable. And if these numbers are inadequate (as Intel believes Plaintiffs will suggest), it is also reasonable to require that a good cause showing be made in the context of specific requests, for specific deponents.[2]

4.      The parties would be allowed presumptively to double-track depositions, but anything beyond that would require agreement of the parties or good cause.

5.      Each party would be able to choose 15 party related witnesses and 10 third party witnesses for 14 hour depositions, to the extent agreed to by the third parties. All other witnesses would be subject to the 7 hour limit. Any witness requiring a translator could be deposed for 1 1/2 times the standard time. Each defending party would have the option of taking up to an additional 2 hours for direct examination on the succeeding day, with a reasonable period allowed for further cross if the opportunity for direct examination is taken.

6.      The parties would each be allowed 10 days of Rule 30(b)(6) deposition, with any additional time requiring a specific showing of good cause.

---

2  With respect to the class action litigation, Intel recognizes that there will be deposition discovery that does not overlap with the AMD case, that would not contemplated in the above schedule, and which will need to be addressed separately

The Honorable Vincent J. Poppiti
February 15, 2008
Page 4

     7.    The cut-off for all custodian document discovery has been set for February 15, 2008. Additionally, all deposition reharvest requests and free throw custodian designations would be made by July 31, 2008. The document production in this case needs to be concluded. Once again, while the parties envisioned a process where additional document production would occur to address issues arising in discovery, that process too must have limits now, in light of the size and costs of the production to date.

     The overwhelming burdens of this litigation, and the interests of the parties, as well as the judicial system require deposition discovery be structured with a clear view to what can realistically be accomplished at a trial and within reasonable time parameters. This deposition plan set forth above will require well over 200 days of actual deposition time, and enormous expenditure of resources on the part of all parties to prepare for these depositions. Even after this ambitious deposition schedule the parties will need meaningful time to complete expert reports and discovery, and engage in pre-trial motion practice. As a result, we believe, based on the considerations above, that the deposition limit must be tuned to the realistic length of any trial, as opposed to one reflexively based on the numbers of custodians. Intel presumes a trial of no longer than about 3 months -- which would be at most about 45-50 trial days of testimony. No jury can be expected to sit longer, or to endure more. This deposition plan would call for many more depositions than there will be trial witnesses. But to allow hundreds of depositions on top of the massive document production would mean that most of the time and money spent would be wasted.

     The huge document productions made by all parties ensure that Intel and Plaintiffs should be extremely well informed about the relevant facts. Filing a monopolization case is not a license for unfocused, unlimited discovery. The limits and procedures set out here will force the parties to figure out what is really important and focus their efforts to that end. *See In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527, 532 (N.D. Ill. 2005). Intel's proposal is intended to facilitate a trial, not to block legitimate discovery. But unless the Court imposes a realistic schedule on the parties now, thus forcing the parties to prioritize and limit deposition discovery upfront, the cost of deposition discovery will be beyond staggering, the trial date will be hopelessly delayed, and a record will be accumulated that cannot possibly be used at trial.

     Respectfully,

W. Harding Drane, Jr. (#1023)

WHD/mho

cc:    The Honorable Vincent J. Poppiti (via electronic mail)
       Charles Diamond, Counsel for AMD (via electronic mail)
       Michael Hausfeld, Interim Class Counsel (via electronic mail)
       Frederick L. Cottrell, III (via electronic mail)
       James L. Holzman (via electronic mail)
#849003/29282

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, W. Harding Drane, Jr., hereby certify that on June 25, 2008 the attached

document was hand delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

Jesse A. Finkelstein
Frederick L. Cottrell, III
Chad M. Shandler
Steven J. Fineman
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801

James L. Holzman
J. Clayton Athey
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

I hereby certify that on June 25, 2008, I have Electronically Mailed the documents

to the following non-registered participants:

Charles P. Diamond
Linda J. Smith
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
cdiamond@omm.com
lsmith@omm.com

Mark A. Samuels
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
msamuels@omm.com

Salem M. Katsh
Laurin B. Grollman
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway, 22nd Floor
New York, New York 10019
skatsh@kasowitz.com
lgrollman@kasowitz.com

Michael D. Hausfeld
Daniel A. Small
Brent W. Landau
Cohen, Milstein, Hausfeld & Toll , P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
mhausfeld@cmht.com
dsmall@cmht.com
blandau@cmht.com

Thomas P. Dove
Alex C. Turan
The Furth Firm LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
tdove@furth.com
aturan@furth.com

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com

Steve W. Berman
Anthony D. Shapiro
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
tony@hbsslaw.com

Michael P. Lehman
Cohen, Milstein, Hausfeld & Toll , P.L.L.C.
One Embarcadero Center, Suite 526
San Francisco, CA  94111
mlehmann@cmht.com

By:   /s/ W. Harding Drane, Jr
        Richard L. Horwitz (#2246)
        W. Harding Drane, Jr. (#1023)
        POTTER ANDERSON & CORROON LLP
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        P.O. Box 951
        Wilmington, DE 19899-0951
        (302) 984-6000
        rhorwitz@potteranderson.com
        wdrane@potteranderson.com
        *Attorneys for Defendants*
        *Intel Corporation and Intel Kabushiki Kasiha*

Dated: June 25, 2008

738395 / 29282