

**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

W. Harding Drane, Jr
Partner
302 984-6019 Direct Dial
302 658-1192 Fax
wdrane@potteranderson.com

July 2, 2008
Public Version Dated: July 2, 2008

**VIA ELECTRONIC FILING, BY HAND & E-MAIL**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 North Market Street
Wilmington, DE 19801

**PUBLIC VERSION**

Re: *Advanced Micro Devices, Inc., et al. v. Intel Corporation, et al.,*
C.A. No. 05-441-JJF;
*In re Intel Corp.*, C.A. No. 05-1717-JJF; and
*Phil Paul v. Intel Corporation (Consolidated)*, C. A. No. 05-485 (JJF) (DM 4A)

Dear Judge Poppiti:

AMD's motion, and Intel's cross-motion, raise a straightforward question: Is Intel entitled to Rule 30(b)(6) discovery, and a modest production of documents, regarding AMD's document retention policies and practices in this case. The answer to that question is clearly yes. An order early in the case from Judge Farnan, which AMD ignores in its motion, permits it; and the Federal Rules of Civil Procedure authorize it. Those authorities, by themselves, are enough to resolve these motions in Intel's favor. But there is more.

Over ten months ago, Intel served a Rule 30(b)(6) notice and a set of document requests on AMD, which AMD said it would not comply with, offering instead to informally provide answers to Intel's questions. AMD thereafter made a number of representations to Intel and the Court about its document retention practices. AMD said that it had investigated the adequacy of these practices, that it had found no failures in them, and that, if it ever did, it would promptly inform Intel and the Court. Pressed by Intel, AMD reluctantly admitted over time that it had, indeed, discovered failures in its retention system. Even if Judge Farnan's prior order, or the Federal Rules, do not provide a basis for Intel's requested discovery (which they obviously do), AMD's own admissions of preservation failures certainly do. But, again, there is even more.

With the assistance of an expert (John Ashley, whose declaration is filed with this cross-motion), Intel has investigated AMD's assertions of perfection, or near perfection, and has uncovered other preservation and production issues, never disclosed by AMD. Both the disclosed and undisclosed issues require discovery:

- Although AMD condemns the retention lapses of Intel executives, AMD's most senior executives were imperfect themselves. For example, although ▮▮▮▮▮ received a notice directing him to preserve relevant emails, forensic analysis indicates that he deleted **96%** of the emails for the period before his email was journaled. Many of the documents were recovered from his "Deleted Items" folder, but others appear to have been permanently deleted, requiring sophisticated forensic recovery efforts. Similar problems appear to have infected other senior executives, including ▮▮▮▮▮ and two vice presidents. AMD has not disclosed these issues; Intel found them only by engaging an expert. Intel is entitled to know if there is more.

- Although AMD has lambasted Intel for not disabling its network-level automatic email deletion policy (something that Intel was not required to do) and has denied that any of its own emails were subject to auto-deletion, we now know that AMD's system allowed individual custodians to maintain their own auto-delete systems, and that at least one senior executive is known to have done so. Intel is entitled to learn, from witnesses under oath, whether there were others.

- Although AMD has criticized Intel for purported delays in delivering hold notices to certain custodians, AMD, it turns out, had its own problems. ▮▮▮▮▮ Intel is entitled to know, through discovery, if there were more.

- Although AMD has attacked Intel for relying on an "honor system" and not installing an automated backup retention system quickly enough, AMD (which was in control of when the lawsuit would be filed) itself implemented no automated system of preserving custodian data until at least seven months after it admits it was under an obligation to preserve data, and ▮▮▮▮▮. Intel is entitled to have such admissions under oath.

- Although AMD has accused Intel of losing saved data, it appears that AMD itself corrupted the PST files of multiple custodians either while collecting their files or while migrating them to or from its Enterprise Vault system. This data corruption may have resulted in the loss of relevant email, but Intel does not know how much.

In the end, AMD, like any litigant, must give discovery, as well as get it. That is particularly true here, where AMD, at least so far, has held its document retention practices up as the standard by which Intel should be judged. If AMD is the standard, and is confident of its self-proclaimed "exemplary" retention program, it should welcome the opportunity to have one or more of its employees testify about that program under oath. Its unwillingness to do so – indeed, its effort to seek the assistance of the Court to avoid it – demonstrates the very reason that formal discovery is now required, and should be ordered.

