# Exhibit [1]

Article L.421-7 du Code de la consommation



*Legifrance* .gouv.fr

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

# Code de la consommation

▸ <u>Partie législative</u>
   ▸ <u>Livre IV : Les associations de consommateurs</u>
      ▸ <u>Titre II : Actions en justice des associations</u>
         ▸ <u>Chapitre Ier : Action exercée dans l'intérêt collectif des consommateurs</u>
            ▸ <u>Section 3 : Interventions en justice.</u>

### Article L421-7

Les associations mentionnées à l'article L. 421-1 peuvent intervenir devant les juridictions civiles et demander notamment l'application des mesures prévues à l'article L. 421-2, lorsque la demande initiale a pour objet la réparation d'un préjudice subi par un ou plusieurs consommateurs à raison de faits non constitutifs d'une infraction pénale.

Cite:
<u>Code de la consommation - art. L421-1 (V)</u>
<u>Code de la consommation - art. L421-2 (V)</u>

Anciens textes:
<u>Loi n°88-14 du 5 janvier 1988 - art. 5 (Ab)</u>



# Exhibit [2]

## Article L.421-7 of the French Consumer Code

# Exhibit [     ]

## Article L. 421-7 of the French Consumer Code



**Article L. 421-7 of the French Consumer Code**

The associations mentioned in Article L. 421-1 may intervene before civil courts and, in particular, request the application of the measures provided for in Article L. 421-2, where the initial application is aimed at making whole any damage suffered by one or more consumers due to events not constituting a criminal offence.



Je, soussignée, Karen RE...
Traductrice Expert près la Cour d'Appel
d'Amiens certifie que la traduction qui
précède est conforme à l'original
libellé en langue ...française...
visé ne varietur sous le n° ...4019...
Fait à ...Paris..., le ...01/07/08
(signature exempte de légalisation
Décret n° 53914 Art. 8 du 26.9.1953).

# Exhibit [3]

## Article L.421-1 du Code de la consommation et article L.420-6 du Code de commerce



**Legifrance** .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de la consommation

▶ Partie législative
  ▶ Livre IV : Les associations de consommateurs
    ▶ Titre II : Actions en justice des associations
      ▶ Chapitre Ier : Action exercée dans l'intérêt collectif des consommateurs
        ▶ Section 1 : Action civile.

### Article L421-1

Les associations régulièrement déclarées ayant pour objet statutaire explicite la défense des intérêts des consommateurs peuvent, si elles ont été agréées à cette fin, exercer les droits reconnus à la partie civile relativement aux faits portant un préjudice direct ou indirect à l'intérêt collectif des consommateurs.

Les organisations définies à l'article L. 211-2 du code de l'action sociale et des familles sont dispensées de l'agrément pour agir en justice dans les conditions prévues au présent article.

Cite:
**Code monétaire et financier - art. L614-6 (Ab)**

Cité par:
**Code de l'action sociale et des familles - art. L211-3 (V)**
**Code de la consommation - art. L421-2 (V)**
**Code de la consommation - art. L421-3 (V)**
**Code de la consommation - art. L421-6 (M)**
**Code de la consommation - art. L421-6 (M)**
**Code de la consommation - art. L421-6 (V)**
**Code de la consommation - art. L421-7 (V)**
**Code de la santé publique - art. L3355-1 (V)**
**Code de la santé publique - art. L3512-1 (M)**
**Code de la santé publique - art. L3512-1 (V)**

Anciens textes:
**Loi n°88-14 du 5 janvier 1988 - art. 1 (Ab)**
**Loi n°88-14 du 5 janvier 1988 - art. 1, v. init.**

8977
110, rue Jeanne d'Arc - 80000 AMIENS - FRANCE
Karen RENEL-KING
Expert - Traducteur
ASSERMENTÉ
près les tribunaux
Tél 03 22 89 04 72 - Fax 03 22 89 45 86



**Legifrance** .gouv.fr

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de commerce

▶ Partie législative
  ▶ LIVRE IV : De la liberté des prix et de la concurrence.
    ▶ TITRE II : Des pratiques anticoncurrentielles.

### Article L420-6
Modifié par Ordonnance n°2000-916 du 19 septembre 2000 - art. 3 (V) JORF 22 septembre 2000 en vigueur le 1er janvier 2002

Est puni d'un emprisonnement de quatre ans et d'une amende de 75000 euros le fait, pour toute personne physique de prendre frauduleusement une part personnelle et déterminante dans la conception, l'organisation ou la mise en oeuvre de pratiques visées aux articles L. 420-1 et L. 420-2.

Le tribunal peut ordonner que sa décision soit publiée intégralement ou par extraits dans les journaux qu'il désigne, aux frais du condamné.

Les actes interruptifs de la prescription devant le Conseil de la concurrence en application de l'article L. 462-7 sont également interruptifs de la prescription de l'action publique.

Cite:
Code de commerce. - art. L420-1 (M)
Code de commerce. - art. L420-2 (M)
Code de commerce. - art. L462-7 (M)

Cité par:
Loi n°2002-1062 du 6 août 2002 - art. 14 (V)
Code de commerce. - art. L420-7 (M)
Code de commerce. - art. L420-7 (V)
Code de commerce. - art. L462-6 (M)
Code de commerce. - art. L462-6 (V)

Anciens textes:
Ordonnance n°86-1243 du 1 décembre 1986 - art. 17 (Ab)
Ordonnance n°86-1243 du 1 décembre 1986 - art. 17 (M)



# Exhibit [4]

## Article L.421-1 of the French Consumer Code and article L.420-6 of the French Commercial Code

Exhibit [    ]

---

**Article L. 421-1 of the French Consumer Code and
Article L. 420-6 of the French Commercial Code**

---



### Article L. 421-1 of the French Consumer Code

Duly declared associations whose statutory object expressly provides for the protection of consumers' interests may, if they are approved for this purpose, exercise the rights conferred upon civil parties in respect of events directly or indirectly prejudicing the collective interest of consumers.

The organizations defined in Article L. 211-2 of the French Family and Social Welfare Code are not required to obtain any approval prior to instituting legal proceedings under the conditions provided for in this article.

110, rue Jeanne d'Arc - 80000 AMIENS - FRANCE
Karen RENEL-KING
Expert - Traducteur
ASSERMENTÉ
près les tribunaux
Tél 03 22 89 04 72 - Fax 03 22 89 45 98

## Article L. 420-6 of the French Commercial Code

**(as amended by Ordinance No. 2000-916 of 19 September 2000 – Art. 3 (V) Official Gazette of the French Republic 22 September 2000 in force on 1 January 2002)**

May incur a penalty of imprisonment of four years and a fine of € 75,000 any natural person who fraudulently plays a personal and essential role in the design, organization or implementation of any practices referred to in Articles L. 420-1 and L. 420-2.

The court may order that its decision be published, in full or in excerpts, in such newspapers as it shall determine, at the expense of the condemned person.

Any action tolling the statute of limitations before the Competition Council under Article L. 462-7 shall also toll the statute of limitations as regards the public prosecution procedure.

Je, soussignée, Karen RENEL, Traductrice Expert près la Cour d'Appel d'Amiens certifie que la traduction qui précède est conforme à l'original libellé en langue ..f.r.a.n.ç.a.i.s.e.......... visé ne varietur sous le n° ...........0.1.17... Fait à ....F.a.l.l.a............ , le ...1/05/04 (signature exempte de légalisation Décret n° 53914 Art. 8 du 26.9.1953).



# Exhibit [5]

## Article L.422-1 du Code de la consommation



**Legifrance** .gouv.fr

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de la consommation

▶ Partie législative
  ▶ Livre IV : Les associations de consommateurs
    ▶ Titre II : Actions en justice des associations
      ▶ Chapitre II : Action en représentation conjointe.

### Article L422-1
Créé par Loi 93-949 1993-07-26 annexe JORF 27 juillet 1993

Lorsque plusieurs consommateurs, personnes physiques, identifiés ont subi des préjudices individuels qui ont été causés par le fait d'un même professionnel, et qui ont une origine commune, toute association agréée et reconnue représentative sur le plan national en application des dispositions du titre Ier peut, si elle a été mandatée par au moins deux des consommateurs concernés, agir en réparation devant toute juridiction au nom de ces consommateurs.

Le mandat ne peut être sollicité par voie d'appel public télévisé ou radiophonique, ni par voie d'affichage, de tract ou de lettre personnalisée. Il doit être donné par écrit par chaque consommateur.

Cité par:
**Code de la consommation – art. L422-2 (V)**
**Code de la consommation – art. L422-3 (V)**
**Code de la consommation – art. R*422-1 (V)**
**Code de la consommation – art. R*422-3 (V)**

Anciens textes:
**Loi n°88-14 du 5 janvier 1988 – art. 8-1 (Ab)**



# Exhibit [6]

## Article L.422-1 of the French Consumer Code

# Exhibit [    ]

## Article L. 422-1 of the French Consumer Code



**Article L. 422-1 of the French Consumer Code**
**Inserted by Act 93-949 of 26 July 1993, published in the Schedule to the Official Gazette of the French Republic of 27 July 1993**

Where several identified consumers, who are natural persons, have suffered individual losses caused by the same merchant and having a common origin, any approved association recognized as a representative association at national level pursuant to the provisions of Title I may, if duly appointed by no fewer than two of the consumers concerned, institute legal proceedings seeking indemnification on behalf of these consumers before any court.

The appointment of the said association may not be sought by means of a public appeal on radio or television, or by poster placement, leaflets or customized letters. The relevant appointment must be made in writing by each consumer.

Je, soussignée, Karen RENEL, Traductrice Expert près la Cour d'Appel d'Amiens certifie que la traduction qui précède est conforme à l'original libellé en langue ..................................
visé ne varietur sous le n° ....................
Fait à ..................., le ...................
(signature exempte de légalisation
Décret n° 53914 Art. 8 du 26.9.1953).

