# Exhibit [25]

Rapport sur l'action de groupe, Groupe de travail présidé par Guillaume Cerutti et Marc Guillaume, remis le 16 décembre 2005 au Ministre de l'économie, des finances et de l'industrie et au Ministre de la Justice, Garde des Sceaux

# Exhibit []

> **Rapport sur l'action de groupe, Groupe de travail présidé par Guillaume Cerutti et Marc Guillaume, remis le 16 décembre 2005 au Ministre de l'économie, des finances et de l'industrie et au Ministre de la Justice, Garde des Sceaux.**



Un tel dispositif serait de nature à faciliter une exécution volontaire de la décision de justice. En effet, alors que la poursuite par chacun des bénéficiaires de la décision de leurs intérêts propres serait facteur de développement des procédures d'exécution, l'association de consommateurs et le professionnel pourraient passer un accord de règlement des dommages et intérêts, préalablement à la mise en œuvre des voies d'exécution forcée.

A été émise l'idée de la création d'un fonds chargé de recouvrer pour le compte des victimes l'intégralité des condamnations et de les reverser en exécution de la décision judiciaire, sans possibilité de modifier le montant des préjudices tels que fixés par le juge.

La création d'un tel organisme serait étranger au droit français de l'exécution des décisions de justice. En outre, les frais générés par cet organisme ne pourraient être considérés comme des frais d'exécution et devraient être supportés par les consommateurs bénéficiaires de la décision, contrairement aux frais tarifés des huissiers de justice à la charge du professionnel condamné.

### III - *Les autres questions posées par la mise en place de l'action*

#### A) *Le droit de la preuve*

L'efficacité de la procédure dépend pour partie des moyens d'enquête dont disposent les demandeurs pour démontrer le bien-fondé de leurs prétentions. Les Etats-Unis et le Québec ont mis en place une procédure de *discovery*, abandonnée dans cette province à compter du 1er janvier 2003. Impliquant pour une partie l'obligation de communiquer les éléments de preuve dont elle dispose, elle permet l'instauration d'une phase d'instruction pendant laquelle l'avocat du demandeur peut avoir accès à tous les faits, tous les documents détenus ou connus de la partie adverse.

Le droit français est déjà doté de mécanismes efficaces permettant à une partie d'obtenir que lui soient communiqués tous documents s'il existe un motif légitime de conserver ou d'établir avant tout procès la preuve de faits dont pourrait dépendre la

solution du litige[21] et de se faire communiquer en cours d'instance des pièces détenues par une partie ou à un tiers[22].

Une réforme de notre droit sur le modèle de la procédure de *discovery* consisterait à permettre à une partie d'obtenir de son adversaire de lui communiquer une liste des documents non versés aux débats mais en relation avec le litige et dont celui-ci aurait connaissance. Cette hypothèse présente cependant plusieurs inconvénients graves. Dans la mesure où le juge devrait examiner la légitimité de la demande forcée de production de pièces, elle induirait tout d'abord une plus grande complexité des procédures, et corrélativement un accroissement important des délais et surtout des coûts de celles-ci.

De façon plus générale, la procédure de *discovery*, si elle est un instrument fondamental de la justice anglo-saxonne, ne peut être transposée dans d'autres systèmes de droit. Elle tend en effet à remettre en cause les principes directeurs du procès civil selon lesquels il incombe à chaque partie de prouver conformément à la loi les faits nécessaires au succès de sa prétention[23]. En outre, pour être efficace, une telle procédure suppose l'existence de sanctions civiles et pénales punissant la partie qui n'a

---

[21] Article 145 du nouveau code de procédure civile : « S'il existe un motif légitime de conserver ou d'établir avant tout procès la preuve de faits dont pourrait dépendre la solution d'un litige, les mesures d'instruction légalement admissibles peuvent être ordonnées à la demande de tout intéressé, sur requête ou en référé. »

22 Article 10 du code civil : « Chacun est tenu d'apporter son concours à la justice en vue de la manifestation de la vérité. Celui qui, sans motif légitime, se soustrait à cette obligation lorsqu'il en a été légalement requis, peut être contraint d'y satisfaire, au besoin à peine d'astreinte ou d'amende civile, sans préjudice de dommages et intérêts. »

Article 11 nouveau code de procédure civile : « Les parties sont tenues d'apporter leur concours aux mesures d'instruction sauf au juge à tirer toute conséquence d'une abstention ou d'un refus.
Si une partie détient un élément de preuve, le juge peut, à la requête de l'autre partie, lui enjoindre de le produire, au besoin à peine d'astreinte. Il peut, à la requête de l'une des parties, demander ou ordonner, au besoin sous la même peine, la production de tous documents détenus par des tiers s'il n'existe pas d'empêchement légitime ».

