# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE<br>INTEL CORPORATION<br>MICROPROCESSOR ANTITRUST<br>LITIGATION | )<br>)<br>)<br>)<br>)     MDL No. 05-1717-JJF |
| | ) |
| ADVANCED MICRO DEVICES, INC. a Delaware<br>corporation, and AMD INTERNATIONAL SALES<br>& SERVICE, LTD., a Delaware corporation, | )<br>)<br>)<br>) |
| | ) |
| Plaintiffs, | )     C. A. No. 05-441 (JJF) |
| v. | ) |
| INTEL CORPORATION, a Delaware corporation,<br>and INTEL KABUSHIKI KAISHA, a Japanese<br>corporation, | )<br>)<br>) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| PHIL PAUL, on behalf of himself<br>and all others similarly situated, | )<br>) |
| | ) |
| Plaintiffs, | )     C.A. No. 05-485-JJF |
| | ) |
| v. | )     CONSOLIDATED ACTION |
| INTEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## THIRD PARTIES' SUPPLEMENTAL BRIEF
### IN OPPOSITION TO MOTION OF UNION FEDERALE DES CONSOMMATEURS – QUE CHOISIR TO INTERVENE FOR THE PURPOSE OF SEEKING MODIFICATIONS TO PROTECTIVE ORDER AND APPLICATION PURSUANT TO 28 U.S.C. § 1782

OF COUNSEL:

John F. Schultz
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-1921
john.shultz@morganlewis.com

Dale A. Rice
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104
(415) 772-6000
(415) 772-6268 (fax)
dale.rice@hellerehrman.com

**DRINKER BIDDLE & REATH LLP**

David P. Primack (DE 4449)
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
(302) 467-4200
(302) 467-4201 (fax)
david.primack@dbr.com

Attorneys for Hewlett-Packard Company

**MONTGOMERY, MCCRACKEN  LLP**

R. Montgomery Donaldson (DE 4367)
Montgomery, McCracken, Walker & Rhoads, L
1105 Market Street
Wilmington, DE  19801-1223
(302) 504-7840
(302) 504-7820 (fax)
rdonaldson@mmwr.com

Attorneys for Microsoft Corporation

**JONES DAY**

Daniel Conrad (admitted pro hac vice)
Thomas Jackson
2727 N. Harwood St.
Dallas, TX  75201
(214) 220-3939
(214) 969-5100 (fax)
dtconrad@jonesday.com
trjackson@jonesday.com

Attorneys for Dell Inc.

Dated: August 18, 2008

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT .....................................................................................2

    A.    QC'S Modified Application Is Premature. ...................................3

    B.    QC's Modified Application Fails The Discretionary
    Factors Set Forth In Intel. ...........................................................5

        1.    Whether the Person from Whom Discovery is a
        Participant in the Foreign Litigation ...............................5

        2.    Nature of the Foreign Tribunal, Character of
        Proceedings Underway Abroad, and Receptivity
        of the Foreign Tribunal to U.S. Federal-Court
        Judicial Assistance .........................................................6

        3.    Whether the Request Conceals an Attempt to
        Circumvent Proof-Gathering Restrictions or
        Other Policies of a Foreign Country or the U.S.............7

        4.    Whether the Requests are so Intrusive or
        Burdensome as to Require Trimming or
        Rejection ........................................................................9

    C.    QC's Modified Motion and Application Fail To
    Adequately Protect the Interests of Third Parties. ....................10

III.  CONCLUSION.................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Collens v. City of New York,*
  222 F.R.D. 249 (S.D.N.Y. 2004) .......................................................................... 8

*In re Application of Hill,*
  No. M19-117 (RJH), 2005 WL 1330769 (S.D.N.Y. June 3, 2005)...................... 5

*In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting
  Christen Sveaas to Take Discovery from Dominic Levy, L & M Galleries and
  other Non-Participants for use in Actions Pending in the Norway,*
  249 F.R.D. 96 (S.D.N.Y. 2008) ........................................................................... 6

*In re Crown Prosecution Serv.,*
  870 F.2d 686 (D.C. Cir. 1989) ............................................................................. 3

