# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE )<br>INTEL CORPORATION )<br>MICROPROCESSOR ANTITRUST )<br>LITIGATION )<br>_____ )<br>) | MDL No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC. a Delaware )<br>corporation, and AMD INTERNATIONAL SALES )<br>& SERVICE, LTD., a Delaware corporation, )<br>)<br>Plaintiffs, )<br>v. )<br>INTEL CORPORATION, a Delaware corporation, )<br>and INTEL KABUSHIKI KAISHA, a Japanese )<br>corporation, )<br>)<br>Defendants. )<br>_____ ) | C. A. No. 05-441 (JJF) |
| PHIL PAUL, on behalf of himself )<br>and all others similarly situated, )<br>)<br>Plaintiffs, )<br>v. )<br>INTEL CORPORATION, )<br>)<br>Defendant. )<br>) | C.A. No. 05-485-JJF<br><br>CONSOLIDATED ACTION |

**INTEL'S SUPPLEMENTAL OPPOSITION TO MOTION OF UNION FEDERALE DES CONSOMMATEURS – QUE CHOISIR TO INTERVENE FOR THE PURPOSE OF SEEKING MODIFICATIONS TO PROTECTIVE ORDER AND APPLICATION PURSUANT TO <u>28 U.S.C. § 1782</u>**

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| | Richard L. Horwitz (#2246) |
| Robert E. Cooper | W. Harding Drane, Jr. (#1023) |
| Daniel S. Floyd | Hercules Plaza, 6th Floor |
| Gibson, Dunn & Crutcher LLP | 1313 N. Market Street |
| | P.O. Box 951 |
| Michael L. Denger | Wilmington, DE 19899-0951 |
| Joseph Kattan, PC | (302) 984-6000 |
| Gibson, Dunn & Crutcher LLP | rhorwitz@potteranderson.com |
| | wdrane@potteranderson.com |
| Darren B. Bernhard | |
| Howrey LLP | Attorneys for Defendants |
| | Intel Corporation and Intel Kabushiki Kaisha |
| Dated:  August 20, 2008 | |

## TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

    A.    QC's bait-and-switch tactics have wasted the time and resources of Intel and the third parties........................................................................................................2

    B.    QC's Reply underscores that its Application is really just an exercise in international forum-shopping for the benefit of class counsel.................................3

    C.    QC is not entitled to relief under § 1782 with respect to future claims in England or Portugal ..........................................................................................................4

        1.    QC has not satisfied the mandatory factors under § 1782 because claims by this French association in England or Portugal are not within reasonable contemplation............................................................................4

        2.    QC has not seriously contended that it has satisfied the discretionary factors under § 1782 with respect to claims in England or Portugal ..........6

        3.    QC's discussion of "foreign discoverability" is a red herring, and an attempt to ignore the Supreme Court's guidance in *Intel* .......................9

    D.    QC has not even attempted to demonstrate that it has carried its burden for seeking modification of the Protective Order .........................................................11

    E.    QC's arguments about procedural protections miss the point ...............................12

    F.    The Court should reject QC's proposed "alternative" relief...................................13

CONCLUSION..............................................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
   No.C-01-7033, 2004 WL 2282320 (N.D. Cal. Oct. 4, 2004) ............................................. 10, 11

*In re Digitechnic*,
   No. C 07-414-JCC, 2007 WL 1367697 (W.D. Wash. May 8, 2007) ........................................ 8

*Intel Corp. v. Advanced Micro Devices*,
   542 U.S. 241 (2004) ................................................................................................... *passim*

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
   384 F. Supp. 2d 45 (D.D.C. 2005) ........................................................................................ 15

*Pansy v. Borough of Stroudsburgh*,
   23 F.3d 772 (3d Cir. 1994) .................................................................................................... 12

## **INTRODUCTION**

QC has abandoned its previous contention that it needs Intel's and third parties' confidential discovery materials for use in the EC proceedings or in a private damages litigation that it is purportedly authorized to bring under French law. Indeed, QC has now conceded that it is unrealistic for it to bring any claim in the one country in which it has a legal authorization to bring damages claims (France).

