# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | MDL No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC. and AMD INTERNATIONAL SALES & SERVICE, LTD., | |
| Plaintiffs, | Civil Action No. 05-441-JJF |
| v. | |
| INTEL CORPORATION and INTEL KABUSHIKI KAISHA, | |
| Defendants. | |
| PHIL PAUL, on behalf of himself and all others similarly situated, | |
| Plaintiffs, | Civil Action No. 05-485-JJF |
| v. | CONSOLIDATED ACTION |
| INTEL CORPORATION, | |
| Defendant. | |

**SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF:**

**1) MOTION OF UNION FEDERALE DES CONSOMMATEURS – QUE CHOISIR TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING MODIFICATION TO PROTECTIVE ORDERS; AND**

**2) APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER REQUIRING INTEL AND THIRD PARTIES TO PROVIDE ACCESS TO DOCUMENTS AND DEPOSITION TESTIMONY FOR USE IN FOREIGN PROCEEDINGS**

|  |  |
|---|---|
| Of Counsel:<br><br>Jon T. King<br>COHEN MILSTEIN HAUSFELD &<br>  TOLL, P.L.L.C.<br>One Embarcadero Center<br>Suite 2440<br>San Francisco, CA  94111<br>Telephone:  (415) 229-2080<br>Facsimile:   (415) 986-3643<br>jking@cmht.com<br><br><br>DATED:  September 9, 2008 | PRICKETT JONES & ELLIOTT, P.A.<br>James L. Holzman (#663)<br>J. Clayton Athey (#4378)<br>Laina M. Herbert (#4717)<br>Melissa N. Donimirski (#4701)<br>1310 King Street<br>P.O. Box 1328<br>Wilmington, DE  19899<br>jlholzman@prickett.com<br>jcathey@prickett.com<br>lmherbert@prickett.com<br>mndonimirski@prickett.com<br>Telephone:    (302) 888-6500<br>Facsimile:     (302) 658-8111<br><br>*Counsel for Union Federale des Consommateurs - Que Choisir* |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1
II. QC'S MOTION AND APPLICATION ARE NOT PREMATURE ................................. 2
III. QC DID NOT IN ANY WAY ENGAGE IN "BAIT AND SWITCH TACTICS" ............ 4
IV. CCIA'S / MICROSOFT / LG'S MOTION TO INTERVENE ....................................... 13
CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Intel Corp. v. Advanced Micro Devices, Inc.*
    542 U.S. 241 .................................................................................................... 1, 7

*Minatec Finance S.A.R.L. v. SI Group, Inc.,*
    2008 WL 3884374 ................................................................................................. 6

**Statutes**

28 U.S.C. § 1782 ........................................................................................................ passim

I.     **INTRODUCTION**

Union Federale des Consommateurs - Que Choisir ("QC") hereby submits this Supplemental Reply in support of its Motion to Intervene for the Limited Purpose of Seeking Modification to Protective Orders and Application Pursuant to 28 U.S.C. § 1782 (the "Motion") (D.I. 853).[1]  Although QC remains sensitive to the concerns expressed and questions raised by certain third parties that filed oppositions and supplemental oppositions,[2] for the reasons stated in the Motion, in QC's reply in support of the Motion (the "Reply", D.I. 1080) and in this Supplemental Reply, the Motion should be granted.  QC's intended actions in either London, England or Lisbon, Portugal are "in reasonable contemplation" under the applicable Supreme Court precedent in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) ("*Intel v. AMD*").  The Supreme Court in *Intel v. AMD* specifically stated that the contemplated proceedings "need not be 'pending' or 'imminent.'"  *Id.*  The Court should reject the efforts of Intel and third parties to engraft more stringent requirements where none exist.

Although QC is mindful of the substantial paper record that the parties and third parties to this motion have developed,[3] QC submits this Supplemental Reply in the interest of correcting

---

[1] Unless otherwise specified herein, all references to "D.I. ___" pertain to docket items in MDL No. 05-1717.

