IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: INTEL CORPORATION MICROPROCESSOR ANTITRUST LITIGATION | ) ) ) ) ) | MDL No. 05-1717-JJF |
| ADVANCED MICRO DEVICES, INC. and AMD INTERNATIONAL SALES & SERVICE, LTD., <br><br>Plaintiffs, <br><br>v. <br><br>INTEL CORPORATION and INTEL KABUSHIKI KAISHA, <br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 05-441-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated, <br><br>Plaintiffs, <br><br>v. <br><br>INTEL CORPORATION, <br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 05-485-JJF <br><br>CONSOLIDATED ACTION |

## SUPPLEMENTAL DECLARATION OF VINCENT NEIL SMITH

|  |  |
|---|---|
| Of Counsel:<br><br>Jon T. King<br>COHEN MILSTEIN HAUSFELD &<br>  TOLL, P.L.L.C.<br>One Embarcadero Center<br>Suite 2440<br>San Francisco, CA  94111<br>Telephone:  (415) 229-2080<br>Facsimile:   (415) 986-3643<br>jking@cmht.com | PRICKETT JONES & ELLIOTT, P.A.<br>James L. Holzman (#663)<br>J. Clayton Athey (#4378)<br>Laina M. Herbert (#4717)<br>Melissa N. Donimirski (#4701)<br>1310 King Street<br>P.O. Box 1328<br>Wilmington, DE  19899<br>jlholzman@prickett.com<br>jcathey@prickett.com<br>lmherbert@prickett.com<br>mndonimirski@prickett.com<br>Telephone:   (302) 888-6500<br>Facsimile:    (302) 658-8111<br><br>*Counsel for Union Federale des Consommateurs - Que Choisir* |

1. I, Vincent Neil Smith, am a solicitor of the Supreme Court of England and Wales and a partner in the firm Cohen Milstein Hausfeld & Toll LLP, a firm of solicitors associated with counsel of the proposed interveners in this case. I refer to the further details of my experience in my Declaration dated April 28, 2008 (D.I. 864 in MDL No. 05-1717) in support of this application.

2. I make this Declaration pursuant to 28 USC § 1782 in support of UFC-Que Choisir's ("QC") motion to intervene in the above captioned proceedings. I have in particular read Intel's supplemental opposition to that motion, the third parties' supplemental briefs in opposition and the declarations made in support of those pleadings.

**Standing to Bring a Claim in the English Courts**

3. QC, as a legal person incorporated in France,[1] has unrestricted standing to bring claims in the English courts in the same way that any other legal person incorporated anywhere in the European Union may bring a claim in England.

4. There are two main courts in England which have jurisdiction to hear claims relating to competition law (anti-trust) breaches: the Competition Appeal Tribunal (the "Tribunal") – a special tribunal set up by United Kingdom statute[2] to deal with competition matters – and the High Court in London.

5. The Tribunal is competent[3] to hear claims for damages which "follow on" from an infringement decision made under its competition law powers by the Office of Fair Trading ("OFT"), the United Kingdom's principal competition authority or the European Commission ("EC"), where those decisions affect trade within the United Kingdom. In order for the

---

[1] The latest renewal of its registration is published in the Official Journal of the French Republic of 9 September 2006 at p 4355 paragraph 1169.
[2] s 12 Enterprise Act 2002.
[3] s 47-47A Competition Act 1998.

addressee of such a decision to be brought before the Tribunal, the normal rules of jurisdiction apply, in particular so that an addressee who has a place of domicile in the United Kingdom may be sued there.

6. Under s 47B of the Competition Act 1998, the Tribunal may also hear claims for damages following on from a competition authority's decision brought by representative consumers' associations which have been designated for that purpose by order. However, to date only one organisation has been designated, the Consumers' Association ("Which?"),[4] in 2005. At present, QC cannot therefore take advantage of this particular statutory procedure to represent consumers before the Tribunal.

7. The High Court, which is England's general court of civil jurisdiction, is competent to hear all types of claims related to competition law breaches.

8. A person has standing to bring a claim for damages in an English court or the Tribunal if he can show that he may have suffered loss caused by the breach of the law complained of. Where, as is often the case for claims made for breaches of competition laws, the claim is brought in tort (for breach of statutory duty), the claimant will be required to show that the loss he claims to have suffered was a reasonably foreseeable consequence of the act constituting the breach of law alleged. Claims for other remedies (for example injunctions) are discretionary in nature – but will normally be admitted where the claimant can show that he has a sufficient interest in the case.

**Remedies Available in the English Courts**

9. The principal remedy available in the English courts for a breach of competition rules is damages. However, the High Court (but not the Tribunal) may also grant an injunction

---

[4]/By order made in SI 2005/2365.

19684.2\379414v1                                                    2

restraining an ongoing breach of competition law – these have been used, for example, in cases of suspected abuse of a market dominating position.

10.  The High Court (but not the Tribunal) may also make a declaration of the state of law or fact (for example the meaning and intent of a statute or other act of a public authority) at the request of a person having a sufficient interest. The declaration made will be binding on the High Court and on the lower civil courts (County Courts) who hear lower value claims for damages and other civil law remedies. In addition to its binding effect on the parties who have applied for the declaration, a declaration may also state the law or fact with effect for others in the same or a similar position. For example, the Office of Fair Trading recently applied for a declaration as to whether certain charges levied by the major banks in England were unlawful penalties and/or were capable of being regulated by the OFT itself under its statutory powers to regulate the terms of credit bargains.[5]

11.  It is not necessary for the applicant for a declaration to have a monetary interest in the outcome of the application or to show that it has been caused loss by any of the actions of the person in respect of whose conduct the declaration is sought. It is sufficient that the applicant can show that his rights are either being infringed or are threatened with infringement,[6] and that a broad view has been taken of the nature of the rights which may be protected or declared to exist provided that the declaration sought is not hypothetical or purely theoretical: it must have practical consequences for at least some of the applicants for the declaration.[7] A declaration could be made which shows that QC and/or some or all of its members were caused loss by the unlawful conduct found by the European Commission if it makes a decision that Intel has abused

---

[5] *Office of Fair Trading v Abbey National plc and others* [2008] EWHC 873.
[6] *Gouriet v Union of Post Office Workers* [1978] AC 435, House of Lords.
[7] *Ainsbury v Millington* [1987] 1 WLR 329 at 381, House of Lords.

a position of market dominance contrary to Article 82 EU Treaty. Such an application can accompany a claim for damages by those who have suffered loss as a result of the unlawful conduct of the defendant.