Based on the prior order in this case, the law, and the facts and circumstances described above, Intel accordingly opposes AMD's motion to quash and cross-moves to compel compliance with its Rule 30(b)(6) deposition notice and document requests.[1]

### *AMD's Claims of "Exemplary" Retention Are Belied by the Reality of its Serious Lapses*

AMD, in its motion to quash, continues to insist (despite what it has been compelled to admit, and ignoring what Intel itself has discovered) that its document retention practices have been "exemplary." That is nothing new. When Intel first inquired about AMD's document retention program in April 2007 [Ex 1], AMD responded that there was no "evidence whatsoever of any systematic failure to preserve documents on AMD's part" and that Intel was just trying to "gin up" problems. [Ex. 2 at 1] Although AMD did agree to review the practices of its custodians, AMD reported several months later that "[its] preservation program appears to be operating as designed and intended; no lapses in that program have been identified." [Ex. 3 at 1] AMD reiterated that claim in several subsequent letters. [Ex. 4 at 1; Ex. 5 at 3]

AMD made the same representation to the Court:

> We . . . told [Intel's counsel] in no uncertain terms that we are unaware of any systemic failure or lapse of AMD's preservation plans or efforts. We have double-checked. That remains the case today. There is absolutely no basis for concern on Intel's part . . . there is no reasonable cause to think that AMD has been derelict in the slightest.

[Ex. 6 at 11-12]

Ample evidence now indicates, however, that AMD has had lapses in document retention at both the individual and "systemic" levels. AMD has grudgingly acknowledged a few of these errors, belatedly and only after multiple inquiries from Intel. Moreover, there are others that Intel discovered or suspects as a result of its own investigative efforts.

The problems involving AMD's most senior executives, like ███████ are illustrative. Expert analysis has confirmed that, in the months before AMD began "journaling" his email account, Mr. ███ deleted 96% of the emails in his files that AMD ultimately determined to be relevant and should be produced in this litigation. [Ashley Decl., ¶¶ 18-19] Mr. ███ deleted those emails even though ███████████████████████████████. Fortunately, AMD appears to have recovered most of the emails from Mr. ███ "Deleted Items" folder, but it appears Mr. ███ also "permanently" deleted PST files of emails from his hard disk drive, requiring special efforts by AMD to try to salvage them. [*Id.*, ¶¶ 22-25] Three other senior AMD executives likewise appear to have been deleting most of their relevant documents before their email was journaled. [*Id.* ¶¶ 18-20] Ironically, AMD's undisclosed remediation efforts for these officers proceeded at the very time

---

[1] Because Intel is both responding to AMD's motion to quash and cross-moving to compel, Intel will adopt AMD's prior practice of using up to eight pages to address both motions. *See* AMD's 2/22/08 Letter to the Hon. Vincent J. Poppiti.

AMD was complaining to Intel that it was "offended at having been put to the time and expense to debunk [Intel's inquiries]." [Ex. 7 at 1] Offended or not, AMD never disclosed the details of the remediation to Intel. Further discovery is needed to enable Intel to understand the circumstances.

There are other examples of lapses in AMD's retention. For example, in March 2008, AMD first acknowledged to Intel that one of its regional sales managers, ███████, inadvertently deleted about three gigabytes of potentially relevant PST files from his computer more than a year earlier. [Ex. 8] According to AMD, Mr. ██ informed AMD's IT department about his mistaken deletion the next business day. Coincidentally, Intel sent AMD a letter shortly thereafter, asking, "Is AMD aware of the loss of any documents potentially relevant to this litigation, and/or any non-compliance with all hold instructions issued to AMD employees, either as a result of human conduct, the operation of a computing system, or otherwise?" [Ex. 1 at 1] In response, AMD's counsel, obviously uninformed by its client of Mr. ██ deletions, denied that any failures had occurred and did not reveal his deletion of emails. [Ex. 2] AMD also did not mention the incident in the May 2007 hearing before the Court [Ex. 6], its August 2007 letter denying any lapses [Ex. 4], or in its November 2007 reassertion of that denial. [Ex. 5 at 2-3] AMD finally disclosed the details of the loss in March 2008, a year after AMD's IT department learned about it and four months after AMD's lawyers learned about it. [Ex. 8]

Mr. ██ is not the only example of an AMD employee whose documents have been destroyed. Several weeks ago, AMD disclosed for the first time a series of retention lapses involving account executive ███████, including loss of a laptop, failed harvest of another laptop, and failure to attempt to harvest a third computer. [Ex. 9 at 7-8] The first of these lapses occurred at some undisclosed time, apparently in the spring of 2006, while the second occurred more than a year ago, in May 2007. [Id.] Intel is entitled to know how these problems were missed, despite AMD's "custodian-by-custodian" review, so Intel can evaluate whether other instances might also have gone unnoticed.