# Exhibit [7]

## Article R.422-1 et article R.422-2 du Code de la consommation



**Legifrance** .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de la consommation

▸ Partie réglementaire - Décrets en Conseil d'Etat
  ▸ Livre IV : Les associations de consommateurs
    ▸ Titre II : Action en justice des associations
      ▸ Chapitre II : Action en représentation conjointe.

### Article R*422-1
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

Les consommateurs qui, sur le fondement des dispositions de l'article L. 422-1, entendent demander réparation des préjudices qui ont été causés par le fait du même professionnel et qui ont une origine commune peuvent donner à une association agréée de consommateurs le mandat d'agir en leur nom devant les juridictions civiles, dans les conditions fixées par le présent chapitre.

Sauf convention contraire, le mandat ainsi déterminé ne comporte pas devoir d'assistance.

Cite:
Code de la consommation - art. L422-1 (V)

Anciens textes:
Décret 92-1306 1992-12-11 art. 1





## Code de la consommation

▶ Partie réglementaire - Décrets en Conseil d'Etat
  ▶ Livre IV : Les associations de consommateurs
    ▶ Titre II : Action en justice des associations
      ▶ Chapitre II : Action en représentation conjointe.

### Article R*422-2
Créé par Décret n°97-298 du 27 mars 1997 - art. 1 (V) JORF 3 avril 1997

Le mandat doit être écrit, mentionner expressément son objet et conférer à l'organisation nationale agréée de consommateurs le pouvoir d'accomplir au nom du consommateur tous les actes de procédure.

Le mandat peut prévoir en outre :

1° L'avance par l'organisation nationale agréée de consommateurs de tout ou partie des dépenses et des frais liés à la procédure ;

2° Le versement par le consommateur de provisions ;

3° La renonciation de l'organisation nationale agréée de consommateurs à l'exercice du mandat, après mise en demeure au consommateur par lettre recommandée avec demande d'avis de réception dans le cas où l'inertie de celui-ci est susceptible de ralentir le déroulement de l'instance ;

4° La représentation du consommateur par l'organisation nationale agréée lors du déroulement de mesures d'instruction ;

5° La possibilité pour l'organisation nationale agréée d'exercer au nom du consommateur les voies de recours, à l'exception du pourvoi en cassation, sans nouveau mandat.

**Anciens textes:**
**Décret 92-1306 1992-12-11 art. 2**



# Exhibit [8]

## Articles R.422.1 and R.422-2 of the French Consumer Code

# Exhibit [    ]

## Articles R. 422-1 and R. 422-2 of the French Consumer Code



## Article R* 422-1 of the French Consumer Code

<u>Inserted by Decree No. 97-298 of 27 March 1997 – Art. 1 (V) Official Gazette of the French Republic of 3 April 1997</u>

Consumers who, on the basis of the provisions of Article L. 422-1, intend to seek the indemnification of losses caused by the same merchant and having the same origin, may appoint by way of an agency agreement an approved organization of consumers in order to act on their behalf in civil courts, in accordance with the terms set forth in this Chapter.

Unless otherwise agreed, the agency agreement so made does not entail any obligation to provide support.



**Article R* 422-2 of the French Consumer Code**

<u>Inserted by Decree No. 97-298 of 27 March 1997 – Art. 1 (V) Official Gazette of the French Republic of 3 April 1997</u>

The agency agreement must be made in writing and expressly state its purpose and grant to the nationally approved association of consumers the power to complete, in the consumer's name, all procedural actions.

The agency agreement may also provide for:

1° An advance made by the nationally approved association of consumers in respect of all or part of the expenses and costs related to the procedure;

2° The payment of advances by the consumer;

3° The possibility for the nationally approved association of consumers to waive the performance of the agency agreement, after sending a formal notice to the consumer by registered mail return receipt requested in the event that the consumer's inertia is likely to slow down the process of the procedure;

4° Representation of the consumer by the nationally approved association of consumers upon performance of any investigation procedure;

5° The possibility, for the nationally approved association, of exercising, in the consumer's name, any remedies, except for an appeal before the Cour de Cassation, without execution of any further agency agreement.

Je, soussignée, Karen RENEL, Traductrice Expert près la Cour d'Appel d'Amiens certifie que la traduction qui précède est conforme à l'original libellé en langue .....Anglaise.............. visé ne variétur sous le n° ..84/79............ Fait à ......Amiens.........., le ..27/05/08...... (signature exempte de légalisation Décret n° 53914 Art. 8 du 26.9.1953).



# Exhibit [9]

## Jugement du Tribunal de commerce de Paris, 15ème chambre, 6 décembre 2007, RG 2006057440

A

**\*2006057440\***     CL\*- Page 1

Demandeurs : 3543
Défendeurs : 2
Me Jean-Luc SCHMERBER (P.179)
Me Carole JOSEPH-WATRIN (E.791)

**TRIBUNAL DE COMMERCE DE PARIS**

**JUGEMENT PRONONCE LE 6 DECEMBRE 2007**

**QUINZIEME CHAMBRE**

RG 2006057440
15.09.2006

***ENTRE*** : Monsieur Sébastien AMBLARD, demeurant 8 Rue François LEVEQUE (33300) BORDEAUX.

INTERVENANTS VOLONTAIRES :

- L'UNION FEDERALE DES CONSOMMATEURS QUE CHOISIR, Association loi du 1er juillet 1901, agréée en qualité d'organisation de consommateurs, dont le siège social est situé 11 Rue Guénot 75555 PARIS CEDEX 11, représentée par son Président, Monsieur Alain BAZOT, domicilié en cette qualité audit siège.
- Mademoiselle Corinne Abate, née le 1/5/1967 à SAVIGNY SUR ORGE, de nationalité française, Commerçants et assimilés (salariés de leur entreprise), demeurant BL4 151 rue du Château des rentiers, 75013 PARIS.
- Monsieur Axelle ABBADIE, né le 30/7/1951 à Alger, de nationalité française, Sans profession, demeurant 247 avenue Daumesnil, 75012 Paris.
- Monsieur Mohammed Abbas, né le 7/6/1972 à Alger, de nationalité française, Sans profession, demeurant 3 A rue de l'académie, 13001 Marseille.
- Monsieur Mohamed Abdelli, né le 7/7/1976 à Sidi Embarek (ALGERIE), de nationalité française, Sans profession, demeurant le Panoramic 2, route des certes, 74500 Evian-les-bains.
- Mademoiselle Nadia ABDELSADOK, née le 28/2/1974 à Antony, de nationalité française, Sans profession, demeurant 18 ter rue doré, 77000 Melun.
- Monsieur MOHAMED ABI AYAD, né le 17/9/1971 à PARIS, de nationalité française, Sans profession, demeurant 5 RUE WURTZ, 75013 PARIS.
- Monsieur Michaël Abitbol, né le 18/10/1977 à Vincennes, de nationalité française, Professions intermédiaires de la santé et du travail social, demeurant 10, rue Victor Letalle, 75020 Paris.
- Monsieur Adam ABREU, né le 24/6/1951 à Amarante, de nationalité portugaise, Ingénieurs et cadres techniques d'entreprises, demeurant 8 Rue Girard 78100 St Germain en Laye.

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 277

santé et du travail social, demeurant lycée la Hotoie rue du
Bâtonnier Mahiu BP 6, 80 016 Amiens cedex.
- Mademoiselle Gwendoline Ziolkowski, née le 1/10/1980 à
Gonesse, de nationalité française, Ouvriers qualifiés de la
manutention, du magasinage et du transport, demeurant 15,
rue de Bertinghen, 62200 Boulogne/mer.
- Monsieur HADEF ZITOUNI, né le 11/7/1979 à COLOMBES, de
nationalité française, Sans profession, demeurant 12 BIS
AVENUE LORNE, 92700 COLOMBES.
- Mademoiselle Elisabeth Zozaya, née le 9/6/1965 à Biarritz,
de nationalité française, Professions intermédiaires de la
santé et du travail social, demeurant 123 bis avenue de
Lodève, 34056 Montpellier.
*PARTIES DEMANDERESSES* assistées de Maître Jérôme FRANCK
avocat (C.1284) et comparant par Maître Jean-Luc SCHMERBER
avocat (P.179).

*ET* : SA BOUYGUES TELECOM, (RCS de NANTERRE B 397.480.930),
dont le siège social est situé 20 Quai du point du Jour Arcs
de Seine 1 (92100) BOULOGNE BILLANCOURT, représentée par son
Président Directeur Général, Monsieur Philippe MONTAGNER.
*PARTIE DEFENDERESSE* assistée de la SELAS VOGEL & VOGEL
avocats (P.151) et comparant par Maître *Carole JOSEPH-WATRIN*
avocat (E.791).

**APRES EN AVOIR DELIBERE**

**LES FAITS**

La SA BOUYGUES TELECOM est un opérateur de téléphonie mobile.
Après une enquête et une instruction qui ont été effectuées à
la suite d'une auto saisine du Conseil de la Concurrence et
d'une saisine de l'association UFC-Que Choisir, le Conseil de
la Concurrence, par une décision du 30 novembre 2005,
confirmée par un arrêt de la Cour d'Appel de Paris en date du
12 décembre 2006, a sanctionné la SA BOUYGUES TELECOM et les
sociétés ORANGE France et SFR pour des comportements prohibés
par l'article L 420-1 du Code de Commerce et l'article 81 du
traité instituant la Communauté Européenne, à savoir :
    - d'une part, avoir régulièrement, de 1997 à 2003, échangé
des informations confidentielles relatives au marché de la
téléphonie mobile sur lequel elles opèrent, de nature à
réduire l'autonomie commerciale de chacun des trois
opérateurs et donc à altérer la concurrence sur ce marché
oligopolistique,

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 278

- d'autre part s'être entendues, pendant les années 2000 à 2002 pour stabiliser leurs parts de marché respectives autour d'objectifs définis en commun.
Par un arrêt du 29 juin 2007, la Cour de Cassation a cassé et annulé l'arrêt de la Cour d'Appel de Paris du 12 décembre 2006, mais seulement en ses dispositions retenant des faits d'entente en raison d'échanges d'informations de 1997 à 2003.