Article 138 du nouveau code de procédure civile : « Si, dans le cours d'une instance, une partie entend faire état d'un acte authentique ou sous seing privé auquel elle n'aurait pas été partie ou d'une pièce détenue par un tiers, elle peut demander au juge saisi de l'affaire d'ordonner la délivrance d'une expédition ou la production de l'acte ou de la pièce. »

Article 142 du nouveau code de procédure civile : « Les demandes de production des éléments de preuve détenus par les parties sont faites, et leur production a lieu, conformément aux dispositions des articles 138 et 139. »

[23] Article 9 du nouveau code de procédure civile



43

pas spontanément communiqué la liste des éléments de preuve en sa possession. Il n'est ni souhaitable ni demandé de faire évoluer en ce sens notre système juridique.

Toutefois, certains membres du groupe ont évoqué la possibilité, pour les seuls petits litiges de la consommation, de faire évoluer la procédure civile, de type accusatoire, vers une procédure de type inquisitoire.

### B). *L'instauration de dommages et intérêts punitifs*

L'instauration de dommages et intérêts punitifs permettrait au juge civil de prononcer un montant de dommages et intérêts supérieur à celui nécessaire à l'indemnisation des préjudices effectivement subis par les consommateurs victimes. Elle permettrait de sanctionner le responsable d'un dommage, notamment lorsque le profit qu'il a retiré du fait dommageable est supérieur à celui du préjudice subi par la victime, ou encore lorsque le préjudice subi par un grand nombre de victimes est si faible que celles-ci n'entendent pas en demander l'indemnisation.

Pourtant, les dommages et intérêts punitifs s'apparentent à une peine privée dont l'introduction modifierait les principes directeurs du procès civil en faisant apparaître des procureurs privés qui requérraient des peines au nom d'un groupe non identifié de consommateurs. Cette pénalisation du procès civil serait autant inopportune qu'inutile compte tenu de l'efficacité des dispositions pénales en la matière. En effet, de nombreuses dispositions du droit de la consommation sont assorties de sanctions pénales et certains parquets comprennent des sections spécialisées en la matière. En outre, dans certaines matières, la direction générale de la concurrence, de la consommation et de la répression des fraudes peut désormais conclure une transaction avec un professionnel après accord du procureur de la République[24]. La voie pénale se révèle ainsi particulièrement bien adaptée à la sanction des comportements à l'origine des « préjudices diffus », en complément de l'introduction d'une action de groupe permettant d'indemniser chaque consommateur lésé.

### C). *La création de mécanismes de réparation collective*

Le groupe de travail s'est interrogé sur la possibilité que la réparation du préjudice ne soit pas effectuée seulement par l'allocation de dommages et intérêts aux victimes mais aussi par d'autres méthodes conduisant à priver le professionnel d'une somme correspondant au montant global des préjudices qu'il a causé ou à réparer en nature le préjudice subi par les victimes. Il s'agirait par exemple de permettre au juge d'ordonner au professionnel la mise en oeuvre de mesures de réparation en nature appropriées.

---

[24] Articles L 470-4-1 du code de commerce, L 141-2 et L 216-11 du code de la consommation

44

# Exhibit [26]

> Report on group actions, Working Group chaired by Guillaume Cerutti and Marc Guillaume, delivered on 16 December 2005 to the Minister of the Economy, Finance and Industry and to the Justice Minister, Warden of the Seals

# Exhibit [   ]

**Report on group actions, Working Group chaired by Guillaume Cerutti and Marc Guillaume, delivered on 16 December 2005 to the Minister of the Economy, Finance and Industry and to the Justice Minister, Warden of the Seals**



(...)

### A) The law of evidence

The effectiveness of the procedure depends partly on the investigative resources available to the plaintiffs in order to demonstrate the merits of their claims. The United States and Quebec introduced a discovery procedure that was abandoned in Quebec effective from 1 January 2003. This procedure imposes on the parties the obligation to disclose the evidence in their possession and allows for the organization of an investigation phase during which the plaintiff's attorney may have access to all facts and all documents held by the adversary party or known to it.