*In re ML-Lee Acquisition Fund II, L.P.,*
  151 F.R.D. 37 (D. Del. 1993) ............................................................................... 8

*Intel Corp. v. Adv. Micro Devices, Inc.,*
  542 U.S. 241 (2004)................................................................................... passim

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada,*
  384 F. Supp. 2d 45 (D.D.C. 2005) ....................................................................... 5

**RULES AND STATUTES**

Federal Rule of Civil Procedure 26 ................................................................... 8, 9

28 U.S.C. § 1782 ........................................................................................ passim

**FOREIGN MATERIALS**

U.K. Civil Procedure Rule 31.17......................................................................... 8

Portuguese Civil Procedure Code, Article 531..................................................... 7

Portuguese Civil Code, Article 574...................................................................... 7

Portuguese Civil Code, Article 575...................................................................... 7

## I.    INTRODUCTION

In its initial Motion and Application, non-party Union Federale des Consommateurs – Que Choisir ("QC") sought access to Confidential Discovery Material produced by all third parties in this litigation to assist an ongoing European Commission ("EC") investigation into Intel's activities in the microprocessor market.  QC also suggested that it was contemplating some sort of litigation in some country on behalf of some group of plaintiffs at some future point in time.  Over fifteen third parties submitted or joined oppositions to QC's initial Motion and Application, including third parties here, Dell Inc., Hewlett-Packard Company, and Microsoft Corporation (collectively "Third Parties").[1]

QC now concedes that the EC has no interest in the documents produced in this litigation.  As a result, QC has no present compelling interest in gaining access to the documents it seeks.  QC confesses that it remains at least months, if not much longer, away from even filing its litigation.  QC does not explain how third parties' confidential information would have any relevance to its hypothetical litigation.  And, curiously, QC suggests that *if* it does file litigation in Europe, it is most likely to file in either England or Portugal.  Why would a French consumer organization file a lawsuit in either location?  QC tells us not to worry because they will most likely find someone in one of those countries who will also have some claim against Intel and that surely there will be some protective order that will protect the confidentiality of third parties' documents.

But, Third Parties do worry.  As third parties have explained, and as the Special Master has acknowledged, the information QC seeks is highly confidential, involving

---

[1]  In filing this supplemental brief, Third Parties preserve any objection they may have to this Court's jurisdiction over them with respect to any issues that may arise in connection with this litigation.

such items as cost and sales information, and it would cause great harm to third parties if that information were to fall into the wrong hands. *See* Special Master's Report and Recommendations Regarding Proposed Protective Order (D.I. 221) ("Special Master's Report") at 110-17.[2]  QC suggests that third parties should trust that their sensitive information will remain protected, but QC fails to provide any basis to distinguish themselves from any other person or entity anywhere in the world.  QC has no assets in this jurisdiction and no basis to provide recompense should the confidential information be used for an improper purpose.  Third parties' concerns are heightened by QC's proposed modifications to the Protective Order, which would result in the unauthorized use and disclosure of third parties' highly confidential information.  Both the Special Master and this Court have previously rejected a similar proposal by Intel to permit the use of third party documents in foreign proceedings, and QC does not and cannot offer any compelling reason why that decision should be reversed now.

If QC actually files a lawsuit in some foreign jurisdiction, and if that foreign jurisdiction actually enters an appropriate protective order, the question of whether any part of the third party documents would have any relevance to such a proceeding could be properly determined.  At that time, it may be possible to evaluate the various criteria under Section 1782, but that time is not now.  QC's request should be denied.

## II.    ARGUMENT

There are three primary reasons why QC's modified Motion and Application should be denied.  First, the foreign litigation in which QC purportedly intends to use discovery from this litigation is not within reasonable contemplation, as required by

---

[2] All docket references are to MDL No. 05-1717-JJF.

Section 1782. Second, QC's Modified Application fails to satisfy the discretionary

Section 1782 factors set forth in *Intel*. Finally, as with its initial request, QC's modified

request is inimical to the interests of third parties.