Instead, this French consumer association now contends – for the first time in its Reply – that it actually wants to use confidential discovery material in a future proceeding in either England or Portugal. But QC has provided the Court nothing to show that it has ever brought such a claim outside France – or that such a claim is even viable. In its initial brief, QC discussed its history of litigation and the authority supporting its supposed mandate to bring claims in French courts. QC, however, provides no authority whatsoever indicating that it has any mandate to bring representative claims in English or Portuguese courts, or that such foreign courts would even entertain a claim brought by a French consumer association. And QC certainly has not shown that there is any basis to seek this Court's assistance with respect to such a not-yet-filed claim.

Having utterly failed in its opening brief to show a basis for its § 1782 Application with respect to a claim in France, QC simply abandoned ship and proffered two new fora in its Reply. But instead of coming up with something more – as one would expect of a French association claiming that it will adopt a novel course by seeking relief for French consumers in other countries – QC has come forward with *less*. Indeed, it has offered nothing at all with respect to the factors under § 1782. Nor does QC seriously challenge the reasons set forth in Intel's Opposition that demonstrate that QC is not entitled to modification of the protective order. In fact, nothing in QC's reply brief justifies intervention by QC in this proceeding or giving QC

1

access to the confidential materials produced in this litigation. Moreover, QC's Application is clearly premature, because the triggering event for filing litigation – an EC decision – is many months away, and because the viability of any claim by QC in England or Portugal is speculative, at best.

## ARGUMENT

### A.    QC's bait-and-switch tactics have wasted the time and resources of Intel and the third parties.

QC originally asked this Court for prompt access to confidential discovery materials for use in EC proceedings. But now, after Intel and third parties have expended substantial resources responding to that request, QC says that it does not really want that relief after all. The time and resources spent by Intel, third parties, and the Court in responding to that request for relief – including the time spent addressing QC's request for expedited briefing that was supposedly aimed at getting materials before the EC promptly – now appear to have been an utter waste.

Likewise, QC asked for access to confidential materials for use in a future damages proceeding in the EU, which it clearly implied would be filed in France. For example, QC relied on its self-described "history of litigation on behalf of consumers in French courts," (QC Br. at 5; King Decl. at ¶¶ 13-15), as well as its authorization under French law to bring cases in French courts.[1] QC did not indicate that it was considering bringing a case in England or Portugal. Indeed, QC's initial papers contained not a single reference to England or Portugal.

---

[1] *See, e.g.,* QC Br. at 3-4 (citing the French Consumer Code: "UFC-Que Choisir is authorized to do the following: intervene in criminal proceedings to claim compensation for consumers harmed by the criminal acts being prosecuted; bring civil proceedings requiring the cessation of unlawful trading practices; bring representative civil proceedings for damages on behalf of

[Footnote continued on next page]

Not surprisingly, Intel and third parties responded with respect to a potential claim in France – the only EU member state mentioned by QC in its papers. Now, however, after Intel and third parties devoted time and resources responding to such a claim, QC concedes that it faces "significant difficulties in bringing a claim of this nature in France." QC Reply at 9 n.18. All of the time and resources expended by Intel and the third parties in responding to QC's overtures relating to French litigation were apparently a waste, because QC has now revealed – for the first time in its reply brief – that what it *really* wants is to use confidential discovery materials in England or Portugal.

It is unfair and improper for QC – and its counsel – to play hide-and-seek with the identity of the forum at the expense of Intel, third parties, and the Court. Intel should not have been required to shoulder the costs of responding fully to QC's requests for relief, to only then find out that what QC actually wants was something different. It is objectionable, and procedurally improper, for QC to have raised its belated request with respect to England and Portugal for the first time in its reply brief.

**B.     QC's Reply underscores that its Application is really just an exercise in international forum-shopping for the benefit of class counsel.**

QC does not – and cannot – dispute that its Application is really just an effort by class counsel to cherry-pick procedures from different jurisdictions around the world so class counsel can export U.S.-style class litigation around the world. Indeed, QC's brief merely confirms what

---

[Footnote continued from previous page]
two or more consumers before any court; and bring a complaint on behalf of consumers before the French Competition Council."); *id.* at 5 ("UFC-Que Choisir also has a demonstrated history of litigation on behalf of consumers in French courts. . . . UFC-Que Choisir is currently assisting more than 12,000 consumers and acting in its own name in the Paris courts to obtain damages from the companies for the losses caused by [a] cartel [of three French telecommunications companies]."); King Decl. ¶ 5, Exh. 1-5.