[2] In addition to defendant Intel Corporation's Supplemental Opposition ("Intel Supp. Opp.") (D.I. 1132), the following entities filed supplemental oppositions and/or supplemental joinders:  Acer America Corporation (D.I. 1129 and D.I. 1127); the "Third Parties' Supplemental Brief in Opposition" filed by Dell Inc., Hewlett-Packard Company, and Microsoft Corporation ("Third Parties (Dell, HP, Microsoft) Supp. Opp.") (D.I. 1125); the "Joinder of Third Party Distributors to Supplemental Brief by Other Third Parties" filed by Ingram Micro Inc., Avnet, Inc. and Tech Data Corporation (D.I. 1128); and LG Electronics USA, Inc. and LG Electronics Inc. ("LG Supp. Opp.") (D.I. 1130).  Two other entities also appeared for the first time in this matter regarding proposed intervention.  Apple, Inc. filed a "Joinder in Third Parties' Supplemental Brief" (D.I. 1141), and CDW Corporation filed a "Brief in Opposition" (filed only in C.A. No. 05-441, D.I. 836).

[3] As the Court observed in its August 25, 2008 Order closing the record on QC's Motion, the effort all parties have expended in presenting this issue has been significant.  Special Master's August 25, 2008 Order at 2 (D.I. 1139).  However, QC appreciates that the Court has permitted it to file this brief as the

1

several misimpressions that may result from representations in Intel's and the third parties' supplemental oppositions. In so doing, QC does not seek to reiterate all of the legal and factual points in its Motion and Reply, and stands by their applicability. QC respectfully requests that the Court reject the contentions of Intel and various third parties in their supplemental oppositions for the reasons articulated below.

## II.   QC'S MOTION AND APPLICATION ARE NOT PREMATURE

Intel and various third parties contend that QC's Motion is premature because a decision by the European Commission ("EC") in the Intel matter may be a few months away. QC's timing is perfectly appropriate, and well-supported by the holding in *Intel v. AMD* that institution of the action need not be "imminent." *Intel v. AMD*, 542 U.S. at 247. It is true, as Intel concedes, that Intel has been rebuked yet again by world authorities for its practices. On July 17, 2008, the EC issued a press release which stated in pertinent part:

> The European Commission can confirm that it has sent a supplementary Statement of Objections (SSO) to Intel on 17th July. The SSO reinforces the Commission's preliminary view outlined in a Statement of Objections of 26 July 2007 . . . that Intel has infringed EC Treaty rules on abuse of a dominant position . . .
>
> In the SSO, the Commission outlines its preliminary conclusion that Intel has engaged in three additional elements of abusive conduct. First, Intel has provided substantial rebates to a leading European personal computer (PC) retailer conditional on it selling only Intel-based PCs. Secondly, Intel made payments in order to induce a leading Original Equipment Manufacturer (OEM) to delay the planned launch of a product line incorporating an AMD-based CPU. Thirdly, in a subsequent period, Intel has provided substantial rebates to that same OEM conditional on it obtaining all of its laptop CPU requirements from Intel. In addition, the Commission has included in the SSO additional factual elements relating to a number of the objections outlined in the 26 July 2007 Statement of Objections.

---

parties and the Special Master initially contemplated, as certain contentions of Intel and the third parties require a response.

2

> Each of the conducts outlined in the 26 July 2007 Statement of Objections and the SSO is provisionally considered to constitute an abuse of a dominant position in its own right. However, the Commission also considers at this stage of its analysis that all the types of conduct reinforce each other and are part of a single overall anti-competitive strategy aimed at excluding AMD or limiting its access to the market.
>
> Intel has eight weeks to reply to the SSO, and will then have the right to be heard in an Oral Hearing. If the Commission's preliminary views expressed in the SSO are confirmed, the Commission may decide to require Intel to cease the abuse and may impose a fine.

*See* Second Supplemental Declaration of Jon T. King ("Second Supp. King Decl."), Ex. 1.