**Jurisdiction of the English Courts**

12. The English courts will have jurisdiction to hear a claim (or application) where

- the defendant (or one of them) has its domicile in England;[8] or

- where the claim relates to a tort, as will be the case where a consumer brings a claim (there being no contractual privity between consumers and Intel), if England is the place where the harmful event has occurred or may occur;[9] or

- where a claim is made by a consumer, he may bring proceedings either in the court of the EU Member State where the consumer is domiciled or in the courts of the place where the supplier is domiciled.[10]

13. A company or other legal person is domiciled at the place where it has its statutory seat. In England this will be the place of a company's registered office.[11] I understand that Intel Corporation (UK) Limited, a UK registered company belonging to the Intel group of companies, is domiciled in England, having its registered office in Swindon.[12] It is described as "the European headquarters for the world's top semi-conductor maker" and its managing director is described as Intel's "Marketing Director, EMEA" (Europe, Middle East and Asia).

14. Where the English court is validly seised under the provisions of European Regulation 44/2001, it is not open to the courts of any other Member State to require the English court to stay or discontinue those proceedings and nor may another court require, by way of injunction, the claimants in the English court to suspend or withdraw their claim on the ground that the English court is an inconvenient forum (for example because the proceedings may be

---

[8] EC Regulation 44/2001 Article 2.
[9] EC Regulation 44/2001 Article 5(3).
[10] EC Regulation 44/2001 Article 16.
[11] EC Regulation 44/2001 Article 60(2).
[12] See company description at Exhibit 1, attached.

considered a fraud on the law). The European Court of Justice (whose decisions are binding on all courts in the EU) has held that the Regulation:

> . . . is to be interpreted as precluding the grant of an injunction whereby the court of a Contracting State prohibits a party to proceedings pending before it from commencing or continuing legal proceedings before a court of another Contracting State, even where that party is acting in bad faith with a view to frustrating the existing proceedings.[13]

**Disclosure of Evidence in English Proceedings**

15.     Documents and witnesses relevant to any proceedings in England must be disclosed by any party to a case. The declaration submitted by Mr. Charles Hollander in support of Intel's supplemental opposition describes the English system of disclosure.

16.     Importantly, the obligation to provide disclosure applies to all documents in the possession or under the control of any party – and so will include documents received by any party's lawyers and held on the party's behalf. The obligation applies to any relevant documents held by all parties to the English proceedings, no matter how the party came by them or whether or not they are confidential. Moreover, the right of a person in civil legal proceedings to refuse to produce any document or thing if this would tend to expose him to proceedings for an offence or for the recovery of a penalty, applies only as regards criminal offences under the law of any part of the United Kingdom and penalties provided for by such law, and not those provided under foreign laws, like the laws of the United States.[14]

17.     However, the English courts have sometimes been unwilling to compel the disclosure of documents where that would put the disclosing party in breach of the criminal law in a country where he is subject to the jurisdiction. In this case, the allegations of misuse of

---

[13] Case C-159/02 *Turner v Grovit*, judgment of 27 April 2004, ECJ. Although the ECJ was expressly interpreting the Brussels Convention which preceded the Regulation, the relevant provisions are the same and the ECJ's decision is still authoritative.
[14] Civil Evidence Act 1968 s 14 (1)(a).

market power apparently span the globe, so the potential for conflicting disclosure obligations (under threat of criminal sanction for breach) to arise from these proceedings in the United States and from the contemplated proceedings in England if there is no modification of the protective order must be a real one.

**Availability of Evidence in English Proceedings – Receptiveness to Foreign Assistance.**

18.   The United Kingdom is a party to the Hague Convention of 1970 on the taking of evidence abroad in civil and commercial matters, which provides a procedure for obtaining evidence outside England using a designated central authority in each contracting State to the Convention. It is used by the English courts to obtain evidence from persons abroad who are not directly subject to the jurisdiction of the English courts and where the evidence does not already exist in an accessible form. However, the Convention does not exclude the use of other methods of obtaining evidence provided for under the national law of the State from which the evidence is sought.[15]

19.   The English courts will be receptive to the introduction of relevant evidence which a party has obtained by his own means to support his case. These means may include the application to a foreign court for any procedural remedy available under the law of that court, even if the evidence is intended for use in the English proceedings.[16] The English courts will not interfere with a party's steps to obtain evidence unless they are unconscionable, interfere with the due process of the English courts or are contrary to the legal or equitable rights in England of another party.

20.   I am informed by QC that it has members residing in England and Portugal.

---

[15] 27 (c) of the Convention.
[16] Dicey & Morris para 8.074 and the authorities therein cited, attached hereto as Exhibit 2.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 9th day of September, 2008, at London, England.

_____
Vincent Neil Smith
Solicitor, Supreme Court of England & Wales
Cohen, Milstein, Hausfeld & Toll LLP
25 Southampton Buildings
LONDON WC2A 1AL
UNITED KINGDOM
Phone:      +44 20 3170 7725
Facsimile:  +44 20 3170 7729