Many of AMD's specific representations to Intel have turned out to be as inaccurate as its general claims that no lapses occurred. AMD has been quick to criticize Intel's auto-delete function and just as quick to claim that its own system was immune from any possible automatic deletion, arguing that AMD's "email communications were being systematically preserved [from auto-delete] at the same time Intel's were being systematically destroyed." [Ex. 2 at 2] Intel naturally questioned these claims ████████████████████████████████████████ [Ex. 10 (FAQ #7)] Finally, several weeks ago, AMD admitted that AMD custodians could configure their email to automatically delete items, and that in fact at least one senior AMD custodian (Vice President ███████) did so. [Ex. 9 at 7]

The issues just discussed may have involved individual custodians, but other problems have been systemic in nature. For instance, AMD has touted its journaling system as the standard by which to compare and condemn Intel's weekly backup tape protocol. [Ex. 2 at 2] But although AMD (unlike Intel) had months of notice that this lawsuit was coming, AMD did not initiate an automated preservation system for *any* of its custodians for at least seven months after the last possible date it can claim to have known of its retention obligations. ████████████████████████████████████████████████████ [Ex. 11] Furthermore,

4

analysis suggests anomalies in the implementation and functioning of that system that appear to have led to data loss. [Ashley Decl. ¶¶ 37-45] Further discovery is necessary to verify whether losses occurred, and if so the extent of the losses.

AMD has also criticized the timing of Intel's distribution of hold notices and, even in the current motion (at 2), presents its own practice as the standard by which to judge Intel. In fact, however, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ AMD took its first (disclosed) concrete step to preserve relevant data in March 2005, thereby acknowledging it had retention obligations by at least that date. [Ex. 12 at 1][2] Yet key employees such as ▆▆▆▆



[Ex. 13] ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ [*Id.*] Intel is entitled to know why.

Moreover, AMD itself has admitted that, in responding to earlier inquiries from Intel, it learned its document harvests had failed, in some cases, to locate relevant PST files. [Ex. 3 at 1] The failure to capture PST data in an initial custodial harvest indicates a flaw in design and/or implementation of the initial harvest, and is also inconsistent with the harvest process that AMD described to Intel. [Ex. 14] Intel is entitled to inquire about potentially faulty data harvests.

### *AMD's Document Retention Lapses Warrant Formal Discovery*

Just as AMD was entitled to take discovery regarding Intel's document retention lapses, Intel is entitled to take discovery regarding AMD's document retention lapses. To begin with, AMD's dismissal (at 2) of Intel's request to take a deposition regarding AMD's document retention as "illicit" contradicts Judge Farnan's May 16, 2006, Case Management Order. That Order expressly authorizes the discovery that Intel seeks: "Prior to or shortly after the deadline for completing document production . . . Intel, AMD and class plaintiffs may depose the document custodian or custodians responsible for the productions to them to inquire into the completeness of document production (including electronic discovery)." [Ex. 15 at 3-4][3]

In any event, the fundamental premise of AMD's motion (that discovery on document and retention issues is unusual and disfavored) is mistaken. Although AMD suggests (at 4) its "[r]esearch reveals no case" supporting Intel's request to take a Rule 30(b)(6) deposition[4] and obtain documents, the precedent for permitting the discovery Intel seeks is overwhelming – even absent the sorts of lapses that have occurred here.

Fed. R. Civ. P. 26(b)(1) expressly provides that "[p]arties may obtain discovery regarding . . . the existence, description, nature, custody, condition, and location of any documents," and

---

[2] Intel believes, and is entitled to prove through discovery, that AMD contemplated litigation long before it began its retention program. If Intel is correct, thousands of relevant documents were likely destroyed while AMD and its counsel were putting this case together.