**LA PROCEDURE**

Par **assignation du 29 août 2006** Monsieur Sébastien AMBLARD demande au Tribunal de :
Vu les articles 30 et 31 du NCPC
Vu le décret n°2005-1756 du 30 décembre 2005
    -déclarer recevables les demandes de Monsieur Sébastien AMBLARD

Vu l'article 81 du Traité CE,
Vu les articles L 420-1, L 420-7 et L 464-2 du Code de Commerce,
Vu les articles 1353 et 1382 du Code Civil,
Vu la décision du Conseil de la Concurrence du 30 novembre 2005,
    - constater que la SA BOUYGUES TELECOM a commis une pratique anticoncurrentielle,
    - dire que ces faits sont constitutifs d'une faute dolosive,
    - condamner la SA BOUYGUES TELECOM à payer la somme de 67,20 €, sauf à parfaire, à Monsieur Sébastien AMBLARD, à titre de dommages intérêts,
    - dire que cette somme produira intérêts au taux légal à compter du jugement à intervenir,
    - condamner la SA BOUYGUES TELECOM à lui payer la somme de 150 € au titre de l'article 700 du NCPC
    - condamner la SA BOUYGUES TELECOM aux dépens.

Par **conclusions d'intervention volontaire du 13 octobre 2006**, l'UNION FEDERALE DES CONSOMMATEURS QUE CHOISIR (ci-après UFC QUE CHOISIR) demande au Tribunal de :
Vu les articles 325 et 328 du NCPC
Vu les articles L 421-1 et L 421-7 du Code de la Consommation,
    - déclarer recevables les demandes présentées par l'UFC QUE CHOISIR,

Vu l'article 81 du Traité CE,



Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 279

Vu les articles L 420-1, L 420-7 et L 464-2 du Code de Commerce,
Vu les articles 1353 et 1382 du Code Civil,
Vu l'article L 421-1 du Code de la Consommation
Vu la décision du Conseil de la Concurrence du 30 novembre 2005,
    - constater que la SA BOUYGUES TELECOM a commis une pratique anticoncurrentielle,
    - dire que ces faits sont constitutifs d'une faute dolosive,
    - condamner la SA BOUYGUES TELECOM à payer, à l'association UFC QUE CHOISIR, la somme de 55.559,22 €, à titre de dommages intérêts,
    - dire que cette somme produira intérêts au taux légal à compter du jugement à intervenir,
    - condamner la SA BOUYGUES TELECOM à payer à l'association UFC QUE CHOISIR, la somme de 7.000 € au titre de l'article 700 du NCPC,
    - ordonner l'exécution provisoire,
    - condamner la SA BOUYGUES TELECOM aux dépens.

Par **conclusions d'intervention volontaire du 22 décembre 2006** Mademoiselle Corinne ABATE et divers autres intervenants volontaires dont la liste est annexée dans la procédure, demandent au Tribunal de :
Vu les articles 325 et 328 du NCPC,
Vu les articles L 420-1, L 420-7 et L 464-2 du Code de Commerce,
Vu l'article 1382 du Code Civil,
Vu la décision du Conseil de la Concurrence du 30 novembre 2005,
    - déclarer recevable l'intervention volontaire de Mademoiselle Corinne ABATE et des autres intervenants précités,
En conséquence,
    - constater que la SA BOUYGUES TELECOM a commis une pratique anticoncurrentielle,
    - dire que ces faits sont constitutifs d'une faute et engagent la responsabilité civile de la SA BOUYGUES TELECOM,
    - condamner la SA BOUYGUES TELECOM à payer à chacun la somme mentionnée dans la liste...
    - dire que cette somme produira intérêts au taux légal à compter du jugement à intervenir,
    - condamner la SA BOUYGUES TELECOM à payer à chacun la somme de 150 € au titre de l'article 700 du NCPC,

110, rue Jeanne d'Arc 80000 AMIENS FRANCE
Karen RENEL-KING
Expert - Traducteur
ASSERMENTÉ
près les tribunaux
Tél 03 22 89 04 72 - Fax 03 22 89 46 86
8980

Tribunal de Commerce de Paris                    RG N° : 2006057440
Jugement prononcé le 6 décembre 2007
15ème Chambre                                    CL* – Page 280

Par **sommation de communiquer du 13 mars 2007 versée à la procédure le 29 mars 2007** les conseils de la SA BOUYGUES TELECOM font sommation au conseil de Monsieur Sébastien AMBLARD, de l'association UFC QUE CHOISIR, et des autres intervenants volontaires de communiquer des informations relatives aux sources de l'étude ALTEX

Par **conclusions sur les exceptions de procédure du 29 mars 2007** la SA BOUYGUES TELECOM demande au Tribunal de :

Vu les articles 110 et 117 du NCPC,
Vu les articles L 421-7 et 422-1 du Code de la Consommation,
Vu la loi du 31 décembre 1971,

    - in limine litis surseoir à statuer tant qu'une décision définitive et non susceptible de recours n'aura pas été rendue dans l'affaire ayant donné lieu à la décision du Conseil de la Concurrence du 30 novembre 2005, relative à des pratiques constatées dans le secteur de la téléphonie mobile,
    - in limine litis, prononcer la nullité de l'assignation et de chacune des interventions volontaires,
    - si les exceptions de procédure soulevées par la SA BOUYGUES TELECOM, ne devaient pas être retenues, réserver à la SA BOUYGUES TELECOM le droit et la possibilité de conclure au fond,
    - en tout état de cause, condamner l'UFC QUE CHOISIR, à payer à la SA BOUYGUES TELECOM la somme de 6.000 €  au titre de l'article 700 du NCPC, ainsi qu'aux dépens.

Par **conclusions en réponse sur les exceptions de procédure du 24 mai 2007**, Monsieur Sébastien AMBLARD, l'association UFC QUE CHOISIR, et les autres intervenants volontaires demandent au Tribunal de :
    - leur donner acte de ce qu'ils ne s'opposent pas à la demande de sursis à statuer pour autant que l'événement mettant un terme à celui-ci soit l'arrêt de la Cour de cassation à intervenir,
    - leur donner acte de ce que la SA BOUYGUES TELECOM reconnaît que la preuve de la faute reprochée par les concluants  est constituée par la décision du Conseil de la Concurrence du 30 novembre 2005,
    - rejeter les exceptions de nullité soulevées,
    - faire droit aux demandes des concluants, telles qu'exposées dans l'acte introductif d'instance, et les conclusions d'intervention volontaire.

110, rue Jeanne d'Arc - 80000 AMIENS FRANCE
Karen RENEL-KING
Expert - Traducteur
ASSERMENTE
près les tribunaux
Tél 03 22 80 04 72 - Fax 03 22 80 45 88

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 281

Lors de l'audience du 24 mai 2007 le tribunal a confié l'affaire, sur l'incident de communication, à l'examen d'un juge rapporteur qui a convoqué les parties à son audience du 14 juin 2007.

Par **conclusions en réponse sur les exceptions de communication de pièces régularisées à l'audience du juge rapporteur du 14 juin 2007** Monsieur Sébastien AMBLARD, l'association UFC QUE CHOISIR, et les autres intervenants volontaires demandent au juge rapporteur de :
    - se déclarer incompétent et renvoyer la SA BOUYGUES TELECOM à mieux se pourvoir devant la formation de jugement du tribunal de céans,
A titre subsidiaire,
    - débouter la SA BOUYGUES TELECOM de sa demande,
    - donner acte aux concluants de ce que les pièces versées aux débats ont été régulièrement communiquées à la SA BOUYGUES TELECOM.

Par **deux jeux de conclusions en réponse régularisées à l'audience du juge rapporteur du 14 juin 2007** la SA BOUYGUES TELECOM demande au Tribunal de :
    - déclarer l'exception d'incompétence du juge rapporteur irrecevable et mal fondée,
    - faire injonction à Monsieur Sébastien AMBLARD, à l'association UFC QUE CHOISIR, et aux autres intervenants volontaires de communiquer :
    . les sources chiffrées utilisées dans le rapport ALTEX ayant permis d'établir les graphiques et tableaux figurant aux pages 46 et 53, étant précisé que ces sources devront être produites sous forme de copie de la source d'origine invoquée, sa date de publication et son éditeur,
    . la base de calcul retenue et notamment la répartition entre les trois marchés nordiques,
    . et la formule de calcul retenue pour calculer les points ayant permis d'établir la courbe et les tableaux des pages 46 et 53 de l'étude ALTEX.

Par **jugement du 21 juin 2007**, le tribunal a renvoyé la cause à l'audience du juge rapporteur pour entendre les parties sur l'incident communication et les exceptions de procédure.

Par **courrier du 23 juillet 2007 adressé au juge rapporteur et joint à la procédure**, le conseil de Monsieur Sébastien AMBLARD, de l'association UFC QUE CHOISIR, et des autres intervenants volontaires transmet copie de la lettre

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 282

officielle adressée au conseil de la SA BOUYGUES TELECOM et par laquelle il indique communiquer les documents, objet de l'incident de communication.