French law already provides for effective mechanisms enabling a party to obtain the disclosure of any documents, if there are any legitimate reasons for protecting or providing, before any proceedings, the proof of facts that may influence the solution of a dispute,[21] and to receive, during the proceedings, documents held by a party or by a third party.[22]

A reform of our legal system aiming at the introduction of the discovery procedure would consist in enabling a party to obtain the communication, by the adversary party, of the list of all documents known to the adversary party and related to the dispute but not adduced as evidence. However, such a change would have several serious drawbacks. Insofar as the judge must review the legitimacy of the request for the compulsory production of documents, this would first induce greater procedural complexity, and at the same time considerably lengthen the procedures and increase their cost.

More generally, while the discovery procedure is a fundamental instrument of the US judicial system, the procedure may not be transposed in other legal systems. Indeed, this procedure tends to challenge the guiding principles of any civil-law judicial process, in which each party is responsible for proving, in accordance with provisions of law, the facts necessary for the

---

[21] Article 145 of the French New Code of Civil Procedure: "If there is a legitimate reason to preserve or to establish, before any legal process, the evidence of the facts upon which the resolution of the dispute might depend, then legally permissible preparatory inquiries may be ordered at the request of any interested party, by way of a petition or by way of a summary procedure."

[22] Article 10 of the French Civil Code: "Each party is bound to cooperate with the court so that the truth may be identified. He who, without legitimate reason, avoids the said obligation when it has been lawfully imposed on him, may be compelled to comply with the said obligation, if need be, subject to a periodic penalty payment or a civil fine, without prejudice to any damages."

Article 11 of the French New Code of Civil Procedure: "The parties are obligated to cooperate, with a view to the implementation of the investigation measures, and the Court shall determine any consequences of any abstention or refusal to so cooperate.
Where a party holds any evidence, the judge may, at the request of the other party, order the party holding the evidence to produce the same, where necessary subject to a periodic penalty payment. At the request of either party, the judge may also request or order, if necessary subject to the same penalty, the production of all documents held by third parties where there is no legitimate obstacle preventing such production."

Article 138 of the French New Code of Civil Procedure: "If, during the proceedings, any party wishes to rely on any notarized deed or a private deed to which the requesting party was not a party or on any document held by a third party, such requesting party may ask the judge, to whom the matter is referred, to order the delivery of a certified copy or order the production to the court of the said deed or document."

Article 142 of the French New Code of Civil Procedure: "Requests for the production of evidence held by the parties are made, and the evidence is produced, in accordance with the provisions of Articles 138 and 139

success of its claims.[23] In addition, in order to be effective, such evidence process requires the existence of civil and criminal sanctions applicable to the party that has failed to spontaneously communicate the list of the evidence in its possession. It is not advisable to cause our legal system to evolve in that direction, and no request has been made to that end.

However, certain members of the group have discussed the possibility, as regards only small consumer claims, of causing a change in the civil procedure, from an accusation process to an investigation process.

Je, soussignée, Karen RENEL, Traductrice Expert près la Cour d'Appel d'Amiens certifie que la traduction qui précède est conforme à l'original libellé en langue française Article 9 of the French New Code of Civil Procedure. visé ne varietur sous le n° ...S.6........
Fait à ...Paris........, le ...27/05/08
(signature exempte de légalisation
Décret n° 53914 Art. 8 du 26.9.1953).



# Exhibit [27]

La dépénalisation de la vie des affaires, Groupe de travail présidé par Jean-Marie Coulon, Premier Président honoraire de la Cour d'appel de Paris, Rapport au Garde des Sceaux, Ministre de la justice, janvier 2008

# Exhibit []

> La dépénalisation de la vie des affaires, Groupe de travail présidé par Jean-Marie Coulon, Premier Président honoraire de la Cour d'appel de Paris, Rapport au Garde des Sceaux, Ministre de la justice, janvier 2008.



du groupe est susceptible de supporter les frais de justice exposés par la partie adverse en cas d'échec de l'action.

Ces exemples étrangers montrent que la mise en place d'une régulation des relations économiques par la justice civile est un mouvement naissant en Europe et déjà bien établi en Amérique du Nord. La France n'est d'ailleurs pas étrangère à ce mouvement, plusieurs acteurs politiques ou commissions ayant depuis deux ans proposé l'introduction en droit français d'une action de groupe.