### A.    QC'S Modified Application Is Premature.

At the outset, QC's Application should be denied because, even as reformulated

in its reply brief, QC still fails to establish that its purportedly anticipated foreign action

is within "reasonable contemplation" sufficient to satisfy the requirements of

Section 1782. *See Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 259 (2004)

(Section 1782 requires that "a dispositive ruling by the Commission, reviewable by the

European courts, be within reasonable contemplation"); *see also In re Crown Prosecution

Serv.*, 870 F.2d 686, 692 (D.C. Cir. 1989) ("[T]o guard against abuse of section 1782, the

district court must insist on reliable indications of the likelihood that proceedings will be

instituted within a reasonable time.")

There are no such "reliable indications" here; indeed, all indications are to the

contrary. <u>First</u>, as a fundamental matter, QC's potential foreign action which it claims

will be either in England or Portugal cannot be within "reasonable contemplation"

because QC does not appear to have standing to pursue claims in either country.[3]  QC

claims that it "would represent via a collective action the interests of French consumers

... as well as English or Portuguese consumers in the respective venues." QC Reply at 9.

But QC describes itself as a "French consumer association," *id.* at 3, and is noticeably

silent about whether it even has any current members in either England or Portugal.

Without those members, QC's standing to pursue claims in those countries remains a

---

[3] This is true regardless of any potential jurisdictional issues regarding Intel being named a defendant in either country.

mystery. Rather, QC would likely have to solicit English and/or Portuguese residents to act as plaintiffs – and there is no guarantee that it will find any.

Second, QC's request is based on representations that are at best speculation. For example, QC presumes that the EC will complete its investigation into Intel "this year," and that the findings of that investigation will be adverse to Intel. *Id.* at 1. How QC purports to accurately know either the status or the potential outcome of an ongoing confidential investigation is unknown to Third Parties.[4] Nonetheless, and based on these unsupported assumptions, QC then represents to this Court that it "intends to initiate litigation against Intel," *id.*, and that it is currently "taking final advice" about whether to file that lawsuit in England or Portugal. *Id.* at 9. Of course, QC has not committed to filing litigation against Intel in any jurisdiction (let alone England or Portugal), and if the EC's investigation does not conclude "this year," or if the investigation's findings are not adverse to Intel, QC may never file its potential lawsuit against Intel. And, as QC acknowledges, *if* there is an adverse decision by the EC against Intel and *if* QC files suit against Intel, QC's litigation likely will be stayed pending the final outcome of any appeals against the EC decision, which could take up to a decade. *See id.* at 7, 8-9; *see also* Intel's Opposition to QC's Motion and Application (D.I. 1052) at 11-12. At best, QC is simply contemplating filing a lawsuit in a foreign country at some distant and unknown time, and apparently in a country with which it has no current connection. The Special Master should reject QC's unabashed effort to "jump the gun" on discovery in its

---

[4] In fact, the sole authority cited by QC – an article from Forbes.com – demonstrates the inaccuracy of QC's claim that the EC will soon complete its investigation into Intel. In that article, an EC spokesperson explains that the EC investigation against Intel is "very much active" and that the EC has not made a provisional decision against Intel. *See* Forbes.com, Thomson Financial News, "EU says Intel antitrust case 'active'; no provisional decision made." May 28, 2008 (cited in QC Reply at 6 n.11).

hypothetical litigation against Intel. *See Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005).

Third, and no doubt due to the lack of foundation for QC's request, no cases support QC's contention that a foreign action is "within reasonable contemplation" where that potential foreign action is based solely on supposition and unfounded assumption. Indeed, the principal case relied on by QC amounts to little more than *dicta* from a case in which at least some legal action had already been filed.[5]

**B.      QC's Modified Application Fails The Discretionary Factors Set Forth In *Intel*.**

QC's efforts to avoid the discretionary factors from the *Intel* decision are equally unavailing. While QC has changed the basis of its Application in an effort to obtain documents pursuant to Section 1782, it nevertheless fails to show that the weight of these discretionary factors support granting its Application.

**1.      Whether the Person from Whom Discovery is a Participant in the Foreign Litigation**

The first discretionary factor under *Intel* is whether the person from whom discovery is sought is a participant in the foreign litigation and thus subject to discovery before the foreign tribunal. *Intel*, 542 U.S. at 264. QC wrongly asserts that, because third parties will not be parties to any foreign litigation, this factor weighs in favor of permitting discovery pursuant to Section 1782.