3

Intel pointed out in its Opposition (at 35-36).  For example, now conceding that French law is not hospitable to its efforts, class counsel suggests it may pursue a case in Portugal on behalf of a French consumer association against an American company for alleged conduct that has no apparent connection to Portugal.  French consumers do not have any contact with Portugal relating to their purchases of PCs containing microprocessors.  And Intel does not even sell microprocessors from any facility in Portugal.  There is no precedent for forum shopping of this nature – and QC cites none.  The Court should not assist QC's counsel in that effort.

**C.    QC is not entitled to relief under § 1782 with respect to future claims in England or Portugal.**

Regardless of the motivations of QC and class counsel, it is clear that QC is no more entitled to relief with respect to England or Portugal than it was with respect to the EC and France.  Indeed, QC's submission is striking in its utter failure to provide any authority to support the relief it seeks here.  QC has again come nowhere close to showing that it is entitled to relief under § 1782.

> **1.    QC has not satisfied the mandatory factors under § 1782 because claims by this French association in England or Portugal are not within reasonable contemplation.**

Even with the new information identified in QC's reply brief, QC still cannot meet the threshold requirements under § 1782.  QC now contends that it intends to bring a case in Portugal or England, but it has made no showing that any such action is "in reasonable contemplation," as is required under § 1782.  *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 259 (2004).  That is because QC has offered no basis to suggest that this French association purportedly representing French consumers has any authority, mandate, or standing to sue Intel in courts in Portugal or England or that any Portuguese or English court would have jurisdiction over the matter.

4

In its opening brief, QC offered authorities that purportedly stood for QC's authority to pursue a claim in French courts under French law. *See* QC Br. at 3-5. In contrast, QC's reply brief points to no authorities suggesting a similar mandate to pursue claims under English or Portuguese laws in English or Portuguese courts. This failure is not surprising, as QC's statutory authorization from the French government is limited to pursuing claims in French courts, and it lacks authorization under French law to pursue claims outside of France (whether on behalf of French or non-French consumers). *See* Supp. Decl. of Jean-Pierre Farges ("Farges Supp. Decl.") ¶¶ 8-11 (attached hereto as Exhibit A).

Likewise, QC has pointed to no basis under English or Portuguese law that would permit a French consumer association to sue in courts in those countries.[2] For example, under English law, the only consumer associations that are permitted to bring lawsuits under the Competition Act in a representative capacity are those that have been expressly designated as a "specified body" under English law. *See* McDougall Decl. ¶¶ 13-19. QC has not been so designated. *Id.* ¶ 17. Similarly, Portuguese law contains no provision that would permit a French consumer association to bring a damages claim under Portuguese law. *See* Declaration of José Luís Da Cruz Vilaça ("Vilaça Decl.") ¶¶ 10-16 (attached hereto as Exhibit C). Tellingly, QC has pointed to no instance in which it has ever brought a case in either Portugal or England. *See* Farges Supp. Decl. ¶ 10; Vilaça Decl. ¶¶ 10, 16.

---

[2] Instead, QC cites to a white paper published by the EC regarding suggestions for "mechanisms of collective redress." QC Reply at 8. But the EC white paper is nothing more than a proposal – it is not the law of the EC, any EU Member State, or any other jurisdiction. *See* Declaration of Arundel McDougall ("McDougall Decl.") ¶ 20 (attached hereto as Exhibit B).

5

Moreoever, even if QC has standing or authorization to bring suit in either England or Portugal, there is no basis to conclude that it has any greater authorization to represent French consumers than it does in French courts. *See* Farges Supp. Decl. ¶ 14. QC has not suggested otherwise. This is critical because, as explained in Intel's Opposition, QC can only bring representative claims on behalf of consumers who have assigned cognizable claims to QC. *See* Intel Opp. at 12 (citing Declaration of Jean-Pierre Farges ¶¶ 17-18). QC still has not shown that it has – or ever will have – the assignments from individuals that are required before QC has any right to bring a claim in any court on behalf of French consumers. *See* Intel Opp. at 12-13. QC has offered no opposition at all on this point. Nor has QC offered any showing that French consumers would have any cognizable claim in English or Portuguese courts that they could assign to QC. This failure to secure assignments renders QC's proposed future action inherently speculative and remote.

Finally, QC's claim that it really now seeks to bring claims in Portugal or England is belied by the relief it seeks. In particular, QC seeks the right to use confidential discovery materials in any EU member state. The fact that QC is reserving the right to change its mind and bring suit in some other country – perhaps even France, even though it has conceded that its § 1782 application is unsupportable with respect to France – or that it might later seek to take advantage of some favorable procedure in Slovenia, Malta, Estonia, or some other EU member state, speaks volumes about the speculative character of QC's current claim that it intends to bring suit in England or Portugal.