In view of the EC's expressed timetable, neither Intel nor the third parties can seriously dispute that a decision will likely come later this year, or early in 2009.  The Special Master has indicated that his report and recommendation on QC's Motion may not issue until September 30. *See* Special Master's August 25, 2008 Order at 2.  Any party or third party that wants to challenge the Special Master's report and recommendation would then need to follow the appropriate procedures to request that Judge Farnan not adopt the recommendation.  Depending on the Court's schedule, it would take weeks, and possibly months, for the Court to issue a decision on the Special Master's report and recommendation, depending on the schedule for briefing and whether the Court orders hearings on the issue.

QC's Motion cannot fairly be characterized as premature when the schedule for its resolution is compared with the timeline for an expected EC decision against Intel, without even considering possible appellate recourse after the issuance of a decision by Judge Farnan.[4]

---

[4] As QC noted in its Reply at page 5, on May 15, 2008, at a hearing on the QC intervention briefing schedule, Intel's counsel stated:  "When Intel has had to fight this issue before, as you know, from our prior conversations with AMD, it went all the way to [the United States] Supreme Court . . . [I]f things happen to not go our way, I think that we would consider that same path all the way."  May 15, 2008 Hearing Transcript at 6-7.  As further noted in the Reply, in view of Intel's stated appellate strategy, QC

### III. QC DID NOT IN ANY WAY ENGAGE IN "BAIT AND SWITCH TACTICS"

Intel's contention that QC utilized "bait and switch tactics" in regard to its plans to file an action in English or Portuguese courts, as opposed to a French court, is entirely unfounded. QC has already explained in its Reply the basis for the timing of its decision. *See* Reply at 1, 7-9. QC never previously stated that it intended to file in a French court, and while a French venue certainly was a possibility that QC considered, the motion did not indicate QC was limiting its options to French courts. *See*, QC's Brief in Support of Motion (D.I. 854) at 1 (referring to QC's potential "consumer damages litigation in Europe"); *id.* at 2 (same); *id.* at 25 (quoting letter from the EC to QC regarding QC's "stated purpose to possibly demand in your own name damages before national courts in the future . . ."); *id.* at 24 (proposing addition of definition to Protective Orders for "EU Consumer Damages Litigation" defined as "present or future judicial proceedings in one more Member States of the European Union . . ."); *id.* at 26 (conclusion section, referring to "EU consumer damages litigation").

Additionally, the third parties Microsoft, Dell, and HP, in their initial opposition, clearly indicated that they understood QC's intentions to potentially be broader than France. *See* Third Parties' Opp. at 12-13 (D.I. 1027 ) (discussing availability of discovery procedures in the United Kingdom, and Germany); *id.* at 6 (discussing whether QC has "standing to bring a case, particularly anywhere other than France.").

Moreover, it was QC that proactively suggested to Intel and the Special Master that a round of supplemental briefing be undertaken so that all concerned could be fairly heard. *See* July 14, 2008 Hearing Transcript at 16-17 ("I would be remiss if I didn't mention something which I have mentioned to Intel just in a semi meet and confer type process, but we are, Que

---

would be faced with waiting several years for documents to become available, at which point the EC's proceedings likely would be long-since concluded.

Choisir would be able to now, in its reply brief, be more specific on several issues . . . . And what we did was invite, we think it will be appropriate for Intel to most likely submit a further written submission . . ."); *see also* Reply at 1, n.3. Furthermore, it was QC that suggested the third parties also could file supplemental briefs if needed to make certain that no one was unfairly prejudiced. *See* Reply at 1, n.3. Moreover, third parties Apple and CDW, which did not file initial oppositions or joinders, filed a joinder and opposition, respectively, at the time the supplemental oppositions were due (*see* D.I 1141 and D.I. 836, filed only in C.A. No. 05-441), and QC has not opposed those filings on procedural grounds.

### IV.    QC CAN PURSUE LITIGATION IN ENGLAND OR PORTUGAL

The supplemental oppositions do not state that QC *cannot* pursue litigation in the courts of England or Portugal. The briefs state only that QC has not done so before, and show that Intel has thought up some arguments regarding standing that it could someday present to those courts. These arguments, expressed in various declarations, are far from a definitive statement that this Court should find controlling, or even persuasive. Intel has not sought any sort of declaratory or injunctive relief from either a London or a Lisbon court to (1) buttress its position that QC cannot sue there, or (2) state that a court would refuse to consider any evidence obtained via 28 U.S.C. § 1782, whether because QC had allegedly circumvented the European courts' procedures or otherwise. Intel has shown the capability to take similar action before, as evidenced by its secretive letter to the EC, to which the EC responded by declining QC's further assistance with respect to its proceedings and refusing to accept Intel's eager invitation to take a position on QC's application regarding private litigation. *See* Reply at 5, n.10.