[3] The parties later stipulated to other CMOs, but the point is that AMD previously agreed to, and the Court ordered, the very discovery AMD now portrays as "illicit."

[4] AMD conveniently forgets *this* case, where Judge Farnan, with AMD's agreement, permitted this very discovery.

the commentary to recently adopted Fed. R. Civ. P. 26(f) observes that "[i]n appropriate cases identification of, and early discovery from, individuals with special knowledge of a party's computer systems may be helpful." As AMD's longtime outside counsel in its legal battles with Intel (O'Melveny & Myers partner Patrick Lynch) has written, "it is valuable to take an opening round of [Rule 30(b)(6)] depositions [regarding] . . . how the opponent's relevant documents and records are kept, the opponent's document retention policies, [and] what steps the opponent has taken to assure retention of documents." 2 *Bus. & Com. Litig. Fed. Cts.* § 20:27 (2d ed. 2007).

Courts also routinely compel discovery on the topics and documents that are listed in Intel's discovery requests. For example, courts regularly grant discovery of parties' record retention policies and practices.[5] The methods a party uses to collect responsive documents are also a proper subject for discovery.[6] Understanding a party's information system is likewise fundamental to assessing its retention program, and discovery on that topic is equally proper.[7] Whether a party lost data and whether its custodians have followed preservation instructions are also important questions that parties may pursue through discovery.[8] That is particularly so

---

[5] *See LG Philips LCD Co. v. Tatung Co.*, 2007 WL 2908183, at *7 (D. Del. Oct. 1, 2007) (permitting Rule 30(b)(6) deposition on "retention policies and procedures and/or the adherence or suspension of such policies in connection with this litigation") (Poppiti, Special Master); *Doe v. District of Columbia*, 230 F.R.D. 47, 55-56 (D.D.C. 2005) ("Rule 26(b)(1) may be construed to allow for discovery of document production policies and procedures" finding plaintiff entitled to Rule 30(b)(6) discovery "as to the 'existence,' 'custody,' or 'condition' of documents, thereby establishing defendant's policies and procedures of document retention and production"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 1054279, at *4 (D. Kan. April 9, 2007) (allowing Rule 30(b)(6) deposition on email retention policies).

[6] *See LG Philips*, 2007 WL 2908183, at *7 (permitting Rule 30(b)(6) deposition on "retrieval of the Recent Discovery, including efforts [taken] to gather and search for the Recent Discovery"); *In re eBay Seller Antitrust Litig.*, 2007 WL 2852364, at *1-2 (N.D. Cal. Oct. 2, 2007) (ordering eBay to provide deposition witness to testify regarding its "ESI preservation and collection efforts"); *Doe*, 230 F.R.D. at 55-56 (permitting Rule 30(b)(6) testimony regarding "process used to collect the documents that have been produced or will be produced").

[7] *See Heartland Hosp.*, 2007 WL 1054279, at *1 (ordering additional Rule 30(b)(6) deposition on "[t]he capabilities of the computer systems and software"); *Vennet v Am. Intercont'l Univ. Online*, 2007 WL 4442321, at *4 (N.D. Ill. Dec. 13, 2007) ("Plaintiffs are entitled to conduct a Rule 30(b)(6) deposition concerning [defendant's] computer network").

[8] *See eBay*, 2007 WL 2852364, at *1-2 (holding plaintiffs "are entitled to inquire into the *facts* as to what the employees receiving the [hold notices] have done in response," including what the employees "are *doing* with respect to collecting and preserving ESI") (emphasis in original); *LG Philips*, 2007 WL 2908183, at *2, *7 (permitting Rule 30(b)(6) deposition regarding adherence to retention policies). AMD itself, in its December 28, 2007 motion to compel (at 3), has cited authority in which the court compelled discovery to determine whether evidence had been lost. *See Peskoff v. Faber*, 244 F.R.D. 54, 63 (D.D.C. 2007).