Par **conclusions en réponse régularisées à l'audience du juge rapporteur du 20 septembre 2007, conclusions sur les exceptions de procédure et sur la demande d'injonction de communication de pièces et conclusions en réponse régularisées à l'audience du juge rapporteur du 5 octobre 2007** la SA BOUYGUES TELECOM demande au Tribunal, dans le dernier état de ses écritures, de
Vu les articles 110, 117 et 133 du NCPC,
Vu les articles L 421-7 et 422-1 du Code de la consommation,
Vu la Loi du 31 décembre 1971,
1. Lui accorder le bénéfice de ses précédentes écritures,
2. In limine litis, prononcer la nullité de l'assignation et de chacune des interventions volontaires,

3. A titre subsidiaire, si l'exception soulevée par SA BOUYGUES TELECOM ne devait pas être retenue, constater que les demandeurs n'ont toujours pas communiqué à ce jour :
    - les bases de calcul de la courbe tendancielle sur laquelle, ils fondent leurs demandes d'indemnisation,
    - et l'intégralité des sources chiffrées des graphes figurant aux pages 18 et 26 de l'étude ALTEX.
En conséquence,
Faire injonction aux demandeurs de communiquer :
    - la méthode de calcul retenue pour passer des tendances observées sur les trois marchés nordiques à la courbe dite « de référence » de la page 46,
    - les sources chiffrées des graphes figurant aux pages 18 et 26 de l'étude ALTEX,
ainsi que de lever toute incohérence sur les documents figurant dans le CD-ROM.

4. A titre subsidiaire, si l'exception de nullité soulevée par SA BOUYGUES TELECOM ne devait pas être retenue, rejeter la demande tendant à ce que le tribunal donne acte aux demandeurs « *de ce que la société BOUYGUES TELECOM reconnaît que la preuve de l'entente reprochée [par eux] est constituée par la décision du conseil de la Concurrence du 30 novembre 2005* », puisque tel n'est nullement le cas et que cette demande est au surplus irrecevable.

5. A titre subsidiaire, si l'exception de nullité soulevée par SA BOUYGUES TELECOM ne devait pas être retenue, réserver

Tribunal de Commerce de Paris                    RG N° : 2006057440
Jugement prononcé le 6 décembre 2007
15ème Chambre                                    CL*– Page 283

en tout état de cause à SA BOUYGUES TELECOM le droit et la possibilité de conclure sur le fond et de lui accorder un délai suffisant pour le faire,

6. En tout état de cause, condamner l'UFC QUE CHOISIR à payer à la SA BOUYGUES TELECOM la somme de 6.000 € sur le fondement de l'article 700 du NCPC, ainsi qu'aux dépens.

**Par conclusions en réponse sur les exceptions de procédure et l'incident communication de pièces régularisées à l'audience du juge rapporteur du 20 septembre 2007 et conclusions en réponse sur les exceptions de procédure et l'incident communication de pièces régularisées à l'audience du juge rapporteur du 5 octobre 2007,** Monsieur Sébastien AMBLARD, l'association UFC QUE CHOISIR, et les autres intervenants volontaires demandent au Tribunal, dans le dernier état de leurs écritures, de
    - leur accorder le bénéfice de leurs précédentes écritures,
    - donner acte aux concluants de ce que la SA BOUYGUES TELECOM reconnaît que la preuve de la faute reprochée par les concluants est constituée par la décision du Conseil de la Concurrence du 30 novembre 2005 devenue définitive,
    - constater que la SA BOUYGUES TELECOM a renoncé à sa demande de sursis à statuer devenue sans objet en raison du rejet du pourvoi prononcé par arrêt du 29 juin 2007,
    - donner acte aux concluants de ce que les pièces versées au débat ont été régulièrement communiquées à la SA BOUYGUES TELECOM,
    - en conséquence, déclarer la demande de la SA BOUYGUES TELECOM sans objet et l'en débouter,
    - rejeter les exceptions de nullité soulevées,
    - enjoindre la SA BOUYGUES TELECOM de conclure en réponse sur le bien fondé des demandes,
    - en tout état de cause, faire droit aux demandes des concluants, telles qu'exposées dans l'acte introductif d'instance, et les conclusions d'intervention volontaire.

Après avoir entendu les parties sur les exceptions de procédure, et l'incident communication de pièces, lors de son audience du 5 octobre 2007, le juge rapporteur a clos les débats et indiqué que le jugement sur ces points, mis en délibéré, sera prononcé le 6 décembre 2007.



Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 284

## SUR LA NULLITE DE L'ASSIGNATION ET DES INTERVENTIONS VOLONTAIRES

### Moyens des parties

La SA BOUYGUES TELECOM soutient que l'association UFC QUE CHOISIR a commis un détournement de procédure et violé les dispositions législatives interdisant le démarchage juridique et régissant l'action en justice des consommateurs.

La SA BOUYGUES TELECOM affirme que la violation des règles régissant le démarchage est constituée par le fait que l'association UFC QUE CHOISIR a :

   - d'une part mis en ligne sur son site Internet un calculateur de préjudice individuel utilisable par tout internaute et non réservé à ses seuls adhérents. La SA BOUYGUES TELECOM fait valoir que proposer une évaluation d'un préjudice personnel, c'est à l'évidence donner un avis personnalisé sur une question juridique, le préjudice étant l'un des éléments constitutifs de la responsabilité civile ;

   - d'autre part pris contact par courriel personnalisé avec les internautes ayant laissé leurs coordonnées sur le site www.cartelmobile.org, pour les inviter à se joindre à une action contentieuse, qu'ils soient ou non ses adhérents.

La SA BOUYGUES TELECOM souligne que ce n'est que de manière formelle que l'action apparaît comme ayant été introduite par Monsieur Sébastien AMBLARD, auquel l'association UFC QUE CHOISIR et d'autres clients de BOUYGUES TELECOM se seraient joints par la suite.

La SA BOUYGUES TELECOM soutient qu'en réalité, l'action a été planifiée et orchestrée par l'association UFC QUE CHOISIR qui a choisi de donner au litige l'apparence de la licéité formelle.

La SA BOUYGUES TELECOM fait valoir que l'association a mandaté un expert chargé d'évaluer le préjudice de chaque client, que c'est en se fondant sur cette étude que l'assignation a été introduite facialement au nom de M.AMBLARD, par l'avocat habituel de l'association UFC QUE CHOISIR.

La SA BOUYGUES TELECOM ajoute que l'association UFC QUE CHOISIR a de même organisé l'intervention volontaire des autres clients et les a pris en charge, demandant aujourd'hui le remboursement des frais que ceci a induit pour elle.

La SA BOUYGUES TELECOM affirme que non seulement les règles de l'intervention volontaire des associations de consommateurs ont été violées, mais encore celles régissant l'action en représentation conjointe ont été détournées.

Karen RENEL-KING
Expert - Traducteur
ASSERMENTÉ
près les tribunaux
110, rue ... 80000 AMIENS FRANCE
Tél 03 22 89 04 72 - Fax 03 22 89 45 88

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 285

La SA BOUYGUES TELECOM soutient que ces infractions constituent des irrégularités de fond, au sens de l'article 117 du NCPC, qui affectent la validité tant de l'acte introductif d'instance que des interventions volontaires.

Monsieur Sébastien AMBLARD, l'association UFC QUE CHOISIR, et les autres intervenants volontaires répliquent que les causes de nullité prévues par l'article 117 du NCPC, ont un caractère limitatif.
Ils font valoir que la SA BOUYGUES TELECOM n'allègue ni ne justifie que les demandeurs personnes physiques seraient frappés d'une incapacité d'ester en justice et ils soulignent que l'association UFC QUE CHOISIR est dûment représentée par son président, comme le prévoient les statuts.

Les demandeurs répliquent encore que les conditions d'un démarchage irrégulier ne sont pas réunies, qu'en effet ce dernier supposerait
    - un acte positif par lequel une offre de service serait faite à une personne,
    - en vue de proposer une prestation de service juridique dans le cadre d'un contrat à titre onéreux,
que ces éléments font défaut dans le cas présent.

L'association UFC QUE CHOISIR conteste qu'elle ait violé les règles régissant les actions ouvertes aux associations agréées de consommateurs et soutient que son action est fondée sur les dispositions de l'article L 421-1 du Code de la Consommation qui vise la protection des intérêts collectifs, distincts de la somme des intérêts individuels, et non sur celles de l'article L 422-1 qui vise l'action en représentation conjointe.
Elle ajoute qu'il ne saurait lui être reproché d'avoir favorisé le regroupement des victimes individuelles au moyen des dispositions existantes du NCPC, dont les demandeurs soutiennent qu'elles ont été respectées, plutôt que d'avoir choisi la voie de l'action en représentation conjointe

**Sur ce**

*Sur la qualification de l'action au regard du Code de la Consommation*

110, rue Jeanne d'Arc - 80000 AMIENS - FRANCE
Karem RENEL-KING
Expert - Traducteur
ASSERMENTÉ
près les tribunaux
Tél 03 22 89 04 72 - Fax 03 22 89 45 68

RG N° : 2006057440

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

CL* – Page 286

Attendu que l'action a été introduite par Monsieur AMBLARD qui réclame réparation de son préjudice, que l'UFC QUE CHOISIR est intervenue volontairement à l'instance, en sa qualité d'association agréée pour demander réparation du préjudice d'intérêt collectif sur le fondement des articles L 421-1 et L 421-7 du Code de la Consommation, que les autres intervenants volontaires se sont ultérieurement joints à l'instance,

Attendu qu'il est constant que dès le 1er décembre 2005, soit le lendemain de la décision du Conseil de la Concurrence, l'UFC QUE CHOISIR, sur son site Internet et par voie de distribution de tract invitait chaque abonné au téléphone mobile à « estimer son préjudice personnel, …, à soutenir son action » et indiquait qu'elle « se mobilisait afin que le préjudice de chaque abonné soit réparé par les opérateurs concernés »,