Ainsi, le projet de loi en faveur des consommateurs déposé le 8 novembre 2006 à l'Assemblée nationale prévoyait une action de ce type. Son champ était limité aux litiges de consommation et à la réparation du préjudice matériel. Dans une première phase, le juge statuait sur le principe de la responsabilité du professionnel. L'action devait être introduite par une association de consommateurs représentative et agréée, avec le concours d'un avocat. La prescription était interrompue pour les consommateurs victimes. En cas de jugement déclarant la responsabilité, il était diffusé aux frais du professionnel une information sur le jugement avec indication du délai pendant lequel il pouvait être demandé réparation. Puis, dans une deuxième phase, il était procédé à l'indemnisation des consommateurs. La demande était adressée au professionnel. Le consommateur pouvait saisir la juridiction en cas de refus ou d'absence d'offre d'indemnité. Le juge pouvait condamner le professionnel à verser une somme allant jusqu'à 50 % de l'indemnité, à titre de pénalité.

La Commission pour la libération de la croissance française dite « commission Attali » propose quant à elle de réserver l'introduction des actions de groupe à des associations de consommateurs agréées à cette fin pour une période déterminée par le ministre de l'Économie et des Finances et de prévoir, en cas de procédure abusive, l'indemnisation par les demandeurs des dommages subis par la défense. Elle préconise de désigner de manière limitative les juridictions compétentes pour traiter ces contentieux. Par ailleurs, elle plaide pour le principe selon lequel seuls les consommateurs ayant choisi d'adhérer à l'action de groupe pourront y participer (système d'*opt in*). Enfin, elle souhaite s'assurer que toute transaction soit homologuée après examen par le tribunal compétent.

D'autres acteurs politiques sont également en faveur de l'instauration d'une action de groupe : c'est le cas du secrétaire d'état à la consommation et de certains parlementaires, qui ont préparé des projets de texte. En définitive, derrière cette grande majorité en faveur de la mise en place de l'action de groupe, la problématique centrale est de savoir comment elle peut être encadrée, afin d'éviter les dérives de certains modèles étrangers, sans pour autant empêcher qu'elle devienne un mode de régulation substitutif à la justice pénale.

### Encadrer l'action de groupe pour éviter une instrumentalisation à des fins étrangères à l'indemnisation d'un préjudice collectif

Si un nombre important de personnes entendues s'est montré favorable à l'introduction d'une action de groupe ou action collective en droit français, une grande majorité a insisté sur le besoin d'encadrer une telle procédure par des garanties quant à la recevabilité des actions intentées. Il convient en effet


de se prémunir contre une évolution possible vers le régime des *class actions* américaines qui contribuent à développer l'hyper juridictionnalisation des rapports économiques. En effet, ce système amène des avocats spécialisés à mettre en péril la santé de certains secteurs économiques, en instaurant un système de chantage qui amène les entreprises à payer une indemnisation plutôt que de subir un procès médiatique dégradant leur image.

Pour éviter ces dérives, outre l'encadrement de l'action, il est préférable de ne pas importer les institutions qui amènent à produire ces dérives : d'une part les dommages-intérêts punitifs[1], qui risquent de créer une confusion entre réparation et sanction, et d'autre part la procédure de *discovery*[2], dont l'utilisation abusive conduit à une instrumentalisation à des fins de déstabilisation d'une entreprise ou d'espionnage d'un concurrent. En deuxième lieu, il est nécessaire de veiller à l'articulation des actions de groupe avec la voie pénale, afin d'éviter la possibilité d'un cumul entre les deux procédures. Il convient de ne pas reprendre en troisième lieu les dérives américaines en matière d'honoraires d'avocat. Ces dérives proviennent en partie des règles de déontologie des avocats, qui d'une part acceptent le pacte de *quota litis*, d'autre part ne limitent pas le montant des honoraires, et permettent leur fixation sur la base des dommages-intérêts perçus par le client, ce qui encourage certains conseils à engager de véritables croisades pour obtenir les indemnités les plus élevées. Enfin, ces règles de déontologie autorisent le démarchage, ce qui permet aux avocats de faire de la publicité pour constituer le groupe. Ces deux mécanismes ne sont pas possibles en droit français.

L'encadrement de l'action de groupe doit également porter sur son champ. Il convient ainsi de limiter son application aux domaines pour lesquels elle est économiquement justifiée, c'est-à-dire aux litiges pour lesquels les justiciables n'auraient pas d'intérêt économique à agir. C'est donc au droit de la consommation qu'il convient de limiter cette action.

L'opportunité d'une action de groupe dans d'autres branches du droit a pu être discutée, mais n'a pas été retenue en l'état. Ainsi, en droit des sociétés, elle se heurte à la définition du préjudice de l'actionnaire, au-delà de la baisse de l'action. En outre, elle n'a pas la même justification économique, l'actionnaire prenant par définition un risque en achetant des actions cotées, alors que le consommateur est en droit d'attendre une prestation conforme à un contrat.