---

[5] In this unreported case, the district court denied motions to quash a Section 1782 application because (among other things) the discovery sought was plainly related to pending foreign bankruptcy proceedings. *See In re Application of Hill*, No. M19-117 (RJH), 2005 WL 1330769, at *4-5 (S.D.N.Y. June 3, 2005). While the court, in *dicta*, surmised that even if the evidence could not be used in the pending proceeding, the foreign bankruptcy trustees (called "Liquidators") were not required to identify their "proposed claims" or "legal theories" in any subsequent tort action brought by the Liquidators because such an action, if necessary, was "within reasonable contemplation" under those circumstances. *Id.* at *4 n.4. That is plainly not the case here. Likewise, in *Intel*, AMD had already filed a complaint with the DG-Competition of the European Commission when it sought its Section 1782 order.

Discarding its original argument that the requested discovery is needed for an EC investigation, QC now argues that this discovery is necessary for a litigation that QC will likely file in either England or Portugal against Intel. QC presumes that it will not be able to obtain the discovery from Third Parties in these foreign jurisdictions. But, QC has not demonstrated that Third Parties would not be subject to discovery in either England or Portugal, assuming it actually files suit in one of those jurisdictions.

For this reason, the decision cited by QC, *In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominic Levy, L & M Galleries and other Non-Participants for use in Actions Pending in the Norway*, 249 F.R.D. 96 (S.D.N.Y. 2008), is irrelevant. The result in *Sveaas* was dependent upon the court concluding that the third party from whom discovery was sought "would not be subject to the jurisdiction" of the foreign court. *Id.* at 107. Here, there is no basis in the record to reach a similar conclusion.

### 2.    Nature of the Foreign Tribunal, Character of Proceedings Underway Abroad, and Receptivity of the Foreign Tribunal to U.S. Federal-Court Judicial Assistance

QC's efforts to rely on the second *Intel* factor – the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign tribunal to U.S. federal-court judicial assistance – fare no better. *Intel*, 542 U.S. at 264.

Devoting pages of its reply brief, QC argues that the Court should not examine whether or not the requested discovery would be permitted by a foreign court. QC, however, ignores the relevant inquiry. Until QC definitively identifies the foreign tribunal in which it intends to file litigation, this Court cannot possibly assess the nature of that tribunal or whether the tribunal is receptive to discovery assistance from the federal court system. Likewise, without QC actually initiating litigation, this Court

cannot determine the character of the proceedings underway abroad in assessing whether or not to permit discovery pursuant to Section 1782.

### 3.    Whether the Request Conceals an Attempt to Circumvent Proof-Gathering Restrictions or Other Policies of a Foreign Country or the U.S.

The third *Intel* factor also does not support QC's position. Under this factor, the Court is permitted to examine whether the Section 1728 applicant is attempting to circumvent the proof-gathering restrictions or other policies of the foreign country in which the documents are intended to be used or the proof-gathering restrictions or other policies of the United States. *Intel*, 542 U.S. at 264-65. QC is attempting to accomplish precisely this result here.

The laws of Portugal prohibit pre-lawsuit discovery except where the documents are essential to establish the existence or contents of the action. *See* Articles 574.° and 575.° of the Portuguese Civil Code. Discovery from a third party is allowed only after the requesting party has described the requested documents and specified the facts to be proven by each document. *See* Article 531.° of the Portuguese Civil Procedure Code.

Nor is QC's discovery permissible under the laws of the United Kingdom. There is no provision for pre-lawsuit discovery from a third party, and even after the filing of a claim, a court may limit discovery from a third party only to those situations where (a) the documents sought are likely to support the case of the applicant or adversely affect the case of one of the other parties to the proceedings; and (b) disclosure is necessary in order to dispose fairly of the claim or to save costs. U.K. Civil Procedure Rule 31.17.

As if this were not enough, QC's request also circumvents the proof-gathering restrictions of the United States. QC candidly admits that it is seeking discovery that is overbroad and beyond that which is permitted by the Federal Rules of Civil Procedure.