    **2.**    **QC has not seriously contended that it has satisfied the discretionary factors under § 1782 with respect to claims in England or Portugal.**

QC has failed to demonstrate that *any* of the discretionary factors under §1782 weighs in favor of its request. Indeed, the sum total of QC's argument on the discretionary *Intel* factors is a

6

single paragraph.  QC Reply at 14-15.  And in that single paragraph, the only point made by QC is a concession that discovery against Intel will be available in whatever jurisdiction it brings its claims.  As Intel explained in its opposition brief (at 14-17, 24-25), that factor weighs strongly *against* QC's application with respect to the first *Intel* factor – whether "the person from whom discovery is sought is a participant in the foreign proceeding" and therefore the "foreign tribunal . . . can itself order [such person] to produce evidence" (542 U.S. at 264).  Both England and Portugal – like France – have their own procedures in place to govern the type and amount of discovery that they have deemed to be appropriate for their respective litigation systems.  *See* Declaration of Charles Simon Hollander ("Hollander Decl.") ¶¶ 7-18 (attached hereto as Exhibit D); Vilaça Decl. ¶¶ 17-27.  As with its original submission, QC's Reply offers no basis to suggest that any discovery appropriate under the laws of any EU Member State would be unavailable to QC if it ever gets to the point of filing a claim.  Accordingly, there is no basis for QC to seek assistance from this Court under § 1782 in connection with any such proceeding.  *See* Intel Opp. at 24-25.

QC likewise makes no effort to satisfy the remaining *Intel* factors.  With respect to the second *Intel* factor – "the receptivity of the foreign [tribunal] to U.S. federal-court judicial assistance" (542 U.S. at 264) – QC offers no suggestion that courts in Portugal or England would be receptive to judicial assistance under § 1782 in these circumstances.[3]  As Intel explained in its Opposition, there is no basis to conclude that any EU member state would be receptive to

---

[3] Because no action has been filed, neither a court in Portugal or England would be in position to express its views as to whether it would be receptive to judicial assistance in the circumstances of a proceeding brought by QC.  *See* Vilaça Decl. ¶¶ 24-28; Hollander Decl. ¶¶ 18-19.  Moreover, an application under § 1782 in the context of such a proceeding brought on behalf of French consumers would likely be considered to be a "fraud" on the French courts.  *See* Farges Supp. Decl. ¶¶ 15-18.

judicial assistance in these circumstances. *See* Intel Opp. at 25-26. QC offers no opposition at all on this point.

With respect to the third *Intel* factor – "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" (542 U.S. at 264) – QC offers no suggestion that its application is anything but an attempt to circumvent the laws and procedures of Portugal or England, just as it was trying to circumvent the laws of France. *See* Intel Opp. at 26-28. QC has again chosen to seek documents through this Court first, rather than attempt to bring a suit in Portugal or England and follow any discovery procedures available to it in those courts. As was the case with France, if the discovery QC seeks were available in Portuguese or English courts, there would be no reason for QC to involve this Court. *See* Hollander Decl. ¶ 19. And if the massive pre-complaint discovery sought by QC were not available in those other countries (*see, e.g.,* Vilaça Decl. ¶¶ 27-28; Hollander Decl. ¶¶ 10, 18), then it is clear that QC's Application should be denied as an attempt to circumvent the laws and procedures of those countries. *See* Intel Opp at 27-28; *see also In re Digitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007). Again, QC offers no opposition at all on this point.

With respect to the fourth *Intel* factor – whether the request is "unduly intrusive or burdensome" (542 U.S. at 264) – QC's discovery request is still vastly overbroad and unduly burdensome, and is not at all tethered to the issues that might be in play in litigation in Portugal or England. It cannot be disputed – and QC does not dispute – that the vast majority of the documents produced in the U.S. litigation would have no connection at all to damages claims by any European consumers. Rather than tailoring its request in any meaningful way, however, QC asks this Court for *carte blanche* to have its counsel select any documents that it believes "focus

8

on the *who, what, where, when, why,* and *how*." QC Reply at 26 (emphasis in original). That is not a limitation at all. And QC offers no basis to conclude that all (or even most) such documents would be relevant to a European proceeding in which QC would seek to argue that liability is not in issue. *See* Intel Opp. at 28-29. QC's only argument is that Intel, third parties, and the Court should trust QC's counsel to weed out "sensitive technical documents or materials related to patents" (QC Reply at 3-4), but that approach would still put QC in possession of a wide range of highly sensitive confidential documents – including documents relating to Intel's pricing strategies or negotiations with customers. Moreover, it is far from clear that QC's proposed "who, what, where, when, why, and how" approach would actually exclude all documents containing sensitive technical information (after all, discovery in the U.S. litigation is not primarily aimed at technical matters), and neither QC nor its counsel have offered any basis to be entrusted with such a task.