As Vincent Smith explains in his Supplemental Declaration of Vincent Neil Smith ("Supp. Smith Decl.", filed herewith), QC can pursue litigation in England. *See also* Reply, at 9-

10. Such an action is, without doubt, now "in reasonable contemplation," the relatively low threshold set by the Supreme Court in *Intel v. AMD*. Applicable precedent counsels against a United States court delving any deeper into such issues and trying to parse through details of foreign law, which would be directly contrary to the purposes of 28 U.S.C. § 1782. *See Reply*, at 18; s*ee also Minatec Finance S.A.R.L. v. SI Group, Inc.*, 2008 WL 3884374 at *6-9 (N.D.N.Y. August 18, 2008) ("Minatec Finance"). In Minatec Finance, the court addressed at length whether a German court would be receptive to the U.S.'s court assistance, and whether a section 1782 application would circumvent foreign-proof gathering restrictions. The court definitively answered these questions in favor of granting a section 1782 application, and state as follows:

> On this topic, both parties leveled a cannonade of legal affidavits, with a spiraling array of competing legal pontification . . . the Supreme Court and the Second Circuit have repeatedly denounced such a practice and that such endeavor may be meaningless.
> . . .
> [W]e were not presented with authoritative declarations from the forum country's judicial, executive, or legislature specifically addressing the use of evidence that possibly may be gathered by this Court . . . . There is no reason to assume that a country that has not adopted a discovery requirement as extensive as ours would be either offended or reject the assistance. And, even if a foreign tribunal may be too hesitant to order the level of production sought here, this does not mean that there is any resistance to receiving such evidence collected under this statute. But, if its [sic] learned later that the foreign tribunal . . . opposes our assistance then that tribunal has within its right to exclude the discovered material.
> . . .
> [With respect to allegations of circumvention,] we are disinclined to consider these affidavits since they lack the ring of judicial authority on the matter . . . The primary issue for us is whether [a party] is pursuing this discovery in bad faith. Other than [another party's] contentions, we find nothing within this record to support that [the party seeking documents] is seeking this information with less than a good faith belief that §1782 discovery would be helpful to the foreign tribunals and itself."

(citations omitted)

As Mr. Smith notes, QC, "as a legal person incorporated in France, has unrestricted standing to bring claims in the English courts in the same way that any other legal person incorporated anywhere in the European Union may bring a claim in England." Supp. Smith Decl., at 1. Mr. Smith also observes that QC could obtain "a declaration [that] may also state the law or fact with effect for others in the same or a similar position." *Id.* at 3. More specifically, "[a] declaration could be made which shows that QC and/or some or all of its members were caused loss by the unlawful conduct found by the European Commission if it makes a decision that Intel has abused a position of market dominance contrary to Article 82 EU Treaty." *Id.* at 3-4. Moreover, "[s]uch an application can accompany a claim for damages by those who have suffered loss as a result of the unlawful conduct of the defendant." *Id.* at 4.

Dell, HP, and Microsoft even acknowledged the potential that QC may work with "English and/or Portuguese residents to act as plaintiffs," noting only that "there is no guarantee that it will find any." *See* Third Parties. Supp. Opp. at 4. *See also* Intel Supp. Opp. at 6 (acknowledging possibility that QC could obtain assignments from individuals to bring claims in their stead). QC does in fact have members that live in England and Portugal.[5] *See* Supp. Smith Decl., at 6. Moreover, given the expected press coverage that will follow from the filing of QC's action in Europe, coming as it will on the heels of an expected adverse EC decision against Intel and its attendant publicity, it is a more than safe assumption that non-member consumers will seek QC's assistance. *See, e.g.*, King Second Supp. Decl., Ex. 2, article dated April 10, 2008 from CNNMoney.com (a service of CNN, *Fortune*, and *Money* magazines, "*French consumer organization UFC petitions US judge over Intel antitrust abuse*."