6

where, as here, there are apparent anomalies in a party's document production.[9] Indeed, the only case that AMD cites confirms the propriety of Intel's requests.[10]

AMD apparently believes that Intel should content itself with whatever informal information AMD and its lawyers deign to provide. Intel is not required to settle for that. The fact of the matter is that informal discovery has not progressed because AMD either denies its problems, couches its answers in artful forms that simply beg more questions or refuses to answer at all. Given the inaccuracy and incompleteness of AMD's past statements and its refusal to provide information voluntarily, Intel should not be required to rely on AMD's unsworn representations that its retention practices have been "exemplary."[11]

### *AMD Has Put Its Document Retention Practices at Issue by Raising Them as a Standard by Which to Judge Intel*

Even if AMD's systems and practices were not otherwise discoverable, discovery would be appropriate in this case because AMD itself has injected them into the case. In every letter and filing, including the current motion, AMD has compared Intel's supposedly egregious behavior with its own supposedly exemplary conduct. AMD cannot have it both ways. If it wants to rely on its own practices to establish the standard of conduct in a case such as this – and frankly, given AMD's statements and filings, the genie is already out of the bottle on that issue – it must allow Intel to discover whether its contentions withstand scrutiny. If, as Intel believes and the available information suggests, AMD has not lived up to its own standards of near-perfection, the Court should consider those facts in assessing whether AMD has some remediation to do and in ruling on any motion for sanctions that AMD may ultimately file.

### *The Discovery Intel Requests Is Well-Tailored and Not Unduly Burdensome*

AMD's motion characterizes Intel's discovery requests (at 1, 2, and 4) as a "scorched earth offense" through which Intel seeks to impose "enormous burden and expense" and conduct an "electronic colonoscopy." The truth is more mundane: Intel has asked for routine Rule 30(b)(6) discovery along with a limited production of carefully specified documents. [Exs. 17, 18]

---

[9] *See Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 WL 818061, at *2, *4, *6-7 (D. Del. Apr. 30, 2002) (granting motion to compel discovery regarding hold notices, retention policies, and IT infrastructure based on gaps in document production); *Peskoff*, 244 F.R.D. at 55, 58, 61-63 (compelling forensic discovery based on gaps and anomalies in a pary's production).

[10] In *Alexander v. FBI*, 188 F.R.D. 111 (D.D.C. 1998), a case decided before the 2006 amendments to the Federal Rules, the party seeking discovery merely speculated that defendants had failed to produce responsive documents. *Id.* at 115. Even then, the court rejected the defendant's "undue burden" argument and allowed a Rule 30(b)(6) deposition into the defendant's document retention practices. *Id.* at 117-20. Here, by contrast, AMD has already admitted lapses in its data retention. Thus, *Alexander* actually supports Intel's motion to compel.

[11] As if to prove the point, on the eve of Intel's filing, AMD disclosed yet another lapse. AMD failed to harvest hard drives and external storage of its ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. [Ex. 16]

7

AMD comes nowhere close to carrying its burden of showing – on a request-by-request basis – that Intel's discovery requests are unduly burdensome.[12] Instead, AMD rests on scattershot claims of burden and specifically addresses (at 4) only a single deposition topic. As to that lone topic, AMD does not even attempt to argue that Intel should be deprived of the information sought. In fact, that request seeks information about journaling dates, harvest dates, data loss, and data preservation via backup tapes – all of which is plainly discoverable information. Instead of criticizing the content of the requests, AMD exaggerates the burden of answering. AMD neglects to mention that it has already provided some of the information sought for some custodians ███████████████████████. As to other sections of the request, AMD wrongly assumes (at 4) that Intel would ask the same questions over and over for each AMD custodian rather than making overarching requests (*e.g.*, for the identities of custodians who suffered a particular problem) and then homing in on particular issues. AMD's characterization of Intel's discovery requests as "burdensome" is especially jarring in the context of this complex case. Indeed, AMD recently sought to take nearly 500 depositions on the merits of the case. [Ex. 19 ] In a case of this magnitude, Intel's modest requests are hardly unduly burdensome.

*Intel Never Waived Its Right to Discovery*

Finally, AMD suggests (at 1-3) that Intel agreed to waive its right to discovery, apparently relying on a November 7, 2007 letter from Intel. But AMD fails to quote Intel's express reservation of rights in that very letter: "[i]n delineating certain issues now, *it is not our intention to waive the right to pursue the discovery requested in the August 22, 2007 Notice and Request* but instead to see if we can address the certain targeted issues."[13] Neither in that letter nor elsewhere did Intel ever make the agreement AMD describes. [Ex. 22]

Intel certainly appreciates the complexity of data retention in the electronic age and recognizes that perfect (or even near-perfect) retention practices are neither expected nor possible in electronic discovery efforts of this magnitude. But that is not to say that AMD can evade routine discovery into its data preservation and production protocols. Simply put, despite AMD's bluster, Intel's discovery requests are well-founded in fact and law, and they do not impose an undue burden. The Special Master should therefore reject AMD's attempt to prevent Intel from learning the facts about AMD's retention lapses, and grant Intel's cross-motion to compel the deposition and document discovery that Intel has been seeking for more than ten months.