Attendu que, après avoir donné son adresse email et reçu un code confidentiel, le consommateur avait accès sur un site www.cartelmobile.org au calculateur de préjudice et se voyait indiquer à une rubrique intitulée « comment agir ? » : « L'UFC QUE CHOISIR se mobilise afin que le préjudice de chaque abonné soit réparé. Comme des milliers de consommateurs, pour vous joindre à son action, il vous suffit de créer votre dossier, en cliquant ici… »,

Attendu que le document intitulé « conditions d'engagement » souscrit par le consommateur, ayant fait le choix de se joindre à l'action, précise que l'UFC QUE CHOISIR choisira l'avocat qui engagera l'action au nom de l'abonné,

Attendu que la SA BOUYGUES TELECOM verse au débat plusieurs emails, datés de février et avril 2006, reçus par des consommateurs ayant donné leurs coordonnées, émanant de CARTELMOBILE- UFC QUE CHOISIR, dans lesquels, sous les titres « Derniers jours pour agir ou Dernières semaines pour agir et obtenir justice », on peut lire notamment : « … l'UFC QUE CHOISIR a engagé une action à l'encontre de chacun des opérateurs à laquelle peut se joindre tout abonné mécontent »,

Attendu que l'UFC QUE CHOISIR indiquait donc, sans ambiguïté, aux consommateurs, qu'elle leur proposait de se joindre à l'action qu'elle disait avoir engagée à l'encontre des opérateurs téléphoniques, et ce avant même que l'action n'ait été introduite par M. AMBLARD,

Attendu qu'il n'est pas contesté que ce sont les consommateurs ayant adhéré à la démarche initiée par l'UFC QUE CHOISIR dès le 1er décembre 2005, qui sont intervenus volontairement à l'instance,

Karen RENEL-KING
Expert - Traducteur
ASSERMENTÉ
près les tribunaux
110, rue Jeanne d'Arc - 80000 AMIENS FRANCE
Tél 03 22 89 04 72 - Fax 03 22 80 45 88

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 287

Attendu que M. AMBLARD qui a introduit l'action par acte du 29 août 2006, fait lui-même expressément référence, pour la détermination du préjudice dont il demande réparation, à l'étude réalisée, à la demande de l'UFC QUE CHOISIR, par le Cabinet ALTEX,

Attendu qu'il n'a pu avoir accès au calculateur qu'après avoir fait la même démarche que les autres consommateurs précités,

Attendu que l'avocat, mandataire de M. AMBLARD et, à ce titre, signataire de l'assignation, est également l'avocat de l'UFC QUE CHOISIR et des autres intervenants volontaires,

Attendu qu'il apparaît ainsi que l'action de M. AMBLARD a été, en réalité, conduite par l'UFC QUE CHOISIR, dans les mêmes conditions que celles des intervenants volontaires,

Attendu que le tribunal en déduit que la présente action a été initiée et organisée par l'UFC QUE CHOISIR, que l'action doit donc s'analyser comme une action en représentation conjointe et donc satisfaire aux dispositions des articles L 422-1 et R 422-1 et suivants du Code de la Consommation,

### Sur les conditions de l'action en représentation conjointe

Attendu que l'article L 422-1 dispose que le mandat obtenu des consommateurs ayant subi des préjudices individuels, par une association agréée pour agir en réparation « ne peut être sollicité par voie d'appel public télévisé ou radiophonique, ni par voie d'affichage, ni par voie de tract ou de lettre personnalisée. Il doit être donné par écrit par chaque consommateur. »,

Attendu que la SA BOUYGUES TELECOM soutient que l'ensemble de la communication organisée par l'UFC QUE CHOISIR sur ses sites Internet www.quechoisir.org et www.cartelmobile.org, constitue un démarchage juridique illicite, tant au regard des articles 66-4 de la loi du 31 décembre 1971 et 1er du décret du 25 août 1972, que de l'article L 422-1 du Code de la consommation,

Attendu que l'UFC QUE CHOISIR fait valoir en réponse que

1° Les intervenants volontaires, parties à l'instance, ont pris contact avec l'UFC QUE CHOISIR pour rejoindre de leur propre initiative une action tendant à faire valoir leurs droits et à soutenir l'action politique de l'association en faveur de l'instauration d'une véritable action de groupe, que la prestation proposée par l'UFC QUE CHOISIR n'était nullement un service à caractère marchand, mais un ralliement à la cause défendue par l'association, dans l'intérêt de tous les consommateurs.

2° Il n'est pas sérieux de soutenir que la mise à disposition du consommateur d'un calculateur de préjudice

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 288

individuel constitue une consultation juridique au sens de la loi sur le démarchage juridique. Il s'agissait d'une démarche d'information rentrant pleinement dans la mission de l'UFC QUE CHOISIR, mentionnée dans ses statuts et non réservée à ses seuls adhérents.

3° Plusieurs démarches personnelles et actives du consommateur vers l'UFC QUE CHOISIR étaient nécessaires pour qu'il ait connaissance de la possibilité de constituer un dossier en ligne afin de demander en justice réparation de son préjudice personnel aux cotés de l'UFC QUE CHOISIR. Dans ces conditions, il n'est pas possible de parler de démarchage juridique, et ce d'autant plus que l'UFC QUE CHOISIR indiquait au consommateur qu'il avait la possibilité de mener une procédure indépendante.

4° Il ne s'agissait pas d'un contrat proposé à titre onéreux.

Attendu que l'UFC QUE CHOISIR est une association de consommateurs agréée en application des articles L 111-1 et suivants du Code de la consommation,

Attendu que, selon ses statuts, elle a pour objet « de promouvoir, d'appuyer et relier entre elles les actions individuelles ou collectives de consommateurs…tendant à garantir…la défense de leurs intérêts individuels et collectifs, de favoriser la prise en charge des problèmes de consommation par les consommateurs et usagers eux-mêmes…de mettre à la disposition des consommateurs et usagers les moyens d'information… qui leur sont utiles… »,

Attendu que la mise à disposition des consommateurs, gracieusement, du « calculateur de préjudice », apparaît au tribunal conforme à la mission d'information dévolue à l'association dans son objet social,

Attendu de même que la proposition faite par l'UFC QUE CHOISIR de se joindre à l'action organisée par elle, de choisir le même conseil en vue d'obtenir réparation du préjudice est conforme à l'objet social de l'UFC QUE CHOISIR, en sa qualité d'association agréée,

Attendu cependant que le Code de la Consommation définit précisément les conditions dans lesquelles les associations agréées peuvent mener leur action,

Attendu que le tribunal a estimé que l'action présente, au-delà de ses apparences formelles, constitue une action en représentation conjointe, régie par les dispositions de l'article L 422-1 du Code de la Consommation,

Attendu qu'il est établi que l'UFC QUE CHOISIR a relancé certains des abonnés qui lui avait donné leurs coordonnées

110, rue Jean...
Karen RENEL-KING
Expert - Traducteur
ASSERMENTÉ
près les tribunaux
Tél 03 22 89 04 72 - Fax 03 22 89 45 69

RG N° : 2006057440

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007          CL* – Page 289
15ème Chambre

email en leur adressant des messages personnalisés, que cette action est explicitement interdite par l'article L 422-1 qui dispose qu'un mandat ne peut être sollicité par voie de lettre personnalisée,

Attendu que l'UFC QUE CHOISIR a de ce fait contrevenu aux dispositions régissant l'action en représentation conjointe ;

## *Sur la validité des actes de procédure*

Attendu que la SA BOUYGUES TELECOM soutient que l'infraction à l'interdiction de démarchage constitue une irrégularité de fond, au sens de l'article 117 du NCPC, qui affecte la validité tant de l'acte introductif d'instance que des interventions volontaires,

Attendu que Monsieur Sébastien AMBLARD, l'association UFC QUE CHOISIR, et les autres intervenants volontaires répliquent que la SA BOUYGUES TELECOM n'allègue ni ne justifie que les demandeurs personnes physiques seraient frappés d'une incapacité d'ester en justice et ils soulignent que l'association UFC QUE CHOISIR est dûment représentée par son président, que les conditions de l'article 117 du NCPC, qui ont un caractère limitatif, ne sont donc pas réunies,

Attendu toutefois que sauf à faire perdre aux dispositions de l'article L 422-1 toute portée, l'infraction à l'interdiction du démarchage juridique, qui n'est assortie dans la loi d'aucune sanction à caractère pénal, contrairement à la loi du 31 décembre 1990 interdisant le démarchage juridique, ne peut qu'invalider l'action introduite en conséquence dudit démarchage, que le Tribunal estime, en effet, que l'adage « la fraude corrompt tout » doit, au cas d'espèce, s'appliquer,

Attendu, au surplus, que les actes de procédure ne satisfont pas aux conditions de forme imposées par le Code de la Consommation à l'action en représentation conjointe, qu'en particulier l'association UFC QUE CHOISIR ne justifie pas avoir été mandatée, par les personnes physiques qui se sont jointes à son action, dans les conditions des articles R 422-1 et R 422-2 du Code de la consommation,

Attendu qu'en conséquence le tribunal déclarera irrecevables l'assignation et les interventions volontaires ;

## *Sur les autres demandes*

Attendu qu'il n'y a lieu de statuer sur les autres demandes,

Attendu cependant que la SA BOUYGUES TELECOM a dû pour faire reconnaître ses droits exposer des frais non compris dans les dépens, qu'il serait inéquitable de laisser à sa charge et

Tribunal de Commerce de Paris
Jugement prononcé le 6 décembre 2007
15ème Chambre

RG N° : 2006057440

CL* – Page 290

qu'il est donc justifié de lui allouer par application de
l'Article 700 du NCPC l'indemnité demandée de 6.000 € qui sera
mise à la charge de l'association UFC QUE CHOISIR,

PAR CES MOTIFS

Le Tribunal statuant publiquement par jugement contradictoire
en premier ressort

Déclare irrecevables l'assignation et les interventions
volontaires,

Condamne L'UNION FEDERALE DES CONSOMMATEURS QUE CHOISIR à
verser à la SA BOUYGUES TELECOM la somme de 6.000 € au titre
de l'article 700 du Nouveau Code de Procédure Civile,

Condamne L'UNION FEDERALE DES CONSOMMATEURS QUE CHOISIR
aux dépens dont ceux à recouvrer par le Greffe liquidés à la
somme de : 2873,04 TTC (dont TVA. 470,62 EUROS).