Enfin, à la différence de l'action en représentation conjointe, possible devant toutes les juridictions, il y a lieu de limiter l'action de groupe aux actions devant le juge civil, à l'exclusion de la voie pénale, sans quoi cette dernière ne répondrait bien évidemment pas à l'objectif de dépénalisation[3].

---

(1) Les dommages-intérêts punitifs permettent au juge d'aller au-delà de la réparation du préjudice et de sanctionner un comportement fautif, procédure connue du droit anglo-saxon.
(2) La procédure de *discovery*, connue du droit anglo-saxon, consiste à demander au juge la production forcée de tous documents, sans examen de l'utilité de ces pièces pour la procédure au fond.
(3) L'article L. 422-2 du Code de la consommation dispose que l'action en représentation conjointe est recevable devant les juridictions pénales : « *Tout consommateur*



# Exhibit [28]

> **Removing criminal law rules from business law, Working Group chaired by Jean-Marie Coulon, First Honorary Presiding Judge of the Court of Appeals of Paris, Report submitted to the Justice Minister, Warden of the Seals, January 2008**

Exhibit [   ]

---

**Removing criminal law rules from business law, Working Group chaired by Jean-Marie Coulon, First Honorary Presiding Judge of the Court of Appeals of Paris, Report submitted to the Justice Minister, Warden of the Seals, January 2008**

---



## Organizing group action in order to avoid its being used for purposes other than the indemnification of a collective loss

While a large number of those persons who were heard have proved favorable to the introduction, into French law, of a group action or collective action, a large majority has insisted on the need to limit such a procedure by defining guarantees as to the admissibility of the instituted actions. Indeed, it is necessary to prevent a possible move towards the US-style class action system leading to an extreme involvement of the judicial system in economic relationships. Indeed, this system enables specialized lawyers to endanger the health of certain industries, by creating a blackmail scheme as part of which enterprises feel compelled to grant an indemnification rather than be exposed to a lawsuit with high media coverage, likely to hurt their image.

In order to avoid such excesses, not only must the action be limited, but also, it is advisable not to import into our country the institutions that have generated such abuse: on the one hand, punitive damages[1] that risk creating a confusion between indemnification and sanction, and on the other hand, the discovery[2] procedure, which has sometimes been used unfairly in order to destabilize, or spy on, an enterprise. Second, it is necessary to make sure to properly combine group actions with the criminal law process, in order to avoid any cumulative use of the two procedures. Third, it is necessary not to imitate excessive US practices as regards attorney fees. This stems partly from attorneys' rules of ethics that allow for contingency fee arrangements, do not cap the amount of the fees, and permit the determination of the fees on the basis of the damages received by the client, such scheme driving certain counsels to embark on veritable crusades in order to obtain the highest possible damages. Finally, these rules of ethics allow for canvassing, thus enabling attorneys to advertise in order to constitute the group of plaintiffs. These two mechanisms are not allowed under French law.

The restrictions applied to group actions must also cover the scope of such actions. More specifically, it is necessary to limit the application of such actions to those areas in which they are economically justified, i.e. to those disputes in which prospective plaintiffs would not have any economic interest to take legal action. Therefore, consumer law must restrict such actions.

The possibility of a group action in other areas of our domestic law was discussed, but was not found advisable at this stage. For instance, under company law, such a group action would be made difficult by the need to define the loss sustained by shareholders, otherwise than by a share price decrease. In addition, such a group action would not have the same economic justification, as a shareholder, by definition, takes a risk by buying listed shares, while a consumer is entitled to anticipate performance in agreement with a contract.

Finally, unlike the rules applicable to joint representation actions, which may be filed before any court of law, it is necessary to restrict group actions to suits filed before a civil court, failing which such actions would obviously not reach their goal, i.e. to remove these cases from criminal court's dockets.[3]

---

[1] Punitive damages enable courts to go beyond the indemnification of the loss and apply sanctions as a result of any abusive behavior. This procedure exists in US law.

[2] The discovery procedure, which exists in US law, consists in asking the court to order the compulsory submission of all documents, without any review of their usefulness in relation to the substantive procedure.

[3] Article L. 422-2 of the French Consumer Code sets forth that joint representation actions are admissible before criminal courts if any consumer (...)

Je, soussignée, Karen RENEE Traductrice Expert près la Cour d'Appel d'Amiens certifie que la traduction qui précède est conforme à l'original libellé en langue anglaise, que j'ai visé ne varietur sous le n° ........
Fait à .................., le ..........
(signature exempte de légalisation
Décret n° 53914 Art. 8 du 26.9.1953).