7

QC seeks every single document from among the millions of pages of documents produced in this litigation. This "self-selection" approach will necessarily result in the production of a massive amount of highly confidential information that, by QC's own admission, must be culled to what is truly relevant to its hypothetical claims:

> QC proposes that its counsel (who already have access to the productions of Intel and third parties), search only for (1) documents sent to or from Europe; (2) documents in the possession of European Custodians of records; (3) documents referencing European countries; or (4) documents relating to European countries but not expressly referencing them…

QC Reply at 26. According to QC, this approach will ultimately result in "slimmed-down" universe of relevant documents, but only after the Third Parties produce all of the discovery requested by QC. *Id.* at 27.

Under Federal Rule of Civil Procedure 26(b), however, a party may obtain only discovery that is relevant to the party's claims or defenses. Courts routinely deny discovery that amounts to a fishing expedition. *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 41 (D. Del. 1993); *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (disallowing discovery request as "based on pure speculation that amount[s] to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses").[6]

---

[6] In an attempt to justify its discovery, QC argues that the Court should not carefully evaluate what evidence might be truly "relevant" to QC's hypothetical foreign proceedings. To the extent such a determination can be made, the legal tenant that relevancy in the discovery context is broader than in the context of admissibility does not permit a rank fishing expedition.

**4.    Whether the Requests are so Intrusive or Burdensome as to Require Trimming or Rejection**

Under the final *Intel* factor, a court may trim or reject discovery requests that are unduly burdensome or intrusive. *Intel*, 542 U.S. at 265. The burdensome and intrusive nature of QC's requests is apparent.[7]  Despite having the burden, QC has failed to demonstrate the need for a single document from a single person or entity in the U.S. litigation.

QC cannot narrow its overbroad requests for good reason.[8]  It is hard to imagine how QC would be able to identify relevant documents when it has yet to identify the consumers on behalf of whom the litigation will be filed, when the litigation will be filed, or even what the claims will be. *See* QC Reply at 1. ("QC intends to initiate litigation … on behalf of French consumers (and either English or Portuguese consumers.")) While QC purports to limit its interest to "who in Europe got what payments, where, when, and why, and how such conduct impacted European consumers," QC is at a loss to explain whether any individual payment is relevant to any claims any consumer may have, as QC cannot identify even a single such consumer. *See* QC Reply at 4.

QC likewise cannot explain how its requests are not overly intrusive.  QC fails to explain how the hypothetical foreign tribunals will protect from disclosure the highly confidential information produced by Third Parties in the U.S. litigation.  It remains unclear whether these tribunals will afford the same protections under the Protective Order entered in this case; whether the Court would be able to enforce any violation of

---

[7] For instance, QC says that it is only interested in rebates and payments given by Intel to OEMs, *see* QC Reply at 4, but nonetheless seeks access to all third party documents produced in this litigation.

[8] QC offers as its compromise only the "self-selection" proposal described above that allows *QC* (not the Court) to trim QC's overbroad requests – and only after the production has already occurred.  This proposal is no compromise at all.

9

the use of this information in the foreign tribunals; whether and how a Third Party could lodge an objection to the use of its confidential information; and how the parties to whom QC produces any information would be bound by the Protective Order.

In short, QC fails to demonstrate that any of the four factors under *Intel* favor granting its modified request for relief under Section 1782. To the contrary, all of these factors support denial of its request in its entirety.

### C. QC's Modified Motion and Application Fail To Adequately Protect the Interests of Third Parties

QC believes that third parties' concerns regarding the unauthorized use and disclosure of their highly confidential and sensitive documents are now nullified because QC has whittled down the number of EU countries in which QC may bring its imagined lawsuit. QC is mistaken. Because QC's request seeks to vastly expand the set of individuals who may access third parties' documents and how those materials may be used, there would be a substantial risk of the unauthorized use and disclosure of third parties' documents were QC's request granted. That would be the case whether QC files its action in London, in Lisbon, or, for that matter, anywhere else in Europe. QC, in response, simply tells third parties to accept the fact that "the risk of breach is present in any litigation involving a Protective Order." QC Reply at 24. That response in no way assuages Third Parties' concerns. Third Parties produced confidential documents in this litigation on the assumption that the use and disclosure of those documents would be governed by the Protective Order that was duly approved by this Court, not by a probabilistic roll of the dice by a non-party and its 170 local associations and 124,000 members.