In short, the reasons set forth in Intel's Opposition explaining why QC is not entitled to relief under § 1782 for a private damages action in Europe stand unopposed. Each of those reasons is fully applicable to QC's current proposal to litigate in Portugal or England. QC has not even attempted to argue otherwise.

### 3. QC's discussion of "foreign discoverability" is a red herring, and an attempt to ignore the Supreme Court's guidance in *Intel*.

QC's discussion of "foreign discoverability" (QC Reply at 15-18) misconstrues both the applicable legal standards set forth by the Supreme Court and Intel's discussion of those standards. Indeed, QC's argument is simply an attempt to divert attention from the discretionary factors set forth in *Intel*.

Intel's Opposition brief properly addressed the four discretionary factors identified by the Supreme Court in *Intel* – factors which QC has never squarely addressed and which QC cannot

9

satisfy. Those factors include consideration of the need for foreign aid for the applicant to obtain discovery, the receptivity of a foreign tribunal toward judicial assistance under § 1782, whether the applicant is trying to circumvent foreign proof-gathering restrictions or other policies, and whether the request is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *see also Advanced Micro Devices, Inc. v. Intel Corp.*, No. C-01-7033, 2004 WL 2282320, at *2-*3 (N.D. Cal. Oct. 4, 2004) (applying four-factor test on remand). By addressing the discretionary factors identified by the Supreme Court, Intel did not argue that there is any "blanket-foreign discoverability rule on § 1782(a) assistance" as QC suggests in its reply brief. *See* QC Reply at 15. QC is simply confusing the issues.

The "foreign discoverability" issue addressed by the Supreme Court in *Intel* is whether – in all cases – a district court is *required* to reject a § 1782 application if the documents would be otherwise obtainable if they were located in the foreign jurisdiction. *See* 542 U.S. at 260-61. While the Supreme Court rejected such a "blanket" foreign discoverability rule (*id.*), the Court ultimately held that simply because judicial assistance may be *permitted* by § 1782, it should not necessarily be granted. *Id.* at 264. That led to the Court's discussion of the four discretionary factors (*id.* at 264-65), which Intel properly addressed in its Opposition. Clearly, the fact that "foreign discoverability" does not *require* rejection of a § 1782 application does not mean that the factors set forth by the Supreme Court – including whether a foreign tribunal "itself can order [participants in foreign proceedings] to produce evidence" or whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions" (542 U.S. at 264-65) – are somehow inapplicable to the discretionary analysis. Indeed, the Supreme Court's opinion in

*Intel* belies any such notion.[4] By focusing on the existence of a blanket "foreign discoverability" rule instead of addressing the discretionary factors set forth by the Supreme Court, QC simply misconstrues the *Intel* decision. And it yet again underscores its total failure to demonstrate that it has satisfied the *Intel* discretionary factors.

**D.    QC has not even attempted to demonstrate that it has carried its burden for seeking modification of the Protective Order.**

QC has again failed to address the Third Circuit standard governing modification of protective orders, and it has not suggested that <u>any</u> of the *Pansy* factors weigh in its favor. *See Pansy v. Borough of Stroudsburgh*, 23 F.3d 772 (3d Cir. 1994); *see* Intel Opp. at 29-35. As Intel explained in its Opposition, the *Pansy* factors overwhelmingly require rejection of QC's effort to modify the protective order. *See* Intel Opp. at 29-35. QC has offered no meaningful response.

QC's only argument is that Intel and the third parties should not have relied upon the Protective Order. QC Reply at 18-20. That argument rings hollow. Of course Intel and the third parties were justified in relying on the Protective Order – that was the whole point of the Order, and it was the reason Intel, third parties, and this Court spent so much time hammering out the details of the order in the first place. And if there could be any doubt on this point, any such doubt should be removed by the unrebutted declarations from Intel and numerous third parties expressly stating that they relied on the Protective Order and would not willingly have produced their confidential information in the absence of such protections. *See* Intel Opp. at 6, 32.