---

[5] As *The New York times* recently noted, "[t]here are now an estimated half a million French men and women living and working in England." S*ee* Second Supp. King Decl, Exh. 3 (further discussing trend of French citizens migrating to England including high-technology and other entrepreneurs).

7

Mr. Smith touches on other matters in his Supplemental Declaration that do not need to be repeated here at length regarding the jurisdiction of the English courts, the disclosure of evidence in English proceedings, the admissibility of evidence in English proceedings and English courts' receptiveness to foreign assistance. Notably, as discussed therein, the evidence disclosure requirements in English courts may even be *broader* than in the United States, not narrower,[6] thus further highlighting that application of 28 U.S.C. § 1782 in this case will not circumvent English procedures.

Additionally, Mr. Smith cites to a leading English treatise, Dicey & Morris's *Conflict of Laws*, in support of his observation that "[t]he English courts will be receptive to the introduction of relevant evidence which a party has obtained by his own means to support his case," and that "[the] means may include the application to a foreign court . . . ." *See* Supp. Smith Decl. at 6 (*citing* Dicey & Morris, at § 8-074, pp. 237-38). Additionally, the "English court will not interfere with a party's steps to obtain evidence" in most circumstances. *Id*.

The Dicey & Morris treatise bears quoting here, as it further refutes the contentions of Intel and Third Parties that QC is in some way attempting to circumvent the procedures of a foreign country. The treatise expressly references and envisions applications pursuant to 28 U.S.C. § 1782. The treatise states in pertinent part the following:

> It is a principal of English civil procedure that a party obtains by his own means the evidence he needs to support his case. The means used may include the taking in foreign countries of any steps which may be lawfully taken there, such as the making of a direct application to a foreign court for a procedural remedy available under the law of that court, for example an extensive order for discovery which a United States court may make under its own procedural rules even if the evidence is intended for use in English proceedings.
> . . .

---

[6] See Supp. Smith Decl. at 3.

8

> [specific discussion of 28 U.S.C. § 1782 omitted]
>
> The English court will not restrain a party from taking such steps in a foreign country unless they amount to unconscionable conduct interfering with the due process of the English court or invade the legal or equitable rights of another party.

Supp. Smith Decl., Ex. 2.

With respect to Portugal, Intel makes unfounded arguments similar to those it advances about English law. One of Intel's declarants states that, to the best of his knowledge, no collective or representative action has ever been filed in Portugal "by a foreign consumer association on behalf of foreign consumers as a result of any activity performed outside of Portugal." Declaration of Jose Luis Da Cruz Vilaca, at ¶10 ("De Cruz Vilaca Decl.") Exhibit C to Intel Supp. Opp. That statement is misleading. First, QC in no way concedes that it would be suing regarding conduct that exclusively occurred *outside* of Portugal. It would not be, and it surely is not in dispute here that computers containing Intel's microprocessors are sold in, and into, Portugal. Second, QC does not contemplate suing simply on behalf of foreign consumers, as it has already stated in its Reply at page 9. Even if it did, Intel offers no reason why it would be precluded from doing so, even if it were the first such action. The EC, in its White Paper, without question is urging a movement towards collective action in consumer competition cases. *See* Reply, at 8, discussing White Paper, which is attached as Exhibit 12 to Intel's Declaration of James Venit, D.I. 1053 ("Venit Decl.").

As discussed in the Reply, the White Paper suggests a "combination of two complementary mechanisms of collective redress to address effectively those issues in the field of antitrust," one of which is representative actions brought by entities such as consumer associations. The other is an "opt-in collective action" in which "victims expressly decide to combine their individual claims for harm they suffered into one single action." EC White Paper,

9

Venit Decl., Ex. 12, at 4. The EC further noted that "[c]onsidering that qualified entities will not be able or willing to pursue every claim, it is necessary that these two types of action complement each other to ensure effective collective redress for victims of antitrust infringements." *Id.*

The EC has even filed its own antitrust claim on its own behalf as a governmental purchaser against an alleged elevator and escalator price-fixing cartel and stated that "[t]he Commission is doing its utmost to encourage and facilitate actions for damages before national courts by victims of anticompetitive behaviour. In this case, we are leading by example." *See* Second Supp. King Decl., at 4.