---

[12] *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he party resisting discovery 'must show specifically how [each discovery request] is not relevant or how each question is overly broad, burdensome or oppressive.") (citation omitted); *Powell v. S. Jersey Marina, Inc.*, 2007 WL 2234513, at *2 (M.D. Pa. Aug. 1, 2007) (the party seeking to preclude discovery must provide more than "[m]ere recitation of the familiar litany" of discovery objections).

[13] [Ex. 20 at 1 (emphasis added)] This language echoed the language Intel used in response to another AMD offer to provide information informally rather than produce a deponent: "we are not intending to waive any rights Intel may have to insist that [the noticed Rule 30(b)(6)] deposition was appropriately noticed and should go forward." [Ex. 21 at 3]

Respectfully submitted,

*/s/ W. Harding Drane, Jr.*

W. Harding Drane, Jr. (#1023)
*Attorneys for Intel Corporation*

WHD:rb

CERTIFICATE PURSUANT TO
DISTRICT OF DELAWARE LOCAL RULE 7.1.1

Counsel for Defendants has consulted with counsel for Plaintiff pursuant to District of Delaware Local Rule 7.1.1, and has determined that Plaintiff will not consent to the relief sought in the attached letter brief. Details regarding counsel's efforts to reach agreement are set forth in the attached letter brief.

Dated: July 2, 2008                                      /s/ W. Harding Drane, Jr.
                                                         W. Harding Drane, Jr. (#2246)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

    I, W. Harding Drane, Jr., hereby certify that on July 2, 2008 the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

| | |
|---|---|
| Jesse A. Finkelstein | James L. Holzman |
| Frederick L. Cottrell, III | J. Clayton Athey |
| Chad M. Shandler | Prickett, Jones & Elliott, P.A. |
| Steven J. Fineman | 1310 King Street |
| Richards, Layton & Finger | P.O. Box 1328 |
| One Rodney Square | Wilmington, DE 19899 |
| 920 North King Street | |
| Wilmington, DE 19801 | |

    I hereby certify that on July 2, 2008, I have Electronically Mailed the documents to the following non-registered participants:

| | |
|---|---|
| Charles P. Diamond | Mark A. Samuels |
| Linda J. Smith | O'Melveny & Myers LLP |
| O'Melveny & Myers LLP | 400 South Hope Street |
| 1999 Avenue of the Stars, 7th Floor | Los Angeles, CA 90071 |
| Los Angeles, CA 90067 | msamuels@omm.com |
| cdiamond@omm.com | |
| lsmith@omm.com | |
| | |
| Salem M. Katsh | Michael D. Hausfeld |
| Laurin B. Grollman | Daniel A. Small |
| Kasowitz, Benson, Torres & Friedman LLP | Brent W. Landau |
| 1633 Broadway, 22nd Floor | Cohen, Milstein, Hausfeld & Toll, P.L.L.C. |
| New York, New York 10019 | 1100 New York Avenue, N.W. |
| skatsh@kasowitz.com | Suite 500, West Tower |
| lgrollman@kasowitz.com | Washington, D.C. 20005 |
| | mhausfeld@cmht.com |
| | dsmall@cmht.com |
| | blandau@cmht.com |

Thomas P. Dove
Alex C. Turan
The Furth Firm LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
tdove@furth.com
aturan@furth.com

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111
guido@saveri.com
rick@saveri.com

Steve W. Berman
Anthony D. Shapiro
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
steve@hbsslaw.com
tony@hbsslaw.com

Michael P. Lehman
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
One Embarcadero Center, Suite 526
San Francisco, CA 94111
mlehmann@cmht.com

By: /s/ W. Harding Drane, Jr
Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com
*Attorneys for Defendants*
*Intel Corporation and Intel Kabushiki Kasiha*

Dated: July 2, 2008

738395 / 29282

2