Confié lors de l'audience du 21 juin 2007 à Monsieur
REIGNIER, en qualité de Juge Rapporteur.

Mis en délibéré le 5 octobre 2007.

Délibéré par Messieurs LUCQUIN, REIGNIER et DUGRENOT et
prononcé à l'audience publique où siégeaient :

Monsieur GERONIMI, Président, Messieurs BOUCHER,
REIGNIER, SPILET et LE MAU DE TALANCE, Juges, assistés de Monsieur
DURAFOUR, Greffier. Les parties en ayant été préalablement avisées.
La minute du jugement est signée par le Président du délibéré et le
Greffier.



# Exhibit [10]

# Judgment entered by the Paris Commercial Court, 15th Chamber, 6 December 2007, General Docket No 200657440

# Exhibit [    ]

---

## Judgment entered by the Paris Commercial Court, 15th Chamber, 6 December 2007, General Docket No. 2006057440



Paris Commercial Court                    General Docket No. 2006057440
Decision entered on 6 December 2007
15th Chamber                              CL* - Page 284

## CONCERNING THE NULLITY OF THE WRIT OF SUMMONS AND THE VOLUNTARY INTERVENTIONS

### Causes of action submitted by the parties

SA BOUYGUES TELECOM contends that UFC QUE CHOISIR misused applicable procedural rules and breached the legislative provisions prohibiting any legal canvassing and governing legal actions instituted by consumers.

SA BOUYGUES TELECOM states that the violation of the rules governing canvassing consists in the fact that UFC QUE CHOISIR has:

- one the one hand, placed on its website an individual loss calculator that could be utilized by any Internet user and was not reserved solely for the association's own members. SA BOUYGUES TELECOM contends that the fact of proposing an evaluation of a personal loss obviously amounts to giving a customized opinion on a legal issue, as the loss is one of the constitutive elements of any liability in tort;

- on the other hand, UFC QUE CHOISIR contacted by customized email those Internet users who had registered their particulars on the www.cartelmobile.org website, in order to propose that such Internet users participate in a law suit, whether or not they were members of the association.

SA BOUYGUES TELECOM emphasizes that only from a formal standpoint does the action seem to have been instituted by Mr. Sébastien AMBLARD, in whose action UFC QUE CHOISIR and other customers of BOUYGUES TELECOM subsequently participated.

SA BOUYGUES TELECOM claims that in reality the action was planned and orchestrated by UFC QUE CHOISIR which chose to give to this suit the appearance of formal lawfulness.

SA BOUYGUES TELECOM submits that UFC QUE CHOISIR appointed an expert responsible for evaluating the loss sustained by each customer and that, on the basis of this study, the writ of summons was instituted apparently in the name of Mr. AMBLARD, by the customary attorney of UFC QUE CHOISIR.

SA BOUYGUES TELECOM adds that UFC QUE CHOISIR also organized the other customers' voluntary intervention and assumed the cost thereof, and now seeks the reimbursement of the expenses borne by it because of such assumption.

SA BOUYGUES TELECOM claims that not only have the rules governing the voluntary intervention of consumer associations been breached, but also that the rules governing joint actions have been breached.



Paris Commercial Court                General Docket No. 2006057440
Decision entered on 6 December 2007
15th Chamber                          CL* - Page 285

SA BOUYGUES TELECOM contends that these violations are substantive in nature, within the meaning of Article 117 of the French New Code of Civil Procedure (NCPC) and that they affect the validity of the statement of claim and the voluntary interventions.

Mr. Sébastien AMBLARD, UFC QUE CHOISIR and the other parties filing a voluntary intervention respond that the causes of nullity provided for in Article 117 NCPC are limitative in nature.
They contend that SA BOUYGUES TELECOM does not allege or prove that those plaintiffs who are natural persons have lost their capacity to file legal proceedings. They emphasize that UFC QUE CHOISIR is duly represented by its Chairman, as set forth in the association's by-laws.

The plaintiffs further submit that the conditions required in order to characterize any legal canvassing are not satisfied here, as such canvassing would require:
  - a positive action, through which an offer of services would be made to a person
  - the goal of such proposal being the supply of legal services through a contract entailing the payment of a valuable consideration.

UFC QUE CHOISIR denies having breached the rules governing actions available to approved consumer associations and contends that its action is based on the provisions of Article L. 421-1 of the French Consumer Code, which aims at protecting collective interests, separately from the aggregate of individual interests, and is not based on the provisions of Article L. 422-1 which governs joint actions.
UFC QUE CHOISIR submits that it may not be accused of having fostered the grouping of individual victims by relying on the existing provisions of the NCPC (the plaintiffs claim that the said provisions have been complied with, instead of choosing to institute a joint action).


Whereupon, the Court


<u>As regards the characterization of the action under the French Consumer Code</u>



Paris Commercial Court                    General Docket No. 2006057440
Decision entered on 6 December 2007
15th Chamber                              CL* - Page 286

The action was filed by Mr. AMBLARD who seeks the indemnification of his loss. UFC QUE CHOISIR intervened voluntarily in this suit, in its capacity as an association approved in order to seek the protection of a collective interest under Articles L. 421-1 and L. 421-7 of the French Consumer Code. The other parties subsequently joined this suit on a voluntary basis.

It appears that, as early as 1 December 2005, i.e. the day following the decision entered by the Competition Council, UFC QUE CHOISIR invited, on its website and through the circulation of leaflets, each cell phone holder to "estimate his personal loss and support its action" and indicated that it "was making any effort so that the loss suffered by each subscriber would be indemnified by the relevant operators."

After consumers provided their email address and received a confidential code, they were given access to a loss calculator on a site named www.cartelmobile.org, and were told the following "How should you act? UFC QUE CHOISIR is making any possible effort so that the loss suffered by each subscriber be cured. With thousands of consumers, you may join UFC's action. You only need to create your file, by clicking here…"

The document entitled "engagement terms" filed by consumers who chose to join the action indicates that UFC QUE CHOISIR shall choose the attorney who shall institute the action in the subscriber's name.

SA BOUYGUES TELECOM adduces as evidence several emails dated February and April 2006 received by consumers who had entered their particulars on the said site from CARTELMOBILE – UFC QUE CHOISIR. The said emails, bearing the headings such as "Last days to file an action" or "last weeks to file an action and obtain a remedy", read as follows: "UFC QUE CHOISIR filed an action against each of the operators, and any dissatisfied subscriber may join the said action."

UFC QUE CHOISIR thus indicated, without any ambiguity to consumers that it offered them the possibility of joining the action that it claims to have filed against the telephone operators, such statement being made before the action was filed by Mr. AMBLARD.

It is not disputed that the voluntary intervention in this suit was filed by the consumers who participated in the approach initiated by UFC QUE CHOISIR.



Paris Commercial Court
Decision entered on 6 December 2007
15th Chamber

General Docket No. 2006057440

CL* - Page 287

Mr. AMBLARD himself, who instituted the action by way of a writ of 29 August 2006 expressly refers, for the determination of the loss for which he seeks to be indemnified, to the study carried out by ALTEX at the request of UFC QUE CHOISIR.

Mr. AMBLARD was able to access the calculator only after taking the same steps as the other consumers referred to above.

The attorney, acting as the agent of Mr. AMBLARD is also the attorney of UFC QUE CHOISIR and the other persons filing a voluntary intervention.

Therefore, it appears that Mr. AMBLARD's action was in reality conducted by UFC QUE CHOISIR, in the same manner as the actions of the other persons filing a voluntary intervention.

The Court deducts from this that this action was instituted and organized by UFC QUE CHOISIR, and that the action must therefore be analyzed as a joint action and must comply with the provisions of Articles L. 422-1 and R. 422-1 of the French Consumer Code.

Concerning the requirements applicable to joint actions

Article L. 422-1 sets forth that the power of attorney obtained from those consumers who have sustained individual losses by an association approved in order to seek remedies "may not be sought by way of television or radio announcements, or by way of posters, leaflets or customized letters. Such power of attorney must be given in writing by each consumer."

SA BOUYGUES TELECOM contends that all of the communication organized by UFC QUE CHOISIR on its www.quechoisir.org and www.cartelmobile.org amounts to unlawful legal canvassing, whether under Article 1 of the Act of 31 December 1971 and Article 1 of the Decree of 25 August 1972 or under Article L. 422-1 of the French Consumer Code.

In its response, UFC QUE CHOISIR submits that:

1° The persons filing a voluntary action, who are parties to this suit, have contacted UFC QUE CHOISIR in order to join, on their own initiative, an action aimed at asserting their rights and supporting the political action conducted by UFC QUE CHOISIR in favor of the creation of class actions. The services proposed by UFC QUE CHOISIR were not at all for profit, but consisted in supporting the cause advocated by the association, in the interest of all consumers.

2° It may not be genuinely claimed that the fact of making an individual loss calculator available to consumers amounts to a legal opinion within the meaning of the legislative



Paris Commercial Court                    General Docket No.2006057440
Decision entered on 6 December 2007
15th Chamber                              CL* - Page 288

provisions on legal canvassing. The provision of such calculator corresponded to an information service fully compatible with the mandate of UFC QUE CHOISIR as set forth in its articles of association. Such service is not reserved solely for the association's members.