Third Parties' concerns are further exacerbated by QC's proposed modifications to the Protective Order. As Third Parties have explained, the modifications proposed by QC in its Motion fail to protect against the unauthorized use and disclosure of third parties' highly confidential information. *See* Third Parties' Opposition at 15-17. QC now acknowledges that it should be bound by additional requirements than it initially proposed if it is to be provided Confidential Discovery Material from this litigation. *See e.g.*, QC Reply at 21-23.

The additional requirements QC proposes – to the extent they can be discerned by Third Parties – are insufficient. For example, QC now agrees that it should be able to use Confidential Discovery Material only if the foreign court has imposed a protective order at least as restrictive as the Protective Order in these actions, *see id.* at 21, but, clearly, no such foreign protective order is currently in place or will be for the foreseeable future. Similarly, QC still does not explain how it would be bound by many of the key provisions of the Protective Order that impose confidentiality, notice, and other obligations on recipients of Confidential Discovery Material, since those provisions relate to the obligations of "Parties" or "Receiving Parties," terms that do not encompass QC. *See* Third Parties' Opposition at 15-16.

More fundamentally, QC seeks the entry of a protective order that has *already been rejected by the Special Master and the Court*. As QC explains, once the protective order has been modified in the manner it proposes, the Protective Order would be "nearly identical" to one that Intel and the other parties previously submitted to the Court ("Proposed Protective Order"). *See* QC Reply at 2. QC argues that the close similarity between the protective order it proposes and the Proposed Protective Order justify

granting its request. *See, e.g.*, QC Reply at 22. The obvious flaw in QC's argument, of course, is that the Special Master and the Court did not approve – but rather, rejected – the Proposed Protective Order as it related to the use of Confidential Discovery Materials in other proceedings. *See* Special Master's Report at 116-17. QC can provide no reason why the Special Master and the Court should reverse course now.[9]

In fact, the reasons supporting denial of QC's request are even more compelling now than in June 2006, when the Special Master rejected the Proposed Protective Order's provisions relating to the use of Confidential Discovery Materials in other proceedings. At the June 12, 2006 hearing on the Proposed Protective Order, third parties explained, and the Special Master acknowledged, that the documents third parties would eventually produce in these actions would include "some of the most commercially and technically sensitive documents in the world." *Id.* at 113 (citing D.I. 143 at 19:20-20:11). No Third Party productions had taken place at that time, but in the intervening period Third Parties have produced hundreds of thousands of documents that contain highly sensitive information related to the sales and marketing, pricing policies, costs of production, revenue, distribution strategies, operations, and product roadmaps. Third Parties produced those documents on the assumption they would only be used in this litigation, by the parties. To now permit QC to use third party documents to prepare for a yet-to-be-filed litigation in Europe would wholly undermine third parties' expectations and would

---

[9]    QC argues that Hewlett-Packard and Microsoft may not object to QC's Motion and Application because they did not earlier object to the Proposed Protective Order. *See* QC Reply at 4 and n.6. That assertion has no support in law, fact, or logic. In addition to submitting written responses and objections to the Proposed Protective Order, *see* D.I. 94, 102, both Hewlett-Packard and Microsoft appeared at the June 12, 2006 hearing on the Proposed Protective Order and lodged their objections to the proposed orders' provisions that allowed Confidential Discovery Materials to be used in certain other proceedings, including foreign proceedings in Japan. *See* Special Master's Report at 100 & 111 n.8. In any event, the Special Master allowed "any third party that [has] produced or [is] scheduled to produce documents or witnesses for deposition" to respond to QC's Motion and Application, whether or not that third party objected to the Proposed Protective Order. *See* Notice Regarding QC's Motion and Application (D.I. 939) at 3.

create the real, and not just hypothetical, likelihood of the unauthorized use and disclosure of third parties' confidential information.[10]