QC has again failed even to attempt to suggest that any of the *Pansy* factors weighs in favor of its proposed modification. For all of the reasons set forth by Intel in its Opposition (at

---

[4] QC is equally off-base in relying on pre-*Intel* cases that addressed whether there was a blanket "foreign discoverability" rule. That issue was resolved by *Intel*, and it is simply inapplicable to the discretionary analysis that was mandated by the Supreme Court in *Intel*.

11

29-35) – which stand unrebutted – this Court should reject QC's request to modify the Protective Order.

### E.    QC's arguments about procedural protections miss the point.

Rather than set forth any bases that could possibly justify the relief it seeks, QC offers a lengthy discussion about various procedural options that might be employed to protect confidential information abroad.  *See* QC Reply at 20-24.  But QC simply misses the point – there is no basis for this Court to grant QC access to those documents in the first place, so its discussion of various potential aspects of a modified protective order is simply moot.

Moreover, in its discussion of a modified protective order, QC fails to address one of the fundamental concerns here.  In particular, QC fails to explain how this Court would have any means of enforcing the protective order against QC if it violated the order.  QC is not a natural person, it has no apparent ties to any government or business, and it apparently has no assets in the U.S.  And, since QC has not filed any action in any Court (and it may not do so for many months, until a decision of the EC issues), there is no foreign tribunal to consider the protective order provisions QC proposes.  What happens when QC posts confidential documents on the Internet, or discloses them to its members, or errantly files them in a foreign court without appropriate protection?  QC offers no explanation.  Thus, even if the protections described by QC would have been sufficient to protect third-party documents from disclosure by Intel or AMD in the Japanese litigation – since they were also parties to the U.S. litigation, present in Delaware, and subject to meaningful sanctions for any violation of the order – that does not mean the same terms under entirely different circumstances would offer meaningful protections against disclosure by QC.

Moreover, there are additional reasons why the circumstances underlying the proposed protective order (whose relevant provisions were rejected by the Special Master and the Court)

provide a poor analogy to QC's situation.[5]  For example, the Japanese litigation that was addressed by the proposed protective order involved an *ongoing* Japanese litigation in an *identified* Japanese court, and it included the *same* parties that were subject to the jurisdiction of this Court.  Thus, the speculativeness associated with QC's purported future claims, the location of the tribunal that may be hearing such claims, and the reliability of enforcement against QC were simply not present with respect to the Japanese litigation.  In addition, with respect to the Japanese litigation and the proposed protective order, the contemplated sharing of discovery was explicitly limited to a designation request by a *party* in the action before this Court. *See* Stipulated Confidentiality Agreement and [Proposed] Protective Order (D.I. 60) at ¶ 16.  Accordingly, the added burden to the parties in this litigation of requests from foreign non-parties was simply not present with the proposed protective order.

In any event, for the reasons set forth above and in Intel's Opposition, this Court should reject QC's application even if it were theoretically possible to protect confidential materials in QC's possession from disclosure.

**F.    The Court should reject QC's proposed "alternative" relief.**

There is no basis to put Intel and third parties to the burden of engaging with QC in any sort of discussion about de-designating confidential documents.  Intel, third parties, and this Court have already been subjected to too much of a burden at the hands of this foreign association.  If QC ever pursues an action in some foreign country, it should pursue the discovery

---

[5] QC repeatedly misconstrues – as its (and class) counsel well know – the proposed protective order as "Intel's Proposed Protective Order."  *See, e.g.,* QC Reply at 21.  In reality, the proposed order to which QC refers was a *compromise* position – reached after extensive negotiations – between Intel and AMD.  *See* Special Master's Report and Recommendations Regarding Proposed Protective Order, June 27, 2006 (D.I. 221).

available to it under the laws and procedures of that country.  *See, e.g.,* Hollander Decl. ¶¶ 7-19; Vilaça Decl. ¶¶ 17-28.  Whatever court hears such claims – assuming QC can ever find a court that has jurisdiction and in which QC has standing – can make the appropriate determinations under the laws of that country regarding the appropriate treatment for confidential materials, including what materials are discoverable and how they should be protected.  QC offers neither authority nor a convincing rationale to support any further proceedings in this Court.