Moreover, Mr. De Cruz Vilaca can only opine that it is "doubtful" that QC could bring an action on behalf of either French or Portuguese consumers. *See* De Cruz Vilaca Decl. at ¶ 12. Even Mr. De Cruz Vilaca, however, acknowledges that "of course, if an individual had rights to sue that it expressly assigned to QC, QC might become involved in litigation by virtue of an assignment, but in such case QC would not be suing as a consumer association in a representative capacity." *Id.* As discussed above, given the widespread dissemination of computers containing Intel microprocessors, this is not a case where there is any colorable argument that consumers across the EU would not be affected and have a right to claim redress, particularly where such decisions would be following a determination of Intel's liability by the EC. It is not a stretch to contemplate widespread assignment of consumer claims. In an analogous situation involving alleged price-fixing of passenger airline fares to and from England, QC's counsel recently obtained more than 100,000 written requests from individuals to participate in a settlement, and this was well-before the deadline for such submissions. *See* Second Supp. King Decl., Ex. 5. It is abundantly clear that European consumers are eager to

10

exercise their rights against cartelists and monopolists when given the chance, and QC expects an even greater level of interest in the Intel case.

Additionally, with respect to both Portugal and England, there is nothing to stop QC from affiliating with one or more consumer associations to join forces to pursue litigation, possibly via a combination of statutory rights to pursue collective action as consumer associations and assignments of individual claims.  As Mr. De Cruz Vilaca notes, "Portuguese law provides various rights to national, regional, or local associations in Portugal" to file collective actions.  De Cruz Vilaca Decl., at ¶ 13.  As QC noted in its Motion, QC is a founding member of the European Bureau of Consumer Unions (the "BEUC"), a pan-European consumer association comprised of numerous countries' consumer groups that sought, and was granted, leave to appear at the EC proceedings on behalf of consumers.  *See* Motion Brief (D.I. 854), at 4-5.  The BEUC's members include consumer organizations in Portugal and the United Kingdom, including England.  *See* Second Supp. King Decl., Ex. 6.

With respect to the rest of Mr. De Cruz Vilaca's declaration, the most he can claim is that "by resorting to US civil procedure QC is trying to gain access to documentary evidence and information that would *probably* be denied to it under Portuguese law and most civil jurisdictions." De Cruz Vilaca Decl., at ¶ 28 (emphasis supplied).  QC disagrees with this statement and it is hardly an official, definitive statement of policy that requires denial of QCs motion.

In sum, it promotes, not hinders, international efficiency and the policies of 28 U.S.C. § 1782, for litigants to be able to present more detailed complaints and amended complaints *earlier* in foreign proceedings based on already-compiled evidence.  Such efficiencies would also accrue at each subsequent stage of litigation.  Intel and the third parties offer no persuasive reason to

think that any court in England or Portugal would prefer to preside over a *less*-developed case, when presented with the knowledge that evidence is already compiled and available in the United States.

## V. ARGUMENTS REGARDING MISHANDLING OF CONFIDENTIAL INFORMATION ARE BASELESS

Intel's and the third parties' supplemental oppositions repeat histrionic and totally baseless arguments regarding the mechanics of how QC would handle confidential information. For example, they suggest that QC might post confidential documents on the Internet or disclose confidential information to hundreds of thousands of individual members, none of whom is subject to the jurisdiction of this Court. QC has already responded to these arguments at pages 20-24 of its Reply, and the Court can rapidly dispense with these contentions. Even now, a myriad of individuals and entities around the world have been given access to confidential documents in this litigation simply by signing the Protective Order and consenting to the jurisdiction of the Court, even if they have no assets here and it would be difficult to compel their appearance in this jurisdiction. This was the case with respect to the Japanese litigation consultants and experts that Intel proposed have access to all third party documents in this case simply by signing a consent form and an agreement to jurisdiction. *See* Reply at 22.