3° In order to inform consumers of the possibility of creating a file on line and seeking in court the indemnification of their personal loss by joining forces with UFC QUE CHOISIR, it was necessary for UFC QUE CHOISIR to approach consumers personally and actively. Under these conditions, it is not possible to characterize the association's conduct as legal canvassing, especially because UFC QUE CHOISIR indicated to consumers that they were entitled to institute proceedings independently.

4° The said contact did not consist in a proposal for the execution of a contract against valuable consideration.

UFC QUE CHOISIR is an association of consumers approved under Articles L. 111-1 *et seq.* of the French Consumer Code.

According to its by-laws, UFC QUE CHOISIR's purpose consists in "promoting, supporting and uniting the individual or collective actions of consumers, aimed at the defense of their individual and collective interests, furthering the assumption of consumption issues by consumers and users themselves and making available to consumers and users the information resources that are useful to them."

The Court finds that the provision to consumers, free of charge, of a "loss calculator" is in line with the information mandate assigned to the association by its corporate purpose.

Also, the proposal made by UFC QUE CHOISIR to join the action organized by it, to choose the same counsel in order to obtain the indemnification of the consumers' losses is in line with the corporate purpose of UFC QUE CHOISIR, as an approved association.

However, the Consumer Code specifically defines the conditions under which approved associations may act.

The Court finds that this action is, notwithstanding its formal appearance, a joint action governed by the provisions of Article L. 422-1 of the French Consumer Code.

It is proved that UFC QUE CHOISIR has approached by customized messages certain of the subscribers who had given to UFC QUE CHOISIR their email particulars. Such a step is



Paris Commercial Court                    General Docket No. 2006057440
Decision entered on 6 December 2007
15th Chamber                              CL* - Page 289

expressly prohibited by Article L. 422-1 which sets forth that no power of attorney may be sought by way of a customized letter.

By so doing, UFC QUE CHOISIR has breached the provisions governing joint actions.


Concerning the validity of the procedural actions

SA BOUYGUES TELECOM contends that the violation of the prohibition of canvassing is a substantive irregularity within the meaning of Article 117 NCPC, affecting the validity of the statement of claims and the voluntary interventions.

Mr. Sébastien AMBLARD, UFC QUE CHOISIR and the other parties filing a voluntary intervention respond that SA BOUYGUES does not allege or prove that those plaintiffs who are natural persons have lost their capacity to file legal proceedings. They emphasize that UFC QUE CHOISIR is duly represented by its Chairman, and that the requirements set forth in Article 117 NCPC, which are limitative in nature, are therefore not satisfied.

However, unless the provisions of Article L. 421-1 are deprived of any meaning, the violation of the prohibition of legal canvassing, which is not accompanied by any criminal sanction (contrary to the Act of 31 December 1990 prohibiting legal canvassing) must result in the invalidity of any action filed as a result of such canvassing. The Court considers that the saying "fraud corrupts everything" must be applied here.

Also, the procedural actions do not satisfy the procedural requirements imposed by the Consumer Code as regards joint actions and in particular UFC QUE CHOISIR fails to prove that it has been appointed by the natural persons who joined its action, in accordance with the conditions laid down under Articles R. 422-1 and R. 422-2 of the French Consumer Code;


Concerning the other claims

It is not necessary to adjudicate on the other claims.

However, in order to assert its rights SA BOUYGUES TELECOM has been compelled to incur expenses that may not be directly recovered, and it would be unfair to let SA BOUYGUES TELECOM bear the same. It is therefore justified to award to SA BOUYGUES



Paris Commercial Court                          General Docket No. 2006057440
Decision entered on 6 December 2007
15th Chamber                                    CL* - Page 290

TELECOM the requested indemnity in the amount of € 6,000, to be paid by UFC QUE CHOISIR.


ON THESE GROUNDS

The Court, adjudicating publicly, by way of a decision entered after adversary proceedings and in first instance

Finds that the writ of summons and the voluntary interventions are not admissible

Orders UNION FEDERALE DES CONSOMMATEURS QUE CHOISIR to pay to SA BOUYGUES TELECOM the amount of € 6,000 under Article 700 of the French New Code of Civil Procedure

Orders UNION FEDERALE DES CONSOMMATEURS QUE CHOISIR to pay the legal expenses, including the legal expenses to be collected by the Registry and set at € 2,873.04 (including VAT in the amount of € 470.62).

Case entrusted during the hearing of 21 June 2007 to <u>Mr. REIGNIER, Reporting Judge</u>.

Referred for deliberations on 5 October 2007.

The deliberations were attended by Messrs. LUCQUIN, REIGNIER and DUGRENOT. The decision was announced during the public hearing, attended by:

Messrs. GERONIMI, Presiding Judge, Messrs. BOUCHER, REIGNIER, SPILET and LE MAU de TALANCE, Judges, supported by Mr. DURAFOUR, Clerk. The parties received advance notice of this decision. The minutes of the decision were signed by the Presiding Judge of the deliberation panel and by the Clerk.



Paris Commercial Court
Decision entered on 6 December 2007
15th Chamber

General Docket No. 2006057440

CL* - Page 291

CERTIFIED COPY
Without the enforcement formula.

(seal)
(signature)

Copy issued on: Tuesday 8 January 2008

Je, soussignée, Karen RENEL,
Traductrice Expert près la Cour d'Appel
d'Amiens certifie que la traduction qui
précède est conforme à l'original
libellé en langue *française*
visé ne varietur sous le n° *28182*
Fait à *Paris*, le *22/06/08*
(signature exempte de légalisation
Décret n° 53914 Art. 8 du 26.9.1953).



# Exhibit [11]

## Article 145 du nouveau Code de procédure civile



*Legifrance* .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
  ▶ Titre VII : L'administration judiciaire de la preuve
    ▶ Sous-titre II : Les mesures d'instruction
      ▶ Chapitre I : Dispositions générales
        ▶ Section I : Décisions ordonnant des mesures d'instruction.

### Article 145

S'il existe un motif légitime de conserver ou d'établir avant tout procès la preuve de faits dont pourrait dépendre la solution d'un litige, les mesures d'instruction légalement admissibles peuvent être ordonnées à la demande de tout intéressé, sur requête ou en référé.



# Exhibit [12]

## Article 145 of the French New Code of Civil Procedure

# Exhibit [    ]

## Article L. 145 of the French New Code of Civil Procedure



## Article 145 of the French New Code of Civil Procedure

If there is a legitimate reason to preserve or to establish, before any legal process, the evidence of the facts upon which the resolution of the dispute might depend, legally permissible preparatory inquiries may be ordered at the request of any interested party, by way of a petition or by way of a summary procedure.

Je, soussignée, Karen RENEL,
Traductrice Expert près la Cour d'Appel
d'Amiens certifie que la traduction qui
précède est conforme à l'original
libellé en langue ...français...
visé ne varietur sous le n° ...0.18.1...
Fait à ......Paris........., le ...27/06/08
(signature exempte de légalisation
Décret n° 53914 Art. 8 du 26.9.1953).



# Exhibit [13]

Cour de cassation, deuxième
chambre civile, 7 janvier
1999, n° 97-10381, Bull. n° 3



*Legifrance* .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

**Cour de cassation**
**chambre civile 2**
**Audience publique du jeudi 7 janvier 1999**
**N° de pourvoi: 97-10831**
Publié au bulletin

**Rejet.**

**Président :** M. Laplace, conseiller doyen faisant fonction. ., président
**Rapporteur :** M. Séné., conseiller rapporteur
**Avocat général :** M. Monnet., avocat général
**Avocats :** MM. Choucroy, Balat., avocat(s)

### REPUBLIQUE FRANCAISE

### AU NOM DU PEUPLE FRANCAIS

Sur le moyen unique :

Attendu, selon l'arrêt attaqué (Paris, 22 octobre 1996) que contestant les tarifs de location de salles de ventes aux enchères pratiqués par la société Drouot, la société civile professionnelle Guy Loudmer et Philippe Loudmer (la SCP), commissaire-priseur, a demandé à un juge des référés d'ordonner une mesure d'instruction sur le fondement de l'article 145 du nouveau Code de procédure civile ; que la société Drouot a interjeté appel de l'ordonnance qui avait accueilli cette demande ;

Attendu qu'il est fait grief à l'arrêt d'avoir rejeté la mesure d'instruction demandée, alors, selon le moyen, qu'il résulte des termes clairs et précis de l'ordonnance du 7 mai 1996 que la mesure d'investigation ordonnée par le premier juge avait pour objet précis et limité les tarifs de location des salles de ventes aux enchères, sous leur aspect discriminatoire à l'égard des commissaires-priseurs, si bien qu'en refusant d'ordonner la mesure d'instruction in futurum parce qu'il s'agirait d'une " mesure générale d'investigation ", la cour d'appel a dénaturé le dispositif de l'ordonnance infirmée du 7 mai 1996, violant l'article 1134 du Code civil ; alors que, d'autre part, dès lors que la mesure d'investigation avait pour objet précis le caractère discriminatoire des tarifs de location de salles de ventes aux enchères à l'égard des commissaires-priseurs, et que cet objet était aussi celui d'un litige potentiel entre les parties relatif à la mesure d'instruction demandée, la cour d'appel, dès lors qu'elle n'avait pas réfuté l'existence d'un motif légitime de la SCP de commissaires-priseurs d'établir, avant tout procès, la preuve de faits dont pourrait dépendre la solution de ce litige, ne pouvait refuser de confirmer la mesure d'instruction in futurum, sans priver sa décision de toute base légale au regard de l'article 145 du nouveau Code de procédure civile ; alors, en tout état de cause, qu'en jugeant sur le principe que la prescription d'une " mesure générale d'investigation " excédait le cadre d'une mesure d'instruction in futurum, la cour d'appel a ajouté une condition non exigée par l'article 145 du nouveau Code de procédure civile, violant cette disposition ;

Mais attendu que relevant, sans aucune dénaturation et par des appréciations souveraines sur l'existence d'un motif légitime, que la mesure d'instruction demandée s'analysait en une mesure générale d'investigation portant sur l'ensemble de l'activité de la société Drouot et tendant à apprécier cette activité et à la comparer avec celle de sociétés ayant le même objet, la cour d'appel n'a fait qu'user des pouvoirs qu'elle tient de l'article 145 du nouveau Code de procédure civile, en décidant sans ajouter au texte une condition qu'il ne contenait pas, que la mesure demandée excédait les prévisions de cet article ;

D'où il suit que le moyen n'est pas fondé ;

PAR CES MOTIFS :

REJETTE le pourvoi.