    In order to prevent the disclosure of their confidential materials, Third Parties would be required to monitor QC's compliance with the Protective Order, and QC's newly proposed limitation on where it will initiate its hypothetical litigation against Intel does not change that fact. Each third party will be required, at its own considerable expense, to police QC and its members and affiliates to ensure there is no unauthorized use or disclosure of the third party's confidential documents, regardless of where QC brings its suit against Intel. Third Parties should not be expected to bear that burden, especially since QC cannot explain how Third Party documents will have any relevance to a damages action against Intel brought in the EU. And while QC makes much ado about the fact that it consents to this Court's jurisdiction to enforce the Protective Order, that is irrelevant since third parties would still have to monitor and enforce compliance with the Protective Order. Furthermore, because QC is a foreign entity with no apparent assets in this jurisdiction, QC has no basis to provide recompense should third parties' confidential information be improperly used.

    Finally, in a clear demonstration of its scattershot strategy to obtain confidential information from this litigation, QC's proposes that at a minimum it be allowed to meet and confer with third parties (and Intel) about "de-designating certain material that may be of interest to QC for use in [its] European damages litigation." QC Reply at 28. This

_____

[10] QC argues that third parties should have clairvoyantly predicted the eventual disclosure of their confidential information to QC because "the Special Master expressly referenced 1782 in his [Report.]" *See* QC Reply 19. Whether or not Third Parties were aware of Section 1782 when they produced their documents is beside the point. What is relevant is that Third Parties did not produce their highly confidential and propriety documents on the assumption that those documents eventually would be disclosed to a foreign non-party for use in preparing for a possible litigation against Intel somewhere in Europe.

proposal should be summarily rejected.  QC is a non-party to this litigation and thus has

no right to meet and confer with either Intel or third parties.

## III.    CONCLUSION

    For the foregoing reasons, Third Parties respectfully request the Special Master

recommend that QC's modified Motion and Application be denied.

Respectfully submitted,

August 18, 2008

**DRINKER BIDDLE & REATH LLP**

**By:**    /s/ David P. Primack
David P. Primack (DE 4449)
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
(302) 467-4200
(302) 467-4201 (fax)
david.primack@dbr.com

Attorneys for Hewlett-Packard Company

**MONTGOMERY, MCCRACKEN  LLP**

**By:**    /s/ R. Montgomery Donaldson
R. Montgomery Donaldson (DE 4367)
Montgomery, McCracken, Walker & Rhoads, LL
1105 Market Street
Wilmington, DE  19801-1223
(302) 504-7840
(302) 504-7820 (fax)
rdonaldson@mmwr.com

Attorneys for Microsoft Corporation

14

**JONES DAY**

**By:** ____/s/ Daniel Conrad_____

Daniel Conrad (admitted pro hac vice)
Thomas Jackson
2727 N. Harwood St.
Dallas, TX  75201
(214) 220-3939
(214) 969-5100 (fax)
dtconrad@jonesday.com
trjackson@jonesday.com

Attorneys for Dell Inc.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this 18th day of August, 2008, I caused a copy of the foregoing

**THIRD PARTIES' SUPPLEMENTAL BRIEF
IN OPPOSITION TO MOTION OF UNION FEDERALE DES
CONSOMMATEURS – QUE CHOISIR TO INTERVENE FOR THE PURPOSE
OF SEEKING MODIFICATIONS TO PROTECTIVE ORDER
AND APPLICATION PURSUANT TO 28 U.S.C. § 1782**

to be served via CM/ECF on parties in this case and via Email on the following

parties:

Frederick L. Cottrell, III (cottrell@rlf.com)
Chad M. Shandler (shandler@rlf.com)
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, DE  19899

James L. Holzman (jlholzman@prickett.com)
J. Clayton Athey (jcathey@prickett.com)
Prickett, Jones &  Elliot, P.A.
1310 King Street, P.O. Box 1328
Wilmington, DE  19899

Richard Horwitz (rhorwitz@potteranderson.com)
W. Harding Drane, Jr. (wdrane@potteranderson.com)
Potter Anderson & Corroon LLP
1313 North Market Street, P.O. Box 951
Wilmington, DE  19801

Dated:  August 18, 2008

**DRINKER BIDDLE & REATH LLP**

**By:**   /s/ David P. Primack
David P. Primack (DE 4449)
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
(302) 467-4200
(302) 467-4201 (fax)
david.primack@dbr.com