Indeed, the same reasons that require rejection of QC's application under § 1782 also require rejection of QC's proposed alternative relief.  For example, QC has conceded that it is unrealistic for it to bring any claim in the one country in which it is authorized to bring claims.  *See* QC Reply at 9 n.18.  Moreover, if QC ever does bring a claim in England or Portugal, it has conceded that it may seek discovery to the extent appropriate under the laws of those countries.  There is simply no justification to jump the gun by seeking discovery through this Court.  *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005) (U.S. courts should be "wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit").  In particular, although QC has now stated that its intention is to file a claim following a decision by the EC (QC has assumed that such decision will be adverse to Intel) – and that it will not wait until any EC decision has been rendered final on appeal – even the EC's decision is not likely until sometime in 2009 at the earliest.[6]  And

---

[6] In July 2008, the EC issued a supplementary Statement of Objections, to which Intel has an opportunity to respond, and as to which an oral hearing will be held prior to the issuance of any decision.  *See* EC Memo/08/517, "Antitrust: Commission confirms supplementary Statement of Objections sent to Intel" (July 17, 2008), avail. at

[Footnote continued on next page]

14

even then, QC itself has acknowledged that a stay is likely to be entered in any foreign litigation. QC Reply at 8-9.  QC has offered no explanation whatsoever as to why it cannot wait until it has filed an action, a court has determined that it has jurisdiction over the action, and the discovery available to it in that court (if the action is viable) has been determined.

QC's own brief makes clear that its proposed "de-designation" process would be anything but a quick and efficient process.  For example, QC argues that "[c]ertainly substantial portions of the information [produced in this litigation] . . . are no longer entitled to confidentiality protections due to staleness concerns, among other reasons."  QC Reply at 28.  The fact that QC envisions making arguments about "substantial portions" of the material produced in this case – which already includes well over a hundred million pages of documents – should give this Court serious concerns.  As QC has now revealed, this is not an effort to obtain a stray document or two, but rather an effort to de-designate dumptrucks full of information.[7]

It is also significant to note that QC envisions that it would present to the Special Master any disputes "[s]hould the relevant parties be unable to reach agreement regarding de-designation."  QC Reply at 29.  One can only guess how severely it would burden the already taxed resources of the Special Master and the parties if QC were permitted to implement such a process.  This litigation is large and complex enough as it now stands, and the burdens on the parties and the Court are already sufficient.  If there is any need for QC to obtain confidential

---

[Footnote continued from previous page]
  http://europa.eu/rapid/pressReleasesAction.do?reference=MEMO/08/517&form (attached hereto as Exhibit E).

[7] Moreover, QC's arguments about the supposed staleness of confidential information are simply incorrect.  Information regarding pricing strategies, negotiation tactics, and short- and long-term strategic planning continue to be relevant to Intel's current strategies, tactics, and corporate plans.  It is therefore critical that such information continue to be protected – for the same reasons that it was proper to protect that information in the first place.

15

information at some point in the future in some foreign court, it would be far more appropriate for that foreign court to oversee the process under its own laws and procedures.

## CONCLUSION

For the reasons set forth above and in Intel's Opposition, the Court should deny QC's Motion to Intervene for the purpose of seeking modification to the Protective Order and its Application Pursuant to § 1782 in its entirety.

| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
|---|---|
| Robert E. Cooper | |
| Daniel S. Floyd | By: */s/ W. Harding Drane, Jr.* |
| Gibson, Dunn & Crutcher LLP | Richard L. Horwitz (#2246) |
| 333 South Grand Avenue | W. Harding Drane, Jr. (#1023) |
| Los Angeles, CA 900071 | Hercules Plaza, 6th Floor |
| (213) 229-7000 | 1313 N. Market Street |
| | P.O. Box 951 |
| Michael L. Denger | Wilmington, DE 19899-0951 |
| Joseph Kattan, PC | (302) 984-6000 |
| Gibson, Dunn & Crutcher LLP | rhorwitz@potteranderson.com |
| 1050 Connecticut Ave. N.W. | wdrane@potteranderson.com |
| Washington, D.C. 20036-5306 | |
| (202) 955-8500 | Attorneys for Defendants |
| | Intel Corporation and Intel Kabushiki Kaisha |
| Darren B. Bernhard | |
| Howrey LLP | |
| 1299 Pennsylvania Avenue | |
| N.W. Washington, DC 20004 | |
| (202) 783-0800 | |

Dated:  August 20, 2008
879313/29282