QC has submitted to the jurisdiction of this Court and has reputable counsel guiding its activities. That places it on equal footing with many others involved in this litigation and those contemplated in Intel's Proposed Protective Order.[7]

Just as the Court can dispense with insulting arguments that QC will post confidential documents on the Internet, so too can it readily dispense with arguments that QC is "forum

---

[7] Relatedly, Intel has submitted numerous declarations regarding QC's motion to intervene from foreign attorneys who apparently live overseas. They have stated that their statements are subject to penalties of perjury. By Intel's logic, the statements are worthless because the Court would have no theoretical recourse against the declarants if needed.

12

shopping" and somehow committed a "fraud" on French courts by contemplating instituting litigation away from France. QC's dedication to the rights of consumers, and willingness to pursue those rights, is well-documented in its Motion. Moreover, as noted in Mr. Smith's Supplemental Declaration, the European Court of Justice's decision in *Turner v. Govit* clearly establishes the jurisdictional basis for QC to pursue action in other countries, and to the extent that French jurisprudence is somehow inconsistent, the ECJ's decision would govern. Supp. Smith Decl. at 4-5.

## IV.   CCIA'S / MICROSOFT / FUJITSU'S MOTION TO INTERVENE

After QC filed its Reply, several news organizations and computer industry entities moved to intervene to seek access to various confidential documents and briefs filed in this action under seal. One of the movants is the Computer & Communications Industry Association (the "CCIA"). *See* D.I. 840, filed in C.A. No. 05-441. Notably, its members include Microsoft and Fujitsu, both of whom have opposed QC's motion. *See* Second Supp. King Decl., Ex. 7. Other CCIA members include high-technology leaders such as Oracle, Intuit, and AMD. The CCIA has called for de-designation of numerous specific filings and documents previously marked as confidential, just as QC has, including many of the same filings and documents. *See* Reply at 26 (among other requests, "QC requests access via its counsel to . . . any filings under seal that may contain relevant evidence, namely, the preliminary pretrial statements and replies, and documents cited therein, the class certification briefing and expert reports and documents cited therein, and summary judgment papers and expert reports and documents cited therein, any further pretrial statements and documents cited therein, and any trial transcripts and evidence used at trial.")

CCIA/Microsoft/Fujitsu's position is in stark contrast to, for example, Microsoft's position on the exact same issues regarding QC.  *See* Third Parties' Supp. Opp. at 12 ("Third Parties produced these documents on the assumption that they would only be used in this litigation by the parties."); Fujitsu Opp. (D.I. 1039).

Moreover, the CCIA issued a press-release regarding its Motion and stated, among other things, that "[t]his case has taken on greater significance now that the FTC is investigating Intel and South Korea and Japan have already found Intel guilty of the charges alleged in this suit" and that, "The EU is investigating and expected to rule by September."  King Second Supp. Decl., Ex. 8.  CCIA's President and CEO further stated that the CCIA hopes that "in reviewing our motion the court decides that providing trade secret protection to evidence related to illegal business practices and behavior would be adverse to the public interest."  *See id.*  QC agrees.

**CONCLUSION**

For the foregoing reasons, QC respectfully requests that the Court grant its Motion to intervene, grant its application pursuant to 28 U.S.C. § 1782, and modify the Protective Order as requested.

PRICKETT JONES & ELLIOTT, P.A.

By: _____
James L. Holzman (#663)
J. Clayton Athey (#4378)
Laina M. Herbert (#4717)
Melissa N. Donimirski (#4701)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
jlholzman@prickett.com
jcathey@prickett.com
lmherbert@prickett.com
mndonimirski@prickett.com
Telephone: (302) 888-6500
Facsimile: (302) 658-8111

*Counsel for Union Federale des Consommateurs - Que Choisir*

Of Counsel:

Jon T. King
COHEN MILSTEIN HAUSFELD &
  TOLL, P.L.L.C.
One Embarcadero Center
Suite 2440
San Francisco, CA 94111
Telephone: (415) 229-2080
Facsimile: (415) 986-3643
jking@cmht.com

Dated: September 9, 2008