**Publication :** Bulletin 1999 II N° 3 p. 2

**Décision attaquée :** Cour d'appel de Paris, du 22 octobre 1996

**Titrages et résumés :** MESURES D'INSTRUCTION - Sauvegarde de la preuve avant tout procès - Mesure admissible - Mesure générale d'investigation - Ayant relevé que la mesure d'instruction demandée s'analysait

en une mesure générale d'investigation portant sur l'ensemble de l'activité d'une société et tendant à apprécier cette activité et à la comparer avec celle de sociétés ayant le même objet, une cour d'appel n'a fait qu'user des pouvoirs qu'elle tient de l'article 145 du nouveau Code de procédure civile, en décidant que la mesure demandée excédait les prévisions de cet article.

MESURES D'INSTRUCTION - Sauvegarde de la preuve avant tout procès - Mesure admissible - Mesure portant sur l'ensemble de l'activité d'une société (non) REFERE - Sauvegarde d'éléments de preuve avant tout procès - Domaine d'application - Mesure générale d'investigation (non) MESURES D'INSTRUCTION - Sauvegarde de la preuve avant tout procès - Motif légitime - Constatations suffisantes

**Précédents jurisprudentiels:**

**Textes appliqués :**
▶ Nouveau Code de procédure civile 145



# Exhibit [14]

Cour de cassation, second civil
chamber, 7 January 1999, No
97-10381, Bulletin No 3

# Exhibit [    ]

**Cour de Cassation, second civil chamber, 7 January 1999, No. 97-10381, Bulletin No. 3**



After noting that the requested investigation measure was to be characterized as a general investigation measure covering all of a company's operations and tending to assess the same operations and to compare them with the operations of companies having the same corporate purpose, the Court of Appeals merely used its powers under Article 145 of the French New Code of Civil Procedure, by deciding that the requested measure exceeded the scope provided for in Article 145.

Je, soussignée, Karen RENEL, Traductrice Expert près la Cour d'Appel d'Amiens certifie que la traduction qui précède est conforme à l'original libellé en langue .....*français*.......... visé ne varietur sous le n° .....*8182*....... Fait à .............*PARIS*..., le ....*21/26/08* (signature exempte de légalisation Décret n° 53914 Art. 8 du 26.9.1953).

# Exhibit [15]

## Article 10 et article 11 du nouveau Code de procédure civile



**Legifrance** .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ <u>Livre I : Dispositions communes à toutes les juridictions</u>
   ▶ <u>Titre I : Dispositions liminaires</u>
      ▶ <u>Chapitre I : Les principes directeurs du procès</u>
         ▶ <u>Section IV : Les preuves.</u>

### Article 10

Le juge a le pouvoir d'ordonner d'office toutes les mesures d'instruction légalement admissibles.





*Legifrance* .gouv.fr

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
   ▶ Titre I : Dispositions liminaires
      ▶ Chapitre I : Les principes directeurs du procès
         ▶ Section IV : Les preuves.

### Article 11

Les parties sont tenues d'apporter leur concours aux mesures d'instruction sauf au juge à tirer toute conséquence d'une abstention ou d'un refus.

Si une partie détient un élément de preuve, le juge peut, à la requête de l'autre partie, lui enjoindre de le produire, au besoin à peine d'astreinte. Il peut, à la requête de l'une des parties, demander ou ordonner, au besoin sous la même peine, la production de tous documents détenus par des tiers s'il n'existe pas d'empêchement légitime.

**Cité par:**
**Code du sport. - art. Annexe II-2 à l'article R232-86 (V)**



# Exhibit [16]

## Articles 10 and 11 of the French New Code of Civil Procedure

# Exhibit [    ]

## Articles 10 and 11 of the French New Code of Civil Procedure



**Article 10 of the French New Code of Civil Procedure**

The judge has the authority to order *sua sponte* any legally appropriate investigation measures.



### Article 11 of the French New Code of Civil Procedure

The parties are obligated to cooperate with a view to the implementation of the investigation measures, and the Court shall determine any consequences of any abstention or refusal to so cooperate.

Where a party holds any evidence, the judge may, at the request of the other party, order the party holding the evidence to produce the same, where necessary under a periodic penalty payment. At the request of either party, the judge may also request or order, if necessary subject to the same penalty, the production of all documents held by third parties where there is no legitimate obstacle preventing such production.

Je, soussignée, Karen RENEL, Traductrice Expert près la Cour d'Appel d'Amiens certifie que la traduction qui précède est conforme à l'original libellé en langue ...A.N.G.A.S.............. visé ne varietur souslle n° ...2.18.3...../..... Fait à .....P.A.N.S........, le ...13.65.15. (signature exempte de légalisation Décret n° 53914 Art. 8 du 26.9.1953).



# Exhibit [17]

## Articles 133, 134, 138, 147, 148, 149, 156, 166 et 167 du nouveau Code de procédure civile



*Legifrance* .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
  ▶ Titre VII : L'administration judiciaire de la preuve
    ▶ Sous-titre I : Les pièces
      ▶ Chapitre I : La communication des pièces entre les parties.

### Article 133

Si la communication des pièces n'est pas faite, il peut être demandé, sans forme, au juge d'enjoindre cette communication.





## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
  ▶ Titre VII : L'administration judiciaire de la preuve
    ▶ Sous-titre I : Les pièces
      ▶ Chapitre I : La communication des pièces entre les parties.

### Article 134

Le juge fixe, au besoin à peine d'astreinte, le délai, et, s'il y a lieu, les modalités de la communication.



**Legifrance** .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
  ▶ Titre VII : L'administration judiciaire de la preuve
    ▶ Sous-titre I : Les pièces
      ▶ Chapitre II : L'obtention des pièces détenues par un tiers.

### Article 138

Si, dans le cours d'une instance, une partie entend faire état d'un acte authentique ou sous seing privé auquel elle n'a pas été partie ou d'une pièce détenue par un tiers, elle peut demander au juge saisi de l'affaire d'ordonner la délivrance d'une expédition ou la production de l'acte ou de la pièce.





**Legifrance** .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
  ▶ Titre VII : L'administration judiciaire de la preuve
    ▶ Sous-titre II : Les mesures d'instruction
      ▶ Chapitre I : Dispositions générales
        ▶ Section I : Décisions ordonnant des mesures d'instruction.

### Article 147

Le juge doit limiter le choix de la mesure à ce qui est suffisant pour la solution du litige, en s'attachant à retenir ce qui est le plus simple et le moins onéreux.





**.gouv.fr**

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
    ▶ Titre VII : L'administration judiciaire de la preuve
        ▶ Sous-titre II : Les mesures d'instruction
            ▶ Chapitre I : Dispositions générales
                ▶ Section I : Décisions ordonnant des mesures d'instruction.

### Article 148

Le juge peut conjuguer plusieurs mesures d'instruction. Il peut, à tout moment et même en cours d'exécution, décider de joindre toute autre mesure nécessaire à celles qui ont déjà été ordonnées.





**Legifrance** ·gouv.fr

LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
   ▶ Titre VII : L'administration judiciaire de la preuve
      ▶ Sous-titre II : Les mesures d'instruction
         ▶ Chapitre I : Dispositions générales
            ▶ Section I : Décisions ordonnant des mesures d'instruction.

### Article 149

Le juge peut à tout moment accroître ou restreindre l'étendue des mesures prescrites.





LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
  ▶ Titre VII : L'administration judiciaire de la preuve
    ▶ Sous-titre II : Les mesures d'instruction
      ▶ Chapitre I : Dispositions générales
        ▶ Section II : Exécution des mesures d'instruction.

Article 156

Le juge peut se déplacer hors de son ressort pour procéder à une mesure d'instruction ou pour en contrôler l'exécution.





**Legifrance** .gouv.fr
LE SERVICE PUBLIC DE LA DIFFUSION DU DROIT

## Code de procédure civile

▸ Livre I : Dispositions communes à toutes les juridictions
   ▸ Titre VII : L'administration judiciaire de la preuve
      ▸ Sous-titre II : Les mesures d'instruction
         ▸ Chapitre I : Dispositions générales
            ▸ Section II : Exécution des mesures d'instruction.

Article 166

Le juge chargé de procéder à une mesure d'instruction ou d'en contrôler l'exécution peut ordonner telle autre mesure d'instruction que rendrait opportune l'exécution de celle qui a déjà été prescrite.





### Code de procédure civile

▶ Livre I : Dispositions communes à toutes les juridictions
  ▶ Titre VII : L'administration judiciaire de la preuve
    ▶ Sous-titre II : Les mesures d'instruction
      ▶ Chapitre I : Dispositions générales
        ▶ Section II : Exécution des mesures d'instruction.

Article 167

Les difficultés auxquelles se heurterait l'exécution d'une mesure d'instruction sont réglées, à la demande des parties, à l'initiative du technicien commis, ou d'office, soit par le juge qui y procède, soit par le juge chargé du contrôle de son exécution.

